Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
Steven J. McCardell (smccardell@djplaw.com)(2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (pro hac vice application pending)
Steven B. Eichel (seichel@crowell.com) ( pro hac vice application pending)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY   10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | |
| EASY STREET HOLDING, LLC, | Case No. 09-29905 |
|  | Chapter 11 |
| Debtors. | |
| Address:  201 Heber Avenue | |
|           Park City, UT 84060 | Honorable R. Kimball Mosier |
| Tax ID Number:  35-2183713 | [FILED ELECTRONICALLY] |
| In re: | |
| EASY STREET PARTNERS, LLC, | Case No. 09-29907 |
|  | Chapter 11 |
| Debtor. | |
| Address:  201 Heber Avenue | |
|           Park City, UT 84060 | Honorable R. Kimball Mosier |
| Tax ID Number:  84-1685764 | [FILED ELECTRONICALLY] |

| | |
|---|---|
| In re: ) | |
| ) | |
| EASY STREET MEZZANINE, LLC, ) | Case No. 09-29908 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| Address: 201 Heber Avenue ) | |
| Park City, UT 84060 ) | Honorable R. Kimball Mosier |
| ) | |
| Tax ID Number: 20-4502979 ) | [FILED ELECTRONICALLY] |

**MOTION FOR AN ORDER AUTHORIZING THE JOINT ADMINISTRATION
AND PROCEDURAL CONSOLIDATION OF RELATED
CASES UNDER BANKRUPTCY RULE 1015(b)**

Easy Street Partners, LLC ("Partners"), Easy Street Mezzanine, LLC ("Mezzanine"), and Easy Street Holding, LLC ("Holding"), debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move this Court (the "Motion") for entry of an order (the "Order") pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1015(b) and Local Rule 1015-1 authorizing the joint administration and procedural (but not substantive) consolidation of their chapter 11 cases.

Pursuant to Local Rule 1015-1, the Debtors request procedural (not substantive) consolidation and joint administration of the cases under Easy Street Holding, LLC. The Debtors propose that all pleadings relating to their cases shall bear a joint caption in the form of Exhibit "1" attached hereto, and that the Court clerk file and maintain all of these pleadings under a single pleading docket for all of the Debtors' cases.

This Motion is based on the points and authorities below, the evidence contained in the "Declaration Of William Shoaf In Support Of Certain First Day Motions" (the "Shoaf

2

Declaration") filed concurrently herewith, the record in these cases, and the arguments, evidence and representations that may be presented at or prior to the hearing on this Motion.

## BACKGROUND

**A.  The Chapter 11 Filings.**

1. On September 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court under chapter 11 of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their property as debtors-in-possession.

2. No trustee or creditors' committee have yet been appointed in these cases.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**B.  Background and Current Business Operations of the Debtors.**

4. The Debtors are limited liability companies and affiliates of one another. Mezzanine is the 100% owner and managing member of Partners, which owns real estate and improvements constituting the Sky Lodge in Park City, Utah. Holding is the 100% owner and managing member of Mezzanine. Michael Feder, representing Park City I, LLC, Philo Smith, Jr., representing the Philo Smith, Jr. Trust, and William Shoaf, representing CloudNine Resorts, LLC are the co-managers of Holding. The members of Holding are Park City I, LLC, Philo Smith Jr. Trust, Alchemy Ventures Trust, and CloudNine Resorts, LLC. Park City I, Philo Smith Jr. Trust and CloudNine Resorts, LLC constitute 61.25% of the membership interests of Holding. The remaining 38.75% of Holding is held by Alchemy Ventures Trust.

3

5. The Sky Lodge is a luxury boutique hotel located in the middle of historic Main Street in Old Town Park City. It is an ultra stylish resort hotel offering all of Park City's amenities plus a restaurant offering both casual and fine dining, a bar and lounge, a bakery, the spa Amatsu, and meeting and event venues and more.

6. The Sky Lodge is being sold as fractional ownership with a total of 176 eighth shares offered. There are 22 units in total. The 2 and 3 bedroom models range from 1260 to 2700 square feet for the penthouse model. Owners buy individual units and not just the rights to a stay. Cloud Nine Resorts, an affiliate of the Debtors, runs the homeowners association (HOA), manages the owner bookings and rotational intricacies of ownership. Each owner is guaranteed two ski weeks (mid Dec. – mid April) each year plus 21 other days throughout the year for their own use. Stays not used by the owner may be rented out by the hotel and proceeds are split equally with the owner.

