Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (pro hac vice application pending)
Steven B. Eichel (seichel@crowell.com) (pro hac vice application pending)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | |
| | |
| EASY STREET HOLDING, LLC, *et al.*, | Bankruptcy Case No. 09-29905 |
| | Jointly Administered with Cases |
| Debtors. | 09-29907 and 09-29908 |
| | |
| Address:  201 Heber Avenue | Chapter 11 |
| Park City, UT 84060 | |
| | Honorable R. Kimball Mosier |
| Tax ID Numbers: | |
| 35-2183713 (Easy Street Holding, LLC), | |
| 20-4502979 (Easy Street Partners, LLC), and | **[FILED ELECTRONICALLY]** |
| 84-1685764 (Easy Street Mezzanine, LLC) | |
| | |

## MOTION OF EASY STREET PARTNERS, LLC FOR INTERIM AND
## FINAL ORDERS (i) AUTHORIZING USE OF CASH COLLATERAL PURSUANT
## TO 11 U.S.C. § 363 AND GRANTING ADEQUATE PROTECTION TO
## WEST LB, AG, AND (ii) SCHEDULING A FINAL HEARING PURSUANT TO
## BANKRUPTCY RULE 4001(b)

Easy Street Partners, LLC ("Partners" or the "Debtor"), one of the above- captioned debtors and debtors in possession herein[1], hereby moves this Court for entry of a interim and final orders: (i) authorizing the Debtor, pursuant to sections 105 and 363 of the United States Bankruptcy Code, to use cash collateral, including immediate access to, and utilization of, the Partners' Real Estate Sale Accounts (defined below), and to grant adequate protection to the Debtor's prepetition lender West LB, AG, as detailed herein; (ii) scheduling a final hearing (the "Final Hearing") on the Debtor's use of cash collateral for no earlier than fifteen days from the date hereof and approving notice with respect thereto; and (iii) pending the Final Hearing, authorizing the Debtor to use cash collateral, including funds contained in the Partners' Real Estate Sale Accounts,  on an interim basis in amounts as may be necessary to prevent immediate and irreparable harm to the Debtor's estate (the "Motion"), and respectfully represents as follows:

## RULE 4001(B) SUMMARY

The following summary is provided pursuant to Rule 4001(b)(1)(B):

Name of each entity with an interest in the cash collateral:  West LB, AG.

Purposes for the use of the cash collateral: Operating and administrative expenses.

Material terms, including duration of use:  Use as set forth in attached budget.

Interim: through final hearing (approx. 15 days).

Final:  through December 2009.

---

[1]Partners' case number is 09-29907.  The other two debtors in possession that have filed petitions in conjunction with Partners are Easy Street Holding, LLC ("Holding") Case No. 09-29905) and Easy Street Mezzanine, LLC ("Mezzanine") (Case No. 09-29908).  Partners, Holding and Mezzanine are collectively referred to hereinafter as the Debtors.  The Debtors' cases are jointly administered under Holding's case.

2

<u>Adequate protection to be provided</u>:  Replacement liens and payments out of unit sales.  West LB, AG will also (1) retain its existing first lien, (2) continue to be protected by an equity cushion exceeding $15 million (an equity cushion of more than 100%), and (3) continue to be protected by operations in the ordinary course.   Failure to continue operations would materially damage the value of West LB, AG's collateral.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.§§ 157 and 1334. This is a core proceeding pursuant to 28 U. S. C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**The Chapter 11 Filings.**

1.      On September 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court under chapter 11 of title 11 of the United States Code §§ 101, <u>et seq.</u> (the "Bankruptcy Code").  The Debtors continue to operate their business and manage their property as debtors-in-possession.

2.      No trustee or creditors' committee has been appointed in the Debtors' cases.

**Background and Current Business Operations of the Debtors.**

3.      The Debtors are limited liability companies and affiliates of one another. Mezzanine is the 100% owner and managing member of Partners, which owns real estate and improvements constituting the Sky Lodge in Park City, Utah.  Holding is the 100% owner and managing member of Mezzanine.  Michael Feder, representing Park City I, LLC, Philo Smith, Jr., representing the Philo Smith, Jr. Trust, and William Shoaf, representing CloudNine Resorts, LLC are the co-managers of Holding.  The members of Holding are Park City I, LLC, Philo

3

Smith Jr. Trust, Alchemy Ventures Trust, and CloudNine Resorts, LLC.  Park City I, Philo Smith

Jr. Trust and  CloudNine Resorts, LLC constitute 61.25% of the membership interests of

Holding.  The remaining 38.75% of Holding is held by Alchemy Ventures Trust.

