Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (pro hac vice application pending)
Steven B. Eichel (seichel@crowell.com) (pro hac vice application pending)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY   10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | |
| EASY STREET HOLDING, LLC, *et al.*, | Bankruptcy Case No. 09-29905 |
| | Jointly Administered with Cases |
| | 09-29907 and 09-29908 |
| Address:  201 Heber Avenue | Chapter 11 |
| Park City, UT 84060 | |
| | Honorable R. Kimball Mosier |
| Tax ID Numbers: | |
| 35-2183713 (Easy Street Holding, LLC), | |
| 20-4502979 (Easy Street Partners, LLC), and | **[FILED ELECTRONICALLY]** |
| 84-1685764 (Easy Street Mezzanine, LLC) | |

**MOTION FOR ORDER PURSUANT TO 11 U.S.C § 366 (I) PROHIBITING UTILITIES
FROM ALTERING, REFUSING OR DISCONTINUING SERVICES TO, OR
DISCRIMINATING AGAINST THE DEBTORS; (II) PROVIDING THAT A SINGLE
DEPOSIT FOR ALL THE DEBTORS' UTILITIES SHALL CONSTITUTE
"ADEQUATE ASSURANCE OF FUTURE PAYMENT;" AND (III) ESTABLISHING
PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE**

SLC_454701.2

Easy Street Partners, LLC ("Partners"), Easy Street Mezzanine, LLC ("Mezzanine"), and Easy Street Holding, LLC ("Holding"), debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby request entry of an order (the "Order") pursuant to section 366 of title 11 of the United States Code (the "Bankruptcy Code"): (i) prohibiting the Debtors' utility service providers (as more fully described below, the "Utilities") from altering, refusing, discontinuing service to, or discriminating against, the Debtors; (ii) providing that the Debtors' creation of a segregated account in favor of the Utilities, in an amount equal to one average month of the Debtors' collective payments to the Utilities provides the Utilities "adequate assurance of payment" within the meaning of Bankruptcy Code section 366; and (iii) establishing procedures for determining requests by Utilities for additional assurance.

This Motion is based on the points and authorities below, the evidence contained in the "Declaration of William Shoaf in Support of First Day Motions" (the "Shoaf Declaration") filed on September 14, 2009, the record in these cases, and the arguments, evidence and representations that may be presented at or prior to the hearing on this Motion.

## BACKGROUND

**A.     The Chapter 11 Filings.**

1.     On September 14, 2009, (the "Petition Date"), each of the Debtors filed in this Court a voluntary petition under chapter 11 of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their property as debtors-in-possession.

2.     No trustee or creditors' committee have yet been appointed in these cases.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**B.    Background and Current Business Operations of the Debtors.**

4. The Debtors are limited liability companies and affiliates of one another. Mezzanine is the 100% owner and managing member of Partners, which owns real estate and improvements constituting the Sky Lodge in Park City, Utah. Holding is the 100% owner and managing member of Mezzanine. Michael Feder, representing Park City I, LLC, Philo Smith, Jr., representing the Philo Smith, Jr. Trust, and William Shoaf, representing CloudNine Resorts, LLC are the co-managers of Holding. The members of Holding are Park City I, LLC, Philo Smith Jr. Trust, Alchemy Ventures Trust, and CloudNine Resorts, LLC. Park City I, Philo Smith Jr. Trust and CloudNine Resorts, LLC constitute 61.25% of the membership interests of Holding. The remaining 38.75% of Holding is held by Alchemy Ventures Trust.

5. The Sky Lodge is a luxury boutique hotel located in the middle of historic Main Street in Old Town Park City. It is an ultra stylish resort hotel offering all of Park City's amenities plus a restaurant offering both casual and fine dining, a bar and lounge, a bakery, the spa Amatsu, and meeting and event venues and more.

6. The Sky Lodge is being sold as fractional ownership with a total of 176 eighth shares offered. There are 22 units in total. The 2 and 3 bedroom models range from 1260 to 2700 square feet for the penthouse model. Owners buy individual units and not just the rights to a stay. Cloud Nine Resorts, an affiliate of the Debtors, runs the homeowners association (HOA), manages the owner bookings and rotational intricacies of ownership. Each owner is guaranteed two ski weeks (mid Dec. – mid April) each year plus 21 other days throughout the year for their

3

own use. Stays not used by the owner may be rented out by the hotel and proceeds are split equally with the owner.

