

Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (pro hac vice application pending)
Steven B. Eichel (seichel@crowell.com) (pro hac vice application pending)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | |
| EASY STREET HOLDING, LLC, *et al.*, | Bankruptcy Case No. 09-29905 |
| | Jointly Administered with Cases |
| | 09-29907 and 09-29908 |
| Address:  201 Heber Avenue | Chapter 11 |
|          Park City, UT 84060 | |
| | Honorable R. Kimball Mosier |
| Tax ID Numbers: | |
| 35-2183713 (Easy Street Holding, LLC), | |
| 20-4502979 (Easy Street Partners, LLC), and | **[FILED ELECTRONICALLY]** |
| 84-1685764 (Easy Street Mezzanine, LLC) | |

**MOTION FOR AN ORDER EXTENDING TIME TO
FILE SCHEDULES AND STATEMENTS**

Easy Street Partners, LLC ("Partners"), Easy Street Mezzanine, LLC ("Mezzanine"), and

Easy Street Holding, LLC ("Holding"), debtors and debtors in possession in the above-captioned

cases (collectively, the "Debtors"), hereby move this Court (the "Motion") for entry of an order

SLC_454702.2

(the "Order") pursuant to section 521 of chapter 11 of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code") and Rules 1007 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") granting an extension of time to file Schedules and Statements (defined below). The Debtors request an additional 16 days (for a total of 31 days) to file their Schedules and Statements.

This Motion is based on the points and authorities below, the evidence contained in the "Declaration of William Shoaf in Support of First Day Motions." (the "Shoaf Declaration") filed on September 14, 2009, the record in these cases, and the arguments, evidence and representations that may be presented at or prior to the hearing on this Motion.

## BACKGROUND

**A.  The Chapter 11 Filings.**

1. On September 14, 2009 (the "Petition Date"), each of the Debtors filed in this Court a voluntary petition under chapter 11 of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their property as debtors-in-possession.

2. No trustee or creditors' committee have yet been appointed in these cases.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**B.  Background and Current Business Operations of the Debtors.**

4. The Debtors are limited liability companies and affiliates of one another. Mezzanine is the 100% owner and managing member of Partners, which owns real estate and improvements constituting the Sky Lodge in Park City, Utah. Holding is the 100% owner and

managing member of Mezzanine.  Michael Feder, representing Park City I, LLC, Philo Smith, Jr., representing the Philo Smith, Jr. Trust, and William Shoaf, representing CloudNine Resorts, LLC are the co-managers of Holding.  The members of Holding are Park City I, LLC, Philo Smith Jr. Trust, Alchemy Ventures Trust, and CloudNine Resorts, LLC.  Park City I, Philo Smith Jr. Trust and  CloudNine Resorts, LLC constitute 61.25% of the membership interests of Holding.  The remaining 38.75% of Holding is held by Alchemy Ventures Trust.

5.   The Sky Lodge is a luxury boutique hotel located in the middle of historic Main Street in Old Town Park City.  It is an ultra stylish resort hotel offering all of Park City's amenities plus a restaurant offering both casual and fine dining, a bar and lounge, a bakery, the spa Amatsu, and meeting and event venues and more.

6.   The Sky Lodge is being sold as fractional ownership with a total of 176 eighth shares offered.  There are 22 units in total.  The 2 and 3 bedroom models range from 1260 to 2700 square feet for the penthouse model.  Owners buy individual units and not just the rights to a stay.  Cloud Nine Resorts, an affiliate of the Debtors, runs the homeowners association (HOA), manages the owner bookings and rotational intricacies of ownership.  Each owner is guaranteed two ski weeks (mid Dec. – mid April) each year plus 21 other days throughout the year for their own use.  Stays not used by the owner may be rented out by the hotel and proceeds are split equally with the owner**.**

C.   **Debt Structure.**

7.   On March 30, 2006, Partners entered into a Loan (the "WestLB Senior Loan") and Security Agreement (collectively, the "Senior Loan Agreement") for the initial amount of

3

$36,779,224[1] with WestLB AG ("WestLB") to purchase and develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060. The WestLB Senior Loan is secured by, among other things, security interests evidenced by the Construction and Interim Loan Deed of Trust With Security Agreement, Assignment of Leases and Rents and Fixture Filing, and a UCC Financing Statement, each filed in the Summit County, Recorder's Office, State of Utah. On February 15, 2008, at the direction and authorization of WestLB, as the Administrative Agent, a partial principal repayment of $22,400,000 was made to WestLB from Real Estate Sales Escrow Funds[2] controlled by the Administrative Agent. The current balance of the WestLB Senior Loan is $14,379,224.

