been redeposited with the Borrower such that the Borrower is currently holding all security deposits and letters of credit required under the applicable Leases prior to a default thereunder, (vii) the Borrower has not given or suffered any present assignment, pledge or Lien in respect of any of the Leases or its interests thereunder, except pursuant to the Loan Documents, and the Borrower has the sole right to collect Rents and other amounts due under the Leases, (viii) except as set forth on Exhibit U, no Tenant pursuant to any Lease is more than 30 days in arrears on its Rent or other amounts due to the landlord under its Lease and the Leases are in full force and effect and there are no other monetary or material non monetary defaults thereunder by either party thereto and, to the best of the Borrower's knowledge, there are no conditions that, with the passage of time or the giving of notice, or both, would constitute a material non monetary default thereunder and (ix) none of the Leases contains any option to purchase, right of first refusal or right of first offer to purchase or any right to terminate the Lease (except in the event of the condemnation or destruction of all or a portion of the applicable Property, as more specifically set forth in the Leases).

(d)  Reservations.  Except as set forth on Exhibit I, there are no Reservations or other rights to purchase in effect with respect to any of the Fractional Ownership Units. Exhibit I fully and accurately describes each Reservation entered into by or on behalf of the Borrower including the name of the applicable prospective Purchaser, the affected unit, the proposed purchase price and the amount of any deposit being held by the Borrower.

(e)  Material Operating Agreements.  Except as set forth on Exhibit V, there are no Material Operating Agreements.  Each Material Operating Agreement has been entered into by the Borrower on an arm's-length basis in the ordinary course of business and provides for the payment of fees in amounts and upon terms not less favorable to it than market rates and terms.  Each of the Material Operating Agreements is the legal, valid and binding obligation of the Borrower and, to the Borrower's knowledge, each other party thereto, and enforceable against the Borrower and, to the Borrower's knowledge, each other party thereto, subject in each case to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles. Except as set forth on Exhibit V, there are no defaults, breaches or violations of any Material Operating Agreement by the Borrower or, to the Borrower's knowledge, any other party thereto, and to the Borrower's knowledge, there are no conditions that, with the passage of time or the giving of notice, or both, would constitute a default by any party thereunder.  The Borrower has heretofore delivered true and complete copies of all Material Operating Agreements to the Administrative Agent.

(f)  Other Contracts.  The Borrower has made no contract or arrangement of any kind or type whatsoever (whether oral or written, formal or informal), the performance of which by the other party thereto could give rise to a Lien on the Property, except for contracts (all of which have been disclosed in writing to the Administrative Agent) made by the Borrower with parties who have executed and delivered to the Administrative Agent, lien waivers required or other similar certifications in form satisfactory to the Administrative Agent, and which, in the opinion of the Administrative Agent's counsel, will not create rights in existing or future Lien claimants which may be superior to the Lien of the Security Instrument, and except for matters

73

DMWEST_9_064391_89900

less than FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) in the aggregate that are insured against by the Title Company pursuant to the Title Policy.

Section 5.20   Liquor License; Assignment of Liquor License and other Licenses and Permits.  The Borrower or the Hotel Operator has or will have as required by applicable Law a valid liquor license (the *Liquor License*) which will be sufficient to enable the Borrower to sell beer, wine and all other alcoholic beverages at the Hotel and no other license or approval is required in order for the Borrower to sell alcoholic beverages at the Property.

Section 5.21   No Default.  No Default or Event of Default exists and there are no facts, events or circumstances which could reasonably be expected to result in a Default or Event of Default.  Neither the Borrower, nor any other Loan Party is in violation of, or in default under, any term of its governing documents or, to the Borrower's knowledge, any agreement, instrument, judgment, decree, injunction or Law (including, without limitation, any of the foregoing relating to environmental, zoning, land use, city planning or similar matters) applicable to it or by which any of its assets is bound.

Section 5.22   FIRPTA.  The Borrower is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code.

Section 5.23   SPE Provisions.  The single purpose entity requirements set forth in Section 6.5 have been expressly set forth in the Borrower's formation documents (i.e., Certificate of Formation and LLC Agreement), which documents have been duly filed with the appropriate governmental filing office of the Borrower's jurisdiction of formation.

Section 5.24   Organizational Structure.  The organizational chart, which is annexed hereto as Exhibit W, accurately sets forth (i) the identity of all holders of direct or indirect (i.e., through intermediate entities) beneficial interests in the Borrower and (ii) the relative percentage interests of such holders in the Borrower and such intermediate entities.  Easy Street Holding LLC, a Delaware limited liability company, is the sole member of the Mezzanine Borrower.  There are no outstanding subscriptions, options, warrants, rights, convertible or exchangeable securities or other agreements or commitments of any character obligating the Borrower to issue any securities or other equity or debt interests.  The Borrower has not entered into any agreement to register its equity or debt securities under the Securities Act of 1933, and the rules and regulations promulgated thereunder, as amended.  The Mezzanine Borrower is the sole member and the sole manager of the Borrower with full authority to direct the policies, make all decisions and initiate any action of the Borrower.  A true and complete copy of the operating agreement of each of the Borrower and Mezzanine Borrower has been provided to the Administrative Agent.

Section 5.25   Capitalization.  As of the closing on the acquisition of the Land and Existing Improvements and the funding of the Loan and the Mezzanine Loan in connection therewith, the Borrower shall have received proceeds from the issuance of debt and equity indicated on Exhibit P and used such proceeds for the purposes indicated on Exhibit P.  Except as set forth on Exhibit P, since the date of receipt of such proceeds, the Borrower has not, directly or indirectly, made any distributions to the holders of, or on account of, any ownership

74

interest in the Borrower or redeemed, retired or purchased any ownership interest in the Borrower, or made any payment for any right to redeem, retire or purchase any such interest.

Section 5.26    Offices; Location of Books and Records.    The chief executive office or chief place of business and the jurisdiction of organization (as such terms are used in Revised Article 9 of the UCC as in effect in the State of Utah from time to time) of the Borrower is on Exhibit X, together with the organization number assigned to the Borrower in such jurisdiction and the Borrower's federal employer identification number.    The Borrower's books of accounts and records are located at its chief executive office or the chief place of its business.

Section 5.27    Filing and Recording Taxes.    All transfer taxes, deed stamps, intangible taxes or other amounts in the nature of transfer taxes required to be paid under applicable Laws in connection with the transfer of the Property to the Borrower have been paid. All mortgage, mortgage recording, stamp, intangible or other similar tax required to be paid under applicable Laws in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of any of the Loan Documents, including, without limitation, the Security Instrument, have been paid or are being paid simultaneously herewith. All taxes and governmental assessments due and owing in respect of the Property have been paid, or an escrow of funds in an amount sufficient to cover such payments has been established hereunder or are insured against by the Title Insurance Policy to be issued in connection with the Security Instrument.

Section 5.28    No Illegal Activity as Source of Funds.    No portion of the Property has been or will be purchased, improved, equipped or furnished with proceeds of any illegal activity.

Section 5.29    Compliance with Anti-Terrorism, Embargo, Sanctions and Anti-Money Laundering Laws.    The Borrower, and to the best of the Borrower's knowledge, after having made diligent inquiry, (a) each Person owning a direct or indirect interest of Twenty Percent (20%) or more in the Borrower, (b) each of the other Loan Parties, (c) the Hotel Operator and (d) each Tenant at the Property, if any: (i) is not currently identified on the OFAC List, and (ii) is not a Person with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, regulation, or Executive Order of the President of the United States.    The Borrower has implemented procedures, and will consistently apply those procedures throughout the term of the Loan, to ensure the foregoing representations and warranties remain true and correct during the term of the Loan.

Section 5.30    Employees.    The Borrower does not have any employees or employer-related liabilities.

Section 5.31    Transactions with Related Parties.    Except as set forth in Exhibit CC, there are no transactions, agreements or understandings existing or presently contemplated between (i) any person directly or indirectly through one or more entities beneficially owning an equity interest in the Borrower, or (ii) any officer, director or trustee of such person, or (iii) any spouse, sibling, ancestor or descendant of such person, or (iv) any entity more than one percent

75

(1%) of any class of securities of which is owned by such person or any spouse, sibling, ancestor or descendant of such person (each a *Related Party*) and the Borrower or any person doing business with the Borrower. Exhibit CC contains a complete description of all fees, payments and compensation payable to any Related Party by the Borrower or any person doing business with the Borrower. The dates listed on Exhibit CC accurately reflect the dates upon which applicable Units were reserved.

Section 5.32   Debt.   The Borrower is not obligated or otherwise liable for any Debt other than Permitted Indebtedness.

Section 5.33   Mezzanine Loan.   The Borrower has delivered true and complete copies of the Mezzanine Loan Documents to the Administrative Agent. The Mezzanine Loan Documents are in full force and effect and have not been amended, supplemented or modified. The Borrower is not in default under the Mezzanine Loan Documents.

Section 5.34   Contract of Sale.   The Borrower has delivered a true and complete copy of the Contract of Sale to the Administrative Agent. The Contract of Sale is in full force and effect and has not been amended, supplemented or modified. The Borrower is not in default under the Contract of Sale.

Section 5.35   Business Loan.   The Loan is a business loan and no portion of the proceeds of the Loan will be used for personal, family or household purposes.

Section 5.36   Federal Reserve Regulations.   No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose which would be inconsistent with such Regulation U or any other Regulations of such Board of Governors, or for any purposes prohibited by Laws or by the terms and conditions of this Agreement or the other Loan Documents.

Section 5.37   Bank Holding Company.   The Borrower is not a "bank holding company" or a direct or indirect subsidiary of a "bank holding company" as defined in the Bank Holding Company Act of 1956, as amended, and Regulation Y thereunder of the Board of Governors of the Federal Reserve System.

Section 5.38   Investment Company Act.   The Borrower is not (a) an "investment company" or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended; or (b) a "holding company" or a "subsidiary company" of a "holding company" or an "affiliate" of either a "holding company" or a "subsidiary company" within the meaning of the Public Utility Holding Company Act of 1935, as amended.

Section 5.39   No Plan Assets.   (a) The Borrower is not an "employee benefit plan," as defined in Section 3(3) of ERISA, subject to Title I of ERISA, (b) none of the assets of the Borrower constitutes "plan assets" of one or more such plans within the meaning of 29 C.F.R. Section 2510.3 101, (c) the Borrower is not a "governmental plan" within the meaning of

Section 3(32) of ERISA and (d) transactions by or with the Borrower are not subject to state statutes regulating investment of, and fiduciary obligations with respect to, governmental plans.

Section 5.40  Accuracy of Documents.  All documents prepared by the Borrower or any of its Affiliates and furnished to the Administrative Agent as part of or in support of the loan application or pursuant to this Agreement or any of the other Loan Documents, are true, correct, and complete in all material respects and accurately represent the matters to which they pertain as of the dates made and there have been no materially adverse changes with respect to such matters since the respective dates thereof and to the Borrower's knowledge, after due inquiry, there is no material false or misleading information set forth in the third-party reports furnished to the Administrative Agent as part of or in support of the loan application or pursuant to this Agreement or any of the other Loan Documents.

Section 5.41  Compliance with Laws.  All necessary action has been or will be taken to permit construction of the Additional Improvements according to the Plans and Specifications and full use of the Improvements for their intended purpose (including, without limitation, the use and operation of the Hotel) under applicable Laws.  The Additional Improvements (when completed according to the Plans and Specifications) will comply in all material respects with all applicable Laws.  The Borrower has all Permits necessary for the commencement of construction of the Additional Improvements and to the Borrower's knowledge, after due inquiry, has or will have the additional Permits necessary for the continuance or completion of construction of the Additional Improvements and the use and operation of the Property on a timely basis in order to achieve Final Completion in accordance with the Construction Schedule. To the Borrower's knowledge, after due inquiry, those Permits which have not yet been obtained by the Borrower are readily achievable in due course. The Borrower has obtained all Permits from, and has given all such notices to, and has taken all such other actions with respect to such Governmental Authority as may be required under applicable Laws for the commencement of construction of the Additional Improvements. Each Permit is in full force and effect and is not subject to any pending or, to the Borrowers' knowledge, threatened proceeding of any Governmental Authority to revoke, cancel or declare such Permit invalid in any respect. The Borrower is not in default or violation with respect to any Permit, and no event has occurred which constitutes, or with due notice or lapse of time or both is reasonably likely to constitute, a default by the Borrower under, or a violation of, any Permit.

