Lender hereunder. If there shall be a Deficiency in respect of any Lender, one or more of the other Lenders shall have the right, but not the Obligation, to advance all or any part of the Ratable Share of an Advance that should have been made by the Defaulting Lender, and the Defaulting Lender agrees to repay upon demand to each of the Lenders (or the Borrower, if applicable), who has advanced a portion of the Deficiency the amount advanced on behalf of the Defaulting Lender, together with interest thereon at the Default Rate. If more than one Lender elects to advance a portion of the Deficiency, such Lenders' advances shall be made based on the relative Ratable Shares of the Loan of each advancing Lender or as otherwise agreed to by such Lenders. In the event the Defaulting Lender fails to advance or repay the Deficiency (with interest at the Default Rate, if applicable) on or prior to the date of the next succeeding Advance, the entire interest of said Defaulting Lender in the Loan shall be subordinate to the interests of the other Lenders, the Defaulting Lender shall have no voting rights under the Loan Documents and all payments otherwise payable to the Defaulting Lender shall be used to advance or repay the Deficiency, as applicable, until such time such Defaulting Lender advances or repays all Deficiencies (including interest at the Default Rate, if applicable).

## ARTICLE 9

## EVENTS OF DEFAULT

Section 9.1   Events of Default. The occurrence of any of the following events shall be an "Event of Default" hereunder (each, an *Event of Default*):

(a)   Failure to Pay. (i) The Borrower shall fail to pay any amounts due and payable under any Loan Document (except for Outstanding Principal), including any interest on the Outstanding Principal or any Amortization Amount, within five (5) days of when such payment shall be due and payable; or (ii) the Borrower shall fail to pay any amount of Outstanding Principal (other than any Amortization Amount) when due and payable; or

(b)   Misrepresentations. Any representation or warranty of any Loan Party under any of the Loan Documents or other materials submitted to the Administrative Agent or the Lenders in connection with the Loan shall have been untrue or incorrect when made in any material respect; or

(c)   Failure to Complete. The Borrower shall fail to achieve Substantial Completion or Final Completion in accordance with the terms of Section 6.2(g), subject to delays caused by Force Majeure not to exceed 180 days in the aggregate; or

(d)   Change of Control. A Change of Control shall occur other than in connection with a transfer permitted by Section 6.4(e)(i); or

(e)   Negative Covenants. The Borrower shall fail to perform, observe or comply with any covenant contained in Section 6.4; or

(f)   Bankruptcy. Any Loan Party becomes subject to a Bankruptcy Event; or

113

84948824_9_BB4281_80489

(g)   Insurance.  The failure at any time to obtain, maintain and keep in force the insurance policies required by the Loan Documents; or

(h)   Attachment.  The Property or any material portion thereof, shall be taken, attached or sequestered on execution or other process of law in any action against the Borrower and such taking, attachment or sequestration is not vacated to Borrower within thirty (30) days thereafter; or

(i)   Claim of Priority.  Any claim of priority (except a claim based upon a Permitted Exception, any claims less than TWO HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($250,000.00) in the aggregate that are affirmatively insured by the Title Company or a claim asserted by any Trade Contractor for which the Borrower has, within thirty (30) days thereafter, deposited with the Administrative Agent cash collateral, a bond or such other security satisfactory to the Administrative Agent as being an amount sufficient to negate such claim) to the Security Instrument or any other document or instrument securing the obligations of Borrower under the Loan Documents by title, Lien or otherwise shall be upheld by any court of competent jurisdiction or the consenting by Borrower to any such claim of priority; or

(j)   Loss of Lien.  Any Loan Document granting a Lien in favor of the Administrative Agent for the benefit of the Lenders shall for any reason (other than pursuant to the terms thereof) cease to create a valid and perfected first priority Lien on the Collateral purported to be covered thereby (subject to the Permitted Exceptions and any claims less than TWO HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($250,000.00) in the aggregate that are affirmatively insured by the Title Company); or

(k)   Invalid Document.  Any Loan Party shall claim in writing that any Loan Document shall for any reason cease to be valid or binding on or enforceable against a Loan Party, and within thirty (30) days thereof (i) such claim shall not be withdrawn in writing by such Loan Party, or (ii) the Borrower shall not provide a replacement for such Loan Document satisfactory to the Administrative Agent in Administrative Agent's sole and absolute discretion; or

(l)   Cross Default.  (i) Any Debt of any Loan Party in an aggregate amount of over FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) shall be accelerated by reason of a default thereunder, or (ii) any event shall occur or condition shall exist and shall continue for more than the period of grace applicable thereto, if any, and shall have the effect of causing, or permitting the holder of any such Debt described in clause (i) above or any trustee or other Person acting on behalf of such holder to cause such Debt described in clause (i) above to become due prior to its stated maturity or to realize upon any collateral given as security therefore; or

(m)   Non-monetary Judgment.  Any non-monetary judgment or order shall be rendered against any Loan Party or any Affiliate thereof that would reasonably be anticipated to have a Material Adverse Effect, and there shall be any period of thirty (30) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

114

B409K228_9_584294_69900

(n)    ERISA.

(i)    ERISA Event.  Any ERISA Event shall have occurred with respect to a Plan and the sum (determined as of the date of occurrence of such ERISA Event) of the Insufficiency of such Plan and the Insufficiency of any and all other Plans with respect to which an ERISA Event shall have occurred and then exist (or the liability of the Loan Parties and the ERISA Affiliates related to such ERISA Event) exceeds FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00); or

(ii)    ERISA Withdrawal Liability.  Any Loan Party or any ERISA Affiliate of any Loan Party shall have been notified by the sponsor of a Multiemployer Plan that it has incurred Withdrawal Liability to such Multiemployer Plan in an amount that, when aggregated with all other amounts required to be paid to Multiemployer Plans by the Loan Parties and the ERISA Affiliates as Withdrawal Liability (determined as of the date of such notification), exceeds FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) or requires payments exceeding ONE MILLION AND 00/100 DOLLARS ($1,000,000.00) per annum; or

(iii)    Notice of Reorganization or Termination of Multiemployer Plan.  Any Loan Party or any ERISA Affiliate of any Loan Party shall have been notified by the sponsor of a Multiemployer Plan that such Multiemployer Plan is in reorganization or is being terminated, within the meaning of Title IV of ERISA, and as a result of such reorganization or termination the aggregate annual contributions of the Loan Parties and their respective ERISA Affiliates to all Multiemployer Plans that are then in reorganization or being terminated have been or will be increased over the amounts contributed to such Multiemployer Plans for the plan years of such Multiemployer Plans immediately preceding the plan year in which such reorganization or termination occurs by an amount exceeding FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00); or

(o)    Claim of Invalid Loan Documents.  If the Borrower or the Borrower's Member or any Affiliate of the Borrower or any Affiliate of Borrower's Member shall take the position in a written communication with the Administrative Agent or in any litigation that any Loan Document is no longer the valid, binding and enforceable Obligation of the applicable Loan Party thereto, or that the Security Instrument no longer constitutes a valid and perfected first priority lien and security interest in any of the Collateral, subject only to the Permitted Exceptions and other liens and encumbrances expressly consented to by the Administrative Agent or the Lenders; or

