remedy which the Administrative Agent or the Lenders may have under this Indemnity or under any other Loan Document.

### 18. No Marshaling of Assets.

The Indemnitees may proceed against any assets of any Indemnitor and against parties liable therefor in such order as it may elect, and no Indemnitor shall be entitled to require the Indemnitees to marshal assets. The benefit of any rule of law or equity to the contrary is hereby expressly waived by each Indemnitor.

### 19. Statute of Limitations.

Each Indemnitor acknowledges that the statute of limitations applicable to this Indemnity shall begin to run only upon the Indemnitees' accrual of a cause of action against any Indemnitor caused by such Indemnitor's failure to honor a demand for payment or performance hereunder made by the Indemnitees in writing; provided, however, if, subsequent to the demand upon such Indemnitor, the Indemnitees reach an agreement with such Indemnitor on any terms causing the Indemnitees to forbear in the enforcement of its demand upon such Indemnitor, the statute of limitations shall be reinstated and shall run for its full duration from such time that the Indemnitees subsequently make demand upon such Indemnitor.

### 20. Certified Statement.

Each Indemnitor agrees that it will, at any time and from time to time, within ten days following request by the Indemnitees, execute and deliver to the Indemnitees a statement certifying that this Indemnity is unmodified and in full force and effect (or if modified, that the same is in full force and effect as modified and stating such modifications).

### 21. Payments Free and Clear of Taxes.

Any and all payments made by any Indemnitor hereunder shall be made free and clear of, and without deduction for, any and all prospectively enacted taxes, levies, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (including, without limitation, penalties, interest, additions to tax and expenses) (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being collectively called *Taxes*).

### 22. Currency of Payments.

Any and all amounts required to be paid by any Indemnitor hereunder shall be paid in lawful money of the United States of America and in immediately available funds to the Indemnitees. Each Indemnitor agrees that whenever, at any time, or from time to time, it shall make any payment to the Indemnitees on account of its liability hereunder, it will notify the Indemnitees in writing that such payment is made under this Indemnity for that purpose.

### 23. WAIVER OF JURY TRIAL.

ALL OF THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING, WHETHER AT LAW OR IN EQUITY, BROUGHT BY OR

AGAINST ANY OTHER PARTY ON MATTERS ARISING OUT OF OR IN ANY WAY RELATED TO OR CONNECTED WITH THIS INDEMNITY.

### 24. Entire Agreement.

This Indemnity constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter contained herein. Each Indemnitor understands that the Indemnitees intend to rely upon and to enforce this Indemnity and that each Indemnitor must not rely upon or believe to be authorized or lawful any statement or representation to the contrary. The Indemnitees hereby disavow any such statement or representation by any Person. Without limiting the foregoing, each Indemnitor acknowledges the Indemnitees' intention to enforce this Indemnity to the fullest extent possible and each Indemnitor acknowledges that the Indemnitees have made no oral statements to any Indemnitor that could be construed as a waiver of the Indemnitees' right to enforce this Indemnity by all available legal means.

### 25. Headings.

The headings preceding the text of the paragraphs of this Indemnity are used solely for convenience of reference and shall not affect the meaning or interpretation of this Indemnity.

### 26. Time is of the Essence.

TIME IS OF THE ESSENCE with respect to each Indemnitor's obligations under this Indemnity.

### 27. Specific Performance.

Each Indemnitor acknowledges and agrees that (i) it is and will in the future be impossible to accurately measure the damages to the Indemnitees resulting from a breach of one or more of the Indemnitees' obligations hereunder, (ii) such a breach will cause irreparable injury to the Indemnitees and that the Indemnitees have no adequate remedy at law in respect of such breach, (iii) as a consequence, such obligations shall be specifically enforceable against each Indemnitor upon which a demand for performance is made by the Indemnitees hereunder and (iv) each Indemnitor hereby waives and shall not assert any defense based on the denial of any of the foregoing in an action for specific performance of any of such covenants.

### 28. Joint and Several Liability.

Each person or entity comprising the Indemnitors hereunder shall be jointly and severally liable for the obligations of each Indemnitor hereunder.

### 29. Counterparts.

This Indemnity may be executed in any number of counterparts and each such counterpart shall be deemed to constitute but one and the same instrument.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, Indemnitors have executed this Indemnity as of the date first set forth above.

BORROWER:

EASY STREET PARTNERS, LLC,
a Utah limited liability company

BY:[_____],
    [_____]

By: _____
    Name:
    Title:

GUARANTORS:

CLOUDNINE RESORTS, LLC,
a Utah limited liability company

BY: _____
    Name:
    Title:

**EXHIBIT I**
**SCHEDULE OF CONTRACTS AND RESERVATIONS**

(See attached)

## The Sky Lodge - Membership Reservation Status

## The Sky Lodge - Membership Reservation Status

Friday, March 17, 2006

**The Sky Lodge - Individual Membership Info**

TWO BEDROOM HOMES

## The Sky Lodge - Individual Membership Info

## The Sky Lodge - Individual Membership Info

## The Sky Lodge -- Individual Membership Info

| UNIT | Membership Fees | | Agent/Broker | Insurer | Initial Reserve Value | Annual | Contractual Membership | Expires | Estimated Current Membership | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 201 | | | | | | | | | | $4,000 |
| C1 | 204,910 | Budd, Rick | Prudential | Steadfast | | | 1-Mar-06 | | | $3,492 |
| C2 | 204,910 | Gross | Prudential | McLennin | | | 1-Mar-06 | | | |
| C3 | | | | | | | | | | |
| C4 | | | | | | | | | | |
| C5 | | | | | | | | | | |
| C6 | | | | | | | | | | |
| C7 | | | | | | | | | | |
| C8 | | | | | | | | | | |
| 202 | | | | | | | | | | $3,892 |
| C1 | 204,910 | Courtney | Prudential | Steadfast | | | 1-Mar-06 | | | $3,492 |
| C2 | 245,510 | Davis, Todd | Prudential | Steadfast | | | 1-Mar-06 | | | 72,000 |
| C3 | 224,910 | Keating | LMD | Keating | | | 1-Mar-06 | | | |
| C4 | 36,342 | Darren | Prudential | Steadfast | 31-Feb-06 | 10,000 | 24-Mar-06 | | | |
| C5 | | | | | | | | | | |
| C6 | | | | | | | | | | |
| C7 | | | | | | | | | | |
| C8 | | | | | | | | | | |
| 203 | | | | | | | | | | $3,892 |
| C1 | 204,910 | Fair | Prudential | Steadfast | | | 1-Mar-06 | | | $3,492 |
| C2 | 204,910 | Coffman | Prudential | Steadfast | | | 14-Mar-06 | | | |
| C3 | | | | | | | | | | |
| C4 | | | | | | | | | | |
| C5 | | | | | | | | | | |
| C6 | | | | | | | | | | |
| C7 | | | | | | | | | | |
| C8 | | | | | | | | | | |

## The Sky Lodge - Individual Membership Info



## The Sky Lodge -- Individual Membership Info

The Sky Lodge - Individual Membership Info.

**EXHIBIT J**
**FORM OF GENERAL CONTRACTOR'S CERTIFICATE**

*[Insert Name and Address of GC]*

[_____ ___, 2006]

WestLB AG,
New York Branch, as Administrative Agent
1211 Avenue of the Americas
New York, New York 10036

Sky Lodge Private Residence Club & Hotel, Park City, Utah

Ladies and Gentlemen:

Reference is made to that certain Loan and Security Agreement, dated as of March [___], 2006, by and between Easy Street Partners, LLC (the *Borrower*) and WestLB AG, a German corporation acting by and through its New York branch, having an office at 1211 Avenue of the Americas, New York, New York 10036, as administrative agent (including any of its successors and assigns, the *Administrative Agent*) for itself and such other co-lenders as may exist from time to time (collectively, the *Lenders* and each individually, a *Lender*) (as the same may hereinafter be amended, modified, extended and/or assigned from time to time, the *Loan Agreement*).

The undersigned (the *General Contractor*) understands that the Loan contemplated by the Loan Agreement will be used to finance the acquisition, renovation and construction of the Improvements (the *Improvements*) more particularly described in the Plans and Specifications identified in Exhibit A attached hereto, prepared by the Architect. The General Contractor has been engaged by the Borrower to construct the Improvements, and such engagement of the General Contractor has been confirmed by the Agreement between the Owner and the General Contractor dated as of [____ ____, ____] by and between the General Contractor and the Borrower (the *Contract*).

