# EXHIBIT D

# Pledge Agreement

1. <u>Parties and Definitions</u>. This pledge agreement (this "**Agreement**") is made as of March 30 , 2006 by Easy Street Holding, LLC with a chief executive office at c/o AVG-SL, LLC, 4780 Winchester Court, Park City, Utah 84098 (the "**Pledgor**"), to BayNorth Realty Fund VI, Limited Partnership (the "**Lender**"), having a place of business at One Financial Center, Floor 23, Boston, MA 02211, to induce the Lender to make a loan (the "**Loan**") pursuant to the Loan Agreement (as it may be amended, the "**Loan Agreement**"), dated as of the date hereof, between Easy Street Mezzanine, LLC, a Utah limited liability company (the "**Borrower**") and the Lender to the Borrower evidenced by a note (together with all replacements, renewals and substitutions thereof, the "**Note**") in the original principal amount of Eleven Million Two Hundred Fifty Thousand Dollars ($11,250,000). Capitalized terms used herein without definition shall have the respective meanings ascribed thereto in the Loan Agreement. The following terms are used in this Agreement with the meanings referred to below:

"**Collateral**" – See Section 2.

"**Obligations**" – See Section 2.

"**Pledged Interests**" – See Section 2(a).

"**Pledged Debt**" – See Section 2(c).

2. <u>Pledge of Interests in the Borrower</u>. Pledgor hereby pledges to the Lender as collateral security for the due and punctual payment and performance of all indebtedness and obligations of the Borrower to the Lender in connection with the Loan, whether now or hereafter existing and whether due or to become due (collectively, the "**Obligations**"), and hereby grants to the Lender a security interest in the following property (collectively, the "**Collateral**"):

(a) all of the ownership interests in the Borrower (collectively, the "**Pledged Interests**"),

(b) any and all right of Pledgor to receive income, earnings, profits, distributions, or other amounts from the Borrower in any circumstances whatever, including without limitation, upon withdrawal, and

(c) all obligations owing by the Borrower or any entity in which it owns an interest to Pledgor (collectively, the "**Pledged Debt**"),

(d) in each case, whether now existing and owned by any Pledgor or hereafter arising or acquired.

3. <u>Distributions</u>. Pledgor shall not, directly or indirectly, authorize any Restricted Payment or accept any Restricted Payment (as defined below). The Pledgor agrees that, following an Event of Default, all payments to which the Pledgor is entitled from the Borrower

shall instead be paid to the Lender. The Lender shall be entitled to apply any amounts received by the Lender pursuant to this Section 3 against any of the Obligations.

"**Restricted Payment**" means (i) any distribution, direct or indirect, on account of any ownership interest in the Borrower now or hereafter outstanding, which is not specifically permitted under Section 3.16 of the Loan Agreement, (ii) any redemption, retirement, purchase or other acquisition for value, direct or indirect, of any ownership interest in the Borrower now or hereafter outstanding, or of any options or other rights to acquire any such ownership interest, and (iii) any loan or other advance, in each case, which is not specifically permitted under Section 3.16 of the Loan Agreement.

4. <u>Warranties and Representations of the Pledgor</u>. The Pledgor hereby represents, warrants and covenants that:

(a) The Pledgor owns one hundred percent (100%) of the interests of the Borrower and that these interests constitute all of the ownership and management interests of the Borrower;

(b) the chief executive office of the Pledgor is as stated above, and the Pledgor will not change such chief executive office unless the Pledgor shall provide the Lender with written notice thereof not less than thirty (30) days prior to such change and there shall have been taken such action, reasonably satisfactory to the Lender, as may be necessary to maintain the security interests of the Lender hereunder at all times fully perfected and in full force and effect;

(c) Pledgor shall not change its name unless the Pledgor shall have given the Lender written notice thereof not less than thirty (30) days prior to such change (but in any event, within the period required pursuant to the Uniform Commercial Code) and shall have taken such action, reasonably satisfactory to the Lender, as may be necessary to maintain the security interests of the Lender in the Collateral at all times fully perfected and in full force and effect;

(d) the Lender has, as of the date of this Agreement, a valid, perfected and continuing first priority lien upon and security interest in the Collateral;

(e) as of the date of this Agreement, none of the Collateral is subject to any pledge, lien, security interest, charge, option, restriction or other encumbrance, except the security interest created by this Agreement;

