# EXHIBIT G

BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP
One Financial Center, 23rd Floor
Boston, MA  02111

May 5, 2009

<u>Via Federal Express, Overnight Delivery</u>

Easy Street Mezzanine, LLC
c/o AVG-SL, LLC
4780 Winchester Court
Park City, UT  84098

      Re:    MEZZANINE LOAN DEFAULT NOTICE
                <u>Sky Lodge, Park City, Utah</u>

Ladies and Gentlemen:

      Reference is made to that certain Loan Agreement, dated as of March 30, 2006 (the "Loan Agreement"), by and between BayNorth Realty Fund VI, Limited Partnership, a Delaware limited partnership ("Mezzanine Lender") and Easy Street Mezzanine LLC, a Delaware limited liability company ("Mezzanine Borrower"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Agreement.

      Pursuant to Section 4.1 of the Loan Agreement, failure of Mezzanine Borrower, the Subsidiary Owner or any other party to any Senior Loan Document to observe or perform any material agreement, covenant or obligation of it contained therein shall constitute an Event of Default. The Senior Loan matured on March 30, 2009 and has not been repaid by Subsidiary Owner. This letter shall constitute notice to Mezzanine Borrower of an Event of Default in accordance with Section 4.2 of the Loan Agreement, and that the above-described Event of Default has occurred and is continuing under the Loan Agreement.

      In addition to the Event of Default above, one or more additional defaults have occurred under Section 4.1(b) of the Loan Agreement, including, without limitation, the following:

      1)    breach of the covenant at Section 3.4 of the Loan Agreement with respect to modification of Plans and Specifications;

LIBD/2217815.3

May 5, 2009
Page 2

    2)    breach of the covenant at Section 3.25 of the Loan Agreement with respect to a material change in the use or character of the Property on account of construction of Fin Restaurant;

    3)    the apparent breach, based on information and belief, of the covenant at Section 3.51 of the Loan Agreement with respect to the use of proceeds from the sale of Units to underwrite operating deficits of the Property without Mezzanine Lender's prior approval;

    4)    breach of the covenant at Section 3.42(m) of the Loan Agreement with respect to entering into a Material Contract with Jacobsen Alliance Group, Inc., an affiliate of Jacobsen Construction Company, Inc. without Mezzanine Lender's prior approval;

    5)    breach of the covenant at Section 3.27 of the Loan Agreement with respect to failure to construct the Improvements in accordance with the Plans and Specifications and Construction Budget; and

    6)    breach of the covenant at Section 3.42(e) of the Loan Agreement with respect to incurring of expenditures in excess of permitted line item amounts in the Budget without Mezzanine Lender's prior approval.

Nothing contained in this letter is intended to limit, nor shall it be deemed to limit or in any way affect, any of Mezzanine Lender's claims, rights or remedies under the Loan Agreement or any other Loan Documents (collectively, the "Mezzanine Loan Documents"), and nothing in this letter shall in any way modify, change, impair, affect, diminish or release any liability of Mezzanine Borrower under or pursuant to the Mezzanine Loan Documents or entitle Mezzanine Borrower to any other or further notice or demand whatsoever. Nothing contained herein, nor any failure by Mezzanine Lender to exercise any rights or remedies under the Mezzanine Loan Documents shall be deemed to constitute, nor is it intended to constitute, any waiver whatsoever of any: (i) term, provision, condition, covenant, or agreement contained in the Mezzanine Loan Documents; or (ii) rights or remedies of Mezzanine Lender under the Mezzanine Loan Documents, at law or in equity or otherwise, or prejudice or preclude any other or further exercise of any such right or remedy by Mezzanine Lender, all of which are hereby reserved. Mezzanine Lender hereby expressly reserves all of its rights and remedies under the Mezzanine Loan Documents, including, without limitation, under the Pledge Agreement, Guaranty, and Completion Guaranty.

LIBD/2217815.3

May 5, 2009
Page 3

                    Sincerely,

                    BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP

                    By:    BayNorth Realty Fund VI GP, Limited Partnership, its general partner

                          By:    BayNorth Realty Fund VI, LLC, its general partner

                          By: _____
                               Name:
                               Title:

cc:

WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York 10036
Attention: Bruce F. Davidson,
          Global Structured Finance-Infrastructure

WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York 10036
Attention: Christian Ruehmer

Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, New York 10022-2585
Attention: Sheri P. Chromow, Esq.

