B.    On Jacobsen's Second Claim for Relief, for a judgment against Easy Street in an amount to be proven at trial, but not less than $1,382,127.18, plus interest and costs and attorneys' fees to the extent provided for by law;

C.    On Jacobsen's Third Claim for Relief, for a judgment against Easy Street in an amount to be proven at trial, but not less than $1,382,127.18, plus interest and costs and attorneys' fees to the extent provided for by law;

D.    On Jacobsen's Fourth Claim for Relief, for a judgment against Equity Title in an amount to be proven at trial plus interest and costs and attorneys fees to the extent provided by law.

E.    For such other relief as this Court finds just and equitable.

DATED this 4TH day of September, 2009.

RAY QUINNEY & NEBEKER P.C.

_____
Jonathan A. Dibble
Jacobsen National Group, Inc.
*Attorneys for Plaintiff*

Plaintiff's address:

3131 West 2210 South
Salt Lake City, UT 84119

1044790

# Exhibit A

# AIA® Document A121™CMc – 2003 and AGC Document 565

## Standard Form of Agreement Between Owner and Construction Manager where the Construction Manager is Also the Constructor

**AGREEMENT**
made as of the Twentieth day of March in the year of Two Thousand Six.
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name and address)*

Easy Street Partners LLC
4780 Winchester Court
Park City, UT 84098

and the Construction Manager:
*(Name and address)*

Jacobsen National Group, Inc.
3131 West 2210 South
Salt Lake City, UT 84119

The Project is:
*(Name, address and brief description)*

Union Square – Sky Lodge
Park City, UT

Appx. 100,000 sf of high rise type residential condominiums

The Architect is:
*(Name and address)*

Elliott Workgroup Architects LLC
364 Main Street
Park City, UT 84060

The Owner and Construction Manager agree as set forth below:

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

The 1997 Edition of AIA Document A201, General Conditions of the Contract for Construction, is referred to herein. This Agreement requires modification if other general conditions are utilized.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.    (784207901)
User Notes:

1

TABLE OF CONTENTS
ARTICLE 1  GENERAL PROVISIONS
    § 1.1 Relationship of the Parties
    § 1.2 General Conditions

ARTICLE 2  CONSTRUCTION MANAGER'S RESPONSIBILITIES
    § 2.1 Preconstruction Phase
    § 2.2 Guaranteed Maximum Price Proposal and Contract Time
    § 2.3 Construction Phase
    § 2.4 Professional Services
    § 2.5 Hazardous Materials

ARTICLE 3  OWNER'S RESPONSIBILITIES
    § 3.1 Information and Services
    § 3.2 Owner's Designated Representative
    § 3.3 Architect
    § 3.4 Legal Requirements

ARTICLE 4  COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES
    § 4.1 Compensation
    § 4.2 Payments

ARTICLE 5  COMPENSATION FOR CONSTRUCTION PHASE SERVICES
    § 5.1 Compensation
    § 5.2 Guaranteed Maximum Price
    § 5.3 Changes in the Work

ARTICLE 6  COST OF THE WORK FOR CONSTRUCTION PHASE
    § 6.1 Costs to Be Reimbursed
    § 6.2 Costs Not to Be Reimbursed
    § 6.3 Discounts, Rebates and Refunds
    § 6.4 Accounting Records

ARTICLE 7  CONSTRUCTION PHASE
    § 7.1 Progress Payments
    § 7.2 Final Payment

ARTICLE 8  INSURANCE AND BONDS
    § 8.1 Insurance Required of the Construction Manager
    § 8.2 Insurance Required of the Owner
    § 8.3 Performance Bond and Payment Bond

ARTICLE 9  MISCELLANEOUS PROVISIONS
    § 9.1 Dispute Resolution
    § 9.2 Other Provisions

ARTICLE 10  TERMINATION OR SUSPENSION
    § 10.1 Termination Prior to Establishing Guaranteed Maximum Price
    § 10.2 Termination Subsequent to Establishing Guaranteed Maximum Price
    § 10.3 Suspension

ARTICLE 11  OTHER CONDITIONS AND SERVICES

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.    (784207301)
User Notes:

2

## ARTICLE 1  GENERAL PROVISIONS
### § 1.1 RELATIONSHIP OF PARTIES
The Construction Manager accepts the relationship of trust and confidence established with the Owner by this Agreement, and covenants with the Owner to furnish the Construction Manager's reasonable skill and judgment and to cooperate with the Architect in furthering the interests of the Owner. The Construction Manager shall furnish construction administration and management services and use the Construction Manager's best efforts to perform the Project in an expeditious and economical manner consistent with the interests of the Owner. The Owner shall endeavor to promote harmony and cooperation among the Owner, Architect, Construction Manager and other persons or entities employed by the Owner for the Project.

