In addition to the Construction Management Fee, the Construction Manager shall be entitled to a Self-Performed Work (SPW) Fee of 12% (twelve percent) of actual costs incurred for all work (other than supervisory work) performed with its own labor forces (e.g. concrete, rough and finish carpentry, weather protection, etc.)

The Construction Manager will recommend to the Owner which aspects of the work it intends to self-perform for the benefit (control of schedule, cost, risk mitigation, etc.) of the Project. The Owner has the right to approve such recommendation before said work commences. Owner approval, however, shall not unreasonably be withheld. Such SPW will be performed on an actual cost of the work plus SPW fee basis. However, in no event shall the payment for such amounts, when considered together with all other Cost of the Work plus CM Fees cause the GMP to be exceeded.

*(State a lump sum, percentage of actual Cost of the Work or other provision for determining the Construction Manager's Fee, and explain how the Construction Manager's Fee is to be adjusted for changes in the Work.)*

**§ 5.2 GUARANTEED MAXIMUM PRICE**
**§ 5.2.1** The sum of the Cost of the Work and the Construction Manager's Fee are guaranteed by the Construction Manager not to exceed the amount provided in Amendment No. 1, subject to additions and deductions by changes in the Work as provided in the Contract Documents. Such maximum sum as adjusted by approved changes in the Work is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement by the Owner.

At the completion of the Project, any savings (The GMP less the total of Cost of the Work and Construction Manager's Fees) shall by split between the parties as follows:

Owner – 70% of savings
Construction Manager – 30% of savings

*(Insert specific provisions if the Construction Manager is to participate in any savings.)*

**§ 5.3 CHANGES IN THE WORK**
**§ 5.3.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work subsequent to the execution of Amendment No. 1 may be determined by any of the methods listed in Section 7.3.3 of A201™–1997.

**§ 5.3.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of A201™–1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Section 7.3.6 of A201™–1997 shall have the meanings assigned to them in that document and shall not be modified by this Article 5. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**§ 5.3.3** In calculating adjustments to the Contract, the terms "cost" and "costs" as used in the above-referenced provisions of A201™–1997 shall mean the Cost of the Work as defined in Article 6 of this Agreement, and the term "and a reasonable allowance for overhead and profit" shall mean the Construction Manager's Fee as defined in Section 5.1.1 of this Agreement.

**§ 5.3.4** If no specific provision is made in Section 5.1.1 for adjustment of the Construction Manager's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Section 5.1.1 will cause substantial inequity to the Owner or Construction Manager, the Construction Manager's Fee shall be equitably adjusted on the basis of the Fee established for the original Work.

**ARTICLE 6   COST OF THE WORK FOR CONSTRUCTION PHASE**
**§ 6.1 COSTS TO BE REIMBURSED**
**§ 6.1.1** The term "Cost of the Work" shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. Such costs shall be at rates not higher than those customarily paid at the place of the

AIA Document A121™CMc–2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale. (784207301)
User Notes:

Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 6.

### § 6.1.2 LABOR COSTS

.1 Wages of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's agreement, at off-site workshops.

.2 Wages or salaries of the Construction Manager's supervisory and administrative personnel when performing duties related directly to this Project

| Classification | Name |
| --- | --- |
| Project Manager | John Bassett |
| Project Superintendent | Martel Muhlestein |
| Project Engineer | Justin Giles |

Personnel listed above shall remain committed through the duration of the Project, unless agreed to otherwise by the Owner.

The following additional personnel cost will be considered a Cost of the Work whether they are onsite or offsite while performing duties related to the project: Project Scheduling Personnel, Project Safety Personnel, Accounting Personnel, and Warehouse Personnel.

*(Paragraph deleted)*

.3 Wages and salaries of the Construction Manager's supervisory or administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

.4 Costs paid or incurred by the Construction Manager for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements, and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, deferred compensation provided that such costs are based on wages and salaries included in the Cost of the Work under Section 6.1.2.1 through 6.1.2.3.

