Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
Steven B. Eichel (seichel@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors. | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:  201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | [FILED ELECTRONICALLY] |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | |
| | ) | |

**DEBTORS' APPLICATION PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY**
**CODE FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN**
**AND EMPLOY DURHAM JONES & PINEGAR AS COUNSEL**

Easy Street Holding, LLC, Easy Street Mezzanine, LLC and Easy Street Partners, LLC

(collectively, the "Debtors"), hereby file this application (the "Application") for entry of an order

authorizing the Debtors to employ Durham Jones & Pinegar ("DJP") as their bankruptcy counsel

effective as of September 14, 2009, the petition date in these cases, pursuant to 11 U.S.C. §327(a),

and Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure.  In support of this

Application, the Debtors state as follows:

1.      On September 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court under chapter 11 of title 11 of the United States Code §§ 101, et seq. (the

"Bankruptcy Code").  The Debtors continue to operate their business and manage their property as

debtors-in-possession.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.§§ 157 and

1334. This is a core proceeding pursuant to 28 U. S. C. § 157(b).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested here are sections 327 and 330 of title 11 of

the United States Code Rules 2014(a), and 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

## RETENTION OF DURHAM JONES & PINEGAR

5.      By this Application, the Debtors request that the Court enter an order authorizing the

Debtors to employ and retain DJP as their bankruptcy counsel in accordance with the terms and

conditions set forth in that certain engagement letter between the Debtors and DJP, dated September

9, 2009 (the "Engagement Letter"), a copy of which is annexed to the hereto as Exhibit 1.

6.      The Debtors are also requesting that Court approve their retention of Crowell &

Moring LLP as bankruptcy counsel and the Law Offices of Wrona, P.C. as special corporate counsel.

2

7.     The Debtors do not intend to have DJP duplicate services other counsel are providing and DJP will coordinate with other counsel and avoid duplication.

8.     No trustee or creditors' committee has been appointed in the Debtors' cases.

9.     This Application is filed shortly after the Petition Date because of the need to prepare other documents and perform other tasks associated with the filings.

10.     The Debtors are limited liability companies and affiliates of one another. Mezzanine is the 100% owner and managing member of Partners, which owns real estate and improvements constituting the Sky Lodge in Park City, Utah. Holding is the 100% owner and managing member of Mezzanine. Michael Feder, representing Park City I, LLC, Philo Smith, Jr., representing the Philo Smith, Jr. Trust, and William Shoaf, representing CloudNine Resorts, LLC are the co-managers of Holding. The members of Holding are Park City I, LLC, Philo Smith Jr. Trust, Alchemy Ventures Trust, and CloudNine Resorts, LLC. Park City I, Philo Smith Jr. Trust and CloudNine Resorts, LLC constitute 61.25% of the membership interests of Holding. The remaining 38.75% of Holding is held by Alchemy Ventures Trust.

11.     The Debtors have selected DJP because of experience and qualifications in bankruptcy matters, including representing Chapter 11 debtors in possession.

12.     DJP intends to apply for compensation and reimbursement for professional services rendered and reimbursement of actual, necessary expenses incurred in connection with these Chapter 11 cases, subject to the Court's approval in compliance with applicable law.

13.     The Debtors expect that Kenneth L. Cannon II and Steven J. McCardell will have primary responsibility for performing work assigned to DJP, with the assistance of other DJP professionals and paraprofessionals.

SLC_455538

14.     DJP intends to seek compensation at its normal hourly rates in effect at the time its services are rendered.  DJP's hourly billing rates for the lawyers likely to perform services in this case are, Kenneth L. Cannon II and Steven J. McCardell, $325.  Hourly billing rates for shareholders who may be involved in DJP's representation of the Debtor range from $245 to $325, for associates from $150 to $250, and for paralegals, $120.  DJP also intends to seek reimbursement for its non-overhead, identifiable expenses incurred in connection with the Debtors' cases, and in accordance with applicable law.

15.     DJP has not shared or agreed to share any compensation or reimbursement from this engagement with any person other than employees of DJP as allowed by Bankruptcy Code Section 504.

16.     Prior to the Petition Date, the Debtors consulted with Durham Jones & Pinegar.  They were unable to pay a retainer because of restrictions imposed by their secured lenders.  However, DJP required a $50,000 cash retainer.

17.     Accordingly, Mr. William Shoaf personally funded $25,000 as a retainer to DJP and the Diane Jordan-Smith Trust, a trust affiliated with Mr. Philo Smith, funded the other $25,000 retainer to DJP.  Approximately half of the retainer was used in pre-petition services performed and filing fees paid as of the Petition Date.

18.     Both Mr. Shoaf and Mr. Smith have interests in the Debtors.  Both are co-managers of each of the Debtors.  In addition, Mr. Shoaf owns Cloudnine Resorts, LLC, which holds a 38.75% membership interest in the Debtor, a 50% interest in AVG – SL, LLC, former manager of each of the Debtors, a 50% membership interest in Cloudnine Resorts-Sky Lodge Development, LLC, the developer of The Sky Lodge in Park City, Utah, and a 50% membership interest in Cloudnine

4

Resorts-Sky Lodge Management, which is the property manager of The Sky Lodge. Mr. Smith owns

Utah Coal and Lumber, Inc., which holds a 10% membership interest in Holding.

