Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
Steven B. Eichel (seichel@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:  201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | **[FILED ELECTRONICALLY]** |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | |

## APPLICATION FOR AN ORDER PURSUANT TO §§ 327(a) AND 329(a) OF THE BANKRUPTCY CODE, AND RULES 2014(a) AND 2016 (b)  AUTHORIZING THE RETENTION AND EMPLOYMENT OF CROWELL & MORING LLP AS COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

Easy Street Partners, LLC ("Partners"), Easy Street Mezzanine, LLC ("Mezzanine"), and

Easy Street Holding, LLC ("Holding"), debtors and debtors in possession in the above-captioned

cases (collectively, the "Debtors"), hereby apply (the "Application") for an order authorizing the

employment of Crowell & Moring LLP ("C&M") as counsel for the Debtors, effective as of the

Petition Date (defined below), pursuant to 11 U.S.C. §§ 327(a), 329(a), and Rules 2014(a) and

2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of

this Application, the Debtors respectfully represent as follows:

## BACKGROUND

A.    **The Chapter 11 Filings.**

1.      On September 14, 2009 (the "Petition Date"), each of the Debtors, filed a

voluntary petition in this Court under chapter 11 of title 11 of the United States Code §§ 101,

et seq. (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage

their properties as debtors-in-possession.

2.      No trustee, examiner, or creditors' committee has been appointed in these cases.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.    **Background and Current Business Operations of the Debtors.**

1.      The Debtors are limited liability companies and affiliates of one another.

Mezzanine is the 100% owner and managing member of Partners, which owns real estate and

improvements constituting the Sky Lodge in Park City, Utah.  Holding is the 100% owner and

managing member of Mezzanine.  Michael Feder, representing Park City I, LLC, Philo Smith,

Jr., representing the Philo Smith, Jr. Trust, and William Shoaf, representing CloudNine Resorts,

LLC are the co-managers of Holding.  The members of Holding are Park City I, LLC, Philo

Smith Jr. Trust, Alchemy Ventures Trust, and CloudNine Resorts, LLC. Park City I, Philo Smith Jr. Trust and CloudNine Resorts, LLC constitute 61.25% of the membership interests of Holding. The remaining 38.75% of Holding is held by Alchemy Ventures Trust.

2.      The Sky Lodge is a luxury boutique hotel located in the middle of historic Main Street in Old Town Park City. It is an ultra stylish resort hotel offering all of Park City's amenities plus a restaurant offering both casual and fine dining, a bar and lounge, a bakery, the spa Amatsu, and meeting and event venues and more.

3.      The Sky Lodge is being sold as fractional ownership with a total of 176 one-eighth shares offered. There are 22 units in total. The 2 and 3 bedroom models range from 1260 to 2700 square feet for the penthouse model. Owners buy individual units and not just the rights to a stay. Cloud Nine Resorts, an affiliate of the Debtors, runs the homeowners association (HOA), manages the owner bookings and rotational intricacies of ownership. Each owner is guaranteed two ski weeks (mid Dec. – mid April) each year plus 21 other days throughout the year for their own use. Stays not used by the owner may be rented out by the hotel and proceeds are split equally with the owner.

**C.      Debt Structure.**

1.      On March 30, 2006, Partners entered into a Loan (the "WestLB Senior Loan") and Security Agreement (collectively, the "Senior Loan Agreement") for the initial amount of $36,779,224[1] with WestLB AG ("WestLB") to purchase and develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060. The WestLB Senior Loan is

---

1 The proceeds of the WestLB Senior Loan (along with the proceeds of the BayNorth Mezzanine Loan, as hereinafter defined) were used to purchase, develop and construct the Sky Lodge.

secured by, among other things, security interests evidenced by the Construction and Interim

Loan Deed of Trust With Security Agreement, Assignment of Leases and Rents and Fixture

Filing, and a UCC Financing Statement, each filed in the Summit County, Recorder's Office,

State of Utah. On February 15, 2008, at the direction and authorization of WestLB, as the

Administrative Agent, a partial principal repayment of $22,400,000 was made to WestLB from

Real Estate Sales Escrow Funds[2] controlled by the Administrative Agent.  The current balance of

the WestLB Senior Loan is $14,379,224.

