Jeffrey W. Shields (USB #2948)
Lon A. Jenkins (USB #4060)
Troy J. Aramburu (USB #10444)
**JONES WALDO HOLBROOK & McDONOUGH, PC**
170 South Main Street, Suite 1500
Salt Lake City, Utah  84101
Telephone:  (801) 521-3200

*Proposed Counsel to Committee of Unsecured Creditors*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| In re: | : | Bankruptcy No.09-29905 |
| **EASY STREET HOLDING, LLC et al.,**[1] | : | (Jointly Administered with Cases 09-29907 and09-29908) |
| Debtors. | : | Chapter 11 |
| | : | Honorable R. Kimball Mosier |

### SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PROPOSED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

The Official Committee of Unsecured Creditors (the "Committee") for the above-captioned debtors and debtors in possession (the "Debtors"), by its proposed counsel,[2] Jones Waldo Holbrook & McDonough, PC, files this Supplement to its "*Limited Objection of the Official Committee of Unsecured Creditors to Proposed Final Order Authorizing Use of Cash Collateral*" ("Initial Objection") filed on October 7, 2009 at 12:00 p.m. (Dkt. No. 76), to entry of

---

[1] The Debtor entities are Easy Street Holding, LLC, Easy Street Partners, LLC, and Easy Street Mezzanine, LLC.
[2] Jones Waldo Holbrook & McDonough, P.C. has been selected by the Committee as its counsel; however, such retention has not yet been approved by this Court.

1

a final order (the "Proposed Final Cash Order") authorizing use of cash collateral. Although the deadline to file objections to the request for final authorization to use cash collateral was October 7, 2009 at 12:00 noon M.D.T., the Committee requests leave to file this Supplement to the timely filed Initial Objection in view of the fact that counsel was selected by the Committee late in the day of October 6, 2009 - - just one day before the response deadline - - without knowledge of the October 7, 2009 noon deadline. Use of cash collateral is an issue of vital importance to the Committee and full briefing is in the interests of the estate as a whole. In support of the Objection, the Committee respectfully states:

## INTRODUCTION

1. The Committee has not yet seen a proposed form of final cash collateral order, but has reviewed the cash collateral motion, other first day pleadings, the interim cash collateral order, and learned from Debtors' counsel that there may be a stipulated Proposed Final Cash Order. Without having seen a Proposed Final Cash Order and without knowledge of its contents and provisions, it is incumbent on the Committee to endeavor to ensure that these chapter 11 cases are administered with full regard to the interests of unsecured creditors and to ensure that the interests of unsecured creditors, significant stakeholders in these cases, will not be unfairly prejudiced.

2. Based on the *Stipulated Interim Order on Motion of Easy Street Partners, LLC for Interim and Final Orders (I) Authorzing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to West LB, AG and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)* ("Interim Order") which is the only Order on currently on

file respecting the Debtors' use of cash collateral, the Committee is concerned that any Proposed Final Cash Order may provide no meaningful benefit to the unsecured creditors. Rather, it appears that the Proposed Final Cash Order may provide a vehicle for the lender merely to protect its present and future interests, without regard to the interests of the unsecured creditors. Based on the Interim Order, which continues the lender's security interests in pre- and post-petition collateral, any future distribution to unsecured creditors may be at substantial risk. Indeed, based on the Committee's understanding, but for the dispute between the Debtors' two lenders and WestLB AG's decision to freeze all funds in the Debtors' Real Estate Sale Accounts, there would have been ample funds to pay the general contractor, mechanics' lien holders, and unsecured creditors. Accordingly, the Committee respectfully submits that the interests of unsecured creditors and the Committee should be afforded great weight by this Court during these chapter 11 cases and that this Court should not enter a Proposed Final Cash Order that does not do so.

3. By granting the protections to the Lender that are likely to be contained in a Proposed Final Cash Order, the Committee is concerned that a Proposed Final Cash Order will provide no realistic opportunity for any meaningful recovery to unsecured creditors in these chapter 11 cases and that the Debtors may not be able to effectively reorganize in these cases. In fact, it is possible that the position of unsecured creditors will deteriorate during these chapter 11 cases, with the likely accrual of administrative expense claims. The Committee believes that any Proposed Final Cash Order approved over its objection may

allow the Lender to realize its goals and objectives in these chapter 11 cases in total disregard of the interests of unsecured creditors.

