1 | Richard W. Havel (Cal Bar No. 52922)
    Christina M. Craige (Cal Bar No. 251103)
2 | Drew A. Norman (Cal Bar No. 249709)
    SIDLEY AUSTIN LLP
3 | 555 West Fifth Street, Suite 4000
    Los Angeles, California  90013-1010
4 | Telephone:  (213) 896-6000
    Facsimile:  (213) 896-6600
5 | Email:  rhavel@sidley.com
            ccraige@sidley.com
6 |         danorman@sidley.com

7 | Annette Jarvis (1649)
    DORSEY & WHITNEY LLP
8 | 136 South Main Street, Suite 1000
    Salt Lake City, Utah  84101-1685
9 | Telephone:  (801) 933-8933
    Facsimile:  (801) 933-7373
10| Email: jarvis.annette@dorsey.com

11| Attorneys for WestLB AG

12|

13|                    **UNITED STATES BANKRUPTCY COURT**
                   **FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**
14|

| | |
|---|---|
| 15 In re ) | |
| ) | |
| 16 EASY STREET HOLDING, LLC, *et al.*, ) | Bankruptcy Case No.  09-29905 |
| ) | Jointly Administered with Cases |
| ) | 09-29907 and 09-29908 |
| 17 Debtors. ) | |
| ) | Chapter 11 |
| 18 ) | |
| ) | |
| 19 Address:   201 Heber Avenue ) | Honorable R. Kimball Mosier |
|     Park City, UT 84060 ) | |
| 20 ) | |
| ) | |
| 21 Tax ID Numbers: ) | DATE:   October 13, 2009 |
|     35-2183713 (Easy Street Holding, LLC) ) | TIME:    11:00 AM |
| 22  20-4502979 (Easy Street Partners, LLC), and ) | PLACE:  Courtroom 369 |
|     84-1685764 (Easy Street Mezzanine, LLC) ) | 350 South Main Street, #301 |
| 23 ) | Salt Lake City, Utah 84101 |
| 24 ) | |
| 25 ) | |

26|

27|

28|

LA1 1648198v.1

**DECLARATION OF JAMES WINIKOR IN SUPPORT OF STIPULATION AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND GRANTING ADEQUATE PROTECTION TO WESTLB, AG**

I, James Winikor, declare and state as follows:

1. I am a Associate Director of WestLB, AG, a German Bank acting through its New York branch ("WestLB"), and I make this Declaration in support of the Stipulation Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG (the "Stipulation") filed contemporaneously herewith by Easy Street Partners, LLC, a Utah limited liability company (the "Borrower" or the "Debtor"). I am a competent witness to give testimony to the facts set forth herein.

2. As a Associate Director of WestLB, I am a custodian of the books and records of WestLB pertaining to that certain loan (the "Loan") made by WestLB and such other co-lenders as may exist from time to time (collectively, the "Lenders") to Debtor and can confirm that the records and other documents in the files of WestLB constitute writings made in the regular and ordinary course of business of WestLB at or near the time of the events or acts of which they are a record. WestLB serves as the Administrative Agent for the Lenders with respect to the Loan, and all actions taken by WestLB and referenced below were taken pursuant to its role as Administrative Agent for the Lenders. I make this Declaration based on my personal knowledge and the information contained in the records of WestLB, to which I have access and which this Declaration accurately reflects. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Loan Agreement (defined below).

3. On or about March 30, 2006, Borrower and WestLB entered into that certain Loan and Security Agreement (the "Loan Agreement"), pursuant to which Borrower obtained the Loan, in the maximum original principal amount of up to $36,779,224.00. Pursuant to the Loan Agreement, Borrower used the proceeds of the Loan to (i) fund closing and other costs with respect to the purchase of certain real property (the "Land"), improvements, and related personal property in Park City, Summit County, Utah, commonly known as the Sky Lodge Private Residence Club and Hotel (collectively, the "Property"), as well as to (ii) fund, through a series of subsequent advances,

2

LA1 1648198v.1

costs of renovation of existing improvements and development and construction of additional improvements on the Property (the "Project"). A true and correct copy of the Loan Agreement is attached hereto as Exhibit A.

