approved as a Permitted Investment in writing by the Agent;

provided, that (1) the investments described in clauses (a), (c), (d), (e), (f), (g) and (h) must (w) have a predetermined fixed dollar amount of principal due at maturity (or demand) that cannot vary or change, (x) if rated by S&P, not have an "r" highlighter affixed to their rating, (y) if such investments have a variable rate of interest, have an interest rate tied to a single interest rate index plus a fixed spread (if any) and must move proportionately with that index, and (z) not be subject to liquidation prior to their maturity, (2) such instrument continues to qualify as a "cash flow investment" pursuant to Code Section 860G(a)(6) earning a passive return in the nature of interest and (3) no obligation or security shall be a Permitted Investment if (x) such obligation or security evidences a right to receive only interest payments or (y) the right to receive principal and interest payments on such obligation or security are derived from an underlying investment that provides a yield to maturity in excess of 120% of the yield to maturity at par of such underlying investment.

*Person* means an individual, corporation, limited liability company, business trust, partnership, limited partnership, joint venturer, joint tenant or tenant-in-common, trust, unincorporated organization, or any other entity of whatever nature, or Governmental Authority.

*Personal Property* means materials, furnishings, fixtures, machinery, equipment and all items of tangible and intangible personal property now or hereafter owned by the Borrower, wherever located, and: (a) to be incorporated into the Improvements; (b) used in connection with the construction of the Improvements; or (c) to be used in connection with the operation of the Property.

*Plan* means a Single Employer Plan or a Multiple Employer Plan.

*Plans and Specifications* means the plans and specifications for the development and construction of the Additional Improvements prepared by the Architect and other design professionals and Approved by the Administrative Agent.

*Pledge and Security Agreement* means that certain Pledge and Security Agreement, dated as of the date hereof, by the Borrower in favor of the Administrative Agent.

*Preliminary Project Report* means the report prepared by the Construction Consultant of its review of the Plans and Specifications, the Construction Schedule, the General Contractor's Agreement and the Major Contracts.

*Pre-Sale Requirement* means evidence submitted by the Borrower (a) prior to the Initial Advance that it has obtained Qualified Reservations with Purchasers in connection with the sale of Fractional Ownership Units that, if converted into Bona Fide Sales Contracts, will provide aggregate Net Sales Proceeds totaling no less than $13,000,000 and (b) prior to the initial Construction Advance that it has entered into Bona Fide Sales Contracts that will provide aggregate Net Sale Proceeds totaling not less than $13,000,000.

*Project* means, collectively, the acquisition of the Land and Existing Improvements, the renovation of the Existing Improvements and the development and

25

construction of the Additional Improvements substantially in accordance with the Plans and Specifications.

*Project Budget* means the budget for the acquisition, development and construction of each component of the Project, as amended from time to time pursuant to Section 6.2(j), and which reflects all estimated Project Costs, certified by the Borrower and Approved by the Administrative Agent. A copy of the preliminary Project Budget is attached as **Exhibit M.**

*Project Costs* means all costs and expenses incurred by the Borrower to complete the Project.

*Property* means the Land, Improvements and Personal Property.

*Property Disclosure Report* means the Developer/Owner Property Report to be filed by the Borrower with the Utah Division of Real Estate pursuant to the Timeshare Act.

*Proposed Default Response* has the meaning given to such term in Section 8.8.

*Protective Advance* means any advance by the Administrative Agent or any Lender with respect to (a) the payment of any delinquent Taxes or insurance premiums owed by the Borrower with respect to the Property, (b) the removal of any Lien or encumbrance on the Property or the defense of the Borrower's title thereto or of the validity, enforceability, perfection or priority of the liens and security interests granted pursuant to the Loan Documents, (c) the payment of the cost of completing the Project or (d) preservation of the value of the Property, including, without limitation, for payment of heating, gas, electric and other utility bills.

*Punchlist Items* means details of construction, decoration and mechanical and electrical adjustment which, in the aggregate, are minor in character and are not necessary for the issuance of a TCO for the Property.

*Purchase Agreement* means any purchase and sale agreement with respect to any interest in a Fractional Ownership Unit.

*Purchaser* means any purchaser under a Purchase Agreement.

*Qualified Reservation* means a written reservation by a Purchaser (that is not an Affiliate of the Borrower or Hotel Operator) to purchase a Fractional Ownership Unit or fractional interest therein for a purchase price equal to or greater than the Minimum Purchase Price for such Fractional Ownership Unit, which reservation is accompanied by a deposit of not less than $10,000.

*Ratable Share* or *Ratably* means, with respect to any Lender, its share of Advances of the Loan based on the proportion of the outstanding principal of the Loan advanced by such Lender to the total outstanding principal of the Loan.

84076228_9_084291_69909

*Rate Request* means the Borrower's irrevocable written notice by facsimile given by the Borrower to the Transaction Management department of the Administrative Agent, Attention Andrea Bailey, at (212) 597-1158 (or such other parties as the Administrative Agent may from time to time designate in writing) at the Administrative Agent's New York, New York office not later than 11:00 A.M. (New York City time) three Business Days prior to the commencement of the applicable Interest Period, of its intention to have all or any portion of the principal amount of the Loan bear interest as either a Base Rate Loan or a LIBOR Loan.

*Rating Agencies* means each of S&P, Moody's and Fitch.

*Recourse Liability Agreement* means that certain Recourse Liability Agreement, dated as of the date hereof, by the Sponsor in favor of the Administrative Agent and the Lenders, in the form of Exhibit N.

*Register* has the meaning given to such term in Section 11.5(f).

*Rents* has the meaning given to such term in Section 4.2(c).

*Rents and Profits* has the meaning specified in the Security Instrument.

*Reporting Period* means with respect to any date of determination the twelve (12) month period ending on such date.

*Requested Advance Date* has the meaning given to such term in Section 2.2(e).

*Required Release Payment* means with respect to each Fractional Ownership Unit or fractional interest therein sold in accordance with the terms of this Agreement, an amount equal to 80% of the greater of (a) the Net Sales Proceeds for such Fractional Ownership Unit and (b) 89% of the gross sales price for such Fractional Ownership Unit or fractional interest therein.

*Requisite Lenders* means, at any time, Lenders owed more than sixty-six and two-thirds percent (66 2/3 %) of the then aggregate unpaid principal amount of the Loan.

*Required Insurance* has the meaning given to such term in Section 6.1(j).

*Reservation* means a written reservation agreement between the Borrower and a prospective Purchaser entitling such Purchaser to enter into a Purchase Agreement to acquire a Fractional Ownership Unit or fractional interest therein.

*Reserve Account* has the meaning given to such term in Section 4.1(b).

*Restoration* means the repair and restoration of the Property as nearly as reasonably possible to the condition that the Property was in immediately prior to such casualty, Partial Condemnation or Total Condemnation (as applicable) together with such alterations as may be Approved by the Administrative Agent.

27

*Retainage* has the meaning given to such term in Section 2.2(m).

*Sales Proceeds Account* has the meaning given to such term in Section 4.1(a).

*Security Instrument* means the Construction and Interim Loan Deed of Trust and Leasehold Deed of Trust With Security Agreement, Assignment of Leases and Rents and Fixture Filing from the Borrower to Equity Title Insurance Agency, Inc., as trustee, for the benefit of the Administrative Agent, dated of even date herewith, encumbering the Trust Property, together with all spreaders, splitters, consolidations, extensions, restatements, replacements, modifications and supplements thereof.

*Shortfall* has the meaning given to such term in Section 2.2(d).

*Single Employer Plan* means a single employer plan, as defined in Section 4001(a)(15) of ERISA, that (a) is maintained for employees of any Loan Party or any ERISA Affiliate and no Person other than the Loan Parties and the ERISA Affiliates or (b) was so maintained and in respect of which any Loan Party or any ERISA Affiliate could have liability under Section 4069 of ERISA in the event such plan has been or were to be terminated.

*Solvent* and *Solvency*, with respect to any Person on a particular date, has the meaning ascribed to such term (or any similar term, including "Insolvency") in the Bankruptcy Code and any applicable state fraudulent conveyance laws, to include, without limitation, the following, that on such date (a) the fair value of the property of such Person is greater than the total amount of liabilities, including, without limitation, contingent liabilities, of such Person, (b) the present fair salable value of the assets of such Person is not less than the amount that will be required to pay the probable liability of such Person on its debts as they become absolute and matured, (c) such Person does not intend to, and does not believe that it will, incur debts or liabilities beyond such Person's ability to pay such debts and liabilities as they mature and (d) such Person is not engaged in business or a transaction, and is not about to engage in business or a transaction, for which such Person's property would constitute an unreasonably small capital. The amount of contingent liabilities at any time shall be computed as the amount that, in the light of all the facts and circumstances existing at such time, represents the amount that can reasonably be expected to become an actual or matured liability.

*Sponsor Documents* means the Environmental Indemnity and the Recourse Liability Agreement.

*Sponsor* means CloudNine Resorts, LLC.

*S&P* means Standard & Poor's Ratings Services, a division of the McGraw Hill Companies, Inc., and its successors.

*Stored Materials* has the meaning given to such term in Section 2.2(l).

*Subdivision Plat* means the subdivision plat with respect to the Property required by applicable Law to be recorded in the official records of Summit County, Utah in connection with the Project.

84076228_9_084291_69909

*Substantial Completion* means, as applied to the Project, the date when (a) except for Punchlist Items, all work required by the Plans and Specifications and the other Loan Documents has been completed (including, without limitation, all installation of all FF&E), as certified by the Architect and approved by the Construction Consultant, (b) all Permits required for the normal use and occupancy of the Property (including delivery of a valid TCO for all Improvements (together with (i) a written determination of the Borrower setting forth the date by which the Borrower expects that a permanent Certificate of Occupancy should be issued for the Improvements (the *CO Date*), which CO Date shall be reasonably acceptable to the Administrative Agent and (ii) a written statement of the Construction Consultant substantially supporting the Borrower's determination of the CO Date)) substantially as set forth in the Plans and Specifications and otherwise necessary for the Property to function as a luxury hotel with related services (including, without limitation, an event center, restaurants and a spa), have been issued by the appropriate Governmental Authority and are in full force and effect and (c) all required utilities are supplied to the Property and are fully operating, as certified by the Architect and approved by the Construction Consultant.

