(f)    Title Insurance Policy. The Administrative Agent shall have received an endorsement to the Title Insurance Policy referencing the As-Built Survey and indicating no exceptions other than those approved by the Administrative Agent in its reasonable discretion.

(g)    Other Documents. The Administrative Agent shall have received such documents, letters, affidavits, reports and assurances, as the Administrative Agent, the Administrative Agent's counsel and the Construction Consultant may reasonably require, including, without limitation, completed AIA Form G704 (Certificate of Substantial Completion) and completed AIA Form G707 (Consent of Surety to Final Payments).

## ARTICLE 4

## ACCOUNTS/CASH MANAGEMENT

Section 4.1    Accounts/Cash Management. (a) Establishment of Accounts. The Borrower shall establish prior to the initial closing of the sale of any interest in a Fractional Ownership Unit and maintain, at the Depository, a segregated lockbox and concentration account with the name "Sky Lodge Sales Proceeds Account pledged to WestLB AG (as agent and secured party)" (the *Sales Proceeds Account*). The Borrower shall also establish prior to the Opening Date and maintain, at the Depository, (i) a segregated lockbox and concentration account with the name "Sky Lodge Lockbox Account pledged to WestLB AG (as agent and secured party)" (the *Lockbox Account*) and (ii) a segregated operating account, with the name "Sky Lodge Operating Account pledged to WestLB AG (as agent and secured party)" (the *Operating Account*). The Lockbox Account, the Sales Proceeds Account and the Reserve Accounts set forth in Section 4.1(b) are hereinafter referred to as the *Accounts*. The Administrative Agent may, in its sole discretion, rename the Accounts from time to time to reflect changes in the identity of the Administrative Agent.

(b)    Accounts. The Borrower shall establish prior to the Opening Date and maintain at the Depository, the following segregated securities accounts (each, a *Reserve Account* and, collectively, the *Reserve Accounts*):

(i)    an account captioned "Sky Lodge Tax and Insurance Account pledged to WestLB AG" for the retention of collateral in respect of tax and insurance premiums for the Property (the *Tax and Insurance Account*) into which shall be funded on the Opening Date an amount determined by the Administrative Agent to be equal to the sum of one year's Taxes on the Property plus the aggregate annual insurance premium for the Required Insurance;

(ii)    an account captioned "Sky Lodge FF&E Reserve Account pledged to WestLB AG" (*FF&E Reserve Account*);

(iii)    an account captioned "Sky Lodge HOA Reserve Account pledged to WestLB AG" (the *HOA Reserve Account*);

**57**

(iv)    an account captioned "Sky Lodge Debt Service Reserve Account
pledged to WestLB AG" (the *Debt Service Reserve Account*).

(c)    Type and Control of Accounts.  The Borrower represents, warrants,
covenants and agrees that (i) each of the Accounts shall be an Eligible Account and shall be
maintained as a "securities account" (as in Section 8-501(a) of the UCC); (ii) the Administrative
Agent shall be entitled to exercise the rights that comprise any financial asset credited to such
Accounts; (iii) the Borrower shall have no right to give entitlement orders with respect to such
Accounts and, except as provided in this Agreement, no Account Collateral shall be released to
the Borrower from such Accounts; and (iv) all securities or other property underlying any
financial assets credited to the Accounts shall be registered in the name of the Depository or
indorsed to the Depository or in blank and in no case will any financial asset credited to the
Accounts be registered in the name of the Borrower, payable to the order of the Borrower or
specially indorsed to the Borrower.

(d)    Dominion and Control.  The Accounts, and all funds deposited in the
Accounts shall be under the sole dominion and control of the Administrative Agent and, subject
to the terms of this Agreement, the Administrative Agent shall have the sole right to make or
authorize withdrawals, disbursements or transfers from the Accounts and to exercise any rights
of the Administrative Agent hereunder with respect to such funds.

(e)    Maintaining the Accounts. (i) The Borrower agrees that: (A) the Accounts
shall be maintained in accordance with the terms hereof and of the Depository Agreement; and
(B) prior to the indefeasible re-payment in full of the Loan and indefeasible satisfaction of the
Borrower's Obligations under the Loan Documents, the Depository Agreement shall not be
amended, supplemented or modified without the prior written consent of the Administrative
Agent.  The Borrower shall not substitute any other bank as the Depository with respect to any of
the Accounts (x) without the prior written consent of the Administrative Agent and (y) unless
such bank shall execute and deliver to the Administrative Agent a depository agreement in form
and substance reasonably acceptable to the Administrative Agent.

(ii) So long as no Event of Default shall have occurred and be continuing, upon
the written request by the Borrower (delivered not more than twice in any thirty (30 day period),
the Administrative Agent shall direct the Depository to invest the funds held in the Accounts
pursuant to the written direction of the Borrower, in any of the Permitted Investments, subject to
the terms of the Depository Agreement.  All interest or other earnings with respect to the funds
held in the Accounts as a result of such investments shall be retained in the respective Accounts,
shall be deemed part of the Account Collateral and shall be disbursed, invested or applied in
accordance with the provisions of this Agreement.  The Administrative Agent shall bear no
responsibility for any loss occasioned by investment of the Account Collateral as herein
provided, by any delays in investing or reinvesting the Account Collateral, or by any failure to
achieve the maximum possible yield from the Account Collateral.

(f)    No Other Accounts.  The Borrower represents and warrants that there are
no deposit, securities or similar accounts (other than the Accounts) maintained by the Borrower
or any other Person with respect to the collection of Gross Revenues.  The Borrower agrees that,

84076228_9_084291_69909

until the Loan is indefeasibly re-paid in full and the indefeasible satisfaction of the Borrower's Obligations under the Loan Documents, neither the Borrower nor any other Person shall open any accounts for the collection or holding of Gross Revenues, except for the Accounts.  The foregoing shall not prohibit the Borrower from utilizing one or more separate accounts for the disbursement or retention of funds that have been transferred to the Borrower to the extent permitted under this Agreement and the other Loan Documents.

(g)    Miscellaneous Account Provisions.  The Accounts shall be subject to such applicable Laws, and such applicable regulations of the Board of Governors of the Federal Reserve System and of any other banking or governmental authority, as may now or hereafter be in effect.  All statements relating to the Accounts shall be issued simultaneously by the Depository to the Administrative Agent and the Borrower.  The Borrower shall be the beneficial owner of the Accounts for federal and state income tax purposes and shall report all income on the Accounts.  Returned items in the Lockbox Account will be charged against the Borrower in the succeeding month or, if later, when actually returned.  The Administrative Agent and the Lenders shall not be liable for any acts, omissions, errors in judgment or mistakes of fact or law with respect to the Account Collateral, except for those arising as a result of their gross negligence or willful misconduct.

Section 4.2    Collection of Gross Revenues.  (a) All Gross Revenues (including, without limitation, all Credit Card Receivables), which the Borrower may at any time hereafter directly or indirectly receive, in connection with the use and operation of the Property, shall be held in trust by the Borrower for the sole benefit of the Lenders, shall not be commingled with any other funds, and shall, within two (2) Business Days of receipt, be deposited directly into the Lockbox Account.  The Borrower hereby acknowledges and confirms that all Gross Revenues deposited in the Lockbox Account shall at all times be held and treated in accordance with the terms hereof, and the Borrower shall not have any right or authority, whether express or implied, to make use of, or withdraw all or any portion of, such Gross Revenues.  The Borrower and the Administrative Agent further acknowledge and confirm that any withdrawals of Gross Revenues from the Lockbox Account shall be made by the Administrative Agent only and any such withdrawals shall be made only in accordance with the terms, covenants and conditions of this Agreement.

(b)    The Borrower shall and shall cause the Hotel Operator to immediately notify all parties (the *Credit Card Companies*) under any existing or future Credit Card Company Agreements of the existence of this Agreement and shall direct or cause to be directed such parties in a letter in form and substance acceptable to the Administrative Agent to deliver directly into the Lockbox Account all Credit Card Receivables and any and all other payments to which the Borrower now or hereafter may be entitled under any Credit Card Company Agreement.

(c)    The Borrower shall direct all payments, whether in the form of checks, cash, drafts, money orders or any other payments of any kind whatsoever in payment of rent or any other item payable to the Borrower (collectively, *Rents*) from any tenants of the Property or any portion thereof (collectively, the *Tenants*) under any Leases, whether any such Lease is presently effective or executed after the date hereof, to be made directly to the Depository for

59

deposit into the Lockbox Account, in accordance with instructions from the Administrative Agent furnished by Depository. The Borrower covenants that concurrently with the execution of any Lease, the Borrower shall direct the Tenant thereunder in form and substance acceptable to the Administrative Agent to make all payments of Rents under such Lease directly to the Depository for deposit into the Lockbox Account. If, notwithstanding the preceding actions, the Borrower, the Hotel Operator, or any Affiliate of the Borrower comes into possession of any Rents (i) the Borrower, the Hotel Operator, or such Affiliate shall be deemed to hold such funds in trust for the Administrative Agent pursuant to the terms of this Agreement, and (ii) the Borrower shall, or shall cause the Hotel Operator or such Affiliate to cause such funds to be deposited in the Lockbox Account within two (2) Business Days after their receipt by the Borrower, the Hotel Operator or such Affiliate. Upon written request from the Administrative Agent, the Borrower shall provide such further evidence as the Administrative Agent reasonably requests that Tenants are paying all Rents directly in accordance with the foregoing, and shall take such other actions as the Administrative Agent shall reasonably request in order to accomplish the same. The Borrower shall not instruct any Tenant to pay Rents other than to Depository for deposit into the Lockbox Account, or in any way amend or supersede the foregoing instructions to a Tenant, without the prior written consent of the Administrative Agent in each instance.

(d)     If the Borrower or, in connection with the Property, the Hotel Operator or any Affiliate of the Borrower shall receive, any (i) real estate tax refunds, (ii) proceeds of any business interruption insurance or any other insurance other than fire, casualty and similar property damage insurance, (iii) damages or other payments in settlement of claims by the Borrower against third parties including any cancellation or surrender payments from Tenants or (iv) any other cash revenues from the operation of the Property, then the Borrower, the Hotel Operator or such Affiliate shall be deemed to hold such funds in trust for the Administrative Agent pursuant to this Agreement and the Borrower shall cause such funds, within two (2) Business Days of such receipt, to be remitted to the Lockbox Account, and in the case of real estate tax refunds, net of any reasonable and customary fees and disbursements of tax certiorari counsel or other third party deducted from the refund to pay such counsel's or third party's fee arrangement with the Borrower.

