Environmental Indemnity or any guaranty made in connection with the Loan or any of the rights and remedies of the Administrative Agent or the Lenders thereunder; (iv) impair the right of the Administrative Agent or the Lenders to obtain the appointment of a receiver; (v) impair the enforcement of the assignment of leases provided in the Security Instrument; or (vi) constitute a waiver of the right of the Administrative Agent or the Lenders to enforce the liability and obligation of the Borrower against the Borrower, by money judgment or otherwise, to the extent of any actual loss, damage, cost, expense, liability, claim or other obligation incurred by the Lenders (including reasonable attorneys' fees and costs reasonably incurred) arising out of or in connection with the following:

(a)     Any failure by the Borrower to deliver to the Administrative Agent any rents, receipts, sale proceeds (including, without limitation, any Required Release Payments), insurance proceeds or condemnation payments covering all or a portion of the Property in accordance with the Loan Documents or any failure by the Borrower to apply any such proceeds in accordance with the Loan Documents;

(b)     Any failure to procure or maintain policies of insurance as required by the Loan Documents or the Fractional Ownership Documents;

(c)     Any failure to pay amounts necessary to pay Impositions as required by this Agreement or any other liability which would rank senior to the Loan with regard to payment or security on the Property;

(d)     Any fraud, tortious conduct or material misrepresentation by the Borrower or Borrower's Member or any other Loan Party in connection with the Loan, any of the Loan Documents or any of the Collateral;

(e)     Any failure by the Borrower to perform the Borrower's environmental obligations under the Environmental Indemnity or the other Loan Documents;

(f)     Any filing of a voluntary bankruptcy proceeding by the Borrower or an involuntary proceeding by any member of the Borrower not dismissed within the time period(s) set forth in the Loan Documents;

(g)     Any failure to pay all LIBOR Breakage Costs due to any Lender;

(h)     All costs of compliance with the ADA and similar state or local Laws;

(i)     Any transfer of any direct or indirect interest in the Borrower or the Property in violation of the Loan Documents;

(j)     Any failure by the Borrower to maintain unencumbered marketable title to the Property;

(k)     Any costs incurred in connection with the enforcement of remedies in connection with the Loan; and

121

(l)     Any challenge by the Borrower or any Loan Party to any foreclosure procedure or other exercise of remedies by the Administrative Agent in connection with the Loan.

## ARTICLE 11

## GENERAL CONDITIONS

Section 11.1   Rights of Third Parties.   All conditions of the obligations of each Person hereunder, including the Borrower's Obligations and the Lenders' obligation to make Advances, are imposed solely and exclusively for the benefit of Lenders and their successors and assigns and no other Person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lenders will make Advances in the absence of strict compliance with any or all thereof and no other Person shall, under any circumstances, be deemed to be a beneficiary of such conditions, any and all of which may be freely waived in whole or in part by the Administrative Agent at any time if in its sole discretion it deems it desirable to do so.  In particular, the Lenders make no representations and assume no obligations as to third parties concerning the quality of the construction by the Borrower of the Improvements or the absence therefrom of defects.

Section 11.2   Relationship.   The relationship between the Lenders and the Borrower is solely that of a lender and borrower, and nothing contained herein or in any of the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or any other relationship other than lender and borrower.  In addition, no Lender is the agent or representative of the Borrower and this Agreement shall not make any Lender liable to materialmen, contractors, craftsmen, laborers or others for goods delivered to or services performed by them upon the Property, or for debts or claims accruing to such parties against the Borrower and there is no contractual relationship, either express or implied, between any Lender and any materialmen, subcontractors, including Major Contractors, craftsmen, laborers, or any other Person supplying any work, labor or materials for the Improvements.

Section 11.3   Evidence of Satisfaction of Conditions.   Any condition of this Agreement which requires the submission of evidence of the existence or nonexistence of a specified fact or facts implies as a condition the existence or non-existence, as the case may be, of such fact or facts and the Administrative Agent shall, at all times, be free independently to establish to its satisfaction and in its absolute discretion such existence or nonexistence, except where the Administrative Agent expressly agrees hereunder to be reasonable.

Section 11.4   Notices.   (a)   Any notice, report, demand, approval or other instrument authorized or required by this Loan Agreement and the other Loan Documents, to be given or furnished shall be in writing and shall be deemed given or furnished (i) when addressed to the party intended to receive the same, at the address of such party as set forth below, and delivered at such address, (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, (iii) when delivered by nationwide commercial courier service, one (1) business day after the date of delivery of such notice to the courier service, or (iv) when transmitted by facsimile to the facsimile number set

122

forth below, to the party intended to receive same, provided that such transmission is confirmed by duplicate notice in such other manner as permitted above, upon receipt at such facsimile number (any facsimile notice delivered after 5:00 P.M. EST being deemed delivered on the next Business Day):

Administrative Agent:

WestLB AG, New York Branch, as administrative agent
for itself and other co-lenders
1211 Avenue of the Americas
New York, New York 10036
Attention: Bruce F. Davidson, Global Structured Finance - Infrastructure
Facsimile: (212) 921-5947

with a copy to:

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022-2585
Attention: Timothy G. Little, Esq.
Facsimile: (212) 894-5794

Borrower:

Easy Street Partners, LLC
4780 Winchester Court
Park City, Utah 84098
Attention: William Shoaf
Facsimile: (435) 604-6309

with a copy to:

Wrona & Parrish, P.C.
1816 Prospector Avenue, Suite 100
Park City, Utah 84060
Attention: Blake Parrish
Facsimile: (435) 649-5959


(b)     Any party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties. Rejection or refusal to accept, or inability to deliver because of changed address or because no notice of changed address was given, shall be deemed to be receipt of any such notice.

84076228_9_084291_69909

Section 11.5 _Assignment._ (a) The Borrower may not assign this Agreement or any of its rights or obligations hereunder without the prior approval of the Administrative Agent.

(b)     Each Lender may assign its rights and obligations under this Agreement (including, without limitation, such portion of the Advances owing to it and the Note or Notes held by it); provided, that (i) each such assignment shall require the consent of Administrative Agent, which consent shall not be unreasonably withheld or delayed, (ii) each such assignment shall be to an Eligible Assignee, (iii) the parties to each such assignment shall execute and deliver to the Administrative Agent, for its acceptance and recording in the Register, an Assignment and Acceptance in the form set forth on **Exhibit B**, together with the Note or Notes subject to such assignment and a processing and recordation fee of THREE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($3,500.00) payable to the Administrative Agent, and (iv) except in the case of an assignment to a Person that, immediately prior to such assignment, was a Lender or an Affiliate of any Lender or an assignment of all of a Lender's rights and obligations under this Agreement, the aggregate value of the rights being assigned to such assignee pursuant to such assignment (determined as of the date of the Assignment and Acceptance with respect to such assignment) shall in no event be less than ONE MILLION AND 00/100 DOLLARS ($1,000,000.00) and shall be in an integral multiple of TWO HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($250,000.00); provided, that the Administrative Agent shall not be subject to the foregoing dollar amount restrictions in connection with any assignments it makes in syndicating the Loan.

