assumption and responsibility shall occur automatically upon the occurrence of any Bankruptcy Liability Event without further action on the part of any Person. For the purpose of this Section, "*Bankruptcy Liability Event*" means any filing of a voluntary bankruptcy proceeding by the Borrower or an involuntary proceeding by any member of the Borrower not dismissed within sixty (60) days after filing.

Section 4. Termination. The obligations of the Recourse Liability Party under this Agreement shall terminate upon the actual and irrevocable receipt by the Administrative Agent of payment in full of all of the Obligations. Upon written request of the Borrower, the Administrative Agent shall provide confirmation of such termination.

Section 5. Application of Amounts Realized. In the event the Administrative Agent has caused a foreclosure sale or has otherwise caused a transfer of the Property, the Administrative Agent shall not be required to apply any net proceeds of any such sale or transfer on account of any sums which are the subject of any obligation of the Recourse Liability Party pursuant to this Agreement unless such net proceeds shall be in excess of the amount which would satisfy in full all of the Obligations (other than obligations of the Recourse Liability Party arising pursuant to this Agreement), in which case the Administrative Agent shall apply such excess, if any, on account of any sums which are the obligation of the Recourse Liability Party pursuant to this Agreement.

Section 6. Default Rate. Any amount payable by the Recourse Liability Party that is not paid within ten days after demand therefor from the Administrative Agent shall bear interest from the date of such demand at the Default Rate.

Section 7. Representations and Warranties. The Recourse Liability Party represents and warrants to the Administrative Agent and the Lenders (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Agreement) that:

(a) it is a corporation, partnership, limited liability company or other entity (as recited in the preamble to this Agreement) duly formed, validly existing and in good standing pursuant to the laws of its state of formation (which state of formation is as recited in the preamble to this Agreement), and is qualified to do business in each other jurisdiction where such qualification is necessary to carry out its business;

(b) it has the power and requisite authority and is duly authorized to execute and deliver this Agreement and perform its obligations under this Agreement and the other Loan Documents to which it is a party;

(c) this Agreement constitutes the legal, valid and binding obligation of it, enforceable against it in accordance with its terms;

(d) neither the execution and delivery of this Agreement, nor consummation of any of the transactions herein contemplated nor compliance with the terms and provisions hereof, will contravene any provision of Law, statute, rule or regulation to which the Recourse Liability Party is subject or any judgment, decree, license, order or permit applicable to the

3

Recourse Liability Party, or will conflict or be inconsistent with, or will result in any breach of any of the terms of the covenants, conditions or provisions of, or constitute a default under, or result in the creation or imposition of a Lien (except liens in favor of the Administrative Agent) upon any of the property or assets of the Recourse Liability Party pursuant to the terms of any indenture, mortgage, deed of trust, agreement or other instrument to which the Recourse Liability Party is a party or by which the Recourse Liability Party may be bound, or to which the Recourse Liability Party may be subject;

(e) all consents, approvals, authorizations or orders of any Person, court or Governmental Authority or any third party that are required in connection with the execution and delivery by the Recourse Liability Party of this Agreement or to consummate the transactions contemplated hereby have been obtained and are in full force and effect. The Recourse Liability Party is not in default with respect to any Law, statute, rule, regulation, judgment, license, permit, order, writ, injunction or decree of any court or Governmental Authority applicable to the Recourse Liability Party;

(f) there are no actions, suits or proceedings at law or at equity, pending or, to the Recourse Liability Party's knowledge, threatened against or affecting the Recourse Liability Party which challenge the validity or enforceability of this Agreement or which might materially adversely affect the financial condition of the Recourse Liability Party or the ability of the Recourse Liability Party to perform any of its respective obligations under this Agreement; and

(g) all statements of financial condition and related schedules and all certificates, statements, documents or other information of or relating to the Recourse Liability Party heretofore delivered to the Administrative Agent or its agents or counsel (i) are true, correct and complete, (ii) do not contain any misleading information or any untrue statements of a material fact, (iii) do not omit to state a material fact and (iv) in the case of all statements of financial condition and related schedules, fairly present the financial condition of the subjects thereof as of the respective dates thereof. No material adverse change has occurred in the financial conditions reflected in the most recent of the aforesaid statements of financial condition and related schedules since the respective dates thereof. No representation or warranty made by the Recourse Liability Party in this Agreement or any other Loan Document contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading.

Section 8. <u>Liability Not Limited</u>.  The Recourse Liability Party's liability hereunder shall not be subject to, limited by or affected in any way by any nonrecourse provisions or provisions limiting liability contained in the Loan Agreement, the Notes, the Security Instrument or any other Loan Document. The Recourse Liability Party agrees that the indemnities and agreements made in <u>Sections 2</u> and <u>3</u> hereof are separate and distinct from, independent of and in addition to the Borrower's undertakings under the Notes, the Security Instrument and the other Loan Documents. The Recourse Liability Party agrees that a separate action may be brought to enforce the provisions of this Agreement which shall in no way be deemed to be an action on the Notes, the Loan Agreement or any other Loan Document. The Recourse Liability Party hereby waives the defenses of laches and any applicable statute of limitations.

84084180_3

Section 9. Unconditional Character of Obligations.

(a) Obligations. The obligations of the Recourse Liability Party hereunder shall be absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the Notes, the Loan Agreement, the Security Instrument or the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against the Borrower or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of the Borrower, the Recourse Liability Party or any other Person under any Loan Document, or any setoff, counterclaim, recoupment, limitation or termination, and irrespective of any other circumstances which might otherwise limit recourse against the Recourse Liability Party by the Administrative Agent or constitute a legal or equitable discharge or defense of a guarantor or surety. The Administrative Agent may enforce the obligations of the Recourse Liability Party hereunder by a proceeding at law, in equity or otherwise, independent of any foreclosure or similar proceeding or any deficiency action against the Borrower or any other Person at any time, and either before or after an action against the Collateral or any part thereof, the Borrower or any other Person. The Recourse Liability Party waives diligence, filing of claims with any court, any proceeding to enforce any provision of the Notes, the Loan Agreement, the Security Instrument or any other Loan Documents against the Borrower or any other Person, any right to require a proceeding first against the Borrower or any other Person, or to exhaust any security (including the Collateral) for the performance of the obligations of the Borrower or any other Person, or to cause a marshalling of the Borrower's assets, and any protest, presentment, notice of default or other notice or demand whatsoever.

