Exhibit C

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

*J189030*

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
Attention: Timothy G. Little, Esq.

This document has been ▓▓▓▓▓▓
electronically. Please see the ▓▓▓ ▓▓▓ ▓▓▓
to view the County Recorder's ▓▓▓ ▓▓ ▓▓ ▓
now appears in the public reco▓▓

Submitted by: Equity Title Ins. A▓▓ ▓▓▓

TAX I.D. #: SA-400-F, SA-400-A, SA-400-406, EBS-1, ESB-2, SA-425-UPL

## CONSTRUCTION AND INTERIM LOAN DEED OF TRUST WITH SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

**THIS DOCUMENT IS EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER SECTION 70A-9A-502 OF THE UNIFORM COMMERCIAL CODE.**

**THIS CONSTRUCTION AND INTERIM LOAN DEED OF TRUST WITH SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING** (this *Security Instrument*) is executed effective as of the 31st day of March, 2006, by **EASY STREET PARTNERS, LLC**, a Utah limited liability company, whose address is 4780 Winchester Court, Park City, Utah 84098, as trustor (*Trustor*), in favor of **EQUITY TITLE INSURANCE AGENCY, INC.**, a Utah corporation, whose address is 1600 Snow Creek Drive, Suite E, Park City, Utah 84060, as trustee (together with its successors and assigns, *Trustee*), in trust for the benefit of **WESTLB AG**, a German banking corporation acting through its New York branch, whose address is 1211 Avenue of the Americas, New York, New York 10036, in its capacity as administrative agent for each of the Lenders (as defined in the Loan Agreement (as hereinafter defined)) (together with any successor agent appointed in accordance with the Loan Agreement, *Beneficiary*).

### R E C I T A L S :

**WHEREAS**, this Security Instrument is given to secure a loan (the *Loan*) in the principal amount of THIRTY-SIX MILLION SEVEN HUNDRED SEVENTY-NINE THOUSAND TWO HUNDRED TWENTY-FOUR AND NO/100 DOLLARS ($36,779,224.00) advanced pursuant to that certain Loan and Security Agreement, dated as of the date hereof, among Trustor, Beneficiary and the Lenders (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the *Loan Agreement*) and evidenced by those certain promissory notes made by the Trustor in favor of the Lenders (such promissory note(s), together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter collectively referred to as the *Notes*);

**WHEREAS**, as a condition precedent to the Lenders making, and the Beneficiary administering, the Loan, the Trustor has agreed to execute and deliver this Security

ALAN SPRIGGS, SUMMIT CO RECORDER
2006 MAR 31 13:57 PM FEE $100.00 BY GB
REQUEST: EQUITY-PARK CITY
*Electronically Recorded by Simplifile*

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

*3189030*

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
Attention: Timothy G. Little, Esq.

TAX I.D. #'s SA-400-F, SA-400-A, SA-400-406, EBS-1, ESB-2, SA-425-UPL

## CONSTRUCTION AND INTERIM LOAN DEED OF TRUST WITH SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

**THIS DOCUMENT IS EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING
UNDER SECTION 70A-9A-502 OF THE UNIFORM COMMERCIAL CODE.**

**THIS CONSTRUCTION AND INTERIM LOAN DEED OF TRUST WITH SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING** (this *Security Instrument*) is executed effective as of the 31st day of March, 2006, by **EASY STREET PARTNERS, LLC**, a Utah limited liability company, whose address is 4780 Winchester Court, Park City, Utah 84098, as trustor (*Trustor*), in favor of **EQUITY TITLE INSURANCE AGENCY, INC.**, a Utah corporation, whose address is 1600 Snow Creek Drive, Suite E, Park City, Utah 84060, as trustee (together with its successors and assigns, *Trustee*), in trust for the benefit of **WESTLB AG**, a German banking corporation acting through its New York branch, whose address is 1211 Avenue of the Americas, New York, New York 10036, in its capacity as administrative agent for each of the Lenders (as defined in the Loan Agreement (as hereinafter defined)) (together with any successor agent appointed in accordance with the Loan Agreement, *Beneficiary*).

### R E C I T A L S :

WHEREAS, this Security Instrument is given to secure a loan (the *Loan*) in the principal amount of THIRTY-SIX MILLION SEVEN HUNDRED SEVENTY-NINE THOUSAND TWO HUNDRED TWENTY-FOUR AND NO/100 DOLLARS ($36,779,224.00) advanced pursuant to that certain Loan and Security Agreement, dated as of the date hereof, among Trustor, Beneficiary and the Lenders (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the *Loan Agreement*) and evidenced by those certain promissory notes made by the Trustor in favor of the Lenders (such promissory note(s), together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter collectively referred to as the *Notes*);

WHEREAS, as a condition precedent to the Lenders making, and the Beneficiary administering, the Loan, the Trustor has agreed to execute and deliver this Security

Instrument in order to create a lien on the Trust Property (as hereinafter defined) and to secure the payment and the performance of the Trustor's Obligations (as hereinafter defined) under the Loan Documents (as hereinafter defined), including the payment of all Obligations when due pursuant to the Notes, the Loan Agreement and the other Loan Documents; and

**WHEREAS**, this Security Instrument is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Trustor of its Obligations under the Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Notes are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument.

**NOW, THEREFORE**, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustor hereby agrees as follows:

## 1.   DEFINITIONS

As used herein, the following terms shall have the following meanings, **provided**, that capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement:

*Indebtedness* means collectively,

(1) the payment of the indebtedness evidenced by the Notes in lawful money of the United States of America;

(2) the payment of interest (including interest accrued at the Default Rate, if applicable), and all other sums (including the Commitment Fee, LIBOR Breakage and Late Charges, if applicable), payable pursuant to the Loan Agreement, the Notes or the other Loan Documents;

(3) the payment of any amounts payable by the Trustor under any Interest Rate Protection Agreement; and

(4) to the extent the Trustor is obligated to pay same pursuant to the Notes, the Loan Agreement or the other Loan Documents, the payment of all sums advanced and costs and expenses incurred by the Beneficiary in connection with the Indebtedness or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or any part thereof, or the acquisition or perfection of any security therefor, whether made or incurred at the request of Trustor or Beneficiary.

*Loan Documents* means, collectively, this Security Instrument, the Loan Agreement, the Notes, the Environmental Indemnity, the Collateral Assignment of Interest Rate Protection Agreement, the Consent and Acknowledgement, the Pledge and Security Agreement, the Recourse Liability Agreement, the Consent and Subordination of

Management Agreement, the Consent and Subordination of Development Agreement, the Consents to Assignments, the Depository Agreement, all Financing Statements in connection with the foregoing, and all other agreements, instruments and documents evidencing or securing the Indebtedness, as all of the aforesaid may from time to time hereafter be modified or replaced.

***Obligations*** means, collectively, the Trustor's obligations for the payment of the Indebtedness and the performance of each of its other obligations under any Loan Document.

***Trust Property*** means:

(1)     all right, title and interest, now held or at anytime hereinafter acquired by the Trustor in and to the real property described in **Exhibit A** attached hereto and made a part hereof and all the privileges, royalties and appurtenances to said land, now or hereafter belonging or in title, interest in, to or under any agreement or right granting, conveying or creating, for the benefit of said land, any easements, rights-of-way, gaps, strips of land adjoining said land or any parcel thereof, ways, alleys, vaults, gores, sewers, sewer rights, waters, water courses, water rights, privileges, tenements, hereditaments and rights (including development rights) or license in any way affecting other property and in, to or under any streets, or in or to the air space or development rights over said land (all of the foregoing hereinafter collectively referred to herein as the ***Land***);

(2)     all water rights appurtenant to the Land together with all pumping plants, pipes, flumes and ditches, and all rights in ditches for irrigation relating to the Land;

(3)     all damages, royalties and revenue of every kind, nature and description whatsoever that Trustor may be entitled to receive, either before or after any Event of Default, from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of the Land, with the right in Beneficiary to receive and apply the same to the Indebtedness pursuant to this Security Instrument and the other Loan Documents;

(4)     all buildings, structures and improvements of every kind and description now or hereafter erected or placed upon the Land and all landscaping and planted vegetation now or hereafter located on the Land and all of such things whether now or hereafter placed thereon being hereby declared to be real property (collectively, the ***Improvements***);

(5)     all of Trustor's right, title and interest in and to the private residence club units including all unsold private residence club units (collectively, the ***Units)***, the restaurants, the spa and fitness center, any meeting space, the roof top owners club, the underground climate-controlled parking garage and all related amenities (collectively, the ***Premises***);

(6)     all right, title and interest of the Trustor in all materials, machinery, supplies, equipment, fixtures, apparatus and other items of personal property now owned or hereafter acquired by the Trustor and now or hereafter attached to, installed in or used in connection with any of the Improvements or the Land, including, without limitation, any and all partitions, dynamos, window screens and shades, drapes, rugs and other floor coverings, awnings, motors, engines, boilers, furnaces, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating ventilating, plumbing, lighting, communications and elevator fixtures, laundry, incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery and equipment, disposals, dishwashers, furniture, refrigerators and ranges, securities systems, art work, recreational and pool equipment and facilities of all kinds, water, gas, electrical, storm and sanitary sewer facilities of all kinds, and all other utilities whether or not situated in easements together with all accessions, replacements, betterments, and substitutions for any of the foregoing (collectively, the *Fixtures*);

(7)     all present and future right, title and interest of Trustor in and to all inventory, equipment, fixtures and other goods (as those terms are defined in the UCC (as defined below)) now or in the future located at, upon or about, or affixed or attached to or installed in, the Improvements, or used or to be used in connection with or otherwise relating to the Improvements or the ownership, use, development, construction, maintenance, management, operation, marketing, leasing or occupancy of the Improvements, including, without limitation, machinery, supplies (whether stored at or off the Land and/or Improvements) furniture, furnishings, equipment, fittings, electronic business machines and equipment, culinary equipment and other articles of personal property of every kind and nature whatsoever now or at any time hereafter affixed to, or attached to, or placed upon, or used or usable in any way in connection with the use, enjoyment, occupancy, management or operation of the Improvements, including, but without limiting the generality of the foregoing, all heating, lighting, laundry, incinerating, landscaping, loading, unloading, garage and power equipment and supplies, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, fire extinguishing, sprinkler systems, refrigerating, ventilating, communications apparatus, air cooling and air conditioning apparatus, elevators, escalators, storm doors and windows, stoves, attached cabinets, partitions, ducts, compressors, shades, blinds, curtains, drapes, awnings, screens, rugs, carpets and other floor coverings, hall and lobby equipment, beds, chairs, desks, tables, lamps, chandeliers, kitchen utensils, silverware, kitchen appliances and restaurant equipment and supplies, glassware, dishware, napery, paintings, pictures, tapestries, pottery and all other works of art, vacuum cleaning systems, cash registers, telephone and reservation systems, electronic data processing and word processing equipment and software, partitions, ducts and compressors, bed frames, springs, mattresses, sheets, pillow cases, blankets, bed curtains, televisions, radios, lamps, mirrors, wall hangings, decorations, bathroom fixtures, shower curtains, towels, medicine cabinets, hotel cleaning equipment and supplies, and all replacements of and additions to all or any of the foregoing and all other types of tangible personal property of any kind or nature, and all accessories, additions,

attachments, parts, proceeds, products, repairs, replacements and substitutions of or to any of such property (collectively, the *FF&E*);

