# Exhibit D

ALAN SPRIGGS, SUMMIT CO RECORDER
2006 MAR 31 15:46 PM FEE   $41.00 BY GB
REQUEST: EQUITY-PARK CITY
*Electronically Recorded by Simplifile*

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Timothy G. Little, Esq.
Katten Muchin Zavis Rosenman
575 Madison Avenue
New York, NY 10022

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do no abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Easy Street Partners, LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4780 Winchester Court | Park City | UT | 84098 | USA |
| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| 77-0647959 | | limited liability company | Utah | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| WestLB AG, New York Branch | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1211 Avenue of the Americas | New York | NY | 10036 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

This financing statement covers the collateral more particularly described on Exhibit B attached hereto and made a part hereof and located on the real estate described on Exhibit A attached hereto and made a part hereof.

**5. ALTERNATIVE DESIGNATION** [if applicable]: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

File with the County of Summit, State of Utah

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Timothy G. Little, Esq.
Katten Muchin Zavis Rosenman
575 Madison Avenue
New York, NY 10022

> This document has been recorded electronically. Please see the attached copy to view the County Recorder's stamp as it now appears in the public record.
>
> Submitted by: Equity Title Ins. Agency, Inc.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** Easy Street Partners, LLC | | | | |
| **1b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | | SUFFIX |
| **1c. MAILING ADDRESS** 4780 Winchester Court | CITY Park City | STATE UT | POSTAL CODE 84098 | COUNTRY USA |
| **1d. TAX ID #: SSN OR EIN** 77-0647959 | ADD'L INFO RE ORGANIZATION DEBTOR | **1e. TYPE OF ORGANIZATION** limited liability company | **1f. JURISDICTION OF ORGANIZATION** Utah | **1g. ORGANIZATIONAL ID #, if any** ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | |
| **2b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | | SUFFIX |
| **2c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
| **2d. TAX ID #: SSN OR EIN** | ADD'L INFO RE ORGANIZATION DEBTOR | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID #, if any** ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** WestLB AG, New York Branch | | | | |
| **3b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | | SUFFIX |
| **3c. MAILING ADDRESS** 1211 Avenue of the Americas | CITY New York | STATE NY | POSTAL CODE 10036 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

This financing statement covers the collateral more particularly described on Exhibit B attached hereto and made a part hereof and located on the real estate described on Exhibit A attached hereto and made a part hereof.

**5. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]   ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
File with the County of Summit, State of Utah

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME: Easy Street Partners, LLC

OR

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME:

OR

11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME:

OR

12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☒ fixture filing.

**14.** Description of real estate:

See Exhibit B attached hereto and made a part hereof.

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Additional collateral description:

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

## EXHIBIT A

## LEGAL DESCRIPTION

PARCEL NO. 1

BEGINNING AT A POINT SOUTH 4.73 FEET AND WEST 49.84 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, THENCE NORTH 32°06'28" WEST 91.14 FEET, THENCE NORTH 19°54'51' EAST 18.50 FEET, THENCE NORTH 31°58'04" WEST 72.72 FEET, THENCE SOUTH 58°02'07" WEST 81.41 FEET MORE OR LESS, THENCE SOUTH 32°25'56" EAST 128.51 FEET, THENCE EAST 13.75 FEET, THENCE SOUTH 32°25'56" EAST 128.51 FEET, THENCE EAST 13.75 FEET, THENCE SOUTH 23°38' EAST 64.90 FEET TO THE NORTHERLY LINE OF HEBER AVENUE AS DEDICATED, THENCE SOUTH 81°17' EAST 24.80 FEET ALONG SAID NORTHERLY LINE, THENCE NORTH 15°46'12" EAST 60.79 FEET TO THE POINT OF BEGINNING.

