# Exhibit F

# PLEDGE AND SECURITY AGREEMENT

**THIS PLEDGE AND SECURITY AGREEMENT** (as the same may hereinafter be amended, modified, extended and/or assigned from time to time, this *Agreement*) is made as of March 30, 2006, by **EASY STREET PARTNERS, LLC**, a Utah limited liability company, having an address at 4780 Winchester Court, Park City, Utah 84098 (the *Assignor*) to and for the benefit of **WESTLB AG**, a German banking corporation acting through its New York branch, having an office at 1211 Avenue of the Americas, New York, New York 10036, as administrative agent (including any of its successors and assigns, the *Administrative Agent*) for itself and such other co-lenders as may exist from time to time (collectively, the *Lenders* and each individually, a Lender) under the Loan Agreement (as defined below).

## RECITALS

A.  The Assignor is the owner of a fee interest in those certain parcels of land located in Summit County, Utah, and the Improvements thereon (collectively, the *Property*, as such term is more particularly described in the Loan Agreement);

B.  The Assignor and the Lenders are entering into that certain Loan and Security Agreement, dated as of the date hereof (as the same may be amended, modified or supplemented from time to time, the *Loan Agreement*, capitalized terms used in this Agreement and not otherwise defined shall have the meanings given to such terms in the Loan Agreement), by and between the Assignor, the Administrative Agent and lenders party thereto from time to time (the *Lenders*), pursuant to which the Lenders have agreed to make a loan to the Borrower in the maximum principal sum of THIRTY-SIX MILLION SEVEN HUNDRED SEVENTY-NINE THOUSAND TWO HUNDRED TWENTY-FOUR AND 00/100 DOLLARS ($36,779,224.00) (the *Loan*) pursuant to the terms and conditions set forth therein.

C.  The Loan is secured, *inter alia*, by that certain Construction and Interim Loan Deed of Trust with Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of the date hereof (the *Security Instrument*), made by the Assignor for the benefit of the Administrative Agent, which Security Instrument encumbers the Property and certain other Collateral, more particularly described therein.

D.  As a condition precedent to the Administrative Agent entering into the Loan Agreement, and as additional security for the repayment of the Loan and all other Obligations arising under the Loan Documents (each as defined in the Loan Agreement) and for the performance and discharge of each and every obligation, covenant and agreement of the Assignor contained in the Loan Documents, the Administrative Agent has required the Assignor to execute and deliver this Agreement.

**NOW, THEREFORE**, in consideration of the Recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor hereby agrees as follows:

1.  **Assignment**. The Assignor hereby irrevocably sells, bargains, conveys, pledges, grants a security interest in, transfers, assigns and sets over to the Administrative Agent all of the Assignor's present and future right, title and interest in, to and under:

(a) Each of (i) that certain Sky Lodge Management Agreement, effective as of January 1, 2007, by and between the Assignor and CloudNine Resorts/Sky Lodge Management, LLC, and (ii) that certain Development Agreement, dated as of the date hereof, by and between Assignor and CloudNine Resorts/Sky Lodge Development, LLC (collectively, the *Management Agreements*);

(b) any and all other agreements, indemnities, contracts, Plans and Specifications and all other architectural and engineering plans and drawings, licenses, Permits, franchises, compliances, entitlements, certificates, consents, approvals, deposits, general intangibles, warranties, guaranties, authorizations or other consents, in each case now or hereafter, entered into, granted, or used in connection with or in any way related to the construction, development, repair, maintenance or use of the Improvements, including, without limitation, the Architect's Contract, any General Contractor's Agreement and the other Construction Contracts (as any of the foregoing may be amended, restated, replaced, supplemented or otherwise modified from time to time, individually, a *Construction Document* and collectively, the *Construction Documents*);

(c) all agreements, contracts, Permits, certificates, instruments, insurance policies, including the required insurance, warranties, appraisals, engineering, environmental, soils, insurance and other reports and studies and tenant lists, books, records, budgets, surveys, drawings, correspondence, files and advertising materials, general intangibles and other documents, now or hereafter obtained, produced or entered into, as the case may be, pertaining to either the Loan, the Property or the operation, use, construction, occupancy, possession, management, leasing, maintenance, ownership or sale of the Property or any part thereof, including, without limitation, the Listing Agreement and any account agreements (as any of the foregoing may be amended, restated, replaced, supplemented or otherwise modified from time to time, individually, an *Operating Agreement* and collectively, the *Operating Agreements*);

