**The below described is SIGNED.**

**Dated: October 13, 2009**  _____
                             **R. KIMBALL MOSIER**
                             **U.S. Bankruptcy Judge**



_____

*Order prepared and submitted by*:
Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000/Fax: (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000/Fax: (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors. | ) | 09-29907 and 09-29908 |
| | ) | |
| Address: 201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) DATE: | October 13, 2009 |
| 35-2183713 (Easy Street Holding, LLC), | ) TIME: | 11:00 A.M. |
| 20-4502979 (Easy Street Partners, LLC), and | ) PLACE: | Courtroom 369 |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | 350 South Main Street, #301 |
| | | Salt Lake City, Utah 84101 |

**ORDER ON STIPULATION AUTHORIZING USE OF CASH COLLATERAL**
**PURSUANT TO 11 U.S.C. § 363 AND GRANTING ADEQUATE PROTECTION**
**TO WESTLB, AG**

The Motion for Interim and Final Orders: (i) Authorizing Use of Case Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to West LB, AG; and (ii) Scheduling a Final Hearing (the "Final Hearing") Pursuant to Bankruptcy Rule 4001(b) (the "Cash Collateral Motion") (Docket No. 9) filed on September 15, 2009 by Easy Street Partners, LLC ("Easy Street" and, together with Easy Street Holding, LLC and Easy Street Mezzanine, LLC, the "Debtors"), came before the Court for final hearing on October 13, 2009. Appearances were made as noted on the record of the hearing. The following order (the "Order") approves a stipulation filed with the Court on October 9, 2009 (the "Stipulation")[1] reached by Easy Street and WestLB, AG ("WestLB" and, together with Easy Street, the "Parties") governing the consensual use of cash collateral through and including December 31, 2009.

Now, therefore, IT IS HEREBY ORDERED:

1. The Cash Collateral Motion is granted.

2. The Stipulation between Easy Street and WestLB is approved. All terms and conditions of the Stipulation, unless expressly modified or limited by the terms of the Order, are incorporated in this Order and shall be binding and effective upon the Parties. The omission or failure to expressly include any terms and conditions of the Stipulation in this Order shall in no way affect the Parties' obligations to comply with or the enforceability of such terms and conditions.

3. Pursuant to and conditioned on compliance with the terms and conditions of the Stipulation and this Order, Easy Street is authorized to use Cash Collateral in accordance with the Initial Budget, a copy of which is attached as Exhibit A to the Stipulation, and any

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Stipulation and the Loan Documents.

subsequent approved budgets (collectively and together with the Initial Budget, the "Budget" or the "Budgets") through and including December 31, 2009.  Easy Street shall file with the Court any revised Budgets approved by West LB pursuant to paragraph 16 of the Stipulation.  Except as specifically set forth in the Stipulation and this Order, Easy Street is not authorized to use any Cash Collateral for payment of pre-petition debts or any other purpose whatsoever.  Absent prior written consent of West LB or further Order of this Court, including any Order authorizing the payment of professionals from the carve out under paragraph 27 of the Stipulation: (i) no further use of Cash Collateral is allowed after a Termination Event; and (ii) the use of Cash Collateral is expressly limited to the amounts set forth in the approved Budgets.

        4.        Starting in November 2009, for each month, Easy Street is ordered to submit to WestLB and counsel for the Official Committee of Unsecured Creditors (the "Committee") by the fifteenth (15th) calendar day of each month (i) a rolling three month budget for proposed use of Cash Collateral (the "Submitted Monthly Budgets"), and (ii) a reconciliation of actual receipts and expenditures for the preceding month against the receipts and expenditures projected in the Budget (the "Reconciliation Report").  Except as otherwise provided in the Stipulation, if the Submitted Monthly Budget contains any variations, adjustments or additions to the projected receipts or expenditures in the Budget for the prior month, then the Submitted Monthly Budget shall be subject to the review and approval of WestLB pursuant to the procedures set forth in paragraph 16 of the Stipulation.

