Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | |
| EASY STREET HOLDING, LLC, *et al.*, | Bankruptcy Case No. 09-29905 |
| Debtors. | Jointly Administered with Cases 09-29907 and 09-29908 |
| Address:  201 Heber Avenue<br>Park City, UT 84060 | Chapter 11 |
| | Honorable R. Kimball Mosier |
| Tax ID Numbers: | |
| 35-2183713 (Easy Street Holding, LLC), | |
| 20-4502979 (Easy Street Partners, LLC), and | [FILED ELECTRONICALLY] |
| 84-1685764 (Easy Street Mezzanine, LLC) | |

## DEBTOR'S APPLICATION TO EMPLOY BDRC 4SITE, LLC AS CO-MANAGER

Easy Street Partners, LLC (the "Debtor" or "Partners"), debtor in possession, hereby

applies for an order authorizing it to employ BDRC 4Site, LLC ("BDRC") as a co-manager ("Co-

Manager") to assist Partners in managing its business operations and restructuring its obligations.

In support of this Application, the Debtor respectfully represents as follows:

1.      Partners commenced this case under Chapter 11 of the United States Bankruptcy Code by filing a voluntary petition on September 14, 2009.

## JURISDICTION

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## EMPLOYMENT OF BDRC

3.      Subject to approval of this Court, Partners wishes to employ BDRC as Co-Manager to assist it in managing its business operations and in restructuring its obligations.  The Stipulation dated October 9, 2009, between Partners and WestLB, AG, its principal secured lender ("WestLB"), Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG (the "Cash Collateral Stipulation"), a slightly modified version of which was approved by Order of the Court entered October 14, 2009 (the "Cash Collateral Order") requires the employment of a Co-Manager.  Pursuant to the Cash Collateral Order, Partners and West LB are to collaborate in identifying, interviewing, and engaging a manager or consultant to serve as Co-Manager.  Partners has final authority to select the Co-Manager, but Partners' selection must be reasonably acceptable to WestLB.  Cash Collateral Stipulation at ¶ 26(h), Cash Collateral Order at ¶ 10(h).

4.      Partners and WestLB identified and interviewed several possible candidates for the Co-Manager role and Partners identified BDRC as the party it has selected and WestLB has indicated that, subject to certain conditions, BDRC is acceptable to it.  These conditions are set forth below.  WestLB has reserved the right to object to Partners' employment of BDRC if these conditions are not met.

2

5.    The Co-Manager has proposed that its duties and responsibilities should include the

following (these are all set forth in greater detail in the proposal to the Debtor by BDRC attached

hereto as Exhibit A):

a.    Providing supervisory assistance to the general manager.

b.    Reviewing, commenting, and approval of programs in the marketing,

promotion, and operation of the Debtor's hotel.

c.    Supervising relations with the homeowners association; supervising public

relations and public announcements.

d.    Reviewing and analyzing room rates and charges.

e.    Providing accounting oversight, controls, and services; reviewing and

analyzing operating costs and expenses.

f.    Providing to WestLB and to the Debtor's senior management reports on the

status of business operations, assets, budgets, and projections and business plans and participating

in periodic meetings with WestLB.

g.    Assisting the Debtor in developing a plan of reorganization, including

possible modification of operations, development of new strategies, attraction of new investment,

and restructuring existing debt.

h.    Assisting in the development of a marketing program and re-engagement of

a sales force to facilitate and pursue sales of the fractional units in the Sky Lodge.

6.    The Debtor, subject to the provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, and Orders of the Court, to the extent applicable, proposes that BDRC be

compensated for its services pursuant to the agreement set forth in Exhibit B attached hereto.  In

3

summary, compensation would consist of a monthly co-mangement/advisory fee in the amount of

$33,000 per month for the first two months and $23,000 per month thereafter, plus reasonable out-

of-pocket expenses, including travel.  The primary term of the engagement would be six months

with an automatic six-month extension unless canceled in writing at least 45 days prior to the end

of the primary term.  If the engagement is terminated prior to the expiration of a term, a

termination fee equal to two times the monthly co-management/advisory fee in effect at the time

would be due with the termination notice.  A fee for procuring either exit financing or new equity

would be negotiated and determined at a later date at reasonable and market rates, subject to this

Court's approval at a later date if applicable.  The Cash Collateral Stipulation and Order provide

that the Debtor's budget will be modified to provide for payment of the Co-Manager's

compensation.  Cash Collateral Stipulation, ¶ 26(h), Cash Collateral Order, ¶ 10(h).  The Debtor

proposes that BDRC be paid on a monthly basis and, if the Court so orders, that it file fee

applications every 120 days.

      7.     The Debtor seeks to employ BDRC because of its extensive experience and

knowledge in the fields of financial advice, workout and restructuring, hospitality management,

and procuring new equity investment and exit financing.  The experience and qualifications of

BDRC and those who will provide the services are set forth in Exhibit A attached hereto.

      8.     To the best of the Debtor's knowledge, BDRC does not have any connection with

or hold or represent any interest adverse to the Debtor, its creditors, or any other party in interest,

or the attorneys or other professionals for the Debtors, and are disinterested.

      9.     Partners believes that WestLB is generally amenable to Partners' employment of

BDRC, but conditions its consent on Partners also employing (or having BDRC subcontract with)

4

with) another entity, Gemstone Hotels & Resorts, LLC ("Gemstone") to act as a consultant to

Partners.  Partners is willing to employ Gemstone, subject to Court approval, to consult with it and

BDRC with respect to the review and development of Partners' 2010 business plan and budget,

which includes the operational and staffing issues associated therewith, gCommerce, web design,

and internet marketing, and other matters.

NOTICE

10.     No trustee or examiner has been appointed in the Debtor's Chapter 11 case.  The

Official Committee of Unsecured Creditors (the "Committee") was appointed on October 6, 2009,

and has retained counsel.  Notice of this Application has been served on the United States Trustee

for the District of Utah, counsel for the Debtors' prepetition secured lenders, proposed counsel for

the Committee, and parties who have entered appearances.

11.     No previous request for the relief sought has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests entry of an Order authorizing it to employ

BDRC, effective November 13, 2009, and granting such other and further relief as this Court

deems just and proper.

DATED:  November 13, 2009

EASY STREET PARTNERS LLC

By:_____

Its: _____

Agreed to:                        BDRC 4Site, LLC

By:_____

Its:_____

5

with) another entity, Gemstone Hotels & Resorts, LLC ("Gemstone") to act as a consultant to Partners. Partners is willing to employ Gemstone, subject to Court approval, to consult with it and BDRC with respect to the review and development of Partners' 2010 business plan and budget, which includes the operational and staffing issues associated therewith, gCommerce, web design, and internet marketing, and other matters.

## NOTICE

10.     No trustee or examiner has been appointed in the Debtor's Chapter 11 case. The Official Committee of Unsecured Creditors (the "Committee") was appointed on October 6, 2009, and has retained counsel. Notice of this Application has been served on the United States Trustee for the District of Utah, counsel for the Debtors' prepetition secured lenders, proposed counsel for the Committee, and parties who have entered appearances.

11.     No previous request for the relief sought has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests entry of an Order authorizing it to employ BDRC, effective November 13, 2009, and granting such other and further relief as this Court deems just and proper.

