Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000/Fax: (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000/Fax: (212) 223-4134

Counsel for Debtors and Debtors in Possession

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>EASY STREET HOLDING, LLC, *et al.*,<br><br>Debtors.<br><br>Address: 201 Heber Avenue<br>Park City, UT 84060<br><br>Tax ID Numbers:<br>35-2183713 (Easy Street Holding, LLC),<br>20-4502979 (Easy Street Partners, LLC), and<br>84-1685764 (Easy Street Mezzanine, LLC) | Bankruptcy Case No. 09-29905<br>Jointly Administered with Cases<br>09-29907 and 09-29908<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier<br><br>**[FILED ELECTRONICALLY]** |

**DEBTOR'S APPLICATION TO EMPLOY GEMSTONE
HOTELS & RESORTS, LLC AS A CONSULTANT**

Easy Street Partners, LLC (the "Debtor" or "Partners"), debtor in possession, hereby applies for an order authorizing it to employ Gemstone Hotels & Resorts, LLC ("Gemstone") as a consultant ("Consultant") to consult with and advise Partners and its proposed co-manager, BDRC 4Site ("BDRC") with respect to the development of an effective business plan, operating

projections, project management, and with respect to a five-year business plan and operating proformas related thereto. In support of this Application, the Debtor respectfully represents as follows:

1. Partners commenced this case under Chapter 11 of the United States Bankruptcy Code by filing a voluntary petition on September 14, 2009.

JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

EMPLOYMENT OF GEMSTONE

3. Subject to approval of this Court, Partners proposes to employ Gemstone as a consultant to consult with it and BDRC with respect to business plan development and operating issues, as set forth in the Consulting Services Agreement (the "Consulting Agreement") between Partners and Gemstone, a copy of which is attached hereto as Exhibit 1. The Stipulation dated October 9, 2009, between Partners and WestLB, AG, its principal secured lender ("WestLB"), Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG (the "Cash Collateral Stipulation"), a slightly modified version of which was approved by Order of the Court entered October 14, 2009 (the "Cash Collateral Order") requires the employment of a co-manager. Pursuant to the Cash Collateral Order, Partners and WestLB are to collaborate in identifying, interviewing, and engaging a manager or consultant to serve as co-manager. Partners and WestLB interviewed a number of parties, including Gemstone and BDRC. Partners, which has final authority to select the co-manager, subject to that selection being reasonably acceptable to WestLB, selected BDRC and Partners' application to employ BDRC as

co-manager is pending. Cash Collateral Stipulation at ¶ 26(h), Cash Collateral Order at ¶ 10(h). WestLB has also requested Partners to employ Gemstone as a consultant for certain services.

4. Partners and Gemstone have agreed that Gemstone's duties and responsibilities will include the following (these are all set forth in greater detail in the Consulting Agreement attached as Exhibit 1):

a. Consult, comment, and support Partners and BDRC with respect to the development of an effective business plan, operating projections, and project management.

b. Conduct a review, analysis, and comment on Partners' five-year business plan and operating proformas. This will include the review, analysis, and recommendations in areas including homeowners association budgeting; replacement reserve model; overview of staffing and recruiting; the food and beverage component of the Debtor's operations; marketing, promotion and public relations regarding hotel operations and sale of fractional units; and any other aspect of Partners' management or business operations reasonably requested by Partners or BDRC and agreed to by Gemstone.

5. The Debtor, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and Orders of the Court, to the extent applicable, proposes that Gemstone be compensated for its services pursuant to the Consulting Agreement attached as Exhibit 1. In summary, compensation would consist of a monthly consulting fee in the amount of $8,000 per month, plus reasonable out-of-pocket expenses. The term of the engagement is from the date of engagement until terminated by either party on 30 days' prior written notice. The Debtor proposes that Gemstone be paid on a monthly basis and, if the Court so orders, that it file fee applications every 120 days.

6. The Debtor seeks to employ Gemstone because of its extensive experience and knowledge in the fields of hospitality management and certain other advisory services. The experience and qualifications of Gemstone's principals are set forth in Exhibit 2 attached hereto.

7. To the best of the Debtor's knowledge, Gemstone does not have any connection with the Debtor, its creditors, or any other party in interest, or the attorneys or other professionals for the Debtors, other than as set forth in the declaration of Jeff McIntyre filed contemporaneously with this Application. The Debtor believes that Gemstone does not hold or represent any interest adverse to the Debtor, its creditors, and other parties in interest, and is disinterested.

