Annette Jarvis (1649)
Peggy Hunt (6060)
Benjamin J. Kotter (9592)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
       hunt.peggy@dorsey.com
       kotter.benjamin@dorsey.com

Richard W. Havel (10759)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
Email: rhavel@sidley.com

*Attorneys for WestLB, AG*

Kenneth L. Cannon II (3705)
Steven J. McCardell (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, Utah 84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Email: kcannon@djplaw.com
       smccardell@djplaw.com

Michael V. Blumenthal
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-400
Facsimile: (212) 223-4134
Email: mblumenthal@crowell.com

*Attorneys for Debtors and Debtors
in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| EASY STREET HOLDING, LLC, *et al.*, ) | Bankr. Case No. 09-29905 |
| ) | Jointly Administered with Bankr. Case Nos. |
| Debtors. ) | 09-29907 and 09-29908 |
| ) | |
| Address:  201 Heber Avenue ) | Chapter 11 |
|           Park City, UT 84060 ) | |
| ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: ) | |
| 35-2183713 (Easy Street Holding, LLC), ) | **[FILED ELECTRONICALLY]** |
| 20-4502979 (Easy Street Partners, LLC), and ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) ) | |

**JOINT MOTION TO APPROVE AMENDMENTS TO STIPULATION AUTHORIZING
USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND GRANTING
ADDITIONAL ADEQUATE PROTECTION TO WESTLB, AG**

1

The Debtors, Easy Street Holding, LLC ("Easy Street"), Easy Street Partners, LLC and Easy Street Mezzanine, LLC (collectively, the "Debtors"), by and through their undersigned counsel, and WestLB AG ("WestLB"), a secured creditor, by and through its undersigned counsel (collectively, the "Parties"), respectfully request that the Court enter an Order for an Order approving a consensual amendments (the "Amendments") to the Stipulation Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG [Docket No. 84], as amended by that certain Amendment to Stipulation Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG – Amended Exhibit C (Bank Accounts) filed on or about October 13, 2009 [Docket No. 91] (as amended, the "Stipulation"), and as further modified and approved by this Court's Order on Stipulation Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG [Docket No. 95] (the "Cash Collateral Order"). Filed concurrently with and in support of this Motion is the Declaration of William Shoaf, Co-Manager of the Debtors (the "Shoaf Declaration"). In further support of this Motion, the Parties respectfully represent as follows:

## BACKGROUND

### General

1. On September 14, 2009 (the "Petition Date"), the Debtors commenced bankruptcy cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On September 15, 2009, the Court entered an order directing the procedural consolidation and joint administration of the Chapter 11 Cases [Docket No. 8].

2

3. On or about October 2, 2009, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 73].

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

**The Cash Collateral Motion and Jacobsen Objection**

6. Easy Street owns and operates certain real property and improvements and related facilities in Park City, Utah, commonly known as the "Sky Lodge Private Residence Club and Hotel" (the "Sky Lodge").

7. One day after the Petition Date, on September 15, 2009, Easy Street filed a "Motion of Easy Street Partners, LLC for Interim and Final Orders: (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to West LB, AG, and (ii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)" [Docket No. 9] (the "Cash Collateral Motion"). As set forth more fully in the Cash Collateral Motion, which is incorporated herein by reference, on March 30, 2006, Easy Street entered into a loan (the "WestLB Senior Loan") and Security Agreement (collectively, the "Senior Loan Agreement"), for the initial amount of $36,779,224 with WestLB to purchase and develop a Condominium Hotel Mixed Use project at 201 Heber Avenue, Park City, Utah 84060. The WestLB Senior Loan is secured by, among other things, security interests evidenced by the Construction and Interim Loan Deed of Trust with Security Agreement, Assignment of Leases and Rents and Fixture Filing, and a UCC Financing Statement, each filed in the Summit County, Recorder's Office, State of Utah.

