# EXHIBIT B

# Guaranty and Non-Competition Agreement

1.  **Parties and Definitions.** This Guaranty ("**Guaranty**") is made as of March 30, 2006, by David L. Wickline with a principal place of business of 4780 Winchester Court, Park City, Utah 84098 and William Shoaf with a principal place of business of 4780 Winchester Court, Park City, Utah 84098 (each, a "**Guarantor**" and collectively, jointly and severally, the "**Guarantors**"). Pursuant to the Loan Agreement (as amended or supplemented from time to time, the "**Loan Agreement**") dated as of the date hereof, among Easy Street Mezzanine LLC, a Delaware limited liability company (the "**Borrower**"), and BayNorth Realty Fund VI, Limited Partnership (the "**Lender**"), the Lender has agreed to make a loan (the "**Loan**") to the Borrower evidenced by a certain Promissory Note made by the Borrower to the Lender in the aggregate original principal amount of Eleven Million Two Hundred Fifty Thousand Dollars ($11,250,000) (together with all replacements, renewals and substitutions thereof, the "**Note**"). The Guarantors have executed and delivered this Guaranty for the purpose of inducing the Lender to make the Loan. Except as otherwise indicated, capitalized terms used herein without definition shall have the respective meanings indicated in the Loan Agreement.

2.  **Limitations on Recourse.** Except for recourse to assets of a Guarantor which serve as collateral for obligations under the Loan Documents, and except as provided in Section 3, there shall be no recourse to any Guarantor under this Guaranty unless and until a Limited Recourse Event or a Full Recourse Event shall have occurred. Upon the occurrence of a Limited Recourse Event, unless and until a Full Recourse Event has occurred, and except as provided in Section 3, the liability of the Guarantors under this Guaranty shall be limited to any loss, damage, cost, expense, liability, claim or other obligation suffered or incurred by the Lender arising out of or in connection with such Limited Recourse Event, including, without limitation, attorneys' fees and costs reasonably incurred in connection therewith or in enforcement of this Guaranty as a result thereof. Upon the occurrence of a Full Recourse Event, each Guarantor shall be jointly and severally liable for all of the Obligations of the Borrower under the Loan Documents, but in no event in an amount in excess of the then outstanding balance (including all accrued and unpaid interest) of the Loan.

"**Limited Recourse Event**" means (i) any unintentional distribution by the Borrower of any of its assets to any holder of an equity interest in the Borrower or any Related Party of the Borrower in violation of any Loan Document, (ii) any unintentional payment by the Borrower to any Related Party of the Borrower in violation of any Loan Document, (iii) any unintentional misapplication of funds of the Borrower in violation of any Loan Document, (iv) any change by the Borrower or any other entity interests which are pledged under the Pledge Agreement of its name, identity or structure so as to make any financing statement filed to perfect a security interest granted under the Pledge Agreement misleading if the Borrower fails timely to cause new financing statements sufficient to maintain the perfection of such security interest to be filed in all required filing offices, (v) any other action which causes any security interest granted under the Pledge Agreement to cease to be perfected if the Borrower fails to take such action as is required to maintain the perfection of such security interest, and (vi) any change by any Pledgor under the Pledge Agreement which causes any Pledgor to become a foreign corporation, foreign partnership, foreign trust or foreign person, as such terms are defined in Section 1445 of the Internal Revenue Code of 1986, as amended.

1

"**Full Recourse Event**" means the occurrence of any of the following:

(a) fraud or intentional material misrepresentation by the Borrower or any Principal in or in connection with any Loan Document;

(b) intentional violation of restrictions on payments or distribution of assets of the Borrower, violation of Sections 3.16 ("Distributions") or 3.31 ("Casualties and Takings") of the Loan Agreement, or any other intentional misapplication of any assets of the Borrower, which payments or assets are not returned to the Borrower in full within five (5) business days after receipt of written notice thereof from the Lender;

(c) any other action taken by the Borrower, any Guarantor or any Principal in bad faith with intent to interfere with the rights of the Lender not cured within ten (10) business days after receipt of written notice thereof from the Lender;

