# EXHIBIT D

Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>EASY STREET HOLDING, LLC, *et al.*,<br><br>Debtors.<br><br>Address:  201 Heber Avenue<br>Park City, UT 84060<br><br>Tax ID Numbers:<br>35-2183713 (Easy Street Holding, LLC),<br>20-4502979 (Easy Street Partners, LLC), and<br>84-1685764 (Easy Street Mezzanine, LLC) | Bankruptcy Case No. 09-29905<br>Jointly Administered with Cases<br>09-29907 and 09-29908<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier<br>DATE:    October 13, 2009<br>TIME:    11:00 A.M.<br>PLACE:  Courtroom 369<br>350 South Main Street, #301<br>Salt Lake City, Utah 84101 |

## STIPULATION AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND GRANTING ADEQUATE PROTECTION TO WESTLB, AG

WHEREAS on September 14, 2009 (the "Petition Date"), Easy Street Partners, LLC

("Easy Street"), together with Easy Street Holding, LLC and Easy Street Mezzanine, LLC

(collectively, the "Debtors"), commenced bankruptcy cases (the "Chapter 11 Cases") under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS on September 15, 2009, Easy Street filed the "Motion of Easy Street Partners, LLC for Interim and Final Orders: (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to West LB, AG, and (ii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)" [Docket No. 9] (the "Cash Collateral Motion");

WHEREAS on or about September 16, 2009, Easy Street and WestLB, AG ("WestLB"), in its capacity as agent for itself and such other co-lenders as might exist from time to time, under that certain Loan Agreement (defined in paragraph 6 below), previously entered into that certain "Stipulated Interim Order on Motion of Easy Street Partners, LLC for Interim and Final Orders (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG, and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)" [Docket No. 39] (the "Interim Cash Collateral Stipulated Order");

WHEREAS, in paragraph 2 of the Interim Cash Collateral Stipulated Order, Easy Street agreed that "[a]ll cash and cash equivalents held by the Debtor on the petition date, and all cash and other proceeds collected by the Debtor post-petition constitute cash collateral subject to the interest of WestLB AG;"

WHEREAS, on September 17, 2009, the Court entered the Interim Cash Collateral Stipulated Order [Docket No. 43], approving Easy Street's use of WestLB's Cash Collateral (as defined in paragraph 9 below) pursuant to the Budget attached to said Order through October 15, 2009, and affording WestLB certain rights and adequate protection as set forth in said Order (the "Interim Rights");

WHEREAS, a final hearing on the Cash Collateral Motion is scheduled for October 13, 2009 at 11:00 a.m.;

WHEREAS, Easy Street has proposed a budget for its continued use of WestLB's Cash Collateral, a copy of which is attached hereto as Exhibit A, for the period of October 16, 2009

through and including December 31, 2009 (the "Initial Budget"), and Easy Street represents that the expenditures proposed in the Initial Budget are reasonable and necessary;

WHEREAS, Easy Street and WestLB (collectively the "Parties," and each individually a "Party") have reached agreement regarding the continued use by Easy Street of WestLB's Cash Collateral until December 31, 2009 (or such later date as the Parties agree to in writing in accordance with paragraph 33 hereof) under the terms and on the conditions set forth in this Stipulation; and

WHEREAS, this Stipulation was negotiated in good faith and at arms' length by the Parties;

THE PARTIES, BY AND THROUGH THEIR RESPECTIVE UNDERSIGNED COUNSEL, ACKNOWLEDGE AND AGREE THAT THE FOLLOWING RECITALS ARE TRUE AND FURTHER STIPULATE BY AND BETWEEN THEMSELVES AS FOLLOWS:

## RECITALS

1.     Easy Street owns and operates certain real property and improvements and related facilities in Park City, Utah commonly known as the Sky Lodge Private Residence Club and Hotel ("Sky Lodge").

2.     As of the Petition Date, Easy Street held $ 3,189,582.66 in cash and cash equivalents (the "Petition Date Cash"), which (as set forth above and further in paragraph 9, below) Easy Street has agreed is WestLB's Cash Collateral. Attached hereto as Exhibit B is a list of all of the Debtors' bank accounts which Easy Street represents held all Petition Date Cash, as well as the breakdown of the amount of Petition Date Cash held in each account on the Petition Date.

3.    Easy Street represents that the list of accounts attached hereto as <u>Exhibit C</u> includes all accounts which presently contain or will at any future time during the pendency of the Chapter 11 Cases contain, any part of the Cash Collateral (the "<u>Bank Accounts</u>").

4.    Also as of the Petition Date, Easy Street held for sale certain units and fractional interests in units with respect to the Sky Lodge (inclusive of the proceeds thereof, the "<u>Fractional Ownership Units</u>").

5.    As of the Petition Date, Easy Street had accounts receivable with respect to Sky Lodge including, but not limited to, HOA obligations for shared expenses in the operation of Sky Lodge (the "<u>Receivables</u>").  Easy Street anticipates receiving additional funds with respect to Sky Lodge, representing the collection of the Receivables, and funds generated as a result of post-petition sales, hotel operations or other activity with respect to Sky Lodge including, but not limited to, sales of food and beverage, spa operations and rental income from the restaurant Zoom (inclusive of the Receivables, but excluding the Fractional Ownership Units, the "<u>Revenues</u>").

6.    Prior to the Petition Date, Easy Street entered into that certain Loan and Security Agreement, dated as of March 30, 2006 (the "<u>Loan Agreement</u>"),[1] with WestLB, pursuant to which WestLB made a loan of up to $36,779,224.00 in principal amount to Easy Street (the "<u>Loan</u>").

7.    Each of (i) the Loan Agreement, (ii) that certain Promissory Note dated as of March 31, 2006; (iii) that certain Construction and Interim Loan Deed of Trust with Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of March 31, 2006; (iv) that certain UCC-1 Financing Statement recorded on March 31, 2006; (v) and that certain Pledge and Security Agreement, dated as of March 30, 2006 (in aggregate, and together with all other documents that evidence, secure, guaranty and/or perfect the Loan, the "<u>Loan Documents</u>"), is a

---

[1] Capitalized terms not otherwise defined herein shall take the meaning ascribed to them in the Loan Agreement.

valid agreement of Easy Street, enforceable against Easy Street in accordance with its terms, and in full force and effect as to Easy Street. Easy Street has no offsets, counterclaims, or defenses as to its obligations under any of the Loan Documents.

8.    Sky Lodge, the Cash Collateral and certain other assets identified in the Loan Documents and any and all proceeds thereof (collectively, the "Collateral") are pledged to WestLB to secure the obligations due under the Loan Agreement.

9.    WestLB has valid, perfected, and unavoidable first priority liens upon and security interests in all Petition Date Cash and cash equivalents held by the Debtor on the Petition Date, and in all cash and other proceeds collected by Easy Street post-petition (collectively, the "Cash Collateral").

10.    WestLB has valid, perfected, and unavoidable first priority liens upon and security interests in the Collateral and any and all proceeds thereof, including, but not limited to any and all rights and interests provided under Section 506(b) and 552 of the Bankruptcy Code, and the Interim Rights under the Interim Cash Collateral Stipulated Order.

11.    As of the Petition Date, the principal amount of $14,379,224.00, together with accrued and unpaid interest in an amount equal to at least $785,107.17, was outstanding under the Loan Agreement. This amount does not include attorneys' fees and other costs and expenses which may have been due as of the Petition Date.

12.    As of the Petition Date, the allowed amount of WestLB's claim (which includes only principal and accrued default and nondefault interest) was no less than $15,164,331.17, which allowed amount will increase to include accrued fees and expenses, including without limitation, reasonable attorneys' fees, and will continue to increase in accordance with the Loan Documents and sections 502 and 506(b) of the Bankruptcy Code. Easy Street acknowledges and agrees that WestLB's claims against Easy Street based on the Loan Documents are allowed claims in the Chapter 11 Cases.

-5-

13.     WestLB objects to Easy Street's sale, lease or other use of the Cash
Collateral and Collateral during the Chapter 11 Case, and has demanded adequate protection of
its interests in connection with any such sale, lease or other use.  Easy Street has asserted that the
interests of WestLB are adequately protected by, *inter alia*, an equity cushion in the value of the
Collateral, which assertion is disputed by WestLB.  For purposes of this Stipulation and the
adequate protection to be provided to WestLB herein the alleged amount of an equity cushion, if
any, in the Collateral will not be determined, and all parties reserve their respective rights and
defenses regarding this issue.

14.     In light of and based on the foregoing, and to facilitate the consensual use
of WestLB's Cash Collateral, the Parties agree to, and request that the Court enter an order
approving this Stipulation in the form of the proposed order attached hereto as Exhibit D (the
"Cash Collateral Stipulated Order").

