Lon A. Jenkins, Esq.
Jones Waldo Holbrook & McDonough, PC
170 South Main Street
Suite 1500
Salt Lake City, UT 84101

Richard W. Havel, Esq.
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

## C.    Confirmation

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- Partners has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised by the Debtors or by a person acquiring property under the plan for services or for costs and expenses in, or in connection with, the chapter 11 cases, or in connection with the plan and incident to the chapter 11 cases, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the plan is reasonable or if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

- The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as member, director or officer of the Reorganized Debtor, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and with public policy, and Partners has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.

- With respect to each class of Claims or Interests, each holder of an impaired Claim or Interest has either accepted the plan or will receive or retain under the Plan on account of such holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the debtors were liquidated on the effective date under Chapter 7 of the Bankruptcy Code.  See discussion of "Best Interests Test," below.

NYIWDMS: 11417167_19

- Each class of Claims or Interests has either accepted the plan or is not impaired under the plan.

- Except to the extent that the holder of a particular Claim has agreed to different favorable treatment of such claim, the plan provides that administrative expense claims and priority tax claims will be paid in full as required by the Bankruptcy Code.

- At least one class of impaired claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim in such class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor or any successor to the debtors under the plan, unless such liquidation or reorganization is proposed in the plan. See discussion of "Feasibility," below, and the debtors' financial projections in **Exhibit 2**.

### 1.    Acceptance

Classes 1, 2, 4, and 5 of the Plan are impaired under the Plan and are entitled to vote to accept or reject the Plan. Class 3 of the Plan is unimpaired and, therefore, conclusively is presumed to have voted to accept the Plan.

### 2.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed only if the Bankruptcy Court finds that the Plan is feasible. A feasible plan is one that will not lead to a need for further reorganization or liquidation of the Debtor, unless such reorganization or liquidation is proposed in the Plan. Partners believes that the Plan satisfies the feasibility requirement imposed by the Bankruptcy Code, as described in more detail in the Debtors' projected financial information contained in **Exhibits 2-1, 2-2, and 2-3**.

As reflected on Exhibit 2-1, the Reorganized Debtor anticipates that it will sell 5 Units and that revenue from operations will generate sufficient funds to operate its business; however, due to extraordinary costs of this Chapter 11 case, which will be non-recurring, the new capital supplied by the Plan Funder will enable the Reorganized Debtor to make all required payments under the Plan, including debt service to WestLB under the Modified Loan Documents. Moreover, the cash required on the Effective Date for payments of the Allowed Jacobsen Claim and Allowed Claims of holders of General Unsecured Claims which elect the discounted cash option will be provided by the Plan Funder.

Exhibit 2-2 is five (5) year pro forma reflecting revenue and expenses from operations and Unit sales, and demonstrates sufficient net operating profits to make all payments provided under the Plan, including required debt service to WestLB.

Exhibit 2-3 reflects capital expenditures to be made at the Sky Lodge with funds provided by the Plan Funder.

45

The 2010 business plan and five year pro forma have been prepared by Partners' management in consultation with BDRC and Gemstone, incorporates their comments and changes, and represent a conservative projection of operations and sales.

### 3.    Best Interests Test

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of a Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if Partners was liquidated under chapter 7 of the Bankruptcy Code.  This requirement often is referred to as the "best interests" test.

The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of Partners' assets in the context of a chapter 7 liquidation.  These proceeds must then be reduced by the costs of such liquidation, including costs incurred during the chapter 11 cases and allowed under chapter 7 of the Bankruptcy Code (such as professionals' fees and expenses), a trustee's fees, and the fees and expenses of professionals retained by a trustee.  The potential chapter 7 liquidation distribution in respect of each Class must be reduced further by costs imposed by the delay caused by conversion to chapter 7.  In addition, inefficiencies in the claims resolution process in a chapter 7 would negatively impact the recoveries of creditors.  The net present value of a hypothetical chapter 7 liquidation distribution in respect of an impaired Class is then compared to the recovery provided for in the Plan for that Class.  The liquidation analysis is set forth as follows:

(i)    As detailed in the appraisal prepared by AGI (the "Appraisal"), as of December 4, 2009, the value of the Property is $22 million, excluding all liens and other encumbrances on the Property.

(ii)    Upon liquidation, the value of the Property would be reduced by 25% to 35%, leaving a value of the Property ranging from $14,300,000 to $16,500,000.[14]

(iii)    Upon liquidation, if the value of the Property were reduced by only 25%, the value of the Property would be $16,500,000.  The WestLB Secured Claim is in the amount of not less than $15,164,331.17 (as of the Petition Date) plus additional legal fees and alleged default rate interest.  Partners estimates that the Allowed WestLB Claim should be approximately $15.5 million.  Thus, WestLB will be paid 100% on liquidation.  As a result of the reduction in the value of the Property, the Allowed Jacobsen Secured Claim in the amount of $1,500,000 is only a partially secured claim in the approximate amount of $1 million.[15]  Thus, the Allowed Jacobsen Secured Claim will be paid approximately 67% of its Allowed Claim on liquidation.

_____

[14]  The range of the reduction in value of the Property due to liquidation was determined by AGI.

[15]  The $1 million claim amount is derived by subtracting the WestLB Secured Claim in the approximate amount of $15.5 million from the value of the Property in the reduced amount of $16.5 million.

NYIWDMS: 11417167_19

      (iv)    Prior to taking into consideration the fees and costs associated with a chapter 7 trustee, there will be no money left to pay Administrative Claims, Priority Claims and General Unsecured Claims.

      (v)    Upon liquidation, if the value of the Property were reduced by 35%, the value of the Property would be $14.3 million.  The WestLB Secured Claim in the approximate amount of $15.5 million will be paid approximately 92% on liquidation.  As a result of the reduction in value of the Property, the holder of the Allowed Jacobsen Secured Claim in the amount of $1.5 million will not receive any payment on its Allowed Jacobsen Secured Claim.

      (vi)    Moreover, prior to taking into consideration the fees and costs associated with a chapter 7 trustee, there will be no money left to pay Administrative Claims, Priority Claims and General Unsecured Claims.

In contrast, Classes 1, 2, 3 and 4 will recover 100% of their respective Allowed Claims under the Plan, unless the holders of Claims in Classes 2 (Jacobsen) and 4 (General Unsecured Creditors) voluntarily opt to receive a discounted amount in cash on or about the Effective Date.  In that event, Jacobsen would receive $1.33 million and the holders of the General Unsecured Claims would receive 50% of their Allowed Claims.  Partners, therefore, submits that each impaired Class will receive under the Plan a recovery substantially greater than the recovery such Class would receive pursuant to a liquidation of Partners under chapter 7 of the Bankruptcy Code.

**4.      Cramdown**

Partners will seek to confirm the Plan notwithstanding the rejection by any of Classes 1, 2, 3, and 5.  To obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, nonaccepting Class.  The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable."  The Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

      (i)    <u>Secured Creditors</u>.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

      (ii)    <u>Unsecured Creditors</u>.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan. (This provision is often referred to as the "absolute priority" rule.)

(iii)   Interests. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

A plan does not "discriminate unfairly" with respect to a nonaccepting class if the value of the cash and/or securities to be distributed to the nonaccepting class is equal to, or otherwise fair when compared to, the value of the distributions to other classes whose legal rights are the same as those of the nonaccepting class.

Accordingly, the requirements of section 1129(b)(2)(B)(ii) of the Bankruptcy Code that a plan is fair and equitable vis-à-vis non-consenting classes of unsecured claims that are not paid in full only if junior claims or interests do not receive any distribution "on account of such junior claim or interest," is not applicable to a nonprofit case like this one. As a consequence, Partners believes the Plan could be confirmed over the objections of a non-consenting class of unsecured creditors that are not paid in full pursuant to section 1129(b) of the Bankruptcy Code as matter of law.

## D.   Conditions Precedent

The Plan will be consummated on the Effective Date.

(1)   Conditions to Confirmation. The following are conditions precedent to confirmation of the Plan, each of which may be satisfied or waived in accordance with section 10.3 of the Plan.

(i)   The Bankruptcy Court shall have approved by Final Order a disclosure statement with respect to the Plan.

(ii)   The Plan Funder shall commit to providing sufficient funding to effectuate the Plan.

(iii)   The Confirmation Order shall be in form and substance reasonably acceptable to Partners.

(2)   Conditions to Effective Date. The following are conditions precedent to the Effective Date, both of which may be satisfied or waived in accordance with Section 10.3 of the Plan.

(i)   Partners or the Reorganized Debtor shall have executed and delivered the Modified Loan Documents, in a form that is reasonably acceptable to WestLB.

(ii)   The Confirmation Order shall have been entered and have become a Final Order.

(iii)   Partners or the Reorganized Debtor shall have sufficient cash necessary to pay claims required to be paid on the Effective Date.

48

(3)    Waiver of Conditions.  The conditions to confirmation at the Effective Date set forth above may be waived by Partners without any further notice to parties in interest or the Bankruptcy Court and without a hearing.

