Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
Steven J. McCardell (smccardell@djplaw.com)(2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
Salt Lake City, UT 84111
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com)
Bruce J. Zabarauskas (bzabarauskas @crowell.com)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134
Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.* | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors. | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:  201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (East Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | |

## OBJECTION TO PROOF OF INTEREST OF BAYNORTH REALTY
## FUND VI, L.P. IN EASY STREET PARTNERS, LLC

East Street Partners, LLC ("Partners"), by and through its undersigned counsel, objects to

the Proof of Interest of BayNorth Realty Fund, VI, L.P. in Easy Street Partners, LLC, dated

December 30, 2009, and filed with the Court on January 5, 2010 (the "Proof of Interest"), and as

grounds therefor respectfully represents:

## BACKGROUND

1.      On September 14, 2009, Partners along with Easy Street Mezzanine, LLC

("Mezzanine") and Easy Street Holding, LLC ("Holding") filed voluntary Chapter 11 bankruptcy

petitions with the Court.  (Partners, Mezzanine and Holding are hereafter collectively referred to

as the "Debtors").

2.      Mezzanine is the sole member of Partners.  <u>See</u> Partners' Operating Agreement, a

copy of which is annexed hereto as <u>Exhibit A</u>.

3.      Holding is the sole member of Mezzanine.

## THE BAYNORTH MEZZANINE LOAN

4.      On or about March 30, 2006, BayNorth Realty Fund VI, L.P. ("BayNorth")

entered into a mezzanine loan agreement with Mezzanine (the "Mezzanine Loan Agreement").

Under the Mezzanine Loan Agreement, BayNorth made a $11,250,000 mezzanine loan to

Mezzanine (the "Mezzanine Loan").

5.      It is uncontroverted that BayNorth is not a creditor of Partners.  Partners is neither

an obligor, nor a guarantor of Mezzanine's obligations under the Mezzanine Loan Agreement or

the promissory note executed and delivered by Mezzanine in connection therewith.  BayNorth

was neither listed as a creditor on Partner's Schedules, nor did BayNorth file a proof of claim

against Partners.

6.      On or about March 30, 2006, Holding entered into a pledge agreement with

BayNorth pursuant to which <u>Holding</u> pledged its equity interest in <u>Mezzanine</u> as security for the

Mezzanine Loan (the "Pledge Agreement").  A copy of the Pledge Agreement is annexed hereto

as <u>Exhibit B</u>.

7.      The equity interests in Partners were never pledged to BayNorth in connection with the Mezzanine Loan.

### BAYNORTH'S PROOF OF INTEREST

8.      On January 5, 2010, BayNorth filed the Proof of Interest.  A copy of the Proof of Interest is annexed hereto as <u>Exhibit C</u>.

9.      The Proof of Interest states that it is being filed by BayNorth "to preserve and protect any and all of the rights it has, or may be deemed to have, in and to the equity interests in Partners and Mezzanine pursuant to the terms of the Pledge Agreement."  <u>See</u> <u>Exhibit C</u> at ¶ 2.

### PARTNERS' PLAN OF REORGANIZATION

10.      On January 15, 2010, Partners filed a plan of reorganization and a disclosure statement.

11.      A hearing on Partners' request for approval of its disclosure statement is scheduled for February 18, 2010.

### BAYNORTH'S PROOF OF INTEREST SHOULD BE EXPUNGED

12.      Section 501(a) of the Bankruptcy Code provides:

>    A creditor or an indenture trustee may file a proof of claim.  <u>An equity security holder may file a proof of interest.</u>

(emphasis supplied).

13.      Section 101(17) of the Bankruptcy Code provides:

>    The term "equity security holder" means holder of an equity security of the debtor.

14.      Section 101(16) of the Bankruptcy Code provides:

>    The term "equity security" means –

(A) share in a corporation, whether or not transferable or denominated "stock", or similar security;
(B) interest of a limited partner in a limited partnership; or
(C) warrant or right, other than a right to convert, to purchase, sell or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph.

15.     BayNorth's Proof of Interest in Partners should be expunged because BayNorth does not hold an equity security in Partners.  Since it is not an equity security holder, it does not hold an interest against Partners pursuant to § 501 of the Bankruptcy Code.

16.     The only alleged basis contained in the Proof of Interest for BayNorth's assertion of an interest in Partners is the Pledge Agreement between BayNorth and Holding.  See Exhibit C in BayNorth Proof of Interest at ¶ 2 ("BayNorth hereby files this proof of interest (the 'Proof of Interest') to preserve any and all rights it has, or may be deemed to have, in and to the equity interests in Partners and Mezzanine pursuant to the terms of the Pledge Agreement.")

17.     Partners is not a party to the Pledge Agreement, and the equity interests in Partners were not pledged under the Pledge Agreement.

18.     Indeed, the language contained in the Pledge Agreement, upon which BayNorth relies, actually supports Partners' request that the Proof of Interest in Partners be expunged.

19.     Specifically, § 2 of the Pledge Agreement provides:

Pledge of Interests in the Borrower. **Pledgor [Holding] hereby pledges to the Lender [BayNorth] as collateral security** for the due and punctual payment and performance of all indebtedness and obligations of the Borrower [Mezzanine] to the Lender in connection with the Loan. whether

now or hereafter existing and whether due or to become due (collectively, the "Collateral");

(a) **all of the ownership interests in the Borrower [Mezzanine]** (collectively, the "Pledged Interests"),

(b) any and all right of the Pledgor to receive income, earnings, profits, distributions, or other amounts from the Borrower in any circumstances whatever, including without limitation, upon withdrawal,

(c) all obligations owing by the Borrower or any entity in which it owns an interest to Pledgor (collectively, the "Pledged Debt"),

(d) in each case, whether now existing and owned by any Pledgor or hereafter arising or acquired

(emphasis supplied).

