Adelaide Maudsley (#8791)
James K. Tracy (#6668)
CHAPMAN AND CUTLER LLP
201 South Main Street, Suite 2000
Salt Lake City, UT  84111
Telephone:  801-533-0066
Facsimile:  801-533-9595
Email: maudsley@chapman.com
       jtracy@chapman.com

Brian W. Harvey (NY Bar No. BH-2518)
(admitted *pro hac vice*)
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
Telephone:: (212) 813-8829
Facsimile: (212) 355-3333
Email: bharvey@goodwinprocter.com

Counsel for BayNorth Realty Fund VI, LP

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>EASY STREET HOLDING, LLC, *et al.*,<br><br>Debtors.<br><br>Address: 201 Heber Avenue<br>         Park City, UT  84060<br><br>Tax ID Numbers:<br>35-2183713 (Easy Street Holding, LLC),<br>20-4502979 (Easy Street Partners, LLC), and<br>84-1685764 (Easy Street Mezzanine, LLC) | Bankruptcy Case No. 09-29905<br>Jointly Administered with<br>Cases 09-29907 and 09-29908<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier<br><br>[FILED ELECTRONICALLY] |

**RESPONSE TO OBJECTION TO PROOF OF INTEREST OF BAYNORTH REALTY
FUND VI, L.P. IN EASY STREET PARTNERS, LLC**

BayNorth Realty Fund VI, LP ("BayNorth"), through its undersigned counsel, hereby files this response (the "Response") to the Debtors' Objection (the "Objection") to Baynorth's Proof of Interest in Easy Street Partners, LLC (the "Proof of Interest") and in support hereof respectfully states as follows:

## BACKGROUND

1.  In 2006, Easy Street Partners, LLC ("Partners") undertook to develop a private residence club named Sky Lodge, a luxury boutique hotel with 22 units sold as fractional ownership units. Partners is 100% owned by Easy Street Mezzanine, LLC ("Mezzanine"), which in turn is 100% owned by Easy Street Holding, LLC ("Holding").[1]

2.  In order to secure financing to construct the Sky Lodge units, on March 30, 2006, Partners obtained a loan from WestLB AG in the amount of $36,779,224 (the "WestLB Loan").

3.  On the same day, BayNorth made a loan to Mezzanine in the principal amount of $11,250,000 (the "Loan") pursuant to a loan agreement dated as of March 30, 2006 (together with related documents, the "BayNorth Loan Documents"), and evidenced by a promissory note (the "Note").

4.  As security for the Note, Holding pledged to BayNorth, inter alia, all of its ownership interests in Mezzanine pursuant to that certain Pledge Agreement, dated as of March 30, 2006, by and Holding, as pledgor, and BayNorth as Lender (the "Pledge Agreement").

5.  On May 5, 2009, BayNorth notified Mezzanine that several Events of Default had occurred under the BayNorth Loan Documents, including:

    (a) pursuant to Section 4.1 of the BayNorth Loan Documents, the failure of Partners to observe or perform its obligations under the WestLB Loan;

    (b) breach of the covenant at Section 3.4 of the BayNorth Loan Documents with respect to modification of Plans and Specifications;

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the BayNorth Agreement and related documents.

2

(c) breach of the covenant at Section 3.25 of the BayNorth Loan Documents with respect to a material change in the use or character of the Property on account of construction of Fin Restaurant;

(d) the apparent breach, based on information and belief, of the covenant at Section 3.51 of the BayNorth Loan Documents with respect to the use of proceeds from the sale of Units to underwrite operating deficits of the Property without BayNorth's prior approval;

(e) breach of the covenant at Section 3.42(m) of the BayNorth Loan Documents with respect to entering into a Material Contract with Jacobsen Construction Company, Inc. without BayNorth's prior approval;

(f) breach of the covenant at Section 3.27 of the BayNorth Loan Documents with respect to failure to construct the Improvements in accordance with the Plans and Specifications and Construction Budget; and

(g) breach of the covenant at Section 3.42(e) of the BayNorth Loan Documents with respect to incurring of expenditures in excess of permitted line item amounts in the Budget without BayNorth's prior approval.

6. On June 23, 2009, BayNorth notified Mezzanine of its acceleration of the Loan and made a demand for payment and for satisfaction of all of Mezzanine's obligations under the Note and the BayNorth Loan Documents.

7. Mezzanine failed to satisfy BayNorth's demands and, on July 28, 2009, BayNorth issued a Notice of Sale that scheduled a UCC sale of the ownership interests in Mezzanine on September 16, 2009.

LIBNY/4890080.1

8. On September 14, 2009, on the eve of the scheduled foreclosure sale and as a legal maneuver to stay the sale, Holding, together with Mezzanine and Partners, (collectively, the "Debtors") each filed in this Court a voluntary petition for bankruptcy relief under chapter 11 of the Bankruptcy Code. They continue to operate their business and manage their property as Debtors in Possession.

