Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted *pro hac vice*)
Steven B. Eichel (seichel@crowell.com) (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et. al*. | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:    201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | **[FILED ELECTRONICALLY]** |
| | ) | |

## AMENDED PLAN OF REORGANIZATION OF EASY STREET PARTNERS, LLC
## DATED FEBRUARY 18, 2010

## TABLE OF CONTENTS

ARTICLE I. Definitions ................................................................................................................... 2

ARTICLE II. Treatment of Administrative and Priority Claims ................................................... 11

ARTICLE III. Designation of Claims and Interests ..................................................................... 12

ARTICLE IV. Claims and Interests Impaired Under the Plan ...................................................... 13

ARTICLE V. Treatment of and Methods of Distribution to Classes Under the Plan .................. 13

ARTICLE VI. Provisions as to Disputed Claims and Distributions ............................................. 20

ARTICLE VII. Means for Execution of the Plan ......................................................................... 24

ARTICLE VIII. Executory Contracts ........................................................................................... 25

ARTICLE IX. Discharge of the Debtor ........................................................................................ 28

ARTICLE X. Conditions Precedent ............................................................................................. 28

ARTICLE XI. General Provisions ................................................................................................ 29

ARTICLE XII. Retention of Jurisdiction ..................................................................................... 37

## **Introduction**

Easy Street Partners, LLC ("Partners") hereby proposes the following plan of reorganization pursuant to § 1121(c) of the Bankruptcy Code.  Reference is made to the Disclosure Statement (as defined herein) for results of operations, projections for future operations, risk factors, a summary and analysis of the Plan (as defined herein) and certain related matters.  Partners is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined herein).

These cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the United States Bankruptcy Court for the District of Utah, Central Division.  The Plan does not contemplate substantive consolidation of Partners with any of the Other Debtors, and this Plan is for Partners only.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a holder of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of Claims and Interests.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined herein) and the Plan, Partners expressly reserves its right to alter, amend or modify the Plan, one or more times, before its substantial consummation; provided however, that any amendment or modification made after the Voting Deadline that materially and adversely alters the treatment of any Class entitled to a

distribution under the Plan shall require the approval of either (i) the Bankruptcy Court or (ii) the affected Class.

# ARTICLE I.

## Definitions

The following terms shall have the respective meanings set forth below.  In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.  Any term not defined herein which is defined by the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.

1.1     "Administrative Claim" means a claim which is not a secured claim, accruing from and after the Filing Date, including the fees and expenses of professional persons retained or to be compensated pursuant to the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under Chapter 123, title 28, of the United States Code.

1.2     "Allowed Claim" means a Claim or any portion thereof (a) that has been allowed by a Final Order, (b) as to which, on or by the Effective Date (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, (c) for which a proof of claim in a liquidated amount has been filed pursuant to the Bankruptcy Code or any order of the Bankruptcy Court and as to which either (x) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or any order of the Bankruptcy Court or (y) any objection to its allowance has been settled,

2

waived through payment or withdrawn, or has been denied by a Final Order or (d) that is expressly allowed in a liquidated amount in the Plan.

1.3     "Allowed . . . Claim" means an Allowed Claim of the particular type or Class described.

1.4     "Alternative Funder" means any person or entity other than SCP that provides funding as required for Partners to confirm this Plan.

1.5     "Assets" means all property of the Estate as defined in section 541 of the Bankruptcy Code.

1.6     "Ballot" means each of the ballot forms distributed to each holder of an impaired Claim or Interest on which the holder of such Claim or Interest is to indicate acceptance or rejection of this Plan.

1.7     "Bankruptcy Code" means Title 11, United States Bankruptcy Code, 101 *et seq.,* commonly referred to as the Bankruptcy Code.

1.8     "BayNorth" means BayNorth Realty Fund VI, LP.

1.9     "BayNorth Adversary Proceeding" means the adversary proceeding commenced by the Debtors on September 15, 2009 in the Bankruptcy Court against BayNorth, Adversary Proceeding Number 09-02422.

1.10     "BayNorth Transfer" means the $5.6 million disbursement from the real estate sales escrow account to BayNorth on or about February 18, 2008.

1.11     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Utah, Central Division or such other court as may have jurisdiction over Partners' Chapter 11 bankruptcy case.

1.12    "Business Day" means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.13    "Claim" means a claim against Partners as defined in § 101(5) of the Bankruptcy Code.

1.14    "Class" means a group of claims or interests, consisting of Claims or Interests which are substantially similar to each other, as classified pursuant to the Plan.

1.15    "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.16    "Confirmation Order" means the order of the Bankruptcy Court approving the Plan pursuant to § 1129 of the Bankruptcy Code and related sections thereof.

1.17    "Control Account(s)" means the accounts maintained by Partners, including an operating account, Sales Proceeds Account, sales deposit account and lockbox account, which are pledged to WestLB, and will continue to be maintained by the Reorganized Debtor.

1.18    "Cure Claim" has the meaning ascribed to it in Article 8.5 of the Plan.

1.19    "Disbursing Agent" means the Person or Entity designated in the Plan Supplement to disburse funds in accordance with the terms of this Plan.  The Disbursing Agent may be the Reorganized Debtor.

1.20    "Debtor" means Easy Street Partners, LLC.

1.21    "Disputed Claim" means (a) any Claim as to which Partners has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code or the

4

Bankruptcy Rules, or any claim otherwise disputed by Partners, the Creditors' Committee, or the

Reorganized Debtors or other party in interest in accordance with applicable law, which

objection has not been withdrawn or determined by a Final Order, and (b) and any Claim

scheduled by Partners as contingent, unliquidated or disputed, where a proof of claim has not

been timely filed.

1.22    "Effective Date" means the first business day after the 30th day subsequent to the

Confirmation Order becoming a Final Order.

1.23    "Entity" shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

1.24    "Estate" means the Debtor's property as defined in section 541 of the Bankruptcy

Code.

1.25    "Excess Cash Flow" means cash remaining after all required payments to West

LB, Jacobsen and Allowed Administrative and Priority Claims are paid, with a reasonable

reserve equal to the mandatory payments due to the foregoing senior creditors over the next three

(3) months, plus thirty (30) days of necessary expenses to operate the project.

1.26    "Final Order" means an order or a judgment which has not been reversed or

stayed and as to which (i) the time to appeal or to seek review, rehearing or certiorari has expired

pursuant to Rule 8002 of the Bankruptcy Rules and (ii) (a) no appeal or petition for review,

rehearing or certiorari is pending or (b) in the case of appeal, any such appeal or petition for

review, rehearing or certiorari has been dismissed.

1.27    "General Unsecured Claim" means a Claim which is not entitled to priority under

§ 507(a) of the Bankruptcy Code and which is not secured by a valid, perfected security interest

or lien and including a Claim, if any, arising from the rejection of an executory contract.

5

1.28    "Impaired" when used with respect to any Claim, Interest or Class, has the same meaning as that contained in § 1124 of the Bankruptcy Code.

1.29    "Interest" means the membership rights of the equity interests holders in Partners prior to the Confirmation Date.

1.30    "Interest Holder" means Easy Street Mezzanine, LLC.

1.31    "Jacobsen" means Jacobsen National Group, Inc.

1.32    "Jacobsen Secured Claim" means the Claim of Jacobsen against Partners in the amount of $1.5 million, which Claim is secured by liens on and against the Property.

1.33    "Legal Fees" means, with respect to any engagement of any attorney by any client, reasonable market-based fees incurred by the attorney on behalf of the client.

1.34    "Litigation Costs" means, with respect to any engagement, reasonable market – based expenses other than Legal Fees incurred by the attorney on behalf of the client.

1.35    "Maturity Date" means the date the balance of the loan from WestLB is due and owing, which date shall be either December 31, 2011 or December 31, 2013.  The Maturity Date shall be extended from December 31, 2011 through December 31, 2013, if (i) the Reorganized Debtor amortizes the Allowed WestLB Claim pursuant to the five (5) year business plan annexed to the Disclosure Statement as Exhibit 2, and (ii) the loan to value ratio is equal or greater than such ratio as of the Confirmation Date.

