mutual insurance companies, stock insurance companies, risk retention groups, reciprocal exchanges, mutual benefit or assistance programs, or any other plan or agreement of risk assumption.

M. "Personal Injury" means injury, other than "advertising injury" or "bodily injury", arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. wrongful entry or wrongful eviction;

4. invasion of right of private occupancy;

5. oral or written publication of material that slanders or libels a person or organization or defames a person's or organization's goods, products or services;

6. oral or written publication of material that violates a person's right of privacy.

N. "Policy Period" means the period noted in the Declarations, or any shorter period resulting from a termination or cancellation of this policy.

O. "Professional Incident" means a negligent act, error or omission in the rendering of or failure to render "professional services" by you or a person acting under your direction, control or supervision and for whose acts, errors or omissions you are legally liable.

P. "Professional Services" means work performed by you for others involving specialized training, knowledge and skill in the pursuit of the business stated in the Declarations.

Q. "Property Damage" means:

1. physical injury to or destruction of tangible property, including all resulting loss of use of that property; or

2. clean-up costs; or

3. loss of use of tangible property that has not been physically injured or destroyed.

R. "Retroactive Date" means the date stated in Item 5. of the Declarations and is the earliest date that "professional incidents" to which this insurance applies will be covered by this policy.

S. "Sexual Harassment" means behavior of a licentious, immoral or sexual nature including, but not limited to, physical abuse, sexual abuse, sexual advances, sexual harassment, coercion, quid-pro-quo offer of work-favor for sexual favors, or other verbal or physical conduct of a sexual nature that detrimentally affects the working environment or that creates a hostile work environment.

T. "Trade Secret" means any information, including but not limited to customer lists, formulas, patterns, methods, programs, techniques, processes or a compilation which is claimed to be confidential, proprietary and subject to protection from use or disclosure by applicable law;

U. "Wrongful Act" means any act, error, omission, misstatement, misleading statement, neglect or breach of duty owed to the corporation individually or collectively by the directors or officers of the "Named Insured". It is agreed that any "claim" or suit that is customarily covered in whole or in part by a Directors and Officers Liability policy shall not be covered under this policy;

III. POLICY TERRITORY

This policy applies to "professional incidents" anywhere in the world provided the original suit for such damages is brought within the United States of America, its territories or possessions and Canada.

IV. EXCLUSIONS

This policy does not apply to:

A. any "claim" made by any "Insured" against any other "Insured";

B. any liability based upon or arising out of any "claim" or circumstance that is reported to any other insurer by an "Insured" prior to the effective date of this policy;

C. any liability based in whole or in part on any knowingly wrongful, dishonest, fraudulent, criminal or malicious act committed by or at the direction of any "Insured" in the course of providing "professional services". This exclusion does not apply to any liability of the "Named Insured" or any "Insured" who did not personally participate or personally commit the knowingly wrongful, dishonest, fraudulent, criminal or malicious act, if coverage would otherwise be afforded for the resulting "damages" by this policy;

D. any liability based upon or arising out of the ownership, maintenance, use, loading, unloading, or entrustment to others, including the loaning thereof, of:

1. any airplane, helicopter or aircraft;

2. any "automobile", motorcycle, moped, truck, three-wheeler, snowmobile or other motor vehicle of whatever type or nature, whether designed for travel on or off public roads, or

3. any motor or sail boats or other watercraft, of whatever type or nature, owned, operated, rented by or loaned to any "Insured";

E. any liability based upon or arising out of any "professional incident" or circumstances that any "Insured" knows or should reasonably anticipate would result in a "claim" prior to the effective date of this policy;

F. any liability based upon or arising out of the insolvency or bankruptcy of any "Insured" or any person, firm or organization;

G. any liability based upon or arising out of the accessing or misuse of confidential information;

H. any liability based upon or arising out of any misappropriation, infringement, or use of a copyright, title, slogan, patent, trademark, trade name, trade dress, service mark, domain name, "trade secret" or any violation of an "intellectual property" right or law;

I. any liability based upon or arising out of any refusal to employ; termination of employment; or coercion, demotion, discipline, evaluation, reassignment or other employment-related act, omission, policy or practice.  This exclusion applies whether you are held liable as an employer or in any other capacity;

J. any liability based upon or arising out of "discrimination"; violation of civil rights; or any allegation that a person was subjected to unfair treatment or a denial or reduction of benefits, privileges or accommodations in violation of any law; statute; ordinance; or regulation designed to ensure equal access to opportunities; goods; services; facilities; and accommodations;

K. any liability based upon or arising out of "sexual harassment";

L. any business enterprise:

1. that is wholly or partly owned by you or to any "Claim" made by or against any business enterprise not named in the Declarations;

2. that wholly or partly owns you;

3. in which you are a partner, or any subsidiary, affiliate or sister company of yours;

4. that controls, operates or manages you;

5. in which you are a partner, employer, officer, director, sole proprietor, stockholder or trustee or to any "Claim" made against:

   a. you, solely because you are a partner, employer, officer, director, sole proprietor, stockholder or trustee for any person or legal entity not named in the Declarations.

This exclusion does not apply if the business enterprise is listed as an "Insured" in this policy or in an endorsement attached hereto.

M. any liability based upon or arising out of the deficiency or malfunction of any product, process, technique or equipment which is sold, manufactured or furnished by or on behalf of the "Insured";

N. any liability based upon or arising out of express warranties or guarantees;

O. any liability based upon or arising out of fee disputes;

P. any liability based upon or arising out of nuclear reaction, radiation or contamination, under any

circumstances and regardless of cause, within or originating from a nuclear facility;

Q. any "bodily injury", "property damage", "personal injury" or "advertising injury";

R. any liability based upon or arising out of the presence, discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, oil or other petroleum substances or derivatives, waste materials or other irritants, contaminants, pollutants or any substances including asbestos which are or may be injurious to public health or the environment (herein called hazardous substances) into or upon land, the atmosphere or any water course or body of water.

It is further agreed that this policy does not apply to any liability including expenses for:

1. the costs of clean up or removal of hazardous substances; or

2. the cost of such actions as may be necessary to monitor, assess and evaluate the presence, discharge, dispersal, escape, release, or threat of same, of hazardous substances; or

3. the cost of disposal of hazardous substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

4. any loss, cost or expense arising out of any governmental direction or request that the "Named Insured" test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

S. any liability of an "Insured" as a result of "Bodily Injury" to an employee, leased worker or temporary worker or the spouse or relative of an employee, leased worker or temporary worker; or to any obligation of the "Insured" to indemnify or to assume the defense or indemnity of another because of such "Bodily Injury";

T. any obligation for which the "Insured" or any carrier as his insurer may be liable, under any Workers' Compensation, Unemployment Compensation, Disability Benefits Law, the Employee Retirement Income Security Act of 1974, as amended and in effect from time to time, or any rule or regulation promulgated thereunder, or under any similar law; and to any liability arising out of the sickness, disease or death resulting therefrom of any employee of the "Insured" arising out of and in the course of his employment by the "Insured"; or to any liability based upon or arising out of the performance of the "Insured's" duties in their capacity as a fiduciary, as defined and described in the Employee Retirement Income Security Act of

1974, as amended and in effect from time to time, or any rule or regulation promulgated thereunder, or under any similar law.

U.  any liability based upon or arising out of a "Wrongful Act".

V.  EXTENDED "CLAIM" REPORTING PERIOD

A.  Automatic Extended "Claim" Reporting Period

If we or you terminate or non-renew this insurance for any reason, other than:

1.  non-payment of premium;

2.  non-payment of deductible;

3.  non-compliance with any terms and conditions of this policy; or

4.  fraud or material misrepresentation;

you shall be entitled to a period of (60) sixty days from the date of policy expiration or termination to report "claims" which take place on or after the retroactive date and prior to such expiration or termination date. This Automatic Extended "Claim" Reporting Period may not be canceled by us and does not require payment of an additional premium.

