Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice)
Steven B. Eichel (seichel@crowell.com) (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Counsel for Easy Street Partners, LLC, Debtor and Debtor in Possession

Corbin B. Gordon  (corbingordon@yahoo.com) (9194)
CORBIN B. GORDON, P.C.
345 West 600 South, Suite 108
Herber City, UT  84032
Telephone:  (435) 657-0984/Fax:  (888) 822-8796

Special Counsel for Easy Street Partners, LLC, Debtor and Debtor in Possession

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | |
| EASY STREET HOLDING, LLC, *et al.*, | Bankruptcy Case No. 09-29905 |
| | Jointly Administered with Cases |
| | 09-29907 and 09-29908 |
| Address:  201 Heber Avenue | Chapter 11 |
|         Park City, UT 84060 | |
| | Honorable R. Kimball Mosier |
| Tax ID Numbers: | |
| 35-2183713 (Easy Street Holding, LLC), | |
| 20-4502979 (Easy Street Partners, LLC), | **[FILED ELECTRONICALLY]** |
| and 84-1685764 (Easy Street Mezzanine, LLC) | |

**EASY STREET PARTNERS, L.L.C.'S REPLY MEMORANDUM IN SUPPORT OF ITS
OBJECTION TO PROOFS OF CLAIM FILED BY GATEWAY CENTER, LLC**

Easy Street Partners, LLC ("Partners"), a debtor and debtor in possession in the above captioned cases, files this reply (the "Reply") to the response (the "Response") of Gateway Center, LLC ("Gateway") to Partners' objection (the "Objection") to proof of claim no. 31-2 (the "Claim").[1] The Objection was filed pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Partners respectfully represents as follows:

## BACKGROUND

1. As set forth in the Claim and the Objection thereto, Partners is the lessee and Gateway is the lessor under a lease at The Gateway Center.

2. Gateway repeatedly states in its Response that Partners' claims of safety code noncompliance in The Gateway Center are "unwarranted," "frivolous," and that there are no code violations in the building.

3. On April 20, 2010, Partners received a letter from the Park City Building Department, signed by its senior inspector Kurt Simister, confirming almost all of the safety code violations in The Gateway Center that Partners has complained of, and indicating that the department will issue notice of the violations to Gateway. *See* letter from Park City Building Department attached as Exhibit A.

4. The issuance of the letter by the Building Department puts to rest any questions concerning the validity of Partners' claims that The Gateway Center is in violation of existing safety standards.

5. Specifically, the Building Department found the following safety code violations:

---

[1] In the Objection, Partners also objected to proof of claim no. 31-1 because it was amended and superseded by the Claim.

2

      a.      The west fire exit is not built in accordance with the approved plans – it is only 36 inches wide and is required to be no less than 44 inches to meet building code requirements.  Gateway was put on notice of this violation on October 20, 2009 and has done nothing to remedy the situation.

      b.      The alleyway that the west exit empties into must be maintained to eliminate any trip hazards that lead to the public way (there is presently a power box in the alley that creates a pinch point, and the surface is uneven, made up partially of gravel and pavement).  Gateway was put on notice of this violation on October 20, 2009, and has done nothing to remedy the situation.

      c.      The area of refuge on level three of the east stairway (which is the closest exit to Partners leased space) is blocked by the swing of the door, and requires changing the hinge side of the door.  Gateway was put on notice of this violation on February 19, 2010, and has done nothing to remedy the situation.

      d.      None of the areas of refuge in the building have adequate signage.  Gateway was put on notice of this violation on February 19, 2010, and has done nothing to remedy the situation.

      e.      The parking garage on the first two floors (which services The Gateway Center above) is not ADA compliant, and requires a ramp into the elevators.  Gateway was put on notice of ADA concerns in the parking garage on October 20, 2009 and has done nothing to remedy the situation.

      f.      The parking stalls in the parking garage beneath the Gateway Center have been illegally altered from the approved plat, and as presently constituted illegally block access to the elevators.  The Building Inspector is requesting that the stalls be returned to how they were

originally approved. Gateway was put on notice of this violation on October 20, 2009 and has done nothing to remedy the situation.

