# EXHIBIT A

**PARK CITY**

1884

### Building • Engineering • Planning

8th April, 2010

Kim T. Sallinger
Principal and Director
BDRC 4Site, LLC
305 N.E. Loop 820
Suite 109
Hurst, Texas 76053

Dear Mr. Sallinger:

This letter is in response to East Street Partners LLC. concerns about life/safety issues at 136 Heber Ave., space 303 and the Summit Engineering report dated January 13, 2010. I will address each issue while referencing the 1994 Uniform Building Code which was the governing code when the building was constructed. The issues are as follows;

1. Mr. Bill Shoaf contacted the Park City Building Department to discuss his concern of exiting within his office space (303). Roger Evans (plans examiner) and myself measured the travel distance at ninety-seven (97) feet at which point you had direct access to the enclosed stairway or to the front entry door. In the current 2006 International Building Code this situation is defined as the common path of egress travel. The 1994 Uniform Building Code limits travel distance through the atrium at one hundred (100) feet as per Section 402.4. All the tenants have access to one of the enclosed stairways that comply with this requirement. Section 1003.4 allows one hundred and fifty (150) travel distance because the building has an automatic fire sprinkler system.
2. The area of refuge is obstructed on level three (3) of the east stairway. Compliance can be achieved by changing the hinge side of the door.
3. All the areas of refuge shown on the drawings require instructions as per Section 1104.2.6 (items 1 through 4) with approved signage.
4. Parking level B2 has a step of four (4) inches in height. Section 1001.4 requires any change of elevation of twelve (12) inches or less serving an occupant load of ten (10) or more to comply with the requirements of a ramp.
5. The area of refuge at parking level B2, located within the enclosed stairs had storage that was in violation of Section 1009.1 of the building code and fire code that has been removed.
6. The exiting from the west stairway on the exterior of the building was not constructed as per the approved plans. The drawings show a stairway width of fourty-four (44) inches and the constructed width is thirty-six (36) inches.
7. The west exit area is not an exit court as per Section 204 (definition) which states "bounded on three sides". The area is open on the north and south ends. The

walk area must be maintained to eliminate any trip hazards that lead to the public way.

8. Central elevators and handicapped parking. I have reviewed the approved plan and the configuration of the parking stalls has been re-arranged without building department approval. Also, if the parking is located as per the approved plans, the railing will not block the accessible route to the elevators.

In conclusion, I believe the space occupied by Mr. Shoaf is safe to occupy. It is important to the Park City Building Department to maintain the existing building in a safe manner. We will be contacting the building owner to issue a notice of violations so that we may bring all the violations listed in my response into compliance with the adopted codes and ordinances. If you have any further questions, please contact me at (435) 615-5111.

Sincerely,                                                    4/13/10

Kurt Simister, Senior Inspector


Cc: files

# EXHIBIT B

**State of Utah Labor Commission**
**Workplace Safety and Health Consultation Service**
**160 East 300 South, Third Floor**
**Post Office Box 146650**
**Salt Lake City, Utah  84114-6650**
**(801) 530-6855**

# CONSULTATION REPORT

## For

## The Sky Lodge

## Visit # 503898215

**Site Address:**
**201 Heber Ave**
**Park City, UT  84060**

**Mailing Address:**
**PO Box 683300**
**Park City, UT  84068**

### Ms. Marina Soto
**Human Resources Director**

**(435)-658-9403**

Submitted by:

**Clark T. Clements, B.S., CHMM**
801-205-2826
cclements@utah.gov

## TABLE OF CONTENTS

Executive Summary

| | |
|---|---|
| Attachment A: | Report of Hazards Identified with the Employer Report of Action Taken |
| Attachment B: | Employer Report of Action Taken - Sample |
| Attachment C: | Notice of Obligation / Safety and Health Hazard Categories |
| **Attachment D**: | **List of Hazards** - This List of Hazards must be posted, unedited, in a prominent place where it is readily observable by all affected employees for three (3) working days, or until the hazards are corrected, whichever is later. |
| Attachment E: | Safety and Health Program Management |
| Attachment F: | OSHA Form 33 System Safety and Health Evaluation |
| Attachment G: | Web-based Safety and Health Resources (Including Bilingual) |
| Attachment H: | Checklist for Eyewash (based on ANSI 2004) |

# EXECUTIVE SUMMARY

**Acknowledgements:**

The Consultant would like to thank Ms. Soto, Human Resources Director, Mr. Bob Schick, Engineering Director, and the Sky Lodge employees for their time and assistance during the onsite UOSH Consultation Survey Visit, which made the Consultation effort a huge success.  All members of the staff were very engaging and actively participated during the Walkthrough. Special thanks to the Valet Crew for assistance with parking arrangements and their generous hospitality.

