Douglas J. Payne (A4113)
Robert G. Crockett (A12067)
FABIAN & CLENDENIN,
  A Professional Corporation
215 South State, Suite 1200
Salt Lake City, Utah 84111-2323
dpayne@fabianlaw.com
rcrockett@fabianlaw.com
Telephone: (801) 531-8900
Fax: (801) 596-2814

*Attorneys for Gateway Center, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In Re:<br><br>EASY STREET HOLDING, LLC, *et al.*<br><br>Debtors. | Bankruptcy Case No. 09-29905<br>Jointly Administered with Cases 09-29907 and 09-29908<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier<br><br>**GATEWAY CENTER, LLC'S OBJECTION TO CORBIN B. GORDON P.C.'S: (A) FIFTH FEE REQUEST; and (B) SECOND INTERIM FEE APPLICATION** |

Gateway Center, LLC ("**Gateway**"), through its attorneys Fabian & Clendenin, pursuant to the *Order Approving Motion and Establishing Monthly Fee and Expense Reimbursement Procedures* dated December 15, 2009 [Dkt. 271], objects to: (a) *Corbin B. Gordon's Fifth Professional Fee Request for the Period from April 1, 2010 to April 30, 2010* ("**Fifth Gordon Fee Request**") [Dkt. 487]; and (b) the *Second Application of Corbin B. Gordon, P.C. for Interim Compensation and Reimbursement Pursuant to 11 U.S.C. §§ 330 and 331 As Special Counsel for*

*the Debtor in Possession Powers for the Period January 1, 2010 through April 30, 2010*

("**Second Gordon Interim Application**") [Dkt. 488]; and states as follows:

1. Gateway incorporates by reference the argument and other matters set forth in *Gateway Center, LLC's Objection to Corbin B. Gordon P.C.'s Fourth Fee Application* [Dkt. 450].

2. Cloud Nine Resorts, LLC ("**Cloud Nine**"), an affiliate and insider of Debtor Easy Street Partners, LLC ("**Partners**"), entered into a Lease of real property with Gateway in August 2007.

3. In January 2009, Partners assumed the obligations of Cloud Nine under the Lease. Cloud Nine, however, was not released from liability under the Lease and remained obligated to Gateway.

4. Cloud Nine is controlled by Partners' principal and managing member, William Shoaf ("**Shoaf**"), who personally guaranteed the Lease.

5. Cloud Nine has an ownership interest in the debtors that is reflected in the Schedules and Statements of Financial Affairs filed of record in the above-captioned jointly administered bankruptcy cases reflect that Cloud Nine is both a creditor and an affiliate of the debtors:

    (a) Cloud Nine owns a 38.75 % membership interest in debtor Easy Street Holding, LLC. Statement of Financial Affairs ("**SOFA**"), ¶ 21 [Dkt. 96 in Bankr. No. 09-29905])

    (b) Debtor Easy Street Holding, LLC owns 100% of debtor Easy Street Mezzanine, LLC. (SOFA, ¶ 21 [Dkt. 16 in Bankr. No. 09-29908]).

 (c) Easy Street Mezzanine turn owns 100% of Partners. (SOFA, ¶ 21 [Dkt. 16 in Bankr. No. 09-29907]).

6. No later than April 2009, applicant Corbin B. Gordon, P.C. ("**Gordon**"), began representing Cloud Nine in connection with disputes concerning the Lease. See letter from Gordon to Diane H. Banks dated April 13, 2009 and letter from Gordon to Utah Labor Commission, Occupational & Health Division dated May 7, 2009, both of which expressly state "I represent Cloud Nine, L.L.C. . . ." Copies of the letters are attached hereto as **Exhibits "A"** & **"B,"** respectively.

