Annette Jarvis (1649)
Peggy Hunt (6060)
Benjamin J. Kotter (9592)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
Email:  jarvis.annette@dorsey.com
Email:  hunt.peggy@dorsey.com
Email:  kotter.benjamin@dorsey.com

Richard W. Havel  (10759)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600
Email:  rhavel@sidley.com

*Attorneys for WestLB, AG*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors. | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:  201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) DATE: | June 11, 2010 |
| 35-2183713 (Easy Street Holding, LLC), | ) TIME: | 1:30 P.M. MST |
| 20-4502979 (Easy Street Partners, LLC), and | ) PLACE: | Courtroom 369 |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | 350 South Main Street, #301 |
| | ) | Salt Lake City, Utah 84101 |

### SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

WestLB AG ("WestLB"), a secured creditor in the above-captioned bankruptcy

proceeding, by and through its undersigned counsel, hereby opposes (the "Second Opposition")

the Second Motion of Easy Street Partners, LLC to Extend the Exclusive Period for Soliciting

and Obtaining Acceptances of Its Amended Chapter 11 Plan of Reorganization [Docket No. 446]

(the "<u>Motion</u>").  WestLB incorporates by reference as if fully restated herein the Opposition of

WestLB, AG to Second Motion of Easy Street Partners, LLC to Extend the Exclusive Period for

Soliciting and Obtaining Acceptances of Its Amended Chapter 11 Plan of Reorganization

[Docket No. 469] (the "<u>First Opposition</u>"), which WestLB filed on May 10, 2010, as well as the

Declaration of Duncan Robertson [Docket No. 470] filed in support of the First Opposition.

WestLB continues to press its opposition to any further extension of exclusivity for Easy

Street Partners, LLC ("<u>Easy Street</u>" or the "<u>Debtor</u>").  Easy Street has been unable to find a Plan

Funder able or willing to satisfy the current Plan – and thus its current Plan is not feasible.

Debtor has informed WestLB that it now intends to pursue a plan materially different from the

Plan, which will push back the time for a confirmation hearing further into the summer months

due to additional needed notice, disclosure, resolicitation and litigation.  However, WestLB is

now prepared to propose and fund a competing plan, which plan is in a form and substance

substantially similar to the current Plan (the "<u>Competing Plan</u>"), a copy of which is attached

hereto as <u>Exhibit A</u>.  WestLB requests that the Court establish a new, non-exclusive timetable for

confirmation of this Competing Plan, so that creditors can also timely consider WestLB's

alternative, value-maximizing solution, in addition to any new plan the Debtor may pursue.  In

support of its Second Opposition, WestLB respectfully states as follows:

<b><u>FACTUAL BACKGROUND</u></b>

1.      On September 14, 2009 (the "<u>Petition Date</u>"), Easy Street, Holding[1] and

Mezzanine (the "<u>Debtors</u>") commenced bankruptcy cases under chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>").

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the First
Opposition.

2.      Easy Street owns and operates certain real property and improvements and related

facilities in Park City, Utah, commonly known as the "Sky Lodge Private Residence Club and

Hotel" (the "Sky Lodge").

3.      As more fully discussed in the First Opposition, WestLB has a perfected lien on

Easy Street's cash collateral.  Easy Street's consensual use of WestLB's cash collateral has been

authorized through June 30, 2010 pursuant to the Cash Collateral Stipulation, which imposed

certain burdens on Easy Street regarding the timing of confirmation and contents of the Plan.

WestLB has not waived compliance with the Cash Collateral Stipulation's requirements, and on

June 9, 2010, WestLB filed a served a Notice of Termination of Stipulation Authorizing Use of

Cash Collateral Pursuant to 11 U.S.C. § 363 and Granting Adequate Protection to WestLB, AG

[Docket No. 550].

4.      On February 25, 2010, Easy Street filed the operative plan of reorganization (the

"Plan") [Docket No. 323] and disclosure statement (the "Disclosure Statement") [Docket No.

321].  In pursuing its Plan, and throughout this case, the Debtor has relied on the emergence of

an independent investor (a "Plan Funder") to inject new money into the estate to fund Easy

Street's reorganization.  See, e.g., [Docket No. 255] at 19.  The Debtor's Plan requires the Plan

Funder to provide approximately $4,000,000 in cash for plan payments required on or around the

Effective Date, including no less than $2,000,000 to fund operations throughout the summer

months.  See [Docket No. 321] at 20.  The Debtor must file a Plan Supplement on June 10, 2010,

revealing the identity of the Plan Funder and the terms of the agreed-upon exit financing.

**Events Since WestLB's First Opposition**

5.        After WestLB filed its First Opposition, Easy Street entered into a plan funding

agreement (the "Plan Funding Agreement") with a third party investor (the "New Plan Funder"),

subject to Bankruptcy Court approval.  The New Plan Funder has since withdrawn from the Plan

Funding Agreement and WestLB understands that the Debtor has abandoned the plan

contemplated by the Plan Funding Agreement.

6.        In light of the now-likely event that the Debtor will be unable or unwilling to

obtain exit financing for its Plan as proposed and because WestLB has been informed that the

Debtor now intends to pursue a plan dramatically and materially different both in structure and

content than the Plan, including a new and materially adverse treatment to WestLB's claim,

which is unacceptable treatment to WestLB, WestLB stands ready to promptly propose and

confirm the Competing Plan.  The Competing Plan substantially tracks the Debtor's current Plan,

which has obtained the approval of the majority of the Debtor's primary constituencies (besides

WestLB), and offers the same treatment to all of these other non-insider creditors.  In fact, the

primary differences between the Plan and the Competing Plan are the voluntarily different

treatment of WestLB's claim and the treatment of certain claims held by insiders of the Debtor,

which are contractually subordinated to WestLB's claim, as described further in the Competing

Plan.  A redlined comparison of the Competing Plan against the Debtor's Plan is attached hereto

as Exhibit B.  Because these insider entities with contractually subordinated claims will not

receive any distribution under the Plan, they will be deemed to reject the Plan, and their votes on

the Competing Plan will not be solicited.  Therefore, because the only material changes to the

Plan affect WestLB (who is proposing the Competing Plan) and certain insiders, whose votes on

4

the Competing Plan will not be solicited, WestLB proposes to file a short pleading explaining the

substantive differences between the Plan and the Competing Plan, to which the Disclosure

Statement will be attached as an exhibit and incorporated by reference (collectively, the

"WestLB Disclosure Statement").  WestLB requests that the Court consider approval of the

WestLB Disclosure Statement as providing adequate information and for purposes of solicitation

at the hearing scheduled for June 25, 2010, provided WestLB files the WestLB Disclosure

Statement on or before June 16, 2010.

## ARGUMENT

7.        After repeatedly representing to the Court and creditors that the reorganization of

the Debtor must be, and would be accomplished quickly, Easy Street has now sought a third time

to extend exclusivity beyond the timeline agreed upon in the Cash Collateral Stipulation and

beyond the exclusive solicitation period provided by the Bankruptcy Code.  Easy Street seeks

this further extension despite its swiftly declining cash position, its inability to fund its current

Plan (which has now been on file for five months), and pursuit of a plan which cannot be

confirmed over WestLB's objection (and the attempted confirmation of which will waste

valuable estate resources).  "The debtor has the burden of proving that cause exists" to extend

exclusivity beyond the period provided in 11 U.S.C. § 1121.  In re Curry Corp., 148 B.R. 754,

755 (Bankr. S.D.N.Y. 1992); see, e.g., In re Gen. Bearing Corp., 136 B.R. 361, 367 (Bankr.

S.D.N.Y. 1992) ("Section 1121 was designed, and should be faithfully interpreted, to limit the

delay that makes creditors the hostages of Chapter 11 debtors.").  The Debtor has not carried its

burden here.  In light of the Debtor's inability to obtain any lasting exit financing commitment

and the inability of the Debtor to abide by its commitments in the Cash Collateral Stipulation or

to further fund operations, the most effective way to produce a feasible and confirmable plan promptly is to allow the Debtor's exclusivity period to terminate now and to allow WestLB to propose and prosecute the Competing Plan on an expedited timeline.

**The Debtor Has Had Ample Opportunity to Propose and Confirm a Plan**

8.      Easy Street has had nearly five (5) months to prosecute its Plan and nearly nine (9) months to find and come to terms with a Plan Funder for that Plan.  Despite its assurances that such a funder would be found in time to seek confirmation on March 30, 2010 – which was then extended to May 17, 2010, then to June 11, 2010 – the Debtor has failed.  The Debtor then seemed ready to abandon the Plan in favor of a new plan pursuant to the Plan Funding Agreement, which would have been unconfirmable over WestLB's objection.  Now that this New Plan Funder has also backed away from the Debtor, the Debtor appears ready to propose and prosecute a dramatically different plan and approach for this bankruptcy case, which represents a material change to the Plan and requires additional notice, discovery, solicitation and litigation.  Under these circumstances, and with the option of having WestLB file and prosecute a plan substantially similar for all non-insider creditors as the Plan that has been filed and favorably voted on by these non-insider creditors, a further extension of exclusivity is not in the best interests of the Debtor's estate.

9.      Pursuit of such a materially-altered plan by the Debtor would delay the currently-scheduled confirmation hearing and require the Court to rule upon certain factual disputes and substantive legal issues not yet brought before the Court in this case and, given the alternative offered by WestLB, may not be necessary for the Court to ever even address.  It does not, therefore, represent a step forward in the prospect of timely confirming a consensual plan, and

further extension of the Debtor's exclusivity period would not enhance the likelihood of prompt

confirmation of a consensual plan.   As discussed fully in the First Opposition, other factors

commonly supporting extension, as well as diminishing cash flow in the summer months, do not

support extension here.

**<u>Creditors Should Have Opportunity to Pursue and Evaluate Plan Alternatives</u>**

10.     WestLB has attempted to negotiate an acceptable treatment of WestLB's claim

both with the Debtor and its proposed plan funders, including the New Plan Funder, and believes

that it was close to reaching an acceptable treatment of its claim under the current Plan, before it

was abandoned by the Debtor due to the Debtor's inability to consummate such a Plan.  WestLB

provided consensual access to cash collateral for nearly nine (9) months, despite the Debtor's

multiple violations of the Cash Collateral Stipulation.  The Debtor has had ample time and

opportunity to pursue its Plan without competition, to no avail.  Creditors should not be held

hostage by its continued, unsuccessful attempts to propose a confirmable plan.  <u>See</u> <u>In re Gen.</u>

<u>Bearing Corp.</u>, 136 B.R. at 367 (noting that, because the debtor lacked equity in the assets and

had been unable to demonstrate "any financial ability to propose a confirmable Chapter 11 plan

or that any further delay will enhance its prospects," "the secured claimants should not continue

as hostages in this Chapter 11 case").  Due to the time-sensitive nature of this case and in light of

the foregoing, it is essential and in the best interest of Easy Street's creditors and estate that other

parties – including WestLB – be given the opportunity to propose and solicit acceptance of a

viable plan of reorganization.

11.     As discussed above, WestLB is now prepared to propose and confirm the

Competing Plan, which substantially tracks the treatment of classes contained in the Debtor's

Plan and which WestLB believes will be acceptable to the Debtor's primary constituencies.

Since the only creditors whose treatment has changed materially compared to the Plan are

WestLB, who proposes the Competing Plan, and certain insiders whose votes will not be

solicited, WestLB believes that (with minor changes) the current Disclosure Statement provides

adequate notice of the terms of the Competing Plan for purposes of solicitation.  Unlike the Plan

and any new plan structure the Debtor will present, WestLB believes that the Competing Plan

can be confirmed in a timely matter.  WestLB therefore requests that, to promote the best interest

of creditors in this case and to allow for the greatest likelihood of a confirmable plan in the

shortest time, the Court (i) deny the extension of exclusivity sought in the Motion, (ii) consider

approval of the WestLB Disclosure Statement as providing adequate information and for

purposes of solicitation at the hearing scheduled for June 25, 2010, provided WestLB files the

WestLB Disclosure Statement on or before June 16, 2010; (iii) require the Debtor to provide

WestLB with electronic copies of solicitation materials approved in connection with the

Disclosure Statement; and (iv) set a solicitation and confirmation timetable for the Competing

Plan.

## <u>CONCLUSION</u>

**WHEREFORE**, WestLB hereby requests that this Court (i) deny the extension of

exclusivity sought in the Motion, (ii) consider approval of the WestLB Disclosure Statement as

providing adequate information and for the purposes of solicitation at the hearing scheduled for

June 25, 2010, provided WestLB files the WestLB Disclosure Statement on or before June 16,

2010; (iii) require the Debtor to provide WestLB with electronic copies of solicitation materials

approved in connection with the Disclosure Statement; (iv) set a solicitation and confirmation

timetable for the Competing Plan; and (v) grant any and other relief it deems good and proper.

DATED this 10th day of June, 2010.

**DORSEY & WHITNEY LLP**

  */s/ Benjamin J. Kotter*
Annette W. Jarvis
Peggy Hunt
Benjamin J. Kotter

and

Richard W. Havel
**SIDLEY & AUSTIN, LLP**

Attorneys for WestLB, AG

# Exhibit A

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

Annette Jarvis (1649)                         Richard W. Havel  (10759)
Peggy Hunt (6060)                             SIDLEY AUSTIN LLP
DORSEY & WHITNEY LLP                          555 West Fifth Street, Suite 4000
136 South Main Street, Suite 1000             Los Angeles, CA  90013-1010
Salt Lake City, UT  84101-1685                Telephone:  (213) 896-6000
Telephone: (801) 933-7360                     Facsimile:  (213) 896-6600
Facsimile: (801) 933-7373                     Email: rhavel@sidley.com
Email: jarvis.annette@dorsey.com
Email: hunt.peggy@dorsey.com

Attorneys for WestLB, AG

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et. al.* | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:    201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | **[FILED ELECTRONICALLY]** |
| | ) | |

## WESTLB, AG'S PLAN OF REORGANIZATION FOR EASY STREET PARTNERS, LLC DATED JUNE 10, 2010

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

## TABLE OF CONTENTS

ARTICLE I. Definitions ................................................................................................................. 2

ARTICLE II. Treatment of Administrative and Priority Claims................................................... 10

ARTICLE III. Designation of Claims and Interests .................................................................... 11

ARTICLE IV. Claims and Interests Impaired Under the Plan ..................................................... 12

ARTICLE V. Treatment of and Methods of Distribution to Classes Under the Plan .................. 12

ARTICLE VI. Provisions as to Disputed Claims and Distributions............................................. 17

ARTICLE VII. Means for Execution of the Plan ........................................................................ 21

ARTICLE VIII. Executory Contracts .......................................................................................... 23

ARTICLE IX. Discharge of the Debtor........................................................................................ 25

ARTICLE X. Conditions Precedent ............................................................................................. 26

ARTICLE XI. General Provisions................................................................................................ 27

ARTICLE XII. Retention of Jurisdiction..................................................................................... 36

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

## Introduction

WestLB, AG New York Branch ("WestLB") hereby proposes the following plan of reorganization pursuant to § 1121(c) of the Bankruptcy Code. Reference is made to the Disclosure Statement (as defined herein) for results of operations, projections for future operations, risk factors, a summary and analysis of the Plan (as defined herein) and certain related matters. WestLB is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined herein).

These cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the United States Bankruptcy Court for the District of Utah, Central Division. The Plan does not contemplate substantive consolidation of Easy Street Partners, LLC ("Partners") with any of the Other Debtors, and this Plan is for Partners only.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a holder of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of Claims and Interests. ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined herein) and the Plan, WestLB expressly reserves its right to alter, amend or modify the Plan, one or more times, before its substantial consummation; provided however, that any amendment or modification made after the Voting Deadline that materially and adversely alters the treatment of any Class entitled to a

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

distribution under the Plan shall require the approval of either (i) the Bankruptcy Court or (ii) the

affected Class.

## ARTICLE I.

### Definitions

The following terms shall have the respective meanings set forth below.  In all references

herein to any parties, persons, entities or corporations, the use of any particular gender or the

plural or singular number is intended to include the appropriate gender or number as the text may

require.  Any term not defined herein which is defined by the Bankruptcy Code shall have the

meaning ascribed to it in the Bankruptcy Code and otherwise shall have the meaning ascribed to

it in the Disclosure Statement.

1.1     "Administrative Claim" means a claim which is not a secured claim, accruing

from and after the Filing Date, including the fees and expenses of professional persons retained

or to be compensated pursuant to the Bankruptcy Code, and any fees or charges assessed against

the Debtor's estate under Chapter 123, title 28, of the United States Code.

1.2     "Allowed Claim" means a Claim or any portion thereof (a) that has been allowed

by a Final Order, (b) as to which, on or by the Effective Date (i) no proof of claim has been filed

with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is

Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed,

(c) for which a proof of claim in a liquidated amount has been filed pursuant to the Bankruptcy

Code or any order of the Bankruptcy Court and as to which either (x) no objection to its

allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code

or any order of the Bankruptcy Court or (y) any objection to its allowance has been settled,

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

waived through payment or withdrawn, or has been denied by a Final Order or (d) that is

expressly allowed in a liquidated amount in the Plan.

1.3     "Allowed . . . Claim" means an Allowed Claim of the particular type or Class

described.

1.4     "Alternative Funder" means any person or entity other than the Plan Funder that

provides funding as required for WestLB to confirm this Plan.

1.5     "Assets" means all property of the Estate as defined in section 541 of the

Bankruptcy Code.

1.6     "Ballot" means each of the ballot forms distributed to each holder of an impaired

Claim or Interest on which the holder of such Claim or Interest is to indicate acceptance or

rejection of this Plan.

1.7     "Bankruptcy Code" means Title 11, United States Bankruptcy Code, 101 *et seq.,*

commonly referred to as the Bankruptcy Code.

1.8     "Bankruptcy Court" means the United States Bankruptcy Court for the District of

Utah, Central Division or such other court as may have jurisdiction over Partners' Chapter 11

bankruptcy case.