**C.   Debt Structure.**

7. On March 30, 2006, Partners entered into a Loan (the "WestLB Senior Loan") and Security Agreement (collectively, the "Senior Loan Agreement") for the initial amount of $36,779,224[1] with WestLB AG ("WestLB") to purchase and develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060. The WestLB Senior Loan is secured by, among other things, security interests evidenced by the Construction and Interim Loan Deed of Trust With Security Agreement, Assignment of Leases and Rents and Fixture Filing, and a UCC Financing Statement, each filed in the Summit County, Recorder's Office, State of Utah. On February 15, 2008, at the direction and authorization of WestLB, as the

---

[1] The proceeds of the WestLB Senior Loan (along with the proceeds of the BayNorth Mezzanine Loan, as hereinafter defined) were used to purchase, develop and construct the Sky Lodge.

4

Administrative Agent, a partial principal repayment of $22,400,000 was made to WestLB from Real Estate Sales Escrow Funds[2] controlled by the Administrative Agent. The current balance of the WestLB Senior Loan is $14,379,224.

8. On March 30, 2006, Mezzanine entered into a Loan Agreement (the "Mezzanine Loan Agreement") in the initial amount of $11,250,000 (the "BayNorth Mezzanine Loan") with BayNorth Realty Fund VI, LP ("BayNorth") to develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060, which is owned by Partners. The BayNorth Mezzanine Loan is secured by a pledge of Holding's 100% interest in Mezzanine to BayNorth, and a UCC Financing Statement filed with the Secretary of State of Utah. On February 19, 2008, at the direction and authorization of WestLB, as the Administrative Agent, a $5,600,000 disbursement[3] from the Real Estate Sales Escrow Funds controlled by the Administrative Agent was made to BayNorth, which included a partial principal repayment and accrued interest. The partial repayment paid all current accrued interest and the remaining $1,646,871 was applied to the loan principal balance. The current balance of the BayNorth Mezzanine Loan including principal and accrued interest is $12,045,586.

9. On March 30, 2006, WestLB, as Senior Lender, and BayNorth, as Mezzanine Lender, entered into an intercreditor agreement (the "Intercreditor Agreement") to provide, <u>inter alia</u>, for the relative priority of the Senior Loan Agreement between WestLB and Partners,

---

[2] As units are sold, the proceeds are swept into various escrow accounts maintained at Wells Fargo Bank under the control of WestLB as the Administrative Agent for WestLB and BayNorth (hereinafter defined).

[3] This payment was incorrectly made and has led to (a) a dispute between WestLB and BayNorth under the Intercreditor Agreement (as hereinafter defined) for its return, (b) a failure of WestLB to extend the WestLB Senior Loan, (c) BayNorth alleging a default of the BayNorth Mezzanine Loan, (d) a failure by WestLB to release additional escrowed funds resulting in imposition of liens by contractors and foreclosure suits, and (d) the loss of pending sales.

SLC_454691.3

and the Mezzanine Loan Agreement between BayNorth and Mezzanine, and administration of both loans by WestLB as the administrative agreement.

10. The original term of the WestLB Senior Loan was for three years with two one-year extensions available to Partners. The initial term of the WestLB Senior Loan ended on March 29, 2009. On September 25, 2008, Partners formally notified WestLB of its request for a conversion of the WestLB Senior Loan into an Interim Loan, as stipulated in section 2.15 of the Senior Loan Agreement, which would extend the WestLB Senior Loan for an additional year.

**D.     Events Leading to Filing of Petitions.**

11. On March 4, 2009, WestLB issued a letter to Partners asserting that after reviewing the disposition of the Net Sales Proceeds from sales of real estate, that it, as the Senior Lender, had been underpaid from the $28,000,000 lender distribution that occurred in February of 2008. WestLB demanded that Partners remit immediately the sum of $4,899,104 to it. Partners denied such claim because the shortfall to WestLB was the direct result of WestLB, as the Administrative Agent, authorizing a payment of $5,600,000 out of the February 2008 lender distribution to the Mezzanine Lender BayNorth. This action was in clear violation of Section 9 of the Intercreditor Agreement; however, WestLB has denied responsibility for its actions as the Administrative Agent and has been attempting to get Bay North to return the funds received on February 19, 2008. To date, Bay North has wrongfully refused, which has created the current situation as more fully set forth herein.