4.      The Debtors maintain their corporate offices in 201 Heber Avenue, Park City,

Utah 84060, and currently employ approximately ninety-nine full-time and part-time employees

(excluding insiders).

5.      The Sky Lodge is a luxury boutique hotel located in the middle of historic Main

Street in Old Town Park City.  It is an ultra stylish resort hotel offering all of Park City's

amenities plus a restaurant offering both casual and fine dining, a bar and lounge, a bakery, the

spa Amatsu, and meeting and event venues and more.

6.      The Sky Lodge is being sold as fractional ownership with a total of 176 one-

eighth shares offered.  There are 22 units in total.  The 2 and 3 bedroom models range from 1260

to 2700 square feet for the penthouse model.  Owners buy individual units and not just the rights

to a stay.  Cloud Nine Resorts, an affiliate of the Debtors, runs the homeowners association

(HOA), manages the owner bookings and rotational intricacies of ownership.  Each owner is

guaranteed two ski weeks (mid Dec. – mid April) each year plus 21 other days throughout the

year for their own use.  Stays not used by the owner may be rented out by the hotel and proceeds

are split equally with the owner**.**

**Debt Structure.**

7.      On March 30, 2006, Partners entered into a Loan (the "WestLB Senior Loan")

and Security Agreement (collectively, the "Senior Loan Agreement") for the initial amount of

4

$36,779,224[2] with WestLB AG ("WestLB") to purchase and develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060.  The WestLB Senior Loan is secured by, among other things, security interests evidenced by the Construction and Interim Loan Deed of Trust With Security Agreement, Assignment of Leases and Rents and Fixture Filing, and a UCC Financing Statement, each filed in the Summit County, Recorder's Office, State of Utah. On February 15, 2008, at the direction and authorization of WestLB, as the Administrative Agent, a partial principal repayment of $22,400,000 was made to WestLB from Real Estate Sale Accounts[3] controlled by the Administrative Agent.  The current balance of the WestLB Senior Loan is $14,379,224.[4]

8.     On March 30, 2006, Mezzanine entered into a Loan Agreement (the "Mezzanine Loan Agreement") in the initial amount of $11,250,000 (the "BayNorth Mezzanine Loan") with BayNorth Realty Fund VI, LP ("BayNorth") to develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060, which is owned by Partners.  The BayNorth Mezzanine Loan is secured by a pledge of Holding's 100% interest in Mezzanine to BayNorth, and a UCC Financing Statement filed with the Secretary of State of Utah.  On February 19, 2008, at the direction and authorization of WestLB, as the Administrative Agent, a

---

[2]  The proceeds of the WestLB Senior Loan (along with the proceeds of the BayNorth Mezzanine Loan, as hereinafter defined) were used to purchase, develop and construct the Sky Lodge.

[3]  As units are sold, the proceeds are swept into various escrow accounts (the "Real Estate Sale Accounts"), maintained at Wells Fargo Bank under the control of WestLB as the Administrative Agent for WestLB and BayNorth (hereinafter defined).

[4]  At present, the Real Estate Sale Accounts are maintained on behalf of Partners at Wells Fargo Bank, N.A.:  Easy Street Partners, LLC Sky Lodge Sales Proceeds Account # 12997375 in the amount of $2,524,790 and Easy Street Partners, LLC, Sky Lodge Deposit Account # 12997367 in the amount of $689,877.  Additionally, there is one account maintained on behalf of Mezzanine, which bears account number 12954467 and is in the amount of $78,452.  The funds in the Real Estate Sale Accounts aggregate approximately $3.2 million.

5

$5,600,000 disbursement[5] from the Real Estate Sale Accounts controlled by the Administrative Agent was made to BayNorth, which included a partial principal repayment and accrued interest. The partial repayment paid all current accrued interest and the remaining $1,646,871 was applied to the loan principal balance.  It is the Debtors' position that the current balance of the BayNorth Mezzanine Loan including principal and accrued interest is $12,045,586.[6]

9.      On March 30, 2006, WestLB, as Senior Lender, and BayNorth, as Mezzanine Lender, entered into an intercreditor agreement (the "Intercreditor Agreement") to provide, inter alia, for the relative priority of the Senior Loan Agreement between WestLB and Partners, and the Mezzanine Loan Agreement between BayNorth and Mezzanine, and administration of both loans by WestLB as the administrative agreement.