### C. Debt Structure.

7. On March 30, 2006, Partners entered into a Loan (the "WestLB Senior Loan") and Security Agreement (collectively, the "Senior Loan Agreement") for the initial amount of $36,779,224[1] with WestLB AG ("WestLB") to purchase and develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060. The WestLB Senior Loan is secured by, among other things, security interests evidenced by the Construction and Interim Loan Deed of Trust With Security Agreement, Assignment of Leases and Rents and Fixture Filing, and a UCC Financing Statement, each filed in the Summit County, Recorder's Office, State of Utah. On February 15, 2008, at the direction and authorization of WestLB, as the Administrative Agent, a partial principal repayment of $22,400,000 was made to WestLB from Real Estate Sales Escrow Funds[2] controlled by the Administrative Agent. The current balance of the WestLB Senior Loan is $14,379,224.

8. On March 30, 2006, Mezzanine entered into a Loan Agreement (the "Mezzanine Loan Agreement") in the initial amount of $11,250,000 (the "BayNorth Mezzanine Loan") with BayNorth Realty Fund VI, LP ("BayNorth") to develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060, which is owned by Partners. The

---

[1] The proceeds of the WestLB Senior Loan (along with the proceeds of the BayNorth Mezzanine Loan, as hereinafter defined) were used to purchase, develop and construct the Sky Lodge.

[2] As units are sold, the proceeds are swept into various escrow accounts maintained at Wells Fargo Bank under the control of WestLB as the Administrative Agent for WestLB and BayNorth (hereinafter defined).

4

BayNorth Mezzanine Loan is secured by a pledge of Holding's 100% interest in Mezzanine to BayNorth, and a UCC Financing Statement filed with the Secretary of State of Utah. On February 19, 2008, at the direction and authorization of WestLB, as the Administrative Agent, a $5,600,000 disbursement[3] from the Real Estate Sales Escrow Funds controlled by the Administrative Agent was made to BayNorth, which included a partial principal repayment and accrued interest. The partial repayment paid all current accrued interest and the remaining $1,646,871 was applied to the loan principal balance. The current balance of the BayNorth Mezzanine Loan including principal and accrued interest is $12,045,586.[4]

9. On March 30, 2006, WestLB, as Senior Lender, and BayNorth, as Mezzanine Lender, entered into an intercreditor agreement (the "Intercreditor Agreement") to provide, <u>inter alia</u>, for the relative priority of the Senior Loan Agreement between WestLB and Partners, and the Mezzanine Loan Agreement between BayNorth and Mezzanine, and administration of both loans by WestLB as the administrative agreement.

10. The original term of the WestLB Senior Loan was for three years with two one-year extensions available to Partners. The initial term of the WestLB Senior Loan ended on

---

[3] This payment was incorrectly made and has led to, among other things, (a) a dispute between WestLB and BayNorth under the Intercreditor Agreement (as hereinafter defined) for its return, (b) a failure of WestLB to extend the WestLB Senior Loan, (c) BayNorth alleging a default of the BayNorth Mezzanine Loan, (d) a failure by WestLB to release additional escrowed funds resulting in imposition of liens by contractors and foreclosure suits, and (d) the loss of pending sales.

[4] BayNorth claims a substantially greater amount in excess of $31 million, based upon disputed assertions of rights under a yield maintenance provision and disputed calculations, which, among other things, fail to account for the $5.6 million disbursement of BayNorth. This dispute does not affect the present motion. Bay North does not have an interest, within the meaning of Bankruptcy Code Section 363(c), in the cash collateral proposed to be used.

5

March 29, 2009. On September 25, 2008, Partners formally notified WestLB of its request for a conversion of the WestLB Senior Loan into an Interim Loan, as stipulated in section 2.15 of the Senior Loan Agreement, which would extend the WestLB Senior Loan for an additional year.

**D.     Events Leading to Filing of Petitions.**

11.     On March 4, 2009, WestLB issued a letter to Partners asserting that after reviewing the disposition of the Net Sales Proceeds from sales of real estate, that it, as the Senior Lender, had been underpaid from the $28,000,000 lender distribution that occurred in February of 2008. WestLB demanded that Partners remit immediately the sum of $4,899,104 to it. Partners denied such claim because the shortfall to WestLB was the direct result of WestLB, as the Administrative Agent, authorizing a payment of $5,600,000 out of the February 2008 lender distribution to the Mezzanine Lender BayNorth. This action was in clear violation of Section 9 of the Intercreditor Agreement; however, WestLB has denied responsibility for its actions as the Administrative Agent and has been attempting to get Bay North to return the funds received on February 19, 2008. To date, Bay North has wrongfully refused, which has created the current situation as more fully set forth herein.