8.  On March 30, 2006, Mezzanine entered into a Loan Agreement (the "Mezzanine Loan Agreement") in the initial amount of $11,250,000 (the "BayNorth Mezzanine Loan") with BayNorth Realty Fund VI, LP ("BayNorth") to develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060, which is owned by Partners. The BayNorth Mezzanine Loan is secured by a pledge of Holding's 100% interest in Mezzanine to BayNorth, and a UCC Financing Statement filed with the Secretary of State of Utah. On February 19, 2008, at the direction and authorization of WestLB, as the Administrative Agent, a $5,600,000 disbursement[3] from the Real Estate Sales Escrow Funds controlled by the

---

[1] The proceeds of the WestLB Senior Loan (along with the proceeds of the BayNorth Mezzanine Loan, as hereinafter defined) were used to purchase, develop and construct the Sky Lodge.

[2] As units are sold, the proceeds are swept into various escrow accounts maintained at Wells Fargo Bank under the control of WestLB as the Administrative Agent for WestLB and BayNorth (hereinafter defined).

[3] This payment was incorrectly made and has led to, among other things, (a) a dispute between WestLB and BayNorth under the Intercreditor Agreement (as hereinafter defined) for its return, (b) a failure of WestLB to extend the WestLB Senior Loan, (c) BayNorth alleging a default of the BayNorth

Administrative Agent was made to BayNorth, which included a partial principal repayment and accrued interest. The partial repayment paid all current accrued interest and the remaining $1,646,871 was applied to the loan principal balance. The current balance of the BayNorth Mezzanine Loan including principal and accrued interest is $12,045,586.

9. On March 30, 2006, WestLB, as Senior Lender, and BayNorth, as Mezzanine Lender, entered into an intercreditor agreement (the "Intercreditor Agreement") to provide, <u>inter alia</u>, for the relative priority of the Senior Loan Agreement between WestLB and Partners, and the Mezzanine Loan Agreement between BayNorth and Mezzanine, and administration of both loans by WestLB as the administrative agreement.

10. The original term of the WestLB Senior Loan was for three years with two one-year extensions available to Partners. The initial term of the WestLB Senior Loan ended on March 29, 2009. On September 25, 2008, Partners formally notified WestLB of its request for a conversion of the WestLB Senior Loan into an Interim Loan, as stipulated in section 2.15 of the Senior Loan Agreement, which would extend the WestLB Senior Loan for an additional year.

**D.     Events Leading to Filing of Petitions.**

11. On March 4, 2009, WestLB issued a letter to Partners asserting that after reviewing the disposition of the Net Sales Proceeds from sales of real estate, that it, as the Senior Lender, had been underpaid from the $28,000,000 lender distribution that occurred in February of 2008. WestLB demanded that Partners remit immediately the sum of $4,899,104 to it. Partners denied such claim because the shortfall to WestLB was the direct result of WestLB, as the Administrative Agent, authorizing a payment of $5,600,000 out of the February 2008 lender

---

Mezzanine Loan, (d) a failure by WestLB to release additional escrowed funds resulting in imposition of liens by contractors and foreclosure suits, and (d) the loss of pending sales.

distribution to the Mezzanine Lender BayNorth.  This action was in clear violation of Section 9 of the Intercreditor Agreement; however, WestLB has denied responsibility for its actions as the Administrative Agent and has been attempting to get Bay North to return the funds received on February 19, 2008.  To date, Bay North has wrongfully refused, which has created the current situation as more fully set forth herein.

12. On or about March 29, 2009, WestLB entered into a forbearance agreement with Partners (the "Forbearance Agreement"), while it attempted to get BayNorth to abide by the Intercreditor Agreement and return the $5,600,000.  Partners and its representative, Realty Financial Resources, understood that WestLB had met with BayNorth to demand the return of the $5,600,000.  These efforts were not successful.

13. On May 5, 2009, BayNorth issued to Mezzanine a notice of default on the BayNorth Mezzanine Loan. This default notice was followed by a Notice of Acceleration and Demand for Payment issued by BayNorth on June 23, 2009.  On July 28, 2009, a Notice of Sale was issued by BayNorth for the membership interest of Holding to be executed on September 16, 2009.  There are no payment defaults under the BayNorth Mezzanine Loan nor are any alleged.