Section 5.42  Timeshare Act.    The Borrower has complied with all applicable terms and conditions of the Timeshare Act including, without limitation, the following: (i) registration of the Project; (ii) registration of any and all salespersons hired in connection with the Project; (iii) filing of all advertisements, sales promotion literature, the proposed form of sales contracts and any written disclosures with the director of the Division of Real Estate of the Department of Commerce; and (iv) providing full and accurate disclosure to prospective purchasers and any applicable Governmental Authority.

Section 5.43  Sale of Fractional Ownership Units.  Upon execution and recordation of the Condominium Declaration and a final Condominium Plat in the land records of Summit County, Utah, the Borrower will have taken all actions required under applicable Law

77

to enable the Borrower to enter into enforceable, non-contingent Purchase Agreements for the sale of Fractional Ownership Units or fractional interests therein.

Section 5.44  Plans and Specifications.    The Borrower has furnished the Administrative Agent and the Construction Consultant true and complete sets of the Plans and Specifications.  The Plans and Specifications (a) comply with all Laws, all Permits, and all restrictions, covenants and easements affecting the Property; (b) have been approved by the General Contractor and the Architect; and (c) have been approved by each Governmental Authority required to permit the construction of the Additional Improvements.

Section 5.45  Budget; Feasibility.  The Project Budget clearly and accurately reflects as of the date made the best estimate of the Borrower of the Total Project Costs.  The Construction Schedule is accurate to date.

Section 5.46  General Contractor's Agreement.  As of the date of any Construction Advance, (a) the General Contractor's Agreement is in full force and effect; (b) the Borrower and, to the Borrower's knowledge, the General Contractor are in compliance in all material respects with their respective obligations under the General Contractor's Agreement; and (c) the work to be performed by the General Contractor under the General Contractor's Agreement is the work called for by the Plans and Specifications.

Section 5.47  Architect's Contract.  (a) The Architect's Contract is in full force and effect; (b) both the Borrower and, to the Borrower's knowledge, the Architect are in compliance in all material respects with their respective obligations under the Architect's Contract; and (c) the work to be performed by the Architect under the Architect's Contract is the architectural services required to design the Additional Improvements to be built in accordance with the Plans and Specifications and all architectural services required to complete the Additional Improvements in accordance with the Plans and Specifications is provided for under the Architect's Contract.

Section 5.48  Brokerage Commissions.  The Lenders, on the one hand, and the Borrower, on the other hand, represent and warrant to each other that each has had no dealings with any broker or agent in connection with the Loan other than Realty Financial Resources, Inc., and each knows of no other broker or agent who is or might be entitled to a commission or finders or similar fee in connection with the Loan.  The Borrower shall be responsible for any commission or fees payable to Realty Financial Resources, Inc. and shall indemnify the Lenders from any liability, claim or loss arising by reason of any such brokerage commissions arising out of any breach by the Borrower of the warranty set forth in the first sentence of this Section 5.48.  The Lenders shall indemnify the Borrower from any liability, claim or loss arising by reason of any breach by the Lenders of the warranty set forth in the first sentence of this Section 5.48.  This Section 5.48 shall survive the repayment of the Loan.

Section 5.49  Continuing Effectiveness.    All representations and warranties contained in any documents furnished to the Administrative Agent or any Lender by or on behalf of the Borrower, as part of or in support of the loan application or pursuant to this Agreement or any of the other Loan Documents shall be deemed continuing and in effect at all times while any

78

of the Obligations of the Borrower or any other Loan Party pursuant to the Loan Documents remains unpaid or unsatisfied.

Section 5.50   Effect of Draw Request.   Each Draw Request submitted to the Administrative Agent shall constitute an affirmation that the representations and warranties contained in this Article 5, elsewhere in this Agreement and in the other Loan Documents remain true, complete and correct in all material respects as of the date thereof, and, unless the Administrative Agent is notified to the contrary in writing prior to the disbursement of the requested Advance or any portion thereof, shall constitute an affirmation that the same remain true, complete and correct in all material respects on the date of such disbursement.

Section 5.51   Property Disclosure Report.   The Borrower has delivered a true and complete copy of the Property Disclosure Report to the Administrative Agent.  The Property Disclosure Report is in full force and effect and has not been amended, supplemented or modified. The Property Disclosure Report provides the full and accurate disclosure that is required under the Timeshare Act.

Section 5.52   Construction Manager's Agreement.   As of the date of any Construction Advance, (a) the Construction Manager's Agreement is in full force and effect; (b) the Borrower and, to the Borrower's knowledge, the Construction Manager are in compliance in all material respects with their respective obligations under the Construction Manager's Agreement; and (c) the work to be over sought and managed by the Construction Manager under the Construction Manager's Agreement is the work called for by the Plans and Specifications.

Section 5.53   Schedule of Minimum Release Prices.   The Schedule of Minimum Release Prices set forth on Exhibit K represents the last contracted sales price for the applicable type of Unit prior to November 22, 2005.

## ARTICLE 6

## COVENANTS OF THE BORROWER

The Borrower hereby covenants and agrees, from the date of this Agreement, and so long as Borrower remains indebted to the Lenders as follows:

Section 6.1   Affirmative Covenants.   The Borrower covenants and agrees that, from the date of this Agreement, and so long as any of the Obligations under the Loan Documents remain unpaid or unperformed:

(a)   Payment of Debt.   The Borrower shall duly and promptly pay all of its monetary Obligations with respect to the Loan in accordance to the terms of this Agreement, the Notes and the other Loan Documents.

(b)   Comply with Other Loan Documents.   The Borrower shall perform all of its Obligations under the Notes, the Security Instrument, the other Loan Documents and all other documents evidencing or securing the Loan and all other indebtedness of the Borrower to the Lenders.

79

(c)     Application of Loan Proceeds.  The Borrower shall use the proceeds of the Loan solely and exclusively for the payment or reimbursement of Project Costs in accordance herewith and in accordance with the Project Budget.  The Borrower will receive the Loan to be made hereunder and will hold the right to receive the same as a trust fund for the purpose of paying the Project Costs and it will apply the same first to such payment before using any part thereof for any other purpose.

(d)     Maintain Existence.  The Borrower shall maintain its existence in good standing and make no changes in its organization without the Administrative Agent's prior written consent.

(e)     Compliance with Laws.  The Borrower shall comply and cause the Property to comply in all material respects at all times with all Laws, perform all obligations and maintain all Permits related to the Property.

(f)     Timeshare Act.       The Borrower shall comply and cause the Project to comply at all times with all applicable provisions of the Timeshare Act, the Condominium Act and all other applicable Laws relating to the formation of the Condominium and the creation, offering and sale of the Fractional Ownership Units.

(g)     Further Assurances.

(i)     The Borrower shall furnish to the Administrative Agent all instruments, documents, certificates, Plans and Specifications, Appraisals (subject to Section 6.1(s)), title and other insurance, reports and agreements and each and every other document and instrument required to be furnished by the terms of this Agreement or the other Loan Documents, all at the Borrower's expense;

(ii)    the Borrower shall execute and deliver to the Administrative Agent documents, instruments, assignments and other writings, and to do such other acts necessary or desirable, to preserve and protect the Collateral at any time securing or intended to secure the Loan, as the Administrative Agent may reasonably require in writing; and

(iii)   the Borrower shall do and execute all and such further lawful and reasonable acts, conveyances and assurances in the law as are reasonably necessary for the better and more effective carrying out of the intents and purposes of this Agreement as the Administrative Agent shall reasonably require from time to time in writing.

(h)     Solvency.  The Borrower shall remain, at all times, Solvent.

(i)     Estoppels, Etc.  The Borrower shall execute within ten (10) Business Days after written request therefore is made by the Administrative Agent, any document required hereunder or under any Loan Document or any estoppel certificate reasonably requested by the Administrative Agent in connection with the Loan, without charge; provided, however, that the Borrower shall not be obligated to pay the Administrative Agent's costs or expenses in

80

connection with the preparation, modification, execution or delivery of such document or certificate.

(j)    Compliance with Anti-Terrorism, Embargo, Sanctions and Anti-Money Laundering Laws. The Borrower shall comply with all Laws relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect. Upon the Administrative Agent's request from time to time during the term of the Loan, the Borrower shall certify in writing to the Administrative Agent that the Borrower's representations, warranties and obligations under Sections 5.26 and 5.27 and this Section 6.1(j) remain true and correct and have not been breached. The Borrower shall immediately notify the Administrative Agent in writing if any of such representations, warranties or covenants are no longer true or have been breached or if the Borrower has a reasonable basis to believe that they may no longer be true or have been breached. In connection with such an event, the Borrower shall comply with all Laws and directives of any Governmental Authority and, at the Administrative Agent's request, provide to the Administrative Agent copies of all notices, reports and other communications exchanged with, or received from, any Governmental Authority relating to such an event. The Borrower shall also reimburse the Administrative Agent for any expense actually incurred by the Administrative Agent in evaluating the effect of such an event on the Loan and the Administrative Agent's interest in the collateral for the Loan, in obtaining any necessary license from any Governmental Authority as may be necessary for the Administrative Agent to enforce its rights under the Loan Documents, and in complying with all Laws applicable to the Administrative Agent or the Lenders as the result of the existence of such an event and for any penalties or fines imposed upon the Administrative Agent or any Lender as a result thereof.

(k)    Insurance.

(i)    In addition to all insurance required to be obtained and maintained by it pursuant to all of the other Loan Documents, the Borrower shall, at its sole cost and expense, obtain and maintain in effect at all times the insurance policies described on Exhibit Y (the *Required Insurance*), naming WestLB AG, as the Administrative Agent for the Lenders, as an additional insured. The proceeds of any insurance shall be applied in accordance with the terms of this Agreement. The Borrower shall also furnish the Administrative Agent with evidence or certificates from insurance companies indicating that the Architect and the Major Contractors responsible for the design or construction of the Additional Improvements are covered by professional liability insurance or other liability insurance, as applicable, as required by the applicable contract approved by the Administrative Agent, such evidence or certificates to be delivered to the Administrative Agent on or before the date of this Agreement.

(ii)    The Borrower shall duly and punctually comply, or cause compliance with, all of the material terms and conditions of any insurance policy covering or applicable to the Property (whether or not expressly required hereunder), all material requirements of the issuer of any such policy and all orders, rules and other requirements of the National Board of Fire Underwriters (or any body exercising similar functions) binding upon the Construction

81

Borrower or applicable to or affecting the Property or any use or condition thereof.

(iii)    The Required Insurance may consist of blanket policies insuring the Property and other property of the Borrower (and its Affiliates); provided, that such policy or policies shall (x) set forth the amounts of insurance in force thereunder applicable to the Property, which amounts shall not be less than the amounts required pursuant to this Section, (y) otherwise comply with the provisions of this Section and (z) afford the same protections to the Lenders as would be provided by policies individually applicable to the Property, provided that (1) if a portion of such policy constitutes the Required Insurance, the total coverage afforded under such portion shall be on an "occurrence" basis and (2) if the Borrower converts any insurance policy from an "occurrence" to a "claims" basis (or vice versa), the Borrower shall cause the risk to be covered by such policy to be continuously insured against notwithstanding such change.

(iv)    If the Administrative Agent shall by any manner acquire the title or estate of the Borrower in or to any portion of the Property, it shall thereupon, to the extent such insurance policies are not blanket insurance policies of the Borrower, become the sole and absolute owner of all insurance policies held by or required hereunder to be obtained, affecting such portion, with the sole right to collect and retain all unearned premiums thereon, and the Borrower shall be entitled only to a credit, in reduction of the then outstanding Obligations, in the amount of any cancellation refund actually received by the Administrative Agent. To the extent applicable, the Borrower agrees, immediately upon demand, to execute and deliver such assignments or other authorizations or instruments as may be necessary or desirable to effectuate the foregoing.

(v)    The Borrower shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be obtained and maintained under this Section.  Subject to the foregoing, any insurance effected by the Borrower on any part of the Property whether or not required hereunder, shall be for the benefit of the Administrative Agent, the Lenders and the Borrower and shall be subject to all other provisions of this Agreement.