(p)    Default of Sponsor.  Any default by the Sponsor occurs under the terms of any of the Sponsor Documents to the extent not cured within the applicable cure period set forth therein, if any; the Sponsor shall be dissolved, liquidated, wound-up or merged; the Sponsor shall for any reason contest, repudiate, or purport to revoke any of the Sponsor Documents; or any of the Sponsor Documents for any reason (except pursuant to the express terms thereof) shall cease to be in full force and effect as to the Sponsor or shall be judicially declared null and void as to the Sponsor (except as a result of action or inaction of Lenders), and the Borrower shall fail

115

04095228_9_084291_88909

to provide within ten (10) days of any such event, a substitute Sponsor Document or the Sponsor, as the case may be, satisfactory to Administrative Agent in the Administrative Agent's sole and absolute discretion; or

(q)   Borrower's - SPE Status.  The Borrower shall fail to perform, observe or comply with any covenant contained in Section 6.5; or

(r)   Hotel Management Agreement.  The Hotel Management Agreement shall lapse, terminate or expire other than (i) with the Administrative Agent's consent or (ii) a termination of the Hotel Management Agreement by the Mezzanine Lender in accordance with the terms of the Mezzanine Loan Documents and Section 12 of the Intercreditor Agreement; or

(s)   Development Agreement.  The Development Agreement shall lapse, terminate or expire other than (i) with the Administrative Agent's consent or (ii) a termination of the Development Agreement by the Mezzanine Lender in accordance with the terms of the Mezzanine Loan Documents and Section 12 of the Intercreditor Agreement; or

(t)   ERISA Plan Assets.  The assets of Borrower or the Sponsor become "plan assets" as such term is defined in the regulations of the Department of Labor set forth in 29 C.F.R. §2510.3-101 or the United States Department of Labor or the Internal Revenue Service shall assert in writing that the transactions contemplated by any Loan Document constitute a "prohibited transaction" within the meaning of Section 406 of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended from time to time; or

(u)   Construction Suspended.  Construction of any Improvements shall cease or be suspended for thirty (30) consecutive days (except as provided for in the Construction Schedule) for any reason other than a Force Majeure Event or any material breach by the Administrative Agent or Lenders of their obligation to make an Advance hereunder; or

(v)   Survey.  The appearance on any survey required hereunder of any material adverse condition not approved by the Administrative Agent and such condition is not remedied within sixty (60) days after notice thereof by the Administrative Agent to Borrower; or

(w)   Permits.  Any such permit, approval, or agreement obtained from or issued by any Governmental Authority is withdrawn, canceled, terminated or modified to the material detriment of the Borrower or the construction of the Improvements, unless the Borrower reinstates and confirms in all respects such permit, approval, or agreement previously in effect within a period of twenty (20) Business Days thereafter; or

(x)   Abandonment.  The Borrower requests a termination of the Loan, or confesses in writing its inability to continue or complete construction of the Improvements in accordance with this Agreement, or ceases to do business; or

(y)   Material Adverse Change.  The occurrence of any event or the existence of any fact or circumstance resulting in a Material Adverse Effect; or

116

(z)    Failure to Perform.  The failure of the Borrower to perform any other term, covenant or condition of this Agreement or of any of the other Loan Documents (other than any such failure specifically enumerated in this Section 9.1) and the continuation of such default for more than thirty (30) days following the giving of notice of such default to the Borrower; provided, that (i) if such default is curable but cannot reasonably be cured within such thirty (30) day period, the Borrower shall have such reasonable period of time to cure such default, provided that (A) the Borrower shall submit to the Administrative Agent, within such thirty (30) day period, a detailed plan to cure such default reasonably satisfactory to the Administrative Agent and (B) the Borrower shall diligently pursue the curing of such default and (ii) no such extension shall be for a period in excess of ninety (90) days (i.e., a total cure period of one hundred twenty (120) days), it being understood that the rights to notice and a cure period granted herein shall not be cumulative with any other rights to notice or a cure period in any other Loan Document and the giving of notice or a cure period pursuant to this paragraph shall satisfy any and all obligations of the Administrative Agent or the Lenders to grant any such notice or cure period pursuant to any of the Loan Documents.

## ARTICLE 10

### RIGHTS AND REMEDIES

Section 10.1    Remedies.  (a)  Upon the occurrence and continuance of any Event of Default, the Administrative Agent may, at any time thereafter, at its option, exercise any or all of the following rights and remedies:

(b)    The Administrative Agent may declare all unpaid principal of and accrued interest on the Notes, together with all other sums payable under the Loan Documents, to be immediately due and payable, whereupon same shall become and be immediately due and payable, anything in the Loan Documents to the contrary notwithstanding, and without presentation, protest or further demand or notice of any kind, all of which are expressly hereby waived by the Borrower; provided, that upon the occurrence of any Bankruptcy Event with respect to the Borrower or any other Loan Party under the Bankruptcy Code of the United States, the unpaid principal amount of the Loan and all interest and other amounts as aforesaid shall automatically become due and payable, in each case without further act of the Administrative Agent or any Lender.

(c)    The Administrative Agent may cause the Additional Improvements to be completed and may enter upon the Property and construct, equip and complete the Additional Improvements in accordance with the Plans and Specifications, with such changes therein as the Administrative Agent may, from time to time, and in its sole discretion, deem appropriate.  In connection with any construction of the Additional Improvements undertaken by the Administrative Agent pursuant to the provisions of this subsection, the Administrative Agent may:

(i)    use any funds held by the Administrative Agent as security or in escrow;

**117**

(ii)   employ existing contractors, subcontractors, including Major Contractors, agents, architects, engineers, and the like, or terminate the same and employ others;

(iii)   employ security guards to protect the Property;

(iv)   make such additions, changes and corrections in the Plans and Specifications as shall, in the reasonable judgment of the Administrative Agent, be necessary or desirable;

(v)   take over and use any and all Personal Property contracted for or purchased by Borrower, if appropriate, or dispose of the same as the Administrative Agent sees fit;

(vi)   execute all applications and certificates on behalf of Borrower which may be required by any Governmental Authority or Law or contract documents or agreements;

(vii)   pay, settle or compromise all existing or future bills and claims which are or may be liens against the Property, or may be necessary for the completion of the Improvements or the clearance of title to the Property, including, without limitation, all taxes and assessments;

(viii)   undertake marketing and advertising of the Hotel, and complete the marketing and leasing of leasable space in the Improvements, enter into new Leases and occupancy agreements and modify or amend existing Leases and occupancy agreements, all as Administrative Agent shall deem to be necessary or desirable;

(ix)   prosecute and defend all actions and proceedings in connection with the construction of the Additional Improvements or in any other way affecting the Property; and

(x)   take such other action hereunder, or refrain from acting hereunder, as Administrative Agent may, in its sole and absolute discretion, from time to time determine, and without any limitation whatsoever, to carry out the intent of this Section 10.1(c). The Borrower shall be liable to the Administrative Agent for all costs paid or incurred for the construction, completion and equipping of the Improvements, whether the same shall be paid or incurred pursuant to the provisions of this Section 10.1 or otherwise, and all payments made or liabilities incurred by the Administrative Agent hereunder of any kind whatsoever shall be deemed Advances made to the Borrower under this Agreement and shall be secured by the Security Instrument and the other Loan Documents.