The General Contractor represents and warrants to the Administrative Agent as follows:

A.    The General Contractor has reviewed and agreed to the Plans and Specifications and the Plans and Specifications have been approved by the General Contractor;

B.    The General Contractor has reviewed and agreed to the Project Budget attached hereto as Exhibit B and acknowledges that the Project can be completed for the total project costs set forth in the Project Budget;

C.    The General Contractor has reviewed the Permits specified in Exhibit C which are designated as having been obtained and such Permits are current, valid, effective and paid for. The balance of the Permits specified on Exhibit T of the Loan

Agreement as having not yet been obtained constitute, to the knowledge and belief of the General Contractor, all the Permits and other governmental licenses, approvals, authorizations, consents, variances, certificates or agreements necessary or desirable for the construction of the Improvements to Final Completion, and as may be required in accordance with Laws currently in effect. The General Contractor has no reason to believe that the Permits in Exhibit C which have not yet been obtained will not be obtained in the ordinary course of construction;

D.       to the best of the General Contractor's knowledge, no liens have been asserted in connection with the Project in favor of the General Contractor or any subcontractor hired by the General Contractor, who has performed work, for the work so performed, and/or who supplied labor and/or materials, for the labor and/or materials so supplied, except for such work or labor and/or materials for which payment thereof is requested as of the date hereof;

E.       attached hereto as Exhibit D is a true and correct copy of the standard form of subcontract to be used by the General Contractor in connection with the construction of the Improvements.

F.       the provisions set forth in this letter shall be binding upon the General Contractor and the General Contractor's successors and assigns and shall inure to the benefit of the Administrative Agent and the Lenders and the Administrative Agent's and the Lenders' successors and assigns.


**[SIGNATURE ON FOLLOWING PAGE]**

Very truly yours,

[_____]

By: _____
    Name:
    Title:

# EXHIBIT A

## Plans and Specifications

### (See attached)

**EXHIBIT B**

**Project Budget**

**(See attached)**

# EXHIBIT C

## Permits

**EXHIBIT D**

**Standard Form of Subcontract**

**(See attached)**

## EXHIBIT K
## SCHEDULE OF MINIMUM RELEASE PRICES

Minimum Unit Prices – Based upon the last contracted sales price as of November 22, 2005

**The Sky Lodge**
**Last Sales Price - November 22, 2005**

| | Unit Number | Last Contracted Sales Price |
|---|---|---|
| **TWO BEDROOM HOMES** | | |
| | 106 | 209,900 |
| | 206 | 209,900 |
| | 306 | 229,900 |
| | 406 | 229,900 |
| | 507 | 259,900 |
| **THREE BEDROOM HOMES** | | |
| | 202 | 272,900 |
| | 207 | 279,900 |
| | 209 | 329,900 |
| | 301 | 269,910 |
| | 303 | 364,900 |
| | 305 | 269,910 |
| | 309 | 389,900 |
| | 401 | 314,900 |
| | 403 | 314,900 |
| | 405 | 399,900 |
| | 502 | 399,900 |
| | 506 | 439,900 |
| **SKY HOMES** | | |
| | 204 | 339,900 |
| | 402 | 409,900 |
| | 404 | 419,900 |
| | 504 | 439,900 |
| **THE PENTHOUSE** | | |
| | 601 | 699,900 |

**EXHIBIT L**
**PERMITTED EXCEPTIONS**

(See attached)

Form No. 1056.70 (10/17/70)
ALTA Loan Policy - Form 1
Policy No.:TBD

Order No.: 2189030
PRO-FORMA

## SCHEDULE B

## Part I

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

(THE FOLLOWING EXCEPTION AFFECTS PARCEL NO. 1)

1. Taxes for the year 2006 are now accruing as a lien, but are not yet due and payable.  Taxes for the year 2005 were paid.  (Tax Parcel No. SA-400-F)

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 2)

2. Taxes for the year 2006 are now accruing as a lien, but are not yet due and payable.  Taxes for the year 2005 were paid.  (Tax Parcel No. SA-400-A)

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 3)

3. Taxes for the year 2006 are now accruing as a lien, but are not yet due and payable.  Taxes for the year 2005 were paid.  (Tax Parcel No. SA-400-406)

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 4)

4. Taxes for the year 2006 are now accruing as a lien, but are not yet due and payable.  Taxes for the year 2005 were paid.  (Tax Parcel No. ESB-1)

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 4A)


(Continued)

FIRST AMERICAN TITLE INSURANCE COMPANY

PAGE 7/57 * RCVD AT 2/23/2006 7:22:36 PM [Eastern Standard Time] * SVR:NYC-US-FAX-01/11 * DNIS:5741 * CSID:18814124688 * DURATION (mm-ss):10-36

FEB-23-2006  17:27        EQUITY POLICY DEPT                    18014124688    P.08

Form No. 1056.70 (10/17/70)
ALTA Loan Policy - Form 1
Policy No.:TBD                                      Order No.: 2189030
                                                   PRO-FORMA

### SCHEDULE B

### Part I Continued

5.  Taxes for the year 2006 are now accruing as a lien, but are not yet due and payable.  Taxes for the year 2005 were paid  (Tax Parcel No. BSB-2)

    (THE FOLLOWING EXCEPTION AFFECTS PARCEL 5)

6.  Taxes for the year 2006 are now accruing as a lien, but are not yet due and payable.  Taxes for the year 2005 were paid  (Tax Parcel No. SA-425-UPL)

    (THE FOLLOWING EXCEPTION AFFECTS PARCEL 6)

7.  Intentionally Deleted

8.  Said property is located within the boundaries of PARK CITY and is subject to the charges and assessments levied thereunder.

    Said charges  and assessments are current.

9.  Said property is located within the boundaries of PARK CITY WATER SERVICE DISTRICT and is subject to the charges and assessments levied thereunder.

    Said charges and assessments are current.

10. Said property is located within the boundaries of SNYDERVILLE BASIN WATER RECLAMATION DISTRICT and is subject to the charges and assessments levied thereunder.

    Said charges and assessments are current.

11. PROSPECTOR LANDSCAPING AND MAINTENANCE OF SOIL COVER ORDINANCE, Recorded AUGUST 1, 1989, as Entry No. 311124, in Book 529, at Page 755, SUMMIT County Recorder's Office.

    (Continued)

FIRST AMERICAN TITLE INSURANCE COMPANY

PAGE 8/37 * RCVD AT 2/23/2006 7:22:06 PM [Eastern Standard Time] * SVR:HTC-08-FAX-01/41 * DNIS:5741 * CSID:18014124688 * DURATION (mm-ss):10-30

Form No. 1056.70 (10/17/70)
ALTA Loan Policy - Form 1
Policy No.:TBD

Order No.: 2189030
PRO-FORMA

## SCHEDULE B

### Part I Continued

AND ORDINANCE AMENDING TITLE 11, CHAPTER 14, SECTION 1, OF THE MUNICIPAL CODE OF PARK CITY TO EXPAND THE AREA SUBJECT TO PROSPECTOR MINIMUM LANDSCAPING AND TOP SOIL REQUIREMENTS, Recorded AUGUST 10, 1994, as Entry No. 412146, in Book 828, at Page 394, SUMMIT County Recorder's Office.

12. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN, AND THE EASEMENTS (EXACT LOCATION NOT DISCLOSED) CREATED BY THAT CERTAIN EASEMENT, Recorded MAY 25, 1936, as Entry No. 57299 AND 57302, in Book V, at Page 52 AND 54, SUMMIT County Recorder's Office.

13. EASEMENT FOR A PIPE LINE AS DISCLOSED BY MINING CLAIM MAP WHICH DEPICTS BLOCK 50, PARK CITY SURVEY AND SURROUNDING AREAS

14. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN, AND THE EASEMENTS CREATE BY THAT CERTAIN EASEMENT RELOCATION AGREEMENT, Recorded MARCH 11, 1985, as Entry No. 231552, in Book 334, at Page 551, SUMMIT County Recorder's Office.

15. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN ANT THE EASEMENTS CREATED BY THAT CERTAIN INTERLOCAL COOPERATION AGREEMENT, Recorded OCTOBER 2, 1985, as Entry No. 239615, in Book 356, at Page 454, SUMMIT County Recorder's Office.

16. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN, AND THE EASEMENTS CREATE BY THAT CERTAIN EASEMENT RELOCATION AGREEMENT PACIFIC AVENUE, Recorded DECEMBER 31, 1983, as Entry No. 244339 AND 244340, in Book 368, at Page 635 AND 643, SUMMIT County Recorder's Office.

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 1)

(Continued)

Form No. 1056.70 (10/17/70)
ALTA Loan Policy – Form 1
Policy No.:TBD

Order No.: 2189030
PRO-FORMA

### SCHEDULE B

#### Part 1 Continued

17. A PERPETUAL CONSERVATION EASEMENT IN AND TO THE FACADE OF THE STRUCTURE IN FAVOR OF PARK CITY MUNICIPAL CORPORATION, Recorded DECEMBER 31, 1975, as Entry No. 244341, in Book 368, at Page 651, SUMMIT County Recorder's Office.

THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN AND THE EASEMENTS CREATED BY THAT CERTAIN CONFIRMATION AND REFORMATION OF RESTRICTIVE COVENANT PRESERVATION EASEMENT , Recorded SEPTEMBER 17, 1987, as Entry No. 276572, in Book 444, at Page 69, SUMMIT County Recorder's Office.

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 1)

18. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN AND THE EASEMENTS CREATED BY THAT CERTAIN GRANT OF EASEMENT IN FAVOR OF MCINTOSH MILL, LTD., Recorded APRIL 22, 1993, as Entry No. 377986, in Book 721, at Page 484, SUMMIT County Recorder's Office.

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 1)

19. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN, AND THE EASEMENTS CREATED BY THAT CERTAIN GRANT OF EASEMENT (MAIN STREET SIDEWALK ADJACENT TO DEPOT BUILDING) IN FAVOR OF PARK CITY MUNICIPAL CORPORATION, Recorded APRIL 22, 1993, as Entry No. 377993, in Book 721, at Page 498, SUMMIT County Recorder's Office.

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 2)

20. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN AND THE EASEMENTS CREATED BY THAT CERTAIN EASEMENT RELOCATION AGREEMENT ( PATHWAY FROM DEPOT TO 7TH STREET) IN FAVOR OF PARK CITY MUNICIPAL CORPORATION, Recorded JUNE 24, 1994, as Entry No. 408159, in Book 816, at Page 206, SUMMIT County Recorder's Office.

(Continued)

Form No. 1056.70 (10/17/70)
ALTA Loan Policy – Form 1
Policy No.:TBD

Order No.: 2189030
PRO-FORMA

## SCHEDULE B

### Part I Continued

**(THE FOLLOWING EXCEPTION AFFECTS PARCEL 1)**

21. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN, AND THE EASEMENTS CREATED BY THAT CERTAIN GRANT OF EASEMENT (PATH, WEST SIDE OF MORI HEALTH CLUB PARCEL ) IN FAVOR OF PARK CITY MUNICIPAL CORPORATION, Recorded JUNE 24, 1994, as Entry No. 408160, in Book 816, at Page 213, SUMMIT County Recorder's Office.

**(THE FOLLOWING EXCEPTION AFFECTS PARCEL 4 AND 4A)**

22. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN, AND THE EASEMENTS CREATED BY THAT CERTAIN EASEMENT IN FAVOR OF U.S. WEST COMMUNICATIONS INC., Recorded AUGUST 17, 1994, as Entry No. 412702, in Book 830, at Page 132, SUMMIT County Recorder's Office.

**(THE FOLLOWING EXCEPTION AFFECTS PARCEL 4 AND 4A)**

23. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN AND THE EASEMENTS CREATED BY THAT CERTAIN GRANT OF EASEMENT IN FAVOR OF SNYDERVILLE BASIN SEWER IMPROVEMENT DISTRICT, Recorded AUGUST 30, 1995, as Entry No. 436370, in Book 904, at Page 474, SUMMIT County Recorder's Office.

**(THE FOLLOWING EXCEPTION AFFECTS PARCEL 4 AND 4A)**

24. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN AND THE EASEMENTS CREATED BY THAT CERTAIN GRANT OF EASEMENT IN FAVOR OF SNYDERVILLE BASIN SEWER IMPROVEMENT DISTRICT , Recorded SEPTEMBER 8, 1995, as Entry No. 436959, in Book 906, at Page 508, SUMMIT County Recorder's Office.

**(THE FOLLOWING EXCEPTION AFFECTS PARCEL NO. 1)**

**(Continued)**

FEB-23-2006  17:29        EQUITY POLICY DEPT                    19814124688    P.12

Form No. 1056.70 (10/17/70)
ALTA Loan Policy - Form 1
Policy No.:TBD                                      Order No.: 2189030
                                                   PRO-FORMA

## SCHEDULE B

### Part I Continued

25. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN, AND THE EASEMENTS CREATED BY THAT CERTAIN ENCROACHMENT PERMIT 660 MAIN STREET-ZOOM, Recorded OCTOBER 14, 1997, as Entry No. 489664, in Book 1084, at Page 46, SUMMIT County Recorder's Office.

    (THE FOLLOWING EXCEPTION AFFECTS PARCEL 2)

26. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN AND THE EASEMENTS CREATED BY THAT CERTAIN GRANT OF EASEMENT (BUILDING A-1 FIRE EXIT/STAIRWAY) IN FAVOR OF GKM LTD A UTAH LIMITED LIABILITY PARTNERSHIP, Recorded SEPTEMBER 8, 1998, as Entry No. 517126, in Book 1180, at Page 426, SUMMIT County Recorder's Office.

    (THE FOLLOWING EXCEPTION AFFECTS PARCEL NO. 4 AND 4A)

27. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN AND THE EASEMENTS CREATED BY THAT CERTAIN FLOATING SEWER EASEMENT DEED, Recorded NOVEMBER 12, 2002, as Entry No. 637956, in Book 1487, at Page 1522, SUMMIT County Recorder's Office.

28. RESERVATIONS CONTAINED IN THAT CERTAIN PATENT EXECUTED BY THE UNITED STATES OF AMERICA, Recorded OCTOBER 14, 1882, as Entry No.  , in Book A, at Page 76, SUMMIT County Recorder's Office.

    SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE LOCAL CUSTOMS, LAWS AND DECISIONS OF COURTS, AND ALSO SUBJECT TO THE RIGHT OF THE PROPRIETOR OF A VEIN OR LODE EXTRACT AND REMOVE HIS ORE THERE FROM, SHOULD THE SAME BE FOUND TO PENETRATE OR INTERSECT THE PREMISES HEREBY GRANTED AS PROVIDED BY LAW.

    (Continued)

FIRST AMERICAN TITLE INSURANCE COMPANY

PAGE 12/17 * RCVD AT 2/23/2006 7:22:36 PM [Eastern Standard Time] * SVR:RTC-US-FAX-01/11 * DNIS:3741 * CSID:19814124688 * DURATION (mm-ss):18-30

Form No. 1056.70 (10/17/70)
ALTA Loan Policy - Form 1
Policy No.:TBD

Order No.: 2189030
PRO-FORMA

## SCHEDULE B

### Part I Continued

29. RESERVATIONS CONTAINED IN THAT CERTAIN PATENT EXECUTED BY THE UNITED STATES OF AMERICA , Recorded APRIL 14, 1877, as Entry No.  , in Book F, at Page 205, SUMMIT County Recorder's Office.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE LOCAL CUSTOMS, LAWS AND DECISIONS OF COURTS, AND ALSO SUBJECT TO THE RIGHT OF THE PROPRIETOR OF A VEIN OR LODE EXTRACT AND REMOVE HIS ORE THERE FROM, SHOULD THE SAME BE FOUND TO PENETRATE OR INTERSECT THE PREMISES HEREBY GRANTED AS PROVIDED BY LAW.

30. RESERVATIONS CONTAINED IN THAT CERTAIN PATENT EXECUTED BY THE UNITED STATES OF AMERICA , Recorded APRIL 14, 1877, as Entry No.  , in Book F, at Page 207, SUMMIT County Recorder's Office.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE LOCAL CUSTOMS, LAWS AND DECISIONS OF COURTS, AND ALSO SUBJECT TO THE RIGHT OF THE PROPRIETOR OF A VEIN OR LODE EXTRACT AND REMOVE HIS ORE THERE FROM, SHOULD THE SAME BE FOUND TO PENETRATE OR INTERSECT THE PREMISES HEREBY GRANTED AS PROVIDED BY LAW.