(f) the Pledgor has the power, authority and legal right to pledge the Collateral pursuant to this Agreement and to perform all of its duties and obligations hereunder;

(g) the pledge, transfer and grant of a security interest in the Pledged Interests hereunder has been registered on the books and records of the Borrower;

2

(h)     the Pledgor, constituting all of the holders of equity interests in the Borrower, consents to the pledge of all of the Pledged Interests as provided herein, consents to and acknowledges the grant to the Lender of a security interest in the Pledged Debt pursuant to this Agreement, and, upon the Event of Default and Lender's exercise of its rights hereunder, consents to the admission of the Lender or its designee as a substitute member of the Borrower with all the same rights as the Pledgor;

(i)     this Agreement has been duly authorized, executed and delivered by the Pledgor, and is the legal, valid and binding obligation of the Pledgor enforceable against it in accordance with its terms, subject to the effect of bankruptcy, insolvency or other similar laws affecting the rights of creditors generally and subject to limitations imposed by general principles of equity;

(j)     the execution and delivery of this Agreement by the Pledgor and the pledging of the Collateral are within the Pledgor's power, and do not contravene any law or any rule or regulation or any judgment, decree or order of any tribunal or governmental authority, or of any agreement or instrument to which the Pledgor or the Borrower is a party or by which the Pledgor, the Borrower or any of the property of any of them is bound, or constitute a default under any of the foregoing; and

(k)     the Pledgor is not a foreign corporation, foreign partnership, foreign trust or foreign person as such terms are defined in Section 1445 of the Internal Revenue Code of 1986, as amended ("**Section 1445 of the IRC**"), and if the Pledgor is disregarded as an entity separate from its owner for United States income tax purposes, then the person deemed to own its assets for United States income tax purposes is not a foreign corporation, foreign partnership, foreign trust or foreign person as such terms are defined under Section 1445 of the IRC.

5.     <u>Voting</u>. Subject to Section 27, unless and until there shall have occurred an Event of Default, the Pledgor shall be entitled to exercise any and all rights with respect to the Pledged Interests, including, without limitation, voting, giving consents, waivers and ratifications and acting as agent for the Borrower. All such rights of the Pledgor with respect to the Pledged Interests shall cease immediately upon the occurrence of an Event of Default and the Lender may thereafter exercise any and all rights of the Pledgor with respect to the Pledged Interests. The Pledgor hereby appoints the Lender, acting alone, with full power of substitution, as its proxy and attorney-in-fact to take any action with respect to the Pledgor's Pledged Interests following an Event of Default which the Pledgor would be authorized to take for any purpose whatsoever, including, without limitation, administering the construction, operation or sale of the Property, paying obligations of the Borrower and transferring the Borrower's assets to satisfy the Obligations, and Lender agrees to exercise such rights in accordance with the Uniform Commercial Code. This proxy is irrevocable and the appointment is coupled with an interest in that the parties appointed as proxy are pledgees of the interests in the Borrower they are hereby authorized to vote.

6.     <u>Covenants With Respect to the Collateral</u>. The Pledgor covenants and agrees that:

3

(a) The Pledgor shall keep the Collateral free and clear of all liens, encumbrances, attachments, security interest pledges.

(b) The Pledgor shall not make demand for payment of the Pledged Debt, nor accept any prepayment of the Pledged Debt.

(c) So long as any of the Obligations remain unsatisfied, the Pledgor shall cause the Borrower to deliver to the Lender all payments made on account of the Pledged Debt. Until delivered to the Lender, the Pledgor shall cause the Borrower to hold any such payments in trust for immediate delivery to the Lender to be applied towards the satisfaction of the Obligations.

(d) The Pledgor shall not exercise any right with respect to the Pledged Debt which would dilute or adversely affect the Lender's rights in the Pledged Debt; and

(e) Except as authorized under the Loan Agreement, the Pledgor shall not permit the Borrower or the Subsidiary Owner to issue any additional ownership interests.