Wrona & Parrish, P.C.
1816 Prospector Avenue
Suite 100
Park City, Utah 84060
Attn: S. Blake Parrish, Esq.

LIBD/2217815.3

May 5, 2009
Page 4

Park City I, LLC
c/o Michael Feder
379 W. Broadway
Suite 401
New York, NY  10012

Rhona J. Kisch, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY  10022

# EXHIBIT H

**BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP**
One Financial Center, 23rd Floor
Boston, MA 02111

NOTICE OF ACCELERATION AND DEMAND FOR PAYMENT

June 23, 2009

**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**

Easy Street Mezzanine LLC ("**Borrower**")
c/o AVG-SL, LLC
1816 Prospector Avenue, Suite 100
Park City, UT 84060

Mr. William Shoaf
4780 Winchester Court
Park City, UT 84098

Mr. David L. Wickline (together with William Shoaf, "**Guarantor**")
17575 Fitzpatrick Lane
Occidental, CA 95465

Re: Loan Agreement dated March 30, 2006 (NOTICE OF ACCELERATION)

Ladies and Gentlemen:

Reference is made to that certain Loan Agreement dated as of March 30, 2006 (the "**Loan Agreement**"), by and between Borrower and BayNorth Realty Fund VI, Limited Partnership ("**Lender**"). Unless otherwise expressly defined herein, all capitalized terms used herein shall have the same meanings as set forth in the Loan Agreement.

By letter dated May 5, 2009 (the "Default Notice"), Lender notified Borrower that an Event of Default had occurred due to (a) the failure of the Subsidiary Owner to repay the Senior Loan, which matured on March 30, 2009, and (b) one or more additional matters enumerated as items (1) through (6) in the Default Notice. By reason of such Event of Default and pursuant to Section 5.3 of the Note, **you are hereby notified that all principal, interest and other sums owed under the Loan Documents, including, without limitation, both Contingent Interest and the Yield Maintenance Amount, have been accelerated and are immediately due and payable.** As of the date hereof, the entire unpaid principal amount of the Note is $9,603,129, and the amount of Base Interest accrued and unpaid is $2,277,743.

The Yield Maintenance Amount as of the date hereof is $31,204,258, which amount includes a credit to Borrower for its payment to Lender of $5,600,000 on February 20, 2008.[1] Lender also

---

[1] For the purposes of this letter and Borrower's redemption by payoff in full of all amounts due under the Loan as set forth herein, Lender will accept from Borrower the Yield Maintenance Amount of $31,204,258 and not require

June 23, 2009
Page 2

hereby gives notice to Borrower that (i) the Yield Maintenance Amount will change in accordance with the Note based on the passage of time and events following the date of this letter and that Borrower shall be liable for any subsequent increase in the calculation of the Yield Maintenance Amount, and (ii) in any event, interest will continue to accrue on all amounts owing to Lender by the Borrower under the Loan Documents in accordance with the terms thereof and that the Borrower is liable for (a) all such accrued interest, (b) all default interest, (c) all "late" charges in accordance with the terms of the Loan Documents, and (d) all reasonable costs and expenses, including reasonable attorneys fees, incurred or sustained by the Lender in collecting all such amounts due and payable to the Lender.

Notwithstanding that all amounts as set forth above are due as of the date hereof, Lender shall provide Borrower with a limited period of redemption. Specifically, if Lender does not receive payment in immediately available funds of all of the foregoing amounts due and payable under the Note and Loan Agreement on or prior to 5 p.m. Eastern time on June 30, 2009, Lender shall commence proceedings for the exercise of its remedies. Upon written request from Borrower, Lender shall provide Borrower with an updated calculation of any amounts owed Lender.
This notice is given without waiving Lender's right to assert other events or conditions which would constitute defaults under the Loan Agreement or any other Loan Document. Lender hereby confirms that it has not waived any default or Event of Default. Lender shall be entitled to pursue at any time and from time to time, without notice, demand or any other action, any and all rights and remedies provided under the Loan Agreement or the other Loan Documents, at law, in equity or otherwise, all in the sole and absolute discretion of the Lender, subject in all respects to the terms of the Loan Documents. Neither this letter, nor any other communication between Lender, on the one hand, and Borrower or Guarantor, on the other hand, shall be construed as a consent, waiver, forbearance or other modification with respect to any term, condition or other provision of any Loan Document.

---

determination and payment of Contingent Interest. If Borrower fails to make such payoff, Lender reserves the right to determine and demand payment of Contingent Interest.