### § 1.2 GENERAL CONDITIONS
For the Construction Phase, the General Conditions of the contract shall be the AIA® Document A201™–1997, General Conditions of the Contract for Construction, which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, A201™–1997 shall apply to the Preconstruction Phase only as specifically provided in this Agreement. The term "Contractor" as used in A201™–1997 shall mean the Construction Manager.

## ARTICLE 2  CONSTRUCTION MANAGER'S RESPONSIBILITIES
The Construction Manager shall perform the services described in this Article. The services to be provided under Sections 2.1 and 2.2 constitute the Preconstruction Phase services. If the Owner and Construction Manager agree, after consultation with the Architect, the Construction Phase may commence before the Preconstruction Phase is completed, in which case both phases will proceed concurrently.

### § 2.1 PRECONSTRUCTION PHASE
### § 2.1.1 PRELIMINARY EVALUATION
The Construction Manager shall provide a preliminary evaluation of the Owner's program and Project budget requirements, each in terms of the other.

### § 2.1.2 CONSULTATION
The Construction Manager with the Architect shall jointly schedule and attend regular meetings with the Owner. The Construction Manager shall consult with the Owner and Architect regarding site use and improvements and the selection of materials, building systems and equipment. The Construction Manager shall provide recommendations on construction feasibility; actions designed to minimize adverse effects of labor or material shortages; time requirements for procurement, installation and construction completion; and factors related to construction cost, including estimates of alternative designs or materials, preliminary budgets and possible economies.

### § 2.1.3 PRELIMINARY PROJECT SCHEDULE
When Project requirements described in Section 3.1.1 have been sufficiently identified, the Construction Manager shall prepare, and periodically update, a preliminary Project schedule for the Architect's review and the Owner's approval. The Construction Manager shall obtain the Architect's approval of the portion of the preliminary Project schedule relating to the performance of the Architect's services. The Construction Manager shall coordinate and integrate the preliminary Project schedule with the services and activities of the Owner, Architect and Construction Manager. As design proceeds, the preliminary Project schedule shall be updated to indicate proposed activity sequences and durations, milestone dates for receipt and approval of pertinent information, submittal of a Guaranteed Maximum Price proposal, preparation and processing of shop drawings and samples, delivery of materials or equipment requiring long-lead-time procurement, Owner's occupancy requirements showing portions of the Project having occupancy priority, and proposed date of Substantial Completion. If preliminary Project schedule updates indicate that previously approved schedules may not be met, the Construction Manager shall make appropriate recommendations to the Owner and Architect.

### § 2.1.4 PHASED CONSTRUCTION
The Construction Manager shall make recommendations to the Owner and Architect regarding the phased issuance of Drawings and Specifications to facilitate phased construction of the Work, if such phased construction is appropriate for the Project, taking into consideration such factors as economies, time of performance, availability of labor and materials, and provisions for temporary facilities.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.   (784207301)
User Notes:

### § 2.1.5 PRELIMINARY COST ESTIMATES

§ 2.1.5.1 When the Owner has sufficiently identified the Project requirements and the Architect has prepared other basic design criteria, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a preliminary cost estimate utilizing area, volume or similar conceptual estimating techniques.

§ 2.1.5.2 When Schematic Design Documents have been prepared by the Architect and approved by the Owner, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a more detailed estimate with supporting data. During the preparation of the Design Development Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.3 When Design Development Documents have been prepared by the Architect and approved by the Owner, the Construction Manager shall prepare a detailed estimate with supporting data for review by the Architect and approval by the Owner. During the preparation of the Construction Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.4 If any estimate submitted to the Owner exceeds previously approved estimates or the Owner's budget, the Construction Manager shall make appropriate recommendations to the Owner and Architect.