### § 6.1.3 SUBCONTRACT COSTS

Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

### § 6.1.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION

.1 Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction.

.2 Costs of materials described in the preceding Section 6.1.4.1 in excess of those actually installed but required to provide reasonable allowance for waste and for spoilage. Unused excess materials, if any, shall be handed over to the Owner at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager; amounts realized, if any, from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### § 6.1.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS

.1 Costs, including transportation, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site and fully consumed in the performance of the Work; and cost less salvage value on such items if not fully consumed, whether sold to others or retained by the Construction Manager. Cost for items previously used by the Construction Manager shall mean fair market value.

.2 Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site, whether rented from the Construction Manager or others, and costs of transportation, installation, minor

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.
User Notes: (784207301)

        repairs and replacements, dismantling and removal thereof. Rates of equipment rented shall be subject to the Owner's approval.

.3    Costs of removal of debris from the site.

.4    Reproduction costs, costs of telegrams, facsimile transmissions and long-distance telephone calls, postage and express delivery charges, telephone at the site and reasonable petty cash expenses of the site office.

.5    That portion of the reasonable travel and subsistence expenses of the Construction Manager's personnel incurred while traveling in discharge of duties connected with the Work.

### § 6.1.6 MISCELLANEOUS COSTS

.1    That portion directly attributable to this Contract of premiums for insurance and bonds.
*(If charges for self-insurance are to be included, specify the basis of reimbursement.)*

.2    Sales, use or similar taxes imposed by a governmental authority which are related to the Work and for which the Construction Manager is liable.

.3    Fees and assessments for the building permit and for other permits, licenses and inspections for which the Construction Manager is required by the Contract Documents to pay.

.4    Fees of testing laboratories for tests required by the Contract Documents, except those related to nonconforming Work other than that for which payment is permitted by Section 6.1.8.2.

.5    Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent or other intellectual property rights arising from such requirement by the Contract Documents; payments made in accordance with legal judgments against the Construction Manager resulting from such suits or claims and payments of settlements made with the Owner's consent; provided, however, that such costs of legal defenses, judgment and settlements shall not be included in the calculation of the Construction Manager's Fee or the Guaranteed Maximum Price and provided that such royalties, fees and costs are not excluded by the last sentence of Section 3.17.1 of A201™–1997 or other provisions of the Contract Documents.

.6    Data processing costs related to the Work.

.7    Deposits lost for causes other than the Construction Manager's negligence or failure to fulfill a specific responsibility to the Owner set forth in this Agreement.

.8    Legal, mediation and arbitration costs, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager in the performance of the Work and with the Owner's written permission, which permission shall not be unreasonably withheld.

.9    Expenses incurred in accordance with Construction Manager's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, in case it is necessary to relocate such personnel from distant locations.

### § 6.1.7 OTHER COSTS

.1    Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

### § 6.1.8 EMERGENCIES AND REPAIRS TO DAMAGED OR NONCONFORMING WORK

The Cost of the Work shall also include costs described in Section 6.1.1 which are incurred by the Construction Manager:

.1    In taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.6 of A201™–1997.

.2    In repairing or correcting damaged or nonconforming Work executed by the Construction Manager or the Construction Manager's Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by the negligence or failure to fulfill a specific responsibility to the Owner set forth in this agreement of the Construction Manager or the Construction Manager's foremen, engineers or superintendents, or other supervisory, administrative or managerial personnel of the Construction Manager, or the failure of the Construction Manager's personnel to supervise adequately the Work of the Subcontractors or suppliers, and only to the extent that the cost of repair or correction is not recoverable by the Construction Manager from insurance, Subcontractors or suppliers.

AIA Document A121™CMc–2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.
User Notes: (784207301)

§ 6.1.9 The costs described in Sections 6.1.1 through 6.1.8 shall be included in the Cost of the Work notwithstanding any provision of AIA or A201™–1997 other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 6.2.