19.    DJP has made it clear, and Mr. Shoaf, Mr. Smith, and the trust all understand that

DJP is counsel to the Debtors only, does not and cannot represent either Mr. Shoaf or Mr. Smith, and

that they have no rights to influence or direct these Chapter 11 cases as a consequence of having

funded retainer amounts.

20.    To the best of the Debtors' knowledge and as disclosed herein and in the Cannon

Declaration submitted with this Application: (a) DJP is a "disinterested person" within the meaning

of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code,

and does not hold or represent an interest adverse to the Debtors' estates; and (b) DJP has no

connection to the Debtors, their creditors, or their related parties except as may be disclosed in the

Cannon Declaration.

21.    Schedules and Statements have not been prepared or filed as of the date of this

Application.

22.    DJP will periodically review its files during the pendency of these chapter 11 cases to

ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts

or relationships are discovered or arise, DJP will use reasonable efforts to identify such further

developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule

2014(a).

## NOTICE AND PRIOR MOTIONS

23.    No trustee, examiner, or creditors committee has been appointed in the Debtors'

chapter 11 cases. Notice of this Motion has been given to the United States Trustee for the District of

SLC_455538

Utah, counsel for the Debtors' prepetition secured lenders, and the Debtors' twenty (20) largest

unsecured creditors. Under the circumstances, Partners submits that no further notice is necessary or

required.

24.    No previous request for the relief sought herein has been made to this or any other

court.

**WHEREFORE**, the Debtors respectfully request entry of an order granting the relief

requested herein and such other and further relief as this Court deems just and proper.

DATED:  September 24, 2009

EASY STREET HOLDING LLC

By: _____
Its: _____

EASY STREET MEZZANINE LLC

By: _____
Its: _____

EASY STREET PARTNERS LLC

By: _____
Its: _____

Agreed to:

DURHAM JONES & PINEGAR, P.C.

By: _____
Kenneth L. Cannon II (3705)
Steven J. McCardell (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
Telephone:  (801) 415-3000

Proposed Counsel for Debtors and Debtors in
Possession

6

# EXHIBIT 1

SLC_455538



DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, Utah  84110-4050
801.415.3000
801.415.3500 Fax
www.djplaw.com

Kenneth L. Cannon II
Attorney at Law
kcannon@djplaw.com

September 9, 2009

**PRIVILEGED AND CONFIDENTIAL**

Easy Street Holding, Inc.             Easy Street Partners, LLC
William Shoaf, Manager                William Shoaf, Manager
Michael Feder, Manager               Michael Feder, Manager
Philo Smith, Jr., Manager            Philo Smith, Jr., Manager

Easy Street Mezzanine, LLC
William Shoaf, Manager
Michael Feder, Manager
Philo Smith, Jr., Manager

      Re:    Engagement of Durham Jones & Pinegar as Counsel for Easy Street Entities

Gentlemen:

      Thank you for asking Durham Jones & Pinegar (the "Firm") to represent Easy Street Holding, LLC ("Holding"), Easy Street Partners, LLC ("Partners"), and potentially, Easy Street Mezzanine, LLC ("Mezzanine") (together, Holding, Partners, and Mezzanine will be referred to as "Easy Street" or the "Companies" and individually, each will be referred to generically as a "Company") with respect to the Companies' request for advice certain matters relating to debt restructuring and, if required, filing for relief for one or more of the Companies under Chapter 11 of the United States Bankruptcy Code.  We understand that you (or the persons designated below) are authorized to engage the Firm on behalf of the Companies and, in addition to the other representations referred to below, the signature on behalf of the Companies on this Engagement Letter as set forth below will constitute a representation by the Companies that the terms of this Engagement Letter are authorized by, and binding upon, the Companies after having obtained any required internal approvals, including any required board approvals.  This letter will outline the terms of our engagement.

      1.    Client.  The Firm's client in this engagement will be the Companies and our duty of loyalty will be only to the Companies.

      1.1    No Representation of Affiliated Parties.  Except as otherwise set forth herein or as may be agreed in writing in a separate engagement letter as to each such representation after