    2.      On March 30, 2006, Mezzanine entered into a Loan Agreement (the "Mezzanine

Loan Agreement") in the initial amount of $11,250,000 (the "BayNorth Mezzanine Loan") with

BayNorth Realty Fund VI, LP ("BayNorth") to develop a Condominium Hotel Mixed Use project

at 201 Heber Avenue, Park City, Utah 84060, which is owned by Partners.  The BayNorth

Mezzanine Loan is secured by a pledge of Holding's 100% interest in Mezzanine to BayNorth,

and a UCC Financing Statement filed with the Secretary of State of Utah.  On February 19, 2008,

at the direction and authorization of WestLB, as the Administrative Agent, a $5,600,000

disbursement[3] from the Real Estate Sales Escrow Funds controlled by the Administrative Agent

was made to BayNorth, which included a partial principal repayment and accrued interest.  It is

the Debtors' position that the partial repayment paid all current accrued interest and the

---

2 As units are sold, the proceeds are swept into various escrow accounts maintained at Wells
Fargo Bank under the control of WestLB as the Administrative Agent for WestLB and BayNorth
(hereinafter defined).

3 This payment was incorrectly made and has led to, among other things, (a) a dispute between
WestLB and BayNorth under the Intercreditor Agreement (as hereinafter defined) for its return, (b) a
failure of WestLB to extend the WestLB Senior Loan, (c) BayNorth alleging a default of the BayNorth
Mezzanine Loan, (d) a failure by WestLB to release additional escrowed funds resulting in imposition of
liens by contractors and foreclosure suits, and (d) the loss of pending sales.

remaining $1,646,871 was applied to the loan principal balance. The current balance of the

BayNorth Mezzanine Loan including principal and accrued interest is $12,045,586.[4]

    3.    On March 30, 2006, WestLB, as Senior Lender, and BayNorth, as Mezzanine

Lender, entered into an intercreditor agreement (the "Intercreditor Agreement") to provide, inter

alia, for the relative priority of the Senior Loan Agreement between WestLB and Partners, and

the Mezzanine Loan Agreement between BayNorth and Mezzanine, and administration of both

loans by WestLB as the administrative agreement.

    4.    The original term of the WestLB Senior Loan was for three years with two one-

year extensions available to Partners. The initial term of the WestLB Senior Loan ended on

March 29, 2009. On September 25, 2008, Partners formally notified WestLB of its request for a

conversion of the WestLB Senior Loan into an Interim Loan, as stipulated in section 2.15 of the

Senior Loan Agreement, which would extend the WestLB Senior Loan for an additional year.

**D.**    **Events Leading to Filing of Petitions.**

    1.    On March 4, 2009, WestLB issued a letter to Partners asserting that after

reviewing the disposition of the Net Sales Proceeds from sales of real estate, that it, as the Senior

Lender, had been underpaid from the $28,000,000 lender distribution that occurred in February

of 2008. WestLB demanded that Partners remit immediately the sum of $4,899,104 to it.

Partners denied such claim because the shortfall to WestLB was the direct result of WestLB, as

the Administrative Agent, authorizing a payment of $5,600,000 out of the February 2008 lender

distribution to the Mezzanine Lender BayNorth. This action was in clear violation of Section 9

---

    4 BayNorth claims a substantially greater amount, in excess of $31 million, based upon disputed
assertions of rights under a yield maintenance provision and disputed calculations which, among other
things, fail to account for the $5.6 million disbursement to BayNorth.

of the Intercreditor Agreement; however, WestLB has denied responsibility for its actions as the Administrative Agent and has been attempting to get Bay North to return the funds received on February 19, 2008.  To date, Bay North has wrongfully refused, which has created the current situation as more fully set forth herein.

2.      On or about March 29, 2009, WestLB entered into a forbearance agreement with Partners (the "Forbearance Agreement"), while it attempted to get BayNorth to abide by the Intercreditor Agreement and return the $5,600,000.  Partners and its representative, Realty Financial Resources, understood that West LB had met with BayNorth to demand the return of the $5,600,000. These efforts were not successful.

3.      On May 5, 2009, BayNorth issued to Mezzanine a notice of default on the BayNorth Mezzanine Loan. This default notice was followed by a Notice of Acceleration and Demand for Payment issued by BayNorth on June 23, 2009.  On July 28, 2009, a Notice of Sale was issued by BayNorth for the membership interest of Holding to be sold at foreclosure on September 16, 2009.  There are no payment defaults under the BayNorth Mezzanine Loan nor are any alleged.

4.      WestLB has also taken the position that any funds in the Real Estate Escrow Accounts are frozen. This action precluded the final approved payment to the general contractor, which was formally submitted to WestLB on February 5, 2009.  Despite repeated requests by Partners to have this payment made from the escrowed funds, WestLB has not done so to date, resulting in liens being placed on the Sky Lodge property on March 16, 2009, despite continued requests by Partners for funding.  On September 8, 2009, the general contractor gave Partners verbal confirmation that a foreclosure action had been filed.