4. The Committee submits that the terms of the Proposed Cash Order must be fair to all constituencies in these chapter 11 cases, not just the Lender. Any provisions which evidence attempts by lender to overreach in view of the facts and circumstances of the Debtors should be struck down. The bankruptcy process was designed by Congress to preserve value for the benefit of all creditors and to fairly balance and treat the rights, claims and interests of all interested parties, including unsecured creditors. This Court should level the playing field for all of the constituencies, including the unsecured creditors.

5. The Committee is concerned, of course, with obtaining a meaningful recovery for unsecured creditors.[3] The Committee is also concerned about the administrative solvency or insolvency of these chapter 11 cases and the ability of the Debtors to confirm a plan of reorganization. The Committee wants to ensure that since any operations, at this time, appear to solely benefit the Lender, that all of these expenses and services provided to the Debtors in these cases are funded by the Lender.

6. The Committee has not had an opportunity to have any discussions with the Lender and/or Debtors in an attempt to have the Committee's views considered in the form of Proposed Final Cash Order. Counsel was only chosen late in the day on October 6, thereby necessitating the filing of this Supplement by the Committee.

---

[3] The Debtors have not yet filed schedules in these chapter 11 cases; as a result, the Committee is operating in the dark regarding the valuation of the Debtors' assets.

4

**PROCEDURAL BACKGROUND**

7. On September 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Code.

8. On September 16, 2009, the Debtors filed the *Motion for Interim Order for Use of Cash Collateral* (the "Cash Collateral Motion") seeking authorization to obtain use of cash collateral from West LB, AG ("WLB" or "Lender") (Dkt. No. 9). On September 17, 2009, this Court entered an *Stipulated Interim Order Authorizing the Debtors' Use of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code, and Giving Notice of Scheduled Final Hearing* (the "Interim Order") (Dkt. No. 43).

9. On October 2, 2009, the Office of the United States Trustee appointed the Committee in these chapter 11 cases pursuant to Section 1102(a) of the Bankruptcy Code. On October 6, 2009, the Committee selected Jones Waldo Holbrook & McDonough, P.C. as counsel to represent the Committee in all matters during the pendency of these chapter 11 cases.

**DISCUSSION**

**THE DEBTORS MUST ESTABLISH THAT THE PROPOSED FINAL CASH ORDER IS FAIR AND NECESSARY**

10. The Committee must be concerned with the terms of a Proposed Final Cash Order that provide Lender with the extraordinary protections and privileges.[4] As part of the October 13,

---

[4] The Committee understands that a draft final order is circulating between Lender and the Debtors but has not yet been privy to any such draft.

2009 hearing to consider entry of the Proposed Final Cash Order, the Debtors must establish for this Court that the proposed arrangement is the best possible under the circumstances and is in the best interests of the Debtors and their estates, not just in the best interests of the Lender. *See* In re Textron, 596 F.2d 1092, 1098 (2d Cir. 1979) ("The debtor is hardly neutral. Its interest is in its own survival, even at the expense of equal treatment of creditors, and close relations with a lending institution tend to prevent the exploration of other available courses in which a more objective receiver or trustee would engage.").

11.     In determining whether to approve the Proposed Final Cash Order, this Court should act in its informed discretion. In re Ames Department Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y 1990). This Court should consider the delicate balance of the hope of the Debtors to reorganize against the expectations of creditors for payment on their claims:

> [T]he courts have focused their attention on proposed terms that would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or leverages the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits. They recognize that debtors-in-possession generally enjoy little negotiating power with a lender ... At the same time, however, they permit debtors-in-possession to exercise a basic business judgment consistent with their fiduciary duties. (citations omitted)

*Id*. at 37-38. Accordingly, the expectations of the unsecured creditors to receive payment on account of their claims should be afforded great consideration by this Court.

12.     While it is certainly true that many chapter 11 debtors depend on the availability of use of a lender's cash collateral in order to continue their business operations, the Lender

should not be allowed to over-reach for the benefit of the Lender at the expense of unsecured creditors. See In re Tenney Village Co., 104 B.R 562, 568-69 (D.N.H. 1989); In re FCX, Inc., 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985).