4. To evidence the making of the Loan, and as part of the same transaction, Borrower executed and delivered to WestLB that certain Promissory Note, dated as of March 30, 2006, in the aggregate original principal amount of up to $36,779,224.00 (the "Note"), a true and correct copy of which is attached hereto as Exhibit B.

5. To secure payment of the Loan, interest thereon, and all other charges as provided for in the Loan Agreement, and as part of the same transaction, the following documents, among other things, were delivered to WestLB:

    a. that certain Construction and Interim Loan Deed of Trust with Security Agreement, Assignment of Leases and Rents and Fixture Filing encumbering the Property, dated as of March 31, 2006, executed and delivered by Borrower to Equity Title Insurance Agency, Inc., as trustee, for the benefit of WestLB (the "Deed of Trust"), a true and correct copy of which is attached hereto as Exhibit C, which was recorded on March 31, 2006 in the Official Records of Summit County, Utah (the "Official Records") as Instrument No. 00773401, Book 01781, Pages 00569-00609;

    b. a UCC-1 Financing Statement (the "Fixture Filing"), naming Borrower as Debtor and WestLB as Secured Party, a true and correct copy of which is attached hereto as Exhibit D, which was recorded on March 31, 2006 in the Official Records as Instrument No. 00773437, Book 01781, Pages 00807-00818;

    c. a UCC-1 Financing Statement (the "Financing Statement"), naming Borrower as Debtor and WestLB as Secured Party, a true and correct copy of which is attached hereto as Exhibit E, which was filed with the Utah Department of Commerce on April 21, 2006 at Number 293205200636; and

    d. that certain Pledge and Security Agreement, dated as of March 30, 2006 (the "Pledge Agreement (Contracts)"), executed by Borrower in favor of WestLB, a true and correct copy of which is attached hereto as Exhibit F, pursuant to which Borrower granted to

LA1 1648198v.1

WestLB a first priority security interest in all of Borrower's present and future right, title and interest in to and under all agreements, contracts, permits, certificates, instruments, and other documents pertaining to the Loan or the Property, including without limitation a management agreement and a development agreement (with affiliated entities who separately executed and delivered consents and subordination in relation to such agreements), Project construction documents, and specified fractional ownership agreements.

6. The Loan Agreement, the Note, the Deed of Trust, the Pledge Agreement (Contracts), the Fixture Filing and all other documents that govern, evidence, secure, guaranty and/or perfect the Loan are referred to herein collectively as the "Loan Documents".

7. As evidenced by the Loan Documents, WestLB holds a perfected and unavoidable security interest in the Property, including all rents, revenues, income, issues and profits therefrom.

8. Concurrently with the closing of the Loan, BayNorth Realty Fund VI, Limited Partnership ("BayNorth") made a mezzanine loan to Easy Street Mezzanine LLC ("Mezzanine Borrower"), the sole member of the Borrower and a debtor in these affiliated cases, in the original principal amount of $11,250,000 (the "Mezzanine Loan"). The Mezzanine Loan was secured, in part, by a pledge from Easy Street Holding, LLC ("Holding"), the sole member of Mezzanine Borrower and a debtor in these affiliated cases, of the equity in Mezzanine Borrower. Mezzanine Borrower, acting through Borrower, used the proceeds of the Mezzanine Loan to (i) acquire the Land (ii) pay certain architectural and engineering fees incurred in association with the Project, and (iii) pay for closing costs and certain other costs and expenses of the Mezzanine Loan.

9. In connection with the Mezzanine Loan, WestLB and BayNorth entered into that certain Intercreditor Agreement, dated as of March 30, 2006 (the "Intercreditor Agreement"), a true and correct copy of which is attached hereto as Exhibit G.