*Tax and Insurance Account* has the meaning given to such term in Section 4.1(b)(i).

*Tax and Insurance Deposit* has the meaning give to such term in Section 4.3(i).

*Taxes* has the meaning given to such term in Section 2.13.

*Tenants* has the meaning given to such term in Section 4.2(c).

*Test Period* means, as of any applicable date of determination, the twelve (12) month period ending on the last day of the calendar month immediately prior to such date.

*TCO* means a temporary certificate of occupancy for the Improvements allowing for the operation of the Hotel for its intended purposes and issued by the proper Governmental Authority(ies).

*Timeshare Act* means the Timeshare and Camp Resort Act, Utah Code Annotated, Chapter 57, Title 19.

*Title Company* means Equity Title Insurance Agency, Inc. or any other title insurance company Approved by the Administrative Agent.

*Title Insurance Policy* has the meaning given to such term in Section 3.1(k).

*Total Condemnation* means any condemnation or eminent domain proceeding or action (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking) by any Governmental Authority, whether for any permanent or temporary use, occupancy or other interest affecting such portion of the Property as, when so taken or condemned, would leave, in the Administrative Agent's sole determination, a balance of the Property that, due either to the area so taken or the location of the part so taken in relation to the part not taken, would not, under economic conditions, physical constraints, zoning laws, building

29

regulations and other Laws then existing, readily accommodate a new or reconstructed building or buildings and other improvements of a type comparable in all material respects to the Improvements existing as of the date of such taking or condemnation.

*Total Project Costs* means the aggregate amount of Project Costs set forth on the Project Budget.

*Trade Contractor* means each contractor, subcontractor, laborer, supplier, vendor, mechanic and materialman, providing labor, materials or services in connection with the construction of the Additional Improvements.

*Treasury Rate* means as of any applicable date of determination, the annualized yield on securities issued by the United States Treasury having a maturity closest to, but not earlier than, a date ten (10) years from the date of the applicable date of determination, as quoted in Federal Reserve Statistical Release [H. 15 (519)] under the heading "U.S. Government Securities – Treasury Constant Maturities" for the date most nearly two (2) weeks before the date of determination (or a comparable rate if the rate is no longer published).

*Trust Property* has the meaning given to such term in the Security Instrument.

*UCC* means the Uniform Commercial Code as adopted by the State of Utah.

*Unused Fee* means from and after the date hereof and until the Loan Amount has been advanced in full, a non-refundable fee, in the amount of THREE-EIGHTHS OF ONE PERCENT (.375%) per annum of the then-unfunded portion of the Loan, which amount shall accrue on the daily average unfunded portion of the Loan for the applicable period and shall be payable monthly in arrears on each Payment Date.

*USAL* means the Ninth Revised Edition (1996) of the Uniform System of Accounts for the Lodging Industry jointly published by the Hotel Association of New York City and The Educational Institute of the American Hotel and Motel Association.

*U.S. Obligations* means direct full faith and credit obligations of the United States of America that are not subject to prepayment, call or early redemption.

*Withdrawal Liability* has the meaning specified in Part I of Subtitle E of Title IV of ERISA.

Section 1.2    Terms Generally.    The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation". The word "will" shall be construed to have the same meaning and effect as the word "shall". The word "or" shall be construed to be inclusive. Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments,

84076228_9_084291_69909

supplements or modifications set forth herein), (b) any reference herein to any Person shall be construed to include such Person's successors and permitted assigns, (c) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Articles, Sections, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Exhibits and Schedules to, this Agreement, (e) any reference to any statute or law shall be construed as referring to such statute or law as amended, modified or supplemented from time to time and all rules and regulations promulgated thereunder and (f) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

Section 1.3   Approval.   All references in any of the Loan Documents to Lenders' approval or the Administrative Agent's approval, or similar words requiring any such approval of a Lender or the Administrative Agent, shall be construed to include approval by such Lenders' or the Administrative Agent's (as the case may be) legal counsel and other consultants.

## ARTICLE 2

## AGREEMENT TO LEND AND

## PAYMENT OF LOAN

Section 2.1   Making of the Loan.   (a)   Upon the terms and subject to the conditions set forth in this Agreement, each Lender severally and not jointly agrees to make such Lender's Ratable Share of Advances of the Loan to the Borrower from time to time, in accordance with the provisions hereof, during the Construction Loan Term, in an aggregate principal amount of up to the Loan Amount.  Upon the Administrative Agent's receipt of such funds and upon fulfillment of the applicable conditions in Article 3, the Administrative Agent will make such funds available to the Borrower by wire transfer of immediately available funds to an account of the Borrower designated in writing by the Borrower to the Administrative Agent and otherwise in accordance with the terms hereof.  Amounts borrowed under this Section 2.1(a) and repaid or prepaid may not be re-borrowed.

(b)   The obligations of the Lenders hereunder are several and not joint.  Failure of any Lender to fulfill its obligations hereunder shall not result in any other Lender becoming obligated to advance more than its Ratable Share nor shall such failure release or diminish the obligations of any Lender to fund its Ratable Share.

(c)   The Loan shall be secured by (i) the Trust Property pursuant to the Security Instrument and (ii) the other security interests and Liens granted in the Collateral pursuant to this Agreement and in the other Loan Documents.

(d)   The proceeds of the Loan shall be used only to pay (or reimburse the Borrower for) a portion of (i) Total Project Costs and (ii) transaction costs related to the making of the Loan.

31

Section 2.2   Advances; Method of Disbursement of Loan Proceeds.   (a) Advances. The Project Budget shall separately reflect, by category and line items, the purposes and the amounts for which funds to be advanced by the Lenders under this Agreement are to be used. The Lenders shall not be required to disburse for any category or line item of Project Costs any amount in excess of the amount specified therefor in the Project Budget, subject to Sections 2.2(d), 2.2(k) and 6.2(j) (or other reallocations approved by the Administrative Agent in its sole discretion). Any such fees or payments to be made pursuant to any agreement (certified true, accurate and complete copies of such agreements shall promptly be delivered to the Administrative Agent upon execution) shall only be disbursed hereunder at such times provided under and otherwise in accordance with said agreement. No Lender shall be obligated to fund, either in the aggregate or in respect of any Advance, amounts in excess of its Ratable Share of the Loan Amount as set forth on Exhibit BB, but if the Loan Amount is increased or the Administrative Agent makes funds available in excess of the Loan Amount, each Lender shall have the right to elect at its own discretion whether to provide funds to the Administrative Agent to fund amounts in excess of the Loan Amount. Notwithstanding the foregoing and anything herein to the contrary, each Lender shall be obligated to fund its Ratable Share of any and all Protective Advances in the event such Protective Advances are deemed necessary by the Administrative Agent (in its sole and absolute discretion) to preserve the Lien of the Security Instrument, the Collateral or any of the Administrative Agent's or the Lenders' rights under any of the Loan Documents. If and to the extent any Lender shall fund amounts in excess of the Loan Amount for any purpose, such Lender's Ratable Share of the Loan shall be adjusted from time to time based on the total amounts advanced by all of Lenders from time to time in respect of the Loan.

(b)   Draw Request.   At such time as the Borrower shall desire to obtain an Advance, the Borrower shall complete, execute and deliver to the Administrative Agent a requisition in the form of Exhibit O (*Borrower's Requisition*), such Borrower's Requisition constituting an integral part of each Draw Request. Each Draw Request shall constitute the Borrower's representation and warranty to the Lenders that: (A) any completed construction is substantially in accordance with the Plans and Specifications; (B) all Project Costs for the payment of which the Lenders have previously advanced funds have in fact been paid; (C) all the representations and warranties of each Loan Party contained in the Loan Documents, including those set forth in Article 5, were true, correct and complete in all material respects as of the date of execution of this Agreement, as of the date of any previous Advance and continue to be true and correct in all material respects as of the date of such Draw Request; (D) no Default or Event of Default shall have occurred and be continuing hereunder; and (E) the Borrower continues to be in compliance in all material respects with all of the other terms, covenants and conditions contained in this Agreement and the other Loan Documents. Each Draw Request shall be (i) in accordance with the terms of this Agreement and (ii) accompanied by:

(i)   if the Draw Request includes amounts to be paid to the General Contractor under the General Contractor's Agreement, a completed and itemized Application and Certificate for Payment (AIA Document No. G702) or similar form Approved by the Administrative Agent, containing the certification of the General Contractor and the Architect as to the accuracy of same, together with invoices relating to all items of Project Costs covered thereby and accompanied

32

by a cost breakdown showing the cost of work on, and the cost of materials incorporated into, the Improvements to the date of the Draw Request; the cost breakdown shall also show the percentage of completion of each line item on the Project Budget, and the accuracy of the cost breakdown shall be certified by the Borrower and by the Architect; all such applications for payment shall also show all contractors and subcontractors, including Major Contractors and Major Subcontractors, by name and trade, the total amount of each contract or subcontract, the amount theretofore paid to each contractor and subcontractor as of the date of such application, and the amount to be paid from the proceeds of the Advance to each contractor and subcontractor;

(ii)      a report of the Construction Consultant, certifying to the Administrative Agent as to the value of completed construction, percentage of completion, compliance with Plans and Specifications, and whether there are sufficient funds in the Project Budget to pay remaining Total Project Costs and complete construction of the Additional Improvements;

(iii)     lien waivers from all Major Contractors and all Major Subcontractors for work done and materials supplied by them which were paid for pursuant to any prior Draw Request, if any;

(iv)     if applicable, a written request of the Borrower for any necessary changes in the Plans and Specifications, the Project Budget or the Construction Schedule;

(v)      copies of all executed Change Orders, contracts and subcontracts, and, to the extent requested by the Administrative Agent or the Construction Consultant, of all inspection or test reports and other documents relating to the construction of the Improvements not previously delivered to the Administrative Agent, if any; and

(vi)     such other information, documentation and certification as the Administrative Agent shall reasonably request.