(e)     The provisions of this **Section 4.2** constitute an assertion by the Administrative Agent of its right to collect and retain the Rents pursuant to this Agreement and the other Loan Documents, and, to the extent provided in this **Section 4.2**, the Borrower hereby waives any rights it may have to collect the Rents directly. The Borrower hereby confirms and reaffirms the assignments to the Administrative Agent of the Rents from the Property contained in the Security Instrument and the perfection thereof by virtue of the requirement of the direct payment of all Rents to the Lockbox Account in accordance with the provisions of this Agreement, and hereby ratifies all of the terms and conditions of such assignments.   In furtherance thereof and in confirmation of the perfection of such assignments, the Borrower hereby further ratifies and confirms the grant to the Administrative Agent contained herein of a present perfected security interest in and to such Rents, as collateral for the payment, as and when due and payable, of all Obligations of the Borrower pursuant to the Loan Documents. The Borrower further (i) acknowledges that the Administrative Agent has directed the Borrower to send a notice to each of the Tenants, instructing such Tenants to pay all Rents payable under

Leases to the Lockbox Account, (ii) confirms that it has transmitted or will transmit such notices to each of such Tenants, and (iii) agrees that such direction by the Administrative Agent and transmittal by the Borrower shall constitute and be deemed an affirmative act of the Administrative Agent for purposes of establishing a perfected security interest in such Rents.

(f)     Neither the Borrower nor the Hotel Operator shall terminate, amend, revoke or alter any letter delivered pursuant to Sections 4.2(b) or (c) above by amending the Credit Card Company Agreements or any Lease or otherwise without the prior written consent of the Administrative Agent.

Section 4.3     Disbursement of Funds from Lockbox Account.  From and after the Opening Date and throughout the term of the Loan, so long as no DSCR Trigger or Event of Default has occurred and is continuing, on each Payment Date the Administrative Agent shall withdraw and direct the Depository to disburse from the Lockbox Account from funds deposited herein, and the Borrower hereby consents to such disbursement, the following amounts in the following order:

(i)     into the Tax and Insurance Account, an amount (the *Tax and Insurance Deposit*) equal to (A) one-twelfth (1/12) of the amount of the annual Taxes that will next become due and payable on the Property, plus (B) one-twelfth (1/12) of the amount of the annual premiums that will next become due and payable on the Required Policies, each as estimated and determined by the Administrative Agent;

(ii)     into the FF&E Reserve Account, an amount (the *FF&E Deposit*) equal to $[_____] per month;

(iii)     into the HOA Reserve Account, an amount (the *HOA Deposit*) determined by the Administrative Agent in its reasonable judgment, sufficient to fund any common charges payable under the Fractional Ownership Documents with respect to unsold Fractional Ownership Units for the applicable period; and

(iv)     the balance, to the Operating Account on a daily basis.

Section 4.4     Disbursements after a DSCR Trigger.  (a)  In the event the Debt Service Coverage Ratio for any Test Period is determined to be less than the Hurdle DSCR, or the Borrower fails to provide sufficient evidence that the Debt Service Coverage Ratio for such Test Period is at least equal to the Hurdle DSCR for such Test Period (each being a *DSCR Trigger*), then all funds in the Lockbox Account, and all funds thereafter deposited into such Lockbox Account, shall be deposited into the Debt Service Reserve Account.  So long as no Event of Default has occurred and is continuing, the Administrative Agent shall withdraw and direct the Depository to disburse from the Lockbox Account from funds deposited herein on each Payment Date (or as soon thereafter as such funds are available), and the Borrower hereby consents to such disbursement, the following amounts in the following order:

61

(i)      to the Administrative Agent, the sum of (A) the amount of principal and interest due and payable under the Notes, and all other obligations, liabilities or sums due and payable to the Lenders under the Loan Documents (including, without limitation, Hedge Payments, Hedge Breakage, LIBOR Breakage Costs, and the Unused Fee, to be applied in accordance with this Agreement, plus (B) any other amounts payable to the Administrative Agent pursuant to this Agreement, plus (C) any amounts due to the Depository under and pursuant to the Depository Agreement or in connection with the performance of any services in connection with the Loan (the *Monthly Debt Service Amount*);

(ii)     into the Tax and Insurance Account, an amount equal to the Tax and Insurance Deposit;

(iii)    into the FF&E Reserve Account, an amount equal to the FF&E Deposit;

(iv)    into the HOA Reserve Account, an amount equal to the HOA Deposit;

(v)     to the Operating Account, an amount equal to the amount specified in the Operating Budget for such month to be expended on account of Operating Expenses through the applicable calendar month (the *Monthly Budgeted Amount*); provided that the Borrower shall have delivered to Administrative Agent at least three (3) Business Days prior to such date a certification (the *Certification*) that all Operating Expenses previously paid to date and all Operating Expenses anticipated to be expended through the end of the current calendar year are in material compliance with the Operating Budget and that the Operating Expenses, in the aggregate, do not deviate from such Operating Budget by more than five percent (5%); and

(vi)    the balance if any shall remain in the Debt Service Reserve Account and shall be disbursed in accordance with subsection (b) below.

(b)      In the event that following a DSCR Trigger, the applicable Hurdle DSCR is not achieved within twelve (12) months following the date of the DSCR Trigger, subject to Section 4.5, the Administrative Agent may transfer any balance in the Debt Service Reserve Account from time to time to the Lenders to amortize the Outstanding Principal until the Hurdle DSCR has been achieved.  However, if the Hurdle DSCR is achieved and maintained for a twelve (12) month period following the date of the DSCR Trigger, as confirmed by an Approved Accountant, all funds in the Debt Service Reserve Account will be transferred to the Lockbox Account and disbursed in accordance with Section 4.3 and the Administrative Agent will direct the Depository to no longer transfer funds from the Lockbox Account to the Debt Service Reserve Account.

Section 4.5    Disbursements During an Event of Default.  (a) From and after the occurrence and during the continuance of an Event of Default, on or before the first Business

Day of each calendar month thereafter (or as soon thereafter as funds are available in the Lockbox Account), the Administrative Agent shall withdraw and direct the Depository to disburse from the Lockbox Account from funds deposited herein, and the Borrower hereby consents to such disbursement, the following amounts in the following order:

      (i)     to the Administrative Agent, an amount equal to the Monthly Debt Service Amount;

      (ii)    to the Tax and Insurance Account, an amount equal to the Tax and Insurance Deposit;

      (iii)   to the FF&E Reserve Account, an amount equal to the FF&E Deposit;

      (iv)   to the HOA Reserve Account, an amount equal to the HOA Deposit; and

      (v)    any remaining amounts to the Debt Service Reserve Account.

    (b)    Notwithstanding the foregoing, upon the acceleration of the Loan following the occurrence of an Event of Default, the Administrative Agent may, in its sole discretion, apply funds in the Accounts, and funds resulting from the liquidation of Permitted Investments contained in the Accounts, toward the satisfaction of the Borrower's Obligations under the Loan Documents in such manner as the Administrative Agent shall elect in its sole discretion.

    Section 4.6    Funding Reserve Accounts.  To the extent that on any Interest payment date under this Agreement, Gross Revenues received by or on behalf of the Borrower during the immediately preceding calendar month were not sufficient to fund the Tax and Insurance Deposit or the FF&E Deposit or the HOA Deposit for such calendar month, the Borrower shall on such Interest payment Date pay into the Tax and Insurance Account or the FF&E Account or the HOA Reserve Account such amounts as shall be necessary to fully fund the Tax and Insurance Deposit, the FF&E Deposit and the HOA Deposit for such preceding month. The Borrower acknowledges and agrees hereby that its obligation to fund the monthly Tax and Insurance Deposit, FF&E Deposit and the HOA Deposit is not conditional upon the Property generating adequate Gross Revenues for any particular period.

    Section 4.7    Disbursements from Tax and Insurance Account.  So long as no Event of Default shall have occurred and be continuing, all sums in the Tax and Insurance Account shall be held in the Tax and Insurance Account to pay said Taxes and insurance premiums with respect to the Required Insurance before the same become delinquent. The Borrower shall be responsible for ensuring the receipt by the Administrative Agent of all bills, invoices and statements for all Taxes within ten (10) Business Days after receipt thereof, and all bills, invoices and statements for insurance premiums within thirty (30) days prior to the due date thereof, to be paid from the Tax and Insurance Account, and so long as no Event of Default has occurred and is continuing, the Administrative Agent shall cause payment to be made to the

Governmental Authority or other party entitled thereto directly to the extent funds are available for such purpose in the Tax and Insurance Account.

   Section 4.8 Disbursements from FF&E Reserve Account.  So long as no Event of Default shall have occurred and be continuing, upon the Hotel Operator's application given to the Administrative Agent no more than once in any calendar month, the Administrative Agent shall or shall cause Depository to transfer to the Operating Account funds in the FF&E Reserve Account necessary for the renewal, replacement and addition of FF&E in accordance with the then-current Approved Operating Budget, and this Agreement.  Amounts on deposit in the FF&E Reserve Account may not be used by the Borrower to fund Project Costs in connection with the Additional Improvements.

   Section 4.9 Disbursements from HOA Reserve Account.  So long as no Event of Default shall have occurred and be continuing, all sums in the HOA Reserve Account shall be held in the HOA Reserve Account to pay any common charges payable under the Fractional Ownership Documents or Condominium Documents with respect to the Commercial Units or any unsold interests in any Fractional Ownership Units before the same become delinquent.  Upon the Hotel Operator's application given to the Administrative Agent no more than once in any calendar month, the Administrative Agent shall or shall cause Depository to transfer to the Operating Account funds in the HOA Reserve Account necessary for the payment of such common charges in accordance with the terms of the Fractional Ownership Documents.

   Section 4.10 Obligations Unaffected.  The Borrower's obligation to fund the foregoing accounts and make the foregoing payments under the Loan Documents shall in no way be conditioned on the existence or non-existence of funds in the Lockbox Account.  Nothing contained herein shall be construed to alter, change, modify or waive the Borrower's obligation to pay any and all amounts due and payable from time to time, as and when such amounts are due, under and pursuant to the Loan and the Loan Documents, including, without limitation, any and all payments of interest, principal, fees, costs and expenses due and payable from time to time thereunder.