(c)     Upon such execution, delivery, acceptance and recording, from and after the effective date specified in such Assignment and Acceptance, (i) the assignee thereunder shall be a party hereto and, to the extent that rights and obligations hereunder have been assigned to and assumed by it pursuant to such Assignment and Acceptance, have the rights and obligations of a Lender hereunder and (ii) the Lender assignor thereunder shall, to the extent that rights and obligations hereunder have been assigned by it and assumed by the assignee pursuant to such Assignment and Acceptance, relinquish its rights and be released from its obligations (to the extent arising or accruing after the effective date of the assignment) under this Agreement (and, in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto).

(d)     By executing and delivering an Assignment and Acceptance, each Lender assignor thereunder and each assignee thereunder confirm to and agree with each other and the other parties thereto and hereto as follows: (i) other than as provided in such Assignment and Acceptance, such assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Agreement or any other Loan Document or the execution, legality, validity, enforceability, genuineness, sufficiency or value of, or the perfection or priority of any Lien or security interest created or purported to be created under or in connection with, this Agreement or any other Loan Document or any other instrument or document furnished pursuant hereto or thereto; (ii) such assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Borrower or any other Loan Party or the performance or observance by any Loan Party of any of its obligations under any Loan

124

Document or any other instrument or document furnished pursuant thereto; (iii) such assignee confirms that it has received a copy of this Agreement, together with copies of the financial statements and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance; (iv) such assignee will, independently and without reliance upon Administrative Agent, such assigning Lender or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement; (v) such assignee confirms that it is an Eligible Assignee; (vi) such assignee appoints and authorizes the Administrative Agent to take such action as the Administrative Agent on its behalf and to exercise such powers and discretion under the Loan Documents as are delegated to the Administrative Agent by the terms hereof, together with such powers and discretion as are reasonably incidental thereto; and (vii) such assignee agrees that it will perform in accordance with their terms all of the obligations which by the terms of this Agreement are required to be performed by it as a Lender.

(e)     Within five (5) Business Days after the Borrower receives notice from the Administrative Agent that the recording set forth in Section 11.5(b) has been completed, the Borrower, at its own expense, shall execute and deliver to the Administrative Agent, in exchange for each surrendered Note, a new Note to the order of such Eligible Assignee in an amount equal to the amount assumed by such Eligible Assignee pursuant to the applicable Assignment and Acceptance and, if the assigning Lender has retained some portion of its obligations hereunder, a new Note to the order of the assigning Lender in an amount equal to the amount retained hereunder. Such new Notes shall provide that they are replacements for the surrendered Notes, shall be in an aggregate principal amount equal to the aggregate principal amount of the surrendered Notes, shall be dated the effective date of such Assignment and Acceptance and shall otherwise be substantially in the form of the assigned Notes. The surrendered Notes shall be canceled and returned to the Borrower and the new Notes shall not be deemed delivered by the Borrower until the Borrower has received such cancelled or surrendered Notes. Each Lender shall be permitted only one Note for the full amount of its Ratable Share.

(f)     The Administrative Agent shall maintain a copy of each Assignment and Acceptance delivered to and accepted by it and a register for the recordation of the names and addresses of the Lenders under the Loan Documents of, and the Outstanding Principal amount of the Loan owing under the Loan Documents to, each Lender from time to time (the *Register*). The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and the Borrower, the Administrative Agent and the Lenders may treat each Person whose name is recorded in the Register as a Lender hereunder for all purposes of this Agreement. The Register shall be available for inspection by the Borrower or any Lender at any reasonable time and from time to time upon reasonable prior notice.

(g)     Upon its receipt of an Assignment and Acceptance executed by an assigning Lender and an assignee, together with the Note or Notes requested by the assignee subject to such assignment, the Administrative Agent shall: (i) accept such Assignment and Acceptance; (ii) record the information contained therein in the Register; and (iii) give prompt written notice thereof to the Borrower.

125

(h)    Each Lender may sell participations in or to all or a portion of its rights and obligations under this Agreement (including, without limitation, all or a portion of the Loan owing to it and the Note or Notes held by it) to any Person other than any Loan Party or any Affiliate of a Loan Party; provided, that (i) such selling Lender's obligations under this Agreement shall remain unchanged, (ii) such selling Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) such selling Lender shall remain the holder of such portion of the Loan and such Note for all purposes of this Agreement, (iv) the Borrower, the Administrative Agent and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement and (v) no participant under any such participation shall have any right to approve any amendment or waiver of any provision of any Loan Document, or any consent to any departure by any Loan Party therefrom.    Notwithstanding the occurrence of any secondary transaction, the Borrower shall be entitled to communicate solely with the Administrative Agent or an experienced servicer as the sole point of contact on behalf of the Lenders.

(i)    Any Lender may, in connection with any assignment or participation or proposed assignment or participation pursuant to this Section 11.5, disclose to the assignee or participant or proposed assignee or participant, any information relating to the Borrower furnished to such Lender by or on behalf of the Borrower.

(j)    Notwithstanding any other provision set forth in this Agreement, any Lender may at any time create a security interest in all or any portion of its rights under this Agreement (including, without limitation, the Advances owing to it and the Note or Notes held by it) in favor of any Federal Reserve Bank in accordance with Regulation A of the Board of Governors of the Federal Reserve System.

Section 11.6    Usury Savings.    All agreements herein are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the Lenders or the holder hereof for the use, forbearance or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under applicable Laws. If, for any circumstances whatsoever, fulfillment of any provision hereof at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, *ipso facto*, the Obligation to be fulfilled shall be reduced to the limit of such validity, and if for any circumstance the Lenders or the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest.

Section 11.7    Counterparts.    This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but such counterparts shall together constitute one and the same instrument.