(b) Agreement and Collateral. Without limiting the generality of the provisions of Section 9(a) and except as otherwise limited by applicable law, the obligations of the Recourse Liability Party under this Agreement and the rights of the Administrative Agent to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:

(i) any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting the Borrower, the Recourse Liability Party or any other Person or the Collateral or any part thereof, including any automatic stay granted pursuant to any provision of a bankruptcy or similar law;

(ii) any failure by the Administrative Agent, any Lender or any other Person, whether or not without fault on its part, to perform or comply with any of the terms of the Loan Agreement, or any other Loan Documents or any document or instrument relating thereto;

(iii) the sale, transfer or conveyance of the Collateral or any interest therein to any Person, whether now or hereafter having or acquiring an interest in the Collateral or any interest therein and whether or not pursuant to any foreclosure, trustee sale or similar proceeding against the Borrower or the Collateral or any part thereof;

5

(iv)   the conveyance to the Administrative Agent, any Lender, any Affiliate of the Administrative Agent or any Lender or the Administrative Agent's or any Lender's nominee of the Collateral or any interest therein by a deed in lieu of foreclosure;

(v)   the release of the Borrower, the Recourse Liability Party or any other Person from the performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law or otherwise;

(vi)   the release in whole or in part of the Collateral;

(vii)   any failure by the Administrative Agent to record, register or file the Security Instrument, any UCC-1 financing statements or other security document or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Obligations;

(viii)   any recovery from the Recourse Liability Party or any other obligor of any of the Obligations, which recovery is obtained under any other guaranty or indemnity executed in connection with the Loan; or

(ix)   any accuracy or inaccuracy of any representations or warranties made by the Borrower, the Recourse Liability Party or any other Person herein or in any of the other Loan Documents.

(c) Waiver.   The Recourse Liability Party hereby expressly and irrevocably waives the following:

(i)   all defenses in an action brought by the Administrative Agent to enforce this Agreement based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise;

(ii)   all rights to require the Administrative Agent or any Lender to pursue any other remedy it may have against the Borrower, or any member of the Borrower;

(iii)   all suretyship defenses the Recourse Liability Party would otherwise have under the laws of Utah or any other jurisdiction;

(iv)   all rights and defenses arising out of an election of remedies by the Administrative Agent, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guarantied obligation, has destroyed the Recourse Liability Party's rights of subrogation and reimbursement against the Borrower; and

(v)   subject to applicable Law, all rights and defenses that the Recourse Liability Party may have because the Loan is secured in part by real property (including, without limiting the generality of the foregoing, any rights the Recourse Liability Party may otherwise have under Utah Code Ann. Section 78-37-1, or any other right to require the Administrative Agent, any Lender or any Lender's nominee to proceed against the Borrower or any other Person or to proceed against or exhaust any Collateral or other security held by the Administrative Agent, any Lender or any Lender's nominee at any time or to pursue any other remedy in the

6

Administrative Agent's, any Lender's or any Lender's nominee's power or under any other agreement before proceeding against the Recourse Liability Party hereunder). This means, among other things:

(1)    that the Administrative Agent may collect from the Recourse Liability Party without first foreclosing on any real or personal property collateral pledged by the Borrower; and

(2)    if the Administrative Agent forecloses on any real property collateral pledged by the Borrower: (x) the amount of the Loan may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (y) the Administrative Agent may collect from the Recourse Liability Party even if the Administrative Agent, by foreclosing on the real property collateral, has destroyed any right the Recourse Liability Party may have to collect from the Borrower.

This subsection (v) is an unconditional and irrevocable waiver of any rights and defenses the Recourse Liability Party may have because the Loan is secured by real property.

(d) The Administrative Agent's and the Lenders' Ability to Act.    The Administrative Agent and the Lenders may deal with the Borrower, Affiliates of the Borrower and the Collateral in the same manner and as freely as if this Agreement did not exist and shall be entitled, among other things, to grant the Borrower or any other Person such extension or extensions of time to perform any act or acts as may be deemed advisable by the Administrative Agent, at any time and from time to time, without terminating, affecting or impairing the validity of this Agreement or the obligations of the Recourse Liability Party hereunder.

(e) Changes to Loan Documents and Other Documents.    No compromise, alteration, amendment, modification, extension, renewal, release or other change of, or waiver, consent, delay, omission, failure to act or other action with respect to, any liability or obligation under or with respect to, or of any of the terms, covenants or conditions of, the Notes, the Loan Agreement, the Security Instrument or the other Loan Documents shall in any way alter, impair or affect any of the obligations of the Recourse Liability Party hereunder.

(f) The Administrative Agent's Remedies.    The Administrative Agent may proceed to protect and enforce any or all of its rights under this Agreement by suit in equity or action at law against the Recourse Liability Party, whether for the specific performance of any covenants or agreements contained in this Agreement or otherwise, or to take any action authorized or permitted under applicable law, and shall be entitled to require and enforce the performance of all acts and things required to be performed hereunder by the Recourse Liability Party. All rights, remedies, powers and privileges conferred by the other Loan Documents are cumulative of all other rights, remedies, powers and privileges herein or by law or in equity provided, or provided in any other Loan Document, and shall not be deemed to deprive the Administrative Agent of any such other legal or equitable rights, remedies, powers and privileges to enforce the conditions, covenants and terms of this Agreement or the other Loan Documents by judicial proceedings or otherwise, and the employment of any rights, remedies,

7

powers and privileges hereunder or otherwise, shall not prevent the concurrent or subsequent employment of any other appropriate rights, remedies, powers and privileges.