(8)     all right, title and interest of Trustor in and to all goods, accounts, general intangibles, instruments, documents, accounts receivable (including receivables relating to parking revenues), chattel paper, customer contracts and all other personal property of any kind or character, including such items of personal property as defined in the UCC, now owned or hereafter acquired by Trustor and now or hereafter affixed to, placed upon, used in connection with, arising from or otherwise related to the Land and/or the Improvements or which may be used in or relating to the planning, development, financing or operation of the Land and/or the Improvements, including, without limitation, furniture, furnishings, equipment, machinery, money, insurance proceeds, condemnation awards, accounts, contract rights, trademarks, goodwill, chattel paper, documents, trade names, licenses and/or franchise agreements, rights of Trustor under leases of Fixtures or other personal property or equipment, inventory, all refundable, returnable or reimbursable fees, deposits or other funds or evidence of credit or indebtedness deposited by or on behalf of Trustor with any governmental authorities, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs and all refunds, rebates or credits in connection with a reduction in real estate taxes and assessments against the Trust Property as a result of tax certiorari or any applications or proceedings for reduction (collectively, the *Personalty*);

(9)     all right, title and interest of Trustor in all reserves, escrows or impounds required under the Loan Agreement and all unrestricted deposit accounts (including tenant security deposits (subject, however, to the rights of the tenants with respect thereto and to applicable law) and any deposits with respect to utility services furnished or to be furnished to the Premises) maintained by the Trustor with respect to the Trust Property;

(10)     all right, title and interest of Trustor in all plans, specifications, schedules, shop drawings and other technical descriptions prepared for construction, repair or alteration of the Improvements, and all amendments and modifications thereof (collectively, the *Plans*);

(11)     all right (including the rights to enforce, whether at law or in equity or by any other means, all provisions and options thereof), title and interest of the Trustor in all leasehold estates, real property, equipment leases, (including, without limitation, all leases relating to the extraction and production of oil, gas and other hydrocarbons from below the surface of the Land), subleases, sub-subleases, licenses, concessions, occupancy agreements or other agreements (written or oral, now or at any time in effect and every modification, amendment or other agreement relating thereto) including every guarantee of the performance and observation of the covenants, conditions and agreements to be performed and observed by the other party thereto which grant a possessory interest in, or the right to use or occupy, all or any part of the Trust Property, together with all related security and other deposits (collectively, the *Leases*);

(12)    subject to the revocable licenses in favor of Trustor contained in <u>Section 4.2</u> hereof, all right, title and interest of Trustor in and to (i) all of the rents, revenues, income, proceeds, issues, profits (including, without limitation, any oil or gas or other mineral royalties and bonuses), security (subject, however, to the rights of the tenants with respect thereto and to applicable law) and other types of deposits, and other benefits paid or payable and to become due or payable by parties to the Leases other than Trustor or using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying any portion or portions of the Trust Property, (including any claims (A) based on holdover by any lessee, (B) for damages sustained by Trustor, (C) in settlement for any claims of Trustor under or relating to any Leases, (D) any fees or other amounts paid for the cancellation, surrender or early termination of any Lease, or (E) arising under any Federal, state or other Law as a result of or in connection with the bankruptcy or insolvency of any lessee) including all amounts received as claims of any damages under any Leases (collectively, the **Rents**), (ii) all of the revenues, income, proceeds, issues, profits, security and other types of deposit, and other benefits paid or payable and to become due or payable by parties to the Purchase Agreements other than Trustor or using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying any portion or portions of the Fractional Ownership Units, (iii) all rights, dividends and/or claims of any kind whatsoever relating to any Leases, including, without limitation, any and all (A) tax refunds, abatements and claims in tax certiorari proceedings, (B) utility deposits, credits or refunds, (C) surrender, termination, take-back or takeover fees, charges or payments, however characterized relating to any Leases and (D) rights to recoupment of (1) allowances, non-accountable contributions, payments or other consideration paid, or the value of construction or work performed, (2) free rent conceded or allowed, (3) take-over, take-back or other assumption secured obligations paid, (4) the cost of any other payments or inducements to or for the benefit of any tenant and (5) brokerage commissions paid or incurred, by Trustor from any tenant or other party under any lease, and all proceeds resulting therefrom, and together with the right to take any action or file any papers or process in any court of competent jurisdiction, which may in the opinion of Beneficiary be necessary to preserve, protect or enforce such rights or claims, including the filing of any proof of claim in any insolvency proceeding under any state, Federal or other Laws and any rights, claims or awards accruing to or to be paid to Trustor in its capacity as landlord under any of the Leases, (iv) income, royalties, fees, revenues, issues, profits, proceeds, accounts receivable and other benefits now or hereinafter arising directly or indirectly from the Trust Property, or the operations of the Trust Property or any part thereof, (v) amounts received due to services to, and rentals, percentage rentals and other fees, payments and charges received from tenants, sub-tenants, licenses, concessionaires and occupants of commercial, hotel, public and retail space located at the Trust Property, calculated on a cash basis, whether in cash or in credit, (vi) proceeds of the sale of food and beverages, proceeds of rentals of dining rooms, conference rooms and banquet facilities, telephone services, laundry, vending, television and parking services at the Trust Property, the fair market value of any barter transaction and other fees and charges resulting from the operations by Trustor in the ordinary course of business, health club receipts, and other receipts, annual membership dues, the proceeds of the sale of any property of Trustor in the ordinary

course of business, proceeds, if any, from business interruption or other loss of income insurance (net of the costs of collection thereof), income derived from securities and other property acquired and held by Trustor for investment and proceeds of any business interruption insurance; and (vii) all other payments arising from the operation of the Trust Property as a hotel for goods sold or leased or for services rendered, whether or not yet earned by performance, including, without limiting the generality of the foregoing, (x) all accounts arising from the operation of the Trust Property and (y) all rights to payment from any consumer credit/charge card organization or entity (such as, or similar to, the organization or entities which sponsor and administer the American Express Card, the Visa Card, the MasterCard, the Carte Blanche Card, or the Discover Card), whether now existing or hereafter created, substitutions therefor, proceeds (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof and any and all of the foregoing and proceeds therefrom (collectively with the Rents, the ***Rents and Profits***);

(13)    all right, title and interest of the Trustor in and to any interest rate protection arrangement to which the Trustor is a party, including any Lender Interest Rate Protection Agreement, and all agreements, instruments, documents and contracts now or hereafter entered into by the Trustor with respect to any such interest rate protection arrangement;

(14)    all right, title and interest of the Trustor in all other agreements, such as the Fractional Ownership Documents, the Condominium Documents, Qualified Reservations, Reservations, the Purchase Agreements, sales contracts, Construction Contracts, architects' agreements, general contractors' agreements, engineers' contracts, utility contracts, maintenance agreements, the Hotel Management Agreement, the Development Agreement, marketing agreements, the Listing Agreement, reciprocal easement or operating agreements, declarations, development agreements, license agreements, parking agreements, service contracts, permits, licenses, certificates and entitlements in any way relating to the development, construction, use, occupancy, operating, maintenance, enjoyment, acquisition or ownership of the Trust Property or the sale of goods or services produced in or relating to the Trust Property (collectively, the ***Property Agreements***);

(15)    all right, title and interest of the Trustor in all certificates, including certificates of occupancy and certificates of compliance, authorizations, franchises, consents and approvals given by and licenses and permits issued by Governmental Authorities, and other rights and privileges issued by any and all Governmental Authorities and any other Persons in connection with the ownership, operation, construction, use, management, leasing or occupancy of the Premises;

(16)    all rights, privileges, titles, interests, liberties, tenements, hereditaments, rights-of-way, easements, sewer rights, water, water courses, air rights and development rights, licenses, permits and construction and equipment warranties, appendages and appurtenances appertaining to the foregoing, and all right, title and interest, if any, of the

Trustor in and to any streets, ways, alleys, underground vaults, passages, strips or gores of land adjoining the Land or any part thereof;

(17)    subject to the rights of Trustor hereunder or under the Loan Agreement, all insurance policies, unearned premiums therefore and proceeds from such policies, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, covering any of the above property now or hereafter acquired by Trustor;

(18)    all right, title and interest of Trustor in and to all environmental tests, studies and reports, current and future environmental claims and rights of action including tort claims and rights of indemnity and contribution under any Environmental Law against the prior owners, neighboring owners, tenants, consultants, advisors and third parties;

(19)    to the extent assignable, all permits, licenses (including, but not limited to, any operating licenses and liquor licenses, governmental approvals and authorizations relating to the Trust Property (collectively, the *Permits*);

(20)    all names, including, but not limited to, "Sky Lodge Private Residence Club and Hotel", "The Sky Lodge – A Destination Resort Club", "The Sky Lodge Hotel", "The Sky Lodge", "Sky Lodge" or variations thereof, under or by which any portion of the Land and/or the Improvements may at any time be operated or known, and all rights to carry on business under any such names or any variant thereof, and all trademarks, trade names, patents pending and goodwill relating to the Land and/or the Improvements (collectively, the *Trademarks*);

(21)    all mineral, riparian, littoral, water, oil and gas rights now or hereafter acquired and relating to all or any part of the Trust Property;

(22)    all of the Trustor's right, title and interest in and to any awards, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made by any Governmental Authority pertaining to the Land, Improvements, Fixtures or Personalty;

(23)    all accessories, replacements, renewals, additions and substitutions for any of the foregoing; and

(24)    all products and proceeds of all or any of the foregoing.

*UCC* means the Uniform Commercial Code as the same may be amended, modified or recodified from time to time in the State of Utah and such other jurisdictions where Financing Statements shall be filed from time to time to indicate Beneficiary's security interest in all or any portion of the Collateral.

## 2.   GRANT

2.1   To secure the payment, performance and discharge of the Obligations, Trustor, by these presents, hereby grants, assigns, mortgages, transfers and conveys unto the Trustee, IN TRUST, WITH POWER OF SALE for the use and benefit of Beneficiary, with right of entry and possession (to the extent permitted by applicable law), the Trust Property, to have and to hold the Trust Property unto Trustee, its successors, substitutes and assigns forever. Trustor hereby binds itself, and Trustor's successors, substitutes and assigns, to warrant and forever defend unto Beneficiary, its successors and assigns, the title to the Land and Improvements, together with all other rights of Trustor in and to the balance of the Trust Property, subject to the Permitted Exceptions in connection with the Trust Property.