SUBJECT TO AND TOGETHER WITH A 20 FOOT RIGHT OF WAY AS CREATED IN THAT CERTAIN EASEMENT RELOCATION AGREEMENTS RECORDED DECEMBER 31, 1973 AS ENTRY NO. 244339 AND 244340 IN BOOK 368 AT PAGE NO'S 635 AND 643 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER, SAID RIGHT OF WAY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH IS 65.21 FEET SOUTH AND 51.59 FEET WEST OF THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, SAID POINT ALSO BEING 12.0 FEET NORTHWEST OF THE SOUTHEAST CORNER OF LOT 15, BLOCK 50, OF THE PARK CITY SURVEY AND RUNNING THENCE NORTH 10°18'32" EAST 66.28 FEET, THENCE EAST 3.38 FEET, THENCE NORTH 31°58'00" WEST 77.00 FEET, THENCE NORTH 19°54'00" EAST 66.80 FEET, THENCE CONTINUING NORTH 19°54'00" EAST 123.47 FEET, THENCE NORTH 70°06'00" WEST 20.00 FEET, THENCE SOUTH 19°54'00" WEST 200.00 FEET, THENCE SOUTH 31°58'00" EAST 73.76 FEET, THENCE SOUTH 10°44'00" WEST 63.67 FEET, THENCE SOUTH 81°17'00" EAST 20.23 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-F

PARCEL 2

BEGINNING AT A POINT 50 FEET, NORTH OF THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE NORTH 43.97 FEET, THENCE NORTH 66°11' WEST 142.63 FEET, THENCE SOUTH 31°58' EAST 119.75 FEET, THENCE EAST 67.1 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM ANY PORTIONS LYING WITHIN EASY STREET BRASSERIE REPLAT, ACCORDING TO THE OFFICIAL PLAT THEREOF, RECORDED MARCH 12, 2003 AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO. SA-400-A

PARCEL 3

BEGINNING AT A POINT 38.85 FEET WEST OF THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE WEST 7.93 FEET, THENCE SOUTH 06°02' EAST 67.70 FEET, THENCE NORTH 81°17' WEST 27.0 FEET, THENCE NORTH 15°46'12" EAST 60.79 FEET, THENCE NORTH 32°06'28" WEST 91.14 FEET, THENCE NORTH 19°54'51" EAST 18.50 FEET, THENCE SOUTH 31°58' EAST 25.40 FEET, THENCE SOUTH 19°54' WEST 3.18 FEET, THENCE SOUTH 31°54' EAST 77.00 FEET TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-400-406

PARCEL 4 AND 4A

LOTS 1 AND 2, EASY STREET BRASSERIE REPLAT SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED MARCH 12, 2003, AS ENTRY NO. 650840 IN BOOK 1517 AT PAGE 1307 OF THE OFFICIAL RECORDS IN THE OFFICE OF THE SUMMIT COUNTY RECORDER.

TAX PARCEL NO.'S ESB-1, AND ESB-2

PARCEL 5

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN, IN PARK CITY, SUMMIT COUNTY, UTAH BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS WEST, A DISTANCE OF 35.90 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 16, THENCE CONTINUING WEST A DISTANCE OF 2.95 FEET, THENCE NORTH 31°58' WEST A DISTANCE OF 77.00 FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 3.18 FEET, THENCE SOUTH 31°58' EAST A DISTANCE OF 80.53 FEET MORE OR LESS TO THE POINT OF BEGINNING.

ALSO TOGETHER WITH THE FOLLOWING DESCRIBED PROPERTY:

A PARCEL OF LAND SITUATED IN THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 2 SOUTH, RANGE 4 EAST, SALT LAKE BASE AND MERIDIAN IN PARK CITY, SUMMIT COUNTY UTAH, BONDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT THAT IS NORTH A DISTANCE OF 93.97 FEET FROM THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 16, THENCE NORTH 66°11' WEST A DISTANCE OF 65.29 FEET, THENCE NORTH 19°54' EAST A DISTANCE OF 8.32 FEET, THENCE SOUTH 66°46'30" EAST A

DISTANCE OF 193.50 FEET, THENCE SOUTH 7°16' EAST A DISTANCE OF 12.03 FEET, THENCE NORTH 66°11' WEST A DISTANCE OF 4.32 FEET, THENCE NORTH A DISTANCE OF 8.23 FEET, THENCE WEST A DISTANCE OF 18.65 FEET, THENCE NORTH 66°11' WEST A DISTANCE OF 109.15 FEET MORE OR LESS TO THE POINT OF BEGINNING.