(d) the Fractional Ownership Documents, the Condominium Documents, all Reservations, Qualified Reservations and Purchase Agreements now or hereafter entered into as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, together with all Deposits and cash and non-cash proceeds of any of the foregoing and all claims of the Assignor with respect thereto and together with all right, title and interest of the Assignor in and to any and all amendments to or assignments of any of the foregoing (as any of the foregoing may be amended, restated, replaced, supplemented or otherwise modified from time to time, individually, a *Fractional Interest Agreement* and collectively, the *Fractional Interest Agreements*); and

(e) together with all cash and non-cash proceeds of any of the foregoing and all claims of the Assignor with respect thereto.

The Management Agreements, the Construction Documents, the Operating Agreements and the Fractional Interest Agreements, as sold, bargained, conveyed, transferred, assigned and set over pursuant to this Agreement are individually referred to herein as an *Assigned Agreement* and collectively, as the *Assigned Agreements*.

2

84085006_4.doc

2. **Performance**.

(a) Nothing contained herein shall obligate or be construed to obligate the Administrative Agent to perform any term, covenant or condition contained in, related to or under any Assigned Agreement or otherwise to impose any obligation upon the Administrative Agent with respect to the Assigned Agreements prior to written notice by the Administrative Agent to the Assignor of the Administrative Agent's (or its nominee's) election to assume the Assignor's obligations under any Assigned Agreement. Prior to said election, this Agreement shall not operate to place upon the Administrative Agent any responsibility for the renovation and re-positioning of the Existing Improvements and the construction of the Additional Improvements, or the operation, control, care, management or repair of the Property or for the payment, performance or observance of any obligation, requirement or condition under any Assigned Agreement, and the execution of this Agreement by the Assignor shall constitute conclusive evidence that all responsibility for the renovation and re-positioning of the Existing Improvements and the construction of the Additional Improvements, or the operation, control, care, management and repair of the Property as well as the payment, performance or observance of any obligation, requirement or condition under each Assigned Agreement is and shall be that of the Assignor, prior to such election.

(b) This Agreement is an assignment only of the Assignor's rights and the Administrative Agent shall not be deemed by virtue of this Agreement to have assumed any obligation of the Assignor under any Assigned Agreement.

(c) Without limiting any obligations of the Assignor in the Loan Agreement or the other Loan Documents, except to the extent otherwise permitted pursuant to the Loan Documents, the Assignor agrees with respect to each Assigned Agreement, as applicable:

(i) to abide by, perform and discharge in all material respects all obligations, covenants, agreements and conditions to be performed by the Assignor under each Assigned Agreement as if this Agreement had not been made;

(ii) to give prompt notice to the Administrative Agent of any default notice issued by any Governmental Authority (as defined in the Loan Agreement) or any other party with respect to any Assigned Agreement, together with an accurate and complete copy of any such notice; and

(iii) not to terminate, modify or in any way alter any Assigned Agreement without the Administrative Agent's prior written consent.

3. **Payment**. The Assignor hereby agrees to pay within 30 days of written demand thereafter all sums expended by the Administrative Agent under the authority hereof together with interest thereon at the Default Rate (as defined in the Loan Agreement) and the same shall be secured hereby and by the other Collateral.

4. **Consent**. The Assignor shall obtain the consent to this Agreement by each party identified on **Schedule A** as a "Consenting Party", in substantially the form of the consent attached hereto as **Exhibit A**. The Assignor represents and warrants that no other consent to this

3

Agreement is necessary, which consent if not obtained would render this Agreement either ineffective, null and void or result in a default under any Assigned Agreement.

5. **Defense of Claims**. The Assignor hereby agrees to appear in and defend, at the Assignor's sole cost and expense, any action or proceeding arising under, relating to or in any manner connected with any Assigned Agreement or any of the obligations, duties or liabilities of the Assignor arising thereunder and to pay all reasonable out-of-pocket costs and expenses of the Administrative Agent, including reasonable attorneys' fees, in any such action or proceeding in which the Administrative Agent may appear.

6. **Remedies**.

(a) Upon the occurrence and during the continuance of an Event of Default, the Administrative Agent may (but without obligation to do so and without notice to or demand on the Assignor, and without releasing the Assignor from any obligation hereunder) undertake any action in such manner and to such extent as the Administrative Agent may deem necessary to protect the security hereof and thereof, including specifically, without limiting the generality of the foregoing, the right to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Administrative Agent and also the right to perform and discharge each and every obligation, covenant, agreement and condition of the Assignor in any Assigned Agreement and in exercising any such power to pay necessary costs and expenses, employ counsel and incur and pay reasonable attorneys' fees.