        5.        In making expenditures authorized under the approved Budgets, Easy Street is ordered to use funds in the sequential order and subject to the terms set forth in paragraph 18 of the Stipulation.

6. Easy Street is further ordered to: (i) make disbursements pursuant to any Budget from the Bank Accounts as identified in Exhibit C of the Stipulation and in accordance with the terms and conditions of paragraph 19 of the Stipulation; and (ii) deposit and maintain all Cash Collateral, Refundable Deposits, and Revenues in the Bank Accounts as identified in Exhibit C of the Stipulation and subject to the terms, conditions, and procedures of paragraph 20 of the Stipulation and paragraph 10(c) of this Order.

7. As long as the Stipulation, as it may be amended from time to time, governs the consensual use of Cash Collateral, Easy Street is prohibited from: (i) subjecting the liens and security interests of WestLB to priming or pari passu liens, or other modification; or (ii) seeking or obtaining any post-petition financing or other indebtedness under § 364 of the Bankruptcy Code for any purposes other than the payment of the categories of line items set forth in the Budget or the payment of claims secured by liens junior to those of WestLB. For avoidance of doubt, Easy Street is authorized to use such post-petition financing to pay sums in excess of the line item amounts set forth in the Budget.

8. Easy Street is prohibited from making any transfers of Cash Collateral or loaning or otherwise transferring Cash Collateral to affiliates or to any other person or entity outside of the ordinary course of business unless such transfers are made in accordance with the Budget, the terms of the Stipulation, as the same may be amended in writing from time to time, and this Order.

9. Unless otherwise provided in the Stipulation, Easy Street is ordered to comply with, and shall be subject to the penalties for failure to comply with, the reporting requirements as provided in paragraph 24 of the Stipulation.

10. Easy Street is ordered to provide WestLB with the following forms of adequate protection for the use of its Collateral (including, but not limited to Cash Collateral) during the term of the Stipulation:

(a) WestLB shall be and hereby is granted a continuing, perfected, first priority security interest in all of the Collateral and all proceeds thereof, whether existing on the Petition Date or acquired thereafter (including, without limitation, all proceeds (as defined in the New York Uniform Commercial Code) on account of the Collateral), and all assets of Easy Street whether presently owned or hereafter acquired by Easy Street except avoidance actions under chapter 5 of the Bankruptcy Code. The first priority security interests granted as Interim Rights under the Interim Cash Collateral Stipulated Order and granted in and as part of the Stipulation and this Order shall not be subject to challenge and shall attach and become valid, binding, continuing, enforceable, fully-perfected and non-avoidable by operation of law as of the Petition Date without any further action by Easy Street, WestLB, or any other person, and without the necessity of execution by Easy Street, or the filing or recordation, of any financing statements, security agreements, mortgages, deeds of trust, or other documents. Despite the forgoing, WestLB may request additional documentation evidencing its perfected security interests, including, without limitation, certain control agreements over Easy Street's Bank Accounts, and Easy Street shall comply with any such requests;

(b) By no later than October 20, 2009 and then the twentieth (20th) day of each subsequent month after entry of this Order, Easy Street shall pay to WestLB the amount of $34,000. This amount reflects an estimate of the approximate amount of the monthly interest at the non-default contract rate on the value of WestLB's interest in the Collateral as of the

Petition Date which amount is set forth in the Initial Budget attached to the Stipulation and shall be set forth in all subsequent Submitted Monthly Budgets required by the Stipulation. The payments due hereunder shall constitute adequate protection payments and the Parties shall reserve all rights regarding the application of the payment against the allowed claims of WestLB. WestLB shall release funds from the Petition Date Cash to enable Easy Street to make these payments;