DATED: November 13, 2009

EASY STREET PARTNERS LLC

By:_____
Its:_____

Agreed to:

BDRC 4Site, LLC

By:_____
Its:_____

5

SLC_495070

Co-counsel for the Debtor:                    Kenneth L. Cannon II (3705)
                                              Steven J. McCardell (2144)
                                              DURHAM JONES & PINEGAR
                                              111 East Broadway, Suite 900
                                              P.O. Box 4050
                                              Salt Lake City, UT  84110-4050
                                              Telephone:  (801) 415-3000/Fax:  (801) 415-3500

                                              Michael V. Blumenthal (admitted pro hac vice)
                                              CROWELL & MORING LLP
                                              590 Madison Avenue, 20th Floor
                                              New York, NY  10022
                                              Telephone:  (212) 223-4000/Fax:  (212) 223-4134

6

SLC_495070

# EXHIBIT A

# THE SKY LODGE
## 201 Heber Avenue
## Park City, Utah



## CO-MANAGER PROPOSAL FOR THE SKY LODGE

### SUBMITTED BY:

| | | |
|---|---|---|
| KIM SALLINGER | BRYAN W. DORSEY | JEFFREY T. BLATT |
| PRINCIPAL | PRINCIPAL | PRINCIPAL |
| BDRC 4 SITE, LLC | BDRC 4 SITE, LLC | BDRC 4 SITE, LLC |
| 305 NE LOOP 820, STE 109 | 305 NE LOOP 820, STE 109 | 323 CONGRESS AVE, STE 200 |
| HURST, TEXAS 76053 | HURST, TX 76053 | AUSTIN, TEXAS 78701 |
| 817- 595-3515 | 972-333-5363 | 512- 481-8600 |
| 817- 595-3517 FAX | 817- 595-3517 FAX | 512- 481-8700 FAX |
| kim@bdrc4site.com | bd@bdrc4site.com | jeff@bdrc4site.com |



THE SKY LODGE
PARK CITY , UTAH

# EXECUTIVE SUMMARY

**Property Name:**   The Sky Lodge

**Location:**   102 Heber Avenue, Park City Utah

**Land Area:**   1.02 Acres

**Multi-Use Project:**   22 residential condominiums, 2 restaurants (one operated by Easy Street Partners and the other leased to Robert Redford's Sundance Group), roof top lounge, meeting facilities, a full service spa, fitness center, indoor lap pool and underground parking for 44 automobiles. Operated as a boutique hotel the residential units have been sold in 1/8th deeded fractional interests with the owner having the option to participate in a rental program.

**Fractional Units Sold:**   113 of the total inventory of 176 shared interests have been sold.

**Year Built:**   Opened December 2007

**Status:**   The property is currently operating under Chapter 11 Bankruptcy protection.





BDRC
4-SITE

**THE SKY LODGE**
**PARK CITY , UTAH**

# EXECUTIVE SUMMARY
## Overview

The Sky Lodge offered 22 exclusive luxury residential suites boasting dining venues, the rooftop Sky Club for Sky Lodge owners and hotel guests a highly personalized experience.  Residential suites range from one bedroom flats, two-story "Sky Homes", and The Penthouse.  The resort hotel has apparently been well received and enjoys a very solid reputation among guests who have visited the property.  As the property completes its second year of operation its reputation appears to be growing as evidenced by the following hotel ratings, Conde Nast Traveler's "Hot Hotels in the World" and by The Robb Report on their 2008 "Best of".  The Sky Lodge is also a member of Small Luxury Hotels of the World.





THE SKY LODGE
PARK CITY , UTAH

# CO-MANAGER
## DUTIES AND RESPONSIBILITES

BDRC 4 Site posses the knowledge, collective experience and proven platforms to be appointed the Co-Manager of The Sky Lodge in Park City, Utah.  We believe our strict independent "Third Party Status" perfectly positions our group to procure this assignment.   We envision our daily duties and responsibilities to closely mirror the following outline.

Once appointed as Co-Manager BDRC 4 Site will have authority and responsibility to actively participate in the operation and management decisions for The Sky Lodge.  All material decisions regarding business operations shall be made jointly by Co-Manager and Senior Management at Easy Street Partners including:

4 Site will immediately send Jeff Blatt and Kim Sallinger to The Sky Lodge to begin diligence and to set initial interface with Senior Management.   Subsequent property visits will likely include other members of 4 Sites team, including Jerry Lloyd and Carl Kernodle.

4 Site's accounting team will ensure compliance with budget and approve expenditures for the property, including the timely payment of real estate and personal property taxes, utilities, insurance premiums, license and permit fees and charges provided for in contracts entered into by Easy Street or its affiliates.

4 Site will review and approve on management of working capital including authorization of transfers between the various accounts approved under the Cash Collateral Stipulation document.

4 Site will assist in the development and approve the annual business plan, which will detail the hotel operations and future marketing of fractional ownership interests when viablity and stability of the sales environment returns.

4 Site shall supervise the future preparation and approve financial statements and other information to be provided by the Debtors under the Cash Collateral Stipulation document .

4 Site shall operationally review and participate in the on-site management of the hotel and business operations including but not limited to:

- Supervisory assistance of the general manager, and review management of the other staff, including training, recruiting and seasonal adjustments to staff
- Review, comment and approve programs and initiatives in the marketing, promotion and operation of the hotel and amenities
- Supervise communications and relations with the HOA and existing owners of fractional shares
- Supervise public announcements, press releases and media communications
- Review and analysis of Rev PAR growth, room rates and charges for services provided in the property
- Review and approval of the maintenance of books and records and internal accounting and operating controls
- Review and analysis of operating costs and expenses
- Review all current service and maintenance vendors and trade creditors, identify and implement changes or pricing improvements
- Participate in periodic meetings either phone or in person with WestLB and Debtor's Senior Management to review and report on status of business operations, assets, budgets, operating projections, business plans and other pertinent information
- Assist Easy Street in developing a Work-Out plan to include;
    - Modification of operations where advantageous
    - Development of new strategies and related budget impact
    - Development of strategy to attract new equity
    - Restructuring of existing debt
- Assist in the development of a marketing program and re-engagement of a sales force to facilitate sale of the fractional product over the next few years.



BDRC
4-SITE

THE SKY LODGE
PARK CITY , UTAH

# HOSPITALITY  ASSET MANAGEMENT

BDRC 4 Site's team is uniquely qualified to assist operating or distressed properties with specific Asset Management expertise, highly professional policies and procedures to improve operating performance and financial management tools designed for hotel/resorts to maintain or maximize its value.  Our team is proficient in all facets of diligent monitoring of the on-site property management on a regular basis and preserves a detailed system of checks and balances for operating performance and maintenance of the property.

BDRC 4 Site's team can deliver a full spectrum of consulting services which includes; operations, fiscal reporting and forecasting, customer identification and satisfaction, marketing, e-commerce, design, repositioning and development and active management analysis during any phase of an assets lifecycle.