NOTICE

8. No trustee or examiner has been appointed in the Debtor's Chapter 11 case. The Official Committee of Unsecured Creditors (the "Committee") was appointed on October 6, 2009, and has retained counsel. Notice of this Application has been served on the United States Trustee for the District of Utah, counsel for the Debtors' prepetition secured lenders, proposed counsel for the Committee, and parties who have entered appearances.

9. No previous request for the relief sought has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests entry of an Order authorizing it to employ Gemstone, effective November 13, 2009, and granting such other and further relief as this Court deems just and proper.

*[signature page attached]*

DATED: November 20, 2009

EASY STREET PARTNERS LLC

By:____________________
Its: Manager.

Agreed to:

GEMSTONE HOTELS & RESORTS, LLC

By:____________________
Its: PRINCIPAL / MEMBER

Co-counsel for the Debtor:

Kenneth L. Cannon II (3705)
Steven J. McCardell (2144)
DURHAM JONES & PINEGAR
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000/Fax: (801) 415-3500

Michael V. Blumenthal (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000/Fax: (212) 223-4134

# EXHIBIT 1

# CONSULTING SERVICES AGREEMENT

This Agreement made and entered into as of the 16TH day of November, 2009, by and between Easy Street Partners, LLC., ("Easy Street"), and Gemstone Hotels & Resorts, LLC ("Gemstone"), each individually referred to as a "Party" and collectively as the "Parties."

Reference is made to the following facts:

1. Easy Street on September 14, 2009 filed a voluntary petition in the United States Bankruptcy Court, District of Utah commencing a chapter 11 case being jointly administered under no 09-29905 (the "Chapter 11 Case")

2. Easy Street has entered into a stipulation (the "Cash Collateral Stipulation") with it major secured creditor in the Chapter 11 Case, WestLB, providing for Easy Street's use of cash collateral and other agreements providing adequate protection for the interests of WestLB, including an obligation of Easy Street to engage a Co-Manager that is reasonably acceptable to WestLB.

3. Easy Street has selected BDRC 4Site, LLC ("BDRC") to serve as the Co-Manager, and at the request of WestLB has selected Gemstone to consult with and support the work of the Co-Manager pursuant to the terms of this Agreement.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained, Easy Street and Gemstone hereby agree as follows:

1. **Duties and Responsibilities of Gemstone.**

(a) Commencing as of November 16, 2009, Gemstone shall perform such duties and have such responsibilities as are outlined in Exhibit "A" attached hereto and made a part hereof, and as shall be directed from time to time by Easy Street (the "Services").

(b) In the performance of its obligations hereunder, Gemstone accepts the relationship of trust and confidence established between it and Easy Street by this Agreement. Gemstone agrees to perform the Services with due and reasonable diligence consistent with sound professional practice.

(c) Gemstone is authorized to have reasonable access to books, records and personnel as may be reasonably necessary for Gemstone's performance of services under this Agreement.

2. **Term.**

This Agreement shall continue from the date of commencement and until it is terminated by either Party upon thirty (30) days' prior written notice.

3. **Compensation.**

(a) For the Services provided hereunder, Easy Street will pay to Gemstone fees in the amount of $8,000 per month. Such fees are inclusive of any and all federal, state, and local taxes relating to Gemstone's Services. Gemstone will be reimbursed by Easy Street for all out-of-pocket expenses reasonably incurred by Gemstone while providing Services to Easy Street hereunder, including meals and telephone, photocopying and telecopier expenses.

(b) Gemstone shall submit to Easy Street one invoice each month covering the Services and Gemstone's expenses, in such detail and with such other documentation as Easy Street shall reasonably request. Easy Street shall make payment within ten (10) days of the date of receipt of each such invoice.

4. **Independent Contractor.**

Gemstone is engaged as an independent contractor and acknowledges that all persons performing Services hereunder shall be employees and/or agents of Gemstone. Easy Street will have no responsibility to provide insurance or other fringe benefits normally associated with employee status. Gemstone shall be solely responsible for the payment of all wages, taxes and benefits required by law for such employees or agents, and shall indemnify and hold Easy Street harmless from any and all liabilities or costs related thereto.

5. **Termination.**

(a) Either party may terminate this Agreement without cause by giving the other party and WestLB at least thirty (30) days' prior written notice.

(b) If Gemstone materially fails to perform any provision of this Agreement, Easy Street shall give written notice of such failure to WestLB and Gemstone and shall provide a reasonable opportunity (of no less than 15 calendar days) for Gemstone to cure said failure. In the event that such material failure to perform is not corrected within the designated time period, Easy Street may terminate this Agreement at the conclusion of such period.