8. On September 16, 2009, Jacobsen National Group, Inc. d/b/a Jacobsen Construction ("Jacobsen"), a party with Easy Street under a "Construction Contract," filed a limited Objection to Easy Street's Cash Collateral Motion. See [Docket No. 33]. Jacobsen maintained that is has a $1.7 million claim against Easy Street, secured by a mechanics' lien, and that funds in Easy Street's Real Estate Sales Account in that amount were subject to a statutory and/or equitable constructive trust in its favor. Jacobsen argued that the Cash Collateral Motion was inadequate because it did not afford Jacobsen with adequate protection to the extent that the Debtors proposed to use the $1.7 million allegedly held in constructive trust.

9. An interim hearing on the Cash Collateral Motion occurred on September 16, 2009, and on or about that date, Easy Street and WestLB, in its capacity as agent under the Senior Loan Agreement agreed upon the terms of a stipulated order, permitting Easy Street's interim use of WestLB's Cash Collateral pending a final hearing. See Stipulated Interim Order on Motion of Easy Street Partners, LLC for Interim and Final Orders (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG, and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) [Docket No. 39]. To avoid the procedural delay presented by Jacobsen's Objection to the Cash Collateral Motion, the Stipulated Interim Order stated that Easy Street would maintain at least $1.7 million in certain of its accounts pending further order of the Court. On September 17, 2009, the Court entered an "Interim Cash Collateral Stipulated Order"[Docket No. 43], and scheduled a final hearing on Easy Street's Cash Collateral Motion for October 13, 2009.

10. On or about October 8, 2009, Jacobsen filed a further limited Objection to Easy Street's Cash Collateral Motion, again requesting that any final order on the use of Cash

4

Collateral require the Debtors to maintain $1.7 million in designated accounts pending further order of the Court. [*See* Docket No. 81].

### The Stipulation and Cash Collateral Order

11. On or about October 9, 2009, the Parties executed and filed with the Court a stipulation, defined above as the "Stipulation," for Easy Street's use of Cash Collateral, which included *inter alia* a provision designed to address Jacobsen's Objection on an interim basis. A true and correct copy of the Stipulation, including a subsequently-filed amendment substituting Exhibit C of the Stipulation, is attached hereto as Exhibit A.[1]

12. An Order approving the Stipulation was entered by the Court on October 14, 2009, which is defined above as the "Cash Collateral Order." A true and correct copy of the Cash Collateral Order is attached hereto as Exhibit B.

### The Amendments

13. Since the entry of the Cash Collateral Order, the Parties have agreed to limited, primarily administrative, modifications to the Stipulation to address certain issues that have arisen in its implementation. These modifications have been memorialized in the Amendments, a copy of which is attached hereto as Exhibit C. The Amendments are subject to approval by this Court, and the Parties thus seek approval of the Amendments by the present Motion. Redlined comparisons of the Amendments against the related portions of the original Stipulation (as amended by the Cash Collateral Order) are attached hereto as Exhibit D.

14. The proposed modifications to the Court-approved Stipulation generally fall into the following three categories:

---

[1] Two limited objections filed by the Committee on October 7 and 8 were consensually resolved through the Stipulation, as approved by the Cash Collateral Order. *See* [Docket Nos. 76 & 82].

(a) <u>Administrative Amendments Related to Cash Management Structure.</u> The Stipulation provides for certain Bank Accounts to be held by Easy Street as a debtor in possession. The Parties have changed the structure of Easy Street's Bank Accounts, which are governed by control agreements in favor of WestLB and in which WestLB holds perfected security interests. The Parties have not yet determined the banking institution which will ultimately hold these accounts; however, upon final decision, the Parties will submit a further amended Exhibit C to the Stipulation to accurately reflect the location of Easy Street's Bank Accounts. The Parties have also clarified that, notwithstanding the accounts into which funds are directed, WestLB is not obligated to preserve funds held in any particular account for any designated purpose.

(b) <u>Amendment to Increase Adequate Protection Payments.</u> The Stipulation requires Easy Street to pay WestLB $34,000 per month as part of the adequate protection being afforded to WestLB. The Parties have agreed that WestLB is entitled to further adequate protection payments during the course of these Chapter 11 Cases. The Amendments provides that in addition to the current $34,000 monthly payment, Easy Street will pay further adequate protection to WestLB, upon its written request, sums up to the amounts listed in the "[WLB Fees & Costs]" line item of the Budget attached to the Amendments as <u>Annex I</u>. Easy Street has sufficient cash flow in the coming months to make the increased payments of adequate protection to WestLB. <u>See</u> Shoaf Declaration ¶ 9.