(d) except as expressly permitted by the Loan Documents or otherwise approved by the Lender, and unless not fully and effectively rescinded or terminated at Borrower's sole cost and expense without any material adverse impact on the Improvements or the construction thereof or the Lender within ten (10) business days after receipt of written notice thereof from the Lender (i) the incurrence or amendment of any indebtedness of the Borrower or any entity in which the Borrower holds an interest for borrowed money (including without limitation lease financing) whether as primary obligor, guarantor or otherwise, (ii) any transfer, whether absolutely or as security, by the Borrower or any entity in which the Borrower holds an interest of any of its assets other than as permitted by the Loan Agreement, (iii) the acquisition by anyone other than the Borrower or the Subsidiary Owner of any of the Property or the personal property used in connection with the Property, other than the sale of Units in accordance with the provisions of the Loan Agreement, personal property permitted to be leased by the Borrower or the Subsidiary Owner pursuant to Section 3.23 ("Ownership of Property and Prohibition of Certain Liens") of the Loan Agreement, (iv) any amendment of the Senior Loan Documents without the consent of the Lender, (v) any material changes in the Approvals initiated or consented to by the Borrower or any Related Party, (vi) entering into by the Borrower or the Subsidiary Owner of, or making any changes in, any Material Contract, (vii) the entering into by the Borrower or the Subsidiary Owner of any contract with, or the purchasing of goods or services from, or otherwise entering into any transaction with any Principal, or any Related Party, or any person which, in connection with such transaction, has agreed to make any payment or provide any other consideration to any Related Party, or (viii) entering into any lease of any of the Property.

(e) Except as otherwise permitted under the Loan Documents, if the Borrower, the Subsidiary Owner or any Pledgor under the Pledge Agreement, without prior written consent of the Lender or (i) makes or enters into an assignment, trust, mortgage, composition, reorganization or other similar scheme or arrangement with or for the benefit of creditors; (ii) applies for, consents in writing to, or solicits or encourages, any appointment of any receiver, trustee, liquidator, custodian or similar official for it or for all or any part of the Property, the collateral granted to Lender as security for the Loan or any other assets of the Borrower or the Subsidiary Owner;

2

(iii) commences, seeks relief under, consents in writing to, or solicits or encourages others to commence, any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation, or similar proceeding relating to it, all or any part of its debt or to all or any part of the collateral granted to the Lender as security for the Loan or any other assets of the Borrower or the Subsidiary Owner (collectively, an "Insolvency Proceeding"); or (iv) fails, after receipt of written request from the Lender, to contest in good faith the commencement by one or more third parties of an Insolvency Proceeding;

(f) the Borrower, the Subsidiary Owner, any Guarantor or any Pledgor under the Pledge Agreement, or any Affiliate of Borrower or of any Guarantor, on any basis other than a good faith dispute as to whether an Event of Default has occurred, opposes or defends against the exercise by the Lender of any of its or their remedies or material rights (as determined by the Lender in its reasonable discretion) under the Loan Documents including, without limitation, appointment of a receiver upon the occurrence of an Event of Default, or at any time challenges the enforceability of any of the Loan Documents, including without implied limitation, enforceability of the jurisdiction, venue, choice of law and forum provisions of the Loan Documents, or asserts claims against the Lender with respect thereto or in connection therewith;

(g) the filing by any Pledgor under Pledge Agreement or any Affiliate thereof with any court of a complaint, motion or other request for a determination that the security interest granted in the Pledge Agreement is ineffective, invalid or otherwise inoperative, or is subordinate to any other claim or interest;

(h) if the Borrower or the Subsidiary Owner, without the Lender's prior written consent, issues additional membership and/or management interests in the Borrower or the Subsidiary Owner or any entity which holds a direct or indirect interest in the Borrower except as expressly permitted by the Loan Documents.

3. Other Guarantor Obligations. Notwithstanding the limitations in Section 2, each Guarantor shall be jointly and severally liable for (i) expenses of collection provided for in Section 14 and expenses incurred by the Lender pursuant to Section 5.8 of the Loan Agreement and (ii) any payments required to be made to Lender pursuant to the last paragraph of Section 3.4 of the Note and the last paragraph of Section 3.5 of the Note (i.e. numbered items 1 and 2 in each of such last paragraphs of Section 3.4 and 3.5 of the Note).