## STIPULATION

15.     Use of Cash Collateral.  Pursuant to and conditioned on compliance with
the terms and conditions of this Stipulation and entry of the Cash Collateral Stipulated Order,
WestLB consents to the use of Cash Collateral in accordance with the Initial Budget and
subsequent approved Budgets through and including December 31, 2009.  With respect to the
use of Cash Collateral pursuant to the Budget, Easy Street is not permitted to and shall not
reallocate amounts between specific line items in the Budget unless such reallocation is
presented in a Submitted Monthly Budget to be approved by WestLB.  Easy Street in any month
may exceed by 10% the disbursement for a line item in the amount of $50,000 or less, and may
exceed by 5% the disbursement for a line item greater than $50,000, provided that in no instance
may Easy Street in any month exceed the aggregate amount to be disbursed under the Budget for
that month.  Any such variances in the disbursements under the Budget shall be disclosed and
noted in the Reconciliation Report required under paragraph 16 below.  Use of Cash Collateral

-6-

shall be limited to the amounts set forth in the Budget for the pending month; however, any line item expense not disbursed in any given month may be disbursed in subsequent months. No further use of Cash Collateral shall be allowed after a Termination Event (as defined in paragraph 32, below) without the prior written consent of WestLB or further order of the Court, including any Order authorizing the payment of professionals from the carve out under paragraph 27 that has accrued prior to the Termination Event. For the avoidance of doubt, except as specifically set forth in this Stipulation, Easy Street is not authorized to use any Cash Collateral for payment of pre-petition debts or any other purpose whatsoever, and, absent prior written consent of WestLB or further order of the Court, the use of Cash Collateral is expressly limited to the amounts set forth in the approved Budgets.

16.    Monthly Updates to Budget. Starting in November 2009, for each month, Easy Street must submit to WestLB by the 15th calendar day of each month (i) a rolling three month budget for proposed use of Cash Collateral (the "Submitted Monthly Budgets") and (ii) a reconciliation of actual receipts and expenditures for the preceding month against the receipts and expenditures projected in the Budget (the "Reconciliation Report"). Except as otherwise provided at paragraph 15 above, if the Submitted Monthly Budget contains any variations, adjustments or additions to the projected receipts or expenditures in the Budget for the prior month, then the Submitted Monthly Budget shall be subject to the review and approval of WestLB under the following procedure: The approval by WestLB may not be unreasonably withheld, and WestLB will be deemed to have approved the Submitted Monthly Budget if it does not object within 5 days of receipt thereof. Once approved, the Submitted Monthly Budget shall be the Budget for the applicable month. Approved Budgets shall be filed with the Court within five (5) days after approval of WestLB. WestLB may object to a Submitted Monthly Budget by a written statement identifying the line items that are not approved. If WestLB objects to the Submitted Monthly Budget, then Easy Street's right to use Cash Collateral shall be limited to the

Initial Budget attached hereto as Exhibit A, unless the Court after notice and hearing authorizes other use of Cash Collateral.

17.    Reduction of Loan.    Notwithstanding the foregoing, WestLB and Easy Street may agree in writing to the payment of any additional amounts in the Bank Accounts to reduce the obligations under the Loan Documents and may implement such payment after approval by the Bankruptcy Court upon notice and hearing.  Any payment shall constitute an additional adequate protection payment and the parties shall reserve all rights regarding application of the payment against the allowed claim of WestLB.

18.    Use of Funds to Pay Budgeted Amounts.    In making expenditures authorized under the approved Budgets, Easy Street shall first use any funds it has or may obtain which are not subject to a lien in favor of WestLB, then any portion of the Revenues that represents funds generated as a result of post-petition sales, hotel operations or other activity with respect to Sky Lodge, then remaining Revenues, then Petition Day Cash and then proceeds from any post-petition sale of Fractional Ownership Interests.

19.    Source of Funds to Pay Budgeted Amounts.    Without limiting or diminishing the force and effect of paragraph 18, disbursements pursuant to any Budget will be made (i) from the Tax and Insurance Reserve Account for budgeted expenses corresponding to Taxes and insurance premiums with respect to the Required Insurance; (b) from the FF&E Reserve Account for budgeted expenses corresponding to costs or renewal, replacement and addition of FF&E; (iii) from the HOA Reserve for budgeted expenses corresponding to common area charges payable under the Fractional Ownership Documents or Condominium Documents with respect to the Commercial Units or any unsold Fractional Ownership Units; and (iv) from the Debt Service Reserve for budgeted expenses corresponding to adequate protection payments, as each such Bank Account is identified on Exhibit C hereto.  If any Bank Account should contain insufficient funds to satisfy the payment required by the previous sentence, amounts shall

be disbursed, in accordance with the approved Budget, from any of the other Bank Accounts and WestLB shall release funds from such accounts to fund the disbursement. Nothing in this paragraph should be deemed to limit WestLB's authority to apply amounts in any of the Bank Accounts to reduction of the obligations under the Loan Documents pursuant to paragraph 17. For the avoidance of doubt, to the extent of any inconsistency between paragraphs 18 and 19, Easy Street shall and shall be deemed to disburse funds in accordance with paragraph 18 of this Stipulation.

      20.    <u>Mandatory Deposit Into Bank Accounts</u>. All Cash Collateral shall be deposited and maintained at all times in the Bank Accounts which, subject to paragraph 24(c), below, will be subject to control agreements in favor of WestLB, and shall only be disbursed in accordance with the terms of and after entry of the Cash Collateral Stipulated Order or any subsequent order governing the use of Cash Collateral that may be entered by the Court. With the exception of corporate checks and wires for refundable guest deposits (the "Refundable Deposits"), Easy Street shall cause all Revenues and other receipts, including, but not limited to, credit card receivables to be directly deposited into the Lockbox Account identified on Exhibit C. Refundable Deposits may be deposited directly into the Sky Lodge Refundable Guest Advance Deposit Trust Account established for the Refundable Deposits and, on a weekly basis, transferred to the LockBox Account identified on Exhibit C, after guest refund rights have expired. Except as provided in the immediately preceding sentence, to the extent any Cash Collateral is deposited into any other account, Easy Street shall immediately transfer such funds to the Lockbox Account. WestLB is to authorize the transfer of funds from the Lockbox Account to other Accounts on Exhibit C under the following procedure: Easy Street shall submit to WestLB on a weekly basis a written request for the transfer of funds indicating the amount to be transferred, the Account(s) to receive the funds and the line items in the Budget to be paid. WestLB shall promptly (and no later than two (2) business days after receipt of the request)

authorize the transfer if the funds are to be deposited and paid in accordance with the Stipulation and Budget. Unless the Court orders otherwise, Easy Street shall retain not less than the aggregate amount of $1.7 million in the Sky Lodge Sales Proceeds Account (account no. 12997375) and the Sky Lodge Deposit Account (account no. 12997367) maintained as of the Petition Date at Wells Fargo Bank, N.A. or at a successor DIP account that is identified on Exhibit C hereto, which account(s) shall be segregated from other DIP accounts identified in Exhibit C.

      21.    <u>Liens</u>. The liens and security interests of WestLB shall not be subject to priming or *pari passu* liens, or other modification while this Stipulation, as it may be amended from time to time, governs the consensual use of Cash Collateral. Easy Street shall not seek or obtain any post-petition financing or other indebtedness under section 364 of the Bankruptcy Code for any purposes other than the payment of the categories of line items set forth in the Budget or the payment of claims secured by liens junior to those of WestLB so long as this Stipulation, as it may be amended from time to time, governs the consensual use of Cash Collateral. For avoidance of doubt, such post-petition financing may be used to pay sums in excess of the line item amounts set forth in the Budget.

      22.    <u>Limitation on Transfers</u>. For the avoidance of doubt, Easy Street may not loan or otherwise transfer Cash Collateral to affiliates or to any other person or entity outside of the ordinary course of business, and no transfers shall be made by Easy Street unless such transfers are made in accordance with the Budget and the terms of this Stipulation, as the same may be amended in writing from time to time, and the Cash Collateral Stipulated Order upon entry by the Court.

      23.    <u>Executory Contracts</u>. On or before October 20, 2009, Easy Street shall provide WestLB with copies of (i) all executory contracts with third parties listed on Schedule G

-10-

of the Statement of Affairs and Schedule of Assets and Liabilities filed by any and all of the Debtors and (ii) all material non-executory contracts of any and all of the Debtors.