## VI.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain federal income tax consequences of the implementation of the Plan to the Debtors and certain holders of Claims and Interests.  The following summary does not address the federal income tax consequences to holders whose Claims are unimpaired or otherwise entitled to payment in full in Cash under the Plan (*e.g.*, Administrative Expense Claims).

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), existing and proposed Treasury regulations promulgated thereunder (the "Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof.  Changes or new interpretations of these rules may have retroactive effect and could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  The Debtors have not requested an opinion of counsel with respect to any of the tax aspects of the Plan.  In addition, the Debtors have not requested a ruling from the IRS concerning the federal income tax consequences of the Plan, and the consummation of the Plan is not conditioned upon the issuance of any such ruling.  Thus, no assurance can be given as to the interpretation that the IRS or a court of law will adopt.

This summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign persons, broker-dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, real estate investment trusts and tax-exempt entities).

This summary also assumes that the various third-party debt and other arrangements to which the Debtors are a party will be respected for federal income tax purposes in accordance with their form, and that Claims and Interests are held as capital assets.

*Accordingly, the following summary is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to a holder of a Claim or Interest.*

**IRS CIRCULAR 230 NOTICE:  TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT:  (I) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER FEDERAL, STATE OR LOCAL TAX LAWS, (II) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION**

49

OR MARKETING OF THE TRANSACTIONS OR MATTERS DISCUSSED
HEREIN, AND (III) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK
ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN
INDEPENDENT TAX ADVISOR.

### A.    Consequences to Partners

#### 1.    Partnership

Partners is a limited liability company that is taxed as a partnership for U.S. federal
income tax purposes. A partnership is not itself a taxpaying entity for U.S. federal income
tax purposes, and a partnership's income or loss (and items thereof) for each taxable period
during which it is in existence is allocated among its partners, who are required to report the
income or loss (and items thereof) allocated to them on their own tax returns. Generally, a
partner is not allowed to deduct his or her share of partnership losses for the year in excess
of the adjusted tax basis of his or her interest in the partnership, determined as of the end of
the partnership's taxable year in which the loss occurs. Any excess is allowed in any
subsequent year in which a partner's adjusted tax basis increases. A partner's tax basis is
initially equal to the amount of cash and the adjusted tax basis of property contributed to the
partnership.

Thereafter, tax basis increases for such items as additional contributions and the
partner's share of taxable and tax-exempt income and gain, and tax basis decreases for such
items as distributions and the partner's share of losses. An increase in a partner's share of
partnership liabilities or a partner's assumption of partnership liabilities is treated as a cash
contribution to the partnership that increases tax basis, and a decrease in a partner's share of
partnership liabilities or the assumption by the partnership of a partner's liabilities decreases
tax basis, but not below zero. (Cash distributions, including a decrease in a partner's share
of partnership liabilities, in excess of tax basis is taxable and generally treated as gain from
the sale of a partnership interest.) A partner shares partnership recourse liabilities to the
extent the partner bears the economic risk of loss with respect to the liabilities, i.e., based on
a hypothetical partnership liquidation at a time when the partnership has no assets, after
taking into account any rights of contribution or reimbursement from other partners or third
parties that are related to other partners. A partner also shares partnership nonrecourse
liabilities.

#### 2.    Cancellation of Indebtedness Income

Under the Tax Code, cancellation of indebtedness income ("COD Income") is
recognized by a partnership to the extent, and at the time, that certain debts are discharged
for less than full payment. The COD Income recognized at the partnership level is then
allocated among the partners pursuant to the allocation provisions of the partnership
agreement, if such provisions comply with the Tax Code regarding allocations, or, if not, in
accordance with the partners' interests in the partnership. The amount of COD Income, in
general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b)
the sum of (x) the amount of cash paid, (y) the issue price of debt that is not publicly traded
nor deemed exchanged for publicly traded property and (z) the fair market value of any new
consideration (including partnership interests) given in satisfaction of such indebtedness at

50

the time of the exchange.  COD Income also includes any interest that the taxpayer deducted under the accrual method of accounting but remains unpaid at the time the indebtedness is discharged.  COD Income generally does not include the discharge of indebtedness to the extent the payment of the liability would have given rise to a deduction.

All of Debtors COD Income that will be generated from the Plan will be allocated to the member of Partners.  Under the Tax Code, the tax treatment of that income will be determined with respect to each member at the member level.

### B.    Consequences to the Holders of Certain Claims and Interests

#### 1.    Holders of Allowed Class 1 Secured Claims

On the Effective Date, the holder of Allowed Class 1 Secured Claims shall receive a Modified Loan reflecting the terms of the Plan (the "Modified Loan").

##### (i)    Significant Modification

The U.S. federal income tax consequences of the exchange of an Allowed Class 1 Secured Claim for the Modified Loan will depend on whether the exchange results in a "significant modification" of the Allowed Class 1 Secured Claim (i.e., whether the terms of the Modified Loan are significantly different from the terms of the Allowed Class 1 Secured Claim exchanged therefor).  The Treasury Regulations under section 1001 of the Tax Code provide specific rules for determining whether certain modifications are "significant."  One such rule provides that the deferral of a scheduled payment will be considered 'significant' unless the deferred payments are unconditionally payable during the period that begins on the initial due date for such payment and extends for the lesser of five years or 50% of the original term of the debt instrument (the "Safe-Harbor Period").  For this purpose, the original term of an instrument is determined without regard to any option to extend the original maturity.  The exchange should result in a significant modification of the Allowed Class 1 Secured Claim because the maturity date of the Modified Loan is after the Safe-Harbor Period.  Therefore, the holders of the Secured Claims should have a taxable exchange under section 1001 of the Tax Code.

##### (ii)    Recognition of Gain or Loss

A holder who receives the Modified Loan in exchange for an Allowed Class 1 Secured Claim will generally recognize income, gain or loss for U.S. federal income tax purposes in an amount equal to the difference between (a) the stated principal amount of the Modified Loan (assuming the Modified Loan is not publicly traded nor deemed exchanged for publicly traded property) (the "Issue Price"), and (b) the holder's adjusted basis in its Allowed Class 1 Secured Claim.  Such gain or loss may be capital in nature and may be long-term capital gain or loss if the Allowed Class 1 Secured Claim was held for more than one year.  To the extent that a portion of the Modified Loan received represents accrued but unpaid interest that the holder has not already included in income, the holder may recognize ordinary interest income (as described in Section C below).  A holder's tax basis in any Modified Loan received should equal the Issue Price of the Modified Loan as of the date distributed to the holder, and a holder's holding period for the Modified Loan should begin on the day following the exchange.

51

A holder of the Modified Loan will be required to include stated interest on the Modified Loan in income in accordance with the holder's regular method of accounting to the extent such stated interest is "qualified stated interest." All stated interest on the Modified Loan that is unconditionally payable in Cash or property at least annually should be generally treated as "qualified stated interest."

### 2.   Holders of Allowed Class 2 Secured Claim

Pursuant to the Plan, the holder of an Allowed Class 2 Secured Claim can elect to receive either (i) a Cash payment upon confirmation of the Plan, plus a new note under which payments of eight percent (8%) of the Net Sale Proceeds of the Units will be made over a four year period with the accrual of interest at 8% per annum; or (ii) a discounted Cash payment on the Effective Date.

In general, each holder of an Allowed Class 2 Secured Claim will recognize gain or loss in an amount equal to the difference between (a) the "amount realized" by the holder in satisfaction of the Claim (other than any Claim for accrued but unpaid interest, as described below), and (b) the holder's adjusted tax basis in the Claim (other than any Claim for accrued but unpaid interest, as described in Section C below). The "amount realized" by a holder will equal the sum of any Cash received by the holder upon the Effective Date and/or the fair market value of the holder's right to receive subsequent distributions pursuant to the Plan (each depending on the option selected). The character of any gain or loss recognized as long-term or short-term capital gain or loss or as ordinary income or loss recognized by a holder of an Allowed Class 2 Secured Claim will be determined by a number of factors, including, among others the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was purchased at a discount, and whether and to what extent the holder had previously claimed a bad debt deduction in respect of such Claim.

Any loss, and a portion of any gain, realized by a holder in respect of their Allowed Class 2 Secured Claim may be deferred until all distributions have been made with respect to Allowed Class 2 Secured Claim. As a result of subsequent distributions, a holder may recognize additional gain or loss. In addition, a portion of such a delayed distribution may be treated as interest accrued from the Effective Date to the date of distribution. All holders of Allowed Class 2 Secured Claims should consult their tax advisors as to tax consequences of the receipt of additional distributions subsequent to the Effective Date.