20.     Thus, under the Pledge Agreement, BayNorth merely received a pledge of Holding's equity interest in Mezzanine.  There exists no agreement between the parties which grants BayNorth any interest, collateral or otherwise, in Partners.

21.     Accordingly, BayNorth holds no interest in the Partners' and BayNorth's Proof of Interest in Partners should be expunged.[1]

WHEREFORE, Partners respectfully requests that the Court enter an order:

(a) expunging BayNorth's Proof of Interest in Partners; and (b) granting Partners such other and further relief as is just and proper.

---

[1] The Proof of Interest also asserts an interest by BayNorth in Mezzanine.  Since a plan of reorganization has not yet been filed in Mezzanine's Chapter 11 case, Mezzanine is not objecting to the assertion of an interest in Mezzanine at this time, and reserves the right to seek to expunge the assertion of an interest in Mezzanine at a later date. However, it is Mezzanine's position that BayNorth is a creditor and not an interest holder in Mezzanine. At best, BayNorth holds a collateral interest in the equity interests in Mezzanine under the Pledge Agreement.

Dated: January 25, 2010                 DURHAM JONES & PINEGAR, P.C.


                            By:    /s/  Kenneth L. Cannon II
                                   Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
                                   Steven J. McCardell (smccardell@djplaw.com)(2144)
                                   111 East Broadway, Suite 900
                                   P.O. Box 4050
                                   Salt Lake City, UT 84111-4050
                                   Telephone:  (801) 415-3000
                                   Facsimile:  (801) 415-3500

                                   and

                                   CROWELL & MORING LLP
                                        Michael V. Blumenthal
                                   (mblumenthal@crowell.com)
                                   *(admitted pro hac vice)*
                                        Bruce J. Zabarauskas
                                   (bzabarauskas@crowell.com)
                                   *(admitted pro hac vice)*
                                   590 Madison Avenue, 20th Floor
                                   New York, NY  10022
                                   Telephone:  (212) 223-4000
                                   Facsimile:  (212) 223-4134

                                   Counsel for Debtors and Debtors in Possession

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the Objection to Proof of Interest of

BayNorth Realty Fund VI, L.P. in Easy Street Partners, LLC was served on this 25th day of

January, 2010, via first-class mail, postage prepaid on the following:

Adelaide Maudsley
Chapman and Cutler LLP
201 South Main Street, Suite 2000
Salt Lake City, UT  84111

Anthony S. Fiotto
Goodwin Proctor LLP
53 State Street
Boston, MA  02109-2881

BayNorth Capital, LLC
Attn:  Charles J. Flint
One Financial Center, Floor 23
Boston, MA  02111-2621


 /s/  Kristin Hughes

# EXHIBIT A

## EASY STREET PARTNERS, LLC

## AMENDED AND RESTATED OPERATING AGREEMENT

THIS AMENDED AND RESTATED OPERATING AGREEMENT (this "Agreement") of Easy Street Partners, LLC (the "Company") is entered into by Easy Street Mezzanine, LLC, a Delaware limited liability company, as sole member (in its capacity as the sole member of the Company, the "Member").

WHEREAS, the Company has been formed as a limited liability company under the Utah Revised Limited Liability Company Act as set forth in Sections 48-2c-101 through 48-2c-1902, Utah Code Annotated, as amended from time to time (the "Act"), by the filing of Articles of Organization with the Utah Division of Corporations and Commercial Code; and

WHEREAS, the Member desires to amend, restate and replace in its entirety that certain Operating Agreement of Easy Street Partners, LLC dated July, 2005 (the "Original Operating Agreement") with this Agreement.

The Member hereby amends, restates and replaces in its entirety the Original Operating Agreement with this Agreement in accordance with Section 8.1(b) of the Original Operating Agreement. The Member hereby agrees as follows:

1. __Name__. The name of the limited liability company is "Easy Street Partners, LLC."

2. __Articles of Organization__. Articles of Organization were filed with the Utah Division of Corporations and Commercial Code at the time the Company was formed. The Member has prepared and will file Amended and Restated Articles of Organization with the Division of Corporations and Commercial Code to reflect the change in ownership of the Company. The execution and filing of the Amended and Restated Articles of Organization are hereby ratified and approved.

3. __Purpose and Powers__.

    (a)    The Company's business and purpose shall consist solely of the acquiring, owning, operating, remodeling, improving, constructing, renovating, marketing, selling, leasing, managing and maintaining the real estate project known as Union Square (and associated structures, facilities, amenities and improvements), located in Park City, Utah (the "Property") and activities incidental thereto.

    (b)    Notwithstanding any other provisions of this Agreement and so long as any obligations of the Company remain unpaid or unperformed under that certain Loan and Security Agreement, dated March 20            , 2006 (the "Loan Agreement") by and between the Company and WESTLB AG, a German banking corporation acting by and through its New York branch, having an office at 1211 Avenue of the Americas, New York, New York 10036, as

1

agent (including any of its successors and assigns in such capacity, the "Administrative Agent") for itself, and such other co-lenders as may exist from time to time (collectively, the "Lenders" and each individually, a "Lender"), (together with the other documents contemplated by the Loan And Security Agreement, the "Loan Documents"), the Company covenants and agrees that it:

(i)    shall not amend, modify or otherwise change, or permit any other party to amend, modify or otherwise change the Company's articles of organization, operating agreement or other formation agreement or documents without the Administrative Agent's written consent;

(ii)    shall not enter into any transaction of merger or consolidation, or liquidate or dissolve itself (or suffer any liquidation or dissolution), or acquire by purchase or otherwise all or substantially all the business or assets of, or any stock or other evidence of beneficial ownership of any individual, corporation, limited liability company, business trust, partnership, joint venturer, joint tenant or tenant-in-common, trust, unincorporated organization, or any other entity of whatever nature, or governmental authority (each a "Person");