9. On January 5, 2010, BayNorth filed its Proof of Interest in Partners.

**ARGUMENT**

10. As stated in the Proof of Interest, the obligations of the Debtors under the BayNorth Agreement and the BayNorth Note are secured by, among other things, the Pledge Agreement pursuant to which Holding pledged all of the equity interests held by it in Mezzanine to BayNorth as security for the obligations of the Debtors under the BayNorth Agreement and BayNorth Note. BayNorth filed the Proof of Interest to preserve and protect any and all rights it has, or may be deemed to have, in and to the equity interests in Partners and Mezzanine pursuant to the terms of the Pledge Agreement.

11. The Debtors go to great lengths in their response to assert that BayNorth is not the present holder of an equity security of Partners. Notwithstanding their arguments, BayNorth, in the absence of the automatic stay, would be entitled to exercise its rights and remedies under the Pledge Agreement, including the completion of its previously scheduled foreclosure sale of the equity interests issued by Mezzanine. As a holder of the equity interests in Mezzanine, BayNorth would effectively control the equity interests in Partners.

12. Further, although BayNorth has not, to date, sought relief from the automatic stay, BayNorth would likely be entitled to such relief. Indeed, given the lack of residual value the

4

Debtors anticipate being distributed to Mezzanine under the terms of Partners' plan of reorganization (approximately $2 million) compared to the amount of BayNorth's claim (no less than $44,022,908.20) and the resultant inability of Mezzanine to reorganize as a going concern, BayNorth qualifies for relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code. *See* 11 U.S.C. § 362(d)(2) (stating that a court "*shall* grant relief from . . .a stay of an act against property. . . if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." (emphasis added)); *see also In re Cook*, 1991 U.S. App. LEXIS 18388 (6th Cir. Aug. 2, 1991) ("The reorganization plan must be "reasonably feasible" in order to be "effective."); *In re Timbers of Inwood Forest Assocs.*, Ltd., 808 F.2d 363, 373 (5th. Cir. 1987) (same); *Grundy Nat'l. Bank v. Tandem Mining Corp.*, 754 F.2d 1436, 1440 (4th Cir. 1985) (same); *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984) (same).

13. Moreover, despite obtaining an extension of time of the exclusivity period with respect to Mezzanine, the extended period will end on March 15, 2010.[2] Given the uncertainties surrounding the amount of funds to be distributed to Mezzanine and the litigation concerning the BayNorth Note and related transfers, the Debtors are unlikely to propose a viable plan of reorganization for Mezzanine prior to the expiration of the exclusivity period. This further supports a granting of relief from the automatic stay to BayNorth. *See In re Planned Systems, Inc.*, 78 BR 852, 866 (Bankr. S.D. Ohio 1987) (noting that relief from the automatic stay should be granted more freely if the exclusivity period has ended). Accordingly, because there remains a strong possibility that BayNorth could be entitled to control the equity interests in Partners

---

[2] Although the Debtors are currently seeking a further extension of the exclusivity period until June 14, 2010, this Court has not yet granted that request.

prior to the effective date of the plan of reorganization for Partners, this Court should deny the Debtors' Objection to the Proof of Interest.

WHEREFORE, BayNorth respectfully requests that the Court overrule the Objection and grant BayNorth such other and further relief as the Court deems just and proper.

DATED this 1st day of March, 2010.

>GOODWIN PROCTER LLP
>
>Brian W. Harvey
>(admitted *pro hac vice*)
>Goodwin Procter LLP
>The New York Times Building
>620 Eighth Avenue
>New York, NY 10018-1405
>Telephone:: (212) 813-8829
>Facsimile: (212) 355-3333
>Email: bharvey@goodwinprocter.com
>
>and
>
>CHAPMAN AND CUTLER LLP
>
>By: ___/s/ Adelaide Maudsley_____
>  Adelaide Maudsley (#8791)
>  James K. Tracy (#6668)
>  201 South Main Street, Suite 2000
>  Salt Lake City, UT 84111
>  Telephone: 801-533-0066
>  Facsimile: 801-533-9595
>  Email: maudsley@chapman.com
>
>Counsel for BayNorth Realty Fund VI, LP

LIBNY/4890080.1

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **RESPONSE TO OBJECTION TO PROOF OF INTEREST OF BAYNORTH REALTY FUND VI, L.P. IN EASY STREET PARTNERS, LLC** was served by electronic mail, by first class U.S. Mail, postage prepaid, and by CM/ECF electronic noticing 1st day of March, 2010, on each of the following:

> Kenneth L. Cannon II
> Durham Jones & Pinegar, P.C.
> 111 East Broadway, Suite 900
> P.O.Box 4050
> Salt Lake City, UT  84111
> kcannon@djplaw.com

_____/s/ Kimberly Giron, Legal Assistant___