1.36    "Mezzanine Escrow" means an amount of money held by the Disbursing Agent for distribution pursuant to a plan of reorganization or liquidation to be filed by Mezzanine subsequent to the Confirmation Date or as otherwise ordered by the Bankruptcy Court.  The amount of the Mezzanine Escrow shall be equal to the difference between the appraised value of

Partners' assets as determined by the Bankruptcy Court and the aggregate amount of all Allowed Claims, Administrative Claims and Priority Claims against Partners.

1.37    "Modified Loan Documents" means loan documents between Partners and WestLB that modify existing loan documents reflecting the terms of the Plan, which documents shall be executed on or before the Effective Date and annexed to the Plan Supplement and which shall become binding on the Reorganized Debtor on and after the Effective Date.

1.38    "Net Sale Proceeds" means the proceeds from the sale or liquidation of a Unit or other Asset of Partners, minus reasonable and customary closing costs.  Closing costs shall include, without limitation, professional fees, brokerage fees and any non-exempt transfer taxes or fees.

1.39    "Net Recovery" means, with respect to the BayNorth Adversary Proceeding or such other action commenced by Partners or the Reorganized Debtor, all money and all benefits measurable or payable in money, received on account of any settlement, recovery, or judgment entered, less (a) Legal Fees and Litigation Costs incurred in connection with such proceeding and (b) applicable income taxes that will be incurred by Partners for the settlement, recovery, or judgment of such action or proceeding.

1.40    "Other Secured Claims" means the Claims of secured creditors other than WestLB, Jacobsen and the Subcontractors.

1.41    "Other Secured Creditors" means the holders of Other Secured Claims.

1.42    "Partners" means Easy Street Partners, LLC.

1.43    "Person" shall have the meaning as set forth in §101(41) of the Bankruptcy Code.

7

1.44    "Petition Date" means September 14, 2009, the date on which the Debtor filed its Chapter 11 petition.

1.45    "Plan" means this plan of reorganization, and all exhibits hereto, as the same may be modified or amended from time to time as and to the extent permitted herein or by the Bankruptcy Code.

1.46    "Plan Funder" means the person or entity that provides funding as required for Partners to confirm this Plan.  SCP or an entity formed by SCP or an affiliate of SCP will be the Plan Funder.  An entity formed by SCP will own a controlling interest of the Reorganized Debtor.

1.47    "Plan Supplement" means the compilation of information, documents and forms of documents specified in the Plan that shall be filed with the Clerk of the Bankruptcy Court on or before March 15, 2010.

1.48    "Priority Claim" means the portion of a Claim entitled to priority under § 507(a) of the Bankruptcy Code.

1.49    "Priority Tax Claim" means a claim of a governmental unit of the kind specified in sections 502(i) and 502(a)(8) of the Bankruptcy Code.

1.50    "Professional" means a person retained by order of the Court pursuant to §§ 327 or 1103 of the Bankruptcy Code and whose compensation is governed by § 330 of the Bankruptcy Code.  The term "Professional" shall not include the Disbursing Agent or the United States Trustee.

1.51    "Professional Claims" means the Allowed Claims of a Professional retained in these bankruptcy cases for compensation for services rendered or reimbursement of costs,

expenses or other charges and expenses incurred on or after the Petition Date and prior to and including the Effective Date.

1.52    "Property" means the real property and buildings and improvements thereon owned by Partners located at 201 Heber Avenue in Park City, Utah, a/k/a The Sky Lodge Hotel and 660 Main Street, Park City, Utah 84060.

1.53    "Record Date" means the date approved of by the Bankruptcy Court closing the claims register for purposes of determining the identity of the holders of Claims and Interests that are entitled to vote to accept or reject the Plan, which shall be set forth in the order approving the Disclosure Statement.

1.54    "Redemption Price" means the sale price that WestLB intends to sell the WestLB Secured Claim to a third party, and pursuant to which the Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, shall have the right of first refusal.

1.55    "Released Parties" has the meaning ascribed to it in section 10.5 of the Plan.

1.56    "Reorganized Debtor" means Partners after the Effective Date of the Plan or such other Entity formed by the Plan Funder or the Alternative Funder.  In either event, Partners' Assets will vest into the Reorganized Debtor as of the Effective Date.

1.57    "Sales Proceeds Account" means one of the Control Accounts into which 80% of the Net Sale Proceeds received by the Reorganized Debtor from the sale of each Unit will be deposited.

1.58    "Scheduled" means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.59    "Schedules" means the schedules of assets and liabilities filed by Partners on

October 15, 2009 in accordance with Bankruptcy Rule 1007(b), filed by the Debtor with the

Bankruptcy Court (as they may be amended from time to time in accordance with Bankruptcy

Rule 1009).

1.60    "SCP" means Strategic Capital Partners, LLC.

1.61    "Secured Claim" means a Claim secured by a valid, perfected and enforceable

lien on the Assets, to the extent of the value of the interest of the holder of such Secured Claim in

such Assets as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy

Code.

1.62    "Secured Creditor" means the holder of a claim which is secured by a valid,

perfected and enforceable lien on property of the Debtor, to the extent of the value of the interest

of the holder of such secured claim in such property as determined by the Bankruptcy Court

pursuant to § 506(a) of the Bankruptcy Code or as acknowledged in writing by the Debtor.

1.63    "Subcontractors" means the persons who or entities that contracted with Jacobsen

and provided services or materials in connection with construction of the Property.

1.64    "Third Party Units" has the meaning ascribed to it in section 5.2(c) of the Plan.

1.65    "Unit" means a one-eighth fractional share of one of the 22 residential units at the

Property entitling the owner to two ski weeks (mid –December through mid-April) each year,

plus 21 days throughout the year.  There are 176 Units at the Property, of which 113 Units were

sold prior to the Petition Date.

1.66    "WestLB" means WestLB AG, New York Branch, the secured lender of Partners.

1.67    "WestLB Adversary Proceeding" means the adversary proceeding commenced on January 12, 2010, by the Creditors' Committee against WestLB in the Bankruptcy Court seeking to (i) equitably subordinate the claims of WestLB to the Claims of all unsecured creditors of Partners and (ii) avoid Partners' waiver of its claims against WestLB and recover such claims for the benefit of Partners' estate.

1.68    "WestLB Secured Claim" means the Claim of WestLB against Partners in the Allowed amount no less than $15,164,331.17 as of the Petition Date, pursuant to and consistent with § 506 of the Bankruptcy Code, which Claim is secured by a lien on and against the Property and substantially all of Partners' other assets.

1.69    "Zoom" means that portion of the Property consisting of the restaurant owned by Partners and located at 660 Main Street, Park City, Utah 84060.

## ARTICLE II.
### Treatment of Administrative and Priority Claims

2.1    With respect to Administrative Claims other than Administrative Claims of Professionals, except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment, the Allowed Administrative Claims shall be paid (i) in the ordinary course of business, or (ii) on the Effective Date (or as soon as practicable thereafter) if not an ordinary course claim, or (iii) within ten (10) days of entry of a Final Order allowing such Administrative Claim.

2.2    With respect to Administrative Claims of Professionals, the Allowed Administrative Claims of Professionals shall be paid in full on the later of: (i) the Effective Date

or (ii) fourteen (14) days after entry of an order of the Court approving the fees and expenses of such Professional pursuant to section 330 of the Bankruptcy Code.

2.3     With respect to the Administrative Claim of the United States Trustee, Partners shall pay all fees due and payable under section 1930 of Title 28 within ten (10) days after the Effective Date.  In addition, Partners or the Reorganized Debtor shall pay the United States Trustee quarterly fees due and payable on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business until entry of a Final Decree, dismissal of the case or conversion of the case to a case under chapter 7, as such obligations become due.

2.4.     With respect to Priority Claims, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive equal quarterly Cash Payments over a period not exceeding five (5) years from the Petition Date, with the first payment to occur on the first business day of the third month after the Effective Date, at an interest rate of 6% or a rate agreed upon between the Reorganized Debtor and the taxing authority or otherwise set by the Bankruptcy Court.

2.5     All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

2.6     All other Priority Claims shall be paid in full on the Effective Date.

## ARTICLE III.

## Designation of Claims and Interests

The following Classes of Claims and Interests are designated pursuant to and in accordance with § 1123(a)(1) of the Bankruptcy Code:

3.1     "Class 1 Claim" shall consist of the Allowed WestLB Secured Claim.

3.2     "Class 2 Claim" shall consist of the Allowed Jacobsen Secured Claim.

3.3     "Class 3 Claims" shall consist of the All Other Allowed Secured Claims against Partners.