If the Optional Extended "Claim" Reporting Period offered in item B. below is purchased, then this Automatic Extended "Claim" Reporting Period shall be included within such Optional Extended "Claim" Reporting Period.

The Automatic Extended "Claim" Reporting Period does not reinstate or increase the Limits of Liability of this policy.

The Automatic Extended "Claim" Reporting Period does not extend the "policy period" or change the scope of coverage afforded by this policy.

B.  Optional Extended "Claim" Reporting Period

If we or you terminate or non-renew this insurance for any reason, other than:

1.  non-payment of premium;

2.  non-payment of deductible;

3.  non-compliance with the terms and conditions of this policy; or

4.  fraud or material misrepresentation;

upon the payment of an additional premium, you shall have the option to extend the period by which a "claim" that takes place on or after the retroactive date and prior to the expiration or termination date can be made against you and reported to us.

The premium for the Optional Extended "Claim" Reporting Period shall not exceed 175% of the annual premium for one (1) year. The purchase of an Optional Extended "Claim" Reporting Period shall be endorsed hereon.

Your right to purchase the Optional Extended "Claim" Reporting Period must be exercised by notice in writing to us, not later than thirty (30) days after the expiration or termination date of this policy. Effective notice must indicate the number of months up to 12 months (or one year) for which you are requesting the Optional Extended "Claim" Reporting Period and must include payment of premium for such period. If such written notice and the premium are not received by us within (30) days, then you shall not be entitled to purchase an Optional Extended "Claim" Reporting Period at a later date.

At the commencement of any Optional Extended "Claim" Reporting Period, the entire additional premium shall be deemed earned, and in the event you terminate the Optional Extended "Claim" Reporting Period before its term for any reason, we shall not be obligated to return to you any portion of the premium.

The purchase of an Optional Extended "Claim" Reporting Period does not reinstate or increase the Limits of Liability of this policy.

Our liability shall further be limited to cover only those "claims" arising out of a "professional incident" that takes place subsequent to the "retroactive date" and prior to the expiration or termination date of this policy. The Optional Extended "Claim" Reporting Period does not extend the "policy period" or change the scope of coverage afforded by this policy.

With respect to items A. and B. above, any claims reported during an Extended "Claim" Reporting Period must be reported in accordance with Section VII., "INSURED'S" DUTIES IN THE EVENT OF A "CLAIM".

VI.  LIMITS OF LIABILITY

The applicable limit of liability stated in the Declarations is the maximum we shall pay regardless of the number of:

i.  "insureds";

ii.  individuals or organizations that make a "claim"; or

iii.  "claims" made.

A.  Limit of Liability Each "Claim"

The limit of liability shall apply in excess of the Deductible stated in the Declarations, if applicable. The liability of the Company for each "claim" or series of "related claims" shall not exceed the amount stated in the Declarations as applicable to each "claim". This limit is the maximum amount the Company will pay for "claim expense(s)" and "damages" attributable to each "claim" or series of "related claims", including those "claims" or "related claims" reported in accordance with Section V. Extended "Claim" Reporting Period.

If two or more policies issued by us apply to the same "claim" or "related claims", the each "claim" limit shall not exceed the amount stated in the Declarations of the policy in effect at the time the first "claim" was made.

B.  Limit of Liability Aggregate

Subject to Limit of Liability - Each "Claim", the liability of the Company shall in no event exceed the amount stated in the Declarations as aggregate as a result of all "claims". This limit is the total amount of "claim expense(s)" or "damages" or both that the Company will pay under this policy for all "claims" including those "claims" reported in accordance with Section V., Extended "Claim" Reporting Period.

C.  Deductible Each Claim

The deductible amount stated in the Declarations applies to each "claim" and shall be paid by the "Named Insured". The deductible shall be applied to the payment of "damages" or "claim expense(s)" or both.

The Company may advance payment of part or all of the deductible amount and, upon notification of such payment made, the "Insured" must promptly reimburse the Company for the deductible amounts advanced by the Company.

Once the limits of liability have been exhausted by payment of "Damages" and/or "Claims Expense(s)", the Company will not defend or pay "damages" or "claim expense(s)" for any "claim".

VII. "INSURED'S" DUTIES IN THE EVENT OF A "CLAIM"

Each "Insured" must comply with the following conditions:

A.  If a "claim" to which this policy applies is made against you, then you must give written notice, as soon as practicable, and as otherwise required by this policy to us.

B.  With regard to Item II. DEFINITIONS, E. 1, 2 and 3, when a "claim" is reported in writing to us, the notice must contain reasonably obtainable information regarding the alleged act, error or omission including, but not limited to names of the potential witnesses, name of the alleged claimant(s), and the extent and type of "claim" anticipated.

C.  You must cooperate with us in the defense and investigation of any "claim". We may require that you submit to examination under oath, if required, produce and make available all records, documents and other materials which we deem relevant to the "claim".

1.  You must also, at our request, attend hearings, depositions and trials.

2.  In the course of investigation or defense you must provide us with written statements as

requested by us or your attendance at meetings with us.

3.  You must assist us in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses, all without charge to us.

D.  The right to either accept or reject arbitration of any "claim" by you shall be exercised only with our written consent.

E.  Except and to the extent otherwise provided in this policy, you must not make any payment, admit any liability, settle any "claim" or assume any obligations without our prior written consent.

F.  You must do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that you may have.

G.  You shall refrain from discussing the facts and circumstances of any "claim" with anyone other than our legal counsel or representatives.

VIII. OTHER CONDITIONS

A.  Transfer of Rights of Recovery

If there is a payment made by us, we shall be subrogated to all of your rights of recovery against any person or organization. You will cooperate with us and do whatever is necessary to secure these rights. You must not waive or prejudice such rights. We agree to waive this right of subrogation against a client of the "Insured" to the extent that the "Insured" had, prior to the "claim", entered into a written, duly executed agreement to waive such rights.

B.  How "Other Insurance" Applies

This insurance shall be excess of and not contribute with "other insurance", whether collectable or not, that affords coverage for a "professional incident". If one or more policies issued by us and one or more policies issued by another insurer apply to the same "claim" or "related claims", our pro-rata share will be determined by the total of the Limits of Liability of our policy in effect at the time the first "claim" was made and reported to us in writing and the Limits of Liability of all "other insurance".

This condition does not apply to "other insurance" that is written to apply in excess of the limits provided by this policy.

The insurance afforded by this policy does not apply to any "professional incident" for which an Insured has coverage under any other policy issued by us.

C.  Changes Made to this Policy

The terms and conditions of this policy cannot be waived or changed except by specific written endorsement issued by us and made part of the policy.

EO 09 42 12 02

D. Assignment of the "Insured's" Interest

The interest of the "Insured" under this policy is not assignable to any other person or organization.

E. Cancellation

This policy may be canceled by the "Named Insured" by returning the policy to us or its authorized representatives. The "Named Insured" can also cancel this policy by written notice to the Company stating at what future date cancellation is to be effective. If the "Named Insured" cancels, earned premium shall be computed using the customary short rate table or the amount stated elsewhere in this policy as Minimum Earned Premium, whichever is greater.

This policy can be canceled by us by written notice to the "Named Insured", at the address last known to us. We will provide written notice at least thirty (30) days before cancellation is to be effective.

There are exceptions to the length of the notice that must be provided to the "Named Insured". The "Named Insured" will only be entitled to at least ten (10) days notice if we cancel:

1. because you have failed to pay a premium when due; or

2. because you have failed to pay applicable deductible amounts due.

If we cancel, earned premium will be computed pro-rata, except that if we cancel for the reason specified in 1. or 2. above, earned premium will be computed in the same manner provided above when the "Named Insured" cancels.

The mailing of any notice of cancellation shall be sufficient proof of notice.

The effective date of cancellation terminates the "policy period". Return of unearned premium is not a condition of cancellation. Unearned premium will be returned by us as soon as practicable.