      6.      Before setting forth rebuttal argument, there are several of Gateway's recited facts in its Response, which are material to the issues before the court, that need to be corrected and clarified as follows:

          a.      In paragraph 15 of its Response, Gateway claims it contacted the OSHA and that no OSHA inspections have been performed on Partners' leased space. In fact, an inspection was performed by the Utah Division of Occupational Safety and Health ("UOSH"), a division of the Utah Labor Commission that reviews issues similar to those addressed by federal Occupational Safety and Health Administration. A Consultation Report was then prepared by the Utah Labor Commission's Workplace Safety and Health Consultation Service ("WSHC"), a copy of which is attached hereto as Exhibit B. UOSH was inpecting The Sky Lodge, which is owned and operated by Partners, as construction was being completed. The inspector asked if there was any other space The Sky Lodge was occupying and was informed of the leased space across the street in The Gateway Center. The inspector walked through the leased space at The Gateway Center and raised the safety concerns of inappropriate exit signage in the space and then verbally discussed concerns that the egress out of the space exceeded the 100 foot maximum set forth in the safety code.[2] As such, consistent with claims set forth in correspondence, Easy Street did not go looking for building code violations, rather, they were raised by UOSH and reported by WSHC.

          b.      In paragraphs 30 and 31 of its Response, Gateway claims that it was put on notice for the first time of the fire code violation of the west stairway being too narrow in Mr.

---

[2] *See* pages 9 and 10 of the WSHC report attached hereto as Exhibit B discussing appropriate exit signage in the leased space.

4

Gordon's February 19, 2010 correspondence. This is not correct. A review of Gateway's exhibit 5, which is Mr. Gordon's October 20, 2009 letter, includes four paragraphs discussing the exit issues and includes color photos of the stairway itself. Gateway's assertion that February was the first time it was put on notice of this problem is incorrect. Gateway knew of this problem no later than October 2009 and failed to correct it.

## ARGUMENT

### I. THE LEASED PREMISES SUFFER FROM SAFETY CODE VIOLATIONS

The letter issued by the Park City Building Department puts firmly to rest any claim that there are not safety code violations within The Gateway Center. Most of the issues raised in the report issued by Summit Engineering Group, LLC (the "Summit Report"), which was attached to the Objection, were confirmed by the Building Department. As such, Gateway's insistence that Partners' claims are frivolous and unwarranted is not correct.

As stated above, Gateway has known about many of these violations for at least six months and has done nothing to remedy them. Out of concern for the safety of its employees, Partners vacated the premises while paying rent on the space for several months (through December, 2009), while receiving no benefit because it had vacated the premises. As set forth below, the safety violations are clearly a violation of both the implied covenant of habitability and the covenant of quiet enjoyment.

### II. THE SAFETY CODE VIOLATIONS ARE MATERIAL AND CONSTITUTE A BREACH OF THE IMPLIED WARRANTY OF HABITABILITY

In its Objection Partners already briefed the case law establishing that safety is paramount when addressing claims of breach of the warranty of habitability. See Wade v. Job, 818 P.2d 1006, at 1011 (Utah 1991) ("violations involving health or safety . . . will often sustain a tenant's claim for relief [of breach of warranty of habitability])"; see also Hilder v. St. Peter,

5

478 A.2d 202, 209 (Vt. 1984) (cited in Wade v. Job) ("substantial violations of applicable housing codes are prima facie evidence that there has been a breach of the warranty of habitability").

Gateway argues that the safety violations are minor and have not materially affected Partners lease, and are therefore not a violation of the warranty of habitability. These arguments are not persuasive.

A. <u>The Safety Code Violations Are Not Minor, as They Create a Real Threat of Injury in an Emergency Situation</u>

There is no such thing as a minor safety code violation. Because the International and Uniform Building Codes establish minimum requirements for safety, the building is either compliant or per se unsafe. This is particularly true in the commercial context. This is why the Building Department will require that all violations be brought up to code.

Gateway claims that the safety violations are minor and do not materially affect Partners because the potential injuries from the violations are supposedly abstract and remote. Gateway's analysis is incorrect on the facts and the law. The likelihood of an emergency has no bearing on whether a violation is major or minor. The analysis must focus on the scope and type of injury the violation could cause if an emergency occurs.