## When referring to this report, please use visit # 503898215

### INTRODUCTION/OPENING CONFERENCE:

In response to a Consultation Request from Ms. Marina Soto, The Sky Lodge Human Resources Director, an onsite Consultation Limited Health Survey was conducted on September 18, 2008.  The opening conference was attended by the following individuals:

- Ms. Marina Soto, Director of Human Resources
- Bob Schick, Engineering Director
- Clark T. Clements, UOSH Consultant

The Consultant went over the Opening Conference Checklist in order to ascertain the nature and extent of the facilities operations. All pertinent consultation program disclosures were discussed with the employer as required by Code of Federal Regulation 1908.5(a)(3), see obligations and rights noted below.

## EMPLOYER OBLIGATIONS AND RIGHTS:

All consultation program disclosures to the employer as required by 29 CFR 1908.5(a)(3).  The following topics were discussed:
- Programmed inspections completed by OSHA Compliance
- Termination of a Consultation visit in progress

EMPLOYER RESPONSIBILITIES
- Correcting imminent danger situations immediately
- Correcting Serious hazards by the agreed upon dates
- Posting the list of hazards

EMPLOYER RIGHTS
- Establishment of correction schedules
- Option to inform Compliance of a Consultation Visit
- Discussions without Employee representation

## DESCRIPTION OF ACTIVITY:

The Sky Lodge is a full service hotel that includes the following:

- **Special Features:** Members Lounge, Rooftop Jacuzzi, Spa, Full Kitchens

- **Amenities:** Restaurant, Lounge, Lap Pool, Bar, Bakery, Spa

Typical Operations including, but not limited to the following:

- Kitchen,
- Restaurant: Servers, Chefs
- Bakery: Bakers
- Pool Chlorination and Maintenance,
- Hot Water Heaters (no Boilers),
- House Keeping,
- Engineering Operations,
- Snow removal (winter): (Beyond scope of visit)
- Valet parking (Beyond Scope of Visit)

## WALKTHROUGH SURVEY:

The Following participated in the Walk-through during the onsite Limited Safety and Health Survey Walkthrough:

- Ms. Marina Soto, Director of Human Resources
- Bob Schick, Engineering Director
- Clark T. Clements, UOSH Consultant

The following areas were included in the Onsite Consultation Survey:

- Human Resources Office
- Restaurant: Kitchen, Bakery, Grill, Dishwashing area
- Walk-in Freezer
- Hotel Room
- Laundry Facility: Washers, Dryers, Press (out of service) hand ironing day of survey
- Electrical Room
- Mechanical Room
- Storage
- Engineering: Pool Maintenance, Water System, Water Heaters

## REVIEW OF WALKTHROUGH:

**Kudos for the following Good Practices:**

- **"K" type Fire Extinguishers were provided in the Grill Area since a deep fryer is used.**

- **The outlets located near sinks or in wet and damp locations are GFCI either at the outlet or back at the Electrical Panel.  The GFCIs in the Office and the Kitchen Area were tested at the time of the visit for operability.**

- **It was noted that the employer was in compliance with respect to the ADA with respect to the elevator signs and utility room signs, which had were provided with brail signs.**

- **The Human Resources Director is bilingual and therefore has the skills to provide the "English as second language speakers" with new employee orientation, as well as safety training.**

- **The employer provided anti slip rubber mats that serve to prevent slips and falls, provide cushioning for the feet, as well as help prevent varicosities that are associated with standing on hard surfaces.**

**\*\*\*In relation to this, the employer is encouraged to instruct employees about ergonomics as well as the hazards associated with static postures and not moving the large leg muscles in order to prevent blood pooling and to promote venous return to the heart. The muscles of the lower extremity (Legs) are instrumental with respect to the efficiency of the "Muscle Pump" system, which causes blood to flow through the venous one way valves back to the heart > lungs > heart > out to the body organs and tissues. Blood pooling occurs when employees stand or sit in one position for an extended period of time, which is a leading cause of varicosities in the feet and legs.  <u>The Bottom line is to encourage employees to take breaks and move around to get their circulation going.</u>**