7. The *Second Supplemental Declaration and Disclosure by Corbin B. Gordon, P.C. Pursuant to Fed. R. Bankr. P. 2014(a)* [Dkt. 495] ("**Second Gordon Disclosure**") acknowledges that Gordon was representing Cloud Nine in connection with the Lease prior to being approached by Partners to act as special counsel. Second Gordon Disclosure, ¶¶ 3 & 5.

8. Gordon's initial application for employment and disclosure failed to disclose that he represented Cloud Nine in connection with the Lease.

9. In the Second Gordon Disclosure, Gordon states that he was unaware of Cloud Nine's ownership interest in the Debtors until after Gateway commenced a state court lawsuit against Cloud Nine and Shoaf on the Lease and a personal guaranty in March 2010.

10. As noted above, Cloud Nine's ownership interest in the Debtors was a matter of public record in the Statements of Financial Affairs filed by the Debtors in these jointly-administered bankruptcy cases.

11. The interests of the bankruptcy estates and Cloud Nine were not, as Gordon asserts in the Second Gordon Disclosure, identical.

12. Engaging Gordon as special counsel for the Debtors was adverse to the interests of the bankruptcy estates because up until that point, it was Cloud Nine who had engaged counsel and was obligated to pay Gordon's legal fees in connection with the Lease with Gateway.

13. Getting Gordon employed as special counsel for the Debtors was beneficial to insider Cloud Nine because instead of Cloud Nine continuing to be responsible to pay Gordon's legal fees, that financial obligation would now be shifted to the consolidated bankruptcy estates.

14. Although Partners as a debtor-in-possession had available to it the right to reject Lease under 11 U.S.C. § 365(a) and reduce its liability, rejection would not affect the liability of Cloud Nine (and Shoaf) to Gateway under the Lease and guarantee.

15. The fact that Gordon has obtained a purported waiver of the conflict of interest from Partners (*see* Exhibit A to the Second Gordon Disclosure) does not make Gordon disinterested. Partners is a debtor-in-possession. As such, Partners is a fiduciary for the bankruptcy estate and cannot waive conflicts on behalf of the estate. *See, e.g., In re Envirodyne Industries, Inc.,* 150 B.R. 1008, 1016, 1018 (Bankr. N.D. Ill. 1993).

16. Gordon's undisclosed representation of Cloud Nine with respect to the Lease with Gateway constitutes the representation of an interest adverse to the estate with respect to which Gordon has been employed within the meaning of 11 U.S.C. § 327(e).

WHEREFORE, Gateway prays for entry of an Order:

A. Denying the Fifth Gordon Fee Request in its entirety on the grounds that Gordon is not disinterested on a matter on which he has been representing the estate;

B.   Denying the Second Gordon Interim Application in its entirety on the grounds that Gordon is not disinterested on a matter on which he has been representing the estate; and

C.   For such other and further relief as the Court deems just and equitable.

DATED this 24th day of May, 2010.

      /s/ Douglas J. Payne
      Douglas J. Payne
      Robert G. Crockett
      **FABIAN & CLENDENIN**
      A Professional Corporation
      *Attorneys for Gateway Center, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served on this 24th day of May, 2010, via ECF Notification, on the following:

| | |
|---|---|
| Troy J. Aramburu | taramburu@joneswaldo.com, rhuot@joneswaldo.com |
| Michael V. Blumenthal | mblumenthal@crowell.com |
| Kenneth L. Cannon II | kcannon@djplaw.com |
| Scott A. Cummings | cummings.scott@dorsey.com |
| Steven B. Eichel | seichel@crowell.com |
| George B. Hofmann | gbh@pkhlawyers.com, dh@pkhlawyers.com |
| Mary Margaret Hunt | hunt.peggy@dorsey.com, brown.patricia@dorsey.com, smith.ron@dorsey.com, slc.lit@dorsey.com |
| Annette W. Jarvis | jarvis.annette@dorsey.com, smith.ron@dorsey.com, slc.lit@dorsey.com, brown.patricia@dorsey.com |
| Lon A. Jenkins | lajenkins@joneswaldo.com, krichardson@joneswaldo.com, ecf@joneswaldo.com, rhuot@joneswaldo.com |
| Michael R. Johnson | mjohnson@rqn.com, agale@rqn.com |
| Anthony C. Kaye | kaye@ballardspahr.com, swand@ballardspahr.com |
| Benjamin J. Kotter | kotter.benjamin@dorsey.com, smith.ron@dorsey.com, brown.patricia@dorsey.com, slc.lit@dorsey.com |
| Adelaide Maudsley | maudsley@chapman.com, jemery@chapman.com |
| Steven J. McCardell | smccardell@djplaw.com |
| John T. Morgan tr | john.t.morgan@usdoj.gov, james.gee@usdoj.gov |
| David W. Overholt | doverholt@rsolaw.com, abachman@rsolaw.com |
| Knute Rife | karife@rifelegal.com |
| Jeffrey L. Shields | jlshields@cnmlaw.com, njpotter@cnmlaw.com |
| Jeffrey Weston Shields | jshields@joneswaldo.com, rhuot@joneswaldo.com |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |
| Kim R. Wilson | bankruptcy_krw@scmlaw.com |

I further certify that a true and accurate copy of the foregoing was served on this 24th day of May, 2010, via first-class mail on the following:

Corbin B. Gordon
Corbin B. Gordon, P.C.
345 West 600 South, Suite 108
Heber City, UT 84032-2247

Joseph E. Wrona
Wrona Law Firm, P.C.
1745 Sidewinder Drive
Park City, UT  84060

Easy Street Partners, LLC
4780 Winchester Court
Park City, UT  84098

/s/ Douglas J. Payne

ND: 4851-3131-1878, v. 1

**EXHIBIT A**

## CORBIN B. GORDON, P.C.
ATTORNEY AT LAW
345 WEST 600 SOUTH, SUITE 108
HEBER CITY, UTAH 84032
PHONE (435) 657-0984 • FAX (888) 822-8796
CORBINGORDON@YAHOO.COM

April 13, 2009

Gateway Center, L.L.C.
c/o Vectra Management Group
424 West 33rd Street, Suite 540
New York, New York 10001
Attention: W. James Tozer, Jr.

Ms. Diane H. Banks
Fabian & Clendenin
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah 84151

*Re: Request for remediation of building code violation*

Dear James:

I represent Cloud Nine Resorts, L.L.C., a tenant in your building at the Gateway Center. As you know, there is a concern that my client's leased space violates the safety code for a common path of egress, which requires a person to be able to choose two divergent paths within 100 feet.

Your architect Arrin Holt has indicated that there is no violation of the code, and referred my client to Phillip Hahn, Senior Staff Architect at the International Code Council. My client sent the drawing attached as Exhibit A to Mr. Hahn and received the e-mail attached as Exhibit B, indicating that it is his opinion there is a violation because the egress exceeds the 100 foot standard by 3 feet. As my client has stated in previous correspondence, at the 100 foot mark neither exit is viewable.

Based on Mr. Hahn's opinion my client has withdrawn from the space and will not occupy it until the building code violation is resolved. My client is simply unwilling to assume the liability of this known risk.

This letter is formal notice of my client's withdrawal from the space and its intent, starting fifteen days from the date of this notice to stop the payment of rent until the safety issue is resolved. If rent is withheld it will be in accordance with *Richard Barton Enterprises, Inc. v. Tsern*, 928 P.2d 368 (Utah 1996), wherein the court held that it is a breach of the covenant of quiet enjoyment (included in the lease at paragraph 22) where

Vectra Management Group
April 13, 2009
Page 2 of 3

---

the complained of breach has a significant effect on the rental value of the premises. In the present case, the complained of violation creates a hazard that makes the space unoccupiable, thus making the space valueless.