1.9      "BayNorth" means BayNorth Realty Fund VI, LP.

1.10     "Business Day" means any day other than a Saturday, Sunday or legal holiday as

defined in Bankruptcy Rule 9006(a).

1.11     "Claim" means a claim against Partners as defined in § 101(5) of the Bankruptcy

Code.

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.**

1.12    "Class" means a group of claims or interests, consisting of Claims or Interests

which are substantially similar to each other, as classified pursuant to the Plan.

1.13    "CloudNine" means CloudNine Resorts/Sky Lodge Management, LLC and

CloudNine Resorts/Sky Lodge Development, LLC.

1.14    "Confirmation Date" means the date the Confirmation Order is entered on the

docket of the Bankruptcy Court.

1.15    "Confirmation Order" means the order of the Bankruptcy Court approving the

Plan pursuant to § 1129 of the Bankruptcy Code and related sections thereof.

1.16    "Creditors' Committee" means the Official Committee of Unsecured Creditors for

the Debtors' cases appointed by the United States Trustee on or about October 2, 2009.

1.17    "Cure Claim" has the meaning ascribed to it in Article 8.5 of the Plan.

1.18    "Disbursing Agent" means the Person or Entity designated in the Plan

Supplement to disburse funds in accordance with the terms of this Plan.  The Disbursing Agent

may be the Reorganized Debtor.

1.19    "Debtor" means Easy Street Partners, LLC.

1.20    "Disclosure Statement" means the Amended Disclosure Statement With Respect

to Amended Plan of Reorganization of Easy Street Partners, LLC Dated February 18, 2010.

1.21    "Disputed Claim" means (a) any Claim as to which Partners or any other party-

in-interest has interposed a timely objection or request for estimation in accordance with the

Bankruptcy Code or the Bankruptcy Rules, or any claim otherwise disputed by Partners, the

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

Creditors' Committee, or the Reorganized Debtors or other party in interest in accordance with

applicable law, which objection has not been withdrawn or determined by a Final Order, and (b)

any Claim scheduled by Partners as contingent, unliquidated or disputed, where a proof of claim

has not been timely filed.

1.22    "Effective Date" means the first business day after the 30th day subsequent to the

Confirmation Order becoming a Final Order.  Notwithstanding the foregoing, the Effective Date

may occur before the first business day after the 30th day subsequent to the Confirmation Order

becoming a Final Order if the conditions contained in Article 10.2 of the Plan have been satisfied

or waived in accordance with Article 10.3, or may be extended beyond that date, each in the sole

discretion of WestLB.  WestLB shall file a notice in the Bankruptcy Court informing parties-in-

interest of any change in the Effective Date.

1.23    "Entity" shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

1.24    "Estate" means the Debtor's property as defined in section 541 of the Bankruptcy

Code.

1.25    "Final Order" means an order or a judgment which has not been reversed or

stayed and as to which (i) the time to appeal or to seek review, rehearing or certiorari has expired

pursuant to Rule 8002 of the Bankruptcy Rules and (ii) (a) no appeal or petition for review,

rehearing or certiorari is pending or (b) in the case of appeal, any such appeal or petition for

review, rehearing or certiorari has been dismissed.

1.26    "General Unsecured Claim" means a Claim, other than a Claim held by

CloudNine, which is not entitled to priority under § 507(a) of the Bankruptcy Code and which is

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

not secured by a valid, perfected security interest or lien and including a Claim, if any, arising

from the rejection of an executory contract.

1.27    "Impaired" when used with respect to any Claim, Interest or Class, has the same

meaning as that contained in § 1124 of the Bankruptcy Code.

1.28    "Interest" means the membership rights of the equity interests holders in Partners

prior to the Confirmation Date.

1.29    "Interest Holder" means Easy Street Mezzanine, LLC.

1.30    "Jacobsen" means Jacobsen National Group, Inc.

1.31    "Jacobsen Secured Claim" means the Claim of Jacobsen against Partners in the

amount of $1.5 million, which Claim is secured by liens on and against the Property.

1.32     "Other Debtors" means Easy Street Mezzanine, LLC and Easy Street Holding,

LLC.

1.33    "Other Secured Claims" means the Claims of secured creditors other than

WestLB, Jacobsen and the Subcontractors.

1.34    "Other Secured Creditors" means the holders of Other Secured Claims.

1.35    "Partners" means Easy Street Partners, LLC.

1.36    "Person" shall have the meaning as set forth in §101(41) of the Bankruptcy Code.

1.37    "Petition Date" means September 14, 2009, the date on which the Debtor filed its

Chapter 11 petition.

1.38    "Plan" means this plan of reorganization, and all exhibits hereto, as the same may

be modified or amended from time to time as and to the extent permitted herein or by the

Bankruptcy Code.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

1.39    "Plan Funder" means the person or entity that provides funding as required for WestLB to confirm this Plan, which will be WestLB or an entity formed by WestLB or an affiliate of WestLB.

1.40    "Plan Supplement" means the compilation of information, documents and forms of documents specified in the Plan that shall be filed with the Clerk of the Bankruptcy Court on or before [June 25, 2010].

1.41    "Priority Claim" means the portion of a Claim entitled to priority under § 507(a) of the Bankruptcy Code.

1.42    "Priority Tax Claim" means a claim of a governmental unit of the kind specified in sections 502(i) and 502(a)(8) of the Bankruptcy Code.

1.43    "Professional" means a person retained by order of the Court pursuant to §§ 327 or 1103 of the Bankruptcy Code and whose compensation is governed by § 330 of the Bankruptcy Code.  The term "Professional" shall not include the Disbursing Agent or the United States Trustee.

1.44    "Professional Claims" means the Allowed Claims of a Professional retained in these bankruptcy cases for compensation for services rendered or reimbursement of costs, expenses or other charges and expenses incurred on or after the Petition Date and prior to and including the Effective Date.

1.45    "Property" means the real property and buildings and improvements thereon owned by Partners located at 201 Heber Avenue in Park City, Utah, a/k/a The Sky Lodge Hotel and 660 Main Street, Park City, Utah 84060.

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

7

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

1.46    "Record Date" means February 18, 2010, the date set by the Bankruptcy Court

closing the claims register for purposes of determining the identity of holders of Claims and

Interests, who are entitled to vote to accept or reject the Plan.

1.47    "Released Parties" has the meaning ascribed to it in section 11.2 of the Plan.

1.48    "Reorganized Debtor" means Partners after the Effective Date of the Plan or such

other Entity formed by the Plan Funder or the Alternative Funder.

1.49    "Restructured Loan Documents" means loan documents to be executed by and

between the Reorganized Debtor and WestLB, which documents restructure the WestLB Secured

Claim on terms mutually acceptable to WestLB and the Plan Funder or Alternative Funder, as

applicable, and which documents shall be executed on or before the Effective Date and which

shall become binding on the Reorganized Debtor on and after the Effective Date.

1.50    "Scheduled" means, with respect to any Claim or Interest, the status and amount,

if any, of such Claim or Interest as set forth in the Schedules.

1.51    "Schedules" means the schedules of assets and liabilities filed by Partners on

October 15, 2009 in accordance with Bankruptcy Rule 1007(b) (as they may be amended from

time to time in accordance with Bankruptcy Rule 1009).

1.52    "Secured Claim" means a Claim secured by a valid, perfected and enforceable

lien on the Assets, to the extent of the value of the interest of the holder of such Secured Claim in

such Assets as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy

Code.

1.53    "Secured Creditor" means the holder of a claim which is secured by a valid,

perfected and enforceable lien on property of the Debtor, to the extent of the value of the interest

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

of the holder of such secured claim in such property as determined by the Bankruptcy Court
pursuant to § 506(a) of the Bankruptcy Code or as acknowledged in writing by the Debtor.

1.54    "Subcontractors" means the persons who or entities that contracted with Jacobsen
and provided services or materials in connection with construction of the Property.

1.55    "Third Party Units" has the meaning ascribed to it in section 5.2(c) of the Plan.

1.56    "365 Diligence" has the meaning ascribed to it in section 8.6 of the Plan.

1.57    "Unit" means a one-eighth fractional share of one of the 22 residential units at the
Property entitling the owner to two ski weeks (mid –December through mid-April) each year,
plus 21 days throughout the year.  There are 176 Units at the Property, of which 113 Units were
sold prior to the Petition Date.

1.58    "WestLB" means WestLB AG, New York Branch, in its capacity as agent for
itself and such other co-lenders as might exist from time to time under the WestLB Loan
Documents providing secured funding to Partners.

1.59    "WestLB Adversary Proceeding" means the adversary proceeding commenced on
January 12, 2010, by the Creditors' Committee against WestLB in the Bankruptcy Court seeking
to (i) equitably subordinate the claims of WestLB to the Claims of all unsecured creditors of
Partners and (ii) avoid Partners' waiver of its claims against WestLB and recover such claims for
the benefit of Partners' estate.

1.60    "WestLB Loan Documents" means those loan documents giving rise to the
WestLB Secured Claim, as further identified in and including the Cash Collateral Stipulation (as
defined in the Disclosure Statement).

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

1.61    "WestLB Secured Claim" means the Claim of WestLB against Partners in the Allowed amount no less than $16.4 million, pursuant to and consistent with § 506 of the Bankruptcy Code, which Claim is secured by a lien on and against the Property and substantially all of Partners' other Assets.

## ARTICLE II.

### Treatment of Administrative and Priority Claims

2.1    With respect to Administrative Claims other than Administrative Claims of Professionals, except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment, the Allowed Administrative Claims shall be paid (i) in the ordinary course of business, or (ii) on the Effective Date (or as soon as practicable thereafter) if not an ordinary course claim, or (iii) within ten (10) days of entry of a Final Order allowing such Administrative Claim.

2.2    With respect to Administrative Claims of Professionals, the Allowed Administrative Claims of Professionals shall be paid in full on the later of: (i) the Effective Date or (ii) fifteen (15) days after entry of an order of the Court approving the allowance of such fees and expenses of such Professional on a final basis pursuant to section 330 of the Bankruptcy Code.

2.3    With respect to the Administrative Claim of the United States Trustee, Partners shall pay all fees due and payable under section 1930 of Title 28 within ten (10) days after the Effective Date.  In addition, Partners or the Reorganized Debtor shall pay the United States Trustee quarterly fees due and payable on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business until entry of a Final Decree,

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

10

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

dismissal of the case or conversion of the case to a case under chapter 7, as such obligations become due.

2.4.    With respect to Priority Claims, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive equal quarterly Cash Payments over a period not exceeding five (5) years from the Petition Date, with the first payment to occur on the first business day of the third month after the Effective Date, at an interest rate of 6% or a rate agreed upon between the Reorganized Debtor and the taxing authority or otherwise set by the Bankruptcy Court.

2.5    All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

2.6    All other Priority Claims shall be paid in full on the Effective Date.

## ARTICLE III.

### Designation of Claims and Interests

The following Classes of Claims and Interests are designated pursuant to and in accordance with § 1123(a)(1) of the Bankruptcy Code:

3.1     "Class 1 Claim" shall consist of the Allowed WestLB Secured Claim.

3.2    "Class 2 Claim" shall consist of the Allowed Jacobsen Secured Claim.

3.3    "Class 3 Claims" shall consist of the All Other Allowed Secured Claims against Partners.

3.4    "Class 4 Claims" shall consist of the Allowed General Unsecured Claims against Partners.

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

3.5    "Class 5 Claims" shall consist of the Allowed Claims of the owners of the Third Party Units.

3.6    "Class 6 Claims" shall consist of the Allowed CloudNine Claims against Partners.

3.7    "Class 7 Interests" shall consist of the Interests in Partners.

## ARTICLE IV.

### Claims and Interests Impaired Under the Plan

4.1    Class 1 Claims, Class 2 Claims, and Class 4 Claims are impaired under the Plan and are entitled to vote on the Plan. Class 5 Claims are treated as impaired under the Plan and are entitled to vote on the Plan. Class 6 Claims and Class 7 Interests are impaired but will receive no distribution under the Plan and are therefore conclusively deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE V.

### Treatment of and Methods of Distribution to Classes Under the Plan

5.1    <u>Class 1 Claim</u>. The WestLB Secured Claim shall be Allowed in the full amount due and owing under the WestLB Loan Documents, in an amount no less than $16.4 million and shall be accorded the following treatment:

       (a)    Subject to 5.1(b), in full and complete satisfaction, settlement and release of and in exchange for the Allowed WestLB Secured Claim, WestLB shall receive on the Effective Date or as soon thereafter as is reasonably practicable a payment in cash equal to all accrued and unpaid fees and expenses (currently estimated at $300,000), and WestLB and the Plan Funder or the Alternative Funder, as the case may be, shall agree upon the form and content of the Restructured Loan Documents governing the terms and treatment of the Allowed WestLB Secured Claim.

       (b)    Notwithstanding the foregoing, the Allowed WestLB Secured Claim shall only be released as to the Debtor, and the treatment provided in respect of the Allowed WestLB Claim shall not be deemed to satisfy such Claim for the purposes of determining liability of any third party in respect of such

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

Claim, and no treatment provided in respect of the Allowed WestLB
Secured Claim shall limit or impair or be deemed to limit or impair any
rights and claims WestLB may hold against third parties in respect of the
Allowed WestLB Secured Claim.

(c)   Class 1 is impaired by the Plan. WestLB, as the sole holder of the Class 1
Claim, is entitled to vote to accept or reject the Plan.

5.2        Class 2 Claim.

(a)   In full and complete satisfaction, settlement and release of and in
exchange for the Allowed Jacobsen Secured Claim, as well as all claims of
Jacobsen's Subcontractors, whether they filed mechanics' liens or any
other Claims against Partners, Easy Street Mezzanine, LLC, Easy Street
Holding, LLC and the owners of Third Party Units, pursuant to sections
5.2(a), 5.2(d) and 5.2(e), the holder of the Allowed Jacobsen Secured
Claim shall have an Allowed Secured Claim in the amount of $1.5 million,
which shall accrue interest at 8% simple interest from and after the
Confirmation Date on the outstanding principal balance of the Allowed
Jacobsen Secured Claim, and the Claim shall be treated as follows:

The holder of the Allowed Jacobsen Secured Claim shall be
paid a discounted cash payment on the Effective Date equal
to $1,330,000 and shall utilize the funds it receives to pay
its Subcontractors, including, but not limited to, Gunthers
Comfort Air, in full and complete satisfaction, settlement
and release of all Claims of Jacobsen and each of its
Subcontractors against the Debtor and the owners of the
Third Party Units.

(b)   Jacobsen and its Subcontractors shall be enjoined from foreclosing on
Assets of the Reorganized Debtor, provided that the Reorganized Debtor
has made the $1,330,000 payment provided in the Plan to Jacobsen.

(c)   All pending actions against Units owned by third parties (the "Third Party
Units") and the third parties owning the Units shall be stayed for a period
from the Confirmation Date to the date of payment of the $1,330,000.

(d)   Upon Jacobsen's receipt of the $1,330,000, Jacobsen, its Subcontractors
and the owners of the Third Party Units shall be deemed to have mutually
released each other with respect to Jacobsen's lien and any other lien of a
Subcontractor on the particular Unit and Jacobsen's and the
Subcontractor's work on the particular Unit, (ii) the lien of Jacobsen and
any Subcontractor on the particular Third Party Unit shall be deemed
released and satisfied and Jacobsen and the Subcontractors, as applicable,
shall execute and timely record such documents releasing its lien with
respect to that particular Third Party Unit (irrespective of source of

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

payment), and (iii) Partners and the owners of the Third Party Units shall be dismissed with prejudice from the litigation commenced by Jacobsen and the Subcontractors to enforce their liens.

(e) Upon satisfaction of the Allowed Jacobsen Secured Claim, the liens of Jacobsen and all Subcontractors on the Property and the Third Party Units shall be deemed released and satisfied and the holder of the Allowed Jacobsen Secured Claim and all Subcontractors shall execute and timely record such documents releasing their liens on the Property, and all Assets of the Reorganized Debtor and all the Third Party Units, as is requested by and reasonably acceptable to the Reorganized Debtor.

(f) Under any circumstance, upon payment to Jacobsen of $4,500 (the "Unit Release Price") for a particular Third Party Unit, then (i) Jacobsen, its Subcontractors and the owner of the Third Party Unit for which the Unit Release Price is received by Jacobsen shall be deemed to have mutually released each other with respect to Jacobsen's lien and any other lien of a Subcontractor on the particular Third Party Unit and Jacobsen's and the Subcontractor's work on the particular Third Party Unit, (ii) the lien of Jacobsen and any Subcontractor on the particular Third Party Unit shall be deemed released and satisfied and Jacobsen and the Subcontractor, as applicable, shall execute and timely record such documents releasing its lien with respect to that particular Third Party Unit (irrespective of source of payment), and (iii) the owner of the Third Party Unit shall be dismissed with prejudice from litigation commenced by Jacobsen and any Subcontractor to enforce their liens. Upon payment of each Unit Release Price (irrespective of who made the payment), the Reorganized Debtor will be credited for the amount paid, and such amount shall reduce the principal amount of the Allowed Jacobsen Secured Claim accordingly.  In the event an owner of a Third Party Unit pays the Unit Release Price, the Debtor or Reorganized Debtor, as the case may be, shall promptly reimburse the owner of the applicable Third Party Unit the Unit Release Price paid.

(g) The treatment provided herein to the holder of the Allowed Jacobsen Secured Claim shall be in full satisfaction, discharge and release of all of the obligations to the holders of the Allowed Jacobsen Secured Claim as well as Claims of the Subcontractors.

(h) Notwithstanding anything contained in the Plan, the Reorganized Debtor shall retain all warranty claims against Jacobsen.

(i) Class 2 is impaired by the Plan. Jacobsen, as the sole holder of the Class 2 Claim, is entitled to vote to accept or reject the Plan.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

    5.3    <u>Class 3 Claims</u>.