12. On or about March 29, 2009, WestLB entered into a forbearance agreement with Partners (the "Forbearance Agreement"), while it attempted to get BayNorth to abide by the

6

Intercreditor Agreement and return the $5,600,000. Partners and its representative, Realty Financial Resources, understood that WestLB had met with BayNorth to demand the return of the $5,600,000. These efforts were not successful.

13. On May 5, 2009, BayNorth issued to Mezzanine a notice of default on the BayNorth Mezzanine Loan. This default notice was followed by a Notice of Acceleration and Demand for Payment issued by BayNorth on June 23, 2009. On July 28, 2009, a Notice of Sale was issued by BayNorth for the membership interest of Holding to be executed on September 16, 2009. There are no payment defaults under the BayNorth Mezzanine Loan nor are any alleged.

14. WestLB has also taken the position that any funds in the Real Estate Escrow Accounts are frozen. This action precluded the final approved payment to the general contractor, which was formally submitted to WestLB on February 5, 2009. Despite repeated requests by Partners to have this payment made from the escrowed funds, WestLB has not done so to date, resulting in liens being placed on the Sky Lodge property on March 16, 2009, despite continued requests by Partners for funding. On September 8, 2009, the general contractor gave Partners verbal confirmation that a foreclosure action had been filed.

15. The actions by WestLB and BayNorth effectively precluded Partners from having any ability to operate the business in a normal and effective manner. Due to these actions and the upcoming foreclosure sale of the membership interest in Holding by Bay North, Partners and its affiliates, Mezzanine and Holding, had no option but to file for protection under Chapter 11 so that the business can be restructured and can return to profitable operations.

7

**RELIEF REQUESTED**

16. The Debtors hereby seek to have the cases of Partners, Mezzanine and Holding jointly administered.

17. By this Motion, the Debtors request the joint administration of these chapter 11 cases with respect to purely administrative matters only, including a joint pleadings docket, a joint pleadings caption, and combined notices to creditors. The Debtors do not request substantive consolidation of the Debtors' estates at this time. The Debtors are closely and integrally related business entities that are collectively managed. In essence, the Sky Lodge is the sole business and asset of all the Debtors. Joint administration will expedite the cases and reduce the overall costs of administration for the Debtors and the Court.

**BASIS FOR RELIEF**

18. Since the Debtors' businesses are interrelated, their interest would best be served by an order of joint administration entered in the Debtors' cases in accordance with Bankruptcy Rule 1015(b). Entry of such an order would clearly result in reduced costs of administration, would facilitate administration of the Debtors' Chapter 11 cases and would eliminate duplicative filings with the Court of various administrative and substantive pleadings, applications and motions.

19. Bankruptcy Rule 1015 promotes the fair and efficient administration of related cases of affiliated debtors, while ensuring that no rights of individual creditors are unduly prejudiced. See, e.g., 9 Collier on Bankruptcy ¶ 1015.03 at 1015-6 (15th ed. rev. 2005). Courts have liberally allowed joint administration of related cases to promote procedural convenience and cost efficiencies. See, e.g., In re Cooper, No. 02-03566, 2003 Bankr. LEXIS 360, at *5

(Bankr. N.D. Iowa 2003) (holding, where there was "substantial overlap" in the cases, that "joint administration is appropriate to handle [the] cases in the most convenient and cost saving manner possible"); <u>In re McKenzie Energy Corp.</u>, 228 B.R. 854, 874 (Bankr. S.D. Tex. 1998); <u>In re Steury</u>, 94 B.R. 553, 553-54 (Bankr. N.D. Ind. 1988). As stated clearly in the official Advisory Committee Note to Bankruptcy Rule 1015:

> Joint administration as distinguished from consolidation may include combining the estates by using a single docket for the matters occurring in the administration, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other purely administrative matters that may aid in expediting the cases and rendering the process less costly.

1983 Advisory Committee Note to Fed. R. Bankr. P. 1015.

20. Joint administration is appropriate in this case because of the following facts:

  a. The Debtors are closely related business entities that are affiliates[4] of one another;

  b. Partners is managed by its wholly-owned member Mezzanine, which in turn is managed by its wholly owned member Holding;

  c. The Debtors utilize central payroll and maintain financial information on a consolidated basis;

  d. Joint administration of the estates would provide each creditor with notice of all matters relating to all of the Debtors, thereby insuring that creditors are fully informed of all matters potentially affecting their claims.