10.     The original term of the WestLB Senior Loan was for three years with two one-year extensions available to Partners.  The initial term of the WestLB Senior Loan ended on March 29, 2009.  On September 25, 2008, Partners formally notified WestLB of its request for a conversion of the WestLB Senior Loan into an Interim Loan, as stipulated in section 2.15 of the Senior Loan Agreement, which would extend the WestLB Senior Loan for an additional year.

---

[5] This payment was incorrectly made and has led to, among other things (a) a dispute between WestLB and BayNorth under the Intercreditor Agreement (as hereinafter defined) for its return, (b) a failure of WestLB to extend the WestLB Senior Loan, (c) BayNorth alleging a default of the BayNorth Mezzanine Loan, (d) a failure by WestLB to release additional funds from the Real Estate Sale Accounts resulting in imposition of liens by contractors and foreclosure suits, and (d) the loss of pending sales.

[6] BayNorth claims a substantially greater amount in excess of $31 million, based upon disputed assertions of rights under a yield maintenance provision and disputed calculations, which, among other things, fail to account for the $5.6 million disbursement of BayNorth.  This dispute does not affect the present motion.  Bay North does not have an interest, within the meaning of Bankruptcy Code Section 363(c), in the cash collateral proposed to be used.

**Events Leading to Filing of Petitions.**

11.      On March 4, 2009, WestLB issued a letter to Partners asserting that after
reviewing the disposition of the Net Sales Proceeds from sales of real estate, that it, as the Senior
Lender, had been underpaid from the $28,000,000 lender distribution that occurred in February
of 2008.  WestLB demanded that Partners remit immediately the sum of $4,899,104 to it.
Partners denied such claim because the shortfall to WestLB was the direct result of WestLB, as
the Administrative Agent, authorizing a payment of $5,600,000 out of the February 2008 lender
distribution to the Mezzanine Lender BayNorth.  This payment was in clear violation of Section
9 of the Intercreditor Agreement; however, WestLB has denied responsibility for its actions as
the Administrative Agent and has been attempting to get Bay North to return the funds received
on February 19, 2008.  To date, Bay North has wrongfully refused, which has created the current
situation as more fully set forth herein.

12.      On or about March 29, 2009, WestLB entered into a forbearance agreement with
Partners (the "Forbearance Agreement"), while it attempted to get BayNorth to abide by the
Intercreditor Agreement and return the $5,600,000.  During this period, Partners and its
representatives, Realty Financial Resources, understood that WestLB had met with Bay North to
demand the return of the $5,600,000.   These efforts were not successful.

13.      On May 5, 2009, BayNorth issued to Mezzanine a notice of default on the
BayNorth Mezzanine Loan. This default notice was followed by a Notice of Acceleration and
Demand for Payment issued by BayNorth on June 23, 2009.  On July 28, 2009, a Notice of Sale
was issued by BayNorth for the 100% membership interest of Holding in Mezzanine to be sold at
foreclosure  on September 16, 2009.  There are no payment defaults under the BayNorth
Mezzanine Loan nor are any alleged.

14.      WestLB has also taken the position that any funds in the Real Estate Sale
Accounts are frozen. This action precluded the final approved payment to the general contractor,
which was formally submitted to WestLB on February 5, 2009.  Despite repeated requests by
Partners to have this payment made from the Real Estate Sale Accounts, WestLB has not done so
to date, resulting in liens being placed on the Sky Lodge property on March 16, 2009, despite
continued requests by Partners for funding.  The mechanics liens, which are junior in priority to
WestLB's security interests, are in the amount of approximately $1.5 million.  On September 8,
2009, the general contractor gave Partners verbal confirmation that a foreclosure action had been
filed.

15.      The actions by WestLB and BayNorth effectively precluded Partners from having
any ability to operate the business in a normal and effective manner.  Due to these actions and
the upcoming foreclosure sale of the membership interest in Holding by Bay North, Partners and
its affiliates, Mezzanine and Holding, had no option but to file for protection under Chapter 11 so
that the business can be restructured and can return to profitable operations.

16.      As the Debtors head into late fall and winter, the daily operations of the hotel will
become cash flow positive.  The projections discussed below demonstrate that the hotel will be
cash flow positive starting in December 2009.  Additionally, the first quarter of 2010 will
constitute the most profitable months at the Sky Lodge during the height of the ski season.