12.     On or about March 29, 2009, WestLB entered into a forbearance agreement with Partners (the "Forbearance Agreement"), while it attempted to get BayNorth to abide by the Intercreditor Agreement and return the $5,600,000. Partners and its representative, Realty Financial Resources, understood that WestLB had met with BayNorth to demand the return of the $5,600,000. These efforts were not successful.

13.     On May 5, 2009, BayNorth issued to Mezzanine a notice of default on the BayNorth Mezzanine Loan. This default notice was followed by a Notice of Acceleration and Demand for Payment issued by BayNorth on June 23, 2009. On July 28, 2009, a Notice of Sale

was issued by BayNorth for the membership interest of Holding to be executed on September 16, 2009. There are no payment defaults under the BayNorth Mezzanine Loan nor are any alleged.

14. WestLB has also taken the position that any funds in the Real Estate Escrow Accounts are frozen. This action precluded the final approved payment to the general contractor, which was formally submitted to WestLB on February 5, 2009. Despite repeated requests by Partners to have this payment made from the escrowed funds, WestLB has not done so to date, resulting in liens being placed on the Sky Lodge property on March 16, 2009, despite continued requests by Partners for funding. On September 8, 2009, the general contractor gave Partners verbal confirmation that a foreclosure action had been filed.

15. The actions by WestLB and BayNorth effectively precluded Partners from having any ability to operate the business in a normal and effective manner. Due to these actions and the upcoming foreclosure sale of the membership interest in Holding by Bay North, Partners and its affiliates, Mezzanine and Holding, had no option but to file for protection under Chapter 11 so that the business can be restructured and can return to profitable operations.

**E.     The Utilities.**

16. In connection with their ongoing business operations, the Debtors currently obtain electricity, natural gas, water, telephone, internet and other similar services ("Utility Services")[5] from approximately eight (8) companies (the "Utilities"). If Utility Services to the Debtors were disrupted, even for a brief period, the Debtors could not operate, and the effect on the Sky Lodge

---

[5] The Bankruptcy Code does not define "utility," but the Debtors believe that all of the Utilities qualify as a "utility" within the meaning of Bankruptcy Code section 366. Notwithstanding the above, the Debtors reserve the right to assert that any of the entities listed on Exhibit 1 as well as other entities that claim to be utilities are not a utility within the meaning of section 366.

7

hotel and its unit owners, would be devastating and jeopardize the Debtors' ability to reorganize and to maximize value for their creditors and equity security holders.

17. Attached hereto as **Exhibit 1** is a list of the Utilities that the Debtors have identified that are currently providing Utility Services to the Debtors. Pursuant to this Motion, the Debtors are seeking relief as to all Utilities, and not just those identified in **Exhibit 1**. To the extent necessary, the Debtors will supplement the list of Utilities to add Utilities not included on **Exhibit 1** as soon such Utilities are identified, by: (i) serving notice and a copy of the order granting this Motion on the Utility; and (ii) filing a supplement to **Exhibit 1** with the Court.

18. Prior to the commencement of these chapter 11 cases, the Debtors generally paid all of their utility bills in a regular manner. The Debtors' monthly utility bills average approximately $24,092.

## RELIEF REQUESTED

19. Through the Motion, the Debtors request entry of an Order pursuant to Bankruptcy Code section 366: (i) prohibiting the Utilities from altering, refusing, discontinuing service to, or discriminating against, the Debtors based on the commencement of these cases, or any prepetition debt; (ii) determining that the Debtors' creation of a segregated account in favor of the Utilities, in an amount equal to one average month of the Debtors' collective payments to the Utilities, provides the Utilities "adequate assurance of payment" within the meaning of Bankruptcy Code section 366; and (iii) authorizing the Debtors to supplement the list of Utilities in **Exhibit 1** attached hereto, to add Utilities not listed on **Exhibit 1** but subsequently discovered and establishing a procedure for processing objections from subsequently discovered Utilities. As demonstrated below, such relief is necessary and appropriate in these chapter 11 cases.

8

**BASIS FOR RELIEF**

A. **Bankruptcy Code Section 366.**

20. Pursuant to Bankruptcy Code section 366, a utility may not alter, refuse, or discontinue services to, or discriminate against, a debtor solely on the basis of the commencement of the bankruptcy case or the debtor's failure to pay a prepetition debt, except as provided in section 366(b) and (c). 11 U.S.C. § 366(a). Bankruptcy Code section 366 is intended to apply to entities providing electricity, natural gas, water, and/or telephone services, as well as any other entity that supplies services that cannot be readily obtained or replaced elsewhere, or which has a monopoly with respect to the services it provides the debtor. As explained by the legislative history,

> [Section 366] is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.