14. WestLB has also taken the position that any funds in the Real Estate Escrow Accounts are frozen. This action precluded the final approved payment to the general contractor, which was formally submitted to WestLB on February 5, 2009.  Despite repeated requests by Partners to have this payment made from the escrowed funds, WestLB has not done so to date, resulting in liens being placed on the Sky Lodge property on March 16, 2009, despite continued requests by Partners for funding.  On September 8, 2009, the general contractor gave Partners verbal confirmation that a foreclosure action had been filed.

15.     The actions by WestLB and BayNorth effectively precluded Partners from having any ability to operate the business in a normal and effective manner.  Due to these actions and the upcoming foreclosure sale of the membership interest in Holding by Bay North, Partners and its affiliates, Mezzanine and Holding, had no option but to file for protection under Chapter 11 so that the business can be restructured and can return to profitable operations.

## RELIEF REQUESTED

16.     Pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, if the bankruptcy petition is accompanied by a list of all the debtor's creditors and their addresses, a debtor is required, within 15 days from the date of filing, to file with the court:  (i) a schedule of assets and liabilities; (ii) a statement of financial affairs; (iii) a schedule of current income and expenditures; (iv) a statement of executory contracts and unexpired leases; and (v) a list of equity security holders (collectively, the "Schedules and Statements").  By this Motion, the Debtors seek an order extending the time for filing the Schedules and Statements for approximately an additional 16 days (for a total of approximately 31 days) through and including October 15, 2009.

## BASIS FOR RELIEF

17.     Given the complexity of the Debtors' financial affairs, the large number of potential creditors and parties in interest, the intricacy of these cases, and the immediate and exigent issues confronting the Debtors to obviate any disruption to operations caused by the events immediately prior to and the filings of the petitions, it will take substantial time for the Debtors to analyze and compile the information needed to complete their Schedules and Statements.

18. Specifically, the analysis and compilation of the information for the Schedules and Statements will take significant time because:  (i) the urgency of other demands upon the Debtors as a result of the filing of the petitions, which will consume the time of key personnel; (ii) the Debtors have approximately 90 creditors and have approximately 99 full-time and part-time employees (excluding insiders); (iii) the Debtors' operations involve numerous contracts, leases, and other agreements; (iv) the Debtors and their professionals need time to evaluate the information comprising the Schedules and Statements once compiled; and (v) there is a limited number of qualified corporate staff members available to perform and/or oversee all work necessary to prepare the Schedules and Statements.

19. While the Debtors will immediately commence the task of gathering the necessary information to prepare and finalize the Schedules and Statements, the Debtors believe that the fifteen-day automatic extension of time to file such Schedules and Statements provided by Bankruptcy Rule 1007(c) will not be sufficient to permit completion of the Schedules and Statements.

20. At this juncture, the Debtors estimate that an extension of 16 additional days (for a total of 31 days) will provide sufficient time to prepare and file their respective Schedules and Statements.  The Debtors thus request that the Court establish October 15, 2009 as the date on or before which they must file their Schedules and Statements, without prejudice to the Debtors' right to seek any further extensions from this Court, or to seek a waiver of the requirement of filing certain Schedules and Statements.

## NOTICE AND PRIOR MOTIONS

21. No previous request for the relief sought herein has been made to this Court or any other court.

8

SLC_454702.2

22. No trustee, examiner, or creditors committee has been appointed in the Debtors' Chapter 11 cases. Notice of this Motion has been given to the United States Trustee for the District of Utah, counsel for the Debtors' prepetition secured lenders, and the Debtors' twenty (20) largest unsecured creditors. Under the circumstances, the Debtors submit that no further notice is necessary or required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order: (i) extending the time for filing the Schedules and Statements for an additional 16 days through and including October 15, 2009; and (ii) granting such other and further relief as is just and proper.

DATED: September 15, 2009

DURHAM JONES & PINEGAR, P.C.

By: /s/ Steven J. McCardell
Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
Steven J. McCardell (smccardell@djplaw.com)(2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000/Fax: (801) 415-3500

And

Michael V. Blumenthal (mblumenthal@crowell.com)
 (pro hac vice application pending)
Steven B. Eichel (seichel@crowell.com)
 ( pro hac vice application pending)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000/Fax: (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

SLC_454702.2