(l)    Fees and Expenses.  The Borrower shall pay when due the reasonable fees of the Construction Consultant, any fees due pursuant to the Mandate Letter, all reasonable out-of-pocket costs and expenses, including, without limitation, appraisal fees, recording fees and charges, abstract fees, title policy fees, escrow fees, reasonable attorneys' fees, fees of inspecting architects and engineers to the extent provided hereunder in connection with the Loan, environmental consultants to the extent provided in the Security Instrument, and all other reasonable out-of-pocket costs and expenses of every character which have been incurred or which may hereafter be incurred by each Lender in connection with the preparation and execution of the Loan Documents, including any extension, amendment or modification thereof, the funding of the Loan, the administration and enforcement of, this Agreement, the Security Instrument, the Notes, and the other Loan Documents, including, without limitation, reasonable

82

attorneys' fees in any action for the enforcement and advice in respect thereto, foreclosure of the Security Instrument and the collection of the Loan, and all such fees incurred in connection with any bankruptcy or insolvency proceeding; and the Borrower will, within twenty (20) days after written demand by the Administrative Agent (together with reasonable evidence of incurrence of such expenses), reimburse the Administrative Agent and each Lender for all such reasonable expenses which have been incurred; and the Borrower will indemnify and hold harmless the Administrative Agent and each Lender from and against, and reimburse it for all claims, demands, liabilities, losses, damages, judgments, penalties, costs, and expenses (including, without limitation, reasonable attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by the Administrative Agent or any Lender by reason of, on account of or in connection with any bodily injury or property damage occurring in or upon or in the vicinity of the Property through any cause whatsoever or asserted against the Administrative Agent or any Lender or the Borrower on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Property, or with this Agreement or any of the indebtedness evidenced by the Notes, provided that the foregoing indemnity shall not apply to any such liabilities, losses, damages and expenses of any Lender to the extent arising from the willful misconduct or gross negligence of the Administrative Agent or such Lender. The foregoing indemnity shall be subject to the procedures of Section 11.8. All amounts incurred or paid by the Administrative Agent or any Lender under this Section 6.1(l), together with interest thereon at the Default Rate from the due date until paid by the Borrower, shall be added to the indebtedness secured hereby, shall be secured by the Lien of the Security Instrument and shall be due and payable regardless of whether all or a portion of the Loan is advanced.

(m)    Inspections.    The Administrative Agent, each Lender, and their representatives shall have access to the Property at all reasonable times and shall have the right to enter the Property and to conduct such inspections thereof as they shall deem necessary or desirable for the protection of the Administrative Agent's and the Lenders' interests, after reasonable prior notice to the Borrower (unless an uncured Event of Default exists, in which event no such notice shall be required) and without unreasonably disturbing patrons or otherwise unreasonably interfering with the operation of the Property, and in compliance with all Governmental Requirements relating thereto; provided, that no party shall have the right to conduct intrusive or invasive testing unless such party reasonably believes that hazardous materials are present on the Property or that a violation of Environmental Laws exists at the Property. However, notwithstanding the foregoing, no such party shall be obligated to conduct any inspection of the Property.

(n)    ERISA.    The Borrower shall comply with all applicable requirements of ERISA.

(o)    Books and Records.    The Borrower shall keep and maintain detailed, complete and accurate books, records and accounts reflecting all items of income and expense of the Borrower in connection with the Property and the construction of the Improvements and the results of the operation thereof; and, upon the written request of the Administrative Agent, to make such books, records and accounts available to the Administrative Agent and its representatives for inspection or independent audit at reasonable times upon reasonable advance

83

notice to the Borrower. Any independent audit conducted hereunder shall be at the Administrative Agent's expense unless such audit shall uncover a material error in statements previously delivered to the Administrative Agent, in which case the Borrower shall pay all reasonable costs related thereto.

(p)    Financing Publicity. The Borrower shall permit the Administrative Agent and the Lenders to obtain publicity (subject to the Administrative Agent's approval) in connection with the construction of the Additional Improvements through press releases and participation in such events as ground breaking and opening ceremonies, and to give the Administrative Agent and the Lenders reasonable advance notice of such events and to give the Administrative Agent and the Lenders such assistance as reasonably possible in connection with obtaining such publicity as the Administrative Agent and the Lenders may reasonably request.

(q)    Operation and Maintenance of Property. Except during the course of construction of the Additional Improvements for those portions of the Property affected by such construction, the Borrower shall operate, maintain and preserve, or cause to be operated, maintained or preserved, the Property (i) in good working order and condition, ordinary wear and tear excepted, as a full service, luxury hotel, (ii) in accordance with the performance standards set forth in Article 3 and Exhibit B of the Hotel Management Agreement, (iii) in compliance with all Laws and (iv) as the "The Sky Lodge Private Residence Club and Hotel" in accordance with the terms of the Hotel Management Agreement or such other name approved by the Administrative Agent in its reasonable discretion. The Borrower shall operate the Property and perform all activities incidental thereto, all in accordance and compliance with the terms of this Agreement and the other Loan Documents, the Business Plan, the Operating Budget, and all Permits, applicable Law, the Fractional Ownership Documents and Permitted Exceptions.

(r)    Continuous Operation of the Property. From and after the Opening Date, the Borrower shall continuously operate the Hotel as a luxury hotel subject only to required periods of closure on account of casualty, condemnation and other Force Majeure Events.

(s)    Updated Appraisals. (i) The Borrower agrees that the Administrative Agent shall have the right to obtain an updated Appraisal of the Property, acceptable to the Administrative Agent and at the Borrower's sole expense, (A) once in each two (2) year period commencing on the Closing Date, and (B) upon the occurrence and during the continuance of any Event of Default.

(ii)    In the event that the Administrative Agent shall elect to obtain such an Appraisal, the Administrative Agent may immediately commission an appraiser acceptable to the Administrative Agent to prepare the Appraisal, and the Borrower shall reasonably cooperate with the Administrative Agent and the appraiser in obtaining the necessary information to prepare such an Appraisal. In the event that the Borrower fails to reasonably cooperate with the Administrative Agent in obtaining such an Appraisal, or in the event that the Borrower shall fail to pay for the cost of such an Appraisal (if it is required hereby to pay for the same), within fifteen (15) Business Days following written demand, such event

84

shall constitute an Event of Default hereunder, and the Administrative Agent shall be entitled to exercise all remedies therefore available to it hereunder.

(t)     Operating Budgets.  As soon as practicable and in any event no later than November 1 of each year during the term of the Loan commencing on the November 1 immediately preceding the projected Opening Date, forecasts prepared by the Borrower or the Hotel Operator, in form provided by Hotel Operator in accordance with the Hotel Management Agreement, of cash flow statements for the two (2) fiscal years following such fiscal year then ending (each, an *Operating Budget*) shall be provided to the Administrative Agent for the Administrative Agent's review and Approval, such Approval not to be unreasonably withheld. Each Operating Budget shall contain such detail as is necessary to determine any monthly expenditures from or transfers of funds to the Lockbox Account. Each Operating Budget shall be reviewed and approved in writing by the Administrative Agent. Such initial review and each subsequent review of revised proposed Operating Budgets shall be performed by the Administrative Agent within thirty (30) days of receipt of such proposed Operating Budget. To the extent that the Administrative Agent does not approve all or any portion of a proposed Operating Budget, the Administrative Agent shall provide the Borrower with its written comments with respect thereto. Until an Operating Budget has been approved by the Administrative Agent, the actual expenditures made by the Borrower in the prior fiscal year (except with respect to any such expenditures that were capital in nature), increased by three percent (3%), shall govern and control expenditures from and transfer of funds to the Lockbox Account; provided, that the Borrower may make any expenditure not in excess of ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00) in the aggregate to effectuate immediate action necessary for the protection of the Property or to avoid property damage or personal injury.  In addition, to the extent that the Administrative Agent or such loan servicer approves individual line items in a proposed Operating Budget, such approved line items shall govern and control expenditures on account of such items until such Operating Budget is approved.

(u)     Interest Rate Protection Agreement.  The Borrower shall, within 60 days after the Closing Date, enter into and thereafter maintain an Interest Rate Protection Agreement with respect to the Loan in full force and effect and in form and substance reasonably acceptable to the Administrative Agent until the Loan has been paid in full.  The Borrower shall make all Hedge Payments, when due, to any Counterparty pursuant to the Interest Rate Protection Agreement and, if applicable, shall make any payments to any Counterparty pursuant to the Interest Rate Protection Agreement on account of Hedge Breakage.  The Borrower shall not make any changes, modifications, substitutions, renewals or restatements of or to or enter into any new Interest Rate Protection Agreements with respect to the Loan without the Administrative Agent's prior written approval, which Approval may be granted or withheld in the Administrative Agent's sole discretion.  The Borrower shall, simultaneously with its entering into the Interest Rate Protection Agreement, execute and deliver a Collateral Assignment of Interest Rate Protection Agreement with respect thereto, execute and deliver such UCC financing statements and certifications and deliver such legal opinions with respect thereto as the Administrative Agent shall reasonably require.  Borrower shall deliver to the Administrative Agent an executed counterpart of such Interest Rate Protection Agreement, and an acknowledgment and agreement (either in such Interest Rate Protection Agreement or by separate instrument, in each case in form and substance satisfactory to the Administrative Agent)

8409222_9_08429_88909

85

of such Counterparty acknowledging such assignment and agreeing to make any payments payable under or pursuant to the Interest Rate Protection Agreement directly to the Administrative Agent (the *Counterparty Consent*).  Upon any change, modification, substitution, renewal, restatement or entering into any new Interest Rate Protection Agreement with respect to the Loan, the Borrower shall provide the Administrative Agent with such information and materials and shall enter into such agreements with respect thereto and such modifications to this Agreement and the other agreements as the Administrative Agent shall reasonably require in connection therewith.

       (v)    Impositions.  (i) Subject to the contest rights set forth in clause (ii) below, the Borrower shall pay or cause to be paid all Impositions on or before the due date thereof and in any event before any fine, penalty, interest or cost may be added for non-payment.  The Borrower promptly shall deliver to the Administrative Agent after payment of any Imposition and at other times, upon request, copies of official receipts or other evidence satisfactory to the Administrative Agent evidencing the payment of the Impositions.  The Borrower shall not claim or demand or be entitled to any credit or credits on account of the obligations under the Loan Documents for any Imposition or any part thereof and no deduction shall otherwise be made or claimed from the taxable value of the Property or any part thereof, by reason of the Security Instrument or any of the Borrower's Obligations under the Loan Documents.

       (ii)    After prior notice to the Administrative Agent and provided no Default or Event of Default shall then exist, the Borrower at its sole cost and expense may contest, or cause to be contested, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity or application, in whole or in part, of any Imposition defer the payment thereof or compliance therewith, subject, however, to the following conditions:

       (1)    such proceedings shall suspend the collection thereof from the Borrower, the Administrative Agent, the Lenders and the Property;

       (2)    neither the Property, any Rents nor any part thereof or interest therein, in the judgment of the Administrative Agent, would be in any danger of being sold, forfeited, terminated, canceled or lost in any respect;

       (3)    the Borrower shall have furnished such security, if any, as may be required in the proceedings or as may be reasonably requested by the Administrative Agent to ensure the payment of any Imposition together with any interest or penalties which may become due in connection therewith;

       (4)    the non-payment of the whole or any part of any Imposition or other charge during the pendency of any such action will not result in the delivery of a tax deed to the Property or any part thereof, because of such non-payment; and

54894228_9_084291_00980

(5)    the payment of any sums required to be paid under this Agreement and the other Loan Documents (other than any unpaid Imposition at the time being contested in accordance with this Section 6.1(v)) shall not be interfered with or otherwise affected;

provided, that, the conditions set forth in clauses (1), (3) and (4) shall not be conditions to a permitted contest pursuant to this Section 6.1(v) if the Borrower pays or causes to be paid such Imposition.

(w)    <u>Hotel Management Agreement</u>.  The Borrower shall (i) perform or cause to be performed the Borrower's obligations under the Hotel Management Agreement, (ii) enforce the performance by Hotel Operator of all of Hotel Operator's obligations under the Hotel Management Agreement in all material respects, (iii) give the Administrative Agent prompt notice and a copy of any notice of default, event of default, termination or cancellation sent or received by the Borrower, and (iv) promptly deliver to the Administrative Agent executed copies of any amendment or modification of the Hotel Management Agreement.

(x)    <u>Operating Cash</u>.  The Borrower or Hotel Operator shall maintain adequate operating cash as is customary for the operation of similar luxury hotels and as required under the Hotel Management Agreement.