To the extent that any costs so paid or incurred by the Administrative Agent pursuant to this Section 10.1(c), together with all other Advances made by the Lenders hereunder, exceed the Loan Amount, such excess costs shall be paid by the Borrower to the

118

Administrative Agent on written demand, with interest thereon at the Default Rate until paid; and the Borrower shall execute such notes or amendments to the Notes as may be requested by the Administrative Agent to evidence the Borrower's Obligation to pay such excess costs and until such notes or amendments are so executed by the Borrower, the Borrower's Obligation to pay such excess costs shall be deemed to be evidenced by this Agreement. In the event the Administrative Agent takes possession of the Property and assumes control of such construction as aforesaid, the Administrative Agent shall not be obligated to continue such construction longer than the Administrative Agent shall see fit and may thereafter, at any time, change any course of action undertaken by it or abandon such construction and decline to make further payments for the account of the Borrower whether or not the Property shall have been completed. For the purpose of this Section 10.1(c), the construction, equipping and completion of the Property shall be deemed to include any action necessary to cure any Event of Default by the Borrower under any of the terms and provisions of any of the Loan Documents.

(d)    The Administrative Agent may appoint or seek appointment of a receiver, without notice and without regard to the solvency of the Borrower or the adequacy of the security, for the purpose of preserving the Property, preventing waste, and to protect all rights accruing to the Administrative Agent or the Lenders by virtue of this Agreement and the other Loan Documents, and expressly to do any further acts as the Administrative Agent may determine to be necessary to complete the development and construction of the Additional Improvements. All expenses incurred in connection with the appointment of such receiver, or in protecting, preserving, or improving the Property, shall be charged against the Borrower and shall be secured by the Security Instrument and enforced as a Lien against the Property.

(e)    The Administrative Agent may accelerate maturity of the Notes and any other Debt of the Borrower to the Lenders, and demand payment of the principal sum due thereunder, with interest, advances, costs and reasonable attorneys' fees and expenses (including those for appellate proceedings), and enforce collection of such payment by foreclosure of the Security Instrument or the enforcement of any other Collateral, or other appropriate action.

(f)    The Administrative Agent may, to the extent permitted by applicable Law, at any time and from time to time, without notice (any such notice being expressly waived), without regard to the adequacy of any Collateral, set off and apply any and all deposits (general or specific, time on demand, provisional or final, regardless of currency, maturity, or the branch of Administrative Agent where the deposits are held) at any time held or other sums credited by or due from Lenders to Borrower against any and all liabilities, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, of the Borrower to the Administrative Agent or the Lenders.

Section 10.2    Power of Attorney. For the purposes of carrying out the provisions and exercising the rights, powers and privileges granted by or referred to in this Agreement, after an Event of Default and during the continuance thereof, the Borrower hereby irrevocably constitutes and appoints the Administrative Agent its true and lawful attorney-in-fact, with full power of substitution, to execute, acknowledge and deliver any instruments and do and perform any acts which are referred to in this Agreement, in the name and on behalf of the Borrower.

119

The power vested in such attorney-in-fact is, and shall be deemed to be, coupled with an interest and irrevocable.

Section 10.3   Remedies Cumulative.   Upon the occurrence and during the continuance of any Event of Default, the rights, powers and privileges provided in this Article 10 and all other remedies available to the Administrative Agent and the Lenders under this Agreement or under any of the other Loan Documents or at Law or in equity may be exercised by the Administrative Agent and the Lenders at any time and from time to time and shall not constitute a waiver of the Administrative Agent's or any of the Lenders' other rights or remedies thereunder, whether or not the Loan shall be due and payable, and whether or not the Administrative Agent shall have instituted any foreclosure proceedings or other action for the enforcement of its rights under the Loan Documents.

Section 10.4   Waivers.   The Borrower hereby waives to the extent not prohibited by applicable Law:  (a) all presentments, demands for payment or performance, notices of nonperformance (other than those expressly provided in the Loan Documents), protests and notices of dishonor; (b) any requirement of diligence or promptness on the Administrative Agent's or the Lenders' part in the enforcement of its rights (but not fulfillment of its obligations) under the provisions of this Agreement or any other Loan Document; and (c) any and all notices of every kind and description which may be required to be given by any statute or rule of law.

Section 10.5   Course of Dealing, Etc.   No course of dealing and no delay or omission by the Administrative Agent or the Lenders in exercising any right or remedy hereunder shall operate as a waiver thereof or of any other right or remedy and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy.  A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.  No waiver or consent shall be binding upon the Lenders unless it is in writing and signed by the Administrative Agent.  The Administrative Agent's exercise of the Administrative Agent's right to remedy any default by the Borrower to the Lenders or any other Person shall not constitute a waiver of the default remedied, a waiver of any other prior or subsequent default by the Borrower or a waiver of the right to be reimbursed for any and all of its expenses in so remedying such default.

Section 10.6   Limitation of Liability.   The liability of the Borrower shall be limited to its assets.  The Lenders shall not be entitled to, and shall not enforce, the liability and obligation of the Borrower to perform and observe the Obligations contained in this Agreement, the Notes or in any of the other Loan Documents by any action or proceeding wherein personal liability shall be sought for the Borrower's obligations against any partners or members (or other constituent party(ies)), principals of the Borrower or any officers, shareholders, directors, agents, employees or servants thereof or of any Person comprising the Borrower (the *Exculpated Parties*).  The provisions of this Section shall not, however, (i) constitute a waiver, release or impairment of any Obligation evidenced or secured by this Agreement, the Security Instrument, the Notes or any of the other Loan Documents; (ii) impair the right of the Administrative Agent or the Lenders to name the Borrower as a party defendant in any action or suit for foreclosure and sale under the Security Instrument; (iii) affect the validity or enforceability of the

120

Environmental Indemnity or any guaranty made in connection with the Loan or any of the rights and remedies of the Administrative Agent or the Lenders thereunder; (iv) impair the right of the Administrative Agent or the Lenders to obtain the appointment of a receiver; (v) impair the enforcement of the assignment of leases provided in the Security Instrument; or (vi) constitute a waiver of the right of the Administrative Agent or the Lenders to enforce the liability and obligation of the Borrower against the Borrower, by money judgment or otherwise, to the extent of any actual loss, damage, cost, expense, liability, claim or other obligation incurred by the Lenders (including reasonable attorneys' fees and costs reasonably incurred) arising out of or in connection with the following:

      (a)    Any failure by the Borrower to deliver to the Administrative Agent any rents, receipts, sale proceeds (including, without limitation, any Required Release Payments), insurance proceeds or condemnation payments covering all or a portion of the Property in accordance with the Loan Documents or any failure by the Borrower to apply any such proceeds in accordance with the Loan Documents;

      (b)    Any failure to procure or maintain policies of insurance as required by the Loan Documents or the Fractional Ownership Documents;

      (c)    Any failure to pay amounts necessary to pay Impositions as required by this Agreement or any other liability which would rank senior to the Loan with regard to payment or security on the Property;

      (d)    Any fraud, tortious conduct or material misrepresentation by the Borrower or Borrower's Member or any other Loan Party in connection with the Loan, any of the Loan Documents or any of the Collateral;

      (e)    Any failure by the Borrower to perform the Borrower's environmental obligations under the Environmental Indemnity or the other Loan Documents;

      (f)    Any filing of a voluntary bankruptcy proceeding by the Borrower or an involuntary proceeding by any member of the Borrower not dismissed within the time period(s) set forth in the Loan Documents;

      (g)    Any failure to pay all LIBOR Breakage Costs due to any Lender;

      (h)    All costs of compliance with the ADA and similar state or local Laws;

      (i)    Any transfer of any direct or indirect interest in the Borrower or the Property in violation of the Loan Documents;

      (j)    Any failure by the Borrower to maintain unencumbered marketable title to the Property;

      (k)    Any costs incurred in connection with the enforcement of remedies in connection with the Loan; and

1409X228_9_BKGM_68949

(I)     Any challenge by the Borrower or any Loan Party to any foreclosure procedure or other exercise of remedies by the Administrative Agent in connection with the Loan.

## ARTICLE 11

## GENERAL CONDITIONS

Section 11.1   Rights of Third Parties.   All conditions of the obligations of each Person hereunder, including the Borrower's Obligations and the Lenders' obligation to make Advances, are imposed solely and exclusively for the benefit of Lenders and their successors and assigns and no other Person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lenders will make Advances in the absence of strict compliance with any or all thereof and no other Person shall, under any circumstances, be deemed to be a beneficiary of such conditions, any and all of which may be freely waived in whole or in part by the Administrative Agent at any time if in its sole discretion it deems it desirable to do so.  In particular, the Lenders make no representations and assume no obligations as to third parties concerning the quality of the construction by the Borrower of the Improvements or the absence therefrom of defects.

Section 11.2   Relationship.   The relationship between the Lenders and the Borrower is solely that of a lender and borrower, and nothing contained herein or in any of the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or any other relationship other than lender and borrower.  In addition, no Lender is the agent or representative of the Borrower and this Agreement shall not make any Lender liable to materialmen, contractors, craftsmen, laborers or others for goods delivered to or services performed by them upon the Property, or for debts or claims accruing to such parties against the Borrower and there is no contractual relationship, either express or implied, between any Lender and any materialmen, subcontractors, including Major Contractors, craftsmen, laborers, or any other Person supplying any work, labor or materials for the Improvements.

Section 11.3   Evidence of Satisfaction of Conditions.   Any condition of this Agreement which requires the submission of evidence of the existence or nonexistence of a specified fact or facts implies as a condition the existence or non-existence, as the case may be, of such fact or facts and the Administrative Agent shall, at all times, be free independently to establish to its satisfaction and in its absolute discretion such existence or nonexistence, except where the Administrative Agent expressly agrees hereunder to be reasonable.

Section 11.4   Notices.   (a)   Any notice, report, demand, approval or other instrument authorized or required by this Loan Agreement and the other Loan Documents, to be given or furnished shall be in writing and shall be deemed given or furnished (i) when addressed to the party intended to receive the same, at the address of such party as set forth below, and delivered at such address, (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, (iii) when delivered by nationwide commercial courier service, one (1) business day after the date of delivery of such notice to the courier service, or (iv) when transmitted by facsimile to the facsimile number set

122

forth below, to the party intended to receive same, provided that such transmission is confirmed by duplicate notice in such other manner as permitted above, upon receipt at such facsimile number (any facsimile notice delivered after 5:00 P.M. EST being deemed delivered on the next Business Day):

Administrative Agent:

WestLB AG, New York Branch, as administrative agent
for itself and other co-lenders
1211 Avenue of the Americas
New York, New York 10036
Attention: Bruce F. Davidson, Global Structured Finance – Infrastructure
Facsimile: (212) 921-5947

with a copy to:

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022-2585
Attention: Timothy G. Little, Esq.
Facsimile: (212) 894-5794

Borrower:

Easy Street Partners, LLC
4780 Winchester Court
Park City, Utah 84098
Attention: William Shoaf
Facsimile: (435) 604-6309

with a copy to:

Wrona & Parrish, P.C.
1816 Prospector Avenue, Suite 100
Park City, Utah 84060
Attention: Blake Parrish
Facsimile: (435) 649-5959

(b)    Any party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties. Rejection or refusal to accept, or inability to deliver because of changed address or because no notice of changed address was given, shall be deemed to be receipt of any such notice.

123

Section 11.5   Assignment. (a) The Borrower may not assign this Agreement or any of its rights or obligations hereunder without the prior approval of the Administrative Agent.

(b)   Each Lender may assign its rights and obligations under this Agreement (including, without limitation, such portion of the Advances owing to it and the Note or Notes held by it); provided, that (i) each such assignment shall require the consent of Administrative Agent, which consent shall not be unreasonably withheld or delayed, (ii) each such assignment shall be to an Eligible Assignee, (iii) the parties to each such assignment shall execute and deliver to the Administrative Agent, for its acceptance and recording in the Register, an Assignment and Acceptance in the form set forth on Exhibit B, together with the Note or Notes subject to such assignment and a processing and recordation fee of THREE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($3,500.00) payable to the Administrative Agent, and (iv) except in the case of an assignment to a Person that, immediately prior to such assignment, was a Lender or an Affiliate of any Lender or an assignment of all of a Lender's rights and obligations under this Agreement, the aggregate value of the rights being assigned to such assignee pursuant to such assignment (determined as of the date of the Assignment and Acceptance with respect to such assignment) shall in no event be less than ONE MILLION AND 00/100 DOLLARS ($1,000,000.00) and shall be in an integral multiple of TWO HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($250,000.00); provided, that the Administrative Agent shall not be subject to the foregoing dollar amount restrictions in connection with any assignments it makes in syndicating the Loan.

(c)   Upon such execution, delivery, acceptance and recording, from and after the effective date specified in such Assignment and Acceptance, (i) the assignee thereunder shall be a party hereto and, to the extent that rights and obligations hereunder have been assigned to and assumed by it pursuant to such Assignment and Acceptance, have the rights and obligations of a Lender hereunder and (ii) the Lender assignor thereunder shall, to the extent that rights and obligations hereunder have been assigned by it and assumed by the assignee pursuant to such Assignment and Acceptance, relinquish its rights and be released from its obligations (to the extent arising or accruing after the effective date of the assignment) under this Agreement (and, in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto).