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 2)

31. RESERVATIONS CONTAINED IN THAT CERTAIN SPECIAL WARRANTY DEED EXECUTED BY UNITED PARK CITY MINES COMPANY , Recorded APRIL 14, 1969, as Entry No. 108963, in Book 20, at Page 615, SUMMIT County Recorder's Office.

(Continued)

Form No. 1056.70 (10/17/70)
ALTA Loan Policy – Form 1
Policy No.:TBD

Order No.: 2189030
PRO-FORMA

## SCHEDULE B

### Part I Continued

EXPRESSLY EXCEPTING AND RESERVING, HOWEVER UNTO THE GRANTOR ITS SUCCESSORS AND ASSIGNS ALL MINERALS INCLUDING OIL AND GAS UNDERLYING THE SURFACE OF THE ABOVE DESCRIBED PARCELS AND TRACTS OF LANDS, TOGETHER WITH RIGHT TO EXTRACT AND REMOVE THE SAME, PROVIDED HOWEVER THAT GRANTOR FOR ITSELF ITS SUCCESSORS AND ASSIGNS, COVENANTS AND AGREES TO AND WITH GRANTEE ITS SUCCESSORS AND ASSIGNS THAT GRANTOR ITS SUCCESSORS OR ASSIGNS IN THE EXTRACTION OR REMOVAL OF THE MINERALS HEREBY EXCEPTED AND RESERVED OR IN THE CONDUCT OF MINING OR OTHER OPERATIONS WILL NOT ENTER UPON THE SURFACE OF SAID PREMISES.

32. RESERVATION OF MINERAL RIGHTS AS RESERVED IN THE WARRANTY DEED FROM UNION PACIFIC LAND RESOURCES CORPORATION AS GRANTOR, IN FAVOR OF JOHN B. PRINCE AND WALLACE A .WRIGHT, JR. , Recorded SEPTEMBER 22, 1977, as Entry No. 140531, in Book 100, at Page 441, SUMMIT County Recorder's Office.

EXCEPTING FROM THIS GRANT AND RESERVING UNTO THE GRANTOR ITS SUCCESSORS AND ASSIGNS ALL MINERALS AND ALL MINERAL RIGHTS OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED, INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING OIL AND GAS AND RIGHTS THERETO, TOGETHER WITH THE SOLE, EXCLUSIVE AND PERPETUAL RIGHT TO EXPLORE FOR, REMOVE AND DISPOSE OF SAID MINERALS BY ANY MEANS OR METHODS SUITABLE TO THE GRANTOR ITS SUCCESSORS OR ASSIGNS BUT WITHOUT ENTERING UPON OR USING THE SURFACE OF THE LANDS CONVEYED AND IN SUCH MANNER AS NOT TO DAMAGE THE SURFACE OF SAID LANDS OR TO INTERFERE WITH THE USE THEREOF BY THE GRANTEE.

(THE FOLLOWING EXCEPTION AFFECTS PARCELS 5 AND 6)

33. RESERVATIONS CONTAINED IN THAT CERTAIN QUIT-CLAIM DEED EXECUTED BY THE UNION PACIFIC RAILROAD COMPANY , Recorded OCTOBER 31, 1979, as Entry No. 160844, in Book 144, at Page 804, SUMMIT County Recorder's Office.

(Continued)

FIRST AMERICAN TITLE INSURANCE COMPANY

PAGE 14/37 * RCVD AT 2/23/2006 7:22:06 PM [Eastern Standard Time] * SVR:XTC-US-FAX-01/11 * DNIS:2711 * CSID:19914124698 * DURATION (mm-ss):19-38

Form No. 1056.70 (10/17/70)
ALTA Loan Policy - Form 1
Policy No.:TBD

Order No.: 2189030
PRO-FORMA

## SCHEDULE B

### Part I Continued

EXCEPTING FROM THIS GRANT AND RESERVING UNTO THE GRANTOR ITS SUCCESSORS AND ASSIGNS ALL MINERALS AND ALL MINERAL RIGHTS OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED, INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING OIL AND GAS AND RIGHTS THERETO, TOGETHER WITH THE SOLE, EXCLUSIVE AND PERPETUAL RIGHT TO EXPLORE FOR, REMOVE AND DISPOSE OF SAID MINERALS BY ANY MEANS OR METHODS SUITABLE TO THE GRANTOR ITS SUCCESSORS OR ASSIGNS BUT WITHOUT ENTERING UPON OR USING THE SURFACE OF THE LANDS CONVEYED AND IN SUCH MANNER AS NOT TO DAMAGE THE SURFACE OF SAID LANDS OR TO INTERFERE WITH THE USE THEREOF BY THE GRANTER.

(THE FOLLOWING EXCEPTION AFFECTS PARCEL 1)

34. THE TERMS, CONDITIONS COVENANTS, RESTRICTIONS AND PROVISIONS CONTAINED IN THAT CERTAIN NET LEASE AND PURCHASE OPTION AGREEMENT BY AND BETWEEN AURORA PARTNERS LIMITED AS LESSOR AND SUNDANCE ENTERPRISES INC. AS LESSEE, Recorded DECEMBER 20, 1996, as Entry No. 469890, in Book 1016, at Page 325, SUMMIT County Recorder's Office.

ASSIGNMENT OF LESSEE'S INTEREST IN LEASE TO SUNDANCE PARTNERS, LTD, A UTAH CORPORATION, Recorded DECEMBER 20, 1996, as Entry No. 469891, in Book 1016, at Page 330, SUMMIT County Recorder's Office.

35. Intentionally Deleted

36. Intentionally Deleted

37. Intentionally Deleted

(Continued)

Administrative Agent shall be entitled to rely upon the work product of such attorneys to the same extent that any Indemnitor is entitled to rely thereon.

(d)     The Indemnitees shall give written notice to each Indemnitor of any act or occurrence which may lead to an Indemnified Claim promptly upon becoming aware of any such act or occurrence; provided, that failure by the Indemnitees to give such notice shall not affect any Indemnitor's obligations hereunder except to the extent that such failure actually prejudices any Indemnitor's ability to perform hereunder.

### 7.   Procedures Relating to Indemnification.

(a)     In the event that any Indemnitor fails to diligently pursue defense of any claim as required hereunder, the Administrative Agent may, but shall not be obligated to, upon five days' prior written notice to such Indemnitor, employ its own legal counsel and consultants to investigate, prosecute, negotiate, or defend any Indemnified Claim and in such event, the Administrative Agent shall have the right to compromise or settle the same without the necessity of showing actual liability therefor, and without the consent of such Indemnitor. Such Indemnitor shall reimburse the Administrative Agent, upon demand, for all reasonable costs actually incurred by the Administrative Agent under this Section 7(a), including, without limitation, the amount of all reasonable costs of settlements entered into by the Administrative Agent.

(b)     If the Administrative Agent does not employ its own legal counsel, no Indemnitor shall, without the prior written consent of the Administrative Agent or the applicable Indemnitee, which consent shall not be unreasonably withheld or delayed, (i) settle or compromise any action, suit, proceeding, or claim or consent to the entry of any judgment that does not include as an unconditional term thereof the delivery by the claimant or plaintiff to the Administrative Agent or the applicable Indemnitee of (x) a full and complete written release of the Administrative Agent or the applicable Indemnitee (in form, scope and substance reasonably satisfactory to the Administrative Agent or the applicable Indemnitee) from all liability in respect of such action, suit or proceeding and (y) a dismissal with prejudice of such suit, action or proceeding against the applicable Indemnitee, or (ii) settle or compromise any action, suit, proceeding, or claim in any manner that will adversely affect the Administrative Agent or the applicable Indemnitee as determined by the Administrative Agent or the applicable Indemnitee in its sole discretion, it being understood that compliance with the preceding clause (i) will not adversely affect the Administrative Agent or the applicable Indemnitee.

(c)     Except as otherwise provided in subsections (a) and (b) above, each Indemnitor shall control the defense of any Indemnified Claim.