7. <u>Event of Default and Remedies</u>. The breach of any covenant, condition or agreement contained in this Agreement that remains uncured after the expiration of any applicable grace period or the occurrence of any circumstance defined as an "**Event of Default**" under any other Loan Document shall be an "**Event of Default**" hereunder. If an Event of Default shall have occurred, the Lender shall thereafter have all of the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation, the immediate right to vote and exercise all management rights associated with the Pledged Interests, and the right to sell any or all of the Collateral by private or public sale, and, in addition, the following rights and remedies (to the extent permitted by applicable law), all such rights and remedies being cumulative, not exclusive, and enforceable alternatively, successively or concurrently, at such time or times as the Lender deems expedient:

(a) the Lender may demand, sue for, collect or make any compromise or settlement that the Lender deems reasonable in respect of the Collateral held by it hereunder;

(b) the Lender may replace the managers, general partners, board of directors, officers, other persons performing similar functions, or other agents, in each case of the Borrower, with replacements selected by the Lender;

(c) the Lender may exercise its rights under the Power of Attorney dated as of the date hereof, from the Borrower to the Lender;

(d) the Lender may have a receiver appointed to hold any of the Collateral and exercise its or the Pledgor's rights with respect thereto; and

(e) the Lender may exercise any other rights provided in this Agreement or the other Loan Documents.

4

8.  **Sale of the Collateral.** Subject to the requirements of the following sentence, the Lender may enforce its rights hereunder without any other notice and without compliance with any other condition precedent now or hereafter imposed by statute, rule of law or otherwise (all of which are hereby expressly waived by the Pledgor, to the fullest extent permitted by law), it being understood that nothing herein shall be deemed to constitute a waiver by the Pledgor of the requirement that any sale of the Collateral by the Lender be conducted in a commercially reasonable manner and in accordance with the Uniform Commercial Code. The Pledgor acknowledges that (i) ten (10) days' notice of any public sale or of the date on or after which a private sale may be effected is reasonable notice, and (ii) if the Lender elects to enforce its remedies through a public sale, it is reasonable to hold such a sale in Park City, Utah. The Lender may buy any part or all of the Collateral at any public sale and may make payments therefor by any means. The Lender shall apply the cash proceeds actually received from any sale or other disposition to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, to reasonable attorneys' fees, and all reasonable legal expenses, and other reasonable expenses which may be incurred by the Lender in attempting to collect the Obligations or to enforce this Agreement or in the prosecution or defense of any action or proceeding relating to the subject matter of this Agreement; and then to the Obligations, and any surplus shall be paid to the Pledgor.

The Pledgor recognizes that the Lender will be required to sell the Collateral in a transaction which does not constitute a public offering and which qualifies for so-called private placement exemptions under the Securities Act of 1933 and applicable state securities laws. The Pledgor agrees that a sale conducted after commercially reasonable public advertising shall constitute a public sale for purposes of the applicable provisions of the Uniform Commercial Code, notwithstanding reasonable restrictions imposed by the Lender on bidders in order to qualify for applicable exemptions from registration and other requirements of the Securities Act of 1933, applicable state securities laws, and rules and regulations promulgated under any of them. The Lender shall be under no obligation to delay a sale of the Collateral for the period of time necessary to permit the Pledgor to register such securities for public sale under the Securities Act of 1933, as amended, even if the Pledgor would agree to do so. The Pledgor also acknowledges that the Senior Lender has imposed certain restrictions on the sale of the Collateral pursuant to the Intercreditor Agreement between the Lender and the Senior Lender, and that a sale conducted in compliance with those restrictions is commercially reasonable.

In all events, the Lender shall give the Pledgor not less than ten (10) days' written notice of any proposed disposition of the Collateral. Promptly following the request of the Lender, the Pledgor shall deliver a non-foreign affidavit in form and substance satisfactory to the Lender.

9.  **Marshaling.** The Lender shall not be required to marshal any present or future security for, or guaranties of, the Obligations or any of them, or to resort to such security or guaranties in any particular order; and all of the rights of the Lender hereunder and in respect of such security and guaranties shall be cumulative and in addition to all other rights, however existing or arising. To the extent that it lawfully may, the Pledgor hereby agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Agreement and, to the extent that it lawfully may, Pledgor hereby irrevocably waives the benefits of all such laws. The Lender's prior recourse to

5

any part or all of the Collateral shall not constitute a condition of any demand, suit or proceeding for payment or collection of the Obligations.