LIBD/2233339.4                                                                                                06/23/2009 5:18 PM

June 23, 2009
Page 3


Very truly yours,

BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP

    By:    BayNorth Realty Fund VI GP, Limited Partnership, its general partner

        By:    BayNorth Realty Fund VI, LLC, its general partner

        By: _____
        Name:
        Title:

June 23, 2009
Page 4

cc

Wrona & Parrish, P.C.
1745 Sidewinder Drive
Park City, Utah 84060
Attn: S. Blake Parrish, Esq.

Jon S. Robins, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
260 S. Broad Street
Philadelphia, PA 19102-5003

Park City I, LLC
c/o Michael Feder
255 Hudson Street, Apt. 10E
New York, NY 10013

Rhona J. Kisch, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York 10036
Attention: Bruce F. Davidson,
Global Structured Finance-Infrastructure

WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York 10036
Attention: Christian Ruehmer

Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, New York 10022-2585
Attention: Sheri P. Chromow, Esq.

# EXHIBIT I

Case 09-29905    Doc 17-18    Filed 09/15/09    Entered 09/15/09 17:06:23    Desc
Exhibits G    H and I    Page 11 of 18

BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP
c/o BayNorth Capital, LLC
One Financial Center
Floor 23
Boston, Massachusetts 02111
Attn: Charles J. Flint

VIA FEDERAL EXPRESS

July 28, 2009

To Each of the Parties
Listed on Exhibit 1 Annexed Hereto:

Re:   Notice of Sale of Collateral Pursuant to Section 8 of the Pledge Agreement dated as of March 30, 2006 Between Easy Street Holding, LLC and BayNorth Realty Fund VI, Limited Partnership

Ladies and Gentlemen:

Reference is hereby made to that certain (a) Loan Agreement, dated as of March 30, 2006, between Easy Street Mezzanine, LLC (the "Borrower") and BayNorth Realty Fund VI, Limited Partnership (the "Lender") (the "Loan Agreement"), and (b) Pledge Agreement, dated as of March 30, 2006, between the Easy Street Holding, LLC (the "Pledgor") and the Lender (the "Pledge Agreement").

Based upon the occurrence, existence and continuance of certain Events of Default under the Loan Agreement, pursuant to the terms and conditions of the Loan Agreement, Section 8 of the Pledge Agreement and Sections 9-610 and 9-611 of the Massachusetts Uniform Commercial Code (the "MAUCC"), we hereby give you notice that we will sell the Collateral (as defined in the Pledge Agreement), including, without limitation, 100% of the ownership interests in the Borrower (the "Pledged Ownership Interests"), to the highest qualified bidder, in public as follows:

>   Date:       September 16, 2009
>
>   Time:       10:00 a.m. (EST)
>
>   Place:      Goodwin Procter LLP
>               The New York Times Building
>               620 Eighth Avenue
>               New York, New York 10018

The sale will be for cash. Bids for the Collateral (each, a "Bid") should be submitted so that they are received by Edward G. Moran LLC, 101 Park Avenue, Suite 2601, New York, New York 10178, no later than 12:00 p.m. (EST) on September 14, 2009. Each Bid shall include (a) a form of agreement for the purchase of the Collateral, (b) proof of the bidder's financial wherewithal to consummate the purchase of the Collateral, (c) a deposit of 10% of the proposed purchase price by certified check or bank cashier's check, and (d) such other information as the Lender may request in its discretion.

The Lender reserves the right to credit bid for and purchase the Collateral, including the Pledged Ownership Interests, and to credit the expenses of the sale and all or a portion of the obligations of the Borrower under the Loan Agreement against the purchase price. The Pledged Ownership Interests shall be sold only as a block.

In compliance with Section 8 of the Pledge Agreement and Section 9-611 of the MAUCC, we have sent this notice by United States mail, postage prepaid with return receipt requested, and via overnight courier to all addressees identified in Exhibit 1 annexed hereto.

You may request an accounting of the unpaid obligations of the Borrower under the Loan Agreement secured by the Collateral to be sold in writing made to the attention of Charles J. Flint of BayNorth Capital, LLC at the address set forth above.

Notice to the general public in the form of Exhibit 2 annexed hereto will be published in two or more publications, including the national edition of The New York Times and The Salt Lake City Tribune. We also request that you forward copies of such notice to all other entities that you believe may be interested in purchasing any of the Collateral described in the notice.

Nothing herein contained shall be deemed a waiver of any rights or remedies the Lender may have at law, in equity or otherwise, all of which are hereby expressly reserved.