### § 2.1.6 SUBCONTRACTORS AND SUPPLIERS

The Construction Manager shall seek to develop subcontractor interest in the Project and shall furnish to the Owner and Architect for their information a list of possible subcontractors, including suppliers who are to furnish materials or equipment fabricated to a special design, from which proposals will be requested for each principal portion of the Work. The Architect will promptly reply in writing to the Construction Manager if the Architect or Owner know of any objection to such subcontractor or supplier. The receipt of such list shall not require the Owner or Architect to investigate the qualifications of proposed subcontractors or suppliers, nor shall it waive the right of the Owner or Architect later to object to or reject any proposed subcontractor or supplier.

### § 2.1.7 LONG-LEAD-TIME ITEMS

The Construction Manager shall recommend to the Owner and Architect a schedule for procurement of long-lead-time items which will constitute part of the Work as required to meet the Project schedule. If such long-lead-time items are procured by the Owner, they shall be procured on terms and conditions acceptable to the Construction Manager. Upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal, all contracts for such items shall be assigned by the Owner to the Construction Manager, who shall accept responsibility for such items as if procured by the Construction Manager. The Construction Manager shall expedite the delivery of long-lead-time items.

### § 2.1.8 EXTENT OF RESPONSIBILITY

The Construction Manager does not warrant or guarantee estimates and schedules except as may be included as part of the Guaranteed Maximum Price. The recommendations and advice of the Construction Manager concerning design alternatives shall be subject to the review and approval of the Owner and the Owner's professional consultants. It is not the Construction Manager's responsibility to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, building codes, rules and regulations. However, if the Construction Manager recognizes that portions of the Drawings and Specifications are at variance therewith, the Construction Manager shall promptly notify the Architect and Owner in writing.

### § 2.1.9 EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION

The Construction Manager shall comply with applicable laws, regulations and special requirements of the Contract Documents regarding equal employment opportunity and affirmative action programs.

### § 2.2 GUARANTEED MAXIMUM PRICE PROPOSAL AND CONTRACT TIME

§ 2.2.1 When the Drawings and Specifications are sufficiently complete, the Construction Manager shall propose a Guaranteed Maximum Price, which shall be the sum of the estimated Cost of the Work and the Construction Manager's Fee.

§ 2.2.2 As the Drawings and Specifications may not be finished at the time the Guaranteed Maximum Price proposal is prepared, the Construction Manager shall provide in the Guaranteed Maximum Price for further development of

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale. (784207301)
User Notes:

4

the Drawings and Specifications by the Architect that is consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

§ 2.2.3 The estimated Cost of the Work shall include the Construction Manager's contingency, a sum established by the Construction Manager for the Construction Manager's exclusive use to cover costs arising under Section 2.2.2 and other costs which are properly reimbursable as Cost of the Work but not the basis for a Change Order.

§ 2.2.4 BASIS OF GUARANTEED MAXIMUM PRICE
The Construction Manager shall include with the Guaranteed Maximum Price proposal a written statement of its basis, which shall include:
   .1   A list of the Drawings and Specifications, including all addenda thereto and the Conditions of the Contract, which were used in preparation of the Guaranteed Maximum Price proposal.
   .2   A list of allowances and a statement of their basis.
   .3   A list of the clarifications and assumptions made by the Construction Manager in the preparation of the Guaranteed Maximum Price proposal to supplement the information contained in the Drawings and Specifications.
   .4   The proposed Guaranteed Maximum Price, including a statement of the estimated cost organized by trade categories, allowances, contingency, and other items and the Fee that comprise the Guaranteed Maximum Price.
   .5   The Date of Substantial Completion upon which the proposed Guaranteed Maximum Price is based, and a schedule of the Construction Documents issuance dates upon which the date of Substantial Completion is based.

§ 2.2.5 The Construction Manager shall meet with the Owner and Architect to review the Guaranteed Maximum Price proposal and the written statement of its basis. In the event that the Owner or Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Construction Manager, who shall make appropriate adjustments to the Guaranteed Maximum Price proposal, its basis, or both.

§ 2.2.6 Unless the Owner accepts the Guaranteed Maximum Price proposal in writing on or before the date specified in the proposal for such acceptance and so notifies the Construction Manager, the Guaranteed Maximum Price proposal shall not be effective without written acceptance by the Construction Manager.

§ 2.2.7 Prior to the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and issuance of a Notice to Proceed, the Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work, except as the Owner may specifically authorize in writing.