### § 6.2 COSTS NOT TO BE REIMBURSED
§ 6.2.1 The Cost of the Work shall not include:

.1  Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Sections 6.1.2.2 and 6.1.2.3.
.2  Expenses of the Construction Manager's principal office and offices other than the site office, except as specifically provided in Section 6.1.
.3  Overhead and general expenses, except as may be expressly included in Section 6.1.
.4  The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work.
.5  Rental costs of machinery and equipment, except as specifically provided in Section 6.1.5.2.
.6  Except as provided in Section 6.1.8.2, costs due to the negligence of the Construction Manager or to the failure of the Construction Manger to fulfill a specific responsibility to the Owner set forth in this Agreement.
.7  Costs incurred in the performance of Preconstruction Phase Services.
.8  Except as provided in Section 6.1.7.1, any cost not specifically and expressly described in Section 6.1.
.9  Costs which would cause the Guaranteed Maximum Price to be exceeded.

### § 6.3 DISCOUNTS, REBATES AND REFUNDS
§ 6.3.1 Cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner if (1) before making the payment, the Construction Manager included them in an Application for Payment and received payment therefor from the Owner, or (2) the Owner has deposited funds with the Construction Manager with which to make payments; otherwise, cash discounts shall accrue to the Construction Manager. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Construction Manager shall make provisions so that they can be secured.

§ 6.3.2 Amounts which accrue to the Owner in accordance with the provisions of Section 6.3.1 shall be credited to the Owner as a deduction from the Cost of the Work.

### § 6.4 ACCOUNTING RECORDS
§ 6.4.1 The Construction Manager shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract; the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to the Construction Manager's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Project, and the Construction Manager shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 7  CONSTRUCTION PHASE
### § 7.1 PROGRESS PAYMENTS
§ 7.1.1 Based upon Applications for Payment submitted to the Architect by the Construction Manager and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Construction Manager as provided below and elsewhere in the Contract Documents.

§ 7.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 7.1.3 Provided an Application for Payment is received by the Architect and Owner not later than the Seventh day of a month, the Owner shall make payment to the Construction Manager not later than the Twenty-fifth day of the same month. If an Application for Payment is received by the Architect and Owner after the application date fixed

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.   (784207301)
User Notes:

above, payment shall be made by the Owner not later than Twenty (20) days after the Architect receives the Application for Payment.

§ 7.1.4 With each Application for Payment, the Construction Manager shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached (for all invoices in excess of $5,000) and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed (1) progress payments already received by the Construction Manager; less (2) that portion of those payments attributable to the Construction Manager's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

Applications for payment shall be submitted on a form mutually agreeable to the Contractor, the Owner, and the Owner's lender. In addition to other required items, each Application for Payment shall be accompanied by such other information, documentation and materials as the Owner, the Architect or the Owner's lender may reasonably require.

§ 7.1.5 Each Application for Payment shall be based upon the most recent schedule of values submitted by the Construction Manager in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Construction Manager's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Construction Manager's Applications for Payment.

§ 7.1.6 Applications for Payment shall show the percentage completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed or (2) the percentage obtained by dividing (a) the expense which has actually been incurred by the Construction Manager on account of that portion of the Work for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 7.1.7 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:
.1 Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute may be included as provided in Section 7.3.8 of A201™–1997, even though the Guaranteed Maximum Price has not yet been adjusted by Change Order.
.2 Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing.
.3 Add the Construction Manager's Fee, less retainage of Five percent (5.00%). The Construction Manager's Fee shall be computed upon the Cost of the Work described in the two preceding Sections at the rate stated in Section 5.1.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, shall be an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work in the two preceding Sections bears to a reasonable estimate of the probable Cost of the Work upon its completion.
.4 Subtract the aggregate of previous payments made by the Owner.
.5 Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Section 7.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation.
.6 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of A201™–1997.