William Shoaf
September 9, 2009
Page 2

concluding that such representation may be undertaken in accordance with applicable rules of professional conduct and requirements of bankruptcy law, the Firm will not be representing either (a) the Companies' managers or (b) any members, affiliates, subsidiaries, officers, or employees of the Companies, and those other entities or individuals will be deemed to have separate interests from the Companies with respect to this matter and any future matter.  In the event those individuals or entities require legal advice or services in connection with their relationship to Companies or in connection with the Companies' financial status or claims against the Companies for which they are or may be liable, we specifically advise that they obtain independent counsel and one of the terms of our retention is that they will consult with their own counsel and will not seek or obtain legal advice from the Firm as to their interests:  (i) employment agreements with the Companies or any matters concerning rights or claims as employees or involving employee benefits; (ii) any claims against the Companies or interests in the Companies (including preparing, filing or providing procedural or substantive advice concerning proofs of claim or interest against the Companies); (iii) rights or obligations to creditors and other third parties, including any obligations of the Companies for which they have co-signed or given a guaranty, or for which they are or may be personally liable by contract, statute, or principle of law, including tax, statutory, contractual, or litigation obligations for which they are or may be personally liable, and whether or not the Companies is also liable.  The Companies expressly acknowledge that the Firm is not being engaged as counsel for the Companies' members or managers either collectively or individually other than in the context of one of the Companies being a member or a manager of another one of the Companies.  If Holding's members or managers seek or require legal advice as to their interests as members or managers, separate from those of the Companies, they will consult with their separate counsel.  The Companies acknowledge that, because of conflict of interest restrictions applicable in bankruptcy, the Firm may not be able to undertake representation of all of the Companies of with other of the Companies' affiliates and, in the event affiliates require the advice of counsel, affiliates will engage other counsel to represent such affiliates or, if appropriate, we will enter into separate engagement arrangements.

2.  <u>Scope of Services</u>.  The Companies have asked the Firm to represent the Companies by (a) evaluating information provided by the Companies; (b) providing advice concerning legal alternatives; (c) providing advice concerning the potential use of Chapter 11 by the Companies and; (d) if a Chapter 11 filing is determined to be appropriate, providing representation in the filing and prosecution of the Chapter 11 case in the United States Bankruptcy Court for the District of Utah.  In the event a Chapter 11 filing is not determined to be appropriate but the Companies desire that we assist it with workout or debt restructuring issues without filing a bankruptcy petition, that work will also be within the scope of our engagement.  The Companies understand and acknowledge that the time necessary properly to initiate, conduct and conclude a Chapter 11 case depends on circumstances and are not fixed, that the outcome of a Chapter 11 case is not guaranteed, and that while the Companies' goal will (if Chapter 11 is approved) be to file and obtain confirmation of a plan of reorganization and obtain other related results, it is possible that the Bankruptcy Court may not confirm a proposed plan or grant other requested relief, that the case may be converted to a case under Chapter 7 or dismissed, that a trustee may be appointed, that creditors may file and confirm their own plan of reorganization for the Companies, and that other adverse or undesired results may occur, despite reasonable and diligent efforts.  Nothing in this engagement letter shall be construed as a promise or guarantee about the outcome of any matter which the Firm handles on the Companies' behalf and the Companies acknowledge that there are risks and uncertainties inherent in the bankruptcy process.

SLC_432880

William Shoaf
September 9, 2009
Page 3

2.1    Limitations on Scope of Services.  It is understood that the Firm is principally
bankruptcy (or workout/debt restructuring) counsel, and, unless otherwise specifically agreed
separately in writing, that the Firm will not be representing the Companies as to other legal
matters, including without limitation:  (a) corporate and securities matters (including without
limitation preparing corporate minutes, resolutions, or other corporate documents related to
workout or bankruptcy matters; advising as to or preparing or filing securities filings required
under applicable securities laws; defending regulatory or private securities actions for enforcement
or damages; and representing the Companies as to any issuance of securities); (b) regulatory
matters other than bankruptcy matters; (c) matters involving the preservation or licensing of
intellectual property other than as part of a bankruptcy case and as provided in the Bankruptcy
Code; (d) matters as to which the Companies have engaged or will engage separate counsel; (e) any
tax matters (whether or not related to bankruptcy); and (f) any litigation matters other than in the
Bankruptcy Court or in appeals from orders of the Bankruptcy Court.

2.2    Conflicts upon Decision to File Bankruptcy Cases.  If the decision is made to
file a voluntary bankruptcy petition for one or more of the Companies and if the Firm determines
that the Firm can not represent more than one of the Companies after such a filing of a Chapter 11
case, the Firm will notify the Companies and seek direction from the Companies as to which of the
Companies the Firm will continue to represent.  The Firm will also assist the Companies in this
instance in retaining other counsel for the remaining Company or Companies.

2.3    Engagement of Other Professionals.  It is a condition of the Firm's initial and
continuing engagement that, unless expressly agreed otherwise by an amendment to this letter, the
Companies will employ or retain (or continue to employ or retain) counsel of the Companies'
choice to handle legal matters outside the scope of the Firm's engagement and such other
professionals as may be necessary to address non-legal matters, such as accounting, bankruptcy
services (such as preparation of schedules and statements, noticing, claims handling, and voting),
turnaround services, investment banking, intellectual property, and compensation and benefit
matters that may arise in connection with the Company's financial affairs that require expertise
outside of the reorganization, insolvency, and debtor-creditor areas of law, or that are otherwise
beyond the scope of our employment.  In the event the Companies do not retain necessary
additional professionals, we reserve the right to withdraw as the Companies' counsel, subject to any
rules of Court and the Utah Rules of Professional Conduct.  The Companies acknowledge that,
after the commencement of a bankruptcy case, they understand that they cannot employ or pay
attorneys (or other professionals within the scope of Section 327 of the Bankruptcy Code) without
the explicit prior approval of the Bankruptcy Court.