5.      The actions by WestLB and BayNorth effectively precluded Partners from having any ability to operate the business in a normal and effective manner.  Due to these actions and the upcoming foreclosure sale of the membership interest in Holding by Bay North, Partners and its affiliates, Mezzanine and Holding, had no option but to file for protection under Chapter 11 so that the business can be restructured and can return to profitable operations.

## RELIEF REQUESTED

Pursuant to §§ 327(a) and 329(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b), the Debtors hereby seek the entry of an order authorizing the Debtors to retain and employ C&M as counsel in these Chapter 11 cases, effective as of the Petition Date.[5]  In support of the Application, the Debtors submit: (a) the Declaration of Michael V. Blumenthal In Support Of Debtors' Application For An Order Pursuant To §§ 327(a) and 329(a) of The Bankruptcy Code, And Rules 2014(a) and 2016(b)  Authorizing The Retention And Employment Of Crowell & Moring LLP As Counsel For The Debtors Effective As Of The Petition Date (the "Blumenthal Declaration"), a partner of C&M, a copy of which is annexed hereto as Exhibit 1; and (b) Statement of Disclosure of Compensation of Crowell & Moring LLP, Counsel For The Debtors, a copy of which is annexed hereto as Exhibit 2.

## BASIS FOR RELIEF

1.      Under § 327(a) of the Bankruptcy Code, a debtor-in-possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in carrying out [its]

---

[5]  Retention effective as of the Petition Date is appropriate because (i) the Application was filed as soon as practicable after the Petition Date, (ii) C&M will continue to provide services to the Debtors from and after the Petition Date, and (iii) a final hearing on this Application will not be conducted, and a final order will not be entered, until after the Petition Date.

duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code modifies §§ 101(14) and 327(a) of the Bankruptcy Code in cases under Chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

2.      As required by Bankruptcy Rule 2014(a) this Application, and the Blumenthal Declaration, set forth: (a) the reasons for the Debtors' selection of C&M as their counsel in connection with these Chapter 11 cases; (b) the specific facts showing the necessity for C&M's employment; (c) the professional services to be provided by C&M ; (d) to the best of Debtors' knowledge, the extent of C&M's connections, if any, to certain parties of interest in these cases; and (e) the arrangement between the Debtors and C&M with respect to C&M's compensation.

## A.      Selection of C&M as Debtors' Counsel.

The Debtors have selected C&M as their counsel because of the firm's extensive experience and knowledge, and in particular, its expertise in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code. C&M has the necessary background to advise the Debtors with respect to the legal issues they may face in these substantial corporate Chapter 11 cases. The Debtors believe that C&M is both well qualified and able to represent them in these Chapter 11 cases and proceedings therein in an efficient and timely manner.

**B.     The Necessity for Retention and the Services to be Rendered.**

1.     The services of C&M are necessary to facilitate the Debtors executing faithfully their duties as debtors-in-possession.  Subject to further order of this Court, C&M will be authorized to render the following professional services:

a.     the protection and preservation of the estates of the Debtors, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the prosecution of and/or negotiation in respect of all litigation in which the Debtors are involved, and the preparation of objections to claims filed against the estate;

b.     the preparation on behalf of the Debtors, as debtors in possession, of all necessary motions applications, answers, orders, reports and papers in connection with administration of the estate herein;

c.     the negotiation and preparation on behalf of the Debtors of a Chapter 11 plan, disclosure statement and all related documents;

d.     representing the Debtors in connection with any sales, leases or other uses of property of the estate and all other legal issues in connection therewith; and

e.     the performance of all other necessary legal services in connection with these Chapter 11 cases.

2.     C&M has stated its desire and willingness to act in this case and render the necessary professional services as counsel for the Debtors.

3.     The Debtors request court approval for the retention of C&M pursuant to C&M's normal hourly rates and reimbursement policies as set forth in the Retention Agreement (defined below).  A copy of the Retention Agreement is annexed hereto as <u>Exhibit 3</u>.

**C.     Disinterestedness of Professionals.**

1.     To the best of the Debtors' knowledge, the members, counsels, and associates of C&M: (a) do not have any connection with any of the Debtors, their affiliates, their creditors, or any other party in interest, or the attorneys or other professionals for the Debtors, the United

States Trustee or any person employed thereby; (b) are "disinterested persons," as that term is

defined in section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest

adverse to the estates, except as stated in the Blumenthal Declaration.