13. The Debtors must establish for this Court at the October 13, 2009 hearing that the proposed cash use from the Lender is both beneficial to the estates, as a whole, and within the bounds of reason based upon the facts and circumstances. In re Aqua Assocs., 123 B.R 192, 195-96 (Bankr. ED. Pa. 1991); In re Crouse Group, Inc., 71 BR. 544, 549 (Bankr. E.D. Pa. 1987). Based on what the Committee has had available to it to date, the Committee does not see that Debtors and Lender have demonstrated that the proposed cash use from the Lender provides benefit to the unsecured creditors. There is no guaranteed return or dividend for unsecured creditors in these chapter 11 cases. The Lender appears to be not allowing any meaningful assets to remain for the benefit of unsecured creditors. In view of this, the burden in seeking approval of the proposed cash order rests squarely with the moving parties.

## SPECIFIC OBJECTIONS

**1. THE COMMITTEE SHOULD NOT BE BOUND BY ANY PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

14. Any findings and conclusions in a Proposed Final Cash Order may significantly impact the rights of the Committee, including, among other things, the "blessing" of liens and "bulletproofing" of claims, and findings that the Lender acted and/or extended credit in good faith and is eligible for the protections of Section 363(e) of the Bankruptcy Code. Entry of such a Proposed Final Cash Order would cause any proposed findings of fact and conclusions of

law to be binding on the Committee and arguably preclude the Committee from contesting the amount, validity, enforceability, perfection or priority of the pre-petition obligations owing to the Lender or otherwise asserting any claims or causes of action against the Lender on behalf of the Debtors' estates. The rights of the Committee to protect the interests of the estates and to investigate and challenge the validity, extent and/or priority of any of the liens, claims and encumbrances asserted by the Lender should be preserved for the benefit of the Committee, as a representative of the estates. The Committee objects to any such provisions of the proposed cash order and submits that any claims of the Lender should be subject to objections and avoidance actions on the same basis and to the same extent as all other claimants in these chapter 11 cases, without regard to timing.

**2.    THE INVESTIGATION AND CHALLENGE PERIOD SHOULD BE AT LEAST 90 DAYS FROM THE APPOINTMENT OF THE COMMITTEE.**

15.    The Committee believes that the Proposed Final Cash Order which will emerge from the Lender and the Debtor will set forth limitations on the Committee's ability to challenge the extent, validity and priority of the claims and liens of the Lender and to assert affirmative claims against the Lender on behalf of the estates. The Committee believes that such limitations, subject to the explanation below, contained in any proposed cash order would unduly restrict the Committee's ability to perform its statutory duty under the Bankruptcy Code.

16.    Any objection period afforded to the Committee of less than 90 days, under the circumstances of these cases, would be too brief. In addition to the typical lien perfection

review, the Committee will be required to investigate all other matters relating to the liens and claims against the Debtors' estates, and the events leading up to the bankruptcy filings to determine whether the parties acted appropriately. Requiring the Committee to conduct a broad investigation into the prepetition conduct of the Lender at this early stage of the chapter 11 cases may divert the attention of all parties from what should matter at this stage of the chapter 11 cases - maximizing value for the benefit of all creditors. Accordingly, the Committee believes that the investigation period should be at least 90 days from the date of appointment of the Committee – there would be no demonstrable prejudice to the Lender by affording the Committee such a reasonable period of time.

17.     Additionally, any proposed cash order must automatically grant the Committee standing to bring any claims against the Lender. Providing the Committee with automatic standing is appropriate - the Committee's investigation must have a purpose.

### 3.     THE LENDER SHOULD CONSENT TO A CARVE-OUT FOR THE COMMITTEE PROFESSIONALS

18.     Any Proposed Final Cash Order must include acceptable provisions for the carve-out and funding of fees and expenses of the professionals retained by the Committee. The proposed cash order cannot reasonably omit a carve-out or a carve-out that is only available on a limited basis.