10. Borrower has made no payments on the Loan since December 2008. Borrower's failure to make the interest payment due on January 2, 2009 pursuant to Section 2.3(a) of the Loan Agreement matured into an Event of Default under Section 9.1(a)(i) of the Loan Agreement on January 9, 2009. The Loan matured on March 30, 2009, and has not been repaid.

LA1 1648198v.1

11. By letter dated April 10, 2009, a true and correct copy of which is attached hereto as <u>Exhibit H</u>, WestLB notified BayNorth of the above described monetary defaults, including the immediate Event of Default arising from the Borrower's failure to repay the loan at maturity pursuant to Section 9.1(a)(ii) of the Loan Agreement. Such letter constituted a Senior Loan Default Notice under Section 11(a) of the Intercreditor Agreement. Pursuant such Section 11(a), BayNorth had the option to cure the monetary defaults until fourteen (14) days after delivery of such notice. BayNorth did not timely exercise this option and has not subsequently cured the monetary defaults.

12. As of April 13, 2009, Borrower and WestLB entered into that certain Forbearance Agreement, a true and correct copy of which is attached hereto as <u>Exhibit I</u>, pursuant to which WestLB agreed to forbear, subject to certain conditions and for a limited period of time (the "Forbearance Period"), from exercise of rights and remedies arising from the acknowledged then-existing Events of Default. Under Section 2(b) of said Forbearance Agreement, the Forbearance Period expired on May 29, 2009. As of May 29, 2009, Borrower and WestLB entered into that certain First Amendment to Forbearance Agreement, a true and correct copy of which is attached hereto as <u>Exhibit J</u>, under which the Forbearance Period was extended until 5:00 PM on June 29, 2009. No further extensions were granted.

13. By letter dated May 5, 2009, a true and correct copy of which is attached hereto as <u>Exhibit K</u>, BayNorth notified Mezzanine Borrower of the existence of certain Events of Default under documents governing the Mezzanine Loan, including a default arising from the Borrower's failure to repay the Senior Loan at Maturity. BayNorth subsequently notified Holding of its intent to sell the equity in Mezzanine Borrower pursuant to Section 9-610 of the UCC at a public sale to be held on September 16, 2009.

14. By letter dated July 2, 2009, a true and correct copy of which is attached hereto as <u>Exhibit L</u>, WestLB notified Borrower that the Forbearance Period had expired and formally declared the existence of Events of Default under the Loan Documents.

15. On or about September 14, 2009, two days prior to BayNorth's scheduled UCC foreclosure sale, Debtor, Mezzanine Borrower, and Holding filed the above-captioned Chapter 11 cases.

5

LA1 1648198v.1

16. The debt owed by the Debtor to WestLB as of September 15, 2009 was no less than $15,168,125.69, consisting of $14,379,224.00 in principal, $788,901.69 in accrued [default and nondefault] interest, plus [default] interest that continues to accrue at the rate of $$3,794.52 per day, plus any additional fees and expenses due under the Loan Agreement.

1  I declare under penalty of perjury under the laws of the United States of America that the foregoing
2  is true and correct.
3        Executed on October 2, 2009, at New York, New York.

                                    /s/ James Winikor
                                    JAMES WINIKOR

LA1 1648198v.1

**EXHIBITS**

[To be assembled and attached hereto as follows]:

A. Loan Agreement (archived at LA1 1,633,064)

B. Note (archived at LA1 1,640,652)

C. Deed of Trust (archived at LA1 1,629,677)

D. Fixture Filing (archived at LA1 1,640,699)

E. Financing Statement (archived at LA1 1,641,632)

F. Pledge Agreement (Contracts) (archived at LA1 1,633,018)

G. Intercreditor Agreement (archived at LA1 1,633,021)

H. Letter Senior Loan Default Notice to Mezzanine Lender (archived at LA1 1,640,771)

I. Forbearance Agreement (archived at LA1 1,640,764)

J. First Amendment to Forbearance Agreement (archived at LA1 1,640,782)

K. Letter Mezzanine Loan Notice of Default (archived at LA1 1,640787)

L. Letter Notice of Expiration of Forbearance and Formal Default (archived at LA1 1,633,051)