(c)      Amount of Advances.   In no event shall any Advance be less than ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00) or exceed the full amount of Total Project Costs theretofore paid or to be paid with the proceeds of such Advance minus the applicable Retainage for each contract and subcontract. No Advance by the Lenders shall be deemed to be an approval or acceptance by the Lenders of any work performed thereon or the materials furnished with respect thereto.

(d)      Insufficiency of Loan Proceeds/Cost Overruns.   Notwithstanding anything contained herein to the contrary, if at any time or from time to time prior to Final Completion, in the Administrative Agent's reasonable opinion, the cost of completing any line item in the Project Budget exceeds the remaining un-disbursed portion of the Loan allocated to such line item in the Project Budget (the amount of such deficiency being a *Shortfall*), no further

33

Advances of the Loan shall be made by the Lenders until the Borrower either individually or in combination: (i) deposits with the Administrative Agent the Shortfall; (ii) compensates for the Shortfall by payment of Project Costs in cash, through application of Deposits in accordance with the terms of this Agreement or other manner satisfactory to the Administrative Agent in its sole discretion and delivers to the Administrative Agent evidence thereof satisfactory to the Administrative Agent; (iii) provides the Administrative Agent with other assurance satisfactory to the Administrative Agent that the Shortfall will be funded as and when needed; (iv) to the extent permitted under Section 2.2(k), allocates the Construction Contingency to the Shortfall or (v) to the extent permitted under Section 6.2(j), reallocates cost savings from the Project Budget in respect of the Loan in accordance with the terms of this Agreement. Any amount deposited with the Administrative Agent pursuant to clause (i) of this Section 2.2(d) shall: (A) be held by the Administrative Agent or its designee pursuant to a pledge and assignment agreement in a form reasonably satisfactory to the Administrative Agent, which agreement the Borrower shall execute and deliver to the Administrative Agent simultaneously with such deposit; and (B) constitute additional Collateral for the Loan. If the Borrower deposits cash with the Administrative Agent, such amount will be advanced to the Borrower only after all Loan proceeds have been advanced and, in the case of cash or other assurances, the same will be returned to the Borrower or terminated, as the case may be, if and when there is no longer a Shortfall in such line item by reason of (1) allocation of the Construction Contingency, (2) reallocation of costs savings (or other reallocations approved by the Administrative Agent, in its sole discretion) or (3) such amount deposited being no longer necessary in the Administrative Agent's discretion. Any reallocation of any category or line item in the Project Budget in connection with cost overruns shall be subject to the Administrative Agent's approval in the Administrative Agent's discretion except as set forth in Section 2.2(k) or Section 6.2(j); provided, that any reallocation relating to interest, general contractor fees, overhead, development fees and any fee to an Affiliate, or between the Improvements shall require the approval of the Administrative Agent, in its sole discretion. Without limiting the foregoing, unless the Borrower otherwise cures a Shortfall in accordance with this Section 2.2(d), the borrower shall within 10 days after demand therefor by the Administrative Agent, deposit the amount of the Shortfall with the Administrative Agent in accordance with clause (i) above.

(e)     Procedure for Advances.  Each Draw Request shall be submitted to the Administrative Agent (who shall forward such document to each Lender) at least fifteen (15) days prior to the date of the requested Advance (the *Requested Advance Date*), and no more frequently than once per month. Not less than three (3) Business Days prior to the Requested Advance Date, the Administrative Agent shall deliver written notice to each Lender at the address specified by each Lender from time to time setting forth the Requested Advance Date and such Lender's Ratable Share of such Advance. The Lenders shall make the requested Advance on the Requested Advance Date so long as all conditions to such Advance are satisfied. Unless otherwise notified by the Administrative Agent, each Lender may assume that all conditions to such Advance are satisfied on the Requested Advance Date. Not later than 11:00 a.m. New York time, on the date set forth in Borrower's Requisition, each Lender shall make available for the account of the Administrative Agent at its address referred to in Section 11.4, in immediately available funds, such Lender's Ratable Share of such Advance. After the Administrative Agent's receipt of such funds and upon fulfillment of the applicable conditions in

34

Article 3, the Administrative Agent will make such funds available to the Borrower in accordance with the terms of this Article 2.

(f)     Funds Advanced. Except as otherwise provided in this Agreement, each Advance shall be made by the Administrative Agent by wire transfer to the account of the Borrower in accordance with wiring instructions provided by the Borrower. All proceeds of all Advances shall be used by the Borrower only for the purposes for which such Advances were made. The Borrower shall not commingle such funds with other funds of the Borrower or any other Person.

(g)     Advances to General Contractor. At the Administrative Agent's option, the Administrative Agent may make any or all Advances directly to the General Contractor for construction expenses payable or reimbursable to the General Contractor under the General Contractor's Agreement and which shall theretofore have been Approved by the Administrative Agent and for which the Borrower shall have failed to timely make payment (subject to written notice from the Administrative Agent and failure of the Borrower to cure within ten (10) Business Days of such notice) and the execution of this Agreement by the Borrower shall, and hereby does, constitute an irrevocable authorization to the Administrative Agent to advance the proceeds of the Loan directly to the General Contractor as amounts become due and payable to them. No further authorization from the Borrower shall be necessary to warrant such direct Advances to the General Contractor and all such Advances shall satisfy *pro tanto* the obligations of the Lenders hereunder and shall be secured by the Security Instrument and the other Loan Documents as fully as if made directly to the Borrower. Notwithstanding the foregoing, the Administrative Agent shall not (i) take any of the actions permitted under this Section 2.2(g) if the Borrower is contesting such amounts in accordance with Section 6.2(f) or (ii) fund any Advance over Liens unless such Liens are adequately bonded or, if such Liens are less than FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) in the aggregate, affirmatively insured by the Title Company.

(h)     Direct Advances. At the Administrative Agent's option, the Administrative Agent may make Advances of portions of the proceeds of the Loan (i) to any Person to which the Administrative Agent in good faith determines payment is due and (ii) to the Lenders in payment of Interest or to the Lenders or the Administrative Agent in payment of the Unused Fee or any other fees payable hereunder, and any portion of the Loan so disbursed by the Lenders shall be deemed disbursed as of the date on which the Person to whom payment is made receives the same. The execution of this Agreement by the Borrower shall, and hereby does, constitute an irrevocable authorization to the Administrative Agent to Advance the proceeds of the Loan. No further authorization from the Borrower shall be necessary to warrant such direct Advances and all such Advances shall satisfy *pro tanto* the obligations of the Lenders hereunder and shall be secured by the Security Instrument and the other Loan Documents as fully as if made directly to the Borrower.

(i)     Advances Do Not Constitute a Waiver. No Advance shall constitute a waiver of any of the conditions of the Lenders' obligations to make further Advances nor, in the event the Borrower is unable to satisfy any such condition, shall any Advance have the effect of

35

precluding the Administrative Agent from thereafter declaring such inability to be an Event of Default hereunder.

(j)    Quality of Work.   The Lenders shall not be obligated to make any Advance or any portion thereof with respect to defective work or to any contractor that has performed work that is defective and that has not been cured, as specified in and confirmed by the report of the Construction Consultant; provided, that the Lenders may disburse all or any part of any Advance before the sum shall become due if the Administrative Agent believes it advisable to do so, and all such Advances or parts thereof shall be deemed to have been made pursuant to this Agreement.

(k)    Contingency Reserve; Reallocation of Line Items.   The amount allocated as Construction Contingency in the Project Budget shall only be disbursed upon request by the Borrower and a determination by the Administrative Agent in its discretion that the amounts remaining in the Construction Contingency after the requested disbursement will be sufficient to protect the Lenders against the risk of any future overruns in Project Costs. Amounts disbursed from the Construction Contingency may be used only for Project Costs to which such Construction Contingency relates. Without limiting the foregoing, the Borrower shall be entitled to make reductions in line items in the Project Budget (and the savings may be reallocated by the Borrower) at such time as the Administrative Agent and the Construction Consultant reasonably concur that all work covered by a particular line item has been or will be completed and paid for in full and such savings are or will be realized. The Borrower shall not agree or consent to any reallocation or expenditure of the General Contractor's contingency line item pursuant to the General Contractor's Agreement without the prior written consent of the Administrative Agent, which consent shall not be unreasonably withheld.

(l)    Stored Materials.   The Lenders shall not be required to disburse any funds for any materials, machinery or other Personal Property not yet incorporated into the Improvements (*Stored Materials*), unless the Administrative Agent receives satisfactory evidence that: (i) the Stored Materials are components in substantially final form ready for incorporation into the Improvements; (ii) the Stored Materials are stored at the Property, in a bonded warehouse in the State of Utah, or at such other site as the Administrative Agent shall reasonably approve, and are protected against theft and damage; (iii) the Stored Materials will be paid for in full with the funds to be disbursed, and all Lien rights or claims of the supplier will be released upon full payment; (iv) the Administrative Agent shall have received, or will receive upon payment of such Advance, UCC-1 financing statements, warehouseman's receipts or other evidence satisfactory to the Administrative Agent of the Lenders' first priority security interest in such materials; (v) the Borrower shall provide proof satisfactory to the Administrative Agent that such materials are insured against loss by casualty or theft for their full replacement cost; (vi) the aggregate cost of Stored Materials stored at the Property is certified by the Construction Consultant; and (vii) the cost of Stored Materials not stored at the Property, in the aggregate at any time, is not more than FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00). In the event that the Borrower shall at any time store materials at any one location other than the Property, the cost of which exceeds the maximum amount permitted under clause (vii) above, the Borrower shall pay the excess cost of such materials with its own funds and shall not be entitled to any

36

proceeds from an Advance in respect of such excess until such time as such excess is relocated to the Property.