   Section 4.11 Withdrawals.  Except as set forth in Section 4.1(e)(ii), the Administrative Agent shall be the only party permitted to effect any disbursement or withdrawal from the Accounts and the Borrower shall not be permitted to and shall not effect or attempt to effect any disbursement or withdrawal from any of such accounts (unless otherwise permitted pursuant to the Administrative Agent's written instructions); provided, the Credit Card Companies shall be permitted to debit the Lockbox Account by Automated Clearing House electronic debit pursuant to their Credit Card Agreement and in accordance with customary practices in the industry.

   Section 4.12 Creation of Security Interest in Accounts.  The Borrower hereby pledges, transfers and assigns to the Administrative Agent, and grants to the Administrative Agent, as additional security for the Obligations of the Borrower under the Loan Documents, a continuing perfected first priority security interest in and to, and a first lien upon:  (i) the Accounts and all amounts which may from time to time be on deposit in each of the Accounts; (ii) all of the Borrower's right, title and interest in and to all cash, property or rights transferred

84076228_9_084291_69909

to or deposited in each of the Accounts from time to time; (iii) all certificates and instruments, if any, from time to time representing or evidencing any such Account or any amount on deposit in any thereof, or any value received as a consequence of possession thereof, including all interest, dividends, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of, or in exchange for, any or all of the Accounts; (iv) all monies, chattel paper, checks, notes, bills of exchange, negotiable instruments, documents of title, money orders, commercial paper, and other security instruments, documents, deposits and credits from time to time in the possession of the Administrative Agent or the Lenders representing or evidencing such Accounts; (v) all other property, held in, credited to, or constituting part of any of the Accounts; (vi) all earnings and investments held in any Account in accordance with this Agreement; and (vii) to the extent not described above, any and all proceeds of the foregoing, (collectively, the *Account Collateral*). This Agreement and the pledge, assignment and grant of security interest made hereby secures payment of all Obligations of the Loan Parties under the Loan Documents in accordance with the provisions set forth herein. This Agreement shall be deemed, *inter alia,* a security agreement within the meaning of the UCC.

Section 4.13   <u>Certain Matters Regarding Lender following an Event of Default</u>. The Administrative Agent may exercise in respect of the Account Collateral all rights and remedies available to the Administrative Agent hereunder or under the other Loan Documents, or otherwise available at law or in equity. If an Event of Default exists, the Administrative Agent may exercise in respect of the Account Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all of the rights and remedies of a secured party upon default under the UCC then in effect in the applicable jurisdiction. Without limiting the generality of the foregoing, the Borrower agrees that, upon the occurrence and during the continuance of an Event of Default, it will have no further right to request or otherwise require the Administrative Agent to disburse funds from any Account in accordance with the terms of this Agreement, it being agreed that the Administrative Agent may, at its option, (i) direct the Depository to continue to hold the funds in the Accounts, (ii) continue, from time to time, to apply all or any portion of the funds held in the Accounts to any payment(s) which such funds could have been applied to prior to such Event of Default (or to pay expenses directly), to the extent and in such order and manner as the Administrative Agent in its sole discretion may determine, or (iii) direct the Depository to disburse all or any portion of the funds held in the Reserve Accounts or other Account Collateral then or thereafter held by the Depository to the Administrative Agent, in which event the Administrative Agent may apply the funds held in the Accounts or other Account Collateral to the Obligations, in any order and in such manner as the Administrative Agent may determine in its sole discretion. If an Event of Default has occurred and is continuing, the Administrative Agent may, at any time or from time to time: (1) collect, appropriate, redeem, realize upon or otherwise enforce its rights with respect to the Account Collateral, or any part thereof, without notice to the Borrower and without the need to institute any legal action, make demand to or upon the Borrower or any other Person, exhaust any other remedies or otherwise proceed to enforce its rights; (2) execute (in the name, place and stead of the Borrower) any endorsements, assignments or other instruments of conveyance which may be required for the withdrawal and negotiation of the Account Collateral; or (3) exercise all other rights and remedies available to the Administrative Agent hereunder and under any of the other Loan Documents. Notwithstanding anything to the contrary contained herein: (w) the Borrower shall remain liable under the Loan Documents to the extent set forth herein and therein to

perform all of its respective obligations thereunder, to the same extent as if this Agreement had not been executed; (x) the exercise by the Administrative Agent of any of its rights hereunder shall not release the Borrower from its obligations under any of the Loan Documents, nor shall it constitute an election of remedies by the Administrative Agent or a waiver by the Administrative Agent of any of its rights and remedies under the Loan Documents; (y) except as expressly set forth in this Agreement or in any of the other Loan Documents, the Administrative Agent shall not have any obligation or liability by reason of this Agreement, nor shall the Administrative Agent be obligated to perform any of the obligations or duties of the Borrower hereunder or to take any action, in each case, to collect or enforce any claim for payment assigned hereunder; and (z) the Administrative Agent shall not have to resort to using the Account Collateral before making demand upon or bringing an action against the Borrower under any Loan Document or under any guaranty given in connection with the Loan.    No failure on the part of the Administrative Agent to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right under this Agreement or the other Loan Documents.  The remedies provided in this Agreement, the Notes and the other Loan Documents are cumulative and not exclusive of any remedies provided at law or in equity.

Section 4.14    Representations and Warranties Regarding Account Collateral.  In addition to the other representations or warranties contained in this Agreement, the Borrower represents and warrants as follows:

(a)    The Borrower is the legal and beneficial owner of the Account Collateral free and clear of any Lien except for the security interests in favor of the Administrative Agent created by this Agreement and the other Loan Documents.  The Borrower, at its sole expense, shall defend the Borrower's and the Administrative Agent's title and interest in and to the Account Collateral against any and all third-party attachments, executions, Liens, claims, security interests or other encumbrances of any nature, however arising. Except for the Accounts, the Borrower currently does not maintain and will not open any accounts with any bank, savings and loan company, brokerage or investment services firm or related institution.

(b)    Other than the filing of the Financing Statements and the execution and delivery of the Depository Agreement, no consent of any other Person and no authorization, approval, or other action by, and no notice to or filing with, any Governmental Authority is required (i) for the pledge and assignment by the Borrower of the Account Collateral pursuant to this Agreement, (ii) for the execution, delivery or performance of this Agreement by Borrower or (iii) for the perfection or maintenance of the security interests created by this Agreement.

(c)    The pledge and assignment of the Account Collateral pursuant to this Agreement creates a valid security interest in the Account Collateral securing the payment of the Obligations of the Loan Parties under the Loan Documents.

(d)    Neither the Borrower nor the Hotel Operator, as applicable will amend, modify, assign or terminate any Credit Card Company Agreement, or enter into any new Credit Card Company Agreement, without the prior written consent of the Administrative Agent;

66

provided, that the Borrower, or Hotel Operator, as applicable, may, without the Administrative Agent's prior consent, amend, modify or terminate any Credit Card Company Agreement in accordance with industry standards for such agreements, provided such amendment, modification or termination is commercially reasonable and does not affect the Borrower's ability or obligation to deposit all Gross Revenues into the Lockbox Account within one (1) Business Day of receipt thereof.

(e)    The Borrower will not amend, modify, assign or terminate any Leases, or enter into any new Leases, without the prior written consent of the Administrative Agent which consent shall not be unreasonably withheld, conditioned or delayed.

Section 4.15    Covenants Regarding Account Collateral. The Borrower will not, without the prior written consent of the Administrative Agent, (a) sell, assign (by operation of law or otherwise), pledge, or grant any option with respect to, any of the Gross Revenues or any interest in the Account Collateral or (b) create or permit to exist any assignment, Lien, security interest, option or other charge or encumbrance upon or with respect to any of the Gross Revenues or any Account Collateral, except for the Liens in favor of the Administrative Agent under this Agreement and the other Loan Documents.   The Borrower will give the Administrative Agent not less than thirty (30) days' prior written notice of any change in the address of its chief executive office or its principal office. The Borrower agrees that all records of the Borrower with respect to the Account Collateral will be kept at the Borrower's principal office and will not be removed from such addresses without the prior written consent of the Administrative Agent.   The Borrower will not make or consent to any amendment or other modification or waiver with respect to any Account Collateral, or enter into any agreement, or permit to exist any restriction, with respect to any Account Collateral. The Borrower will, at its expense, defend the Administrative Agent's right, title and security interest in and to the Account Collateral against the claims of any Person. The Borrower will not take any action which would in any manner impair the enforceability of this Agreement or the security interests created hereby.   The Borrower will not enter into any credit agreement or other borrowing facility including a line of credit or overdraft line, with Depository. Nothing contained in this Section 4.15 shall impair or otherwise limit the Borrower's obligations to timely make the payments (including Interest and principal) required by the Notes and the other Loan Documents, it being understood that such payments shall be so timely made in accordance with the Loan Documents, regardless of the amounts on deposit in any Account. The Administrative Agent may, from time to time, at its sole option, perform any act which the Borrower agrees hereunder to perform and which the Borrower shall fail to perform after being requested in writing to so perform and the Administrative Agent may from time to time take any other action which Administrative Agent deems necessary for the maintenance, preservation or protection of any of the rights granted to the Administrative Agent hereunder. With respect to the powers conferred on the Administrative Agent hereunder, the Administrative Agent shall not have any duty as to the Accounts or the other Account Collateral, or any responsibility for (i) ascertaining or taking action with respect to any matters relative to the Accounts or the other Account Collateral, whether or not the Administrative Agent has or is deemed to have knowledge of such matters or (ii) taking any necessary steps to preserve rights against prior parties or any other rights pertaining to the Accounts or the other Account Collateral.

67

Section 4.16   Further Assurances.   The Borrower agrees that on the date hereof and at any time from time to time hereafter to execute and deliver promptly all instruments and documents (including any Financing Statement filing necessary to perfect the Administrative Agent's liens on, and security interests in, the Account Collateral), and take all further action that may be necessary or reasonably desirable or that the Administrative Agent may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable the Administrative Agent to exercise and enforce its rights and remedies hereunder with respect to any Account Collateral.

Section 4.17   Administrative Agent's Duties.   The powers conferred on the Administrative Agent hereunder are solely to protect its interests in the Account Collateral and shall not impose any duty upon it to exercise any such powers except as expressly provided herein. Except for the safe custody of any Account Collateral in its possession, the accounting for moneys actually received by it hereunder and its obligations to direct the Depository to make disbursements hereunder, the Administrative Agent shall have no duty as to any Account Collateral as to the taking of any necessary steps to preserve rights against any parties or any other rights pertaining to such Account Collateral. The Administrative Agent shall be deemed to have exercised reasonable care in the custody and preservation of any Account Collateral in its possession if such Account Collateral is accorded treatment substantially equal to that which it accords its own property.