Section 11.8    Indemnification.    (a)    The Borrower (in such capacity, the *Indemnitor*) shall defend, indemnify and hold harmless the Administrative Agent, each of the

126

Lenders, each Affiliate of any of the foregoing and the respective directors, officers, partners, participants, employees and agents of each of the foregoing, and each other Person controlling any of the foregoing within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (each, an *Indemnified Party*) from and against, and shall reimburse the affected Indemnified Party for, any and all losses, claims, damages, costs, expenses (including without limitation reasonable attorney fees' and expenses), liabilities, fines, penalties and charges of any kind (collectively, the *Losses*), in any way relating to or arising out of or in connection with (i) the execution, delivery, enforcement, performance or administration of this Agreement or any other Loan Document or any other agreement, letter or instrument delivered in connection with the transactions contemplated thereby or the consummation of the transactions contemplated thereby, (ii) the Loan, or the use or proposed use of the proceeds thereof; or (iii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory (including any investigation of, preparation for, or defense of any pending or threatened claim, investigation, litigation or proceeding) (a *Claim*), regardless of whether any Indemnified Party is a party thereto, in all cases, whether or not caused by or arising, in whole or in part, out of the negligence of any Indemnified Party; provided, that the Indemnitor shall have no Obligation to indemnify any Indemnified Party for any Losses to the extent that a court of competent jurisdiction has determined that the same resulted from the gross negligence or willful misconduct of such Indemnified Party. In case any such Claim is brought against an Indemnified Party in respect of which indemnification may be sought by such Indemnified Party pursuant hereto, the Administrative Agent shall give prompt written notice thereof to the Indemnitor; provided, that the failure of the Administrative Agent to so notify the Indemnitor shall not limit or affect such Indemnified Party's rights to be indemnified pursuant to this Section 11.8 except to the extent the Indemnitor is materially prejudiced by such failure.

(b)    Upon receipt of such notice of Claim described in **Section 11.8(a)**, the Indemnitor shall, at its sole cost and expense, in good faith defend any such Claim with counsel reasonably satisfactory to the Administrative Agent and such Indemnified Party. The Indemnitor may settle any Claim against such Indemnified Party without such Indemnified Party's consent, provided (i) such settlement is without any liability, cost or expense whatsoever to such Indemnified Party, (ii) the settlement does not include or require any admission of liability or culpability by such Indemnified Party under any Law and (iii) the Indemnitor obtains an effective written release of liability for such Indemnified Party from the party to the Claim with whom such settlement is being made, which release must be acceptable to such Indemnified Party in such Indemnified Party's sole discretion, and a dismissal with prejudice with respect to all claims made by the party against such Indemnified Party in connection with such Claim. The Administrative Agent and such Indemnified Party shall reasonably cooperate with the Indemnitor, at the Indemnitor's sole cost and expense, in connection with the defense or settlement of any Claim in accordance with the terms hereof.

(c)    If at any time in Indemnified Party's judgment (i) Indemnitor shall fail diligently to investigate, prosecute, negotiate or defend, as applicable, any Claim or (ii) Indemnitor shall fail to keep the Indemnified Parties fully apprised of the status of any Claim, such Indemnified Party may elect, by notice to the Indemnitor thereof, to conduct its own defense through counsel of its own choosing and at the expense of the Indemnitor. If such

Indemnified Party elects to defend such Claim by counsel of its own choosing, the Indemnitor shall be responsible for any settlement of such Claim entered into by such Indemnified Party.

(d)   Nothing contained herein shall be construed as requiring the Administrative Agent or any Indemnified Party to expend funds or incur costs to defend any Claim in connection with the matters for which the Administrative Agent or any Indemnified Party is entitled to indemnification pursuant to this Section 11.8.   The obligations of the Indemnitor hereunder shall specifically include the obligation to expend its own funds, to incur costs in its own name and to perform all actions as may be necessary to protect the Administrative Agent or any Indemnified Party from the necessity of expending its own funds, incurring cost or performing any actions in connection with the matters for which each Lender is entitled to indemnification hereunder.

Section 11.9   Successors and Assigns Included in Parties.   Whenever in this Agreement one of the parties hereto is named or referred to, the heirs, legal representatives, successors and assigns of such parties shall be included and all covenants and agreements contained in this Agreement by or on behalf of the Borrower or by or on behalf of any Lender shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns, whether so expressed or not.

Section 11.10   Headings.   The headings of the Articles, Sections and subsections of this Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

Section 11.11   Invalid Provisions to Affect No Others.   If fulfillment of any provision hereof or any transaction related hereto at the time performance of such provisions shall be due, shall involve transcending the limit of validity presently prescribed by law, with regard to obligations of like character and amount, then, *ipso facto*, the Obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein contained operates or would prospectively operate to invalidate this Agreement in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect.

Section 11.12   Computation of Time Periods.   In this Agreement, with respect to the computation of periods of time from a specified date to a later specified date, the word "from" means both "from and including" and the words "to" and "until" both mean "to but excluding".

Section 11.13   Governing Law.   This Agreement shall be construed in accordance with and this Agreement and all matters arising out of this Agreement (whether in contract, tort or otherwise) shall be governed by and law of the State of New York.

Section 11.14   Consent to Jurisdiction.   The Borrower and the Lenders hereby irrevocably and unconditionally (a) submit to personal jurisdiction in the State of New York over any suit, action or proceeding arising out of or relating to this Agreement and (b) waive any and all personal rights under the laws of any state (i) to the right, if any, to trial by jury or (ii) to

128

object to jurisdiction within the State of New York or venue in any particular forum within the State of New York. Nothing contained herein, however, shall prevent the Administrative Agent or any Lender from bringing any suit, action or proceeding or exercising any rights against any security and against the Borrower, and against any property of the Borrower, in any other state. Initiating such suit, action or proceeding or taking such action in any state shall in no event constitute a waiver of the agreement contained herein that the laws of the State of New York shall govern the rights and obligations of the Borrower and any Lender hereunder or the submission herein by the Borrower and any Lender to personal jurisdiction within the State of New York.

Section 11.15 <u>Amendments</u>. Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought. Moreover, no amendment or waiver of any provision of this Agreement or any other Loan Document, nor consent to any departure by the Borrower or any other Loan Party therefrom, shall in any event be effective unless the same shall be in writing and signed by the Requisite Lenders, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given; provided that no amendment, waiver or consent shall, unless in writing and signed by all of the Lenders, do any of the following at any time: (a) waive any of the conditions specified in Article 3 hereof, (b) change the designated percentage that constitutes the Requisite Lenders, (c) release any material portion of the Collateral in any transaction or series of related transactions or permit the creation, incurrence, assumption or existence of any Lien on any material portion of the Collateral in any transaction or series of related transactions to secure any obligations other than obligations owing to the Administrative Agent and the Lenders under the Loan Documents, (d) amend this Section 11.15, (e) alter the Ratable Share of any Lender, (f) reduce the principal of, or interest or interest rate on, the Loan payable to any Lender or any fees or other amounts payable to such Lender, or (g) postpone any date scheduled for any payment of principal of, or interest on, the Loan payable to such Lender. Notwithstanding the foregoing, the Borrower shall deal directly with, and be entitled to rely on the Administrative Agent's signature, in connection with all matters related to the Loan Documents.