(g) <u>Actions.</u> At the option of the Administrative Agent, the Recourse Liability Party may be joined in any action or proceeding commenced by the Administrative Agent against the Borrower in connection with or based upon the Notes, the Loan Agreement, the Security Instrument or any other Loan Documents and recovery may be had against the Recourse Liability Party in such action or proceeding or in any independent action or proceeding against the Recourse Liability Party to the extent of the Recourse Liability Party liability hereunder, without any requirement that the Administrative Agent first assert, prosecute or exhaust any remedy or claim against the Borrower or any other Person, or any security for the obligations of the Borrower or any other Person. Any demand by the Administrative Agent for payments, or performance of the obligations under, this Agreement upon the Recourse Liability Party shall not be and shall not be construed to be a release or waiver by the Administrative Agent of any other obligor with respect to such payment or obligation.

(h) <u>Continuance or Reinstatement of Agreement</u>  Notwithstanding anything to the contrary contained in this Agreement, the Recourse Liability Party agrees that this Agreement shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment is made by the Recourse Liability Party to the Administrative Agent or any Lender and such payment is rescinded or must otherwise be returned by the Administrative Agent or such Lender upon insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting the Recourse Liability Party, all as though such payment had not been made. The Administrative Agent may, but shall not be required to, litigate or otherwise dispute such rescission or its obligation to make such repayments.

(i) <u>Payments to the Recourse Liability Party; Subrogation.</u>  In the event that the Recourse Liability Party shall advance or become obligated to pay any sums under this Agreement, or in the event that for any reason whatsoever the Borrower or any subsequent owner of the Collateral or any part thereof is now, or shall hereafter become, indebted to the Recourse Liability Party, the Recourse Liability Party agrees that (i) the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, the time of payment and in all other respects to all Obligations, including principal and Interest and other amounts, at any time owed to the Administrative Agent or the Lenders under the Loan Documents and (ii) it shall not be entitled to enforce or receive payment thereof until the actual and irrevocable receipt by the Administrative Agent of payment in full of all Obligations. Nothing herein contained is intended or shall be construed to give the Recourse Liability Party any right of subrogation in or under the Loan Documents or any right to participate in any way therein, or in the right, title or interest of the Administrative Agent or any Lender in or to the Collateral, notwithstanding any payments made by the Recourse Liability Party under this Agreement, all such rights of subrogation and participation, if any, being hereby expressly postponed until the actual and irrevocable receipt by the Administrative Agent of payment in full of all Obligations.  If any amount shall be paid to the Recourse Liability Party by reason of the payment of sums by the Recourse Liability Party under this Agreement at any time when any such sums due and owing to the Administrative Agent or the Lenders shall not have been fully paid, such amount shall be paid by the Recourse Liability Party to the Administrative

8

Agent for credit and application against such sums due and owing to the Administrative Agent or the Lenders.

(j) Effect of Foreclosure, Exercise of Remedies. The Recourse Liability Party's obligations hereunder shall continue notwithstanding a foreclosure, deed in lieu of foreclosure or similar proceeding or transaction involving the Property or any part thereof or other exercise by the Administrative Agent of the other remedies under the Loan Documents, at law or in equity.

Section 10.    Additional Covenants.    Except as permitted by the Loan Agreement, the Recourse Liability Party shall not make (or permit to be made) any transfer with respect to (i) any direct or indirect ownership interest of the Recourse Liability Party in the Borrower or (ii) the direct or indirect ownership interest of any Person in the Recourse Liability Party.

Section 11.    Rights of Administrative Agent. Unless expressly provided to the contrary in any particular instance, with respect to any and all rights of the Administrative Agent to (a) give or withhold any consent, approval or other authorization requested by the Recourse Liability Party with respect to this Agreement, (b) make any election or exercise any option granted herein, (c) make any decision, judgment or determination with respect hereto, (d) modify or amend this Agreement or waive any obligation of the Recourse Liability Party hereunder or grant any extension of time for performance of the same or (e) take or omit to take any other action of any kind whatsoever, the Administrative Agent shall, to the maximum extent permitted by law, have the right, and the Recourse Liability Party expressly acknowledges the Administrative Agent's right, in each instance, to make or give the same or take such action or to omit to take such action, as the case may be, in its sole and absolute discretion.

Section 12.    Further Assurances. The Recourse Liability Party shall, within ten Business Days after written request, make, execute or endorse, and acknowledge and deliver or file or cause the same to be done, all such vouchers, invoices, notices, certifications, additional agreements, undertakings or other assurances, and take all such other action, as the Administrative Agent may, from time to time, deem reasonably necessary in order to give effect to the rights and benefits conferred on the Administrative Agent and the Lenders pursuant to this Agreement.

Section 13.    Amendment, Waivers, Consents and Approvals. No failure or delay of the Administrative Agent in exercising any power or right hereunder or to demand payment for any sums due pursuant to this Agreement or any other Loan Document, shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. No waiver of any provision of this Agreement or in any of the other Loan Documents or consent to any departure by the Recourse Liability Party or any other Person therefrom shall in any event be effective unless signed in writing by the Administrative Agent, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. Consents, approvals and waivers granted by the Administrative Agent for any matters covered under this Agreement or any Loan Document shall not be effective unless signed in writing by the Administrative Agent, and such consents, approvals and waivers shall be narrowly construed to cover only the

9

parties and facts identified in any such consent, approval or waiver. No notice or demand on the Recourse Liability Party or any other Person in any case shall entitle the Recourse Liability Party or such Person to any other or further notice or demand in similar or other circumstances. Unless expressly provided to the contrary, any consents, approvals or waivers of the Administrative Agent or the Lenders pursuant to this Agreement or any other Loan Documents shall be granted or withheld in the Administrative Agent's or the Lenders' sole discretion, as the case may be. No amendment, modification or termination of any provision of this Agreement shall be effective unless in writing and signed by the Recourse Liability Party and the Administrative Agent.