## 3.   SECURITY AGREEMENT AND FIXTURE FILING

**Security Agreement**

3.1   This Security Instrument constitutes both a real property deed of trust and a "Security Agreement" on personal property within the meaning of the UCC and other applicable law with respect to the Personalty, Fixtures, FF&E, Plans, Permits, Leases, Rents, Property Agreements and all other portions of the Trust Property which are personal property (said portion of the Trust Property subject to the UCC, the *UCC Collateral*). The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Trustor in the Trust Property. Trustor, by executing and delivering this Security Instrument, hereby grants to Beneficiary, a first and prior security interest in the Personalty, Fixtures, Plans, Permits, Leases, Rents and Profits and Property Agreements and all other Trust Property which is personal property to secure the payment of the Indebtedness and performance of the Obligations and agrees that Beneficiary shall have all the rights and remedies of a secured party under the UCC with respect to such property including, without limiting the generality of the foregoing, the right to take possession of the UCC Collateral or any part thereof, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the UCC Collateral. During the continuance of an Event of Default, upon request or demand of Beneficiary, Trustor shall, at its expense, assemble the UCC Collateral and make it available to Beneficiary at the Premises. Trustor shall pay to Beneficiary, on ten (10) Business Days' written notice, any and all expenses, including actual reasonable legal expenses and attorneys' fees, incurred or paid by Beneficiary in protecting the interest in the UCC Collateral and in enforcing the rights hereunder with respect to the UCC Collateral. Any notice of sale, disposition or other intended action by Beneficiary with respect to the UCC Collateral sent to Trustor in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall constitute commercially reasonable notice to Trustor. The proceeds of any disposition of the UCC Collateral, or any part thereof, shall, except as otherwise required by law, be applied by Beneficiary in accordance with Section 6.7 hereof.

Trustor's chief executive office and principal place of business is at the address set forth in the first paragraph of this Security Instrument. Trustor shall promptly notify Beneficiary of any change in such address.

**Fixture Filing**

3.2    This Security Instrument shall also constitute a fixture filing under Section 9-502 of the UCC and any other applicable Uniform Commercial Code, each as amended and recodified from time to time, with respect to all Fixtures. Beneficiary shall have all rights with respect to the Fixtures afforded to it by the applicable Uniform Commercial Code, in addition to, but not in limitation of, the other rights afforded Beneficiary by the Loan Documents. A carbon, photographic or other reproduction of this Security Instrument shall be sufficient as a financing statement. Beneficiary shall have the right at any time to file a manually executed counterpart or a carbon, photographic or other reproduction of this Security Instrument as a financing statement in either the central or local UCC records of any jurisdiction wherein the Trust Property is located, but the failure of Beneficiary to do so shall not impair (a) the effectiveness of this Security Instrument as a fixture filing as permitted by the applicable Uniform Commercial Code, or (b) the validity and enforceability of this Security Instrument in any respect whatsoever. The following information is included for purposes of meeting the requirements of a financing statement.

(a)    The name of the debtor is Easy Street Partners, LLC, a Utah limited liability company;

(b)    The mailing address of the debtor is 4780 Winchester Court, Park City, Utah 84098;

(c)    The debtor's organizational identification number is 77-0647959;

(d)    The name of the secured party is WestLB AG, a German banking corporation acting through its New York branch; and

(e)    The address of the secured party is 1211 Avenue of the Americas, 23rd Floor, New York, New York 10036, Attention: Bruce F. Davidson.

**Attorney-in-Fact**

3.3    Trustor hereby irrevocably appoints Beneficiary, its successors and assigns, as its attorney-in-fact, which appointment is irrevocable and coupled with an interest, after the occurrence and during the continuance of an Event of Default and upon written notice to Trustor (a) to execute and/or record any notices of completion, cessation of labor or any other notices that Beneficiary deems appropriate to protect Beneficiary's interests, if Trustor shall fail to do so within ten (10) days after written request by Beneficiary; (b) upon the issuance of a deed and/or assignment of lease pursuant to the foreclosure of this Security Instrument or the delivery of a deed and/or assignment of lease in lieu of

foreclosure, to execute all instruments of assignment, conveyance or further assurance with respect to the Leases, Rents, Personalty, Fixtures, Plans and Property Agreements in favor of the grantee of any such deed and as may be necessary or desirable for such purpose; (c) to prepare, execute and file or record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve Beneficiary's security interests and rights in or to any of the Collateral; and (d) to perform any obligation of Trustor hereunder; however: (1) Beneficiary shall not, under any circumstances, be obligated to perform any obligation of Trustor; (2) any sums advanced by Beneficiary in such performance shall be included in the Indebtedness and shall bear interest at the Default Rate; (3) Beneficiary as such attorney-in-fact shall only be accountable for such funds as are actually received by Beneficiary; and (4) Beneficiary shall not be liable to Trustor or any other person or entity for any failure to take any action which it is empowered to take under this Section 3.3. Beneficiary shall provide Trustor with copies of any notices, instruments or filings executed by Trustor in accordance with this Section 3.3.

**4.    ASSIGNMENT OF RENTS AND LEASES AND AGREEMENTS**

**Assignment of Rents and Leases**

4.1    Trustor does hereby absolutely and unconditionally assign to Beneficiary, Trustor's right, title and interest in and to all current and future Leases and the absolute, unconditional and continuing right to receive and collect all Rents, it being intended by Trustor that, to the greatest extent permitted by applicable law, this assignment constitutes a present, outright, immediate, continuing and absolute assignment and not an assignment for additional security only. Such assignment to Beneficiary shall not be construed to bind Beneficiary to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Beneficiary. Beneficiary shall have no responsibility on account of this assignment for the control, care, maintenance, management or repair of the Trust Property, for any dangerous or defective condition of the Trust Property, or for any negligence in the management, upkeep, repair or control of the Trust Property. Trustor agrees to execute and deliver to Beneficiary such additional instruments, in form and substance reasonably satisfactory to Beneficiary, as may hereafter be requested by Beneficiary to further evidence and confirm such assignment.

**License**

4.2    Notwithstanding that Trustor hereby presently grants to Beneficiary an outright, immediate, continuing and absolute assignment of the Rents and Leases and not merely the collateral assignment of, or the grant of a lien or security interest in, the Rents and Leases, Beneficiary hereby grants to Trustor and its successors and not to any lessee or any other person, a license, revocable in accordance with the terms hereof, to collect and receive the Rents and to retain, use and enjoy the same and otherwise exercise all rights as landlord under any Lease, in each case subject to the terms hereof and of the Loan Agreement. Upon the occurrence and during the continuance of an Event of Default, the

license granted herein to Trustor shall immediately and automatically cease and terminate and shall be void and of no further force or effect; in each case, Trustor at the request of Beneficiary shall notify in writing all tenants and subtenants under any of the Leases that all Rent due thereunder should be paid to Beneficiary at its address set forth in the Loan Agreement, or at such other place as Beneficiary shall notify Trustor in writing. Notwithstanding said license, Trustor agrees that Beneficiary, and not Trustor, shall be deemed to be the creditor of each tenant or subtenant under any Lease in respect of assignments for the benefit of creditors and bankruptcy, reorganization, insolvency, dissolution or receivership proceedings affecting such tenant or subtenant (without obligation on the part of Beneficiary, however, to file or make timely filings of claims in such proceedings or otherwise to pursue creditors' rights therein), with an option in favor of Beneficiary to apply in accordance with the Loan Documents any money received by Beneficiary as such creditor in reduction of any amounts due under the Loan Documents. Upon the occurrence and during the continuance of an Event of Default, any portion of the Rents held by Trustor shall be held in trust for the benefit of Beneficiary for use in the payment of the Indebtedness. Upon the occurrence and during the continuance of an Event of Default, Beneficiary shall immediately be entitled to possession of all Rents, whether or not Beneficiary enters upon or takes control of the Trust Property, provided that if such Event of Default ceases to exist, the license shall automatically be reinstated.

## Certain Rights of Beneficiary

4.3    Subject to the revocable license granted above, upon the occurrence and during the continuance of an Event of Default, Beneficiary shall have the immediate and continuing right, power and authority, either in person or by agent, without bringing any action or proceeding, or by a receiver appointed by a court, without the necessity of taking possession of the Trust Property in its own name, and without the need for any other authorization or action by Trustor, hereunder, under the Loan Agreement, any other Loan Documents and as otherwise available at law or in equity, (a) to notify any lessee or other person that the Leases have been assigned to Beneficiary, and that all Rents are to be paid directly to Beneficiary, whether or not Beneficiary has commenced or completed foreclosure or taken possession of the Trust Property; (b) to settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents or other obligations in, to and under the Leases; (c) to demand, sue for or otherwise collect, receive, and enforce payment of Rents, including those past-due and unpaid and other rights under the Leases, prosecute any action or proceeding, and defend against any claim with respect to the Rents and Leases; (d) to enter upon, take possession of and operate the Trust Property whether or not foreclosure under this Security Instrument has been instituted and without applying for a receiver; (e) to lease all or any part of the Trust Property; and/or (f) to perform any and all obligations of Trustor under the Leases and exercise any and all rights of Trustor therein contained to the full extent of Trustor's rights and obligations thereunder.

**Irrevocable Instruments to Tenants**

4.4     At Beneficiary's written request, Trustor shall delivery a copy of this Security Instrument to each tenant under a Lease and to each manager and managing agent or operator of the Trust Property, and Beneficiary shall have the continuing right to do so. Trustor irrevocably directs any tenant, manager, managing agent, or operator of the Trust Property, without any requirement for notice to or consent by Trustor, to comply with all demands of Beneficiary under this Article 4 and to turn over to Beneficiary on demand all Rents which it receives. Trustor hereby acknowledges and agrees that payment of any Rents by a person to Beneficiary as hereinabove provided shall constitute payment by such person, as fully and with the same effect as if such Rents had been paid to Trustor. Beneficiary is hereby granted and assigned by Trustor the right, at its option, upon revocation of the license granted herein, upon an Event of Default that is continuing, to enter upon the Trust Property in person or by agent, without bringing any action or proceeding, or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license shall, subject to applicable law, be applied in accordance with the provisions of the Loan Agreement. Neither the enforcement of any of the remedies under this Article 4 nor any other remedies or security interests afforded to Beneficiary under the Loan Documents, at law or in equity shall cause Beneficiary to be deemed or construed to be a mortgagee in possession of the Trust Property, to obligate Beneficiary to lease the Trust Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise. Trustor shall, and hereby agrees to indemnify Beneficiary for, and to hold Beneficiary harmless from and against, any and all claims, liability, expenses, losses or damages which may or might be asserted against or incurred by Beneficiary solely by reason of Beneficiary's status as an assignee pursuant to the assignment of Rents and Leases contained herein, excluding any claim to the extent caused by such Beneficiary's fraud, bad faith, gross negligence or willful misconduct. Should Beneficiary incur any such claim, liability, expense, loss or damage, the amount thereof, including all actual expenses and reasonable fees of attorneys, shall constitute Indebtedness secured hereby, and Trustor shall reimburse Beneficiary therefor ten (10) Business Days after written demand.

**Unilateral Subordination**

4.5     Beneficiary may, at any time and from time to time by specific written instrument intended for the purpose, unilaterally subordinate the lien of this Security Instrument to any Lease, without joinder or consent of, or notice to, Trustor, any tenant or any other person, and notice is hereby given to each tenant under a Lease of such right to subordinate. No such subordination shall constitute a subordination to any lien or other encumbrance, whenever arising, or improve the right of any junior lienholder, and nothing herein shall be construed as subordinating this Security Instrument to any Lease.