TAX PARCEL NO. SA-425-UPL

PARCEL 6

LOT 15, BLOCK 50, PARK CITY SURVEY, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE SUMMIT COUNTY RECORDER, EXCEPTING THEREFROM ANY PORTIONS LYING WITHIN THE PARCELS 1-5 LISTED ABOVE.

TAX PARCEL NO. EXEMPT

## **EXHIBIT B**

## THE COLLATERAL

All of the Debtor's right, title and interest in and to the following (collectively, the *Property*):

(1)   all right, title and interest, now held or at anytime hereinafter acquired by the Debtor in and to the real property described in <u>Exhibit A</u> attached hereto and made a part hereof and all the privileges, royalties and appurtenances to said land, now or hereafter belonging or in title, interest in, to or under any agreement or right granting, conveying or creating, for the benefit of said land, any easements, rights-of-way, gaps, strips of land adjoining said land or any parcel thereof, ways, alleys, vaults, gores, sewers, sewer rights, waters, water courses, water rights, privileges, tenements, hereditaments and rights (including development rights) or license in any way affecting other property and in, to or under any streets, or in or to the air space or development rights over said land (all of the foregoing hereinafter collectively referred to herein as the *Land*);

(2)   all water rights appurtenant to the Land together with all pumping plants, pipes, flumes and ditches, and all rights in ditches for irrigation relating to the Land;

(3)   all damages, royalties and revenue of every kind, nature and description whatsoever that Debtor may be entitled to receive, either before or after any event of default, from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of the Land, with the right in the Secured Party to receive and apply the same to the indebtedness pursuant to this Security Instrument and the other loan documents;

(4)   all buildings, structures and improvements of every kind and description now or hereafter erected or placed upon the Land and all landscaping and planted vegetation now or hereafter located on the Land and all of such things whether now or hereafter placed thereon being hereby declared to be real property (collectively, the *Improvements*);

(5)   all of Debtor's right, title and interest in and to the private residence club units including all unsold private residence club units (collectively, the *Units*), the restaurants, the spa and fitness center, any meeting space, the roof top owners club, the underground climate-controlled parking garage and all related amenities (collectively, the *Premises*);

(6)   all right, title and interest of the Debtor in all materials, machinery, supplies, equipment, fixtures, apparatus and other items of personal property now owned or hereafter acquired by the Debtor and now or hereafter attached to, installed in or used in connection with any of the Improvements or the Land, including, without limitation, any and all partitions, dynamos, window screens and shades, drapes, rugs and other floor coverings, awnings, motors, engines, boilers, furnaces, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating ventilating, plumbing, lighting, communications and elevator fixtures, laundry, incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery and equipment, disposals, dishwashers, furniture, refrigerators and ranges, securities systems, art work, recreational and pool equipment and facilities of all kinds, water, gas, electrical, storm and sanitary sewer facilities of all kinds, and all other utilities whether or not situated in easements together with all accessions, replacements, betterments, and substitutions for any of the foregoing (collectively, the *Fixtures*);