(b) Any curing by the Administrative Agent of the Assignor's default under any Assigned Agreement shall not be construed as an assumption by the Administrative Agent of any obligation, covenant, or agreement of the Assignor under any Assigned Agreement. At such time as and for as long as an Event of Default exists, the Administrative Agent may exercise any right or remedy contained herein or in any of the other Loan Documents, including, without limitation, those of a secured party under the Uniform Commercial Code (in effect in the applicable jurisdiction), and without regard for the adequacy of security for the indebtedness secured hereby, either in person or by agent with or without bringing any action or proceeding, or by a receiver to be appointed by a court, enter upon, take possession of the Property and exercise all rights of the Assignor under any Assigned Agreement and do any act which the Administrative Agent deems proper to protect the security hereof, and upon the occurrence and during the continuance of such event, the Assignor shall neither have nor exercise any further rights under any Assigned Agreement.

(c) No entry upon and taking possession of the Property or the commission of any other act authorized by this Section shall be deemed to cure or waive any Default, or to waive, modify or affect any notice of an Event of Default, if required to be given pursuant to the terms of any Loan Document, or to invalidate any act done pursuant to such notice.

7. **Warranties and Covenants**. The Assignor hereby covenants, represents and warrants to the Administrative Agent with respect to each Assigned Agreement, as of the date hereof, that:

4

(a)    (i) The Assignor lawfully holds the rights and interests of the Assignor in such Assigned Agreement, (ii) to the extent each is assignable and to the extent permitted by law, the Assignor has the right to assign the Assigned Agreement, (iii) the Assignor has not executed any prior assignment of any Assigned Agreement and (iv) the Assignor shall not sell, transfer, mortgage, pledge, or assign any of the Assigned Agreements;

(b)    The Assignor has not performed any act or executed any instrument which might prevent the Administrative Agent from exercising any right hereunder or under any such Assigned Agreement or which would otherwise limit the Administrative Agent in such exercise;

(c)    There is no condition or event which, with the giving of notice or lapse of time or both, would constitute a default under any such Assigned Agreement; and

(d)    The Assignor shall exercise all reasonable efforts to enforce or secure the performance of each and every material obligation, covenant, condition, and agreement to be performed by the licensor, grantor or other contracting party under each such Assigned Agreement.

8.    **Rights of the Assignor.**  So long as no Event of Default exists under any of the Loan Documents, the Assignor shall have the right to enjoy and utilize the rights and privileges of the contracting party and subject to the terms of this Agreement, "indemnitee," "licensee" or "permittee" under each Assigned Agreement.

9.    **No Obligation of the Administrative Agent and Indemnification.**

(a)    The Administrative Agent shall not be obligated to perform or discharge, nor does the Administrative Agent undertake to perform or discharge, any obligation, duty or liability of the Assignor under any Assigned Agreement under or by reason of this Agreement.

(b)    The Assignor agrees to indemnify and hold the Administrative Agent harmless from and against any and all Losses, which the Administrative Agent incurs by reason of this Agreement, or by reason of any action taken by the Administrative Agent hereunder, and against and from any and all Claims which may be asserted against the Administrative Agent by reason of any alleged obligation or undertaking on its part to perform or discharge any and all terms, covenants and conditions set forth in any Assigned Agreement, except to the extent that such liability, loss, damage or expense results from the gross negligence or willful misconduct of the Administrative Agent. Should the Administrative Agent incur any such Losses, the amount thereof, together with interest thereon at the Default Rate (as defined in the Loan Agreement) from the due date, shall be payable by the Assignor to the Administrative Agent within 10 days after written demand.

10.    **Release.**  Upon the satisfaction in full by the Assignor of all Obligations under the Loan Documents, this Agreement shall become null and be void and of no further effect.

11.    **Successors and Assigns.**  This Agreement shall inure to the benefit of the Administrative Agent, the Lenders and their respective successors and assigns, and bind the Assignor and its successors and permitted assigns.

5

**12.     Notices**.  All notices, demands, requests and other communications required under this Agreement and the other Loan Documents shall be in writing addressed to the applicable party at the address set forth on the first page of this Agreement and otherwise made pursuant to Section 11.4 of the Loan Agreement.