      (c)  On or before October 15, 2009, Easy Street shall arrange to be deposited and WestLB shall release from controlled bank accounts (from post-petition Revenues or Petition Date Cash) the following sums into the following Bank Accounts, each of which is defined and further identified on amended <u>Exhibit C</u> of the Stipulation: (i) into the Tax and Insurance Reserve Account, the sum of $43,624 on account of property taxes which Easy Street represents will become due in November 2009; (ii) into the FF&E Reserve Account, the sum of $10,990; (iii) into the HOA Reserve Account the sum of $183,610; (iv) all monies paid into the controlled bank accounts for Refundable Deposits into the Sky Lodge Refundable Guest Advance Deposits Trust Account, which account shall be established with a control agreement in favor of WestLB with the security interest of WestLB being subordinate to the rights of the beneficiaries of such Trust Account; and (v) into the Utilities Adequate Assurance Account (as identified on Exhibit C of the Stipulation), the sum of $24,092 in accordance with the Order entered September 17, 2009, Granting Motion for Order Pursuant to 11 U.S.C. § 366 (I) Prohibiting Utilities from Altering, Refusing or Discontinuing Services to, or Discriminating against the Debtor; (II) Providing that a Single Deposit for all the Debtors' Utilities Shall Constitute "Adequate Assurance of Future Payment"; and (III) Establishing Procedures for

Determining Requests for Additional Assurance. In addition, on or before the second (2nd) business day of each month, Easy Street shall arrange to be deposited and WestLB shall release from controlled bank accounts (from post-petition Revenues or Petition Date Cash) the following sums (which amounts are set forth in the Initial Budget and shall be set forth in all subsequent Submitted Monthly Budgets) into the following Bank Accounts, each of which is defined and further identified on Exhibit C of the Stipulation: (i) into the Tax and Insurance Reserve Account, a sum representing (a) one-twelfth (1/12) of the annual property taxes to be paid by Easy Street and (b) one-twelfth (1/12) of the annual insurance premiums to be paid by Easy Street; (ii) into the FF&E Reserve Account, a sum representing four percent (4%) of Easy Street's projected monthly gross revenue, exclusive of revenues from the sale of Fractional Ownership Units, if any, for the month in which the deposit is due; (iii) into the HOA Reserve Account, a sum representing one-third (1/3) of the HOA Deposit to be paid in the upcoming calendar quarter; and (iv) into the Debt Service Reserve Account the sum of $34,000 to be paid monthly to WestLB in accordance with paragraph 26(b) of the Stipulation and paragraph 10(b) of this Order. On or before Friday of each week, Easy Street shall arrange to deposit and WestLB shall release from controlled bank accounts into the Sky Lodge Refundable Guest Advance Deposits Trust Account, all monies paid into the controlled bank accounts for Refundable Deposits during the preceding week (ending on Thursday).

    (d) WestLB shall be and hereby is granted a superpriority administrative claim against Easy Street's estate senior to all other administrative expenses set forth in §§ 503(b) and 507(b) of the Bankruptcy Code to the extent of a Post-Petition Loss occurring during or precipitated by events or circumstances arising or occurring during the

period the Stipulation is in effect, including any extensions thereof.  This superpriority claim is subject and subordinate to the carve out for administrative claims in paragraph 27 of the Stipulation and paragraph 11 of this Order;

      (e) Without prejudice to any prior rights or claims of Easy Street or WestLB, Easy Street is ordered to name WestLB as the insured party and/or obtain loss payee endorsements in favor of WestLB for all policies of insurance obtained and/or renewed after January 1, 2009 ("New Policies"), including, but not limited to: (i) all property insurance policies; (ii) all commercial general liability insurance policies; (iii) all commercial umbrella liability policies; and (iv) all other liability insurance policies.  Easy Street is ordered to provide WestLB and the Committee with evidence of Easy Street's compliance with the foregoing on a continuing updated basis as soon as reasonably possible.  The material terms of each New Policy (subject to the actual New Policy conforming to such material terms) obtained after October 30, 2009 shall be subject to approval of WestLB, which approval shall not be unreasonably withheld.  Not less than fifteen (15) and not more than twenty-two (22) calendar days prior to the obtaining of a New Policy, Easy Street shall provide to WestLB, in writing, the status with respect to such New Policy and the anticipated terms, conditions and costs of such New Policy known to Easy Street at such time.  In the event that Easy Street obtains a New Policy after October 15, 2009, but prior to approval by WestLB, the material terms shall remain subject to such reasonable approval of WestLB as set forth above, which shall be deemed to have been granted if no written objection is received by Easy Street from WestLB within fourteen (14) days of WestLB's receipt of such material terms.  All proceeds of insurance payable from New Policies shall constitute