Services include;

- Operations and Operational Analysis
- Financial Management and Accounting Services
- Expertise in increasing revenues
- Creative Sales and Marketing Programs
- Design and Architectural Advisory
- Property Repositioning
- Food and Beverage Program Analysis
- Property Acquisition or disposition
- Financing and Refinancing
- Lender reporting and compliance
- Franchise interface, negotiation and compliance
- Capital expenditure planning
- Legal issues oversight
- Systems, equipment and ground lease oversight
- Insurance procurement, compliance and oversight of claims
- Property tax administration and protest
- Rev PAR Growth tools
- Public – Private Partnerships

Most recently, our principals served as owner operators on a daily basis as an owner and managed with Hilton the 500 room "4 Star" Hilton Hotel and the intertwined 99 unit Five Fifty Five Condominiums and street level  retail in Austin, TX.  During construction we were engaged by the 1003 room Grand Hyatt, San Antonio with related Alteza Condominium and retail components.  The combined value of the two properties was over $750 million dollars.  These two complex Convention Center Hotels were public-private partnerships that required significant coordination between  staff, the developer, municipal authorities and financial partners.

Besides the Hilton and Hyatt brands our team has consulted for several resort properties including Redstone Golf Course and Resort and the Sheraton Desert Cove Resort.   Our team has also consulted with several Boutique Hotels including Indigo Earth, The Contessa, The Ashton and Hotel Saba.

As a consultant BDRC 4 Site is dedicated to assisting owners/investors and their lenders in realizing their plans, while maximizing the value of their asset.  "We are satisfied with nothing less than above average returns, market leading  occupancy levels and the highest standards of guest satisfaction" says Dorsey.



**THE SKY LODGE**

**PARK CITY , UTAH**

## PROPOSED FEE STRUCTURE
## AND TERMS

| | |
|---|---|
| CO-MANAGEMENT/ADVISORY FEE | Fee of $33,000 per month for the first two (2) months then the monthly fee shall be lowered to $23,000 per month for the remainder of term. |
| TRAVEL & EXPENSE REIMBURSMENT | Reasonable out of pocket expenses including travel shall be reimbursed to the Co-Manger. |
| TERM | Primary term six (6) months with an automatic six (6) month extension unless canceled in writing forty five (45) days prior to primary term expiration. |
| TERMINATION FEE | Should Co-Manager's agreement be terminated before the expiration of term, a Termination Fee Penalty equal to two (2) times the Co-Management/Advisory Fee will be due with the termination notice. |
| RETAINER FEE | A retainer fee equal to one (1) months Co-Management/Advisory Fee is requested. Future monthly retainers are to be paid by the first week of the month. |
| SALES & MARKETING FEE OF UNITS | Fractional sales and marketing fees for the remaining units shall be mutually agreed upon by the Co-Manager, Easy Street Partners and Lenders. |
| PROCURMENT OF EXIT FINANCING AND/OR NEW EQUITY | Fee to be determined |



# THE SKY LODGE
## PARK CITY , UTAH









BDRC
4SITE

THE SKY LODGE
PARK CITY , UTAH

## RESUMES

## BRYAN W. DORSEY
## PRINCIPAL & DIRECTOR—MARKETING & PROJECTS

A graduate of the University of Texas at Austin with degrees in Real Estate as well as Finance and Accounting, Mr. Dorsey has over 25 years of concentrated experience in all facets of real estate. Mr. Dorsey's extensive experience in acquisition, financing, development and redevelopment projects as well as the management and administration of extensive real estate portfolios has been refined in both large national corporate organizations as well as in more entrepreneurial venues.

As the Regional Director for Metropolitan Structures, an affiliate of Metropolitan Life Insurance, Mr. Dorsey was responsible for more than $1 Billion in total transactions (14,500,000 aggregate square feet) plus the coordination of Met Structures hotel development program and daily interface with it's partner Hyatt Hotel and Resort. During his tenure; including not only all acquisition, disposition, financing and project management in the Dallas region but also on projects throughout the country. Mr. Dorsey left Metropolitan Structures to lead the Dallas regional operation of Peter Kurt's Properties, a publicly held real estate company. Mr. Dorsey was responsible for all administrative, leasing and management functions as well as having primary responsibility for strategic planning, development, sales and finance functions. Transactions initiated by Mr. Dorsey and for which he was responsible produced a return on equity in excess of 260% per annum.

In late 1994 Mr. Dorsey formed Partners Property Corporation providing value oriented real estate services for high net worth individuals and financial institutions as well as partnerships for the acquisition and development of commercial properties. On behalf of and in partnership with his clients, Mr. Dorsey has completed more than $2 billion in transactions. Significant transactions included involvement in the redevelopment and sale of Foothills Mall (500,000 sf mall in Tucson purchased at 8% occupancy and sold at 92% occupancy in two years); Forest Green Office Complex (108,000 square feet sold for twice acquisition and redevelopment cost in two years); ATOS Origin Technology Center (100,000 sf building and 69 acres of land); The Gables Apartments (192 units purchased in December 2002 for $9.2 million with $1.4 million NOI); Austin Office Portfolio (12 buildings–1.325 million square feet acquired for average of $43/sf and average resale was in excess of $94/sf).

Late in 1998, Mr. Dorsey focused his business efforts on the identification of under–managed multifamily properties or new developments in the Dallas/Ft. Worth and the Austin markets which were appropriate for conversion to and sale as condominiums. Beginning with the acquisition of the Houston Place Lofts in downtown Fort Worth, Mr. Dorsey aggressively focused on this market segment and opportunity. Mr. Dorsey's recent condominium developments have included the assemblage of eight separate properties (over 500 units and development approval for an additional 335 units) in the desirable Oak Lawn/Turtle C reek area of Dallas, the Commons on Travis, the Ladera Condominiums, the Lakeview Townhomes and 5FiftyFive high–rise condominiums in Austin, Texas. The 5FiftyFive condominiums best exemplify Mr. Dorsey's approach and success. Located atop the brand new 4 star Austin Hilton Hotel, Mr. Dorsey has succeeded in developing and selling these ultra–luxury condominiums at a price which is $150 per square foot higher than the competitive market at an absorption rate which was 50% faster than originally anticipated.

Mr. Dorsey has consulted with the Hilton and Hyatt brands and has extensive experience in the design of several resort properties including Redstone Golf Course and Resort and the Sheraton Desert Cove Resort.   He is intimately familiar with the Boutique Hotel Industry and has super-vised the BDRC 4 Site's team assignment at several Boutique Hotels including Indigo Earth, The Contessa and Hotel Saba.

While maintaining his focus on the condominium and multi–family market, Mr. Dorsey has broadened his residential scope and has acquired more than 1,600 acres in Travis County. Platted for more than 1,600 residential lots, Sweetwater Ranch has completed the full scope of entitlement efforts and construction of roads, utility infrastructure and bridges is currently underway. Mr. Dorsey completed this $150 million transaction with Lehman Brothers Holdings as his joint venture partner. Mr. Dorsey has also recently negotiated to payoff Lehman Brothers on a discounted basis while at the same time accelerating sales in Sweetwater Ranch, despite the recent downturn in residential sales.



BDRC
4SITE

**THE SKY LODGE**

**PARK CITY , UTAH**

## RESUMES

### BRYAN W. DORSEY—continued

In conjunction with equity investors and development partners Mr. Dorsey has also recently closed on the acquisition of a 2,200 acre master planned development in Williamson County, Texas which is platted for more than 5,200 lots. This development is financed entirely through equity and is the only current master plan residential community in Williamson County under development. Mr. Dorsey also serves as a third party advisor to the bankruptcy estate for Lehman Brothers Holding, Inc. and Barclays Capital and his management affiliates provide asset and property management services for Barclays and the former Lehman Brothers in Texas for more than 1.5 million square feet of commercial properties.