(c) In the event of termination, Gemstone shall be paid for Services performed to the date on which the termination becomes effective (plus reimbursement for reimbursable expenses pursuant to Paragraph 3). Upon receipt of any notice of termination, Gemstone shall (i) cause Gemstone's Services to be terminated and (ii) transfer or cause to be transferred title and deliver or cause to be delivered to Easy Street, as directed by Easy Street, documents produced, prepared or acquired for the purpose of performing under this Agreement.

(d) Termination of this Agreement for any reason releases neither Easy Street nor Gemstone from the obligations set forth in this Agreement arising prior to the date of termination. Termination of this Agreement shall not extinguish indemnification

or any other obligations or duties that have accrued by reason of activities during the term of this Agreement; such duties shall continue after termination and shall remain subject to the terms of this Agreement despite termination.

6. **Contracting Authority.**

In its capacity as a consultant to Easy Street, Gemstone shall have no managerial or contracting authority with respect to the operations of Easy Street or the Property, except as expressly authorized in writing by Easy Street. Nor shall Gemstone be, or represent itself to be, an agent or employee of Easy Street with authority to in any way bind Easy Street.

7. **Indemnification.**

(a) In the absence of gross negligence, intentional misconduct or a material breach of this Agreement on its part, Gemstone shall not be liable for any action taken, suffered, or omitted by it or for any error of judgment made by it in the performance of it duties under this Agreement.

(b) Easy Street shall indemnify Gemstone for, and hold its harmless against any loss, liability, claim or expense, including attorneys' fees (collectively "Losses"), arising out of or in connection with its duties under this Agreement, including the costs and expenses of defending itself against any Losses in connection therewith, unless such Losses shall have been determined by a court of competent jurisdiction to be the result of Gemstone's gross negligence, intentional misconduct or material breach of this Agreement. In no case will Gemstone be liable for special, indirect, incidental or consequential loss or damages of any kind whatsoever (including but not limited to lost profits), even if Gemstone has been advised of the possibility of such damages.

(c) Gemstone will indemnify Easy Street for, and hold it harmless against any Losses arising out of or caused by Gemstone's gross negligence, intentional misconduct or material breach of this Agreement; provided, however, that in no case will Gemstone be liable for special, indirect, incidental or consequential losses or damages of any kind whatsoever (including but not limited to lost profits), even if Gemstone has been advised of the possibility of such damages.

8. **Confidential Information.**

Gemstone agrees that in view of the confidential nature of the information, documents, and files of Easy Street (the "Easy Street Documents") which it is required to prepare, process, or maintain under this Agreement, it will perform its duties in such a manner so as to prevent the disclosure to any persons not employed by Gemstone of any of the Easy Street Documents, except as may be required by the Cash Collateral Stipulation, by any regulatory authority having jurisdiction over Gemstone or as may be consented to by Easy Street. Gemstone further agrees to return to Easy Street all or any requested portion of the Easy Street Documents.

9. **Notices.**

All notices delivered in connection with this Agreement shall be in writing and delivered in person (or by courier), by facsimile (with confirmation of delivery), sent by overnight delivery service (such as Fed Ex) by certified mail (return receipt requested) or by electronic document transmission (e-mail) in PDF format. If delivered in person, by facsimile, by courier or by email, such notices shall be deemed to be received upon delivery, if sent by overnight delivery service, the next business day, or if sent by mail, such notices shall be deemed to be received three (3) days after being placed in the United States Mail, postage prepaid. Such notices shall be sent to the following addresses:

To Gemstone: Janet van Hartesvelt, CFO
1912 Sidewinder Drive, # 104,
Park City, UT 84060
Fax: 435-658-2175

With a copy to: Jeff McIntyre, Principal
1912 Sidewinder Drive, # 104
Park City, UT 84060
Fax: 435-658-2175

To Easy Street: William Shoaf
201 Heber Avenue
Park City, UT 84060
bshoaf@cloudnineresorts.com

With a copy to: Michael V. Blumenthal
Crowell & Moring, LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Fax: 212-223-4134

10. **Miscellaneous Provisions.**

(a) This Agreement is subject to and conditioned upon the Bankruptcy Court's approval of this Agreement in the Chapter 11 Case pursuant to an order in form and substance reasonably acceptable to the parties. The parties consent to the jurisdiction of the Bankruptcy Court to interpret or enforce the terms of this Agreement.