(c) <u>Amendments Related to $1.7 Million Held in Accounts.</u> Under the Amendments, Easy Street will no longer be required to maintain at least $1.7 million in

6

its accounts as it had previously agreed as part of the Stipulation. As noted above, Easy Street and WestLB voluntarily obligated themselves to maintain $1.7 million in the accounts in order to avoid a dispute with Jacobson so as to swiftly resolve its ability to use other Cash Collateral and thereby maintain the value of the Debtors' estates. In so doing, however, neither Easy Street nor WestLB acknowledged the validity of Jacobsen's alleged trust claim and there was never a binding written agreement to pay Jacobsen or any other mechanics' lien claimant from the Real Estate Sales Account. Shoaf Declaration ¶ 8. Jacobsen has not established its claim to date and upon further analysis, Easy Street and WestLB have concluded that Jacobson's allegations related to the existence of a trust fund claim are without merit. Because restricting Easy Street's ability to use $1.7 million of Cash Collateral has no legal basis, the Parties have amended the Stipulation to remove this restriction.

## ARGUMENT

15. As discussed in greater detail below, the Parties hereby request that the Court approve the consensual Amendments to the Stipulation. The Amendments are in the best interests of the Debtors' estates.

16. <u>Administrative Amendments Relating to Cash Management Structure.</u> After operating under the Stipulation for over a month, Easy Street and WestLB have concluded that it is necessary to make certain administrative amendments to the Stipulation to simplify Easy Street's cash management structure. Thus, as summarized in Paragraph 15(a) above and as set forth in greater detail in the attached Amendments, the structure of Easy Street's Bank Accounts will be changed. WestLB supports this decision, provided that it has final approval of any

control agreement if and when Easy Street's accounts are moved to another bank. The Parties have further concluded that, out of an abundance of caution, the Stipulation should further clarify that all monies held in the Bank Accounts are Cash Collateral for WestLB, and that WestLB has no obligation to Easy Street or any third parties to preserve funds in any given Bank Account for a particular purpose.

17.     <u>Amendment to Increase Adequate Protection Payments.</u> As discussed above in Paragraph 15(b) above and Paragraphs 19 and 20 below and as set forth in greater detail in the attached Amendment, the Parties have also determined that it is both feasible for and appropriate that Easy Street increase its adequate protection payments to WestLB. The maximum amount of increase in adequate protection payments has been agreed upon based on WestLB's approximate monthly attorneys' fees and costs, but the Parties have reserved their rights with respect to (i) how the funds paid to WestLB will ultimately be applied to the amounts it is owed, and (ii) the amount of WestLB's claim for postpetition attorneys' fees and costs.

18.     The adequate protection payments as proposed in the Amendment are feasible based on Easy Street's current account balances and the increased income it projects during the winter months. As of November 23, 2009, the Debtors had a cash balance in the Lockbox Account of $153,268. <u>See</u> Shoaf Declaration ¶ 9.

19.     Furthermore, the increase in the amount of monthly adequate protection payments is appropriate in light of the amount of WestLB's valid and undisputed secured claim (subject to the rights of the Official Committee of Unsecured Creditors pursuant to the Stipulation) and its continued agreement to allow the use of its collateral, including its Cash Collateral. Pursuant to the Stipulation, WestLB holds an undisputed secured claim against Easy Street, which as of the

Petition Date, was in an amount of no less than $15,164,331.17. See Stipulation ¶ 11. WestLB also has a perfected first priority lien on all of Easy Street's Cash Collateral. See id. ¶ 9. Therefore, WestLB has a claim to the funds representing the increased adequate protection payments.