4. Guaranty. Subject to the provisions of Section 2 and Section 3 above, each Guarantor hereby irrevocably and unconditionally guaranties to the Lender, prompt and full payment and performance when due of all of the Borrower's present and future indebtedness and obligations to the Lender under the Loan Documents, including, without limitation, all principal and interest thereunder. All such indebtedness and obligations are referred to in this Guaranty as the "**Obligations**." Subject to the provisions of Section 2 and Section 3 above, each Guarantor's liability under this Guaranty is primary, direct and unconditional and may be enforced in full or in part, from time to time, after nonpayment or nonperformance by the Borrower of any of the Obligations beyond the expiration of any grace or cure period provided with respect to such nonpayment or nonperformance in the applicable Loan Document, in each case without requiring

3

the Lender to resort to any other person or entity, including, without limitation, the Borrower, or any other right, remedy or collateral, whether held as collateral for this Guaranty or any of the Obligations, except as may be expressly provided otherwise in this Guaranty or any of the other Loan Documents.

5. <u>Absolute Guaranty</u>. This Guaranty is a guaranty of payment and performance of the Obligations and not of collection only. This Guaranty is a continuing, absolute and unconditional guaranty of the Obligations and shall not be affected by (i) the genuineness, validity, regularity or enforcement of all or any part of the Note, the Obligations or any other Loan Document, (ii) the existence, validity, enforceability, perfection or extent of any collateral for the Obligations, (iii) payment in full of the Loan, unless there remains no possibility of rescission of, or of any obligation to return, all or any portion of such payment under applicable law, (iv) failure by the Lender to advance the full principal amount of the Note (unless Lender is in breach of the Loan Documents for failure to do so), or (v) a cancellation of the availability of the Loan or the inability of the Borrower or any Guarantor to receive any proceeds of the Loan (unless Lender's cancellation is a default of its obligations under the Loan Documents).

6. <u>No Release; Bankruptcy-Related Survival of Guaranty</u>. No Guarantor shall be released by, and each Guarantor hereby waives any claim, counterclaim or defense based on or otherwise involving, any act or thing that would constitute a legal or equitable discharge, including, without limitation, any change in the ownership of the Borrower, the transfer of any assets by the Borrower or any other matter that would constitute a defense available to the Borrower, other than payment and performance in full of the Obligations after expiration of any possibility of rescission of or of any obligation to return all or any portion of such payment or performance for any reason under applicable law. No Guarantor shall be released by any waiver or other act or omission of the Lender, the Lender's failure to proceed promptly or by reason of any action taken or omitted by the Borrower, the Lender or any other party which could alter the liability of any Guarantor. The Lender shall not be obligated to file any claim relating to the Loan or the Obligations in the event that the Borrower or any person liable for obligations of the Borrower becomes the subject of any bankruptcy, insolvency, assignment for the benefit of creditors, arrangement, reorganization, composition, readjustment, liquidation, dissolution or other debtor relief proceeding, or if a receiver, custodian, liquidator, fiscal agent or trustee is appointed for any of them or their assets, in any case, under any federal or state law, whether now existing or hereafter enacted (each, a "**Bankruptcy Event**"), or in the event any of them becomes insolvent or unable to pay its or his debts when due, and the failure of the Lender to so file shall not affect any Guarantor's obligations hereunder. In the event that any payment made or performance rendered by or on behalf of the Borrower with respect to any of the Obligations is rescinded or otherwise must be returned for any reason under applicable law, notwithstanding anything to the contrary contained in this Guaranty or any other Loan Document, each Guarantor shall remain liable hereunder with respect to any such payment or performance as if it had not been made or rendered, and each Guarantor's liability under this Guaranty shall survive termination or release of this Guaranty to the extent of all monies or other obligations due to the Lender under this Section. Subject to the provisions of Section 2, each Guarantor shall indemnify and hold the Lender harmless from and against any and all costs, expenses, liabilities, damages and other losses, including, without limitation, attorneys' fees and disbursements, in connection with or as a result of the assertion of any and all claims for the return of monies or performance, including, without limitation, the proceeds of any collateral, regardless of the basis

4

therefor and regardless of the outcome. Each Guarantor acknowledges that the Lender's making of the Loan to the Borrower and the Lender's dealings with the Borrower at all times prior to satisfaction of the Obligations were done and shall be done in part in reliance on this Guaranty.