24.    <u>Reporting Obligations</u>[2]. Unless otherwise provided below, Easy Street shall provide all reasonably requested, non-privileged information and opportunities for due diligence, access to personnel and property inspection rights as may be reasonably requested by WestLB or its representatives in accordance with the Loan Documents or otherwise and shall otherwise comply with all reporting obligations under the Loan Documents, including, but limited to, providing in writing to WestLB on or before the fifteenth (15th) calendar day of each month in which this Stipulation remains in effect, the following:

(a) a report of cash flow for Easy Street's estate, including all sources and uses of cash for each preceding monthly period;

(b) a reconciliation of actual to forecasted cash flow;

(c) a reconciliation of actual to planned payments;

(d) accountings for the receipt and usage of all Cash Collateral, which accounting shall require Easy Street to maintain books and records sufficient to trace and account for the source and amount of all Cash Collateral and the uses thereof;

(e) a balance sheet and statement of profit and loss;

(f) a PACE report, due both on the fifteenth (15th) calendar day of each month and updated on Monday of each week thereafter;

(g) estimates of property tax payments, insurance premiums, and any common charges payable under the Fractional Ownership Documents or Condominium Documents with respect to the Commercial Units or any unsold Fractional

---

[2] WestLB may in its sole discretion share with third parties any of the reports and information given to WestLB under this paragraph, unless the materials are marked by Easy Street with a written legend on each page indicating the materials are privileged and confidential.

Ownership Units, which are or will become due and the dates upon which
they shall become due;

(h) a monthly management report;

(i) notice, due immediately upon receipt by Easy Street, of any institution of, or
written threat of, any action, suit, proceeding, governmental investigation or
arbitration against or affecting Easy Street or the Collateral;

(j) immediate notice of any material events related to the Collateral; and

(k) copies, due upon submission or production, of all information or other
documents submitted by Easy Street to the Office of the United States Trustee
and of all documents produced pursuant to an examination authorized by the
Court under Rule 2004 of the Federal Rules of Bankruptcy Procedure or in
any adversary proceeding brought in these Chapter 11 Cases.

Unless all of the foregoing items are received by WestLB on or before the dates specified above,
Easy Street's authority to use Cash Collateral will automatically terminate three (3) business
days after receipt by Easy Street's undersigned counsel of written notice from WestLB that such
condition has not been satisfied, unless Easy Street provides the information needed to satisfy the
condition before expiration of the three business days.  In order to continue to use Cash
Collateral after such automatic termination and in the absence of any written consent by WestLB
to the further use of Cash Collateral, Easy Street will be required to seek an order establishing
that such condition has been satisfied or an order in which the Bankruptcy Court authorizes
further use of Cash Collateral.

25.    Entitlement to Adequate Protection.  WestLB is entitled to adequate
protection against any loss, decrease or decline in the value of its interest in the Collateral
(including, but not limited to Cash Collateral) since the Petition Date resulting from the sale
lease or other use of such Collateral by Easy Street under Section 363(e) of the Bankruptcy Code

-12-

(decrease in the value of WestLB's interest in the Collateral is referred to herein as a "Post-Petition Loss").

26.    Forms of Adequate Protection.  WestLB shall be granted the following forms of adequate protection for the use of its Collateral (including, but not limited to Cash Collateral) during the term of the Stipulation:

(a)    WestLB shall be granted a continuing, perfected, first priority security interest in all of the Collateral and all proceeds thereof, whether existing on the Petition Date or acquired thereafter (including, without limitation, all proceeds (as defined in the New York Uniform Commercial Code) on account of the Collateral), and all assets of Easy Street whether presently owned or hereafter acquired by Easy Street, except avoidance actions under Chapter 5 of the Bankruptcy Code.  The first priority security interests granted as Interim Rights under the Interim Cash Collateral Stipulated Order and granted in and as part of this Stipulation and the Cash Collateral Stipulated Order shall not be subject to challenge and shall attach and become valid, binding, continuing, enforceable, fully-perfected and non-avoidable by operation of law as of the Petition Date without any further action by Easy Street, WestLB, or any other person, and without the necessity of execution by Easy Street, or the filing or recordation, of any financing statements, security agreements, mortgages, deeds of trust, or other documents. Despite the forgoing, WestLB may request additional documentation evidencing its perfected security interests, including, without limitation, certain control agreements over Easy Street's Bank Accounts, and Easy Street shall comply with any such requests;

(b)    By no later than October 20, 2009 and then the twentieth (20th) day of each subsequent month after entry of the Court of an order approving this Stipulation, Easy Street shall pay to WestLB the amount of $34,000 which reflects an estimate of the approximate amount of the monthly interest at the non-default contract rate on the value of WestLB's interest in the Collateral as of the Petition Date which amount is set forth in the attached Initial Budget

and shall be set forth in all subsequent Submitted Monthly Budgets required by this Stipulation.

Such payments shall constitute adequate protection payments and the Parties shall reserve all

rights regarding the application of the payment against the allowed claims of WestLB. WestLB

shall release funds from the Petition Date Cash to enable Easy Street to make this payment;

        (c)     On or before October 15, 2009, Easy Street shall arrange to be

deposited and WestLB shall release from controlled bank accounts (from post-petition Revenues

or Petition Date Cash) the following sums into the following Bank Accounts, each of which is

defined and further identified on <u>Exhibit C</u> hereto: (i) into the Tax and Insurance Reserve

Account the sum of $43,624 on account of property taxes which Easy Street represents will

become due in November 2009; (ii) into the FF&E Reserve Account the sum of $10,990;(iii) into

the HOA Reserve Account the sum of $183,610; and (iv) all monies paid into the controlled

bank accounts for Refundable Deposits into the Sky Lodge Refundable Guest Advance Deposits

Trust Account, which account shall be established with a control agreement in favor of WestLB

with the security interest of WestLB being subordinate to the rights of the beneficiaries of such

Trust Account On or before the second (2nd) business day of each month, Easy Street shall

arrange to be deposited and WestLB shall release from controlled bank accounts (from post-

petition Revenues or Petition Date Cash) the following sums (which amounts are set forth in the

attached Initial Budget and shall be set forth in all subsequent Submitted Monthly Budgets

required by this Stipulation) into the following Bank Accounts, each of which is defined and

further identified on <u>Exhibit C</u> hereto: (i) into the Tax and Insurance Reserve Account a sum

representing (a) one-twelfth (1/12) of the annual property taxes to be paid by Easy Street and (b)

one-twelfth (1/12) of the annual insurance premiums to be paid by Easy Street; (ii) into the

FF&E Reserve Account a sum representing four percent (4%) of Easy Street's projected monthly

gross revenue, exclusive of revenues from the sale of Fractional Ownership Units, if any, for the

month in which the deposit is due; (iii) into the HOA Reserve Account a sum representing one-

third (1/3) of the HOA Deposit to be paid in the upcoming calendar quarter; and (iv) into the
Debt Service Reserve Account the sum of $34,000 to be paid monthly to WestLB in accordance
with paragraph 26(b) above. On or before Friday of each week, Easy Street shall arrange to
deposit and West LB shall release from controlled bank accounts into the Sky Lodge Refundable
Guest Advance Deposits Trust Account, all monies paid into the controlled bank accounts for
Refundable Deposits during the preceding week (ending on Thursday).

      (d)     WestLB shall be granted a superpriority administrative claim
against Easy Street's estate senior to all other administrative expenses set forth in Sections
503(b) and 507(b) of the Bankruptcy Code to the extent of a Post Petition Loss occurring during
or precipitated by events or circumstances arising or occurring during the period this Stipulation
is in effect, including any extensions thereof. This superpriority claim is subject and subordinate
to the carve out for administrative claims in paragraph 27 herein;

      (e)     Without prejudice to any prior rights or claims of Easy Street or
WestLB, Easy Street shall name WestLB as the insured party and/or obtain loss payee
endorsements in favor of WestLB for all policies of insurance obtained and/or renewed after
January 1, 2009 ("New Policies"), including, but not limited to: (i) all property insurance
policies; (ii) all commercial general liability insurance policies; (iii) all commercial umbrella
liability policies; and (iv) all other liability insurance policies. Easy Street shall provide to
WestLB evidence of Easy Street's compliance with the foregoing on a continuing updated basis
as soon as reasonably possible. The material terms of each New Policy (subject to the actual
New Policy conforming to such material terms) obtained after October 30, 2009 shall be subject
to approval of WestLB, which approval shall not be unreasonably withheld. Not less than fifteen
(15) and not more than twenty-two (22) calendar days prior to the obtaining of a New Policy,
Easy Street shall provide to WestLB, in writing, the status with respect to such New Policy and
the anticipated terms, conditions and costs of such New Policy known to Easy Street at such

time.  In the event that Easy Street obtains a New Policy after October 15, 2009, but prior to approval by WestLB, the material terms shall remain subject to such reasonable approval of WestLB as set forth above, which shall be deemed to have been granted if no written objection is received by Easy Street from WestLB within fourteen (14) days of WestLB's receipt of such material terms.  All proceeds of insurance payable from New Policies shall constitute Cash Collateral and shall remain subject to the rights of Easy Street and WestLB with respect to use of Cash Collateral;