### 3.   Holders of Allowed Class 4 General Unsecured Claims

Pursuant to the Plan, holders of Allowed Class 4 General Unsecured Claims will either receive (i) payment of 100% of their allowed claim, without interest, over four (4) years from the Effective Date from Excess Cash Flow, or (ii) a Cash payment of a discounted amount equal to 50% of the allowed claim on the Effective Date. In general, each holder of an Allowed Class 4 General Unsecured Claim will recognize gain or loss in an amount equal to the difference between (a) the "amount realized" by the holder in satisfaction of the Claim (other than any Claim for accrued but unpaid interest, as described in Section C below), and (b) the holder's adjusted tax basis in the Claim (other than any Claim for accrued by unpaid interest). The "amount realized" by a holder will equal the

52

sum of any Cash received by the holder upon the Effective Date and/or the fair market value of the holder's right to receive subsequent distributions pursuant to the Plan (depending on the payment option elected).  The character of any gain or loss recognized as long-term or short-term capital gain or loss or as ordinary income or loss recognized by a holder of an Allowed Class 4 General Unsecured Claim will be determined by a number of factors, including, among others the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was purchased at a discount, and whether and to what extent the holder had previously claimed a bad debt deduction in respect of such Claim.

Any loss, and a portion of any gain, realized by holder in respect of their Allowed Class 4 General Unsecured Claims may be deferred until all distributions have been made with respect to Allowed Class 4 General Unsecured Claims.  As a result of subsequent distributions, a holder may recognize additional gain or loss.  In addition, a portion of such a delayed distribution may be treated as interest accrued from the Effective Date to the date of distribution.

### 4.        Holders of Interests in Partners

In general, holders of Allowed Interests in Partners should recognize gain or loss in an amount equal to the difference between (x) the sum of the amount of Cash and the fair market value of other property, if any, received in respect of their Interest pursuant to the Plan (whether on or after the Effective Date), and (y) their adjusted tax basis in their Interest.  Such gain or loss generally will be capital gain or loss, and will be long-term if their Interest shall have been held for at least one year at the Effective Date.

### C.        Accrued but Unpaid Interest

A portion of the consideration received by holders of Claims may be attributable to accrued but unpaid interest on such Claims.  Such amount should be taxable to that holder as interest income if such accrued interest has not been previously included in the holder's gross income for U.S. federal income tax purposes.  Conversely, it is possible that a holder of Claims may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the Claims was previously included in the U.S. holder's gross income but was not paid in full by Debtors.  The character of such loss may be ordinary rather than capital, but the tax law is unclear on this issue.

### D.        Information Reporting and Withholding

All distributions to holders of Allowed Claims or Interests under the Plan are subject to any applicable withholding obligations (including employment tax withholding).  Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then-applicable rate (currently 28%).  Backup withholding generally applies if the holder: (i) fails to furnish its social security number or other taxpayer identification number ("TIN"); (ii) furnishes an incorrect TIN; (iii) fails properly to report interest or dividends; or (iv) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the

NYIWDMS: 11417167_19

TIN provided is such holder's correct number and that such holder is a United States person that is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

In addition, from an information reporting perspective, applicable Treasury Regulations generally require disclosure by a taxpayer on its federal income tax return of certain types of transactions in which the taxpayer participated, including, among others, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the holders' federal income tax returns.

*The foregoing summary has been provided for informational purposes only. All holders of Claims and Interests are urged to consult their tax advisors concerning the federal, state, local, and foreign tax consequences applicable under the Plan.*

## VII.   RISK FACTORS

HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, PARTNERS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION OR INVESTING IN ASSETS OF THE DEBTORS.

### A.   Certain Bankruptcy Considerations

Although Partners believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate a resolicitation of votes. Finally, there can be no assurance that any or all of the conditions to the Effective Date of the Plan will be met (or waived). Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated.

### B.   Material United States Federal Income Tax Considerations

THERE ARE A NUMBER OF MATERIAL UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS, RISKS AND UNCERTAINTIES ASSOCIATED WITH CONSUMMATION OF THE PLAN. INTERESTED PARTIES SHOULD READ CAREFULLY THE DISCUSSION SET FORTH IN SECTION VI OF THE DISCLOSURE STATEMENT, ENTITLED "CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN" FOR A DISCUSSION OF THE MATERIAL UNITED STATES FEDERAL INCOME TAX CONSEQUENCES AND RISKS FOR THE DEBTORS AND FOR HOLDERS OF CLAIMS AND INTERESTS THAT ARE ENTITLED TO VOTE TO

NYIWDMS: 11417167_19

ACCEPT OR REJECT THE PLAN RESULTING FROM THE TRANSACTIONS
OCCURRING IN CONNECTION WITH THE PLAN.

### C.    Risks Associated with the Exit Funding

The Reorganized Debtor's operations are dependent on the availability and cost of
working capital financing and may be adversely affected by any shortage or increased cost
of such financing. Partners' anticipates that the Plan funder will provide sufficient funds, in
either capital or loans, to (i) fund the Mezzanine Escrow, (ii) make Effective Date and
ongoing payments to the holders of Claims, and (iii) provide short-term working capital
needs.

Partners believes that substantially all of its needs for funds necessary for post-
Effective Date working capital financing will be met by projected operating cash flow or the
funds provided by the Plan Funder.

## VIII.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, Partners' alternatives include (i)
liquidation of Partners under chapter 7 of the Bankruptcy Code and (ii) the preparation and
presentation of an alternative plan or plans of reorganization or liquidation.

### A.    Liquidation Under Chapter 7

If the Plan or any other chapter 11 plan for Partners cannot be confirmed under
section 1129(a) and (b) of the Bankruptcy Code, this chapter 11 case may be converted to a
case under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or
appointed to liquidate any remaining assets of Partners for distribution to creditors pursuant
to chapter 7 of the Bankruptcy Code. If a trustee is appointed or elected and the remaining
assets of Partners is liquidated under chapter 7 of the Bankruptcy Code, all holders of
Administrative Claims, Priority Claims and General Unsecured Claims will receive no
distribution distributions on account of their Allowed Claims. See "Best Interest Test" on
pages 43-44, supra.

### B.    Alternative Chapter 11 Plan

If the Plan is not confirmed, Partners, or any other party in interest, may attempt to
formulate an alternative chapter 11 plan, which might provide for the liquidation of
Partners' remaining assets other than as provided by the Plan. Any attempt to formulate an
alternative chapter 11 plan would unnecessarily delay creditors' receipt of distributions yet
to be made and, due to the incurrence of additional administrative expenses during such
period of delay, may provide for smaller distributions to holders of Allowed Unsecured
Claims and Interests than are currently provided for under the Plan. Accordingly, Partners
believes that the Plan will enable all creditors to realize the greatest possible recovery on
their respective Claims or Interests with the least delay.

NYIWDMS: 11417167_19

## IX.    CONCLUSION AND RECOMMENDATION

Partners believes that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to holders of Claims and Interests.  Other alternatives would involve significant delay, uncertainty and substantial additional administrative costs.  Partners urges holders of impaired Claims and Interests entitled to vote on the Plan to accept the Plan and to evidence such acceptance by returning their Ballots so that they will be received no later than 4:00 p.m., Mountain Time, on March _____, 2009.

**\*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK\***

NYIWDMS: 11417167_19

DATED this 15th day of January, 2010.

EASY STREET PARTNERS, LLC

By: _____

William Shoaf

DURHAM JONES & PINEGAR, P.C.

By: _____

Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
Steven J. McCardell (smccardell@djplaw.com)(2144)
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84111-4050
Telephone:  (801) 415-3000
Facsimile:  (801) 415-3500

and

CROWELL & MORING LLP
Michael V. Blumenthal (mblumenthal@crowell.com)
(admitted pro hac vice)
Steven B. Eichel (sdeichel@crowell.com)
(admitted pro hac vice)
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000
Facsimile:  (212) 223-4134

Counsel for Debtors and Debtors in Possession

SLC_529286.1

# Exhibit 1

Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000/Fax: (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted *pro hac vice*)
Steven B. Eichel (seichel@crowell.com) (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000/Fax: (212) 223-4134

Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>EASY STREET HOLDING, LLC, *et. al.*<br><br>    Debtors<br><br>Address:   201 Heber Avenue<br>               Park City, UT 84060<br><br>Tax ID Numbers:<br>35-2183713 (Easy Street Holding, LLC),<br>20-4502979 (Easy Street Partners, LLC), and<br>84-1685764 (Easy Street Mezzanine, LLC) | Bankruptcy Case No. 09-29905<br>Jointly Administered with Cases<br>09-29907 and 09-29908<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier<br><br><br>**[FILED ELECTRONICALLY]** |

## PLAN OF REORGANIZATION OF EASY STREET PARTNERS, LLC
## DATED JANUARY 15, 2010

TABLE OF CONTENTS

ARTICLE I. Definitions ............................................................................................ 2

ARTICLE II. Treatment of Administrative and Priority Claims ......................... 10

ARTICLE III. Designation of Claims and Interests............................................. 12

ARTICLE IV. Claims and Interests Impaired Under the Plan............................ 12

ARTICLE V. Treatment of and Methods of Distribution to Classes Under the Plan.......... 12

ARTICLE VI. Provisions as to Disputed Claims and Distributions ..................... 17

ARTICLE VII. Means for Execution of the Plan ................................................ 21

ARTICLE VIII. Executory Contracts ................................................................. 22

ARTICLE IX. Discharge of the Debtor .............................................................. 25

ARTICLE X. Conditions Precedent..................................................................... 25

ARTICLE XI. General Provisions ....................................................................... 26

ARTICLE XII. Retention of Jurisdiction............................................................ 34

## Introduction

Easy Street Partners, LLC ("Partners") hereby proposes the following plan of

reorganization pursuant to § 1121(c) of the Bankruptcy Code.  Reference is made to the

Disclosure Statement (as defined herein) for results of operations, projections for future

operations, risk factors, a summary and analysis of the Plan (as defined herein) and certain

related matters.  Partners is the proponent of the Plan within the meaning of section 1129 of the

Bankruptcy Code (as defined herein).

These cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to an order of the United States Bankruptcy Court for the District of Utah,

Central Division.  The Plan does not contemplate substantive consolidation of Partners with any

of the Other Debtors, and this Plan is for Partners only.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot

be solicited from a holder of a Claim or Interest until such time as the Disclosure Statement has

been approved by the Bankruptcy Court and distributed to holders of Claims and Interests.  ALL

HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN

AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO

ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in section 1127 of the

Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined herein) and the Plan, Partners

expressly reserves its right to alter, amend or modify the Plan, one or more times, before its

substantial consummation; provided however, that any amendment or modification made after

the Voting Deadline that materially and adversely alters the treatment of any Class entitled to a

distribution under the Plan shall require the approval of either (i) the Bankruptcy Court or (ii) the affected Class.

# ARTICLE I.

## Definitions

The following terms shall have the respective meanings set forth below.  In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.  Any term not defined herein which is defined by the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.

1.1    "Administrative Claim" means a claim which is not a secured claim, accruing from and after the Filing Date, including the fees and expenses of professional persons retained or to be compensated pursuant to the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under Chapter 123, title 28, of the United States Code.

1.2    "Allowed Claim" means a Claim or any portion thereof (a) that has been allowed by a Final Order, (b) as to which, on or by the Effective Date (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, (c) for which a proof of claim in a liquidated amount has been filed pursuant to the Bankruptcy Code or any order of the Bankruptcy Court and as to which either (x) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or any order of the Bankruptcy Court or (y) any objection to its allowance has been settled, waived through payment or withdrawn, or ahs been denied by a Final Order of (d) that is expressly allowed in a liquidated amount in the Plan.

1.3     "Allowed . . . Claim" means an Allowed Claim of the particular type or Class described.

1.4     "Assets" means all property of the Estate as defined in section 541 of the Bankruptcy Code.

1.5     "Ballot" means each of the ballot forms distributed to each holder of an impaired Claim or Interest on which the holder of such Claim or Interest is to indicate acceptance or rejection of this Plan.

1.6     "Bankruptcy Code" means Title 11, United States Bankruptcy Code, 101 *et seq.*, commonly referred to as the Bankruptcy Code.

1.7     "BayNorth" means BayNorth Realty Fund VI, LP.

1.8     "BayNorth Adversary Proceeding" means the adversary proceeding commenced by the Debtors on September 15, 2009 in the Bankruptcy Court against BayNorth, Adversary Proceeding Number 09-02422.

1.9     "BayNorth Transfer" means the $5.6 million disbursement from the real estate sales escrow account to BayNorth on or about February 18, 2008.

1.10    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Utah, Central Division or such other court as may have jurisdiction over Partners' Chapter 11 bankruptcy case.

1.11    "Business Day" means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.12    "Claim" means a claim against Partners as defined in § 101(5) of the Bankruptcy Code.

1.13    "Class" means a group of claims or interests, consisting of Claims or Interests which are substantially similar to each other, as classified pursuant to the Plan.

1.14    "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.15    "Confirmation Order" means the order of the Bankruptcy Court approving the Plan pursuant to § 1129 of the Bankruptcy Code and related sections thereof.

1.16    "Control Account(s)" means the accounts maintained by Partners, including an operating account, Sales Proceeds Account, sales deposit account and lockbox account, which are pledged to WestLB, and will continue to be maintained by the Reorganized Debtor.

1.17    "Cure Claim" has the meaning ascribed to it in Article 8.5 of the Plan.

1.18    "Disbursing Agent" means the Person or Entity designated in the Plan Supplement to disburse funds in accordance with the terms of this Plan.  The Disbursing Agent may be the Reorganized Debtor.

1.19    "Debtor" means Easy Street Partners, LLC.

1.20    "Disputed Claim" means (a) any Claim as to which Partners has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code or the Bankruptcy Rules, or any claim otherwise disputed by Partners, the Creditors' Committee, or the Reorganized Debtors or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, and (b) and any Claim scheduled by Partners as contingent, unliquidated or disputed, where a proof of claim has not been filed.

1.21    "Effective Date" means the first business day after the 30th day subsequent to the Confirmation Order becoming a Final Order.

1.22    "Entity" shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

1.23    "Estate" means the Debtor's property as defined in section 541 of the Bankruptcy Code.

1.24    "Excess Cash Flow" means cash remaining after all required payments to West LB, Jacobsen and Allowed Administrative and Priority Claims are paid, with a reasonable reserve equal to the mandatory payments due to the foregoing senior creditors over the next three (3) months, plus thirty (30) days of necessary expenses to operate the project.

1.25    "Final Order" means an order or a judgment which has not been reversed or stayed and as to which (i) the time to appeal or to seek review, rehearing or certiorari has expired pursuant to Rule 8002 of the Bankruptcy Rules and (ii) (a) no appeal or petition for review, rehearing or certiorari is pending or (b) in the case of appeal, any such appeal or petition for review, rehearing or certiorari has been dismissed.

1.26    "General Unsecured Claim" means a Claim which is not entitled to priority under § 507(a) of the Bankruptcy Code and which is not secured by a valid, perfected security interest or lien and including a Claim, if any, arising from the rejection of an executory contract.

1.27    "Impaired" when used with respect to any Claim, Interest or Class, has the same meaning as that contained in § 1124 of the Bankruptcy Code.

1.28    "Interest" means the membership rights of the equity interests holders in Partners prior to the Confirmation Date.

1.29    "Interest Holder" means Easy Street Mezzanine, LLC.

1.30    "Jacobsen" means Jacobsen National Group, Inc.

1.31    "Jacobsen Secured Claim" means the Claim of Jacobsen against Partners in the amount of $1.5 million, which Claim is secured by liens on and against the Property.

1.32    "Legal Fees" means, with respect to any engagement of any attorney by any client, reasonable market-based fees incurred by the attorney on behalf of the client.

1.33    "Litigation Costs" means, with respect to any engagement, reasonable market – based expenses other than Legal Fees incurred by the attorney on behalf of the client.

1.34    "Maturity Date" means the date the balance of the loan from WestLB is due and owing, which date shall be either December 31, 2011 or December 31, 2013.  The Maturity Date shall be extended from December 31, 2011 through December 31, 2013, if (i) the Reorganized Debtor amortizes the Allowed WestLB Claim pursuant to the five (5) year business plan annexed to the Disclosure Statement as Exhibit 2, and (ii) the loan to value ratio is equal or greater than such ratio as of the Confirmation Date.

1.35    "Mezzanine Escrow" means an amount of money held by the Disbursing Agent for distribution pursuant to a plan of reorganization or liquidation to be filed by Mezzanine subsequent to the Confirmation Date or as otherwise ordered by the Bankruptcy Court.  The amount of the Mezzanine Escrow shall be equal to the difference between the appraised value of Partners' assets as determined by the Bankruptcy Court and the aggregate amount of all Allowed Claims against Partners.

1.36    "Modified Loan Documents" means loan documents between Partners and WestLB that modify existing loan documents reflecting the terms of the Plan, which documents shall be executed on or before the Effective Date and annexed to the Plan Supplement and which shall become binding on the Reorganized Debtor on and after the Effective Date

1.37    "Net Sale Proceeds" means the proceeds from the sale or liquidation of a Unit or

other Asset of Partners, minus reasonable and customary closing costs.  Closing costs shall

include, without limitation, professional fees, brokerage fees and any non-exempt transfer taxes

or fees.

1.38    "Net Recovery" means, with respect to the BayNorth Adversary Proceeding or

such other action commenced by Partners or the Reorganized Debtor, all money and all benefits

measurable or payable in money, received on account of any settlement, recovery, or judgment

entered, less (a) Legal Fees and Litigation Costs incurred in connection with such proceeding

and (b) applicable income taxes that will be incurred by Partners for the settlement, recovery, or

judgment of such action or proceeding.

1.39    "Other Secured Claims" means the Claims of secured creditors other than

WestLB and Jacobsen.

1.40    "Other Secured Creditors" means the holders of Other Secured Claims.

1.41    "Partners" means Easy Street Partners, LLC.

1.42    "Person" shall have the meaning as set forth in §101(41) of the Bankruptcy Code.

1.43    "Petition Date" means September 14, 2009, the date on which the Debtor filed its

Chapter 11 petition.