(iii)    shall not guarantee or pledge its assets for the benefit of, or otherwise become liable on or in connection with, any obligation of any other Person;

(iv)    shall not own any asset other than (a) the Property, and (b) incidental personal and intangible property necessary for the development or operation of the Property;

(v)    shall not engage, directly or indirectly, in any business other than acquiring, owning, operating, remodeling, improving, constructing, renovating, marketing, selling, leasing, managing and maintaining the Property including, without limitation, its operation as a full-service, luxury resort hotel, which will consist of the existing improvements on the Property, as modified and supplemented by the additional improvements to be constructed on the Property (the "Hotel");

(vi)    except for a hotel management agreement and a development agreement, shall not enter into any contract or agreement with the Member or any affiliate of the Company without the written consent of the Administrative Agent;

(vii)    shall not make any loans or advances to any third party (including any affiliate) other than trade debt incurred in the ordinary course of business;

(viii)    is and will be solvent and able to pay its debts from its assets as the same shall become due;

2

(ix)   will conduct and operate its business as presently conducted and as is required by the terms of the Loan Agreement and related documents to which it is a party;

(x)   will maintain financial statements, books and records and bank accounts separate from those of its affiliates, including Company's member;

(xi)   will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Company or of Company's member);

(xii)   will file any required tax returns;

(xiii)   will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(xiv)   will not seek the dissolution or winding up, in whole or in part, of the Company;

(xv)   will not commingle its funds and other assets with those of any affiliate of Company or Company's Member or any other Person;

(xvi)   has and will maintain its assets in such a manner that it is not costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate of Company or Company's Member or any other Person;

(xvii)   will not hold itself out to be responsible for the debts or obligations of any other Person;

(xviii)   will not do any act which would make it impossible to carry on its ordinary business;

(xix)   will not possess or assign the Property or incidental personal property necessary for the operation of the Property for other than a business or company purpose;

(xx)   except for the marketing and sale of residential and commercial units in the ordinary course of business, will not sell, encumber or otherwise dispose of all or any portion of the Property or incidental personal property necessary for the operation of the Property;

(xxi)   will not hold title to its assets other than in its name; and

3

(xxii) will not institute proceedings to be adjudicated bankrupt or insolvent; or consent to the institution of bankruptcy or insolvency proceedings against it; or file a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy; or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of the Company's property; or make any assignment for the benefit of creditors; or admit in writing its inability to pay its debts generally as they become due; or take any action in furtherance of any such action.

4.   Term; Fiscal Year.   The term of the Company commenced on the date the Articles of Organization of the Company were filed with the Utah Division of Corporations and Commercial Code and will continue until December 31, 2099, or until dissolved as provided herein. The fiscal year of the Company shall be the same as its taxable year for U.S. federal income tax purposes, which shall end on December 31 unless otherwise required by applicable law.

5.   Principal Business Office.   The principal business office of the Company shall be 4780 Winchester Court, Park City, Utah 84098.

6.   Registered Office and Agent.   The registered agent for service of process and the registered office shall initially be Blake Parrish, Wrona & Parrish, P.C., 1816 Prospector Ave., Suite 100, Park City, Utah 84060. The Member may, from time to time, change the registered agent or office through appropriate filing with the Utah Division of Corporations and Commercial Code. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Member shall promptly designate a replacement registered agent or file a notice of change of address as the case may be.

7.   Member.   The name and the mailing address of the Member are as follows:

| Name | Address |
|------|---------|
| Easy Street Mezzanine, LLC | 4780 Winchester Court<br>Park City, Utah 84098 |

4

8.     **Limited Liability; Indemnification.**

(a)     Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company by reason of being a member of the Company or exercising, or failing to exercise, any rights under this Agreement.

(b)     To the fullest extent permitted by law, the Company shall indemnify the Member and the trustees, officers, directors, partners and shareholders of any such person which is a corporation, partnership, trust or other entity, against any and all liability incurred and/or for any act performed by them in good faith and/or for any act in good faith omitted to be performed by them (including, without limitation, reasonable legal and other professional fees and expenses as the same are incurred) as a Member (or affiliate thereof) of the Company.

9.     **Admission.**  The Member is deemed admitted as the Member of the Company upon its execution and delivery of this Agreement.

10.     **Capital Contributions.**  The Member has contributed its initial capital contribution in exchange for its interest in the Company; there are no additional capital contributions required of the Member.

11.     **Distributions.**  Distributions may be made to the Member at the times and in the aggregate amounts determined by the Member.

12.     **Federal Tax Status of Company.**  It is the intention of the Member that the Company be disregarded as an entity separate from the Member for federal income tax purposes under Section 7701 of the Internal Revenue Code of 1986, as amended, and Treasury Regulations Section 301.7701-2(c)(2)(i), for state income tax purposes under any applicable state or local income tax law or regulation and for any similar purposes.

13.     **Management.**  The business and affairs of the Company shall be managed by the Member.  The Member shall have the power in its sole discretion to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Utah.  The Member is an authorized agent of the Company for the purpose of the Company's business, and the actions of the Member taken in the name of the Company and in accordance with such powers set forth in this Agreement shall bind the Company.