3.4     "Class 4 Claims" shall consist of the Allowed General Unsecured Claims against Partners.

3.5     "Class 5 Claims" shall consist of the Allowed Claims of the owners of the Third Party Units.

3.6     "Class 6 Interests" shall consist of the Interests in Partners.

## ARTICLE IV.

### Claims and Interests Impaired Under the Plan

4.1     Class 1 Claims, Class 2 Claims, Class 4 Claims, and Class 6 Interests are impaired under the Plan and are entitled to vote on the Plan.  Class 5 Claims are treated as impaired under the Plan and are entitled to vote on the Plan.

## ARTICLE V.

### Treatment of and Methods of Distribution to Classes Under the Plan

5.1     Class 1 Claim.  In full and complete satisfaction, settlement and release of and in exchange for the Allowed WestLB Claim, the Allowed Class 1 Claim shall be paid as follows:

> (a)  The Allowed WestLB Secured Claim shall accrue interest at 3-month LIBOR plus 6%; provided however, the maximum rate shall be capped at 9% ("Contract Rate"), until paid in full.

> (b)  WestLB shall retain a lien on all of Partners' assets and shall be provided with a lien on all of the Reorganized Debtors' assets and "Control Accounts" shall be established similar to those currently in effect. Modified Loan Documents shall be executed on or before the Effective

13

Date, which shall be reasonably acceptable to Partners, WestLB and the Plan Funder (or Alternative Funder) or as otherwise approved by the Bankruptcy Court.

(c)  The Allowed WestLB Secured Claim shall be paid as follows:  Monthly interest payments subsequent to the Effective Date shall be paid on the first business day of each month, one month in arrears, on the outstanding principal balance of the Allowed WestLB Secured Claim through December 31, 2010 at the Contract Rate.  Thereafter, monthly payments shall be made according to a 20-year amortization schedule; provided, however, all or a portion of the monthly payments constituting amortization of principal (but not the portion of the monthly payments constituting interest) shall be reduced by payments previously made to WestLB after the Effective Date from the sale of Units until the loan is repaid.  Sums remaining due and owing on the Maturity Date shall be paid in full.  The Maturity Date shall be extended from December 31, 2011 through December 31, 2013, if (i) the Reorganized Debtor amortizes the Allowed WestLB Claim pursuant to the five (5) year business plan annexed to the Disclosure Statement as Exhibit 2, and (ii) the loan to value ratio is equal to or greater than such ratio as of the Confirmation Date.

(d)  WestLB shall receive 80% of the Net Sale Proceeds received by the Reorganized Debtor from the sale of each Unit, each of which sales must exceed a minimum release price to be reasonably acceptable to WestLB or otherwise ordered by the Bankruptcy Court.  The remaining 20% of Net Sale Proceeds shall be deposited into a Control Account, provided, however, said sums may be utilized in connection with costs of running the Property and other Plan payments.

(e)  In the event of the sale of the restaurant Zoom, which sale must exceed a minimum price reasonably acceptable to WestLB or as otherwise ordered by the Bankruptcy Court, along with the underlying property, WestLB shall receive 60% of the Net Sale Proceeds received by the Reorganized Debtor.  The remaining 40% of the Net Sale Proceeds shall be utilized by the Reorganized Debtor for expenses relating to operations of the Sky Lodge, payments in connection with the Plan, or repayment of loans or distribution to the Plan Funder or Alternative Funder (provided all payments under the Plan are current).

(f)  Prepayment of the loan to WestLB shall be allowed without penalty.

(g)  The Reorganized Debtor, the Plan Funder or the Alternative Funder shall have the right of first offer to purchase or satisfy the WestLB Secured Claim at a discount or par, as the case may be, in the event WestLB seeks to sell or assign its claim to a third party.  Upon the Reorganized Debtor , Plan Funder or Alternative Funder making an offer ("Offer") to purchase the WestLB Secured Claim, WestLB shall accept or reject such Offer

14

within ten (10) days of receipt of the Offer.  If WestLB accepts the Offer, then the Reorganized Debtor, the Plan Funder or Alternative Funder, as the case may be, shall pay the amount in the Offer to WestLB within sixty (60) days in full and complete satisfaction of the WestLB Secured Claim. If WestLB rejects the Offer, then prior to WestLB attempting to sell the WestLB Secured Claim to any Third Party, it must make a counter-offer ("Counter-Offer") to the Reorganized Debtor, the Plan Funder or Alternative Funder, as the case may be, who shall have ten (10) days to accept or reject the Counter-Offer.  If the Reorganized Debtor, Plan Funder or Alternative Funder rejects the Counter-Offer, then WestLB may sell the WestLB Secured Claim at an amount equal to or greater than the Counter-Offer to a third party.  If WestLB receives an offer from a third party to purchase the WestLB Secured Claim for an amount less than the Counter-Offer (the "Third Party Offer"), then WestLB must first offer the Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, the opportunity to purchase or satisfy the WestLB Secured Claim irrespective of whether the WestLB Secured Claim is being sold by itself or in a package with other loans.  WestLB shall promptly notify the Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, of its intent to accept a Third Party Offer for its outstanding loan balance and specify the amount of the Third Party Offer.  The Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, shall have ten (10) days to elect to purchase the WestLB Secured Party Claim at the amount of the Third Party Offer and have sixty (60) days to close the purchase or satisfaction of the WestLB Secured Claim for the amount of the Third Party Offer.

(h)    Any Net Recovery received in connection with the BayNorth Transfer shall be paid 70% to WestLB amortizing the outstanding indebtedness to WestLB and 30% to the Reorganized Debtor for utilization of Property expenses, payment to Allowed Claims of creditors pursuant to the Plan or utilized by the Reorganized Debtor as determined by the Plan Funder or the Alternative Funder, as the case may be.  To the extent claims of creditors, other than WestLB, have been fully paid, such remaining sums shall be free cash for utilization by the Reorganized Debtor.

(i)    Upon payment of the Allowed WestLB Secured Claim in full, the lien of WestLB on the Property shall be deemed released and satisfied and the holder of the Allowed WestLB Claim shall execute such documents releasing its liens on the Property and all Assets of the Reorganized Debtor as is requested by and reasonably acceptable to Partners.

(j)    Notwithstanding any other provision of the Plan to the contrary, the CloudNine Resorts LLC guaranty of WestLB's loan to Partners shall remain in place and shall be reaffirmed on the Effective Date, provided however, (a) the only triggering event of a default against CloudNine

Resorts LLC shall be prospective defaults subsequent to the Effective Date and all prior defaults, if any, are waived, and (b) in the event WestLB accepts payment on its claim in an amount less than its Allowed Claim, the guaranty shall be cancelled and not enforceable.

(k)  Class 1 is impaired by the Plan. WestLB, as the sole holder of the Class 1 Claim, is entitled to vote to accept or reject the Plan.

5.2  Class 2 Claim.

(a)  In full and complete satisfaction, settlement and release of and in exchange for the Allowed Jacobsen Secured Claim, as well as all claims of Jacobsen's Subcontractors, whether they filed mechanics' liens or any other claims against Partners, Easy Street Mezzanine, LLC, Easy Street Holding, LLC and the owners of Third Party Units, pursuant to sections 5.2(a), 5.2(d) and 5.2(e), the holder of the Allowed Jacobsen Secured Claim shall have an Allowed Secured Claim in the amount of $1.5 million, which shall accrue interest at 8% simple interest from and after the Confirmation Date on the outstanding principal balance of the Allowed Jacobsen Secured Claim, and the Claim shall be treated as follows:

> The holder of the Allowed Jacobsen Secured Claim shall be paid a discounted cash payment on the Effective Date equal to $1,330,000 and shall utilize the funds it receives to pay its Subcontractors, including, but not limited to, Gunthers Comfort Air, in full and complete satisfaction, settlement and release of all Claims of Jacobsen and each of its Subcontractors against the Debtor and the owners of the Third Party Units.

(b)  Jacobsen and its Subcontractors shall be enjoined from foreclosing on Assets of the Reorganized Debtor, provided that the Reorganized Debtor has made the $1,330,000 payment provided in the Plan to Jacobsen.

(c)  All pending actions against Units owned by third parties (the "Third Party Units") and the third parties owning the Units shall be stayed for a period from the Confirmation Date to the date of payment of the $1,330,000.