F. Bankruptcy

Bankruptcy or insolvency of the "Insured" or the "Insured's" estate shall not relieve us of any of our obligations under this policy.

G. Application

The statements in the Application are your representations and are deemed material. This policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the Application shall be attached and become part of this policy.

H. Audit

We may examine and audit your books and records at any time during the "policy period" and within three (3) years after the final termination of this policy, as far as they relate to this policy.

I. Multiple "Insureds", "Claims" and Claimants

The number of "Insureds" covered by this policy shall not operate to increase the limits of liability as specified in the Declarations.

A series of "related claims" will be considered a single "claim". This policy shall only apply if the first or earliest "claim" arising from a "Professional Incident" is made during the "policy period". These provisions apply regardless of the number of "Insureds" involved in such a "claim", the number of "claims" made, or the number of people or organizations that make the "claim".

The number of "claims" made or the number of people or organizations that make "claims" shall not operate to increase the limits of liability as specified in the Declarations.

Once a "claim" has been first made under this policy or a predecessor or successor policy of the Company, only the policy against which the "claim" was first made and reported to us shall be available to pay "damages" and/or "claims expenses", if coverage is afforded by the policy, and under no circumstances will any other policy of the Company apply.

J. Action Against Us

No action shall be brought against us by you to recover for any loss or "damages" under this policy unless, as a condition precedent thereto:

1. you have fully complied with all the terms and conditions of this policy; and

2. the amount of such loss or "damages" has been fixed or rendered certain;

   a. by final judgment against you after trial of the issues; or

   b. the time to appeal such judgment has expired without an appeal being taken; or

   c. if appeal is taken, after the appeal has been determined; or

   d. the "claim" is settled in accordance with the terms and conditions of this policy.

In no event shall any action brought by anyone be maintained against us unless such action is brought within twenty-four (24) months from the time the right to bring action first becomes available.

K. False or Fraudulent Claims

If you report any "claim" knowing such "claim" to be false or fraudulent, this policy shall become void and all insurance coverage hereunder shall be forfeited as of the inception date of this policy.

EO 09 42 12 02

L.  Terms and Conditions of Policy Conformed to
    Statute

    Where necessary, the terms and conditions of this
    policy will be amended to conform to applicable
    law.

M.  Premium

    The premium amount for this policy is stated in
    the Declarations and is for coverage for the
    "policy period". If during the "policy period"
    there is a change in coverage afforded, we have
    the right to adjust the premium as of the date of
    change. Any premium adjustment shall be made in
    accordance with our prevailing rules and rates.

Premium shown as advance premium is a
minimum and deposit premium. At the close of
each audit period we will compute the earned
premium for that period. Audit premiums are due
and payable by notice to the first "Named
Insured".

If the premium for this policy is a flat premium, it
is not subject to adjustment.

This policy shall not be binding upon the Company unless
completed by a signed Application and a Declarations
Page, countersigned on the aforesaid Declarations Page by
a duly authorized representative of the Company.

EO 09 42 12 02

Policy Number: EO000008142-03

AE 07 21 09 98

Effective Date: 01/02/2010

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM RETAINED PREMIUM

It is agreed that in the event of cancellation of this policy by the Insured as specified herein, return premium shall be computed at .90 of the pro rata unearned policy premium (or minimum premium if applicable) subject however to a retention by the Company of not less than 25% of the premium shown on the declarations or renewal certificate.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the form.

It is further agreed that return premium may be allowed on a pro rate basis if cancelled for non payment, subject however to retention by the Company of the minimum as shown above.

Policy Number: EO000008142-03

EO 01 82 01 04

Effective Date: 01/02/2010

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMENDED BODILY INJURY &
## PROPERTY DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that EXCLUSION Q. of this policy is amended to read as follows:

Q. 1.  any claim arising out of "personal injury" or "advertising injury";

2.  any claim arising out of "bodily injury" or "property damage", however, this exclusion shall not apply to "bodily injury" or "property damage" arising out of a "professional incident".

It is further agreed that for any claim made or suit brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of such claims.

EO 07 23 10 04

Policy Number: EO000008142-03

Effective Date: 01/02/2010

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WARRANTY OF GENERAL LIABILITY COVERAGE

In consideration of the premium charged, it is agreed that as a condition of this policy the Named Insured shall maintain during the term of this policy a Commercial General Liability policy.

It is further agreed the insurance provided by this policy does not apply to liability for any claim for which coverage is provided by the Commercial General Liability policy.

It is further agreed that for any claim made or suit brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of such "claims."

Policy Number: EO000008142-03

EO 10 01 02 07

Effective Date: 01/02/2010

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## LIMITED LIABILITY COMPANY (LLC)
## AS AN INSURED

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE PART

The definition of "Insured" as contained in this policy is amended to include the following:

a limited liability company, to include your members, but only with respect to the conduct of your business, and your managers, but only with respect to their duties as managers.

Policy Number: EO000008142-03

AI 08 37 09 01

Effective Date: 01/02/2010

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MICROORGANISMS, BIOLOGICAL ORGANISMS OR ORGANIC CONTAMINANTS EXCLUSION (PROFESSIONAL BROAD FORM)

This insurance does not apply to any alleged negligent act or error or omission in professional services rendered, or which should have been rendered, by an Insured, or by any person or entity for whose acts the Named Insured is legally liable for:

   (1)  Any "claim" arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust, or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion.

Or:

   (2)  Any loss, cost or expense of any kind arising out of any:

      (a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

      (b)  Request, demand, order by or on behalf of a governmental authority for testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any "claim" to which this endorsement applies.

AI 08 37 09 01

Policy Number: EO000008142-03

AI 09 93 01.06

Effective Date: 01/02/2010

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROFESSIONAL LIABILITY TERRORISM EXCLUSION
# (ABSOLUTE)

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE PART

This policy does not apply to "damages", including but not limited to "bodily injury", "property damage" or "personal and advertising injury" arising, directly or indirectly, out of an "act of terrorism".

"Act of terrorism" means activities against persons, organizations or property of any nature:

    a.  That involve the following or preparation for the following:

        (1)  Use or threat of force or violence; or

        (2)  Commission or threat of a dangerous act; or

        (3)  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    b.  When one or both of the following applies:

        (1)  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2)  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

AI 09 93 01 06

AI 09 95 05 06

Policy Number: EO000008142-03

Effective Date: 01/02/2010

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AVIAN INFLUENZA A (AVIAN FLU) – ABSOLUTE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

Definitions:

1. As used in this endorsement, "Avian Flu" means any bodily injury, sickness, disease or death caused by any avian influenza virus, and also includes the avian influenza viruses themselves, including any variant or mutation of any avian influenza virus. Avian influenza viruses include all influenza A viruses, as well as all subtypes of these viruses, and any different strains of any subtypes. Avian Flu includes what is known colloquially as the "Bird Flu."

This insurance does not apply to:

1. Liability, injury or damages of any kind, to include but not limited to "bodily injury," "property damage," "personal and advertising injury," employers liability, or medical payments actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with:

   a. Avian Flu;

   b. Exposure to Avian Flu; or

   c. Use of any Avian Flu contaminated products.