As set forth in the Objection, Partners' expert has stated that in an emergency people could die or be severely injured in the areas of refuge that are blocked, in the stairwell that is too narrow, or in the alley way that has multiple tripping hazards. These are all serious outcomes.

The safety code is specifically designed to address the possibility of an emergency that may or may not occur, recognizing that the risk is real, even if the chance of an earthquake or fire is remote. The board that established the International Building Code didn't make these standards up. Most of the codes have likely been established through the sad experience of

6

tragedy. The safety code recognizes that what appears to be a minor violation will become very major in an emergency situation. This is why strict compliance with the building code is required. Because the possibility of serious injury or even death is possible due to the safety code violations, it cannot be concluded that these are minor violations and immaterial to the lease.

B.    Compliance With Safety Codes Was a Material Promise in the Lease.

The safety of the building was a material part of Partners willingness to sign the lease at The Gateway Center. Partners thought it was renting Grade A space that was code-compliant. It was only after the UOSH inspection that Partners realized there were safety problems with the leased space and the building. Since then additional concerns have come to light, ultimately resulting in Partners vacating the premises. These concerns were outlined in the Objection and the expert reports attached thereto and are incorporated herein.

Partners would not have signed the lease had it known of the safety violations. Once the safety violations became apparent, coupled with Gateway's refusal to remedy the problems, Partners was trapped: stay in the space with knowledge that there are safety issues and assume the liability if an accident occurs, or remove its employees from the premises until the safety issues could be resolved. Partners chose to err on the side of safety and removed its employees out of the leased space, but continued to pay rent in good faith through December, 2009.

Ten months later, the code violations still exist and have been confirmed as legitimate.

Gateway asks this Court to shift the burden of the safety violations onto the tenant, and force Partners to bear the liability of knowing the space is unsafe. This puts Partners in a no win situation. If an earthquake or other tragedy occurs and someone dies or is severely injured in a non-compliant exit, Partners then becomes liable for gross negligence because it was fully aware

7

of the code violations. Why should Partners be forced to assume this liability and risk? It was certainly not a part of the original bargain. Had it been the lease would not have been signed. This reveals how material the assumption of safety was to the lease.

Further, there are two areas within the lease that require the tenant to abide by "all applicable building, fire, zoning, signage and health codes" *See* section 10(a) and 10(c) in the lease. There should be a mutuality of obligation in this aspect. If the Landlord expects the Tenant to abide by all building and health codes, then the tenant has the right to expect the same from the Landlord.

Obviously, the Landlord would not allow a situation within the tenant's space that violates safety code because it does not want the liability associated with the problem, especially once it is aware it exists. It is clear that if the Landlord asked the tenant to fix the problem and the tenant refused, it would be a breach of the lease. The same should hold true with a request from the tenant to the landlord.

Partners' principal objective in leasing the space was to operate an office. It has not used large portions of the space for over 10 months due to safety concerns. The code violations have materially frustrated Partners purpose for signing the lease and qualifies as a breach of the warranty of habitability under the analysis cited by Gateway in *Richard Barton Enter., Inc. v. Tsern*, 928 P.2d 368 (Utah 1996).

### III. PARTNERS TIMELY VACATED THE PREMISES WHEN IT BECAME AWARE OF THE SAFETY VIOLATIONS

Gateway claims that Partners did not vacate the premises, thus foreclosing a constructive eviction argument. Such is not the case. The leased space had two distinct areas, as shown on Exhibit C. Area one is a set of offices (marked in green) and area two is a long open room where the concerns about egress exist (marked in red).

8

When the issues with the egress came to light Partners pulled its people out of area two (marked in red) on March 18, of 2009. When the issues with the additional safety violations came to light Partners withdrew its people from area one (marked in green) in December of 2009.

As such, Partners can show it has been constructively evicted for purposes of the covenant of quiet enjoyment.