**Some of the areas where this hazard exist or is pronounced are: Cashiers, Accountants, Human Resources, Reservations, and other employees who spend much of their time in one place, especially behind a Computer Terminal.**

**The following salient Serious Hazards were identified during Walk-through and during record review:**

| 1910.23(a)(9) | Drain grate not secure and uneven with floor surface-trip and fall hazard. |
| --- | --- |
| 1910.37(b)(2) | Exit sign not posted next to office stairs and over Bakery Shop Doors. |
| 1910.37(b)(5) | The linen closet which could be confused as an exit had not signage. |
| 1910.151(c) | No eyewash provided in Swimming Pool Water Treatment - Chlorine Room |
| 1910.157(c)(1) | Extinguishers Not Mounted or Location Marked for ready access. |
| 1910.157(e)(2) | No Monthly Inspection Of Extinguishers Performed |
| 1910.212(a)(1) | Employees not protected from mixing blades in Hobart Mixer (Bakery). |
| 1910.1200(h)(1) | Not all employees trained on HAZCOM |

**Please refer to Attachment A: Report of Hazards Identified by Consultation, which describes in detail the OSHA requirement and associated hazard.**

**Attachment E: LIST OF HAZARDS: This provides a short descriptor of the Hazard, the OSHA Standard, and the Due Date on which the respective hazards must be corrected, or an extension requested.**

The **List of Hazards** must be posted in an area where employees frequent so that they have the opportunity to observe what the employer is doing to provide a safe and healthful work environment.

## Informal Training Provided:

**Employee:**

- Machine Guarding was discussed with employees, especially as pertains to the Hobart Mixer.

- The importance of using GFCI protection in wet environments was addressed, as well as checking to make sure the GFCIs installed at various locations are inspected to ensure continued operability.  The employees were apprized that GFCIs do not necessarily prevent shock, but they are designed to prevent electrocution.

**Employer:**

The Consultant provided informal training to Ms. Soto with respect to the requirements of the OSHA HAZCOM Standard.  The Consultant also explained the OSHA 300 Log requirements to her, and showed her how to fill out the logs.  Please note that at the end of this report there is an attachment which list the bilingual resources provided to the employer for employee training in English and Spanish.

## CLOSING CONFERENCE:

The Closing conference was conducted by telephone on October 8, 2008.  The following individuals participated:

- Ms. Marina Soto, Human Resources Director
- Clark T. Clements, UOSU Consultant

During the closing, the identified hazards were reviewed. All other closing conference topics such as classification of hazards, correction dates, posting the List of Hazards and extensions were discussed.  The due dates were set for November 20, 2008, since the Serious Safety Hazard associated with the Guarding of the Mixer, which is involved in day to day operations, had been corrected immediately during the Survey Walk-through by taking it out of service. The employer unplugged the mixer and tagged it out.  The Baker was apprized not to use it until such time that a guard had been installed.

The employer indicated that they had to leave town until October 22, 2008, and that November 20, 2008, would be a reasonable due date, with the exception of the employee HAZCOM training, which is December 10, 2008.  Since the employer has provided interim protection of employees, this will allow the employer the time to complete all the hazard corrections and send in the documentation once -- without compromising employee safety and health, and eliminates the necessity for the employer to submit request for extensions.  **(Please note that this does not preclude the employer from sending in hazard correction documentation via e-mail as soon as the hazards are corrected).**

Recommendations:

- **The employer put both the Emergency Eyewash and Fire Extinguishers on the same inspection frequency – 30 days.**

- **Even though the Walk-in Freezer in the Kitchen is equipped so that it can be opened from the inside, if this should fail, employees could be trained on how they can easily remove the locking mechanism in order to escape.  (This was discussed during the walk-through)**

- **According to employees, the covering on the stairs in the Grill Area did not present a walking surface problem, but it is recommended that the bubbles in the anti-slip covering be addressed.**

- **Members of management that are responsible for implementing the Company Safety and Health Program would greatly benefit from taking the OSHA 10 Hr. General Industry Course, which would assist them in understanding the OSHA requirements, i.e., the regulatory underpinnings of their written Safety and Health Program. This is of import due to the fact that this is a new company, and management often has dual roles they have been assigned such as implementation of the Safety and Health Program in addition to their other duties as assigned.**

# Attachment A
# Report of Hazards Identified by Consultation with the Employers Report of Action Taken

Note:  If an extension is required on any item, note "Extension Requested" in the employer section.  See Appendix D for extension letter requirements.  The extension letter must be received by your consultant a minimum of three (3) working days prior to the Correction Due Date.

| ITEM | 001 | STANDARD: | 29 CFR 1910.23(a)(9) |
|---|---|---|---|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  November 20, 2008 |
| **DESCRIPTION:  Drain cover was not secure and was not flush with floor behind counter/display case in Bakery Shop.** | | | |

**Condition:**

The cover over a floor hole (grating) into which a person could not accidentally walk was missing, left openings greater than one inch wide through tools or materials could fall, or was no securely held in place.