My client does not want to be forced into this position. As such, there are three ways to resolve this issue and to provide the assurance my client needs to once again occupy the premises:

1) <u>City Inspectors</u>. The City inspectors have opined that the space is compliant even though OHSA is indicating it is not. If the City is willing to sign a formal letter certifying the space as compliant and indemnifying my client from liability the issue will be resolved.

2) <u>Fix the problem</u>. The space could become compliant by running a hallway through the office highlighted in Exhibit C. My client would expect rent abatement during any construction time, and reduction of the rental rate for the office space that will become a hallway.

3) <u>Landlord applies to OHSA for a variance from the applicable standard under Utah Code Ann. § 34A-6-202</u>. OHSA has regulatory board that allows for variances from the applicable building code standards. If a variance is formally granted my client will be satisfied and once again occupy the space. Rent abatement would apply during the administrative proceeding.

If no action is taken within the next fifteen days to remedy the situation, my client will contact the enforcement arm of UOSH with a formal complaint and request for investigation.

My client would like to avoid this approach as the involvement of UOSH removes the final capacity to resolve this dispute from both the landlord and tenant's hands. However, my client is unwilling to occupy a space that your own cited expert is indicating is non-compliant, and will not pay rent on space that is unsafe to occupy.

My client is open to any other suggestions that may resolve this problem, including the offer of different office space in the same building. Please let me know how you intend to proceed.

Sincerely,

*[signature]*

Corbin B. Gordon

Vectra Management Group
April 13, 2009
Page 3 of 3

---

Cc: Paul Piper
    Portfolio Manager – Asset Services
    Commerce CRG – Park City office
    614 Main Street, Suite 200
    Park City, UT 84068

**EXHIBIT B**

**CORBIN B. GORDON, P.C.**
ATTORNEY AT LAW
345 WEST 600 SOUTH, SUITE 108
HEBER CITY, UTAH 84032
PHONE (435) 657-0984 • FAX (888) 822-8796
CORBINGORDON@YAHOO.COM

May 7, 2009

Labor Commission
Utah Occupational & Health Division
160 East 300 South
P.O. Box 146650
Salt Lake City, UT 84114-6650

Re: Request for Formal Investigation of Potential Building Code Violation

To Whom It May Concern:

I represent Cloud Nine Resorts, L.L.C. In November of the past year, a member of the UOSH consultation department came to my client's leased space in Park City and conducted an inspection. During that inspection he raised concern over the egress from my client's space, and opined that it may be non-compliant because the exits are more than 100 feet away from the farthest interior reaches of my client's space.

A drawing, attached as Exhibit A, outlines the concern. Measurements show that 100 feet from the furthest recesses of my client's space places a person in a hallway where neither exit can be seen. It is 103 feet to a point where the exits are in plain site.

After meeting with the UOSH consultant, my client contacted the Landlord and raised concern that the space was non-compliant. The landlord spoke with its architect who responded that after communicating with Phillip Hahn, Senior Staff Architect at the International Code Council, he felt there was no violation. The architect's question to Hahn was whether the 100 feet had to measure to the exit door or if it had to measure to a place where the exits were in plain site. Mr. Hahn responded the measurement is not to the door but to where a person can choose two divergent paths. *See* E-mails attached as Exhibit A.

My client, having measured the space, knew that at the 100 foot mark neither exit is viewable and two divergent paths are not available. With this concern he forwarded the drawing attached as Exhibit B to Mr. Hahn, who, once he reviewed it, indicated that the egress distance exceeded the 100 foot limit by three feet, making the space non-compliant. *See* E-mail attached as Exhibit C.

My client has withdrawn from the space, and has attempted to work with the Landlord to resolve this concern. The Landlord insists the space is compliant even though his own expert has indicated it is not. My client is unwilling to occupy space that is non-

Labor Commission
Utah Occupational & Health Division
May 7, 2009

---

compliant and requests a formal investigation of this matter to determine if the space complies with the present standards or not.

Please call my office to arrange for access to the property.

Sincerely,

Corbin B. Gordon