    (a) In full and complete satisfaction, settlement and release of and exchange for the Allowed Other Secured Claims, on the Effective Date, except to the extent that the holder of an Other Secured Claim agrees to a less favorable treatment, all Other Secured Creditors shall be separately classified and their collateral will either be assigned to such Other Secured Creditor as the indubitable equivalent of such claim or the secured claim shall be reinstated or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of a default.

    (b) Class 3 is unimpaired by the Plan. Each holder of an Allowed Class 3 Claim is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

    5.4    <u>Class 4 Claims</u>.  In full and complete satisfaction, settlement and release of and in exchange for the Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim, except to the extent such holder agrees to a less favorable treatment, shall have the option of electing one of the following alternatives to be elected on their Ballot in voting on the Plan:

    (a) Option 1.  Holders of Allowed Class 4 Claims shall receive payment of 100% of their Allowed Claim in equal quarterly payments, with the first payment due on October 15, 2010.  Successor quarterly payments shall be on January 15th, April 15th and July 15th with the last payment July 15, 2013, which is approximately 3.5 years from the Effective Date.

    (b) Option 2.  Holders of Allowed Class 4 Claims shall receive payment of a discounted amount equal to 60% of their Allowed Claim on the thirtieth (30th) day after the Effective Date.

    (c) In no event shall the present value of cash accorded to holders of Allowed Class 4 Claims under Option 1 and Option 2 exceed $933,609.05.[1]

    (d) If the holder of an Allowed General Unsecured Claim does not vote or fails to make an election of either option 1 or 2 or attempts to elect to split its Allowed General Unsecured Claim between options 1 and 2, then such

---

[1] Subject to due diligence review of any outstanding claims, such as rejection damages claims.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

holder of an allowed General Unsecured Claim shall be paid in accordance
with option 1 as set forth in Article 5.4(a) above.

(e)   Class 4 is impaired by the Plan.  Each holder of an Allowed Class 4 Claim
is entitled to vote to accept or reject the Plan.

5.5     Class 5 Ownership of Third Party Units.

(a)   In full and complete satisfaction, settlement and release of and in
exchange for the Allowed Claims of the Owners of the Third Party Units,
upon payment of the Allowed Jacobsen Secured Claim, pursuant to
section 5.2(a) of the Plan, all of the liens on the Third Party Units shall be
released, the lawsuit by Jacobsen dismissed with prejudice, and the Claims
of the owners of the Third Party Units shall be fully satisfied, released and
discharged.

(b)   In the event an owner of a Third Party Unit pays the Unit Release Price,
the Debtor or Reorganized Debtor, as the case may be, shall promptly
reimburse the owner of the applicable Third Party Unit the Unit Release
Price paid.

(c)   Class 5 is treated as impaired under the Plan.  Each holder of an Allowed
Class 5 Claim is entitled to vote to accept or reject the Plan.

5.6     Class 6 CloudNine Claims.

(a)   In accordance with (i) the Consent and Subordination of Development
Agreement among Partners, WestLB, and CloudNine Resorts/Sky Lodge
Development, LLC and (ii) the Consent and Subordination of
Management Agreement among Partners, WestLB, and CloudNine
Resorts/Sky Lodge Management, LLC, both of which agreements are
dated as of March 30, 2006, CloudNine has agreed that "any right or
remedy [CloudNine] may have to collect . . . fees, charges or
indemnifications from [Partners] shall be subordinated to the indefeasible
payment in full in cash of all amounts due to [WestLB] under the
[WestLB] Loan Documents."  Because the WestLB Secured Claim will
neither be paid in full nor paid in full in cash, CloudNine shall not be
entitled to, nor receive, any distribution, nor shall it retain any property or
interest in property on account of such Class 6 Claims.  On and as of the
Effective Date, all of the Class 6 Claims shall be extinguished, cancelled
and discharged.

(b)   Class 6 is impaired by the Plan and will receive no distribution.  Holders
of the Allowed Class 6 Claims are conclusively presumed to have rejected
the Plan and are not entitled to vote to accept or reject the Plan.

5.7     Class 7 Interests.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

(a) On and as of the Effective Date, all of the Class 7 Interests shall be
extinguished, cancelled and discharged.  The Interest Holder shall not be
entitled to, nor receive, any distribution, nor shall it retain any property or
interest in property on account of such Class 7 Interests pursuant to
Section 1129(b)(2)(C) of the Bankruptcy Code.

(b) Class 7 is impaired by the Plan and will receive no distribution.
Mezzanine, as the sole holder of the Allowed Class 7 Interests is
conclusively presumed to have rejected the Plan and is not entitled to vote
to accept or reject the Plan.

## ARTICLE VI.

### Provisions as to Disputed Claims and Distributions

6.1    Disputed Claims.

(a) In connection with distributions to be made in respect of Allowed Claims,
there shall be reserved from any distribution to the holder of a Disputed
Claim the amount of distribution which then otherwise would be paid in
respect to such Disputed Claim on the Effective Date if the full amount of
such Claim were deemed to be an Allowed Claim or such lesser amount as
the Bankruptcy Court may determine.

(b) Pending the determination of such Disputed Claim by the Bankruptcy
Court, Partners shall deposit in a separate bank account funds equal to the
amount so reserved or such lesser amount as the Bankruptcy Court may
have determined within fifteen (15) business days after the date on which
such amount would otherwise be distributed to the holder of such Claim.
Such funds shall be held by the Disbursing Agent in such separate bank
account as long as such Claim remains a Disputed Claim.

(c) If, on or after the Effective Date, any Disputed Claim becomes an Allowed
Claim, the Reorganized Debtor, or the Disbursing Agent shall, as soon as
practicable following the date on which the Disputed Claim becomes an
Allowed Claim, except as otherwise provided in the Plan, distribute to the
holder of such Allowed Claim an amount, without any interest thereon,
that provides such holder with the same percentage recovery, as of such
date, as holders of Claims in the class that were Allowed on the Effective
Date.

(d) To the extent that a Disputed Claim is expunged or reduced, the holder of
such Claim shall not receive any distribution on account of the portion of
such Claim that is disallowed.  Any Disputed Claim, for which a proof of
claim has not been deemed timely filed as of the Effective Date, shall be
disallowed.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

        (e)   Any monies remaining on deposit with respect to any Disputed Claim after its resolution or determination by the Bankruptcy Court shall be returned to the Reorganized Debtor.

6.2    <u>Resolution of Disputed Claims</u>.  The Reorganized Debtor shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328, 330 and 503 of the Bankruptcy Code) to make, file and prosecute objections to Claims.  The Reorganized Debtor shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtors), but in no event shall the service of such an objection be later than 120 days after the Effective Date, unless such date is extended by order of the Bankruptcy Court.  The Bankruptcy Court, for cause, may extend the deadline on the request of the Reorganized Debtor.  All objections shall be litigated to a Final Order except to the extent that the Reorganized Debtor elects to withdraw such objection, or the Reorganized Debtor and the holder of the Disputed Claim compromise, settle or otherwise resolve any such objections, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further order of the Bankruptcy Court.

6.3    <u>Setoffs</u>.  To the extent permitted under applicable law, the Reorganized Debtor may set off against or recoup from the holder of any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and causes of action of any nature that the Debtors have asserted in writing against the holder of such Allowed Claim, including, without limitation, any rights under section 502(d) of the Bankruptcy Code and in the absence of a written objection by such holder of an Allowed Claim within thirty (30) days of the delivery of

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

such a writing from Partners or the Reorganized Debtor, it will be conclusively presumed that the

requirements for disallowance of a Claim under section 502(d) of the Bankruptcy Code or setoff

or recoupment under applicable law have been satisfied.

6.4     Distributions of Cash.  Any payment of Cash made by the Reorganized Debtor, or

the Disbursing Agent, pursuant to the Plan may be made at the option of such party either by

check drawn on a domestic bank or by wire transfer from a domestic bank.

6.5     Distributions Free and Clear.  Except as otherwise provided in the Plan, any

distributions or transfers by or on behalf of the Reorganized Debtor under the Plan, including,

but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any

liens, claims, and encumbrances, and no other entity shall have any interest – legal, beneficial, or

otherwise – in assets transferred pursuant to the Plan.

6.6     Timing of Distributions.  Unless otherwise provided in the Plan, any distribution

to be made by the Reorganized Debtor or the Disbursing Agent shall be made to the extent and at

the time provided in Article 5 of the Plan.  In the event that any payment or act under the Plan is

required to be made or performed on a date that is not a Business Day, then the making of such

payment or the performance of such act may be completed on the next succeeding Business Day,

but shall be deemed to have been completed as of the required date.

6.7     Delivery of Distributions.  Subject to Bankruptcy Rule 9010, all distributions to

any holder of an Allowed Claim shall be made at the address of such holder as set forth on the

Schedules or on the books and records of the Partners or its agents.  The holder of an Allowed

Claim must notify the Reorganized Debtor in writing of a change of address pursuant to the

notice requirements set forth in Article 11.14 of the Plan or, in the case of holders of transferred

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e)

by such holder or transferee that contains an address for such holder different than the address of

such holder as set forth in the Schedules.  Neither the Reorganized Debtor nor the Disbursing

Agent shall be liable for any distribution sent to the address of record of a holder in the absence

of the written change thereof as provided herein or in the Plan.

6.8    Distributions to Holders as of Record Date.  As of the close of business on the

Record Date, the claims register for Partners was closed, and there has been and shall be no

further changes made to the identity of the record holder of any Claim.  Neither the Reorganized

Debtor nor the Disbursing Agent shall have any obligation to recognize any transfer of any

Claim occurring after the Record Date, provided, however, that the Reorganized Debtor and the

Disbursing Agent will recognize transfers of Claims made after the entry of the Order (A)

Approving Amended Disclosure Statement With Respect to Amended Plan of Reorganization of

Easy Street Partners, LLC, Dated February 18, 2010, (B) Establishing a Record Date, (C)

Approving Solicitation Procedures, (D) Approving Forms of Ballots and Voting Procedures, and

(E) Approving Notice and Scheduling Confirmation Hearing [Docket No. 325], but before the

Confirmation Date for distribution purposes.

6.9    Undeliverable and Unclaimed Distributions.

(a)   If the distribution to the holder of any Allowed Claim is returned as
undeliverable, no further distributions to such holder shall be made unless
and until the holder notifies the Reorganized Debtor or the Disbursing
Agent, as appropriate, in writing of such holder's then-current address, at
which time all missed distributions shall be made, subject to the provisions
of subsection (c) of this Article 6.9, as soon as is practicable to such
holder, without interest.

(b)   Checks issued by the Reorganized Debtor or the Disbursing Agent in
respect of Allowed Claims shall be null and void if not negotiated within
one hundred and twenty (120) days after the date of issuance thereof.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

Requests for re-issuance of any check shall be made in accordance with the notice provisions of section 11.14 of the Plan to the Reorganized Debtor or the Disbursing Agent, as appropriate, by the holder of the Allowed Claim to whom such check originally was issued.

(c)   All claims for undeliverable distributions or voided checks shall be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made.  After such dates, all such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall become unencumbered Cash of the Reorganized Debtor.  The holder of any Claim for which any undeliverable distribution has been deemed unclaimed property under section 347(b) of the Bankruptcy Code shall not be entitled to any other or further distribution under the Plan on account of such Claim.

## ARTICLE VII.

## Means for Execution of the Plan

7.1   The funds required for the confirmation and performance of this Plan shall be provided from:  (i) all funds held by the Debtor as property of the estate, and (ii) capital contributions and/or loans made by the Plan Funder or the Alternative Funder to the Reorganized Debtor.

7.2   Reorganized Debtor.

(a)   Vesting of Assets.  On the Effective Date, all Assets of the Debtor and all licenses (excluding liquor licenses), permits and approvals necessary for the operation, ownership, and use of the Property as currently operated shall vest in the Reorganized Debtor, and the Reorganized Debtor shall maintain the right and ability to use the liquor licenses currently used in the Debtor's operations to the same extent enjoyed by the Debtor.

(b)   Reorganized Articles of Organization and Reorganized Operating Agreement.  The Reorganized Debtor shall adopt Reorganized Articles of Organization and a Reorganized Operating Agreement prior to, but effective as of, the Effective Date, which shall be included in the Plan Supplement.  Prior to the closing of Partners' Chapter 11 case, any amendments to the Reorganized Debtor's Articles of Organization and Reorganized Operating Agreement shall be filed with the Bankruptcy Court.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

    (c)  <u>Managing Members and Officers</u>.  The initial managing members and officers of the Reorganized Debtor shall be disclosed in the Plan Supplement and shall be in effect as of the Effective Date.

    (d)  <u>Membership Interests</u>.  In the event that Partners is the Reorganized Debtor, then in exchange for the consideration provided under the Plan by the Plan Funder (or the Alternative Funder, as applicable), the Plan Funder (or the Alternative Funder, as applicable) shall receive all of the membership interests in the Reorganized Debtor.

7.3    <u>Exit Funding</u>.  On or before the Effective Date, the Plan Funder or Alternative Funder shall contribute capital, loans and/or provide additional standby funds (either as additional capital or loans) on terms acceptable to the Plan Funder or Alternative Funder, as the case may be, sufficient to effectuate the Plan.  The Plan Funder contemplates contributing approximately $2,944,611 in cash on the Effective Date to be used for the following purposes: (i) $1,330,000 to be used for payment of the Allowed Class 2 Claim; (ii) up to $750,000 to be used for payment of Allowed Administrative Expense Claims; (iii) approximately $300,000 to be used for payment of outstanding fees and expenses of WestLB; (iv) up to $4,445 to be used for payment of Allowed Priority Claims; and (v) up to $560,165.43 to be used for payment of Allowed Class 4 Claims choosing Option 2.  In no event shall the Plan Funder contribute cash in excess of $3.0 million on the Effective Date (the "Effective Date Cash").  In addition to the Effective Date Cash, the Plan Funder or Alternative Funder, as the case may be, will commit to fund up to an additional $1.5 million in working capital as and when needed to effectuate the Plan.  The Plan Supplement will provide any further necessary details and terms of such funding.

7.4    <u>Early Payment</u>.  Nothing in the Plan shall prevent the Reorganized Debtor from making any payments prior to the date provided for in the Plan, and the Reorganized Debtor shall not suffer any penalty or prejudice from making any such payments.

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

# ARTICLE VIII.

## Executory Contracts

8.1     <u>Executory Contracts and Unexpired Leases</u>.  Under section 365 of the Bankruptcy Code, Partners has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired leases.  Notwithstanding the foregoing, Partners shall not seek the assumption or rejection of any executory contract or unexpired lease without the prior written approval of WestLB.  If Partners rejects an executory contract or unexpired lease that was entered into before the Petition Date, the contract or lease will be treated as if it had been breached on the date immediately preceding the Petition Date, and the other party to the agreement will have a General Unsecured Claim for damages incurred as a result of the rejection. In the case of rejection of real property leases, damages are subject to certain limitations imposed by section 502(b)(6) of the Bankruptcy Code.

8.2     <u>Rejected Contracts and Leases</u>.

(a)     Each executory contract and unexpired lease to which Partners is a party shall be deemed automatically rejected as of the Effective Date, unless such executory contract or unexpired lease (1) will have been previously assumed by Partners (2) is the subject of a motion to assume filed on or before the Confirmation Date or (3) is listed on the schedule of assumed contracts and leases annexed as an Exhibit to the Plan Supplement. WestLB may at any time on or before the Confirmation Date (or, with respect to any executory contract or unexpired lease for which there is a dispute regarding the nature or the amount of any cure, at any time on or before the entry of a Final Order resolving such dispute) amend the Plan Supplement to delete therefrom or add thereto any executory contract or unexpired lease, in which event such executory contract or unexpired lease will be deemed to be rejected, assumed or assumed and assigned, as the case may be.

(b)     WestLB will provide notice of any amendments to the Plan Supplement to the parties to the executory contracts or unexpired leases affected thereby and counsel to the Creditors' Committee and Partners.  The fact that any contract or lease is listed in the Plan Supplement will not constitute or be construed as an admission that such contract or lease is an executory

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

contract or unexpired lease within the meaning of section 365 of the
Bankruptcy Code or that the Reorganized Debtor or any successor to the
Reorganized Debtor has any liability thereunder.

(c) The Confirmation Order will constitute an order of the Bankruptcy Court
approving such rejections, pursuant to section 365 of the Bankruptcy
Code, as of the Effective Date.

8.3    Rejection Damages Bar Date.  If the rejection of an executory contract or

unexpired lease results in a Claim, then such Claim will be forever barred and will not be

enforceable against Partners or the Reorganized Debtor or its respective properties unless a proof

of claim is filed with the Bankruptcy Court and served upon counsel to the Reorganized Debtor,

counsel to the Creditors' Committee and WestLB, no later than fourteen (14) calendar days after

the later of the Confirmation Date or the entry of an order of rejection.  Nothing in the Plan will

extend any prior deadline to file a proof of claim for damages arising from the rejection of an

executory contract or unexpired lease.

8.4    Assumed Contracts and Leases.

(a) Except as otherwise provided in the Plan or the Confirmation Order, all
executory contracts and unexpired leases identified in the Plan
Supplement on an Exhibit listing assumed agreements will be deemed
automatically assumed as of the Effective Date.

(b) Each executory contract and unexpired lease that is assumed and relates to
the use, ability to acquire or occupy of real property will include (1) all
modifications, amendments, renewals, supplements, restatements or other
agreements made directly or indirectly by any agreement, instrument or
other documents that in an manner affect such executory contract or
unexpired lease and (2) all executory contracts or unexpired leases
appurtenant to the premises, including all easements, licenses, permits,
rights, privileges, immunities, options, rights of first refusal, powers, uses,
reciprocal easement agreements and any other interests in real estate or
rights in rem related to such premises, unless any of the foregoing
agreements has been rejected pursuant to a Final Order of the Bankruptcy
or is otherwise rejected as a part of the Plan.