---

[4] Under Bankruptcy Code section 101(2), an affiliate is a "corporation 20 percent or more of whose outstanding voting securities are directly . . . owned . . . by an entity that directly . . . owns . . . 20 percent or more of the outstanding voting securities of the debtor." 11 U.S.C. § 101(2)(B).

9

SLC_454691.3

21. Joint administration will greatly reduce the cost of administering the Debtors' cases and would eliminate the substantial waste, unnecessary paperwork, duplication, and confusion that would otherwise be created by maintaining separate pleadings dockets for these related cases. Most motions and other pleadings filed in these cases will concern all of the Debtors. If such motions (and the related responses and other pleadings) were required to be filed separately in each affected Debtor's case, it is likely that the only material differences among each set of pleadings would be the caption. Thus, requiring each Debtor to file separate pleadings in each matter would entail considerable duplication and additional paperwork at substantial cost, without generating any additional benefit to creditors.

22. Joint administration of the Debtors' cases will also benefit creditors, because creditors who respond to motions affecting most or all of the Debtors, or who file their own motions affecting most or all of the Debtors, will not be forced to prepare and file multiple sets of papers that may be identical except for the captions.

23. Joint administration differs significantly from substantive consolidation, in which the assets and liabilities are pooled and, generally, the creditors of the separate entities share pro rata in the aggregate net value of the estates. See generally, In re Standard Brands Paint Co., 154 B.R. 563 (Bankr. C.D. Cal. 1993) (discussing substantive consolidation); In re I.R.C.C., Inc., 105 B.R. 237 (Bankr. S.D.N.Y. 1989) (same). Joint administration is merely procedural; each of the debtors' estates remains a separate legal entity, and creditors' individual rights with respect to each estate are preserved. See In re N.S. Garrott & Sons, 63 B.R. 189, 191 (Bankr. E.D. Ark. 1986); In re Blair, 226 B.R. 502, 505 (Bankr. D. Me. 1998). Thus, unlike administrative consolidation, joint administration does not create substantive rights. Consequently, in every

10

case, joint administration does not in itself prejudice the rights of any creditor. Nothing in this Motion is intended or should be construed as seeking substantive consolidation of any kind.

24. In short, jointly administering all of the Debtors' cases will avoid unnecessary duplication and paperwork without prejudicing any creditors' substantive rights.

25. The Debtors further request that such order direct that all pleadings, other than proofs of claim, relating to their cases: (1) bear a joint caption, substantially in the form of Exhibit "1" attached hereto, and (2) be maintained by the court clerk under a single pleadings docket.

26. No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1 authorizing (i) joint administration of the bankruptcy cases of Partners, Mezzanine and Holding under the case of Holding, which is Case Number 09-29905; and (ii) the Debtors to file consolidated monthly operating reports and granting such other and further relief as is just and proper.

DATED: September 14, 2009

            DURHAM JONES & PINEGAR, P.C.

         By: /s/ Steven J. McCardell
            Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
            Steven J. McCardell (smccardell@djplaw.com)(2144)
            DURHAM JONES & PINEGAR, P.C.
            111 East Broadway, Suite 900
            P.O. Box 4050
            Salt Lake City, UT 84110-4050
            Telephone: (801) 415-3000/Fax: (801) 415-3500

            and

11

        Michael V. Blumenthal (mblumenthal@crowell.com)
          (<u>pro</u> <u>hac</u> <u>vice</u> application pending)
        Steven B. Eichel (seichel@crowell.com)
         (<u>pro</u> <u>hac</u> <u>vice</u> application pending)
        CROWELL & MORING LLP
        590 Madison Avenue, 20th Floor
        New York, NY  10022
        Telephone:  (212) 223-4000/Fax:  (212) 223-4134

        Proposed Counsel for Debtors and Debtors in Possession

SLC_454691.3

# **EXHIBIT 1**

# **IN THE UNITED STATES BANKRUPTCY COURT**
# **FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | |
| EASY STREET HOLDING, LLC, *et al.*, | Bankruptcy Case No. 09-29905 |
| | Jointly Administered with Cases |
| Debtors. | 09-29907 and 09-29908 |
| Address: 201 Heber Avenue | Chapter 11 |
| Park City, UT 84060 | |
| | Honorable R. Kimball Mosier |
| Tax ID Numbers: | |
| 35-2183713 (Easy Street Holding, LLC), | |
| 20-4502979 (Easy Street Partners, LLC), and | |
| 84-1685764 (Easy Street Mezzanine, LLC) | |