17.      Debtors intend to file a plan of reorganization by the end of 2009 to effectively
reorganize in a manner to maximize value for all of their constituents which will be in the best
interests of their creditors, members, employees, Unit Owners and other parties in interest.

SLC_455257

## RELIEF REQUESTED

18.　　By this Motion, Partners seeks entry of an Order: (i) authorizing Partners, pursuant to section 363 of the United States Bankruptcy Code, to (A) use cash collateral and to grant adequate protection to Partner's prepetition lender detailed herein, and (B) utilize the Real Estate Sale Accounts to fund operations and to assist in Partners' reorganization efforts ; (ii) scheduling a final hearing (the "Final Hearing") on Partners' use of cash collateral for no earlier than fifteen days from the date hereof and approving notice with respect thereto; and (iii) pending the Final Hearing, authorizing Partners to use cash collateral on an interim basis in amounts as may be necessary to prevent immediate and irreparable harm to the estate

## PARTNERS' NEED TO USE CASH COLLATERAL

19.　　In order for Partners to proceed with its efforts to reorganize its affairs and those of its affiliated Debtors, Partners requires sufficient working capital through access to Partners' revenues and the Real Estate Sale Accounts.  Partners will require the use of cash collateral in order to fund operations and pursue its reorganization efforts.

20.　　All revenues derived from hotel operations are generally paid and swept into the Sky Lodge Lock Box Account, maintained at Wells Fargo, N.A., Account # 2679764676.  On a weekly basis, WestLB would transfer funds from the Sky Lodge Lock Box Account into the Partners' Operating Account, maintained at Wells Fargo, N.A., Account # 2679764668, to fund the various operating expenses delineated in the Budget annexed hereto as **Exhibit 1** (the "Budget").  As of September 11, 2009, after having advanced sufficient funds to satisfy the most recent payroll obligations and certain outstanding checks, WestLB has ceased advancing to Partners or its affiliated Debtors any funds from the Sky Lodge Lock Box Account.  Without access to funds from the Sky Lodge Lock Box Account, Partners will not have any funds with

9

which to operate Sky Lodge's business and it will be forced to shut down precipitously.
Cessation of the business will result in irreparable harm to the Debtors' various constituent
creditors, members, employees, customers, vendors, Unit Owners and other parties in interest.

21.    The Debtors have prepared a detailed Budget, annexed hereto as **Exhibit 1**, which
details, *inter alia*, the Debtors' projected costs and expenses from the Petition Date through
December 2009 in connection with operating the Sky Lodge.  The Debtors' anticipated expenses
during that period, as set forth in the Budget, will be in the amount of approximately $1,436,962.
As reflected in the Budget, without funding in addition to the revenue generated by the Sky
Lodge operations, for the period from the Petition Date through December 2009, the Sky Lodge
will operate at cumulative cash deficit of $440,038.[7]  Of immediate concern is the projected cash
deficit of $110,824 from the Petition Date through September 30, 2009, which is the reason
emergency relief for utilization of the Real Estate Sale Accounts is necessary.

22.    Notwithstanding the foregoing, in December 2009, with the commencement  of
the ski season, the Sky Lodge will generate positive cash flow of $102,955.  This is the start of a
positive seasonal trend and beginning in the first quarter of 2010, during the winter months that
are the height of the ski season, the Sky Lodge will generate significant positive cash flow.

23.    Partners anticipates that the projected operating loss for the period from the
Petition Date through the end of 2009 will be ameliorated by access to the Real Estate Sale
Accounts which aggregate approximately $3.2 million.  Use of funds in the Real Estate Sale
Accounts will also provide crucial  liquidity to offset any short term cash deficits under the

---

[7] Had sales of fractional units not ceased due to the filing of mechanics' liens, Partners would be cash flow
positive and would be profitable throughout this period.

Budget and provide the funds necessary to operate the Sky Lodge which will ultimately result in the Debtors' effective reorganization.

24.     Debtors are also in the process of negotiating debtor in possession financing ("DIP Financing") and are optimistic that they will shortly procure a commitment for DIP Financing which will supplement the Debtors' cash flow needs.