H.R. Rep. No. 95-595, at 350 (1977); S. Rep. No. 95-989, at 60 (1978); see In re Coastal Dry Dock & Repair Corp., 62 B.R. 879, 883 (Banta. E.DN.Y. 1986) (holding that the landlord for Brooklyn Navy Yard "occupies a special position with respect to the debtor in its role as [the debtor's] utility supplier").

B. **The Debtors Will Provide Adequate Assurance of Payment by Establishing a Segregated Account.**

21. Bankruptcy Code section 366(c)(2) provides that in a chapter 11 case:

> Subject to paragraphs (3) and (4), . . a utility . . . may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

9

11 U.S.C. § 366(c)(2)(emphasis added).[6]

22. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") defined "assurance of payment." In pertinent part, Bankruptcy Code section 366(c)(1)(A) now provides that "assurance of payment means a cash deposit; a letter of credit; a certificate of deposit; a surety bond; a prepayment of utility consumption; or another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A). "For purposes of [Bankruptcy Code section 366(c)] an administrative expense priority shall not constitute an assurance of payment." 11 U.S.C. § 366(c)(1)(B).

23. Section 366(c)(3)(B) further provides that:

> In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider -
>
> (i) the absence of security before the date of the filing of the petition;
> (ii) payment history by the debtor of charges for utility service before the date of the filing of the petition; or
> (iii) the availability of an administrative expense priority.

See 11 U.S.C. § 366(c)(3)(B).

24. The Debtors will comply with Bankruptcy Code section 366 and will provide the Utilities with adequate assurance of payment as required. The Debtors will establish a segregated account into which the Debtors will deposit funds equaling one month's average payments to all of the Utilities, which will serve as security for the Utilities during the pendency

---

[6] After the enactment of BAPCPA (as defined in paragraph 22), section 366(b) of the Bankruptcy Code arguably does not apply in chapter 11 as Bankruptcy Code section 366 specifically provides that section 366(c) governs in a chapter 11 case. See 11 U.S.C. § 366(c).

of these cases. Bankruptcy Code section 366(c)(1)(A)(i) expressly contemplates such an arrangement by providing that "assurance of payment" can be a cash deposit. 11 U.S.C. § 366(c)(1)(A)(i). Further, by providing that prepayment of utility consumption, which is generally paid monthly in arrears, may be "assurance of payment," section 366 implies that assurance in the amount of one month's utility service can be adequate.

25. The assurance proposed by the Debtors is substantial and represents a significant amount of the cash during the most difficult point in any bankruptcy case. Therefore, the Debtors request entry of an order determining that the Debtors' creation of an segregated account in favor of the Utilities, in an amount equal to one average month of the Debtors' collective payments to the Utilities, provides the Utilities "adequate assurance of payment" within the meaning of Bankruptcy Code section 366.

**C.    This Court Should Establish Procedures for Utilities Not on Exhibit 1 That Object to This Court's Determination of Adequate Assurance.**

26. Although the enactment of BAPCPA has modified the rights of debtors and utilities, the Utilities were not granted unfettered rights to demand assurance of payment beyond what the Court deems reasonable. In fact, Bankruptcy Code section 366(c)(3)(A) expressly provides for this Court's authority to adjudicate any disputes related to the adequacy of that assurance provided by the debtor.

27. Section 366(c)(3)(A) of the Bankruptcy Code states that "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)." 11 U.S.C. § 366(c)(3)(A). As described above, the Debtors propose to establish a fair and reasonable process for the Court to consider whether

11

modification of the amount of adequate assurance of payment is necessary, as contemplated by the amended statute.

28. More specifically, the Debtors request entry of an order approving the following procedures in the event the Debtors determine that there are additional Utilities not included on **Exhibit 1** (the "Objection Procedures"):

(a) In the event the Debtors determine that there is an additional Utility that should be listed on **Exhibit 1**, the Debtors must serve the newly discovered Utility (the "New Utility") with a copy of the order granting this Motion by electronic mail or overnight mail;

(b) In the event a New Utility seeks additional assurance, it must file and serve an Objection within fourteen (14) days receipt of the Order approving the Motion sent by the Debtors pursuant to subsection (a). Such Utility shall be deemed to have been provided with adequate assurance of payment in accordance with Bankruptcy Code section 366, without the need of an additional deposit or other security, until an order of the Court to the contrary is entered;

(c) A Utility that objects to the Court's determination that the Debtors have provided adequate assurance must file an objection (the "Objection") that sets forth the location for which Utility Services were provided, the average monthly usage for the most recent twelve (12) month period, the prepetition amount alleged to be due and owing, and the amount of any deposit made by the Debtors prior to the Petition Date; and

(d) The Utility must contact the Court to set a hearing on the Objection, which hearing shall be set no earlier than fifteen (15) days after the Objection was filed.