(y)    <u>Liquor License</u>.  (i)  The Borrower shall maintain or cause to be maintained a liquor license for the Hotel in full force and effect until a substitute or replacement liquor license is obtained and a copy thereof is delivered to the Administrative Agent.

(ii)    If the liquor license is not held in the name of the Borrower, the Borrower shall deliver to the Administrative Agent an assignment of such license from the holder of the license in a form reasonably satisfactory to the Administrative Agent, or, if the liquor facilities are to be leased to a third party (including, without limitation, an Affiliate of the Borrower), an assignment and subordination agreement reasonably satisfactory to the Administrative Agent, and if applicable Law requires receivables from sales of alcoholic beverages to be accounted for separately, such other documentation as is reasonably satisfactory to the Administrative Agent.

(z)    <u>Major Contracts</u>.  Prior to entering into any Major Contract, the Borrower shall obtain the prior written consent of the Administrative Agent, which consent shall not be unreasonably withheld, conditioned or delayed.  Upon entering into any Major Contract, the Borrower and the Administrative Agent shall amend Schedule A of the Pledge and Security Agreement to include such Major Contract as an "Assigned Agreement" and the Borrower shall use diligent efforts to obtain the consent of the third party to such Major Contract to the assignment in the form of Exhibit A to the Pledge and Security Agreement.

(aa)    <u>FF&E Reserve</u>.  The Borrower shall establish and fund the FF&E Reserve Account in accordance with the provisions of Article 4.  Without limiting the requirements of Article 4, the Borrower shall deposit, or shall cause the Hotel Operator to deposit, into the FF&E

87

Reserve Account, all funds that the Borrower is required to reserve or expend for FF&E pursuant to the Hotel Management Agreement.

Section 6.2    Construction Covenants.  The Borrower covenants and agrees, with respect to the construction of the Additional Improvements as follows:

(a)    Construction Consultant.

(i)    The Administrative Agent shall retain the Construction Consultant, at the reasonable cost of the Borrower, to perform the following services on behalf of the Administrative Agent and the Lenders:

(1)    To review and advise the Administrative Agent whether, in the opinion of the Construction Consultant, the Plans and Specifications are satisfactory;

(2)    To review Draw Requests and Change Orders;

(3)    To review the amount and sufficiency of Borrower's Equity Investment prior to the Initial Advance of the Loan;

(4)    To make quarterly inspections for the purpose of assuring that construction of the Improvements to date is in accordance with the Plans and Specifications in all material respect and to approve the Borrower's then current Draw Request as being consistent with the Borrower's obligations under this Agreement, including, *inter alia*, an opinion as to Borrower's continued compliance with the provisions of Section 3.2(d); and

(5)    To review and approve the Project Budget and any proposed revisions thereto.

(ii)    The fees of the Construction Consultant shall be paid by the Borrower within twenty (20) days after billing therefore and reasonable out-of-pocket expenses actually incurred by the Administrative Agent on account thereof shall be reimbursed to the Administrative Agent within twenty (20) days after written request therefore, but neither the Administrative Agent nor the Construction Consultant shall have any liability to the Borrower on account of: (i) the services performed by the Construction Consultant; (ii) any neglect or failure on the part of the Construction Consultant to properly perform its services; or (iii) any approval by the Construction Consultant of construction of the Additional Improvements.  Neither the Administrative Agent nor the Construction Consultant assumes any Obligation of the Borrower or any other Person concerning the quality of construction of the Additional Improvements or the absence therefrom of defects.

88

(iii)   The Borrower acknowledges that: (A) the Construction Consultant has been retained by the Administrative Agent to act as a consultant and only as a consultant to the Administrative Agent and the Lenders in connection with the construction of the Additional Improvements and has no duty to the Borrower; (B) the Construction Consultant shall in no event have any power or authority to give any approval or consent or to do any other act or thing which is binding upon the Lenders; (C) the Administrative Agent reserves the right to make any and all decisions required to be made by the Administrative Agent under this Agreement or the other Loan Documents and to give or refrain from giving any and all consents or approvals required to be given by the Administrative Agent under this Agreement or the other Loan Documents and to accept or not accept any matter or thing required to be accepted by the Administrative Agent under this Agreement or the other Loan Documents, and without being bound or limited in any manner or under any circumstance whatsoever by any opinion expressed or not expressed, or advice given or not given, or information, certificate or report provided or not provided, by the Construction Consultant with respect thereto; (D) the Administrative Agent reserves the right in its sole and absolute discretion to disregard or disagree, in whole or in part, with any opinion expressed, advice given or information, certificate or report furnished or provided by the Construction Consultant to Administrative Agent or any other Person or party; and (E) the Administrative Agent reserves the right to replace the Construction Consultant with another inspecting engineer at any time and without prior notice to or approval by the Borrower.

(b)   <u>Development Agreement.</u>

(i)   The Borrower shall perform the Borrower's obligations under the Development Agreement;

(ii)   The Borrower shall enforce the Development Agreement in the best interests of the Project using sound business judgment;

(iii)   The Borrower shall give the Administrative Agent prompt notice and a copy of any notice of default, event of default, termination or cancellation sent or received by the Borrower;

(iv)   The Borrower shall promptly deliver to the Administrative Agent executed copies of any amendment or modification of the Development Agreement;

(v)   The Borrower shall not waive any of the material obligations of the Developer thereunder without the Administrative Agent's prior written consent; and

(vi)   The Borrower shall not take any action that would relieve the Developer from its material obligations under the Development Agreement without the Administrative Agent's prior written consent.

(c)   <u>General Contractor's Agreement.</u>

(i)   The Borrower shall perform the Borrower's obligations under the General Contractor's Agreement;

(ii)   The Borrower shall enforce the General Contractor's Agreement in the best interests of the Project using sound business judgment;

(iii)   The Borrower shall give the Administrative Agent prompt notice and a copy of any notice of default, event of default, termination or cancellation sent or received by the Borrower;

(iv)   The Borrower shall promptly deliver to the Administrative Agent executed copies of any amendment or modification of the General Contractor's Agreement;

(v)   The Borrower shall not waive any of the material obligations of the General Contractor thereunder without the Administrative Agent's prior written consent; and

(vi)   The Borrower shall not take any action that would relieve General Contractor from its material obligations to construct the Additional Improvements according to the Plans and Specifications without the Administrative Agent's prior written consent.

(d)   <u>Architect's Contract.</u>

(i)   The Borrower shall perform the Borrower's obligations under the Architect's Contract;

(ii)   The Borrower shall enforce the Architect's Contract in the best interest of the Project using sound business judgment;

(iii)   The Borrower shall give the Administrative Agent prompt notice and a copy of any notice of default, event of default, termination or cancellation sent or received by the Borrower;

(iv)   The Borrower shall promptly deliver to the Administrative Agent executed copies of any amendment or modification of the Architect's Contract;

(v)   The Borrower shall not waive any of the material obligations of the Architect thereunder without the Administrative Agent's prior written consent; and

90

(vi)    The Borrower shall not take any action that would relieve the Architect from its material obligations under the Architect's Contract without the Administrative Agent's prior written consent.

(e)    Construction Manager's Agreement.

(i)    The Borrower shall perform the Borrower's obligations under the Construction Manager's Agreement;

(ii)    The Borrower shall enforce the Construction Manager's Agreement in the best interests of the Project using sound business judgment;

(iii)    The Borrower shall give the Administrative Agent prompt notice and a copy of any notice of default, event of default, termination or cancellation sent or received by the Borrower;

(iv)    The Borrower shall promptly deliver to the Administrative Agent executed copies of any amendment or modification of the Construction Manager's Agreement;

(v)    The Borrower shall not waive any of the material obligations of the Construction Manager thereunder without the Administrative Agent's prior written consent; and

(vi)    The Borrower shall not take any action that would relieve Construction Manager from its material obligations to manage the construction of the Additional Improvements according to the Plans and Specifications without the Administrative Agent's prior written consent.

(f)    Total Project Costs and Expenses.  The Borrower shall promptly pay when due (without duplication and subject to the Borrower's right to contest set forth in the following sentence):  (i) all Project Costs; (ii) all Taxes imposed upon or assessed against the Property, or any part thereof, or upon the revenue, rents, issues, income and profits of the Property, or any part thereof, or arising in respect of the occupancy, use or possession thereof; and (iii) all utility fees and charges in connection with the Property, and to provide the Administrative Agent with receipted bills therefore if requested in writing by the Administrative Agent as soon as said receipted bills are available.  The Borrower will have the right to contest the validity or application of any of the above costs by appropriate legal proceedings, so long as: (A) such legal proceedings shall be prosecuted with diligence by the Borrower and shall operate to prevent any taking or closing or shutting down of the Property or any portion thereof, by any Governmental Authority and has the effect of staying any type of sale or forfeiture of the Property or any part thereof for failure to comply; (B) the Borrower will have deposited with the Administrative Agent cash collateral, a bond or such other security satisfactory to the Administrative Agent in each case, on such terms as may be satisfactory to the Administrative Agent, in an amount as may be deemed necessary by the Administrative Agent (in its reasonable judgment), sufficient to pay any fines, penalties, charges and interest thereon which may be awarded or assessed and

91

which may become a charge or Lien upon the Property or which may in any way take parity with or priority over the Lien of the Security Instrument, and subject to increase at the request of the Administrative Agent when the Administrative Agent reasonably determines a greater amount may be required to make such payments; (C) such proceeding shall not subject the Administrative Agent, any Lender or the Borrower to the risk of any criminal liability; (D) the Borrower gives the Administrative Agent (y) frequent notice upon the commencement and during the continuation of any such proceeding of the status thereof and (z) confirmation on such periodic basis as the Administrative Agent may request in writing of the continuing satisfaction of the conditions set forth in clauses (A) through (C) of this Section 6.2(f); and (E) the Borrower, upon a final determination of such contest, takes all steps necessary to comply with any requirements arising therefrom. If the Borrower shall fail at any time to comply with the above conditions to contest or the Property or any part thereof is, in the reasonable judgment of the Administrative Agent, in any imminent danger of being forfeited or lost or the value of the Collateral being materially adversely impacted, the Administrative Agent may require the Borrower to, and the Borrower will, thereupon make the payment which is the subject of the contest. Upon the occurrence of an Event of Default under the Loan Documents, the Administrative Agent may, at its option, credit all or any part of any cash, bond or other security then held by it to the indebtedness and other sums secured by the Security Instrument in such order as the Administrative Agent may elect.

(g) **Completion of Construction.** The Borrower shall (i) cause the commencement of construction of the Additional Improvements to occur no later than one hundred twenty (120) days after the Closing Date, (ii) diligently pursue construction of the Additional Improvements in a good and workmanlike manner, (iii) achieve Substantial Completion on or prior to the Completion Date, (iv) achieve Final Completion within ninety (90) days after Substantial Completion and (v) provide a copy of the Certificate of Occupancy for the Improvements to the Administrative Agent within five (5) days of its receipt by the Borrower, all substantially in accordance with the Plans and Specifications and in material compliance with all restrictions, covenants and easements affecting the Property, all Laws, and all Permits, and with all terms and conditions of the Loan Documents, free from any Liens, claims or assessments (actual or contingent) asserted against the Property for any material, labor or other items furnished in connection therewith.

(h) **Correction of Defects.** The Borrower shall promptly correct all defects in the Additional Improvements or any material departure from the Plans and Specifications not previously approved by the Administrative Agent to the extent required hereunder

(i) **Right of Administrative Agent to Inspect Property.** The Borrower shall permit the Administrative Agent, the Construction Consultant and their representatives and designees, to enter upon the Property, inspect the Additional Improvements and all materials to be used in the construction thereof (without unreasonably disturbing patrons or otherwise interfering with the operation of the Property) and to examine the Plans and Specifications which are or may be kept at the construction site at all reasonable times and with reasonable advance notice and will cooperate, and use reasonable efforts to cause the Major Contractors and the Major Subcontractors to cooperate with the Construction Consultant to enable it to perform its functions hereunder; during construction, to permit the Administrative Agent and each Lender at

92

their sole cost (subject to the last sentence of this Section 6.2(i)) to maintain a customary sign or signs on the Property in a location clearly visible to the public or otherwise publicize the Administrative Agent's and each Lender's role as construction lender by reference to the Administrative Agent and the Lenders in the Borrower's signage on the Property.    The Administrative Agent shall coordinate the placement and maintenance of signs on the Property, in each Lender's standard form, and no Lender shall have any independent right to display any signs on the Property.  The content, layout and format of all such signs shall be subject to the Administrative Agent's sole and absolute approval.