(d)   By executing and delivering an Assignment and Acceptance, each Lender assignor thereunder and each assignee thereunder confirm to and agree with each other and the other parties thereto and hereto as follows: (i) other than as provided in such Assignment and Acceptance, such assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Agreement or any other Loan Document or the execution, legality, validity, enforceability, genuineness, sufficiency or value of, or the perfection or priority of any Lien or security interest created or purported to be created under or in connection with, this Agreement or any other Loan Document or any other instrument or document furnished pursuant hereto or thereto; (ii) such assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Borrower or any other Loan Party or the performance or observance by any Loan Party of any of its obligations under any Loan

124

Document or any other instrument or document furnished pursuant thereto; (iii) such assignee confirms that it has received a copy of this Agreement, together with copies of the financial statements and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance; (iv) such assignee will, independently and without reliance upon Administrative Agent, such assigning Lender or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement; (v) such assignee confirms that it is an Eligible Assignee; (vi) such assignee appoints and authorizes the Administrative Agent to take such action as the Administrative Agent on its behalf and to exercise such powers and discretion under the Loan Documents as are delegated to the Administrative Agent by the terms hereof, together with such powers and discretion as are reasonably incidental thereto; and (vii) such assignee agrees that it will perform in accordance with their terms all of the obligations which by the terms of this Agreement are required to be performed by it as a Lender.

(e)    Within five (5) Business Days after the Borrower receives notice from the Administrative Agent that the recording set forth in Section 11.5(b) has been completed, the Borrower, at its own expense, shall execute and deliver to the Administrative Agent, in exchange for each surrendered Note, a new Note to the order of such Eligible Assignee in an amount equal to the amount assumed by such Eligible Assignee pursuant to the applicable Assignment and Acceptance and, if the assigning Lender has retained some portion of its obligations hereunder, a new Note to the order of the assigning Lender in an amount equal to the amount retained hereunder. Such new Notes shall provide that they are replacements for the surrendered Notes, shall be in an aggregate principal amount equal to the aggregate principal amount of the surrendered Notes, shall be dated the effective date of such Assignment and Acceptance and shall otherwise be substantially in the form of the assigned Notes. The surrendered Notes shall be canceled and returned to the Borrower and the new Notes shall not be deemed delivered by the Borrower until the Borrower has received such cancelled or surrendered Notes. Each Lender shall be permitted only one Note for the full amount of its Ratable Share.

(f)    The Administrative Agent shall maintain a copy of each Assignment and Acceptance delivered to and accepted by it and a register for the recordation of the names and addresses of the Lenders under the Loan Documents of, and the Outstanding Principal amount of the Loan owing under the Loan Documents to, each Lender from time to time (the *Register*). The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and the Borrower, the Administrative Agent and the Lenders may treat each Person whose name is recorded in the Register as a Lender hereunder for all purposes of this Agreement. The Register shall be available for inspection by the Borrower or any Lender at any reasonable time and from time to time upon reasonable prior notice.

(g)    Upon its receipt of an Assignment and Acceptance executed by an assigning Lender and an assignee, together with the Note or Notes requested by the assignee subject to such assignment, the Administrative Agent shall: (i) accept such Assignment and Acceptance; (ii) record the information contained therein in the Register; and (iii) give prompt written notice thereof to the Borrower.

125

(h)    Each Lender may sell participations in or to all or a portion of its rights and obligations under this Agreement (including, without limitation, all or a portion of the Loan owing to it and the Note or Notes held by it) to any Person other than any Loan Party or any Affiliate of a Loan Party; provided, that (i) such selling Lender's obligations under this Agreement shall remain unchanged, (ii) such selling Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) such selling Lender shall remain the holder of such portion of the Loan and such Note for all purposes of this Agreement, (iv) the Borrower, the Administrative Agent and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement and (v) no participant under any such participation shall have any right to approve any amendment or waiver of any provision of any Loan Document, or any consent to any departure by any Loan Party therefrom.    Notwithstanding the occurrence of any secondary transaction, the Borrower shall be entitled to communicate solely with the Administrative Agent or an experienced servicer as the sole point of contact on behalf of the Lenders.

(i)    Any Lender may, in connection with any assignment or participation or proposed assignment or participation pursuant to this Section 11.5, disclose to the assignee or participant or proposed assignee or participant, any information relating to the Borrower furnished to such Lender by or on behalf of the Borrower.

(j)    Notwithstanding any other provision set forth in this Agreement, any Lender may at any time create a security interest in all or any portion of its rights under this Agreement (including, without limitation, the Advances owing to it and the Note or Notes held by it) in favor of any Federal Reserve Bank in accordance with Regulation A of the Board of Governors of the Federal Reserve System.

Section 11.6    Usury Savings.    All agreements herein are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the Lenders or the holder hereof for the use, forbearance or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under applicable Laws. If, for any circumstances whatsoever, fulfillment of any provision hereof at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, *ipso facto*, the Obligation to be fulfilled shall be reduced to the limit of such validity, and if for any circumstance the Lenders or the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest.

Section 11.7    Counterparts.    This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but such counterparts shall together constitute one and the same instrument.

Section 11.8    Indemnification.    (a)    The Borrower (in such capacity, the *Indemnitor*) shall defend, indemnify and hold harmless the Administrative Agent, each of the

126

Lenders, each Affiliate of any of the foregoing and the respective directors, officers, partners, participants, employees and agents of each of the foregoing, and each other Person controlling any of the foregoing within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (each, an *Indemnified Party*) from and against, and shall reimburse the affected Indemnified Party for, any and all losses, claims, damages, costs, expenses (including without limitation reasonable attorney fees' and expenses), liabilities, fines, penalties and charges of any kind (collectively, the *Losses*), in any way relating to or arising out of or in connection with (i) the execution, delivery, enforcement, performance or administration of this Agreement or any other Loan Document or any other agreement, letter or instrument delivered in connection with the transactions contemplated thereby or the consummation of the transactions contemplated thereby, (ii) the Loan, or the use or proposed use of the proceeds thereof; or (iii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory (including any investigation of, preparation for, or defense of any pending or threatened claim, investigation, litigation or proceeding) (a *Claim*), regardless of whether any Indemnified Party is a party thereto, in all cases, whether or not caused by or arising, in whole or in part, out of the negligence of any Indemnified Party; provided, that the Indemnitor shall have no Obligation to indemnify any Indemnified Party for any Losses to the extent that a court of competent jurisdiction has determined that the same resulted from the gross negligence or willful misconduct of such Indemnified Party. In case any such Claim is brought against an Indemnified Party in respect of which indemnification may be sought by such Indemnified Party pursuant hereto, the Administrative Agent shall give prompt written notice thereof to the Indemnitor; provided, that the failure of the Administrative Agent to so notify the Indemnitor shall not limit or affect such Indemnified Party's rights to be indemnified pursuant to this Section 11.8 except to the extent the Indemnitor is materially prejudiced by such failure.

(b)    Upon receipt of such notice of Claim described in Section 11.8(a), the Indemnitor shall, at its sole cost and expense, in good faith defend any such Claim with counsel reasonably satisfactory to the Administrative Agent and such Indemnified Party. The Indemnitor may settle any Claim against such Indemnified Party without such Indemnified Party's consent, provided (i) such settlement is without any liability, cost or expense whatsoever to such Indemnified Party, (ii) the settlement does not include or require any admission of liability or culpability by such Indemnified Party under any Law and (iii) the Indemnitor obtains an effective written release of liability for such Indemnified Party from the party to the Claim with whom such settlement is being made, which release must be acceptable to such Indemnified Party in such Indemnified Party's sole discretion, and a dismissal with prejudice with respect to all claims made by the party against such Indemnified Party in connection with such Claim. The Administrative Agent and such Indemnified Party shall reasonably cooperate with the Indemnitor, at the Indemnitor's sole cost and expense, in connection with the defense or settlement of any Claim in accordance with the terms hereof.

(c)    If at any time in Indemnified Party's judgment (i) Indemnitor shall fail diligently to investigate, prosecute, negotiate or defend, as applicable, any Claim or (ii) Indemnitor shall fail to keep the Indemnified Parties fully apprised of the status of any Claim, such Indemnified Party may elect, by notice to the Indemnitor thereof, to conduct its own defense through counsel of its own choosing and at the expense of the Indemnitor. If such

127

Indemnified Party elects to defend such Claim by counsel of its own choosing, the Indemnitor shall be responsible for any settlement of such Claim entered into by such Indemnified Party.

(d)    Nothing contained herein shall be construed as requiring the Administrative Agent or any Indemnified Party to expend funds or incur costs to defend any Claim in connection with the matters for which the Administrative Agent or any Indemnified Party is entitled to indemnification pursuant to this Section 11.8. The obligations of the Indemnitor hereunder shall specifically include the obligation to expend its own funds, to incur costs in its own name and to perform all actions as may be necessary to protect the Administrative Agent or any Indemnified Party from the necessity of expending its own funds, incurring cost or performing any actions in connection with the matters for which each Lender is entitled to indemnification hereunder.

Section 11.9  Successors and Assigns Included in Parties.  Whenever in this Agreement one of the parties hereto is named or referred to, the heirs, legal representatives, successors and assigns of such parties shall be included and all covenants and agreements contained in this Agreement by or on behalf of the Borrower or by or on behalf of any Lender shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns, whether so expressed or not.

Section 11.10  Headings.  The headings of the Articles, Sections and subsections of this Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

Section 11.11  Invalid Provisions to Affect No Others.  If fulfillment of any provision hereof or any transaction related hereto at the time performance of such provisions shall be due, shall involve transcending the limit of validity presently prescribed by law, with regard to obligations of like character and amount, then, *ipso facto*, the Obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect.

Section 11.12  Computation of Time Periods.  In this Agreement, with respect to the computation of periods of time from a specified date to a later specified date, the word "from" means both "from and including" and the words "to" and "until" both mean "to but excluding".

Section 11.13  Governing Law.  This Agreement shall be construed in accordance with and this Agreement and all matters arising out of this Agreement (whether in contract, tort or otherwise) shall be governed by and law of the State of New York.

Section 11.14  Consent to Jurisdiction.  The Borrower and the Lenders hereby irrevocably and unconditionally (a) submit to personal jurisdiction in the State of New York over any suit, action or proceeding arising out of or relating to this Agreement and (b) waive any and all personal rights under the laws of any state (i) to the right, if any, to trial by jury or (ii) to

128

DM1\932536_9_DOC291_695839

object to jurisdiction within the State of New York or venue in any particular forum within the State of New York. Nothing contained herein, however, shall prevent the Administrative Agent or any Lender from bringing any suit, action or proceeding or exercising any rights against any security and against the Borrower, and against any property of the Borrower, in any other state. Initiating such suit, action or proceeding or taking such action in any state shall in no event constitute a waiver of the agreement contained herein that the laws of the State of New York shall govern the rights and obligations of the Borrower and any Lender hereunder or the submission herein by the Borrower and any Lender to personal jurisdiction within the State of New York.

Section 11.15 Amendments. Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought. Moreover, no amendment or waiver of any provision of this Agreement or any other Loan Document, nor consent to any departure by the Borrower or any other Loan Party therefrom, shall in any event be effective unless the same shall be in writing and signed by the Requisite Lenders, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given; provided that no amendment, waiver or consent shall, unless in writing and signed by all of the Lenders, do any of the following at any time: (a) waive any of the conditions specified in Article 3 hereof, (b) change the designated percentage that constitutes the Requisite Lenders, (c) release any material portion of the Collateral in any transaction or series of related transactions or permit the creation, incurrence, assumption or existence of any Lien on any material portion of the Collateral in any transaction or series of related transactions to secure any obligations other than obligations owing to the Administrative Agent and the Lenders under the Loan Documents, (d) amend this Section 11.15, (e) alter the Ratable Share of any Lender, (f) reduce the principal of, or interest or interest rate on, the Loan payable to any Lender or any fees or other amounts payable to such Lender, or (g) postpone any date scheduled for any payment of principal of, or interest on, the Loan payable to such Lender. Notwithstanding the foregoing, the Borrower shall deal directly with, and be entitled to rely on the Administrative Agent's signature, in connection with all matters related to the Loan Documents.

Section 11.16 Final Agreement. Pursuant to Utah Code Ann. Section 25-5-4, the Borrower is hereby notified that the written Loan Documents are the final expression of the agreement between the Administrative Agent, the Lenders and the Borrower and may not be contradicted by evidence of any alleged oral agreement.

## ARTICLE 12

## CASUALTY/CONDEMNATION PROCEEDS

Section 12.1 Casualty; Condemnation; Assignment of Proceeds. (a) Casualty. (i) Notice; Restoration. The Borrower shall give the Administrative Agent prompt written notice of the occurrence of any casualty affecting the Property or any portion thereof. In the event of any casualty affecting the Property, Borrower shall promptly commence and diligently prosecute Restoration of the Property.

129

(ii)    Availability of Proceeds for Restoration.  If there is a casualty to the Property, (A) and (x) the Restoration of the Property can be reasonably completed no later than six (6) months prior to the Maturity Date (such determination to be made solely by the Administrative Agent) (such period to be measured from the date of such casualty), or (y) the reasonably estimated cost of the Restoration is not more than FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00) and (B) all of the conditions and deliveries set forth in Section 12.2(a) are satisfied, then the Net Proceeds shall be disbursed by the Administrative Agent to the Borrower for Restoration in accordance with the terms and manner set forth in Section 12.2.

If the Net Proceeds are not required to be made available for Restoration pursuant to this clause (ii), all Net Proceeds may be retained by the Administrative Agent in accordance with the terms of Section 12.2(b).

(b)    Condemnation.  (i)  Notice; Restoration.  The Borrower shall give the Administrative Agent written notice of the actual or threatened commencement of any Partial Condemnation or Total Condemnation affecting the Property promptly following the Borrower's receipt of notice thereof and shall deliver to the Administrative Agent copies of any and all documents received or prepared by the Borrower in connection therewith.  The Borrower shall, at its expense, diligently prosecute any such proceeding.  The Administrative Agent shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the Interest Rate provided for herein.  If the Property or any portion thereof is the subject of a Partial Condemnation or Total Condemnation, all Condemnation Proceeds relating thereto shall be paid to the Administrative Agent and the Borrower shall promptly commence and diligently prosecute the Restoration of the Property and otherwise comply with the provisions of Section 12.2.

(ii)    Partial Condemnation.  If, in the event of Partial Condemnation, (A) (x) the Restoration of the Property can be reasonably completed no later than six (6) months prior to the Maturity Date (such determination to be made solely by the Administrative Agent) (such period to be measured from the date of such casualty), or (y) at any time during the term of the Loan, and the reasonably estimated cost of the Restoration is not more than FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00), and (B) all of the conditions and deliveries set forth in Section 12.2(a) are satisfied, the Net Proceeds shall then be disbursed by the Administrative Agent to the Borrower for Restoration in accordance with the terms and manner set in Section 12.2.  If the Net Proceeds are not required to be made available for Restoration pursuant to this clause (ii), all Net Proceeds may be retained by the Administrative Agent in accordance with the terms of Section 12.2(b).

(iii)    Total Condemnation.  In the event of a Total Condemnation, all Net Proceeds shall be retained by the Administrative Agent in accordance with the terms of Section 12.2(b).

(c)    <u>Assignment of Proceeds; Adjustment of Claims</u>. All Insurance Proceeds and Condemnation Proceeds relating to the Property are hereby irrevocably assigned to and shall be paid to the Administrative Agent for the benefit of the Lenders, and the Administrative Agent shall deposit such amounts received hereunder into an escrow account designated by the Administrative Agent for disbursement in accordance with this Article 12. The Administrative Agent may participate in any action, suit or proceeding relating to any such proceeds, causes of action, claims, compensation, awards or recoveries, and during the first ninety (90) days after such casualty or condemnation, the Borrower and the Administrative Agent shall jointly attempt to settle or adjust any insurance claim or condemnation award and thereafter, if the Borrower and the Administrative Agent are unable to either adjust such claim or award for any reason, the Administrative Agent is hereby authorized, in its own name or in the Borrower's name, to adjust any loss covered by insurance, or any Partial Condemnation or Total Condemnation claim or cause of action, and to settle or compromise any claim or cause of action in connection therewith, and the Borrower shall from time to time deliver to the Administrative Agent any instrument required to permit such participation or further evidence such participation.

(d)    <u>No Effect on Obligations</u>. Notwithstanding any Partial Condemnation or Total Condemnation, the Borrower shall continue to make all payments required to be made pursuant to this Agreement at the time and in the manner provided for herein and the Outstanding Principal shall not be reduced until any Net Proceeds shall have been actually received and applied by the Administrative Agent to the reduction or discharge of the Outstanding Principal.

(e)    <u>Sale of Property Prior to Receipt of Proceeds</u>. If the Property is sold, through foreclosure or otherwise, prior to the receipt by the Administrative Agent of the Insurance Proceeds or Condemnation Proceeds (as applicable), the Administrative Agent shall have the right, whether or not a deficiency judgment shall have been sought, recovered or denied, to receive such Insurance Proceeds or Condemnation Proceeds (as applicable), or a portion thereof sufficient to pay the Outstanding Principal, plus all other amounts owed by the Borrower under the Loan Documents.

Section 12.2    <u>Disbursement of Net Proceeds</u>. (a)    <u>Requirements; Manner of Disbursement</u>. If Net Proceeds are required to be made available for Restoration pursuant to either Section 12.1(a) or 12.1(b) above, the Administrative Agent shall make such Net Proceeds available for Restoration in accordance with the following:

(i)    The Net Proceeds shall be made available to the Borrower for the Restoration provided that each of the following conditions are met:

(A)    no Default or Event of Default shall have occurred and be continuing (other than a Material Adverse Effect resulting from a casualty or condemnation);

(B)    neither the Hotel Management Agreement nor any material Lease shall be terminated as a result of such casualty or Partial Condemnation (as applicable) and the Borrower has received no notice of

131

termination relating to any such termination (or otherwise has no knowledge that a party to any of the foregoing agreements intends upon terminating such agreement);

(C)     the Borrower promptly commences Restoration and diligently pursues the same to the Administrative Agent's satisfactory completion;

(D)     the Property and the use thereof after Restoration will be in material compliance with and permitted under applicable Laws;

(E)     Restoration is done and diligently completed by the Borrower in material compliance with all applicable Laws;

(F)     the quality and character of the Property after Restoration shall be at least equivalent to the quality and character of the Property immediately prior to such casualty or Partial Condemnation;

(G)     (i) the estimated time to complete the Restoration, as estimated by the Construction Consultant, does not exceed the effective period of business interruption insurance available to the Administrative Agent on account of such casualty or Partial Condemnation, or (ii) the Borrower provides the Administrative Agent with evidence satisfactory to the Administrative Agent, in its sole and absolute discretion, that, at all times during Restoration, the Debt Service Coverage Ratio shall be at least equal to the Hurdle DSCR;

(H)     the Borrower delivers to the Administrative Agent a written undertaking that it will expeditiously commence and satisfactorily complete with due diligence Restoration in accordance with the terms of this Agreement; and

(I)     evidence that the Net Proceeds, together with any Net Proceeds Deficiency, are sufficient to cover all costs of the Restoration as determined by the Construction Consultant.

In the event any of the foregoing conditions are not satisfied at any time, the disbursement of Net Proceeds shall be paid in accordance with Section 12.2(b).

(ii)     The Net Proceeds shall be held in an escrow account designated by the Administrative Agent, and until disbursed in accordance with the provisions of this Section shall constitute additional security for repayment of the Borrower's Obligations.  The Administrative Agent shall deposit the Net Proceeds in an interest bearing account and all interest earned thereon shall be added to and become part of the Net Proceeds.  The Net Proceeds shall be disbursed by the Administrative Agent to the Borrower from time to time during the course of

132

Restoration, upon receipt of evidence (including lien waivers) satisfactory to the Administrative Agent, provided that (A) all materials installed and work and labor performed (except to the extent that they are to be paid for out of the requested disbursement) in connection with the Restoration have been paid for in full, and (B) there exist no notices of pendency, stop orders, mechanic's or materialman's liens or notices of intention to file same (other than notices of lien or other inchoate liens with respect to amounts not yet due and payable), or any other liens or encumbrances of any nature whatsoever effecting the Property arising out of the Restoration which have not either been fully bonded to the satisfaction of the Administrative Agent and discharged of record or in the alternative fully insured to the satisfaction of the Administrative Agent by the Title Company insuring the lien of the Security Instrument.

(iii)     All plans and specifications required in connection with any Restoration shall be reviewed and reasonably approved by the Administrative Agent.     The Administrative Agent shall have the use of the plans and specifications and all permits, licenses and approvals required or obtained in connection with the Restoration. The identity of the contractors, subcontractors and materialmen engaged in such Restoration, as well as the contracts under which they have been engaged, shall be subject to prior review and reasonable approval by the Administrative Agent and the Construction Consultant. All out-of-pocket costs and expenses incurred by the Administrative Agent in connection with making the Net Proceeds available for the Restoration including, without limitation, reasonable attorney's fees and disbursements and the Construction Consultant's fees, shall be paid by Borrower.

(iv)     In no event shall Administrative Agent be obligated to make disbursements of Net Proceeds in excess of an amount equal to the costs actually incurred from time to time for work in place as part of the Restoration, as certified by the Construction Consultant, minus the Casualty Retainage.     *Casualty Retainage* means an amount equal to ten percent (10%) of the costs actually incurred for work in place as part of the Restoration, as certified by the Construction Consultant, until the Restoration has been completed. The Casualty Retainage shall in no event, and notwithstanding anything to the contrary set forth above in this Section, be less than the amount actually held back by Borrower from contractors, subcontractors and materialmen engaged in the Restoration. The Casualty Retainage shall not be released until (A) thirty (30) days after the Construction Consultant certifies to the Administrative Agent that (y) the Restoration has been completed in accordance with the provisions of this Section, and (z) all approvals necessary for the re-occupancy and use of the Property have been obtained from all appropriate Governmental Authorities, (B) the Administrative Agent receives evidence satisfactory to the Administrative Agent that the costs of the Restoration have been paid in full or will be paid in full out of the Casualty Retainage, and (C) the Administrative Agent receives and approves an endorsement to the Title Insurance Policy insuring that the lien of the Security Instrument has not changed; provided that the Administrative Agent will release

133

the portion of the Casualty Retainage being held with respect to any contractor, subcontractor or materialman engaged in the Restoration as of the date upon which the Construction Consultant certifies to the Administrative Agent that the contractor, subcontractor or materialman has satisfactorily completed all work and has supplied all materials in accordance with the provisions of such contractor's, subcontractor's or materialman's contract, and the contractor, subcontractor or materialman delivers lien waivers and evidence of payment in full of all sums due to the contractor, subcontractor or materialman as may be reasonably requested in writing by the Administrative Agent or by the Title Company insuring the lien of the Security Instrument and such Title Company issues its endorsement insuring that the priority of the lien of the Security Instrument has not changed.

(v)    The Administrative Agent shall not be obligated to make disbursements of the Net Proceeds more frequently than once in any calendar month.

(vi)    If at any time the Net Proceeds or the undisbursed balance thereof shall not be sufficient to pay the balance of the total costs which are estimated by the Construction Consultant to be incurred in connection with the completion of the Restoration, the Borrower shall promptly deposit with the Administrative Agent cash or cash equivalents in an amount equal to the deficiency (the *Net Proceeds Deficiency*) before any further disbursement of the Net Proceeds shall be made.  The Net Proceeds Deficiency deposited with the Administrative Agent shall be held by the Administrative Agent and shall be disbursed for costs actually incurred in connection with the Restoration on the same conditions applicable to the disbursement of the Net Proceeds, and until so disbursed pursuant to this Section shall constitute additional security for the Borrower's Obligations.

(vii)    Provided no Default or Event of Default shall have occurred and be continuing, if at any time the Net Proceeds, together with any Net Proceeds Deficiency, or the undisbursed balance thereof, shall be in excess of the balance of the total costs which are estimated by the Construction Consultant to be incurred in connection with the completion of the Restoration, the Administrative Agent shall pay such excess to Borrower.  No payment made to the Borrower pursuant to this Section shall in any event prevent the Administrative Agent from requiring the Borrower to make further Net Proceeds Deficiency deposits in the event same shall be required pursuant to the foregoing Section.

(viii)    Any excess of Net Proceeds (together with any earnings thereon) and the remaining balance, if any, of the Net Proceeds Deficiency deposited with the Administrative Agent (together with any earnings thereon) shall be remitted by the Administrative Agent to the Borrower, provided no Default or Event of Default shall have occurred and be continuing under this Agreement, after the Construction Consultant certifies to the Administrative Agent that Restoration has been substantially completed in accordance with the provisions of this Section and the receipt by the Administrative Agent of evidence satisfactory to the

134

34098628_9_004291_60909

Administrative Agent that all costs incurred in connection with Restoration have been paid in full.

(b)     <u>Retention of Net Proceeds by Administrative Agent</u>.  All Net Proceeds (together with any earnings thereon) not required (i) to be made available for the Restoration, or (ii) to be returned to the Borrower as excess Net Proceeds pursuant to Section 12.2(a)(vii) or (viii) hereof, may be retained and applied by the Administrative Agent after such funds are received toward the payment of the Outstanding Principal of the Loan and all other amounts provided for under this Agreement or any of the other Loan Documents, whether or not then due and payable or, at the discretion of the Administrative Agent, the same may be paid, either in whole or in part, to the Borrower.  If the Administrative Agent shall receive and retain Net Proceeds, the Lien of the Security Instrument shall be reduced only by the amount thereof received and retained by the Administrative Agent and actually applied by the Administrative Agent in reduction of the Outstanding Principal or such other amounts.

**(signatures on next page)**

135

IN WITNESS WHEREOF, the Borrower, the Administrative Agent and the Lenders have executed this Agreement on the date first above written.

### BORROWER:

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

BY: Easy Street Mezzanine LLC,
a Delaware limited liability company,
its sole member

By: Easy Street Holding LLC,
a Utah limited liability company,
its sole member

By: AVG-SL, LLC,
a Utah limited liability company,
its manager

By: _____
Name: William Shoaf
Title: Manager

### LENDER:

**WESTLB AG**, acting by and through its New York Branch, individually as Lender and as Administrative Agent

By: _____
Name: Andrew B. Stein
Title: Managing Director

By: _____
Name: Bruce F. Davidson
Title: Director

Applicable Lending Office
WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York 10036

Signature Page to Loan and Security Agreement

IN WITNESS WHEREOF, the Borrower, the Administrative Agent and the Lenders have executed this Agreement on the date first above written.

**BORROWER:**

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

By:_____

_____

By:_____
      Name:
      Title:


**LENDER:**

**WESTLB AG,** acting by and through its New York Branch, individually as Lender and as Administrative Agent

By:_____
Name:  Andrew B. Stein
Title:   Managing Director

By:_____
Name:  Bruce F. Davidson
Title:   Director


**Applicable Lending Office**
WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York  10036

Signature Page to Loan and Security Agreement