### 8.   Obligation Independent.

The obligations of each Indemnitor under this Indemnity are independent of, and shall not be measured or affected by (i) any amounts at any time owing under the Loan or secured by the Security Instrument, (ii) the sufficiency or insufficiency of the Property as collateral for the Loan, (iii) the modification, expiration or termination of any of the documents or instruments relating to the Loan, (iv) the discharge or repayment in full of the Loan

Form No. 1056.70 (10/17/70)
ALTA Loan Policy - Form 1
Policy No.:TBD                                                Order No.: 2189030
                                                             PRO-FORMA

### SCHEDULE B

### Part I Continued

38. Intentionally Deleted

   (THE FOLLOWING EXCEPTION AFFECTS PARCEL I)

39. Intentionally Deleted

   (THE FOLLOWING EXCEPTION AFFECTS PARCELS 4 AND 4A)

40. Intentionally Deleted

41. Intentionally Deleted


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


NOTE:  This specimen (Pro forma) policy and its endorsements, is furnished at the request of the
       Proposed Insured and it is understood and agreed that it does not reflect the present state of title.
       The furnishing of the coverage set forth herein is contingent upon all of the Company's
       requirements being satisfied at or prior to closing.

# EXHIBIT M
## PRELIMINARY PROJECT BUDGET

DATA REFLECTS THE SKY LODGE PRO FORMA – NOVEMBER 30TH VERSION

| | Total | Initial Cash Equity Funding | Mezz Debt | Senior Debt | Deferred Fees In Escrow | Contingent Expense Paid From Sales | Contrib. Land Equity |
|---|---|---|---|---|---|---|---|
| **Project Costs During Construction** | | | | | | | |
| Land | 9,900,000 | • | 9,900,000 | | • | • | |
| A&E Fees | 1,105,230 | 690,300 | 62,564 | 359,366 | • | • | |
| Consultants & Fees | 1,329,864 | 214,100 | 118,726 | 996,640 | • | • | |
| Infrastructure | 1,825,281 | • | • | 1,825,281 | • | • | |
| Hard Costs | 18,767,931 | • | • | 18,767,931 | • | • | |
| Soft Construction Costs | 2,591,511 | • | • | 2,591,511 | • | • | |
| FF&E | 3,844,800 | • | • | 3,844,800 | • | • | |
| Developer Fees – Cost Component | 720,404 | 28,963 | • | 701,442 | • | • | |
| Developer Fees – Escrowed Component | 498,323 | • | • | 498,323 | (498,323) | • | |
| Sales & Marketing Exp During Construction | 1,164,864 | 248,214 | 124,960 | 792,690 | • | • | |
| Sales Management Fee – Cost Component | 339,800 | 90,900 | • | 248,000 | • | • | |
| Pre-Opening/HOA Subsidy | 808,800 | • | • | 808,000 | • | • | |
| Start-Up Operating Loss | 686,400 | 94,576 | 18,916 | 572,914 | • | • | |
| Closing Costs & Senior Lender Fees | 2,198,034 | 306,766 | 1,890,264 | 108,004 | • | • | |
| Senior Loan Interest | 1,782,384 | • | • | 1,782,384 | • | • | |
| Contingency | 2,932,621 | • | • | 2,932,621 | • | • | |
| **Total Costs Funded During Construction** | 49,541,224 | 1,790,000 | 11,355,000 | 36,795,935 | (498,323) | • | |
| **Contingent Costs Funded From Sales & Hotel Cash Flow** | | | | | | | |
| Developer Fees – Release From Escrow | | • | • | • | 498,323 | | |
| Sales Management Fee – Escrowed | 1,660,730 | • | • | • | • | 1,660,730 | |
| Sales & Marketing – Expense After Completion | 77,290 | • | • | • | • | 77,290 | |
| End Loan Fees | 433,393 | • | • | • | • | 433,393 | |
| Contributed Land Equity (Saxia Trust) | 1,600,000 | • | • | • | • | • | 1,600 |
| **Total Costs Funded From Sales** | 3,624,337 | • | • | • | 498,323 | 1,624,130 | 1,600 |
| **Total Project Capitalization** | 53,170,261 | 1,790,000 | 11,355,000 | 36,795,935 | • | 1,624,130 | 1,600 |

| | | Loan To Value Analysis | |
|---|---|---|---|
| **Capital Funded During Construction** | | | |
| Equity – Cash Contribution | 1,790,000 | Project Cost Before Land | 42,653,176 |
| Total Mezzanine Debt | 11,355,000 | Appraised Land Value | 18,200,000 |
| Total Senior Debt (up to $36.8 million allowed) | 36,795,935 | Escrowed Deposits | 4,600,000 |
| Contingency Funded From Deposits | • | Escrowed Fees | 1,570,000 |
| **Total Capital Required During Construction** | 49,795,935 | Total Asset Value | 66,623,220 |
| **Capital Funded From Sales** | | Senior Loan | 36,800,000 |
| Equity – Contingent Fees & Expenses | 1,624,130 | Mezzanine Loan | 11,355,000 |
| Equity – Contributed Land Equity (Saxia Trust) | 1,600,000 | Total Debt | 48,155,000 |
| **Total Capital From Sales & Cash Flow** | 3,394,210 | | |
| | | Loan To Value Ratio | 72.1% |
| **Total** | 53,194,146 | | |

# EXHIBIT N
## FORM OF RECOURSE LIABILITY AGREEMENT

**(See attached)**

# RECOURSE LIABILITY AGREEMENT

This RECOURSE LIABILITY AGREEMENT (this *Agreement*), is made as of March [_____], 2006, by CLOUDNINE RESORTS, LLC, a Utah limited liability company, having an address at 4780 Winchester Court, Park City, Utah 84098 (the *Recourse Liability Party*), to and for the benefit of WESTLB AG, a German banking corporation acting through its New York branch, as administrative agent (together with any of its successors or assigns in such capacity, the *Administrative Agent*) for lenders or other financial institutions or entities party, as lenders (the *Lenders*) to the Loan Agreement referred to below.

## WITNESSETH:

WHEREAS, Easy Street Partners, LLC, a Utah limited liability company (the *Borrower*) has requested that the Lenders make, and the Administrative Agent administer, a loan in the original principal amount of $[36,779,224.00] to the Borrower (the *Loan*) pursuant to that certain Loan and Security Agreement, dated as of the date hereof, (as amended, supplemented, restated and otherwise modified from time to time, the *Loan Agreement*; all capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement) among the Borrower, the Administrative Agent and the Lenders, which Loan is evidenced by those certain promissory notes (the *Notes*) made by the Borrower in favor of the Lenders in an original aggregate principal amount of $[36,779,224.00] and secured by, among other things, that certain Construction and Interim Loan Deed of Trust with Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of the date hereof, (the *Security Instrument*) encumbering, *inter alia*, certain real property and improvements located in the city of Park City, county of Summit, state of Utah (the *Property*, as such defined term is more particularly described in the Loan Agreement);

WHEREAS, the Recourse Liability Party is an Affiliate of the Borrower and will obtain substantial economic benefit from the Lenders making, and the Administrative Agent administering, the Loan; and

WHEREAS, to induce the Lenders to make, and the Administrative Agent to administer, the Loan, the Recourse Liability Party has agreed to indemnify and compensate the Administrative Agent and the Lenders as hereinafter set forth.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged by all parties, the Recourse Liability Party agrees as follows:

Section 1. <u>Recourse Liability Events</u>. For purposes of this Agreement, *Recourse Liability Events* shall mean, collectively, any or all of the following:

(a)     any failure by the Borrower to deliver to the Administrative Agent any rents, receipts, sale proceeds (including, without limitation, any Required Release Payments), insurance proceeds or condemnation payments covering all or a portion of the Property in accordance with the Loan Documents or any failure by the Borrower to apply any such proceeds in accordance with the Loan Documents;

(b)    Any failure to procure or maintain policies of insurance as required by the Loan Documents or the Fractional Ownership Documents;

(c)    Any failure to pay amounts necessary to pay Impositions as required by the Loan Agreement or any other liability which would rank senior to the Loan with regard to payment or security on the Property;

(d)    Any fraud, tortious conduct or material misrepresentation by the Borrower or Borrower's Member or any other Loan Party in connection with the Loan, any of the Loan Documents or any of the Collateral;

(e)    Any failure by the Borrower to perform the Borrower's environmental obligations under the Environmental Indemnity or the other Loan Documents;

(f)    Any filing of a voluntary bankruptcy proceeding by the Borrower or an involuntary proceeding by any member of the Borrower not dismissed within the time period(s) set forth in the Loan Documents;

(g)    Any failure to pay all LIBOR Breakage Costs due to any Lender;

(h)    All costs of compliance with the ADA and similar state or local Laws;

(i)    Any transfer of any direct or indirect interest in the Borrower or the Property in violation of the Loan Documents;

(j)    Any failure by the Borrower to maintain unencumbered marketable title to the Property;

(k)    Any costs incurred in connection with the enforcement of remedies in connection with the Loan; and

(l)    Any challenge by the Borrower or any Loan Party to any foreclosure procedure or other exercise of remedies by the Administrative Agent in connection with the Loan.