10. Pledgor's Obligations Not Affected. The obligations of the Pledgor hereunder shall remain in full force and effect without regard to, and shall not be impaired by (i) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or the like of the Pledgor; (ii) any exercise or failure to exercise, or any waiver, by the Lender of any right, remedy, power or privilege under or in respect of the Obligations or any security therefor (including, without limitation, this Agreement); (iii) any amendment to or modification of any instrument (other than this Agreement) securing any of the Obligations; or (iv) the taking of additional security for, or any guaranty of, any of the Obligations or the release or discharge or termination of any security or guaranty for any of the Obligations; whether or not the Pledgor shall have notice or knowledge of any of the foregoing.

11. Transfer, Etc. by the Pledgor. The Pledgor shall not sell, assign, transfer or otherwise dispose of, grant any option with respect to, or pledge or grant any security interest in or otherwise encumber any of the Collateral or any interest therein.

12. Further Assurances. The Pledgor will, from time to time, execute and deliver to the Lender all such other and further instruments and documents and take or cause to be taken all such other and further action as the Lender may reasonably request in order to effect and confirm more securely in the Lender all rights contemplated in this Agreement, including, but not limited to, the execution of financing statements and similar instruments. The Pledgor appoints the Lender as the Pledgor's attorney in fact irrevocable to do all acts which the Pledgor may be required to do under this Agreement.

13. Lender's Exoneration. Under no circumstances shall the Lender be deemed to assume any responsibility for or obligation or duty of any nature or kind with respect to any part or all of the Collateral or any distributions thereon received pursuant to this Agreement, or any matter or proceedings arising out of or relating thereto.

14. No Waiver, Etc. No act, failure or delay by the Lender shall constitute a waiver of its rights and remedies hereunder. No single or partial waiver by the Lender of any default or right or remedy which it may have hereunder shall operate as a waiver of any other default, right or remedy or of the same default, right or remedy on a future occasion.

15. Expenses of Collection. The Pledgor shall pay to the Lender on demand any and all expenses paid or incurred by the Lender, including, without limitation, attorneys' fees and disbursements, in connection with the enforcement of this Agreement. All amounts owed to the Lender under this Agreement shall bear interest at the Default Rate from the date due until paid.

16. Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

17. <u>Amendment, Waiver, Entire Agreement</u>. This Agreement may be amended, and waivers or consents to departures from the provisions hereof may be given, only in a writing signed by the party against which enforcement is sought. This Agreement contains the entire agreement and understanding between the Pledgor and the Lender relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

18. <u>Governing Law; Choice of Law</u>. This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the law of The Commonwealth of Massachusetts, without regard to principles of conflicts of laws. This Agreement shall take effect as a sealed instrument. The terms and conditions of this Agreement and the other Loan Documents were negotiated by the Lender in The Commonwealth of Massachusetts, and delivered by the Pledgor and accepted by the Lender in The Commonwealth of Massachusetts, and the proceeds of the Loan were disbursed from The Commonwealth of Massachusetts.

19. <u>Descriptive Headings; Interpretation</u>. The headings in this Agreement are for convenience only and shall not be used in construing or interpreting this Agreement. In this Agreement, the singular shall include the plural, and each of the masculine, feminine and neuter shall include each of the others, as the context may require. Words such as "hereof," "herein," "hereunder," "hereinafter," and similar words shall refer to this Agreement as a whole, and not to the particular part thereof in which such words appear, unless the context requires otherwise. Each reference to "**Pledgor**" means to any Pledgor and to all Pledgors, if more than one. Notwithstanding that this Agreement was initially prepared by the Lender's counsel, this Agreement has been reviewed and negotiated by competent counsel on behalf of the Pledgor. The parties to this Agreement agree that this Agreement shall not be construed against the Lender as a result of this Agreement having been so prepared. Terms used herein without definition, but which are defined in the Uniform Commercial Code, shall, unless the context otherwise indicates or requires, have the meanings ascribed to them in such Uniform Commercial Code

20. <u>Successors and Assigns</u>. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party, and all covenants, promises and agreements by or on behalf of the respective parties which are contained in this Agreement shall bind and inure to the benefit of the successors and assigns of all parties originally benefited thereby.