Very truly yours,

BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP,

a Delaware limited partnership

By:   BAYNORTH REALTY FUND VI, LIMITED PARTNERSHIP,

a Delaware limited partnership

By: _____
Name: Charles J. Flint
Title: Managing Director

EXHIBIT 1

Easy Street Mezzanine, LLC
c/o AVG-SL, LLC
4780 Winchester Ct.
Park City, UT 84068
Attention: Bill Shoaf

Easy Street Mezzanine, LLC
c/o AVG-SL, LLC
4780 Winchester Ct.
Park City, UT 84098
Attention: Bill Shoaf

Easy Street Holding, LLC
c/o AVG-SL, LLC
4780 Winchester Ct.
Park City Utah, 84068
Attention: Bill Shoaf

Easy Street Holding, LLC
c/o AVG-SL, LLC
4780 Winchester Ct.
Park City Utah, 84098
Attention: Bill Shoaf

Mr. William Shoaf
4780 Winchester Court
Park City, UT 84098

Mr. David L. Wickline
17575 Fitzpatrick Lane
Occidental, CA 95465

Phil M. Smith Jr. Trust
c/o Phil M. Smith, Jr. and Diane Smith
684 Glenneyre Street
Laguna Beach, CA 92651

Alchemy Ventures Group, LLC
17575 Fitzpatrick Lane
Occidental, CA 95465
Attn: David Wickline

Park City I, LLC
c/o Michael Feder and Elizabeth Rad
379 W. Broadway, Suite 401
New York, NY 10012

Park City I, LLC
c/o Michael Feder and Elizabeth Rad
255 Hudson Street, Apt. 10E
New York, NY 10013

WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York 10036
Attention: Bruce F. Davidson,
Global Structured Finance-Infrastructure

WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York 10036
Attention: Christian Ruehmer

Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, New York 10022-2585
Attention: Sheri P. Chromow, Esq.

Sidley Austin LLP
555 West Fifth Street
Los Angeles, California 90013
Attention: William D. Ellis, Esq.

Ballard Spahr Andrews & Ingersoll LLP
1225 17th Street
Suite 2300
Denver, CO 80202-5596
Attention: Christopher W. Payne, Esq.

EXHIBIT 2

NOTICE OF PUBLIC SALE OF COLLATERAL PURSUANT
TO UNIFORM COMMERCIAL CODE § 9-610

NOTICE IS HEREBY GIVEN THAT the collateral described below shall be sold to the highest bidder at a public sale to be held on September 16, 2009, at 10:00 a.m. (Eastern Standard Time), at the offices of Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018 (the "Agent"), by BayNorth Realty Fund VI, Limited Partnership (the "Secured Party"), the secured party under the Pledge Agreement, dated as of March 30, 2006, among Easy Street Holding, LLC (the "Pledgor") and the Secured Party (the "Pledge Agreement"), securing the obligations of Easy Street Mezzanine, LLC (the "Obligor") under the Loan Agreement, dated March 30, 2006, among the Obligor and the Secured Party (together with all annexes, exhibits, schedules and other documents ancillary thereto, the "Loan Agreement"), in accordance with the provisions of the Uniform Commercial Code in effect in the State of Massachusetts.

The collateral to be sold is the "Collateral" as such term is defined under Section 2 of the Pledge Agreement, which includes 100% of the ownership interests in the Obligor. The Pledgor pledged the Collateral as security for certain obligations under the Loan Agreement, under which an Event of Default (as defined in the Loan Agreement) has occurred and is continuing. The total amount due and owing under the Loan Agreement is not less than $31,204,258. The foregoing information regarding the outstanding amount owing under the Loan Agreement is provided solely for informational purposes and is not intended to provide any indication whatsoever as to (i) the value of the Collateral or (ii) the amount (if any) that the Secured Party may credit bid at the sale advertised herein, which remains at the Secured Party's sole discretion.

The Collateral is to be sold subject to the following terms and conditions:

Prospective bidders must register attendance at the sale. The winning purchaser will be required to pay the purchase price of the Collateral within forty-eight (48) hours of the public sale by cash, cashier's check or other immediately available funds.

The Secured Party reserves the right to credit bid for and purchase the Collateral and to pay the purchase price, in whole, or in part, by crediting the purchase price against the balance of unpaid indebtedness evidenced by the Loan Agreement.

The Collateral is offered as is, where as, with all faults, and the Secured Party makes no guarantee or warranty, express or implied, as to the quantity, quality, condition, right, title, interest or description of the Collateral being sold.