§ 2.2.8 Upon acceptance by the Owner of the Guaranteed Maximum Price proposal, the Guaranteed Maximum Price and its basis shall be set forth in Amendment No. 1. The Guaranteed Maximum Price shall be subject to additions and deductions by a change in the Work as provided in the Contract Documents, and the Date of Substantial Completion shall be subject to adjustment as provided in the Contract Documents.

§ 2.2.9 The Owner shall authorize and cause the Architect to revise the Drawings and Specifications to the extent necessary to reflect the agreed-upon assumptions and clarifications contained in Amendment No. 1. Such revised Drawings and Specifications shall be furnished to the Construction Manager in accordance with schedules agreed to by the Owner, Architect and Construction Manager. The Construction Manager shall promptly notify the Architect and Owner if such revised Drawings and Specifications are inconsistent with the agreed-upon assumptions and clarifications.

§ 2.2.10 The Guaranteed Maximum Price shall include in the Cost of the Work only those taxes which are enacted at the time the Guaranteed Maximum Price is established.

§ 2.3 CONSTRUCTION PHASE
§ 2.3.1 GENERAL
§ 2.3.1.1 The Construction Phase shall commence on the earlier of:

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.    (784207301)
User Notes:

5

 (1) the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and issuance of a Notice to Proceed, or
 (2) the Owner's first authorization to the Construction Manager to:
  (a) award a subcontract, or
  (b) undertake construction Work with the Construction Manager's own forces, or
  (c) issue a purchase order for materials or equipment required for the Work.

### § 2.3.2 ADMINISTRATION

§ 2.3.2.1 Those portions of the Work that the Construction Manager does not customarily perform with the Construction Manager's own personnel shall be performed under subcontracts or by other appropriate agreements with the Construction Manager. The Construction Manager shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated to a special design for the Work from the list previously reviewed and, after analyzing such bids, shall deliver such bids to the Owner and Architect. The Owner will then determine, with the advice of the Construction Manager and subject to the reasonable objection of the Architect, which bids will be accepted. The Owner may designate specific persons or entities from whom the Construction Manager shall obtain bids; however, if the Guaranteed Maximum Price has been established, the Owner may not prohibit the Construction Manager from obtaining bids from other qualified bidders. The Construction Manager shall not be required to contract with anyone to whom the Construction Manager has reasonable objection.

§ 2.3.2.2 If the Guaranteed Maximum Price has been established and a specific bidder among those whose bids are delivered by the Construction Manager to the Owner and Architect (1) is recommended to the Owner by the Construction Manager; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid which conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Construction Manager may require that a change in the Work be issued to adjust the Contract Time and the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Construction Manager and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

§ 2.3.2.3 Subcontracts and agreements with suppliers furnishing materials or equipment fabricated to a special design shall conform to the payment provisions of Sections 7.1.8 and 7.1.9 and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

§ 2.3.2.4 The Construction Manager shall schedule and conduct meetings at which the Owner, Architect, Construction Manager and appropriate Subcontractors can discuss the status of the Work. The Construction Manager shall prepare and promptly distribute meeting minutes.

§ 2.3.2.5 Promptly after the Owner's acceptance of the Guaranteed Maximum Price proposal, the Construction Manager shall prepare a schedule in accordance with Section 3.10 of A201™–1997, including the Owner's occupancy requirements.

§ 2.3.2.6 The Construction Manager shall provide monthly written reports to the Owner and Architect on the progress of the entire Work. The Construction Manager shall maintain a daily log containing a record of weather, Subcontractors working on the site, number of workers, Work accomplished, problems encountered and other similar relevant data as the Owner may reasonably require. The log shall be available to the Owner and Architect.

§ 2.3.2.7 The Construction Manager shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Construction Manager shall identify variances between actual and estimated costs and report the variances to the Owner and Architect at regular intervals.

### § 2.4 PROFESSIONAL SERVICES
Section 3.12.10 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

### § 2.5 HAZARDOUS MATERIALS
Section 10.3 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale. (784207301).
User Notes:

ARTICLE 3  OWNER'S RESPONSIBILITIES
§ 3.1 INFORMATION AND SERVICES
§ 3.1.1 The Owner shall provide full information in a timely manner regarding the requirements of the Project, including a program which sets forth the Owner's objectives, constraints and criteria, including space requirements and relationships, flexibility and expandability requirements, special equipment and systems, and site requirements.

§ 3.1.2 The Owner shall, at the written request of the Construction Manager prior to commencement of the Construction Phase and thereafter, furnish to the Construction Manager reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Construction Manager.