§ 7.1.8 Except with the Owner's prior approval, payments to Subcontractors shall be subject to retention of not less than Five percent (5.00%). The Owner and the Construction Manager shall agree upon a mutually acceptable procedure for review and approval of payments and retention for subcontracts.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale. (784207301)
User Notes:

§ 7.1.9 Except with the Owner's prior approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

§ 7.1.10 In taking action on the Construction Manager's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 7.1.4 or other supporting data, that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

### § 7.2 FINAL PAYMENT

§ 7.2.1 Final payment shall be made by the Owner to the Construction Manager when (1) the Contract has been fully performed by the Construction Manager except for the Construction Manager's responsibility to correct nonconforming Work, as provided in Section 12.2.2 of A201™–1997, and to satisfy other requirements, if any, which necessarily survive final payment; (2) a final Application for Payment and a final accounting for the Cost of the Work have been submitted by the Construction Manager and reviewed by the Owner's accountants; and (3) a final Certificate for Payment has then been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

§ 7.2.2 The amount of the final payment shall be calculated as follows:
   .1   Take the sum of the Cost of the Work substantiated by the Construction Manager's final accounting and the Construction Manager's Fee, but not more than the Guaranteed Maximum Price.
   .2   Subtract amounts, if any, for which the Architect withholds, in whole or in part, a final Certificate for Payment as provided in Section 9.5.1 of A201™–1997 or other provisions of the Contract Documents.
   .3   Subtract the aggregate of previous payments made by the Owner.

If the aggregate of previous payments made by the Owner exceeds the amount due the Construction Manager, the Construction Manager shall reimburse the difference to the Owner.

§ 7.2.3 The Owner's accountants will review and report in writing on the Construction Manager's final accounting within 30 days after delivery of the final accounting to the Architect by the Construction Manager. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Construction Manager's final accounting, and provided the other conditions of Section 7.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of A201™–1997. The time periods stated in this Section 7.2 supersede those stated in Section 9.4.1 of A201™–1997.

§ 7.2.4 If the Owner's accountants report the Cost of the Work as substantiated by the Construction Manager's final accounting to be less than claimed by the Construction Manager, the Construction Manager shall be entitled to proceed in accordance with Article 9 without a further decision of the Architect. Unless agreed to otherwise, a demand for mediation or arbitration of the disputed amount shall be made by the Construction Manager within 60 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to make such demand within this 60-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

§ 7.2.5 If, subsequent to final payment and at the Owner's request, the Construction Manager incurs costs described in Section 6.1 and not excluded by Section 6.2 (1) to correct nonconforming Work or (2) arising from the resolution of disputes, the Owner shall reimburse the Construction Manager such costs and the Construction Manager's Fee, if any, related thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/26/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.    (784207301)
User Notes:

the Guaranteed Maximum Price. If the Construction Manager has participated in savings, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Construction Manager.

## ARTICLE 8  INSURANCE AND BONDS
### § 8.1 INSURANCE REQUIRED OF THE CONSTRUCTION MANAGER
During both phases of the Project, the Construction Manager shall purchase and maintain insurance as set forth in Section 11.1 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

§ 8.1.1 Workers' Compensation and Employers' Liability meeting statutory limits mandated by state and federal laws. If (1) limits in excess of those required by statute are to be provided, or (2) the employer is not statutorily bound to obtain such insurance coverage or (3) additional coverages are required, additional coverages and limits for such insurance shall be as follows:

§ 8.1.2 Commercial General Liability including coverage for Premises-Operations, Independent Contractors' Protective, Products-Completed Operations, Contractual Liability, Personal Injury and Broad Form Property Damage (including coverage for Explosion, Collapse and Underground hazards):
   $1,000,000.00 Each Occurrence
   $2,000,000.00 General Aggregate
   $2,000,000.00 Personal and Advertising Injury
   $2,000,000.00 Products-Completed Operations Aggregate

   .1  The policy shall be endorsed to have the General Aggregate apply to this Project only.
   .2  Products and Completed Operations insurance shall be maintained for a minimum period of at least One (1) year(s) after either 90 days following Substantial Completion or final payment, whichever is earlier.
   .3  The Contractual Liability insurance shall include coverage sufficient to meet the obligations in Section 3.18 of A201™–1997.

§ 8.1.3 Automobile Liability (owned, non-owned and hired vehicles) for bodily injury and property damage:
   $2,000,000.00 Each Accident

§ 8.1.4 Other coverage:

25,000,000 Excess Liability
1,000,000 Professional Liability Insurance

*(If Umbrella Excess Liability coverage is required over the primary insurance or retention, insert the coverage limits. Commercial General Liability and Automobile Liability limits may be attained by individual policies or by a combination of primary policies and Umbrella and/or Excess Liability policies. If Project Management Protective Liability Insurance is to be provided, state the limits here.)*

### § 8.2 INSURANCE REQUIRED OF THE OWNER
During both phases of the Project, the Owner shall purchase and maintain liability and property insurance, including waivers of subrogation, as set forth in Sections 11.2 and 11.4 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

§ 8.2.1 Property Insurance:
   $2,500.00 Deductible Per Occurrence
   $10,000.00 Aggregate Deductible

§ 8.2.2 Boiler and Machinery insurance with a limit of: N/A.
*(If not a blanket policy, list the objects to be insured.)*

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.        (784207301)
User Notes:

15

### § 8.3 PERFORMANCE BOND AND PAYMENT BOND
§ 8.3.1 The Construction Manager shall furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder. Bonds may be obtained through the Construction Manager's usual source, and the cost thereof shall be included in the Cost of the Work.

§ 8.3.2 The Construction Manager shall deliver the required bonds to the Owner at least three days before the commencement of any Work at the Project site.

## ARTICLE 9 MISCELLANEOUS PROVISIONS
### § 9.1 DISPUTE RESOLUTION
§ 9.1.1 During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201™–1997 except that, during the Preconstruction Phase, no decision by the Architect shall be a condition precedent to mediation or arbitration.

### § 9.2 OTHER PROVISIONS
§ 9.2.1 Unless otherwise noted, the terms used in this Agreement shall have the same meaning as those in A201™–1997, *General Conditions of the Contract for Construction*.

### § 9.2.2 EXTENT OF CONTRACT
This Contract, which includes this Agreement and the other documents incorporated herein by reference, represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both the Owner and Construction Manager. If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern.

### § 9.2.3 OWNERSHIP AND USE OF DOCUMENTS
Article 1.6 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

### § 9.2.4 GOVERNING LAW
The Contract shall be governed by the law of the place where the Project is located.

### § 9.2.5 ASSIGNMENT
The Owner and Construction Manager respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2 of A201™–1997, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

## ARTICLE 10 TERMINATION OR SUSPENSION
### § 10.1 TERMINATION PRIOR TO ESTABLISHING GUARANTEED MAXIMUM PRICE
§ 10.1.1 Prior to execution by both parties of Amendment No. 1 establishing the Guaranteed Maximum Price, the Owner may terminate this Contract at any time without cause, and the Construction Manager may terminate this Contract for any of the reasons described in Section 14.1.1 of A201™–1997.

§ 10.1.2 If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1 prior to commencement of the Construction Phase, the Construction Manager shall be equitably compensated for Preconstruction Phase Services performed prior to receipt of notice of termination; provided, however, that the compensation for such services shall not exceed the compensation set forth in Section 4.1.1.

§ 10.1.3 If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1 after commencement of the Construction Phase, the Construction Manager shall, in addition to the compensation provided in Section 10.1.2, be paid an amount calculated as follows:
    .1    Take the Cost of the Work incurred by the Construction Manager.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale. (784207301)
User Notes:

    .2    Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion.

    .3    Subtract the aggregate of previous payments made by the Owner on account of the Construction Phase.

The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Section 10.1.3.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 10, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders.

Subcontracts, purchase orders and rental agreements entered into by the Construction Manager with the Owner's written approval prior to the execution of Amendment No. 1 shall contain provisions permitting assignment to the Owner as described above. If the Owner accepts such assignment, the Owner shall reimburse or indemnify the Construction Manager with respect to all costs arising under the subcontract, purchase order or rental agreement except those which would not have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner elects not to accept the assignment of any subcontract, purchase order or rental agreement which would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager shall terminate such subcontract, purchase order or rental agreement and the Owner shall pay the Construction Manager the costs necessarily incurred by the Construction Manager by reason of such termination.

**§ 10.2 TERMINATION SUBSEQUENT TO ESTABLISHING GUARANTEED MAXIMUM PRICE**
Subsequent to execution by both parties of Amendment No. 1, the Contract may be terminated as provided in Article 14 of A201™–1997.

**§ 10.2.1** In the event of such termination by the Owner, the amount payable to the Construction Manager pursuant to Section 14.1.3 of A201™–1997 shall not exceed the amount the Construction Manager would have been entitled to receive pursuant to Sections 10.1.2 and 10.1.3 of this Agreement.

**§ 10.2.2** In the event of such termination by the Construction Manager, the amount to be paid to the Construction Manager under Section 14.1.3 of A201™–1997 shall not exceed the amount the Construction Manager would have been entitled to receive under Sections 10.1.2 and 10.1.3 above, except that the Construction Manager's Fee shall be calculated as if the Work had been fully completed by the Construction Manager, including a reasonable estimate of the Cost of the Work for Work not actually completed.

**§ 10.3 SUSPENSION**
The Work may be suspended by the Owner as provided in Article 14 of A201™–1997; in such case, the Guaranteed Maximum Price, if established, shall be increased as provided in Section 14.3.2 of A201™–1997 except that the term "cost of performance of the Contract" in that Section shall be understood to mean the Cost of the Work and the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 5.1.1 and 5.3.4 of this Agreement.

**ARTICLE 11 OTHER CONDITIONS AND SERVICES**

**11.1    Compliance with Laws.**
    11.1.1    In accordance with the law of the State of Utah, all monies held for retention by the Owner will be escrowed into an interest bearing account with the interest accruing to the benefit of the Construction Manager. The final GMP and final payment to the Construction Manager will be adjusted to include the interest earned on retention monies withheld during the course of the Project. Construction Manager will disburse interest monies to subcontractors in appropriate

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.
User Notes: (784207301)

proportions, as required by Utah law. It is further agreed no retention will be withheld on Construction Manager's fee or general condition costs.

11.1.2 General Contractor and all subcontractors to every tier shall comply with all applicable federal, state and local laws, rules, regulations or orders issued by any public authority having jurisdiction over the work or any part thereof.

11.1.3 General Contractor and all subcontractors to every tier shall comply with the provisions of the Williams Steigler Occupational and Safety Health Act of 1970 in its entirety. General Contractor represents and warrants that all material and equipment furnished hereunder and all work performed by contractor, its employees, agents or subcontractors shall be in full compliance with said Act.

11.2 Safety of Persons and Property.

11.2.1 General Contractor and all Subcontractors to every tier shall provide appropriate safety protection for its employees, equipment and the work.

11.2.2 General Contractor and all subcontractors to every tier shall comply with OSHA safety regulations and any and all of the Owner's safety requirements, posted or otherwise provided to contractor in writing. During all work performed hereunder, all contractors and subcontractors shall provide and enforce the use of suitable safety barriers and shall provide employees, agents, etc., with appropriate personal protective equipment where required (e.g., hard hats, hand, eye, foot and respiratory protection). All persons during their presence in posted areas shall wear such personal protective equipment.

11.2.3 General Contractor shall establish fall protection for employees who are exposed to falls over 6 feet or less if needed when working over dangerous equipment or machinery.

11.2.4 Right to know: General Contractor and all subcontractors to every tier shall make available to its employees copies of Material Safety Data Sheets used on site for all toxic substances to which contractor's employees may routinely exposed. General Contractor shall provide the Owner with Material Safety Data sheets for any chemical substances used by any contractor on site.

11.2.5 General Contractor and all subcontractors to every tier are responsible for the disposal of its own chemical waste. Each contractor or subcontractor agrees all dispositions shall be made in accordance with EPA guidelines and off Owner's property.

11.3 No Assignment

11.3.1 General Contractor and all subcontractors to every tier shall not delegate any duties nor assign or encumber any rights, receivables, or claims under this agreement without the prior written consent of the Owner. Any such attempted delegation or assignment without the prior written consent of the Owner, shall be void and of no effect.

11.4 Relationship of Parties

11.4.1 General Contractor and all subcontractors to every tier, for all purposes under this agreement, shall be considered an independent contractor and the relationship of the General Contractor and subcontractor shall under no circumstances be deemed that of master of servant, principal and agent, employer and employee, partners, or joint venture. The Owner assumes no liability for personal or property damages (other than insurable claims) arising out of contractor's performance of this agreement.

11.4.2 Nothing contained in this agreement shall create a contractual relationship with or a cause of action in favor of a third party against the Owner.

11.5 General Terms and Conditions

11.5.1 In the event the terms of this agreement and the general conditions conflict, the terms of this agreement shall take precedence.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.
User Notes: (784207301)


This Agreement entered into as of the day and year first written above.

| OWNER | CONSTRUCTION MANAGER |
|---|---|
| _(signature)_ | _(signature)_ |
| WILLIAM SHOAF, MANAGER | John E. Fortuna, Vice President |
| (Printed name and title) | (Printed name and title) |
| 4.25.06 | 4/25/06 |
| Date | Date |
| ATTEST | ATTEST |

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:16:12 on 04/25/2006 under Order No.1000199921_1 which expires on 10/22/2006, and is not for resale.
User Notes: (784207301)

19

# Exhibit B

When Recorded, Please Mail to:

Jacobsen National Group, Inc.
3131 W 2210 S
Salt Lake City, UT 84119
Attn: Richard G. Kirkham

> This document was ~~recorded~~ electronically. Please see the attached copy to view the County Recorder's stamp as it now appears in the public record.
>
> Date: 3/17/09 Entry: 865/522
> Submitted by: Park City Title Company

Space above for Recorder's use

## NOTICE OF LIEN

In accordance with Chapter 1, Title 38 of the Utah Code, notice is hereby given that Jacobsen National Group, Inc., a Utah corporation ("Jacobsen"), whose address is 3131 West 2210 South, Salt Lake City, Utah 84119, and whose telephone number is 801-973-0500, intends to hold and claim a lien upon certain real property ("Property") located at 201 Heber Avenue, Park City, Summit County, Utah, 84060.

The Property that is subject to this lien is (a) the property described on Exhibit "A" attached hereto and incorporated herein by this reference to the extent that certain Declaration of Condominium Union Square Park City, Utah, recorded on April 12, 2006, as Entry No. 774533, in Book 1784, at Page 195, in the office of the Summit County Recorder (the "Original Declaration") was not recorded as provided in the Condominium Ownership Act (the "Condominium Act") due to the failure to include a legal description for the property purported to be subject to the Original Declaration, or (b) the condominium units described on Exhibit "B" attached hereto and incorporated herein by this reference, to the extent the Original Declaration was recorded as provided in the Condominium Act or such condominium project is otherwise found to be in existence.

The purpose of this lien is to secure payment of the principal sum of $1,382,127.18, plus interest, costs, and attorneys' fees, owing to Jacobsen pursuant to its contract or statute as a result of Jacobsen providing labor and materials with the consent of all of the owners or reputed owners of such Property at the time such work commenced and this lien attached. Jacobsen's work benefitted and improved the Property, including common areas and facilities. The amount of the lien upon each condominium unit, if any such unit exists, is the fractional or proportional amount attributable to each of the units affected, such amount to be computed by reference to the percentages appearing in the condominium declaration.

The Property is currently owned or reputed to be owned by the parties as set forth on Exhibit "C" attached hereto and incorporated herein by this reference. Easy Street Partners, LLC, a Utah limited liability company and Jacobsen entered into a contract ("Contract") under which Jacobsen agreed to perform labor and/or provide materials for the benefit and improvement of the Property, and Jacobsen did in fact perform labor and/or provide materials for such purpose. Jacobsen first performed labor and/or provided materials for the benefit and improvement of the Property on or about May 28, 2006, and last performed labor and/or provided materials for such purpose on or about December 18, 2008.

This Notice will not be construed to be a waiver by Jacobsen of any defense, claim, or other right or remedy all of which Jacobsen expressly reserves, including, but not limited to, claims for additional amounts due or coming due under the Contract.

285333_1

Dated March 16, 2009.

                                        Jacobsen National Group, Inc.,
                                        a Utah corporation



                                        By: _____
                                        Name: Richard G. Kirkham
                                        Title: Secretary/Treasurer

State of Utah        )
                     ) ss.
County of Salt Lake  )

       The foregoing instrument was acknowledged before me on March 16, 2009, by Richard G. Kirkham, Secretary/Treasurer of Jacobsen National Group, Inc.

                                       _____
                                       Notary Public

```
Notary Public
RUPERT CASTILLEJA, III
165 South State Street, Suite 1855
Salt Lake City, Utah 84111
My Commission Expires
October 24, 2012
State of Utah
```

285333_1

EXHIBIT "A"

TO

NOTICE OF LIEN

Property

A parcel of land located within the South half of the Northeast quarter and North half of the Southeast quarter of Section 16, Township 2 South, Range 4 East, Salt Lake Base & Meridian, Park City, Summit County, Utah, more particularly described as follows:

Beginning at the Southwest corner of Lot 16, Block 50, Amended Park City Survey, on file and of record in the office of the Summit County Recorder, said point lies West, 90.71 feet and South, 58.93 feet from Southwest corner of the Southeast quarter of the Northeast quarter of said Section 16; thence along the westerly line of said Lot 16 and the easterly right-of-way of Main Street, North 23°38'00" West a distance of 64.32 feet the Northwest corner of said Lot 16; thence leaving said Block 50, West a distance of 14.14 feet along said right-of-way to a point on the boundary of the First Amended Subdivision Plat of The Town Lift Site; thence continuing along said right-of-way and said boundary North 32°25'56" West a distance of 128.50 feet; thence leaving said right-of-way, along said boundary North 58°02'07" East a distance of 81.41 feet; thence leaving said boundary South 66°11'22" East a distance of 77.33 feet; thence North 19°54'00" East a distance of 8.32 feet; thence South 66°46'30" East a distance of 166.95 feet; thence North 06° 43'16" West a distance of 1.21 feet to a point on the boundary of Poison Creek Mercantile Condominium Project, on file and of record if the office of the Summit County Recorder; thence along said boundary South 66°42'46" East a distance of 30.01 feet; thence continuing along said boundary South 07°12'16" East a distance of 85.18 feet; thence continuing along said boundary South a distance of 60.64 feet to a point on the northerly right-of-way of Heber Avenue; thence leaving said Poison Creek boundary and along said right-of-way North 81°17'00" West a distance of 227.98 feet; to the point of beginning.

Contains 49,435.63 square feet, 1.13 acres

[For Reference Only: Tax Parcel Numbers SA-400-F, SA-400-A, SA-400-406, ESB-1, ESB-2, SA-425-UPL]

285333_1