2.4    Companies' Assistance with Requirements.  The Companies will devote
adequate resources and personnel to (a) providing information required by the Firm to provide
legal advice and represent the Companies and (b) in the event the filing of a Chapter 11 petition or
petitions become necessary, complying with all requirements of bankruptcy law.  The Companies
acknowledge that a Chapter 11 petition cannot be filed without authorization of the Companies'
governing authority, that Company members, managers, officers, or employees may be required to
attend meetings or hearings, may be required to testify under oath, and may be required to supply
information or certify the correctness of documents filed with the Bankruptcy Court under penalty
of perjury.  The Companies agree that in the event of a Chapter 11 filing or filings they will

SLC_432880

William Shoaf
September 9, 2009
Page 4

perform fully, conscientiously, and on a timely basis all of the duties of a debtor in possession under Chapter 11 of the Bankruptcy Code, whether established by statute, rule, or United States Trustee guideline, and that they shall timely comply with all legal requirements and all reasonable requests for information or reports by the United States Trustee or any creditors committee. In the event the Companies do not comply with their duties, we reserve the right to withdraw as the Company's counsel, subject to any rules of Court and the Utah Rules of Professional Conduct.

     3.    <u>Information</u>. The Firm will take reasonable steps to keep the Companies informed of the status and progress of our efforts and will respond promptly to the Companies' inquiries. The Companies will take reasonable steps to keep the Firm informed of the status and progress of matters affecting our representation and will respond promptly to the Firm's inquiries and requests for information and documents. The filing and prosecution of a Chapter 11 bankruptcy case requires the Companies to provide, on a timely basis, a substantial amount of accurate information to us, to the Court, to the office of the United States Trustee, to any official committee of creditors, and, in some cases, to creditors. In the event a Company does not provide accurate information on a timely basis, we reserve the right to withdraw as that Company's counsel, subject to any rules of Court and the Utah Rules of Professional Conduct. The Companies authorize us to communicate with managers, officers, and employees of the Companies, and with other professionals engaged by the Companies, by using unencrypted email. The Companies will advise us of any breach of security in the Companies' information systems requiring that we discontinue the use of unencrypted email.

     4.    <u>Retainers</u>. The Firm requires cash retainers as detailed in this letter as a condition of the Firm's engagement. Retainer amounts are required for the following reasons: (a) the Firm does not have a prior relationship with the Companies, (b) the Companies have advised us that they consider that one or more may need to file a Chapter 11 petition, and (c) the Firm requires that it remain fully secured at all times as to all fees and expenses incurred so as to avoid disqualification (whether on grounds of holding an unpaid claim or on grounds of having received a preferential transfer) as the Companies' counsel in the event a bankruptcy filing of filings become necessary. Retainer amounts are selected solely in order to identify reasonable amounts to serve as collateral and not as an estimate, ceiling, limitation, or guaranty of cost of services. Accordingly, the Companies acknowledge that retainer amounts are not an estimate, ceiling, limitation, or guaranty of the cost of either preparation of the Chapter 11 case filings or the prosecution of the Chapter 11 cases after filing.

     4.1    <u>Retainer Amounts and Retainer Funding</u>. The Firm requires, and the Companies have agreed to pay the Firm by wire transfer in immediately available funds: a cash retainer of $25,000 (the "Initial Retainer"), as security for our fees and expenses in meeting with the Companies, evaluating information to be provided by the Companies, evaluating with the Companies their goals and available alternatives, and, if required, in preparing for one or more Chapter 11 case filings. In order to assure that in no event will the Firm's legal work for the Companies exceed the amount of any retainer held (measured as of the time of rendering services or incurring costs, and not as of the later time of issuance of an invoice), the Companies will upon request, and subject to all rules of law and orders of the Court, immediately pay by wire transfer in immediately available funds such additional amounts as may be required in the Firm's judgment to increase the retainer to assure that at no time will the Firm have incurred fees or expenses not fully secured by retainer amounts. The failure to pay the Initial Retainer will be grounds for the Firm's

SLC_432880

William Shoaf
September 9, 2009
Page 5

not commencing the representation.  Upon a decision to file one or more Chapter 11 cases, the
Companies will pay an additional retainer by wire transfer in immediately available funds in an
amount to be agreed to by the Firm and the Companies (the "Additional Retainer").  The failure to
pay the Additional Retainer will be grounds for the Firm's not continuing the representation in
connection with a Chapter 11 filing.

    4.2 <u>Interests In Retainer Amounts</u>.  All retainer amounts will remain the
property of the Company, subject to the Firm's security interest therein.  Each Company hereby
grants the Firm a security interest and attorney's lien in all retainer amounts received to secure
incurred but unpaid fees and expenses.  The Companies will be entitled to a refund of any unused
retainer amounts, if any, at the conclusion of the Firm's engagement, after payment in full of all
amounts owed to the Firm.  In the event the Companies do not pay any amounts required to be
paid under this agreement, the Firm is authorized to draw on retainer amounts for such payment.

    4.3 <u>Source of Retainer and other Payment Amounts</u>.  The Companies hereby
represent that the source of all amounts paid to the Firm by the Companies as a cash retainer or
paid on account of invoices unencumbered cash funds of the Companies (a) not subject to any
restriction as to payment; (b) not subject to any ownership interest of any of the Companies'
creditors or other third party, and (c) is not otherwise restricted from payment on account of such
amounts under any agreement or law, or under any ruling or order of a Court.  In the event the
Companies representations are not correct in any material respect, or are rendered incorrect by a
ruling of a Court, whether or not final, and whether or not reduced to writing, the Companies
hereby consent to the Firm's immediate withdrawal, subject to any rules of Court and the Utah
Rules of Professional Conduct.

    4.4 <u>Payments by Affiliates</u>.  If the Companies propose that any retainer funds be
obtained from or that any amounts invoiced by the Firm be paid by an affiliate of the Companies,
any such proposal will be subject to the prior approval of the Firm, which approval will require at
least the following representations to be made in writing by both the Companies and the affiliate:
(a) except as otherwise expressly provided in a separate retention agreement with such affiliate, the
Firm does not and will not in any way represent or be deemed to represent the interests of that
affiliate, and will not be deemed to have done so on account of the advance of funds to the
Companies or otherwise, but, rather, the Firm's sole clients are the Companies; (b) the affiliate will
not have or assert any right to influence or control the Companies' or a Company's legal decisions
or matters as a consequence of having advanced the funds; (c) the Firm will in no way be restricted
or limited, if necessary or appropriate in the course of its representation of the Companies, to
assert any matter, claim, or cause of action against such affiliate; (d) if the affiliate is a member of
the Companies, the affiliate and the Company do and will consider the advance and record and
treat it on their respective books, records, and transactions as a capital contribution to the
Companies, and not as a loan or debt repayable by the Companies; (e) if the affiliate is not member
of the Companies, the affiliate and the Companies do and will consider the advance and record and
treat it on their respective books, records, and transactions as a loan to the Companies
subordinated in priority to any and all claims against and interests (including interests of equity
owners) in the Companies; and (f) the Companies and the affiliate consent to the Firm's full
disclosure of the amount and source of all retainer payments to the Court, the United States
Trustee, and other parties in interest in the Chapter 11 case as may be required by law, including
Bankruptcy Code Section 329.

SLC_432880

William Shoaf
September 9, 2009
Page 6

    4.5    <u>Pre-Bankruptcy Invoicing and Payment</u>.  Up to the point of a Chapter 11 filing or filings, the Firm will invoice each Company periodically (which may be monthly, weekly or more frequently in the period before any Chapter 11 filing, and which may include the day or days immediately before and/or the day of any Chapter 11 filing) and the respective Company will immediately pay the amount of the invoice by wire transfer to an account designated by the Firm of immediately available funds, less any amounts which that Company disputes in good faith.  The Companies will identify in writing the good faith basis for any such dispute.  The Firm and the Companies agree to discuss in good faith any billing disputes, to promptly work in good faith to resolve any disputes to the extent possible and, in the event of any dispute which cannot be resolved, to submit the matter to fee arbitration in accordance with the fee arbitration provisions of the Utah State Bar.  For avoidance of doubt, invoices in the pre-bankruptcy period will not be paid out of retainer amounts held, but, rather, retainer amounts will be held as collateral to secure the Firm's fees and expenses.  Invoicing and payments as provided herein will be deemed to be within the ordinary course of the Firm's retention and the Companies' business.

    4.6    <u>Post-Bankruptcy Invoicing and Payment</u>.  If and when the Firm files a petition under Chapter 11 on behalf of one or more of the Companies, the Firm will continue to provide monthly statements to each Company to keep the Companies apprised of fees and expenses incurred, but the Firm can be paid only pursuant to prior Bankruptcy Court order upon application on notice to creditors.  The Companies hereby authorize the Firm to request that the Court approve procedures for monthly statements and monthly payments (which may be subject to review by creditors and the U.S. Trustee and which may also be subject to percentage holdback requirements), with periodic fee applications, hearings, and orders.  The Companies understand that, in such monthly or other periodic statements pr applications, the Firm will be required to provide public disclosure in a fee application filed with the Bankruptcy Court including a publicly available itemization of services performed and expenses incurred.  The Companies will review our monthly fee statements.  If the Firm's monthly statements include detail which a Company deems confidential, the Company will notify the Firm and the Firm will make appropriate redactions in public filings, subject to any requirements or disclosures ordered by the Bankruptcy Court.

    5.    <u>Staffing and Basis for Fees Charged</u>.  Kenneth L. Cannon II and Steven J. McCardell will be the lawyers in the Firm primarily responsible for the Companies' matters.  The Firm will staff the Companies' matters with our other lawyers and professional staff who are suited to handle issues as they arise.  The Firm will be entitled to a reasonable fee for our services.  We will charge for our services on an hourly basis in increments of 1/10th of an hour.  Our current hourly rates for the attorneys expected to devote substantial time to the evaluation of the Companies' information, providing initial advice, and preparing and filing a Chapter 11 petition, if appropriate are the current members of the Firm's bankruptcy group in Salt Lake City:  Kenneth L. Cannon II, $325.00, Steven J. McCardell, $325.00.  Other shareholders, associates, or paralegals may assist with these initial matters or with matters as they develop.  We, and other attorneys and paralegals, will bill at our hourly rates in effect at the time services are rendered.  As of January 1, 2009, the Firm's standard hourly rates are the following:  Shareholders, from $185 to $330 per hour; Associates, from $160 to $225 per hour; Paralegals, from $115 to $125 per hour.  The legal personnel assigned to the Companies' matters may confer among themselves about the matters and, where appropriate may attend hearings, conferences, meetings, or depositions, as required.  When they do so, each will charge for the time expended.  The Firm's hourly rates may be adjusted

SLC_432880

William Shoaf
September 9, 2009
Page 7

upward on an annual or semi-annual basis. If the Firm increases its hourly rates at any time
during the course of this engagement, the higher rates will be substituted for the rates described
above. After the filing of a Chapter 11 petition, statutory and procedural requirements of
bankruptcy law will govern the allowance and payment of our fees and expenses. The Companies
acknowledge and agrees that the Firm has reserved the right to seek approval from the Bankruptcy
Court for additional compensation beyond its standard hourly rates, should circumstances of the
case justify such a request.

6.      Basis for Expenses Charged. The Firm's invoices will also include charges for its
out-of-pocket expenses (such as travel and postage) and for non-professional services (such as
messenger delivery, long distance telephone calls, library services, facsimile, computerized research
facilities, and document duplication) in connection with the Firm's representation of the
Companies. We do not advance material outside expenses for clients and, accordingly, require that
material out-of-pocket expenses (such as for copying or service by an outside service provider,
transcripts, experts, or consultants) be billed to the Company directly by the provider of those
services and paid by the Company directly to the provider. After the filing of a Chapter 11
petition, statutory and procedural requirements of bankruptcy law will govern our reimbursement
for expenses and we will continue to require that material outside expenses be paid directly by the
Companies.

7.      Monthly or other Periodic Billing. Each Company will receive, through you unless a
different recipient is designated in writing, monthly or other periodic invoices from the Firm
showing in detail the services and expenses posted during the applicable billing period. In the
event services or expenses for the billing period are posted after issuance of an invoice, the services
or expenses will be billed in a later invoice.

8.      Billing Issues. If a Company has any questions or comments concerning our services
or charges during the course of our representation, please bring them to my immediate attention
in accordance with the terms of this letter so that any issues can be quickly resolved. If a Company
does not raise issues concerning our statements prior to the time we submit an application for
allowance to the Bankruptcy Court pursuant to Sections 330 and 331 of the Bankruptcy Code
(which will be based upon monthly invoices previously provided to the Company), we will be
entitled to assume and represent to the Court and the United States Trustee that the Company has
approved the fees and expenses as shown in monthly invoices. In the event of any dispute
concerning the Firm's fees, whether or not such dispute involves discussions, arbitration, or
litigation, the prevailing party shall be entitled to reasonable attorneys fees and costs incurred.

9.      Conflicts. We have conducted a review of the names the Companies have submitted
to us for conflicts review and have advised the Companies of connections with the names
submitted, if any. The Companies have consented to our representation after having been advised
of these connections.

10.     Conclusion of Representation. The Companies have the right to terminate our
representation at any time upon written notice, subject to any requirements of a court in which the
Firm has appeared on behalf of one or more of the Companies, at which time all unpaid fees and
costs will become immediately due. The Firm reserves the right to withdraw from this
representation at any time consistent with the Utah Rules of Professional Conduct and, after any

SLC_432880

William Shoaf
September 9, 2009
Page 8

Chapter 11 filings or other court appearance, with applicable rules of court. Termination of the Firm's services will not affect the Companies' responsibility for payment for services rendered and expenses incurred before termination. Without limitation of other possible grounds for withdrawal, it is expressly understood that the Firm will have the right to withdraw as counsel if, at any time, in the Firm's sole discretion, and whether or not services contemplated by this Engagement Letter have been completed, the Companies (or a Company's managers or members): (a) chooses not to accept or follow the Firm's legal advice; (b) engages in conduct inconsistent with law; (c) fails or refuses to provide timely, accurate, or complete information reasonably requested by the Firm; (d) fails or refuses to disclose information material to any matter relevant to any Bankruptcy Case or otherwise within the scope of the Firm's engagement; (e) refuses or is unable to pay reasonable fees or costs incurred by the Firm; or (f) otherwise fails or refuses to comply with the terms of this agreement. The Firm's general right to withdraw on any appropriate ground shall not be limited by the absence or presence in any provision of this Engagement Letter of an express right to withdraw.

11.    Disclosure of Terms of this Agreement/Appointment of Trustee. The Companies understands that in the event of a bankruptcy filing by or against one or more of the Companies, pursuant to requirements of bankruptcy law, the terms of this agreement may be required to be disclosed to the Bankruptcy Court, the United States Trustee, committees, or creditors, and the Firm's engagement will be required to be approved by the Bankruptcy Court. The Companies consent to any such required disclosure.

12.    Appointment of Trustee. The Companies acknowledges that the Bankruptcy Court could appoint a trustee for one or more of the Companies that have filed a bankruptcy case, if the Court finds grounds to do so. In the event of the appointment of a Trustee, except as otherwise directed by the Court, under applicable bankruptcy law our engagement will terminate and the Trustee and the Trustee's counsel will take over and/or direct all matters for that Company or those Companies. Furthermore, a trustee for a Company will control the attorney-client privilege of the Company and, in such event, we will be obligated to disclose to the Trustee information which otherwise would be disclosed only to the Company. Each Company therefore acknowledges that, in the event of the appointment of a Chapter 11 or Chapter 7 trustee for one or more of the Companies, the trustee may waive any applicable attorney-client privilege pertaining to the Firm's retention and may require that the Firm disclose information with otherwise would have been subject to the attorney-client or work-product privileges.

13.    Other Standard Terms. Our Firm's standard terms of engagement are enclosed and constitute part of this agreement, unless revised by this letter or inconsistent with bankruptcy law. Your signature below acknowledges receipt of and agreement to these terms.

If any of the Companies has any questions regarding the foregoing, we would appreciate the opportunity to discuss them with. Please feel free to obtain independent legal advice regarding this Engagement Letter. If this agreement is acceptable, please signify the Companies' agreement to these terms of engagement, including the enclosed standard terms, unless revised by this letter, by signing this letter on the lines indicated below, and returning one original to me.

The Firm's engagement for purposes of filing a Chapter 11 petition will not commence and the Firm will have no obligation to file such petition, until after:  (a) the Companies have provided

FROM : PHILO & DIANE SMITH                                    Sep. 10 2009 06:22PM P1

William Shoaf
September 9, 2009
Page 9

all required information and authorization and (b) the Firm has received available funds in
payment in full of the Additional Retainer.

                                        Sincerely,

                                        DURHAM JONES & PINEGAR

                                        Kenneth L. Cannon II
                                        Steven J. McCardell

KLC/kh

Enclosure (standard terms of engagement)

Agreed:

Easy Street Holding, LLC                Easy Street Mezzanine, LLC

By: _____            By: _____
Michael Feder, Manager                  Michael Feder, Manager

By: _____            By: _____
Philo Smith, Jr., Manager               Philo Smith, Jr., Manager

By: _____            By: _____
Willian Shoaf, Manager                  Willian Shoaf, Manager


Easy Street Partners, LLC

By: _____
Michael Feder, Manager

By: _____
Philo Smith, Jr., Manager

By: _____
Willian Shoaf, Manager

SLC_432880

09/11/2009  09:33  2129655964  RADER BOWE INC  02/02

William Shoaf
September 9, 2009
Page 9

all required information and authorization and (b) the Firm has received available funds in
payment in full of the Additional Retainer.

Sincerely,

DURHAM JONES & PINEGAR

Kenneth L. Cannon II
Steven J. McCardell

KLC/kh

Enclosure (standard terms of engagement)

Agreed:

Easy Street Holding, LLC

By: _____
Michael Feder, Manager (for PCI)

By: _____
Philo Smith, Jr., Manager

By: _____
Willian Shoaf, Manager


Easy Street Partners, LLC

By: _____
Michael Feder, Manager (for PCI)

By: _____
Philo Smith, Jr., Manager

By: _____
Willian Shoaf, Manager

Easy Street Mezzanine, LLC

By: _____
Michael Feder, Manager (for PCI)

By: _____
Philo Smith, Jr., Manager

By: _____
Willian Shoaf, Manager

SLC_432880

William Shoaf
September 9, 2009
Page 9

all required information and authorization and (b) the Firm has received available funds in
payment in full of the Additional Retainer.

Sincerely,

DURHAM JONES & PINEGAR

Kenneth L. Cannon II
Steven J. McCardell

KLC/kh

Enclosure (standard terms of engagement)

Agreed:

Easy Street Holding, LLC                          Easy Street Mezzanine, LLC

By:_____                      By:_____
Michael Feder, Manager                            Michael Feder, Manager

By:_____                      By:_____
Philo Smith, Jr., Manager                         Philo Smith, Jr., Manager
By:_____                      By:_____
Willian Shoaf, Manager                            Willian Shoaf, Manager


Easy Street Partners, LLC

By:_____
Michael Feder, Manager

By:_____
Philo Smith, Jr., Manager
By:_____
Willian Shoaf, Manager

SLC_432880



# Standard Terms of Engagement
## for Legal Services

### Durham Jones & Pinegar

We are pleased to accept your engagement of Durham Jones & Pinegar to provide legal services as specified in a separate engagement letter. This supplement sets forth our standard terms of engagement and should be retained in your file. Please review it carefully and contact us promptly if you have any questions. Your acceptance of our services will be deemed to be your acceptance of these terms. The terms may be modified only by a written mutual agreement signed by both parties.

## Legal Services

A principal attorney will oversee your legal matter. Other attorneys and paralegals with special expertise may also perform some of the work. If you have any questions in the absence of your principal attorney, please feel free to contact any of the attorneys working on your matter.

## Fees

Legal fees are based on what we believe is the fair and proper charge for the work and level of responsibility required in each circumstance. We typically bill on an hourly basis and record time worked in tenths of an hour. Rates are usually specified in the client engagement letter and are itemized on the billing statement. If you have questions about the rates charged, please contact your attorney or our billing office.

Rates are adjusted annually to reflect overhead costs, market conditions, current levels of legal experience and other factors. Time billed may include court appearances, personal conferences, consultations among attorneys working on your matter, telephone conferences, negotiations, legal research and analysis, and document preparation and revision.

We may quote an alternative fee for certain well-defined services. In such case, the alternative fee arrangement and scope of services will be expressed in a separate letter. We do not accept representation on a flat-fee basis except for certain defined services or pursuant to particular client needs.

Upon request, we may provide an estimate of fees and costs likely to be incurred on a particular matter so long as it is not a maximum or fixed-fee quotation. Estimates are based on our best professional judgment, although ultimate costs may be more or less than the estimate.

## Other Expenses

We typically incur and pay on behalf of our clients various out-of-pocket costs associated with their legal matter. Each cost will be itemized on your billing statement. These costs include filing fees, witness fees, government agency fees, courier expenses, travel expenses, printing and reproduction costs, deposition and transcription costs, faxed messages, computer-based research, fees charged by outside experts and consultants, and credit card payment processing fees.

We do not charge for long-distance telephone calls unless they exceed $25 in a given month. If a third-party provider is used for teleconferences or other telephone services, the charge is as billed. Charges for our in-house services are generally based on actual cost plus a modest administrative fee. Computer-based research is charged at the lesser of the actual per minute vendor charge or the client's pro rata share of the vendor's flat fee. A reasonable administrative fee may be charged in addition to the actual computer-based research charges.

SLC_224275.1

Travel costs are based on flying coach class and lodging at mid-priced hotels, unless other arrangements are made with the client; provided that for flights more than six hours in duration, we fly business class. Filing fees are billed as incurred. Please discuss with your attorney any specific charges or billing questions you may have.

## Retainer and Trust Deposits

New clients are customarily asked to deposit a retainer with the firm, which is held in a trust account as security for client's final payment of legal services and other costs incurred. You are still expected to make monthly payments as agreed while the retainer is held as security. If your account becomes delinquent, we may apply the retainer to any unpaid invoices. When our work is completed and your account is paid in full, any unapplied amount of the retainer will be returned to you.

## Termination of Services

You may terminate our representation at any time and for any reason by so notifying your principal attorney. We may do the same upon reasonable notice to you. In such case, we will endeavor to minimize the possibility of harm to your matter. Termination of services will not affect your responsibility to pay for the legal services rendered and expenses incurred prior to termination.

## Billing and Collections

We will send you a billing invoice after each month services are rendered. The invoice includes a description of work performed and expenses incurred. Payment is due upon receipt. Unpaid fees and disbursements accrue interest at 1.5 percent per month starting 30 days after the invoice date.

If your account becomes delinquent and you do not arrange satisfactory payments terms, we will withdraw from representation and initiate collection proceedings. You agree to pay all collection costs, including filing fees, court costs and reasonable attorney fees. You also agree to submit and be subject to the jurisdiction of Utah courts with respect to any such proceeding.

## Privacy Disclosure

With your authorization, we may obtain non-public personal information from third parties, such as accountants, financial advisors, insurance agents, banking institutions and witnesses. We do not disclose non-public personal information provided by you or a third party except as permitted by law or as necessary to represent you.

In compliance with federal regulations and our rules of ethics, we maintain strict electronic, physical and procedural safeguards to protect your non-public personal information. Only employees of our firm who need the information for legal representation purposes may access it.

The Utah Supreme Court's *Rules of Professional Conduct* also require that we maintain the confidentiality of attorney-client communications. Where applicable federal law might allow disclosure, we will nevertheless follow the stricter rules of attorney-client privilege and client confidentiality.

*Revised: 06-08*

| Salt Lake Office: | St. George Office: | Ogden Office: | Las Vegas Office: |
|---|---|---|---|
| 111 East Broadway, Suite 900 | 192 East 200 North | 1104 E. Country Hills Drive | 8831 West Sahara Avenue |
| P.O. Box 4050 | 3rd Floor | Suite 710 | Las Vegas, Nevada 89117 |
| Salt Lake City, Utah 84110 | St. George, Utah 84770 | Ogden, Utah 84403 | 702-388-1996 |
| 801-415-3000 | 435-674-0400 | 801-395-2424 | 702-382-7903 fax |
| 801-415-3500 fax | 435-628-1610 fax | 801-395-2430 fax | |

SLC_224275.1