**D.    Professional Fees and Expenses.**

1.    C&M was retained on or about August 26, 2009, by the Debtors to evaluate the

restructuring alternatives available to the Debtors' debts and a potential chapter 11 filing.  On

August 24, 2009, C&M received $50,000 from Philo Smith, one of the managers of Holding.

Subsequently, C&M entered into an amended retention agreement (the "Retention Agreement"),

pursuant to which Philo Smith wired $25,000 to C&M on September 10, 2009, and $50,000 to

C&M on September 11, 2009.

2.    As of the Petition Date, C&M utilized approximately $110,000 in connection with

the preparation of the Debtors' bankruptcy filing.  The remaining $25,000 is held as a retainer

(the "Retainer") for C&M's representation of the Debtors' in their reorganization cases.

3.    In connection with the Retention Agreement, Philo Smith (the "Guarantor")

agreed to guarantee payment of C&M's invoices for services rendered to and cost incurred on the

behalf of the Debtors during the course of these bankruptcy cases.  Although bills will be sent to

the Debtors and the Guarantor, the Guarantor shall be responsible for prompt payment of such

bills.  The Guarantor agreed: (1) to promptly pay C&M's fees and expenses upon his and the

Debtors' receipt of C&M's monthly invoices; and (2) to replenish the Retainer as set forth in the

Retention Agreement.

4.    C&M intends to apply for compensation for professional services rendered in

connection with these Chapter 11 cases subject to approval of this Court and in compliance with

applicable provisions of the Bankruptcy Code, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm. Currently, C&M charges between $250.00 and $735.00 per hour for the attorneys that it anticipates will be primarily responsible for working on these matters and between $145.00 and $235.00 per hour for its legal assistants. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and Orders of the Court, propose to pay C&M its customary hourly rates in effect from time to time and to reimburse C&M according to its customary reimbursement policies, and submits that such rates and policies are reasonable.

5.    In light of the fact that the Debtors have limited liquid assets, the requirement for a third-party guarantee is reasonable and in accordance with normal business terms in the marketplace for the nature of commercial litigation for which C&M is to be retained.

## NOTICE

Notice of this Application has been given to: (a) the United States Trustee for the District of Utah; (b) the Debtors' secured creditors; and (c) the twenty largest unsecured creditors of the Debtors in each of the Debtor's cases. The Debtors submit that, given the nature of the relief requested herein, no other or further notice need be given.

## NO PRIOR REQUEST

No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request entry of an Order authorizing the Debtors to employ C&M effective as of the Petition Date, as their counsel in these cases, and granting such other and further relief as this Court deems just and proper.

11

DATED this __ day of September, 2009.

                EASY STREET PARTNERS, LLC
                By: Easy Street Mezzanine LLC
                   Its Sole Member
                  By:   Easy Street Holdings, LLC
                    Its Sole Member
                  By:   Its Managers

By: _____
     Name: William Shoaf
     Tile:   Manager

  By: _____
     Name: Philo Smith, Jr.
     Title:   Manager

EASY STREET MEZZANINE, LLC
                By: East Street Holding, LLC
                  Its Sole Member
                By: Its Managers

By: _____
     Name: William Shoaf
     Tile:   Manager

  By: _____
     Name: Philo Smith, Jr.
     Title:   Manager

EASY STREET HOLDING, LLC
                By: Its Managers

By: _____
     Name: William Shoaf
     Tile:   Manager

  By: _____
     Name: Philo Smith, Jr.
     Title:   Manager

DATED this 29th day of September, 2009.

EASY STREET PARTNERS, LLC
    By: Easy Street Mezzanine LLC
       Its Sole Member
    By:   Easy Street Holdings, LLC
       Its Sole Member
    By:   Its Managers

By:_____
   Name: William Shoaf
   Tile:   Manager

By: *Philo M. Smith, Jr.*
   Name: Philo Smith, Jr.
   Title:   Manager

EASY STREET MEZZANINE, LLC
    By: East Street Holding, LLC
    Its Sole Member
    By: Its Managers

By:_____
   Name: William Shoaf
   Tile:   Manager

By: *Philo M. Smith, Jr.*
   Name: Philo Smith, Jr.
   Title:   Manager

EASY STREET HOLDING, LLC
    By: Its Managers

By:_____
   Name: William Shoaf
   Tile:   Manager

By: *Philo M. Smith, Jr.*
   Name: Philo Smith, Jr.
   Title:   Manager

12

Agreed:      CROWELL & MORING LLP

By:_____
      Michael V. Blumenthal

Proposed Counsel for Easy Street
Partners LLC, Easy Street Mezzanine, LLC, and
Easy Street Holding, LLC
    Debtors in Possession

# EXHIBIT 1

Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
Steven B. Eichel (seichel@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:  201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | [FILED ELECTRONICALLY] |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | |

## DECLARATION OF MICHAEL V. BLUMENTHAL IN SUPPORT
## OF DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO
## §§ 327(a) AND 329(a) OF THE BANKRUPTCY CODE, AND
## RULES 2014(a) AND 2016(b) AUTHORIZING THE RETENTION
## AND EMPLOYMENT OF CROWELL & MORING LLP AS COUNSEL
## FOR THE DEBTORS AS OF THE PETITION DATE

I, Michael V. Blumenthal, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I am a partner in the firm of Crowell & Moring LLP ("C&M" or the "Firm"), with offices located at 590 Madison Avenue, New York, New York 10022, and am duly admitted to practice law in the States of New York and Florida.

2.      This declaration is submitted in support of the application (the "Application") of Easy Street Partners, LLC, Easy Street Mezzanine, LLC, and Easy Street Holding, LLC (collectively, the "Debtors") to retain C&M as counsel, effective as of the Petition Date (defined below), pursuant to §§ 327(a) and 329(a) of the Bankruptcy Code, which is being submitted concurrently herewith.  Unless otherwise stated in this declaration (the "Declaration"), I have personal knowledge of the facts set forth herein.  To the extent any information disclosed herein requires amendment or modification upon C&M's completion of and further review, or as additional party-in interest information becomes available to the Firm, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

3.      C&M has been representing the Debtors with respect to bankruptcy and restructuring matters since approximately August 24, 2009.  As of September 14, 2009, the date that the Debtors filed their Chapter 11 petitions (the "Petition Date"), C&M was owed no moneys by the Debtors, and is therefore not a creditor in these Chapter 11 cases.

4.      Moreover, as set forth in more detail below, neither I, the firm, nor any partner, or counsel or associate hereof, insofar as I have been able to ascertain, has any connection with the

2

Debtors, their creditors or any other parties in interest in or its respective attorneys, except as set forth below.

5. In preparing this Declaration, I used a set of procedures developed by C&M to ensure compliance with the requirements of the Bankruptcy Code and Bankruptcy Rules regarding the retention of professionals by a debtor (the "Firm Disclosure Procedures"). Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain the Firm's connection to such parties:

 a. Those individuals and entities disclosed in the Debtors' Creditor Matrix were entered into C&M's computer-based conflicts system to ascertain the connections between C&M and any of those persons and entities.

 b. If further inquiry was required the partner in charge of any matters relating to a creditor of Debtors was contacted to verify no adverse relationship with Debtors or their affiliates existed.

6. In reviewing the reports which were generated from the Firm's Disclosure Procedures, the names of the individual sand entities contained in the Creditors' Matrix were reviewed by me and the Firm's conflicts group. As a result of such review, it was determined that, in respect to each connection between C&M and such parties, C&M does not hold or represent an interest that is adverse to the Debtors or the Debtors' estates with respect to matters on which C&M is to be employed.

7.     C&M, which employs approximately 500 attorneys, has a large diversified international legal practice that encompasses the representation of many financial institutions and commercial corporations.  Consequently, C&M may have previously represented, currently represents, and may represent in the future, entities that are claimants or interest holders of the Debtors in matters unrelated to Debtors' pending Chapter 11 cases.

8.     However, based upon the procedures employed by C&M, the Firm can represent that it does not and has not represented any creditors, equity holders or parties in interest in connection with the Debtors and their business.

9.     C&M does, however, represent Siemens Building Technologies in connection with certain government contract matters which are totally unrelated to the Debtors and these Chapter 11 cases.  Moreover, Siemens is an unsecured creditor of Partners owed only $673, and C&M will not represent Siemens in connection with these cases.

10.     Moreover, to the best of my knowledge, none of the members, counsels, or associates of C&M are related to the United States Trustee for this District, any key person employed by the Office of such United States Trustee, any United States District Court Judge for this District or any United States Bankruptcy Court Judge for this District.  C&M will continue to review its records with respect to such persons and shall promptly notify the Court by a supplemental affidavit if any such connection is discovered.  If any conflict should arise in the future, although none is anticipated, proposed Utah counsel, Durham Jones & Pinegar, P.C. will act as conflicts counsel on such matters.

11.     C&M is a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code (the "Bankruptcy Code") in that C&M, its partners, of counsel, and associates:

    a.     are not creditors, equity security holders or insiders of the Debtors;

    b.     are not and were not, within 2 years prior to the Petition Date, a director, officer or employee of the Debtors; and

    c.     do not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, the Debtors or for any other reason.

12.     In addition to the forgoing, the Debtors have and will retain various professionals during the pendency of these cases, including, Durham Jones & Pinegar, P.C. as co-counsel. Moreover, the Debtors may retain other professionals after the Petition Date. C&M works with many professionals and may have previously worked with the professionals the Debtors have retained or may retain in connection with various representations, and will continue to do so, at times representing the same parties and at other times representing parties with similar interests or parties with adverse interests.

13.     C&M was initially retained pursuant to a retainer agreement dated August 26, 2009, (the "Retention Agreement) by the Debtors to evaluate the restructuring alternatives available to the Debtors' debts and a potential chapter 11 filing. On August 24, 2009, C&M received $50,000 from Philo Smith, one of the managers of Holding. Subsequently, C&M entered into an amended retention agreement (the "Amended Retention Agreement"), pursuant to

which Philo Smith wired $25,000 to C&M on September 10, 2009, and $50,000 to C&M on

September 11, 2009.

14.     As of the Petition Date, C&M utilized approximately $110,000 in connection with

counseling and the preparation of the Debtors' bankruptcy filing.  The remaining $25,000 is held

as a retainer (the "Retainer") for C&M's representation of the Debtors' in their reorganization

cases.

15.     In connection with the Amended Retention Agreement, Philo Smith (the

"Guarantor") agreed to guarantee payment of C&M's invoices for services rendered to and cost

incurred on the behalf of the Debtors during the course of these bankruptcy cases.  Although bills

will be sent to the Debtors and the Guarantor, the Guarantor shall be responsible for prompt

payment of such bills.  The Guarantor agreed: (1) to promptly pay C&M's fees and expenses

upon his and the Debtors' receipt of C&M's monthly invoices; and (2)  to replenish the Retainer

as set forth in the Amended Retention Agreement.

16.     C&M intends to apply for compensation for professional services rendered in

connection with these Chapter 11 cases subject to approval of this Court and in compliance with

applicable provisions of the Bankruptcy Code, on an hourly basis, plus reimbursement of actual,

necessary expenses and other charges incurred by the Firm.  Currently, C&M charges between

$250.00 and $735.00 per hour for the attorneys that it anticipates will be primarily responsible

for working on these matters and between $145.00 and $235.00 per hour for its legal assistants.

The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

Rules, and Orders of the Court, propose to pay C&M its customary hourly rates in effect from

6

time to time and to reimburse C&M according to its customary reimbursement policies, and submits that such rates and policies are reasonable.

17.     In light of the fact that the Debtors have limited liquid assets, the requirement for a third-party guarantee is reasonable and in accordance with normal business terms in the marketplace for the nature of commercial litigation for which C&M is to be retained.

18.     Other than as set forth above, no arrangement is proposed between the Debtors and C&M for compensation to be paid in these cases.

19.     C&M has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under § 504 (b) (1) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 23rd day of September, 2009.

_____
Michael V. Blumenthal

# EXHIBIT 2

Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
Steven J. McCardell (smccardell@djplaw.com)(2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
Steven B. Eichel (seichel@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:  201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | [FILED ELECTRONICALLY] |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | |

## STATEMENT AND DISCLOSURE OF COMPENSATION OF CROWELL & MORING LLP, COUNSEL FOR THE DEBTORS

Pursuant to § 329 of the Bankruptcy Code and Bankruptcy Rule 2016(b), Crowell &

Moring LLP ("C&M"), respectfully represents:

1.      On August 24, 2009, C&M received $50,000 from Philo Smith, Jr., a co-manager Easy Street Holding, LLC, and the representative of the Philo Smith, Jr. Trust, a 10% member of Holding, one of the Debtors.  Subsequently C&M received two additional payments from Mr. Smith for $25,000 and $50,000, on September 10, 2009 and September 11, 2009, respectively.

2.      C&M's compensation for services rendered on behalf of the above-captioned debtors (the "Debtors") and costs incurred on their behalf will be paid by the Debtors as authorized by this Court.  Mr. Smith, however, has agreed to guarantee payment for these services and costs.  C&M will continue to disclose all payments consistent with the requirements of § 329 of the Bankruptcy Code and Bankruptcy Rule 2016 (b).

3.      C&M has not agreed to share the above-disclosed compensation with any other person unless they are members, counsel, and associates of C&M.

Dated: September 14, 2009
       New York, New York

                              Respectfully submitted,

                              CROWELL & MORING LLP
                              Proposed Counsel for the Debtors
                              590 Madison Avenue, 20th Floor
                              New York, New York 10022
                              (212) 223-400

                              By: /s/ Michael V. Blumenthal
                                  Michael V. Blumenthal

# EXHIBIT 3

SEP-12-2009 12:07P FROM:SMITH                19494941870              TO:14356156751              P.1

# crowell moring

Michael V. Blumenthal
(212) 895-4241
MBlumenthal@crowell.com

590 Madison Avenue, New York, NY 10022-2524  •  p212.223.4000  •  f212.223.4134

September 11, 2009

Mr. William Shoaf
Easy Street Holding, LLC
Easy Street Mezzanine LLC
Easy Street Partners, LLC
c/o CloudNine Resorts, LLC
4870 Winchester Ct.
Park City, Utah 84098

Re:  Amended Retention of Crowell & Moring LLP

Dear Bill:

This letter will memorialize our amended agreement concerning representation by Crowell & Moring LLP ("Crowell & Moring") in connection with the restructuring of the debt of Easy Street Partners, LLC, Easy Street Mezzanine LLC and Easy Street Holding LLC ("Clients" or "Entities") and the Chapter 11 filings of the Entities. Crowell & Moring's current assignment for the Clients is limited to the matter described above.

I will be responsible for this matter. Other Crowell & Moring lawyers, law clerks, or legal assistants may also work on this matter from time to time under my supervision as the need arises.

Crowell & Moring will charge the Clients an hourly fee for the time that our lawyers, law clerks, or legal assistants spend on this matter. The current rates for the individuals likely to work on this assignment range from a high of $735.00 an hour for my time, to $250.00 an hour for a new associate's time. Our rates generally are reviewed for adjustment annually by the firm's Management Board. We also bill for expenses and other services, including postage, long distance telephone, administrative overtime, photocopies, word processing, travel, messenger services, and meals. The latter will be billed in a separate category to provide you information necessary for your federal tax returns. Crowell & Moring renders statements monthly for services performed during the preceding month. These statements are due on receipt.

As we discussed, the firm's policy is to require payment of a retainer before undertaking substantial projects for new clients. In this case, our Finance Committee had approved an initial retainer ("Initial Retainer") of $50,000.00 which has been utilized, and requires an additional $75,000 ("Additional Retainer"), which will be applied to our fees and expenses as they are incurred. The Initial Retainer and the Additional Retainer (collectively, the "Retainer") are being paid by Philo Smith (the "Guarantor"). After the Retainer is utilized, in whole or in part, we will require that the full Additional Retainer be replenished by the Guarantor simultaneously with each monthly bill which shall be promptly paid by Guarantor. For example, if an invoice is $100,000, the Firm will apply the $75,000 Additional Retainer, leaving a $25,000 balance;

Mr. William Shoaf
September 11, 2009
Page 2

however, Guarantor shall pay the Firm $75,000, comprised of the $25,000 balance of the
invoice, plus $50,000 as replenishment of the Additional Retainer. Any unused portion of the
Additional Retainer will be returned to Guarantor at the conclusion of our representation of the
Entities.

Upon the Entities filing for bankruptcy protection under Chapter 11 of the Bankruptcy
Code, the unused portion, if any, of any retainers will be applied to any pre-petition invoices and
unbilled fees, charges and disbursements, on or before the filing of any petition. In connection
with any such filing, a court order authorizing our retention will be obtained. Although bills will
be sent to the Entities and the Guarantor, the Guarantor shall be responsible for prompt payment
of such bills. By signing below, the Guarantor hereby (1) agrees to promptly pay our fees and
expenses upon his and the Entities' receipt of our monthly invoices; (2) agrees to replenish the
Additional Retainer as set forth above; and (3) acknowledges that the Firm's duties and
obligations as attorneys, and as agreed upon by this letter, are for the benefit of the Entities who
are the Clients of the firm, and do not inure to the Guarantor. Subject to our ethical and
professional obligations, you agree that the Firm may terminate its legal services and withdraw
from this engagement in the event our billing statements are not paid by the Guarantor or the
Entities in a timely manner or a subsequently requested retainer is not timely provided by the
Guarantor.

It is understood that we have not made any commitment to the Entities or Guarantor
concerning the maximum fees and costs that will be necessary to complete the representation or
any matter covered thereby, and that any estimates that we may furnish are by their nature
uncertain and are not intended to be binding. Of course, we cannot and d not guarantee any
outcome in this matter. It is also understood that payment of our fees and expenses in no way
contingent on the ultimate outcome of any matter.

Subject to our ethical and professional obligations, each of the Clients agree that the Firm
may terminate its legal services and withdraw from this engagement in the event our invoices are
not paid by the Guarantor in a timely manner or the Additional Retainer is not timely provided
by the Guarantor.

Since Crowell & Moring represents a large number of diverse clients, which may include
clients involved in activities affecting the Clients, we have agreed that the representation of the
Clients by Crowell & Moring in the present and any future matters will not be grounds for
asserting a conflict of interest in any work that the firm may do for other clients that is unrelated
to Crowell & Moring's current or future representation of the Clients. Specifically, we have
agreed that Crowell & Moring may represent other clients in matters that do not involve any
confidential information that has been obtained by Crowell & Moring in the course of any
representation of the Clients, even though our representation of the other client or clients may be
adversarial to the Clients in business transactions, litigation, or judicial or administrative
proceedings. We further understand that the Clients waive any conflict of interest in any such
case, and will not assert any conflict of interest as a ground for disqualifying Crowell & Moring
from representing other clients in any such case.

We are continuing to do conflict searches and may discover that we do represent creditors
of the Entities; however, such representation(s) would be unrelated to our representation of you.

Mr. William Shoaf
September 11, 2009
Page 3

If we discover any such creditor, we would be required to obtain a waiver to act adversely to that creditor in this matter. We will disclose this adverse relationship to you when and if we have identified it, and to the Bankruptcy Court if and when you file. If a true conflict arises, a special/conflicts counsel will be retained to interact with such creditor.

This letter will also confirm your understanding and consent to the fact that although information communicated by you to any Crowell & Moring attorney will be held in strict confidence as to third parties, and will not be disclosed to any third parties without your consent, such information may be disclosed to any one of the Entities in this matter in the course of the joint representation. In the event we withdraw as counsel to any of the Entities, you consent that we may use any information you provide on the other parties' behalf.

In the event that a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the New York Chief Administrator of the Courts, a copy of which will be provided to you upon request.

Finally, unless we receive different instructions from you, we will retain files from this matter for five years after its completion. At that time, documents other than those with intrinsic value (such as a deed or contract) will be offered to you and, if not accepted, will be destroyed.

If these terms and conditions are acceptable, please sign the enclosed copy of this letter in the space below and return it to me along with the retainer payment referred to above.

Sincerely yours,

CROWELL & MORING LLP

By: _____
Michael V. Blumenthal, Partner

AGREED AND ACCEPTED:

EASY STREET HOLDING, LLC
By Its Managers

By: _____
William Shoaf, Manager

_____
Philo Smith, Jr., Manager

Mr. William Shoaf
September 11, 2009
Page 3

If we discover any such creditor, we would be required to obtain a waiver to act adversely to that creditor in this matter. We will disclose this adverse relationship to you when and if we have identified it, and to the Bankruptcy Court if and when you file. If a true conflict arises, a special/conflicts counsel will be retained to interact with such creditor.

This letter will also confirm your understanding and consent to the fact that although information communicated by you to any Crowell & Moring attorney will be held in strict confidence as to third parties, and will not be disclosed to any third parties without your consent, such information may be disclosed to any one of the Entities in this matter in the course of the joint representation. In the event we withdraw as counsel to any of the Entities, you consent that we may use any information you provide on the other parties' behalf.

In the event that a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the New York Chief Administrator of the Courts, a copy of which will be provided to you upon request.

Finally, unless we receive different instructions from you, we will retain files from this matter for five years after its completion. At that time, documents other than those with intrinsic value (such as a deed or contract) will be offered to you and, if not accepted, will be destroyed.

If these terms and conditions are acceptable, please sign the enclosed copy of this letter in the space below and return it to me along with the retainer payment referred to above.

Sincerely yours,

CROWELL & MORING LLP

By: _____
Michael V. Blumenthal, Partner

AGREED AND ACCEPTED:

EASY STREET HOLDING, LLC
By Its Managers

By: _____
William Shoaf, Manager

_____
Philo Smith, Jr., Manager

Crowell & Moring LLP ■ www.crowell.com ■ Washington, DC ■ New York ■ Los Angeles ■ Orange County ■ London ■ Brussels

Mr. William Shoaf
September 11, 2009
Page 4

EASY STREET MEZZANINE LLC
   By:   Easy Street Holdings, LLC
       Its Sole Member

By Its Managers

By: _____
   William Shoaf, Manager

_____
Philo Smith, Jr., Manager

EASY STREET PARTNERS, LLC
   By:   Easy Street Mezzanine LLC
       Its Sole Member
   By:   Easy Street Holdings, LLC
       Its Sole Member
   By:   Its Managers

By: _____
   William Shoaf, Manager

By: _____
   Philo Smith, Jr., Manager

AS GUARANTOR:

By: _____
   Philo Smith, Jr., individually