19.     This Court should require the Lender to provide the Committee with a reasonable carve-out for the Committee's professional fees as one of the costs for use of the chapter 11 process. The Committee requests that the carve-out of now less than $25,000 per month,

9

accruing, be provided to cover the necessary and appropriate fees and expenses of Committee counsel and its financial advisors.[5]

## ADDITIONAL OBJECTIONS TO PROPOSED CASH ORDER

20. The Proposed Final Cash Order should require that the Debtors provide the Committee, simultaneously with the transmittal to the Lender, with copies of any and all reports, budgets and financial data that the Debtors are required to provide to the Lender. Additionally, the Debtors should provide the Committee with the same rights of access to and inspection of Debtors' facilities, books and records as is being provided to the Lender.

21. Any provision of a Proposed Final Cash Order which states that the filing of an action asserting a claim against the Lender is a default under the proposed cash order entitling the Lender to cease providing cash collateral use to the Debtors should be stricken. Investigation of the claims against the Lender is a fundamental purpose of a statutory committee. Permitting the Committee time to investigate the claims, while at the same time providing that the filing of a claim is a default, could effectively render the Committee's investigation rights illusory.

22. The Committee also would object to any Proposed Final Cash Order which would attempt to short-circuit the Bankruptcy Code, by preventing parties in interest from seeking any order in these chapter 11 cases or any subsequent chapter 7 cases which authorizes the granting of any lien or incurring of indebtedness senior to or equal to the Lender. If the

---

[5] Case law supports providing Committee professionals with a reasonable carve-out to fulfill its fiduciary duties. See In re Ames Department Stores, Inc., 115 K.R. 34 (Bankr. S.D.N.Y. 1990) (debtor sought approval of $250 million in debtor in possession financing which originally contained provisions which, in the court's view, inappropriately skewed the process in favor of the debtor in possession lender to the detriment of unsecured creditors; one of these provisions was the refusal to grant the committee a carve-out for its professionals.

Lender terminates providing funds to the Debtors, the Debtors or the Committee must have the ability to take steps to preserve what value remains for the benefit of the estates.

## CONCLUSION

While the Committee has not seen what ultimately will be the Proposed Final Cash Order, it has articulated herein certain concerns it believes would make any proposed order objectionable. It is of utmost importance to the Committee that the Debtors have sufficient financing going forward through these chapter 11 cases to allow for a successful reorganization that is fair and equitable to the unsecured creditors. At this early stage of the cases, the Committee's and unsecured creditors' fates should not be sealed by an imprudent and ill-conceived cash collateral arrangement negotiated under exigent circumstances. Of course, the Committee reserves its rights to interpose any further objections it may have to the Proposed Final Cash Order once the Committee and its advisors have had an opportunity to review and analyze such proposed order.

**WHEREFORE**, the Committee respectfully requests that this Court deny Debtors' motion for a final cash collateral order (i) consistent with the foregoing and, (ii) until such time as the Committee has had an opportunity to review and analyze any Proposed Final Cash Order, interpose additional objections, if any, and have those objections heard by the Court.

October 8, 2009                                         Respectfully submitted,

**JONES WALDO HOLBROOK &
McDONOUGH, P.C.**

/s/ Jeffrey W. Shields

*Proposed Counsel For Official Committee
Of Unsecured Creditors*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Supplemental Objection was served upon the attached distribution list, via ECF Noticing, E-mail or regular U.S. mail, on this 8th day of October, 2009:

- Kenneth L. Cannon
  kcannon@djplaw.com

- Scott A. Cummings
  cummings.scott@dorsey.com

- Annette W. Jarvis
  jarvis.annette@dorsey.com

- Michael R. Johnson
  mjohnson@rqn.com

- Anthony C. Kaye
  kaye@ballardspahr.com

- Benjamin J. Kotter
  kotter.benjamin@dorsey.com

- Adelaide Maudsley
  maudsley@chapman.com

- Steven J. McCardell
  smccardell@djplaw.com

- John T. Morgan tr
  john.t.morgan@usdoj.gov

- Jeffrey L. Shields
  jlshields@cnmlaw.com

905646.2

- United States Trustee
  USTPRegion19.SK.ECF@usdoj.gov

Michael V. Blumenthal
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

Steven B. Eichel
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

Brian W. Harvey
Goodwin Procter LLP
The New York Time Building
620 Eighth Avenue
New, NY 10018-1405

Bruce J. Zabarauskas
Crowell & Moring LLp
590 Madison Avenue, 20th Floor
New York, NY 10022

/s/ Jeffrey W. Shields

905646.2