(m)    Retainage.  The Administrative Agent shall be entitled to withhold from the proceeds of each Construction Advance an amount (*Retainage*) equal to the greater of (a) five percent (5%) of all amounts (excluding general conditions) to be paid to each contractor or subcontractor under its applicable construction contract and subcontract, and (b) twice the fair market value of the work that has not been completed in accordance with the applicable Construction Contracts in accordance with Utah Code Annotated Subsection 13-8-5(8)(a)(ii); provided, that the Retainage being held with respect to any contractor, subcontractor or materialman may be released as of the date upon which the Construction Consultant certifies to the Administrative Agent that such contractor, subcontractor or materialman has satisfactorily completed all work and has supplied all materials in accordance with the provisions of such contractor's, subcontractor's or materialman's contract, and the contractor, subcontractor or materialman delivers lien waivers and evidence of payment in full of all sums due to the contractor, subcontractor or materialman. Any Retainage shall be placed by the Administrative Agent in an interest-bearing account.  Any interest accrued on any such retention shall, in accordance with Utah Code Annotated Subsection 13-8-5(4), be (i) for the benefit of General Contractor and its subcontractors, and (ii) paid after the work is completed and the conditions set forth in Section 3.4 have been satisfied.  In accordance with Utah Law, it shall be the duty of General Contractor to ensure that any interest accrued on the retention is distributed by the General Contractor to its subcontractors on a pro rata basis, and that General Contractor or any subcontractor who receives payment of retention shall pay each of its subcontractors from whom retention has been withheld each subcontractor's share of the retention received within ten (10) days from the day that all or any portion of the Retainage is received by General Contractor, or by the subcontractor from General Contractor or a subcontractor, as the case may be (except that if a retention payment received by General Contractor is specifically designated for a particular subcontractor, then payment of the retention shall be made to the designated subcontractor).  The Borrower shall cause General Contractor to provide the Borrower and the Administrative Agent with such affidavit or other evidence of compliance with the requirements of Utah Code Annotated Section 13-8-5 as the Administrative Agent shall require.  In no event shall the Administrative Agent have any obligation or liability with respect to the application of any interest earned on the Retainage.  Without limiting the foregoing, the Borrower acknowledges and agrees that any default or breach of the terms or conditions of any Construction Contract, shall be deemed to be a "default or breach of the terms and conditions of the construction contract documents, plans, or specifications governing construction of the project" within the meaning of Utah Code Annotated Subsection 13-8-5(8)(a)(i).  In accordance with such Subsection, the Administrative Agent may withhold from any Advance an amount otherwise to be applied to the payment of the applicable contractor or subcontractor, for as long as reasonably necessary, equal to the amount necessary to cure such default.

Section 2.3    Payment of Interest.  (a) Base Rate Loans and LIBOR Loans.  The Borrower shall pay interest on the Outstanding Principal at the following rates per annum:

37

(i)   Base Rate Loans. During Interest Periods during which the Loan or any portion thereof shall be a Base Rate Loan, with respect thereto, a rate per annum equal at all times during such Interest Periods to the sum of (A) the Base Rate in effect from time to time plus (B) the Applicable Margin.

(ii)   LIBOR Loans. During Interest Periods during which the Loan or any portion thereof shall be a LIBOR Loan, with respect thereto, a rate per annum equal at all times to the sum of (A) the LIBO Rate for such Interest Period plus (B) the Applicable Margin.

Interest on the Outstanding Principal (including, without limitation, on each LIBOR Loan) shall be due and payable in arrears on the first Business Day of each calendar month.

(b)   Default Interest. Upon the occurrence and during the continuance of an Event of Default, the Borrower shall pay on demand interest on (i) the Outstanding Principal and (ii) the unpaid amount of any interest, fee or other amount payable hereunder that is not paid when due, from the date such amount shall be due until such amount shall be paid in full, whether before or after maturity or acceleration of the applicable Notes, at a rate per annum equal to the Default Rate.

Section 2.4   Conversion and Continuation Options. (a) Base Rate Loan to LIBOR Loan. Subject to Section 2.8, the Borrower may elect pursuant to a Rate Request to convert all or any portion of any outstanding Base Rate Loan to a LIBOR Loan; provided, that no Base Rate Loan may be converted to a LIBOR Loan if any Event of Default has occurred and is continuing and the Administrative Agent has determined in its sole discretion that such a conversion is not appropriate.

(b)   LIBOR Loan to Base Rate Loan. The Borrower may elect pursuant to a Rate Request to convert all or any portion of any outstanding LIBOR Loan to a Base Rate Loan; provided that the Borrower may not make such an election if at the time of such election an Interest Rate Protection Agreement is in effect. Notwithstanding the foregoing, during the last thirty (30) days prior to the Maturity Date, Borrower may elect pursuant to a Rate Request to convert all outstanding LIBOR Loans to a single Base Rate Loan.

(c)   LIBOR Loan to LIBOR Loan. Any LIBOR Loan may be continued upon the expiration date of its then current Interest Period by Borrower pursuant to a Rate Request; provided that no LIBOR Loan may be continued when any Event of Default has occurred and is continuing. If the Borrower fails to submit a Rate Request to the Administrative Agent in accordance with the provisions of this Section 2.4(c) with respect to any outstanding LIBOR Loan, such outstanding LIBOR Loan shall automatically be continued as a LIBOR Loan.

Section 2.5   Minimum Amounts and Maximum Number of Interest Periods. All borrowings, conversions and continuations of the Loan shall be in such amounts and be made pursuant to such elections so that, after giving effect thereto, the aggregate principal amount of any LIBOR Loan shall be at least equal to ONE MILLION AND 00/100 DOLLARS ($1,000,000.00). So long as an Interest Rate Protection Agreement is in effect and payments by the Counterparty

38

under such Interest Rate Protection Agreement are based upon particular interest periods, the Borrower shall be deemed to elect that the Loan be designated as a single LIBOR Loan with an Interest Period corresponding to the interest period utilized in computations of payments due with respect to such Interest Rate Protection Agreement.

Section 2.6    Computation of Interest and Fees.    All interest and fees shall be computed on the basis of a year of 360 days and paid for the actual number of days elapsed, including the first day and excluding the last day of each Interest Period. If the Loan is repaid on the same day on which it is made, one day's interest shall be paid on the Loan. Any change in the Administrative Agent's "Prime Rate" or the Federal Funds Rate shall be effective as of the day on which such change in rate occurs. Each determination of an interest rate by the Administrative Agent pursuant to any provision of this Agreement shall be conclusive and binding on the Borrower in the absence of manifest error.

Section 2.7    Increased Costs. (a) If, during any Interest Period with respect to any LIBOR Loan due to either (i) the introduction of or any change in or in the judicial or regulatory interpretation of any Law or (ii) the compliance with any guideline or request from any central bank or other Governmental Authority (whether or not having the force of law), there shall be any increase in the cost to any Lender of maintaining such LIBOR Loan (including, but not limited to, a reserve requirement), then the Borrower shall from time to time, within ten (10) days after demand therefor by the Administrative Agent, pay to the Administrative Agent additional amounts sufficient to compensate any such Lender for such increased cost; provided, that any Lender claiming additional amounts under this Section 2.7 shall use reasonable efforts (consistent with its internal policy and legal and regulatory restrictions) to designate a different Applicable Lending Office if the making of such designation would avoid the need for, or reduce the amount of, such increased cost that may thereafter accrue and would not, in the reasonable judgment of such Lender, be otherwise disadvantageous to such Lender. A certificate as to the amount of such increased cost, submitted to the Borrower by the Administrative Agent or the affected Lender, shall be conclusive and binding for all purposes in the absence of manifest error.

(b)    If the Administrative Agent determines that compliance with any Law or any guideline or request from any central bank or other Governmental Authority (whether or not having the force of law) affects or would affect the amount of capital required or expected to be maintained by any Lender or any corporation controlling any Lender and that the amount of such capital is increased by or based upon the existence of any of the Notes, then, within ten (10) days after demand therefore by the Administrative Agent, the Borrower shall pay to the Administrative Agent, from time to time as specified by the Administrative Agent, additional amounts sufficient to compensate each Lender or such corporation in the light of such circumstances, to the extent that the Administrative Agent reasonably determines such increase in capital to be allocable to the Loan; provided, that such Lender shall calculate the amounts allocable to the Loan in good faith. A certificate as to such amounts, explaining the reason for and showing the calculation of such amounts, all in reasonable detail, submitted to the Borrower by the Administrative Agent or the affected Lender, shall be conclusive and binding for all purposes in the absence of manifest error.

39

(c)     The provisions of this Section 2.7 shall survive the payment of all amounts payable under the Notes or the other Loan Documents.

Section 2.8    Illegality or Inability to Determine LIBO Rate.    (a) Notwithstanding any other provision of this Agreement or the Notes, if the Administrative Agent or any Lender shall notify the Borrower that the introduction of or any change in or in the interpretation of any Law makes it unlawful, or any central bank or other Governmental Authority asserts that it is unlawful, for the Administrative Agent or a Lender to perform its obligations hereunder to make or maintain any LIBOR Loan, the Interest Rate in effect for the Outstanding Principal shall automatically convert to the Base Rate plus the Applicable Margin.

(b)     If the Administrative Agent notifies the Borrower that (i) the Administrative Agent is unable to determine the LIBO Rate or (ii) due to circumstances affecting the London interbank market generally, the LIBO Rate for any Interest Period will not adequately reflect the cost to the Lenders of making or maintaining LIBOR Loans in effect for such Interest Period, the Interest Rate applicable to the Outstanding Principal shall automatically convert to the Base Rate plus the Applicable Margin, unless, in the case of clause (ii) of this Section 2.8(b), within five (5) Business Days of notice from the Administrative Agent thereof, the Borrower pays the difference in cost to the Administrative Agent of maintaining such LIBOR Loan in effect for such Interest Period.

(c)     If the illegality of or the Administrative Agent's inability to determine the LIBO Rate as described in Sections 2.8(a) or Section 2.8(b) is eliminated, the Interest Rate shall automatically convert to the LIBO Rate plus the Applicable Margin.

Section 2.9    Payment of Outstanding Principal.   (a)  Commencing with the first Payment Date after the third anniversary of the Closing Date, and on each Payment Date thereafter until the Maturity Date, together with its payments of Interest hereunder, the Borrower shall pay to the Administrative Agent for the ratable account of the Lenders  a portion of the Outstanding Principal of the Loan equal to the Amortization Amount for such period.

(b)     The Borrower shall repay to the Administrative Agent for the ratable account of the Lenders the Outstanding Principal of the Loan in full on the Maturity Date, together with all accrued and unpaid interest thereon to (and including) the date of repayment and all other amounts due to the Lenders or the Administrative Agent under this Agreement, the Notes or any other Loan Document.

Section 2.10   Prepayment.   (a)  Optional Prepayment.   Upon not less than thirty (30) days' prior written notice to the Administrative Agent, the Borrower may, at any time after the first anniversary of the Closing Date, prepay in full (but not in part) the entire Outstanding Principal balance of the Loan without premium or penalty, but subject to Sections 2.10(d) and (e).

(b)     Prepayment upon Sale of Fractional Ownership Units.   On each Payment Date, the Borrower shall make a prepayment of the Outstanding Principal of the Loan in an amount equal to the aggregate amount of Required Release Payments that are received in

40

connection with the sale of any Fractional Ownership Units (or interests therein) and then on deposit in the Sales Proceeds Account, including any interest earned thereon. Such prepayment shall be applied (i) first, to any outstanding Base Rate Loans, (ii) second, to any outstanding LIBOR Loans.

(c)    <u>Mandatory Prepayment</u>. If, as provided in Section 4.4, the Borrower fails to achieve the Hurdle DSCR within 12 months after the occurrence of a DSCR Trigger, all amounts standing to the credit of the Debt Service Reserve Account from time to time shall be applied by the Administrative Agent to reduce the Outstanding Principal of the Loan in accordance with Section 4.4. In addition to the foregoing and notwithstanding any other provision of this Agreement, the entire Outstanding Principal, together with all unpaid interest thereon and other amounts due to the Lenders under the Loan Documents shall become immediately due and payable upon the occurrence of any of the following:

(i)    a sale, transfer or conveyance of any interest in the Property (other than as expressly permitted by this Agreement or the other Loan Documents);

(ii)    the issuance of debt securities by Borrower; or

(iii)    a direct or indirect sale, transfer or conveyance of any interest in Borrower or Borrower's Member (other than as expressly permitted by this Agreement or other Loan Documents).

(d)    <u>Funding Losses</u>. Upon demand of the Administrative Agent from time to time, the Borrower shall promptly compensate the Lenders for and hold the Lenders harmless from any actual loss, cost or expense incurred by any of them as a result of (all such amounts referenced in this Section 2.10(d) being referred to herein, collectively, as *LIBOR Breakage Costs*):

(i)    any continuation, payment or prepayment of any LIBOR Loan on a day other than the last day of the Interest Period for such LIBOR Loan (whether voluntary, mandatory, automatic, by reason of acceleration, or otherwise);

(ii)    any failure by the Borrower to prepay or continue any LIBOR Loan on the date or in the amount notified by the Borrower; or

(iii)    any loss or expense arising from the liquidation or reemployment of funds obtained by it to maintain such LIBOR Loan or from fees payable to terminate the deposits from which such funds were obtained. The Borrower shall also pay any customary administrative fees charged by such Lender in connection with the foregoing.

For purposes of calculating amounts payable by the Borrower to the Lender under this Section 2.10(d), each Lender shall be deemed to have funded each LIBOR Loan at the LIBO Rate by a matching deposit or other borrowing in the London interbank eurodollar market for a comparable amount and for a comparable period, whether or not such LIBOR Loan was in fact so funded.

41

(c)   Prepayments Generally.   Any prepayment must be accompanied by payment by the Borrower of all accrued and unpaid interest on the Outstanding Principal balance of the Loan and any Hedge Breakage. Except as otherwise expressly permitted or required in this Agreement, the Outstanding Principal balance of the Loan may not be prepaid, in whole or in part.

Section 2.11   Late Charge.   Any and all regularly scheduled amounts due hereunder, under the Notes, the Security Instrument or any other Loan Document which remain unpaid more than five (5) days after the date said amount was due and payable shall incur a fee (the *Late Charge*) of five percent (5%) of said amount, which Late Charge shall be payable by the Borrower on demand by the Administrative Agent. The Administrative Agent's rights to collect the Late Charge shall be in addition to all other rights and remedies of the Administrative Agent or the Lenders under the Loan Documents.

Section 2.12   Payments.   (a)   Payments and prepayments of Outstanding Principal, and interest on, the Notes and all fees, expenses and other obligations under this Agreement payable to the Administrative Agent and the Lenders shall be made without setoff or counterclaim in immediately available funds not later than 12:00 P.M. (New York City time) on the dates called for under this Agreement and the Notes to the Administrative Agent by wire transfer to the following account of the Administrative Agent (or to such other account as may be specified in writing from time to time by the Administrative Agent): Bank: JPMorgan Chase Bank (Swift ID: CHASUS33XXX), Account #: 920-1-060663, Local Clearing Code: FW021000021, Account Name: WESTLB AG, NY Branch (Swift ID: WELAUS3XXXX), Reference: Easy Street Partners, LLC. Funds received after such time shall be deemed to have been received on the next Business Day.

(b)   The Borrower hereby authorizes the Administrative Agent, if and to the extent payment due by the Borrower under any Loan Document is not made when due (subject to any applicable grace periods) under any Loan Document, to charge from time to time against any and all of the Borrower's accounts with either the Administrative Agent or any of the Lenders any amount so due.

(c)   Whenever any payment hereunder shall be stated to be due on a day other than a Business Day, as applicable, such payment shall be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of payment of interest; provided, if such extension would extend beyond the end of an Interest Period, such payment shall be made on the next preceding Business Day.

(d)   All payments received by the Administrative Agent upon the Loan, while an Event of Default is continuing, may be applied to accrued interest, Outstanding Principal of the Loan, Hedge Payments, Hedge Breakage or any other Obligations evidenced or secured by the Loan Documents in such order and amounts as the Administrative Agent may in its sole discretion elect.

Section 2.13   Taxes.   All payments made by the Borrower to the Administrative Agent or any Lender shall be made without any setoff or counterclaim, and free and clear of, and

42

without deduction for any withholdings or on account of, any present or future income, excise and other taxes of whatever nature (other than taxes generally assessed on net income or receipts of any Lender or any franchise taxes imposed upon any Lender by the jurisdiction in which it is organized or in which it maintains an agency, it being understood that the preceding clause shall not apply to withholding taxes), or any levies, imposts, duties, charges or fees of any nature now or hereafter imposed by any Governmental Authority (collectively, *Taxes*). If the Borrower is compelled by any Law to make any such deductions or withholdings, it will pay such additional amounts as may be necessary in order that the net amount received by the Administrative Agent or such Lender after such deductions or withholdings (including any required deduction or withholding on such additional amounts) shall equal the amount each Lender would have received had no such deductions or withholdings been made, and it will promptly provide the Administrative Agent with evidence satisfactory to the Administrative Agent that it has paid such deductions or withholdings. Moreover, if any Taxes are directly assessed against any Lender, such Lender may pay such Taxes and the Borrower shall, within ten (10) days after the Administrative Agent's demand therefor, pay such additional amount as may be necessary in order that the net amount received by such Lender after the payment of such Taxes (including any Taxes on such additional amount) shall equal the amount such Lender would have received had not such Taxes been assessed. The provisions of this Section 2.13 shall survive payment of all other amounts payable under the Loan Documents. Each Lender shall, on or prior to the Closing Date, if required by any Law, provide the Borrower with Internal Revenue Service Form W8BEN or W8ECI, as appropriate, or any successor form prescribed by the Internal Revenue Service, certifying that such Lender is entitled to benefits under an income tax treaty to which the United States is a party that eliminates withholding tax on payments under the Notes or certifying that the income receivable pursuant to the Notes is effectively connected with the conduct of a trade or business in the United States. If any form or document referred to in this Section 2.13 requires the disclosure of information, other than information necessary to compute the tax payable and information required on the date hereof by Internal Revenue Service Form W8BEN or W8ECI, that each such Lender reasonably considers to be confidential, such Lender shall give notice thereof to the Borrower and shall not be obligated to include in such form or document such confidential information.

Section 2.14   Distribution to Lenders.   (a) In the event the Administrative Agent receives current funds, in payment of principal, interest or any other sums due hereunder, on or prior to 12:00 P.M. (New York time) on any Business Day, then, on such date, the Administrative Agent will notify Lenders of the same and will distribute like funds by wire transfer of immediately available funds to the Lenders Ratably to such accounts at such places as have been designated by the respective Lenders in writing from time to time. If such funds are received after 12:00 P.M. (New York time) on any Business Day, then the Administrative Agent shall distribute such funds no later than the next succeeding Business Day. Upon the Administrative Agent's receipt of any other amounts payable by the Borrower or any other Person for items other than principal or Interest, the Administrative Agent shall promptly cause the payment to be applied in accordance with this Agreement. The Administrative Agent shall promptly remit to the Lenders their Ratable Shares of any payment received from the Borrower or from another source on account of sums payable by the Borrower. Unless the Administrative Agent shall have received notice from the Borrower prior to the date on which any payment is due to the Lenders hereunder that the Borrower will not make such payment in full, the

43

Administrative Agent may assume that the Borrower has made such payment in full to the Administrative Agent on such date and the Administrative Agent may, in reliance upon such assumption, cause to be distributed to each Lender on such due date an amount equal to the amount then due such Lender. If and to the extent the Borrower shall not have so made such payment in full to the Administrative Agent, each Lender shall repay to the Administrative Agent forthwith on demand the portion of such amount distributed to such Lender for which the Administrative Agent did not in fact receive payment from or on account of the Borrower, together with interest thereon, for each day from the date such amount is distributed to such Lender until the date such Lender makes such repayment to the Administrative Agent, at the overnight Federal Funds Rate.

(b)    If any Lender obtains any payment (whether voluntary or involuntary, through the exercise of any right of set-off, or otherwise) on account of the Loan owing to it in excess of its Ratable Share of payments on account of the Loan obtained by all of the Lenders, such Lender shall forthwith purchase from the other Lenders such participations in the Loan owing to them as shall be necessary to cause such purchasing Lender to share the excess payment Ratably with each of them; provided, that if all or any portion of such excess payment is thereafter recovered from such purchasing Lender, such purchase from each Lender shall be rescinded and each other Lender shall repay to the purchasing Lender the purchase price to the extent of such recovery together with an amount equal to such Lender's Ratable Share (according to the proportion of (i) the amount of such Lender's required repayment to (ii) the total amount so recovered from the purchasing Lender) of any interest or other amount paid or payable by the purchasing Lender in respect of the total amount so recovered. The Borrower agrees that any Lender so purchasing a participation from another Lender pursuant to this **Section 2.14(b)** may, to the fullest extent permitted by Law, exercise all its rights of payment (including the right of set-off) with respect to such participation as fully as if such Lender were the direct creditor or the Borrower in the amount of such participation.

(c)    The Lenders agree, among themselves, that unless otherwise agreed to by the Administrative Agent and the Requisite Lenders, all monies collected or received by the Administrative Agent after the occurrence of an Event of Default in respect of any security for the Loan shall be applied first to (a) the fees and costs of collection and maintenance of the Collateral, and then (b) *pari passu* to (i) either Interest or principal of the Loan as recommended by the Administrative Agent and approved by the Requisite Lenders and (ii) the amounts owed under any Interest Rate Protection Agreement.

Section 2.15    Conversion of Loan. (a) Borrower shall have the option as of the third (3rd) anniversary of the Closing Date (the *Conversion Date*) to convert the Loan into the Interim Loan, which option shall be exercisable by written notice to the Administrative Agent delivered no later than 30 days prior to the Conversion Date and shall be subject to full satisfaction of the following conditions precedent:

(i)    The Borrower shall have delivered to the Administrative Agent evidence in form and substance reasonably acceptable to the Administrative Agent, that Final Completion has occurred and that the title to the Property is free and clear of all Liens, other than Permitted Encumbrances;

84076228_9_084291_69909

44

(ii)    No Default or Event of Default shall have occurred and be continuing on the date of such notice and on the Conversion Date;

(iii)    The Borrower shall have delivered to the Administrative Agent a certificate executed by an authorized officer of the Borrower certifying in form acceptable to the Administrative Agent that each of the representations and warranties of the Loan Parties contained in the Loan Documents is true, complete and correct in all material respects as of the Conversion Date;

(iv)    The Sponsor shall have executed and delivered to the Administrative Agent a reaffirmation of its obligations under the Recourse Liability Agreement in form acceptable to the Lenders affirming that the Obligation of the Sponsor under the Recourse Liability Agreement shall extend to the Maturity Date, as extended as a consequence of the conversion of the Loan to the Interim Loan pursuant to this Section;

(v)    The Borrower and the Administrative Agent shall have entered into either (A) an extension or renewal of the Interest Rate Protection Agreement in form reasonably acceptable to the Administrative Agent extending or renewing the term of the Interest Rate Protection Agreement to the Maturity Date (as extended pursuant to this Section) or (B) a new Interest Rate Protection Agreement in form reasonably acceptable to the Administrative Agent for a term commencing on the original (or, if applicable, the then effective extended) Maturity Date through the Maturity Date (as extended pursuant to this Section);

(vi)    The Outstanding Principal shall not exceed Sixty-Five Percent (65%) of the Appraised Value of the Property then securing the Loan as determined by an Appraisal of the Property dated no later than one hundred and twenty (120) days prior to the Conversion Date;

(vii)    No event, circumstances or state of facts shall have occurred or exist resulting in a Material Adverse Effect; and

(viii)    The Borrower shall pay all of the Administrative Agent's out-of-pocket costs and expenses actually incurred by the Administrative Agent in connection with such request for conversion, regardless of whether or not such conversion is consummated.

(b)    In no event shall any Advances be made with respect to the Loan after the Conversion Date, and the Lenders shall have no obligation to fund any portion of the Loan Amount not previously Advanced prior to the Conversion Date.

Section 2.16    Interim Loan Extension.    The Borrower shall have the option as of the fourth (4th) anniversary of the Closing Date (the *Extension Date*) to extend the term of the Interim Loan for an additional twelve (12) months, which option shall be exercisable by written

45

notice to the Administrative Agent delivered no later than 30 days prior to the Extension Date and shall be subject to full satisfaction of the following conditions precedent:

        (i)    No Default or Event of Default shall have occurred and be continuing on the date of such notice and on the Extension Date;

        (ii)    The Borrower shall have delivered to the Administrative Agent a certificate executed by an authorized officer of the Borrower certifying in form acceptable to the Administrative Agent that each of the representations and warranties of the Loan Parties contained in the Loan Documents is true, complete and correct in all material respects as of the effective date of such extension;

        (iii)    The Sponsor shall have executed and delivered to the Administrative Agent a reaffirmation of its obligations under the Recourse Liability Agreement in form acceptable to the Lenders affirming that the Obligation of the Sponsor under the Recourse Liability Agreement shall extend to the Maturity Date, as extended as a consequence of the extension of the Interim Loan pursuant to this Section;

        (iv)    The Borrower and the Administrative Agent shall have entered into either (A) an extension or renewal of the Interest Rate Protection Agreement in form reasonably acceptable to the Administrative Agent extending or renewing the term of the Interest Rate Protection Agreement to the Maturity Date (as extended pursuant to this Section) or (B) a new Interest Rate Protection Agreement in form reasonably acceptable to the Administrative Agent for a term commencing on the original (or, if applicable, the then effective extended) Maturity Date through the Maturity Date (as extended pursuant to this Section);

        (v)    The Outstanding Balance shall not exceed Sixty-Five Percent (65%) of the stabilized value of the Property then securing the Loan as determined by an Appraisal of the Property dated no later than one hundred and twenty (120) days prior to the Extension Date;

        (vi)    No event, circumstance or state of facts shall have occurred or exist resulting in a Material Adverse Effect;

        (vii)    The Borrower shall pay (A) to the Administrative Agent for the ratable benefit of the Lenders, an extension fee in an amount equal to 0.25% of the then Outstanding Principal balance of the Loan and (B) to the Administrative Agent all of the Administrative Agent's out-of-pocket costs and expenses actually incurred by the Administrative Agent in connection with such request for extension, regardless of whether or not such extension is consummated; and

        (viii)    The Debt Service Coverage Ratio for the Test Period ending on the last day of the calendar month immediately preceding delivery by the Borrower of its notice to extend the term shall not be less than the Hurdle DSCR.

46

Section 2.17   Construction Contingency Escrow.  (a)  On or prior to the Closing Date the Borrower shall deposit with the Administrative Agent an amount equal to three million dollars ($3,000,000) (the *Construction Contingency Escrow*) which will be held by the Administrative Agent in an interest bearing account as additional security for the Debt.  The Administrative Agent shall not be required to hold the Construction Contingency Escrow in a segregated account.  Without limiting any of the other rights or remedies of the Administrative Agent provided elsewhere in this Agreement or in any of the other Loan Documents, if the Borrower shall fail to cure any Shortfall in any of the ways specified in Section 2.2(d), the Administrative Agent, without curing such Default, shall be entitled to apply any funds in the Construction Contingency Escrow at such time to such Shortfall.

(b)   So long as no Event of Default shall have occurred and be continuing:

(i)   the Administrative Agent, at the request of the Borrower, shall invest the funds in the Construction Contingency Escrow in one or more Permitted Investments, as directed by the Borrower; **provided** that the Administrative Agent shall not be responsible for any investment losses; and

(ii)   any funds remaining in the Construction Contingency Escrow shall be released and funded into the Lockbox Account upon Final Completion.

Section 2.18   Miscellaneous.  (a)  From and after the date hereof and until the Loan Amount has been advanced in a full, on each Payment Date the Borrower shall pay to the Agent for the ratable benefit of the Lenders the accrued Unused Fee, which shall accrue on the daily average unfunded portion of the Loan.

(b)   All administrative fees shall be paid by the Borrower to the Administrative Agent in the amounts and manner set forth in the Mandate Letter as such fees become due and payable.

(c)   Notwithstanding anything to the contrary contained in this Agreement, at all times the Administrative Agent shall be permitted to make any Protective Advance that the Administrative Agent may determine in good faith to be reasonably necessary or appropriate to protect the Collateral.

## ARTICLE 3

## CONDITIONS PRECEDENT TO

## DISBURSEMENT OF LOAN PROCEEDS

Section 3.1   Conditions Precedent to Initial Advance.  The Obligation of each Lender to make the initial Advance of the Loan (the *Initial Advance*) shall be subject to the following conditions precedent and each of such conditions shall be completed to the Administrative Agent's satisfaction:

47

84076228_9_084291_69909

(a)   <u>Loan Documents.</u>   The Administrative Agent shall have received an executed original of each of the Loan Documents, including, without limitation each of the following documents and items in form and substance satisfactory to the Administrative Agent:

(i)   the Notes duly executed by the Borrower;

(ii)   the Security Instrument duly executed by the Borrower;

(iii)   the Environmental Indemnity duly executed by the Borrower and the Sponsor;

(iv)   the Recourse Liability Agreement duly executed by the Sponsor;

(v)   the Pledge and Security Agreement duly executed by the Borrower;

(vi)   the Consent and Subordination of Management Agreement duly executed by the Hotel Operator and the Borrower;

(vii)   the Consent and Subordination of Development Agreement duly executed by the Developer and the Borrower;

(viii)   the Financing Statements;

(ix)   the Borrower's Certificate duly executed by the Borrower; and

(x)   Any other documents, instruments, affidavits and agreements reasonably required to be executed in connection herewith or with respect to the Loan.

(b)   <u>Acquisition Closing.</u>   The Borrower shall have acquired the Property substantially in accordance with the terms and conditions of the Contract of Sale. The Contract of Sale shall not have been amended or modified, nor shall any requirement thereof, obligation thereunder or condition precedent set forth therein have been waived in a manner materially adverse to the interests of the purchaser thereunder. The Administrative Agent shall have received a copy of the settlement statement from the acquisition of the Property certified as being true and correct by the Borrower and indicating all sources and uses of funds in connection with the acquisition of the Property.

(c)   <u>Intentionally Omitted.</u>

(d)   <u>Mezzanine Loan.</u>   The Mezzanine Loan shall have been fully funded by the Mezzanine Lender and the net proceeds of the Mezzanine Loan shall have been contributed by the Mezzanine Borrower to the Borrower to fund, in part, Acquisition Costs. The Administrative Agent shall have received a fully executed original of the Intercreditor Agreement, together with true and complete copies of each of the Mezzanine Loan Documents.

48

(e)     Fractional Ownership Documents.  The Project shall be subject to a valid temporary registration with the Condominium Authority under the Condominium Act and the final Condominium Plat shall have been approved for recordation by the City of Park City and each other applicable Governmental Authority necessary or desirable for the establishment of the Condominium and the marketing and sale of Fractional Units (or interests therein), in each case, in accordance with applicable Law.  The Administrative Agent shall have Approved the Fractional Ownership Documents.

(f)     Organizational Documents.  The Administrative Agent shall have received certified copies of the following in respect of each of the Borrower, the Sponsor and the Borrower's Member: (i) certificate of incorporation, certificate of formation, certificate of limited partnership, certificate of authority to conduct business, or other similar document, as applicable, (ii) bylaws, partnership agreement, operating agreement or other corporate or operating agreement or document, as the case may be, (iii) resolutions or consents of each entity authorizing the consummation of the transactions contemplated hereby and by the other Loan Documents, (iv) certificate of good standing of each entity in the state in which such entity is organized, and qualified to do business and (v) incumbency certificate certifying the signatures of those individuals executing any of the Loan Documents on behalf of the Borrower, the Sponsor and the Borrower's Member, in each case, in form and substance satisfactory to the Administrative Agent.

(g)     Consents and Approvals.  The Administrative Agent shall have received copies or other evidence of all material consents, licenses and approvals, if any, required in connection with the execution, delivery and performance by the Borrower and the validity and enforceability, of the Loan Documents, and such consents, licenses and approvals shall be in full force and effect.

(h)     Legal Opinions.  The Administrative Agent shall have received legal opinions from counsel satisfactory to the Administrative Agent with respect to (i) the due organization and existence of each of the Borrower, the Sponsor and the Borrower's Member, (ii) the due execution, delivery, authority, enforceability of this Agreement, the Notes, the Security Instrument, the Sponsor Documents and each of the other Loan Documents and (iii) such other matters as the Administrative Agent or its counsel may require, all such opinions shall be in form, scope and substance satisfactory to the Administrative Agent and the Administrative Agent's counsel in their sole discretion.

(i)     Payment of Fees.  The Borrower shall have paid all fees and expenses required to be paid on or prior to the Requested Advance Date by the Borrower under this Agreement, the Mandate Letter and all other Loan Documents, including, without limitation, all out-of-pocket expenses actually incurred by the Administrative Agent (including, without limitation, all attorneys' fees and disbursements, Appraisal fees, fees relating to review of all environmental, engineering, insurance and other reports, consultant fees) recording and filing fees, mortgage taxes and other fees and taxes, survey fees, title search fees, title insurance premiums, all origination fees and brokerage commissions, excluding all costs incurred in connection with the syndication of the Loan as provided herein, as applicable.

49

(j)    Insurance. The Administrative Agent shall have received evidence of all Required Insurance satisfactory to the Administrative Agent in its reasonable discretion, and evidence of the payment of all premiums then due and payable for the existing policy period.

(k)    Title Insurance Policy. The Administrative Agent shall have received a paid ALTA Mortgagee Policy of Title Insurance, issued by the Title Company, naming the Administrative Agent as the insured party, insuring the lien of the Security Instrument as a first lien on the Trust Property, insuring any reciprocal easements and all utility, access, support and other easements necessary for the operation of the Property, subject only to the Permitted Exceptions (the *Title Insurance Policy*).

(l)    Searches. The Administrative Agent shall have received such UCC, bankruptcy, judgment, federal tax lien, building code violation and other searches of public records with respect to the Borrower, the Sponsor, the Borrower's Member and the Property, as the Administrative Agent has requested, showing results satisfactory to the Administrative Agent.

(m)    Survey. The Administrative Agent shall have received a survey, dated or certified as being correct as of a date no earlier than one hundred twenty (120) days prior to the Closing Date, satisfactory to the Administrative Agent and certified by a land surveyor registered in the State of Utah.

(n)    Environmental and Engineering Reports. The Administrative Agent shall have received a reliance letter addressed to the Administrative Agent entitling the Administrative Agent and the Lenders to rely on the Environmental Reports and an engineering report (or reports) of one or more qualified inspection firms Approved by the Administrative Agent (and either addressed to the Administrative Agent or accompanied by a reliance letter entitling the Administrative Agent and the Lenders to rely on such engineering report), indicating the environmental and engineering condition, respectively, of the Property, and in each case, satisfactory to the Administrative Agent.

(o)    Appraisal. The Administrative Agent shall have received an Appraisal indicating an Appraised Value and otherwise in form and substance satisfactory to the Administrative Agent in all respects.

(p)    Hotel Management Agreement. The Administrative Agent shall have received a copy of the Hotel Management Agreement, certified by the Borrower as true, complete and correct.

(q)    Development Agreement. The Administrative Agent shall have received a copy of the Development Agreement, certified by the Borrower as true, complete and correct.

(r)    Material Operating Agreements. The Administrative Agent shall have received executed copies of all Material Operating Agreements, each certified by the Borrower as true, complete and correct.

84076228_9_084291_69909

(s)     Land Use and Zoning.  The Administrative Agent shall have received evidence (including, without limitation, a zoning endorsement to the Title Insurance Policy in form and substance reasonably acceptable to the Administrative Agent) that the Property does and, upon Substantial Completion of the Additional Improvements, will comply with all applicable zoning, subdivision, land use, environmental and building Laws.

(t)     Preliminary Project Report.  The Administrative Agent shall have received the Preliminary Project Report in form and substance satisfactory to the Administrative Agent.

(u)     Pre-Sale Requirement.  The Borrower shall have met the Pre-Sale Requirement.

(v)     Intentionally Omitted.

(w)     Plans and Specifications.  The Administrative Agent shall have Approved any current design drawings or preliminary plans and specifications for the Project.

(x)     Approved Project Budget.  The Borrower shall have delivered to the Administrative Agent a preliminary Project Budget setting forth the Borrower's best estimate, based on diligent inquiry, of all Project Costs and the Administrative Agent shall have Approved such Project Budget in its discretion.

(y)     Construction Schedule.  The Administrative Agent shall have received a preliminary Construction Schedule from the Borrower and shall have Approved the same.

(z)     Architect's Contract.  The Administrative Agent shall have Approved of the Architect and the Borrower shall have delivered to the Administrative Agent fully executed copies of the Architect's Contract and any other design professional's agreements, if any, which Architect's Contract and other agreements shall be Approved by the Administrative Agent, which Approval shall not be unreasonably withheld.  The Administrative Agent shall have received an executed original of the Architect's Certificate.

(aa)     Intentionally Omitted.

(bb)     Permits.  All Existing Permits shall be in full force and effect and shall have not been revoked, terminated or modified except as Approved by the Administrative Agent.

(cc)     Consent.  The Administrative Agent shall have received an executed original of the Consent to Assignment from the Architect.

(dd)     Legal Opinions.  The Administrative Agent shall have received legal opinions from counsel satisfactory to the Administrative Agent with respect to such matters as the Administrative Agent or its counsel may require, all such opinions shall be in form, scope and substance satisfactory to the Administrative Agent and the Administrative Agent's counsel in their sole discretion.

51

Section 3.2    Conditions Precedent to Construction Advances.    In addition to the conditions precedent set forth in Section 3.1, the Obligation of each Lender to make the initial Construction Advance shall be subject to the following conditions precedent:

(a)    General Contractor's Agreement. The Borrower and the General Contractor shall have entered into the General Contractor's Agreement in form and substance Approved by the Administrative Agent, which Approval shall not be unreasonably withheld, General Contractor and the Borrower shall have delivered to the Administrative Agent fully executed copies of such General Contractor's Agreement. The Administrative Agent shall have received an executed original of the General Contractor's Certificate.

(b)    Construction Manager's Agreement. The Borrower and the Construction Manager shall have entered into the Construction Manager's Agreement in form and substance Approved by the Administrative Agent, which Approval shall not be unreasonably withheld, and the Borrower shall have delivered to the Administrative Agent fully executed copies of such Construction Manager's Agreement.

(c)    Consents. The Administrative Agent shall have received an executed original of the Consent to Assignment from each of the General Contractor and the Construction Manager.

(d)    Plans and Specifications. The Administrative Agent shall have Approved the Plans and Specifications and shall have received two (2) complete copies of such approved Plans and Specifications, together with a certificate of a duly authorized officer of the Borrower certifying as to the completeness and the compliance with all Laws for such Plans and Specifications. The Borrower shall have delivered to the Administrative Agent a certificate duly executed on behalf of the Borrower stating that the Plans and Specifications (A) comply with all Laws, all Permits, and all restrictions, covenants and easements affecting the Property; (B) have been approved by the General Contractor and the Architect; and (C) have been approved by each Governmental Authority required to permit the construction of the Additional Improvements.

(e)    Approved Project Budget. The Borrower shall have delivered to the Administrative Agent a final Project Budget setting forth all Project Costs and the Administrative Agent shall have Approved such Project Budget in its discretion.

(f)    Construction Schedule. The Administrative Agent shall have received the Construction Schedule from the Borrower and shall have Approved the same.

(g)    Performance Bonds. The Administrative Agent shall have received the Performance Bonds.

(h)    Standard Form of Contract. The Administrative Agent and the Construction Consultant shall have received from the Borrower a copy of the standard form of contract or subcontract to be used by the General Contractor, which standard form shall be Approved by the Administrative Agent, which approval shall not be unreasonably withheld.

(i)    Preliminary Project Report.  The Administrative Agent shall have received an update to the Preliminary Project Report, reflecting the adoption of the Plans and Specifications, Project Budget and Construction Schedule, in form and substance satisfactory to the Administrative Agent.

(j)    Condominium. (i) The final Condominium Plat shall have been recorded in the land records of Summit County, Utah; (ii) the Title Company shall have issued an endorsement to the Title Insurance Policy in the form of Exhibit AA insuring that the Condominium has been validly formed and that the Lien of the Security Instrument remains a valid and perfected Lien on the Fractional Ownership Units, subject to no additional exceptions other than the terms and conditions of the Fractional Ownership Documents and (iii) the Borrower's registration of the Project with the Condominium Authority under the Condominium Act shall have been declared final.

(k)    Bona Fide Sales Contracts.  Qualified Reservations providing for Net Sales Proceeds sufficient to meet the Pre-Sale Requirement shall have been converted in accordance with applicable Law to Bona Fide Sales Contracts with respect to which all rights of rescission or cancellation shall have expired without having been exercised.

(l)    Construction Contingency Escrow.  The Borrower shall have funded the Construction Contingency Escrow in accordance with Section 2.17.

Section 3.3    Conditions Precedent to Each Advance.  The Obligation of each Lender to make any Advance of the Loan (including the Initial Advance) shall be subject to the following conditions precedent and each of such conditions shall be completed to the Administrative Agent's satisfaction:

(a)    Representation and Warranties; Compliance with Conditions.  Each of the representations and warranties of each Loan Party contained in this Agreement, any certificate delivered pursuant hereto or any other Loan Document shall be true and correct on and as of the date of this Agreement and the Requested Advance Date with the same effect as if made on and as of such date; each Loan Party shall be in compliance in all material respects with all terms and conditions set forth in this Agreement and in each other Loan Document on its part to be observed or performed; and no Default or Event of Default shall have occurred and be continuing.

(b)    "Bring-Down Certificate".  The Borrower shall provide to the Administrative Agent a certificate of the Borrower and the Sponsor that the representations and warranties made by each Loan Party in the Loan Documents or otherwise made by or on behalf of the Borrower, the Borrower's Member and the Sponsor in connection therewith or after the date thereof shall have been true, correct and complete in all material respects on the date on which made and shall continue to be true and correct in all material respects on the applicable Requested Advance Date.

53

(c)     Draw Request.  The Administrative Agent shall have received a Draw Request and a Rate Request complying with the provisions of this Agreement with respect to such Advance.

(d)     Construction Costs.  If any portion of the proceeds of the requested Advance will be used by the Borrower to fund Construction Costs:

(i)     Approval of Major Contractors/Major Subcontractors.  The Administrative Agent and the Construction Consultant shall have Approved all Major Contractors and Major Subcontractors who have been, or, to the extent identified by the Borrower on or prior to the Requested Advance Date, will be supplying labor or materials for the Project.

(ii)     Construction Contracts.  The Borrower shall have delivered to the Administrative Agent, and the Administrative Agent shall have Approved, (i) a list of all Trade Contractors who have been or will be supplying labor or materials for the Additional Improvements and (ii) all Construction Contracts of such Trade Contractors executed on or before the Requested Advance Date.

(iii)     Permits.  The Administrative Agent shall have received (A) copies of all Permits necessary to commence construction of the Additional Improvements as contemplated by the Plans and Specifications, including, without limitation, all relevant permits, licenses and approvals, and (B) with respect to any Permits that have not been obtained as of the applicable Requested Advance Date, a list of such Permits along with a certificate from the Borrower stating that to the Borrower's knowledge after due inquiry, such Permits are not currently obtainable based upon the status of the Project but will be readily achievable in due course in accordance with the Construction Schedule.

(e)     Certificate for Payment.  To the extent applicable (i.e., if the General Contractor has performed any work or is otherwise entitled to receive or has received a payment pursuant to the terms of its General Contractor's Agreement), the Administrative Agent shall have received a Certificate for Payment (AIA Document No. G702) containing the certification of the Architect as to the accuracy of the information set forth therein, together with invoices (to the extent such items are invoiced) or other reasonably satisfactory evidence of the cost of such item, relating to all items of Project Costs covered thereby and accompanied by a cost breakdown showing the cost of work on, and the cost of materials incorporated into, the Improvements to the date of the Draw Request.

(f)     Construction Consultant's Report.  The Administrative Agent shall have received a current report prepared by the Construction Consultant satisfactory to the Administrative Agent.

(g)     Lien Waivers.  The Administrative Agent shall have received duly executed lien waivers in the form set forth in Exhibit Q from all Major Contractors and Major

54

Subcontractors for all work performed, and all labor or material supplied for which payment thereof has been made prior to the date of such Advance.

(h)   Affirmation of Payment. To the extent applicable (i.e., if the General Contractor has performed any work or is otherwise entitled to receive or has received a payment pursuant to the terms of its General Contractor's Agreement), the Administrative Agent shall have received a Contractor's Affidavit of Payment of Debts and Claims in the form of AIA Document G706.

(i)   Title Insurance "Date Down". The Administrative Agent shall have received a "date down" endorsement to the Title Insurance Policy and other endorsements reasonably required by the Administrative Agent, dated the date of such Requested Advance Date, insuring the Security Instrument as a first lien on the Mortgaged Property, subject only to (A) the Permitted Exceptions and (B) any other Liens consented to in writing by the Administrative Agent.

(j)   Evidence of Sufficiency of Funds. The Borrower shall deliver to the Administrative Agent evidence satisfactory to the Administrative Agent that the proceeds of the Loan, together with Borrower's Equity Investment and any Deposits made by Purchasers under Bona Fide Sales Contracts, will be sufficient to cover all Project Costs reasonably anticipated to be incurred and to satisfy the obligations of the Borrower to the Administrative Agent under this Agreement, such evidence to include an Anticipated Cost Report in the form set forth in Exhibit R prepared by the General Contractor which sets forth the anticipated costs to complete construction of the Improvements, after giving effect to costs incurred during the previous month.

(k)   Material Adverse Effect. There shall be no facts or circumstances which shall have caused or could be reasonably expected to cause a Material Adverse Effect.

(l)   No Damage. The Improvements shall not have been injured or damaged by fire, explosion, accident, flood or other casualty other than de minimis damage, unless the Administrative Agent shall have received insurance proceeds sufficient in the judgment of the Administrative Agent to effect the satisfactory restoration of the Improvements and to permit the completion of the Additional Improvements prior to the Completion Date.

(m)   Major Contracts. No Advance shall be made by Lenders with regard to work done by or on behalf of any Major Contractor or Major Subcontractor unless the Borrower shall have delivered to the Construction Consultant an original fully executed contract as to such Major Contractor or Major Subcontractor, each in form and substance reasonably satisfactory to the Administrative Agent.

(n)   Leases. The Administrative Agent shall have received copies of each existing Lease (if any), not already provided to the Administrative Agent, certified by the Borrower as true, complete and correct.

84076228_9_084291_69909

(o)     Taxes.   The Borrower shall provide evidence satisfactory to the Administrative Agent and its counsel that all Taxes in respect to the Borrower or the Improvements that are due and payable have been paid subject to the Borrower's right to contest such Taxes as provided in Section 6.2(f).

(p)     No Injunction.   No Law shall have been adopted, no order, judgment or decree of any Governmental Authority shall have been issued, and no litigation shall be pending or threatened, which in the good faith judgment of the Administrative Agent would enjoin, prohibit or restrain, or impose or result in the imposition of any material adverse condition upon, the making or repayment of the Loan, the construction of the Additional Improvements or the consummation of the transactions contemplated hereby.

(q)     Other Documents or Deliveries.   The Borrower shall have delivered such other documents and certificates as the Administrative Agent or its counsel may reasonably require.

Section 3.4   Conditions of Final Advance.   In addition to the conditions set forth in Sections 3.1 and 3.2, each Lender's Obligation to make its Ratable Share of the final Advance in respect of Retainage pursuant to this Agreement shall be subject to the following conditions precedent:

(a)     Final Completion.   Final Completion shall have occurred in accordance with the Plans and Specifications and the Construction Consultant shall have delivered a certification to the Administrative Agent that Final Completion has occurred substantially in accordance with the Plans and Specifications.

(b)     Certificate.   The Administrative Agent shall have received the Architect's Certificate.

(c)     Lien Waivers.   The Administrative Agent shall have received duly executed final lien waivers in the form set forth in Exhibit Q from the General Contractor and all Trade Contractors who have performed work or provided materials or services, for the work so performed or the supplied labor or materials supplied.

(d)     Final Survey.   The Administrative Agent shall have received a final ALTA as-built survey (the *As-Built Survey*) acceptable to the Administrative Agent showing the as-built location of all Improvements, certified to be in conformance with the requirements set forth on Exhibit S.

(e)     Payment of Costs.   The Administrative Agent shall have received evidence satisfactory to the Administrative Agent that all sums due in connection with the construction of the Additional Improvements have been paid in full (or will be paid out of the funds requested to be advanced) and that no party claims or, following payment out of such funds, will have a right to claim any statutory or common law Lien arising out of the construction of the Improvements or the supplying of labor, material or services in connection therewith.

56