Section 4.18   Cash Collateral.   In the event that the Borrower becomes the subject of a proceeding under the Bankruptcy Code, the parties hereto agree that the Account Collateral and the Rents (whether or not deposited in the Lockbox Account and whether or not then or thereafter due and payable) shall constitute "cash collateral" of the Administrative Agent under Section 363 of the Bankruptcy Code.

Section 4.19   Cash Management Fees.   All fees, costs and expenses associated with the Depository Agreement and Account Collateral shall be paid by the Borrower when due.


ARTICLE 5

REPRESENTATIONS AND WARRANTIES OF THE BORROWER

The Borrower represents and warrants to the Administrative Agent and the Lenders, with respect to the Borrower and the Sponsor, as the case may be, knowing that the Administrative Agent and the Lenders will rely on such representations and warranties in making the Advances of the Loan, that, as of the date hereof or as of the date otherwise specified below or to the extent updated pursuant to other provisions in this Agreement or in the other Loan Documents as of such subsequent date:

Section 5.1   Organization, Status and Authority.   (a) The Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Utah; (b) the Borrower has the power, authority and legal right to own, develop, operate, manage, sell and lease its properties and assets, carry on the business now being conducted and

68

proposed to be conducted by it, and to engage in the transactions contemplated by the Loan Documents; (c) the execution and delivery of the Loan Documents to which the Borrower is a party and the performance and observance of the provisions thereof have been duly authorized by all necessary limited liability company actions; and (d) the Borrower is a single purpose entity in compliance with the provisions of Section 6.5.

Section 5.2   Validity of Loan Documents. The Loan Documents are in all respects valid and legally binding obligations of the Loan Parties, enforceable against the Loan Parties in accordance with their respective terms (subject to the effects of bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally), and grant to the Administrative Agent for the benefit of the Lenders a direct, valid and enforceable first Lien on and security interest in and to the Property, including any and all Personal Property acquired by the Borrower after the date of this Agreement, subject only to the Permitted Exceptions and any other matters Approved by the Administrative Agent after the date hereof.

Section 5.3   Absence of Conflicts. The execution and delivery of the Loan Documents by each Loan Party do not, and the performance and observance by each Loan Party of its obligations thereunder will not, contravene or result in a breach of: (a) any provision of Loan Party's certificate of incorporation, certificate of formation, limited partnership certificate, bylaws, partnership agreement, operating agreement, the LLC Agreement or any similar constituent organizational document; (b) any Laws the breach of which would reasonably be expected to have a Material Adverse Effect; (c) any decree or judgment binding on such Loan Party; or (d) any agreement or instrument binding on such Loan Party or any of its properties the breach of which would reasonably be expected to have a Material Adverse Effect.

Section 5.4   Pending Litigation. There are no actions, suits, proceedings or investigations pending or, to the Borrower's knowledge, threatened against or affecting any Loan Party or the Property before or by any court or arbitrator or any Government Authority, which: (a) if determined adversely to any Loan Party or the Property would have a Material Adverse Effect; (b) could materially impair the value of any Collateral taken or to be taken by the Administrative Agent in connection with this Agreement or the other Loan Documents; (c) seek to restrain, enjoin or similarly prevent the consummation of or otherwise affect the transactions contemplated by this Agreement and the other Loan Documents or the construction of the Additional Improvements or use of the Property; or (d) questions the validity or legality of any such transactions, or seeks to recover damages or to obtain other relief in connection with any such transactions. To the Borrower's knowledge, there is no valid basis for any such action, suit, investigation or proceeding. No Loan Party is, in violation of any agreement, the violation of which would reasonably be expected to have a Material Adverse Effect, nor is any Loan Party in violation of any order, judgment or decree of any court, or any statute or governmental regulation to which such party is subject which would reasonably be expected to have a Material Adverse Effect.

Section 5.5   Financial Statements. The financial statements of any Loan Party previously delivered to the Administrative Agent are true and complete and fairly present: (a) the financial condition of such Loan Party, as of the dates thereof and the results of its operations for

84076228_9_084291_69909

the periods covered thereby; (b) that no Material Adverse Effect has occurred in respect of the assets, liabilities or financial conditions reflected therein since the dates thereof; (c) that no additional borrowings have been made by the Borrower since the date thereof other than the borrowing contemplated hereby; and (d) that each such Loan Party is Solvent.

Section 5.6    Taxes. All federal, state and other tax returns or valid extensions thereof of each Loan Party required by Law to be filed have been filed, all Taxes upon each Loan Party or its properties which are due and payable have been paid, and each Loan Party has set aside on its books provisions reasonably adequate for the payment of all taxes for periods subsequent to the periods for which such return shall have been filed.

Section 5.7    Title to Property. The Borrower will have good and marketable title to a fee estate in the Property, including any personal property, subject to no Liens in favor of any Person other than the Administrative Agent (and other than the Permitted Exceptions), and no conditional sale contract, chattel mortgage, chattel deed of trust, security agreement, lease, financing statement or other title retention agreement has been or will be executed in favor of any Person other than the Administrative Agent with respect to any of the Personal Property. The Security Instrument, when duly executed, delivered and recorded, will constitute a valid first Lien with respect to the Property, subject only to the Permitted Exceptions.

Section 5.8    Compliance with Laws. The Existing Improvements comply in all material respects with all applicable Laws. The Permits listed on **Exhibit T** are all of the Permits necessary for the commencement, continuance or completion of construction of the Additional Improvements and the use and operation of the Property as contemplated by the Loan Documents. The Borrower has obtained the Permits identified as "Existing Permits" on **Exhibit T**, and such Existing Permits have been validly issued by the appropriate authority and are in full force and effect. The Permits identified as "Pending Approvals" on **Exhibit T** are available as of right in the ordinary course of business and are anticipated to be issued as necessary to facilitate construction, ownership, use and operation of the Improvements in accordance with the planned time frames described in **Exhibit T**, and together with the Existing Permits constitute all of the Permits required for the construction, ownership, use and operation of the Improvements as contemplated under the terms of the Loan Documents, and all fees incidental to the issuance of such Permits are also identified on **Exhibit T**.

Section 5.9    Zoning. The zoning and other land use regulations governing the Property permit the construction of the Additional Improvements thereon and the operation of the Hotel (including the restaurants and spa) as contemplated hereby, on an as-of-right basis and no variance, conditional use permit, special use permit or other similar approval which has not been obtained is required for such construction or the use of the Improvements as the Hotel.

Section 5.10    Separate Lots. The Property is comprised of one or more parcels which constitute separate tax lots and do not constitute a portion of any other tax lot which is not a part of the Property.

Section 5.11    Assessments. To the Borrower's knowledge, there are no pending or proposed special or other assessments for public improvements or otherwise affecting the

70

Property, nor are there any contemplated improvements to the Property that may result in such special or other assessments.

Section 5.12  Flood Zone.  The Land is not in an area identified by the Federal Emergency Management Agency as a special flood hazard area.

Section 5.13  Boundaries.  All of the Improvements which are located on the Property lie wholly within the boundaries and building restriction lines of the Property, and no improvements on adjoining properties encroach upon the Property, and no easements or other encumbrances affecting the Property encroach upon any of the Improvements, so as to affect the value or marketability of the Property except those which are insured against by the Title Insurance Policy.

Section 5.14  Availability of Utilities.  All utility services required or necessary and sufficient for the use and operation of the Property for its intended purposes in compliance with all requirements of applicable Law, the Required Insurance policies and the Fractional Ownership Documents are presently available to the boundaries of the Property through dedicated public rights of way or through perpetual private easements, including, but not limited to, water supply, storm and sanitary sewer, gas, electric and telephone facilities, cable television and drainage.

Section 5.15  Moratoria.  To the Borrower's knowledge, there are no proposed or contemplated building moratoria or similar actions which could detrimentally affect the Borrower's right to construct or operate the Property.

Section 5.16  Access.  Access, vehicular and otherwise, to the Land, sufficient to comply with all requirements of applicable Law is provided by frontage of the Land on Lower Main Street/Heber Avenue, which is a public way.  The Improvements include parking located on the Land sufficient to comply with all requirements of applicable Law.  All curb cuts and driveway permits necessary for access to the Property from any public street are existing or have been fully approved by the appropriate Governmental Authority.

Section 5.17  Condition of the Property.  Neither the Property nor any portion thereof is now damaged or injured in any material respect as a result of any fire, explosion, accident, flood or other casualty.  There are no proceedings pending, or, to the Borrower's knowledge, threatened, to acquire by power of condemnation or eminent domain the Property, or any interest therein, or to enjoin or similarly prevent the construction or use of the Improvements.

Section 5.18  Insurance.  The Borrower has obtained and has delivered to the Administrative Agent original or certified copies of all Required Insurance, with all premiums prepaid thereunder, reflecting the insurance coverages, amounts and other requirements set forth in this Agreement.  No claims have been made under any Required Insurance policies, and no Person, including the Borrower, has done, by act or omission, anything which would impair the coverage of any of the Required Insurance.

71

Section 5.19   Agreements.

(a)   Hotel Management Agreement. (i) The Hotel Management Agreement is in full force and effect; (ii) both the Borrower and, to the Borrower's knowledge, the Hotel Operator are in compliance in all material respects with their respective obligations under the Hotel Management Agreement; and (iii) all incentive fees payable to the Hotel Operator under the Hotel Management Agreement are effectively subordinate to all debt service payments due to the Lenders under this Agreement.

(b)   Development Agreement. (i) The Development Agreement is in full force and effect; (ii) both the Borrower and, to the Borrower's knowledge, the Developer are in compliance in all material respects with their respective obligations under the Development Agreement; and (iii) all incentive fees payable to the Developer under the Development Agreement are effectively subordinate to all debt service payments due to the Lenders under this Agreement.

(c)   Leases. Except as set forth on Exhibit U, there are no Leases affecting the Property as of the Closing Date. With respect to Leases set forth on Exhibit U: (i) the rent roll attached hereto as Exhibit U is true, complete and correct and the Property is not subject to any Leases other than the Leases described in Exhibit U, (ii) the Leases identified on Exhibit U are in full force and effect and there are no defaults thereunder by either party, (iii) the Borrower has delivered copies of all Leases to the Administrative Agent and the copies of the Leases delivered to the Administrative Agent are true, complete and correct, and there are no oral agreements with respect thereto, (iv) no Rent (including security deposits) has been paid more than one month in advance of its due date, (v) (A) except as set forth on Exhibit U, all work to be performed by the Borrower under each Lease has been performed as required as of the date that this representation is being made (or deemed remade pursuant to any other provision of this Agreement) and all such work has been accepted by the applicable Tenant, (B) except as set forth on Exhibit U, any payments, free rent, partial rent, rebate of rent or other payments, credits, allowances or abatements required to be given by the Borrower to any Tenant as of the date that this representation is being made (or deemed remade pursuant to any other provision of this Agreement) has already been received by such Tenant, (C) except as set forth on Exhibit U, all of the obligations and duties of landlord under the Leases that are due or are to be performed (as applicable) on or prior to the date hereof have been fulfilled, and there are no pending claims asserted by any Tenant in writing for offsets or abatements against Rent or any other monetary claim, (D) except as set forth on Exhibit U, no brokerage or leasing commission or other compensation is or will be due or payable to any Person with respect to or on account of the current term of any of the Leases, other than in connection with (1) the leasing of any space pursuant to a right of first offer or first refusal or other right or option expressly set forth in the Lease, the effective date of which has not occurred as of the date hereof or (2) the failure timely to exercise, or the expiration of, any right to terminate or cancel any of the Leases and Exhibit U sets forth the commissions payable in the circumstances described in the immediately preceding clauses (1) and (2), (vi) Exhibit U sets forth all security deposits and letters of credit held by or on behalf of the Borrower under the Leases; all such security deposits held by the Borrower are held in accordance with all applicable Laws and the terms of the applicable Leases; and any security deposits or letters of credit which have previously been drawn upon or applied have

72

been redeposited with the Borrower such that the Borrower is currently holding all security deposits and letters of credit required under the applicable Leases prior to a default thereunder, (vii) the Borrower has not given or suffered any present assignment, pledge or Lien in respect of any of the Leases or its interests thereunder, except pursuant to the Loan Documents, and the Borrower has the sole right to collect Rents and other amounts due under the Leases, (viii) except as set forth on **Exhibit U**, no Tenant pursuant to any Lease is more than 30 days in arrears on its Rent or other amounts due to the landlord under its Lease and the Leases are in full force and effect and there are no other monetary or material non monetary defaults thereunder by either party thereto and, to the best of the Borrower's knowledge, there are no conditions that, with the passage of time or the giving of notice, or both, would constitute a material non monetary default thereunder and (ix) none of the Leases contains any option to purchase, right of first refusal or right of first offer to purchase or any right to terminate the Lease (except in the event of the condemnation or destruction of all or a portion of the applicable Property, as more specifically set forth in the Leases).

(d)    Reservations. Except as set forth on **Exhibit I**, there are no Reservations or other rights to purchase in effect with respect to any of the Fractional Ownership Units. **Exhibit I** fully and accurately describes each Reservation entered into by or on behalf of the Borrower including the name of the applicable prospective Purchaser, the affected unit, the proposed purchase price and the amount of any deposit being held by the Borrower.

(e)    Material Operating Agreements. Except as set forth on **Exhibit V**, there are no Material Operating Agreements. Each Material Operating Agreement has been entered into by the Borrower on an arm's-length basis in the ordinary course of business and provides for the payment of fees in amounts and upon terms not less favorable to it than market rates and terms. Each of the Material Operating Agreements is the legal, valid and binding obligation of the Borrower and, to the Borrower's knowledge, each other party thereto, and enforceable against the Borrower and, to the Borrower's knowledge, each other party thereto, subject in each case to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles. Except as set forth on **Exhibit V**, there are no defaults, breaches or violations of any Material Operating Agreement by the Borrower or, to the Borrower's knowledge, any other party thereto, and to the Borrower's knowledge, there are no conditions that, with the passage of time or the giving of notice, or both, would constitute a default by any party thereunder. The Borrower has heretofore delivered true and complete copies of all Material Operating Agreements to the Administrative Agent.

(f)    Other Contracts. The Borrower has made no contract or arrangement of any kind or type whatsoever (whether oral or written, formal or informal), the performance of which by the other party thereto could give rise to a Lien on the Property, except for contracts (all of which have been disclosed in writing to the Administrative Agent) made by the Borrower with parties who have executed and delivered to the Administrative Agent, lien waivers required or other similar certifications in form satisfactory to the Administrative Agent, and which, in the opinion of the Administrative Agent's counsel, will not create rights in existing or future Lien claimants which may be superior to the Lien of the Security Instrument, and except for matters

73

less than FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) in the aggregate that are insured against by the Title Company pursuant to the Title Policy.

Section 5.20   Liquor License; Assignment of Liquor License and other Licenses and Permits. The Borrower or the Hotel Operator has or will have as required by applicable Law a valid liquor license (the *Liquor License*) which will be sufficient to enable the Borrower to sell beer, wine and all other alcoholic beverages at the Hotel and no other license or approval is required in order for the Borrower to sell alcoholic beverages at the Property.

Section 5.21   No Default. No Default or Event of Default exists and there are no facts, events or circumstances which could reasonably be expected to result in a Default or Event of Default. Neither the Borrower, nor any other Loan Party is in violation of, or in default under, any term of its governing documents or, to the Borrower's knowledge, any agreement, instrument, judgment, decree, injunction or Law (including, without limitation, any of the foregoing relating to environmental, zoning, land use, city planning or similar matters) applicable to it or by which any of its assets is bound.

Section 5.22   FIRPTA. The Borrower is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code.

Section 5.23   SPE Provisions. The single purpose entity requirements set forth in Section 6.5 have been expressly set forth in the Borrower's formation documents (i.e., Certificate of Formation and LLC Agreement), which documents have been duly filed with the appropriate governmental filing office of the Borrower's jurisdiction of formation.

Section 5.24   Organizational Structure.  The organizational chart, which is annexed hereto as **Exhibit W**, accurately sets forth (i) the identity of all holders of direct or indirect (i.e., through intermediate entities) beneficial interests in the Borrower and (ii) the relative percentage interests of such holders in the Borrower and such intermediate entities. Easy Street Holding LLC, a Delaware limited liability company, is the sole member of the Mezzanine Borrower. There are no outstanding subscriptions, options, warrants, rights, convertible or exchangeable securities or other agreements or commitments of any character obligating the Borrower to issue any securities or other equity or debt interests. The Borrower has not entered into any agreement to register its equity or debt securities under the Securities Act of 1933, and the rules and regulations promulgated thereunder, as amended. The Mezzanine Borrower is the sole member and the sole manager of the Borrower with full authority to direct the policies, make all decisions and initiate any action of the Borrower. A true and complete copy of the operating agreement of each of the Borrower and Mezzanine Borrower has been provided to the Administrative Agent.

Section 5.25   Capitalization. As of the closing on the acquisition of the Land and Existing Improvements and the funding of the Loan and the Mezzanine Loan in connection therewith, the Borrower shall have received proceeds from the issuance of debt and equity indicated on **Exhibit P** and used such proceeds for the purposes indicated on **Exhibit P**. Except as set forth on **Exhibit P**, since the date of receipt of such proceeds, the Borrower has not, directly or indirectly, made any distributions to the holders of, or on account of, any ownership

74

interest in the Borrower or redeemed, retired or purchased any ownership interest in the Borrower, or made any payment for any right to redeem, retire or purchase any such interest.

Section 5.26   Offices; Location of Books and Records.   The chief executive office or chief place of business and the jurisdiction of organization (as such terms are used in Revised Article 9 of the UCC as in effect in the State of Utah from time to time) of the Borrower is on Exhibit X, together with the organization number assigned to the Borrower in such jurisdiction and the Borrower's federal employer identification number. The Borrower's books of accounts and records are located at its chief executive office or the chief place of its business.

Section 5.27   Filing and Recording Taxes.   All transfer taxes, deed stamps, intangible taxes or other amounts in the nature of transfer taxes required to be paid under applicable Laws in connection with the transfer of the Property to the Borrower have been paid. All mortgage, mortgage recording, stamp, intangible or other similar tax required to be paid under applicable Laws in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of any of the Loan Documents, including, without limitation, the Security Instrument, have been paid or are being paid simultaneously herewith. All taxes and governmental assessments due and owing in respect of the Property have been paid, or an escrow of funds in an amount sufficient to cover such payments has been established hereunder or are insured against by the Title Insurance Policy to be issued in connection with the Security Instrument.

Section 5.28   No Illegal Activity as Source of Funds.   No portion of the Property has been or will be purchased, improved, equipped or furnished with proceeds of any illegal activity.

Section 5.29   Compliance with Anti-Terrorism, Embargo, Sanctions and Anti-Money Laundering Laws.   The Borrower, and to the best of the Borrower's knowledge, after having made diligent inquiry, (a) each Person owning a direct or indirect interest of Twenty Percent (20%) or more in the Borrower, (b) each of the other Loan Parties, (c) the Hotel Operator and (d) each Tenant at the Property, if any: (i) is not currently identified on the OFAC List, and (ii) is not a Person with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, regulation, or Executive Order of the President of the United States. The Borrower has implemented procedures, and will consistently apply those procedures throughout the term of the Loan, to ensure the foregoing representations and warranties remain true and correct during the term of the Loan.

Section 5.30   Employees.   The Borrower does not have any employees or employer-related liabilities.

Section 5.31   Transactions with Related Parties.   Except as set forth in Exhibit CC, there are no transactions, agreements or understandings existing or presently contemplated between (i) any person directly or indirectly through one or more entities beneficially owning an equity interest in the Borrower, or (ii) any officer, director or trustee of such person, or (iii) any spouse, sibling, ancestor or descendant of such person, or (iv) any entity more than one percent

75

(1%) of any class of securities of which is owned by such person or any spouse, sibling, ancestor or descendant of such person (each a *Related Party*) and the Borrower or any person doing business with the Borrower. Exhibit CC contains a complete description of all fees, payments and compensation payable to any Related Party by the Borrower or any person doing business with the Borrower. The dates listed on Exhibit CC accurately reflect the dates upon which applicable Units were reserved.

Section 5.32    Debt. The Borrower is not obligated or otherwise liable for any Debt other than Permitted Indebtedness.

Section 5.33    Mezzanine Loan. The Borrower has delivered true and complete copies of the Mezzanine Loan Documents to the Administrative Agent. The Mezzanine Loan Documents are in full force and effect and have not been amended, supplemented or modified. The Borrower is not in default under the Mezzanine Loan Documents.

Section 5.34    Contract of Sale. The Borrower has delivered a true and complete copy of the Contract of Sale to the Administrative Agent. The Contract of Sale is in full force and effect and has not been amended, supplemented or modified. The Borrower is not in default under the Contract of Sale.

Section 5.35    Business Loan. The Loan is a business loan and no portion of the proceeds of the Loan will be used for personal, family or household purposes.

Section 5.36    Federal Reserve Regulations. No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose which would be inconsistent with such Regulation U or any other Regulations of such Board of Governors, or for any purposes prohibited by Laws or by the terms and conditions of this Agreement or the other Loan Documents.

Section 5.37    Bank Holding Company. The Borrower is not a "bank holding company" or a direct or indirect subsidiary of a "bank holding company" as defined in the Bank Holding Company Act of 1956, as amended, and Regulation Y thereunder of the Board of Governors of the Federal Reserve System.

Section 5.38    Investment Company Act. The Borrower is not (a) an "investment company" or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended; or (b) a "holding company" or a "subsidiary company" of a "holding company" or an "affiliate" of either a "holding company" or a "subsidiary company" within the meaning of the Public Utility Holding Company Act of 1935, as amended.

Section 5.39    No Plan Assets. (a) The Borrower is not an "employee benefit plan," as defined in Section 3(3) of ERISA, subject to Title I of ERISA, (b) none of the assets of the Borrower constitutes "plan assets" of one or more such plans within the meaning of 29 C.F.R. Section 2510.3 101, (c) the Borrower is not a "governmental plan" within the meaning of

76

Section 3(32) of ERISA and (d) transactions by or with the Borrower are not subject to state statutes regulating investment of, and fiduciary obligations with respect to, governmental plans.

        Section 5.40  Accuracy of Documents.  All documents prepared by the Borrower or any of its Affiliates and furnished to the Administrative Agent as part of or in support of the loan application or pursuant to this Agreement or any of the other Loan Documents, are true, correct, and complete in all material respects and accurately represent the matters to which they pertain as of the dates made and there have been no materially adverse changes with respect to such matters since the respective dates thereof and to the Borrower's knowledge, after due inquiry, there is no material false or misleading information set forth in the third-party reports furnished to the Administrative Agent as part of or in support of the loan application or pursuant to this Agreement or any of the other Loan Documents.

        Section 5.41  Compliance with Laws.  All necessary action has been or will be taken to permit construction of the Additional Improvements according to the Plans and Specifications and full use of the Improvements for their intended purpose (including, without limitation, the use and operation of the Hotel) under applicable Laws.  The Additional Improvements (when completed according to the Plans and Specifications) will comply in all material respects with all applicable Laws.  The Borrower has all Permits necessary for the commencement of construction of the Additional Improvements and to the Borrower's knowledge, after due inquiry, has or will have the additional Permits necessary for the continuance or completion of construction of the Additional Improvements and the use and operation of the Property on a timely basis in order to achieve Final Completion in accordance with the Construction Schedule. To the Borrower's knowledge, after due inquiry, those Permits which have not yet been obtained by the Borrower are readily achievable in due course. The Borrower has obtained all Permits from, and has given all such notices to, and has taken all such other actions with respect to such Governmental Authority as may be required under applicable Laws for the commencement of construction of the Additional Improvements. Each Permit is in full force and effect and is not subject to any pending or, to the Borrowers' knowledge, threatened proceeding of any Governmental Authority to revoke, cancel or declare such Permit invalid in any respect. The Borrower is not in default or violation with respect to any Permit, and no event has occurred which constitutes, or with due notice or lapse of time or both is reasonably likely to constitute, a default by the Borrower under, or a violation of, any Permit.

        Section 5.42  Timeshare Act.  The Borrower has complied with all applicable terms and conditions of the Timeshare Act including, without limitation, the following: (i) registration of the Project; (ii) registration of any and all salespersons hired in connection with the Project; (iii) filing of all advertisements, sales promotion literature, the proposed form of sales contracts and any written disclosures with the director of the Division of Real Estate of the Department of Commerce; and (iv) providing full and accurate disclosure to prospective purchasers and any applicable Governmental Authority.

        Section 5.43  Sale of Fractional Ownership Units.  Upon execution and recordation of the Condominium Declaration and a final Condominium Plat in the land records of Summit County, Utah, the Borrower will have taken all actions required under applicable Law

**77**

to enable the Borrower to enter into enforceable, non-contingent Purchase Agreements for the sale of Fractional Ownership Units or fractional interests therein.

Section 5.44   Plans and Specifications.   The Borrower has furnished the Administrative Agent and the Construction Consultant true and complete sets of the Plans and Specifications.   The Plans and Specifications (a) comply with all Laws, all Permits, and all restrictions, covenants and easements affecting the Property; (b) have been approved by the General Contractor and the Architect; and (c) have been approved by each Governmental Authority required to permit the construction of the Additional Improvements.

Section 5.45   Budget; Feasibility.   The Project Budget clearly and accurately reflects as of the date made the best estimate of the Borrower of the Total Project Costs.   The Construction Schedule is accurate to date.

Section 5.46   General Contractor's Agreement.   As of the date of any Construction Advance, (a) the General Contractor's Agreement is in full force and effect; (b) the Borrower and, to the Borrower's knowledge, the General Contractor are in compliance in all material respects with their respective obligations under the General Contractor's Agreement; and (c) the work to be performed by the General Contractor under the General Contractor's Agreement is the work called for by the Plans and Specifications.

Section 5.47   Architect's Contract.   (a) The Architect's Contract is in full force and effect; (b) both the Borrower and, to the Borrower's knowledge, the Architect are in compliance in all material respects with their respective obligations under the Architect's Contract; and (c) the work to be performed by the Architect under the Architect's Contract is the architectural services required to design the Additional Improvements to be built in accordance with the Plans and Specifications and all architectural services required to complete the Additional Improvements in accordance with the Plans and Specifications is provided for under the Architect's Contract.

Section 5.48   Brokerage Commissions.   The Lenders, on the one hand, and the Borrower, on the other hand, represent and warrant to each other that each has had no dealings with any broker or agent in connection with the Loan other than Realty Financial Resources, Inc., and each knows of no other broker or agent who is or might be entitled to a commission or finders or similar fee in connection with the Loan.   The Borrower shall be responsible for any commission or fees payable to Realty Financial Resources, Inc. and shall indemnify the Lenders from any liability, claim or loss arising by reason of any such brokerage commissions arising out of any breach by the Borrower of the warranty set forth in the first sentence of this Section 5.48. The Lenders shall indemnify the Borrower from any liability, claim or loss arising by reason of any breach by the Lenders of the warranty set forth in the first sentence of this Section 5.48. This Section 5.48 shall survive the repayment of the Loan.

Section 5.49   Continuing Effectiveness.   All representations and warranties contained in any documents furnished to the Administrative Agent or any Lender by or on behalf of the Borrower, as part of or in support of the loan application or pursuant to this Agreement or any of the other Loan Documents shall be deemed continuing and in effect at all times while any

78

of the Obligations of the Borrower or any other Loan Party pursuant to the Loan Documents remains unpaid or unsatisfied.

Section 5.50   Effect of Draw Request.   Each Draw Request submitted to the Administrative Agent shall constitute an affirmation that the representations and warranties contained in this Article 5, elsewhere in this Agreement and in the other Loan Documents remain true, complete and correct in all material respects as of the date thereof, and, unless the Administrative Agent is notified to the contrary in writing prior to the disbursement of the requested Advance or any portion thereof, shall constitute an affirmation that the same remain true, complete and correct in all material respects on the date of such disbursement.

Section 5.51   Property Disclosure Report.   The Borrower has delivered a true and complete copy of the Property Disclosure Report to the Administrative Agent. The Property Disclosure Report is in full force and effect and has not been amended, supplemented or modified. The Property Disclosure Report provides the full and accurate disclosure that is required under the Timeshare Act.

Section 5.52   Construction Manager's Agreement.   As of the date of any Construction Advance, (a) the Construction Manager's Agreement is in full force and effect; (b) the Borrower and, to the Borrower's knowledge, the Construction Manager are in compliance in all material respects with their respective obligations under the Construction Manager's Agreement; and (c) the work to be over sought and managed by the Construction Manager under the Construction Manager's Agreement is the work called for by the Plans and Specifications.

Section 5.53   Schedule of Minimum Release Prices.   The Schedule of Minimum Release Prices set forth on Exhibit K represents the last contracted sales price for the applicable type of Unit prior to November 22, 2005.

## ARTICLE 6

## COVENANTS OF THE BORROWER

The Borrower hereby covenants and agrees, from the date of this Agreement, and so long as Borrower remains indebted to the Lenders as follows:

Section 6.1   Affirmative Covenants.   The Borrower covenants and agrees that, from the date of this Agreement, and so long as any of the Obligations under the Loan Documents remain unpaid or unperformed:

(a)   Payment of Debt.   The Borrower shall duly and promptly pay all of its monetary Obligations with respect to the Loan in accordance to the terms of this Agreement, the Notes and the other Loan Documents.

(b)   Comply with Other Loan Documents.   The Borrower shall perform all of its Obligations under the Notes, the Security Instrument, the other Loan Documents and all other documents evidencing or securing the Loan and all other indebtedness of the Borrower to the Lenders.

79

(c)    Application of Loan Proceeds. The Borrower shall use the proceeds of the Loan solely and exclusively for the payment or reimbursement of Project Costs in accordance herewith and in accordance with the Project Budget. The Borrower will receive the Loan to be made hereunder and will hold the right to receive the same as a trust fund for the purpose of paying the Project Costs and it will apply the same first to such payment before using any part thereof for any other purpose.

(d)    Maintain Existence. The Borrower shall maintain its existence in good standing and make no changes in its organization without the Administrative Agent's prior written consent.

(e)    Compliance with Laws. The Borrower shall comply and cause the Property to comply in all material respects at all times with all Laws, perform all obligations and maintain all Permits related to the Property.

(f)    Timeshare Act. The Borrower shall comply and cause the Project to comply at all times with all applicable provisions of the Timeshare Act, the Condominium Act and all other applicable Laws relating to the formation of the Condominium and the creation, offering and sale of the Fractional Ownership Units.

(g)    Further Assurances.

(i)    The Borrower shall furnish to the Administrative Agent all instruments, documents, certificates, Plans and Specifications, Appraisals (subject to Section 6.1(s)), title and other insurance, reports and agreements and each and every other document and instrument required to be furnished by the terms of this Agreement or the other Loan Documents, all at the Borrower's expense;

(ii)    the Borrower shall execute and deliver to the Administrative Agent documents, instruments, assignments and other writings, and to do such other acts necessary or desirable, to preserve and protect the Collateral at any time securing or intended to secure the Loan, as the Administrative Agent may reasonably require in writing; and

(iii)    the Borrower shall do and execute all and such further lawful and reasonable acts, conveyances and assurances in the law as are reasonably necessary for the better and more effective carrying out of the intents and purposes of this Agreement as the Administrative Agent shall reasonably require from time to time in writing.

(h)    Solvency. The Borrower shall remain, at all times, Solvent.

(i)    Estoppels, Etc. The Borrower shall execute within ten (10) Business Days after written request therefore is made by the Administrative Agent, any document required hereunder or under any Loan Document or any estoppel certificate reasonably requested by the Administrative Agent in connection with the Loan, without charge; provided, however, that the Borrower shall not be obligated to pay the Administrative Agent's costs or expenses in

80

connection with the preparation, modification, execution or delivery of such document or certificate.

(j)     Compliance with Anti-Terrorism, Embargo, Sanctions and Anti-Money Laundering Laws. The Borrower shall comply with all Laws relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect.  Upon the Administrative Agent's request from time to time during the term of the Loan, the Borrower shall certify in writing to the Administrative Agent that the Borrower's representations, warranties and obligations under Sections 5.26 and 5.27 and this Section 6.1(i) remain true and correct and have not been breached.  The Borrower shall immediately notify the Administrative Agent in writing if any of such representations, warranties or covenants are no longer true or have been breached or if the Borrower has a reasonable basis to believe that they may no longer be true or have been breached.  In connection with such an event, the Borrower shall comply with all Laws and directives of any Governmental Authority and, at the Administrative Agent's request, provide to the Administrative Agent copies of all notices, reports and other communications exchanged with, or received from, any Governmental Authority relating to such an event.  The Borrower shall also reimburse the Administrative Agent for any expense actually incurred by the Administrative Agent in evaluating the effect of such an event on the Loan and the Administrative Agent's interest in the collateral for the Loan, in obtaining any necessary license from any Governmental Authority as may be necessary for the Administrative Agent to enforce its rights under the Loan Documents, and in complying with all Laws applicable to the Administrative Agent or the Lenders as the result of the existence of such an event and for any penalties or fines imposed upon the Administrative Agent or any Lender as a result thereof.

(k)     Insurance.

(i)     In addition to all insurance required to be obtained and maintained by it pursuant to all of the other Loan Documents, the Borrower shall, at its sole cost and expense, obtain and maintain in effect at all times the insurance policies described on Exhibit Y (the *Required Insurance*), naming WestLB AG, as the Administrative Agent for the Lenders, as an additional insured.  The proceeds of any insurance shall be applied in accordance with the terms of this Agreement. The Borrower shall also furnish the Administrative Agent with evidence or certificates from insurance companies indicating that the Architect and the Major Contractors responsible for the design or construction of the Additional Improvements are covered by professional liability insurance or other liability insurance, as applicable, as required by the applicable contract approved by the Administrative Agent, such evidence or certificates to be delivered to the Administrative Agent on or before the date of this Agreement.

(ii)    The Borrower shall duly and punctually comply, or cause compliance with, all of the material terms and conditions of any insurance policy covering or applicable to the Property (whether or not expressly required hereunder), all material requirements of the issuer of any such policy and all orders, rules and other requirements of the National Board of Fire Underwriters (or any body exercising similar functions) binding upon the Construction

81

Borrower or applicable to or affecting the Property or any use or condition thereof.

(iii)    The Required Insurance may consist of blanket policies insuring the Property and other property of the Borrower (and its Affiliates); provided, that such policy or policies shall (x) set forth the amounts of insurance in force thereunder applicable to the Property, which amounts shall not be less than the amounts required pursuant to this Section, (y) otherwise comply with the provisions of this Section and (z) afford the same protections to the Lenders as would be provided by policies individually applicable to the Property, provided that (1) if a portion of such policy constitutes the Required Insurance, the total coverage afforded under such portion shall be on an "occurrence" basis and (2) if the Borrower converts any insurance policy from an "occurrence" to a "claims" basis (or vice versa), the Borrower shall cause the risk to be covered by such policy to be continuously insured against notwithstanding such change.

(iv)    If the Administrative Agent shall by any manner acquire the title or estate of the Borrower in or to any portion of the Property, it shall thereupon, to the extent such insurance policies are not blanket insurance policies of the Borrower, become the sole and absolute owner of all insurance policies held by or required hereunder to be obtained, affecting such portion, with the sole right to collect and retain all unearned premiums thereon, and the Borrower shall be entitled only to a credit, in reduction of the then outstanding Obligations, in the amount of any cancellation refund actually received by the Administrative Agent. To the extent applicable, the Borrower agrees, immediately upon demand, to execute and deliver such assignments or other authorizations or instruments as may be necessary or desirable to effectuate the foregoing.

(v)    The Borrower shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be obtained and maintained under this Section. Subject to the foregoing, any insurance effected by the Borrower on any part of the Property whether or not required hereunder, shall be for the benefit of the Administrative Agent, the Lenders and the Borrower and shall be subject to all other provisions of this Agreement.

(l)    Fees and Expenses. The Borrower shall pay when due the reasonable fees of the Construction Consultant, any fees due pursuant to the Mandate Letter, all reasonable out-of-pocket costs and expenses, including, without limitation, appraisal fees, recording fees and charges, abstract fees, title policy fees, escrow fees, reasonable attorneys' fees, fees of inspecting architects and engineers to the extent provided hereunder in connection with the Loan, environmental consultants to the extent provided in the Security Instrument, and all other reasonable out-of-pocket costs and expenses of every character which have been incurred or which may hereafter be incurred by each Lender in connection with the preparation and execution of the Loan Documents, including any extension, amendment or modification thereof, the funding of the Loan, the administration and enforcement of, this Agreement, the Security Instrument, the Notes, and the other Loan Documents, including, without limitation, reasonable

attorneys' fees in any action for the enforcement and advice in respect thereto, foreclosure of the Security Instrument and the collection of the Loan, and all such fees incurred in connection with any bankruptcy or insolvency proceeding; and the Borrower will, within twenty (20) days after written demand by the Administrative Agent (together with reasonable evidence of incurrence of such expenses), reimburse the Administrative Agent and each Lender for all such reasonable expenses which have been incurred; and the Borrower will indemnify and hold harmless the Administrative Agent and each Lender from and against, and reimburse it for all claims, demands, liabilities, losses, damages, judgments, penalties, costs, and expenses (including, without limitation, reasonable attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by the Administrative Agent or any Lender by reason of, on account of or in connection with any bodily injury or property damage occurring in or upon or in the vicinity of the Property through any cause whatsoever or asserted against the Administrative Agent or any Lender or the Borrower on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Property, or with this Agreement or any of the indebtedness evidenced by the Notes, provided that the foregoing indemnity shall not apply to any such liabilities, losses, damages and expenses of any Lender to the extent arising from the willful misconduct or gross negligence of the Administrative Agent or such Lender. The foregoing indemnity shall be subject to the procedures of Section 11.8. All amounts incurred or paid by the Administrative Agent or any Lender under this Section 6.1(l), together with interest thereon at the Default Rate from the due date until paid by the Borrower, shall be added to the indebtedness secured hereby, shall be secured by the Lien of the Security Instrument and shall be due and payable regardless of whether all or a portion of the Loan is advanced.

(m)  Inspections.  The Administrative Agent, each Lender, and their representatives shall have access to the Property at all reasonable times and shall have the right to enter the Property and to conduct such inspections thereof as they shall deem necessary or desirable for the protection of the Administrative Agent's and the Lenders' interests, after reasonable prior notice to the Borrower (unless an uncured Event of Default exists, in which event no such notice shall be required) and without unreasonably disturbing patrons or otherwise unreasonably interfering with the operation of the Property, and in compliance with all Governmental Requirements relating thereto; provided, that no party shall have the right to conduct intrusive or invasive testing unless such party reasonably believes that hazardous materials are present on the Property or that a violation of Environmental Laws exists at the Property. However, notwithstanding the foregoing, no such party shall be obligated to conduct any inspection of the Property.

(n)  ERISA.  The Borrower shall comply with all applicable requirements of ERISA.

(o)  Books and Records.  The Borrower shall keep and maintain detailed, complete and accurate books, records and accounts reflecting all items of income and expense of the Borrower in connection with the Property and the construction of the Improvements and the results of the operation thereof; and, upon the written request of the Administrative Agent, to make such books, records and accounts available to the Administrative Agent and its representatives for inspection or independent audit at reasonable times upon reasonable advance

83

notice to the Borrower. Any independent audit conducted hereunder shall be at the Administrative Agent's expense unless such audit shall uncover a material error in statements previously delivered to the Administrative Agent, in which case the Borrower shall pay all reasonable costs related thereto.

(p)    Financing Publicity. The Borrower shall permit the Administrative Agent and the Lenders to obtain publicity (subject to the Administrative Agent's approval) in connection with the construction of the Additional Improvements through press releases and participation in such events as ground breaking and opening ceremonies, and to give the Administrative Agent and the Lenders reasonable advance notice of such events and to give the Administrative Agent and the Lenders such assistance as reasonably possible in connection with obtaining such publicity as the Administrative Agent and the Lenders may reasonably request.

(q)    Operation and Maintenance of Property. Except during the course of construction of the Additional Improvements for those portions of the Property affected by such construction, the Borrower shall operate, maintain and preserve, or cause to be operated, maintained or preserved, the Property (i) in good working order and condition, ordinary wear and tear excepted, as a full service, luxury hotel, (ii) in accordance with the performance standards set forth in Article 3 and Exhibit B of the Hotel Management Agreement, (iii) in compliance with all Laws and (iv) as the "The Sky Lodge Private Residence Club and Hotel" in accordance with the terms of the Hotel Management Agreement or such other name approved by the Administrative Agent in its reasonable discretion. The Borrower shall operate the Property and perform all activities incidental thereto, all in accordance and compliance with the terms of this Agreement and the other Loan Documents, the Business Plan, the Operating Budget, and all Permits, applicable Law, the Fractional Ownership Documents and Permitted Exceptions.

(r)    Continuous Operation of the Property. From and after the Opening Date, the Borrower shall continuously operate the Hotel as a luxury hotel subject only to required periods of closure on account of casualty, condemnation and other Force Majeure Events.

(s)    Updated Appraisals. (i) The Borrower agrees that the Administrative Agent shall have the right to obtain an updated Appraisal of the Property, acceptable to the Administrative Agent and at the Borrower's sole expense, (A) once in each two (2) year period commencing on the Closing Date, and (B) upon the occurrence and during the continuance of any Event of Default.

(ii)    In the event that the Administrative Agent shall elect to obtain such an Appraisal, the Administrative Agent may immediately commission an appraiser acceptable to the Administrative Agent to prepare the Appraisal, and the Borrower shall reasonably cooperate with the Administrative Agent and the appraiser in obtaining the necessary information to prepare such an Appraisal. In the event that the Borrower fails to reasonably cooperate with the Administrative Agent in obtaining such an Appraisal, or in the event that the Borrower shall fail to pay for the cost of such an Appraisal (if it is required hereby to pay for the same), within fifteen (15) Business Days following written demand, such event

84

shall constitute an Event of Default hereunder, and the Administrative Agent shall be entitled to exercise all remedies therefore available to it hereunder.

(t)    <u>Operating Budgets</u>. As soon as practicable and in any event no later than November 1 of each year during the term of the Loan commencing on the November 1 immediately preceding the projected Opening Date, forecasts prepared by the Borrower or the Hotel Operator, in form provided by the Hotel Operator in accordance with the Hotel Management Agreement, of cash flow statements for the two (2) fiscal years following such fiscal year then ending (each, an *Operating Budget*) shall be provided to the Administrative Agent for the Administrative Agent's review and Approval, such Approval not to be unreasonably withheld. Each Operating Budget shall contain such detail as is necessary to determine any monthly expenditures from or transfers of funds to the Lockbox Account. Each Operating Budget shall be reviewed and approved in writing by the Administrative Agent. Such initial review and each subsequent review of revised proposed Operating Budgets shall be performed by the Administrative Agent within thirty (30) days of receipt of such proposed Operating Budget. To the extent that the Administrative Agent does not approve all or any portion of a proposed Operating Budget, the Administrative Agent shall provide the Borrower with its written comments with respect thereto. Until an Operating Budget has been approved by the Administrative Agent, the actual expenditures made by the Borrower in the prior fiscal year (except with respect to any such expenditures that were capital in nature), increased by three percent (3%), shall govern and control expenditures from and transfer of funds to the Lockbox Account; provided, that the Borrower may make any expenditure not in excess of ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00) in the aggregate to effectuate immediate action necessary for the protection of the Property or to avoid property damage or personal injury. In addition, to the extent that the Administrative Agent or such loan servicer approves individual line items in a proposed Operating Budget, such approved line items shall govern and control expenditures on account of such items until such Operating Budget is approved.

(u)    <u>Interest Rate Protection Agreement</u>. The Borrower shall, within 60 days after the Closing Date, enter into and thereafter maintain an Interest Rate Protection Agreement with respect to the Loan in full force and effect and in form and substance reasonably acceptable to the Administrative Agent until the Loan has been paid in full. The Borrower shall make all Hedge Payments, when due, to any Counterparty pursuant to the Interest Rate Protection Agreement and, if applicable, shall make any payments to any Counterparty pursuant to the Interest Rate Protection Agreement on account of Hedge Breakage. The Borrower shall not make any changes, modifications, substitutions, renewals or restatements of or to or enter into any new Interest Rate Protection Agreements with respect to the Loan without the Administrative Agent's prior written approval, which Approval may be granted or withheld in the Administrative Agent's sole discretion. The Borrower shall, simultaneously with its entering into the Interest Rate Protection Agreement, execute and deliver a Collateral Assignment of Interest Rate Protection Agreement with respect thereto, execute and deliver such UCC financing statements and certifications and deliver such legal opinions with respect thereto as the Administrative Agent shall reasonably require. Borrower shall deliver to the Administrative Agent an executed counterpart of such Interest Rate Protection Agreement, and an acknowledgment and agreement (either in such Interest Rate Protection Agreement or by separate instrument, in each case in form and substance satisfactory to the Administrative Agent)

85

of such Counterparty acknowledging such assignment and agreeing to make any payments payable under or pursuant to the Interest Rate Protection Agreement directly to the Administrative Agent (the *Counterparty Consent*). Upon any change, modification, substitution, renewal, restatement or entering into any new Interest Rate Protection Agreement with respect to the Loan, the Borrower shall provide the Administrative Agent with such information and materials and shall enter into such agreements with respect thereto and such modifications to this Agreement and the other agreements as the Administrative Agent shall reasonably require in connection therewith.

      (v)    Impositions. (i) Subject to the contest rights set forth in clause (ii) below, the Borrower shall pay or cause to be paid all Impositions on or before the due date thereof and in any event before any fine, penalty, interest or cost may be added for non-payment. The Borrower promptly shall deliver to the Administrative Agent after payment of any Imposition and at other times, upon request, copies of official receipts or other evidence satisfactory to the Administrative Agent evidencing the payment of the Impositions. The Borrower shall not claim or demand or be entitled to any credit or credits on account of the obligations under the Loan Documents for any Imposition or any part thereof and no deduction shall otherwise be made or claimed from the taxable value of the Property or any part thereof, by reason of the Security Instrument or any of the Borrower's Obligations under the Loan Documents.

      (ii)    After prior notice to the Administrative Agent and provided no Default or Event of Default shall then exist, the Borrower at its sole cost and expense may contest, or cause to be contested, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity or application, in whole or in part, of any Imposition defer the payment thereof or compliance therewith, subject, however, to the following conditions:

      (1)    such proceedings shall suspend the collection thereof from the Borrower, the Administrative Agent, the Lenders and the Property;

      (2)    neither the Property, any Rents nor any part thereof or interest therein, in the judgment of the Administrative Agent, would be in any danger of being sold, forfeited, terminated, canceled or lost in any respect;

      (3)    the Borrower shall have furnished such security, if any, as may be required in the proceedings or as may be reasonably requested by the Administrative Agent to ensure the payment of any Imposition together with any interest or penalties which may become due in connection therewith;

      (4)    the non-payment of the whole or any part of any Imposition or other charge during the pendency of any such action will not result in the delivery of a tax deed to the Property or any part thereof, because of such non-payment; and

84076228_9_084291_69909

        (5)     the payment of any sums required to be paid under this Agreement and the other Loan Documents (other than any unpaid Imposition at the time being contested in accordance with this Section 6.1(v)) shall not be interfered with or otherwise affected;

provided, that, the conditions set forth in clauses (1), (3) and (4) shall not be conditions to a permitted contest pursuant to this Section 6.1(v) if the Borrower pays or causes to be paid such Imposition.

(w)    Hotel Management Agreement. The Borrower shall (i) perform or cause to be performed the Borrower's obligations under the Hotel Management Agreement, (ii) enforce the performance by Hotel Operator of all of Hotel Operator's obligations under the Hotel Management Agreement in all material respects, (iii) give the Administrative Agent prompt notice and a copy of any notice of default, event of default, termination or cancellation sent or received by the Borrower, and (iv) promptly deliver to the Administrative Agent executed copies of any amendment or modification of the Hotel Management Agreement.

(x)    Operating Cash. The Borrower or Hotel Operator shall maintain adequate operating cash as is customary for the operation of similar luxury hotels and as required under the Hotel Management Agreement.

(y)    Liquor License. (i)    The Borrower shall maintain or cause to be maintained a liquor license for the Hotel in full force and effect until a substitute or replacement liquor license is obtained and a copy thereof is delivered to the Administrative Agent.

(ii)    If the liquor license is not held in the name of the Borrower, the Borrower shall deliver to the Administrative Agent an assignment of such license from the holder of the license in a form reasonably satisfactory to the Administrative Agent, or, if the liquor facilities are to be leased to a third party (including, without limitation, an Affiliate of the Borrower), an assignment and subordination agreement reasonably satisfactory to the Administrative Agent, and if applicable Law requires receivables from sales of alcoholic beverages to be accounted for separately, such other documentation as is reasonably satisfactory to the Administrative Agent.

(z)    Major Contracts. Prior to entering into any Major Contract, the Borrower shall obtain the prior written consent of the Administrative Agent, which consent shall not be unreasonably withheld, conditioned or delayed. Upon entering into any Major Contract, the Borrower and the Administrative Agent shall amend Schedule A of the Pledge and Security Agreement to include such Major Contract as an "Assigned Agreement" and the Borrower shall use diligent efforts to obtain the consent of the third party to such Major Contract to the assignment in the form of Exhibit A to the Pledge and Security Agreement.

(aa)    FF&E Reserve. The Borrower shall establish and fund the FF&E Reserve Account in accordance with the provisions of Article 4. Without limiting the requirements of Article 4, the Borrower shall deposit, or shall cause the Hotel Operator to deposit, into the FF&E

Reserve Account, all funds that the Borrower is required to reserve or expend for FF&E pursuant to the Hotel Management Agreement.

Section 6.2    Construction Covenants.    The Borrower covenants and agrees, with respect to the construction of the Additional Improvements as follows:

(a)    Construction Consultant.

(i)    The Administrative Agent shall retain the Construction Consultant, at the reasonable cost of the Borrower, to perform the following services on behalf of the Administrative Agent and the Lenders:

(1)    To review and advise the Administrative Agent whether, in the opinion of the Construction Consultant, the Plans and Specifications are satisfactory;

(2)    To review Draw Requests and Change Orders;

(3)    To review the amount and sufficiency of Borrower's Equity Investment prior to the Initial Advance of the Loan;

(4)    To make quarterly inspections for the purpose of assuring that construction of the Improvements to date is in accordance with the Plans and Specifications in all material respect and to approve the Borrower's then current Draw Request as being consistent with the Borrower's obligations under this Agreement, including, *inter alia*, an opinion as to Borrower's continued compliance with the provisions of Section 3.2(d); and

(5)    To review and approve the Project Budget and any proposed revisions thereto.

(ii)    The fees of the Construction Consultant shall be paid by the Borrower within twenty (20) days after billing therefore and reasonable out-of-pocket expenses actually incurred by the Administrative Agent on account thereof shall be reimbursed to the Administrative Agent within twenty (20) days after written request therefore, but neither the Administrative Agent nor the Construction Consultant shall have any liability to the Borrower on account of: (i) the services performed by the Construction Consultant; (ii) any neglect or failure on the part of the Construction Consultant to properly perform its services; or (iii) any approval by the Construction Consultant of construction of the Additional Improvements. Neither the Administrative Agent nor the Construction Consultant assumes any Obligation of the Borrower or any other Person concerning the quality of construction of the Additional Improvements or the absence therefrom of defects.

88