Section 11.16 <u>Final Agreement</u>. Pursuant to Utah Code Ann. Section 25-5-4, the Borrower is hereby notified that the written Loan Documents are the final expression of the agreement between the Administrative Agent, the Lenders and the Borrower and may not be contradicted by evidence of any alleged oral agreement.

## ARTICLE 12

## CASUALTY/CONDEMNATION PROCEEDS

Section 12.1  <u>Casualty; Condemnation; Assignment of Proceeds</u>. (a) <u>Casualty</u>. (i) <u>Notice; Restoration</u>. The Borrower shall give the Administrative Agent prompt written notice of the occurrence of any casualty affecting the Property or any portion thereof. In the event of any casualty affecting the Property, Borrower shall promptly commence and diligently prosecute Restoration of the Property.

129

(ii)     Availability of Proceeds for Restoration.  If there is a casualty to the Property, (A) and (x) the Restoration of the Property can be reasonably completed no later than six (6) months prior to the Maturity Date (such determination to be made solely by the Administrative Agent) (such period to be measured from the date of such casualty), or (y) the reasonably estimated cost of the Restoration is not more than FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00) and (B) all of the conditions and deliveries set forth in Section 12.2(a) are satisfied, then the Net Proceeds shall be disbursed by the Administrative Agent to the Borrower for Restoration in accordance with the terms and manner set forth in Section 12.2.

If the Net Proceeds are not required to be made available for Restoration pursuant to this clause (ii), all Net Proceeds may be retained by the Administrative Agent in accordance with the terms of Section 12.2(b). '

(b)     Condemnation.  (i)  Notice: Restoration.  The Borrower shall give the Administrative Agent written notice of the actual or threatened commencement of any Partial Condemnation or Total Condemnation affecting the Property promptly following the Borrower's receipt of notice thereof and shall deliver to the Administrative Agent copies of any and all documents received or prepared by the Borrower in connection therewith.  The Borrower shall, at its expense, diligently prosecute any such proceeding.  The Administrative Agent shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the Interest Rate provided for herein.  If the Property or any portion thereof is the subject of a Partial Condemnation or Total Condemnation, all Condemnation Proceeds relating thereto shall be paid to the Administrative Agent and the Borrower shall promptly commence and diligently prosecute the Restoration of the Property and otherwise comply with the provisions of Section 12.2.

(ii)     Partial Condemnation.  If, in the event of Partial Condemnation, (A) (x) the Restoration of the Property can be reasonably completed no later than six (6) months prior to the Maturity Date (such determination to be made solely by the Administrative Agent) (such period to be measured from the date of such casualty), or (y) at any time during the term of the Loan, and the reasonably estimated cost of the Restoration is not more than FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00), and (B) all of the conditions and deliveries set forth in Section 12.2(a) are satisfied, the Net Proceeds shall then be disbursed by the Administrative Agent to the Borrower for Restoration in accordance with the terms and manner set in Section 12.2.  If the Net Proceeds are not required to be made available for Restoration pursuant to this clause (ii), all Net Proceeds may be retained by the Administrative Agent in accordance with the terms of Section 12.2(b).

(iii)     Total Condemnation.  In the event of a Total Condemnation, all Net Proceeds shall be retained by the Administrative Agent in accordance with the terms of Section 12.2(b).

84076228_9_084291_69909

(c)    Assignment of Proceeds; Adjustment of Claims.  All Insurance Proceeds and Condemnation Proceeds relating to the Property are hereby irrevocably assigned to and shall be paid to the Administrative Agent for the benefit of the Lenders, and the Administrative Agent shall deposit such amounts received hereunder into an escrow account designated by the Administrative Agent for disbursement in accordance with this Article 12.  The Administrative Agent may participate in any action, suit or proceeding relating to any such proceeds, causes of action, claims, compensation, awards or recoveries, and during the first ninety (90) days after such casualty or condemnation, the Borrower and the Administrative Agent shall jointly attempt to settle or adjust any insurance claim or condemnation award and thereafter, if the Borrower and the Administrative Agent are unable to either adjust such claim or award for any reason, the Administrative Agent is hereby authorized, in its own name or in the Borrower's name, to adjust any loss covered by insurance, or any Partial Condemnation or Total Condemnation claim or cause of action, and to settle or compromise any claim or cause of action in connection therewith, and the Borrower shall from time to time deliver to the Administrative Agent any instrument required to permit such participation or further evidence such participation.

(d)    No Effect on Obligations.  Notwithstanding any Partial Condemnation or Total Condemnation, the Borrower shall continue to make all payments required to be made pursuant to this Agreement at·the time and in the manner provided for herein and the Outstanding Principal shall not be reduced until any Net Proceeds shall have been actually received and applied by the Administrative Agent to the reduction or discharge of the Outstanding Principal.

(e)    Sale of Property Prior to Receipt of Proceeds.  If the Property is sold, through foreclosure or otherwise, prior to the receipt by the Administrative Agent of the Insurance Proceeds or Condemnation Proceeds (as applicable), the Administrative Agent shall have the right, whether or not a deficiency judgment shall have been sought, recovered or denied, to receive such Insurance Proceeds or Condemnation Proceeds (as applicable), or a portion thereof sufficient to pay the Outstanding Principal, plus all other amounts owed by the Borrower under the Loan Documents.

Section 12.2    Disbursement of Net Proceeds.  (a)  Requirements; Manner of Disbursement.  If Net Proceeds are required to be made available for Restoration pursuant to either Section 12.1(a) or 12.1(b) above, the Administrative Agent shall make such Net Proceeds available for Restoration in accordance with the following:

(i)    The Net Proceeds shall be made available to the Borrower for the Restoration provided that each of the following conditions are met:

(A)    no Default or Event of Default shall have occurred and be continuing (other than a Material Adverse Effect resulting from a casualty or condemnation);

(B)    neither the Hotel Management Agreement nor any material Lease shall be terminated as a result of such casualty or Partial Condemnation (as applicable) and the Borrower has received no notice of

131

termination relating to any such termination (or otherwise has no knowledge that a party to any of the foregoing agreements intends upon terminating such agreement);

(C)     the Borrower promptly commences Restoration and diligently pursues the same to the Administrative Agent's satisfactory completion;

(D)     the Property and the use thereof after Restoration will be in material compliance with and permitted under applicable Laws;

(E)     Restoration is done and diligently completed by the Borrower in material compliance with all applicable Laws;

(F)     the quality and character of the Property after Restoration shall be at least equivalent to the quality and character of the Property immediately prior to such casualty or Partial Condemnation;

(G)     (i) the estimated time to complete the Restoration, as estimated by the Construction Consultant, does not exceed the effective period of business interruption insurance available to the Administrative Agent on account of such casualty or Partial Condemnation, or (ii) the Borrower provides the Administrative Agent with evidence satisfactory to the Administrative Agent, in its sole and absolute discretion, that, at all times during Restoration, the Debt Service Coverage Ratio shall be at least equal to the Hurdle DSCR;

(H)     the Borrower delivers to the Administrative Agent a written undertaking that it will expeditiously commence and satisfactorily complete with due diligence Restoration in accordance with the terms of this Agreement; and

(I)     evidence that the Net Proceeds, together with any Net Proceeds Deficiency, are sufficient to cover all costs of the Restoration as determined by the Construction Consultant.

In the event any of the foregoing conditions are not satisfied at any time, the disbursement of Net Proceeds shall be paid in accordance with Section 12.2(b).

(ii)     The Net Proceeds shall be held in an escrow account designated by the Administrative Agent, and until disbursed in accordance with the provisions of this Section shall constitute additional security for repayment of the Borrower's Obligations. The Administrative Agent shall deposit the Net Proceeds in an interest bearing account and all interest earned thereon shall be added to and become part of the Net Proceeds. The Net Proceeds shall be disbursed by the Administrative Agent to the Borrower from time to time during the course of

132

Restoration, upon receipt of evidence (including lien waivers) satisfactory to the Administrative Agent, provided that (A) all materials installed and work and labor performed (except to the extent that they are to be paid for out of the requested disbursement) in connection with the Restoration have been paid for in full, and (B) there exist no notices of pendency, stop orders, mechanic's or materialman's liens or notices of intention to file same (other than notices of lien or other inchoate liens with respect to amounts not yet due and payable), or any other liens or encumbrances of any nature whatsoever effecting the Property arising out of the Restoration which have not either been fully bonded to the satisfaction of the Administrative Agent and discharged of record or in the alternative fully insured to the satisfaction of the Administrative Agent by the Title Company insuring the lien of the Security Instrument.

(iii)     All plans and specifications required in connection with any Restoration shall be reviewed and reasonably approved by the Administrative Agent.   The Administrative Agent shall have the use of the plans and specifications and all permits, licenses and approvals required or obtained in connection with the Restoration. The identity of the contractors, subcontractors and materialmen engaged in such Restoration, as well as the contracts under which they have been engaged, shall be subject to prior review and reasonable approval by the Administrative Agent and the Construction Consultant. All out-of-pocket costs and expenses incurred by the Administrative Agent in connection with making the Net Proceeds available for the Restoration including, without limitation, reasonable attorney's fees and disbursements and the Construction Consultant's fees, shall be paid by Borrower.

(iv)     In no event shall Administrative Agent be obligated to make disbursements of Net Proceeds in excess of an amount equal to the costs actually incurred from time to time for work in place as part of the Restoration, as certified by the Construction Consultant, minus the Casualty Retainage.   *Casualty Retainage* means an amount equal to ten percent (10%) of the costs actually incurred for work in place as part of the Restoration, as certified by the Construction Consultant, until the Restoration has been completed. The Casualty Retainage shall in no event, and notwithstanding anything to the contrary set forth above in this Section, be less than the amount actually held back by Borrower from contractors, subcontractors and materialmen engaged in the Restoration. The Casualty Retainage shall not be released until (A) thirty (30) days after the Construction Consultant certifies to the Administrative Agent that (y) the Restoration has been completed in accordance with the provisions of this Section, and (z) all approvals necessary for the re-occupancy and use of the Property have been obtained from all appropriate Governmental Authorities, (B) the Administrative Agent receives evidence satisfactory to the Administrative Agent that the costs of the Restoration have been paid in full or will be paid in full out of the Casualty Retainage, and (C) the Administrative Agent receives and approves an endorsement to the Title Insurance Policy insuring that the lien of the Security Instrument has not changed; provided that the Administrative Agent will release

133

the portion of the Casualty Retainage being held with respect to any contractor, subcontractor or materialman engaged in the Restoration as of the date upon which the Construction Consultant certifies to the Administrative Agent that the contractor, subcontractor or materialman has satisfactorily completed all work and has supplied all materials in accordance with the provisions of such contractor's, subcontractor's or materialman's contract, and the contractor, subcontractor or materialman delivers lien waivers and evidence of payment in full of all sums due to the contractor, subcontractor or materialman as may be reasonably requested in writing by the Administrative Agent or by the Title Company insuring the lien of the Security Instrument and such Title Company issues its endorsement insuring that the priority of the lien of the Security Instrument has not changed.

(v)    The Administrative Agent shall not be obligated to make disbursements of the Net Proceeds more frequently than once in any calendar month.

(vi)    If at any time the Net Proceeds or the undisbursed balance thereof shall not be sufficient to pay the balance of the total costs which are estimated by the Construction Consultant to be incurred in connection with the completion of the Restoration, the Borrower shall promptly deposit with the Administrative Agent cash or cash equivalents in an amount equal to the deficiency (the *Net Proceeds Deficiency*) before any further disbursement of the Net Proceeds shall be made. The Net Proceeds Deficiency deposited with the Administrative Agent shall be held by the Administrative Agent and shall be disbursed for costs actually incurred in connection with the Restoration on the same conditions applicable to the disbursement of the Net Proceeds, and until so disbursed pursuant to this Section shall constitute additional security for the Borrower's Obligations.

(vii)    Provided no Default or Event of Default shall have occurred and be continuing, if at any time the Net Proceeds, together with any Net Proceeds Deficiency, or the undisbursed balance thereof, shall be in excess of the balance of the total costs which are estimated by the Construction Consultant to be incurred in connection with the completion of the Restoration, the Administrative Agent shall pay such excess to Borrower. No payment made to the Borrower pursuant to this Section shall in any event prevent the Administrative Agent from requiring the Borrower to make further Net Proceeds Deficiency deposits in the event same shall be required pursuant to the foregoing Section.

(viii)    Any excess of Net Proceeds (together with any earnings thereon) and the remaining balance, if any, of the Net Proceeds Deficiency deposited with the Administrative Agent (together with any earnings thereon) shall be remitted by the Administrative Agent to the Borrower, provided no Default or Event of Default shall have occurred and be continuing under this Agreement, after the Construction Consultant certifies to the Administrative Agent that Restoration has been substantially completed in accordance with the provisions of this Section and the receipt by the Administrative Agent of evidence satisfactory to the

Administrative Agent that all costs incurred in connection with Restoration have been paid in full.

(b)  Retention of Net Proceeds by Administrative Agent.  All Net Proceeds (together with any earnings thereon) not required (i) to be made available for the Restoration, or (ii) to be returned to the Borrower as excess Net Proceeds pursuant to Section 12.2(a)(vii) or (viii) hereof, may be retained and applied by the Administrative Agent after such funds are received toward the payment of the Outstanding Principal of the Loan and all other amounts provided for under this Agreement or any of the other Loan Documents, whether or not then due and payable or, at the discretion of the Administrative Agent, the same may be paid, either in whole or in part, to the Borrower.  If the Administrative Agent shall receive and retain Net Proceeds, the Lien of the Security Instrument shall be reduced only by the amount thereof received and retained by the Administrative Agent and actually applied by the Administrative Agent in reduction of the Outstanding Principal or such other amounts.

**(signatures on next page)**

84076228_9_084291_69909

IN WITNESS WHEREOF, the Borrower, the Administrative Agent and the Lenders have executed this Agreement on the date first above written.

### BORROWER:

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

BY:   Easy Street Mezzanine LLC,
      a Delaware limited liability company,
      its sole member

      By:   Easy Street Holding LLC,
            a Utah limited liability company,
            its sole member

            By:   AVG-SL, LLC,
                  a Utah limited liability company,
                  its manager

                  By: _____
                  Name:  William Shoaf
                  Title:  Manager

### LENDER:

**WESTLB AG**, acting by and through its New York Branch, individually as Lender and as Administrative Agent

By: _____
    Name:  Andrew B. Stein
    Title:  Managing Director

By: _____
    Name:  Bruce F. Davidson
    Title:  Director

<u>Applicable Lending Office</u>
WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York  10036

Signature Page to Loan and Security Agreement

IN WITNESS WHEREOF, the Borrower, the Administrative Agent and the Lenders have executed this Agreement on the date first above written.

**BORROWER:**

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

By:_____

_____

By:_____
     Name:
     Title:

**LENDER:**

**WESTLB AG**, acting by and through its New York Branch, individually as Lender and as Administrative Agent

By:_____
     Name:  Andrew B. Stein
     Title:   Managing Director

By:_____
     Name:  Bruce F. Davidson
     Title:   Director

Applicable Lending Office
WestLB AG, New York Branch
1211 Avenue of the Americas
New York, New York  10036

Signature Page to Loan and Security Agreement

## EXHIBIT A
## DESCRIPTION OF LAND

PARCEL NO. 1

BEGINNING AT A POINT SOUTH 4.73 FEET AND WEST 49.84 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, THENCE NORTH 32°06'28" WEST 91.14 FEET, THENCE NORTH 19°54'51' EAST 18.50 FEET, THENCE NORTH 31°58'04" WEST 72.72 FEET, THENCE SOUTH 58°02'07" WEST 81.41 FEET MORE OR LESS, THENCE SOUTH 32°25'56" EAST 128.51 FEET, THENCE EAST 13.75 FEET, THENCE SOUTH 32°25'56" EAST 128.51 FEET, THENCE EAST 13.75 FEET, THENCE SOUTH 23°38' EAST 64.90 FEET TO THE NORTHERLY LINE OF HEBER AVENUE AS DEDICATED, THENCE SOUTH 81°17' EAST 24.80 FEET ALONG SAID NORTHERLY LINE, THENCE NORTH 15°46'12" EAST 60.79 FEET TO THE POINT OF BEGINNING.

SUBJECT TO AND TOGETHER WITH A 20 FOOT RIGHT OF WAY AS CREATED IN THAT CERTAIN EASEMENT RELOCATION AGREEMENTS RECORDED DECEMBER 31, 1973 AS ENTRY NO. 244339 AND 244340 IN BOOK 368 AT PAGE NO'S 635 AND 643 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER, SAID RIGHT OF WAY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH IS 65.21 FEET SOUTH AND 51.59 FEET WEST OF THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, SAID POINT ALSO BEING 12.0 FEET NORHTWEST OF THE SOUTHEAST CORNER OF LOT 15, BLOCK 50, OF THE PARK CITY SURVEY AND RUNNING THENCE NORTH 10°18'32" EAST 66.28 FEET, THENCE EAST 3.38 FEET, THENCE NORTH 31°58'00" WEST 77.00 FEET,T HENCE NORTH 19°54'00" EAST 66.80 FEET, THENCE CONTINUING NORTH 19°54'00" EAST 123.47 FEET, THENCE NORTH 70°06'00" WEST 20.00 FEET, THENCE SOUTH 19°54'00" WEST 200.00 FEET, THENCE SOUTH 31°58'00" EAST 73.76 FEET, THENCE SOUTH 10°44'00" WEST 63.67 FEET, THENCE SOUTH 81°17'00" EAST 20.23 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-F

PARCEL 2

BEGINNING AT A POINT 50 FEET, NORTH OF THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE NORTH 43.97 FEET, THENCE NORTH 66°11' WEST 142.63 FEET, THENCE SOUTH 31°58' EAST 119.75 FEET, THENCE EAST 67.1 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM ANY PORTIONS LYING WITHIN EASY STREET BRASSERIE REPLAT, ACCORDING TO THE OFFICIAL PLAT THEREOF, RECORDED MARCH 12, 2003 AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO. SA-400-A

PARCEL 3

BEGINNING AT A POINT 38.85 FEET WEST OF THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE WEST 7.93 FEET, THENCE SOUTH 06°02' EAST 67.70 FEET, THENCE NORTH 81°17' WEST 27.0 FEET, THENCE NORTH 15°46'12" EAST 60.79 FEET, THENCE NORTH 32°06'28" WEST 91.14 FEET, THENCE NORTH 19°54'51" EAST 18.50 FEET, THENCE SOUTH 31°58' EAST 25.40 FEET, THENCE SOUTH 19°54' WEST 3.18 FEET, THENCE SOUTH 31°54' EAST 77.00 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-406

PARCEL 4 AND 4A

LOTS 1 AND 2, EASY STREET BRASSERIE REPLAT SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED MARCH 12, 2003, AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO.'S ESB-1, AND ESB-2

PARCEL 5

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, IN PARK CITY, SUMMIT COUNTY, UTAH BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS WEST, A DISTANCE OF 35.90 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 16, THENCE CONTINUING WEST A DISTANCE OF 2.95 FEET, THENCE NORTH 31°58' WEST A DISTANCE OF 77.00 FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 3.18 FEET, THENCE SOUTH 31°58' EAST A DISTANCE OF 80.53 FEET MORE OR LESS TO THE POINT OF BEGINNING.

ALSO TOGETHER WITH THE FOLLOWING DESCRIBED PROPERTY:

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN IN PARK CITY, SUMMIT COUNTY UTAH, BONDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS NORTH A DISTANCE OF 93.97 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 16, THENCE NORTH 66°11' WEST A DISTANCE OF 65.29 FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 8.32 FEET, THENCE SOUTH 66°46'30" EAST A DISTANCE OF 193.50 FEET, THENCE SOUTH 7°16' EAST A DISTANCE OF 12.03 FEET, THENCE NORTH 66°11' WEST A DISTANCE OF 4.32 FEET, THENCE NORTH A DISTANCE OF 8.23 FEET, THENCE WEST A DISTANCE OF 18.65 FEET, THENCE NORTH 66°11' WEST A DISTANCE OF 109.15 FEET MORE OR LESS TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-425-UPL

PARCEL 6

LOT 15, BLOCK 50, PARK CITY SURVEY, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE SUMMIT COUNTY RECORDER, EXCEPTING THEREFROM ANY PORTIONS LYING WITHIN THE PARCELS 1-5 LISTED ABOVE.

TAX PARCEL NO. EXEMPT

## EXHIBIT B
## ASSIGNMENT AND ACCEPTANCE

THIS ASSIGNMENT AND ACCEPTANCE, dated as of _____ \_, \_\_\_\_ by and between _____, having an office at _____ (the *Assignor*), and _____, having an office at _____ (the *Assignee*).

Reference is made to the Loan Agreement, dated as of _____, 2006 (as amended, supplemented or otherwise modified from time to time, the *Credit Agreement*), between [                              ] (the *Borrower*) and WESTLB AG, a German banking corporation, acting by and through its New York Branch, as Administrative Agent for itself and such other co-lenders as may exist from time to time. Unless otherwise defined herein, terms defined in the Credit Agreement and used herein shall have the meanings given to them in the Credit Agreement.

Assignor and Assignee agree as follows:

(a)     The Assignor hereby irrevocably sells and assigns to the Assignee without representation or warranty (except as provided herein), and the Assignee hereby irrevocably purchases and assumes from the Assignor without recourse to the Assignor, as of the Effective Date (as defined below), a percentage interest (the *Assigned Interest*) in and to the Assignor's rights and obligations as a Lender under the Loan Documents with respect to the Loan, as set forth on Schedule 1.

(b)     The Assignor (a) makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with the Credit Agreement or any other Loan Document or the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement, any other Loan Document or any other instrument or document furnished pursuant thereto, other than that it has not created any adverse claim upon the interest being assigned by it hereunder and that such interest is free and clear of any such adverse claim; (b) makes no representation or warranty and assumes no responsibility with respect to the financial condition of Borrower, the Sponsor, or any other obligor or the performance or observance by Borrower, the Sponsor or any other obligor of any of their respective obligations under the Credit Agreement or any other Loan Document or any other instrument or document furnished pursuant hereto or thereto; and (c) attaches the Notes held by it evidencing the Loan and requests that the Administrative Agent exchange such Notes for new Notes payable to the Assignor and new Notes payable to the Assignee in the respective amounts which reflect the assignment being made hereby, as specified on Schedule 1 hereto.

(c)     The Assignee (a) represents and warrants that it is legally authorized to enter into this Assignment and Acceptance; (b) confirms that it has received copies of the Loan Documents, together with copies of the financial statements and other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and Acceptance; (c) agrees that it will, independently and without reliance upon the Assignor, the Agent or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking

action under the Credit Agreement, the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto; (d) appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers and discretion under the Credit Agreement, the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto as are delegated to the Administrative Agent by the terms thereof, together with such powers as are incidental thereto; (e) confirms that it is an Eligible Assignee; and (f) agrees that it will be bound by the provisions of the Credit Agreement and the other Loan Documents and will perform in accordance with its terms all the obligations which by the terms of the Credit Agreement or the other Loan Documents are required to be performed by it as a Lender.

(d)     The effective date of this Assignment and Acceptance shall be _____ __, ____ (the *Effective Date*).

(e)     From and after the Effective Date, the Administrative Agent shall make all payments in respect of Assignee's Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignee in accordance with Schedule 1, whether such amounts have accrued prior to the Effective Date or accrue subsequent to the Effective Date. The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves.

(f)     From and after the Effective Date, (a) Assignee shall be a party to the Credit Agreement and the other Loan Documents and, to the extent provided in this Assignment and Acceptance, have the rights and obligations of a Lender thereunder and shall be bound by the provisions thereof, and (b) the Assignor shall, to the extent provided in this Assignment and Acceptance, relinquish its rights and be released from its obligations as a Lender under the Credit Agreement and the other Loan Documents arising after the Effective Date.

(g)     This Assignment and Acceptance shall be governed by and construed in accordance with the laws of the State of New York.

(h)     This Assignment and Acceptance may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of Schedule 1 to this Assignment and Acceptance by telecopier shall be effective as delivery of a manually executed counterpart of this Assignment and Acceptance.

(Signatures on Following Page)

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Acceptance to be executed as of the date first above written by their respective duly authorized officers on Schedule 1 hereto.

Consented To:

BORROWER:

[                                                    ]

By: _____
       Name:
       Title:


LENDER:

By: _____
       Name:
       Title:


Accepted for Recordation in the Register:

ADMINISTRATIVE AGENT:

WESTLB AG,
acting by and through its New York Branch

By: _____
       Name:
       Title:

## SCHEDULE 1

TO ASSIGNMENT AND ACCEPTANCE

RELATING TO THE LOAN AGREEMENT, DATED AS OF [                    ],

AMONG

[                                        ]

AND

WESTLB AG, NEW YORK BRANCH, AS ADMINISTRATIVE AGENT AND LENDER

Name of Assignor: _____

Name of Assignee: _____

Effective Date of Assignment:      _____ __, ____

Principal
Amount Assigned                    Commitment Percentage Assigned


ASSIGNEE:

By:    _____
       Name:
       Title:

ASSIGNOR:

By:    _____
       Name:
       Title:

84115621_2

## EXHIBIT C
## FORM OF NOTE

(See attached)

# PROMISSORY NOTE

Maximum principal                                   New York, New York
amount: US $36,779,224.00                 Dated: as of March ___, 2006

FOR VALUE RECEIVED, the undersigned, **EASY STREET PARTNERS, LLC**, a Utah limited liability company, having an address at 4780 Winchester Court, Park City, Utah 84098 (the *Borrower*) hereby promises to pay to **WESTLB AG**, New York Branch, a German banking corporation acting through its New York branch, having an office at 1211 Avenue of the Americas, New York, New York 10036 (the *Lender*), pursuant to that certain Loan and Security Agreement, dated of even date herewith, by and between the Borrower, WestLB AG, New York Branch, as Administrative Agent (the *Administrative Agent*), and such other co-lenders party thereto from time to time (as the same may hereinafter be amended, modified, extended and/or assigned from time to time, the *Loan Agreement*), the aggregate principal amount of up to THIRTY SIX MILLION SEVEN HUNDRED SEVENTY-NINE THOUSAND TWO HUNDRED TWENTY-FOUR AND 00/100 DOLLARS ($36,779,224.00) (the *Note Amount*) owing to the Administrative Agent and the Lenders by the Borrower pursuant to the Loan Agreement on the dates and in the amount specified in the Loan Agreement. Capitalized terms that are not defined herein have the meanings given to each in the Loan Agreement.

The Borrower promises to pay to the Lender or its registered assigns, the unpaid principal amount of the Note Amount as well as interest on the unpaid principal amount of the Note Amount from the date the Loan is advanced until such principal amount is paid in full, at such interest rates, and payable at such times and in such amounts, as are specified in the Loan Agreement.

Both principal and interest are payable in lawful money of the United States of America to the Administrative Agent, at its account as set forth in the Loan Agreement, in immediately available funds.

This Promissory Note is entitled to the benefits of the Loan Agreement. The Loan Agreement, among other things, (i) provides for the making of advances (the *Loan*) by the Lenders, to the Borrower in an aggregate amount not to exceed the Note Amount, the indebtedness of the Borrower resulting from the Loan being evidenced, in part, by this Promissory Note, and (ii) contains provisions for acceleration of the maturity hereof upon the happening of certain stated events and also for prepayments on account of principal hereof prior to the maturity hereof upon the terms and conditions therein specified. The obligations of the Borrower under this Promissory Note are secured by the Collateral as provided in the Loan Documents.

All parties now and hereafter liable with respect to this Promissory Note hereby waive presentment, demand, protest, dishonor and all other notices of any kind, except as may otherwise be set forth in the Loan Documents.

84076729_4

This Promissory Note shall be construed in accordance with, and this Promissory Note and all matters arising out of or relating in any way whatsoever to this Promissory Note (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York.

Notwithstanding anything to the contrary in this Promissory Note or any other Loan Document, the Lender shall not be deemed to have waived any right which the Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Loan secured by the Security Instrument (as defined in the Loan Agreement) or to require that all Collateral shall continue to secure all of the Loan owing to the Lender.

This Promissory Note may not be amended, modified, waived, changed or discharged orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, amendment or discharge is sought. This Promissory Note shall be binding upon and shall inure to the benefit of the Lender and the Borrower and their respective successors and assigns permitted hereunder or under the Loan Agreement.

The rights and recourse of the Lender under this Promissory Note are limited to the extent provided in Section 10.6 of the Loan Agreement, which Section is hereby incorporated herein by reference as if fully set forth herein.

**(SIGNATURE APPEARS ON NEXT PAGE)**

84076729_4

IN WITNESS WHEREOF, the Borrower has duly executed this Promissory Note as of the date first written above.

**BORROWER:**

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

By:   **EASY STREET MEZZANINE LLC,**
      a Delaware limited liability company,
      its sole member

    By:   **EASY STREET HOLDING LLC,**
      a Utah limited liability company,
      its sole member

        By:   **AVG-SL, LLC,**
      a Utah limited liability company,
      its manager

           By: _____
      Name:  David Wickline
      Title:  Manager

84076729_4

## EXHIBIT D
## FORM OF ARCHITECT'S CERTIFICATE

March [___], 2006

WestLB AG, New York Branch, as Administrative Agent
1211 Avenue of the Americas
New York, New York 10036

Ladies and Gentlemen:

Reference is made to that certain Loan and Security Agreement dated as of March ___, 2006, by and between Easy Street Partners, LLC, a Utah limited liability company (the *Borrower*) and WestLB AG, a German corporation acting by and through its New York branch, having an office at 1211 Avenue of the Americas, New York, New York 10036, as administrative agent (including any of its successors and assigns, the *Administrative Agent*) for itself and such other co-lenders as may exist from time to time (collectively, the *Lenders* and each individually, a *Lender*) (as the same may hereinafter be amended, modified, extended and/or assigned from time to time, the *Loan Agreement*). The undersigned (the *Project Architect*) hereby certifies to the Administrative Agent, in its professional judgment, and with reference to the Improvements (as defined below) to be constructed on the Land located in Park City, Utah in accordance with the Plans and Specifications identified in Exhibit A attached hereto, as follows:

II.     Based on its review of the Plans and Specifications, to the date of this Certificate, and to its current professional knowledge, the Project Architect states to the Administrative Agent that (a) the Improvements contemplated by the Plans and Specifications (the *Improvements*) will substantially comply with all building codes, zoning ordinances and other governmental rules, laws and regulations relating to the design and use of the Improvements to the extent applicable and in effect as of the date hereof and (b) the governmental approvals, including building permits, licenses and other approvals (collectively, the *Approvals*) required for the construction of the Improvements in accordance with the Plans and Specifications have been obtained (or, with respect to the Approvals not obtained by the date of this Certificate, are capable of being obtained in the ordinary course of construction of the Improvements);

III.     Based on its review of the Plans and Specifications and the draft Project Budget attached hereto as Exhibit B, to the date of this Certificate, and to its current professional knowledge, the Project Architect states to the Administrative Agent that the Project will not involve hard costs in excess of the amount set forth in the related line items in the Project Budget; and

IV.     To its current professional knowledge, the Project Architect states to the Administrative Agent that the Plans and Specifications are consistent with the requirements of that certain Development Agreement for the Union Square Master Planned Development, Park City, Summit County, Utah, by and between CloudNine

84115621_2

Resorts, LLC and the municipality of Park City, dated as of May 12, 2005 and recorded with the Summit County Recorder on June 8, 2005 as Instrument No. 00738760.

The Project Architect's statements in this Certificate have been made and the services of the Project Architect have been performed in accordance with the standards of care and skill of the Project Architect's profession in the State of Utah for building projects of the scope and quality of the Improvements. This Certificate is made with the intent that it shall be relied on by, but only by, the Borrower, the Administrative Agent, the Lenders and their respective successors and assigns, in connection with the disbursements for the construction of the Improvements as contemplated by the Loan Documents and the Loan Agreement.

This Architect's Certificate shall be governed by the laws of the State of Utah and shall be effective as an instrument executed under seal.

## [SIGNATURE ON FOLLOWING PAGE]

84115621_2

By: _____

    Name: _____

    Title: _____

Utah License No.: _____

84115621_2

## EXHIBIT A

### Plans and Specifications

**(See attached)**