Section 14. <u>Binding Effect</u>. This Agreement shall be binding upon the Recourse Liability Party and its respective heirs, legatees, personal representatives, successors and assigns, and shall inure to the benefit of and shall be enforceable by the Administrative Agent, the Lenders and their respective successors and assigns.

Section 15. <u>Duplicate Originals, Counterparts</u>. This Agreement may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Agreement may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Agreement.

Section 16. <u>Notices</u>. All notices, certificates, demands, requests, approvals, consents, waivers or other communications, which any party hereto may be required or may desire to give hereunder, shall be in writing and (a) mailed (registered or certified mail, return receipt requested, and postage prepaid), (b) hand-delivered, with signed receipt or (c) sent by nationally-recognized overnight courier as follows:

<u>If to the Administrative Agent, to its address at:</u>

WestLB AG, New York Branch, as administrative agent
for itself and other co-lenders
1211 Avenue of the Americas
New York, New York 10036
Attention: Bruce F. Davidson, Global Structured Finance – Infrastructure

with a copy to:

WestLB AG, New York Branch, as administrative agent
for itself and other co-lenders
1211 Avenue of the Americas
New York, New York 10036
Attention: Peter Ciaccia, Investment Banking

with a copy to:

Katten Muchin Rosenman LLP
575 Madison Avenue

New York, New York 10022
Attention: Timothy G. Little, Esq.

If to the Recourse Liability Party, to its address at:

CloudNine Resorts, LLC
4780 Winchester Court
Park City, Utah 84098
Attention: David L. Wickline

with a copy to:

Wrona & Parrish, P.C.
1816 Prospector Avenue, Suite 100
Park City, Utah 84060
Attention: Blake Parrish

Any party may change its address for purposes of this Agreement by giving notice of such change to the other parties pursuant to this Section 16. All such notices, certificates, demands, requests, approvals, waivers and other communications given pursuant to this Section 16 shall be effective when received (or delivery is refused) at the address specified as aforesaid.

Notwithstanding any provision contained herein or in any of the other Loan Documents to the contrary, in the event that the Administrative Agent shall fail to give any notice to the Recourse Liability Party under this Agreement, the sole and exclusive remedy for such failure shall be to seek appropriate equitable relief to enforce this Agreement to give such notice and to have any action of the Recourse Liability Party postponed or revoked and any proceedings in connection therewith delayed or terminated pending the giving of such notice by the Administrative Agent, and the Recourse Liability Party shall not have any right to damages (whether actual or consequential) or any other type of relief against the Administrative Agent not specifically provided for herein, all of which damages or other relief are hereby expressly waived. The foregoing is not intended and shall not be deemed under any circumstances to require the Administrative Agent to give notice of any type or nature to the Recourse Liability Party except as expressly required hereby.

Section 17.    Severability.    In the event any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect in a particular jurisdiction or as to particular Persons or circumstances, the validity, legality and enforceability of the remaining provisions contained herein (or the effectiveness of the invalid, illegal or unenforceable provision in a different jurisdiction or as to different Persons or circumstances) shall not in any way be affected or impaired thereby. The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

11

Section 18.     Captions.  The captions, headings and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify or modify the terms and provisions hereof.

Section 19.     Governing Law; Choice of Forum; Consent to Service of Process and Jurisdiction; Waiver of Trial by Jury.  This Agreement shall be construed in accordance with, and the Administrative Agent and all matters arising as of or relating in any way whatsoever to this Agreement (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York.  The Recourse Liability Party irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Agreement, the Note or the other Loan Documents may be brought in (i) the courts of the United States of America located in the Southern District of New York or the District where the Property is located or (ii) in the state courts of the State and County of New York or the state courts of the State and County where the Property is located, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  The Recourse Liability Party irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to the Recourse Liability Party at its address provided in Section 16, as the same may be changed pursuant to Section 16.  Nothing in this Section 19, however, shall affect the right of Administrative Agent to serve legal process in any other manner permitted by law or affect the right of Administrative Agent to bring any suit, action or proceeding against the Recourse Liability Party or its property in the courts of any other jurisdiction.  THE RECOURSE LIABILITY PARTY HEREBY WAIVES, AND THE ADMINISTRATIVE AGENT, BY ACCEPTANCE OF THIS AGREEMENT HEREBY WAIVES TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING BROUGHT IN CONNECTION WITH THIS AGREEMENT, WHICH WAIVER IS INFORMED AND VOLUNTARY.

Section 20.     Definitional Provisions.  For purposes of this Agreement, (a) defined terms used in the singular shall import the plural and vice-versa; (b) the words "hereof," "herein," "hereunder" and similar terms when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (c) the words "include" and "including" wherever used in this Agreement shall be deemed to be followed by the words "without limitation"; (d) the word "or" shall be construed to be inclusive and (e) all of the agreements or instruments referred to in this Agreement shall mean such agreements or instruments as the same may, from time to time, be modified, supplemented or amended, or the terms thereof waived or modified to the extent permitted by, and in accordance with, the terms and conditions thereof and of this Agreement and the other Loan Documents.

Section 21.     No Other Party Beneficiary.  This Agreement is for the sole benefit of the Administrative Agent, the Lenders and their successors and assigns, and is not for the benefit of any other party.  Nothing contained in this Agreement shall be deemed to confer upon anyone other than the Administrative Agent, the Lenders and their successors and assigns any right to insist upon or to enforce the performance or observance of any of the obligations contained herein.

12

Section 22.Entire Agreement.  This Agreement and the other Loan Documents constitute the entire agreement between the parties hereto with respect to the subject matter hereof and supersede all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter contained in this Agreement.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

13

**IN WITNESS WHEREOF,** the Recourse Liability Party has executed this instrument the day and year first above written.

**CLOUDNINE RESORTS, LLC,**
a Utah limited liability company

BY:[_____]
[_____]

By:_____
Name:
Title:

Recourse Liability Agreement
Signature Page

84084180_3

**EXHIBIT O**
**FORM OF BORROWER'S REQUISITION**

**EASY STREET PARTNERS, LLC**

[_____ ____, 2006]


WestLB AG, New York Branch
as Administrative Agent
1211 Avenue of the Americas
New York, NY 10036

     Re:    Sky Lodge Private Residence Club and Hotel

Ladies and Gentlemen:

In accordance with that certain Loan and Security Agreement (as the same may hereinafter be amended, restated, modified, extended and/or assigned from time to time, the *Loan Agreement*) dated as of March [____], 2006, between WestLB AG, a German banking corporation, acting through its New York branch, having an office at 1211 Avenue of the Americas, New York, New York 10036, as agent (including any of its successors and assigns, *Administrative Agent*) for itself, and such other co-lenders as may exist from time to time (collectively, the *Lenders* and each individually, a *Lender*), and Easy Street Partners, LLC, a Utah limited liability company (*Borrower*) having an address at 4780 Winchester Court, Park City, Utah 84098, this letter will serve as the Borrower's Requisition requesting the sum of $[_____] under the Loan Agreement. All capitalized terms used herein, and not otherwise defined herein, have the same meaning as in the Loan Agreement.

The draw amount for this month is as follows:

| | |
|---|---|
| Current Total Draw Amount: | [$_____] |
| less interest/fees already capitalized this period: | [$_____] |
| Amount of new loan proceeds: | [$_____] |
| less Lenders holdbacks for reimbursements: | [$_____] |
| Net Amount of Wire: | [$_____] |

Please wire the funds on [_____ ____, 2006] as follows:

        Amount: [$_____]
        Bank: [_____]
        ABA #: [_____]
        Escrow No.: [_____]
        Account: [_____]
        Account Number: [_____]

[Please fund this Advance as a Base Rate Loan.  We will follow with further instructions regarding the conversion to LIBOR option.]

[Please fund this Advance as a [Base Rate Loan] [LIBOR Loan]].

The support for the above advance is provided in the attached disbursement schedule.  I would appreciate you advising me as soon as the advance has been credited.

Borrower hereby acknowledges that it has no outstanding defenses, claims, counterclaims or offsets against Lenders under the Loan Documents.
Borrower represents and warrants to Lenders as of the date hereof that:  (a) any completed construction is substantially in accordance with the Plans and Specifications; (b) all costs for the payment of which Lenders have previously advanced funds have in fact been paid; (c) each of the representations and warranties of any Loan Party contained in the Loan Documents, including those set forth in **Article 5** of the Loan Agreement, were true, correct and complete as of the date of the Loan Agreement and as of the date of any previous Advance and continue to be true and correct in all material respects as of the date hereof; (d) no Default or Event of Default shall have occurred and be continuing under the Loan Agreement; and (e) Borrower continues to be in compliance in all material respects with all of the other terms, covenants and conditions contained in the Loan Agreement.

Very truly yours,

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

By:    **EASY STREET MEZZANINE LLC,**
        a Delaware limited liability company,
        its sole member

        By:    **EASY STREET HOLDING LLC,**
                a Utah limited liability company,
                its sole member

                By:    **AVG-SL, LLC,**
                        a Utah limited liability company,
                        its manager

                    By: _____
                        Name:
                        Title:

## Form of Schedule of Supporting Documentation for Disbursement

1.      Application and Certificate for Payment (AIA Document No. G702) (specify any additional schedules or supplementary information being provided);

2.      Report of the Construction Consultant, certifying to Administrative Agent as to the value of completed construction, percentage of completion, compliance with Plans and Specifications, and whether there are sufficient funds in the Project Budget to pay the remaining Project Costs and complete the construction of the Project and sufficient unfunded proceeds from the Loan Amount to pay the remaining Project Costs in full;

3.      Lien waivers from all Major Contractors and all Major Subcontractors;

4.      Written request of Borrower for any necessary changes in the Plans and Specifications, the Project Budget or the Construction Schedule;

5.      Copies of all executed Change Orders, contracts and subcontracts (all of which are subject to Administrative Agent's approval), and, to the extent requested by Administrative Agent or the Construction Consultant, of all inspection or test reports and other documents relating to the construction of the Improvements not previously delivered to Administrative Agent;

6.      A schedule of values and anticipated cost report; and

7.      Specify such other information, documentation and certifications required under Article 3 or as Administrative Agent shall reasonably request.

**EXHIBIT P**
**CAPITALIZATION**

(See attached)

**Sky Lodge & Easy Street Plaza**
**Project Capitalization Table**

| | Total | Initial Cash Equity Funding | Mezz Debt | Senior Debt | Deferred Fees In Escrow | Costs Paid From Deposits | Contingent Expenses Paid From Sales | Contributed Land Equity |
|---|---|---|---|---|---|---|---|---|
| **Project Costs During Construction** | | | | | | | | |
| Land | $ 9,000,000 | $ - | $ 9,000,000 | $ - | $ - | $ - | $ - | $ - |
| A&E Fees | 1,164,589 | 656,480 | 2,671,943 | (2,163,834) | - | - | - | - |
| Consultants & Fees | 1,611,851 | 122,320 | 22,452 | 1,467,079 | - | - | - | - |
| Infrastructure | 2,305,942 | - | - | 2,305,942 | - | - | - | - |
| Hard Costs | 19,149,497 | - | - | 19,149,497 | - | - | - | - |
| Soft Construction Costs | 2,968,491 | - | - | 2,968,491 | - | - | - | - |
| FF&E | 3,844,500 | - | - | 3,844,500 | - | - | - | - |
| Developer Fees - Cost Component | 745,077 | - | - | 745,077 | - | - | - | - |
| Developer Fees - Escrowed Component | 496,718 | - | - | 496,718 | (496,718) | - | - | - |
| Sales & Marketing - Expense During Construction | 1,218,020 | 189,711 | 61,609 | 986,550 | - | - | - | - |
| Sales Management Fee - Cost Component | 330,000 | 90,000 | - | 240,000 | - | - | - | - |
| Pre-Opening/HOA Subsidy | 350,000 | - | - | 350,000 | - | - | - | - |
| Start-Up Operating Loss | 650,347 | 118,881 | (20,000) | 551,466 | - | - | - | - |
| Closing Costs & Senior Lender Fees | 2,007,412 | 572,608 | (466,004) | 1,920,808 | - | - | - | - |
| Senior Loan Interest | 1,806,676 | - | - | 1,806,676 | - | - | - | - |
| Contingency | 2,370,292 | - | - | 2,131,029 | - | 239,263 | - | - |
| **Total Costs Funded During Construction** | 50,020,413 | 1,750,000 | 11,250,000 | 36,800,000 | (496,718) | 239,263 | - | - |
| | | | | | | | | |
| **Costs Funded From Sales & Hotel Cash Flow** | | | | | | | | |
| Developer Fees - Release From Escrow | 496,718 | - | - | - | 496,718 | - | - | - |
| Sales Management Fee - Escrowed | 1,026,586 | - | - | - | - | - | 1,026,586 | - |
| Sales & Marketing - Expense After Completion | 139,690 | - | - | - | - | - | 139,690 | - |
| End Loan Fees | 216,417 | - | - | - | - | - | 216,417 | - |
| Contributed Land Equity (Smith Trust) | 1,800,000 | - | - | - | - | - | - | 1,800,000 |
| **Total Costs Funded From Sales** | 3,679,411 | - | - | - | 496,718 | - | 1,382,693 | 1,800,000 |
| | | | | | | | | |
| **Total Project Capitalization** | $ 53,699,824 | $ 1,750,000 | $ 11,250,000 | $ 36,800,000 | $ - | $ 239,263 | $ 1,382,693 | $ 1,800,000 |

| Capital Funded During Construction | | Loan To Value Analysis | |
|---|---|---|---|
| Equity - Cash Contribution | $ 1,750,000 | Project Cost Before Land | $ 42,899,824 |
| Total Mezzanine Debt | 11,250,000 | Appraised Land Value | 18,200,000 based on C&W update as of 11/15/05 |
| Total Senior Debt (up to $36.8 million allowed) | 36,800,000 | Escrowed Deposits | 4,000,000 based on $20 million in sales |
| Contingency Funded From Deposits | 239,263 | Escrowed Fees | 1,523,304 |
| Total Capital Required During Construction | $ 50,039,263 | Total Asset Value | $ 66,623,127 |

| Capital Funded From Sales | | | |
|---|---|---|---|
| Equity - Contingent Fees & Expenses | 1,382,693 | Senior Loan | $ 36,800,000 |
| Equity - Contributed Land Equity (Smith Trust) | 1,800,000 | Mezzanine Loan | 11,250,000 |
| Total Capital From Sales & Cash Flow | $ 3,182,693 | Total Debt | $ 48,050,000 |
| | | | |
| Total | $ 53,221,956 | Loan To Value Ratio | 72.1% |

**Return on Cost Analysis**

Project Budget at Cost    $ 51,899,824   *excludes Contributed Land Equity*

| | |
|---|---|
| Sales Revenue | $ 67,005,000 *before potential price adjustment for cost escalations* |
| Residual Value - Restaurants | 7,150,000 |
| Total Revenue | 74,155,000 |
| | |
| Development Profit | $ 22,255,176 |
| Return on Cost | 42.9% |

**EXHIBIT Q**
**FORM OF LIEN WAIVER**

WHEN RECORDED MAIL TO:

_____

_____

_____

## RELEASE AND WAIVER OF LIEN

KNOW ALL MEN BY THESE PRESENTS:

      That the undersigned, for the sum of _____ Dollars
($_____), relating to labor performed and/or materials supplied for the
improvement of certain real property more particularly described on the attached
Exhibit A, does hereby release, satisfy, waive and discharge any claim of lien against
the following real property located in SUMMIT County, State of Utah at:

660 Main Street, Park City, UT 84060
201 Heber Avenue, Park City, UT 84060
3 Easy Street, Park City, UT 84060

      In witness whereof, the undersigned has executed this document this _____
day of _____, 2006.


                          _____

                          Name:

STATE OF UTAH      )
                      :
COUNTY OF        )

      The foregoing instrument was acknowledged before me the _____ day of
_____, 2006 by_____.


_____
Notary Public

Residing at:

My commission expires:

## EXHIBIT A

## LEGAL DESCRIPTION

PARCEL NO. 1

BEGINNING AT A POINT SOUTH 4.73 FEET AND WEST 49.84 FEET
FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF
THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH,
RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, THENCE NORTH
32°06'28" WEST 91.14 FEET, THENCE NORTH 19°54'51' EAST 18.50 FEET,
THENCE NORTH 31°58'04" WEST 72.72 FEET, THENCE SOUTH 58°02'07"
WEST 81.41 FEET MORE OR LESS, THENCE SOUTH 32°25'56" EAST
128.51 FEET, THENCE EAST 13.75 FEET, THENCE SOUTH 32°25'56"
EAST 128.51 FEET, THENCE EAST 13.75 FEET, THENCE SOUTH 23°38'
EAST 64.90 FEET TO THE NORTHERLY LINE OF HEBER AVENUE AS
DEDICATED, THENCE SOUTH 81°17' EAST 24.80 FEET ALONG SAID
NORTHERLY LINE, THENCE NORTH 15°46'12" EAST 60.79 FEET TO THE
POINT OF BEGINNING.

SUBJECT TO AND TOGETHER WITH A 20 FOOT RIGHT OF WAY AS
CREATED IN THAT CERTAIN EASEMENT RELOCATION AGREEMENTS
RECORDED DECEMBER 31, 1973 AS ENTRY NO. 244339 AND 244340 IN
BOOK 368 AT PAGE NO'S 635 AND 643 OF THE OFFICIAL RECORDS IN
THE OFFICE OF THE SUMMIT COUNTY RECORDER, SAID RIGHT OF
WAY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH IS 65.21 FEET SOUTH AND 51.59 FEET
WEST OF THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER
OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH,
RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, SAID POINT ALSO
BEING 12.0 FEET NORTHWEST OF THE SOUTHEAST CORNER OF LOT
15, BLOCK 50, OF THE PARK CITY SURVEY AND RUNNING THENCE
NORTH 10°18'32" EAST 66.28 FEET, THENCE EAST 3.38 FEET, THENCE
NORTH 31°58'00" WEST 77.00 FEET,    THENCE NORTH 19°54'00" EAST
66.80 FEET, THENCE CONTINUING NORTH 19°54'00" EAST 123.47 FEET,
THENCE NORTH 70°06'00" WEST 20.00 FEET, THENCE SOUTH 19°54'00"
WEST 200.00 FEET, THENCE SOUTH 31°58'00" EAST 73.76 FEET,
THENCE SOUTH 10°44'00" WEST 63.67 FEET, THENCE SOUTH 81°17'00"
EAST 20.23 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-F

PARCEL 2

BEGINNING AT A POINT 50 FEET, NORTH OF THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE NORTH 43.97 FEET, THENCE NORTH 66°11' WEST 142.63 FEET, THENCE SOUTH 31°58' EAST 119.75 FEET, THENCE EAST 67.1 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM ANY PORTIONS LYING WITHIN EASY STREET BRASSERIE REPLAT, ACCORDING TO THE OFFICIAL PLAT THEREOF, RECORDED MARCH 12, 2003 AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO. SA-400-A

PARCEL 3

BEGINNING AT A POINT 38.85 FEET WEST OF THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE WEST 7.93 FEET, THENCE SOUTH 06°02' EAST 67.70 FEET, THENCE NORTH 81°17' WEST 27.0 FEET, THENCE NORTH 15°46'12" EAST 60.79 FEET, THENCE NORTH 32°06'28" WEST 91.14 FEET, THENCE NORTH 19°54'51" EAST 18.50 FEET, THENCE SOUTH 31°58' EAST 25.40 FEET, THENCE SOUTH 19°54' WEST 3.18 FEET, THENCE SOUTH 31°54' EAST 77.00 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-406

PARCEL 4 AND 4A

LOTS 1 AND 2, EASY STREET BRASSERIE REPLAT SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED MARCH 12, 2003, AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO.'S ESB-1, AND ESB-2

PARCEL 5

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE

4 EAST, SALT LAKE BASE AND MERIDIAN, IN PARK CITY, SUMMIT COUNTY, UTAH BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS WEST, A DISTANCE OF 35.90 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 16, THENCE CONTINUING WEST A DISTANCE OF 2.95 FEET, THENCE NORTH 31°58' WEST A DISTANCE OF 77.00 FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 3.18 FEET, THENCE SOUTH 31°58' EAST A DISTANCE OF 80.53 FEET MORE OR LESS TO THE POINT OF BEGINNING.

ALSO TOGETHER WITH THE FOLLOWING DESCRIBED PROPERTY:

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN IN PARK CITY, SUMMIT COUNTY UTAH, BONDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS NORTH A DISTANCE OF 93.97 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 16, THENCE NORTH 66°11' WEST A DISTANCE OF 65.29 FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 8.32 FEET, THENCE SOUTH 2166°46'30" EAST A DISTANCE OF 193.50 FEET, THENCE SOUTH 7°16' EAST A DISTANCE OF 12.03 FEET, THENCE NORTH 66°11' WEST A DISTANCE OF 4.32 FEET, THENCE NORTH A DISTANCE OF 8.23 FEET, THENCE WEST A DISTANCE OF 18.65 FEET, THENCE NORTH 66°11' WEST A DISTANCE OF 109.15 FEET MORE OR LESS TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-425-UPL

PARCEL 6

LOT 15, BLOCK 50, PARK CITY SURVEY, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE SUMMIT COUNTY RECORDER, EXCEPTING THEREFROM ANY PORTIONS LYING WITHIN THE PARCELS 1-5 LISTED ABOVE.

TAX PARCEL NO. EXEMPT

# EXHIBIT R
## FORM OF ANTICIPATED COST REPORT

**PROJECT NAME:**
**SKY LODGE**
**GC/CM:**

**ANTICIPATED COST REPORT**

| Budget Category | Original Budget 1 | Scope Changes/ Budget Reallocations 2 | Revised Budget 3=(2+1) | Contract Amount 4 | Pending Contract Buy 5 | Approved Change Orders 6 | Pending Change Orders 7 | Final Anticipated Cost 8=(4+5+6+7) | (over)/ under 9=(3-8) | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|
| Sitework | 0 | | | | | | | | | |
| Landscaping Sub | 0 | | | | | | | | | |
| Earthwork Sub | 0 | | | | | | | | | |
| Piles Sub | 0 | | | | | | | | | |
| Concrete | 0 | | | | | | | | | |
| Superstructure Sub | 0 | | | | | | | | | |
| Masonry | 0 | | | | | | | | | |
| list all subs etc... | 0 | | | | | | | | | |
| Metals | 0 | | | | | | | | | |
| Wood & Carpentry | 0 | | | | | | | | | |
| Thermal Moisture Protection | 0 | | | | | | | | | |
| Finishes | 0 | | | | | | | | | |
| Doors and Windows | 0 | | | | | | | | | |
| Specialties | 0 | | | | | | | | | |
| Equipment | 0 | | | | | | | | | |
| Conveying Systems | 0 | | | | | | | | | |
| Mechanical | 0 | | | | | | | | | |
| Plumbing | 0 | | | | | | | | | |
| Electrical | 0 | | | | | | | | | |
| General Conditions | 0 | | | | | | | | | |
| **Total:** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |

**EXHIBIT S**
**FORM OF FINAL SURVEY CERTIFICATE**

SURVEYOR'S CERTIFICATE

The undersigned, being a registered surveyor of the State of _____ certifies to (i) WestLB AG, New York Branch, as agent for and on behalf of itself and certain other lenders existing from time to time and their respective successors and/or assigns, and (ii) [insert name of title insurance company issuing commitment] as follows:

1.     This map or plat and the survey on which it is based were made in accordance with the "Minimum Standard Detail requirements for ALTA/ACSM Land Title Surveys" jointly established and adopted by ALTA, ACSM and NSPS in 1999, and includes Items _____ of Table A thereof.  Pursuant to the Accuracy Standards as adopted by ALTA, NSPS, and ACSM and in effect on the date of this certification, the undersigned further certifies that the survey measurements were made in accordance with the "Minimum Angle, Distance, and Closure Requirements for Survey Measurements Which Control Land Boundaries for ALTA/ACSM Land Title Surveys."

2.     The survey was made on the ground between [insert dates survey was made] and correctly shows the area of the subject property, the location and type of all buildings, structures and other improvements situated on the subject property, and any other matters situated on the subject property.

3.     [Except as shown on the survey,] there are no visible easements or rights of way of which the undersigned has been advised.

4.     [Except as shown on the survey,] there are no observable, above ground encroachments (a) by the improvements on the subject property upon adjoining properties, streets or alleys, or (b) by the improvements on adjoining properties, streets or alleys upon the subject property.

5.     The location of each easement, right of way, servitude, and other matter affecting the subject property and listed in the title insurance commitment no. _____ dated _____, 200_ issued by [insert name of title insurance company issuing commitment] with respect to the subject property, has been shown on the survey, together with appropriate recording references, to the extent that such matters can be located.  The property shown on the survey is the property described in that title commitment.  The location of all improvements on the subject property is in accord with minimum setback provisions and restrictions of record referenced in such title commitment.

6.     The subject property has access to and from a duly dedicated and accepted public street or highway. [If not, so state.]

7.     [Except as shown on the survey,] the subject property does not serve any adjoining property for drainage, utilities, or ingress or egress.

8.      The record description of the subject property forms a mathematically closed figure. [If not, so state.]

9.      [Except as shown on the survey,] no portion of the property shown on the survey lies within a Special Hazard Area, as described on the Flood Insurance Rate Map for the community in which the subject property is located. [The survey correctly indicates the zone designation of any area shown as being within a Special Hazard Area.]

[If the certificate is attached to rather than typed or otherwise reproduced on the face of the survey, add a paragraph specifically identifying the survey (such as by date, property description, and survey number) to which the certificate relates.]

The parties listed above are entitled to rely on the survey and this certificate as being true and accurate.

_____

[type name of surveyor]

Registration No._____

Dated: _____

## EXHIBIT T
## SCHEDULE OF PERMITS

### Existing Approvals

| Permit/Approval | Date of Receipt | Cost |
|---|---|---|
| PacifiCorp-Utah        Power Will Serve Letter | 10/30/05 | N/A |
| Questar        Will Serve Letter | 09/26/05 | N/A |
| Snyderville Basin        Will Serve Letter | 10/08/05 | N/A |
| Park City Municipal Corp. Will Serve Letter | 09/26/05 | N/A |
| Telephone and cable. | Existing. | N/A |

### Required Approvals

| Permit/Approval | Estimated Date of Receipt | Estimated Cost |
|---|---|---|
| Building Permit        Submitted: 1/30/06 | 3/13/06 | Unknown. |
| Certificate of Occupancy | 9/2006 | N/A |

## EXHIBIT U
## SCHEDULE OF LEASES

|  | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| **Zoom** | | | | | |
| **Term: 8/1/1995-7/31/2010** | | | | | |
| Base Rent | $120,000 | $120,000 | $120,000 | $120,000 | $120,000 |
| Percentage Rent | $31,298 | $39,932 | $31,471 | $41,474 | $52,142 |
| Total Rent | $151,298 | $159,923 | $151,471 | $161,474 | $1725,142 |
| | | | | | |
| **Easy Street Brasserie, Inc.** | | | | | |
| **Term: 12/1/2002-11/30/212** | | | | | |
| Base Rent | | | $138,012 | $147,000 | $155,988 |
| Percentage Rent | | | $32,400 | $32,400 | $32,400 |
| Total Rent | | | $170,412 | $179,400 | $188,388 |

## EXHIBIT V
## SCHEDULE OF MATERIAL OPERATING AGREEMENTS

### Material Contracts

Elliott Mahoney Architecture – Project Architect
Chase Associates, LLC – Interior Design
BNA Consulting, Inc – Electrical Engineer
Quantum Group Engineering, PLC – Mechanical Engineer
Canyon Engineering – Civil Engineer
Prudential Utah Real Estate – Real Estate Broker

**EXHIBIT W**
**ORGANIZATIONAL CHART**

(See attached)

## EASY STREET PARTNERS, LLC OWNERSHIP STRUCTURE



## EXHIBIT X
## BORROWER'S OFFICE LOCATION

4780 WINCHESTER COURT
PARK CITY, UTAH 84098

TEL     435.649.6649
FAX     435.604.6309

**EXHIBIT Y**
**REQUIRED INSURANCE**

**EXHIBIT Z**
**SCHEDULE OF FRACTIONAL OWNERSHIP UNITS**

(See attached)