**Assignment of Agreements**

4.6     All of Trustor's right, title and interest in and to the Property Agreements are hereby absolutely and irrevocably assigned to Beneficiary to be applied against the Obligations. Trustor hereby appoints Beneficiary its true and lawful attorney-in-fact with the right, at Beneficiary's option at any time, to demand, receive and enforce performance and payment of, to give receipts, releases and satisfactions for, and to sue, either in Trustor's or Beneficiary's name, for all amounts due under and performance required by the Property Agreements during the continuance of an Event of Default. Notwithstanding the foregoing assignment, but subject to the terms and conditions of the Loan Agreement, so long as no Event of Default has occurred which remains uncured, Trustor may collect, receive, take use or enjoy all rights under the Property Agreements and collect receive and retain for its own benefit all monies due or to become due under (but not more than one month in advance thereof) and the Trustor may exercise all other rights set forth in the Property Agreements (subject to any express restrictions set forth herein or in the other Loan Documents).   The foregoing assignment shall be fully operative without any further action on the part of either party.  Trustor shall from time-to-time within fifteen (15) days after written request by Beneficiary, execute, acknowledge and deliver any additional instruments Beneficiary may reasonably request to further evidence the assignment and transfer to Beneficiary of Trustor's interest in any Property Agreements.

**No Merger of Leasehold Estates**

4.7     If both the lessor's and lessee's estate under any Lease, or any portion thereof, becomes vested at any time in one owner, this Security Instrument and the Lien created hereby shall not be adversely affected by the application of the doctrine of merger unless Beneficiary so elects in writing by recording a written declaration so stating.  Unless and until Beneficiary so elects, Beneficiary and any lessor and lessee shall continue to have and enjoy all of the rights and privileges to the separate estates.  If Beneficiary does so elect, the Lien created by this Security Instrument shall attach to Trustor's resultant fee interest in the previously leased portion of the Trust Property, and Trustor agrees to comply with Section 7.1 to execute any documentation necessary and cooperate with Beneficiary in all respects to evidence such attachment.  In addition, upon the foreclosure of the Lien created by this Security Instrument on the Trust Property, any Leases then existing and affecting all or any portion of the Trust Property shall not be destroyed or terminated by merger or by the foreclosure unless, subject to the terms of the Leases and subordination, non-disturbance and attornment agreements to which Beneficiary is a party, Beneficiary or any purchaser at the sale so elects.  No act by or on behalf of Beneficiary or such purchaser shall constitute a termination of any Lease unless Beneficiary gives written notice thereof to the tenant or subtenant affected.

**Right to Assign Leases**

4.8     Trustor represents that it has the right to assign the Leases and Property Agreements to Beneficiary and such assignment is free and clear of any prior assignment,

Liens, charges, encumbrances, security interests and adverse claims whatsoever, except for any Permitted Exceptions. Without limiting the generality of the foregoing, Trustor represents that it has not executed any presently effective prior assignment of the Leases or the Property Agreements, or of its right, title and interest therein, or the Rents accruing under the Leases.

**Assignment to Beneficiary Controlling**

4.9     The rights of Trustee in the Leases, Rents and Property Agreements created under Article 2 shall be subject to the rights of Beneficiary in the Leases, Rents and Property Agreements created under this Article 4.

## 5.     WARRANTY

5.1     This Security Instrument is the legal, valid and binding obligation of the Trustor, enforceable against the Trustor (subject to the effects of bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally) in accordance with its terms.

5.2     Trustor represents and warrants that (a) it is not aware of (i) any plans for any condemnation or similar eminent domain action affecting any part of the Land and (ii) any plans by any Governmental Authority to affect access of the Trust Property to a dedicated public roadway and (b) it has not received any written notice, and has no knowledge of, of any action pending or threatened by any Governmental Authority or other Person which would effect the intended use of the Land as contemplated by the Loan Agreement.

## 6.     FORECLOSURE AND REMEDIES

**Remedies**

6.1     If an Event of Default exists and is continuing, Beneficiary may, at its option, by or through Trustee or otherwise, exercise one or more or all of the following remedies, all to the fullest extent permitted by applicable law:

(a)     **Acceleration.** Declare the unpaid portion of the Indebtedness to be immediately due and payable, without further notice or demand (each of which hereby is expressly waived by Trustor), whereupon the same shall become immediately due and payable.

(b)     **Entry Upon Trust Property.** Enter upon the Trust Property and take possession thereof and of all books, records and accounts relating thereto.

(c)     **Operation of Trust Property.** Hold, lease, operate or otherwise use or permit the use of the Trust Property, or any portion thereof, in such manner, for such time and upon such terms as Beneficiary may deem to be in its best interest (making such repairs, alterations, additions and improvements thereto, from time

to time, as Beneficiary shall deem necessary or desirable) and collect and retain all earnings, rents, profits or other amounts payable in connection therewith.

(d)    **Judicial Proceedings.**  (1) Foreclose this Security Instrument judicially, in the same manner as a mortgage; (2) cause the Trustee to exercise its power of sale in accordance with the provisions of this Security Instrument; or (3) sue on the Notes or Loan Agreement according to law. To the extent permitted by law, Beneficiary shall have the right to seek and obtain a deficiency judgment following the completion of a judicial foreclosure or Trustee's sale of all or part of the Trust Property.

(e)    **Trustee's Sale of Trust Property.**  The procedure for exercise of the Trustee's power of sale shall be as follows:

(1)    Upon written request therefore by Beneficiary specifying the nature of the default, or the nature of the several defaults, and the amount or amounts due and owing, Trustee shall execute a written notice of default and election to sell the Trust Property to satisfy the Obligations secured hereby, and shall cause such notice to be recorded and otherwise given according to law.

(2)    Notice of sale having been given as then required by law and not less than the time then required by law having elapsed after recordation of such notice of breach, Trustee, without demand on Trustor, shall sell all or any part of the Trust Property at the time and place of sale specified in the notice, as provided by statute, either as a whole or in separate parcels and in such order as it may determine, at public auction to the highest and best bidder for cash in lawful money of the United States, payable at time of sale. Trustor agrees that such a sale (or sheriff's sale pursuant to judicial foreclosure) of all the Trust Property as real estate constitutes a commercially reasonable disposition thereof, but that with respect to all or any part of the Trust Property which may be personal property, Trustee shall have and exercise, at Beneficiary's sole election, all the rights and remedies of a secured party under the UCC. Whenever notice is permitted or required hereunder or under the UCC, except as otherwise required under applicable law, ten (10) days shall be deemed reasonable. Trustee may postpone sale of all or any portion of the Trust Property, and from time to time thereafter may postpone such sale, as provided by statute. Trustee shall deliver to the purchaser its deed and bill of sale conveying the property so sold, but without any covenant or warranty, express or implied. The recital in such deed and bill of sale of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person other than Trustee, including Trustor or Beneficiary, may purchase at such sale.

(3)     After deducting all costs, fees and expenses of Trustee, and of this trust, including the cost of evidence of title search and reasonable counsel fees in connection with such sale, in each case to the extent permitted by applicable law, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof not then repaid, with accrued interest at the Default Rate; all other sums then secured hereby; and the remainder, if any, to any party entitled thereto as their rights may appear.

(f)     **Receiver.** Beneficiary shall be entitled, as a matter of strict right, without notice and ex parte except as otherwise required by applicable law, and without regard to the value or occupancy of the security, or the solvency of Trustor, or the adequacy of the Trust Property as security for the Obligations, to itself enter upon and take possession of the Trust Property, collect the Rents and Profits therefrom, if any, and apply the same as the court may direct, or, at its option, Beneficiary may have a receiver appointed to do the same, such receiver to have all the rights and powers permitted under the laws of the jurisdiction in which the Trust Property is located. Trustor hereby waives any requirements on the receiver or Beneficiary to post any surety or other bond. Beneficiary or the receiver may also take possession of, and for these purposes use, any and all Fixtures and Personalty which is a part of the Trust Property and used by Trustor in the rental or leasing thereof, or any part thereof. All costs and expenses (including reasonable receiver's fees, counsel fees, costs and Beneficiary's compensation) incurred pursuant to the powers herein contained shall constitute Indebtedness and shall be secured by this Security Instrument. Beneficiary shall (after payment of all costs and expenses incurred) apply such Rents, issues and Profits received by it on the Obligations in the order set forth in Section 6.7. The right to enter and take possession of the Trust Property, to manage and operate the same, and to collect the Rents, issues and Profits thereof, whether by receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. Beneficiary shall be liable to account only for such Rents, issues and Profits actually received by Beneficiary.

(g)     **Additional Rights and Remedies.** With or without notice, and without releasing Trustor from the Obligations, and without becoming a mortgagee in possession, Beneficiary shall have the right to cure any breach or default of Trustor (after the expiration of any applicable notice and cure periods) and, in connection therewith, (i) to enter upon the Trust Property and to do such acts and things as Beneficiary or Trustee deem necessary or desirable to protect the security hereof including, but without limitation, to appear in and defend any action or proceedings purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee hereunder; (ii) to pay, purchase, contest or compromise any encumbrance, charge, Lien or claim of Lien which, in the judgment of either Beneficiary or Trustee, is prior or superior hereto, the judgment of Beneficiary or Trustee being

conclusive as between the parties hereto; (iii) to institute an action, suit or proceeding in equity for the specific performance of any covenants, conditions or agreements contained herein or in the Notes, the Loan Agreement or any other Loan Document; (iv) to obtain insurance; (v) to pay any premiums or charges with respect to insurance required to be carried hereunder; and (vi) to employ counsel, accountants, contractors and other appropriate persons to assist them. All costs and expenses (including, reasonable attorneys' fees) incurred by Trustee or Beneficiary in accordance with this Section 6.1(g) shall constitute Indebtedness and shall be secured by this Security Instrument.

(h)     **Beneficiary as Purchaser.**   Beneficiary shall have the right to become the purchaser at any sale held by the Trustee or by any court, receiver or public officer, and Beneficiary shall have the right to credit upon the amount of the bid made therefor, the amount of indebtedness payable to it out of the net proceeds of such sale. Beneficiary, upon any such purchase, shall acquire good title to the Trust Property so purchased, free from the Lien of this Security Instrument and, subject to applicable law, free of all rights of redemption, if any, in Trustor. Recitals contained in any conveyance made to any purchaser at any sale made hereunder shall presumptively establish the truth and accuracy of the matters therein stated, including, without limiting the generality of the foregoing, nonpayment of the unpaid principal sum of, and the interest accrued on, the Notes after the same have become due and payable, advertisement and conduct of such sale in the manner provided herein or appointment of any successor Trustee hereunder; and Trustor does hereby ratify and confirm any and all acts that said Beneficiary or its successors may lawfully do in the Premises by virtue of the terms and conditions of this Security Instrument.

(i)     **Receipt to Purchaser.**   Upon any sale, whether made under the power of sale herein granted and conferred or by virtue of judicial proceedings, the receipt of the Trustee, or of the officer making the sale under judicial proceedings shall be sufficient discharge to the purchaser or purchasers at any sale for his or their purchase money, and such purchaser or purchasers, his or their assigns or personal representatives, shall not, after paying such purchase money and receiving such receipt of the Trustee or of such officer therefor, be obliged to see to the application of such purchase money, or be in anyway answerable for any loss, misapplication or nonapplication thereof.

(j)     **Effect of Sale.**   Any sale or sales of the Trust Property, whether under the power of sale herein granted and conferred or by virtue of judicial proceedings conducted in accordance with applicable law, shall, subject to applicable law, operate to divest all right, title, interest, claim, and demand whatsoever either at law or in equity, of Trustor of, in, and to the Premises and the Trust Property sold, and shall be a perpetual bar, both at law and in equity, against Trustor, Trustor's successors and assigns, and against any and all persons claiming or who shall thereafter claim all or any of the Trust Property sold from, through or under Trustor, or Trustor's successors or assigns; nevertheless, Trustor, if requested by

the Trustee to do so, shall join in the execution and delivery of all proper conveyances, assignments and transfers of the properties so sold.

(k)    **Remedies Under UCC.** Upon the occurrence and during the continuance of an Event of Default, Beneficiary may exercise its rights of enforcement, if they can be exercised without a breach of the peace, with respect to the UCC Collateral under the applicable provisions of the UCC, or under other applicable Utah law, and in conjunction with, in addition to or in substitution for those rights and remedies:

(1)    Beneficiary may enter upon the Premises to take possession of, assemble and collect the UCC Collateral and any and all books related to the Trust Property;

(2)    Beneficiary may require Trustor to assemble the UCC Collateral or any part thereof and make same available at a place Beneficiary designates which is mutually convenient to allow Beneficiary to take possession or dispose of such UCC Collateral;

(3)    Written notice mailed to Trustor as provided herein at least ten (10) days prior to the date of public sale of any part of the UCC Collateral or prior to the date after which private sale of such UCC Collateral shall be made shall constitute reasonable notice;

(4)    Any sale made pursuant to the provisions of this Subsection shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with and upon the same notice as required for the sale of the Trust Property under power of sale as provided in Section 6.1(e);

(5)    In the event of a foreclosure sale, whether made by the Trustee under the terms hereof, or under judgment of a court, the Trust Property may, at the option of Beneficiary, be sold as a whole;

(6)    It shall not be necessary that Beneficiary take possession of the UCC Collateral or any part thereof prior to the time that any sale pursuant to the provisions of this section is conducted and it shall not be necessary that the UCC Collateral or any part thereof be present at the location of such sale;

(7)    Prior to application of proceeds of disposition of any part of the UCC Collateral to the Obligations, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and the reasonable attorneys' fees and legal expenses incurred by Beneficiary;

(8)     Any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to nonpayment of the Obligations or as to the occurrence of any Event of Default, or to Beneficiary having declared all of such Obligations to be due and payable, or as to notice of time, place and terms of sale and of the Trust Property to be sold having been duly done by Beneficiary, shall be taken as prima facie evidence of the truth of the facts so stated and recited;

(9)     Beneficiary may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Beneficiary, including the sending of notices and the conduct of the sale, but in the name and on behalf of Beneficiary; and

(10)    (A) Notwithstanding anything to the contrary herein or elsewhere in the Loan Documents, but subject to clause (B) below, prior to foreclosure of the portion of the Trust Property which is real property (the **Real Property**), Beneficiary shall not sell or dispose of any UCC Collateral or cause any such UCC Collateral to be sold or disposed of; and (B) if a reinstatement shall occur with respect to this Security Instrument or if a pre-foreclosure redemption shall occur by payment of all outstanding Indebtedness and any other amounts owed to Beneficiary under the Loan Documents, then to the extent that Beneficiary shall have taken possession of any portion of the Trust Property or caused such possession to be taken by a receiver or agent, Beneficiary shall cause such portion of the Trust Property to be returned to Trustor. Nothing contained in this Subsection (10) shall (x) require Beneficiary to return any money to Trustor which shall have been applied to any of the Obligations or to the preservation or operation of the Trust Property; or (y) impair Beneficiary's rights with respect to Rents as otherwise provided in this Security Instrument.

(l)     **Entry on and Operation of Property by Beneficiary.** In addition to all other rights herein conferred on Beneficiary, Beneficiary (or any person, firm or corporation designated by Beneficiary) shall have the right and power, but shall not be obligated to enter upon and take possession of any of the Trust Property, and of all books, records, and accounts relating thereto and to exclude Trustor, and Trustor's agents or servants, wholly therefrom, and to hold, lease, operate, use, administer, manage, and operate the same to the extent that Trustor shall be at the time entitled and in his place and stead for such time, and upon such terms as Beneficiary may deem to be in its best interest (making such repairs, alterations, additions, and improvements thereto, from time to time, as Beneficiary shall deem necessary or desirable) and collect and retain all earnings, rents, profits, or other amounts payable in connection therewith. Beneficiary, or any person, firm or

corporation designated by Beneficiary, may operate the same without any liability to Trustor in connection with such operations, except to use ordinary care in the operation of said properties, and Beneficiary or any person, firm or corporation designated by them, shall have the right to collect, receive and receipt for all Rents from the Trust Property, to make repairs, purchase machinery and equipment, and to exercise every power, right and privilege of Trustor with respect to the Trust Property. All costs, expenses and liabilities of every character incurred by Beneficiary in managing, operating, maintaining, protecting or preserving the Trust Property, respectively, shall constitute a demand obligation owing by Trustor to Beneficiary and shall bear interest from date of expenditure until paid at the Default Rate, all of which shall constitute a portion of the Obligations and shall be secured by this Security Instrument and by any other instrument securing the Obligations. If necessary to obtain the possession provided for above, the Beneficiary, as the case may be, may invoke any and all remedies to dispossess Trustor including specifically one or more actions for forcible entry and detainer, trespass to try title and restitution. When and if the expenses of such operation have been paid and the Obligations paid, the Trust Property shall, if there has been no sale or foreclosure, be returned to Trustor.

(m)   **Change in Laws.** If any statute now applicable in any state in which any of the Trust Property is now located provides, or shall hereafter be amended to provide, a different procedure for the sale of real property under a power of sale in a deed of trust or mortgage, Beneficiary may, in its sole discretion, if same be permitted by applicable law, follow the sale procedure set forth in this Article 6 or that prescribed in such statute, as amended.

(n)   **Sale.** Cause the Trust Property and all estate, right, title and interest, claim and demand therein, or any part thereof to be sold as follows:

(1)   Beneficiary may proceed as if all of the Trust Property were real property, in accordance with Section 6.1(e), or Beneficiary may elect to treat any of the Trust Property which consists of a right in action or which is property that can be severed from the premises without causing structural damage thereto as if the same were personal property, and dispose of the same in accordance with subparagraph (3) below, separate and apart from the sale of real property, with the remainder of the Trust Property being treated as real property at the sale.

(2)   Subject to subsection (3) of this Section 6.1(n), Beneficiary may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, herein provided (or required by law) or Beneficiary may delay any such sale or other disposition for such period of time as Beneficiary deems to be in its best interest. Should Beneficiary desire that more than one sale or other disposition be conducted,

Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest.

(3)    Subject to the provisions of <u>Section 6.1(k)(10)</u>, should Beneficiary elect to cause any of the Trust Property to be disposed of as personal property as permitted by subparagraph (1) above, it may dispose of any part thereof in any manner now or hereafter permitted by Article 9 of the UCC or in accordance with any other remedy provided by law. Both Trustor and Beneficiary shall be eligible to purchase any part or all of such property at any such disposition. Any such disposition may be either public or private as Beneficiary may so elect, subject to the provisions of the UCC, Beneficiary shall give Trustor at least ten (10) Business Days prior written notice of the time and place of any public sale or other disposition of such property or of the time at or after which any private sale or any other intended disposition is to be made, and if such notice is sent to Trustor, it shall constitute reasonable notice to Trustor.

(o)    **Partial Foreclosure.** With or without entry and, to the extent permitted, and pursuant to the procedures provided by applicable law, the Beneficiary may institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Indebtedness secured hereby then due and payable, subject to the Lien of this Security Instrument continuing unimpaired and without loss of the priority so as to secure the balance of the Indebtedness secured hereby not then due.

(p)    **Assembly of the Trust Property.** The Beneficiary may require the Trustor to assemble the Trust Property, or any part thereof, and make it available to the Beneficiary at the Premises or at such other place as the Beneficiary may reasonably designate.

(r)    **Surrender of Insurance Policies.** In the event of the transfer of the Trust Property pursuant to a foreclosure, deed in lieu of foreclosure, or otherwise, and subject to the terms and conditions of the Loan Agreement, the Beneficiary may surrender the insurance policies maintained pursuant to the terms of the Loan Documents, or any part thereof, and receive and apply the unearned premiums as a credit on the Obligations, and in connection therewith, the Trustor hereby authorizes the Beneficiary to collect such premiums.

(s)    **Other.** Exercise any other remedy specifically granted under the Loan Documents, or now or hereafter existing in equity, at law, by virtue of statute or otherwise, including all rights described herein, an action for specific performance

of any covenant contained in any Loan Document or a judgment on the Notes either before, during or after any proceeding to enforce this Security Instrument.

**Separate Sales**

6.2     Any real estate or any interest or estate therein sold pursuant to any writ of execution issued on a judgment obtained by virtue of the Notes, this Security Instrument or the other Loan Documents, or pursuant to any other judicial proceedings under this Security Instrument, or pursuant to the power of sale granted herein, may be sold in one parcel, as an entirety or in such parcels and in such manner or order as Beneficiary, in its sole discretion, may elect.

**Remedies Cumulative and Concurrent**

6.3     The rights and remedies of Beneficiary as provided in the Notes, this Security Instrument and in the Loan Documents shall be cumulative and concurrent and may be pursued separately, successively or together against Trustor or against other obligors or against the Trust Property, or any one or more of them, at the sole discretion of Beneficiary, and may be exercised as often as occasion therefor shall arise.  The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof, nor shall the choice of one remedy be deemed an election of remedies to the exclusion of other remedies.

**No Cure or Waiver**

6.4     Neither Beneficiary's nor any receiver's entry upon and taking possession of all or any part of the Trust Property nor any collection of Rents, issues, Profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Obligations, nor the exercise of any other right or remedy by Beneficiary or Trustee or any receiver shall impair the status of the security, or cure or waive any default or notice of default under this Security Instrument, or nullify the effect of any notice of default or sale (unless all Obligations which are then due have been paid and performed and Trustor has cured all other defaults), or prejudice Beneficiary or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Beneficiary of any tenancy, lease or option or a subordination of the Lien of this Security Instrument.

**Payment of Costs, Expenses and Attorneys' Fees**

6.5     Trustor agrees to pay to Beneficiary promptly after written demand all reasonable costs and expenses (including reasonable attorneys' fees and expenses) incurred by Trustee and Beneficiary in enforcing this Security Instrument, all of which shall constitute Indebtedness and shall be secured by this Security Instrument.

**Waiver of Redemption, Notice, Marshalling, Etc.**

6.6     To the extent permitted by applicable law, Trustor hereby waives and releases: (a) all benefit that might accrue to Trustor by virtue of any present or future law exempting the Trust Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any redemption or extension of time for payment; (b) unless specifically required herein or in the other Loan Documents, all notices of Trustor's default or of Beneficiary's election to exercise, or Beneficiary's actual exercise, of any option or remedy under the Notes or the Loan Documents; (c) any right to have the Liens against the Trust Property or any other collateral in which Beneficiary holds an interest as security for the Obligations marshaled; and (d) the right to plead or assert any statute of limitations as a defense or bar to the enforcement of the Notes or the Loan Documents.

**Application of Proceeds**

6.7     The proceeds of any sale of all or any portion of the Trust Property and the amounts generated by any holding, leasing, operation or other use of the Trust Property shall be applied by Beneficiary in the following order:

(a)     to the payment of the actually incurred reasonable costs and expenses of taking possession of the Trust Property and of holding, using, leasing, repairing, improving and selling the same, including, without limitation (1) receiver's fees and expenses; (2) court costs; (3) reasonable attorneys', accountants', appraisers', environmental consultants', engineers' and other experts' fees and expenses; (4) costs of advertisement; (5) costs of procuring title searches, title policies and similar data and assurance with respect to title; and (6) the payment of all ground rent, real estate taxes and assessments except any taxes, assessments or other charges subject to which the Trust Property shall have been sold;

(b)     to the payment of all amounts, other than the unpaid principal balance of the Notes and accrued but unpaid interest on such principal balance, which may be due under the Loan Documents;

(c)     to the payment of the Indebtedness in such manner and order of preference as Beneficiary in its sole discretion may determine; and

(d)     the balance, if any, to the payment of the persons legally entitled thereto.

If Beneficiary shall be ordered, in connection with any bankruptcy, insolvency or reorganization of Trustor, to restore or repay to or for the account of Trustor or its creditors any amount theretofore received under this Section 6.7, the amount of such restoration or repayment shall be deemed to be a part of the Indebtedness so as to place Beneficiary in the same position it would have been in had such amount never been received by Beneficiary.

**Strict Performance**

6.8     Any failure by Beneficiary to insist upon strict performance by Trustor of any of the terms and provisions of the Loan Documents or of the Notes shall not be deemed to be a waiver of any of the terms or provisions of the Loan Documents or the Notes and Beneficiary shall have the right thereafter to insist upon strict performance by Trustor of any and all of them.

**No Conditions Precedent to Exercise of Remedies**

6.9     Neither Trustor nor any other person now or hereafter obligated for payment of all or any part of the Indebtedness or performance of any of the other Obligations shall be relieved of such obligation by reason of the failure of Beneficiary to comply with any request of Trustor or of any other person so obligated to take action to foreclose on this Security Instrument or otherwise enforce any provisions of the Loan Documents or the Notes, or by reason of the release, regardless of consideration, of all or any part of the security held for the payment of the Indebtedness or performance of any other Obligations, or by reason of any agreement or stipulation between any subsequent owner of the Trust Property and Beneficiary extending the time of payment or modifying the terms of the Loan Documents or Notes (except to the extent that such modification (i) increases the principal amount of the Indebtedness or the interest rate incurred under the Loan Agreement, (ii) reduces the term of the Loan, or (iii) otherwise makes the terms and provisions of the Loan Documents less favorable to Trustor) without first having obtained the consent of Trustor or such other person, and in the latter event, Trustor and all such other persons shall continue to be liable to make payment according to the terms of any such extension or modification agreement (except to the extent such modification (i) increases the principal amount of the Indebtedness or the interest rate incurred under the Loan Agreement, (ii) reduces the term of the Loan, or (iii) otherwise makes the terms and provisions of the Loan Documents less favorable to Trustor), unless expressly released and discharged in writing by Beneficiary.

**Release of Collateral**

6.10    Beneficiary may release, regardless of consideration, any part of the security held for the payment of any of the Indebtedness or performance of any of the other Obligations without, as to the remainder of the security, in any way impairing or affecting the Liens of the Loan Documents or their priority over any subordinate Lien.  Without affecting the liability of Trustor or any other person (except any person expressly released in writing) for payment of any Indebtedness secured hereby or for performance of any Obligations contained herein, and without affecting the rights of Beneficiary with respect to any security not expressly released in writing, Beneficiary may, at any time and from time to time, either before or after maturity of said Note, and without notice or consent: (a) release any person liable for payment of all or any part of the Indebtedness, or for performance of any of the other Obligations; (b) make any agreement extending the time or otherwise altering terms of payment of all or any part of the Indebtedness, or modifying or waiving any of, the other Obligations, or subordinating, modifying or

otherwise dealing with the Lien hereof; (c) exercise or refrain from exercising or waive any right Beneficiary may have; (d) accept additional security of any kind; or (e) release or otherwise deal with any property, real or personal, securing the Obligations, including all or any part of the Trust Property.

**Other Collateral**

6.11    For payment of the Obligations, Beneficiary may resort to any other security therefor held by Beneficiary in such order and manner as Beneficiary may elect.

**Discontinuance of Proceedings**

6.12    In the event Beneficiary shall have proceeded to enforce any right under the Loan Agreement, the Notes or the other Loan Documents and such proceedings shall have been discontinued or abandoned for any reason, then in every such case, Trustor and Beneficiary shall be restored to their former positions and the rights, remedies and powers of Beneficiary shall continue as if no such proceedings had taken place.

**Release of Liability**

6.13    Without affecting the liability of any person (other than any person released pursuant to the provisions of this section) for payment of any of the Indebtedness secured hereby or performance of any of the other Obligations secured hereby, and without affecting or impairing in any way the priority or extent of the Liens of the Loan Documents upon any property not specifically released pursuant hereto, Beneficiary may at any time and from time to time (a) release any person liable for payment of any of the Indebtedness secured hereby or performance of any of the other obligations secured hereby, (b) extend the time or agree to alter the terms of payment of any of the Indebtedness or the performance of any of the other Obligations, (c) accept additional security of any kind, (d) release any property securing the Obligations, or (e) consent to the creation of any easement on or over the Trust Property or any covenants restricting the use or occupancy thereof.

**Retention of Copies of Books and Records**

6.14    Without limiting any of Beneficiary's rights and remedies at law or in equity, including under this Security Instrument, in the event Beneficiary elects to foreclose or otherwise realize upon its security interest in any of the UCC Collateral, nothing herein shall be deemed to prohibit Trustor from retaining copies of its books and records (including computer-readable copies thereof), **provided,** that the originals thereof, to the extent in Trustor's possession, are delivered to Beneficiary or the purchaser of such UCC Collateral at a foreclosure sale, as applicable.

**State-specific Provisions**

6.15    In the event of any inconsistencies between the terms and conditions of this Section 6.15 and the other provisions of this Security Instrument, the terms and conditions of this Section 6.15 shall control.

(a)    Trustor acknowledges and agrees that neither the Obligations nor any right of Beneficiary under this Security Instrument nor any right of Beneficiary as Administrative Agent or of the Lenders under the Loan Agreement is secured "solely" by a "mortgage or deed of trust upon real estate" within the meaning of Utah Code Ann. Section 78-37-1, in that a material part of the security granted for the benefit of Beneficiary and the Lenders in such capacities with respect to the Obligations and with respect to each such right (including, without limitation, the FF&E, the Personalty and the Trademarks) is not "real estate."  For this reason, Trustor hereby knowingly, intentionally and voluntarily, with and upon the advice of competent counsel, to the full extent permissible under applicable Law, waives and agrees not to assert or take advantage of any rights Trustor may otherwise have under Utah Code Ann. § 78-37-1, or any other right to require Beneficiary or any Lender to proceed against Trustor or any other person or to proceed against or exhaust any security held by Beneficiary or any Lender at any time or to pursue any other remedy in Beneficiary's or any Lender's power or under any other agreement before proceeding against Trustor hereunder.

(b)    Notwithstanding any contrary provisions contained in this Article 6, the requirements of Utah Code Ann. Sections 57-1-24, 57-1-25 and 57-1-29 shall govern in the event that Beneficiary elects to initiate foreclosure of the Trust Property by requesting Trustee to effectuate a non-judicial foreclosure sale.

7.    MISCELLANEOUS

**Further Assurances**

7.1    Trustor, upon the reasonable written request of Beneficiary, shall execute, acknowledge and deliver or file, or, with respect to persons or entities within Trustor's control, arrange for the execution, acknowledgment and delivery or filing of, such further reasonable instruments (including, without limitation, financing statements, estoppel certificates and declarations of no set-off, attornment agreements and acknowledgments of the Assignment) and do such further acts as may be reasonably necessary, desirable or proper to carry out more effectively the purpose of the Loan Documents, to facilitate the assignment or transfer of the Notes and the Loan Documents and to subject to the Liens of the Loan Documents any property intended by the terms thereof to be covered thereby, and any renewals, additions, substitutions, replacements or betterments thereto.  Upon any failure of Trustor to execute and deliver such instruments, certificates and other documents on or before 15 days after receipt of written request therefor, Beneficiary may make, execute and record any and all such instruments, and certificates and Trustor irrevocably appoints Beneficiary the agent and attorney-in-fact of Trustor to do so.

**Recording and Filing**

7.2     Trustor, at its expense, shall cause the Loan Documents, all supplements thereto and any financing statements at all times to be recorded and filed and re-recorded and re-filed in such manner and in such places as Beneficiary shall reasonably request, and shall pay all such recording, filing, re-recording and re-filing taxes, fees and other charges.

**Notice**

7.3     All notices, demands, requests and other communications required under the Loan Documents and the Notes shall be in writing and shall be delivered to such party at its address set forth on the first page of this Security Instrument and otherwise in accordance with Section 11.4 of the Loan Agreement.

**Beneficiary's Right to Perform the Obligations**

7.4     If Trustor shall fail to make any payment or perform any act required by the Notes or the Loan Documents, which is not cured on or before expiration of any applicable cure period, then Beneficiary may make such payment or perform such act for the account of and at the expense of Trustor, and shall have the right to enter the Trust Property for such purpose and to take all such action thereon and with respect to the Trust Property as may be necessary or appropriate for such purpose in accordance with the Loan Agreement. All sums so paid by Beneficiary, and all reasonable costs, and expenses, including, without limitation, reasonable attorneys' fees and expenses so incurred together with, interest thereon at the Default Rate, from the date of payment or incurring, constitute additions to the Obligations secured by the Loan Documents, and shall be paid by Trustor to Beneficiary, on demand. If Beneficiary shall elect to so pay any Taxes, Beneficiary may do so in reliance on any bill, statement or assessment procured from the appropriate public office, without inquiring into the accuracy thereof or into the validity of such Taxes. Trustor shall indemnify Beneficiary for all reasonable losses and expenses, including reasonable attorneys' fees, incurred by reason of any acts performed by Beneficiary pursuant to the provisions of this Section 7.5 or by reason of the Loan Documents, and any funds expended by Beneficiary to which it shall be entitled to be indemnified, together with interest thereon at the Default Rate from the date of such expenditures, shall constitute additions to the Obligations and shall be secured by the Loan Documents and shall be paid by Trustor to Beneficiary upon demand.

**Severability**

7.5     Any provision of this Security Instrument which is prohibited or unenforceable in the State of Utah or in any other jurisdiction in the United States shall be, as to the State of Utah or such other jurisdiction in the United States, ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

**Modification**

7.6     The Loan Documents and the terms of each of them may not be changed, waived, discharged or terminated orally, but only by an instrument or instruments in writing signed by the party against which enforcement of the change, waiver, discharge or termination is asserted.

**Non-Assumable**

7.7     The Loan evidenced by the Notes and secured by this Security Instrument is personal to Trustor, and Beneficiary made such Loan to Trustor, based upon the credit of Trustor, and Beneficiary's judgment of the ability of Trustor to repay the entire Obligations and therefore this Security Instrument may not be assumed by any subsequent holder of an interest in the Trust Property without Beneficiary's prior written consent.

**Tax on Obligations or Security Instrument**

7.8     In the event of the passage, after the date of this Security Instrument, of any law deducting from the value of land for the purposes of taxation, any Lien thereon, or imposing upon Beneficiary the obligation to pay the whole, or any part, of the taxes or assessments or charges or Liens herein required to be paid by Trustor, or changing in any way the laws relating to the taxation of deeds of trust, mortgages or debts as to affect this Security Instrument or the Obligations, Trustor shall pay Beneficiary any such additional amounts necessary to compensate Beneficiary, on an after-tax basis, for such additional costs in accordance with the terms and provisions of the Loan Agreement.

**Maximum Rate of Interest**

7.9     All agreements between Trustor and Beneficiary, whether now existing or hereafter arising and whether written or oral, are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of the maturity of the Notes or otherwise, shall the amount paid, or agreed to be paid to Beneficiary for the use, forbearance, or detention of the money to be loaned under the Notes or otherwise or for the payment or performance of any covenant or obligation contained herein or in the Notes, exceed the Maximum Rate. The term *Maximum Rate* as used herein shall mean the higher of the maximum interest rate allowed by applicable United States or New York law as amended from time to time, in effect on the date for which a determination of interest accrued hereunder is made. If from any circumstances whatsoever fulfillment of any provision hereof or of any such other documents, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by applicable usury law, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance, Beneficiary shall have ever received interest or anything which might be deemed interest under applicable law which would exceed the Maximum Rate, such amount which would be excessive interest shall be applied to the reduction of the principal amount owing on account of the Notes or the amounts

owing on other Obligations of Trustor to Beneficiary hereunder (all without payment of any prepayment premium) and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal of the Notes and the amounts owing on other Obligations of Trustor to Beneficiary hereunder as the case may be such excess shall be refunded to Trustor.  All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Obligations of Trustor to Beneficiary shall, to the extent permitted by applicable law, (i) be amortized, prorated, allocated and spread throughout the full term of such Obligations until payment in full so that the actual rate of interest on account of such Obligations does not exceed the Maximum Rate throughout the term thereof, (ii) be characterized as a fee, expense or other charge other than interest, or (iii) exclude any voluntary prepayments and the effects thereof.

**Survival of Warranties and Covenants**

7.10   The warranties, representations, covenants and agreements set forth in the Loan Documents shall survive the making of the Loan and the execution and delivery of the Notes, and shall continue in full force and effect until the Obligations shall have been paid in full, except such obligations as specified in the Loan Agreement which shall survive.

**GOVERNING LAW**

7.11   THIS   SECURITY   INSTRUMENT   SHALL   BE   CONSTRUED   IN ACCORDANCE WITH, AND THIS SECURITY INSTRUMENT AND ALL MATTERS ARISING OUT OF THIS SECURITY INSTRUMENT (WHETHER IN CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, THE LAW OF THE STATE OF UTAH.

**Prior Agreements**

7.12   THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS CONTAIN THE ENTIRE AGREEMENT OF THE PARTIES HERETO AND THERETO IN RESPECT OF THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY, AND ALL PRIOR AGREEMENTS AMONG OR BETWEEN SUCH PARTIES, WHETHER ORAL OR WRITTEN, INCLUDING ANY TERM SHEETS AND COMMITMENT LETTERS, ARE SUPERSEDED BY THE TERMS OF THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS.

**Substitution of Trustee**

7.13   Beneficiary may appoint a substitute or successor trustee or trustees in place of the Trustee or Trustees with or without any reason, by instrument in writing, which any without other formality than a designation in writing of a substitute or successor. Beneficiary may exercise this irrevocable appointment power at any time without specifying any reason therefor.  The power of appointment of a successor Trustee or Trustees may be exercised as often as and whenever the Beneficiary may choose, and the

exercise of the power of appointment, no matter how often, shall not be an exhaustion thereof. Whenever in this Security Instrument reference is made to the Trustee or Trustees, it shall be construed to mean the Trustee or Trustees for the time being, whether original or successors in trust; and all title, estate, rights, powers, trusts, and duties hereunder given or appertaining to or devolving upon the Trustee or Trustees shall be in each of the Trustees so that any action hereunder or purporting to be hereunder of any one of the original or any successor Trustee shall for all purposes be considered to be as effective as the action of all the Trustees.

## No Representations by Beneficiary

7.14   By accepting or approving anything required to be observed, performed or fulfilled or to be given to Beneficiary, pursuant to the Loan Documents, including (but not limited to) any officer's certificate, survey, appraisal or insurance policy, Beneficiary shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Beneficiary.

## Acceptance of Trust

7.15   Trustee accepts the trust created by this Security Instrument when this Security Instrument, duly executed and acknowledged, is made a public record as provided by law. At any time or from time to time, without liability therefor and without notice, and without releasing or otherwise affecting the liability of Trustor for the Obligations, Trustee, upon written request of Beneficiary, may reconvey any part of the Trust Property, consent to the making of any map or plat thereof or join in granting any easement thereon.

## Reconveyance

7.16   Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Security Instrument and the Notes to Trustee for cancellation and retention, and upon payment of its fees, Trustee shall release the Lien of this Security Instrument and the other Loan Documents by instrument in recordable form. The recitals in any such release of any matters or facts shall be conclusive proof of the matters set forth therein.

## Headings

7.17   The headings and captions of various Sections of this Security Instrument have been inserted for convenience only and are not to be construed as defining, modifying, limiting or amplifying, in any way, the scope of intent of the provisions hereof.

**Relationship Between Parties**

7.18    Nothing contained in the Notes, this Security Instrument or the other Loan Documents shall be construed as creating a joint venture or partnership between Beneficiary and Trustor, and Beneficiary shall have no right of control or supervision over Trustor except as Beneficiary may exercise its rights and remedies under this Security Instrument and the other Loan Documents.    Trustor further disclaims any fiduciary or quasi fiduciary relationship between it or any of its partners and Beneficiary.

**Waivers Pertaining to Notes**

7.19    Trustor in its capacity as Trustor under this Security Instrument and not as maker of the Notes waives presentation, demand, protest and notice of nonpayment of the Notes (except for notices required hereunder or under the other Loan Documents), and consents to delays, changes in time of payment and the amount of installments due under the Notes, and to the reduction or increase of the interest rates thereof based upon changes in the LIBO Rate or Base Rate.

**Jurisdiction**

7.20    Trustor agrees that any action or proceeding arising out of or relating to this Security Instrument may be commenced in any court located in the State of Utah. Trustor hereby irrevocably submits to the jurisdiction of the United States District Court for the District of Utah over any action or proceeding arising out of or relating to this Security Instrument, and does hereby irrevocably waive, to the fullest extent it may effectively do so the defense of an inconvenient forum to the maintenance of such action or proceeding.

**Release**

7.21    Upon payment in full of the Indebtedness and performance in full of the Obligations the estate hereby granted shall cease, terminate and be void and Beneficiary, at Trustor's expense, shall release or cause the release or reconveyance of the liens and security interests created by this Security Instrument.    If Trustor shall arrange for repayment of the entire Indebtedness by a third party, at Trustor's request and at Trustor's sole cost and expense, Beneficiary shall assign the Notes, this Security Instrument and any other Loan Documents (to the extent requested by Trustor) to such third party, without recourse, representation or warranty (except that (i) Beneficiary owns the Notes; (ii) Beneficiary has not encumbered the Notes, except for liens to be discharged concurrently with such assignment; and (iii) Beneficiary shall make a representation with respect to accrued interest and the principal balance of the Notes).

**Third Parties**

7.22    Nothing in this Security Instrument is intended to confer any rights or remedies on any persons other than Trustor, Trustee, Beneficiary and each Lender and their respective successors and assigns.

**WAIVER OF JURY TRIAL**

7.23    TRUSTOR AND BENEFICIARY HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS SECURITY INSTRUMENT, ANY OF THE LOAN DOCUMENTS, OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION AND LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED. TRUSTOR AND BENEFICIARY ALSO WAIVE ANY BOND OR SURETY OR SECURITY UPON SUCH BOND WHICH MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF TRUSTOR OR BENEFICIARY.    THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.    TRUSTOR AND BENEFICIARY ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS SECURITY INSTRUMENT AND THAT EACH SHALL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS.    TRUSTOR AND BENEFICIARY FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT    AMENDMENTS,    RENEWALS,    SUPPLEMENTS    OR MODIFICATIONS TO THIS SECURITY INSTRUMENT, THE LOAN DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOAN. IN THE EVENT OF LITIGATION, THIS SECURITY INSTRUMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**Maximum Amount of Indebtedness**

7.24    Notwithstanding anything contained herein to the contrary, the maximum amount of principal Indebtedness secured by this Security Instrument at the time of execution hereof or which under any contingency may become secured by this Security Instrument at any time hereafter is 200% of the amount of the Loan, plus (a) taxes, charges or assessments which may be imposed by law upon the Trust Property; (b) premiums on insurance policies covering the Trust Property; and (c) expenses incurred in upholding

and enforcing the Lien of this Security Instrument, including, but not limited to (1) the expenses of any litigation to prosecute or defend the rights and Lien created by this Security Instrument; (2) any amount, cost or charges to which the Security Instrument becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority; (3) interest at the Default Rate (or the interest rate); and (4) any sums expended by Beneficiary pursuant to Section 7.5.

**Request for Notice**

7.25    Trustor hereby requests that any notice of default and any notice of sale hereunder be mailed to it at its address set forth in the Preamble to this Security Instrument.

**Lien Absolute**

7.26    Trustor acknowledges that this Security Instrument and a number of other Loan Documents and those documents required by the Loan Documents together secure the Obligations. Trustor agrees that, to the extent permitted by law, the Lien of this Security Instrument and all Obligations of Trustor hereunder shall be absolute and unconditional and shall not in any manner be affected or impaired by:

(a)    any lack of validity or enforceability of the Loan Agreement or any other Loan Document, any agreement with respect to any of the Indebtedness or Obligations or any other agreement or instrument relating to any of the foregoing;

(b)    any acceptance by Beneficiary of any security for or guarantees of any of the Indebtedness or the performance of any of the other Obligations;

(c)    any failure, neglect or omission on the part of Beneficiary to realize upon or protect any of the Indebtedness or any of the collateral security therefor, including the Loan Documents, or due to any other circumstance which might otherwise constitute a defense available to, or a discharge of, Trustor in respect of the Indebtedness and Obligations hereby secured or any collateral security therefor, including the Loan Documents, or due to any other circumstance which might otherwise constitute a defense available to, or a discharge of, Trustor in respect of the Indebtedness or Obligations or this Security Instrument (other than the indefeasible payment in full in cash of all the Indebtedness and Obligations hereby secured);

(d)    any change in the time, manner or place of payment of, or in any other term of, all or any of the Indebtedness or Obligations;

(e)    any release (except as to the property released), sale, pledge, surrender, compromise, settlement, nonperfection, renewal, extension, indulgence, alteration, exchange, modification or disposition of any of the Indebtedness or Obligations hereby secured or of any of the collateral security therefor;

(f)      any amendment or waiver of or any consent to any departure from the Loan
Agreement or any other Loan Documents or of any guaranty thereof, if any, and
Beneficiary may, in its discretion foreclose, exercise any power of sale, or
exercise any other remedy available to it under any or all of the Loan Documents
without first exercising or enforcing any of its rights and remedies hereunder; and

(g)      any exercise of the rights or remedies of Beneficiary hereunder or under any or all
of the Loan Documents.

**Real Estate Taxes**

7.27    The Trustor shall not be entitled to any credit upon the Indebtedness or deduction
from the assessed value of the Trust Property by virtue of payment of real estate taxes on
the Trust Property.  If any law is enacted or adopted or amended after the date of this
Security Instrument which deducts the Indebtedness from the value of the mortgaged
property for the purpose of taxation or which imposes a tax, either directly or indirectly,
on the Indebtedness or Beneficiary's interest in the Trust Property (but Trustor will not be
required to pay Beneficiary's other income or franchise taxes), Trustor will pay such tax,
with interest and penalties thereon, if any.  In the event that the payment of such tax or
interest and penalties by Trustor would be unlawful or taxable to Beneficiary or
unenforceable or provide the basis for a defense of usury, then in any such event,
Beneficiary shall have the option, by written notice of not less than two-hundred and
seventy (270) days, to declare the Indebtedness immediately due and payable.

**Exculpation; Casualty and Condemnation**

7.28    All obligations of Trustor under this Security Instrument shall be limited by the
provisions of <u>Section 10.6</u> of the Loan Agreement.  The provisions of such <u>Section 10.6</u>,
as well as all other provisions of the Loan Agreement (including, without limitation, the
provisions regarding casualties and condemnations), are hereby incorporated herein by
this reference.

**Construction of Provisions**

7.29    The following rules of construction shall be applicable for all purposes of this
Security Instrument and all documents or instruments supplemental hereto, unless the
context otherwise requires:

(a)      All references herein to numbered Articles or Sections or to lettered Exhibits are
references to the Articles and Sections hereof and the Exhibits annexed to this
Security Instrument, unless expressly otherwise designated in context.    All
Article, Section and Exhibit captions herein are used for reference only and in no
way limit or describe the scope or intent of, or in any way affect, this Security
Instrument.

(b)  The terms "include", "including" and similar terms shall be construed as if followed by the phrase "without being limited to".

(c)  The terms "Land", "Improvements" and "Trust Property" shall be construed as if followed by the phrase "or any part thereof".

(d)  The terms "Indebtedness" and "Obligations" shall be construed as if followed by the phrase "or any other sums secured hereby, or any part thereof".

(e)  The word "or" shall be construed as inclusive.

(f)  Words of masculine, feminine or neuter gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and *vice versa*.

(g)  The term "person" shall include natural persons, firms, partnerships, corporations and any other public and private legal entities.

(h)  The term "provisions", when used with respect hereto or to any other document or instrument, shall be construed as if preceded by the phrase "terms, covenants, agreements, requirements, conditions and/or".

(i)  The cover page of and all recitals set forth in, and all Exhibits to, this Security Instrument are hereby incorporated in this Security Instrument.

(j)  All obligations of Trustor hereunder shall be performed and satisfied by or on behalf of Trustor at Trustor's sole cost and expense.

(k)  The term "lease" shall mean "tenancy, subtenancy, lease or sublease", the term "lessor" shall mean "landlord, sublandlord, lessor and sublessor" and the term "lessee" shall mean "tenant, subtenant, lessee and sublessee".

(l)  No inference in favor of or against any party shall be drawn from the fact that such party has drafted any portion hereof.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

**IN WITNESS WHEREOF,** Trustor has executed this Security Instrument effective as of the date first above written.

**TRUSTOR:**

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

By:    EASY STREET MEZZANINE LLC,
       a Delaware limited liability company,
       its sole member

       By:    EASY STREET HOLDING LLC,
           a Utah limited liability company,
           its sole member

             By:    AVG-SL, LLC,
                a Utah limited liability company,
                its manager

             By:
                Name:  William Shoaf
                Title:   Manager

## ACKNOWLEDGMENT

STATE OF _Utah_ )

County of _Summit_ ) : ss.

On this _31st_ day of _March_, 2006 before me personally appeared _William Shea F_, who being by me duly sworn, acknowledged to me that he is the _Manager_, of _AVG SL, LLC_, and that he signed and was duly authorized to sign the foregoing instrument.

_Michelle Oborn_ (signature)
Notary Public

My commission expires on: _Dec. 20, 2006_

Residing in: _Utah_

Notary Public
**MICHELLE OBORN**
1816 Prospector Avenue Suite 100
Park City, Utah 84060
My Commission Expires
December 20, 2006
State of Utah

Acknowledgment Page to Construction and Interim Loan Deed of Trust with Security Agreement,
Assignment of Leases and Rents and Fixture Filing

## EXHIBIT A
## DESCRIPTION OF LAND

PARCEL NO. 1

BEGINNING AT A POINT SOUTH 4.73 FEET AND WEST 49.84 FEET FROM THE
SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST
QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE
BASE AND MERIDIAN, THENCE NORTH 32°06'28" WEST 91.14 FEET, THENCE
NORTH 19°54'51' EAST 18.50 FEET, THENCE NORTH 31°58'04" WEST 72.72
FEET, THENCE SOUTH 58°02'07" WEST 81.41 FEET MORE OR LESS, THENCE
SOUTH 32°25'56" EAST 128.51 FEET, THENCE EAST 13.75 FEET, THENCE
SOUTH 32°25'56" EAST 128.51 FEET, THENCE EAST 13.75 FEET, THENCE
SOUTH 23°38' EAST 64.90 FEET TO THE NORTHERLY LINE OF HEBER
AVENUE AS DEDICATED, THENCE SOUTH 81°17' EAST 24.80 FEET ALONG
SAID NORTHERLY LINE, THENCE NORTH 15°46'12" EAST 60.79 FEET TO THE
POINT OF BEGINNING.

SUBJECT TO AND TOGETHER WITH A 20 FOOT RIGHT OF WAY AS CREATED
IN THAT CERTAIN EASEMENT RELOCATION AGREEMENTS RECORDED
DECEMBER 31, 1973 AS ENTRY NO. 244339 AND 244340 IN BOOK 368 AT PAGE
NO'S 635 AND 643 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE
SUMMIT COUNTY RECORDER, SAID RIGHT OF WAY DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT WHICH IS 65.21 FEET SOUTH AND 51.59 FEET WEST
OF THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE
NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST,
SALT LAKE BASE AND MERIDIAN, SAID POINT ALSO BEING 12.0 FEET
NORHTWEST OF THE SOUTHEAST CORNER OF LOT 15, BLOCK 50, OF THE
PARK CITY SURVEY AND RUNNING THENCE NORTH 10°18'32" EAST 66.28
FEET, THENCE EAST 3.38 FEET, THENCE NORTH 31°58'00" WEST 77.00 FEET,T
HENCE NORTH 19°54'00" EAST 66.80 FEET, THENCE CONTINUING NORTH
19°54'00" EAST 123.47 FEET, THENCE NORTH 70°06'00" WEST 20.00 FEET,
THENCE SOUTH 19°54'00" WEST 200.00 FEET, THENCE SOUTH 31°58'00" EAST
73.76 FEET, THENCE SOUTH 10°44'00" WEST 63.67 FEET, THENCE SOUTH
81°17'00" EAST 20.23 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-F

PARCEL 2

BEGINNING AT A POINT 50 FEET, NORTH OF THE SOUTHEAST CORNER OF
THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16,

TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE NORTH 43.97 FEET, THENCE NORTH 66°11' WEST 142.63 FEET, THENCE SOUTH 31°58' EAST 119.75 FEET, THENCE EAST 67.1 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM ANY PORTIONS LYING WITHIN EASY STREET BRASSERIE REPLAT, ACCORDING TO THE OFFICIAL PLAT THEREOF, RECORDED MARCH 12, 2003 AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO. SA-400-A


PARCEL 3

BEGINNING AT A POINT 38.85 FEET WEST OF THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE WEST 7.93 FEET, THENCE SOUTH 06°02' EAST 67.70 FEET, THENCE NORTH 81°17' WEST 27.0 FEET, THENCE NORTH 15°46'12" EAST 60.79 FEET, THENCE NORTH 32°06'28" WEST 91.14 FEET, THENCE NORTH 19°54'51" EAST 18.50 FEET, THENCE SOUTH 31°58' EAST 25.40 FEET, THENCE SOUTH 19°54' WEST 3.18 FEET, THENCE SOUTH 31°54' EAST 77.00 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-406


PARCEL 4 AND 4A

LOTS 1 AND 2, EASY STREET BRASSERIE REPLAT SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED MARCH 12, 2003, AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO.'S ESB-1, AND ESB-2


PARCEL 5

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, IN PARK CITY, SUMMIT COUNTY, UTAH BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS WEST, A DISTANCE OF 35.90 FEET FROM
THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE
NORTHEAST QUARTER OF SAID SECTION 16, THENCE CONTINUING WEST A
DISTANCE OF 2.95 FEET, THENCE NORTH 31°58' WEST A DISTANCE OF 77.00
FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 3.18 FEET, THENCE
SOUTH 31°58' EAST A DISTANCE OF 80.53 FEET MORE OR LESS TO THE
POINT OF BEGINNING.

ALSO TOGETHER WITH THE FOLLOWING DESCRIBED PROPERTY:

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST
QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE
BASE AND MERIDIAN IN PARK CITY, SUMMIT COUNTY UTAH, BONDED
AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS NORTH A DISTANCE OF 93.97 FEET FROM
THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE
NORTHEAST QUARTER OF SAID SECTION 16, THENCE NORTH 66°11' WEST A
DISTANCE OF 65.29 FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 8.32
FEET, THENCE SOUTH 66°46'30" EAST A DISTANCE OF 193.50 FEET, THENCE
SOUTH 7°16' EAST A DISTANCE OF 12.03 FEET, THENCE NORTH 66°11' WEST
A DISTANCE OF 4.32 FEET, THENCE NORTH A DISTANCE OF 8.23 FEET,
THENCE WEST A DISTANCE OF 18.65 FEET, THENCE NORTH 66°11' WEST A
DISTANCE OF 109.15 FEET MORE OR LESS TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-425-UPL


PARCEL 6

LOT 15, BLOCK 50, PARK CITY SURVEY, ACCORDING TO THE OFFICIAL
PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE SUMMIT
COUNTY RECORDER, EXCEPTING THEREFROM ANY PORTIONS LYING
WITHIN THE PARCELS 1-5 LISTED ABOVE.

TAX PARCEL NO. EXEMPT