(7)     all present and future right, title and interest of Debtor in and to all inventory, equipment, fixtures and other goods (as those terms are defined in the UCC) now or in the future located at, upon or about, or affixed or attached to or installed in, the Improvements, or used or to be used in connection with or otherwise relating to the Improvements or the ownership, use, development, construction, maintenance, management, operation, marketing, leasing or occupancy of the Improvements, including, without limitation, machinery, supplies (whether stored at or off the Land and/or Improvements) furniture, furnishings, equipment, fittings, electronic business machines and equipment, culinary equipment and other articles of personal property of every kind and nature whatsoever now or at any time hereafter affixed to, or attached to, or placed upon, or used or usable in any way in connection with the use, enjoyment, occupancy, management or operation of the Improvements, including, but without limiting the generality of the foregoing, all heating, lighting, laundry, incinerating, landscaping, loading, unloading, garage and power equipment and supplies, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, fire extinguishing, sprinkler systems, refrigerating, ventilating, communications apparatus, air cooling and air conditioning apparatus, elevators, escalators, storm doors and windows, stoves, attached cabinets, partitions, ducts, compressors, shades, blinds, curtains, drapes, awnings, screens, rugs, carpets and other floor coverings, hall and lobby equipment, beds, chairs, desks, tables, lamps, chandeliers, kitchen utensils, silverware, kitchen appliances and restaurant equipment and supplies, glassware, dishware, napery, paintings, pictures, tapestries, pottery and all other works of art, vacuum cleaning systems, cash registers, telephone and reservation systems, electronic data processing and word processing equipment and software, partitions, ducts and compressors, bed frames, springs, mattresses, sheets, pillow cases, blankets, bed curtains, televisions, radios, lamps, mirrors, wall hangings, decorations, bathroom fixtures, shower curtains, towels, medicine cabinets, hotel cleaning equipment and supplies, and all replacements of and additions to all or any of the foregoing and all other types of tangible personal property of any kind or nature, and all accessories, additions, attachments, parts, proceeds, products, repairs, replacements and substitutions of or to any of such property (collectively, the *FF&E*);

(8)     all right, title and interest of Debtor in and to all goods, accounts, general intangibles, instruments, documents, accounts receivable (including receivables relating to parking revenues), chattel paper, customer contracts and all other personal property of any kind or character, including such items of personal property as defined in the UCC, now owned or hereafter acquired by Debtor and now or hereafter affixed to, placed upon, used in connection with, arising from or otherwise related to the Land and/or the Improvements or which may be used in or relating to the planning, development, financing or operation of the Land and/or the Improvements, including, without limitation, furniture, furnishings, equipment, machinery, money, insurance proceeds, condemnation awards, accounts, contract rights, trademarks, goodwill, chattel paper, documents, trade names, licenses and/or franchise agreements, rights of Debtor under leases of Fixtures or other personal property or equipment, inventory, all refundable, returnable or reimbursable fees, deposits or other funds or evidence of credit or indebtedness deposited by or on behalf of Debtor with any governmental authorities, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs and all refunds, rebates or credits in connection with a reduction in real estate taxes and assessments against the Property as a result of tax certiorari or any applications or proceedings for reduction (collectively, the *Personalty*);

(9)     all right, title and interest of Debtor in all reserves, escrows or impounds required under the loan agreement and all unrestricted deposit accounts (including tenant security deposits (subject, however, to the rights of the tenants with respect thereto and to applicable law) and any deposits with

respect to utility services furnished or to be furnished to the Premises) maintained by the Debtor with respect to the Property;

(10) all right, title and interest of Debtor in all plans, specifications, schedules, shop drawings and other technical descriptions prepared for construction, repair or alteration of the Improvements, and all amendments and modifications thereof (collectively, the *Plans*);

(11) all right (including the rights to enforce, whether at law or in equity or by any other means, all provisions and options thereof), title and interest of the Debtor in all leasehold estates, real property, equipment leases, (including, without limitation, all leases relating to the extraction and production of oil, gas and other hydrocarbons from below the surface of the Land), subleases, sub-subleases, licenses, concessions, occupancy agreements or other agreements (written or oral, now or at any time in effect and every modification, amendment or other agreement relating thereto) including every guarantee of the performance and observation of the covenants, conditions and agreements to be performed and observed by the other party thereto which grant a possessory interest in, or the right to use or occupy, all or any part of the Property, together with all related security and other deposits (collectively, the *Leases*);

(12) all right, title and interest of Debtor in and to (i) all of the rents, revenues, income, proceeds, issues, profits (including, without limitation, any oil or gas or other mineral royalties and bonuses), security (subject, however, to the rights of the tenants with respect thereto and to applicable law) and other types of deposits, and other benefits paid or payable and to become due or payable by parties to the Leases other than Debtor or using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying any portion or portions of the Property, (including any claims (A) based on holdover by any lessee, (B) for damages sustained by Debtor, (C) in settlement for any claims of Debtor under or relating to any Leases, (D) any fees or other amounts paid for the cancellation, surrender or early termination of any Lease, or (E) arising under any federal, state or other Law as a result of or in connection with the bankruptcy or insolvency of any lessee) including all amounts received as claims of any damages under any Leases (collectively, the *Rents*), (ii) all of the revenues, income, proceeds, issues, profits, security and other types of deposit, and other benefits paid or payable and to become due or payable by parties to the Purchase Agreements other than Debtor or using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying any portion or portions of the Fractional Ownership Units, (iii) all rights, dividends and/or claims of any kind whatsoever relating to any Leases, including, without limitation, any and all (A) tax refunds, abatements and claims in tax certiorari proceedings, (B) utility deposits, credits or refunds, (C) surrender, termination, take-back or takeover fees, charges or payments, however characterized relating to any Leases and (D) rights to recoupment of (1) allowances, non-accountable contributions, payments or other consideration paid, or the value of construction or work performed, (2) free rent conceded or allowed, (3) take-over, take-back or other assumption secured obligations paid, (4) the cost of any other payments or inducements to or for the benefit of any tenant and (5) brokerage commissions paid or incurred, by Debtor from any tenant or other party under any lease, and all proceeds resulting therefrom, and together with the right to take any action or file any papers or process in any court of competent jurisdiction, which may in the opinion of the Secured Party be necessary to preserve, protect or enforce such rights or claims, including the filing of any proof of claim in any insolvency proceeding under any state, Federal or other Laws and any rights, claims or awards accruing to or to be paid to Debtor in its capacity as landlord under any of the Leases, (iv) income, royalties, fees, revenues, issues, profits, proceeds, accounts receivable and other benefits now or hereinafter arising directly or indirectly from the Property, or the operations of the Property or any part thereof, (v) amounts received due to services to, and rentals, percentage rentals and other fees, payments and charges received from tenants, sub-

tenants, licenses, concessionaires and occupants of commercial, hotel, public and retail space located at the Property, calculated on a cash basis, whether in cash or in credit, (vi) proceeds of the sale of food and beverages, proceeds of rentals of dining rooms, conference rooms and banquet facilities, telephone services, laundry, vending, television and parking services at the Property, the fair market value of any barter transaction and other fees and charges resulting from the operations by Debtor in the ordinary course of business, health club receipts, and other receipts, annual membership dues, the proceeds of the sale of any property of Debtor in the ordinary course of business, proceeds, if any, from business interruption or other loss of income insurance (net of the costs of collection thereof), income derived from securities and other property acquired and held by Debtor for investment and proceeds of any business interruption insurance; and (vii) all other payments arising from the operation of the Property as a hotel for goods sold or leased or for services rendered, whether or not yet earned by performance, including, without limiting the generality of the foregoing, (x) all accounts arising from the operation of the Property and (y) all rights to payment from any consumer credit/charge card organization or entity (such as, or similar to, the organization or entities which sponsor and administer the American Express Card, the Visa Card, the MasterCard, the Carte Blanche Card, or the Discover Card), whether now existing or hereafter created, substitutions therefor, proceeds (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof and any and all of the foregoing and proceeds therefrom (collectively with the Rents, the *Rents and Profits*);

(13)    all right, title and interest of the Debtor in and to any interest rate protection arrangement to which the Debtor is a party, including any lender Interest Rate Protection Agreement, and all agreements, instruments, documents and contracts now or hereafter entered into by the Debtor with respect to any such interest rate protection arrangement;

(14)    all right, title and interest of the Debtor in all other agreements, such as the Fractional Ownership Documents, the Condominium Documents, Qualified Reservations, Reservations, the Purchase Agreements, sales contracts, Construction Contracts, architects' agreements, general contractors' agreements, engineers' contracts, utility contracts, maintenance agreements, the Hotel Management Agreement, the Development Agreement, marketing agreements, the Listing Agreement, reciprocal easement or operating agreements, declarations, development agreements, license agreements, parking agreements, service contracts, permits, licenses, certificates and entitlements in any way relating to the development, construction, use, occupancy, operating, maintenance, enjoyment, acquisition or ownership of the Property or the sale of goods or services produced in or relating to the Property (collectively, the *Property Agreements*);

(15)    all right, title and interest of the Debtor in all certificates, including certificates of occupancy and certificates of compliance, authorizations, franchises, consents and approvals given by and licenses and permits issued by governmental authorities, and other rights and privileges issued by any and all governmental authorities and any other persons in connection with the ownership, operation, construction, use, management, leasing or occupancy of the Premises;

(16)    all rights, privileges, titles, interests, liberties, tenements, hereditaments, rights-of-way, easements, sewer rights, water, water courses, air rights and development rights, licenses, permits and construction and equipment warranties, appendages and appurtenances appertaining to the foregoing, and all right, title and interest, if any, of the Debtor in and to any streets, ways, alleys, underground vaults, passages, strips or gores of land adjoining the Land or any part thereof;

(17) subject to the rights of Debtor hereunder or under the loan agreement, all insurance policies, unearned premiums therefore and proceeds from such policies, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, covering any of the above property now or hereafter acquired by Debtor;

(18) all right, title and interest of Debtor in and to all environmental tests, studies and reports, current and future environmental claims and rights of action including tort claims and rights of indemnity and contribution under any environmental law against the prior owners, neighboring owners, tenants, consultants, advisors and third parties;

(19) to the extent assignable, all permits, licenses (including, but not limited to, any operating licenses and liquor licenses, governmental approvals and authorizations relating to the Property (collectively, the *Permits*);

(20) all names, including, but not limited to, "Sky Lodge Private Residence Club and Hotel", "The Sky Lodge – A Destination Resort Club", "The Sky Lodge Hotel", "The Sky Lodge", "Sky Lodge" or variations thereof, under or by which any portion of the Land and/or the Improvements may at any time be operated or known, and all rights to carry on business under any such names or any variant thereof, and all trademarks, trade names, patents pending and goodwill relating to the Land and/or the Improvements (collectively, the *Trademarks*);

(21) all mineral, riparian, littoral, water, oil and gas rights now or hereafter acquired and relating to all or any part of the Property;

(22) all of the Debtor's right, title and interest in and to any awards, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made by any governmental authority pertaining to the Land, Improvements, Fixtures or Personalty;

(23) all accessories, replacements, renewals, additions and substitutions for any of the foregoing; and

(24) all products and proceeds of all or any of the foregoing.

## Definitions

*Club Facilities License Agreement* has the meaning given to such term in the Condominium Declaration.

*Condominium Act* means the Utah Condominium Ownership Act, Title 57, Chapter 8, Utah Code.

*Condominium Association* means the Union Square Owners Association, Inc., the association formed pursuant to the Condominium Documents.

*Condominium Declaration* means the Declaration of Condominium for Union Square made by the Debtor with respect to the Property pursuant to the Condominium Act.

*Condominium Documents* means all documents (and all amendments and supplements thereto), as required by the Condominium Act and otherwise relating to the submission of the Property to the provisions of the Condominium Act or to the regulations, operation, administration or sale thereof after such submission, including the Park City Development Agreement, the Condominium Declaration,

articles of incorporation, by-laws and rules and regulations of the Condominium Association, the Club Facilities License Agreement, the Subdivision Plat, the Condominium Plat and any reciprocal easement agreements to be used in connection with the establishment of the Condominium.

*Condominium Plat* means the condominium plat required by the Condominium Act to be recorded in the official records of Summit County, Utah in order to establish separate condominium units with respect to the Property.

*Construction Contracts* means those contracts material to the construction of the Improvements, including, without limitation, any agreement for architectural services between the Debtor and any architect and any contract for the renovation or the construction of the Improvements between the Debtor and any general contractor.

*Development Agreement* means that certain Development Agreement, dated as of March [___], 2006, pursuant to which the Debtor has retained CloudNine Resorts/Sky Lodge Development, LLC, for the purpose of developing the Improvements.

*Fractional Ownership Documents* means (a) the Property Disclosure Report and all of the exhibits attached thereto, including, without limitation, the form of purchase and sale agreement for the sale of the Fractional Ownership Units, (b) Purchase Agreements, (c) any rules and regulations for the Fractional Ownership Units, (d) organizational documents for the Fractional Ownership Units owners' association, (e) the Condominium Documents and (f) any other documents relating to the formation, organization or sale of the Fractional Ownership Units.

*Fractional Ownership Unit* means one of the units created by the Fractional Ownership Documents or the applicable shared interest therein, as the context may require, and any appurtenant interest in the common elements and the Land created by the Fractional Ownership Documents.

*Hotel Management Agreement* means that certain Sky Lodge Management Agreement effective as of January 1, 2007, pursuant to which the Debtor has retained CloudNine Resorts/Sky Lodge Management, LLC to manage and operate the Premises.

*Interest Rate Protection Agreement* means an interest rate protection agreement entered into by the Debtor with the Secured Party or any lender in a notional amount equal to the principal amount of the loan, and otherwise in form and substance reasonably acceptable to the Secured Party and with a hedge rate acceptable to the Secured Party in its sole discretion.

*Listing Agreement* means that certain Exclusive Right to Sell Listing Agreement, dated as of June 11, 2005, pursuant to which the Debtor has retained Extreme Holdings, LLC dba Prudential Utah Real Estate to market and sell the Fractional Ownership Units.

*Park City Development Agreement* means the Development Agreement for the Union Square Master Planned Development, Park City, Summit County, Utah, dated as of May 12, 2005, by and between CloudNine Resorts, LLC and the municipality of Park City, Utah.

*Purchase Agreement* means any purchase and sale agreement with respect to any interest in a Fractional Ownership Unit.

*Property Disclosure Report* means the Developer/Owner Property Report to be filed by the Debtor with the Utah Division of Real Estate pursuant to the Timeshare Act.

*Qualified Reservation* means a written reservation by a purchaser (that is not an affiliate of the Debtor or the hotel operator) to purchase a Fractional Ownership Unit or fractional interest therein for a purchase price equal to or greater than the minimum purchase price for such Fractional Ownership Unit, which reservation is accompanied by a deposit of not less than $10,000.

*Reservation* means a written reservation agreement between the Debtor and a prospective purchaser entitling such purchaser to enter into a Purchase Agreement to acquire a Fractional Ownership Unit or fractional interest therein.

*Security Instrument* means the Construction and Interim Loan Deed of Trust and Leasehold Deed of Trust With Security Agreement, Assignment of Leases and Rents and Fixture Filing from the Debtor to Equity Title Insurance Agency, Inc., as trustee, for the benefit of the Secured Party, dated as of March [___], 2006, encumbering the Property, together with all spreaders, splitters, consolidations, extensions, restatements, replacements, modifications and supplements thereof.

*Subdivision Plat* means the subdivision plat with respect to the Property required by applicable Law to be recorded in the official records of Summit County, Utah in connection with the Premises.

*Timeshare Act* means the Timeshare and Camp Resort Act, Utah Code Annotated, Chapter 57, Title 19.

*UCC* means the Uniform Commercial Code as adopted by the State of Utah.