**13.     Governing Law.**  This Agreement shall be construed in accordance with, and this Agreement and all matters arising out of this Agreement (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York.

**14.     Further Assurances.**  The Assignor agrees to execute and deliver, in recordable form if necessary, any and all further documents and instruments reasonably requested by the Administrative Agent to give effect to the terms and provisions of this Agreement.

**15.     Partial Invalidity.**  In the event any term or provision of this Agreement or the application thereof to any person or entity or circumstance, shall, for any reason or to any extent be invalid or unenforceable, the remaining terms and provisions of this Agreement, or the application of any such provision to persons, entities or circumstances other than those as to whom or which it has been determined to be invalid or unenforceable, shall not be affected thereby, and every provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

**16.     Actions by the Administrative Agent.**  All actions to be taken by the Administrative Agent hereunder shall be subject to the Loan Documents.

(SIGNATURE APPEARS ON NEXT PAGE)

IN WITNESS WHEREOF, the Assignor has duly executed this Pledge and Security Agreement as of the date first written above.

**ASSIGNOR:**

**EASY STREET PARTNERS, LLC,**
a Utah limited liability company

By: EASY STREET MEZZANINE LLC,
a Delaware limited liability company,
its sole member

    By: EASY STREET HOLDING LLC,
        a Utah limited liability company,
        its sole member

        By: AVG-SL, LLC,
            a Utah limited liability company,
            its manager

            By: _____
            Name: William Shoaf
            Title: Manager

# SCHEDULE A

## CONSENTING PARTY

Chase Associates, LLC

Easy Street Brasserie, Inc.

Sundance Partners, Ltd.

# EXHIBIT A

# FORM OF CONSENT

## CONSENT TO ASSIGNMENT

The undersigned (*Contract Party*) as the party to the "Assigned Agreement" described below which is one of the Assigned Agreements referred to in that certain Pledge and Security Agreement, dated as of March ___, 2006 (the *Agreement*), made by Easy Street Partners, LLC, a Utah limited liability company (*Assignor*) to WestLB AG, New York Branch, as administrative agent (*Administrative Agent*) for itself and such other co-Administrative Agents as may exist from time to time, hereby consents to the terms of the Agreement and agrees that, upon receipt of notice from Assignee or its successors or assigns that an Event of Default has occurred, Contract Party will perform all of its obligations, covenants, conditions and agreements under the Assigned Agreement for the benefit of Administrative Agent and its successors and assigns, so long as Administrative Agent performs the duties and obligations of the owner under the Assigned Agreement.

The undersigned also agrees that in the event of a breach by Assignor of any of the terms and conditions of the Assigned Agreement, the Contract Party will give Administrative Agent written notice of such breach and the opportunity to remedy or cure such breach within 30 days thereafter except that the undersigned agrees that no default shall be deemed to have occurred if curing such default cannot by its nature be accomplished in such 30-day period so long as Administrative Agent shall have commenced curing the same within such 30-day period and thereafter shall diligently and continuously prosecute the same to completion.

It is expressly understood that Administrative Agent neither assumes nor has any obligation to Contract Party to exercise its rights under the Agreement, and that the option to exercise such right rests in the sole and absolute discretion of Administrative Agent. In the event Administrative Agent exercises its rights under the Agreement, Contract Party agrees that Administrative Agent shall have no personal obligations or liabilities under the Assigned Agreement or the Agreement and the sole rights and remedies of Contract Party as against Administrative Agent under the Assigned Agreement or under this Consent shall be a suit against Assignor. Notwithstanding the preceding sentence, Contract Party shall have no obligation to continue performance of its obligation under the Assigned Agreement on behalf of Assignee in the event Assignee exercises its rights under the Agreement unless Administrative Agent assumes the obligation to pay sums due to Contract Party for work performed or materials or services supplied as and when such payments become due under the terms of the Assigned Agreement.

Contract Party acknowledges that the execution and delivery of this Consent to Assignment (this *Consent*) is a material inducement to Administrative Agent to make a loan to

84085006_4.doc

Assignor, and, without execution and delivery of this Consent, Administrative Agent will not make such loan.

By:_____
Name:_____
Title:_____

Assigned Agreement:

_____
(Title of Assigned Agreement)

_____
(Parties to Assigned Agreement)

_____
(Date of Assigned Agreement)

_____
(Amendments to Assigned Agreement)

84085006_4.doc