Cash Collateral and shall remain subject to the rights of Easy Street and WestLB with respect to use of Cash Collateral;

    (f) Easy Street shall submit to WestLB for its approval (which approval shall not be unreasonably withheld) on or before November 1, 2009, a Business Plan setting forth Easy Street's overall strategic plan for managing, operating, financing, and otherwise dealing with Sky Lodge, which shall serve as the basis for a proposed plan and a restructuring of WestLB's loan and include all information specified in Exhibit DD to the Loan Agreement. Easy Street shall promptly initiate good faith negotiations with WestLB regarding a plan of reorganization that is feasible, acceptable to WestLB and can be proposed and confirmed within the timeline provided for in the Stipulation;

    (g) Without limiting Easy Street's obligations under the Loan Documents or under applicable law, Easy Street shall continue, in accordance with its obligations under the Loan Agreement, (i) to maintain all Permits and a valid liquor license related to the Sky Lodge; (ii) to continuously operate and maintain the Sky Lodge in good working order and condition as a full service, luxury hotel, in accordance with the performance standards set forth in the Hotel Management Agreement, in compliance with all Laws, and as "The Sky Lodge Private Residence Club and Hotel" or such other name approved by WestLB in its reasonable discretion; and (iii) to perform Easy Street's obligations under the Hotel Management Agreement, and to enforce the performance by Hotel Operator of all of Hotel Operator's obligations under the Hotel Management Agreement;

    (h) Easy Street shall collaborate with WestLB in the identification, interview and engagement of a manger or operating consultant to serve as a co-managing officer

9

("Co-Manager") to assist and direct Easy Street in managing its business operations and restructuring its obligations. The retention of the Co-Manager must be approved by an Order of the Court no later than December 1, 2009. Upon retention of the Co-Manager, the expense of such Co-Manager shall be added to the Budget, in an amount agreed to by WestLB. Easy Street shall have final authority to select the Co-Manager, but such Co-Manager must be reasonably acceptable to WestLB, and Easy Street will provide WestLB with direct and unrestricted access to the Co-Manager with respect to the current and projected business operations, and the potential restructuring of WestLB's Loan under a plan of reorganization. The Co-Manager's authority and responsibility will include, but not be limited to, active participation in operating and management decisions. Nothing in this provision shall limit the Committee's right to object to the reasonableness of any compensation sought by the Co-Manager. All material decisions regarding the business operations shall be made jointly by the Co-Manager and other senior management of Easy Street. If the Co-Manager and other senior management disagree over any material decision affecting the business operations, then counsel for Easy Street and counsel for WestLB shall in good faith attempt to resolve the disagreement. Any party may, upon notice and hearing, seek an order from the Bankruptcy Court directing as to how Easy Street shall proceed to resolve the disagreement;

    (i) Easy Street shall not sell Fractional Ownership Units free and clear of WestLB's liens on such Fractional Ownership Units except upon the following terms and conditions: (i) the proposed sale is an all cash transaction negotiated at arms length and on normal and customary terms and conditions; (ii) WestLB will receive not less than 80% of the net proceeds received by Easy Street from the sale of each Fractional Ownership Unit, which

sales shall be in compliance with the minimum release price requirements contained in the Loan Documents or as may otherwise be agreed to by WestLB and Easy Street; and (iii) the remaining 20% of net proceeds shall be deposited into the Sale Proceeds Account (as identified on Exhibit C of the Stipulation) and be subject to the terms of the Stipulation and the interests, if any, of Jacobsen National Group, Inc., dba Jacobsen Construction ("Jacobsen") or other contractors or suppliers;

(j) Any funds received by Easy Street as a result of its pending adversary complaint against Bay North Realty Fund VI Limited Partnership, Adv. Proc. No. 09-2422 (the "Adversary Proceeding"), whether by recovery on a judgment or settlement of disputes, shall constitute Cash Collateral in which WestLB holds a valid, perfected first priority lien under applicable law, the Loan Documents, the Interim Rights afforded under the Interim Cash Collateral Stipulated Order, the Stipulation, and this Order. Easy Street further agrees that it will pay 70% of the net proceeds recovered by Easy Street after deduction of direct, reasonable and necessary costs of pursuing the litigation to WestLB and WestLB agrees that Easy Street may retain in the Bank Accounts the amounts deducted for costs of litigation and 30% of the net proceeds as Cash Collateral, the use of which is subject to the terms of the Stipulation or a subsequent Order of the Bankruptcy Court. This obligation of Easy Street and WestLB's rights in the Adversary Proceeding shall survive any termination of Easy Street's authority to use Cash Collateral under the Stipulation and this Order and may be enforced at any time Easy Street recovers proceeds from the Adversary Proceeding; and

(k) No later than December 3, 2009, Easy Street shall submit to WestLB a term sheet of its proposed plan of reorganization. No later than December 23, 2009,

11

Easy Street shall file a disclosure statement and plan of reorganization, both of which must be reasonably acceptable to WestLB with respect to any provisions that might have a material effect on WestLB's rights and claims in the chapter 11 case or its treatment under the plan, or might provide preferential or more favorable treatment to claims that are junior to or equal in priority to those of WestLB, and such plan shall, in any event, provide that (i) the maturity date of the restructured Loan will not be extended past December 31, 2011; (ii) the nondefault interest rate applicable to the restructured Loan will be no less than LIBOR (as defined in the Loan Documents) plus 6%; (iii) Easy Street will make monthly interests payments until December 1, 2010 and thereafter monthly payments according to a 20-year amortization schedule provided, however, that the portion of the monthly payments constituting amortization of principal shall be reduced by payments to WestLB from the sale of Fractional Ownership Units; (iv) WestLB has approved the post-confirmation senior management team and/or any sales agent for unsold Fractional Ownership Units, which approval will not be unreasonably withheld; and (v) WestLB will receive as paydown of principal not less than 80% of the net proceeds received by Easy Street from the sale of each Fractional Ownership Unit, which sales shall be in compliance with the minimum release price requirements contained in the restructured Loan Documents or as may be otherwise agreed to by WestLB and Easy Street, and the remaining 20% of net proceeds shall be deposited into a Sale Proceeds Account and remain subject to a control agreement in favor of WestLB. No later than March 31, 2010, Easy Street shall obtain confirmation of a plan of reorganization that is reasonably acceptable to WestLB and meets the minimum qualifications described in (i)-(v) above. Further, unless it receives the written consent of WestLB, Easy Street shall not seek to extend the exclusive period under § 1121(c)(2) of the Bankruptcy Code to file a

plan and disclosure statement. If Easy Street has filed a plan and disclosure statement in accordance with the Stipulation, WestLB will consent to extension of the time to have a plan accepted under § 1121(c)(3) of the Bankruptcy Code. Notwithstanding any other term of this Order, the Committee shall have the right to object to any proposed plan on any good faith grounds.

11.     Any monthly amount for the line item "Legal + Admin & General" in the Initial Budget and the approved Budgets shall constitute and serve as a "carve out" for professionals seeking compensation from the estate, including attorneys and consultants for the Debtors and Committee. The liens and the super-priority claims granted to WestLB as adequate protection shall be subject and subordinate to the carve out for professionals. The budgeting of such amounts does not constitute any admission or agreement by any party as to the timing or amount to be paid to any such professional, and all payments to such professionals may only be made as allowed by the Court and upon such terms and conditions as may be imposed by the Court. Any fees or expenses incurred by professionals in connection with the Adversary Proceeding may be paid when and if proceeds are recovered by Easy Street and in an amount not to exceed the reasonable and necessary fees and costs deducted to realize the net proceeds to be distributed under paragraph 26(j) of the Stipulation. The professionals for the Committee may not seek nor receive more than $25,000 from the carve out for services related to the investigation and analysis of the validity, amount, priority and perfection of the liens and claims of WestLB, and potential avoidance actions against WestLB, and the professionals for the Committee may not seek nor receive any amounts from the carve out for services related to the commencement or prosecution of any claim or action attacking the validity, amount, priority or

perfection of the liens and claims of WestLB, or commencement or prosecution of any avoidance action against WestLB. Upon a Termination Event, the carve out shall be limited to the amounts set forth in the Budget for the period prior to the Termination Event, unless otherwise ordered by the Court. In recognition of WestLB's approval of expenditures in the Budget and the carve out for administrative fees, the Debtors waive any claims or rights under § 506(c) of the Bankruptcy Code to surcharge the Collateral of WestLB for any expenses incurred during the time Easy Street is authorized to use Cash Collateral under the Stipulation or any extension or amendment thereto. Nothing in this Order shall restrict the Committee's ability to seek to assess fees and expenses against recoveries in any action under chapter 5 of the Bankruptcy Code.

        12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and the Stipulation shall be binding upon: (i) Easy Street, and any trustee or examiner that may be appointed in these Chapter 11 Cases, or its respective successors and assigns; (ii) WestLB and its respective successors and assigns; (iii) the trustee in the event that the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code; and (iv) all creditors and other parties in interest in the Chapter 11 Cases having notice of the Stipulation, including parties claiming derivatively through Easy Street or its estate, with the sole and limited exception that with respect to the committee of unsecured creditors appointed by the Office of the United States Trustee (the "Committee"), the Stipulation regarding the amount, validity, priority, perfection, and non-avoidance of the liens and claims of WestLB shall be binding ninety (90) days after entry of this Order, unless the Committee institutes appropriate litigation within that 90 day period to challenge such liens or claims. Nothing in this Order prejudices the rights, if any, of Jacobsen or other contractors or suppliers as to claimed interests

14

in the Sky Lodge Sales Proceeds Account and the Sky Lodge Deposit Account as described in Exhibit C to the Stipulation.

13. WestLB is entitled to all of the rights, remedies, protections and benefits granted under §§ 363(m) and 364(e) of the Bankruptcy Code with respect to all uses of its Collateral, including uses of its Cash Collateral. In the event any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect the validity or enforceability of any right, claim, lien, security interest, priority, or payment authorized or created for the benefit of WestLB by the Interim Cash Collateral Stipulated Order, the Stipulation or this Order.

14. Except as specifically set forth in the Stipulation, the Parties expressly reserve and retain all of their respective rights, remedies, or claims under the provisions of the Bankruptcy Code, other applicable law, or the Loan Documents.

15. The terms of the Stipulation may be extended by the Parties by mutual agreement in writing. The Parties shall file with the Court and serve on all interested parties a notice of any such extension and the terms and conditions governing the extension. Unless the Committee objects within five (5) days of such filing and service, the Court may, without further notice or hearing, approve any such extension. Upon termination of Easy Street's authority to use Cash Collateral, it may seek by motion on no less than 10 days notice authority to continue to use Cash Collateral.

16. This Order shall be binding and effective despite any conversion of the Case to a case under any other chapter of title 11 of the United States Code.

17. This Court shall retain jurisdiction with respect to all matters relating to the interpretation, enforcement, or implementation of the Stipulation and this Order.

-------------------END OF ORDER---------------------