In addition to his real estate activities, Mr. Dorsey is a director and primary shareholder in a number of companies, including Politeview, Inc. and Vidyah, Inc. which count Southwest Airlines, the United Nations and the United States Government among its many clients. Mr. Dorsey is also a major shareholder and director of Traverus, Inc., an international travel hosting service with 14,000 travel agents in 83 countries as well as being a significant investor and active partner in 5 Continents TV Corp.



BDRC
4SITE

**THE SKY LODGE**
**PARK CITY , UTAH**

## RESUMES

## JEFFRY BLATT
## PRINCIPAL & DIRECTOR—MANAGEMENT & FINANCE

Mr. Blatt graduated with a BS (cum laude) in Business with Accounting Emphasis from the University of Southern California in 1979. He received his CPA designation in 1979 and has subsequently completed the majority of his course work for his Master's in Taxation.

Beginning his professional career with Touche Ross in Los Angeles, California, Mr. Blatt's focus was on taxation and real estate accounting as well as structuring issues associated with real estate investment vehicles.  In 1981 Mr. Blatt became the Controller and Vice President of Finance for Buckeye Realty and Management Corp in Los Angeles.

Beyond the traditional financial, tax and accounting responsibilities associated with this position, Mr. Blatt also was responsible for the administration and management of more than $350,000,000 in commercial office buildings throughout Southern California. During Mr. Blatt's tenure, he also oversaw the development of a 300 acre master planned community in Southern California with more than 1,000 multi-family units, 200,000 square feet of retail development and more than 3,000 single family and condominium residences. Mr. Blatt bore primary responsibility for all land and subdivision zoning, financing, construction and development functions associated with this development. Mr. Blatt ultimately negotiated and orchestrated the sale of the entire Buckeye portfolio to VMS Realty (Chicago, Illinois) in late 1985.

The sale of the Buckeye portfolio provided the opportunity to Mr. Blatt to provide his expertise and services to others, and Mr. Blatt opened his own accounting firm in Beverly Hills in 1986. Mr. Blatt provided real estate accounting and taxation as well as business and property management services to a diverse group of large real estate investment groups.  Mr. Blatt's clients were usually in the Real Estate business but, his assignments regularly involved hotels and restaurant establishments.  Namely, Severyn Ashkenzay's Boutique Hotel Group; L'Parc, L'Ermitage, L'Mondrian and VMS Realty's Boca Raton Resort.  His practice also handled accounting services for several notable restaurants managed by the Sillierman Family; Gladstone's 4 Fish, Maple Drive, 72 Market Street and The Grill.  Jeff's consulting practice included California Pizza Kitchen prior to their public offering and subsequent sale to Pepsi Co.

In 1991 the opportunity to become a principal as well as the Chief Financial Officer and Senior Vice President for Ravenwood Properties in Austin, Texas made Mr. Blatt and his family permanent residents of Austin. As an active principal, Mr. Blatt increased the Ravenwood portfolio in the Austin area from 300 units to 1,600 multifamily units. In addition, Mr. Blatt and Ravenwood acquired more than 280,000 square feet of commercial office buildings in the Austin.  During this time, the primary responsibility for all accounting, management, lease negotiation, financing, construction and renovation has been in the hands of Mr. Blatt .

Since 1999 Mr. Blatt for his own account and in conjunction with additional partners, has acquired or developed more than 1,800,000 square feet of commercial office, retail and multi-family properties in Austin as well as in Dallas, Fort Worth and San Antonio, valued at more than $700,000,000. As part of The BDA Group, Mr. Blatt has acquired and is developing or redeveloping more than 800 units of condominiums in Austin, Dallas and Fort Worth, Texas. Mr. Blatt's management company also serves as the third party property management company for more than 1,500,000 square feet of commercial property for Lehman Brothers and an additional 2,000,000 square feet for other partnerships.



**BDRC**
4-SITE

THE SKY LODGE
PARK CITY , UTAH

## RESUMES

## KIM T. SALLINGER
## PRINCIPAL & DIRECTOR—MANAGEMENT & BROKERAGE

Kim Sallinger serves as President of Merit Commercial Realty which he formed in 2004 in order to diversify a life long career in real estate. Since the inception of Merit his leadership has seen the group successfully forge into project leasing, property management, tenant representation, investment acquisitions and sales, asset management, condominium sales and marketing, construction management, hospitality consulting and site analysis.  Prior to forming MCR Mr. Sallinger served as Executive Vice President and Managing Director of Brokerage and Leasing of Centra Asset Partners.  Primary responsibilities involved the supervision of a fifteen person brokerage staff responsible for the project leasing and brokerage activities of over four million square feet of office and retail properties located in the major markets of Texas. He was also directly responsible for the property management activities of over four million square feet of office and retail properties located in the major markets of Texas.

He has been in the commercial real estate field for the last 22 years. He has extensive experience in office and retail leasing and sales and management of all commercial property types. In the last year, Mr. Sallinger personally brokered separate transactions of ten properties totaling over 500,000 square feet. These office, hotel, retail and condominiums, valued at over seventy five million dollars, were located in the Dallas, Fort Worth, Austin and Houston markets.

Mr. Sallinger's Brokerage teams are responsible for major transactions that require creativity, analytical skill, and enthusiastic problem solving. Known for his grasp of the structure of transactions and for his negotiation skills, he has directed project marketing for office buildings ranging in size from 20,000 to over 600,000 square feet. Through his career he has negotiated hundreds of transactions for institutional owners including Connecticut Mutual Life Insurance Company, Mass Mutual Life Insurance Company, Lennar Partners, Goldman Sachs, Citi-Corp, Aetna, Ameritas Life Insurance, Mutual of New York, Farmers Insurance, Lehman Brothers, First Nationwide Savings and Loan, Wells Fargo, Compass Bank, Texas Bank and Daiwa Securities of America, to name a few.

While developing a substantial client base and expanding his knowledge in both leasing and brokerage, he has developed formidable, results-oriented methodology in marketing and property management. He has both a proven record for increasing occupancy in the commercial setting, and creative negotiation in all phases of commercial lease and sale transactions. Upon understanding his client's goals, he has developed and implemented marketing programs custom designed for both short-term and long-term positive economic impact.

Prevalent in the deal making process is Kim's adept handling of complicated sales and lease negotiations. His skills include working closely with owners, tenants, architects, and contractors during construction periods. He has, over his career, developed an in–depth knowledge of the real estate market and its various submarkets, building codes/regulations, construction methods, finance and investment strategies.

Kim has successfully relocated tenants from out–of–state to Dallas, Fort Worth, and Houston with near seamless transition. He enjoys numerous long-term relationships with credit tenants who prefer to work direct with him and his team, rather than engaging an outside broker on lease renewals and expansions.

Early in Mr. Sallinger's career he was fortunate to be involved with several hotel/resort projects including One Harbor Square in Kemah.  The consulting assignment had Kim developing near and long term marketing and business plans.  Recently, Kim has accepted an outside consulting position for The Ashton Hotel and is retained by the General Partner to augment the Luxury Boutique Hotel's core revenue stream, increase it's repeat business.

Mr. Sallinger's personal career production of sales over 1.75 million square feet and lease transactions totaling 1.12 million square feet plus the sale of over 200 condominium units, boutique hotels and mixed land developments with a combined market value of over $300 million have kept Mr. Sallinger in the upper echelon of real estate brokers.



BDRC
4·SITE

THE SKY LODGE
PARK CITY , UTAH

## RESUMES

## CARL ALAN KERNODLE, AIA, NCARB, LEED AP
## KPG REAL ESTATE DEVELOPMENT  DIRECTION
## PRINCIPAL

**EDUCATION:**   Bachelor of Architecture, University of Arkansas
Valedictorian of the School of Architecture
Earned the American Institute of Architecture Henry Adams School Medal presented
    upon graduation in recognition of scholastic achievement, character, leadership and
    promise of high professional ability.
Earned the University Senior Scholar Award for the school of architecture for the
    highest grade point average in each college.

**REGISTRATION:**   Licensed Architect:
    Arkansas (AR #3662)          Illinois (IL #001-018215)
    Mississippi (MS #3329)       North Carolina (NC #9199)
    Tennessee (TN #00100597)   Texas (TX #17133)
    New Mexico (NM #4115)
American Institute of Architects
    Member – Chicago AIA         Chapter secretary 2000 - AIA Memphis

**PROFESSIONAL
ASSOCIATIONS:**   United States Green Building Council LEED Accredited Professional
Dean's Circle - University of Arkansas
National Council of Architectural Registration Boards (File #58,367)
Texas Tech HSIQIC-Registered Technical Assistance Provider.
Arkansas Arts Council 2003 Art In Public Places, Guest Juror

**PROFESSIONAL
EXPERIENCE:**   Mr. Kernodle directs, manages, and designs large complex projects for a variety of clientele. His expertise in dynamic
multi-use projects that includes casino, educational, entertainment, hotel, hospitality, religious, residential (single and
multifamily), resort, meeting/conference centers and perpetual care facilities. These project types share the common
trait of having specialized hospitality needs of large assembly spaces.

* November 2007 to Present: Hyatt Corporation, Chicago, Illinois – Vice President of Architecture & Design. Mr.
Kernodle oversees the creation of Hyatt's Product and Brand criteria for all new Hyatt Hotels and Resorts
throughout North America and the Caribbean. Integral to this role is assisting hotel owners through Technical
Services during design and construction to ensure project compliance with the established vision and goals.



BDRC
4SITE

THE SKY LODGE
PARK CITY , UTAH

## RESUMES

## CARL ALAN KERNODLE—CONTINUED

* August 2000 to Present: KPG Real Estate Development Direction, Kernodle Professional Group, Oak Park, Illinois – President/CEO and Founder. Mr. Kernodle draws from his training and experience as an architect to *shepherd success* in development projects. He provides design, programming, design evaluation, site evaluations, and client/development Services for clients that vary from architects, contractors, developers, operators, and owners.
* November 2004 to December 2006: FaulknerUSA, Austin, Texas – Senior Vice President, Director of Design. Mr. Kernodle performed programming, master planning, and conceptual design services in addition to overseeing the design services of more than six design firms with work totaling in excess of $1 Billion dollars. These projects included convention center hotels, resort boutique hotels/spas, luxury high-rise condominiums, and retail centers.
* May 1999 to August 2000: McGehee Nicholson Burke Architects, Memphis Tennessee – Lead Designer and Firm Associate.
* September 1991 to April 1999: Hnedak Bobo Group, Inc. Memphis, Tennessee-Hospitality Studio Principal.

**KEY PROJECT EXPERIENCE:**
Hyatt Regency Curacao Golf Resort, Spa & Marina, Clearwater, FL. - Milton Pate &  Associates, architect of record. (Hyatt Design Manager)
Hyatt Regency Clearwater Resort & Spa, Clearwater, FL. - David L. Wallace & Associates, architect of record. (Hyatt Design Manager)
Riverfield Hotel and Condominiums, Austin, TX. (KPG Project Director, entitlements.)
Hulen Place, Fort Worth, TX – Merriman Associate Architects, architect of record. (KPG Project Director, entitlements.)
Southwind Residential Properties Association, Germantown, TN. (KPG Project Design/Compliance Reviewer, 1999 - 2009.)
Wellsgate Residential Properties Association, Oxford, MS. (KPG Project Design/Compliance Reviewer 2007 - 2009.)
Park at Wyoming Springs, Round Rock, TX - Duke Garwood, architect of record. (Permitting - Faulkner USA Director of Design)
Grand Hyatt San Antonio & Alteza Condominiums, San Antonio, TX – Arquitectonica, architect of record. – (Faulkner USA Director of Design)
Redstone Golf Club Resort Hotel, Humble, TX. (Concept Design - Faulkner USA Director of Design)
Hymeadow Medical Center, Austin, TX. – KPG architect of record
Javits Convention Center Hotel, New York, NY – Arquitectonica, architect of record. (Design Competition - Faulkner USA Director of Design)
Greata Ranch Winery, Kelowna, British Colombia, Canada. - (Concept Design—Faulkner USA Director of Design)
Sheraton Desert Cove Resort – Cathedral City, CA. 250 key hotel & conference center – (Entitlements - Faulkner USA Director of Design)
Village Creek State Park Resort, Cross County, AR. (KPG Concept design and feasibility)
Indigo Earth, Houston, TX (KPG Concept design, master plan, and feasibility)
Harrah's Casino - Tunica, MS; Shreveport, LA; Blackhawk, CO; Central City, CO; Joliet, IL; East Chicago, IN; Kansas City, MO. – Hnedak Bobo Group, architect of record
Gold Strike Casino – Tunica, MS. – Hnedak Bobo Group, architect of record



THE SKY LODGE

PARK CITY , UTAH

## RESUMES

## CARL ALAN KERNODLE—CONTINUED

Grand Casino Hotels-Tunica, MS; Gulfport, MS. – Hnedak Bobo Group, architect of
record
Gaylord (Opryland) Hotels– Palms: Orlando, FL; Texan: Grapevine, TX. – Hnedak Bobo Group, architect of record
Harrell Funeral Home, Kyle, TX. - KPG architect of record.
Whoa Ranch House, Dripping Springs, TX. - KPG architect of record.
Reagler Residence, Hunters Rest, AR. - KPG architect of record.
Casino Player Magazine's 1999 reader's poll – Top Hotel in Tunica, Grand Casino Terrace Hotel, Tunica, Mississippi. Hnedak
Bobo Group, Inc., AIA, architect of record.
AIA Memphis - 1997 Award Of Merit, Harrah's Mardi Gras Casino, Tunica, Mississippi. Gregory O. Hnedak, AIA, architect of
record.
Illuminating Engineering Society 1997 Award of Merit, Harrah's Mardi Gras Casino, Tunica, Mississippi. Hnedak Bobo Group,
Inc., AIA, architect of record.
1994 - Two (2) destination gaming awards: Harrah's Shreveport Casino, Louisiana. Hnedak Bobo Group, Inc., AIA, AIA,
architect of record.
AIA Tennessee – 1996 Award of Merit, Union Planters Headquarters', Memphis, Tennessee. Hnedak Bobo Group, Inc.
architect of record.



BDRC
4·SITE

## RESUMES

## JERRY W. LLOYD

**June 2006 to present**
Currently serving as a retained consultant for Wall Street firms where I was responsible for the review and analysis of non-performing loan acquisition opportunities as well as the pursuit of equity and debt placement on real estate transactions. Just completed an eight month assignment in Asia in the review and analysis of real estate asset holdings in Japan, Korea, Thailand, Singapore and Taiwan. In this role, I worked directly for the global trustee in the former entity's global bankruptcy.

**August 2004 to June 2006**
Senior Vice President of Capital Realty Inc., Tokyo, Japan where my responsibilities included asset management for large, singular originated real estate investments in both debt and equity positions, as well as real estate portfolio acquisitions in Japan, Korea, China, Singapore and Thailand, with an approximate direct investment in excess of $500 million. Responsible for management of balance sheet and fund equity investments made by a Wall Street firm, as well as coordinating the efforts of a staff of six professionals.

**August 2001 to July 2004**
Senior Vice President of Capital Advisor Inc., Seoul, Korea. Responsible for the management and direction of a staff of fifteen engaged in the resolution of five non-performing loan portfolios totaling $2.5 billion with a $300 million equity investment by a Wall Street firm's Global Real Estate & Structure Finance Group of Korea. These portfolios included high-risk real estate transactions that were remnants of multiple failed Korean Banks. One of the more significant responsibilities included the acquisition, management and liquidation of a twenty-story office building in the Seoul C BD with a final sales price of $90 million and a profit of over $40 million to the firm. The building was a Class "B" building located in a Class "A" location. The property owner had been unable to keep the building in good repair. The building occupancy was taken down from 75% to 27%, retro fitted (including all new elevators, coolers, lobby restoration, retro fit of the basement food court and façade make-over). The oversight of this investment required coordinating the efforts of a major Korean general contractor, an international property management group as well as the company management staff. Served as the Chief Operating Officer, Joint Representative Director and was a member of the Board of Directors of Woori-C A AMC, a Korean Joint Venture entity of a Wall Street firm and Woori Financial Holdings. At that time, Woori was the second largest financial services company in Korea. Primary responsibility was management of the AMC and its staff of seventy-five employees, as well as the management and liquidation of approximately $2.5 billion in non-performing loans, both secured and unsecured, which were acquired in nine separate portfolios. The majority of the secured loans were resolved within fifteen months of acquisition, which was nine months earlier than was projected. As COO, was responsible for the establishment of policies and procedures, financial oversight, labor relations, risk assessment and corporate governance of the AMC.

**August 1998 to July 2001**
Retained consultant for a Wall Street firm providing risk assessment of large loan transactions secured by commercial real estate properties located primarily in Georgia, Mississippi, Louisiana, Texas, Nevada and California. Responsibilities included review of loan and collateral documents, site inspections, property operating reports, market data and comparable property review and analysis. Prepared management reports on the individual investments on a quarterly basis with special emphasis placed on the performance of the investment compared to the original underwriting and commentary on the potential for the firm to reach the resolution profit levels anticipated at the time of the investment.



BDRC
4-SITE

THE SKY LODGE

PARK CITY , UTAH

## RESUMES

## JERRY W. LLOYD—CONTINUED

**February 1991 to July 1998**
Senior Asset Manager for Crown Northcorp Inc. located in Dallas, TX and Atlanta, GA. Crown was an asset management company that serviced investments for private and public entities. Responsible for staff levels from five to twenty engaged in the management and liquidation of transactions involving loans secured by real estate properties, commercial loan instruments and equity investments in real estate properties. Specifically responsible for direct management of FDIC assets totaling $300 million from the former First New York Bank for Business, managed liquidation of multiple portfolios of commercial real estate secured non-performing loans from over 170 failed savings & loans and was responsible for the public auction of a portfolio of single family and commercial real estate properties securing 1200 non-performing loans totaling over $400 million. This auction was the first of its kind for the Resolution Trust Corporation and was utilized by the RTC for liquidation of numerous portfolios from other failed institutions.



**BDRC**
4SITE

THE SKY LODGE
PARK CITY , UTAH

## RESUMES

## Alan Holt
## President — Holt Residential, L.P.

Alan Holt brings 16 years of real estate brokerage experience, including 10 years of residential condominium development and marketing management to Lakequest. He has served in construction management and project management roles, involved in interior selection and finish. In addition, he has 9 years experience managing a sales staff.

**2004–2007 — Director of Sales and Marketing**
**The 5 Fifty Five Condominiums at the Hilton Austin downtown**
**31–story hotel/condo, $70 million, 99 residential units, $300,000 to $2,500,000**

Holt managed day–to–day operations including development, sales, marketing, advertising, PR and oversaw staff of six. In addition to all sales and marketing activity, Holt's team oversaw change-orders, interior finish-out, punch lists, move ins and operations. Holt was responsible for approval and oversight of marketing initiatives and budget, and personally negotiated (either directly or through staff) and approved sales contracts. Condominium construction began after hotel opening, with construction and sales/marketing commencing concurrently (no pre–sales). Project involved resident move–ins and ongoing sales/marketing during construction. Project approached 90% sold and closed upon completion of construction.

**2000–2004 — Vice President, Plaza Lofts, LP**
**The Plaza on Republic Square – 5th and Guadalupe, Austin**
**12–story new construction, $30 million, 60 residential units and retail, $300,000 to $1,000,000**

Holt managed sales and marketing, interior finish-out (change orders, scheduling and punch–out) and all resident logistics. Additionally, Holt was responsible for coordination of architecture and construction during redesign, from feasibility through execution. Holt was also president of HOA from inception through turnover. Project involved redesigning top two floors and adding rooftop pool during construction in response to market downturn, and renegotiating multiple contracts. Upon sell–out, achieved positive return to investors despite downturn.

**1997–2000 — Sales Manager and Project Manager**
**Brazos Lofts and The Avenue – downtown Austin**
**80 units combined, approximately $20 million combined value**

Holt managed sales and marketing for both projects, and served as interior finish–out Project Manager. Projects involved conversion and use change of two existing buildings, both projects were 100% sold and occupied upon completion. At the time, these were the first downtown Austin condominium developments in over 15 years, and the first use–change condo conversions in downtown Austin history.



BDRC
4·SITE

# EXHIBIT B

# Professional Services Agreement

**Effective Date**: November 12, 2009

**BDRC 4Site**:  BDRC 4Site LLC, a Texas limited liability company

**BDRC 4Site**
**Address for Notices**: Attn: Kim Sallinger
305 N.E. Loop 820, Suite 109
Hurst TX 76053
Fax: 817-595-3517
Email: kim@bdrc4site.com

**Owner**: Easy Street Partners, LLC

**Owner Address for Notices**: 201 Heber Avenue
Park City, Utah 84068
**Phone**: 435-658-2500
**Fax**: 866-712-0135
**Email**: bshoaf@cloudnineresorts.com

**Project**:    The Sky Lodge
201 Heber Ave
Park City, UT 84060

**Professional Services**: as detailed on **Schedule 1** attached hereto.

This Professional Services Agreement (this "Agreement") is made and entered into as of the Effective Date by and between BDRC 4Site and Owner.

## Recitals

1.      Owner is the owner of the Project.

2.      The Principals of BDRC 4Site are experienced in delivering Professional Services of the type described on Schedule 1 to third-party property owners and for their own account.

3.      Owner desires to contract with BDRC 4Site to provide the Professional Services to Owner in connection with the Project.

4.      Owner has agreed to compensate BDRC 4Site for providing the Professional Services to Owner as hereafter provided.

**Agreements**

THEREFORE, for and in consideration of the mutual agreements herein made, and intending to be legally bound hereby, subject to the approval of the United States Bankruptcy Court for the District of Utah, the parties hereto hereby agree as follows:

1.    **Engagement**. Owner hereby engages BDRC 4Site to provide the Professional Services to Owner in connection with the Project, upon and subject to the terms and conditions of this Agreement. Owner hereby authorizes BDRC 4Site to exercise such powers with respect to the Project as may be necessary for the performance of BDRC 4Site's obligations under the terms of this Agreement, and BDRC 4Site accepts such appointment under the terms and conditions hereafter set forth. Except to the extent specifically provided for herein, or as otherwise may be reasonably necessary to deliver the Professional Services hereunder, BDRC 4Site shall have no right or authority, expressed or implied, to commit or otherwise obligate Owner or to otherwise encumber the Project in any manner whatsoever.

2.    **Term**. This Agreement is effective as of the Effective Date and shall extend for a term of 6 months thereafter (the "Original Term"). This Agreement shall automatically be renewed for consecutive periods of 6 months each (each a "Renewal Period"), unless one party delivers to the other party a notice of such party's intent not to renew at least 45 days prior to the expiration of the Original Term, or the Renewal Period, as the case may be.

3.    **Effect of Termination**. Upon the termination of this Agreement and payment of the Termination Fee - per **Schedule 2** - if applicable, BDRC 4Site shall have no further obligation to provide Professional Services to Owner and all outstanding unpaid amounts due and owing to BDRC 4Site for Professional Services provided prior to such termination shall become immediately due and payable.

4.    **Compensation**.

a.    Owner agrees to compensate BDRC 4Site for the Professional Services in accordance with **Schedule 2** attached hereto and subject to the approval of the United States Bankruptcy Court for the District of Utah.

b.    Owner acknowledges and agrees that for each Renewal Period, BDRC 4Site shall be allowed to increase any or all of the fees for the Renewal Period by an amount not to exceed five percent (5%) of the fees in effect immediately prior to such Renewal Period. In addition, if at any time while this Agreement is in effect there is a change in federal, state, or local

**Professional Services Agreement - Page 2**

laws, rules, regulations, or procedures that materially alters the nature or extent of the Professional Services, or if Owner changes the scope of the Professional Services, then Owner agrees that BDRC 4Site may make an equitable adjustment to its fees to compensate for such changes. In the event of any such rate increase, Owner reserves the right to terminate this Agreement with 45 days prior written notice and payment of Termination Fee to BDRC 4Site.

c.   Owner also agrees to reimburse BDRC 4Site for any out-of-pocket expenses reasonably incurred by BDRC 4Site in connection with the delivery of the Professional Services, including, but not limited to, travel, legal, outside accounting and auditing, insurance, and similar services.

5.   **Representations and Warranties**.

a.   Owner represents and warrants that it has the full partnership power, capacity, and authorization to execute and deliver this Agreement and to perform its obligations hereunder.

b.   BDRC 4Site represents and warrants that it is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Texas, and that is has the full corporate power, capacity, and authority to execute and deliver this Agreement and to perform its obligations hereunder.

6.   **Default**. In the event of a breach or default in the performance of this Agreement by a party hereto, the non-defaulting party shall promptly furnish written notice thereof to the defaulting party, which notice shall set forth, in reasonable detail, the nature and extent of the alleged breach or default and the actions deemed appropriate by the non-defaulting party to cure the alleged breach or default. The defaulting party shall have a period of 30 calendar days from its receipt of such notice (the "Cure Period") to cure the default. If such default is cured to the non-defaulting party's reasonable satisfaction within the Cure Period, then this Agreement shall remain in full force and effect. If such default is not cured to the non-defaulting party's reasonable satisfaction within the Cure Period, the non-defaulting party may treat the defaulting party as being in default under Agreement and pursue such rights and remedies as may be available under applicable law, including, but not limited to immediate termination of this Agreement, suit for damages, specific performance or other available remedies.

7.   **Indemnification: Limitation of Liability**.

a.   In the absence of gross negligence or intentional misconduct on its part, BDRC 4Site shall not be liable for any action taken, suffered, or omitted

**Professional Services Agreement - Page 3**

by it or for any error of judgment made by it in the performance of its duties under this Agreement.

b.      BDRC 4Site may consult with counsel (including internal counsel), at the expense of Owner, whose advice shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

c.      Owner shall indemnify BDRC 4Site for, and hold it harmless against any loss, liability, claim or expense, including attorneys' fees (collectively "Losses"), arising out of or in connection with its duties under this Agreement, including the costs and expenses of defending itself against any Losses in connection therewith, unless such Losses shall have been determined by a court of competent jurisdiction to be the result of BDRC 4Site's gross negligence or intentional misconduct. In no case will BDRC 4Site be liable for special, indirect, incidental or consequential loss or damages of any kind whatsoever (including but not limited to lost profits), even if BDRC 4Site has been advised of the possibility of such damages. Any liability of BDRC 4Site will be limited to the amount of the annual fee paid by Owner hereunder for the Initial Term or a Renewal Period, as applicable.

d.      The obligations of Owner under this section shall survive the termination of the Agreement.

8.      **Confidential Information**. BDRC 4Site agrees that in view of the confidential nature of the information, documents, and files of Owner (the "Owner Documents") which it is required to prepare, process, or maintain under this Agreement, it will perform its duties in such a manner so as to prevent the disclosure to any persons not employed by BDRC 4Site of any of the Owner Documents, except as may be required by any regulatory authority having jurisdiction over Owner or as may be consented to by Owner. BDRC 4Site further agrees to return to Owner all or any requested portion of the Owner Documents.

9.      **Independent Contractors**. The performance of BDRC 4Site and Owner under this Agreement are as non-exclusive, independent contractors, and nothing in this Agreement or otherwise is intended or will be construed to create a joint venture, partnership, employment arrangement, or other similar relationship between the two. Neither Owner, nor any of its employees or agents, will be deemed to be an employee or agent of BDRC 4Site. Neither BDRC 4Site, nor any of its employees or agents, will be deemed to be an employee or agent of Owner. Except as specified in this Agreement, nothing herein shall be construed to create the relationship of principal and agent between Owner and BDRC 4Site. BDRC 4Site shall not act or attempt to act or represent himself, directly or by

implication, as an agent of Owner or in any manner assume or create, or attempt to assume or create, any obligation on behalf of, or in the name of Owner, unless so instructed by Owner in writing. Owner shall not act or attempt to act or represent itself, directly or by implication, as an agent of BDRC 4Site or in any manner assume or create, or attempt to assume or create, any obligation on behalf of, or in the name of BDRC 4Site.

10.   **Miscellaneous**.

a.   Assignment. The rights and obligations of each party under this Agreement are personal and not assignable, either voluntarily or by operation of law, without the prior written consent of the other party, which consent will not be unreasonably withheld.

b.   Governing Law. This Agreement shall be governed by the laws of the State in which the Project is located.

c.   Entire Agreement. This Agreement and the schedules attached hereto represent the entire understanding and agreement between the parties hereto, supersede all prior written instruments or memoranda with respect thereto, and may not be terminated or modified except by a written instrument executed by the parties hereto.

d.   Incorporation of Schedules. This Agreement shall be deemed to have incorporated by reference all of the schedules referred to herein to the same extent as if such schedules were fully set forth herein. Each reference herein to "this Agreement" shall be construed to include each such schedule.

e.   Severability. In the event any provision or portion of this Agreement is deemed to be invalid or unenforceable, in whole or in part, for any reason, the remainder thereof shall not be invalidated or rendered unenforceable or otherwise adversely affected.

f.   Notices. Any notice, request or other communication (a "notice") required or permitted to be given hereunder shall be in writing and shall be delivered by hand delivery or by overnight courier (such as United Parcel Service or Federal Express), sent by electronic document transmission (email) in PDF format (provided a copy of such notice is deposited with an overnight courier for next business day delivery), sent by facsimile (provided a copy of such notice is deposited with an overnight courier for next business day delivery), or mailed by United States registered or certified mail, return receipt requested, postage prepaid and addressed to each party at its address as set forth below. Any such notice shall be

**Professional Services Agreement - Page 5**

considered given on the date of such hand or courier delivery, transmission of the email (provided a copy of such notice is deposited with an overnight courier for next business day delivery), confirmed facsimile transmission (provided a copy of such notice is deposited with an overnight courier for next business day delivery), deposit with such overnight courier for next business day delivery, or deposit in the United States mail; provided, however, that the time period (if any is provided herein) in which to respond to such notice shall commence on the date of hand or overnight courier delivery or on the date received following deposit in the United States mail as provided above. Rejection or other refusal to accept or inability to deliver because of change of address of which no notice was given shall be deemed to be receipt of the notice. By giving at least five (5) days' prior written notice thereof, either party may from time to time and at any time change its mailing address hereunder.

g.     Paragraph Headings. The paragraph headings contained in this Agreement are for reference purposes only and shall not affect the interpretation or meaning of this Agreement.

h.     Force Majeure. If performance by BDRC 4Site of any Professional Services is prevented, restricted, delayed, or interfered with by reason of acts of God, floods, lightning, severe weather, shortages of materials, rationing, utility or communication failures, earthquakes, war, revolution, civil commotion, acts of public enemies, blockade, embargo, or any law, order, proclamation, regulation, ordinance, demand, or requirement having legal effect of any government or any judicial authority or representative of any such government, which is beyond the reasonable control of BDRC 4Site, then BDRC 4Site shall be excused from such performance to the extent of such prevention, restriction, delay, or interference. To the extent that such non-performance has, to Owner's sole discretion, a materially adverse effect on Owner's ability to conduct business, Owner has the right to terminate this Agreement.

*End of page – signatures on next page*

**Professional Services Agreement - Page 6**

**Signature Page to Professional Services Agreement**

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates indicated below to be effective as of the Effective Date.

OWNER

**Easy Street Partners, LLC**

By: _____

Printed Name: William Shoaf

Title:   Co-Manager

Date: _11/13/2009._____

By: _____

Printed Name: Philo Smith

Title:   Co-Manager

Date: _____

**BDRC 4Site LLC**

By: _____

Printed Name: Kim Sallinger

Title:   Principal & Director

Date: _4/12/2009_____

**Professional Services Agreement - Page 7**

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates indicated below to be effective as of the Effective Date.

OWNER

**Easy Street Partners, LLC**


By:_____

Printed Name: William Shoaf

Title:   Co-Manager

Date:_____


By:_____

Printed Name: Philo Smith

Title:   Co-Manager

Date:_____


**BDRC 4Site LLC**

By_____

Printed Name: Kim Sallinger

Title:   Principal & Director

Date:___11/12/2009_____

## Schedule 1

## BDRC 4Site  Duties and Responsibilities

BDRC 4Site will have authority and responsibility to actively participate in making operational and managerial decisions for the Project. All material decisions regarding business operations shall be made jointly by BDRC 4Site and Senior Management ("Senior Management") of Easy Street Partners, LLC ("Easy Street") including:

1.    BDRC 4Site will send Jeff Blatt and Kim Sallinger to the Project to begin due diligence and to establish the initial interface with Senior Management. Subsequent property visits may include other members of BDRC 4Site's team, including Michael Sacenti, John Dingle, Jerry Lloyd and Carl Kernodle.

2.    BDRC 4Site's accounting team will monitor compliance with the Project's budget and approve expenditures for the Project, including the payment of real estate and personal property taxes, utilities, insurance premiums, license and permit fees and charges provided for in contracts entered into by Easy Street or its affiliates.

3.    BDRC 4Site will review and approve management of working capital including authorization of transfers between the various accounts approved under the Cash Collateral Stipulation document.

4.    BDRC 4Site will assist in the development of, and sign off on, the annual business plan for the Project, which will detail the hotel operations and future marketing of fractional ownership interests when viability and stability of the sales environment returns.

5.    BDRC 4Site shall supervise the preparation of, and sign off on, financial statements and other information to be provided by the Debtors under the Cash Collateral Stipulation document.

6.    BDRC 4Site shall review and participate in the on-site, day-to-day management of the hotel and business operations including but not limited to: Supervisory assistance of the general manager, and review management of the other staff, including training, recruiting and seasonal adjustments to staff.

7.    BDRC 4Site shall review, comment, and sign off on programs and initiatives in the marketing, promotion and operation of the hotel and amenities.

8.    BDRC 4Site shall supervise communications and relations with the property owners' association and owners of fractional shares.

**Professional Services Agreement - Page 8**

9.    BDRC 4Site shall supervise public announcements, press releases, and media communications.

10.    BDRC 4Site shall review and analyze Rev PAR growth, room rates and charges for services provided in the Project.

11.    BDRC 4Site shall review and sign off on procedures for maintaining the Project's books and records and internal accounting and operating controls.

12.    BDRC 4Site shall review and analyze operating costs and expenses for the Project.

13.    BDRC 4Site shall review all current service and maintenance contracts, vendors, and trade creditors, identify and implement changes or pricing improvements.

14.    BDRC 4Site shall participate in periodic meetings, either phone or in person, with WestLB and Debtor's Senior Management to review and report on status of business operations, assets, budgets, operating projections, business plans and other pertinent information.

15.    BDRC 4Site shall assist Easy Street in developing a "Work-Out" plan for the Project, to include:

a.    Modification of operations where advantageous;

b.    Development of new strategies and related budget impact;

c.    Development of strategy to attract new equity; and

d.    Restructuring of existing debt.

16.    Assist in the development of a marketing program and re-engagement of a sales force to facilitate sale of the fractional product over the next few years.

## Schedule 2

## Fee Structure and Terms

| | |
|---|---|
| CO-MANAGEMENT/ADVISORY FEE | Fee of $33,000 per month for the first two (2) months then the monthly fee shall be lowered to $23,000 per month for the remainder of term. |
| TERMINATION FEE | Should BDRC 4Site's agreement be terminated before the expiration of term, a Termination Fee Penalty equal to two (2) times the Co-Management/Advisory Fee will be due with the termination notice. |
| RETAINER FEE | A retainer fee equal to one (1) months Co-Management/Advisory Fee is requested. Future monthly retainers are to be paid by the first week of the month. |
| SALES & MARKETING FEE OF UNITS | Fractional sales and marketing fees for the remaining units shall be mutually agreed upon by the BDRC 4Site, Easy Street, and Lenders. |
| PROCUREMENT OF EXIT FINANCING AND/OR NEW EQUITY | Fee to be mutually agreed upon |