(b) All captions and headings are inserted for the convenience of the parties, and shall not be used in any way to modify, limit, construe or otherwise affect this Agreement.

(c) In case one or more of the provisions contained in this Agreement (or any portion of such provision) shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement (or any portion of any such provision), but this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or portion thereof) had ever been contained herein.

(d) This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Utah.

(e) This Agreement sets forth the entire agreement and understanding of the parties in respect of the transactions contemplated hereby and supersedes all prior agreements, arrangements and understandings relating to the subject matter hereof.

(f) No representation, promise, inducement or statement of intention has been made by any party to this Agreement, or their respective agents, which is not embodied in this Agreement, and neither party shall be bound by or liable for any alleged representation, promise, inducement or statement of intention not so set forth.

(g) This Agreement may be amended, modified, superseded or cancelled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, but, in the case of a waiver, only by the party waiving compliance. The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same. No waiver by any party of any condition, or any breach of any term, covenant, representation or warranty, contained in this Agreement, whether by conduct or otherwise, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach of any other term, covenant, representation or warranty of this Agreement.

(h) This Agreement shall inure to the benefit of and be binding on the parties and their respective legal representatives, successors, and assigns. Neither party may assign its rights under this Agreement at any time to the other person or entity, without the prior written consent of the other party.

(i) In the event litigation is commenced to enforce any of the provisions of this Agreement, to recover damages for breach of any of the provisions of this Agreement, or to obtain declaratory relief in connection with any of the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, whether or not such action proceeds to judgment.

(j) This Agreement may be executed in counterparts, each of which shall constitute an original and both of which when taken together shall constitute one and the same Agreement.

EASY STREET PARTNERS, LLC
a Utah limited liability company

By: ____________________
Name: William Shoaf
Title: Manager

GEMSTONE HOTELS & RESORTS, LLC
a Missouri limited liability company

By: ____________________
Name: Jeff McIntyre
Title: Member

## EXHIBIT A

## GEMSTONE HOTELS AND RESORTS, LLC
## PROPOSED SERVICES

Gemstone will be retained by Easy Street to consult, comment and support Easy Street and BDRC with respect to the development of an effective business plan, operating projections and project management.

Gemstone shall conduct a review, analysis and comment on a five-year business plan and operating proforma which includes the review, analysis and recommendations in the following areas:

- All aspects of the HOA budget, including rental programs, association budgets, and homeowner relations.
- The replacement reserve model.
- Overview of management staffing, line employee staffing, recruiting and hiring required for the winter season.
- The food and beverage component of the project, including pricing, marketing and operational scenarios to maximize the potential of the marketplace.
- Marketing, promotion and public relations regarding hotel operations and sales of fractional units.
- Any other aspect of East Street's management or business operations reasonably requested by Easy Street or BDRC and agreed to by Gemstone.

NYIWDMS: 11382848_3

# EXHIBIT 2




# I. WHY CHOOSE GEMSTONE?

Our company's expertise and extensive experience in managing mountain properties is an ideal fit for Sky Lodge. We have highlighted below our salient key competencies and the reasons we humbly believe support the case for Gemstone being the ideal choice:

1. **Mountain Hotel and Resort Experience:**
   Gemstone operates or has operated hotels and resorts in Breckenridge, Winter Park, Deer Valley, Lake Placid, Lake Arrowhead, and Lake Tahoe. We are experts at maximizing revenue and operating profit while delivering a memorable guest experience in high alpine environments. Mountain properties have distinct challenges and opportunities, and our experience allows us to bypass the learning curve and be effective immediately.

   Gemstone's depth of experience in managing HOAs and homeowner relations will benefit the project. We are prepared to transition The Sky Lodge in a seamless manner that minimizes transition cost and mitigates any guest and employee impact. Our accounting and finance team are knowledgeable and proficient at producing the required financial statements and are willing to create any custom schedules or reporting required by ownership.

   The choice to headquarter our company in Park City reflects that we are intimately connected to and passionate about the mountain lifestyle and all that it offers.

2. **Market Knowledge:**
   We understand the nuances of the Utah ski market, and understand the feeder markets.

   We have experience in developing strong relationships and collaborating with ski area operators, central reservations, concierges and other local sources that refer or influence business.

gemstoneresorts.com

Gemstone Hotels & Resorts, LLC
1912 Sidewinder Drive, Suite 104
Park City, UT 84060




We understand how to market to create awareness and drive trial leading to loyal usage among locals, whose business (F&B and spa) is particularly valuable during shoulder seasons.

We are prepared to leverage our established national and local relationships with vendors and others who can influence business to the resort. Our team understands the local and regional demands, and has the ability to meet the challenges of staffing, promoting and operating your project.

3. **Understanding and Managing Seasonality:**
Park City is a highly seasonal destination. Yield management through peak ski season and summer outdoor recreation season is critical to success.

Experience has taught us that creatively and aggressively approaching the challenging shoulder seasons of fall and spring is necessary to effectively contribute to the margin and offset the structurally high fixed costs of mountain properties.

We approach the marketing of the property by market segment and by season, (recognizing that the targeted market segments change by season) in order to maximize overall hotel revenues.

Additionally, we utilize sophisticated models to forecast labor needs to business volume, measure labor productivity and control labor expenses, all of which are critical to successful flow-through in these labor-intensive seasonal operations.

4. **Real Estate Sales and Marketing Support:**
Gemstone currently manages the Whiteface Lodge in Lake Placid, and asset manages Calistoga Ranch, both high-end, luxury fractionals.

We are ever mindful of the interrelationships between rental income and property values, balancing HOA services and assessments, and

gemstoneresorts.com




the importance of delivering a resort hotel experience that supports the real estate sales efforts.

We have in-depth experience developing and evaluating marketing plans for various real estate components of resorts and hotels. Our Internet marketing preferred partner, gCommerce, through their Real Estate division, plays a doubly important role in managed properties with sophisticated real estate marketing and reporting components. The gCommerce Real Estate marketing services (proposed in Exhibit B) are not meant to replace your existing efforts in marketing the remaining real estate. Instead, they are intended to augment and support your real estate sales efforts.

From an operator's perspective, we are sensitive to the needs of the sales team. As an example, we work closely with the sales team to ensure their "show units" are flawless, their site tours are well orchestrated and the experience of prospective buyers at the hotel supports and encourages real estate sales. We are well versed in what the real estate sales team can say and cannot say about operations and rental programs, and are expert in "filling in the blanks".

Our experience in managing, working with and understanding resorts with real estate components starts with Gemstone's first project in 1994, and continued with involvement in 14 projects since that time.

5. **Financial Analysis:**
The following are examples of the types of financial analysis we would anticipate performing (utilizing in-house resources) on your behalf:
   - Five-year operating pro forma – in-depth review of current pro forma for accuracy;
   - Detailed HOA budget that is zero-based, thereby establishing detailed baseline assumptions;
   - Replacement reserve model to forecast necessary capital reserves by determining major asset components (such as

gemstoneresorts.com




roofs), their useful life, and factoring in inflation and interest assumptions.

6. **Owner Alignment:**
We purposefully align our interests with those of the owner. As mentioned previously, we specialize in managing independent assets thereby eliminating any conflicting brand agendas and focusing our efforts on the success of the individual asset. Our singular focus remains on the hotel and meeting the owner's goals.

7. **Homeowner Association Management and Homeowner Relations**:
Gemstone started in Breckenridge Colorado operation one of the largest homeowner associations in the State, and also one of the largest and most complex rental programs as well. We grew from managing one association to having 13 at one time. Gemstone has an expert on staff that focuses on resort real estate contracts, maps and decs, rental programs, association budgets, association management and homeowner relations. We currently operate two 5 star properties with real estate components as part of our overall portfolio.

8. **Food and Beverage Expertise:**
Gemstone has continually used food and beverage as a major positioning element for our projects. Moreover, the experience is provided at profit margins that are above industry standards. That expertise would be applied to the current opportunity, which we think has substantial upside. When you add the fact that Gemstone is headquartered a mile from the project, that the Gemstone team lives in town and that they are all users of the food and beverage marketplace -- the advantages become even more substantial. The knowledge we naturally have of the marketplace, how locals behave and what they react to would be fully applied to this asset and its multiple outlets.

9. **Exchange Network Flexibility:**
Once Real Estate sales starts up in earnest, it would be our recommendation to explore all the options available to Sky Lodge

gemstoneresorts.com




for an exchange program. Gemstone has experience with many different clubs, and gCommerce Real Estate has a director who is expert in the alternatives as well. The current option that is made available to prospective buyers is very limiting and does not appear to add value to the sales proposition. Gemstone has the flexibility to review all options (from destination clubs to exchange networks and other types of affiliations as well) and determine what is the best fit. Gemstone has no conflicts of interest in determining which direction would be best for the project.

10. **Spa Experience:**
Gemstone has managed and overseen world class spas from coast to coast, ranging in size from 5,000 square feet to 17,000 square feet. These spas have not only been recognized with National and International awards, but also have all been extremely profitable, as well, at varying revenue levels.

11. **Location:**
Gemstone has been headquartered in Park City since 2002. Our Prospector's Square location is minutes from the property. We have 48 people in our office including our sister company gCommerce Solutions (who would be the Internet marketing support for the property). Our company's most senior talent as well as the departmental experts would obviously be in a position to support the property's needs in a manner that no other management company could match.



gemstoneresorts.com




## Jeff McIntyre – Principal

Jeff has been a leader in the hospitality industry for over 28 years. Regarded as one of the best bottom line operators in the business, Jeff is known for creating unique and tailored points-of-difference at each hotel or resort allowing each property to achieve market share advantages.

Jeff served as a Director of TBA Entertainment, Inc. and as President of their Resort Division from 1997 through 1998. The acquisition and development of The Village at Breckenridge Resort was the focus of TBA during this period. Jeff was located at The Village with partner Mark van Hartesvelt from 1994 through 1998, overseeing the complete financial turnaround of the resort as well as the development and approval of the most complex master plan in the town of Breckenridge's history.

From 1987 through 1994, Jeff was the Senior Vice President of Operations for Guest Quarters Suite Hotels and Doubletree Hotel Corporation. Responsible for 115 hotels, Jeff orchestrated the merging of the two companies and the consolidation of the corporate office. During Jeff's tenure, the portfolio achieved record improvements in profit and quality scores and positioned itself as a leader in the hospitality industry.

From 1985 through 1987 Jeff held the position of Vice President with Radisson Hotels. He was responsible for 25 managed properties and 20 franchised hotels and resorts.

From 1974 until 1985, Jeff served The Sheraton Corporation in various capacities, including Director of Rooms and Reservations for North America and General Manager of Sheraton's number one occupancy and profit producing property in San Francisco, California.

A Certified Hotel Administrator, Jeff holds a B.S. in Hotel and Restaurant Administration from Oklahoma State University and graduated from the University of Minnesota's Senior Executive Management program. Jeff has been a visiting professor and lecturer at the University of Maryland, The University of San Francisco, Golden State University, Ft. Lewis University, The University of Colorado and Oklahoma State University. Jeff serves on the Board of Directors of Oklahoma State University.



Gemstone Hotels & Resorts, LLC
1912 Sidewinder Drive, Suite 104
Park City, UT 84060




## Thomas Prins – Principal

Thomas has over 20 years experience in the hospitality business and is regarded as one of the top deal makers and asset managers in the hotel industry.

Prior to becoming a Principal with Gemstone Resorts International, Thomas served as Chief Executive Officer of Hospitality Investment Counselors. Thomas built that company into one of the top investment banking firms and asset managers in the country arranging in excess of $1 billion of hospitality transactions including debt financing, equity placement, and individual and portfolio sales. Thomas was the Asset Manager for a hotel portfolio valued in excess of $300 million. Thomas, along with his capital partner Hospitality Worldwide Services as well as with joint venture partners such as Apollo Real Estate Advisors LP and ING Realty Partners LP, acquired a number of hotels including a 460 room Radisson Hotel at O'Hare Airport, the 700 room Warwick Hotel in Philadelphia, PA, a 200 room Radisson in Richmond, VA, and a 285 room Days Inn in Tampa, FL. In concert with Prime Hospitality, Thomas co-developed eight AmeriSuites in the Western US including, Colorado, Arizona and California. Thomas was also a Principal in the Village at Breckenridge, a mixed use project that included 450 hotel rooms and condos as well as retail and restaurants located at the base of the Breckenridge ski area.

Prior to founding Hospitality Investment Counselors, Thomas served as Manager of the National Hospitality Practice of Kenneth Leventhal & Company in Los Angeles. In that position, he directed numerous national and international consulting assignments, with an emphasis on complex, mixed use hotel and resort projects and workouts on financially troubled projects. Prior to Kenneth Leventhal & Company, Thomas was a Senior Consultant for Pannell Kerr Forster in New York City.

Thomas is a member of the Cornell Hotel Society, the Cornell Real Estate Council, New York Hospitality Council, and the Urban Land Institute. He is a licensed real estate broker in the State of New York. In addition, Thomas sits on the Board of the Frisbee Foundation and the Connecticut Chapter of the Leukemia and Lymphoma Society. Thomas holds a Bachelor of Science from Cornell University.