20. <u>Amendments Related to $1.7 Million Held in Accounts.</u> As set forth in Paragraph 15(c) above, under the Amendments Easy Street will no longer be required to maintain $1.7 million in its accounts as had been required under the Stipulation. Easy Street and WestLB had agreed to hold $1.7 million in the accounts early in the case in response to, but not with any acknowledgement of merit of, Jacobsen's allegation that $1.7 million is subject to a statutory trust under Utah Code Ann. § 13-8-5 and/or an equitable constructive trust in Jacobsen's favor. Upon further investigation and analysis, however, Easy Street and WestLB have determined that there is no need to reserve the $1.7 million because Jacobsen has failed to establish its claim. Moreover, as discussed below, any arguments that Jacobsen may make are without merit.

21. Jacobsen's objections to the use of Cash Collateral are an impermissible attempt by Jacobsen to restrict the use of $1.7 million of the Debtors' Cash Collateral without any adjudication by the Court that Jacobsen has any interest in the funds contained in the Real Estate Sale Accounts. Jacobsen first filed its limited Objection on September 16, 2009. To this date, however, Jacobsen has yet to take any action to establish its claim.

22. Jacobsen's claim that the funds held in the Real Estate Sale Accounts are held in statutory trust for the benefit of Jacobsen pursuant to Utah Code Ann. § 13-8-5 is not supported by the facts of the case. Section 13-8-5 deals exclusively with retention proceeds, which are defined as "monies earned by a contractor or subcontractor but retained by the owner …

9

pursuant to the terms of a construction contract to guarantee payment or performance by the contractor or subcontractor of the construction contract." *Id.* at § 13-8-5(1)(h). The funds in the Real Estate Sale Accounts are not "retention proceeds" under this Section because they have not been retained by the Debtors to guarantee Jacobsen's payment or performance. Indeed, the funds in the Real Estate Sale Accounts were derived exclusively from the sale of fractional ownerships in units at the Sky Lodge. Furthermore, to the extent that Jacobsen claims that Section 13-8-5 is applicable to WestLB and funds over which WestLB exerts control, that assertion is simply not supportable. See Utah Code Ann. § 13-8-5(2)(b) ("This section does not apply to a construction lender.").

23. Jacobsen's claim that the $1.7 million is held in a constructive trust pursuant to Paragraph 11.1.1 of the Construction Agreement likewise fails because the express terms of the Construction Agreement make it applicable only to "monies held for retention by the Owner." Construction Agreement ¶ 11.1.1. As set forth above, the funds in the Real Estate Sale Accounts were not held for retention by Easy Street.

24. Jacobsen's argument that the $1.7 million is subject to a constructive trust in Jacobsen's favor because of an alleged agreement that those funds would be used to pay Jacobsen and other contractors and professionals is also without merit. While there may have been some preliminary discussions, there was never any binding written agreement that the funds in the Real Estate Sale Accounts would be used to pay Jacobsen's claims or any other creditor's claims against the Debtors. See Shoaf Declaration ¶ 8. The discussion of that possibility and even the alleged requests by the Debtor to WestLB to use those funds to pay Jacobsen are simply insufficient – without WestLB's agreement – to establish a constructive trust in Jacobsen's favor.

10

25. Finally, there is no basis for the existence of a constructive trust under Utah Law. Courts "recognize a constructive trust as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property than can be traced to the wrongful behavior." <u>Wilcox v. Anchor Wate Co.</u>, 164 P.3d 353, 362 (Utah 2007). As set forth below, Jacobsen has not and cannot establish any wrongful act nor meet the specific elements necessary to support unjust enrichment under Utah law. Accordingly, Jacobsen is not entitled to a constructive trust on the $1.7 Million and the Amendment to the requirement in the Stipulation that these funds be held is appropriate.

26. In order for a constructive trust to arise, there must first have been a wrongful act. "To establish a wrongful act under Utah law, an entity must have obviously received funds by mistake or participated in active or egregious misconduct." <u>Wilcox</u>, 164 P.3d at 362 (other citations omitted). In this case, no wrongful act has been perpetrated by Easy Street or WestLB against Jacobsen. It is undisputed that WestLB holds a properly perfected first priority lien on all of Easy Street's Cash Collateral and WestLB's efforts to maintain that security cannot be considered a "wrongful act" giving rise to a constructive trust claim.

27. To recover on a claim for unjust enrichment, Jacobsen must establish three elements:

> (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

<u>Richards v. Brown</u>, 642 Utah Adv. Rep. 25, ¶ 28 (Utah Ct. App. 2009) (citing <u>Jeff v. Stubbs</u>, 970 P.2d 1234, 1248 (Utah 1998)). "It is not enough that a benefit was conferred on the defendant, rather, the enrichment to the defendant must be unjust in that the defendant received a true

windfall or 'something for nothing.'" <u>Emergency Physicians Integrated Care v. Salt Lake County</u>, 167 P.3d 1080, 1086 (Utah 2007).

28. As a matter of law, WestLB's perfected security interest in the Real Estate Sale Accounts defeats Jacobsen's constructive trust claims. Jacobsen is an unsecured creditor with respect to the funds in the Real Estate Sale Accounts.[2] Jacobsen cannot turn its unsecured claim against the funds in the Real Estate Sale Accounts into a super-priority claim by asserting constructive trust. Jacobsen's claim to those funds cannot prevail over WestLB's perfected security interest therein. See <u>Evans Prods Co. v. Jorgensen</u>, 41 P.2d 978, 983 (Ore. 1966) (explaining that "[t]he purpose and effectiveness of the UCC would be substantially impaired if interests created in compliance with UCC procedures could be defeated by application of the equitable doctrine of unjust enrichment.").

29. Allowing WestLB to retain its perfected Article 9 security interest in the Real Estate Sale Accounts does not unjustly enrich WestLB. In <u>SMP Sales Management, Inc. v. Fleet Credit Corp.</u>, 960 F.2d 557, 558 (5th Cir. 1992), Wonderline, Inc. ("Wonderline") breached its contract with SMP Sales Management, Inc. ("SMP") and SMP sued Wonderline's secured lender, Fleet Credit Corp. ("Fleet") on theories of interference with contract and unjust enrichment. The Court of Appeals upheld the district court and held that:

> There was no contractual relationship between Fleet and Wonderline and, as a secured creditor of Wonderline, Fleet would be entitled to be paid first. <u>Allowing unsecured creditors to recover on a theory of unjust enrichment would render the secured creditor status useless.</u> The secured creditor is entitled to be paid first. Here, Fleet loaned $6,500,000 to Wonderline and received in return on

---

[2] Jacobsen's mechanic's lien, if any, only attaches to "the property upon or concerning which [it has] rendered service, performed labor, or furnished or rented materials or equipment...." Utah Code Ann. § 38-1-3.

12

$2,500,000. <u>Fleet was not unjustly enriched, and this is not a case in which equity would apply.</u> There has been no enrichment of Fleet in this circumstance.

Id. at 560 (emphasis added).

30. Similarly, WestLB loaned millions of dollars to Easy Street and the current principal balance, as of the Petition Date, which remains owing to WestLB is at least $15,164,331.17. There is nothing unjust in allowing WestLB to retain its perfected security interest in the full amount of the funds in the Real Estate Sale Accounts. Because Jacobsen cannot establish unjust enrichment under Utah law, a required element to a constructive trust claim, Jacobsen's assertion that it is entitled to a constructive trust in the Real Estate Sale Accounts must be rejected.

## CONCLUSION

**WHEREFORE**, for all of the reasons stated herein, WestLB and the Debtors hereby jointly request this Court grant the Motion, approve the Amendments to the Stipulation, enter an Order substantially similar to the proposed order attached as <u>Exhibit E</u> hereto and grant any and other relief it deems good and proper.

DATED this 25th day of November, 2009.

| | |
|---|---|
| /s/ Benjamin J. Kotter | /s/ Kenneth L. Cannon II |
| Annette Jarvis | Kenneth L. Cannon II |
| Peggy Hunt | Steven J. McCardell |
| Benjamin J. Kotter | DURHAM JONES & PINEGAR, P.C. |
| DORSEY & WHITNEY LLP | and |
| | |
| and | Michael V. Blumenthal |
| | CROWELL & MORING LLP |
| Richard W. Havel | |
| SIDLEY AUSTIN LLP | *Attorneys for Debtors and Debtors in Possession* |
| | |
| *Attorneys for WestLB, AG* | |

13