7. Liability for Other Obligations. If any Guarantor is or becomes liable for any indebtedness or other obligations owing by the Borrower to the Lender by endorsement or in a manner other than pursuant to this Guaranty, such liability shall not be in any manner impaired, limited or affected by this Guaranty. The rights of the Lender shall be cumulative of any and all other rights that the Lender may ever have against any Guarantor. The exercise by the Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy. Without in any way diminishing the generality of the foregoing, it is specifically understood and agreed that this Guaranty is given by each Guarantor as an additional guaranty to any and all other guaranties heretofore, herewith or hereafter executed and delivered to the Lender by any Guarantor in favor of the Lender relating to indebtedness or other obligations of the Borrower to the Lender, and nothing herein shall ever be deemed to replace or be in lieu of any of such other previous, concurrent or subsequent guaranties, as they may from time to time be amended or supplemented with the Lender's approval.

8. Guarantors' Representations and Warranties and Certain Covenants. Each Guarantor hereby represents and warrants to the Lender and agrees with the Lender as follows:

(a) Each Guarantor has received or will receive, direct or indirect benefit from the Loan;

(b) The execution and delivery of this Guaranty by each Guarantor and the performance of Guarantors' obligations hereunder have been duly authorized by all necessary corporate action (if applicable) and each Guarantor has all necessary power and authority to execute and deliver this Guaranty and to perform Guarantors' obligations hereunder. This Guaranty has been duly executed and delivered by each Guarantor and constitutes the legal, valid and binding obligation of each Guarantor and is fully enforceable against each Guarantor in accordance with its terms, subject to the effect of bankruptcy, insolvency or other similar laws affecting the rights of creditors generally and subject to limitations imposed by general principles of equity. The execution and delivery of this Guaranty or any other Loan Documents executed and delivered by each Guarantor, and the carrying out of the transactions contemplated hereby and thereby, will not conflict with, or result in a breach of, any term of any agreement, order, legal requirement or other matters to or by which each Guarantor is bound;

(c) Any and all balance sheets, net worth statements and other financial data that have heretofore been given to the Lender or otherwise for the benefit of the Lender with respect to each Guarantor fairly and accurately present the financial condition of each Guarantor as of the date thereof including, without limitation, all contingent liabilities and, since the date thereof, there has been no material adverse change in the financial condition of Guarantor. Each Guarantor is, and as of the Closing will be, solvent and able to conduct its business and pay its debts as they become due. All assets listed on the financial statements of each Guarantor delivered for the benefit of the

5

Lender are owned by each Guarantor individually, free and clear of any encumbrances, liens, claims or other rights, other than as listed on such financial statements;

(d)  There are no legal proceedings, claims or demands pending against, or, to the best of each Guarantor's knowledge, threatened against, any Guarantor or any of Guarantors' assets, which would, if adversely determined, have a material and adverse effect upon the ability of any Guarantor to perform its obligations hereunder (any of the foregoing, a "**Material Claim**"). Each Guarantor hereby agrees to deliver written notice to the Lender of each Material Claim (including, without limitation, each Material Claim that consists of a threat) immediately upon becoming aware of such Material Claim or obtaining knowledge thereof.

9.  **Certain Rights of the Lender.** Each Guarantor authorizes the Lender, in the Lender's discretion, at any time or from time to time, to amend, modify or otherwise alter, or consent to any amendment, modification or other alteration of, any of the terms and conditions of any of the Loan Documents, including, without limitation, those respecting the Obligations, to take and to hold any security for the Obligations and to accept additional or substituted security for any of the Obligations, to subordinate, compromise or release any security for any of the Obligations, to release the Borrower from its liability for all or any part of the Obligations, to release any Guarantor hereunder, to substitute or add one or more Guarantors or endorsers hereunder, to take and to hold any security for this Guaranty, to accept additional or substituted security for this Guaranty, to subordinate, compromise or release any security for this Guaranty and to endorse, assign or otherwise transfer this Guaranty in whole or in part. Each Guarantor authorizes the Lender to take any and all of the foregoing actions upon such terms and conditions as the Lender may elect, without giving notice to the Guarantors or obtaining the consent of the Guarantors and without affecting the liability of the Guarantors to the Lender for the Obligations, as they exist prior to such actions, or the enforceability of this Guaranty or any security therefor.

10.  **Joint, Several and Independent Liability.** The obligations of each Guarantor under this Guaranty and any other guarantor of all or any part of the Obligations are joint and several and independent of the obligations of the Borrower. The Lender may release or settle with the Borrower, any Guarantor or any other guarantor at any time without affecting the continuing liability of any Guarantor, except as otherwise expressly agreed by the Lender. The Lender may proceed against any Guarantor under this Guaranty without first proceeding against the Borrower or any other Guarantor or person or any security held by the Lender and without pursuing any other remedy, except as may be expressly provided otherwise in this Guaranty or any of the other Loan Documents. The Lender's rights under this Guaranty will not be altered or exhausted by any action by the Lender until all of the Obligations have been paid, performed and satisfied in full and all continuing liability under this Guaranty has been fully terminated under Section 6. Upon payment, performance and satisfaction in full of all of the Obligations and all amounts due under this Guaranty, and termination of all continuing liability under this Guaranty under Section 6, the Lender shall deliver to any Guarantor written confirmation of the termination of this Guaranty upon such Guarantor's request.

11.  **Waiver of Indulgence.** Each Guarantor waives notice of acceptance of this Guaranty and all presentment, demand, protest, notice of protest, notice of dishonor and notice of default of any Obligation guaranteed hereby and all other suretyship defenses generally. No

extension of time, renewal, other indulgence or collateral granted by the Lender to the Borrower, any Guarantor under this Guaranty or any other guarantor under any other guaranty, at any time or from time to time, will release or affect the liability of any Guarantor hereunder. No act, omission or delay on the part of the Lender in exercising any rights hereunder or in taking any action to collect or enforce payment or performance of any of the Obligations shall be a waiver of any such right or release or affect the obligations of any Guarantor under this Guaranty. This Guaranty shall not be impaired by any bankruptcy, insolvency, arrangement, assignment for the benefit of creditors, reorganization or other debtor relief proceedings under any federal or state law, whether now existing or hereafter enacted, with respect to the Borrower, any Guarantor or any other guarantor or if for any other reason the Borrower or any other guarantor has no legal obligation to discharge any of the Obligations.

12. Subordination and Assignment of Rights. Each Guarantor covenants and agrees that any indebtedness or other obligation to such Guarantor of the Borrower or any entity (a "Subsidiary") in which the Borrower holds an interest, either directly or through one or more intervening entities, or of any other guarantor of the Loan, whether arising from payments made by the Guarantor pursuant to this Guaranty or otherwise, is hereby subordinated in all respects to the obligations of the Borrower or such other guarantor under the Loan Documents and that, except as provided below in this Section 12, each Guarantor shall (i) hold any funds or other property received from the Borrower, any Subsidiary or, following an Event of Default under the Loan, another guarantor, in trust for the Lender to satisfy the Obligations, and (ii) deliver such funds or other property to the Lender promptly upon receipt. Each Guarantor hereby assigns to the Lender, as security for the obligations of such Guarantor under this Section 12, any claims against or obligations of the Borrower, any Subsidiary or any other guarantor now owned or hereafter acquired by the assigning Guarantor. This subordination of indebtedness and other obligations and assignment shall continue until all of the Obligations have been paid, performed and satisfied in full and all continuing liability under this Guaranty has been fully terminated under Section 6. Nothing in this Section 12 shall require any Guarantor to hold in trust for or pay to the Lender any funds or property received by such Guarantor (i) pursuant to a contract with the Borrower or any Subsidiary Owner or any Affiliate of Guarantor, consistent with the prior approval of such contract by the Lender, (ii) as distributions from an entity in which Guarantor is a principal and which holds a membership interest in Borrower as long as such distributions are permitted under the Loan Documents, or (iii) prior to an Event of Default, from another guarantor. Any funds received from the Borrower or a Subsidiary required to be paid or delivered to the Lender pursuant to this Section 12 shall not be credited in satisfaction of any limitation on the liability of the Guarantors under this Guaranty, it being intended that any liability of the Guarantors under this Section 12 shall be separate and in addition to such limited liability.

13. Cumulative Remedies. All remedies of the Lender against the Borrower and any Guarantor, whether under this Guaranty or any other Loan Document or otherwise available at law or in equity, are separate and cumulative and are not exclusive, and exercise of any one shall not limit or prejudice exercise of any other. Without limiting the generality of the foregoing, each Guarantor agrees that if Guarantor fails to pay or perform any of the Obligations after demand by the Lender made when permitted under this Guaranty, the Lender shall be entitled to pay or perform or cause to be paid or performed such Obligations, and Guarantor shall, subject to the provisions of Section 2, reimburse the Lender on demand made by the Lender at any time or

7

from time to time for all amounts expended or incurred by the Lender in paying or performing or causing to be paid or performed such Obligations, including, without limitation, reasonable attorneys' fees and disbursements and fees of consultants and advisors. The Lender's costs and expenses shall include, without limitation, any reasonable costs and expenses that would be chargeable to the Borrower in the event the Lender exercised its remedy to perform the Borrower's obligations under the Loan Documents.

14. Expenses of Collection. Each Guarantor shall pay to the Lender on demand any and all expenses paid or incurred by the Lender, including, without limitation, attorneys' fees and disbursements, in connection with the enforcement of this Guaranty. All amounts owed to the Lender under this Guaranty shall bear interest at the Default Rate from the date written demand is made on Guarantor until paid.

15. Severability. Any provision of this Guaranty that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

16. Amendment, Waiver, Entire Agreement. This Guaranty may be amended, and waivers or consents to departures from the provisions hereof may be given, only in a writing signed by the party against which enforcement is sought. This Guaranty contains the entire agreement and understanding between the Guarantors and the Lender relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

17. Governing Law; Choice of Law. This Guaranty shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of The Commonwealth of Massachusetts, without regard to principles of conflicts of laws. This Guaranty shall take effect as a sealed instrument. The terms and conditions of this Guaranty and the other Loan Documents were negotiated by the Lender in The Commonwealth of Massachusetts, and delivered by the Guarantors and accepted by the Lender in The Commonwealth of Massachusetts, and the proceeds of the Loan were disbursed from The Commonwealth of Massachusetts.

18. Descriptive Headings; Interpretation. The headings in this Guaranty are for convenience only and shall not be used in construing or interpreting this Guaranty. In this Guaranty, the singular shall include the plural, and each of the masculine, feminine and neuter shall include each of the others, as the context may require. Words such as "hereof," "herein," "hereunder," "hereinafter," and similar words shall refer to this Guaranty as a whole, and not to the particular part thereof in which such words appear, unless the context requires otherwise. Each reference to "**Guarantor**" means to any Guarantor and to all Guarantors. Notwithstanding that this Guaranty was initially prepared by the Lender's counsel, this Guaranty has been reviewed and negotiated by competent counsel on behalf of the Guarantors. The parties to this Guaranty agree that this Guaranty shall not be construed against the Lender as a result of this Guaranty having been so prepared. The obligations and liabilities of each Guarantor shall be joint and several.

8

19. <u>Successors and Assigns</u>. Whenever in this Guaranty any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party, and all covenants, promises and agreements by or on behalf of the respective parties which are contained in this Guaranty shall bind and inure to the benefit of the successors and assigns of all parties originally benefited thereby.

20. <u>Consent to Jurisdiction</u>. Each Guarantor submits to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts for the purpose of any suit, action or proceeding arising out of or relating to this Guaranty. Each Guarantor irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have that its property is exempt or immune from attachment or execution, and to the venue or jurisdiction of any such suit, action or proceeding brought in any such court, including, without limitation, that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Each Guarantor agrees that final judgment with no right of appeal remaining in any such suit, action or proceeding brought in any such court shall be conclusive and may be enforced in other jurisdictions by a suit upon such judgment, a certified copy of which shall be conclusive evidence of the fact and of the amount of Guarantor's indebtedness or other obligation evidenced by the judgment. Nothing in this Guaranty will be deemed to preclude the Lender from bringing an action or proceeding against any Guarantor in any court with jurisdiction, wherever located.

21. <u>Waiver of Jury Trial</u>. To the fullest extent permitted by law, each Guarantor hereby waives any right to trial by jury in any action, proceeding or counterclaim, whether in contract, tort or otherwise, in connection with or relating directly or indirectly to the Loan, the Property, the Borrower or the Lender.

22. <u>Service of Process</u>. Each Guarantor consents to process being served in any suit, action or proceeding hereunder by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to Guarantor at its or his address set forth below or to any other address which the Guarantor shall have designated by written notice to the Lender. Nothing in this Section shall affect the rights of the Lender to serve process in any manner permitted by law.

23. <u>Notices</u>. Any notice, demand or other communication under this Guaranty shall be in writing and shall be deemed delivered on the earlier to occur of (i) receipt or (ii) the date of delivery, refusal or non-delivery indicated on the return receipt, if deposited in a United States Postal Service depository, postage prepaid, sent registered or certified mail, return receipt requested, or if sent via a recognized commercial courier service providing for a receipt, addressed to the party to receive the same at the address of such party set forth below.

If to the Lender:    BayNorth Realty Fund VI, Limited Partnership
　　　　　　　　　　c/o BayNorth Capital, LLC
　　　　　　　　　　One Financial Center – Floor 23
　　　　　　　　　　Boston, MA 02111-2651

　　　　　　　　　　Attention: Charles J. Flint

9

105570.159654 MQK LIBD/1715537.13　　　　　　　　　　　　　　　　　　　　03/29/06 02:31 pm

|               |                                      |
|---------------|--------------------------------------|
| and:          | Goodwin Procter LLP                  |
|               | Exchange Place                       |
|               | Boston, MA 02109-2881                |
|               | Attention: Christopher B. Barker, P.C. |
|               |                                      |
| If to any Guarantor: | c/o AVG-SL, LLC               |
|               | 4780 Winchester Court                |
|               | Park City, Utah 84098                |
|               |                                      |
| with a copies to: | Wrona & Parrish, P.C.            |
|               | 1816 Prospector Avenue               |
|               | Suite 100                            |
|               | Park City, Utah 84060                |
|               | Attention: S. Blake Parrish, Esq.    |
|               |                                      |
|               | Park City I, LLC                     |
|               | c/o Michael Feder                    |
|               | 379 W. Broadway                      |
|               | Suite 401                            |
|               | New York, NY 10012                   |
|               |                                      |
|               | Rhona J. Kisch, Esq.                 |
|               | Hahn & Hessen LLP                    |
|               | 488 Madison Avenue                   |
|               | New York, NY 10022                   |

Any party may, from time to time, change the address at which such written notices, demands or other communications are to be sent by giving the other party written notice of such changed address in the manner hereinabove provided. Any notice to the Borrower by the Lender, if given in the manner provided for in the Loan Agreement, shall satisfy any express or implied obligation of the Lender to deliver notice to each Guarantor.

24.   Counterparts. This Guaranty may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Guaranty to produce or account for more than one such counterpart.

25.   Non-Competition; Right of First Offer. Except for the Property, no Guarantor shall develop, own, lease, acquire, operate or otherwise directly or indirectly participate in any Competing Project and shall not permit any entity in which any one or more of them owns in the aggregate more than ten percent (10%) of the equity to engage in any such activities without the prior written consent of Lender in its sole and absolute discretion. For purposes of this covenant, any interest held by the spouse or an ancestor or descendant of a Guarantor or a trust for any of them shall be deemed to be owned by such Guarantor. "**Competing Project**" means, except as provided below, any fractional interest condominium resale located within a radius of ten (10) miles from the Property. The restrictions imposed on Guarantor under this paragraph shall terminate on the earlier of (i) the one (1) year anniversary of the sale of ninety-five percent

10

(95%) of the Units or (ii) repayment of the Loan (including all amounts due under the Loan Documents) in full. Until repayment of the Loan (including all amounts due under the Loan Documents) in full, the Lender shall have the right of first offer to provide the mezzanine financing or equity capital for any residential, hospitality or mixed use real estate investment or development that either or both Guarantors or any entity directly or indirectly controlled by either or both Guarantors (a "Developer Entity") proposes to undertake (a "New Project"). If the Lender elects not to pursue such mezzanine debt or equity capital opportunity or fails to elect to pursue such mezzanine debt or equity capital within fifteen (15) days after the receipt of a summary of a New Project and the terms of the proposed mezzanine debt or equity capital, by providing a written term sheet to the Developer Entity, then the Developer Entity shall have the right to pursue such New Project with another capital source.

[Signatures on Following Page.]

Executed as an instrument under seal as of the date first above written.

Guarantors:

_____
David L. Wickline, individually

_____
William Shoaf, individually

Mar 29 06 01:49a    D. Wickline            7078743890            p.2

Executed as an instrument under seal as of the date first above written.

Guarantors:

_____
David L. Wickline, individually

_____
William Shoaf, individually

12

105570.159654 MQK LIBNY1715537.11            03/25/06 09:42 pm