(f)    Easy Street shall submit to WestLB for its approval (which approval shall not be unreasonably withheld) on or before November 1, 2009, a Business Plan setting forth Easy Street's overall strategic plan for managing, operating, financing, and otherwise dealing with Sky Lodge, which shall serve as the basis for a proposed plan and a restructuring of WestLB's loan and include all information specified in Exhibit DD to the Loan Agreement.  Easy Street shall promptly initiate good faith negotiations with WestLB regarding a plan of reorganization that is feasible, acceptable to WestLB and can be proposed and confirmed within the timeline provided for in this Stipulation;

(g)    Without limiting Easy Street's obligations under the Loan Documents or under applicable law, Easy Street shall continue, in accordance with its obligations under the Loan Agreement, (i) to maintain all Permits and a valid liquor license related to the Sky Lodge; (ii) to continuously operate and maintain the Sky Lodge in good working order and condition as a full service, luxury hotel, in accordance with the performance standards set forth in the Hotel Management Agreement, in compliance with all Laws, and as "The Sky Lodge Private Residence Club and Hotel" or such other name approved by WestLB in its reasonable discretion; and (iii) to perform Easy Street's obligations under the Hotel Management Agreement, and to enforce the performance by Hotel Operator of all of Hotel Operator's obligations under the Hotel Management Agreement;

(h)    Easy Street agrees to collaborate with WestLB in the identification, interview and engagement of a manger or operating consultant to serve as a co-managing officer ("Co-Manager") to assist and direct Easy Street in managing its business operations and restructuring its obligations.  The retention of the Co-Manager must be approved by an Order of the Court no later than December 1, 2009.  Upon retention of the Co-Manager, the expense of such Co-Manager shall  be added to the Budget, in an amount agreed to by WestLB.  Easy Street shall have final authority to select the Co-Manager, but such Co-Manager must be reasonably acceptable to WestLB, and  Easy Street will provide WestLB with direct and unrestricted access to the Co-Manager with respect to the current and projected business operations, and the potential restructuring of WestLB's Loan under a plan of reorganization.  The Co-Manager's authority and responsibility will include, but not be limited to, active participation in operating and management decisions.  All material decisions regarding the business operations shall be made jointly by the Co-Manager and other senior management of Easy Street.  If the Co-Manager and other senior management disagree over any material decision affecting the business operations, then counsel for Easy Street and counsel for WestLB shall in good faith attempt to resolve the disagreement.  Any party may, upon notice and hearing, seek an order from the Bankruptcy Court directing as to how Easy Street shall proceed to resolve the disagreement;

(i)    Easy Street shall not be permitted to sell Fractional Ownership Units free and clear of WestLB's liens on such Fractional Ownership Units except upon the following terms and conditions:  the proposed sale is an all cash transaction negotiated at arms length and on normal and customary terms and conditions; WestLB will receive not less than 80% of the net proceeds received by Easy Street from the sale of each Fractional Ownership Unit, which sales shall be in compliance with the minimum release price requirements contained in the Loan Documents or as may otherwise be agreed to by WestLB and Easy Street; and the

remaining 20% of net proceeds shall be deposited into the Sale Proceeds Account (as identified

on Exhibit C hereto) and be subject to the terms of this Stipulation;

(j)    Any funds received by Easy Street as a result of its pending

adversary complaint against BayNorth Realty Fund VI Limited Partnership, Adv. Proc. No. 09-

2422 (the "Adversary Proceeding"), whether by recovery on a judgment or settlement of disputes

shall constitute Cash Collateral in which WestLB holds a valid, perfected first priority lien under

applicable law, the Loan Documents, the Interim Rights afforded under the Interim Cash

Collateral Stipulated Order, this Stipulation, and the Cash Collateral Stipulated Order.  Easy

Street further agrees that it will pay 70% of the net proceeds recovered by Easy Street after

deduction of direct, reasonable and necessary costs of pursuing the litigation to WestLB and

WestLB agrees that Easy Street may retain in the Bank Accounts the amounts deducted for costs

of litigation and the 30% of the net proceeds as Cash Collateral, the use of which is subject to the

terms of this Stipulation or a subsequent order of the Bankruptcy Court.  This obligation of Easy

Street and WestLB's rights in the Adversary Proceeding shall survive any termination of Easy

Street's authority to use Cash Collateral under this Stipulation and may be enforced at any time

Easy Street recovers proceeds from the Adversary Proceeding; and

(k)    No later than December 3, 2009, Easy Street shall submit to

WestLB a term sheet of its proposed plan of reorganization.  No later than December 23, 2009,

Easy Street shall file a disclosure statement and plan of reorganization, both of which must be

reasonably acceptable to WestLB with respect to any provisions that might have a material effect

on WestLB's rights and claims in the chapter 11 case or its treatment under the plan, or might

provide preferential or more favorable treatment to claims that are junior to or equal in priority to

those of WestLB, and such plan shall, in any event, provide that (i) the maturity date of the

restructured Loan will not be extended past December 31, 2011; (ii) the nondefault interest rate

applicable to the restructured Loan will be no less than LIBOR (as defined in the Loan

Documents) plus 6%; (iii) Easy Street will make monthly interests payments until December 1,

2010 and thereafter monthly payments according to a 20-year amortization schedule provided,

however, that the portion of the monthly payments constituting amortization of principal shall be

reduced by payments to WestLB from the sale of Fractional Ownership Units; (iv) WestLB has

approved the post-confirmation senior management team and/or any sales agent for unsold

Fractional Ownership Units which approval will not be unreasonably withheld; and (v) WestLB

will receive as paydown of principal not less than 80% of the net proceeds received by Easy

Street from the sale of each Fractional Ownership Unit, which sales shall be in compliance with

the minimum release price requirements contained in the restructured Loan Documents or as

may be otherwise agreed to by West LB and Easy Street, and the remaining 20% of net proceeds

shall be deposited into a Sale Proceeds Account and remain subject to a control agreement in

favor of WestLB.  No later than March 31, 2010, Easy Street shall obtain confirmation of a plan

of reorganization that is reasonably acceptable to WestLB and meets the minimum qualifications

described in (i)-(v) above.  Further, Easy Street agrees that, unless it receives the written consent

of WestLB, it shall not seek to extend the exclusive period under Section 1121(c)(2) of the

Bankruptcy Code to file a plan and disclosure statement.  If Easy Street has filed a plan and

disclosure statement in accordance with this Stipulation, WestLB will consent to extension of the

time to have a plan accepted under 1121(c)(3).

      27.   Administrative Expenses - Carve Out, Limitations and 506(c) Waiver:

The Initial Budget and approved Budgets provide a monthly amount for the line item "Legal +

Admin & General".  The Parties acknowledge and agree that the amounts in this line item of the

budgets shall constitute and serve as a "carve out" for professionals seeking compensation from

the estate, including attorneys and consultants for the Debtors and Committee.  The liens and the

super-priority claims granted to WestLB as adequate protection shall be subject and subordinate

to the carve out for professionals.  The budgeting of such amounts does not constitute any

admission or agreement by any party as to the timing or amount to be paid to any such

professional, and all payments to such professionals may only be made as allowed by the Court

and upon such terms and conditions as may be imposed by the Court.  Any fees or expenses

incurred by professionals in connection with the Adversary Proceeding may be paid when and if

proceeds are recovered by Easy Street and in an amount not to exceed the reasonable and

necessary fees and costs deducted to realize the net proceeds to be distributed under

paragraph 26(j).  The professionals for the Committee may not seek nor receive more than

$25,000 from the carve out for services related to the investigation and analysis of the validity,

amount, priority and perfection of the liens and claims of WestLB, and potential avoidance

actions against WestLB, and the professional for the Committee may not seek nor receive any

amounts from the carve out for services related to the commencement or prosecution of any

claim or action attacking the validity, amount, priority or perfection of the liens and claims of

WestLB, or commencement or prosecution of any avoidance action against WestLB.  Upon a

Termination Event the carve out shall be limited to the amounts set forth in the Budget for the

period prior to the Termination Event, unless otherwise ordered by the Court.  In recognition of

WestLB's approval of expenditures in the Budget and the carve out for administrative fees, the

Debtors waive any claims or rights under section 506(c) of the Bankruptcy Code to surcharge the

Collateral of WestLB for any expenses incurred during the time Easy Street is authorized to use

Cash Collateral under this Stipulation or any extension or amendment thereto.

28.    Conflict.  To the extent the terms of the Loan Documents are inconsistent

with the terms of this Stipulation, this Stipulation shall control.  For the avoidance of doubt,

nothing in this Stipulation or the Cash Collateral Stipulated Order shall diminish, detract or

derogate from the Interim Rights and the adequate protection granted to WestLB by the Interim

Cash Collateral Stipulated Order, which rights and adequate protection shall remain in full force

and effect.

29.    <u>Reservation of Rights</u>.  Except as otherwise expressly provided herein, this
Stipulation does not limit or affect the rights, remedies, or claims of either of the Parties under
the provisions of the Bankruptcy Code, other applicable law or the Loan Documents, all of
which are hereby expressly reserved.  In particular, and without limiting the foregoing,
(i) WestLB expressly reserves the right to seek additional adequate protection for the use of its
Collateral, as well as payment of any difference between Easy Street's obligations under the
Loan Agreement and the payments actually made hereunder; (ii) the rights of the Parties as to the
application of any payments to the Loan Agreement from the Bank Accounts, and the rights of
the Parties with respect to any claim for interest at the default rate or other premiums or
penalties, are reserved; and (iii) WestLB expressly reserves the right to seek any appropriate
orders of the Court upon notice and hearing, including but not limited to orders (w) terminating,
annulling, modifying or conditioning the automatic stay under section 362 of the Bankruptcy
Code; (x) directing the appointment of a trustee or examiner under Section 1104 of the
Bankruptcy Code; (y) conducting Rule 2004 examinations on shortened notice; and/or
(z) converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code pursuant to
11 U.S.C. § 1112.

30.    <u>Binding Effect</u>.  Upon entry by the Court of an order approving the
Stipulation, this Stipulation will be binding upon: (i) Easy Street, and any trustee or examiner
that may be appointed in these Chapter 11 Cases, or its respective successors and assigns;
(ii) WestLB and its respective successors and assigns; (iii) the trustee in the event that the
Chapter 11 Cases are converted to cases under Chapter 7 of the Bankruptcy Code and (iv) all
creditors and other parties in interest in the Cases having notice of this Stipulation, including
parties claiming derivatively through Easy Street or its estate, with the sole and limited exception
that with respect to the committee of unsecured creditors appointed by the Office of the United
States Trustee (the "<u>Committee</u>") the Stipulation regarding the amount validity, priority,

-21-

perfection and non-avoidance of the liens and claims of WestLB shall be binding ninety (90)

days after entry of an order approving the Stipulation, unless the Committee institutes

appropriate litigation within that 90 day period to challenge such liens or claims.

　　　　31.　　Validity and Enforceability, Sections 363(m) and 364(e). If any or all of

the provisions of the accompanying Cash Collateral Stipulated Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the

validity or enforceability of any right, claim, lien, security interest, priority, or payment

authorized or created for the benefit of WestLB by the Interim Cash Collateral Stipulated Order,

this Stipulation or the Cash Collateral Stipulated Order. WestLB shall be entitled to all of the

rights, remedies, protections and benefits granted under sections 363(m) and 364(e) of the

Bankruptcy Code with respect to all uses of its Collateral, including uses of its Cash Collateral.

　　　　32.　　Termination. Easy Street's authority to use Cash Collateral pursuant to

this Stipulation shall automatically terminate upon the earliest of the following (each a

"Termination Event"): (i) December 31, 2009; (ii) the filing of any motion or pleading (including

a plan of reorganization) by Easy Street seeking an order authorizing non-consensual use of Cash

Collateral or debtor in possession financing not otherwise permitted under this Stipulation;

(iii) the filing of any motion or pleading (including a plan of reorganization) by Easy Street or

the entry of an order, challenging or affecting the validity, priority, perfection and/or amount of

WestLB's liens or claims against Easy Street or its assets, or seeking a recovery on any

avoidance action provided, however, that disputes over the mathematical calculation of

WestLB's claim in accordance with the Loan Document, and disputes over the reasonableness of

attorneys fees and costs shall not trigger a Termination Event; (iv) Easy Street's failure to secure

the entry of an order in a form reasonably acceptable to the WestLB approving this Stipulation

on or before October 15, 2009; (v) the filing by Easy Street of a Notice of Conversion or the

entry of any order converting Easy Street's Chapter 11 Case to a case under Chapter 7 of the

Bankruptcy Code; (vi) appointment of an examiner or trustee in these Chapter 11 Cases; and

(vii) Easy Street has not cured within five (5) business days from actual receipt of written notice

from WestLB a breach, default or other failure to fully perform all the terms and conditions of

this Stipulation in a timely manner. Easy Street shall be entitled to an expedited hearing to

dispute whether a breach, default or other failure has occurred and whether it has timely cured

any such breach, default or other failure.

     33.   Extension of Stipulation. The Parties may extend this Stipulation on such

terms and conditions as are mutually agreed to in writing. The Parties shall file with the Court

and serve on all interested parties a notice of any such extension and the terms and conditions

governing the extension. The Court may, without further notice or hearing, approve any such

extension. Upon termination of Easy Street's authority to use Cash Collateral it may seek by

motion on no less than 10 days notice authority to continue to use Cash Collateral.

     **WHEREFORE**, Easy Street and WestLB, by and through the signatures of their

counsel below, hereby so stipulate by and between themselves as set forth herein on the date set

forth below and respectfully request that the Court enter the Cash Collateral Stipulated Order

approving and effectuating their mutual agreements as set forth herein.

October 9, 2009               Agreed and Stipulated:

              By:   /s/ Steven J. McCardell
                     Kenneth L. Cannon II
                     Steven J. McCardell
                     DURHAM JONES & PINEGAR, P.C.
                     111 East Broadway, Suite 900
                     P.O. Box 4050
                     Salt Lake City, UT  84110-4050

                     Proposed Local Reorganization Counsel
                     For Debtors and Debtors in Possession

Michael V. Blumenthal
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

Proposed Reorganization Counsel for
Debtors and Debtors in Possession


By:     /s/ Annette W. Jarvis
        Annette W. Jarvis
        DORSEY & WHITNEY LLP
        136 South Main Street, Suite 1000
        Salt Lake City, UT 84101-1685

        Attorneys for WestLB, AG

        Richard W. Havel
        Christina M. Craige
        Drew A. Norman
        SIDLEY AUSTIN LLP
        555 West 5th Street, Suite 4000
        Los Angeles, CA 90013

        Attorneys for WestLB, AG

# EXHIBIT A

Initial Budget

**EASY STREET PARTNERS - CONSOLIDATED 90 DAY FORECAST**

| | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|
| **SKY LODGE HOTEL OPERATIONS** | | | | | |
| Projected Occupancy | 45.5% | 29.5% | 21.4% | 58.2% | 22.3% |
| Transient Occupancy | 40.1% | 25.4% | 19.6% | 42.7% | |
| Owner Occupancy | 5.4% | 4.1% | 1.8% | 15.4% | |
| Room Nights Occupied | 450 | 302 | 212 | 595 | 1,559 |
| ADR | $182.22 | $181.38 | $298.95 | $923.44 | $93.33 |
| % of Project Sold Out | 64.8% | 64.3% | 64.3% | 64.3% | |
| **REVENUE** | | | | | |
| Rooms Revenue | 84,382 | 57,334 | 64,816 | 446,384 | 652,916 |
| Property Management Revenue | - | - | - | - | - |
| F&B Revenue | 105,070 | 82,300 | 100,072 | 252,834 | 540,276 |
| Spa Revenue | 15,268 | 14,143 | 10,553 | 35,689 | 75,644 |
| Sky Club Memberships | 23,760 | 32,560 | 32,560 | 32,560 | 121,440 |
| Zoom Rental Revenue | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| TOTAL REVENUE | 274,760 | 196,336 | 218,001 | 777,467 | 1,439,276 |
| **EXPENSES** | | | | | |
| Rooms Division | 66,500 | 77,658 | 67,560 | 136,690 | 348,408 |
| Property Management | - | - | - | - | - |
| Food & Beverage | 122,359 | 118,493 | 117,052 | 208,937 | 566,841 |
| Spa | 12,511 | 35,452 | 28,821 | 50,871 | 128,655 |
| Facilities | 41,000 | 42,870 | 44,591 | 46,544 | 175,005 |
| HOA Credit - Facilities | (57,053) | (16,055) | (13,372) | (17,299) | (102,778) |
| HOA Credit - Other | | (33,897) | (28,367) | (35,777) | (89,141) |
| Sales & Marketing | 16,550 | 32,560 | 34,519 | 35,728 | 120,357 |
| Administration | 31,934 | 32,382 | 35,287 | 61,175 | 160,757 |
| Property Taxes | | | | 43,624 | 43,624 |
| Management Fees | 10,455 | 6,872 | 7,630 | 27,211 | 52,168 |
| TOTAL EXPENSES | 244,256 | 297,215 | 337,346 | 515,081 | 1,393,897 |
| HOTEL OPERATING PROFIT/(LOSS) | 30,504 | (100,878) | (119,345) | 262,386 | 36,379 |
| | | | | | |
| **EASY STREET PARTNERS OPERATING EXPENSES** | | | | | |
| Developer HOA | | | | | |
| Residential HOA Dues | | 87,747 | | | 87,747 |
| Commercial HOA Dues | | 95,863 | | | 95,863 |
| Hotel Rental Owner Commissions | 15,351 | 5,514 | 5,193 | 79,297 | 105,354 |
| Legal + Admin & General | 125,000 | 125,000 | 125,000 | 125,000 | 500,000 |
| Estimated State Tax to be Paid | | 23,225 | | | 23,225 |
| Utility Deposit | | 24,092 | | | 24,092 |
| WLB Adequate Protection Payments | 11,000 | 34,000 | 34,000 | 34,000 | 102,000 |
| Office Rent | | 11,000 | 11,000 | 11,000 | 44,000 |
| State & Local Sales Taxes | 65,000 | 65,000 | | | 65,000 |
| TOTAL ESP OPERATING EXPENSES | 151,351 | 471,441 | 175,193 | 249,297 | 1,047,281 |
| | | | | | |
| CONSOLIDATED OPERATING PROFIT (LOSS) | (120,847) | (672,319) | (284,537) | 13,090 | (1,019,902) |

**EXHIBIT B**

Accounts Holding Pre-Petition Cash

**EXHIBIT B**

**EASY STREET PARTNERS**

**BANK ACCOUNTS AND BALANCES - SEPTEMBER 14, 2009**

| | | |
|---|---|---:|
| **Wells Fargo Checking Accounts** | | |
| Operating Account | 2679764668 | 28,318.09 |
| Lockbox | 2679764676 | 49,159.82 |
| Easy Street Mezzanine* | 9981223142 | 167.05 |
| **Zion's Bank Checking Accounts** | | - |
| Operating  Account | 098019060 | - |
| Total Checking | | 77,644.96 |
| **Wells Fargo Escrow Accounts** | | |
| ESP - Sky Lodge Sales Proceeds | 12997375 | 2,343,022.08 |
| ESP - Sky Lodge Deposit Acct | 12997367 | 690,403.70 |
| Easy Street Mezzanine* | 12954467 | 78,511.92 |
| Total Escrow | | 3,111,937.70 |
| GRAND TOTAL | | 3,189,582.66 |

*These accounts, and the funds in them, are property of Easy Street Partners, LLC

## EXHIBIT C

Bank Accounts

**EXHIBIT C**

**EASY STREET PARTNERS**

**BANK ACCOUNTS AND BALANCES - OCTOBER 8, 2009**

**Wells Fargo Checking Accounts**

| | | |
|---|---|---|
| Operating Account | 2679764668 | 40,318.00 |
| Lockbox | 2679764676 | 49,193.99 |
| Easy Street Mezzanine* | 9981223142 | 26.54 |

**Zion's Bank Checking Accounts**

| | | |
|---|---|---|
| Operating Account | 098019060 | 46,862.20 |
| Total Checking | | 136,400.73 |

**Wells Fargo Escrow Accounts**

| | | |
|---|---|---|
| ESP - Sky Lodge Sales Proceeds | 12997375 | 2,343,022.08 |
| ESP - Sky Lodge Deposit Acct | 12997367 | 690,403.70 |
| Easy Street Mezzanine* | 12954467 | 78,511.92 |
| Total Escrow | | 3,111,937.70 |
| GRAND TOTAL | | 3,248,338.43 |

**Wells Fargo Account to be Opened and Funded:**
ESP - Sky Lodge Refundable Guest Advance Deposits Trust Account
ESP - Sky Lodge Tax and Insurance Reserve Account
ESP - Sky Lodge FF&E Reserve Account
ESP - Sky Lodge HOA Reserve Account

*These accounts, and the funds in them, are accounts and property of Easy Street Partners, LLC.

**EXHIBIT D**

Proposed Cash Collateral Stipulated Order

*Proposed order prepared and submitted by*:

Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| EASY STREET HOLDING, LLC, *et al.*, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| Address:  201 Heber Avenue | ) |
| Park City, UT 84060 | ) |
| | ) |
| Tax ID Numbers: | ) |
| 35-2183713 (Easy Street Holding, LLC), | ) |
| 20-4502979 (Easy Street Partners, LLC), and | ) |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) |

Bankruptcy Case No. 09-29905
Jointly Administered with Cases
09-29907 and 09-29908

Chapter 11

Honorable R. Kimball Mosier
DATE:    October 13, 2009
TIME:    11:00 A.M.
PLACE:  Courtroom 369
            350 South Main Street, #301
            Salt Lake City, Utah 84101

## PROPOSED ORDER ON STIPULATION AUTHORIZING USE OF CASH
## COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND GRANTING ADEQUATE
## PROTECTION TO WESTLB, AG

The Motion for Interim and Final Orders: (i) Authorizing Use of Case Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to West LB, AG; and (ii) Scheduling a Final Hearing (the "Final Hearing") Pursuant to Bankruptcy Rule 4001(b) (the "Cash Collateral Motion") (Docket No. 9) filed on September 15, 2009 by Easy Street Partners, LLC ("Easy Street" and, together with Easy Street Holding, LLC and Easy Street Mezzanine, LLC, the "Debtors"), came before the Court for final hearing on October 13, 2009.  Appearances were made as noted on the record of the hearing.  The following order (the "Order") approves a stipulation filed with the Court on October 9, 2009 (the "Stipulation")[1] reached by Easy Street and WestLB, AG ("WestLB" and, together with Easy Street, the "Parties") governing the consensual use of cash collateral through and including December 31, 2009.

Now, therefore, IT IS HEREBY ORDERED:

1.      The Cash Collateral Motion is granted.

2.      The Stipulation between Easy Street and WestLB is approved.  All terms and conditions of the Stipulation, unless expressly modified or limited by the terms of the Order, are incorporated in this Order and shall be binding and effective upon the Parties.  The omission or failure to expressly include any terms and conditions of the Stipulation in this Order shall in no way affect the Parties' obligations to comply with or the enforceability of such terms and conditions.

3.      Pursuant to and conditioned on compliance with the terms and conditions of the Stipulation and this Order, Easy Street is authorized to use Cash Collateral in accordance with the Initial Budget, a copy of which is attached as Exhibit A to the Stipulation, and any

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Stipulation and the Loan Documents.

subsequent approved budgets (collectively and together with the Initial Budget, the "Budget" or the "Budgets") through and including December 31, 2009. Easy Street shall file with the Court any revised Budgets approved by West LB pursuant to paragraph 16 of the Stipulation. Except as specifically set forth in the Stipulation and this Order, Easy Street is not authorized to use any Cash Collateral for payment of pre-petition debts or any other purpose whatsoever. Absent prior written consent of West LB or further Order of this Court, including any Order authorizing the payment of professionals from the carve out under paragraph 27 of the Stipulation: (i) no further use of Cash Collateral is allowed after a Termination Event; and (ii) the use of Cash Collateral is expressly limited to the amounts set forth in the approved Budgets.

      4.     Starting in November 2009, for each month, Easy Street is ordered to submit to WestLB by the fifteenth (15th) calendar day of each month (i) a rolling three month budget for proposed use of Cash Collateral (the "Submitted Monthly Budgets"), and (ii) a reconciliation of actual receipts and expenditures for the preceding month against the receipts and expenditures projected in the Budget (the "Reconciliation Report"). Except as otherwise provided in the Stipulation, if the Submitted Monthly Budget contains any variations, adjustments or additions to the projected receipts or expenditures in the Budget for the prior month, then the Submitted Monthly Budget shall be subject to the review and approval of WestLB pursuant to the procedures set forth in paragraph 16 of the Stipulation.

      5.     In making expenditures authorized under the approved Budgets, Easy Street is ordered to use funds in the sequential order and subject to the terms set forth in paragraph 18 of the Stipulation.

6.      Easy Street is further ordered to: (i) make disbursements pursuant to any

Budget from the Bank Accounts as identified in <u>Exhibit C</u> of the Stipulation and in accordance

with the terms and conditions of paragraph 19 of the Stipulation; and (ii) deposit and maintain all

Cash Collateral, Refundable Deposits, and Revenues in the Bank Accounts as identified in

<u>Exhibit C</u> of the Stipulation and subject to the terms, conditions, and procedures of paragraph 20

of the Stipulation and paragraph 10(c) of this Order.

7.      As long as the Stipulation, as it may be amended from time to time,

governs the consensual use of Cash Collateral, Easy Street is prohibited from: (i) subjecting the

liens and security interests of WestLB to priming or <u>pari passu</u> liens, or other modification; or

(ii) seeking or obtaining any post-petition financing or other indebtedness under § 364 of the

Bankruptcy Code for any purposes other than the payment of the categories of line items set

forth in the Budget or the payment of claims secured by liens junior to those of WestLB.  For

avoidance of doubt, Easy Street is authorized to use such post-petition financing to pay sums in

excess of the line item amounts set forth in the Budget.

8.      Easy Street is prohibited from making any transfers of Cash Collateral or

loaning or otherwise transferring Cash Collateral to affiliates or to any other person or entity

outside of the ordinary course of business unless such transfers are made in accordance with the

Budget, the terms of the Stipulation, as the same may be amended in writing from time to time,

and this Order.

9.      Unless otherwise provided in the Stipulation, Easy Street is ordered to

comply with, and shall be subject to the penalties for failure to comply with, the reporting

requirements as provided in paragraph 24 of the Stipulation.

4

10.    Easy Street is ordered to provide WestLB with the following forms of

adequate protection for the use of its Collateral (including, but not limited to Cash Collateral)

during the term of the Stipulation:

(a)    WestLB shall be and hereby is granted a continuing, perfected,

first priority security interest in all of the Collateral and all proceeds thereof, whether existing on

the Petition Date or acquired thereafter (including, without limitation, all proceeds (as defined in

the New York Uniform Commercial Code) on account of the Collateral), and all assets of Easy

Street whether presently owned or hereafter acquired by Easy Street except avoidance actions

under chapter 5 of the Bankruptcy Code. The first priority security interests granted as Interim

Rights under the Interim Cash Collateral Stipulated Order and granted in and as part of the

Stipulation and this Order shall not be subject to challenge and shall attach and become valid,

binding, continuing, enforceable, fully-perfected and non-avoidable by operation of law as of the

Petition Date without any further action by Easy Street, WestLB, or any other person, and

without the necessity of execution by Easy Street, or the filing or recordation, of any financing

statements, security agreements, mortgages, deeds of trust, or other documents. Despite the

forgoing, WestLB may request additional documentation evidencing its perfected security

interests, including, without limitation, certain control agreements over Easy Street's Bank

Accounts, and Easy Street shall comply with any such requests;

(b)    By no later than October 20, 2009 and then the twentieth (20th) day

of each subsequent month after entry of this Order, Easy Street shall pay to WestLB the amount

of $34,000. This amount reflects an estimate of the approximate amount of the monthly interest

at the non-default contract rate on the value of WestLB's interest in the Collateral as of the

Petition Date which amount is set forth in the Initial Budget attached to the Stipulation and shall

be set forth in all subsequent Submitted Monthly Budgets required by the Stipulation.  The

payments due hereunder shall constitute adequate protection payments and the Parties shall

reserve all rights regarding the application of the payment against the allowed claims of WestLB.

WestLB shall release funds from the Petition Date Cash to enable Easy Street to make these

payments;

       (c)      On or before October 15, 2009, Easy Street shall arrange to be

deposited and WestLB shall release from controlled bank accounts (from post-petition Revenues

or Petition Date Cash) the following sums into the following Bank Accounts, each of which is

defined and further identified on <u>Exhibit C</u> of the Stipulation: (i) into the Tax and Insurance

Reserve Account, the sum of $43,624 on account of property taxes which Easy Street represents

will become due in November 2009; (ii) into the FF&E Reserve Account, the sum of $10,990;

(iii) into the HOA Reserve Account the sum of $183,610; and  (iv) all monies paid into the

controlled bank accounts for Refundable Deposits into the Sky Lodge Refundable Guest

Advance Deposits Trust Account, which account shall be established with a control agreement in

favor of WestLB with the security interest of WestLB being subordinate to the rights of the

beneficiaries of such Trust Account.  In addition, on or before the second (2nd) business day of

each month, Easy Street shall arrange to be deposited and WestLB shall release from controlled

bank accounts (from post-petition Revenues or Petition Date Cash) the following sums (which

amounts are set forth in the Initial Budget and shall be set forth in all subsequent Submitted

Monthly Budgets) into the following Bank Accounts, each of which is defined and further

identified on <u>Exhibit C</u> of the Stipulation: (i) into the Tax and Insurance Reserve Account, a sum

representing (a) one-twelfth (1/12) of the annual property taxes to be paid by Easy Street and (b) one-twelfth (1/12) of the annual insurance premiums to be paid by Easy Street; (ii) into the FF&E Reserve Account, a sum representing four percent (4%) of Easy Street's projected monthly gross revenue, exclusive of revenues from the sale of Fractional Ownership Units, if any, for the month in which the deposit is due; (iii) into the HOA Reserve Account, a sum representing one-third (1/3) of the HOA Deposit to be paid in the upcoming calendar quarter; and (iv) into the Debt Service Reserve Account the sum of $34,000 to be paid monthly to WestLB in accordance with paragraph 26(b) of the Stipulation and paragraph 10(b) of this Order. On or before Friday of each week, Easy Street shall arrange to deposit and West LB shall release from controlled bank accounts into the Sky Lodge Refundable Guest Advance Deposits Trust Account, all monies paid into the controlled bank accounts for Refundable Deposits during the preceding week (ending on Thursday).

(d)    WestLB shall be and hereby is granted a superpriority administrative claim against Easy Street's estate senior to all other administrative expenses set forth in §§ 503(b) and 507(b) of the Bankruptcy Code to the extent of a Post-Petition Loss occurring during or precipitated by events or circumstances arising or occurring during the period the Stipulation is in effect, including any extensions thereof.  This superpriority claim is subject and subordinate to the carve out for administrative claims in paragraph 27 of the Stipulation and paragraph 11 of this Order;

(e)    Without prejudice to any prior rights or claims of Easy Street or WestLB, Easy Street is ordered to name WestLB as the insured party and/or obtain loss payee endorsements in favor of WestLB for all policies of insurance obtained and/or renewed after

7

January 1, 2009 ("New Policies"), including, but not limited to: (i) all property insurance

policies; (ii) all commercial general liability insurance policies; (iii) all commercial umbrella

liability policies; and (iv) all other liability insurance policies. Easy Street is ordered to provide

WestLB with evidence of Easy Street's compliance with the foregoing on a continuing updated

basis as soon as reasonably possible. The material terms of each New Policy (subject to the

actual New Policy conforming to such material terms) obtained after October 30, 2009 shall be

subject to approval of WestLB, which approval shall not be unreasonably withheld. Not less

than fifteen (15) and not more than twenty-two (22) calendar days prior to the obtaining of a

New Policy, Easy Street shall provide to WestLB, in writing, the status with respect to such New

Policy and the anticipated terms, conditions and costs of such New Policy known to Easy Street

at such time. In the event that Easy Street obtains a New Policy after October 15, 2009, but prior

to approval by WestLB, the material terms shall remain subject to such reasonable approval of

WestLB as set forth above, which shall be deemed to have been granted if no written objection is

received by Easy Street from WestLB within fourteen (14) days of WestLB's receipt of such

material terms. All proceeds of insurance payable from New Policies shall constitute Cash

Collateral and shall remain subject to the rights of Easy Street and WestLB with respect to use of

Cash Collateral;

        (f)     Easy Street shall submit to WestLB for its approval (which

approval shall not be unreasonably withheld) on or before November 1, 2009, a Business Plan

setting forth Easy Street's overall strategic plan for managing, operating, financing, and

otherwise dealing with Sky Lodge, which shall serve as the basis for a proposed plan and a

restructuring of WestLB's loan and include all information specified in Exhibit DD to the Loan

Agreement. Easy Street shall promptly initiate good faith negotiations with WestLB regarding a

plan of reorganization that is feasible, acceptable to WestLB and can be proposed and confirmed

within the timeline provided for in the Stipulation;  .

        (g)     Without limiting Easy Street's obligations under the Loan

Documents or under applicable law, Easy Street shall continue, in accordance with its

obligations under the Loan Agreement, (i) to maintain all Permits and a valid liquor license

related to the Sky Lodge; (ii) to continuously operate and maintain the Sky Lodge in good

working order and condition as a full service, luxury hotel, in accordance with the performance

standards set forth in the Hotel Management Agreement, in compliance with all Laws, and as

"The Sky Lodge Private Residence Club and Hotel" or such other name approved by WestLB in

its reasonable discretion; and (iii) to perform Easy Street's obligations under the Hotel

Management Agreement, and to enforce the performance by Hotel Operator of all of Hotel

Operator's obligations under the Hotel Management Agreement;

        (h)    Easy Street shall collaborate with WestLB in the identification,

interview and engagement of a manger or operating consultant to serve as a co-managing officer

("Co-Manager") to assist and direct Easy Street in managing its business operations and

restructuring its obligations.  The retention of the Co-Manager must be approved by an Order of

the Court no later than December 1, 2009.  Upon retention of the Co-Manager, the expense of

such Co-Manager shall be added to the Budget, in an amount agreed to by WestLB.  Easy Street

shall have final authority to select the Co-Manager, but such Co-Manager must be reasonably

acceptable to WestLB, and Easy Street will provide WestLB with direct and unrestricted access

to the Co-Manager with respect to the current and projected business operations, and the

9

potential restructuring of WestLB's Loan under a plan of reorganization.  The Co-Manager's

authority and responsibility will include, but not be limited to, active participation in operating

and management decisions.  All material decisions regarding the business operations shall be

made jointly by the Co-Manager and other senior management of Easy Street.  If the Co-

Manager and other senior management disagree over any material decision affecting the business

operations, then counsel for Easy Street and counsel for WestLB shall in good faith attempt to

resolve the disagreement.  Any party may, upon notice and hearing, seek an order from the

Bankruptcy Court directing as to how Easy Street shall proceed to resolve the disagreement;

(i)     Easy Street shall not sell Fractional Ownership Units free and clear

of WestLB's liens on such Fractional Ownership Units except upon the following terms and

conditions:  (i) the proposed sale is an all cash transaction negotiated at arms length and on

normal and customary terms and conditions; (ii) WestLB will receive not less than 80% of the

net proceeds received by Easy Street from the sale of each Fractional Ownership Unit, which

sales shall be in compliance with the minimum release price requirements contained in the Loan

Documents or as may otherwise be agreed to by WestLB and Easy Street; and (iii) the remaining

20% of net proceeds shall be deposited into the Sale Proceeds Account (as identified on Exhibit

C of the Stipulation) and be subject to the terms of the Stipulation;

(j)     Any funds received by Easy Street as a result of its pending

adversary complaint against Bay North Realty Fund VI Limited Partnership, Adv. Proc.

No. 09-2422 (the "Adversary Proceeding"), whether by recovery on a judgment or settlement of

disputes, shall constitute Cash Collateral in which WestLB holds a valid, perfected first priority

lien under applicable law, the Loan Documents, the Interim Rights afforded under the Interim

Cash Collateral Stipulated Order, the Stipulation, and this Order. Easy Street further agrees that

it will pay 70% of the net proceeds recovered by Easy Street after deduction of direct, reasonable

and necessary costs of pursuing the litigation to WestLB and WestLB agrees that Easy Street

may retain in the Bank Accounts the amounts deducted for costs of litigation and 30% of the net

proceeds as Cash Collateral, the use of which is subject to the terms of the Stipulation or a

subsequent Order of the Bankruptcy Court. This obligation of Easy Street and WestLB's rights

in the Adversary Proceeding shall survive any termination of Easy Street's authority to use Cash

Collateral under the Stipulation and this Order and may be enforced at any time Easy Street

recovers proceeds from the Adversary Proceeding; and

      (k)     No later than December 3, 2009, Easy Street shall submit to

WestLB a term sheet of its proposed plan of reorganization. No later than December 23, 2009,

Easy Street shall file a disclosure statement and plan of reorganization, both of which must be

reasonably acceptable to WestLB with respect to any provisions that might have a material effect

on WestLB's rights and claims in the chapter 11 case or its treatment under the plan, or might

provide preferential or more favorable treatment to claims that are junior to or equal in priority to

those of WestLB, and such plan shall, in any event, provide that (i) the maturity date of the

restructured Loan will not be extended past December 31, 2011; (ii) the nondefault interest rate

applicable to the restructured Loan will be no less than LIBOR (as defined in the Loan

Documents) plus 6%; (iii) Easy Street will make monthly interests payments until December 1,

2010 and thereafter monthly payments according to a 20-year amortization schedule provided,

however, that the portion of the monthly payments constituting amortization of principal shall be

reduced by payments to WestLB from the sale of Fractional Ownership Units; (iv) WestLB has

approved the post-confirmation senior management team and/or any sales agent for unsold

Fractional Ownership Units, which approval will not be unreasonably withheld; and (v) WestLB

will receive as paydown of principal not less than 80% of the net proceeds received by Easy

Street from the sale of each Fractional Ownership Unit, which sales shall be in compliance with

the minimum release price requirements contained in the restructured Loan Documents or as

may be otherwise agreed to by WestLB and Easy Street, and the remaining 20% of net proceeds

shall be deposited into a Sale Proceeds Account and remain subject to a control agreement in

favor of WestLB.  No later than March 31, 2010, Easy Street shall obtain confirmation of a plan

of reorganization that is reasonably acceptable to WestLB and meets the minimum qualifications

described in (i)-(v) above.  Further, unless it receives the written consent of WestLB, Easy Street

shall not seek to extend the exclusive period under § 1121(c)(2) of the Bankruptcy Code to file a

plan and disclosure statement.  If Easy Street has filed a plan and disclosure statement in

accordance with the Stipulation, WestLB will consent to extension of the time to have a plan

accepted under § 1121(c)(3) of the Bankruptcy Code.

       11.    Any monthly amount for the line item "Legal + Admin & General" in the

Initial Budget and the approved Budgets shall constitute and serve as a "carve out" for

professionals seeking compensation from the estate, including attorneys and consultants for the

Debtors and Committee.  The liens and the super-priority claims granted to WestLB as adequate

protection shall be subject and subordinate to the carve out for professionals.  The budgeting of

such amounts does not constitute any admission or agreement by any party as to the timing or

amount to be paid to any such professional, and all payments to such professionals may only be

made as allowed by the Court and upon such terms and conditions as may be imposed by the

Court. Any fees or expenses incurred by professionals in connection with the Adversary

Proceeding may be paid when and if proceeds are recovered by Easy Street and in an amount not

to exceed the reasonable and necessary fees and costs deducted to realize the net proceeds to be

distributed under paragraph 26(j) of the Stipulation. The professionals for the Committee may

not seek nor receive more than $25,000 from the carve out for services related to the

investigation and analysis of the validity, amount, priority and perfection of the liens and claims

of WestLB, and potential avoidance actions against WestLB, and the professionals for the

Committee may not seek nor receive any amounts from the carve out for services related to the

commencement or prosecution of any claim or action attacking the validity, amount, priority or

perfection of the liens and claims of WestLB, or commencement or prosecution of any avoidance

action against WestLB. Upon a Termination Event, the carve out shall be limited to the amounts

set forth in the Budget for the period prior to the Termination Event, unless otherwise ordered by

the Court. In recognition of WestLB's approval of expenditures in the Budget and the carve out

for administrative fees, the Debtors waive any claims or rights under § 506(c) of the Bankruptcy

Code to surcharge the Collateral of WestLB for any expenses incurred during the time Easy

Street is authorized to use Cash Collateral under the Stipulation or any extension or amendment

thereto.

       12.     The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry, and the Stipulation shall be binding upon: (i) Easy Street, and any

trustee or examiner that may be appointed in these Chapter 11 Cases, or its respective successors

and assigns; (ii) WestLB and its respective successors and assigns; (iii) the trustee in the event

that the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code; and

13

(iv) all creditors and other parties in interest in the Chapter 11 Cases having notice of the

Stipulation, including parties claiming derivatively through Easy Street or its estate, with the sole

and limited exception that with respect to the committee of unsecured creditors appointed by the

Office of the United States Trustee (the "Committee"), the Stipulation regarding the amount,

validity, priority, perfection, and non-avoidance of the liens and claims of WestLB shall be

binding ninety (90) days after entry of this Order, unless the Committee institutes appropriate

litigation within that 90 day period to challenge such liens or claims.

13.    WestLB is entitled to all of the rights, remedies, protections and benefits

granted under §§ 363(m) and 364(e) of the Bankruptcy Code with respect to all uses of its

Collateral, including uses of its Cash Collateral.  In the event any or all of the provisions of this

Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation,

or stay shall not affect the validity or enforceability of any right, claim, lien, security interest,

priority, or payment authorized or created for the benefit of WestLB by the Interim Cash

Collateral Stipulated Order, the Stipulation or this Order.

14.    Except as specifically set forth in the Stipulation, the Parties expressly

reserve and retain all of their respective rights, remedies, or claims under the provisions of the

Bankruptcy Code, other applicable law, or the Loan Documents.

15.    The terms of the Stipulation may be extended by the Parties by mutual

agreement in writing.  The Parties shall file with the Court and serve on all interested parties a

notice of any such extension and the terms and conditions governing the extension.  The Court

may, without further notice or hearing, approve any such extension. Upon termination of Easy

14

Street's authority to use Cash Collateral, it may seek by motion on no less than 10 days notice

authority to continue to use Cash Collateral.

16.    This Order shall be binding and effective despite any conversion of the

Case to a case under any other chapter of title 11 of the United States Code.

17.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation, enforcement, or implementation of the Stipulation and this Order.

-------------------END OF ORDER---------------------

15

APPROVED AS TO FORM BY:

_____
Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT   84110-4050
TELEPHONE:  (801) 415-3000/FAX:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com)
CROWELL & MORING LLP
590 MADISON AVENUE, 20TH FLOOR
NEW YORK, NY  10022
TELEPHONE:  (212) 223-4000/FAX:  (212) 223-4134

Proposed Counsel for Debtors and Debtors in Possession


AND


_____
Annette W. Jarvis (jarvis.annette@dorsey.com) (1649)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT 84101
Telephone:  (801) 933-8933
Facsimile:  (801) 933-7373

Richard W. Havel (rhavel@sidley.com)
Drew A. Normal (dnorman@sidley.com)
Christina M. Craige (ccraige@sidley.com)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

Co-Counsel for WestLB, AG

16