1.44    "Plan" means this plan of reorganization, and all exhibits hereto, as the same may

be modified or amended from time to time as and to the extent permitted herein or by the

Bankruptcy Code.

1.45    "Plan Funder" means the person or entity that provides funding as required for

Partners to confirm this Plan.  SCP or an entity formed by SCP or an affiliate of SCP will be the

Plan Funder.  An entity formed by SCP will own a controlling interest of the Reorganized

Debtor.

1.46    "Priority Claim" means the portion of a Claim entitled to priority under § 507(a)

of the Bankruptcy Code.

1.47    "Priority Tax Claim" means a claim of a governmental unit of the kind specified

in sections 502(i) and 502(a)(8) of the Bankruptcy Code.

1.48    "Professional" means a person retained by order of the Court pursuant to §§ 327

or 1103 of the Bankruptcy Code and whose compensation is governed by § 330 of the

Bankruptcy Code.  The term "Professional" shall not include the Disbursing Agent or the United

States Trustee.

1.49    "Professional Claims" means the Allowed Claims of a Professional retained in

these bankruptcy cases for compensation for services rendered or reimbursement of costs,

expenses or other charges and expenses incurred on or after the Petition Date and prior to and

including the Effective Date.

1.50    "Property" means the real property and buildings and improvements thereon

owned by Partners located at 201 Heber Avenue in Park City, Utah, a/k/a The Sky Lodge Hotel

and 660 Main Street, Park City, Utah 84060.

1.51    "Record Date" means the date approved of by the Bankruptcy Court closing the

claims register for purposes of determining the identity of the holders of Claims and Interests

that are entitled to vote to accept or reject the Plan, which shall be set forth in the order

approving the Disclosure Statement.

1.52    "Redemption Price" means the sale price that WestLB intends to sell the WestLB

Secured Claim to a third party, and pursuant to which the Reorganized Debtor or the Plan Funder

shall have the right of first refusal.

1.53    "Released Parties" has the meaning ascribed to it in section 10.5 of the Plan.

1.54    "Reorganized Debtor" means Partners after the Effective Date of the Plan or such

other Entity formed by the Plan Funder.  In either event, Partners' Assets will vest into the

Reorganized Debtor as of the Effective Date.

1.55    "Sales Proceeds Account" means one of the Control Accounts into which 80% of

the Net Sale Proceeds received by the Reorganized Debtor from the sale of each Unit will be

deposited.

1.56    "Scheduled" means, with respect to any Claim or Interest, the status and amount,

if any, of such Claim or Interest as set forth in the Schedules.

1.57    "Schedules" means the schedules of assets and liabilities filed by Partners on

October 15, 2009 in accordance with Bankruptcy Rule 1007(b), filed by the Debtor with the

Bankruptcy Court (as they may be amended from time to time in accordance with Bankruptcy

Rule 1009).

1.58    "SCP" means Strategic Capital Partners, LLC.

1.59    "Secured Claim" means a Claim secured by a valid, perfected and enforceable

lien on the Property, to the extent of the value of the interest of the holder of such Secured Claim

in such Property as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy

Code.

1.60    "Secured Creditor" means the holder of a claim which is secured by a valid,

perfected and enforceable lien on property of the Debtor, to the extent of the value of the interest

of the holder of such secured claim in such property as determined by the Bankruptcy Court

pursuant to § 506(a) of the Bankruptcy Code or as acknowledged in writing by the Debtor.

1.61    "Third Party Units" has the meaning ascribed to it in section 5.2(c) of the Plan.

1.62    "Unit" means a one-eighth fractional share of one of the 22 residential units at the

Property entitling the owner to two ski weeks (mid –December through mid-April) each year,

plus 21 days throughout the year.  There are 176 Units at the Property, of which 113 Units were

sold prior to the Petition Date.

1.63    "WestLB" means WestLB AG, New York Branch, the secured lender of Partners.

1.64    "WestLB Adversary Proceeding" means the adversary proceeding commenced on

January 12, 2010, by the Creditors' Committee against WestLB in the Bankruptcy Court seeking

to (i) equitably subordinate the claims of WestLB to the Claims of all unsecured creditors of

Partners and (ii) avoid Partners' waiver of its claims against WestLB and recover such claims for

the benefit of Partners' estate.

1.65    "WestLB Secured Claim" means the Claim of WestLB against Partners in the

Allowed amount no less than $15,164,331.17 as of the Petition Date, pursuant to and consistent

with § 506 of the Bankruptcy Code, which Claim is secured by a lien on and against the Property

and substantially all of Partners' other assets.

1.66    "Zoom" means that portion of the Property consisting of the restaurant owned by

Partners and located at 660 Main Street, Park City, Utah 84060.

## ARTICLE II.

### Treatment of Administrative and Priority Claims

2.1    With respect to Administrative Claims other than Administrative Claims of

Professionals, except to the extent that a holder of an Allowed Administrative Claim agrees to a

NYIWDMS: 11434131_11

different treatment, the Allowed Administrative Claims shall be paid (i) in the ordinary course of business, or (ii) within thirty (30) days after the Effective Date if not an ordinary course claim, or (iii) within ten (10) days of entry of a Final Order allowing such Administrative Claim.

    2.2    With respect to Administrative Claims of Professionals, the Allowed Administrative Claims of Professionals will be paid in full on the later of: (i) the Effective Date or (ii) ten (10) days after entry of an order of the Court approving the fees and expenses of such Professional pursuant to section 330 of the Bankruptcy Code.

    2.3    With respect to the Administrative Claim of the United States Trustee, Partners shall pay all fees due and payable under section 1930 of Title 28 within ten (10) days after the Effective Date.  In addition, Partners or the Reorganized Debtor shall pay the United States Trustee quarterly fees due and payable on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business until entry of a Final Decree, dismissal of the case or conversion of the case under chapter 7, as such obligations become due.

    2.4.    With respect to Priority Claims, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive equal quarterly Cash Payments over a period not exceeding five (5) years from the Petition Date, with the first payment to occur on the first business day of the third month after the Effective Date, at an interest rate of 6% or a rate agreed upon between the Reorganized Debtor and the taxing authority or otherwise set by the Bankruptcy Court.

    2.5    All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

    2.6    All other Priority Claims shall be paid in full on the Effective Date.

NYIWDMS: 11434131_11

## ARTICLE III.

### Designation of Claims and Interests

The following Classes of Claims and Interests are designated pursuant to and in accordance with § 1123(a)(1) of the Bankruptcy Code:

3.1    "Class 1 Claim" shall consist of the Allowed WestLB Secured Claim.

3.2    "Class 2 Claim" shall consist of the Allowed Jacobsen Secured Claim.

3.3    "Class 3 Claims" shall consist of the All Other Allowed Secured Claims against Partners.

3.4    "Class 4 Claims" shall consist of the Allowed General Unsecured Claims against Partners.

3.5    "Class 5 Interests" shall consist of the Interests in Partners.

## ARTICLE IV.

### Claims and Interests Impaired Under the Plan

4.1    Class 1 Claims, Class 2 Claims, Class 4 Claims, and Class 5 Interests are impaired under the Plan and are entitled to vote on the Plan.

## ARTICLE V.

### Treatment of and Methods of Distribution to Classes Under the Plan

5.1    Class 1 Claim.  In full and complete satisfaction, settlement and release of and in exchange for the Allowed WestLB Claim, the Allowed Class 1 Claim shall be paid as follows:

(a)    The Allowed WestLB Secured Claim shall accrue interest at 3-month LIBOR plus 6%; provided however, the maximum rate shall be capped at 8% ("Contract Rate"), until paid in full.

(b)    WestLB shall retain a lien on all of Partners' assets and shall be provided with a lien on all of the Reorganized Debtors' assets and "Control Accounts" shall be established similar to those currently in effect. Modified Loan Documents shall be

executed on or before the Effective Date, which shall be reasonably acceptable to
Partners, WestLB and the Plan Funder.

(c)     The Allowed WestLB Secured Claim shall be paid as follows:  Monthly
interest payments subsequent to the Effective Date shall be paid on the first business day
of each month, one month in arrears, on the outstanding principal balance of the Allowed
WestLB Secured Claim through December 31, 2010 at the Contract Rate.  Thereafter,
monthly payments shall be made according to a 20-year amortization schedule; provided,
however, all or a portion of the monthly payments constituting amortization of principal
(but not the portion of the monthly payments constituting interest) shall be reduced by
payments previously made to WestLB after the Effective Date from the sale of Units until
the loan is repaid.  Sums remaining due and owing on the Maturity Date shall be paid in
full.  The Maturity Date shall be extended from December 31, 2011 through
December 31, 2013, if (i) the Reorganized Debtor amortizes the Allowed WestLB Claim
pursuant to the five (5) year business plan annexed to the Disclosure Statement as
Exhibit 2, and (ii) the loan to value ratio is equal to or greater than such ratio as of the
Confirmation Date.

(d)     WestLB shall receive 80% of the Net Sale Proceeds received by the
Reorganized Debtor from the sale of each Unit, each of which sales must exceed a
minimum release price to be reasonably acceptable to WestLB or otherwise ordered by
the Bankruptcy Court.  The remaining 20% of Net Sale Proceeds shall be deposited into a
Control Account, provided, however, said sums may be utilized in connection with costs
of running the Property and other Plan payments.

(e)     In the event of the sale of the restaurant Zoom, which sale must exceed a
minimum price reasonably acceptable to WestLB or as otherwise ordered by the
Bankruptcy Court, along with the underlying property, WestLB shall receive 50% of the
Net Sale Proceeds received by the Reorganized Debtor.  The remaining 50% of the Net
Sale Proceeds shall be utilized by the Reorganized Debtor for expenses relating to
operations of the Sky Lodge, payments in connection with the Plan, or repayment of
loans or distribution to the Plan Funder (provided all payments under the Plan are
current).

(f)     Prepayment of the loan to WestLB shall be allowed without penalty.

(g)     The Reorganized Debtor or the Plan Funder shall have the right of first
refusal to purchase or satisfy the WestLB Secured Claim at a discount or par, as the case
may be, in the event WestLB seeks to sell or assign its claim to a third party for the price
being offered by the third party, irrespective of whether the WestLB Secured Claim is
being sold by itself or in a package with other loans.  WestLB shall promptly notify the
Reorganized Debtor and the Plan Funder of its intent to accept an offer for its outstanding
loan balance and specify the Redemption Price, and the Reorganized Debtor and Plan
Funder shall have sixty (60) days to purchase or satisfy said loan for the Redemption
Price.

(h)     Any Net Recovery received in connection with the BayNorth Transfer shall be paid 70% to WestLB amortizing the outstanding indebtedness to WestLB and 30% to the Reorganized Debtor for utilization of Property expenses, payment to Allowed Claims of creditors pursuant to the Plan or utilized by the Reorganized Debtor as determined by the Plan Funder.  To the extent claims of creditors, other than WestLB, have been fully paid, such remaining sums shall be free cash for utilization by the Reorganized Debtor.

(i)     Upon payment of the Allowed WestLB Secured Claim in full, the lien of WestLB on the Property shall be deemed released and satisfied and the holder of the Allowed WestLB Claim shall execute such documents releasing its liens on the Property and all Assets of the Reorganized Debtor as is requested by and reasonably acceptable to Partners.

(j)     Notwithstanding any other provision of the Plan to the contrary, the CloudNine Resorts LLC guaranty of WestLB's loan to Partners shall remain in place and shall be reaffirmed on the Effective Date, provided however, that the only triggering event of a default against CloudNine Resorts LLC shall be prospective defaults subsequent to the Effective Date.  All prior defaults, if any, are waived.

(k)     Class 1 is impaired by the Plan. WestLB, as the sole holder of the Class 1 Claim, is entitled to vote to accept or reject the Plan.

5.2     <u>Class 2 Claim</u>.

(a)     In full and complete satisfaction, settlement and release of and in exchange for the Allowed Jacobsen Secured Claim against Partners and the owners of Third Party Units pursuant to sections 5.2(a)(2), 5.2(d) and 5.2(e), the holder of the Allowed Jacobsen Secured Claim shall have an Allowed Secured Claim in the amount of $1.5 million, which shall accrue interest at 8% simple interest from and after the Confirmation Date on the outstanding principal balance of the Allowed Jacobsen Secured Claim, and the Claim shall be treated under one of the following two options to be elected by the holder of the Allowed Jacobsen Secured Claim on its Ballot in connection with voting on the Plan:

(1)     Under option one, the holder of the Allowed Jacobsen Secured Claim (i) shall be granted a promissory note and second priority deed of trust and fixture filing on the real estate assets and related buildings and fixtures of the Reorganized Debtor, which promissory note and deed of trust and fixture filing shall contain standard terms and conditions typical for commercial loans, (ii) shall receive on the Effective Date $600,000 from the Sales Proceeds Account, and (iii) shall be paid an amount equal to eight percent (8%) of the Net Sale Proceeds of the Units over a term not to exceed four (4) years from the Confirmation Date, at which time any remaining balance shall be paid in full.

(2)    Under option two, Jacobsen may elect a discounted cash payment on the Effective Date equal to $1,330,000 in full and complete satisfaction, settlement and release of and in exchange for the Allowed Jacobsen Secured Claim against Partners, the Reorganized Debtor and any third parties who may also be liable on the claim or own real property securing the claim (including the Third Party Units), and shall promptly release its liens against any real estate assets securing such claim.

(3)    Jacobsen shall be enjoined from foreclosing on Assets of the Reorganized Debtor, provided that the Reorganized Debtor is current and making the payments provided in the Plan to Jacobsen, and is otherwise not in default of its obligations under the promissory note and deed of trust and fixture filing being granted to the holder of the Jacobsen Secured Claim to document and secure the Reorganized Debtor's performance hereunder.

(b)    All pending actions against Units owned by third parties (the "Third Party Units") and the third parties owning the Units shall be stayed for a period of six (6) months from the Confirmation Date.

(c)    Upon Jacobsen's receipt of $4,500 (the "Unit Release Price") for a particular Unit, (i) Jacobsen and the owner of the Unit for which the Unit Release Price is received by Jacobsen shall be deemed to have mutually released each other with respect to Jacobsen's lien on the particular Unit and Jacobsen's work on the particular Unit, (ii) the lien of Jacobsen on the particular Unit shall be deemed released and satisfied and Jacobsen shall execute such documents releasing its lien with respect to that particular Unit (irrespective of source of payment), and (iii) the owner of the Unit shall be dismissed with prejudice from the litigation commenced by Jacobsen to enforce its liens.

(d)    Upon payment of the Allowed Jacobsen Secured Claim in full, the lien of Jacobsen on the Property and the Third Party Units shall be deemed released and satisfied and the holder of the Allowed Jacobsen Secured Claim shall execute such documents releasing its liens on the Property, and all Assets of the Reorganized Debtor and all the Third Party Units, as is requested by and reasonably acceptable to the Reorganized Debtor.

(e)    Upon payment of each Unit Release Price (irrespective of who made the payment), the Reorganized Debtor shall be credited for the amount paid and such amount shall reduce the principal amount of the Allowed Jacobsen Secured Claim accordingly, with such payment being applied first to accrued and unpaid interest (if any), and then to unpaid principal.

(f)    The treatment provided herein to the holder of the Allowed Jacobsen Secured Claim shall be in full satisfaction, discharge and release of all of the obligations to the holders of the Allowed Jacobsen Secured Claim.

(g)     Notwithstanding anything contained in the Plan, the Reorganized Debtor shall retain all warranty claims against Jacobsen.

(h)     If the holder of the Allowed Jacobsen Secured Claim fails to vote or affirmatively elect option 1 or 2, then the holder of the Allowed Jacobsen Secured Claim shall be paid in accordance with option 1 as set forth in Article 5.2 (a)(1) above.

(i)     Class 2 is impaired by the Plan. Jacobsen, as the sole holder of the Class 2 Claim, is entitled to vote to accept or reject the Plan.

5.3     Class 3 Claim.

(a)     In full and complete satisfaction, settlement and release of and exchange for the Allowed Other Secured Claims, on the Effective Date, except to the extent that the holder of an Other Secured Claim agrees to a less favorable treatment, all Other Secured Creditors shall be separately classified and their collateral will either be sold or the property against which the security interest is held will be assigned to such Other Secured Creditor as the indubitable equivalent of such claim or the secured claim shall be reinstated or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision  or applicable nonbankruptcy law that entitles the holder of an Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of a default.

(b)     If the property securing the Other Secured Claim is sold, the Other Secured Creditor will receive such net proceeds of sale with any remaining claim to be classified as an unsecured claim.

(c)     Class 3 is unimpaired by the Plan. Each holder of an Allowed Class 3 Claim is presumed to have accepted or rejected the Plan and is not entitled to vote to accept or reject the Plan.

5.4     Class 4 Claims.  In full and complete satisfaction, settlement and release of and in exchange for the Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim, except to the extent such holder agrees to a less favorable treatment, shall have the option of electing one of the following alternatives to be elected on their Ballot in voting on the Plan:

(a)     Option 1:  Holders of a Allowed Class 4 Claims shall receive payment of 100% of their Allowed Claim, without interest, over four (4) years from the Effective Date from Excess Cash Flow.  The first prospective payment will be made on the first business day on the third month after the Effective Date, with prospective payments to be made on the first business day of each successive three (3) month period.  On the fourth

anniversary of the Effective Date, all remaining Allowed Unsecured Claims shall be paid in full.

      (b)    Option 2:  Holders of Allowed Class 4 Claims shall receive payment of a discounted amount equal to 50% of their Allowed Claim on the thirtieth (30th) day after the Effective Date.

      (c)    If the holder of an Allowed General Unsecured Claim does not vote or fails to make an election of either option 1 or 2 or attempts to elect to split its Allowed General Unsecured Claim between options 1 and 2, then such holder of an allowed General Unsecured Claim shall be paid in accordance with option 1 as set forth in Article 5.4(a) above.

      (d)    Class 4 is impaired by the Plan.  Each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

5.5    <u>Class 5 Interests</u>.

      (a)    In full and complete satisfaction, settlement and release of and in exchange for the Interest in Partners, the holder of the Allowed Interest in Partners shall receive an amount equal to the difference between the appraised value of Partners' assets as determined by the Bankruptcy Court and the allowed amount of all Claims against Partners, which shall be posted in the Mezzanine Escrow.  On the Effective Date, the Interest in Partners shall be cancelled.

      (b)    The Mezzanine Escrow will be held by the Disbursing Agent and distributed pursuant to a plan of reorganization or liquidation to be filed by Mezzanine subsequent to the Confirmation Date or further order of the Bankruptcy Court.

      (c)    Class 5 is impaired by the Plan.  Mezzanine, as the sole holder of the Allowed Class 5 Interest is entitled to vote to accept or reject the Plan.

## ARTICLE VI.

### Provisions as to Disputed Claims and Distributions

6.1    <u>Disputed Claims</u>.

      (a)    In connection with distributions to be made in respect of Allowed Claims, there shall be reserved from any distribution to the holder of a Disputed Claim the amount of distribution which then otherwise would be paid in respect to such Disputed Claim on the Effective Date if the full amount of such Claim were deemed to be an Allowed Claim or such lesser amount as the Bankruptcy Court may determine.

      (b)    Pending the determination of such Disputed Claim by the Bankruptcy Court, Partners shall deposit in a separate bank account funds equal to the amount so reserved or such lesser amount as the Bankruptcy Court may have determined within

fifteen (15) business days after the date on which such amount would otherwise be distributed to the holder of such Claim.  Such funds shall be held by the Disbursing Agent in such separate bank account as long as such Claim remains a Disputed Claim.

(c)    If any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of that Claim unless and until, and only to the extent, such Claim becomes Allowed.  Upon such Claim becoming an Allowed Claim, any distribution then due to be made in respect of such Claim shall be paid within seven (7) business days thereafter in accordance with the provisions hereof and of such order of the Bankruptcy Court.

(d)    Any monies remaining on deposit with respect to any Disputed Claim after its resolution or determination by the Bankruptcy Court shall be returned to the Reorganized Debtor.

6.2    Resolution of Disputed Claims.  The Reorganized Debtor shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328, 330 and 503 of the Bankruptcy Code) to make, file and prosecute objections to Claims.  The Reorganized Debtor shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtors), but in no event shall the service of such an objection be later than 120 days after the Effective Date, unless such date is extended by order of the Bankruptcy Court.  The Bankruptcy Court, for cause, may extend the deadline on the request of the Reorganized Debtor.  All objections shall be litigated to a Final Order except to the extent that the Reorganized Debtor elects to withdraw such objection, or the Reorganized Debtor and the holder of the Disputed Claim compromise, settle or otherwise resolve any such objections, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further order. of the Bankruptcy Court.

6.3    Setoffs.  To the extent permitted under applicable law, the Reorganized Debtor may set off against or recoup from the holder of any Allowed Claim and the distributions to be

made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on

account of such Allowed Claim), the claims, rights and causes of action of any nature that the

Debtors have asserted in writing against the holder of such Allowed Claim, including, without

limitation, any rights under section 502(d) of the Bankruptcy Code and in the absence of a

written objection by such holder of an Allowed Claim within thirty (30) days of the delivery of

such a writing from Partners or the Reorganized Debtor, it will be conclusively presumed that the

requirements for disallowance of a claim under section 502(d) of the Bankruptcy Code or setoff

or recoupment under applicable law have been satisfied.

     6.4     <u>Other Provisions Relating to Disputed Claims</u>.

     (a)     If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtor, or the Disbursing Agent shall, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, except as otherwise provided in the Plan, distribute to the holder of such Allowed Claim an amount, without any interest thereon, that provides such holder with the same percentage recovery, as of such date, as holders of Claims in the class that were Allowed on the Effective Date.

     (b)     To the extent that a Disputed Claim is expunged or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.  Any Disputed Claim, for which a proof of claim has not been deemed timely filed as of the Effective Date, shall be disallowed.

     6.5     <u>Distributions of Cash</u>.  Any payment of Cash made by the Reorganized Debtor, or

the Disbursing Agent, pursuant to the Plan may be made at the option of such party either by

check drawn on a domestic bank or by wire transfer from a domestic bank.

     6.6     <u>Distributions Free and Clear</u>.  Except as otherwise provided in the Plan, any

distributions or transfers by or on behalf of the Reorganized Debtor under the Plan, including,

but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any

liens, claims, and encumbrances, and no other entity shall have any interest – legal, beneficial, or

otherwise – in assets transferred pursuant to the Plan.

6.7     Timing of Distributions.  Unless otherwise provided in the Plan, any distribution

to be made by the Reorganized Debtor or the Disbursing Agent shall be made to the extent and at

the time provided in Article 5 of the Plan.  In the event that any payment or act under the Plan is

required to be made or performed on a date that is not a Business Day, then the making of such

payment or the performance of such act may be completed on the next succeeding Business Day,

but shall be deemed to have been completed as of the required date.

6.8     Delivery of Distributions.  Subject to Bankruptcy Rule 9010, all distributions to

any holder of an Allowed Claim shall be made at the address of such holder as set forth on the

Schedules or on the books and records of the Partners or its agents.  The holder of an Allowed

Claim must notify the Reorganized Debtor in writing of a change of address pursuant to the

notice requirements set forth in Article 11.15 of the Plan or, in the case of holders of transferred

Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e)

by such holder or transferee that contains an address for such holder different than the address of

such holder as set forth in the Schedules.  Neither the Reorganized Debtor nor the Disbursing

Agent shall be liable for any distribution sent to the address of record of a holder in the absence

of the written change thereof as provided herein or in the Plan

6.9     Distributions to Holders as of Record Date.  As of the close of business on the

Record Date, the claims register for Partners shall be closed pursuant to the order approving the

Disclosure Statement, and there shall be no further changes made to the identity of the record

holder of any Claim.  Neither the Reorganized Debtor nor the Disbursing Agent shall have any

obligation to recognize any transfer of any Claim occurring after the Record Date, provided,

NYIWDMS: 11434131_11

however, that the Reorganized Debtor and the Disbursing Agent will recognize transfers of

Claims made after the entry of an order approving the Disclosure Statement but before the

Confirmation Date for distribution purposes.

     6.10    <u>Undeliverable and Unclaimed Distributions</u>.

     (a)    If the distribution to the holder of any Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Reorganized Debtor or the Disbursing Agent, as appropriate, in writing of such holder's then-current address, at which time all missed distributions shall be made, subject to the provisions of subsection (c) of this Article 6.10, as soon as is practicable to such holder, without interest.

     (b)    Checks issued by the Reorganized Debtor or the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of section 11.15 of the Plan to the Reorganized Debtor or the Disbursing Agent, as appropriate, by the holder of the Allowed Claim to whom such check originally was issued.

     (c)    All claims for undeliverable distributions or voided checks shall be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made. After such dates, all such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall become unencumbered Cash of the Reorganized Debtor. The holder of any Claim for which any undeliverable distribution has been deemed unclaimed property under section 347(b) of the Bankruptcy Code shall not be entitled to any other or further distribution under the Plan on account of such Claim.

## ARTICLE VII.

## Means for Execution of the Plan

     7.1    The funds required for the confirmation and performance of this Plan shall be

provided from: (i) all funds held by the Debtor as property of the estate, and (ii) capital

contributions and/or loans made by the Plan Funder to the Reorganized Debtor.

     7.2    <u>Reorganized Debtor</u>.

     (a)    <u>Reorganized Articles of Organization and Reorganized Operating Agreement</u>. The Reorganized Debtor shall adopt Reorganized Articles of Organization and a Reorganized Operating Agreement prior to, but effective as of, the Effective Date,

which shall be included in the Plan Supplement.  Prior to the closing of Partners' Chapter 11 case, any amendments to the Reorganized Debtor's Articles of Organization and Reorganized Operating Agreement shall be filed with the Bankruptcy Court.

(b)  <u>Managing Members and Officers</u>.  The initial managing members and officers of the Reorganized Debtor shall be disclosed in the Plan Supplement and shall be in effect as of the Effective Date.

7.3  <u>Exit Funding</u>.  On or before the Effective Date, the Plan Funder shall contribute capital, loans and/or provide additional standby funds (either as additional capital or loans) on terms mutually acceptable to Partners and the Plan Funder sufficient to effectuate the Plan.  The Plan Supplement will provide the details and terms of such funding.

7.4  <u>Early Payment</u>.  Nothing herein or in the Plan shall prevent the Reorganized Debtor from making any payments prior to the date provided for in the Plan, and the Reorganized Debtor shall not suffer any penalty or prejudice from making any such payments.

## ARTICLE VIII.

### Executory Contracts

8.1  <u>Executory Contracts and Unexpired Leases</u>.  Under section 365 of the Bankruptcy Code, Partners has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired lease.  If Partners rejects an executory contract or unexpired lease that was entered into before the Petition Date, the contract or lease will be treated as if it had been breached on the date immediately preceding the Petition Date, and the other party to the agreement will have a General Unsecured Claim for damages incurred as a result of the rejection.  In the case of rejection of real property leases, damages are subject to certain limitations imposed by section 502(b)(6) of the Bankruptcy Code.

8.2  <u>Rejected Contracts and Leases</u>.

(a)  Each executory contract and unexpired lease to which Partners is a party shall be deemed automatically rejected as of the Effective Date, unless such executory

contract or unexpired lease (1) will have been previously assumed by Partners, (2) is the subject of a motion to assume filed on or before the Confirmation Date or (3) is listed on the schedule of assumed contracts and leases annexed as an Exhibit to the Plan Supplement.  Partners may at any time on or before the Confirmation Date (or, with respect to any executory contract or unexpired lease for which there is a dispute regarding the nature or the amount of any cure, at any time on or before the entry of a Final Order resolving such dispute) amend the Plan Supplement to delete therefrom or add thereto any executory contract or unexpired lease, in which event such executory contract or unexpired lease will be deemed to be rejected, assumed or assumed and assigned, as the case may be.

(b)      Partners will provide notice of any amendments to the Plan Supplement to the parties to the executory contracts or unexpired leases affected thereby and counsel to the Creditors' Committee and WestLB.  The fact that any contract or lease is listed in the Plan Supplement will not constitute or be construed as an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that the Reorganized Debtor or any successor to the Reorganized Debtor has any liability thereunder.

(c)      The Reorganized Debtor reserves the right to file a motion on or before the Confirmation Date to assume and assign or reject any executory contract or unexpired lease whether or not identified in the Plan Supplement.

(d)      The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.3      Rejection Damages Bar Date.  If the rejection of an executory contract or

unexpired lease results in a Claim, then such Claim will be forever barred and will not be

enforeceable against Partners or the Reorganized Debtor or its respective properties unless a

proof of claim is filed with the Bankruptcy Court and served upon counsel to the Reorganized

Debtor, counsel to the Creditors' Committee and WestLB, no later than thirty (30) calendar days

after the later of the Confirmation Date or the entry of an order of rejection.  Nothing in the Plan

will extend any prior deadline to file a proof of claim for damages arising from the rejection of

an exeutory contract or unexpired lease.

8.4    Assumed Contracts and Leases.

(a)    Except as otherwise provided in the Plan or the Confirmation Order, all executory contracts and unexpired leases identified in the Plan Supplement on an Exhibit listing assumed agreements will be deemed automatically assumed as of the Effective Date.

(b)    Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire or occupy of real property will include (1) all modifications, amendments, renewals, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other documents that in an manner affect such executory contract or unexpired lease and (2) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy or is otherwise rejected as a part of the Plan.

(c)    To the extent Partners is party to the unexpired lease or executory contract and is to be merged or dissolved as a result of the Plan, any non-debtor party to such unexpired lease or executory contract will, upon assumption as contemplated herein, be deemed to have consented to the assignment of such unexpired lease or executory contract to the Reorganized Debtor.

(d)    The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption of such executory contracts and unexpired leases, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.5    Payments Related to Assumption of Executory Contracts and Unexpired Leases.

(a)    Any monetary amounts by which each executory contract and unexpired lease to be assumed under the Plan may be in default will be satisfied, under section 365(b)(1) of the Bankruptcy Code by promptly curing same ("Cure Claim").

(b)    In the event of a dispute regarding (1) the nature or the amount of any Cure Claim, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the amount of the Allowed Cure Claim shall be paid no later than thirty (30) calendar days following the entry of a Final Order resolving the dispute and approving the assumption and, as the case may be, assigned.

## ARTICLE IX.

### Discharge of the Debtor

9.1      The occurrence of the Effective Date shall discharge Partners pursuant to the full

extent of Section 1141(d)(1) of the Bankruptcy Code, from any and all debts of and Claims

against Partners that arose prior to the Confirmation Date, and any kind of debt specified in §§

502(g), (h) or (i) of the Bankruptcy Code, whether or not:  (i) a proof of Claim based on such

debt is filed or deemed filed under § 501 of the Bankruptcy Code; (ii) such Claim is allowed

under § 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.  On

and after the Effective Date, as to every discharged debt and Claim, the Person or Entity that

held such debt or Claim shall be precluded from asserting any such debt or Claim against

Partners or the Reorganized Debtor or its property based upon any document, instrument, act,

omission, transaction or other activity of any kind or nature that occurred prior to the

Confirmation Date.

9.2      The rights and treatment of all Claims against and Interests in the Plan shall be in

exchange for and in complete satisfaction  and release of all Claims and Interests of any nature

whatsoever, including any interest accrued thereon from and after the Petition Date, against

Partners or its estate, Assets, Property or interests in property.  The Reorganized Debtor shall not

be responsible for any obligations of the Other Debtors or their estates.

## ARTICLE X.

### Conditions Precedent

10.1    Conditions to Confirmation.  The following are conditions precedent to

confirmation of the Plan, each of which may be satisfied or waived in accordance with section

10.3 of the Plan.

NYIWDMS: 11434131_11

25

(a)    The Bankruptcy Court shall have approved by Final Order a disclosure statement with respect to the Plan.

(b)    The Plan Funder shall commit to providing sufficient funding to effectuate the Plan.

(c)    The Confirmation Order shall be in form and substance reasonably acceptable to Partners.

10.2    <u>Conditions to Effective Date</u>.  The following are conditions precedent to the Effective Date, both of which may be satisfied or waived in accordance with Article 10.3 of the Plan.

(a)    Partners or the Reorganized Debtor shall have executed and delivered the Modified Loan Documents, in a form that is reasonably acceptable to WestLB.

(b)    The Confirmation Order shall have been entered and have become a Final Order

(c)    Partners or the Reorganized Debtor shall have sufficient cash necessary to pay Claims required to be paid on the Effective Date.

10.3    <u>Waiver of Conditions to Confirmation</u>.  Conditions set forth in sections 10.1 and 10.2 of the Plan may be waived by Partners without any further notice to parties in interest or the Bankruptcy Court and without a hearing.

## ARTICLE XI.

### General Provisions

11.1    Partners reserves the right to modify the Plan prior to the Confirmation Date and it thereafter may modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, provided that such modifications are set forth in a writing signed by Partners or the Reorganized Debtor.

11.2    All objections to Disputed Claims shall be commenced, filed or asserted within 120 days after the Effective Date.

NYIWDMS: 11434131_11

11.3     The Reorganized Debtor's post-confirmation management shall be set forth in the

Plan Supplement.

11.4     **Releases and Exculpations.  Except as otherwise provided in the Plan or**

**Confirmation Order, as of the Effective Date, Partners, the Reorganized Debtor, the**

**Disbursing Agent, the Creditors' Committee, the members of the Creditors' Committee in**

**their respective capacity as such, any of such parties' respective present or former**

**members, officers, directors, employees, advisors, attorneys, representatives, financial**

**advisors, and agents, and any such parties' successors and assigns (collectively, the**

**"Released Parties") shall be released by Partners and any successors-in-interest of Partners**

**from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action,**

**remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen,**

**existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that**

**Partners would have been legally entitled to assert in its own right (whether individually or**

**collectively) or that any holder of a Claim, Interest, or other person or entity would have**

**been legally entitled to assert on behalf of Partners or its estate, based in whole or in part**

**upon any act or omission, transaction, agreement, event, or other occurrence taking place**

**before or on the Effective Date but occurring during the chapter 11 cases, except for acts**

**constituting willful misconduct, gross negligence, or bad faith and, in all respects such**

**parties shall be entitled to rely upon the advice of counsel with respect to their duties and**

**responsibilities under the Plan.  Without limiting the generality of the foregoing, to the**

**extent permitted by law, Partners and any successors-in-interest of Partners shall waive all**

**rights under any statutory provision purporting to limit the scope or effect of a general**

**release, whether due to lack of knowledge or otherwise.**

NYIWDMS: 11434131_11

27

11.5    **Partners, the Committee, and the Released Parties, and any property of or professionals retained by such parties, or direct or indirect predecessor in interest to any of the foregoing persons, shall not have or incur any liability to any Person or Entity for any act taken or omission, after the Petition Date, in connection with or related to these cases or the operations of Partners business during the cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; or (iii) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or bad faith occurring during the Chapter 11 Cases, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

11.6    **Injunction.  The satisfaction, releases and discharge pursuant to Article 9 of the Plan will also act as an injunction against any Person or Entity commencing or continuing any action, employment of process or act to collect, offset, recoup or recover any Claim or Cause of Action satisfied, released or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.**

11.7    Modification of the Plan.  The Reorganized Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or