14.     **Dissolution.**  The Company shall be dissolved without further action by the Member and its affairs wound up upon the first to occur of any of the following events:

(a)   December 31, 2099

(b)   if the Company does not have at least one member;

(c)   by written agreement signed by all members (after satisfaction of all obligations of the Company under the Loan Agreement);

(d)   any event that makes the Company ineligible to conduct its activities as a limited liability company under the Act;

(e)   any event or circumstance that makes it unlawful for the Company to carry on its business;

(f)   upon administrative dissolution of the Company under Article 48-2c-1207 of the Act, subject to right of reinstatement under Section 48-2c-1207; or

(g)   upon entry of a decree of judicial dissolution under Article 48-2c-1213 of the Act;

15.   **Governing Law**.  This Agreement shall be governed by, and construed under, the laws of the State of Utah (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

16.   **Amendments**.  This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

17.   **Binding Effect**.  Except as otherwise provided in this Agreement, every covenant, term, and provision of this Agreement shall be binding upon and inure to the benefit of the Member and its successors, transferees, and assigns.

18.   **Headings**.   Section and other headings contained in this Agreement are for reference purposes only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision hereof.

19.   **Entire Agreement**.   This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such matter.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first above written.

6

**SOLE MEMBER:**

EASY STREET MEZZANINE, LLC,
a Delaware limited liability company

By:    EASY STREET HOLDING, LLC,
      a Utah limited liability company
Its:    Sole Member

    By:    AVG-SL, LLC,
        a Utah limited liability company
    Its:   Manager

    By:                
        William Shoaf
    Its:  Manager

7

# EXHIBIT B

## Pledge Agreement

1.    <u>Parties and Definitions</u>.  This pledge agreement (this "**Agreement**") is made as of March 30 , 2006 by Easy Street Holding, LLC with a chief executive office at c/o AVG-SL, LLC, 4780 Winchester Court, Park City, Utah 84098 (the "**Pledgor**"), to BayNorth Realty Fund VI, Limited Partnership (the "**Lender**"), having a place of business at One Financial Center, Floor 23, Boston, MA 02211, to induce the Lender to make a loan (the "**Loan**") pursuant to the Loan Agreement (as it may be amended, the "**Loan Agreement**"), dated as of the date hereof, between Easy Street Mezzanine, LLC, a Utah limited liability company (the "**Borrower**") and the Lender to the Borrower evidenced by a note (together with all replacements, renewals and substitutions thereof, the "**Note**") in the original principal amount of Eleven Million Two Hundred Fifty Thousand Dollars ($11,250,000).  Capitalized terms used herein without definition shall have the respective meanings ascribed thereto in the Loan Agreement.  The following terms are used in this Agreement with the meanings referred to below:

"**Collateral**" – See Section 2.

"**Obligations**" – See Section 2.

"**Pledged Interests**" – See Section 2(a).

"**Pledged Debt**" – See Section 2(c).

2.    <u>Pledge of Interests in the Borrower</u>.  Pledgor hereby pledges to the Lender as collateral security for the due and punctual payment and performance of all indebtedness and obligations of the Borrower to the Lender in connection with the Loan, whether now or hereafter existing and whether due or to become due (collectively, the "**Obligations**"), and hereby grants to the Lender a security interest in the following property (collectively, the "**Collateral**"):

(a)    all of the ownership interests in the Borrower (collectively, the "**Pledged Interests**"),

(b)    any and all right of Pledgor to receive income, earnings, profits, distributions, or other amounts from the Borrower in any circumstances whatever, including without limitation, upon withdrawal, and

(c)    all obligations owing by the Borrower or any entity in which it owns an interest to Pledgor (collectively, the "**Pledged Debt**"),

(d)    in each case, whether now existing and owned by any Pledgor or hereafter arising or acquired.

3.    <u>Distributions</u>.  Pledgor shall not, directly or indirectly, authorize any Restricted Payment or accept any Restricted Payment (as defined below).  The Pledgor agrees that, following an Event of Default, all payments to which the Pledgor is entitled from the Borrower

shall instead be paid to the Lender.  The Lender shall be entitled to apply any amounts received by the Lender pursuant to this Section 3 against any of the Obligations.

"**Restricted Payment**" means (i) any distribution, direct or indirect, on account of any ownership interest in the Borrower now or hereafter outstanding, which is not specifically permitted under Section 3.16 of the Loan Agreement, (ii) any redemption, retirement, purchase or other acquisition for value, direct or indirect, of any ownership interest in the Borrower now or hereafter outstanding, or of any options or other rights to acquire any such ownership interest, and (iii) any loan or other advance, in each case, which is not specifically permitted under Section 3.16 of the Loan Agreement.

4.     <u>Warranties and Representations of the Pledgor</u>.  The Pledgor hereby represents, warrants and covenants that:

(a)     The Pledgor owns one hundred percent (100%) of the interests of the Borrower and that these interests constitute all of the ownership and management interests of the Borrower;

(b)     the chief executive office of the Pledgor is as stated above, and the Pledgor will not change such chief executive office unless the Pledgor shall provide the Lender with written notice thereof not less than thirty (30) days prior to such change and there shall have been taken such action, reasonably satisfactory to the Lender, as may be necessary to maintain the security interests of the Lender hereunder at all times fully perfected and in full force and effect;

(c)     Pledgor shall not change its name unless the Pledgor shall have given the Lender written notice thereof not less than thirty (30) days prior to such change (but in any event, within the period required pursuant to the Uniform Commercial Code) and shall have taken such action, reasonably satisfactory to the Lender, as may be necessary to maintain the security interests of the Lender in the Collateral at all times fully perfected and in full force and effect;

(d)     the Lender has, as of the date of this Agreement, a valid, perfected and continuing first priority lien upon and security interest in the Collateral;

(e)     as of the date of this Agreement, none of the Collateral is subject to any pledge, lien, security interest, charge, option, restriction or other encumbrance, except the security interest created by this Agreement;

(f)     the Pledgor has the power, authority and legal right to pledge the Collateral pursuant to this Agreement and to perform all of its duties and obligations hereunder;

(g)     the pledge, transfer and grant of a security interest in the Pledged Interests hereunder has been registered on the books and records of the Borrower;

2

03/25/06 09:46 pm

(h)     the Pledgor, constituting all of the holders of equity interests in the Borrower, consents to the pledge of all of the Pledged Interests as provided herein, consents to and acknowledges the grant to the Lender of a security interest in the Pledged Debt pursuant to this Agreement, and, upon the Event of Default and Lender's exercise of its rights hereunder, consents to the admission of the Lender or its designee as a substitute member of the Borrower with all the same rights as the Pledgor;

(i)     this Agreement has been duly authorized, executed and delivered by the Pledgor, and is the legal, valid and binding obligation of the Pledgor enforceable against it in accordance with its terms, subject to the effect of bankruptcy, insolvency or other similar laws affecting the rights of creditors generally and subject to limitations imposed by general principles of equity;

(j)     the execution and delivery of this Agreement by the Pledgor and the pledging of the Collateral are within the Pledgor's power, and do not contravene any law or any rule or regulation or any judgment, decree or order of any tribunal or governmental authority, or of any agreement or instrument to which the Pledgor or the Borrower is a party or by which the Pledgor, the Borrower or any of the property of any of them is bound, or constitute a default under any of the foregoing; and

(k)     the Pledgor is not a foreign corporation, foreign partnership, foreign trust or foreign person as such terms are defined in Section 1445 of the Internal Revenue Code of 1986, as amended ("**Section 1445 of the IRC**"), and if the Pledgor is disregarded as an entity separate from its owner for United States income tax purposes, then the person deemed to own its assets for United States income tax purposes is not a foreign corporation, foreign partnership, foreign trust or foreign person as such terms are defined under Section 1445 of the IRC.

5.     <u>Voting</u>.  Subject to Section 27, unless and until there shall have occurred an Event of Default, the Pledgor shall be entitled to exercise any and all rights with respect to the Pledged Interests, including, without limitation, voting, giving consents, waivers and ratifications and acting as agent for the Borrower.  All such rights of the Pledgor with respect to the Pledged Interests shall cease immediately upon the occurrence of an Event of Default and the Lender may thereafter exercise any and all rights of the Pledgor with respect to the Pledged Interests.  The Pledgor hereby appoints the Lender, acting alone, with full power of substitution, as its proxy and attorney-in-fact to take any action with respect to the Pledgor's Pledged Interests following an Event of Default which the Pledgor would be authorized to take for any purpose whatsoever, including, without limitation, administering the construction, operation or sale of the Property, paying obligations of the Borrower and transferring the Borrower's assets to satisfy the Obligations, and Lender agrees to exercise such rights in accordance with the Uniform Commercial Code.  This proxy is irrevocable and the appointment is coupled with an interest in that the parties appointed as proxy are pledges of the interests in the Borrower they are hereby authorized to vote.

6.     <u>Covenants With Respect to the Collateral</u>.  The Pledgor covenants and agrees that:

3

     (a)    The Pledgor shall keep the Collateral free and clear of all liens, encumbrances, attachments, security interest pledges.

     (b)    The Pledgor shall not make demand for payment of the Pledged Debt, nor accept any prepayment of the Pledged Debt.

     (c)    So long as any of the Obligations remain unsatisfied, the Pledgor shall cause the Borrower to deliver to the Lender all payments made on account of the Pledged Debt. Until delivered to the Lender, the Pledgor shall cause the Borrower to hold any such payments in trust for immediate delivery to the Lender to be applied towards the satisfaction of the Obligations.

     (d)    The Pledgor shall not exercise any right with respect to the Pledged Debt which would dilute or adversely affect the Lender's rights in the Pledged Debt; and

     (e)    Except as authorized under the Loan Agreement, the Pledgor shall not permit the Borrower or the Subsidiary Owner to issue any additional ownership interests.

     7.    Event of Default and Remedies.  The breach of any covenant, condition or agreement contained in this Agreement that remains uncured after the expiration of any applicable grace period or the occurrence of any circumstance defined as an **"Event of Default"** under any other Loan Document shall be an **"Event of Default"** hereunder.  If an Event of Default shall have occurred, the Lender shall thereafter have all of the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation, the immediate right to vote and exercise all management rights associated with the Pledged Interests, and the right to sell any or all of the Collateral by private or public sale, and, in addition, the following rights and remedies (to the extent permitted by applicable law), all such rights and remedies being cumulative, not exclusive, and enforceable alternatively, successively or concurrently, at such time or times as the Lender deems expedient:

     (a)    the Lender may demand, sue for, collect or make any compromise or settlement that the Lender deems reasonable in respect of the Collateral held by it hereunder;

     (b)    the Lender may replace the managers, general partners, board of directors, officers, other persons performing similar functions, or other agents, in each case of the Borrower, with replacements selected by the Lender;

     (c)    the Lender may exercise its rights under the Power of Attorney dated as of the date hereof, from the Borrower to the Lender;

     (d)    the Lender may have a receiver appointed to hold any of the Collateral and exercise its or the Pledgor's rights with respect thereto; and

     (e)    the Lender may exercise any other rights provided in this Agreement or the other Loan Documents.

105570.159654 WMH LIBD/1715535.6

03/25/06 09:46 pm

8.    <u>Sale of the Collateral</u>.  Subject to the requirements of the following sentence, the Lender may enforce its rights hereunder without any other notice and without compliance with any other condition precedent now or hereafter imposed by statute, rule of law or otherwise (all of which are hereby expressly waived by the Pledgor, to the fullest extent permitted by law), it being understood that nothing herein shall be deemed to constitute a waiver by the Pledgor of the requirement that any sale of the Collateral by the Lender be conducted in a commercially reasonable manner and in accordance with the Uniform Commercial Code.  The Pledgor acknowledges that (i) ten (10) days' notice of any public sale or of the date on or after which a private sale may be effected is reasonable notice, and (ii) if the Lender elects to enforce its remedies through a public sale, it is reasonable to hold such a sale in Park City, Utah.  The Lender may buy any part or all of the Collateral at any public sale and may make payments therefor by any means.  The Lender shall apply the cash proceeds actually received from any sale or other disposition to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, to reasonable attorneys' fees, and all reasonable legal expenses, and other reasonable expenses which may be incurred by the Lender in attempting to collect the Obligations or to enforce this Agreement or in the prosecution or defense of any action or proceeding relating to the subject matter of this Agreement; and then to the Obligations, and any surplus shall be paid to the Pledgor.

The Pledgor recognizes that the Lender will be required to sell the Collateral in a transaction which does not constitute a public offering and which qualifies for so-called private placement exemptions under the Securities Act of 1933 and applicable state securities laws.  The Pledgor agrees that a sale conducted after commercially reasonable public advertising shall constitute a public sale for purposes of the applicable provisions of the Uniform Commercial Code, notwithstanding reasonable restrictions imposed by the Lender on bidders in order to qualify for applicable exemptions from registration and other requirements of the Securities Act of 1933, applicable state securities laws, and rules and regulations promulgated under any of them.  The Lender shall be under no obligation to delay a sale of the Collateral for the period of time necessary to permit the Pledgor to register such securities for public sale under the Securities Act of 1933, as amended, even if the Pledgor would agree to do so.  The Pledgor also acknowledges that the Senior Lender has imposed certain restrictions on the sale of the Collateral pursuant to the Intercreditor Agreement between the Lender and the Senior Lender, and that a sale conducted in compliance with those restrictions is commercially reasonable.

In all events, the Lender shall give the Pledgor not less than ten (10) days' written notice of any proposed disposition of the Collateral.  Promptly following the request of the Lender, the Pledgor shall deliver a non-foreign affidavit in form and substance satisfactory to the Lender.

9.    <u>Marshaling</u>.  The Lender shall not be required to marshal any present or future security for, or guaranties of, the Obligations or any of them, or to resort to such security or guaranties in any particular order; and all of the rights of the Lender hereunder and in respect of such security and guaranties shall be cumulative and in addition to all other rights, however existing or arising.  To the extent that it lawfully may, the Pledgor hereby agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Agreement and, to the extent that it lawfully may, Pledgor hereby irrevocably waives the benefits of all such laws.  The Lender's prior recourse to

5

105570.159654 WMH LIBD/1715535.6

03/25/06 09:46 pm

any part or all of the Collateral shall not constitute a condition of any demand, suit or proceeding for payment or collection of the Obligations.

10. Pledgor's Obligations Not Affected. The obligations of the Pledgor hereunder shall remain in full force and effect without regard to, and shall not be impaired by (i) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or the like of the Pledgor; (ii) any exercise or failure to exercise, or any waiver, by the Lender of any right, remedy, power or privilege under or in respect of the Obligations or any security therefor (including, without limitation, this Agreement); (iii) any amendment to or modification of any instrument (other than this Agreement) securing any of the Obligations; or (iv) the taking of additional security for, or any guaranty of, any of the Obligations or the release or discharge or termination of any security or guaranty for any of the Obligations; whether or not the Pledgor shall have notice or knowledge of any of the foregoing.

11. Transfer, Etc. by the Pledgor. The Pledgor shall not sell, assign, transfer or otherwise dispose of, grant any option with respect to, or pledge or grant any security interest in or otherwise encumber any of the Collateral or any interest therein.

12. Further Assurances. The Pledgor will, from time to time, execute and deliver to the Lender all such other and further instruments and documents and take or cause to be taken all such other and further action as the Lender may reasonably request in order to effect and confirm more securely in the Lender all rights contemplated in this Agreement, including, but not limited to, the execution of financing statements and similar instruments. The Pledgor appoints the Lender as the Pledgor's attorney in fact irrevocable to do all acts which the Pledgor may be required to do under this Agreement.

13. Lender's Exoneration. Under no circumstances shall the Lender be deemed to assume any responsibility for or obligation or duty of any nature or kind with respect to any part or all of the Collateral or any distributions thereon received pursuant to this Agreement, or any matter or proceedings arising out of or relating thereto.

14. No Waiver, Etc. No act, failure or delay by the Lender shall constitute a waiver of its rights and remedies hereunder. No single or partial waiver by the Lender of any default or right or remedy which it may have hereunder shall operate as a waiver of any other default, right or remedy or of the same default, right or remedy on a future occasion.

15. Expenses of Collection. The Pledgor shall pay to the Lender on demand any and all expenses paid or incurred by the Lender, including, without limitation, attorneys' fees and disbursements, in connection with the enforcement of this Agreement. All amounts owed to the Lender under this Agreement shall bear interest at the Default Rate from the date due until paid.

16. Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

6

17.   <u>Amendment, Waiver, Entire Agreement</u>. This Agreement may be amended, and waivers or consents to departures from the provisions hereof may be given, only in a writing signed by the party against which enforcement is sought. This Agreement contains the entire agreement and understanding between the Pledgor and the Lender relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

18.   <u>Governing Law; Choice of Law</u>. This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the law of The Commonwealth of Massachusetts, without regard to principles of conflicts of laws. This Agreement shall take effect as a sealed instrument. The terms and conditions of this Agreement and the other Loan Documents were negotiated by the Lender in The Commonwealth of Massachusetts, and delivered by the Pledgor and accepted by the Lender in The Commonwealth of Massachusetts, and the proceeds of the Loan were disbursed from The Commonwealth of Massachusetts.

19.   <u>Descriptive Headings; Interpretation</u>. The headings in this Agreement are for convenience only and shall not be used in construing or interpreting this Agreement. In this Agreement, the singular shall include the plural, and each of the masculine, feminine and neuter shall include each of the others, as the context may require. Words such as "hereof," "herein," "hereunder," "hereinafter," and similar words shall refer to this Agreement as a whole, and not to the particular part thereof in which such words appear, unless the context requires otherwise. Each reference to "**Pledgor**" means to any Pledgor and to all Pledgors, if more than one. Notwithstanding that this Agreement was initially prepared by the Lender's counsel, this Agreement has been reviewed and negotiated by competent counsel on behalf of the Pledgor. The parties to this Agreement agree that this Agreement shall not be construed against the Lender as a result of this Agreement having been so prepared. Terms used herein without definition, but which are defined in the Uniform Commercial Code, shall, unless the context otherwise indicates or requires, have the meanings ascribed to them in such Uniform Commercial Code

20.   <u>Successors and Assigns</u>. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party, and all covenants, promises and agreements by or on behalf of the respective parties which are contained in this Agreement shall bind and inure to the benefit of the successors and assigns of all parties originally benefited thereby.

21.   <u>Consent to Jurisdiction</u>. The Pledgor submits to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts for the purpose of any suit, action or proceeding arising out of or relating to this Agreement. The Pledgor irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have that its property is exempt or immune from attachment or execution, and to the venue or jurisdiction of any such suit, action or proceeding brought in any such court, including, without limitation, any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The Pledgor agrees that final judgment with no right of appeal remaining in any such suit, action or

7

proceeding brought in any such court shall be conclusive and may be enforced in other jurisdictions by a suit upon such judgment, a certified copy of which shall be conclusive evidence of the fact and of the amount of Pledgor's indebtedness or other obligation evidenced by the judgment. Nothing in this Agreement will be deemed to preclude the Lender from bringing an action or proceeding against the Pledgor in any court with jurisdiction, wherever located.

22.    Waiver of Jury Trial. To the fullest extent permitted by law, the Pledgor hereby waives any right to trial by jury in any action, proceeding or counterclaim, whether in contract, tort or otherwise, in connection with or relating directly or indirectly to the Loan, the Property, the Borrower or the Lender.

23.    Service of Process. The Pledgor consents to process being served in any suit, action or proceeding hereunder by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to Pledgor at its or his address set forth below or to any other address which the Pledgor shall have designated by written notice to the Lender. Nothing in this Section shall affect the rights of the Lender to serve process in any manner permitted by law.

24.    Notice, Etc. Any notice, demand or other communication under this Agreement shall be in writing and shall be deemed delivered on the earlier to occur of (i) receipt or (ii) the date of delivery, refusal or non-delivery indicated on the return receipt, if deposited in a United States Postal Service depository, postage prepaid, sent registered or certified mail, return receipt requested, or if sent via a recognized commercial courier service providing for a receipt, addressed to the party to receive the same at the address of such party set forth below.

| | |
|---|---|
| If to Pledgor: | c/o AVG-SL, LLC<br>4780 Winchester Court<br>Park City, Utah 84098 |
| with a copies to: | Wrona & Parrish, P.C.<br>1816 Prospector Avenue<br>Suite 100<br>Park City, Utah 84060<br>Attn: S. Blake Parrish, Esq. |
| | Park City I, LLC<br>c/o Michael Feder<br>379 W. Broadway<br>Suite 401<br>New York, NY 10012 |
| | Rhona J. Kisch, Esq.<br>Hahn & Hessen LLP<br>488 Madison Avenue<br>New York, NY 10022 |

8

03/25/06 09:46 pm

If to Lender:   BayNorth Realty Fund VI, Limited Partnership
        One Financial Center
        Floor 23
        Boston, MA 02211
        Attention: Charles J. Flint

with copies to:   Goodwin Procter LLP
        Exchange Place
        Boston, MA  02109-2881
        Attention: Christopher B. Barker, P.C.

Any party may, from time to time, change the address at which such written notices, demands or other communications are to be sent by giving the other party written notice of such changed address in the manner hereinabove provided. Any notice to the Borrower by the Lender, if given in the manner provided for in the Loan Agreement, shall satisfy any express or implied obligation of the Lender to deliver notice to the Pledgor.

25. Counterparts. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

26. Limitation on Liability of the Lender and Others. The Pledgor's sole recourse and remedy for any default on the part of any person under any Loan Document shall be limited to the interest of the Lender in the Loan. Neither the Lender, nor any of its agents or representatives, or any officer, director, shareholder, partner, agent, principal, heir, estate, successor or assign of any of the foregoing shall have any personal liability under any Loan Document.

27. Directions to the Borrower. If any condition entitling the Lender to receive distributions or exercise any voting or other rights with respect to the Pledged Interests has occurred, the Lender may give notice to such effect to the Borrower, and direct the Borrower to make further distributions with respect to the Pledged Interests directly to the Lender. The Pledgor hereby directs the Borrower to honor such directions as such entity receives from the Lender with respect to the payment of distributions relating to the Pledged Interests, or instructions as to any matter which a holder of the Pledged Interests is entitled to exercise or voting or other rights described in Section 5 above. This paragraph is intended to authorize the Borrower to rely upon directions from the Lender and is not intended to confer any additional authority upon the Lender beyond that conferred elsewhere in this Agreement or otherwise. The Pledgor also directs the Borrower not to transfer or authorize the transfer of any of the Pledged Interests without the consent of the Lender.

105570.159654 WMH LIBD/1715535.6

03/25/06 09:46 pm

In witness whereof, the parties have caused this Agreement to be duly executed under seal as of the date first above written.

PLEDGOR:

EASY STREET HOLDING, LLC, a Utah limited liability company

By:   AVG-SL, LLC, a Utah limited liability company

Its:   Manager

By:   William Shoaf

Its:   Manager

105570.159654 WMH LIBD/1715535.6

03/25/06 09:46 pm

# EXHIBIT C

FILED IN THE
UNITED STATES
BANKRUPTCY COURT

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION 2010 JAN -5  PM 1: 27

DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>EASY STREET HOLDING, LLC, *et al.*,<br><br>    Debtors.<br><br>Address: 201 Heber Avenue<br>       Park City, UT 84060<br><br>Tax ID Numbers:<br>35-2183713 (Easy Street Holding, LLC),<br>20-4502979 (Easy Street Partners, LLC), and<br>84-1685764 (Easy Street Mezzanine, LLC) | Bankruptcy Case No. 09-29905<br>Jointly Administered with<br>Cases 09-29907 and 09-29908<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier |

## PROOF OF INTEREST OF BAYNORTH REALTY FUND VI, L.P. IN EASY STREET PARTNERS, LLC

    1.        The undersigned is an authorized signatory of BayNorth Realty Fund VI,

L.P. ("BayNorth"), in its capacity as party to that certain Loan Agreement dated as of March 30,

2006, by and between Easy Street Mezzanine, LLC ("Mezzanine" and collectively with Easy

Street Holding, LLC ("Holding") and Easy Street Partners, LLC ("Partners"), the "Debtors"), as

Borrower, and BayNorth, as Lender, pursuant to which BayNorth agreed to fund a loan to

Mezzanine (including all exhibits, related documents, and supplements thereto, and as such may

be amended, supplemented or otherwise modified from time to time, the "BayNorth

Agreement"), as evidenced by that certain Promissory Note dated as of March 30, 2006

(including all exhibits, related documents, and supplements thereto, and as such may be

amended, supplemented or otherwise modified from time to time, the "BayNorth Note").[1]  The

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the BayNorth Agreement and related documents. The BayNorth Agreement, the BayNorth Note, the Pledge Agreement, and other such related documents are not attached due to their voluminous nature. Copies of such documents will



obligations of the Debtors under the BayNorth Agreement and the BayNorth Note are secured

by, among other things, that certain Pledge Agreement dated as of March 30, 2006, by Holding,

as Pledgor, and BayNorth, as Lender, pursuant to which Holding pledged all of the equity

interests held by it in Mezzanine to BayNorth as security for the obligations of the Debtors under

the BayNorth Agreement and  BayNorth Note (the "Pledge Agreement").

2.      BayNorth hereby files this proof of interest (the "Proof of Interest") to preserve

and protect any and all of the rights it has, or may be deemed to have, in and to the equity

interests in Partners and Mezzanine pursuant to the terms of the Pledge Agreement.  In the

absence of the automatic stay, BayNorth would be entitled to exercise its rights and remedies

under the Pledge Agreement, including the completion of its previously scheduled foreclosure

sale pursuant to the Uniform Commercial Code of the equity interests issued by Mezzanine,

which was scheduled to be conducted on September 16, 2009, two days following the Debtors'

filing of voluntary petitions for bankruptcy relief under chapter 11 of the Bankruptcy Code.  In

addition, as the largest creditor of Mezzanine, BayNorth is entitled to all or a portion of any

distributions made to Mezzanine in connection with any chapter 11 plan of Partners confirmed

by this Court on account of Mezzanine holding all of the equity interests in Partners.

3.      This Proof of Interest is not intended to, nor does it impact, diminish or restrict

the rights or abilities of BayNorth under the BayNorth Agreement, the BayNorth Note, any

related document, including, but not limited to, the Pledge Agreement, the Guaranty, and the

Completion Guaranty, as such terms are defined in the BayNorth Agreement, applicable law or

otherwise.  This Proof of Interest is made without prejudice to the rights of BayNorth and its

successors and assigns to file proofs of claim in respect of the rights of BayNorth under the

---

be made available upon request.

BayNorth Agreement, the BayNorth Note or any other indebtedness, obligations, or liability of the Debtors to BayNorth or any of its successors and assigns.

       4.      This Proof of Interest is filed under compulsion of the bar date of January 6, 2010 established in the above-captioned proceedings and by reason of such bar date and shall not be deemed to be: (a) a waiver or release of BayNorth's rights against any other person, entity, or property; (b) a consent by BayNorth to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving BayNorth; (c) a waiver or release of BayNorth's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a consent by BayNorth to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto. pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of BayNorth's right to have any and all final orders in any and all non-core matters or proceeding entered only after de novo judicial review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Interest, any objection thereto or any other proceeding which may be commenced in this case against or otherwise involving BayNorth; (g) an election of remedies; (h) a waiver of any claims (administrative or otherwise) or other rights BayNorth may have against the Debtors; or (i) a waiver or release of any past, present, or future defaults or events of default.

       5.      This Proof of Interest is also without prejudice to the rights of BayNorth, its

3

affiliated entities, successors and assigns under the Bankruptcy Code or otherwise.

6.    Each and every description of a document in this Proof of Interest is qualified in its entirety by reference to the applicable provisions of such applicable document, and the documents set forth herein are incorporated herein by reference.

7.    <u>Notices to BayNorth</u>:  All notices and communications concerning this Proof of Interest should be sent to:

> BayNorth Capital, LLC
> One Financial Center – Floor 23
> Boston, MA 02111-2651
> Attn: Charles J. Flint
>
> - with a copy to -
>
> Goodwin Procter LLP
> The New York Times Building
> 620 Eighth Avenue
> New York, NY  10018-1405
> Attn:   Brian W. Harvey, Esq.

*[Remainder of Page Intentionally Left Blank]*

Dated: December 30, 2009

_____

Charles J. Flint
Authorized Signatory
BayNorth Realty Fund IV, Limited Partnership