(d)  Upon Jacobsen's receipt of the $1,330,000, Jacobsen, its Subcontractors and the owners of the Third Party Units shall be deemed to have mutually released each other with respect to Jacobsen's lien and any other lien of a Subcontractor on the particular Unit and Jacobsen's and the Subcontractor's work on the particular Unit, (ii) the lien of Jacobsen and any Subcontractor on the particular Third Party Unit shall be deemed released and satisfied and Jacobsen and the Subcontractors, as applicable, shall execute and timely record such documents releasing its lien with

16

respect to that particular Third Party Unit (irrespective of source of payment), and (iii) Partners and the owners of the Third Party Units shall be dismissed with prejudice from the litigation commenced by Jacobsen and the Subcontractors to enforce their liens.

(e) Upon satisfaction of the Allowed Jacobsen Secured Claim, the liens of Jacobsen and all Subcontractors on the Property and the Third Party Units shall be deemed released and satisfied and the holder of the Allowed Jacobsen Secured Claim and all Subcontractors shall execute and timely record such documents releasing their liens on the Property, and all Assets of the Reorganized Debtor and all the Third Party Units, as is requested by and reasonably acceptable to the Reorganized Debtor.

(f) Under any circumstance, upon payment to Jacobsen of $4,500 (the "Unit Release Price") for a particular Third Party Unit, then (i) Jacobsen, its Subcontractors and the owner of the Third Party Unit for which the Unit Release Price is received by Jacobsen shall be deemed to have mutually released each other with respect to Jacobsen's lien and any other lien of a Subcontractor on the particular Third Party Unit and Jacobsen's and the Subcontractor's work on the particular Third Party Unit, (ii) the lien of Jacobsen and any Subcontractor on the particular Third Party Unit shall be deemed released and satisfied and Jacobsen and the Subcontractor, as applicable, shall execute and timely record such documents releasing its lien with respect to that particular Third Party Unit (irrespective of source of payment), and (iii) the owner of the Third Party Unit shall be dismissed with prejudice from litigation commenced by Jacobsen and any Subcontractor to enforce their liens. Upon payment of each Unit Release Price (irrespective of who made the payment), the Reorganized Debtor be credited for the amount paid and such amount shall reduce the principal amount of the Allowed Jacobsen Secured Claim accordingly.  In the event an owner of a Third Party Unit pays the Unit Release Price, the Debtor or Reorganized Debtor, as the case may be, shall promptly reimburse the owner of the applicable Third Party Unit the Unit Release Price paid.

(g) The treatment provided herein to the holder of the Allowed Jacobsen Secured Claim shall be in full satisfaction, discharge and release of all of the obligations to the holders of the Allowed Jacobsen Secured Claim as well as Claims of the Subcontractors.

(h) Notwithstanding anything contained in the Plan, the Reorganized Debtor shall retain all warranty claims against Jacobsen.

(i) Class 2 is impaired by the Plan. Jacobsen, as the sole holder of the Class 2 Claim, is entitled to vote to accept or reject the Plan.

5.3     Class 3 Claim.

>   (a)  In full and complete satisfaction, settlement and release of and exchange
>       for the Allowed Other Secured Claims, on the Effective Date, except to
>       the extent that the holder of an Other Secured Claim agrees to a less
>       favorable treatment, all Other Secured Creditors shall be separately
>       classified and their collateral will either be assigned to such Other Secured
>       Creditor as the indubitable equivalent of such claim or the secured claim
>       shall be reinstated or rendered unimpaired in accordance with section 1124
>       of the Bankruptcy Code, notwithstanding any contractual provision or
>       applicable nonbankruptcy law that entitles the holder of an Other Secured
>       Claim to demand or receive payment of such Claim prior to its stated
>       maturity from and after the occurrence of a default.

>   (b)  Class 3 is unimpaired by the Plan. Each holder of an Allowed Class 3
>       Claim is presumed to have accepted the Plan and is not entitled to vote to
>       accept or reject the Plan.

5.4     Class 4 Claims.  In full and complete satisfaction, settlement and release of and in

exchange for the Allowed General Unsecured Claims, each holder of an Allowed General

Unsecured Claim, except to the extent such holder agrees to a less favorable treatment, shall

have the option of electing one of the following alternatives to be elected on their Ballot in

voting on the Plan:

>   (a)  Option 1:  Other than the Claims of CloudNine Resorts – Sky Lodge
>       Management, LLC ("Sky Lodge Management") and CloudNine Resorts –
>       Sky Lodge Development, LLC ("Sky Lodge Development"), holders of
>       Allowed Class 4 Claims shall receive payment of 100% of their Allowed
>       Claim in equal quarterly payments, with the first payment due on October
>       15, 2010. Successor quarterly payments shall be on January 15th, April
>       15th and July 15th with the last payment July 15, 2013, which is
>       approximately 3.5 years from the Effective Date.  Additionally, holders of
>       Class 4 Claims shall receive 6% simple interest on the outstanding balance
>       owed on each Class 4 Claim with such interest to be paid from the
>       Mezzanine Escrow, provided, that funds are available in the Mezzanine
>       Escrow as of July 15, 2013 to pay such interest, after deducting the
>       expenses (including attorney's fees and costs) incurred in connection with
>       litigating the BayNorth Adversary Proceeding (which expenses are paid
>       from the Mezzanine Escrow),

>   (b)  Option 2.  Other than the Claims of Sky Lodge Management and Sky
>       Lodge Development, holders of Allowed Class 4 Claims shall receive

18

payment of a discounted amount equal to 60% of their Allowed Claim on the thirtieth (30th) day after the Effective Date.

(c)  If the holder of an Allowed General Unsecured Claim does not vote or fails to make an election of either option 1 or 2 or attempts to elect to split its Allowed General Unsecured Claim between options 1 and 2, then such holder of an allowed General Unsecured Claim shall be paid in accordance with option 1 as set forth in Article 5.4(a) above.

(d)  The claim of Sky Lodge Management and Sky Lodge Development shall be paid pursuant to an agreement between the Plan Funder or Alternative Funder and the holder of the Claim, provided, however, that such Claim shall not be paid over a period less than four (4) years from the Effective Date.

(e)  Class 4 is impaired by the Plan.  Each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

5.5    Class 5 Ownership of Third Party Units

(a)  In full and complete satisfaction, settlement and release of and in exchange for the Allowed Claims of the Owners of the Third Party Units, upon payment of the Allowed Jacobsen Secured Claim, pursuant to section 5.2(a) of the Plan, all of the liens on the Third Party Units shall be released, the lawsuit by Jacobsen dismissed with prejudice, and the Claims of the owners of the Third Party Units shall be fully satisfied, released and discharged.

(b)  In the event an owner of a Third Party Unit pays the Unit Release Price, the Debtor or Reorganized Debtor, as the case may be, shall promptly reimburse the owner of the applicable Third Party Unit the Unit Release Price paid.

(c)  Class 5 is treated as impaired under the Plan.  Each holder of an Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

5.6    Class 6 Interests.

(a)  In full and complete satisfaction, settlement and release of and in exchange for the Interest in Partners, the holder of the Allowed Interest in Partners shall receive an amount equal to the difference between the appraised value of Partners' assets as determined by the Bankruptcy Court and the allowed amount of all Claims, Administrative Claims and Priority Claims against Partners, which shall be posted in the Mezzanine Escrow. On the Effective Date, the Interest in Partners shall be cancelled.

(b)  The Mezzanine Escrow will be posted with the Disbursing Agent and utilized to fund the BayNorth Adversary Proceeding.  Any funds remaining upon resolution of the BayNorth Adversary Proceeding shall

not be disbursed until the holders of Allowed Class 4 General Unsecured Claims are either (a) paid a discounted amount equal to 60% of their Allowed Claim on the thirtieth (30th) day after the Effective Date, or (b) paid in full, depending upon their elected treatment.  For those holders of Class 4 Claims that elect to be paid in full, such holders shall also receive 6% simple interest on the outstanding balance owed on each Class 4 Claim with such interest to be paid from the Mezzanine Escrow, provided, that funds are available in the Mezzanine Escrow as of July 15, 2013 to pay such interest, after deducting the expenses (including attorney's fees and costs) incurred in connection with litigating the BayNorth Adversary Proceeding (which expenses are paid from the Mezzanine Escrow).

(c)   Class 6 is impaired by the Plan.  Mezzanine, as the sole holder of the Allowed Class 6 Interest is entitled to vote to accept or reject the Plan.

## ARTICLE VI.

### Provisions as to Disputed Claims and Distributions

6.1   Disputed Claims.

(a)   In connection with distributions to be made in respect of Allowed Claims, there shall be reserved from any distribution to the holder of a Disputed Claim the amount of distribution which then otherwise would be paid in respect to such Disputed Claim on the Effective Date if the full amount of such Claim were deemed to be an Allowed Claim or such lesser amount as the Bankruptcy Court may determine.

(b)   Pending the determination of such Disputed Claim by the Bankruptcy Court, Partners shall deposit in a separate bank account funds equal to the amount so reserved or such lesser amount as the Bankruptcy Court may have determined within fifteen (15) business days after the date on which such amount would otherwise be distributed to the holder of such Claim. Such funds shall be held by the Disbursing Agent in such separate bank account as long as such Claim remains a Disputed Claim.

(c)   If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtor, or the Disbursing Agent shall, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, except as otherwise provided in the Plan, distribute to the holder of such Allowed Claim an amount, without any interest thereon, that provides such holder with the same percentage recovery, as of such date, as holders of Claims in the class that were Allowed on the Effective Date.

(d)   To the extent that a Disputed Claim is expunged or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.  Any Disputed Claim, for which a proof of

20

claim has not been deemed timely filed as of the Effective Date, shall be disallowed.

(e) Any monies remaining on deposit with respect to any Disputed Claim after its resolution or determination by the Bankruptcy Court shall be returned to the Reorganized Debtor.

6.2     Resolution of Disputed Claims.  The Reorganized Debtor shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328, 330 and 503 of the Bankruptcy Code) to make, file and prosecute objections to Claims.  The Reorganized Debtor shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtors), but in no event shall the service of such an objection be later than 120 days after the Effective Date, unless such date is extended by order of the Bankruptcy Court.  The Bankruptcy Court, for cause, may extend the deadline on the request of the Reorganized Debtor.  All objections shall be litigated to a Final Order except to the extent that the Reorganized Debtor elects to withdraw such objection, or the Reorganized Debtor and the holder of the Disputed Claim compromise, settle or otherwise resolve any such objections, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further order of the Bankruptcy Court.

6.3     Setoffs.  To the extent permitted under applicable law, the Reorganized Debtor may set off against or recoup from the holder of any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and causes of action of any nature that the Debtors have asserted in writing against the holder of such Allowed Claim, including, without limitation, any rights under section 502(d) of the Bankruptcy Code and in the absence of a

21

written objection by such holder of an Allowed Claim within thirty (30) days of the delivery of

such a writing from Partners or the Reorganized Debtor, it will be conclusively presumed that the

requirements for disallowance of a claim under section 502(d) of the Bankruptcy Code or setoff

or recoupment under applicable law have been satisfied.

6.4    Distributions of Cash.  Any payment of Cash made by the Reorganized Debtor, or

the Disbursing Agent, pursuant to the Plan may be made at the option of such party either by

check drawn on a domestic bank or by wire transfer from a domestic bank.

6.5    Distributions Free and Clear.  Except as otherwise provided in the Plan, any

distributions or transfers by or on behalf of the Reorganized Debtor under the Plan, including,

but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any

liens, claims, and encumbrances, and no other entity shall have any interest – legal, beneficial, or

otherwise – in assets transferred pursuant to the Plan.

6.6    Timing of Distributions.  Unless otherwise provided in the Plan, any distribution

to be made by the Reorganized Debtor or the Disbursing Agent shall be made to the extent and at

the time provided in Article 5 of the Plan.  In the event that any payment or act under the Plan is

required to be made or performed on a date that is not a Business Day, then the making of such

payment or the performance of such act may be completed on the next succeeding Business Day,

but shall be deemed to have been completed as of the required date.

6.7    Delivery of Distributions.  Subject to Bankruptcy Rule 9010, all distributions to

any holder of an Allowed Claim shall be made at the address of such holder as set forth on the

Schedules or on the books and records of the Partners or its agents.  The holder of an Allowed

Claim must notify the Reorganized Debtor in writing of a change of address pursuant to the

notice requirements set forth in Article 11.15 of the Plan or, in the case of holders of transferred

Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e)

by such holder or transferee that contains an address for such holder different than the address of

such holder as set forth in the Schedules.  Neither the Reorganized Debtor nor the Disbursing

Agent shall be liable for any distribution sent to the address of record of a holder in the absence

of the written change thereof as provided herein or in the Plan

       6.8    <u>Distributions to Holders as of Record Date</u>.  As of the close of business on the

Record Date, the claims register for Partners shall be closed pursuant to the order approving the

Disclosure Statement, and there shall be no further changes made to the identity of the record

holder of any Claim.  Neither the Reorganized Debtor nor the Disbursing Agent shall have any

obligation to recognize any transfer of any Claim occurring after the Record Date, <u>provided,</u>

<u>however</u>, that the Reorganized Debtor and the Disbursing Agent will recognize transfers of

Claims made after the entry of an order approving the Disclosure Statement but before the

Confirmation Date for distribution purposes.

       6.9    <u>Undeliverable and Unclaimed Distributions</u>.

    (a)  If the distribution to the holder of any Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Reorganized Debtor or the Disbursing Agent, as appropriate, in writing of such holder's then-current address, at which time all missed distributions shall be made, subject to the provisions of subsection (c) of this Article 6.10, as soon as is practicable to such holder, without interest.

    (b)  Checks issued by the Reorganized Debtor or the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of section 11.15 of the Plan to the Reorganized Debtor or the Disbursing Agent, as appropriate, by the holder of the Allowed Claim to whom such check originally was issued.

(c) All claims for undeliverable distributions or voided checks shall be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made.  After such dates, all such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall become unencumbered Cash of the Reorganized Debtor.  The holder of any Claim for which any undeliverable distribution has been deemed unclaimed property under section 347(b) of the Bankruptcy Code shall not be entitled to any other or further distribution under the Plan on account of such Claim.

## ARTICLE VII.

## Means for Execution of the Plan

7.1     The funds required for the confirmation and performance of this Plan shall be provided from:  (i) all funds held by the Debtor as property of the estate, and (ii) capital contributions and/or loans made by the Plan Funder to the Reorganized Debtor.

7.2     Reorganized Debtor.

(a) Reorganized Articles of Organization and Reorganized Operating Agreement.  The Reorganized Debtor shall adopt Reorganized Articles of Organization and a Reorganized Operating Agreement prior to, but effective as of, the Effective Date, which shall be included in the Plan Supplement.  Prior to the closing of Partners' Chapter 11 case, any amendments to the Reorganized Debtor's Articles of Organization and Reorganized Operating Agreement shall be filed with the Bankruptcy Court.

(b) Managing Members and Officers.  The initial managing members and officers of the Reorganized Debtor shall be disclosed in the Plan Supplement and shall be in effect as of the Effective Date.

7.3     Exit Funding.  On or before the Effective Date, the Plan Funder or Alternative Funder shall contribute capital, loans and/or provide additional standby funds (either as additional capital or loans) on terms mutually acceptable to Partners and the Plan Funder or Alternative Funder, as the case may be, sufficient to effectuate the Plan.  The Plan Supplement will provide the details and terms of such funding.

7.4     <u>Early Payment</u>.  Nothing in the Plan shall prevent the Reorganized Debtor from making any payments prior to the date provided for in the Plan, and the Reorganized Debtor shall not suffer any penalty or prejudice from making any such payments.

7.5     <u>Mezzanine Escrow</u>.  The Mezzanine Escrow will be posted with the Disbursing Agent and utilized to fund the BayNorth Adversary Proceeding.  Any funds remaining upon resolution of the BayNorth Adversary Proceeding shall not be disbursed until the holders of Allowed Class 4 General Unsecured Claims are either (a) paid a discounted amount equal to 50% of their Allowed Claim on the thirtieth (30th) day after the Effective Date, or (b) paid in full, depending upon their elected treatment.

## ARTICLE VIII.

### Executory Contracts

8.1     <u>Executory Contracts and Unexpired Leases</u>.  Under section 365 of the Bankruptcy Code, Partners has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired lease.  If Partners rejects an executory contract or unexpired lease that was entered into before the Petition Date, the contract or lease will be treated as if it had been breached on the date immediately preceding the Petition Date, and the other party to the agreement will have a General Unsecured Claim for damages incurred as a result of the rejection.  In the case of rejection of real property leases, damages are subject to certain limitations imposed by section 502(b)(6) of the Bankruptcy Code.

8.2     <u>Rejected Contracts and Leases</u>.

(a)     Each executory contract and unexpired lease to which Partners is a party shall be deemed automatically rejected as of the Effective Date, unless such executory contract or unexpired lease (1) will have been previously assumed by Partners, (2) is the subject of a motion to assume filed on or before the Confirmation Date or (3) is listed on the schedule of assumed

contracts and leases annexed as an Exhibit to the Plan Supplement. Partners may at any time on or before the Confirmation Date (or, with respect to any executory contract or unexpired lease for which there is a dispute regarding the nature or the amount of any cure, at any time on or before the entry of a Final Order resolving such dispute) amend the Plan Supplement to delete therefrom or add thereto any executory contract or unexpired lease, in which event such executory contract or unexpired lease will be deemed to be rejected, assumed or assumed and assigned, as the case may be.

(b)  Partners will provide notice of any amendments to the Plan Supplement to the parties to the executory contracts or unexpired leases affected thereby and counsel to the Creditors' Committee and WestLB.  The fact that any contract or lease is listed in the Plan Supplement will not constitute or be construed as an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that the Reorganized Debtor or any successor to the Reorganized Debtor has any liability thereunder.

(c)  The Reorganized Debtor reserves the right to file a motion on or before the Confirmation Date to assume and assign or reject any executory contract or unexpired lease whether or not identified in the Plan Supplement.

(d)  The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.3    <u>Rejection Damages Bar Date</u>.  If the rejection of an executory contract or unexpired lease results in a Claim, then such Claim will be forever barred and will not be enforeceable against Partners or the Reorganized Debtor or its respective properties unless a proof of claim is filed with the Bankruptcy Court and served upon counsel to the Reorganized Debtor, counsel to the Creditors' Committee and WestLB, no later than thirty (30) calendar days after the later of the Confirmation Date or the entry of an order of rejection.  Nothing in the Plan will extend any prior deadline to file a proof of claim for damages arising from the rejection of an exeutory contract or unexpired lease.

8.4    <u>Assumed Contracts and Leases</u>.

    (a)   Except as otherwise provided in the Plan or the Confirmation Order, all executory contracts and unexpired leases identified in the Plan Supplement on an Exhibit listing assumed agreements will be deemed automatically assumed as of the Effective Date.

    (b)   Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire or occupy of real property will include (1) all modifications, amendments, renewals, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other documents that in an manner affect such executory contract or unexpired lease and (2) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy or is otherwise rejected as a part of the Plan.

    (c)   To the extent Partners is party to the unexpired lease or executory contract and is to be merged or dissolved as a result of the Plan, any non-debtor party to such unexpired lease or executory contract will, upon assumption as contemplated herein, be deemed to have consented to the assignment of such unexpired lease or executory contract to the Reorganized Debtor.

    (d)   The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption of such executory contracts and unexpired leases, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.5    <u>Payments Related to Assumption of Executory Contracts and Unexpired Leases</u>.

    (a)   Any monetary amounts by which each executory contract and unexpired lease to be assumed under the Plan may be in default will be satisfied, under section 365(b)(1) of the Bankruptcy Code by promptly curing same ("Cure Claim").

    (b)   In the event of a dispute regarding (1) the nature or the amount of any Cure Claim, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the amount of the Allowed Cure Claim shall be paid no later than thirty (30) calendar days following the entry of a Final Order resolving the dispute and approving the assumption and, as the case may be, assigned.

27

## ARTICLE IX.

### Discharge of the Debtor

9.1     The occurrence of the Effective Date shall discharge Partners pursuant to the full

extent of Section 1141(d)(1) of the Bankruptcy Code, from any and all debts of and Claims

against Partners that arose prior to the Confirmation Date, and any kind of debt specified in §§

502(g), (h) or (i) of the Bankruptcy Code, whether or not:  (i) a proof of Claim based on such

debt is filed or deemed filed under § 501 of the Bankruptcy Code; (ii) such Claim is allowed

under § 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.  On

and after the Effective Date, as to every discharged debt and Claim, the Person or Entity that

held such debt or Claim shall be precluded from asserting any such debt or Claim against

Partners or the Reorganized Debtor or its property based upon any document, instrument, act,

omission, transaction or other activity of any kind or nature that occurred prior to the

Confirmation Date.

9.2     The rights and treatment of all Claims against and Interests in the Plan shall be in

exchange for and in complete satisfaction  and release of all Claims and Interests of any nature

whatsoever, including any interest accrued thereon from and after the Petition Date, against

Partners or its estate, Assets, Property or interests in property.  The Reorganized Debtor shall not

be responsible for any obligations of the Other Debtors or their estates.

## ARTICLE X.

### Conditions Precedent

10.1    Conditions to Confirmation.  The following are conditions precedent to

confirmation of the Plan, each of which may be satisfied or waived in accordance with section

10.3 of the Plan.

    (a)   The Bankruptcy Court shall have approved by Final Order a disclosure statement with respect to the Plan.

    (b)   The Plan Funder or Alternative Funder shall commit to providing sufficient funding to effectuate the Plan.

    (c)   The Confirmation Order shall be in form and substance reasonably acceptable to Partners.

10.2    <u>Conditions to Effective Date</u>.  The following are conditions precedent to the Effective Date, both of which may be satisfied or waived in accordance with Article 10.3 of the Plan.

    (a)   Partners or the Reorganized Debtor shall have executed and delivered the Modified Loan Documents, in a form that is reasonably acceptable to WestLB.

    (b)   The Confirmation Order shall have been entered and have become a Final Order

    (c)   Partners or the Reorganized Debtor shall have sufficient cash necessary to pay Claims required to be paid on the Effective Date.

10.3    <u>Waiver of Conditions to Confirmation</u>.  Conditions set forth in sections 10.1 and 10.2 of the Plan may be waived by Partners without any further notice to parties in interest or the Bankruptcy Court and without a hearing.

## ARTICLE XI.

## General Provisions

11.1    All objections to Disputed Claims shall be commenced, filed or asserted within 120 days after the Effective Date.

11.2    **Releases and Exculpations.  Except as otherwise provided in the Plan or Confirmation Order, as of the Effective Date, Partners, the Reorganized Debtor, the Disbursing Agent, the Creditors' Committee, the members of the Creditors' Committee in their respective capacity as such, any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial**

advisors, and agents, and any such parties' successors and assigns (collectively, the

"Released Parties") shall be released by Partners and any successors-in-interest of Partners

from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action,

remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen,

existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that

Partners would have been legally entitled to assert in its own right (whether individually or

collectively) or that any holder of a Claim, Interest, or other person or entity would have

been legally entitled to assert on behalf of Partners or its estate, based in whole or in part

upon any act or omission, transaction, agreement, event, or other occurrence taking place

before or on the Effective Date but occurring during the chapter 11 cases, except for acts

constituting willful misconduct, gross negligence, or bad faith and, in all respects such

parties shall be entitled to rely upon the advice of counsel with respect to their duties and

responsibilities under the Plan.  Without limiting the generality of the foregoing, to the

extent permitted by law, Partners and any successors-in-interest of Partners shall waive all

rights under any statutory provision purporting to limit the scope or effect of a general

release, whether due to lack of knowledge or otherwise.

      11.3    Partners, the Committee, and the Released Parties, and any property of or

professionals retained by such parties, or direct or indirect predecessor in interest to any of

the foregoing persons, shall not have or incur any liability to any Person or Entity for any

act taken or omission, after the Petition Date, in connection with or related to these cases or

the operations of Partners business during the cases, including but not limited to (i)

formulating, preparing, disseminating, implementing, confirming, consummating or

administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; or (iii) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or bad faith occurring during the Chapter 11 Cases, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

11.4    **Injunction**.  **The satisfaction, releases and discharge pursuant to Article 9 of the Plan will also act as an injunction against any Person or Entity commencing or continuing any action, employment of process or act to collect, offset, recoup or recover any Claim or Cause of Action satisfied, released or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.**

11.5    Modification of the Plan.  The Reorganized Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

11.6    Withdrawal or Revocation of the Plan.  Partners may withdraw or revoke the Plan at any time prior to the Confirmation Date.  If Partners revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained in the Plan or Disclosure Statement shall be deemed to constitute a waiver or release of any Claim by or against Partners or the Other Debtors or any other person or to prejudice in any manner the rights of Partners or the Other Debtors or any other person in any further proceedings involving Partners or the Other Debtors.

11.7    Section 1146 Exemption.  Pursuant to Bankruptcy Code § 1146(a), (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable law.

11.8    Dissolution of the Creditors' Committee.  On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention and employment of the Committee's attorneys shall terminate.  The Committee shall continue in existence after the Effective Date solely for the purpose of reviewing and being heard by the Bankruptcy Court, and on any appeal, with respect to applications for compensation and reimbursement of expenses pursuant to section 330 and/or 503(b) of the Bankruptcy Code.

32

11.9    Severability.  In the event that the Bankruptcy Court determines, prior to the

Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the

Bankruptcy Court shall, with the consent of Partners and the Committee, have the power to alter

and interpret such term or provision to make it valid or enforceable to the maximum extent

practicable, consistent with the original purpose of the term or provision held to be invalid, void

or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and

provisions of the Plan shall remain in full force and effect and shall in no way be affected,

impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order

shall constitute a judicial determination and shall provide that each term and provision of the

Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and

enforceable pursuant to its terms.  Notwithstanding the foregoing, the provisions in the Plan

relating to releases and exculpations are not severable from the remainder of the Plan.

11.10    Governing Law.  Except to the extent the Bankruptcy Code or Bankruptcy Rules

are applicable and except as may otherwise be provided in the Modified Loan Documents, the

rights and obligations arising under the Plan shall be governed by, and construed and enforced in

accordance with, the federal laws of the United States and, to the extent there is no applicable

federal law, the domestic laws of the State of Utah, without giving effect to Utah's principles of

conflicts of law.

11.11    Binding Effect.  Except as otherwise provided in section 1141(d)(3) of the

Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any

holder of a Claim against or Interest in Partners and its respective successors and assigns,

whether or not the Claim of such holder is impaired under the Plan and whether or not such

holder has accepted the Plan.  The rights, benefits and obligations of any entity named or referred

to in the Plan, whose actions may be required to effectuate the term of the Plan, shall be binding

on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such

Entity (including, but not limited to, any trustee appointed for the Other Debtors under chapters 7

or 11 of the Bankruptcy Code).

     11.12  <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930(a)(6)

of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date,

shall be paid on the Effective Date by Partners.  Any Statutory Fees accruing after the

Confirmation Date also shall be paid by the Reorganized Debtor.

     11.13  <u>Notices.</u>  Any notice required or permitted to be provided to Partners, the

Creditors' Committee, or WestLB under the Plan shall be in writing and served by (a) certified

mail, return receipt requested, (b) hand delivery, or (c) overnight receipted delivery to be

addressed as follows:

       If to Partners:

          William Shoaf
          Easy Street Partners, LLC
          201 Heber Avenue
          Park City, Utah 84060

          with a copy to

          Kenneth L. Cannon II, Esq.
          Steven J. McCardell, Esq.
          DURHAM JONES & PINEGAR, P.C.
          111 East Broadway, Suite 900
          P.O. Box 4050
          Salt Lake City, UT  84110-4050

-and-

Michael V. Blumenthal, Esq.
Steven B. Eichel, Esq.
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022

If to Reorganized Debtor or the Disbursing Agent

[To be provided in Plan Supplement]

If to the Creditors' Committee

Lon A. Jenkins, Esq.
Jeffrey Weston Shields, Esq.
JONES WALDO HOLBROOK & MCDONOUGH, P.C.
1700 S. Main Street, Suite 1500
Salt Lake City, Utah 84101-1644

If to WestLB:

WestLB AG
1211 Avenue of the Americas
New York, NY 10036
Attention: Jeff Nelson

with a copy to

Richard W. Havel, Esq.
SIDLEY AUSTIN LLP
555 West Fifth Street, suite 4000
Los Angeles, CA  90013

11.14    Retention of Causes of Action/Reservation of Rights.  Except as provided in

Articles 11.4 and 11.5 of this Plan, nothing contained in the Plan or the Confirmation Order shall

be deemed to be a waiver or relinquishment of any claim (as that term is defined in section

101(5) of the Bankruptcy Code), rights, causes of action, right of setoff, or other legal or

equitable defense that Partners, the Reorganized Debtor or the Other Debtors may have or

choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code

or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against

any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or

Claim for setoff which seeks affirmative relief against Partners or the Other Debtors, their

officers, directors, or representatives, (ii) any and all claims under chapter 5 of the Bankruptcy

Code, (iii) the turnover of any property of Partners or the Other Debtors' estates, (iv) any and all

claims against BayNorth, and (v) any and all claims against Jacobsen, which upon the Effective

Date, shall be the warranty claims against Jacobsen.

     11.15  <u>Retention of Committee's Action Against WestLB.</u>  Nothing contained in the Plan

or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, rights,

causes of action, right of setoff, or other legal or equitable defense that the Creditors' Committee

may have or choose to assert on behalf of the Debtors' respective estates under any provision of

the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any

and all claims asserted by the Creditors' Committee against WestLB in the WestLB Adversary

Proceeding.

     11.16  <u>Section 506(c) Reservation</u>. Except as provided in the Order On Stipulation

Authorizing Use of Cash Collateral entered on October 14, 2009, and in any subsequent orders

approving amendments or extensions to the Stipulation Authorizing Use of Cash Collateral,

Partners and the Reorganized Debtor reserve all rights under section 506(c) of the Bankruptcy

Code with respect to any and all Secured Claims.

11.17   <u>Plan Supplement</u>.  The documents comprising the Plan Supplement shall be filed with the Clerk of the Bankruptcy Court on or before March 15, 2010.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours or at the Court's website at <u>www.utb.uscourts.gov</u>. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to Partners' bankruptcy counsel.

11.18   <u>Effectuating Documents and Further Transactions</u>.  Upon entry of the Confirmation Order, Partners and the Reorganized Debtor, shall be authorized and are instructed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE XII.

## Retention of Jurisdiction

12.1   The Bankruptcy Court shall retain exclusive jurisdiction of this case as long as necessary for the following purposes:

(a)   To determine any and all objections to the allowance, disallowance or subordination of Claims or any controversy as to the classification of Claims.

(b)   To determine any and all applications for professional and similar fees and for the reimbursement of disbursements and expenses.

(c)   To liquidate any disputed, contingent, or unliquidated Claims.

(d)   To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases.

(e)   To determine any and all motions, applications, adversary proceedings, contested and litigated matters or such other matters over which the

Bankruptcy Court had jurisdiction prior to the Confirmation Date, including the enforcement, prosecution, litigation, settlement and/or other disposition of claims and counterclaims of the Debtor and to recover preferences and fraudulent transfers.

(f)     To enforce the provisions of, and resolve any and all disputes under or pertaining to the Plan, or the Debtor's bankruptcy case.

(g)     To modify the Plan or to correct any defect, cure any omission or reconcile any inconsistency in the Plan or in the order of the Bankruptcy Court confirming the Plan, or to enter such orders as may be necessary to effectuate the terms and conditions of the Plan to the extent authorized by the Bankruptcy Code as may be necessary to carry out the purpose and intent of the Plan.

(h)     To determine such other matters as may be provided for in the order of the Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the Bankruptcy Code.

(i)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Bankruptcy Case;

(j)     To hear and determine any and all controversies and disputes arising under, or in connection with, the Plan or the order confirming the Plan;

(k)     To adjudicate all controversies concerning the classification of any Claim;

(l)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(m)     To adjudicate all Claims to a security or ownership interest in any property of  Partners or in any proceeds thereof;

(n)     To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken during the pendency of this bankruptcy case;

(o)     To recover all assets and Property of Partners wherever located, including the prosecution and adjudication of all causes of action available to Partners as at the Confirmation Date;

(p)     To determine all questions and disputes regarding recovery of and entitlement to Partners' assets and determine all claims and disputes between Partners and any other Entity, whether or not subject to an action pending as of the Confirmation Date;

38

(q)     To enter any order, including injunctions, necessary to enforce the title, rights and powers of Partners and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

(r)     To enter an order or final decree closing and terminating the Bankruptcy Case; and

(s)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof and/or confirming the Plan.


***\*\*\*PAGE INTENTIONALLY LEFT BLANK******

DATED this 18th day of February, 2010.

EASY STREET PARTNERS, LLC


By:   /s/  William Shoaf
     William Shoaf


By:   /s/  Philo Smith
     Philo Smith

DURHAM JONES & PINEGAR, P.C.

By:   /s/ Kenneth L. Cannon II
     Kenneth L. Cannon II (kcannon@djplaw.com)(3705)
     Steven J. McCardell (smccardell@djplaw.com)(2144)
     111 East Broadway, Suite 900
     P.O. Box 4050
     Salt Lake City, UT 84111-4050
     Telephone:  (801) 415-3000
     Facsimile:  (801) 415-3500

     and

     CROWELL & MORING LLP
     Michael V. Blumenthal (mblumenthal@crowell.com)
     (admitted pro hac vice)
     Steven B. Eichel (seichel@crowell.com)
     (admitted pro hac vice)
     590 Madison Avenue, 20th Floor
     New York, NY  10022
     Telephone:  (212) 223-4000
     Facsimile:  (212) 223-4134

     Counsel for Debtors and Debtors in Possession

NYIWDMS: 11484762_2

# EXHIBIT 2-1

**THE SKY LODGE**
**2010 RESORT BUDGET**
**SUMMARY**

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **HOTEL PROJECTED OCCUPANCY** | | | | | | | | | | | | | |
| Transient Occupancy | 60.7% | 66.5% | 69.5% | 32.3% | 37.9% | 55.6% | 63.9% | 64.9% | 44.7% | 39.4% | 33.5% | 62.3% | 52.3% |
| Owner Occupancy | 46.1% | 50.0% | 58.0% | 23.9% | 34.4% | 48.7% | 45.6% | 54.7% | 38.6% | 35.5% | 33.5% | 50.6% | 44.2% |
| Room Nights Occupied | 14.6% | 7.4% | 13.5% | 8.4% | 3.5% | 6.9% | 13.4% | 6.2% | 6.0% | 4.1% | 1.6% | 11.4% | 8.1% |
| ADR | 621 | 613 | 711 | 303 | 386 | 550 | 644 | 443 | 443 | 603 | 550 | 633 | 6,303 |
| % of Project Sold Out | $863.36 | $770.82 | $551.72 | $204.02 | $153.00 | $292.58 | $231.63 | $232.14 | $183.33 | $160.00 | $206.14 | $763.70 | $459.69 |
| | 64.2% | 64.2% | 64.2% | 64.2% | 64.2% | 64.2% | 64.9% | 85.3% | 65.9% | 67.0% | 67.0% | 67.0% | |
| **PROPERTY MGT PROJECTED OCCUPANCY** | | | | | | | | | | | | | |
| Transient Occupancy | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 20.0% | 35.0% | 35.0% | 35.0% | 0.0% | 0.0% | 50.0% | 24.5% |
| Room Nights Occupied | | | | | | 60 | 109 | 109 | 105 | | | 155 | 537 |
| ADR | | | | | | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | | | $ 950.00 | 459.69 |
| TOTAL CONDO UNITS | | | | 2 | | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 0 |
| **REVENUE** | | | | | | | | | | | | | |
| Hotel Rooms Revenue | 489,483 | 460,447 | 541,786 | 85,505 | 59,887 | 136,538 | 142,550 | 154,102 | 100,739 | 67,726 | 86,338 | 482,969 | 2,701,699 |
| Property Management Revenue | 455,563 | 256,550 | 247,089 | 61,247 | 31,989 | 31,989 | 57,095 | 57,095 | 55,650 | 55,650 | 59,993 | 162,500 | 365,349 |
| F&B Revenue | 61,127 | 58,158 | 51,769 | 25,549 | 46,220 | 204,929 | 325,516 | 317,046 | 141,631 | 94,356 | 127,872 | 317,453 | 2,652,768 |
| Spa Revenue | 30,800 | 30,800 | 30,800 | 30,800 | 30,000 | 54,169 | 56,869 | 62,624 | 43,146 | 40,564 | 34,391 | 60,518 | 599,747 |
| Sky Club Memberships | 30,000 | 10,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 360,000 |
| Zoom Rental Revenue | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 94,000 |
| **TOTAL REVENUE** | 1,046,973 | 815,954 | 957,355 | 233,100 | 222,801 | 462,227 | 823,148 | 633,179 | 397,168 | 245,336 | 283,211 | 1,045,658 | 6,963,305 |
| | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |
| **EXPENSES** | | | | | | | | | | | | | |
| Rooms Division | 145,579 | 146,342 | 162,235 | 90,655 | 74,666 | 87,820 | 106,664 | 104,636 | 82,707 | 83,647 | 72,922 | 146,012 | 1,303,167 |
| Property Management | | | | | | 21,635 | 38,155 | 38,135 | 36,644 | 550 | 580 | 59,999 | 196,667 |
| Food & Beverage | 289,201 | 229,601 | 208,774 | 124,530 | 115,262 | 181,939 | 233,073 | 228,700 | 136,274 | 141,381 | 141,361 | 293,973 | 2,285,386 |
| Spa | 53,000 | 51,612 | 85,179 | 29,607 | 34,639 | 41,589 | 43,946 | 46,073 | 35,677 | 32,326 | 32,329 | 53,563 | 515,774 |
| Facilities | 71,684 | 62,709 | 67,018 | 80,714 | 48,652 | 52,069 | 59,530 | 53,156 | 54,364 | 52,209 | 58,500 | 64,443 | 614,246 |
| HOA Credit - Facilities | (20,574) | (47,662) | (47,662) | (47,662) | (51,305) | (51,305) | (51,305) | (51,305) | (51,305) | (91,305) | (47,662) | (47,662) | (592,522) |
| HOA Credit - Resort | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (20,574) | (246,888) |
| Sales & Marketing | 39,184 | 87,470 | 49,563 | 65,518 | 53,452 | 49,172 | 49,766 | 49,766 | 53,000 | 49,554 | 42,497 | 42,497 | 669,694 |
| Administration | 56,723 | 43,518 | 45,301 | 44,018 | 41,477 | 45,230 | 47,568 | 47,053 | 43,650 | 44,102 | 46,496 | 72,257 | 579,992 |
| **TOTAL EXPENSES** | 587,285 | 553,287 | 568,653 | 347,238 | 291,468 | 675,476 | 495,682 | 494,655 | 372,538 | 338,715 | 328,775 | 666,357 | 5,373,012 |
| | 56.1% | 67.8% | 67.8% | 148.9% | 131.0% | 88.0% | 78.2% | 78.1% | 74.1% | 131.0% | 116.1% | 58.0% | 58.0% |
| **NET OPERATING PROFIT/(LOSS)** | 459,788 | 262,697 | 389,391 | (114,138) | (68,666) | 55,483 | 327,468 | 138,624 | 24,220 | (74,046) | (45,544) | 434,723 | 1,589,563 |
| | 43.9% | 32.2% | 40.7% | (49.0%) | (31.6%) | 12.0% | 39.8% | 21.9% | 6.1% | (30.1%) | (16.1%) | 42.0% | 42.0% |
| Property Taxes | 3.5% | 3.9% | 3.9% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | |
| Management Fees | 36,644 | 28,550 | 33,507 | 8,159 | 7,788 | 16,178 | 21,810 | 22,155 | 13,501 | 8,519 | 9,912 | 26,577 | 243,219 |
| | | | | | | | | | | 50,000 | | | 50,000 |
| **RESORT OPERATING PROFIT/(LOSS)** | 423,124 | 234,138 | 355,784 | (122,294) | (76,754) | 39,305 | 105,648 | 116,469 | 10,219 | (85,535) | (105,478) | 432,146 | 1,255,845 |
| | 40.4% | 28.7% | 37.2% | (52.5%) | (34.5%) | 8.5% | 17.0% | 18.4% | 2.6% | (35.6%) | (37.2%) | 38.5% | 18.0% |

EASY STREET PARTNERS
2009 BUDGET
CONSOLIDATED

| OPERATING REVENUES | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

* These negative cash balances will be covered by teh $2 million of additional capital being provided by the Plan Funder. Additionally, the deferred payments to Class 4 general unsecured creditors are not reflected in this business plan and will be funded by the additional capital being provided by the Plan Funder.