2. The cost or expense of recall, abatement, mitigation, removal, disposal, testing or monitoring of products, stock, feed, feed additives or animals, or of any premises or equipment handling such items, as a result of any known or suspected connection with Avian Flu whether such items are owned by any insured or by others, and whether located at any insured's premises or anywhere else in the world; or

3. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the presence, absence or amount or effects of any disease or sickness including but not limited to Avian Flu at any time.

   b. Claims, "suits," demands or fines by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of Avian Flu or any materials containing Avian Flu at any time; or

4. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

5. Any obligation to share damages with or repay someone else who must pay damages as described in any of the subsections above; or

6. Any Avian Flu related liability for which the insured is or may be obligated to pay damages by reason of the assumption of liability in a contract or agreement, including any liability assumed by the Insured under an insured contract; or

7. Any Avian Flu related liability regardless of any other cause, event, material or product that contributed concurrently or in any sequence to the Avian Flu related injury, damages, loss, cost or expense.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

AI 09 95 05 06

Policy Number: EO000008142-03

AI 44 02 03 98

Effective Date: 01/02/2010

# SERVICE OF SUIT
## (NOT APPLICABLE IN DELAWARE AND NEW JERSEY)

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon Daniel A. MacDonald, Senior Vice President/Claims of Admiral Insurance Co., 1255 Caldwell Road, P.O. Box 5725, Cherry Hill, New Jersey 08034, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

AI 44 02 03 98

| ADMIRAL INSURANCE COMPANY<br>520 PIKE STREET, SUITE 2929<br>SEATTLE, WA 98101<br>PHONE (206) 467-6511 – FAX (206) 467-6557<br>INTERNET: WWW.ADMIRALINS.COM | APPLICATION FOR MISCELLANEOUS PROFESSIONAL<br>LIABILITY INSURANCE<br>(CLAIMS MADE) |
|---|---|

1. Full Name of Applicant: _The Sky Lodge_

   (Include all dba's and subsidiaries seeking coverage under the policy for which you are applying.)

2. Mailing and Location Address: _Mail: P.O. 683800, Park City, UT. 84068._
   _Location: 201 Heber Ave, Park City, UT. 84060_

   (If multiple addresses include an attachment with a complete schedule of all locations)

3. Web Site Address (if applicable): _____

4. Date Established: _1997_    5. Type of Entity: ___ Corp ___ Partnership _✓_ Individual ___ Other: ____

6. Is this entity owned by, associated with or controlled by any other entity? _✓_ Yes ___ No If Yes, please give details.
   _Emsy Street Partners, LLC_

7. a) Describe, in detail, the professional activities for which coverage is desired: _____
   _Hotel, Restaurant, Spa._

   b) Indicate the percentage of revenue derived from each of the above activities: (Attach a separate sheet if more room needed)

   | Description of professional service: | % of Revenue |
   |---|---|
   | _Hotel_ | _60_ % |
   | _Restaurant_ | _35_ % |
   | _Spa._ | _5_ % |

8. Estimated Revenues for the next 12 months: $ ~~550~~ _7.4 mil_ For the last 12 months: $ _5.0 mil._

9. a. What is your total number of employees: _120_ (Please break down into the following categories)

   Full Time _50_        Part Time _70_

   Volunteer _____    Independent Contractor _____

   Other _____ (Describe: _____)

   b. What services are performed by independent contractors? _Slow_ _____

   c. Do you require independent contractors to carry professional liability insurance? _✓_ Yes ___ No

   d. Do you require independent contractors to carry Commercial General Liability insurance? _✓_ Yes ___ No

10. Do you have any licensed professionals on staff? _✓_ Yes ___ No If Yes, please provide details: _Spa Therapist._

11. Is the applicant engaged in any business or profession other than as described in Question 7a? ___ Yes _✓_ No

    If Yes, please provide details: _____

MPL 02 04                              Page 1 of 3

12. Does the applicant anticipate any changes in their operations over the next 12 months? _____ Yes ✓ No If Yes, please provide details. _____

13. Is the applicant a member of any professional associations or organizations? _____ Yes ✓ No If Yes, please list. _____

14. Please provide information as respects the last five years of professional liability coverage beginning with most current coverage:
    Carrier          Limit          Deductible          Premium          Policy Term

    *Coverage Through* *Sentry West*

15. Is the applicant insured under a Commercial General Liability policy? ✓ Yes _____ No If Yes, please attach a copy of the declarations page.

16. Has any application for professional liability insurance made on behalf of the applicant, any predecessors in business or present partners ever been declined, cancelled or non-renewed? _____ Yes ✓ No If Yes, please provide details including name of carrier and dates. _____

17. Has any claim ever been made against the applicant or any of its employees? Yes _____ No ✓ If Yes, please complete the Supplemental Claim Information Form at the end of this application for each and every claim. Also, please attach five years of currently valued company loss runs.

18. Is the applicant aware of any circumstances which may result in any claim against them or their employees? _____ Yes _____ No If Yes, please provide full details on each incident including name of parties involved, date of treatment and current status. _____

The applicant declares that the above statements and representations are true and correct and that no facts have been suppressed or misstated. The completion of this application does not bind the Company to sell nor the applicant to purchase this insurance, but any subsequent contract issued will be in full reliance upon the statement and representations made in this application and this application will be made a part of the policy. The applicant understands that any subsequent contract issued by the Company will be issued on a claims made form.

_____          Date  12·21·09
Signature of Applicant or Authorized Representative

Please attach the following documents to this application:
- Resumes or CV's on principals and partners
- Copies of brochures, marketing or advertising materials.
- Five years of currently valued company loss runs.
- List of your five most recent clients with a description of the work you performed for each and contract amount.
- Copies of sample contracts with your clients.

Easy Street Partners, LLC

Case NO: 09-29907

Exhibit 5

Workers Compensation Insurance



## AMERICAN LIBERTY INSURANCE

### EXTENSION OF INFORMATION PAGE

Policy Number: WC10544209

FEIN: 20-5627243          PID: 1209TRU073543

Effective Date: 12/1/2009

Insured: The Sky Lodge, LLC

| Class Codes | Classification Description | Estimated Annual Payroll | Rate per $100 Payroll | State | Estimated Premium |
|---|---|---|---|---|---|
| 8810 | Clerical office employees NOC | $190,000.00 | $0.19 | UT | $361.00 |
| 9052 | Hotel & salespersons, drivers-all other than restaurant employees | $523,800.00 | $1.82 | UT | $9,533.16 |
| 9058 | Hotel-restaurant employees | $571,900.00 | $1.36 | UT | $7,777.84 |
| 8810 | William Shoaf | $38,400.00 | $0.19 | UT | $72.96 |

Annual Gross Payroll: $1,324,100.00

| | |
|---|---|
| Manual Premium: | $17,744.96 |
| Employers Liability %: 0.00% | $0.00 |
| Experience Modification: 1.05 | $887.25 |
| Schedule Rating: 0.850 | ($2,794.83) |
| Premium Size Discount %: 7.46% | $1,181.27 |
| Terrorism Risk Insurance Act: 0.01 | $132.41 |
| Domestic Terrorism Coverage: 0.01 | $132.41 |
| Expense Constant: | $150.00 |
| **Total Estimated Annual Premium:** | **$15,070.93** |

Minimum Premium: $500.00

If the policy is cancelled prior to expiration the Final Premium will not be less than the Minimum Premium.

Monthly Amount: $677.00

3601 North University Avenue, Suite 100      Provo, UT 84604                WC 00 00 01 A


# AMERICAN LIBERTY
# INSURANCE

INFORMATION PAGE

Policy Number: <u>WC10544209</u>
Renewal of: <u>WC10544208</u>

## NCCI CARRIER CODE 29264

. **Insured and Mailing Address:**
The Sky Lodge, LLC

P.O. Box 683300
Park City, UT 84068

**Legal Entity:** <u>Limited Liability Company(LLC)</u>
**FEIN #:** <u>20-5627243</u>
**Board File #:**
**Policy ID:** <u>1209TRU073543</u>

OTHER WORKPLACES NOT SHOWN ABOVE: See Extension of Information Page.

. The policy period is from: 12/1/2009  12:01 A.M. to 12/1/2010  12:01 A.M. at the Insured's mailing address.

.A. **Workers Compensation Insurance:** Part One of the policy applies to the Workers' Compensation Law of the states listed here: UTAH

B. **Employers Liability Insurance:** Part Two of the policy applies to work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident | <u>$100,000</u> | Each Accident |
| Bodily Injury by Disease | <u>$500,000</u> | Policy Limit |
| Bodily Injury by Disease | <u>$100,000</u> | Each Employee |

C. **Other States Insurance:** None

D. This policy includes these endorsements and schedules:
WC 00 00 01 A, WC 00 00 00 A, WC 00 03 03 C , WC 00 04 03, WC 00 04 06 A, WC 00 04 14, WC 00 04 19, WC 00 04 21 C, WC 00 04 22 A, WC 43 06 01, WC 43 06 02

. **Premium for this coverage:** Will be determined by our Manual of Rules, Classifications, Rates and Rating Plan.
All following information is subject to verification and change by audit:    See Extension of Information Page
Total Estimated Annual Premium:          $15,070.93
Deposit Premium:          $8,300.00
Minimum Premium: $500.00
. Interim Adjustment of Premium Shall Be Made:  MONTHLY
. Interim Reporting or Payment of Premium Shall Be Made:  MONTHLY

Agency:                                                    Agency Code:

By    **Luke Skiff**
Authorized Representative:

Countersigned at Midvale on:  1/5/2010

WC 00 00 01 A

American Liberty  Insurance   •   3601 North University Avenue, Suite 100   •   Provo, UT 84604

'Includes copyright material of the National Council on Compensation Insurance used with its permission. Copyright 1987 National Council on Compensation Insurance.'

# AMERICAN LIBERTY INSURANCE

## Owners / Officers Exclusion

Policy Number: <u>WC10544209</u>
FEIN #: <u>20-5627243</u>
Policy ID: <u>1209TRU073543</u>

Name: <u>The Sky Lodge, LLC</u>

## PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT

This policy does not cover bodily injury to any person described in the schedule.  The premium basis for the policy does not include the remuneration of such persons.  You will reimburse us for any payments we must make because of bodily injury to such persons.

### Schedule

is endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

he information below is required only when this endorsement is issued subsequent to preparation of the policy.)

licy No.    WC10544209

ured    The Sky Lodge, LLC

urance Company    American Liberty Insurance

**Luke Skiff**
Authorized Representative:

87 National Council on Compensation Insurance.

WC 00 00 01 A

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY   WC 00 00 1A

NCCI CARRIER CODE 29264

# ENDORSEMENT

Policy Number: WC10544209

FEIN #: 20-5627243

Name: The Sky Lodge, LLC

Policy ID: 1209TRU073543

## NAMED INSURED AND LOCATION ENDORSEMENT

IT IS AGREED THE FOLLOWING NAMED INSUREDS AND LOCATIONS/ADDRESSES ARE INCLUDED UNDER ITEM 1 OF THIS POLICY.

| # 1 | The Sky Lodge, LLC<br>201 Heber Ave.<br>Park City | 205627243<br>SIC Cod<br>UT   84068- |
|---|---|---|
| | Number Of Employees: | |
| # 2 | The Grill<br>201 Heber Ave.<br>Park City | 205627243<br>SIC Cod<br>UT   84068- |
| | Number Of Employees: | |
| # 3 | Easy Street Restaurant<br>201 Heber Ave.<br>Park City | 205627243<br>SIC Cod<br>UT   84068- |
| | Number Of Employees: | |
| # 4 | Easy Street Bakery<br>201 Heber Ave.<br>Park City | 205627243<br>SIC Cod<br>UT   84068- |
| | Number Of Employees: | |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.   WC10544209

Named Insured:   The Sky Lodge, LLC

Insurance Company:   American Liberty Insurance

**Luke Skiff**

Authorized Representative:

WC 00 00 1A



AMERICAN LIBERTY
—INSURANCE—

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

### INSTALLMENT PAYMENT ENDORSEMENT

In addition to the deposited premium, you agree to make the following installment payments on the date specified.

These payments may be revised pursuant to endorsements or mid-term analysis of premium based on payrolls which you may be asked to submit to us.

Your Total Estimated Annual Premium: <u>$15,070.93</u>

Required Deposit Amount: <u>$8,300.00</u>

| Installment Due Date | Amount |
|---|---|
| 1/1/2010 | $677.00 |
| 2/1/2010 | $677.00 |
| 3/1/2010 | $677.00 |
| 4/1/2010 | $677.00 |
| 5/1/2010 | $677.00 |
| 6/1/2010 | $677.00 |
| 7/1/2010 | $677.00 |
| 8/1/2010 | $677.00 |
| 9/1/2010 | $677.00 |
| 10/1/2010 | $677.93 |
| **Total:** | <u>$6,770.93</u> |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

This endorsement, effective on   <u>12/1/2009</u>   at 12:01 A.M. Standard time, forms a part of

Policy No.:   <u>WC10544209</u>

Insured To:  The Sky Lodge, LLC

Insurance Company:  American Liberty Insurance

Premium :  $15,070.93

Countersigend at Midvale on:   1/5/2010

**Luke Skiff**
Authorized Representative:

WC 99 04 05

WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY                    (Ed. 10-06)

## EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

This endorsement applies only to work in the states shown in the Schedule.

A.   Part One (Workers Compensation Insurance) does not apply to work in a state shown in the Schedule.

B.   Part Two (Employers Liability Insurance) applies to work in states shown in the Schedule as though they were shown in Item 3.A. of the Information Page.

C.   Part Two (Employers Liability Insurance), C. Exclusions is changed by adding these exclusions.

   This insurance does not cover

13.   bodily injury to an employee when you are deprived of common law defenses or are subject to penalty because of your failure to secure your obligations under the workers compensation law of any state shown in the Schedule or otherwise fail to comply with that law.


   Schedule

States


This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.:   WC10544209

Premium :

Named Insured:   The Sky Lodge, LLC

Insurance Company:   American Liberty Insurance Company

_Luke Skiff_

Authorized Representative:

WC 00 03 03 C
   (Ed. 10-06)
2004 National Council on Compensation Insurance, Inc.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

(Ed. 4-84)

## EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modification factor. The factor was not available when the policy was issued. The factor, if any, shown on the Information Page is an estimate. We will issue an endorsement to show the proper factor, if different from the factor shown, when it is calculated.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.:   WC10544209

Premium :

Named Insured:   The Sky Lodge, LLC

Insurance Company:   American Liberty Insurance Company

Luke Skiff

Authorized Representative:

WC 00 04 03
 (Ed. 4-84)

1983, 1994 National Council on Compensation Insurance, Inc.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY                    (Ed. 8-95)

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

1. State

Estimated Eligible Premium

| First | Next | Next | |
|-------|------|------|---|
| $5,000 | $95,000 | $400,000 | Balance |
| 0% | 10.9% | 12.6% | 14.4% |

2. Average percentage discount: _____%

3. Other policies:

4. If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.:  WC10544209                              Premium :

Named Insured:    The Sky Lodge, LLC

Insurance Company:   American Liberty Insurance Company            _Luke Skiff_

                                                    Authorized Representative:

WC 00 04 06 A
 (Ed. 8-95)
1995 National Council on Compensation Insurance, Inc.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY                    (Ed. 7-90)

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.:  WCJ0544209                         Premium :

Named Insured:    The Sky Lodge, LLC

Insurance Company:    American Liberty Insurance Company                    _Luke Skiff_

                                                              Authorized Representative:

WC 00 04 14
(Ed. 7-90)
1990 National Council on Compensation Insurance.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## PREMIUM DUE DATE ENDORSEMENT

Section D. of Part Five of the policy is replaced by this provision.

PART FIVE

PREMIUM

D.   Premium is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. The due date for audit and retrospective premiums is the date of the billing.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.:   WC10544209

Premium :

Named Insured:   The Sky Lodge, LLC

Insurance Company:   American Liberty Insurance Company

_Luke Skiff_

Authorized Representative:

WC 00 04 19

2000 National Council on Compensation Insurance, Inc.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY                    (Ed. 9-08)

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance Carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplat9d under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 A) attached to this policy.

For purposes of this endorsement, the following definitions apply:

• Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

• Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

• • Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

   a.  It is an act that is violent or dangerous to human life, property, or infrastructure;

   b.  The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

   c.  It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

• Catastrophic Industrial Accident A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) Is shown in Item 4 of the Information Page or in the Schedule below.

Schedule

| State | Rate | Premium |
|-------|------|---------|

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.:  WC10544209                              Premium :

Named Insured:    The Sky Lodge, LLC

Insurance Company:   American Liberty Insurance Company

Luke Skiff
Authorized Representative:

WC 00 04 21 C
(Ed. 9-08)

© Copyright 2008 National Council on Compensation Insurance. Inc. All Rights Reserved.

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.

b. The act is violent or dangerous to human life, property or infrastructure.

c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31,2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

Limitation of Liability

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and, if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

Policyholder Disclosure Notice

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.: WC10544209                           Premium :

Named Insured:    The Sky Lodge, LLC

Insurance Company:    American Liberty Insurance Company

_Luke Skiff_
Authorized Representative:

WC 00 04 22 A
(Ed. 9-08)
© Copyright 2008 National Council on Compensation Insurance. Inc. All Rights Reserved.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY    (Ed. 9-08)

3. The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

Schedule

State            Rate                    Premium

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.:  <u>WC10544209</u>                    Premium :

Named Insured:    The Sky Lodge, LLC

Insurance Company:    American Liberty Insurance Company

Luke Skiff

Authorized Representative:

WC 00 04 22 A

 (Ed. 9-08)

© Copyright 2008 National Council on Compensation Insurance, Inc. All Rights Reserved.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY (Ed. 1-93)

## UTAH WORKPLACE SAFETY PROGRAM ENDORSEMENT

This endorsement is to inform you that you may be required to establish a workplace safety program and of the premium increase which will occur for failure or refusal to establish such a program.

You may be required to establish such a program if:

1. You have an experience modification factor of 1.00 or higher as determined by NCCI; or 2. You have a three-year loss ratio of 100% or higher.

If you are required to implement a workplace safety program, the program must include a written accident and injury reduction plan and must be reviewed annually.

Your premiums may be increased by 5% over any existing rates and premium modifications for failure or refusal to establish a workplace safety program. If an increase has been made to your premium for failure or refusal to establish a workplace safety program, the amount of the increase is listed in the Schedule below.

Schedule

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.: WC10544209          Premium :

Named Insured:    The Sky Lodge, LLC

Insurance Company:    American Liberty Insurance Company

_Luke Skiff_
Authorized Representative:

WC 43 06 01
(Ed. 1-93)
1993 National Council on Compensation Insurance.

## UTAH CANCELLATION ENDORSEMENT

Cancellation Section (D) of Part Six—Conditions is replaced by the following:

A.    Cancellation

    1.    You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

    2.    If this policy has been previously renewed or has been in effect for at least 60 days, the provisions of this paragraph 2 apply. We may cancel this policy for one of the following reasons:

        a.    You fail to pay all premiums when due;

        b.    A material misrepresentation;

        c.    A substantial change in the risk assumed, unless we should reasonably have foreseen the change or contemplated the risk when entering into the contract;

        d.    Substantial breaches of contractual duties, conditions or warranties.

    We will mail or deliver to you not less than 30-days advance written notice stating when the cancellation is to take effect, except in the event you fail to pay your premiums when due, in which case we will mail or deliver to you not less than 10-days advance written notice stating when the cancellation is to take effect. Should we cancel for non-payment of premiums, we must state this as the reason for the cancellation on our notice of cancellation. Should we cancel for any of the other reasons above, we must either state the facts on which our decision is based or notify you of your right to make a written request for that information. Mailing a cancellation notice via first class mail to you at your mailing address last known to us will be sufficient to prove notice.

    3.    If this policy has not previously renewed and has been in effect less than 60 days, we may cancel the policy for any reason and without a statement of reasons. We will deliver to you not less than 10-days advance written notice stating when the cancellation is to take effect.

    4.    The policy period will end on the day and hour stated in the cancellation notice.

B.    Renewal/Nonrenewal

    1.    You have the right to have the insurance renewed unless:

        a.    The policy has been cancelled;

        b.    The policy is expressly designated as nonrenewable;

        c.    You fail to pay the renewal premium by the due date. We will mail the renewal notice to you not more than 45 days nor less than 14 days prior to the renewal effective date. The renewal notice will include the estimated renewal premium, how it may be paid, and state that failure to pay the renewal premium by the due date extinguishes your right to the renewal; or

        d.    We give you 30-days notice of nonrenewal prior to the expiration or the anniversary date. We must deliver or send the notice by first class mail to your last known mailing address.

    2.    If we offer to renew the policy but on less favorable terms or at higher rates, the new terms or rates will take effect on the renewal date if we delivered or sent by first class mail to you notice of the new terms or rates at least 30 days prior of the expiration date of the prior policy. The prior notice requirement does not apply if the only change is a rate increase generally applicable to your class of business, a rate increase resulting from a classification change, or a policy form change made to make the form consistent with Utah law.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy No.: WC10544209           Premium :

Named Insured:    The Sky Lodge, LLC

Insurance Company:    American Liberty Insurance Company

_Luke Skiff_
Authorized Representative:

WC 43 06 02
(Ed. 7-02)
2002 National Council on Compensation Insurance, Inc.

**DEBTOR**      EASY STREET PARTNERS          **CASE NO.**    09-29907

### Form 2-F
### QUARTERLY FEE SUMMARY*
#### For Period Ending February 28, 2010

| Month For Period December 1 to Dece | Year | Cash Disbursement** | Quarterly Fee Due | Check Number | Date Paid |
|---|---|---|---|---|---|
| January | | $  1,198,467.93 | $  6,500.00 | | |
| February | | $  1,218,108.23 | $  6,500.00 | | |
| March | | | | | |
| Total 1st Qtr | | $           - | $ 13,000.00 | | |
| | | | | | |
| April | | | | | |
| May | | | | | |
| June | | | | | |
| Total 2nd Qtr | | $           - | $         - | | |
| | | | | | |
| July | | | | | |
| August | | | | | |
| September | | $           - | | | |
| Total 3rd Qtr | | $           - | $         - | | |
| | | | | | |
| October | | $           - | | | |
| November | | $           - | | | |
| December | | $           - | | | |
| Total 4th Qtr | | $           - | $         - | | |

### FEE SCHEDULE (AS OF JANUARY 1, 2008)

| Quarterly Disbursements | | | | Fee | |
|---|---|---|---|---|---|
| $            - | to | $      14,999 | | $        325.00 |
| $       15,000 | to | $      74,999 | | $        650.00 |
| $       75,000 | to | $     149,999 | | $        975.00 |
| $       15,000 | to | $     224,999 | | $      1,625.00 |
| $      225,000 | to | $     299,999 | | $      1,950.00 |
| $      300,000 | to | $     999,999 | | $      4,875.00 |
| $    1,000,000 | to | $   1,999,999 | | $      6,500.00 |
| $    2,000,000 | to | $   2,999,999 | | $      9,750.00 |
| $    3,000,000 | to | $   4,999,999 | | $     10,400.00 |
| $    5,000,000 | to | $  14,999,999 | | $     13,000.00 |
| $   15,000,000 | to | $  29,999,999 | | $     20,000.00 |
| $   30,000,000 | to | more | | $     30,000.00 |

* This summary is to reflect the current year's information cumulative to the end of the preporting period
**Should agree with line 3 Form 2-B. Disbursements are net of transfers tooterh debtor in possesion bank accounts

Failure to pay the quarterly fee is cause for conversion or dismissal of the chapter 11 case.[11USC Sec 112(b)(10)
In addition, unpadi fees are considered a debt owned the United States and will be assessed interest unde 31 USC 3717

**DEBTOR** EASY STREET PARTNERS                    **CASE NO.**   09-29907

**Form 2-G**
**NARRATIVE**
**For Period Ending February 28, 2010**

Please provide a brief description of any significant business and legal actions taken by the debtor, its creditors
For Period February 1 to February 28, 2010
Include the financial statements, and any significant changes in the financial conditions of the debtor which have
occurred subsequent to the report date.

The Debtor submitted the plan disclosure to the court for review and comments. Comments were heard and the
court approved the Debtor to proceed forward with distributing the plan to all classes for review and vote.

Plan Funder candidates were identified and two finalist were selected who are completing final due diligence and
negotiation with the Debtor.

Operational Highlights

February was effected in the first two weeks by the series of major winter storms that hit the Eastern seaboard
and Chicagoland markets. The weather not only hampered air schedules but also affected client bookings from
the East coming to Utah as they had record snow levels at re-sorts in New Hampshire and Vermont. The month
recovered after the President's Weekend and the city posted solid gains against prior year during this period.
The property occupancy was negatively affected to a significant level against plan during the first two weeks of
the month, which impacted the overall month's gross revenue performance.
The city posted a 53% lodging occupancy and the property posted an overall 50% occupancy for the month. The
city was 6.0% ahead of prior year in room occupied and while the property was up 10% over 2009 for room
nights sold but we trailed plan by 28%. The restaurant business lev-els for covers served were up over prior year
by 17% and 7% behind plan due to lower than an-ticipate in house guests. The spa saw a 5% increase in
treatments sold in the month over prior year.
Even though the room occupancy was below plan the property posted a net operating profit of $293,508 that
exceeded plan by $59,374 on gross revenues that fell behind plan by $118,041. This represented a 42.1% NOI
and is the result of departments adjusting quickly to lower busi-ness level and reigning in costs were possible.
Against prior year the property continued to im-prove financial performance over 2009 posting a 44% increase
over prior the year in net operat-ing profit. The NOI for 2009 was 33.5% versus 42.1% in 2010.
The property continued to be ranked the number one ranked hotel property in Park City on Trip Advisor. In
February Easy Street Brasserie was elevated to the #1 restaurant in Trip Advisor and Amatsu Spa was ranked as
the #1 Hotel Spa. According to the Trip Advisor ReviewMetrix owner analysis Sky Lodge had a 91.8% positive
rating versus Stein Erickson at 70.1% and all Park City Hotels at 87.1%.

**DEBTOR Easy Street Parnters, LLC POST CONFIRMATION QUARTERLY REPORT**

**CH 11 CASE NO. 09- 29907          FOR QUARTER ENDED  December-09**

**SUMMARY OF DISBURSEMENTS MADE DURING QUARTER**

1. Cash Balance, Beginning of Quarter
For Period January 1 to March 31, 2010
3. Cash Disbursements during Quarter including Plan Payments
4. Cash Balance End of Quarter(or as of repoart date for final report)
**SUMMARY OF AMOUNTS DISBURSED UNDER PLAN          $          -**

| | Paid During Quarter | | Total Paid To Date | | Total Pyts Projected Under the Plan | |
|---|---|---|---|---|---|---|
| 1. ADMINISTRATIVE EXPENSES | | | | | | |
| Plan Trustee Compensation | $ | - | $ | - | $ | - |
| Plan Trustee Expenses | $ | - | $ | - | $ | - |
| Attorney Fees Trustee | | | $ | - | $ | - |
| Attorney Fees Debtor | | | $ | - | $ | - |
| Other Professionals | | | $ | - | $ | - |
| Other Administrative Expenses | $ | - | $ | - | $ | - |
| TOTAL ADMINISTRATIVE EXPENSES | $ | - | $ | - | $ | - |
| 2. SECURED CREDITORS | $ | - | $ | - | | |
| 3. PRIORITY CREDITORS | $ | - | $ | - | | |
| 4. UNSECURED CREDITORS | $ | - | $ | - | | |
| 5. EQUITY SECURITY HOLDERS | $ | - | $ | - | | |
| TOTAL PLAN PAYMENTS | $ | - | $ | - | $ | - |
| QUARTERLY FEE PAID | $ | - | $ | - | $ | - |

**PLAN STATUS**

| | YES | NO |
|---|---|---|
| 1. Have all payments been made as set forth in the confirmed | yes | |
| 2. Are all post confirmation obligations current? | yes | |
| 3. Projected date of application for final decree | 3/31/2010 | |

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING POST CONFIRMATION QUARTERLY IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Reorganized Debtor          _____

By:                         _____
Title                       _____
Email & Phone               _____

Easy Street Partners, LLC

Case NO: 09-29907

**Exhibit 3**

**Bank Accounts Statements**

Page 1 of 7

WELLS FARGO BANK, N.A.
P.O. BOX 6995
PORTLAND, OR  97228-6995

Account Number:              2679764676
Statement Start Date:        02/01/10
Statement End Date:          02/28/10

EASY STREET PARTNERS, LLC
DBA THE SKYLODGE
SKY LODGE LOCKBOX ACCOUNT
DEBTOR IN POSSESSION
PO BOX 683300
PARK CITY UT 84068-3300

For Customer Assistance:
Call 800-225-5935 (1-800-CALL-WELLS).

| Account Number | Beginning Balance | Ending Balance |
|---|---|---|
| Choice IV Commercial Checking 2679764676 | 240,225.48 | 446,757.42 |

**News from Wells Fargo**

Effective April 1, 2010, the following fee associated with your account is changing:

Uncollected Funds Fee: The Wells Fargo Base Rate plus 3% (adjusted to an appropriate periodic rate) will be applied to your Average Daily Negative Collected Balance for the monthly statement cycle. The Average Daily Negative Collected Balance is the sum of the negative Collected Balances at the close of business on each day of the statement cycle divided by the number of days in the cycle.

For questions, please contact your Wells Fargo banker, or call the phone number on your statement to speak with a phone banker 24 hours a day, 7 days a week. Your pricing may vary depending on your account relationship. We appreciate your business and look forward to continuing to serve you.

**Credits**
Deposits

| Effective Date | Posted Date | Amount | Transaction Detail |
|---|---|---|---|
| | Feb 01 | 7,433.74 | Deposit |
| | Feb 01 | 7,000.00 | Deposit |
| | Feb 01 | 2,780.12 | Deposit |
| | Feb 01 | 1,334.44 | Deposit |
| | Feb 03 | 398.89 | Deposit |
| | Feb 03 | 312.51 | Deposit |
| | Feb 04 | 500.57 | Deposit |
| | Feb 08 | 10,158.74 | Deposit |
| | Feb 08 | 1,792.21 | Deposit |
| | Feb 08 | 1,307.39 | Deposit |
| | Feb 08 | 965.89 | Deposit |
| | Feb 10 | 1,039.55 | Deposit |
| | Feb 10 | 686.52 | Deposit |
| | Feb 12 | 966.46 | Deposit |
| | Feb 12 | 388.11 | Deposit |
| | Feb 16 | 1,529.26 | Deposit |
| | Feb 16 | 1,514.71 | Deposit |
| | Feb 16 | 1,492.30 | Deposit |
| | Feb 16 | 965.74 | Deposit |
| | Feb 16 | 772.92 | Deposit |

Continued on next page

Page 2 of 7
Account Number:                2679764676
Statement End Date:            02/28/10

EASY STREET PARTNERS, LLC
DBA THE SKYLODGE

## Deposits

| Effective Date | Posted Date | Amount | Transaction Detail |
|---|---|---|---|
| | Feb 17 | 1,002.04 | Deposit |
| | Feb 18 | 426.62 | Deposit |
| | Feb 18 | 200.82 | Deposit |
| | Feb 22 | 2,415.68 | Deposit |
| | Feb 22 | 1,670.02 | Deposit |
| | Feb 22 | 1,232.55 | Deposit |
| | Feb 22 | 866.14 | Deposit |
| | Feb 23 | 299,690.50 | Deposit |
| | Feb 23 | 15,476.81 | Deposit |
| | Feb 24 | 11,426.77 | Deposit |
| | Feb 24 | 4,107.30 | Deposit |
| | Feb 25 | 1,284.42 | Deposit |
| | Feb 26 | 2,388.80 | Deposit |
| | Feb 26 | 1,502.77 | Deposit |
| | | 387,031.31 | Total Deposits |

## Electronic Deposits/ Bank Credits

| Effective Date | Posted Date | Amount | Transaction Detail |
|---|---|---|---|
| | Feb 01 | 27,375.00 | American Express Settlement 100201 5430562264 The Sky LODG5430562264 |
| | Feb 01 | 18,917.33 | American Express Settlement 100130 5430562264 The Sky LODG5430562264 |
| | Feb 01 | 16,840.63 | Bankcard Settlement 100129 628044000217538 The Sky Lodge Hotel |
| | Feb 01 | 9,642.89 | Bankcard Settlement 100131 628044000217411 Easy Street Brasserie |
| | Feb 01 | 5,841.85 | Bankcard Settlement 100129 628044000217411 Easy Street Brasserie |
| | Feb 01 | 5,111.80 | Bankcard Settlement 100130 628044000217538 The Sky Lodge Hotel |
| | Feb 01 | 4,673.99 | Bankcard Settlement 100130 628044000217411 Easy Street Brasserie |
| | Feb 01 | 4,489.45 | Bankcard Settlement 100131 628044000217538 The Sky Lodge Hotel |
| | Feb 01 | 1,821.85 | Bankcard Settlement 100131 628044000217421 The Bar Boheme |
| | Feb 01 | 1,791.32 | Bankcard Settlement 100129 628044000217421 The Bar Boheme |
| | Feb 01 | 1,371.31 | Bankcard Settlement 100130 628044000217421 The Bar Boheme |
| | Feb 02 | 8,994.07 | Bankcard Settlement 100201 628044000217411 Easy Street Brasserie |
| | Feb 02 | 7,054.91 | American Express Settlement 100202 5430562264 The Sky LODG5430562264 |
| | Feb 02 | 3,089.43 | Bankcard Settlement 100201 628044000217421 The Bar Boheme |
| | Feb 02 | 15.54 | Bankcard Settlement 100201 628044000217538 The Sky Lodge Hotel |

Continued on next page

Page 3 of 7
Account Number:              2679764676
Statement End Date:          02/28/10

EASY STREET PARTNERS, LLC
DBA THE SKYLODGE

Electronic Deposits/ Bank Credits

| Effective Date | Posted Date | Amount | Transaction Detail |
|---|---|---|---|
| | Feb 03 | 11,920.66 | Bankcard Settlement 100202 628044000217538 The Sky Lodge Hotel |
| | Feb 03 | 9,359.93 | American Express Settlement 100203 5430562264 The Sky LODG5430562264 |
| | Feb 03 | 4,528.07 | Bankcard Settlement 100202 628044000217411 Easy Street Brasserie |
| | Feb 03 | 1,526.20 | Bankcard Settlement 100202 628044000217421 The Bar Boheme |
| | Feb 04 | 16,630.52 | American Express Settlement 100204 5430562264 The Sky LODG5430562264 |
| | Feb 04 | 6,038.14 | Bankcard Settlement 100203 628044000217538 The Sky Lodge Hotel |
| | Feb 04 | 2,441.41 | Bankcard Settlement 100203 628044000217411 Easy Street Brasserie |
| | Feb 04 | 155.38 | Bankcard Settlement 100203 628044000217421 The Bar Boheme |
| | Feb 05 | 412,707.16 | WT Fed#03717 Wcf Wells Fargo SE /Org=wcf Srf# GSE100205677690 Trn#100205047320 Rfb# Noref |
| | Feb 05 | 19,256.23 | American Express Settlement 100205 5430562264 The Sky LODG5430562264 |
| | Feb 05 | 11,150.07 | Bankcard Settlement 100204 628044000217538 The Sky Lodge Hotel |
| | Feb 05 | 1,610.95 | Bankcard Settlement 100204 628044000217411 Easy Street Brasserie |
| | Feb 05 | 392.20 | Bankcard Settlement 100204 628044000217421 The Bar Boheme |
| | Feb 08 | 20,022.91 | American Express Settlement 100208 5430562264 The Sky LODG5430562264 |
| | Feb 08 | 18,044.73 | American Express Settlement 100206 5430562264 The Sky LODG5430562264 |
| | Feb 09 | 5,919.99 | American Express Settlement 100209 5430562264 The Sky LODG5430562264 |
| | Feb 10 | 17,453.50 | Bankcard Release 020910 000000007457386 Easy Street Brasserie |
| | Feb 10 | 11,952.44 | Bankcard Release 020910 000000007457683 The Sky Lodge Hotel |
| | Feb 10 | 11,701.46 | American Express Settlement 100210 5430562264 The Sky LODG5430562264 |
| | Feb 10 | 6,190.00 | WT Fed#05108 Jpmorgan Chase Ban /Org=daniel J Edelman Inc Srf# 3177200041Jo Trn#100210053498 Rfb# Cap Of 10/02/10 |
| | Feb 10 | 3,523.45 | Bankcard Release 020910 000000007457667 The Bar Boheme |

Continued on next page

Page 4 of 7
Account Number:                    2679764676
Statement End Date:               02/28/10

EASY STREET PARTNERS, LLC
DBA THE SKYLODGE

Electronic Deposits/ Bank Credits

| Effective Date | Posted Date | Amount | Transaction Detail |
|---|---|---|---|
| | Feb 10 | 2,577.80 | Bankcard Settlement 100209 628044000217411 Easy Street Brasserie |
| | Feb 10 | 2,103.93 | Bankcard Settlement 100209 628044000217538 The Sky Lodge Hotel |
| | Feb 10 | 90.46 | Bankcard Settlement 100209 628044000217421 The Bar Boheme |
| | Feb 11 | 368,203.77 | WT Fed#0393 Wcf Wells Fargo SE /Org=wcf Srf# GSE100218159600 Trn#100211039395 Rfb# Noref |
| | Feb 11 | 9,457.11 | Bankcard Settlement 100210 628044000217538 The Sky Lodge Hotel |
| | Feb 11 | 5,788.12 | American Express Settlement 100211 5430562264 The Sky LODG5430562264 |
| | Feb 11 | 1,839.71 | Bankcard Settlement 100210 628044000217411 Easy Street Brasserie |
| | Feb 11 | 1,012.83 | Bankcard Settlement 100210 628044000217421 The Bar Boheme |
| | Feb 12 | 7,220.27 | American Express Settlement 100212 5430562264 The Sky LODG5430562264 |
| | Feb 12 | 6,054.30 | Bankcard Settlement 100211 628044000217538 The Sky Lodge Hotel |
| | Feb 12 | 1,027.45 | Bankcard Settlement 100211 628044000217411 Easy Street Brasserie |
| | Feb 12 | 624.53 | Bankcard Settlement 100211 628044000217421 The Bar Boheme |
| | Feb 16 | 27,741.33 | Bankcard Settlement 100214 628044000217538 The Sky Lodge Hotel |
| | Feb 16 | 21,216.15 | American Express Settlement 100215 5430562264 The Sky LODG5430562264 |
| | Feb 16 | 6,882.62 | American Express Settlement 100216 5430562264 The Sky LODG5430562264 |
| | Feb 16 | 5,472.47 | American Express Settlement 100213 5430562264 The Sky LODG5430562264 |
| | Feb 16 | 4,854.00 | Bankcard Settlement 100215 628044000217411 Easy Street Brasserie |
| | Feb 16 | 3,587.25 | Bankcard Settlement 100215 628044000217421 The Bar Boheme |
| | Feb 16 | 3,258.89 | Bankcard Settlement 100214 628044000217411 Easy Street Brasserie |
| | Feb 16 | 3,014.37 | Bankcard Settlement 100212 628044000217411 Easy Street Brasserie |
| | Feb 16 | 2,955.89 | Bankcard Settlement 100213 628044000217411 Easy Street Brasserie |
| | Feb 16 | 2,851.83 | Bankcard Settlement 100214 628044000217421 The Bar Boheme |

--------------------------------------------------------------------

Continued on next page