## CONCLUSION

Partners has paid tens of thousands of dollars for space it has not been able to use for over ten months. It has not been able to use the portions marked as area two on Exhibit C for over a year, and the portion marked area one on Exhibit C for the last three months. The record is clear that Partners has put Gateway on notice of safety violations numerous times and none of the violations have been remediated. The Park City Building Department has confirmed that the complained of safety violations are legitimate, and are requiring Gateway to fix the problems.

Based on the confirmed existence of the safety code violations and Gateway's failure to remediate these problems, Partners has proven Gateway's breach of the warranty of habitability as well as quiet enjoyment.

Based on all of the above, the Court should disallow the Claim and hold that the lease is null and void, or that Gateway is entitled to recover the amounts of rent it paid during the time it could not use the space (which will continue until the remediation required by the Building Department is complete).

DATED this 22nd day of April, 2010

**CORBIN B. GORDON, P.C.**

By:   /s/ Corbin B. Gordon
Corbin B. Gordon (9194)
345 West 600 South, Suite 108
Herber City, UT 84032
Telephone: (435) 657-0984/Fax: (888) 822-8796

Special Counsel for Easy Street Partners, LLC, Debtor and Debtor in Possession

Kenneth L. Cannon II (3705)
Steven J. McCardell (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
Telephone: (801) 415-3000/Fax: (801) 415-3500

and

Michael V. Blumenthal (admitted pro hac vice)
Steven B. Eichel (admitted pro hac vice)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000/Fax: (212) 223-4134

Counsel for Easy Street Partners, LLC, Debtor and Debtor in Possession

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of Easy Street Partners, LLC's Reply was served on this 22nd day of April, 2010, via ECF Notification, hand delivery and/or first-class mail on the parties listed below.

- Troy J. Aramburu    taramburu@joneswaldo.com, rhuot@joneswaldo.com
- Scott A. Cummings    cummings.scott@dorsey.com
- George B. Hofmann    gbh@pkhlawyers.com, dh@pkhlawyers.com
- Mary Margaret Hunt    hunt.peggy@dorsey.com, brown.patricia@dorsey.com, smith.ron@dorsey.com, slc.lit@dorsey.com
- Annette W. Jarvis    jarvis.annette@dorsey.com, smith.ron@dorsey.com, slc.lit@dorsey.com, brown.patricia@dorsey.com
- Lon A. Jenkins    lajenkins@joneswaldo.com, krichardson@joneswaldo.com, ecf@joneswaldo.com, rhuot@joneswaldo.com
- Michael R. Johnson    mjohnson@rqn.com, agale@rqn.com
- Anthony C. Kaye    kaye@ballardspahr.com, swand@ballardspahr.com
- Benjamin J. Kotter    kotter.benjamin@dorsey.com, smith.ron@dorsey.com, brown.patricia@dorsey.com, slc.lit@dorsey.com
- Adelaide Maudsley    maudsley@chapman.com, jemery@chapman.com
- John T. Morgan tr    john.t.morgan@usdoj.gov, james.gee@usdoj.gov
- David W. Overholt    doverholt@rsolaw.com, abachman@rsolaw.com
- Douglas J. Payne    dpayne@fabianlaw.com, jshowalter@fabianlaw.com
- Knute Rife    karife@rifelegal.com
- Jeffrey L. Shields    jlshields@cnmlaw.com, njpotter@cnmlaw.com
- Jeffrey Weston Shields    jshields@joneswaldo.com, rhuot@joneswaldo.com
- Bradley L. Tilt    btilt@fabianlaw.com, rmellor@fabianlaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Kim R. Wilson    bankruptcy_krw@scmlaw.com

| | |
|---|---|
| Diane H. Banks<br>Fabian & Clendenin<br>215 South State Street, Suite 1200<br>Salt Lake City, UT 84111-2323 | Gateway Center, LLC<br>c/o Vectra Management Group<br>424 West 33rd Street, Suite 540<br>New York, NY 10001-2641 |
| Gateway Center, LLC<br>c/o Commerce<br>32 West 200 South, Suite 501<br>Salt Lake City, UT 84101 | Corbin B. Gordon<br>Corbin B. Gordon, P.C.<br>345 West 600 South<br>Heber City, UT 84032-2247 |

/s/ Kristin Hughes