Potential Effects:

Sprains, strains, contusions and fractures, from tripping on the grating lip, damaged grating or floor hole.

**Standard:**       29 CFR 1910.23(a)(9)

**Recommended Action:**

Repair, replace, or secure the grating so as to make it flush with the floor in order to prevent personnel from being exposed to a surface irregularity, which could cause them to trip and fall.

**Interim Protection:**

**Apprize employees about the hazard.**

### THIS SECTION TO BE COMPLETED BY THE EMPLOYER

**Date Hazard Corrected:**

**Describe Corrective Action Taken:**

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

| ITEM | 002 | STANDARD: | 29 CFR 1910.37(b)(2) |
|------|-----|-----------|----------------------|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  November 20, 2008 |
| DESCRIPTION: Exit sign not posted next to office stairs, over Bakery Shop Doors, or over the Bar Service Station Door. | | | |

**Condition:**

An exit or access to an exit was not marked by a readily visible sign.

**Potential Effects:**

Burns, smoke-related injuries and other injuries, from delayed egress during fire or other emergency.

**Standard:**        29 CFR 1910.37(b)(2)

**Recommended Action:**

Install a sign marked "EXIT" over the doorway so that employees in the area can see the way to the exit readily in an emergency.

The sign wording should be in plainly legible letters no less than six inches high with the principal stokes of the letters not less than ¾ inches.

OSHA does not specify the height of the exit signs.  Usually they are placed over the exit door or near the ceiling.  Some argue, with reason, that since smoke rises, exit signs a foot or so above floor level would be visible for much longer during a fire.  If smoky fires seem reasonable predictable, you may opt for a secondary exit marking system, analogous to the colored lights on the floor of a commercial airplane.

**Interim Protection of |employees:**

**Apprize employees about the associated hazard and post a temporary exit sign until a permanent signs can be installed.**

## THIS SECTION TO BE COMPLETED BY THE EMPLOYER

**Date Hazard Corrected:**

**Describe Corrective Action Taken:**

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

| ITEM | 003 | STANDARD: | 29 CFR 1910.37(b)(5) |
|---|---|---|---|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  November 20, 2008 |
| **DESCRIPTION:**  The Linen closet which could be confused as an exit was not posted with signage indicating "No Exit" or otherwise indicating its function and purpose. | | | |

**Condition:**

An exit was not clearly visible nor the route to the exit clearly marked, or the path of escape to safety outside was not arranged or marked so as to be obvious that the linen closet was not an exit.

**Potential Effects:**

Abrasions, contusions, fractures, burns and smoke-related injuries, from delay in escape from fire or other emergency.

**Standard:**        29 CFR 1910.37(b)(5)

**Recommended Action:**

Each exit route must be identified whenever the exit itself is not clearly visible, so that emergencies are not aggravated by confusion over how to escape.  For the same reason, any door or passageway that is not an exit or part of an escape route, but that might be mistaken for one, must be identified with a warning (e.g., "NOT AN EXIT") and a description of its character (e.g., "TO STOREROOM").

**Interim Protection:**

Apprize employees about the hazard and post a temporary sign either with a descriptor (Linen Closet or Storage) or stating "Not and Exit" until a permanent sign can be posted.

**THIS SECTION TO BE COMPLETED BY THE EMPLOYER**

**Date Hazard Corrected:**

**Describe Corrective Action Taken:**

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

| ITEM | 004 | STANDARD: | 29 CFR 1910.151(c) |
|------|-----|-----------|---------------------|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  November 20, 2008 |
| DESCRIPTION:  No Emergency Eyewash provided in Pool water treatment area where  corrosives  are used. | | | |

## Condition:

Where employees were exposed to injurious corrosive materials, suitable facilities for quick drenching or flushing of the eyes and body were not provided within the work area for immediate emergency use.

**Potential Effects:**  Aggravated eye and skin injuries, from prolonged exposure of eyes and/or body to corrosive materials.

### Standard: 29 CFR 1910.151(c)

**Recommended Action:**  Provide a combination eye was and shower.  Both facilities should have adequate liquid for at least 15 minutes of drenching or flushing.  Plumbed units should be operated weekly to flush the lines and to verify proper operation; self-contained units should be inspected according to the manufacturer's instructions.  While nozzles must be protected from airborne contaminants, such protection must not impede the operator.

Climate should be considered before installing a station outside.  Even if inside, it is recommended that a blanket be provided, as the injured employee's clothing will be wet at best.

Eyewash stations should always be near the hazardous work areas, so that travel to the takes no more that ten seconds.  The station should be clearly marked, bright colored, well-lighted and free of obstructions.

Personal eyewash equipment supports plumbed and self-contained units but does not replace them.  Such a unit may be kept in an area to supply immediate flushing.  With this accomplished, the injured individual may then proceed to a permanent facility for the required 15-minute period.

**Hand-held drench hoses are not to be considered as primary eyewash units because an injured worker would have difficulty in washing both eyes and keeping them open while using one hand to operate the hose.**

**Employees who might be exposed to chemical splashes should be instructed in the proper use of emergency eyewash units.  It is necessary to hold the eyelids open and roll the eyeballs so water will flow on all surfaces and the surrounding inner folds, and to flush 15 full minutes.**

**In 4.2 of ANSI Z358.1-1990 for Emergency Eyewash and Shower Equipment it says Performance of Control Valve.  The valve shall be designed so that the water flow remains on without requiring the use of the operator's hands.  The valve shall be designed to remain activated until intentionally shut off.  The valve shall be simple to operate and shall go from "off" to "on" in 1 second or less. The valve shall be resistant to corrosion from potable water.**

**4.2 Performance of Valve Actuator. Manual or automatic actuators shall be easy to locate and readily accessible to the user.**

**4.4 Shower Enclosures. Enclosures, if used shall provide for a minimum unobstructed area of 86.4 cm (34 inches) in diameter.**

**Interim Protection:**  The employer has provided emergency eyewash solution and chemical goggles for employee protection.

<u>THIS SECTION TO BE COMPLETED BY THE EMPLOYER</u>

**Date Hazard Corrected:**

**Describe Corrective Action Taken:**

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

| ITEM | 005 | STANDARD: | 29 CFR 1910.157(c)(1) |
|---|---|---|---|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  November 20, 2008 |

**DESCRIPTION:  The employer had not marked or mounted the fire extinguishers in the Restaurant Grill area in such a way as to make their location easy to identify and to facilitate the extinguishers being readily assessed during a fire.**

**Condition:**

Portable fire extinguisher was not mounted, located and identified so that they were readily available to employees without subjecting the employees to possible injury.

**Potential Effects:**

Burns and smoke-related injuries, from uncontrolled fire, especially if an employee needed to locate the extinguisher post haste in order to secure a means of escape.

**Standard: 29 CFR 1910.157(c)(1)**

**Recommended Action:**

Mark the location of the fire extinguishers in the Grill area so that they can be readily identified in case of as fire.

Do not allow materials or equipment to be stored around or in front of extinguishers in any way that would prevent immediate use in an emergency.  Marking the floor area around each extinguisher with a notation such as "KEEP THIS AREA CLEAR" may help in this effort.

**Please note: Extinguishers are effective only when fires are in the early or "insipient" stages.**


## THIS SECTION TO BE COMPLETED BY THE EMPLOYER


**Date Hazard Corrected:**


**Describe Corrective Action Taken:**


**Describe Actions Taken/Programs implemented to Prevent Recurrence:**


## (Continued Next Page)

| ITEM | 006 | STANDARD: | 29 CFR 1910.157(e)(2) |
|---|---|---|---|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  November 20, 2008 |
| DESCRIPTION:  The employer had not inspected the fire extinguishers monthly as required in the Grill Area. | | | |

**Condition:**

Portable fire extinguishers or hose used in lieu thereof were not visually inspected monthly.   The fire extinguishers in the shop were not being inspected on a monthly based as required by the OSHA Standard.

**Potential Effects:**

Burns and smoke-related injuries could result from reliance on defective fire extinguishing equipment.

**Standard:**      29 CFR 1910.157(e)(2)

**Recommended Action:**

Develop an inspection and maintenance program as indicated on the label of the fire extinguishers. Please note that OSHA requires monthly inspection, which could be accomplished when the emergency Eyewash is inspected and tested, as well as GFCIs.  It is important to ensure that all extinguishers are visually inspected monthly as well in order to endure that the charge needle is "In the Green".

**Interim Protection:**

**Immediately inspect all fire extinguishers in order to ensure that they are charged, i.e., the needle is in the green.**

## THIS SECTION TO BE COMPLETED BY THE EMPLOYER

**Date Hazard Corrected:**

**Describe Corrective Action Taken:**

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

| ITEM | 007 | STANDARD: | 29 CFR 1910.212(a)(1) |
|------|-----|-----------|----------------------|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  09-18-2008 |

**DESCRIPTION:  There was no guard on the Hobart Mixer to protect employees from injury.
Abated: Taken out of service until guard is installed – Consultant verified while on site.**

**Condition:**

A machine or machine area was not guarded so as to protect the operator (Baker) from the mixing blades. The mixer barrel had insufficient guarding to protect the operator while adding ingredients to the mixer. The operator(s) hands and fingers are in close proximity to the danger zone caused by sharp rotating mixer blades whenever are emptied into the mixer.

**Potential Effects:**

Cuts, abrasions, and possible amputation, from contact with exposed rotating parts.

**Standard:**      29 CFR 1910.212(a)(1)

**Recommended Action:**

**The employer Immediately took the mixer out if service (unplug) and tagged it  out in order protect workers and correct the hazard.**

**Interim Protection:**

**Instruct employees about the hazard and keep mixer out of service until such time that the mixer has a guard installed.**


**THIS SECTION TO BE COMPLETED BY THE EMPLOYER**


**Date Hazard Corrected:**

 **09-18-2008**


**Describe Corrective Action Taken:**

Mixer taken out of service and tagged out.

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

**The employer indicated that they will conduct safety audits and that employees will be trained about the importance of machine guarding.**

| ITEM | 008 | STANDARD: | 29 CFR 1910.1200(h)(1) |
|------|-----|-----------|------------------------|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date:  December 10, 2008 |
| DESCRIPTION:  Not all employees trained on HAZCOM. | | | |

**Condition:**

Employees were not provided information as specified in 29 CFR 1910.1200(h)(1)(i) through (iii) on hazardous chemicals in their work are at the time of their initial assignment or when a new hazard was introduced into their work area.   The employer is in process of implementing their Safety and Health Program, and since this is a new company, the HAZCOM training is being planned and Coordinated by the Human Resources Director.

**Potential Effects:**

Employees may be exposed unknowingly to a toxic material or use a physically hazardous material in an unsafe manner due to lack of information about the type of chemical or its hazards.  First aid in case of accidental exposure may be incorrect or delayed due to lack of information about first aid procedures.  Emergencies may be prolonged or aggravated, or may become disasters, from lack of information about emergency procedures.

**Standard:**          29CFR 1910.1200(h)(1)

**Recommended Action:**

Your written hazard communication program must describe, among other items, a training program for employees, presented at the time of initial assignment and updated whenever a new hazard is introduced to the work area, on the requirements of the hazard communications standard, the hazards in the work area, the ways of detecting or monitoring those hazards, the ways of protecting themselves from those hazards, and the details of your hazard communication program, including where to view and how to obtain copies of the documentation.  Training must include not lonely the hazards encountered during normal operations, but those encountered during non-routine tasks, such as maintenance, and foreseeable emergencies, such as leaks or spills.

The purpose of this regulation is to provide information to employees before they are exposed to a chemical hazard. This purpose is defeated if training delayed until a later date.

Note that additional training is required when a new hazard is introduced, not when a new chemical is introduced.  If one solvent is replaced by a less hazardous one, and the replacement has hazards that differ only in degree from the original, no new training is required.

Training must be conducted in a manner understandable to the employee.  Those who cannot read and understand English must be instructed in a manner that they can fully understand.

**Interim Protection:**

**Employees be provided with training about the chemicals they use in terms of the hazard(s) and how to protect themselves, including, but not limited to, signs and symptoms of exposure, and how to protect themselves.**

<u>THIS SECTION TO BE COMPLETED BY THE EMPLOYER</u>

**Date Hazard Corrected:**

**Describe Corrective Action Taken:**

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

## Attachment B

# Sample

## Report of Hazards Identified by Consultation with the Employers Report of Action Taken

| ITEM | 001 | STANDARD: | 29 CFR 1910.22(a)(1) |
|---|---|---|---|
| INSTANCE | A | CORRECTION DUE DATE: | Due Date: 10-09-2008 |
| DESCRIPTION: The shop floor was cluttered with several items such as 2 X 4s and electrical wires that crossed the aisleways | | | |
| Abated: | | | |

**Condition:** All places of employment, passageways, storerooms, and service rooms shall be kept clean and orderly and in a sanitary condition.

**(a) Housekeeping was not maintained throughout the shop area. There were tripping hazards in the aisleways, material stored on the floors and across the aisleways.**

**Potential Effects:** Sprains, strains, contusions and fractures from falls; illness from bacteria or fungi.

**Standard: 29 CFR 1910.22(a)(1)**

**Recommended Action:** Minimize slips, trips and falls in the shop by maintaining work areas in good condition. Provide for the orderly placement of equipment, tools and spare parts by supplying the employees with holding bins and shelving. Enforce good housekeeping practices throughout the shop, as good housekeeping contributes to a safe and more efficient operation.

**Interim Protection: Immediately clear all passageways and aisleways leading to the emergency egress doors and maintain these areas in a clean condition at all times. Inspect these areas frequently for any obstructions.**

### THIS SECTION TO BE COMPLETED BY THE EMPLOYER

**Date Hazard Corrected: {This date must be on or before the Correction Due Date noted above}**

**Describe Corrective Action Taken:**

All aisleways have been cleared of material. The shop area has been cleaned of all tripping hazards.

**Describe Actions Taken/Programs implemented to Prevent Recurrence:**

The company has instituted an inspection program where employees frequently clean their work areas and inspect all passageways for cleanliness.

## Attachment C

# NOTICE OF OBLIGATION

Consultation Services is required to notify the Occupational Safety and Health Administration (OSHA) if serious hazards are not corrected within the agreed-upon time frame.  Extensions may be granted if you encounter difficulties completing corrections within the agreed upon time frame.  **REQUESTS FOR EXTENSIONS MUST BE IN WRITING, INCLUDE ANY INTERIM PROTECTION TAKEN, AND SUBMITTED TO THE CONSULTANT A MINIMUM OF THREE (3) WORKING DAYS PRIOR TO THE CORRECTION DUE DATE.   NOTIFY YOUR CONSULTANT OF THE NEED OF AN EXTENSION AS SOON AS POSSIBLE.**  Any extensions to the correction due date (oral or written) must be documented in the form of a letter, on company letterhead and signed by a company official. The documentation must include an explanation of why the correction was not completed in the established time frame and what type of safeguarding the employer has taken to protect employees against the hazard with interim protection during the correction period.

THE EMPLOYER IS RESPONSIBLE TO CORRECT ALL HAZARDS IN THE WORKPLACE.  Moreover, your company would be subject to citation in the event of an OSHA inspection.  Please mail or fax the Report of Hazards Identified by Consultation with the Employers Report of Action Taken, completed to show correction methods and dates, on or before the scheduled correction date.

**In the event of an OSHA inspection, it is important to remember that the Compliance Officer is not legally bound by the Consultant's advice.  You may, but are not required to, furnish a copy of this report to the Compliance Officer, who may use it to determine your good faith efforts toward safety and health and reduce any proposed penalties.  You are, however, required to furnish any employee exposure data from this report as required by 29 CFR 1910.1020**

**For a comprehensive listing of all employer rights and responsibilities please reference the tri-fold pamphlet that you received from the consultant, in the opening conference.  The same information is included as Exhibit H.**

## SAFETY AND HEALTH HAZARD CATEGORIES:
Each hazard found during the survey of your workplace is categorized, described and recommendations are given for correction in the Report of Hazards Found. Hazards are listed in order of item number and not necessarily in the order of importance.  Hazards could be classified in any of the following categories:

## IMMINENT DANGER:
Hazards that can reasonably be expected to cause death or serious physical harm within a short time. Any such hazards would have to be corrected immediately, and no correction dates or space for correction method would appear in the Report of Hazards Found.

## SERIOUS HAZARDS:
A serious hazard can cause an accident or health hazard exposure resulting in death or serious physical harm.  Each such hazard has been assigned a mutually agreed upon date by which correction is to be completed. .   These hazards need to be corrected and the abatement noted on the Report of Hazards Identified by Consultation with the Employers Report of Action Taken.