(c) To the extent Partners is party to the unexpired lease or executory contract
and is to be merged or dissolved as a result of the Plan, any non-debtor

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

party to such unexpired lease or executory contract will, upon assumption as contemplated herein, be deemed to have consented to the assignment of such unexpired lease or executory contract to the Reorganized Debtor.

(d)   The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption of such executory contracts and unexpired leases, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.5   <u>Payments Related to Assumption of Executory Contracts and Unexpired Leases</u>.

(a)   Any monetary amounts by which each executory contract and unexpired lease to be assumed under the Plan may be in default will be satisfied, under section 365(b)(1) of the Bankruptcy Code by promptly curing same ("Cure Claim").

(b)   In the event of a dispute regarding (1) the nature or the amount of any Cure Claim, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the amount of the Allowed Cure Claim shall be paid no later than thirty (30) calendar days following the entry of a Final Order resolving the dispute and approving the assumption and, as the case may be, assigned.

8.6   <u>Information Related to Executory Contracts and Unexpired Leases</u>.  On or before [June 21, 2010], Partners shall provide to WestLB an itemized list of (i) each and every executory contract and unexpired lease; (ii) the estimated amount of any Cure Claim which may arise from the assumption of each executory contract and expired lease; and (iii) the estimated amount of any unsecured claim which may arise from the rejection of each executory contract and unexpired lease (collectively, the "<u>365 Diligence</u>").  The maximum amount payable to Class 4 Claims is specifically subject to and based upon the accuracy of the 365 Diligence.

## ARTICLE IX.

## <u>Discharge of the Debtor</u>

9.1   The occurrence of the Effective Date shall discharge Partners pursuant to the full extent of Section 1141(d)(1) of the Bankruptcy Code, from any and all debts of and Claims

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

against Partners that arose prior to the Confirmation Date, and any kind of debt specified in §§ 502(g), (h) or (i) of the Bankruptcy Code, whether or not:  (i) a proof of Claim based on such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (ii) such Claim is allowed under § 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.  On and after the Effective Date, as to every discharged debt and Claim, the Person or Entity that held such debt or Claim shall be precluded from asserting any such debt or Claim against Partners or the Reorganized Debtor or its property based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

9.2     The rights and treatment of all Claims against and Interests in the Plan shall be in exchange for and in complete satisfaction  and release of all Claims and Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against Partners or its estate, Assets, Property or interests in property.  The Reorganized Debtor shall not be responsible for any obligations of the Other Debtors or their estates.

## ARTICLE X.

### Conditions Precedent

10.1     Conditions to Confirmation.  The following are conditions precedent to confirmation of the Plan, each of which may be satisfied or waived in accordance with section 10.3 of the Plan.

(a)   The Bankruptcy Court shall have approved by Final Order a disclosure statement with respect to the Plan.

(b)   The Plan Funder or Alternative Funder shall commit to providing sufficient funding to effectuate the Plan.

(c)   The 365 Diligence shall be accurate in all material respects.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

(d) The Confirmation Order shall be in form and substance reasonably acceptable to WestLB and, if applicable, the Alternative Funder.

10.2 <u>Conditions to Effective Date</u>. The following are conditions precedent to the Effective Date, each of which may be satisfied or waived in accordance with Article 10.3 of the Plan.

(a) The Reorganized Debtor shall have executed and delivered the Restructured Loan Documents, in a form that is acceptable to WestLB in its sole discretion.

(b) Except as provided in section 10.2(a), each exhibit, document or agreement to be executed in connection with this Plan (including each document or agreement included in the Plan Supplement) shall be reasonably acceptable to the Plan Funder or the Alternative Funder, as the case may be, and if the Alternative Funder funds the Plan, all of the foregoing must also be reasonably acceptable to WestLB.

(c) The Confirmation Order shall have been entered and have become a Final Order.

(d) The 365 Diligence and all other information provided by Partners shall be accurate in all material respects.

(e) The Reorganized Debtor shall receive on the Effective Date all licenses, permits and assets described in Section 7.2(a) free of any liens or other claims and in a form and substance satisfactory to WestLB and shall have assurance of the continued use of the Debtor's liquor licenses, as further described in Section 7.2(a).

(f) Partners or the Reorganized Debtor shall have sufficient cash necessary to pay Claims required to be paid on the Effective Date.

10.3 <u>Waiver of Conditions to Confirmation</u>. Conditions set forth in sections 10.1 and 10.2 of the Plan may be waived by WestLB, in whole or in part, without any further notice to parties in interest or the Bankruptcy Court and without a hearing.

## ARTICLE XI.

### General Provisions

11.1 All objections to Disputed Claims shall be commenced, filed or asserted within 120 days after the Effective Date.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

    11.2    **Releases and Exculpations**.  Except as otherwise provided in the Plan or Confirmation Order, as of the Effective Date, Partners, the Reorganized Debtor, the Disbursing Agent, WestLB, the Creditors' Committee, the members of the Creditors' Committee in their respective capacity as such, any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, and agents, and any such parties' successors and assigns (collectively, the "Released Parties") shall be released by Partners and any successors-in-interest of Partners from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that Partners would have been legally entitled to assert in its own right (whether individually or collectively) or that any holder of a Claim, Interest, or other person or entity would have been legally entitled to assert on behalf of Partners or its estate, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place before or on the Effective Date but occurring during the chapter 11 cases, except for acts constituting willful misconduct, gross negligence, or bad faith and, in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Without limiting the generality of the foregoing, to the extent permitted by law, Partners and any successors-in-interest of Partners shall waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

11.3    Partners, the Creditors' Committee, and the Released Parties, and any property of or professionals retained by such parties, or direct or indirect predecessor in interest to any of the foregoing persons, shall not have or incur any liability to any Person or Entity for any act taken or omission, after the Petition Date, in connection with or related to these cases or the operations of Partners business during the cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; or (iii) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or bad faith occurring during the chapter 11 cases, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

11.4    Without limiting the foregoing, and except as to obligations arising under the Plan, as of the Effective Date, Partners, the Reorganized Debtor, the Creditors' Committee, and the members of the Creditors' Committee in their respective capacity as such ("WestLB Releasors"), shall release and shall be deemed to have released WestLB from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that any of them would have been legally entitled to assert in its own right or on behalf of Partners (whether individually or collectively). Without limiting the generality of the

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

foregoing, the WestLB Releasors shall waive all rights under any statutory, legal or

equitable authority purporting to limit the scope or effect of a general release, whether due

to lack of knowledge or otherwise.

       11.5    **Injunction.  The satisfaction, releases and discharge pursuant to Article 11 of

the Plan will also act as an injunction against any Person or Entity commencing or

continuing any action, employment of process or act to collect, offset, recoup or recover

any Claim satisfied, released or discharged under the Plan to the fullest extent authorized

or provided by the Bankruptcy Code.**

       11.6    Modification of the Plan.  WestLB reserves the right, in accordance with the

Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the

entry of the Confirmation Order.  After the entry of the Confirmation Order, the Reorganized

Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with

section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any

inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent

of the Plan.  A holder of an Allowed Claim that has accepted the Plan shall be deemed to have

accepted the Plan as modified if the proposed modification does not materially and adversely

change the treatment of the Claim of such holder.

       11.7    Withdrawal or Revocation of the Plan.  WestLB may withdraw or revoke the Plan

at any time prior to the Confirmation Date.  If WestLB revokes or withdraws the Plan prior to the

Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed

null and void.  In such event, nothing contained in the Plan or Disclosure Statement shall be

deemed to constitute a waiver or release of any Claim by or against Partners or the Other Debtors

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

or any other person or to prejudice in any manner the rights of Partners or the Other Debtors or any other person in any further proceedings involving Partners or the Other Debtors.

11.8    Section 1146 Exemption.  Pursuant to Bankruptcy Code § 1146(a), (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable law.

11.9    Dissolution of the Creditors' Committee.  On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention and employment of the Creditors' Committee's attorneys shall terminate.  The Creditors' Committee shall continue in existence after the Effective Date solely for the purpose of reviewing and being heard by the Bankruptcy Court, and on any appeal, with respect to applications for compensation and reimbursement of expenses pursuant to section 330 and/or 503(b) of the Bankruptcy Code.

11.10   Severability.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of WestLB, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF
EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING
AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

31

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Notwithstanding the foregoing, the provisions in the Plan relating to releases and exculpations are not severable from the remainder of the Plan.

11.11   <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable and, except as may otherwise be provided in the Restructured Loan Documents, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the federal laws of the United States and, to the extent there is no applicable federal law, the domestic laws of the State of Utah, without giving effect to Utah's principles of conflicts of law.

11.12   <u>Binding Effect</u>.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in Partners and its respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.  The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the term of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity (including, but not limited to, any trustee appointed for the Other Debtors under chapters 7 or 11 of the Bankruptcy Code).

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

11.13    Payment of Statutory Fees.  All fees payable pursuant to 28 U.S.C. § 1930(a)(6)

of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date,

shall be paid on the Effective Date by Partners.  Any Statutory Fees accruing after the

Confirmation Date also shall be paid by the Reorganized Debtor.

11.14    Notices.  Any notice required or permitted to be provided to Partners, the

Creditors' Committee, or WestLB under the Plan shall be in writing and served by (a) certified

mail, return receipt requested, (b) hand delivery, or (c) overnight receipted delivery to be

addressed as follows:

If to Partners:

William Shoaf
Easy Street Partners, LLC
201 Heber Avenue
Park City, Utah 84060

with a copy to

Kenneth L. Cannon II, Esq.
Steven J. McCardell, Esq.
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050

-and-

Michael V. Blumenthal, Esq.
Steven B. Eichel, Esq.
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022

If to Reorganized Debtor or the Disbursing Agent

[To be provided in Plan Supplement]

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

>   If to the Creditors' Committee
>
>       Lon A. Jenkins, Esq.
>       Jeffrey Weston Shields, Esq.
>       JONES WALDO HOLBROOK & MCDONOUGH, P.C.
>       1700 S. Main Street, Suite 1500
>       Salt Lake City, Utah 84101-1644
>
>   If to WestLB:
>
>       WestLB AG
>       1211 Avenue of the Americas
>       New York, NY 10036
>       Attention: Jeff Nelson
>
>       with a copy to
>
>       Richard W. Havel, Esq.
>       SIDLEY AUSTIN LLP
>       555 West Fifth Street, suite 4000
>       Los Angeles, CA  90013

11.15   Retention of Causes of Action/Reservation of Rights.  Except as provided in

Articles 11.2, 11.3, 11.4 and 11.5 of this Plan, nothing contained in the Plan or the Confirmation

Order shall be deemed to be a waiver or relinquishment of any claim (as that term is defined in

section 101(5) of the Bankruptcy Code), rights, causes of action, right of setoff, or other legal or

equitable defense that Partners, the Reorganized Debtor or the Other Debtors may have or

choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code

or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against

any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or

Claim for setoff which seeks affirmative relief against Partners or the Other Debtors, their

officers, directors, or representatives, (ii) any and all claims under chapter 5 of the Bankruptcy

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

Code, (iii) the turnover of any property of Partners or the Other Debtors' estates, (iv) any and all

claims against BayNorth, and (v) any and all claims against Jacobsen, which upon the Effective

Date, shall be the warranty claims against Jacobsen.

11.16   Dismissal of the Creditors' Committee's Action Against WestLB.  As part of the

settlement embodied by this Plan, and without limiting the scope of the releases contained in

Article 11 herein, on the Effective Date, the Creditors' Committee shall be deemed to have

waived, released and relinquished any and all claims, arguments and defenses it might have or

might have asserted against WestLB on behalf of itself, Partners' estate, or any other Entity, and

shall dismiss with prejudice the WestLB Adversary Proceeding.

11.17   Section 506(c) Reservation. Except as to the WestLB Secured Claim, as provided

in the Order On Stipulation Authorizing Use of Cash Collateral entered on October 14, 2009, and

in any subsequent orders approving amendments or extensions to the Stipulation Authorizing

Use of Cash Collateral, Partners and the Reorganized Debtor reserve all rights under section

506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

11.18   Plan Supplement.  The documents comprising the Plan Supplement shall be filed

with the Clerk of the Bankruptcy Court on or before [June 25, 2010].  Upon its filing with the

Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the

Bankruptcy Court during normal court hours or at the Court's website at www.utb.uscourts.gov.

Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to

Partners' bankruptcy counsel.

11.19   Effectuating Documents and Further Transactions.  Upon entry of the

Confirmation Order, Partners and the Reorganized Debtor shall be authorized and are instructed

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

to execute, deliver, file or record such contracts, instruments, releases, indentures and other

agreements or documents and take such actions as may be reasonably necessary or appropriate to

effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE XII.

## Retention of Jurisdiction

12.1    The Bankruptcy Court shall retain exclusive jurisdiction of this case as long as

necessary for the following purposes:

(a)    To determine any and all objections to the allowance, disallowance or
subordination of Claims or any controversy as to the classification of
Claims.

(b)    To determine any and all applications for professional and similar fees and
for the reimbursement of disbursements and expenses.

(c)    To liquidate any disputed, contingent, or unliquidated Claims.

(d)    To determine any and all pending motions and applications for assumption
or rejection of executory contracts and leases and the allowance and
classification of any Claims resulting from the rejection of executory
contracts and leases.

(e)    To determine any and all motions, applications, adversary proceedings,
contested and litigated matters or such other matters over which the
Bankruptcy Court had jurisdiction prior to the Confirmation Date,
including the enforcement, prosecution, litigation, settlement and/or other
disposition of claims and counterclaims of the Debtor and to recover
preferences and fraudulent transfers.

(f)    To enforce the provisions of, and resolve any and all disputes under or
pertaining to the Plan, or the Debtor's bankruptcy case.

(g)    To modify the Plan or to correct any defect, cure any omission or
reconcile any inconsistency in the Plan or in the order of the Bankruptcy
Court confirming the Plan, or to enter such orders as may be necessary to
effectuate the terms and conditions of the Plan to the extent authorized by
the Bankruptcy Code as may be necessary to carry out the purpose and
intent of the Plan.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

(h)     To determine such other matters as may be provided for in the order of the Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the Bankruptcy Code.

(i)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Bankruptcy Case;

(j)     To hear and determine any and all controversies and disputes arising under, or in connection with, the Plan or the order confirming the Plan;

(k)     To adjudicate all controversies concerning the classification of any Claim;

(l)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(m)     To adjudicate all Claims to a security or ownership interest in any Property of  Partners or in any proceeds thereof;

(n)     To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken during the pendency of this bankruptcy case;

(o)     To recover all assets and Property of Partners wherever located, including the prosecution and adjudication of all causes of action available to Partners as of the Confirmation Date;

(p)     To determine all questions and disputes regarding recovery of and entitlement to Partners' assets and determine all claims and disputes between Partners and any other Entity, whether or not subject to an action pending as of the Confirmation Date;

(q)     To enter any order, including injunctions, necessary to enforce the title, rights and powers of Partners and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

(r)     To enter an order or final decree closing and terminating the Bankruptcy Case; and

(s)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof and/or confirming the Plan.

*****PAGE INTENTIONALLY LEFT BLANK*****

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF
EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING
AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

DATED this 10th day of June, 2010.


By:
Annette Jarvis
Peggy Hunt
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Attorneys for WestLB, AG

Richard W. Havel
Christina M. Craige
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, CA  90013

Attorneys for WestLB, AG

# Exhibit B

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500 Annette Jarvis (1649)
        Richard A. Havel  (10759)
Michael V. Blumenthal (mblumenthal@crowell.com) (admitted *pro hac vice*)
Steven B. Eichel (seichel@crowell.com) (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Counsel for Debtors and Debtors in Possession

| | |
|---|---|
| Peggy Hunt (6060) | SIDLEY AUSTIN LLP |
| DORSEY & WHITNEY LLP | 555 West Fifth Street, Suite 4000 |
| 136 South Main Street, Suite 1000 | Los Angeles, CA  90013-1010 |
| Salt Lake City, UT  84101-1685 | Telephone:  (213) 896-6000 |
| Telephone: (801) 933-7360 | Facsimile:  (213) 896-6600 |
| Facsimile: (801) 933-7373 | Email: rhavel@sidley.com |
| Email: jarvis.annette@dorsey.com | |
| Email: hunt.peggy@dorsey.com | |

Attorneys for WestLB, AG

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et. al.* | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:   201 Heber Avenue | ) | Chapter 11 |
|            Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | **[FILED ELECTRONICALLY]** |
| | ) | |

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

# ~~AMENDED~~WESTLB, AG'S PLAN OF REORGANIZATION ~~OF~~FOR EASY STREET PARTNERS, LLC DATED ~~FEBRUARY 18,~~JUNE 10, 2010

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

## TABLE OF CONTENTS

ARTICLE I. Definitions ................................................................................................. 2

ARTICLE II. Treatment of Administrative and Priority Claims ............................................ 11 10

ARTICLE III. Designation of Claims and Interests ................................................................ 12 11

ARTICLE IV. Claims and Interests Impaired Under the Plan ................................................ 13 12

ARTICLE V. Treatment of and Methods of Distribution to Classes Under the Plan ............. 13 12

ARTICLE VI. Provisions as to Disputed Claims and Distributions ....................................... 20 17

ARTICLE VII. Means for Execution of the Plan ................................................................... 24 21

ARTICLE VIII. Executory Contracts .................................................................................... 25 22

ARTICLE IX. Discharge of the Debtor ................................................................................. 28 25

ARTICLE X. Conditions Precedent ...................................................................................... 28 26

ARTICLE XI. General Provisions ........................................................................................ 29 27

ARTICLE XII. Retention of Jurisdiction ............................................................................... 37 35

NYIWDMS: 11484762_4

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF
EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING
AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

## Introduction

~~Easy Street Partners, LLC ("Partners~~WestLB, AG New York Branch ("WestLB") hereby proposes the following plan of reorganization pursuant to § 1121(c) of the Bankruptcy Code. Reference is made to the Disclosure Statement (as defined herein) for results of operations, projections for future operations, risk factors, a summary and analysis of the Plan (as defined herein) and certain related matters. ~~Partners~~WestLB is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined herein).

These cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the United States Bankruptcy Court for the District of Utah, Central Division. The Plan does not contemplate substantive consolidation of Easy Street Partners, LLC ("Partners") with any of the Other Debtors, and this Plan is for Partners only.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from a holder of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of Claims and Interests. ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined herein) and the Plan, ~~Partners~~WestLB expressly reserves its right to alter, amend or modify the Plan, one or more times, before its substantial consummation; provided however, that any amendment or

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

modification made after the Voting Deadline that materially and adversely alters the treatment of
any Class entitled to a distribution under the Plan shall require the approval of either (i) the
Bankruptcy Court or (ii) the affected Class.

# ARTICLE I.
## Definitions

The following terms shall have the respective meanings set forth below.  In all references
herein to any parties, persons, entities or corporations, the use of any particular gender or the
plural or singular number is intended to include the appropriate gender or number as the text may
require.  Any term not defined herein which is defined by the Bankruptcy Code shall have the
meaning ascribed to it in the Bankruptcy Code and otherwise shall have the meaning ascribed to
it in the Disclosure Statement.

1.1    "Administrative Claim" means a claim which is not a secured claim, accruing
from and after the Filing Date, including the fees and expenses of professional persons retained
or to be compensated pursuant to the Bankruptcy Code, and any fees or charges assessed against
the Debtor's estate under Chapter 123, title 28, of the United States Code.

1.2    "Allowed Claim" means a Claim or any portion thereof (a) that has been allowed
by a Final Order, (b) as to which, on or by the Effective Date (i) no proof of claim has been filed
with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is
Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed,
(c) for which a proof of claim in a liquidated amount has been filed pursuant to the Bankruptcy
Code or any order of the Bankruptcy Court and as to which either (x) no objection to its
allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

or any order of the Bankruptcy Court or (y) any objection to its allowance has been settled,

waived through payment or withdrawn, or has been denied by a Final Order or (d) that is

expressly allowed in a liquidated amount in the Plan.

1.3      "Allowed . . . Claim" means an Allowed Claim of the particular type or Class

described.

1.4      "Alternative Funder" means any person or entity other than ~~SCP~~the Plan Funder

that provides funding as required for ~~Partners~~WestLB to confirm this Plan.

1.5      "Assets" means all property of the Estate as defined in section 541 of the

Bankruptcy Code.

1.6      "Ballot" means each of the ballot forms distributed to each holder of an impaired

Claim or Interest on which the holder of such Claim or Interest is to indicate acceptance or

rejection of this Plan.

1.7      "Bankruptcy Code" means Title 11, United States Bankruptcy Code, 101 *et seq.,*

commonly referred to as the Bankruptcy Code.

~~1.8      "BayNorth" means BayNorth Realty Fund VI, LP.~~

~~1.9      "BayNorth Adversary Proceeding" means the adversary proceeding commenced~~

~~by the Debtors on September 15, 2009 in the Bankruptcy Court against BayNorth, Adversary~~

~~Proceeding Number 09-02422.~~

~~1.10     "BayNorth Transfer" means the $5.6 million disbursement from the real estate~~

~~sales escrow account to BayNorth on or about February 18, 2008.~~

1.8      ~~1.11~~ "Bankruptcy Court" means the United States Bankruptcy Court for the

District of Utah, Central Division or such other court as may have jurisdiction over Partners'

Chapter 11 bankruptcy case.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

1.9  "BayNorth" means BayNorth Realty Fund VI, LP.

1.10  ~~1.12~~ "Business Day" means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.11  ~~1.13~~ "Claim" means a claim against Partners as defined in § 101(5) of the Bankruptcy Code.

1.12  ~~1.14~~ "Class" means a group of claims or interests, consisting of Claims or Interests which are substantially similar to each other, as classified pursuant to the Plan.

1.13  "CloudNine" means CloudNine Resorts/Sky Lodge Management, LLC and CloudNine Resorts/Sky Lodge Development, LLC.

1.14  ~~1.15~~ "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.15  ~~1.16~~ "Confirmation Order" means the order of the Bankruptcy Court approving the Plan pursuant to § 1129 of the Bankruptcy Code and related sections thereof.

~~1.17  "Control Account(s)" means the accounts maintained by Partners, including an operating account, Sales Proceeds Account, sales deposit account and lockbox account, which are pledged to WestLB, and will continue to be maintained by the Reorganized Debtor.~~

1.16  "Creditors' Committee" means the Official Committee of Unsecured Creditors for the Debtors' cases appointed by the United States Trustee on or about October 2, 2009.

1.17  ~~1.18~~ "Cure Claim" has the meaning ascribed to it in Article 8.5 of the Plan.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

1.18   ~~1.19~~ "Disbursing Agent" means the Person or Entity designated in the Plan Supplement to disburse funds in accordance with the terms of this Plan. The Disbursing Agent may be the Reorganized Debtor.

1.19   ~~1.20~~ "Debtor" means Easy Street Partners, LLC.

1.20   ~~1.21~~ "Disclosure Statement" means the Amended Disclosure Statement With Respect to Amended Plan of Reorganization of Easy Street Partners, LLC Dated February 18, 2010.

1.21   "Disputed Claim" means (a) any Claim as to which Partners or any other party-in-interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code or the Bankruptcy Rules, or any claim otherwise disputed by Partners, the Creditors' Committee, or the Reorganized Debtors or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, and (b) ~~and~~ any Claim scheduled by Partners as contingent, unliquidated or disputed, where a proof of claim has not been timely filed.

1.22   "Effective Date" means the first business day after the 30th day subsequent to the Confirmation Order becoming a Final Order. Notwithstanding the foregoing, the Effective Date may occur before the first business day after the 30th day subsequent to the Confirmation Order becoming a Final Order if the conditions contained in Article 10.2 of the Plan have been satisfied or waived in accordance with Article 10.3, or may be extended beyond that date, each in the sole discretion of WestLB. WestLB shall file a notice in the Bankruptcy Court informing parties-in-interest of any change in the Effective Date.

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

5

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

1.23    "Entity" shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

1.24    "Estate" means the Debtor's property as defined in section 541 of the Bankruptcy Code.

~~1.25    "Excess Cash Flow" means cash remaining after all required payments to West LB, Jacobsen and Allowed Administrative and Priority Claims are paid, with a reasonable reserve equal to the mandatory payments due to the foregoing senior creditors over the next three (3) months, plus thirty (30) days of necessary expenses to operate the project.~~

1.25    ~~1.26~~ "Final Order" means an order or a judgment which has not been reversed or stayed and as to which (i) the time to appeal or to seek review, rehearing or certiorari has expired pursuant to Rule 8002 of the Bankruptcy Rules and (ii) (a) no appeal or petition for review, rehearing or certiorari is pending or (b) in the case of appeal, any such appeal or petition for review, rehearing or certiorari has been dismissed.

1.26    ~~1.27~~ "General Unsecured Claim" means a Claim, other than a Claim held by CloudNine, which is not entitled to priority under § 507(a) of the Bankruptcy Code and which is not secured by a valid, perfected security interest or lien and including a Claim, if any, arising from the rejection of an executory contract.

1.27    ~~1.28~~ "Impaired" when used with respect to any Claim, Interest or Class, has the same meaning as that contained in § 1124 of the Bankruptcy Code.

1.28    ~~1.29~~ "Interest" means the membership rights of the equity interests holders in Partners prior to the Confirmation Date.

1.29    ~~1.30~~ "Interest Holder" means Easy Street Mezzanine, LLC.

1.30    ~~1.31~~ "Jacobsen" means Jacobsen National Group, Inc.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

1.31   1.32 "Jacobsen Secured Claim" means the Claim of Jacobsen against Partners in the amount of $1.5 million, which Claim is secured by liens on and against the Property.

1.33   "Legal Fees" means, with respect to any engagement of any attorney by any client, reasonable market-based fees incurred by the attorney on behalf of the client.

1.34   "Litigation Costs" means, with respect to any engagement, reasonable market-based expenses other than Legal Fees incurred by the attorney on behalf of the client.

1.35   "Maturity Date" means the date the balance of the loan from WestLB is due and owing, which date shall be either December 31, 2011 or December 31, 2013. The Maturity Date shall be extended from December 31, 2011 through December 31, 2013, if (i) the Reorganized Debtor amortizes the Allowed WestLB Claim pursuant to the five (5) year business plan annexed to the Disclosure Statement as Exhibit 2, and (ii) the loan to value ratio is equal or greater than such ratio as of the Confirmation Date.

1.36   "Mezzanine Escrow" means an amount of money held by the Disbursing Agent for distribution pursuant to a plan of reorganization or liquidation to be filed by Mezzanine subsequent to the Confirmation Date or as otherwise ordered by the Bankruptcy Court. The amount of the Mezzanine Escrow shall be equal to the difference between the appraised value of Partners' assets as determined by the Bankruptcy Court and the aggregate amount of all Allowed Claims, Administrative Claims and Priority Claims against Partners.

1.37   "Modified Loan Documents" means loan documents between Partners and WestLB that modify existing loan documents reflecting the terms of the Plan, which documents shall be executed on or before the Effective Date and annexed to the Plan Supplement and which shall become binding on the Reorganized Debtor on and after the Effective Date.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

1.38    "Net Sale Proceeds" means the proceeds from the sale or liquidation of a Unit or other Asset of Partners, minus reasonable and customary closing costs.  Closing costs shall include, without limitation, professional fees, brokerage fees and any non-exempt transfer taxes or fees.

1.39    "Net Recovery" means, with respect to the BayNorth Adversary Proceeding or such other action commenced by Partners or the Reorganized Debtor, all money and all benefits measurable or payable in money, received on account of any settlement, recovery, or judgment entered, less (a) Legal Fees and Litigation Costs incurred in connection with such proceeding and (b) applicable income taxes that will be incurred by Partners for the settlement, recovery, or judgment of such action or proceeding.

1.32    "Other Debtors" means Easy Street Mezzanine, LLC and Easy Street Holding, LLC.

1.33    1.40 "Other Secured Claims" means the Claims of secured creditors other than WestLB, Jacobsen and the Subcontractors.

1.34    1.41 "Other Secured Creditors" means the holders of Other Secured Claims.

1.35    1.42 "Partners" means Easy Street Partners, LLC.

1.36    1.43 "Person" shall have the meaning as set forth in §101(41) of the Bankruptcy Code.

1.37    1.44 "Petition Date" means September 14, 2009, the date on which the Debtor filed its Chapter 11 petition.

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF
EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING
AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

8

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

1.38   1.45 "Plan" means this plan of reorganization, and all exhibits hereto, as the same

may be modified or amended from time to time as and to the extent permitted herein or by the

Bankruptcy Code.

1.39   1.46 "Plan Funder" means the person or entity that provides funding as required

for Partners WestLB to confirm this Plan.  SCP, which will be WestLB or an entity formed by

SCP WestLB or an affiliate of SCP will be the Plan Funder.  An entity formed by SCP will own a

controlling interest of the Reorganized Debtor WestLB.

1.40   1.47 "Plan Supplement" means the compilation of information, documents and

forms of documents specified in the Plan that shall be filed with the Clerk of the Bankruptcy

Court on or before March 15, 2010. [June 25, 2010].

1.41   1.48  "Priority Claim" means the portion of a Claim entitled to priority under §

507(a) of the Bankruptcy Code.

1.42   1.49 "Priority Tax Claim" means a claim of a governmental unit of the kind

specified in sections 502(i) and 502(a)(8) of the Bankruptcy Code.

1.43   1.50 "Professional" means a person retained by order of the Court pursuant to §§

327 or 1103 of the Bankruptcy Code and whose compensation is governed by § 330 of the

Bankruptcy Code.  The term "Professional" shall not include the Disbursing Agent or the United

States Trustee.

1.44   1.51 "Professional Claims" means the Allowed Claims of a Professional retained

in these bankruptcy cases for compensation for services rendered or reimbursement of costs,

expenses or other charges and expenses incurred on or after the Petition Date and prior to and

including the Effective Date.

1.45    1.52 "Property" means the real property and buildings and improvements thereon owned by Partners located at 201 Heber Avenue in Park City, Utah, a/k/a The Sky Lodge Hotel and 660 Main Street, Park City, Utah 84060.

1.46    1.53 "Record Date" means February 18, 2010, the date approved ofset by the Bankruptcy Court closing the claims register for purposes of determining the identity of the holders of Claims and Interests that, who are entitled to vote to accept or reject the Plan, which shall be set forth in the order approving the Disclosure Statement.

1.54    "Redemption Price" means the sale price that WestLB intends to sell the WestLB Secured Claim to a third party, and pursuant to which the Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, shall have the right of first refusal.

1.47    1.55 "Released Parties" has the meaning ascribed to it in section 10.511.2 of the Plan.

1.48    1.56 "Reorganized Debtor" means Partners after the Effective Date of the Plan or such other Entity formed by the Plan Funder or the Alternative Funder.  In either event, Partners' Assets will vest into the Reorganized Debtor as of the Effective Date.

1.57    "Sales Proceeds Account" means one of the Control Accounts into which 80% of the Net Sale Proceeds received by the Reorganized Debtor from the sale of each Unit will be deposited.

1.49    "Restructured Loan Documents" means loan documents to be executed by and between the Reorganized Debtor and WestLB, which documents restructure the WestLB Secured Claim on terms mutually acceptable to WestLB and the Plan Funder or Alternative Funder, as

applicable, and which documents shall be executed on or before the Effective Date and which shall become binding on the Reorganized Debtor on and after the Effective Date.

1.50   ~~1.58~~ "Scheduled" means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.51   ~~1.59~~ "Schedules" means the schedules of assets and liabilities filed by Partners on October 15, 2009 in accordance with Bankruptcy Rule 1007(b)~~, filed by the Debtor with the Bankruptcy Court~~ (as they may be amended from time to time in accordance with Bankruptcy Rule 1009).

~~1.60   "SCP" means Strategic Capital Partners, LLC.~~

1.52   ~~1.61~~ "Secured Claim" means a Claim secured by a valid, perfected and enforceable lien on the Assets, to the extent of the value of the interest of the holder of such Secured Claim in such Assets as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code.

1.53   ~~1.62~~ "Secured Creditor" means the holder of a claim which is secured by a valid, perfected and enforceable lien on property of the Debtor, to the extent of the value of the interest of the holder of such secured claim in such property as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code or as acknowledged in writing by the Debtor.

1.54   ~~1.63~~ "Subcontractors" means the persons who or entities that contracted with Jacobsen and provided services or materials in connection with construction of the Property.

1.55   ~~1.64~~ "Third Party Units" has the meaning ascribed to it in section 5.2(c) of the Plan.

1.56   "365 Diligence" has the meaning ascribed to it in section 8.6 of the Plan.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

1.57    1.65 "Unit" means a one-eighth fractional share of one of the 22 residential units at the Property entitling the owner to two ski weeks (mid –December through mid-April) each year, plus 21 days throughout the year.  There are 176 Units at the Property, of which 113 Units were sold prior to the Petition Date.

1.58    1.66 "WestLB" means WestLB AG, New York Branch, the secured lender of in its capacity as agent for itself and such other co-lenders as might exist from time to time under the WestLB Loan Documents providing secured funding to Partners.

1.59    1.67 "WestLB Adversary Proceeding" means the adversary proceeding commenced on January 12, 2010, by the Creditors' Committee against WestLB in the Bankruptcy Court seeking to (i) equitably subordinate the claims of WestLB to the Claims of all unsecured creditors of Partners and (ii) avoid Partners' waiver of its claims against WestLB and recover such claims for the benefit of Partners' estate.

1.60    1.68 "WestLB Loan Documents" means those loan documents giving rise to the WestLB Secured Claim, as further identified in and including the Cash Collateral Stipulation (as defined in the Disclosure Statement).

1.61    "WestLB Secured Claim" means the Claim of WestLB against Partners in the Allowed amount no less than $15,164,331.17 as of the Petition Date16.4 million, pursuant to and consistent with § 506 of the Bankruptcy Code, which Claim is secured by a lien on and against the Property and substantially all of Partners' other assetsAssets.

1.69    "Zoom" means that portion of the Property consisting of the restaurant owned by Partners and located at 660 Main Street, Park City, Utah 84060.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

## ARTICLE II.

### Treatment of Administrative and Priority Claims

2.1     With respect to Administrative Claims other than Administrative Claims of Professionals, except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment, the Allowed Administrative Claims shall be paid (i) in the ordinary course of business, or (ii) on the Effective Date (or as soon as practicable thereafter) if not an ordinary course claim, or (iii) within ten (10) days of entry of a Final Order allowing such Administrative Claim.

2.2     With respect to Administrative Claims of Professionals, the Allowed Administrative Claims of Professionals shall be paid in full on the later of: (i) the Effective Date or (ii) ~~fourteen~~fifteen (~~14~~15) days after entry of an order of the Court approving the allowance of such fees and expenses of such Professional on a final basis pursuant to section 330 of the Bankruptcy Code.

2.3     With respect to the Administrative Claim of the United States Trustee, Partners shall pay all fees due and payable under section 1930 of Title 28 within ten (10) days after the Effective Date.  In addition, Partners or the Reorganized Debtor shall pay the United States Trustee quarterly fees due and payable on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business until entry of a Final Decree, dismissal of the case or conversion of the case to a case under chapter 7, as such obligations become due.

2.4.    With respect to Priority Claims, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

13

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

shall receive equal quarterly Cash Payments over a period not exceeding five (5) years from the Petition Date, with the first payment to occur on the first business day of the third month after the Effective Date, at an interest rate of 6% or a rate agreed upon between the Reorganized Debtor and the taxing authority or otherwise set by the Bankruptcy Court.

2.5     All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

2.6     All other Priority Claims shall be paid in full on the Effective Date.

## ARTICLE III.

### Designation of Claims and Interests

The following Classes of Claims and Interests are designated pursuant to and in accordance with § 1123(a)(1) of the Bankruptcy Code:

3.1      "Class 1 Claim" shall consist of the Allowed WestLB Secured Claim.

3.2     "Class 2 Claim" shall consist of the Allowed Jacobsen Secured Claim.

3.3     "Class 3 Claims" shall consist of the All Other Allowed Secured Claims against Partners.

3.4     "Class 4 Claims" shall consist of the Allowed General Unsecured Claims against Partners.

3.5     "Class 5 Claims" shall consist of the Allowed Claims of the owners of the Third Party Units.

3.6     "Class 6 Claims" shall consist of the Allowed CloudNine Claims against Partners.

3.7     3.6 "Class 67 Interests" shall consist of the Interests in Partners.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

## ARTICLE IV.

### Claims and Interests Impaired Under the Plan

4.1     Class 1 Claims, Class 2 Claims, and Class 4 Claims, and Class 6 Interests are

impaired under the Plan and are entitled to vote on the Plan.  Class 5 Claims are treated as

impaired under the Plan and are entitled to vote on the Plan.  Class 6 Claims and Class 7 Interests

are impaired but will receive no distribution under the Plan and are therefore conclusively

deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE V.

### Treatment of and Methods of Distribution to Classes Under the Plan

5.1     Class 1 Claim.  InThe WestLB Secured Claim shall be Allowed in the full amount

due and owing under the WestLB Loan Documents, in an amount no less than $16.4 million and

shall be accorded the following treatment:

(a)     Subject to 5.1(b), in full and complete satisfaction, settlement and release
of and in exchange for the Allowed WestLB Claim, the Allowed Class 1
Claim shall be paid as follows:Secured Claim, WestLB shall receive on
the Effective Date or as soon thereafter as is reasonably practicable a
payment in cash equal to all accrued and unpaid fees and expenses
(currently estimated at $300,000), and WestLB and the Plan Funder or the
Alternative Funder, as the case may be, shall agree upon the form and
content of the Restructured Loan Documents governing the terms and
treatment of the Allowed WestLB Secured Claim.

(a)     The Allowed WestLB Secured Claim shall accrue interest at 3-month
LIBOR plus 6%; provided however, the maximum rate shall be capped at
9% ("Contract Rate"), until paid in full.

(b)     WestLB shall retain a lien on all of Partners' assets and shall be provided
with a lien on all of the Reorganized Debtors' assets and "Control
Accounts" shall be established similar to those currently in effect.
Modified Loan Documents shall be executed on or before the Effective
Date, which shall be reasonably acceptable to Partners, WestLB and the
Plan Funder (or Alternative Funder) or as otherwise approved by the
Bankruptcy Court.Notwithstanding the foregoing, the Allowed WestLB
Secured Claim shall only be released as to the Debtor, and the treatment
provided in respect of the Allowed WestLB Claim shall not be deemed to

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

satisfy such Claim for the purposes of determining liability of any third party in respect of such Claim, and no treatment provided in respect of the Allowed WestLB Secured Claim shall limit or impair or be deemed to limit or impair any rights and claims WestLB may hold against third parties in respect of the Allowed WestLB Secured Claim.

(c)   The Allowed WestLB Secured Claim shall be paid as follows:  Monthly interest payments subsequent to the Effective Date shall be paid on the first business day of each month, one month in arrears, on the outstanding principal balance of the Allowed WestLB Secured Claim through December 31, 2010 at the Contract Rate.  Thereafter, monthly payments shall be made according to a 20-year amortization schedule; provided, however, all or a portion of the monthly payments constituting amortization of principal (but not the portion of the monthly payments constituting interest) shall be reduced by payments previously made to WestLB after the Effective Date from the sale of Units until the loan is repaid.  Sums remaining due and owing on the Maturity Date shall be paid in full.  The Maturity Date shall be extended from December 31, 2011 through December 31, 2013, if (i) the Reorganized Debtor amortizes the Allowed WestLB Claim pursuant to the five (5) year business plan annexed to the Disclosure Statement as Exhibit 2, and (ii) the loan to value ratio is equal to or greater than such ratio as of the Confirmation Date.

(d)   WestLB shall receive 80% of the Net Sale Proceeds received by the Reorganized Debtor from the sale of each Unit, each of which sales must exceed a minimum release price to be reasonably acceptable to WestLB or otherwise ordered by the Bankruptcy Court.  The remaining 20% of Net Sale Proceeds shall be deposited into a Control Account, provided, however, said sums may be utilized in connection with costs of running the Property and other Plan payments.

(e)   In the event of the sale of the restaurant Zoom, which sale must exceed a minimum price reasonably acceptable to WestLB or as otherwise ordered by the Bankruptcy Court, along with the underlying property, WestLB shall receive 60% of the Net Sale Proceeds received by the Reorganized Debtor.  The remaining 40% of the Net Sale Proceeds shall be utilized by the Reorganized Debtor for expenses relating to operations of the Sky Lodge, payments in connection with the Plan, or repayment of loans or distribution to the Plan Funder or Alternative Funder (provided all payments under the Plan are current).

(f)   Prepayment of the loan to WestLB shall be allowed without penalty.

(g)   The Reorganized Debtor, the Plan Funder or the Alternative Funder shall have the right of first offer to purchase or satisfy the WestLB Secured Claim at a discount or par, as the case may be, in the event WestLB seeks to sell or assign its claim to a third party.  Upon the Reorganized Debtor ,

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

16

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

Plan Funder or Alternative Funder making an offer ("Offer") to purchase the WestLB Secured Claim, WestLB shall accept or reject such Offer within ten (10) days of receipt of the Offer. If WestLB accepts the Offer, then the Reorganized Debtor, the Plan Funder or Alternative Funder, as the case may be, shall pay the amount in the Offer to WestLB within sixty (60) days in full and complete satisfaction of the WestLB Secured Claim. If WestLB rejects the Offer, then prior to WestLB attempting to sell the WestLB Secured Claim to any Third Party, it must make a counter-offer ("Counter-Offer") to the Reorganized Debtor, the Plan Funder or Alternative Funder, as the case may be, who shall have ten (10) days to accept or reject the Counter-Offer. If the Reorganized Debtor, Plan Funder or Alternative Funder rejects the Counter-Offer, then WestLB may sell the WestLB Secured Claim at an amount equal to or greater than the Counter-Offer to a third party. If WestLB receives an offer from a third party to purchase the WestLB Secured Claim for an amount less than the Counter-Offer (the "Third Party Offer"), then WestLB must first offer the Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, the opportunity to purchase or satisfy the WestLB Secured Claim irrespective of whether the WestLB Secured Claim is being sold by itself or in a package with other loans. WestLB shall promptly notify the Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, of its intent to accept a Third Party Offer for its outstanding loan balance and specify the amount of the Third Party Offer. The Reorganized Debtor, the Plan Funder or the Alternative Funder, as the case may be, shall have ten (10) days to elect to purchase the WestLB Secured Party Claim at the amount of the Third Party Offer and have sixty (60) days to close the purchase or satisfaction of the WestLB Secured Claim for the amount of the Third Party Offer.

(h) Any Net Recovery received in connection with the BayNorth Transfer shall be paid 70% to WestLB amortizing the outstanding indebtedness to WestLB and 30% to the Reorganized Debtor for utilization of Property expenses, payment to Allowed Claims of creditors pursuant to the Plan or utilized by the Reorganized Debtor as determined by the Plan Funder or the Alternative Funder, as the case may be. To the extent claims of creditors, other than WestLB, have been fully paid, such remaining sums shall be free cash for utilization by the Reorganized Debtor.

(i) Upon payment of the Allowed WestLB Secured Claim in full, the lien of WestLB on the Property shall be deemed released and satisfied and the holder of the Allowed WestLB Claim shall execute such documents releasing its liens on the Property and all Assets of the Reorganized Debtor as is requested by and reasonably acceptable to Partners.

(j) Notwithstanding any other provision of the Plan to the contrary, the CloudNine Resorts LLC guaranty of WestLB's loan to Partners shall

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

remain in place and shall be reaffirmed on the Effective Date, provided however, (a) the only triggering event of a default against CloudNine Resorts LLC shall be prospective defaults subsequent to the Effective Date and all prior defaults, if any, are waived, and (b) in the event WestLB accepts payment on its claim in an amount less than its Allowed Claim, the guaranty shall be cancelled and not enforceable.

(c) (k) Class 1 is impaired by the Plan. WestLB, as the sole holder of the Class 1 Claim, is entitled to vote to accept or reject the Plan.

5.2    Class 2 Claim.

(a) In full and complete satisfaction, settlement and release of and in exchange for the Allowed Jacobsen Secured Claim, as well as all claims of Jacobsen's Subcontractors, whether they filed mechanics' liens or any other claims Claims against Partners, Easy Street Mezzanine, LLC, Easy Street Holding, LLC and the owners of Third Party Units, pursuant to sections 5.2(a), 5.2(d) and 5.2(e), the holder of the Allowed Jacobsen Secured Claim shall have an Allowed Secured Claim in the amount of $1.5 million, which shall accrue interest at 8% simple interest from and after the Confirmation Date on the outstanding principal balance of the Allowed Jacobsen Secured Claim, and the Claim shall be treated as follows:

> The holder of the Allowed Jacobsen Secured Claim shall be paid a discounted cash payment on the Effective Date equal to $1,330,000 and shall utilize the funds it receives to pay its Subcontractors, including, but not limited to, Gunthers Comfort Air, in full and complete satisfaction, settlement and release of all Claims of Jacobsen and each of its Subcontractors against the Debtor and the owners of the Third Party Units.

(b) Jacobsen and its Subcontractors shall be enjoined from foreclosing on Assets of the Reorganized Debtor, provided that the Reorganized Debtor has made the $1,330,000 payment provided in the Plan to Jacobsen.

(c) All pending actions against Units owned by third parties (the "Third Party Units") and the third parties owning the Units shall be stayed for a period from the Confirmation Date to the date of payment of the $1,330,000.

(d) Upon Jacobsen's receipt of the $1,330,000, Jacobsen, its Subcontractors and the owners of the Third Party Units shall be deemed to have mutually released each other with respect to Jacobsen's lien and any other lien of a Subcontractor on the particular Unit and Jacobsen's and the Subcontractor's work on the particular Unit, (ii) the lien of Jacobsen and any Subcontractor on the particular Third Party Unit shall be deemed

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

18

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

released and satisfied and Jacobsen and the Subcontractors, as applicable, shall execute and timely record such documents releasing its lien with respect to that particular Third Party Unit (irrespective of source of payment), and (iii) Partners and the owners of the Third Party Units shall be dismissed with prejudice from the litigation commenced by Jacobsen and the Subcontractors to enforce their liens.

(e) Upon satisfaction of the Allowed Jacobsen Secured Claim, the liens of Jacobsen and all Subcontractors on the Property and the Third Party Units shall be deemed released and satisfied and the holder of the Allowed Jacobsen Secured Claim and all Subcontractors shall execute and timely record such documents releasing their liens on the Property, and all Assets of the Reorganized Debtor and all the Third Party Units, as is requested by and reasonably acceptable to the Reorganized Debtor.

(f) Under any circumstance, upon payment to Jacobsen of $4,500 (the "Unit Release Price") for a particular Third Party Unit, then (i) Jacobsen, its Subcontractors and the owner of the Third Party Unit for which the Unit Release Price is received by Jacobsen shall be deemed to have mutually released each other with respect to Jacobsen's lien and any other lien of a Subcontractor on the particular Third Party Unit and Jacobsen's and the Subcontractor's work on the particular Third Party Unit, (ii) the lien of Jacobsen and any Subcontractor on the particular Third Party Unit shall be deemed released and satisfied and Jacobsen and the Subcontractor, as applicable, shall execute and timely record such documents releasing its lien with respect to that particular Third Party Unit (irrespective of source of payment), and (iii) the owner of the Third Party Unit shall be dismissed with prejudice from litigation commenced by Jacobsen and any Subcontractor to enforce their liens. Upon payment of each Unit Release Price (irrespective of who made the payment), the Reorganized Debtor will be credited for the amount paid, and such amount shall reduce the principal amount of the Allowed Jacobsen Secured Claim accordingly.  In the event an owner of a Third Party Unit pays the Unit Release Price, the Debtor or Reorganized Debtor, as the case may be, shall promptly reimburse the owner of the applicable Third Party Unit the Unit Release Price paid.

(g) The treatment provided herein to the holder of the Allowed Jacobsen Secured Claim shall be in full satisfaction, discharge and release of all of the obligations to the holders of the Allowed Jacobsen Secured Claim as well as Claims of the Subcontractors.

(h) Notwithstanding anything contained in the Plan, the Reorganized Debtor shall retain all warranty claims against Jacobsen.

(i) Class 2 is impaired by the Plan. Jacobsen, as the sole holder of the Class 2 Claim, is entitled to vote to accept or reject the Plan.

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

19

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

5.3    Class 3 ~~Claim~~Claims.

(a)    In full and complete satisfaction, settlement and release of and exchange
for the Allowed Other Secured Claims, on the Effective Date, except to
the extent that the holder of an Other Secured Claim agrees to a less
favorable treatment, all Other Secured Creditors shall be separately
classified and their collateral will either be assigned to such Other Secured
Creditor as the indubitable equivalent of such claim or the secured claim
shall be reinstated or rendered unimpaired in accordance with section 1124
of the Bankruptcy Code, notwithstanding any contractual provision or
applicable nonbankruptcy law that entitles the holder of an Other Secured
Claim to demand or receive payment of such Claim prior to its stated
maturity from and after the occurrence of a default.

(b)    Class 3 is unimpaired by the Plan. Each holder of an Allowed Class 3
Claim is presumed to have accepted the Plan and is not entitled to vote to
accept or reject the Plan.

5.4    Class 4 Claims.  In full and complete satisfaction, settlement and release of and in
exchange for the Allowed General Unsecured Claims, each holder of an Allowed General
Unsecured Claim, except to the extent such holder agrees to a less favorable treatment, shall
have the option of electing one of the following alternatives to be elected on their Ballot in
voting on the Plan:

(a)    Option ~~1:  Other than the Claims of CloudNine Resorts – Sky Lodge
Management, LLC ("Sky Lodge Management") and CloudNine Resorts –
Sky Lodge Development, LLC ("Sky Lodge Development"), holders~~1.
Holders of Allowed Class 4 Claims shall receive payment of 100% of their
Allowed Claim in equal quarterly payments, with the first payment due on
October 15, 2010.  Successor quarterly payments shall be on January 15th,
April 15th and July 15th with the last payment July 15, 2013, which is
approximately 3.5 years from the Effective Date.  ~~Additionally, holders of
Class 4 Claims shall receive 6% simple interest on the outstanding balance
owed on each Class 4 Claim with such interest to be paid from the
Mezzanine Escrow, provided, that funds are available in the Mezzanine
Escrow as of July 15, 2013 to pay such interest, after deducting the
expenses (including attorney's fees and costs) incurred in connection with
litigating the BayNorth Adversary Proceeding (which expenses are paid
from the Mezzanine Escrow),~~

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

(b)  Option 2. ~~Other than the Claims of Sky Lodge Management and Sky Lodge Development, holders~~Holders of Allowed Class 4 Claims shall receive payment of a discounted amount equal to 60% of their Allowed Claim on the thirtieth (30th) day after the Effective Date.

(c)  In no event shall the present value of cash accorded to holders of Allowed Class 4 Claims under Option 1 and Option 2 exceed $933,609.05.[1]

(d)  ~~(c)~~If the holder of an Allowed General Unsecured Claim does not vote or fails to make an election of either option 1 or 2 or attempts to elect to split its Allowed General Unsecured Claim between options 1 and 2, then such holder of an allowed General Unsecured Claim shall be paid in accordance with option 1 as set forth in Article 5.4(a) above.

~~(d)  The claim of Sky Lodge Management and Sky Lodge Development shall be paid pursuant to an agreement between the Plan Funder or Alternative Funder and the holder of the Claim, provided, however, that such Claim shall not be paid over a period less than four (4) years from the Effective Date.~~

(e)  Class 4 is impaired by the Plan.  Each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

5.5  Class 5 Ownership of Third Party Units.

(a)  In full and complete satisfaction, settlement and release of and in exchange for the Allowed Claims of the Owners of the Third Party Units, upon payment of the Allowed Jacobsen Secured Claim, pursuant to section 5.2(a) of the Plan, all of the liens on the Third Party Units shall be released, the lawsuit by Jacobsen dismissed with prejudice, and the Claims of the owners of the Third Party Units shall be fully satisfied, released and discharged.

(b)  In the event an owner of a Third Party Unit pays the Unit Release Price, the Debtor or Reorganized Debtor, as the case may be, shall promptly reimburse the owner of the applicable Third Party Unit the Unit Release Price paid.

(c)  Class 5 is treated as impaired under the Plan.  Each holder of an Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

5.6  Class 6 ~~Interests.~~CloudNine Claims.

(a)  In ~~full and complete satisfaction, settlement and release of and in exchange for the Interest in Partners, the holder of the Allowed Interest in Partners shall receive an amount equal to the difference between the appraised value of Partners' assets as determined by the Bankruptcy Court~~

---

[1] Subject to due diligence review of any outstanding claims, such as rejection damages claims.

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF
EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING
AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

and the allowed amount of all Claims, Administrative Claims and Priority Claims against Partners, which shall be posted in the Mezzanine Escrow. On the Effective Date, the Interest in Partners shall be cancelled. accordance with (i) the Consent and Subordination of Development Agreement among Partners, WestLB, and CloudNine Resorts/Sky Lodge Development, LLC and (ii) the Consent and Subordination of Management Agreement among Partners, WestLB, and CloudNine Resorts/Sky Lodge Management, LLC, both of which agreements are dated as of March 30, 2006, CloudNine has agreed that "any right or remedy [CloudNine] may have to collect . . . fees, charges or indemnifications from [Partners] shall be subordinated to the indefeasible payment in full in cash of all amounts due to [WestLB] under the [WestLB] Loan Documents." Because the WestLB Secured Claim will neither be paid in full nor paid in full in cash, CloudNine shall not be entitled to, nor receive, any distribution, nor shall it retain any property or interest in property on account of such Class 6 Claims. On and as of the Effective Date, all of the Class 6 Claims shall be extinguished, cancelled and discharged.

(b) The Mezzanine Escrow will be posted with the Disbursing Agent and utilized to fund the BayNorth Adversary Proceeding. Any funds remaining upon resolution of the BayNorth Adversary Proceeding shall not be disbursed until the holders of Allowed Class 4 General Unsecured Claims are either (a) paid a discounted amount equal to 60% of their Allowed Claim on the thirtieth (30th) day after the Effective Date, or (b) paid in full, depending upon their elected treatment. For those holders of Class 4 Claims that elect to be paid in full, such holders shall also receive 6% simple interest on the outstanding balance owed on each Class 4 Claim with such interest to be paid from the Mezzanine Escrow, provided, that funds are available in the Mezzanine Escrow as of July 15, 2013 to pay such interest, after deducting the expenses (including attorney's fees and costs) incurred in connection with litigating the BayNorth Adversary Proceeding (which expenses are paid from the Mezzanine Escrow). Class 6 is impaired by the Plan and will receive no distribution. Holders of the Allowed Class 6 Claims are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

5.7    Class 7 Interests.

(a) On and as of the Effective Date, all of the Class 7 Interests shall be extinguished, cancelled and discharged. The Interest Holder shall not be entitled to, nor receive, any distribution, nor shall it retain any property or interest in property on account of such Class 7 Interests pursuant to Section 1129(b)(2)(C) of the Bankruptcy Code.

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF
EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING
AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

22

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

(b)  (e) Class 67 is impaired by the Plan and will receive no distribution. Mezzanine, as the sole holder of the Allowed Class 6 Interest is7 Interests is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

## ARTICLE VI.

### Provisions as to Disputed Claims and Distributions

6.1    Disputed Claims.

(a)  In connection with distributions to be made in respect of Allowed Claims, there shall be reserved from any distribution to the holder of a Disputed Claim the amount of distribution which then otherwise would be paid in respect to such Disputed Claim on the Effective Date if the full amount of such Claim were deemed to be an Allowed Claim or such lesser amount as the Bankruptcy Court may determine.

(b)  Pending the determination of such Disputed Claim by the Bankruptcy Court, Partners shall deposit in a separate bank account funds equal to the amount so reserved or such lesser amount as the Bankruptcy Court may have determined within fifteen (15) business days after the date on which such amount would otherwise be distributed to the holder of such Claim. Such funds shall be held by the Disbursing Agent in such separate bank account as long as such Claim remains a Disputed Claim.

(c)  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtor, or the Disbursing Agent shall, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, except as otherwise provided in the Plan, distribute to the holder of such Allowed Claim an amount, without any interest thereon, that provides such holder with the same percentage recovery, as of such date, as holders of Claims in the class that were Allowed on the Effective Date.

(d)  To the extent that a Disputed Claim is expunged or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.  Any Disputed Claim, for which a proof of claim has not been deemed timely filed as of the Effective Date, shall be disallowed.

(e)  Any monies remaining on deposit with respect to any Disputed Claim after its resolution or determination by the Bankruptcy Court shall be returned to the Reorganized Debtor.

6.2    Resolution of Disputed Claims.  The Reorganized Debtor shall have the right to

the exclusion of all others (except as to applications for allowances of compensation and

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

reimbursement of expenses under sections 328, 330 and 503 of the Bankruptcy Code) to make,
file and prosecute objections to Claims. The Reorganized Debtor shall serve a copy of each
objection upon the holder of the Claim to which the objection is made as soon as practicable
(unless such Claim was already the subject of a valid objection by the Debtors), but in no event
shall the service of such an objection be later than 120 days after the Effective Date, unless such
date is extended by order of the Bankruptcy Court. The Bankruptcy Court, for cause, may
extend the deadline on the request of the Reorganized Debtor. All objections shall be litigated to
a Final Order except to the extent that the Reorganized Debtor elects to withdraw such objection,
or the Reorganized Debtor and the holder of the Disputed Claim compromise, settle or otherwise
resolve any such objections, in which event they may settle, compromise or otherwise resolve
any Disputed Claim without further order of the Bankruptcy Court.

6.3     Setoffs.  To the extent permitted under applicable law, the Reorganized Debtor
may set off against or recoup from the holder of any Allowed Claim and the distributions to be
made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on
account of such Allowed Claim), the claims, rights and causes of action of any nature that the
Debtors have asserted in writing against the holder of such Allowed Claim, including, without
limitation, any rights under section 502(d) of the Bankruptcy Code and in the absence of a
written objection by such holder of an Allowed Claim within thirty (30) days of the delivery of
such a writing from Partners or the Reorganized Debtor, it will be conclusively presumed that the
requirements for disallowance of a ~~claim~~Claim under section 502(d) of the Bankruptcy Code or
setoff or recoupment under applicable law have been satisfied.

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

6.4     Distributions of Cash.  Any payment of Cash made by the Reorganized Debtor, or the Disbursing Agent, pursuant to the Plan may be made at the option of such party either by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.5     Distributions Free and Clear.  Except as otherwise provided in the Plan, any distributions or transfers by or on behalf of the Reorganized Debtor under the Plan, including, but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any liens, claims, and encumbrances, and no other entity shall have any interest – legal, beneficial, or otherwise – in assets transferred pursuant to the Plan.

6.6     Timing of Distributions.  Unless otherwise provided in the Plan, any distribution to be made by the Reorganized Debtor or the Disbursing Agent shall be made to the extent and at the time provided in Article 5 of the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.7     Delivery of Distributions.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules or on the books and records of the Partners or its agents.  The holder of an Allowed Claim must notify the Reorganized Debtor in writing of a change of address pursuant to the notice requirements set forth in Article 11.1511.14 of the Plan or, in the case of holders of transferred Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e) by such holder or transferee that contains an address for such holder different than the address of such holder as set forth in the Schedules.  Neither the Reorganized Debtor nor the

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

Disbursing Agent shall be liable for any distribution sent to the address of record of a holder in the absence of the written change thereof as provided herein or in the Plan.

6.8    Distributions to Holders as of Record Date.  As of the close of business on the Record Date, the claims register for Partners ~~shall be~~was closed ~~pursuant to the order approving the Disclosure Statement~~, and there has been and shall be no further changes made to the identity of the record holder of any Claim.  Neither the Reorganized Debtor nor the Disbursing Agent shall have any obligation to recognize any transfer of any Claim occurring after the Record Date, provided, however, that the Reorganized Debtor and the Disbursing Agent will recognize transfers of Claims made after the entry of ~~an order approving the Disclosure Statement~~ the Order (A) Approving Amended Disclosure Statement With Respect to Amended Plan of Reorganization of Easy Street Partners, LLC, Dated February 18, 2010, (B) Establishing a Record Date, (C) Approving Solicitation Procedures, (D) Approving Forms of Ballots and Voting Procedures, and (E) Approving Notice and Scheduling Confirmation Hearing [Docket No. 325], but before the Confirmation Date for distribution purposes.

6.9    Undeliverable and Unclaimed Distributions.

(a)    If the distribution to the holder of any Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Reorganized Debtor or the Disbursing Agent, as appropriate, in writing of such holder's then-current address, at which time all missed distributions shall be made, subject to the provisions of subsection (c) of this Article ~~6.10,~~6.9, as soon as is practicable to such holder, without interest.

(b)    Checks issued by the Reorganized Debtor or the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of section ~~11.15~~11.14 of the Plan to the Reorganized Debtor or the Disbursing Agent, as appropriate, by the holder of the Allowed Claim to whom such check originally was issued.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

(c)   All claims for undeliverable distributions or voided checks shall be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made.  After such dates, all such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall become unencumbered Cash of the Reorganized Debtor.  The holder of any Claim for which any undeliverable distribution has been deemed unclaimed property under section 347(b) of the Bankruptcy Code shall not be entitled to any other or further distribution under the Plan on account of such Claim.

## ARTICLE VII.

## Means for Execution of the Plan

7.1   The funds required for the confirmation and performance of this Plan shall be provided from:  (i) all funds held by the Debtor as property of the estate, and (ii) capital contributions and/or loans made by the Plan Funder or the Alternative Funder to the Reorganized Debtor.

7.2   Reorganized Debtor.

(a)   Vesting of Assets.  On the Effective Date, all Assets of the Debtor and all licenses (excluding liquor licenses), permits and approvals necessary for the operation, ownership, and use of the Property as currently operated shall vest in the Reorganized Debtor, and the Reorganized Debtor shall maintain the right and ability to use the liquor licenses currently used in the Debtor's operations to the same extent enjoyed by the Debtor.

(b)   (a) Reorganized Articles of Organization and Reorganized Operating Agreement.  The Reorganized Debtor shall adopt Reorganized Articles of Organization and a Reorganized Operating Agreement prior to, but effective as of, the Effective Date, which shall be included in the Plan Supplement.  Prior to the closing of Partners' Chapter 11 case, any amendments to the Reorganized Debtor's Articles of Organization and Reorganized Operating Agreement shall be filed with the Bankruptcy Court.

(c)   (b) Managing Members and Officers.  The initial managing members and officers of the Reorganized Debtor shall be disclosed in the Plan Supplement and shall be in effect as of the Effective Date.

(d)   Membership Interests.  In the event that Partners is the Reorganized Debtor, then in exchange for the consideration provided under the Plan by the Plan Funder (or the Alternative Funder, as applicable), the Plan Funder

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

(or the Alternative Funder, as applicable) shall receive all of the membership interests in the Reorganized Debtor.

7.3     Exit Funding.  On or before the Effective Date, the Plan Funder or Alternative Funder shall contribute capital, loans and/or provide additional standby funds (either as additional capital or loans) on terms ~~mutually~~ acceptable to ~~Partners and~~ the Plan Funder or Alternative Funder, as the case may be, sufficient to effectuate the Plan.  The Plan ~~Supplement will provide the~~ Funder contemplates contributing approximately $2,944,611 in cash on the Effective Date to be used for the following purposes: (i) $1,330,000 to be used for payment of the Allowed Class 2 Claim; (ii) up to $750,000 to be used for payment of Allowed Administrative Expense Claims; (iii) approximately $300,000 to be used for payment of outstanding fees and expenses of WestLB; (iv) up to $4,445 to be used for payment of Allowed Priority Claims; and (v) up to $560,165.43 to be used for payment of Allowed Class 4 Claims choosing Option 2.  In no event shall the Plan Funder contribute cash in excess of $3.0 million on the Effective Date (the "Effective Date Cash").  In addition to the Effective Date Cash, the Plan Funder or Alternative Funder, as the case may be, will commit to fund up to an additional $1.5 million in working capital as and when needed to effectuate the Plan.  The Plan Supplement will provide any further necessary details and terms of such funding.

7.4     Early Payment.  Nothing in the Plan shall prevent the Reorganized Debtor from making any payments prior to the date provided for in the Plan, and the Reorganized Debtor shall not suffer any penalty or prejudice from making any such payments.

~~7.5     Mezzanine Escrow.  The Mezzanine Escrow will be posted with the Disbursing Agent and utilized to fund the BayNorth Adversary Proceeding.  Any funds remaining upon resolution of the BayNorth Adversary Proceeding shall not be disbursed until the holders of~~

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

~~Allowed Class 4 General Unsecured Claims are either (a) paid a discounted amount equal to 50% of their Allowed Claim on the thirtieth (30th) day after the Effective Date, or (b) paid in full, depending upon their elected treatment.~~

## ARTICLE VIII.

### Executory Contracts

8.1     <u>Executory Contracts and Unexpired Leases</u>.  Under section 365 of the Bankruptcy Code, Partners has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired ~~lease~~leases.  Notwithstanding the foregoing, Partners shall not seek the assumption or rejection of any executory contract or unexpired lease without the prior written approval of WestLB.  If Partners rejects an executory contract or unexpired lease that was entered into before the Petition Date, the contract or lease will be treated as if it had been breached on the date immediately preceding the Petition Date, and the other party to the agreement will have a General Unsecured Claim for damages incurred as a result of the rejection. In the case of rejection of real property leases, damages are subject to certain limitations imposed by section 502(b)(6) of the Bankruptcy Code.

8.2     <u>Rejected Contracts and Leases</u>.

(a)     Each executory contract and unexpired lease to which Partners is a party shall be deemed automatically rejected as of the Effective Date, unless such executory contract or unexpired lease (1) will have been previously assumed by Partners, (2) is the subject of a motion to assume filed on or before the Confirmation Date or (3) is listed on the schedule of assumed contracts and leases annexed as an Exhibit to the Plan Supplement. ~~Partners~~WestLB may at any time on or before the Confirmation Date (or, with respect to any executory contract or unexpired lease for which there is a dispute regarding the nature or the amount of any cure, at any time on or before the entry of a Final Order resolving such dispute) amend the Plan Supplement to delete therefrom or add thereto any executory contract or unexpired lease, in which event such executory contract or unexpired

lease will be deemed to be rejected, assumed or assumed and assigned, as the case may be.

(b) ~~Partners~~WestLB will provide notice of any amendments to the Plan Supplement to the parties to the executory contracts or unexpired leases affected thereby and counsel to the Creditors' Committee and ~~WestLB~~Partners.  The fact that any contract or lease is listed in the Plan Supplement will not constitute or be construed as an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that the Reorganized Debtor or any successor to the Reorganized Debtor has any liability thereunder.

(c) ~~The Reorganized Debtor reserves the right to file a motion on or before the Confirmation Date to assume and assign or reject any executory contract or unexpired lease whether or not identified in the Plan Supplement.~~

(c) ~~(d)~~ The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.3    <u>Rejection Damages Bar Date</u>.  If the rejection of an executory contract or unexpired lease results in a Claim, then such Claim will be forever barred and will not be ~~enforeceable~~enforceable against Partners or the Reorganized Debtor or its respective properties unless a proof of claim is filed with the Bankruptcy Court and served upon counsel to the Reorganized Debtor, counsel to the Creditors' Committee and WestLB, no later than ~~thirty~~fourteen (~~30~~14) calendar days after the later of the Confirmation Date or the entry of an order of rejection.  Nothing in the Plan will extend any prior deadline to file a proof of claim for damages arising from the rejection of an ~~exeutory~~executory contract or unexpired lease.

8.4    <u>Assumed Contracts and Leases</u>.

(a) Except as otherwise provided in the Plan or the Confirmation Order, all executory contracts and unexpired leases identified in the Plan Supplement on an Exhibit listing assumed agreements will be deemed automatically assumed as of the Effective Date.

(b) Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire or occupy of real property will include (1) all

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

modifications, amendments, renewals, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other documents that in an manner affect such executory contract or unexpired lease and (2) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy or is otherwise rejected as a part of the Plan.

(c)    To the extent Partners is party to the unexpired lease or executory contract and is to be merged or dissolved as a result of the Plan, any non-debtor party to such unexpired lease or executory contract will, upon assumption as contemplated herein, be deemed to have consented to the assignment of such unexpired lease or executory contract to the Reorganized Debtor.

(d)    The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption of such executory contracts and unexpired leases, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.5    Payments Related to Assumption of Executory Contracts and Unexpired Leases.

(a)    Any monetary amounts by which each executory contract and unexpired lease to be assumed under the Plan may be in default will be satisfied, under section 365(b)(1) of the Bankruptcy Code by promptly curing same ("Cure Claim").

(b)    In the event of a dispute regarding (1) the nature or the amount of any Cure Claim, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the amount of the Allowed Cure Claim shall be paid no later than thirty (30) calendar days following the entry of a Final Order resolving the dispute and approving the assumption and, as the case may be, assigned.

8.6    Information Related to Executory Contracts and Unexpired Leases.  On or before [June 21, 2010], Partners shall provide to WestLB an itemized list of (i) each and every executory contract and unexpired lease; (ii) the estimated amount of any Cure Claim which may arise from the assumption of each executory contract and expired lease; and (iii) the estimated amount of any unsecured claim which may arise from the rejection of each executory contract

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

and unexpired lease (collectively, the "365 Diligence"). The maximum amount payable to Class 4 Claims is specifically subject to and based upon the accuracy of the 365 Diligence.

## ARTICLE IX.

### Discharge of the Debtor

9.1     The occurrence of the Effective Date shall discharge Partners pursuant to the full extent of Section 1141(d)(1) of the Bankruptcy Code, from any and all debts of and Claims against Partners that arose prior to the Confirmation Date, and any kind of debt specified in §§ 502(g), (h) or (i) of the Bankruptcy Code, whether or not: (i) a proof of Claim based on such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (ii) such Claim is allowed under § 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan. On and after the Effective Date, as to every discharged debt and Claim, the Person or Entity that held such debt or Claim shall be precluded from asserting any such debt or Claim against Partners or the Reorganized Debtor or its property based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

9.2     The rights and treatment of all Claims against and Interests in the Plan shall be in exchange for and in complete satisfaction  and release of all Claims and Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against Partners or its estate, Assets, Property or interests in property. The Reorganized Debtor shall not be responsible for any obligations of the Other Debtors or their estates.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

## ARTICLE X.

### Conditions Precedent

10.1    Conditions to Confirmation.  The following are conditions precedent to confirmation of the Plan, each of which may be satisfied or waived in accordance with section 10.3 of the Plan.

(a)  The Bankruptcy Court shall have approved by Final Order a disclosure statement with respect to the Plan.

(b)  The Plan Funder or Alternative Funder shall commit to providing sufficient funding to effectuate the Plan.

(c)  The 365 Diligence shall be accurate in all material respects.

(d)  The Confirmation Order shall be in form and substance reasonably acceptable to PartnersWestLB and, if applicable, the Alternative Funder.

10.2    Conditions to Effective Date.  The following are conditions precedent to the Effective Date, botheach of which may be satisfied or waived in accordance with Article 10.3 of the Plan.

(a)  Partners or theThe Reorganized Debtor shall have executed and delivered the ModifiedRestructured Loan Documents, in a form that is reasonably acceptable to WestLB.acceptable to WestLB in its sole discretion.

(b)  Except as provided in section 10.2(a), each exhibit, document or agreement to be executed in connection with this Plan (including each document or agreement included in the Plan Supplement) shall be reasonably acceptable to the Plan Funder or the Alternative Funder, as the case may be, and if the Alternative Funder funds the Plan, all of the foregoing must also be reasonably acceptable to WestLB.

(c)  (b) The Confirmation Order shall have been entered and have become a Final Order.

(d)  The 365 Diligence and all other information provided by Partners shall be accurate in all material respects.

(e)  The Reorganized Debtor shall receive on the Effective Date all licenses, permits and assets described in Section 7.2(a) free of any liens or other claims and in a form and substance satisfactory to WestLB and shall have assurance of the continued use of the Debtor's liquor licenses, as further described in Section 7.2(a).

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

33

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

(f) (c) Partners or the Reorganized Debtor shall have sufficient cash necessary to pay Claims required to be paid on the Effective Date.

10.3    Waiver of Conditions to Confirmation.  Conditions set forth in sections 10.1 and 10.2 of the Plan may be waived by Partners WestLB, in whole or in part, without any further notice to parties in interest or the Bankruptcy Court and without a hearing.

## ARTICLE XI.

### General Provisions

11.1    All objections to Disputed Claims shall be commenced, filed or asserted within 120 days after the Effective Date.

11.2    **Releases and Exculpations.  Except as otherwise provided in the Plan or Confirmation Order, as of the Effective Date, Partners, the Reorganized Debtor, the Disbursing Agent, WestLB, the Creditors' Committee, the members of the Creditors' Committee in their respective capacity as such, any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, and agents, and any such parties' successors and assigns (collectively, the "Released Parties") shall be released by Partners and any successors-in-interest of Partners from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that Partners would have been legally entitled to assert in its own right (whether individually or collectively) or that any holder of a Claim, Interest, or other person or entity would have been legally entitled to assert on behalf of Partners or its estate, based in whole or in part upon any act or omission, transaction, agreement, event, or other**

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

34

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

occurrence taking place before or on the Effective Date but occurring during the chapter

11 cases, except for acts constituting willful misconduct, gross negligence, or bad faith and,

in all respects such parties shall be entitled to rely upon the advice of counsel with respect

to their duties and responsibilities under the Plan.  Without limiting the generality of the

foregoing, to the extent permitted by law, Partners and any successors-in-interest of

Partners shall waive all rights under any statutory provision purporting to limit the scope

or effect of a general release, whether due to lack of knowledge or otherwise.

      11.3    **Partners, the Creditors' Committee, and the Released Parties, and any**

property of or professionals retained by such parties, or direct or indirect predecessor in

interest to any of the foregoing persons, shall not have or incur any liability to any Person

or Entity for any act taken or omission, after the Petition Date, in connection with or

related to these cases or the operations of Partners business during the cases, including but

not limited to (i) formulating, preparing, disseminating, implementing, confirming,

consummating or administrating the Plan (including soliciting acceptances or rejections

thereof); (ii) the Disclosure Statement or any contract, instrument, release or other

agreement or document entered into or any action taken or omitted to be taken in

connection with the Plan; or (iii) any distributions made pursuant to the Plan, except for

acts constituting willful misconduct, gross negligence, or bad faith occurring during the

~~Chapter~~chapter 11 ~~Cases~~cases, and in all respects such parties shall be entitled to rely upon

the advice of counsel with respect to their duties and responsibilities under the Plan.

      11.4    **Without limiting the foregoing, and except as to obligations arising under the**

**Plan, as of the Effective Date, Partners, the Reorganized Debtor, the Creditors' Committee,**

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

**and the members of the Creditors' Committee in their respective capacity as such ("WestLB Releasors"), shall release and shall be deemed to have released WestLB from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that any of them would have been legally entitled to assert in its own right or on behalf of Partners (whether individually or collectively). Without limiting the generality of the foregoing, the WestLB Releasors shall waive all rights under any statutory, legal or equitable authority purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.**

11.5 ~~11.4~~**Injunction.  The satisfaction, releases and discharge pursuant to Article ~~9~~11 of the Plan will also act as an injunction against any Person or Entity commencing or continuing any action, employment of process or act to collect, offset, recoup or recover any Claim ~~or Cause of Action~~ satisfied, released or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.**

11.6 ~~11.5~~Modification of the Plan.  ~~The Reorganized Debtor~~WestLB reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of an Allowed Claim that has

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed

modification does not materially and adversely change the treatment of the Claim of such holder.

11.7   11.6 Withdrawal or Revocation of the Plan.  Partners WestLB may withdraw or

revoke the Plan at any time prior to the Confirmation Date.  If Partners WestLB revokes or

withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur,

then the Plan shall be deemed null and void.  In such event, nothing contained in the Plan or

Disclosure Statement shall be deemed to constitute a waiver or release of any Claim by or

against Partners or the Other Debtors or any other person or to prejudice in any manner the rights

of Partners or the Other Debtors or any other person in any further proceedings involving

Partners or the Other Debtors.

11.8   11.7 Section 1146 Exemption.  Pursuant to Bankruptcy Code § 1146(a), (a) the

issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of

any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment

of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument

or transfer under, in furtherance of, or in connection with the Plan, will not be subject to any

stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable law.

11.9   11.8 Dissolution of the Creditors' Committee.  On the Effective Date, the

Creditors' Committee shall be dissolved and the members thereof shall be released and

discharged of and from all further authority, duties, responsibilities, and obligations related to

and arising from and in connection with the Chapter 11 Cases, and the retention and employment

of the Creditors' Committee's attorneys shall terminate.  The Creditors' Committee shall

continue in existence after the Effective Date solely for the purpose of reviewing and being heard

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

by the Bankruptcy Court, and on any appeal, with respect to applications for compensation and

reimbursement of expenses pursuant to section 330 and/or 503(b) of the Bankruptcy Code.

11.10 11.9 Severability.  In the event that the Bankruptcy Court determines, prior to the

Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the

Bankruptcy Court shall, with the consent of Partners and the Committee WestLB, have the power

to alter and interpret such term or provision to make it valid or enforceable to the maximum

extent practicable, consistent with the original purpose of the term or provision held to be

invalid, void or unenforceable, and such term or provision shall then be applicable as altered or

interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the

terms and provisions of the Plan shall remain in full force and effect and shall in no way be

affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation

Order shall constitute a judicial determination and shall provide that each term and provision of

the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and

enforceable pursuant to its terms.  Notwithstanding the foregoing, the provisions in the Plan

relating to releases and exculpations are not severable from the remainder of the Plan.

11.11 11.10 Governing Law.  Except to the extent the Bankruptcy Code or Bankruptcy

Rules are applicable and, except as may otherwise be provided in the Modified Restructured Loan

Documents, the rights and obligations arising under the Plan shall be governed by, and construed

and enforced in accordance with, the federal laws of the United States and, to the extent there is

no applicable federal law, the domestic laws of the State of Utah, without giving effect to Utah's

principles of conflicts of law.

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.

11.12 11.11 Binding Effect.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in Partners and its respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.  The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the term of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity (including, but not limited to, any trustee appointed for the Other Debtors under chapters 7 or 11 of the Bankruptcy Code).

11.13 11.12 Payment of Statutory Fees.  All fees payable pursuant to 28 U.S.C. § 1930(a)(6) of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date by Partners.  Any Statutory Fees accruing after the Confirmation Date also shall be paid by the Reorganized Debtor.

11.14 11.13 Notices.  Any notice required or permitted to be provided to Partners, the Creditors' Committee, or WestLB under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight receipted delivery to be addressed as follows:

> If to Partners:
>
> > William Shoaf
> > Easy Street Partners, LLC
> > 201 Heber Avenue
> > Park City, Utah 84060
> >
> > with a copy to

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

Kenneth L. Cannon II, Esq.
Steven J. McCardell, Esq.
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050

-and-

Michael V. Blumenthal, Esq.
Steven B. Eichel, Esq.
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022

If to Reorganized Debtor or the Disbursing Agent

[To be provided in Plan Supplement]

If to the Creditors' Committee

Lon A. Jenkins, Esq.
Jeffrey Weston Shields, Esq.
JONES WALDO HOLBROOK & MCDONOUGH, P.C.
1700 S. Main Street, Suite 1500
Salt Lake City, Utah 84101-1644

If to WestLB:

WestLB AG
1211 Avenue of the Americas
New York, NY 10036
Attention: Jeff Nelson

with a copy to

Richard W. Havel, Esq.
SIDLEY AUSTIN LLP
555 West Fifth Street, suite 4000
Los Angeles, CA  90013

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

11.15 ~~11.14~~ Retention of Causes of Action/Reservation of Rights.  Except as provided

in Articles 11.2, 11.3, 11.4 and 11.5 of this Plan, nothing contained in the Plan or the

Confirmation Order shall be deemed to be a waiver or relinquishment of any claim (as that term

is defined in section 101(5) of the Bankruptcy Code), rights, causes of action, right of setoff, or

other legal or equitable defense that Partners, the Reorganized Debtor or the Other Debtors may

have or choose to assert on behalf of their respective estates under any provision of the

Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and

all claims against any person or entity, to the extent such person or entity asserts a crossclaim,

counterclaim, and/or Claim for setoff which seeks affirmative relief against Partners or the Other

Debtors, their officers, directors, or representatives, (ii) any and all claims under chapter 5 of the

Bankruptcy Code, (iii) the turnover of any property of Partners or the Other Debtors' estates, (iv)

any and all claims against BayNorth, and (v) any and all claims against Jacobsen, which upon the

Effective Date, shall be the warranty claims against Jacobsen.

11.16 ~~11.15~~ ~~Retention~~ Dismissal of the Creditors' Committee's Action Against WestLB.

~~Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or~~

~~relinquishment of any claim, rights, causes of action, right of setoff, or other legal or equitable~~

~~defense that~~ As part of the settlement embodied by this Plan, and without limiting the scope of

the releases contained in Article 11 herein, on the Effective Date, the Creditors' Committee ~~may~~

~~have or choose to assert on behalf of the Debtors' respective estates under any provision of the~~

~~Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any and all~~

~~claims asserted by the Creditors' Committee~~ shall be deemed to have waived, released and

relinquished any and all claims, arguments and defenses it might have or might have asserted

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

against WestLB ~~in~~on behalf of itself, Partners' estate, or any other Entity, and shall dismiss with

prejudice the WestLB Adversary Proceeding.

11.17 ~~11.16~~ Section 506(c) Reservation. Except as to the WestLB Secured Claim, as

provided in the Order On Stipulation Authorizing Use of Cash Collateral entered on October 14,

2009, and in any subsequent orders approving amendments or extensions to the Stipulation

Authorizing Use of Cash Collateral, Partners and the Reorganized Debtor reserve all rights under

section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

11.18 ~~11.17~~ Plan Supplement. The documents comprising the Plan Supplement shall be

filed with the Clerk of the Bankruptcy Court on or before ~~March 15, 2010.~~[June 25, 2010].

Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of

the Clerk of the Bankruptcy Court during normal court hours or at the Court's website at

www.utb.uscourts.gov.  Holders of Claims or Interests may obtain a copy of the Plan

Supplement upon written request to Partners' bankruptcy counsel.

11.19 ~~11.18~~ Effectuating Documents and Further Transactions.  Upon entry of the

Confirmation Order, Partners and the Reorganized Debtor~~,~~ shall be authorized and are instructed

to execute, deliver, file or record such contracts, instruments, releases, indentures and other

agreements or documents and take such actions as may be reasonably necessary or appropriate to

effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE XII.

## Retention of Jurisdiction

12.1    The Bankruptcy Court shall retain exclusive jurisdiction of this case as long as

necessary for the following purposes:

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

(a)     To determine any and all objections to the allowance, disallowance or
subordination of Claims or any controversy as to the classification of
Claims.

(b)     To determine any and all applications for professional and similar fees and
for the reimbursement of disbursements and expenses.

(c)     To liquidate any disputed, contingent, or unliquidated Claims.

(d)     To determine any and all pending motions and applications for assumption
or rejection of executory contracts and leases and the allowance and
classification of any Claims resulting from the rejection of executory
contracts and leases.

(e)     To determine any and all motions, applications, adversary proceedings,
contested and litigated matters or such other matters over which the
Bankruptcy Court had jurisdiction prior to the Confirmation Date,
including the enforcement, prosecution, litigation, settlement and/or other
disposition of claims and counterclaims of the Debtor and to recover
preferences and fraudulent transfers.

(f)     To enforce the provisions of, and resolve any and all disputes under or
pertaining to the Plan, or the Debtor's bankruptcy case.

(g)     To modify the Plan or to correct any defect, cure any omission or
reconcile any inconsistency in the Plan or in the order of the Bankruptcy
Court confirming the Plan, or to enter such orders as may be necessary to
effectuate the terms and conditions of the Plan to the extent authorized by
the Bankruptcy Code as may be necessary to carry out the purpose and
intent of the Plan.

(h)     To determine such other matters as may be provided for in the order of the
Bankruptcy Court confirming the Plan or as may be authorized under the
provisions of the Bankruptcy Code.

(i)     To hear and determine all controversies, suits and disputes, if any, as may
arise with regard to orders of this Court in the Bankruptcy Case;

(j)     To hear and determine any and all controversies and disputes arising
under, or in connection with, the Plan or the order confirming the Plan;

(k)     To adjudicate all controversies concerning the classification of any Claim;

(l)     To liquidate damages in connection with any disputed, contingent or
unliquidated Claims;

THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN
AND ITS PROSECUTION AND CONFIRMATION.

(m)     To adjudicate all Claims to a security or ownership interest in any
~~property~~Property of  Partners or in any proceeds thereof;

(n)     To adjudicate all Claims or controversies arising out of any purchases,
sales or contracts made or undertaken during the pendency of this
bankruptcy case;

(o)     To recover all assets and Property of Partners wherever located, including
the prosecution and adjudication of all causes of action available to
Partners as ~~at~~of the Confirmation Date;

(p)     To determine all questions and disputes regarding recovery of and
entitlement to Partners' assets and determine all claims and disputes
between Partners and any other Entity, whether or not subject to an action
pending as of the Confirmation Date;

(q)     To enter any order, including injunctions, necessary to enforce the title,
rights and powers of Partners and to impose such limitations, restrictions,
terms and conditions on such title, rights and powers as the Court may
deem necessary or appropriate;

(r)     To enter an order or final decree closing and terminating the Bankruptcy
Case; and

(s)     To make such orders as are necessary or appropriate to carry out the
provisions of this Plan, including but not limited to orders interpreting,
clarifying or enforcing the provisions thereof and/or confirming the Plan.

***\*\*\*\*\*\*PAGE INTENTIONALLY LEFT BLANK\*\*\*\*\*\****

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

DATED this ~~18~~10th day of ~~February~~June, 2010.

~~EASY STREET PARTNERS, LLC~~


~~By:   /s/  William Shoaf~~

~~William Shoaf~~


~~By:   /s/  Philo Smith~~

~~Philo Smith~~


~~DURHAM JONES & PINEGAR, P.C.~~

~~By:   /s/ Kenneth L. Cannon II~~

~~Kenneth L. Cannon II (kcannon@djplaw.com)(3705)~~
~~Steven J. McCardell (smccardell@djplaw.com)(2144)~~
~~111 East Broadway, Suite 900~~
~~P.O. Box 4050~~
~~Salt Lake City, UT 84111-4050~~
~~Telephone:  (801) 415-3000~~
~~Facsimile:  (801) 415-3500~~

~~and~~

~~CROWELL & MORING LLP~~
~~Michael V. Blumenthal (mblumenthal@crowell.com)~~
~~(admitted pro hac vice)~~
~~Steven B. Eichel (seichel@crowell.com)~~
~~(admitted pro hac vice)~~
~~590 Madison Avenue, 20th Floor~~
~~New York, NY  10022~~
~~Telephone:  (212) 223-4000~~
~~Facsimile:  (212) 223-4134~~

~~Counsel for Debtors and Debtors in Possession~~


By:

Annette Jarvis

Peggy Hunt

DORSEY & WHITNEY LLP

136 South Main Street, Suite 1000

Salt Lake City, UT  84101-1685

Attorneys for WestLB, AG

**THIS IS NOT A SOLICITATION. THE COURT HAS NOT YET APPROVED THE FILING OF THIS PLAN AND ITS PROSECUTION AND CONFIRMATION.**

NYIWDMS: 11484762_2

Richard W. Havel
Christina M. Craige
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, CA  90013

Attorneys for WestLB, AG

EXHIBIT A TO SECOND OPPOSITION OF WESTLB, AG TO SECOND MOTION OF
EASY STREET PARTNERS, LLC TO EXTEND THE EXCLUSIVE PERIOD FOR SOLICITING
AND OBTAINING ACCEPTANCES OF ITS AMENDED CHAPTER 11 PLAN OF REORGANIZATION

46

Document comparison by Workshare Professional on Thursday, June 10, 2010
11:01:19 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:/Documents and Settings/ccraige/Desktop/Active Cases/WestLB, AG/February 17 Plan.DOC |
| Description | February 17 Plan |
| Document 2 ID | interwovenSite://LALDMS01/LA1/1809427/10 |
| Description | #1809427v10<LA1> - Easy Street: WestLB Plan |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 205 |
| Deletions | 220 |
| Moved from | 6 |
| Moved to | 6 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 437 |