25.     Without the use of cash collateral, including access to the revenues generated from operations of the Sky Lodge and the Real Estate Sale Accounts, Partners will be unable to proceed with the implementation of a restructuring and reorganization in the Bankruptcy Court, and could be forced to liquidate its assets, which would have a devastating effect on the Debtors, their creditors, their members, Unit Owners and other parties in interest.  Partners and its affiliated Debtors anticipate that such a result would cause a tremendous loss in value, which translates into a significant loss to many of the Debtors' stakeholders.  The Debtors believe that the true value of their assets are inseparably tied to their continuing operations as, *inter alia*, a hotel, resort and fractional condominiums, as opposed to the liquidation value of the real and personal property.

## CASH COLLATERAL AND ADEQUATE PROTECTION

26.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral without the consent of the secured party or court approval. 11 U. S. C. § 363(c)(2).  Pursuant to section 363(e) of the Bankruptcy Code, upon request of an entity that has an interest in property used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest 11 U.S.C. § 363(e). Section 364(d) of the Bankruptcy Code provides that a debtor may obtain credit secured by a senior or equal lien if

11

an existing secured creditor's interest in the collateral security is adequately protected. 11 U.S.C.

§ 364(d).

27.     What constitutes adequate protection must be decided on a case-by-case basis. *See
In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir.

1985). The purpose of the adequate protection provisions in the Bankruptcy Code is to protect a

secured creditor from the diminution in the value of its interest in the particular collateral during

the period of use. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v.
Production Credit Assoc. and Federal Land Bank,* 104 B.R. 824 (E.D. Mich. 1989); *In re Beker
Indus. Corp*., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp*., 116 B.R.

338, 343 (Bankr. D. Mass. 1990).

28.     WestLB has and will retain a first lien on real property and the proceeds thereof.

Because WestLB is secured by a first priority lien on all of Partners' assets and proceeds thereof,

it is substantially overcollateralized.  It is beyond dispute by any constituents in Partners'

bankruptcy case that Partners' assets--and WestLB's collateral--are worth in excess of $30

million.  Thus, WestLB is overcollateralized by an equity cushion of in excess of $15 million, or

by more than 100%.  The only other secured creditors with liens against Partners' property are

the mechanics lienors who hold claims in the approximate amount of $1.5 million.  Thus, the

mechanics lienors are also substantially overcollateralized.  Moreover, sufficient funds exist in

the Real Estate Sale Accounts well in excess of Partners' request to use cash collateral to pay the

mechanics' liens.

29.     In addition to being overcollateralized by an equity cushion of no less than 100%

of the value of its lien, WestLB's first priority lien is also adequately protected by the Real Estate

12

Sale Accounts in an amount of approximately $3.2 million.  Additionally, the funding and

continuation of operations will further enhance the value of the Sky Lodge and ensure that there

will be no diminution in the value of WestLB's collateral during the pendency of these

Chapter 11 cases.

30.    As further adequate protection, Partners will grant WestLB replacement liens in

any postpetition revenues generated in connection with the continued operation of the Sky Lodge

and will, of course, pay down the WestLB loan further upon the sale of any units.[8]

31.    Partners shall continue to adhere to all reporting requirements under the West LB

Loan, and will also continue to maintain the collateral, including the payment of insurance

thereon, subsequent to the Petition Date.

## INTERIM APPROVAL SHOULD BE GRANTED

32.    Rule 4001(b) of the Bankruptcy Rules provides that a final hearing on a motion to

use cash collateral pursuant to section 363 may not be commenced earlier than fifteen (15) days

after service of such motion. Upon request, however, the court is empowered to conduct a

preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent

necessary to avoid immediate and irreparable harm to a debtor's estate.

33.    Pending the Final Hearing, the Court may authorize the requested relief if (i) such

relief is necessary to avoid immediate and irreparable harm, including the threatened loss of a

business, and (ii) Partners establishes a reasonable likelihood of proving that the WestLB's

interests will be adequately protected under section 363(e) of the Bankruptcy Code. See, e.g., *In

re Ames Dep't Stores*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990).

---

[8] As and when the Debtor's business stabilizes as is projected, Partners intends to make a further motion
seeking authority to make interest and debt service payments to West LB.

SLC_455257

34.     In accordance with Bankruptcy Rule 4001(b), Partners requests that the Court conduct an expedited preliminary hearing on the Motion (the "Preliminary Hearing") and authorize Partners to (i) use cash collateral in accordance with the Budget to avoid immediate and irreparable harm and prejudice to Partners' estate and all parties in interest, and (ii) utilize and expend funds in the Real Estate Sale Accounts.

35.     Partners has an urgent and immediate need to use cash collateral, including the Real Estate Sale Accounts, in order to continue to operate the resort and implement a plan of reorganization.  Absent authorization from the Court to use cash collateral on an interim basis, Partners, its property and its various stakeholders will be irreparably harmed pending a final hearing on the Motion.

36.     Partners is unable to obtain unsecured credit or debt allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code in an amount sufficient and readily available to maintain ongoing operations. In the absence of interim authority to use cash collateral, Partners' goal of pursuing a chapter 11 case to restructure its business as a going concern, while maintaining value for the benefit of creditors, employees and other stakeholders, will almost certainly fail. In these circumstances, the granting of the relief requested in the Motion is warranted.

## NOTICE AND PRIOR MOTIONS

37.     No trustee, examiner, or creditors committee has been appointed in the Debtors' chapter l I cases.  Notice of this Motion has been given to the United States Trustee for the District of Utah, counsel for the Debtors' prepetition secured lenders, and the Debtors' twenty (20) largest unsecured creditors.  Under the circumstances, Partners submits that no further notice is necessary or required.

14

SLC_455257

38.     No previous request for the relief sought herein has been made to this or any other

court.

WHEREFORE, Partners respectfully requests entry of an order granting the

relief requested herein and such other and further relief as this Court deems just and proper.  In

accordance with Rule 4001(b)(1)(A), a proposed form of order is submitted herewith as

**Exhibit 2.**

DATED:  September 15, 2009

DURHAM JONES & PINEGAR, P.C.

By:  /s/  Steven J. McCardell
Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
Steven J. McCardell (smccardell@djplaw.com)(2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

and

Michael V. Blumenthal (mblumenthal@crowell.com)
   (pro hac vice application pending)
Steven B. Eichel (seichel@crowell.com)
   ( pro hac vice application pending)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in
Possession

SLC_455257

# EXHIBIT 1
# TO CASH COLLATERAL MOTION

# BUDGET

SLC_455257

**EASY STREET PARTNERS**
BUDGET 2009 - September to December

| | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|
| **SKY LODGE HOTEL OPERATIONS** | | | | | |
| Projected Occupancy | 48.1% | 38.4% | 40.8% | 57.9% | 48.0% |
| Transient Occupancy | 34.7% | 27.7% | 33.3% | 55.0% | 35.9% |
| Owner Occupancy | 13.3% | 10.8% | 7.5% | 2.8% | 12.1% |
| Room Nights Occupied | 476 | 393 | 404 | 592 | 5,768 |
| ADR | $275.00 | $275.00 | $237.12 | $691.03 | $142.69 |
| % of Project Sold Out | 64.8% | 64.8% | 64.8% | 64.8% | |
| **REVENUE** | | | | | |
| Rooms Revenue | 105,000 | 65,340 | 98,010 | 348,480 | 616,830 |
| F&B Revenue | 125,000 | 84,180 | 95,220 | 234,000 | 538,400 |
| Spa Revenue | 11,000 | 14,820 | 13,680 | 31,920 | 71,420 |
| Sky Club Memberships | 23,760 | 23,760 | 23,760 | 23,760 | 95,040 |
| Zoom Rental Revenue | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| **TOTAL REVENUE** | 274,760 | 198,100 | 240,670 | 648,160 | 1,361,690 |
| **EXPENSES** | | | | | |
| Rooms Division | 66,500 | 63,712 | 71,060 | 127,519 | 328,791 |
| Food & Beverage | 136,829 | 116,122 | 111,996 | 201,224 | 566,171 |
| Spa | 12,511 | 14,398 | 15,852 | 38,792 | 81,553 |
| Facilities | 35,000 | 40,850 | 48,000 | 44,928 | 168,778 |
| HOA Credit - Facilities | (57,053) | (57,053) | (57,053) | (57,053) | (228,212) |
| HOA Credit - Other | - | - | - | - | - |
| Sales & Marketing | 60,284 | 70,284 | 74,584 | 57,049 | 262,202 |
| Administration | 42,600 | 35,000 | 38,800 | 67,400 | 183,800 |
| Property Taxes | - | - | 43,624 | | 43,624 |
| Management Fees | 9,617 | 6,934 | 8,423 | 22,686 | 47,659 |
| **TOTAL EXPENSES** | 306,288 | 290,247 | 355,287 | 502,545 | 1,454,366 |
| **HOTEL OPERATING PROFIT/(LOSS)** | (31,528) | (92,147) | (114,617) | 145,615 | (92,676) |
| | | | | | |
| **EASY STREET PARTNERS OPERATING EXPENSES** | | | | | |
| Developer HOA | | | | | |
| Residential HOA Dues | | 87,747 | | | 87,747 |
| Commercial HOA Dues | | 95,863 | | | 95,863 |
| Hotel Rental Owner Commissions | 24,500 | 8,064 | 9,732 | 30,660 | 72,956 |
| Office Rent | 12,000 | 12,000 | 12,000 | 12,000 | 48,000 |
| State & Local Sales Taxes | 56,000 | | | | 56,000 |
| TOTAL ESP OPERATING EXPENSES | 92,500 | 203,674 | 21,732 | 42,660 | 360,566 |
| | | | | | |
| **CONSOLIDATED OPERATING PROFIT (LOSS)** | (124,028) | (295,821) | (136,349) | 102,955 | (453,242) |

# EXHIBIT 2
## TO CASH COLLATERAL MOTION

## PROPOSED ORDER SUBMITTED PURSUANT TO RULE 4001(b)(1)(A)

*Proposed order prepared and submitted by*:
Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (pro hac vice application pending)
Steven B. Eichel (seichel@crowell.com) (pro hac vice application pending)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| EASY STREET HOLDING, LLC, *et al.*, ) | Bankruptcy Case No. 09-29905 |
| ) | Jointly Administered with Cases |
| Debtors. ) | 09-29907 and 09-29908 |
| ) | |
| Address:  201 Heber Avenue ) | Chapter 11 |
| Park City, UT 84060 ) | |
| ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: ) | |
| 35-2183713 (Easy Street Holding, LLC), ) | |
| 20-4502979 (Easy Street Partners, LLC), and ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) ) | |

**[PROPOSED] INTERIM ORDER ON MOTION OF EASY STREET PARTNERS, LLC
FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH
COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND GRANTING ADEQUATE
PROTECTION TO WEST LB, AG, AND (II) SCHEDULING A FINAL HEARING
PURSUANT TO BANKRUPTCY RULE 4001(b)**

SLC_455403

On September __, 2009, the Motion of Easy Street Partners, LLC ("Partners" or the

"Debtor"), for entry of an Interim Order: (i) authorizing the Debtor, pursuant to sections 105 and

363 of the United States Bankruptcy Code, to use cash collateral, including immediate access to,

and utilization of, the Partners' Real Estate Sale Accounts (as defined in the Motion), and to

grant adequate protection to the Debtor's prepetition lender West LB, AG; (ii) scheduling a final

hearing (the "Final Hearing") on the Debtor's use of cash collateral and approving notice with

respect thereto; and (iii) pending the Final Hearing, authorizing the Debtor to use cash collateral,

including funds contained in the Partners' Real Estate Sale Accounts,  on an interim basis in

amounts as may be necessary to prevent immediate and irreparable harm to the Debtor's estate

(the "Motion"), came before the Court for hearing.  Appearances were made as noted on the

record of the hearing.  The Court made its findings and conclusions on the record of the hearing,

which findings and conclusions are incorporated into this Order by this reference.

Now, therefore, IT IS HEREBY ORDERED:

1.      The Motion is granted as set forth herein.

2.      The Debtor is hereby authorized to use cash collateral (whether held in

restricted accounts or otherwise) through and including the date of the final hearing on the

Motion in accordance with the budget submitted with the Motion and subject to the terms of this

Order.

3.      The following adequate protection is provided to West LB, AG to secure

all amounts used by the Debtor pursuant to this Order and otherwise to protect West LB, AG's

interest in property:

2

SLC_455403

       a.     West LB, AG, is granted a replacement lien in any postpetition revenues generated in connection with the continued operation of the Debtor's property, to the same extent, and with the same validity and priority, held by West LB, AG's prepetition lien.

       b.     The Debtor shall pay to West LB, AG its portion of unit sales, as required by the Debtor's agreements with West LC.

       c.     The Debtor shall continue to adhere to all reporting requirements under its loan documents with West LB, AG.

       d.     The Debtor shall continue to maintain West LB, AG's collateral, including by paying insurance thereon, subsequent to the date of the filing of the Debtor's Chapter 11 petition.

    4.     A final hearing on the Motion shall be held on _____ \_\_, 2009, at \_\_:\_\_ \_\_.m.

--------------------END OF ORDER---------------------