29. Under the circumstances of this case, the Utilities would not be prejudiced by the entry of an order deeming them adequately assured without the need for additional deposits and

establishing procedures for objecting to the determination of adequate assurance of payment. The Debtors have generally paid their utility bills on a regular basis.

30. Furthermore, the relief requested in this Motion will be without prejudice to the rights of any Utility not on **Exhibit 1** to apply on a timely basis to this Court for additional assurances of payment, in the form of individual deposits or other security, upon an appropriate showing.

31. Bankruptcy Code section 366 expressly contemplates the procedure proposed herein. If Utilities could simply terminate service notwithstanding a modification request made to the Court, Bankruptcy Code section 366(c)(3) would be rendered moot, which is not the intention or plain meaning of the amended statute. Moreover, if Utilities are permitted to unilaterally terminate Utility Services on the 31st day after the Petition Date because they insist on a greater deposit or some more onerous security, they could severely disrupt the Debtors' operations, significantly diminish the Debtors' going concern value, and jeopardize the Debtors' reorganization prospects. Nothing in the Bankruptcy Code prevents this Court from deeming all Utilities adequately assured, while the Court performs its adjudicative function.

## NOTICE AND PRIOR MOTIONS

32. No previous request for the relief sought herein has been made to this Court or any other court.

33. No trustee, examiner, or creditors committee has been appointed in the Debtors' Chapter 11 cases. Notice of this Motion has been given to the United States Trustee for the District of Utah, counsel for the Debtors' prepetition secured lenders, the Debtors' twenty (20) largest unsecured creditors, and to each of the Utilities listed on **Exhibit 1**. Under the circumstances, the Debtors submit that no further notice is necessary or required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order:

(i) prohibiting the Utilities from altering, refusing, discontinuing service to, or discriminating against, the Debtors based on the commencement of these cases, or any prepetition debt;

(ii) determining that the Debtors' creation of a segregated account in favor of the Utilities, in an amount equal to one average month of the Debtors' collective payments to the Utilities provides the Utilities "adequate assurance of payment" within the meaning of Bankruptcy Code section 366; (iii) authorizing the Debtors to supplement the list of Utilities in **Exhibit 1** attached hereto, to add Utilities not listed on **Exhibit 1** but subsequently discovered and establishing a procedure for processing Objections from subsequently discovered Utilities; and (iv) providing such other and further relief as the Court deems to be just and proper.

DATED: September 15, 2009

        DURHAM JONES & PINEGAR, P.C.

By:   /s/ Steven J. McCardell
     Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
     Steven J. McCardell (smccardell@djplaw.com)(2144)
     DURHAM JONES & PINEGAR, P.C.
     111 East Broadway, Suite 900
     P.O. Box 4050
     Salt Lake City, UT 84110-4050
     Telephone: (801) 415-3000/Fax: (801) 415-3500

     and

     Michael V. Blumenthal (mblumenthal@crowell.com)
       (pro hac vice application pending)
     Steven B. Eichel (seichel@crowell.com)
       ( pro hac vice application pending)
     CROWELL & MORING LLP
     590 Madison Avenue, 20th Floor
     New York, NY 10022
     Telephone: (212) 223-4000/Fax: (212) 223-4134

     Proposed Counsel for Debtors and Debtors in Possession

15

SLC_454701.2

## EXHIBIT 1
## UTILITY COMPANIES

| Vendor | Services Provided | Address | Average Monthly Cost |
|---|---|---|---|
| AT&T Mobility | Phone | AT&T Mobility<br>PO Box 6463<br>Carol Stream, IL 60197 | $426.00 |
| Comcast | Cable | Comcast<br>PO Box 34744<br>Seattle, WA 98124-1744 | $1,132.00 |
| Park City Municipal Corp. | Water | Park City Municipal Corp.<br>PO Box 1480<br>Park City, UT 84060 | $367.00 |
| Park City Water | Water | Park City Water<br>PO Box 1480<br>Park City, UT 84060 | $922.00 |
| Questar Gas Company | Gas | Questar Gas Company | $8,520.00 |
| Qwest | Phone | Qwest<br>PO Box 29039<br>Phoenix, AZ 85038-9039 | $2,554.00 |
| Rocky Mountain Power | Electricity | Rocky Mountain Power<br>1033 NE 6th Avenue<br>Portland, OR 97256-0001 | $8,596.00 |
| Water Reclamation District | Sewer | Water Reclamation District<br>2800 Homestead Rd<br>Park City, UT 84098-4869 | $1,575.00 |
| | | | $24,092.00 |

SLC_454701.2