      (j)    Plans and Specifications; Change Orders.  The Borrower has caused the Architect to prepare proposed Plans and Specifications for the Additional Improvements and has submitted such proposed Plans and Specifications to the Administrative Agent and Construction Consultant for review.    After the Plans and Specifications have been Approved by the Administrative Agent, the Borrower may request changes to the Plans and Specifications or to the Project Budget (each, a *Change Order*) consisting of additions to, deletions from or other revisions in the work provided for in the Plans and Specifications or changes in the Project Costs shown in the Project Budget, as applicable (each as modified from time to time in accordance with this Section).  All Change Orders:

      (i)    shall be in writing, numbered in sequence, and signed by the applicable contractor or subcontractor, include a description of the changes and a certification by the General Contractor that it has reviewed the proposed Change Order and that the applicable Additional Improvements, if constructed in accordance with the Plans and Specifications (as modified by the proposed Change Order and any prior Change Orders), will comply with all Laws; provided, that the Administrative Agent, upon receipt of any such Change Order may, in its reasonable discretion, require the Borrower to obtain from each of the Architect and the Construction Consultant, its review, approval and certification (in the same manner as required above of the General Contractor) with respect to such Change Order;

      (ii)    shall contain estimates by the Borrower (supported by corresponding estimates by the applicable contractor or subcontractor) of (A) any increase or decrease in the Total Project Costs that would be caused by the Change Order (or, if the Change Order involves changes both increasing and decreasing such costs, both the amount of the increase and the decrease shall be stated) and whether such Change Order would result in any item of Project Cost exceeding any line item set forth in the Project Budget and (B) the aggregate amount of changes in estimated costs to complete the Improvements, both increases and decreases, previously made; provided, that the Administrative Agent, upon receipt of any such Change Order may, in its reasonable discretion, require the Borrower to obtain from each of the Architect and the Construction Consultant, its review, approval and certification with respect to such Change Order;

93

(iii)    shall require the Administrative Agent's prior written approval, which approval shall not be unreasonably withheld, conditioned or delayed, if such Change Order increases the Total Project Costs by ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00) or more individually or in the aggregate with previous Change Orders or would result in a Shortfall; and

(iv)    shall require the Administrative Agent's prior written approval if such Change Order materially modifies any design element, adversely affects any structural element or adversely affects the Project Schedule.

(k)    Bonds.  From and after the date on which the Borrower shall enter into the General Contractor's Agreement, the Borrower shall furnish to the Administrative Agent and maintain such Performance Bonds with respect to the obligations of (i) the General Contractor under such General Contractor's Agreement and (ii) each Major Subcontractor, as applicable.

(l)    Notice of Commencement.  The Borrower shall cause General Contractor to record a notice of commencement of the work with the county recorder for the county or counties where the work is located within 30 days after commencement of the work, which notice of commencement shall include the information required by Subsection (10) of Section 38-1-27, Utah Code Annotated, as a condition of Owner's having the right to assert a defense of failure to comply with the preliminary notice requirements of such section.

Section 6.3   Reporting Requirements.  The Borrower covenants and agrees, from the date of this Agreement, and so long as any of the Obligations under the Loan Documents remain unpaid or unperformed:

(a)    Financial Reports.  The Borrower shall cause to be prepared and delivered to the Administrative Agent and each of the Lenders, the following financial statements, each of which shall be accompanied by a certificate from the Borrower that such items being delivered are true, accurate and complete in all material respects and that each financial statement fairly presents the financial condition of each Loan Party (as applicable) as of the date thereof (except with respect to financial information provided by the Hotel Operator; provided, that (x) the Hotel Operator certifies as to the accuracy of such information and (y) the Borrower certifies that it has no knowledge of any inaccuracy, inconsistency or omission with respect to such information):

(i)    Monthly.  Reasonably detailed monthly operating reports to the Administrative Agent, based on information available to the Borrower, that reflect operational results of the Hotel for each Accounting Month (as defined in the Hotel Management Agreement).  The Borrower shall deliver each operating report to the Administrative Agent on or before the 20th day of the Accounting Month following the Accounting Month(or partial month) to which such operating report relates.  The reports shall be in the format (which may be amended from time to time) of operating reports provided to the Borrower by the Hotel Operator pursuant to the Hotel Management Agreement, and include such

94

additional information as may reasonably be required by the Administrative
Agent.  At a minimum, monthly operating reports shall include:  (i) a balance
sheet including current month and prior year-end comparisons and differences in
reasonable detail; (ii) an income and expense statement for the month in question
and for the elapsed portion of the current Operating Year through the end of such
month; (iii) a statement of net cash flow from operations in reasonable detail for
such month and such elapsed portion of the current Operating Year; (iv) a
statement of the amount of the Hotel Operator's Fee, Impositions (as defined in
the Hotel Management Agreement) and any other amounts payable or expenses
reimbursable to Hotel Operator; and (v) a schedule of Capital Expenses showing,
in reasonable detail, items budgeted, actual expenditures to date and the amount
of expenditures projected for completion.   Such reports also shall set forth
variances that have occurred and that are anticipated between the applicable
Operating Budget (both the initially approved Operating Budget and any
amendment thereof) and actual results in a monthly variance report (along with
the statement mentioned above).

(ii)    Annual.  By April 30 of each Operating Year, audited financial
statements for the preceding Operating Year, consisting, at a minimum, of a
balance sheet, a statement of earnings and a statement of cash flows.  The annual
financial statements shall contain a certificate of the Approved Accountant in
favor of the Administrative Agent to the effect that, subject to any qualifications
contained therein, the financial statements fairly present, in conformity with
GAAP, the financial position, results of operations and cash flows of the Hotel for
the Operating Year then ended.

(iii)    No Default Certificate.  A certificate from an officer of the
Borrower acceptable to the Administrative Agent certifying whether an Event of
Default has occurred and is continuing under the Loan Documents shall be
delivered to the Administrative Agent no later than fifteen (15) days after the last
day of each of the first three (3) calendar quarters occurring during any Loan Year
and no later than fifteen (15) days after the end of each Loan Year.

(iv)    Debt Service Coverage Ratio.  From and after the first (1st)
anniversary of the Opening Date, together with the monthly financial statements
required by subsection (i) above, a certificate from an officer of the Borrower
acceptable to the Administrative Agent certifying as to the Debt Service Coverage
Ratio for the Test Period ending as of the end of the applicable month.

(b)    Business Plan.  On or before November 1 of each calendar year during the
term hereof, the Borrower shall prepare and submit to the Administrative Agent, for the calendar
year beginning on the next following January 1, a proposed overall business and management
plan setting forth the overall strategic plan for managing, operating, financing, and otherwise
dealing with the Property, and which shall include all information specified in Exhibit DD.
When approved in writing by the Administrative Agent, which approval shall not be
unreasonably withheld, conditioned or delayed, such plan and updates thereof shall be the

95

*Business Plan.* The Borrower shall be bound by, and the Borrower shall use all commercially reasonable efforts to implement and comply with, the Business Plan. Any material changes to or material deviations from the Business Plan by the Borrower shall require the prior written consent of the Administrative Agent, which approval shall not be unreasonably withheld, conditioned or delayed.

(c)    Unit Sales. The Borrower shall furnish to the Lender on a weekly basis a summary of the sales and prospective sales of Fractional Ownership Units, similar to the format set forth in Exhibit EE, which summary shall include (i) a list of Fractional Ownership Units under contract or reservation, identifying the unit, purchase price, Purchaser, amount of Deposit and specified closing date, (ii) a log of the number of inquiries made in person, telephonically or via email or website about the purchase of Fractional Ownership Units, (iii) a list of prospective Purchasers and (iv) such other information as the Administrative Agent may reasonably request from time to time.

(d)    Hotel Operator Reports. The Borrower shall furnish to the Administrative Agent all written reports given to or received by the Borrower from the Hotel Operator pursuant to the Hotel Management Agreement within five (5) days of the Borrower's receipts thereof. The Borrower shall from time to time, upon written request by the Administrative Agent, cause the Hotel Operator to provide the Administrative Agent with reports in regard to the management of the Property, in such form and detail as reasonably requested by the Administrative Agent.

(e)    Governmental Notices. Borrower shall furnish to the Administrative Agent all written notices given to or received from Governmental Authorities by the Borrower or the Hotel Operator and all written reports on the status of any Default or Event of Default under any Loan Document or any matter which could reasonably be expected to result in a Material Adverse Effect, shall be delivered within three (3) days of the Borrower's receipt of such notice or report;

(f)    Developer's Reports. The Borrower shall from time to time, upon written request by the Administrative Agent, cause the Developer to provide the Administrative Agent with reports in regard to the status of the design, development and construction of the Project, in such form and detail as reasonably requested by the Administrative Agent

(g)    General Contractor's Reports. The Borrower shall from time to time, upon written request by the Administrative Agent, cause the General Contractor to provide the Administrative Agent with reports in regard to the status of construction of the Additional Improvements, in such form and detail as reasonably requested by the Administrative Agent.

(h)    Architect's Reports. The Borrower shall from time to time, upon written request by the Administrative Agent cause the Architect to provide the Administrative Agent with reports in regard to the status of construction of the Additional Improvements, in such form and detail as reasonably requested by the Administrative Agent.

(i)    Construction Manager's Reports. The Borrower shall from time to time, upon written request by Administrative Agent, cause the Construction Manager to provide the

4476228_8_BKKBM_62689

Administrative Agent with reports in regard to the management of the construction of the Additional Improvements, in such form and detail as reasonably requested by the Administrative Agent.

(j)   Laborers, Subcontractors and Materialmen.   The Borrower shall notify the Administrative Agent immediately, and in writing, if it receives any default notice, notice of Lien or demand for past due payment, written or oral, from any laborer, subcontractor or materialmen.

(k)   Ownership of Personalty.   The Borrower shall furnish to the Administrative Agent, if the Administrative Agent so requests, photocopies of the fully executed contracts, bills of sale, receipted vouchers and agreements, or any of them, under which the Borrower claims title to the materials, articles, fixtures and other Personal Property used or to be used in the construction or operation of the Improvements.

(l)   Other Reports.   The Borrower shall furnish such other reports and information (including, without limitation, bank statements) as the Administrative Agent shall reasonably require in writing which shall be delivered to the Administrative Agent as soon as practicable but in no event later than thirty (30) days after the Administrative Agent's request therefore.

Section 6.4   Negative Covenants.   The Borrower covenants and agrees, from the date of this Agreement, and so long as any of the Obligations under the Loan Documents remain unpaid or unperformed that it shall not (directly or indirectly) do any of the following:

(a)   No Amendments to Material Agreements.   Amend or otherwise modify any Major Contract, the Plans and Specifications, the Project Budget (except as provided in Section 6.2(j)), the Architect Contract, the General Contractor's Agreement or any organizational document of the Borrower.

(b)   No Debt.   Incur any Debt, other than Permitted Indebtedness.   No other Debt other than the Loan may be secured (senior, subordinate or *pari passu*) by the Property.

(c)   No Transfers or Encumbrances.

(i)   Permit any direct or indirect sale, conveyance, grant, lease, pledge, transfer, assignment or encumbering of the Property, or any equitable or beneficial interest therein, to any Person (including to Affiliates of the Borrower) other than (A) the pledges securing the Mezzanine Loan pursuant to the Mezzanine Loan Documents), (B) any transfer of the ownership interests in the Borrower to the Mezzanine Lender or its Affiliate upon an exercise of remedies by the Mezzanine Lender under the Mezzanine Loan Documents, to the extent permitted by, and subject to the terms and conditions of, the Intercreditor Agreement.

(ii)   Create, incur, assume or permit to exist any Lien on the Property (including negative pledges) except for (A) mechanic and materialmen liens that

97

are adequately bonded or with respect to which the Title Company has provided the Administrative Agent with affirmative insurance and are less than FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) in the aggregate, and (B) the Permitted Exceptions.

(iii)    Cause or permit any direct or indirect sale, conveyance, transfer, assignment, encumbrance, pledge, hypothecation or granting of any ownership interest in or right to receive distributions from the Borrower or any Person that owns an ownership interest in Borrower or any other "upper-tier entity". The Borrower shall not merge or consolidate with or into any other firm or corporation or enter into any partnership or joint venture with any other Person.

(iv)    Subject the Property or any part thereof to any easement, restriction or covenant (including any restriction or exclusive use provision in any Lease or other occupancy agreement) other than the Condominium Declaration without the prior approval of the Administrative Agent which shall not be unreasonably withheld, conditioned or delayed.

(d)    No Distributions. Make any distribution or other disbursements (including direct or indirect redemptions of membership interests) to Borrower's Member, Affiliates or Persons owned by or related to Borrower's Member until the Loan has been repaid in full. Notwithstanding the immediately preceding sentence, (i) pursuant to Article 4, the Borrower may use certain funds described therein to pay Operating Expenses, interest on the Outstanding Principal and the Amortization Amount, (ii) after the first anniversary of the Opening Date, the Borrower shall be permitted to make distributions of Net Operating Income (after payment of all interest payable on the Outstanding Principal and all payable Amortization Amounts) so long as (a) no Default or Event of Default has occurred and is continuing, (b) all reserves required to be funded pursuant to any Loan Document have been funded prior to any distribution, and (c) the Debt Service Coverage Ratio for the Property for the applicable Reporting Period shall, both before and after giving effect to any distribution of Net Operating Income be at least equal to the Hurdle DSCR.

(e)    Limits on Guaranties. Guarantee any Obligation of any Person to any other Person other than the Administrative Agent and the Lenders, except for guaranties in favor of Persons providing construction or architectural or other services in connection with the construction and operation of the Additional Improvements and under other agreements approved by the Administrative Agent.

(f)    No Litigation. Initiate or participate in, without the written consent of the Administrative Agent, any material litigation, proceedings or investigations which (A) contest the consummation of the contemplated transaction or (B) could reasonably be expected to result in a Material Adverse Effect.

(g)    Leases. Without the prior written consent of Administrative Agent (which consent shall not be unreasonably withheld, conditioned or delayed), in each instance, enter into, amend, modify, cancel or terminate or accept a surrender of any Lease.

98

(h)     Hotel Management Agreement.  Terminate, cancel, modify or amend the Hotel Management Agreement without the Administrative Agent's prior written approval, which may be granted or denied in the Administrative Agent's sole discretion.

Section 6.5     Single Purpose Entity.  The Borrower covenants and agrees, from the date of this Agreement, and so long as any of the Obligations under the Loan Documents remain unpaid or unperformed that it:

(a)     has not and shall not amend, modify or otherwise change, or permit any other party to amend, modify or otherwise change the Borrower's certificate of formation, operating agreement or other formation agreement or documents without the Administrative Agent's written consent;

(b)     has not and shall not enter into any transaction of merger or consolidation, or liquidate or dissolve itself (or suffer any liquidation or dissolution), or acquire by purchase or otherwise all or substantially all the business or assets of, or any stock or other evidence of beneficial ownership of, any Person;

(c)     has not and shall not guarantee or pledge its assets for the benefit of, or otherwise become liable on or in connection with, any Obligation of any other Person; provided, that the Borrower may establish an unsecured line of credit in the amount of $250,000.00 for use by the Hotel Operator in accordance with the terms of the Hotel Management Agreement;

(d)     has not and shall not own any asset other than (i) the Property, and (ii) incidental personal and intangible property necessary for the development or operation of the Property;

(e)     has not and shall not engage, directly or indirectly, in any business other than the acquisition, ownership, management, leasing, disposition, construction, renovation and operation of the Property as the Hotel;

(f)     except for the Hotel Management Agreement and the Development Agreement, has not and shall not enter into any contract or agreement with Borrower's Member or any Affiliate of the Borrower or Borrower's Member without the Administrative Agent's written consent;

(g)     has not and shall not make any loans or advances to any third party (including any Affiliate) other than trade debt incurred in the ordinary course of business;

(h)     has been, is and will be Solvent and able to pay its Debts from its assets as the same shall become due;

(i)     has and will conduct and operate its business as presently conducted and as is required by the terms of the Loan Documents;

(j)     has and will maintain financial statements, books and records and bank accounts separate from those of its Affiliates, including Borrower's Member;

99

(k)   has been, is and will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any Affiliate of Borrower or of Borrower's Member);

(l)   has and will file any required tax returns;

(m)   has and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(n)   has not and will not seek the dissolution or winding up, in whole or in part, of the Borrower;

(o)   has not and will not commingle its funds and other assets with those of any Affiliate of Borrower or Borrower's Member or any other Person;

(p)   has and will maintain its assets in such a manner that it is not costly or difficult to segregate, ascertain or identify its individual assets from those of any Affiliate of Borrower or Borrower's Member or any other Person;

(q)   has not, does not and will not hold itself out to be responsible for the debts or obligations of any other Person;

(r)   has not and will not do any act which would make it impossible to carry on its ordinary business;

(s)   has not and will not possess or assign the Property or incidental personal property necessary for the operation of the Property for other than a business or company purpose;

(t)   has not and will not sell, encumber or otherwise dispose of all or any portion of the Property or incidental personal property necessary for the operation of the Property;

(u)   has not and will not hold title to its assets other than in its name; and

(v)   has not and will not institute proceedings to be adjudicated bankrupt or insolvent; or consent to the institution of bankruptcy or insolvency proceedings against it; or file a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy; or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Borrower or a substantial part of the Borrower's property; or make any assignment for the benefit of creditors; or admit in writing its inability to pay its debts generally as they become due; or take any action in furtherance of any such action.

## ARTICLE 7

### FRACTIONAL OWNERSHIP UNITS

100

**Section 7.1**    <u>Fractional Ownership Conversion Requirements</u>.  The Borrower shall, within 30 days after the Closing Date, submit the Property to the provisions of the Condominium Act and the Timeshare Act by recording the Condominium Declaration and the final Condominium Plat meeting the requirements of applicable Law, the Condominium Documents and each Purchase Agreement, in the public records of Summit County, Utah, and satisfy all of the requirements thereof and of any other applicable Law or restriction necessary to create a valid condominium regime, provided that the form and substance of the Condominium Documents including the unit designations, descriptions, floor plans, sale prices and proposed form of Purchase Agreement for the Fractional Ownership Units, as well as the description of common elements and breakdown of common interests appurtenant to each Fractional Ownership Unit, shall be subject to the written Approval of the Administrative Agent and its counsel prior to the recordation of the Condominium Declaration and Condominium Plat in the public records of Summit County, Utah, such approval not to be unreasonably withheld.  The Borrower shall, upon its receipt of same, deliver to the Administrative Agent a certified copy of the recorded Condominium Declaration and Condominium Plat. The Borrower shall not cause or permit any amendment, modification, supplement, waiver or termination of any Condominium Document or Fractional Ownership Document without the prior written approval of the Agent. Notwithstanding the preceding sentence, Borrower may make modifications to the Condominium Documents or Fractional Ownership Documents without the Administrative Agent's approval, provided that such modifications, individually and in the aggregate (i) are reasonable and nonmaterial and (ii) do not violate the Condominium Act or Timeshare Act or trigger any rescission rights of any Purchaser under applicable Law or any Purchase Agreement. The Borrower shall provide the Administrative Agent with copies of all such modifications within 10 Business Days of their execution.  The Borrower shall not abandon or change its plan for submission of the Property to a condominium regime and shared interest form of ownership. Neither the Administrative Agent nor any Lender shall be required to join in any Condominium Documents or Fractional Ownership Documents, except to the extent required by applicable Law.  The Borrower shall within 10 Business Days from receipt of the same, furnish to the Administrative Agent copies of all financials, reports, statements, information, reporting disclosures, budgets and other documents received under or pursuant to any of the Condominium Documents, Fractional Ownership Documents or Law, including the Condominium Act or Timeshare Act, including financial information relating to any Condominium Association or membership club.  The Borrower shall pay all assessments for common charges and expenses and all real estate taxes and assessments and insurance premiums made against or relating to the portion of the Property then owned by Borrower as required by the Condominium Documents, whether pursuant to such Condominium Declaration, any by-laws of the Condominium adopted in connection therewith or otherwise, as the same shall become due and payable.  The Borrower shall (1) comply in all material respects with all of the terms, covenants and conditions on such party's part to be complied with pursuant to such Condominium Declaration, by-laws of the condominium, any rules and regulations that may be adopted for the Condominium or any other Condominium Document, as the same shall be in force and effect from time to time (including, without limitation, all obligations of developers or sponsors under the Condominium Documents or Condominium Act), (2) promptly notify the Administrative Agent of all matters of which it has received written notice that a default by the Borrower under, or noncompliance with, any of the Condominium Documents or Fractional Ownership Documents exists, and shall do all such

101

2409SZBL_S_004291_00909

acts and undertake all reasonable steps and institute all such proceedings as shall be reasonably necessary to cure or avert such default and shall forward to the Administrative Agent any notices it receives in regard to any of the foregoing matters within five days after receiving the same and (3) not, without the prior written consent of the Administrative Agent, exercise any right it may have to vote for or permit its representatives on the board of directors or other governing board for the Condominium Association to vote or take any action whatsoever respecting: (A) the nature and amount of any insurance covering all or a part of the Improvements and the disposition of any proceeds thereof in a manner contrary to the provisions of the Condominium Documents; the manner in which any condemnation or threat of condemnation of all or a part of the Property shall be defended or settled and the disposition of any award or settlement in connection therewith in a manner contrary to the provisions of the Condominium Documents, (B) any election to repair or restore the Improvements (excepting minor or ordinary repair or restoration), (C) any additions or improvements to the common elements of the Condominium in a manner contrary to the provisions of the Condominium Documents, (D) any partition of all or a part of the property subject to the Condominium Declaration, (E) the construction of any additions or improvements to the Property or any repair, rebuilding or restoration of all or a portion of the Property requiring an expenditure of more than $50,000, (F) the payment of any amount in excess of insurance or condemnation proceeds available in connection therewith in a manner contrary to the provisions of the Condominium Documents, (G) the assessment of any expenses contrary to the provisions of the Condominium Documents, (H) the acquisition of any interest pursuant to any purchase option or right of first refusal or offer in the applicable Condominium Documents, (I) any removal of all or any portion of the Property from the provisions of the Condominium Documents and (J) all questions relating to the amount of payment of common charges thereunder.

Section 7.2    Fractional Ownership Units Marketing and Conversion.    The Borrower shall on or before April 30, 2006, take all actions as shall be required under applicable Law or the terms of the Fractional Ownership Documents to (i) establish the hotel condominium units as "timeshare estates" under applicable Law (the *Fractional Ownership Units*) and (ii) permit the Borrower to enter into valid and binding Purchase Agreements with respect to the Fractional Ownership Units.

Section 7.3    Sale of Units.    The Borrower shall use commercially reasonable efforts to market and sell the Fractional Ownership Units or fractional interests therein in accordance with the terms of this Agreement, the Condominium Declaration and the other Fractional Ownership Documents. As soon as is practicable after the Closing Date, the Borrower shall use all reasonable efforts to convert all existing Reservations to Bona Fide Sales Contracts.

(a)    The Borrower shall comply in all material respects with all applicable Laws and the provisions of the Fractional Ownership Documents in connection with the offering and sale of Fractional Ownership Units.

(b)    Without the prior written consent of the Administrative Agent, the Borrower shall not, directly or indirectly:

102

DOC##### 9 ##### #####

(i)　　enter into any Purchase Agreement with respect to any Fractional Ownership Unit unless (A) such purchase and sale agreement is a Bona Fide Sales Contract, (B) the sale price is greater than or equal to the Minimum Purchase Price, (C) the sale price is payable in full by bank or certified check or wire transfer at closing, (D) such Bona Fide Sales Contract shall require the purchaser to deposit with the Escrow Agent at contract execution, an Earnest Money Deposit in cash in an amount equal to not less than ten percent (10%) of the purchase price and shall provide that such amounts may be retained by the Borrower as liquidated damages upon default by the purchaser of its purchase obligation under such Bona Fide Sales Contract and (E) such Bona Fide Sales Contract shall be subject to no conditions upon the purchaser's obligation thereunder (other than financing contingencies, customary title conditions and rights of rescission required by Law and other matters contained in the Bona Fide Sales Contract form Approved by the Administrative Agent);

(ii)　　amend, modify or supplement any Bona Fide Sales Contract in any material manner not permitted pursuant to clause (i) above, or terminate any Bona Fide Sales Contract (except for default on the part of a purchaser thereto, provided such termination does not have a material negative economic impact on the Hotel and Fractional Ownership Units taken together, or except as otherwise required by Law, but in either event with prompt notice to the Administrative Agent), or permit any of the foregoing actions to be taken; or

(iii)　　release any deposit under any Bona Fide Sales Contract, except in each case, in accordance with the terms of such Bona Fide Sales Contract and this Agreement.

(c)　　If the purchaser under any Bona Fide Sales Contract shall default in performance of its obligations thereunder and the Borrower shall retain the deposit thereunder as liquidated damages, the Borrower shall give prompt notice to the Administrative Agent of such retention and shall prepay the Outstanding Principal in an amount equal to such deposit (net of reasonable collection expenses).

(d)　　The Borrower shall, in addition to the insurance required elsewhere in this Agreement, comply with any additional insurance requirements of the Borrower contained in the Fractional Ownership Units Documents. The Borrower shall cause the Fractional Ownership Units owners association created by the Fractional Ownership Documents to furnish to the Administrative Agent, at no cost or expense to the Administrative Agent, a blanket fire insurance policy with extended coverage naming the Administrative Agents and said association, as their respective interests may appear, as the insureds, covering all of the Improvements relating to the Fractional Ownership Units for the full replacement value (other than foundations); said fire insurance shall at all times be in an amount equal to 100% of the insurable value of the Improvements relating to the Fractional Ownership Units (other than foundations) and shall otherwise comply with the applicable conditions contained herein and the other Loan Documents.

103

B4WW258_0_584391_69Y00

Section 7.4    Release of Fractional Ownership Units. (a) Provided that no Event of Default shall have occurred and be continuing, the Administrative Agent shall release the Lien of the Security Instrument with respect to one or more Fractional Ownership Units (which may be a fractional interest in the event the Fractional Ownership Unit being sold by the Borrower is a fractional interest, it being understood that in the event a fractional interest is being sold, the remaining fractional interests would continue to be subject to such Lien) and deliver to the Borrower duly executed release(s) or reconveyance(s) in recordable form, a UCC-3 release of security interest and other such documents as may be reasonably required to release with respect to the Fractional Ownership Unit(s) and the Fractional Ownership Units' interest in the common elements from the Lien of the Security Documents upon satisfaction of each of the following conditions:

    (i)      the Borrower shall have fully complied with the provisions of this Article 7;

    (ii)     the Administrative Agent shall have received a copy of an executed Bona Fide Sales Contract with reference to the Fractional Ownership Unit to be released ;

    (iii)    the Administrative Agent shall have received not less than three (3) Business Days prior written notice of the proposed release or assignment;

    (iv)     contemporaneously with such release or assignment there shall be a sale of such Fractional Ownership Unit pursuant to an approved form of Bona Fide Sales Contract and for a purchase price not less than the Minimum Purchase Price;

    (v)      the Fractional Ownership Unit to be released will constitute one or more tax lots separate and distinct from the tax lot or lots applicable to the remaining portion of the Property encumbered by the Lien of the Security Instrument;

    (vi)     neither the release or assignment from the Lien of the Security Instrument nor the conveyance to the transferee of such Fractional Ownership Unit will violate any applicable zoning or subdivision laws;

    (vii)    the Administrative Agent shall have received confirmation of payment by wire transfer of immediately available funds into the Sales Proceeds Account an amount equal to the Required Release Payment for such Fractional Ownership Unit; and

    (viii)   the Administrative Agent shall have received such other documents, certificates, instruments, opinions or assurances as the Administrative Agent may reasonably request.

(b)     Amounts received by the Administrative Agent under this Section 7.4, including Required Release Payments, shall be applied in accordance with Section 2.10(b).

104

s490022s_9_09429s_89989

Section 7.5   Purchaser Deposits.  (a)  As Deposits paid by Purchasers under the Purchase Agreements are made in connection with the execution of Purchase Agreements or additional Deposits are made by the Fractional Ownership Unit Purchasers from time to time, the Borrower shall cause such sums (other than the Construction Contingency Escrow) to be deposited with the Title Company or a title company reasonably acceptable to the Administrative Agent, who is the escrow agent holding the Deposits (the *Escrow Agent*), and shall cause the Escrow Agent to hold the Deposits in an account(s) (the *Deposit Escrow Account*) in escrow pursuant to the terms of the applicable Purchase Agreements and in accordance with the terms of the Fractional Ownership Documents and applicable Law, as escrow agent in accordance with the escrow agreements (which shall be subject to the Administrative Agent's prior review and approval) entered into by the Borrower and the Escrow Agent.  The Deposit Escrow Account shall bear interest at a passbook rate if and to the extent required by the applicable Purchase Agreements or applicable Law.  The Borrower shall instruct and shall use commercially reasonable efforts to cause Escrow Agent to deliver to the Administrative Agent within seven (7) days of the end of each calendar month a statement indicating the amount of funds on deposit representing the Deposits, together with information on the date of deposit, and to which Fractional Ownership Unit each such Deposit applies.  The Borrower shall not modify or amend the provisions of the Purchase Agreements relating to the Deposits without the prior written consent of the Administrative Agent, which consent the Administrative Agent may grant or withhold in its sole discretion.  The Borrower shall not accept any non-cash Deposits.

(b)  Without limiting the security interest in the Deposit Escrow Account granted pursuant to the other Loan Documents, to the extent permitted under applicable Law, the Borrower hereby grants to the Administrative Agent a security interest in the Borrower's interest in all Deposits, subject to the rights of Purchasers under the Purchase Agreements, the Condominium Documents and applicable Law.  Upon request of the Administrative Agent, the Borrower shall provide the Agent with all documents necessary to perfect any such permitted security interest.

(c)  To the extent permitted by applicable Law, the terms of the applicable Purchase Agreements and the Fractional Ownership Documents, the Borrower shall be permitted to use Deposits paid under Purchase Agreements (other than the Construction Contingency Escrow, which will be governed by Section 2.17) to pay Construction Costs in accordance with the Approved Project Budget, provided that no Default or Event of Default shall have occurred and be continuing.  To the extent Construction Costs are paid from Deposits, the Lenders' obligation to make Advances of the remaining portion of the Loan Amount will be correspondingly reduced by the aggregate amount of Deposits utilized by the Borrower to pay Construction Costs.

(d)  Except as otherwise provided in this Section 7.5, Deposits shall be segregated from other funds and shall be held, applied or returned, as applicable, in accordance with the terms of the respective Purchase Agreement and applicable Law.  To the extent the Borrower becomes entitled to retain any Deposits that have not been previously applied in accordance herewith (i.e. upon the forfeiture of any deposit by a Purchaser), such amounts shall be paid to the Administrative Agent and applied to reduce the Outstanding Principal in accordance with Section 2.10(b).  To the extent that a Purchaser becomes entitled to return of its

105

Deposit under its Purchase Agreement or under applicable Law, so long as no Event of Default exists, the Borrower shall be entitled to notify the Escrow Agent, with a copy of such notice to be simultaneously sent to the Administrative Agent.  The Escrow Agent may not be changed without the prior written consent of the Administrative Agent, such consent not to be unreasonably withheld.   Notwithstanding the foregoing, the Administrative Agent hereby acknowledges and agrees that the Borrower's rights to the Deposits are subject to the requirements of applicable Laws, the rights of the Purchasers to such deposits as set forth in the Purchase Agreements and the escrow agreements with the Borrower, and that the Escrow Agent may be obligated to return the Deposits to such purchasers when and as so required even if an Event of Default exists.

   Section 7.6 <u>Additional Condominium Specific Covenants</u>.   The Borrower covenants and agrees as follows:

   (a) The Borrower shall not amend or permit the board of directors of any of the owners' associations, to the extent within the Borrower's control, to amend any of the Fractional Ownership Documents in any material respect without the Administrative Agent's prior written consent, except as may be required by a Governmental Authority, or as may be required to cause the Fractional Ownership Documents to comply with applicable Laws.

   (b) Any time the Borrower or the board of directors for any of the owners' associations has the right to act under or has consent rights under the Fractional Ownership Documents or applicable Law, the Borrower shall not take or permit any such action to be taken or consent to be given without first obtaining the consent of the Administrative Agent to the extent such action or consent is material or could have a material adverse affect on the value of the Fractional Ownership Units or the Hotel or the Borrower's ability to perform its obligations under the Loan Documents or the Administrative Agent's security interests thereunder.

   (c) The Borrower shall, or shall cause the board of directors for such owners' associations, to the extent within its reasonable control, to promptly report to the Administrative Agent:

    (i) any sixty (60) day delinquency in the payment of assessments due from the Borrower, or in any other obligation of the Borrower as a "unit owner" under the Fractional Ownership Documents,

    (ii) any material damage to the Fractional Ownership Units or any Fractional Ownership Unit owned by the Borrower therein, and of any condemnation or similar proceeding which may affect the Administrative Agent,

    (iii) any lapse, cancellation or material modification of any insurance policy or fidelity bond maintained with respect to the Fractional Ownership Units, and

    (iv) any proposed action that requires the consent of the owners of the Fractional Ownership Units.

106

(d)     To the extent within the Borrower's control, the Administrative Agent shall be entitled to attend meetings of the owners' associations and shall have the right to speak thereat, and the Borrower or each of the owners' associations shall provide the Administrative Agent with reasonable prior written notice (but in any case not less than seven (7) days prior thereto) of any and all meetings of such association.

(e)     The annual budgets for each of the owners' associations and any material changes thereto, to the extent within the Borrower's control, shall not be adopted without the Administrative Agent's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

(f)     The Borrower shall, to the extent within the Borrower's control, cause the owners' associations to deliver to the Administrative Agent within ten (10) days after the Administrative Agent's request an estoppel from such association in form and substance reasonably acceptable to the Administrative Agent, confirming among other things, that there are no unpaid assessments currently due and payable and that the Borrower is not in default of any of its obligations under the respective Fractional Ownership Documents or to such association.

(g)     Without having first received the Administrative Agent's prior written consent, which may be granted or denied in the Administrative Agent's sole discretion, the Borrower shall not and, to the extent within the Borrower's control, shall not permit any of the following to occur:

(i)     By act or omission, seek to abandon or terminate any of the Fractional Ownership Documents;

(ii)    Change the allocation of expenses or obligations between the Fractional Ownership Units and the Hotel, or change the allocation of interests between the Fractional Ownership Units and the Hotel with respect to distributions of hazard insurance proceeds or condemnation awards;

(iii)   Further partition or subdivide the Fractional Ownership Units or the Hotel or by act or omission, seek to abandon, partition, subdivide, encumber, sell or transfer the common elements;

(iv)    Change the number of Fractional Ownership Units or change, modify, relocate or further subdivide the boundaries of the Fractional Ownership Units, or designate any of the foregoing as a common element; or

(v)     Use hazard insurance proceeds for losses to any property of the Fractional Ownership Units (whether to Fractional Ownership Units or to common elements) for other than the repair, replacement or reconstruction of such property, or as may be required by applicable Laws or the applicable Fractional Ownership Documents, except as otherwise permitted herein or in any of the other Loan Documents.

107

# ARTICLE 8

## ADMINISTRATIVE AGENT

Section 8.1    <u>Authorization and Action</u>.    WestLB AG, a German banking corporation acting through its New York branch is hereby appointed Administrative Agent under this Agreement and the other Loan Documents and each Lender hereby authorizes the Administrative Agent to act as its agent in accordance with the terms of this Agreement and the other Loan Documents.  The Administrative Agent agrees to act upon the express conditions contained in this Agreement and the other Loan Documents, as applicable.   Subject to the express terms of this Agreement, each Lender irrevocably authorizes the Administrative Agent to take such action on such Lender's behalf and to exercise such powers hereunder and under the Loan Documents as are delegated to the Administrative Agent by the terms hereof and thereof, together with such powers and discretion as are reasonably incidental thereto.    The Administrative Agent has only those duties and responsibilities that are expressly specified in this Agreement and the other Loan Documents and it may perform such duties by or through its agents or employees.  The Administrative Agent shall not have, by reason of this Agreement or any of the other Loan Documents, a fiduciary relationship in respect of any Lender; and nothing in this Agreement or any of the other Loan Documents, expressed or implied, is intended to or shall be so construed as to impose upon the Administrative Agent any obligations in respect of this Agreement or any of the other Loan Documents except as expressly set forth herein or therein.  To the extent that the consent of the Lenders, or any of them, is not expressly required pursuant to this Agreement, then the Administrative Agent shall be permitted to take such actions as it deems necessary or appropriate to fulfill it duties under this Agreement and the other Loan Documents.  The Administrative Agent shall not be required to take any action that exposes the Administrative Agent to personal liability or that is contrary to this Agreement or any Law.  The provisions of this Article 8 are solely for the benefit of the Administrative Agent and the Lenders, and no Loan Party or any other Person shall have any rights as a third party beneficiary of any of the provisions hereof.  In performing its functions and duties under this Agreement and the other Loan Documents, the Administrative Agent shall act solely as an agent of the Lenders and the Administrative Agent does not assume and shall not be deemed to have assumed any Obligation towards or relationship of agency or trust with or for the Borrower or any other Loan Party.

Section 8.2    <u>Administrative Agent's Reliance, Etc</u>.  Neither the Administrative Agent nor any of its directors, officers, agents or employees shall be liable to any Lender for any action taken or omitted to be taken by any of them under or in connection with the Loan Documents, except for its or their own gross negligence or willful misconduct.  Without limitation of the generality of the foregoing, the Administrative Agent:  (a) may treat the Lender signatory to this Agreement as the holder of such Lender's Ratable Share of the Loan until the Administrative Agent receives and accepts an Assignment and Acceptance entered into by such Lender, as assignor, and an Eligible Assignee, as assignee, as provided in Section 11.5(b); (b) may consult with legal counsel (including counsel for any Loan Party), independent public accountants and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants or experts; (c) makes no warranty or representation to any Lender and shall not be responsible to

any Lender for any statements, warranties or representations (whether written or oral) made in or in connection with the Loan Documents; (d) shall not have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of any Loan Document on the part of any Loan Party or to inspect the Property (including the books and records) of any Loan Party; (e) shall not be responsible to any Lender for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of, or the perfection or priority of any Lien or security interest created or purported to be created under or in connection with, any Loan Document or any other instrument or document furnished pursuant thereto; and (f) shall incur no liability to any Lender under or in respect of any Loan Document by acting upon any notice, consent, certificate or other instrument or writing (which may be by telegram, facsimile or telex) believed by it to be genuine and signed or sent by the proper party or parties.

Section 8.3    WestLB AG and Affiliates.  In respect of the Advance made by WestLB AG, New York Branch, and the Note issued to it, WestLB AG, New York Branch shall have the same rights and powers under the Loan Documents as any other Lender and may exercise the same as though it were not the Administrative Agent.  The terms "Lender" and "Lenders" shall, unless otherwise expressly indicated, include WestLB AG, New York Branch, in its individual capacity.  WestLB AG, New York Branch and its Affiliates may accept deposits from, lend money to, act as trustee under indentures of, accept investment banking engagements from and generally engage in any kind of business with, the Borrower, Borrower's Member, any Affiliate of the Borrower or of Borrower's Member, and any Person that may do business with or own securities of any such Person, all as if WestLB AG, New York Branch were not the Administrative Agent, and without any duty to account therefor to the Lenders.

Section 8.4    Lender Credit Decision.  Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender, and based on the financial statements referred to in Section 6.3(a) and such other documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement.

Section 8.5    Indemnification of Administrative Agent.  (a)  Each Lender severally agrees to indemnify the Administrative Agent (to the extent not promptly reimbursed by Borrower) from and against such Lender's Ratable Share of any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (including, without limitation, reasonable fees and expenses of counsel) that may be imposed on, incurred by, or asserted against such the Administrative Agent in any way relating to or arising out of the Loan Documents or any action taken or omitted by such the Administrative Agent under the Loan Documents (collectively, the *Indemnified Costs*); provided, that no Lender shall be liable for any portion of such Indemnified Costs resulting from the Administrative Agent's gross negligence or willful misconduct as found in a final, non-appealable judgment by a court of competent jurisdiction.  Without limitation of the foregoing, each Lender agrees to reimburse the Administrative Agent promptly upon demand for its Ratable Share of any costs and expenses (including, without limitation, fees and expenses of counsel)

DMWEST_9_684394_684438

payable by Borrower under Section 6.1(l), to the extent that the Administrative Agent is not promptly reimbursed for such costs and expenses by the Borrower.

(b)    In the case of any investigation, litigation or proceeding giving rise to any Indemnified Costs, this Section 8.5 applies whether any such investigation, litigation or proceeding is brought by the Administrative Agent, any Lender, any other Lender or a third party.  The failure of any Lender to reimburse the Administrative Agent promptly upon demand for its Ratable Share of any amount required to be paid by the Lenders to the Administrative Agent as provided herein shall not relieve any other Lender of its Obligation hereunder to reimburse the Administrative Agent for its Ratable Share of such amount, but no Lender shall be responsible for the failure of any other Lender to reimburse the Administrative Agent for such other Lender's Ratable Share of such amount.

(c)    Without prejudice to the survival of any other agreement of any Lender hereunder, the agreement and obligations of each Lender contained in this Section 8.5 shall survive the payment in full of principal, interest and all other amounts payable hereunder and under the other Loan Documents.

Section 8.6    Successor Administrative Agents.  The Administrative Agent may resign at any time by giving written notice thereof to the Lenders and the Borrower.  Upon any such resignation, the Requisite Lenders shall have the right to appoint a successor Administrative Agent. .  If no successor Administrative Agent shall have been so appointed by the Requisite Lenders and shall have accepted such appointment, within thirty (30) days after the retiring Administrative Agent's giving of notice of resignation, the retiring Administrative Agent may, on behalf of the Lenders, appoint a successor Administrative Agent, which shall be a commercial bank organized under the laws of the United States or of any state thereof and having a combined capital and surplus of at least ONE HUNDRED MILLION AND 00/100 DOLLARS ($100,000,000.00).  Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent and upon the execution and filing or recording of such financing statements, or amendments thereto, and such amendments or supplements to the Loan Documents, if any, and such other instruments or notices, as may be necessary or desirable, or as the Requisite Lenders may request, in order to continue the perfection of the Liens granted or purported to be granted by the Loan Documents, such successor Administrative Agent shall succeed to and become vested with all the rights, powers, discretion, privileges and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from its duties and obligations under the Loan Documents arising and accruing thereafter.  In no event shall any replacement Administrative Agent or any successor Administrative Agent result in any increased or additional cost or expense to the Borrower.  If within forty-five (45) days after written notice is given of the retiring Administrative Agent's resignation under this Section no successor Administrative Agent shall have been appointed and shall have accepted such appointment, then on such forty-fifth (45th) day:  (i) the retiring Administrative Agent's resignation shall become effective; (ii) the retiring Administrative Agent shall thereupon be discharged from its duties and obligations under this Agreement and all other Loan Documents; and (iii) the Requisite Lenders shall thereafter perform all duties of the retiring Administrative Agent under this Agreement and all other Loan Documents until such time, if any, as the Requisite Lenders appoint a successor Administrative Agent as provided above.  After any

110

retiring Administrative Agent's resignation hereunder as Administrative Agent shall become effective, the provisions of this Article 8 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Administrative Agent under this Agreement.

Section 8.7    Collateral Documents; Secured Party Action.  (a)  Each Lender hereby further authorizes the Administrative Agent to enter into the Loan Documents as secured party on behalf of and for the benefit of the Lenders and agrees to be bound by the terms of the Loan Documents; provided that anything in this Agreement or the other Loan Documents to the contrary notwithstanding:

(i)    The Administrative Agent is authorized on behalf of all Lenders, without the necessity of any notice to or further consent from the Lenders, from time to time to take any action with respect to any Collateral or the Loan Documents which may be necessary to perfect and maintain a perfected security interest in, and Liens upon, the Property granted pursuant to the Loan Documents.

(ii)    Each Lender irrevocably authorizes the Administrative Agent, at its option and in its discretion, to release any Lien granted to or held by the Administrative Agent upon any Collateral:  (A) upon payment in full of the Loan and all other Obligations payable under this Agreement and under any other Loan Document; (B) which is sold or to be sold or disposed of as part of or in connection with any disposition permitted under this Agreement, so long as the Borrower is entitled to be granted such a release pursuant to this Agreement; or (C) consisting of a guaranty or an instrument evidencing debt so long as the obligations under such guaranty or such debt evidenced by such instrument has been satisfied or paid in full.  Upon request by the Administrative Agent at any time, the Lenders will confirm in writing the Administrative Agent's authority to release particular types or items of Collateral pursuant to this Section 8.7.

(b)    Anything contained in any of the Loan Documents to the contrary notwithstanding, each Lender agrees that no Lender shall have any right individually to realize upon any of the Collateral under the Loan Documents or make demand thereunder (including without limitation through the exercise of a right of set-off against call deposits of such Lenders in which any funds on deposit in accordance with the Loan Documents may from time to time be invested), it being understood and agreed that all rights and remedies under the Loan Documents may be exercised solely by the Administrative Agent for the benefit of the Lenders in accordance with the terms thereof.

Section 8.8    Certain Actions After an Event of Default.  (a)  Upon delivery to the Administrative Agent of notice of an Event of Default pursuant to this Agreement or the Administrative Agent's otherwise obtaining actual knowledge of the existence of an Event of Default, the Administrative Agent shall promptly deliver notice of such Event of Default to the Lenders.  The Administrative Agent may thereafter, from time to time, propose various actions (or forbearance from action) (*Proposed Default Response*) in response to such Event of Default, including, without limitation, foreclosure on all or portions of the Collateral, appointment of a receiver, or the exercise of other remedies provided in this Agreement and the other Loan

111

Documents, and the Lenders agree that the Administrative Agent may implement such Proposed Default Response upon approval of the Requisite Lenders; provided, that (I) in the absence of any pending Proposed Default Response, beginning thirty (30) days after the notice of the Event of Default has been delivered to the Lenders or was due thereto, the Requisite Lenders may direct the Administrative Agent to exercise specific remedies under the Loan Documents; and (ii) notwithstanding anything to the contrary contained herein, the Lenders agree that the Administrative Agent at all times shall be permitted to exercise such interim remedies (including (A) making Protective Advances, and (B) appointing a receiver) as the Administrative Agent may determine in good faith to be necessary or appropriate to protect the Collateral.

(b)    If the Requisite Lenders do not approve a pending Proposed Default Response within fifteen (15) Business Days after submittal, the Proposed Default Response shall be deemed rejected and the Requisite Lenders shall then be free to direct the Administrative Agent regarding the actions to be taken or not taken in response to the Event of Default, subject to the unanimous approval rights of the Lenders pursuant to Section 11.15.

(c)    Notwithstanding the foregoing and anything herein to the contrary, each Lender shall be obligated to fund its Ratable Share of any and all Protective Advances in the event such Protection Advances are deemed necessary by the Administrative Agent (in its sole and absolute discretion) to preserve the Lien of the Security Instrument, the Collateral or any of Lenders' rights under any of the Loan Documents. If and to the extent any Lender shall fund amounts in excess of the Loan Amount for any purpose, such Lender's Ratable Share of the Loan shall be adjusted from time to time based on the total amounts advanced by all of Lenders from time to time in respect of the Loan

Section 8.9    Defaulting Lender.    (a)  Unless the Administrative Agent shall have received notice from a Lender prior to the date of any Advance that such Lender will not make available to the Administrative Agent such Lender's Ratable Share of such Advance, the Administrative Agent may assume that such Lender has made such portion available to the Administrative Agent on the date of such Advance in accordance with Article 2, and the Administrative Agent may, in reliance upon such assumption, make available to the Borrower on such date a corresponding amount.

(b)    If and to the extent that any Lender (a *Defaulting Lender*) shall not have so made such Ratable Share available to Administrative Agent (individually, a *Deficiency*, and collectively, *Deficiencies*), and the Administrative Agent has advanced such amount to the Borrower, such Defaulting Lender and the Borrower severally agree to repay to the Administrative Agent forthwith on demand such corresponding amount together with interest thereon, for each day from the date such amount is made available to the Borrower until the date such amount is repaid to the Administrative Agent at the Default Rate. If such Defaulting Lender shall repay to the Administrative Agent such corresponding amount, such amount (excluding interest) so repaid shall constitute such Defaulting Lender's Ratable Share of the Advance and the Borrower shall have no further Obligation to repay such amount forthwith on demand, but such amount shall be treated as an Advance hereunder. Each of the Lenders agrees that the Borrower or any of the other Lenders shall have the right to proceed directly against any Defaulting Lender in respect of any right or claim arising out of the default of such Defaulting

112