Section 2. Recourse Liability Indemnity.  The Recourse Liability Party hereby irrevocably, unconditionally, absolutely, jointly and severally agrees to indemnify and hold harmless the Administrative Agent and the Lenders from and against any and all loss, cost, damage, liability or expense, including attorney's fees and disbursements, actually suffered or incurred by the Administrative Agent or the Lenders by reason of the occurrence of any of the Recourse Liability Events.

Section 3. Bankruptcy Recourse Liability Events. In the event of the occurrence of any Bankruptcy Liability Event, as defined hereinafter, the Recourse Liability Party hereby irrevocably, unconditionally, absolutely jointly and severally agrees to assume and be responsible for the prompt and complete observance, fulfillment and performance of all the Obligations of the Borrower under the Loan Documents, including the making of all payments of all principal, interest, additional interest and other sums evidenced by the Notes. Such

2

assumption and responsibility shall occur automatically upon the occurrence of any Bankruptcy Liability Event without further action on the part of any Person. For the purpose of this Section, *"Bankruptcy Liability Event"* means any filing of a voluntary bankruptcy proceeding by the Borrower or an involuntary proceeding by any member of the Borrower not dismissed within sixty (60) days after filing.

Section 4. Termination. The obligations of the Recourse Liability Party under this Agreement shall terminate upon the actual and irrevocable receipt by the Administrative Agent of payment in full of all of the Obligations. Upon written request of the Borrower, the Administrative Agent shall provide confirmation of such termination.

Section 5. Application of Amounts Realized. In the event the Administrative Agent has caused a foreclosure sale or has otherwise caused a transfer of the Property, the Administrative Agent shall not be required to apply any net proceeds of any such sale or transfer on account of any sums which are the subject of any obligation of the Recourse Liability Party pursuant to this Agreement unless such net proceeds shall be in excess of the amount which would satisfy in full all of the Obligations (other than obligations of the Recourse Liability Party arising pursuant to this Agreement), in which case the Administrative Agent shall apply such excess, if any, on account of any sums which are the obligation of the Recourse Liability Party pursuant to this Agreement.

Section 6. Default Rate. Any amount payable by the Recourse Liability Party that is not paid within ten days after demand therefor from the Administrative Agent shall bear interest from the date of such demand at the Default Rate.

Section 7. Representations and Warranties. The Recourse Liability Party represents and warrants to the Administrative Agent and the Lenders (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Agreement) that:

(a) it is a corporation, partnership, limited liability company or other entity (as recited in the preamble to this Agreement) duly formed, validly existing and in good standing pursuant to the laws of its state of formation (which state of formation is as recited in the preamble to this Agreement), and is qualified to do business in each other jurisdiction where such qualification is necessary to carry out its business;

(b) it has the power and requisite authority and is duly authorized to execute and deliver this Agreement and perform its obligations under this Agreement and the other Loan Documents to which it is a party;

(c) this Agreement constitutes the legal, valid and binding obligation of it, enforceable against it in accordance with its terms;

(d) neither the execution and delivery of this Agreement, nor consummation of any of the transactions herein contemplated nor compliance with the terms and provisions hereof, will contravene any provision of Law, statute, rule or regulation to which the Recourse Liability Party is subject or any judgment, decree, license, order or permit applicable to the

3

Recourse Liability Party, or will conflict or be inconsistent with, or will result in any breach of any of the terms of the covenants, conditions or provisions of, or constitute a default under, or result in the creation or imposition of a Lien (except liens in favor of the Administrative Agent) upon any of the property or assets of the Recourse Liability Party pursuant to the terms of any indenture, mortgage, deed of trust, agreement or other instrument to which the Recourse Liability Party is a party or by which the Recourse Liability Party may be bound, or to which the Recourse Liability Party may be subject;

(e) all consents, approvals, authorizations or orders of any Person, court or Governmental Authority or any third party that are required in connection with the execution and delivery by the Recourse Liability Party of this Agreement or to consummate the transactions contemplated hereby have been obtained and are in full force and effect. The Recourse Liability Party is not in default with respect to any Law, statute, rule, regulation, judgment, license, permit, order, writ, injunction or decree of any court or Governmental Authority applicable to the Recourse Liability Party;

(f) there are no actions, suits or proceedings at law or at equity, pending or, to the Recourse Liability Party's knowledge, threatened against or affecting the Recourse Liability Party which challenge the validity or enforceability of this Agreement or which might materially adversely affect the financial condition of the Recourse Liability Party or the ability of the Recourse Liability Party to perform any of its respective obligations under this Agreement; and

(g) all statements of financial condition and related schedules and all certificates, statements, documents or other information of or relating to the Recourse Liability Party heretofore delivered to the Administrative Agent or its agents or counsel (i) are true, correct and complete, (ii) do not contain any misleading information or any untrue statements of a material fact, (iii) do not omit to state a material fact and (iv) in the case of all statements of financial condition and related schedules, fairly present the financial condition of the subjects thereof as of the respective dates thereof. No material adverse change has occurred in the financial conditions reflected in the most recent of the aforesaid statements of financial condition and related schedules since the respective dates thereof. No representation or warranty made by the Recourse Liability Party in this Agreement or any other Loan Document contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading.

Section 8. Liability Not Limited.    The Recourse Liability Party's liability hereunder shall not be subject to, limited by or affected in any way by any nonrecourse provisions or provisions limiting liability contained in the Loan Agreement, the Notes, the Security Instrument or any other Loan Document. The Recourse Liability Party agrees that the indemnities and agreements made in Sections 2 and 3 hereof are separate and distinct from, independent of and in addition to the Borrower's undertakings under the Notes, the Security Instrument and the other Loan Documents. The Recourse Liability Party agrees that a separate action may be brought to enforce the provisions of this Agreement which shall in no way be deemed to be an action on the Notes, the Loan Agreement or any other Loan Document. The Recourse Liability Party hereby waives the defenses of laches and any applicable statute of limitations.

4

**Section 9.  Unconditional Character of Obligations.**

(a) <u>Obligations</u>.  The obligations of the Recourse Liability Party hereunder shall be absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the Notes, the Loan Agreement, the Security Instrument or the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against the Borrower or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of the Borrower, the Recourse Liability Party or any other Person under any Loan Document, or any setoff, counterclaim, recoupment, limitation or termination, and irrespective of any other circumstances which might otherwise limit recourse against the Recourse Liability Party by the Administrative Agent or constitute a legal or equitable discharge or defense of a guarantor or surety.  The Administrative Agent may enforce the obligations of the Recourse Liability Party hereunder by a proceeding at law, in equity or otherwise, independent of any foreclosure or similar proceeding or any deficiency action against the Borrower or any other Person at any time, and either before or after an action against the Collateral or any part thereof, the Borrower or any other Person.  The Recourse Liability Party waives diligence, filing of claims with any court, any proceeding to enforce any provision of the Notes, the Loan Agreement, the Security Instrument or any other Loan Documents against the Borrower or any other Person, any right to require a proceeding first against the Borrower or any other Person, or to exhaust any security (including the Collateral) for the performance of the obligations of the Borrower or any other Person, or to cause a marshalling of the Borrower's assets, and any protest, presentment, notice of default or other notice or demand whatsoever.

(b) <u>Agreement and Collateral</u>.  Without limiting the generality of the provisions of <u>Section 9(a)</u> and except as otherwise limited by applicable law, the obligations of the Recourse Liability Party under this Agreement and the rights of the Administrative Agent to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:

(i)  any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting the Borrower, the Recourse Liability Party or any other Person or the Collateral or any part thereof, including any automatic stay granted pursuant to any provision of a bankruptcy or similar law;

(ii)  any failure by the Administrative Agent, any Lender or any other Person, whether or not without fault on its part, to perform or comply with any of the terms of the Loan Agreement, or any other Loan Documents or any document or instrument relating thereto;

(iii)  the sale, transfer or conveyance of the Collateral or any interest therein to any Person, whether now or hereafter having or acquiring an interest in the Collateral or any interest therein and whether or not pursuant to any foreclosure, trustee sale or similar proceeding against the Borrower or the Collateral or any part thereof;

5

(iv)    the conveyance to the Administrative Agent, any Lender, any Affiliate of the Administrative Agent or any Lender or the Administrative Agent's or any Lender's nominee of the Collateral or any interest therein by a deed in lieu of foreclosure;

(v)    the release of the Borrower, the Recourse Liability Party or any other Person from the performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law or otherwise;

(vi)    the release in whole or in part of the Collateral;

(vii)    any failure by the Administrative Agent to record, register or file the Security Instrument, any UCC-1 financing statements or other security document or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Obligations;

(viii)    any recovery from the Recourse Liability Party or any other obligor of any of the Obligations, which recovery is obtained under any other guaranty or indemnity executed in connection with the Loan; or

(ix)    any accuracy or inaccuracy of any representations or warranties made by the Borrower, the Recourse Liability Party or any other Person herein or in any of the other Loan Documents.

(c) Waiver.    The Recourse Liability Party hereby expressly and irrevocably waives the following:

(i)    all defenses in an action brought by the Administrative Agent to enforce this Agreement based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise;

(ii)    all rights to require the Administrative Agent or any Lender to pursue any other remedy it may have against the Borrower, or any member of the Borrower;

(iii)    all suretyship defenses the Recourse Liability Party would otherwise have under the laws of Utah or any other jurisdiction;

(iv)    all rights and defenses arising out of an election of remedies by the Administrative Agent, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guarantied obligation, has destroyed the Recourse Liability Party's rights of subrogation and reimbursement against the Borrower;    and

(v)    subject to applicable Law, all rights and defenses that the Recourse Liability Party may have because the Loan is secured in part by real property (including, without limiting the generality of the foregoing, any rights the Recourse Liability Party may otherwise have under Utah Code Ann. Section 78-37-1, or any other right to require the Administrative Agent, any Lender or any Lender's nominee to proceed against the Borrower or any other Person or to proceed against or exhaust any Collateral or other security held by the Administrative Agent, any Lender or any Lender's nominee at any time or to pursue any other remedy in the

6

Administrative Agent's, any Lender's or any Lender's nominee's power or under any other agreement before proceeding against the Recourse Liability Party hereunder). This means, among other things:

(1)    that the Administrative Agent may collect from the Recourse Liability Party without first foreclosing on any real or personal property collateral pledged by the Borrower; and

(2)    if the Administrative Agent forecloses on any real property collateral pledged by the Borrower: (x) the amount of the Loan may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (y) the Administrative Agent may collect from the Recourse Liability Party even if the Administrative Agent, by foreclosing on the real property collateral, has destroyed any right the Recourse Liability Party may have to collect from the Borrower.

This subsection (v) is an unconditional and irrevocable waiver of any rights and defenses the Recourse Liability Party may have because the Loan is secured by real property.

(d) The Administrative Agent's and the Lenders' Ability to Act.    The Administrative Agent and the Lenders may deal with the Borrower, Affiliates of the Borrower and the Collateral in the same manner and as freely as if this Agreement did not exist and shall be entitled, among other things, to grant the Borrower or any other Person such extension or extensions of time to perform any act or acts as may be deemed advisable by the Administrative Agent, at any time and from time to time, without terminating, affecting or impairing the validity of this Agreement or the obligations of the Recourse Liability Party hereunder.

(e) Changes to Loan Documents and Other Documents.    No compromise, alteration, amendment, modification, extension, renewal, release or other change of, or waiver, consent, delay, omission, failure to act or other action with respect to, any liability or obligation under or with respect to, or of any of the terms, covenants or conditions of, the Notes, the Loan Agreement, the Security Instrument or the other Loan Documents shall in any way alter, impair or affect any of the obligations of the Recourse Liability Party hereunder.

(f) The Administrative Agent's Remedies.    The Administrative Agent may proceed to protect and enforce any or all of its rights under this Agreement by suit in equity or action at law against the Recourse Liability Party, whether for the specific performance of any covenants or agreements contained in this Agreement or otherwise, or to take any action authorized or permitted under applicable law, and shall be entitled to require and enforce the performance of all acts and things required to be performed hereunder by the Recourse Liability Party. All rights, remedies, powers and privileges conferred by the other Loan Documents are cumulative of all other rights, remedies, powers and privileges herein or by law or in equity provided, or provided in any other Loan Document, and shall not be deemed to deprive the Administrative Agent of any such other legal or equitable rights, remedies, powers and privileges to enforce the conditions, covenants and terms of this Agreement or the other Loan Documents by judicial proceedings or otherwise, and the employment of any rights, remedies,

7

powers and privileges hereunder or otherwise, shall not prevent the concurrent or subsequent employment of any other appropriate rights, remedies, powers and privileges.

(g) Actions. At the option of the Administrative Agent, the Recourse Liability Party may be joined in any action or proceeding commenced by the Administrative Agent against the Borrower in connection with or based upon the Notes, the Loan Agreement, the Security Instrument or any other Loan Documents and recovery may be had against the Recourse Liability Party in such action or proceeding or in any independent action or proceeding against the Recourse Liability Party to the extent of the Recourse Liability Party liability hereunder, without any requirement that the Administrative Agent first assert, prosecute or exhaust any remedy or claim against the Borrower or any other Person, or any security for the obligations of the Borrower or any other Person. Any demand by the Administrative Agent for payments, or performance of the obligations under, this Agreement upon the Recourse Liability Party shall not be and shall not be construed to be a release or waiver by the Administrative Agent of any other obligor with respect to such payment or obligation.

(h) Continuance or Reinstatement of Agreement. Notwithstanding anything to the contrary contained in this Agreement, the Recourse Liability Party agrees that this Agreement shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment is made by the Recourse Liability Party to the Administrative Agent or any Lender and such payment is rescinded or must otherwise be returned by the Administrative Agent or such Lender upon insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting the Recourse Liability Party, all as though such payment had not been made. The Administrative Agent may, but shall not be required to, litigate or otherwise dispute such rescission or its obligation to make such repayments.

(i) Payments to the Recourse Liability Party; Subrogation. In the event that the Recourse Liability Party shall advance or become obligated to pay any sums under this Agreement, or in the event that for any reason whatsoever the Borrower or any subsequent owner of the Collateral or any part thereof is now, or shall hereafter become, indebted to the Recourse Liability Party, the Recourse Liability Party agrees that (i) the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, the time of payment and in all other respects to all Obligations, including principal and interest and other amounts, at any time owed to the Administrative Agent or the Lenders under the Loan Documents and (ii) it shall not be entitled to enforce or receive payment thereof until the actual and irrevocable receipt by the Administrative Agent of payment in full of all Obligations. Nothing herein contained is intended or shall be construed to give the Recourse Liability Party any right of subrogation in or under the Loan Documents or any right to participate in any way therein, or in the right, title or interest of the Administrative Agent or any Lender in or to the Collateral, notwithstanding any payments made by the Recourse Liability Party under this Agreement, all such rights of subrogation and participation, if any, being hereby expressly postponed until the actual and irrevocable receipt by the Administrative Agent of payment in full of all Obligations. If any amount shall be paid to the Recourse Liability Party by reason of the payment of sums by the Recourse Liability Party under this Agreement at any time when any such sums due and owing to the Administrative Agent or the Lenders shall not have been fully paid, such amount shall be paid by the Recourse Liability Party to the Administrative

8484416n_3

Agent for credit and application against such sums due and owing to the Administrative Agent
or the Lenders.

(i) Effect of Foreclosure, Exercise of Remedies. The Recourse Liability Party's
obligations hereunder shall continue notwithstanding a foreclosure, deed in lieu of foreclosure or
similar proceeding or transaction involving the Property or any part thereof or other exercise by
the Administrative Agent of the other remedies under the Loan Documents, at law or in equity.

Section 10.    Additional Covenants.    Except as permitted by the Loan
Agreement, the Recourse Liability Party shall not make (or permit to be made) any transfer with
respect to (i) any direct or indirect ownership interest of the Recourse Liability Party in the
Borrower or (ii) the direct or indirect ownership interest of any Person in the Recourse Liability
Party.

Section 11.    Rights of Administrative Agent.    Unless expressly provided to the
contrary in any particular instance, with respect to any and all rights of the Administrative Agent
to (a) give or withhold any consent, approval or other authorization requested by the Recourse
Liability Party with respect to this Agreement, (b) make any election or exercise any option
granted herein, (c) make any decision, judgment or determination with respect hereto, (d) modify
or amend this Agreement or waive any obligation of the Recourse Liability Party hereunder or
grant any extension of time for performance of the same or (e) take or omit to take any other
action of any kind whatsoever, the Administrative Agent shall, to the maximum extent permitted
by law, have the right, and the Recourse Liability Party expressly acknowledges the
Administrative Agent's right, in each instance, to make or give the same or take such action or to
omit to take such action, as the case may be, in its sole and absolute discretion.

Section 12.    Further Assurances. The Recourse Liability Party shall, within ten
Business Days after written request, make, execute or endorse, and acknowledge and deliver or
file or cause the same to be done, all such vouchers, invoices, notices, certifications, additional
agreements, undertakings or other assurances, and take all such other action, as the
Administrative Agent may, from time to time, deem reasonably necessary in order to give effect
to the rights and benefits conferred on the Administrative Agent and the Lenders pursuant to this
Agreement.

Section 13.    Amendment, Waivers, Consents and Approvals.    No failure or
delay of the Administrative Agent in exercising any power or right hereunder or to demand
payment for any sums due pursuant to this Agreement or any other Loan Document, shall
operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or
any abandonment or discontinuance of steps to enforce such a right or power, preclude any other
or further exercise thereof or the exercise of any other right or power.    No waiver of any
provision of this Agreement or in any of the other Loan Documents or consent to any departure
by the Recourse Liability Party or any other Person therefrom shall in any event be effective
unless signed in writing by the Administrative Agent, and then such waiver or consent shall be
effective only in the specific instance and for the purpose for which given.    Consents, approvals
and waivers granted by the Administrative Agent for any matters covered under this Agreement
or any Loan Document shall not be effective unless signed in writing by the Administrative
Agent, and such consents, approvals and waivers shall be narrowly construed to cover only the

9

parties and facts identified in any such consent, approval or waiver. No notice or demand on the Recourse Liability Party or any other Person in any case shall entitle the Recourse Liability Party or such Person to any other or further notice or demand in similar or other circumstances. Unless expressly provided to the contrary, any consents, approvals or waivers of the Administrative Agent or the Lenders pursuant to this Agreement or any other Loan Documents shall be granted or withheld in the Administrative Agent's or the Lenders' sole discretion, as the case may be. No amendment, modification or termination of any provision of this Agreement shall be effective unless in writing and signed by the Recourse Liability Party and the Administrative Agent.

Section 14.    Binding Effect.    This Agreement shall be binding upon the Recourse Liability Party and its respective heirs, legatees, personal representatives, successors and assigns, and shall inure to the benefit of and shall be enforceable by the Administrative Agent, the Lenders and their respective successors and assigns.

Section 15.    Duplicate Originals. Counterparts.    This Agreement may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Agreement may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Agreement.

Section 16.    Notices.    All notices, certificates, demands, requests, approvals, consents, waivers or other communications, which any party hereto may be required or may desire to give hereunder, shall be in writing and (a) mailed (registered or certified mail, return receipt requested, and postage prepaid), (b) hand-delivered, with signed receipt or (c) sent by nationally-recognized overnight courier as follows:

If to the Administrative Agent, to its address at:

WestLB AG, New York Branch, as administrative agent
for itself and other co-lenders
1211 Avenue of the Americas
New York, New York  10036
Attention: Bruce F. Davidson, Global Structured Finance – Infrastructure

with a copy to:

WestLB AG, New York Branch, as administrative agent
for itself and other co-lenders
1211 Avenue of the Americas
New York, New York  10036
Attention: Peter Ciaccia, Investment Banking

with a copy to:

Katten Muchin Rosenman LLP
575 Madison Avenue

10

New York, New York 10022
Attention: Timothy G. Little, Esq.

If to the Recourse Liability Party, to its address at:

CloudNine Resorts, LLC
4780 Winchester Court
Park City, Utah 84098
Attention: David L. Wickline

with a copy to:

Wrona & Parrish, P.C.
1816 Prospector Avenue, Suite 100
Park City, Utah 84060
Attention: Blake Parrish

Any party may change its address for purposes of this Agreement by giving notice of such change to the other parties pursuant to this Section 16. All such notices, certificates, demands, requests, approvals, waivers and other communications given pursuant to this Section 16 shall be effective when received (or delivery is refused) at the address specified as aforesaid.

Notwithstanding any provision contained herein or in any of the other Loan Documents to the contrary, in the event that the Administrative Agent shall fail to give any notice to the Recourse Liability Party under this Agreement, the sole and exclusive remedy for such failure shall be to seek appropriate equitable relief to enforce this Agreement to give such notice and to have any action of the Recourse Liability Party postponed or revoked and any proceedings in connection therewith delayed or terminated pending the giving of such notice by the Administrative Agent, and the Recourse Liability Party shall not have any right to damages (whether actual or consequential) or any other type of relief against the Administrative Agent not specifically provided for herein, all of which damages or other relief are hereby expressly waived. The foregoing is not intended and shall not be deemed under any circumstances to require the Administrative Agent to give notice of any type or nature to the Recourse Liability Party except as expressly required hereby.

Section 17.    Severability.    In the event any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect in a particular jurisdiction or as to particular Persons or circumstances, the validity, legality and enforceability of the remaining provisions contained herein (or the effectiveness of the invalid, illegal or unenforceable provision in a different jurisdiction or as to different Persons or circumstances) shall not in any way be affected or impaired thereby. The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

11

Section 18.    Captions.  The captions, headings and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify or modify the terms and provisions hereof.

Section 19.    Governing Law; Choice of Forum; Consent to Service of Process and Jurisdiction; Waiver of Trial by Jury.  This Agreement shall be construed in accordance with, and the Administrative Agent and all matters arising as of or relating in any way whatsoever to this Agreement (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York.  The Recourse Liability Party irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Agreement, the Note or the other Loan Documents may be brought in (i) the courts of the United States of America located in the Southern District of New York or the District where the Property is located or (ii) in the state courts of the State and County of New York or the state courts of the State and County where the Property is located, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  The Recourse Liability Party irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to the Recourse Liability Party at its address provided in Section 16, as the same may be changed pursuant to Section 16.  Nothing in this Section 19, however, shall affect the right of Administrative Agent to serve legal process in any other manner permitted by law or affect the right of Administrative Agent to bring any suit, action or proceeding against the Recourse Liability Party or its property in the courts of any other jurisdiction.  THE RECOURSE LIABILITY PARTY HEREBY WAIVES, AND THE ADMINISTRATIVE AGENT, BY ACCEPTANCE OF THIS AGREEMENT HEREBY WAIVES TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING BROUGHT IN CONNECTION WITH THIS AGREEMENT, WHICH WAIVER IS INFORMED AND VOLUNTARY.

Section 20.    Definitional Provisions.  For purposes of this Agreement, (a) defined terms used in the singular shall import the plural and vice-versa; (b) the words "hereof," "herein," "hereunder" and similar terms when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (c) the words "include" and "including" wherever used in this Agreement shall be deemed to be followed by the words "without limitation"; (d) the word "or" shall be construed to be inclusive and (e) all of the agreements or instruments referred to in this Agreement shall mean such agreements or instruments as the same may, from time to time, be modified, supplemented or amended, or the terms thereof waived or modified to the extent permitted by, and in accordance with, the terms and conditions thereof and of this Agreement and the other Loan Documents.

Section 21.    No Other Party Beneficiary.  This Agreement is for the sole benefit of the Administrative Agent, the Lenders and their successors and assigns, and is not for the benefit of any other party.  Nothing contained in this Agreement shall be deemed to confer upon anyone other than the Administrative Agent, the Lenders and their successors and assigns any right to insist upon or to enforce the performance or observance of any of the obligations contained herein.

12

84664188_3

Section 22.Entire Agreement.  This Agreement and the other Loan Documents constitute the entire agreement between the parties hereto with respect to the subject matter hereof and supersede all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter contained in this Agreement.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

13

**IN WITNESS WHEREOF**, the Recourse Liability Party has executed this instrument the day and year first above written.

**CLOUDNINE RESORTS, LLC,**
a Utah limited liability company

BY:[_____]
[_____]

By: _____
　　Name:
　　Title:

Recourse Liability Agreement
Signature Page

4406560_3