21. <u>Consent to Jurisdiction</u>. The Pledgor submits to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts for the purpose of any suit, action or proceeding arising out of or relating to this Agreement. The Pledgor irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have that its property is exempt or immune from attachment or execution, and to the venue or jurisdiction of any such suit, action or proceeding brought in any such court, including, without limitation, any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The Pledgor agrees that final judgment with no right of appeal remaining in any such suit, action or

proceeding brought in any such court shall be conclusive and may be enforced in other jurisdictions by a suit upon such judgment, a certified copy of which shall be conclusive evidence of the fact and of the amount of Pledgor's indebtedness or other obligation evidenced by the judgment. Nothing in this Agreement will be deemed to preclude the Lender from bringing an action or proceeding against the Pledgor in any court with jurisdiction, wherever located.

      22.      <u>Waiver of Jury Trial</u>. To the fullest extent permitted by law, the Pledgor hereby waives any right to trial by jury in any action, proceeding or counterclaim, whether in contract, tort or otherwise, in connection with or relating directly or indirectly to the Loan, the Property, the Borrower or the Lender.

      23.      <u>Service of Process</u>. The Pledgor consents to process being served in any suit, action or proceeding hereunder by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to Pledgor at its or his address set forth below or to any other address which the Pledgor shall have designated by written notice to the Lender. Nothing in this Section shall affect the rights of the Lender to serve process in any manner permitted by law.

      24.      <u>Notice, Etc.</u> Any notice, demand or other communication under this Agreement shall be in writing and shall be deemed delivered on the earlier to occur of (i) receipt or (ii) the date of delivery, refusal or non-delivery indicated on the return receipt, if deposited in a United States Postal Service depository, postage prepaid, sent registered or certified mail, return receipt requested, or if sent via a recognized commercial courier service providing for a receipt, addressed to the party to receive the same at the address of such party set forth below.

    If to Pledgor:      c/o AVG-SL, LLC
                                  4780 Winchester Court
                                  Park City, Utah 84098

    with a copies to:    Wrona & Parrish, P.C.
                                  1816 Prospector Avenue
                                  Suite 100
                                  Park City, Utah 84060
                                  Attn: S. Blake Parrish, Esq.

                                  Park City I, LLC
                                  c/o Michael Feder
                                  379 W. Broadway
                                  Suite 401
                                  New York, NY 10012

                                  Rhona J. Kisch, Esq.
                                  Hahn & Hessen LLP
                                  488 Madison Avenue
                                  New York, NY 10022

105570.159654 WMH LIBD/1715535.6

03/25/06 09:46 pm

If to Lender:         BayNorth Realty Fund VI, Limited Partnership
                      One Financial Center
                      Floor 23
                      Boston, MA 02211
                      Attention: Charles J. Flint

with copies to:       Goodwin Procter LLP
                      Exchange Place
                      Boston, MA 02109-2881
                      Attention: Christopher B. Barker, P.C.

Any party may, from time to time, change the address at which such written notices, demands or other communications are to be sent by giving the other party written notice of such changed address in the manner hereinabove provided. Any notice to the Borrower by the Lender, if given in the manner provided for in the Loan Agreement, shall satisfy any express or implied obligation of the Lender to deliver notice to the Pledgor.

25.   <u>Counterparts</u>.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

26.   <u>Limitation on Liability of the Lender and Others</u>.  The Pledgor's sole recourse and remedy for any default on the part of any person under any Loan Document shall be limited to the interest of the Lender in the Loan. Neither the Lender, nor any of its agents or representatives, or any officer, director, shareholder, partner, agent, principal, heir, estate, successor or assign of any of the foregoing shall have any personal liability under any Loan Document.

27.   <u>Directions to the Borrower</u>.  If any condition entitling the Lender to receive distributions or exercise any voting or other rights with respect to the Pledged Interests has occurred, the Lender may give notice to such effect to the Borrower, and direct the Borrower to make further distributions with respect to the Pledged Interests directly to the Lender. The Pledgor hereby directs the Borrower to honor such directions as such entity receives from the Lender with respect to the payment of distributions relating to the Pledged Interests, or instructions as to any matter which a holder of the Pledged Interests is entitled to exercise and voting or other rights described in Section 5 above. This paragraph is intended to authorize the Borrower to rely upon directions from the Lender and is not intended to confer any additional authority upon the Lender beyond that conferred elsewhere in this Agreement or otherwise. The Pledgor also directs the Borrower not to transfer or authorize the transfer of any of the Pledged Interests without the consent of the Lender.

In witness whereof, the parties have caused this Agreement to be duly executed under seal as of the date first above written.

PLEDGOR:

EASY STREET HOLDING, LLC, a Utah limited liability company

By: AVG-SL, LLC, a Utah limited liability company
Its: Manager

By: William Shoaf
Its: Manager

# EXHIBIT E

04/05/06  15:18 FAX 801 532 7033      ALL SEARCH                                     ☏002/003



**Utah Department of Commerce**

Division of Corporations

## Acknowledgement of Filing

File Number: 291761200636        Record Date: 04-03-2006 13:49        Type: UCC
Old File Number: N/A             Lapse Date: 04-03-2011 13:49         Status: ACTIVE

**Filer:**
ALL-SEARCH 210055
1108 E SOUTH UNION AVE
MIDVALE, UT 84047 USA

**Collateral Description:**
Action: ADD
Description:
DEBTOR HEREBY PLEDGES TO THE SECURED PARTY AS COLLATERAL SECURITY FOR THE DUE AND PUNCTUAL PAYMENT AND PERFORMANCE OF ALL INDEBTEDNESS AND OBLIGATIONS OF EASY STREET MEZZANINE (THE "BORROWER") TO THE SECURED PARTY IN CONNECTION WITH THE LOAN, WHETHER

**Debtor:**
EASY STREET HOLDING, LLC                                   Jurisdiction: UTAH
C/O AVG-SL                                         Organization ID: 6148408-0160
4780 WINCHESTER COURT                              Organization Type: LLC
PARK CITY, UT 84098 USA

**Secured Party:**
BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP
ONE FINANCIAL CENTER - FLOOR 23
BOSTON, MA 02111 USA

**Transaction Detail:**
Form Type: UCC 1 FILING STATEMENT                  Transaction Cost: $12.00
Effective Date: 04-03-2006 13:49                   Receipt Number: 1748145
Submitter Ref: NONE                                Alt Designation: NONE

**Additional Description:**
FILING APPROVED - 3
THE DATA LISTED ABOVE IS A 'NON-CERTIFIED' RECORD. PLEASE TAKE THE TIME TO REVIEW ALL OF THE INFORMATION. IF YOU FIND ANY DISCREPANCIES YOU MUST CONTACT THE DIVISION, AT NO COST, WITHIN 30 DAYS OF RECEIVING THIS ACKNOWLEDGEMENT.

JAN 29 1996 04:00                                  801 532 7033        PAGE.22

04/05/06 15:49 FAX 801 532 7033    ALL SEARCH                                         ☒003/003

███████████████ RECEIVED
███████████████
███████████████ APR 03 2006

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Date: 04/03/2006
Receipt Number: 1748145
Amount Paid: 5473.00

04-03-06P01:49 RCVD

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Easy Street Holding, LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| c/o AVG-SL 4780 Winchester Court | Park City | UT | 84098 | USA |
| 1d. TAX ID # SSN OR EIN / ADDL INFO RE / 1e. TYPE OF ORGANIZATION / 1f. JURISDICTION OF ORGANIZATION / 1g. ORGANIZATIONAL ID #, if any | | | | |
| 20-4502877 / ORGANIZATION DEBTOR / LLC / Utah / 6148408-0160 | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BayNorth Realty Fund VI, Limited Partnership | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One Financial Center - Floor 23 | Boston | MA | 02111 | USA |

4. THIS FINANCING STATEMENT covers the following collateral:

. Debtor hereby pledges to the Secured Party as collateral security for the due and punctual payment and performance of all indebtedness and obligations of Easy Street Mezzanine (the "Borrower") to the Secured Party in connection with the Loan, whether now or hereafter existing and whether due or to become due, and hereby grants to the Secured Party a security interest in the following property:

(a) all of the ownership interests in the Borrower,
(b) any and all right of Debtor to receive income, earnings, profits, distributions, or other amounts from the Borrower in any circumstances whatsoever, including without limitation, upon withdrawal,
(c) all obligations owing by the Borrower or any entity in which it owns an interest to Debtor, and
(d) in each case, whether now existing and owned by any Debtor or hereafter arising or acquired.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/96)

JAN 09 1996 04:00                                              801 532 7033        PAGE.03