All prospective bidders must deliver a certified check or bank cashier's check to the offices of the Agent on or before September 14, 2009 at 12:00 p.m. (Eastern Standard Time) (the "Bid Deadline") in the amount of 10% of the proposed purchase price, which will be held in escrow pending the closing of the sale (the "Deposit"). The Deposit shall be forfeited by any winning bidder to the Secured Party as liquidated damages in the event the winning bidder fails to pay the balance of its winning bid within forty-eight (48) hours of the conclusion of the sale. No more than three (3) business days after the closing of the sale, the Secured Party shall return each Deposit to the unsuccessful bidders at the sale. In addition, each prospective bidder also must provide to the Agent, prior to the Bid Deadline, with (a) evidence satisfactory to the Secured Party, in its sole and absolute discretion, of the prospective bidder's financial ability to tender full payment for the Collateral, (b) a form of agreement for the purchase of the Collateral, and (c) such other information as the Secured Party may request in its discretion. No offers may be

withdrawn once made, but no sale shall be final until accepted in writing by the Secured Party or its agent. The Secured Party reserves the right to accept or reject any bid made at the auction and shall not be obligated to make any sale pursuant to this notice.

The Secured Party reserves the right to announce such other terms and conditions as it may deem to be commercially reasonable at the sale, including minimum bid increments, and further reserves the right to cancel or adjourn the sale from time to time by further announcement made at the time of or prior to the sale.

Each prospective bidder must demonstrate to the satisfaction of the Secured Party that it is either (a) an investment company, money management firm or "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act of 1933 (the "Securities Act"), as amended, or (b) an institutional "accredited investor" within the meaning of Regulation D under the Securities Act.

Because the Collateral is unregistered under the Securities Act and is being sold as a block, the purchaser will be required to provide a written representation addressed to the Secured Party stating, among other things, that (a) the purchaser is purchasing the Collateral for its own account and not with a view to distribution thereof; (b) the Collateral will not be resold or transferred or otherwise hypothecated by the purchaser without prior registration in accordance with the Securities Act and applicable state blue sky laws or unless an exemption from such registration under the Securities Act or applicable state blue sky laws is available; (c) the purchaser possesses sufficient business experience to evaluate the risk of purchasing the Collateral; and (d) the purchaser has sufficient financial means to be able to afford the risk of the investment. Neither the Secured Party nor any of its affiliates make any representations as to the availability of Rule 144 or any other exemption under the Securities Act for the reoffer, resale, pledge or transfer of the Collateral and accordingly such purchaser must be prepared to hold the Collateral for an indefinite period of time.

Purchaser must demonstrate to the Secured Party's and its counsel's satisfaction that the purchase of the Collateral is in compliance with all state and federal laws.

In addition to the Collateral, the Obligor and/or its affiliates owns additional assets in which it may have granted a security interest to the Secured Party as security for its obligations under the Loan Agreement the default of which has given rise to this sale. The Secured Party has previously notified the Obligor that it is in default. The Secured Party remains entitled immediately to exercise all of its rights and remedies under the Loan Agreement with respect to such other assets, at law or at equity singly, consecutively and cumulatively, at such times, with such frequency and in such order as the Secured Party may elect. Neither the conduct of the sale nor the delivery of the Collateral to the winning bidder shall derogate from any right, privilege or power granted to the Secured Party under the Loan Agreement, copies of which will be made available for review upon written request to the Secured Party.

Subject to the foregoing terms, consummation of the sale will be made immediately upon receipt of payment in immediately available funds of the full bid price by transfer of the Collateral, BUT WITHOUT GUARANTY OF SIGNATURES, WITHOUT PAYMENT OF ANY TRANSFER OR OTHER TAX, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY BY SECURED PARTY AND SUBJECT TO ALL DEFENSES.

The Obligor is entitled to an accounting of the unpaid indebtedness secured by the Collateral that the Secured Party intends to sell. The Obligor may request an accounting by contacting Charles J. Flint of BayNorth Realty Fund VI, Limited Partnership, c/o BayNorth Capital, LLC at One Financial Center, Floor 23, Boston, MA 02111 or cflint@baynorthcapital.com.

FOR MORE INFORMATION RELATING TO PUBLIC SALE ANNOUNCED HEREIN OR THE COLLATERAL DESCRIBED ABOVE, please contact Edward G. Moran LLC, 101 Park Avenue, Suite 2601, New York, New York 10178, (212) 697-3515.