§ 3.1.3 The Owner shall establish and update an overall budget for the Project, based on consultation with the Construction Manager and Architect, which shall include contingencies for changes in the Work and other costs which are the responsibility of the Owner.

§ 3.1.4 STRUCTURAL AND ENVIRONMENTAL TESTS, SURVEYS AND REPORTS
In the Preconstruction Phase, the Owner shall furnish the following with reasonable promptness and at the Owner's expense. Except to the extent that the Construction Manager knows of any inaccuracy, the Construction Manager shall be entitled to rely upon the accuracy of any such information, reports, surveys, drawings and tests described in Sections 3.1.4.1 through 3.1.4.4 but shall exercise customary precautions relating to the performance of the Work.

§ 3.1.4.1 Reports, surveys, drawings and tests concerning the conditions of the site which are required by law.

§ 3.1.4.2 Surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All information on the survey shall be referenced to a project benchmark.

§ 3.1.4.3 The services of a geotechnical engineer when such services are requested by the Construction Manager. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate professional recommendations.

§ 3.1.4.4 Structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports which are required by law.

§ 3.1.4.5 The services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Construction Manager.

§ 3.2 OWNER'S DESIGNATED REPRESENTATIVE
The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. This representative shall have the authority to make decisions on behalf of the Owner concerning estimates and schedules, construction budgets, and changes in the Work, and shall render such decisions promptly and furnish information expeditiously, so as to avoid unreasonable delay in the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2.1 of A201™–1997, the Architect does not have such authority.

§ 3.3 ARCHITECT
The Owner shall retain an Architect to provide Basic Services, including normal structural, mechanical and electrical engineering services, other than cost estimating services, described in the edition of AIA® Document B151™–1997, *Abbreviated Standard Form of Agreement Between Owner and Architect* current as of the date of this Agreement. The Owner shall authorize and cause the Architect to provide those Additional Services described

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.    (784207301)
User Notes:

in B151™–1997, requested by the Construction Manager which must necessarily be provided by the Architect for the Preconstruction and Construction Phases of the Work. Such services shall be provided in accordance with time schedules agreed to by the Owner, Architect and Construction Manager. Upon request of the Construction Manager, the Owner shall furnish to the Construction Manager a copy of the Owner's Agreement with the Architect, from which compensation provisions may be deleted.

### § 3.4 LEGAL REQUIREMENTS
The Owner shall determine and advise the Architect and Construction Manager of any special legal requirements relating specifically to the Project which differ from those generally applicable to construction in the jurisdiction of the Project. The Owner shall furnish such legal services as are necessary to provide the information and services required under Section 3.1.

## ARTICLE 4  COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

The Owner shall compensate and make payments to the Construction Manager for Preconstruction Phase services as follows:

### § 4.1 COMPENSATION
§ 4.1.1 For the services described in Sections 2.1 and 2.2, the Construction Manager's compensation is not part of this Agreement, but rather by separate agreement.
*(State basis of compensation, whether a stipulated sum, multiple of Direct Personnel Expense, actual cost, etc. Include a statement of reimbursable cost items as applicable.)*

*(Paragraph deleted)*

§ 4.1.3 If compensation is based on a multiple of Direct Personnel Expense, Direct Personnel Expense is defined as the direct salaries of the Construction Manager's personnel engaged in the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

### § 4.2 PAYMENTS
§ 4.2.1 Payments shall be made monthly following presentation of the Construction Manager's invoice and, where applicable, shall be in proportion to services performed.

§ 4.2.2 Payments are due and payable Twenty (20) days from the date the Construction Manager's invoice is received by the Owner. Amounts unpaid after the date on which payment is due shall bear interest at the rate entered below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon.)*

6.00% per annum

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

## ARTICLE 5  COMPENSATION FOR CONSTRUCTION PHASE SERVICES

The Owner shall compensate the Construction Manager for Construction Phase services as follows:

### § 5.1 COMPENSATION
§ 5.1.1 For the Construction Manager's performance of the Work as described in Section 2.3, the Owner shall pay the Construction Manager in current funds the Contract Sum consisting of the Cost of the Work as defined in Article 7 and the Construction Manager's Fee determined as follows:

Construction Management Fee of five percent (5.0%) of the actual Project Cost of the Work.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.    (784207301)
User Notes: