**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et. al.* | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:   201 Heber Avenue | ) | Chapter 11 |
|     Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | **[FILED ELECTRONICALLY]** |
| | ) | |

**PLAN SUPPLEMENT TO THE AMENDED PLAN OF REORGANIZATION OF EASY
STREET PARTNERS, LLC AND WESTLB, AG DATED JUNE 16, 2010**

**SIDLEY AUSTIN LLP**
Richard W. Havel (10759)
Christina M. Craige (Cal. Bar No. 251103)
555 West Fifth Street, Suite 4000
Los Angeles, California  90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

**DORSEY & WHITNEY LLP**
Annette W. Jarvis (1649)
Peggy Hunt (6060)
Benjamin Kotter (9592)
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101-1685
Telephone:  (801) 933-8933
Facsimile:  (801) 933-7373

Counsel for WestLB, AG, as Administrative Agent

**CROWELL & MORING LLP**
Michael V. Blumenthal (admitted pro hac vice)
Steven B. Eichel (admitted pro hac vice)
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000
Facsimile:  (212) 223-4134

**DURHAM JONES & PINEGAR, P.C.**
Kenneth L. Cannon II (3705)
Steven J. McCardell (2144)
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000
Facsimile:  (801) 415-3500

Reorganization Counsel for the Debtors and Debtors in Possession

1

**Introduction**

WestLB, AG ("WestLB"), on behalf of itself and Easy Street Partners, LLC ("Partners"
and, together with WestLB, the "Plan Proponents") provides the following information and
documentation (the "Plan Supplement") to supplement the Amended Plan of Reorganization of
Easy Street Partners, LLC and WestLB, AG dated June 16, 2010 (the "Plan").  Capitalized terms
not otherwise defined herein shall have the meaning ascribed to them in the Plan.  In connection
therewith, WestLB respectfully represents as follows:

1.     **Overview**.  The following information and documents are included in this Plan
Supplement:  (i) a summary of the material terms of the commitment from the Plan Funder
(the "Exit Funding"); (ii) a term sheet containing the material terms of the Restructured
Loan Documents; (iii) a form of Amended and Restated Note governing the restructured
debt to be issued by the Reorganized Debtor in respect of the Allowed WestLB Claim (the
"Note"), in substantially the form to be executed by the Reorganized Debtor; (iv) a form of
post-confirmation employment agreement to be entered into by the Reorganized Debtor and
William Shoaf; (v) a form of Operating Agreement of Heber Avenue Partners, LLC (the
"Reorganized Debtor"), the special purpose entity into which the assets of Partners will be
transferred pursuant to the Plan; (vi) a certificate of formation and good standing of the
Reorganized Debtor; (vii) a list of executory contracts being assumed; and (viii) details
regarding the management, ownership, and contact information for the Reorganized Debtor.

2.     **Exit Funding**.  Under the Joint Plan, WestLB or its affiliate will fund up to
$2.9 million on the Effective Date to be utilized as follows: (i) $1,330,000 to be used for
payment of the Allowed Class 2 Claim; (ii) up to $750,000 to be used for payment of Allowed

2

Administrative Expense Claims; (iii) up to $199,445 to be used for payment of Allowed Priority

Claims; and (iv) up to $560,165.43 to be used for payment of Allowed Class 4 Claims choosing

Option 2 (the "Effective Date Cash").  In addition to the Effective Date Cash, the Plan Funder or

Alternative Funder, as the case may be, will commit to fund up to an additional $1.5 million in

working capital as and when needed to effectuate the Plan.   Any additional material terms of the

Exit Funding are included in the term sheet attached hereto as **Exhibit 1**.

3.    **Restructured Loan Documents**.  As the Restructured Loan Documents are

voluminous and filing and serving copies of them would present a burden to the estate, the

Plan Proponents have included in the Plan Supplement the following materials, which the

Plan Proponents believe will provide adequate information to all parties in interest regarding

the Restructured Loan Documents:[1] (i) a term sheet containing the material terms of the

Restructured Loan Documents, attached hereto as **Exhibit 1**; and (ii) a form of the Note, in

substantially the form to be issued by the Reorganized Debtor, attached hereto as **Exhibit 2**.

Exhibits 1 and 2 remain subject to the review and reasonable approval of Partners.

4.    **Employment Agreement.**  A copy of the form of employment agreement for

William Shoaf, in substantially similar form to the agreement to be executed by William

Shoaf and the Reorganized Debtor, is attached hereto as **Exhibit 3**.

5.    **Operating Agreement**.  A copy of a form of Operating Agreement for the

Reorganized Debtor is attached hereto as **Exhibit 4**.

---

[1]  A copy of the Amended and Restated Loan Agreement will be made available to holders of Claims against
Partners upon written request to Partners' counsel.

6.      **Certificate of Formation**.  A copy of the Certificate of Formation and Certificate of Good Standing of the Reorganized Debtor are attached hereto as **Exhibit 5**.

7.      **Executory Contracts**.  The Amended Disclosure Statement with Respect to Amended Plan of Reorganization of Easy Street Partners, LLC, dated February 18, 2010 (the "Disclosure Statement") provides that the lease with Sundance Partners, Ltd for the restaurant premises at Zoom (the "Zoom Lease") is being assumed by Partners.  In addition, Partners will assume the contracts listed on **Exhibit 6** attached hereto.  To the extent necessary, the Zoom Lease is specifically included in the list of executory contracts and unexpired leases included in the Plan Supplement for purposes of assumption.  Partners has supplied the information contained in Exhibit 6, and WestLB relies on Partners' representation that this paragraph and Exhibit 6 contain all executory contracts and leases necessary to the operation of the Debtor's business, which are to be assumed under the Plan.

8.      **Approval of WestLB and Modification**.  The materials contained in Exhibits 1-4 remain subject to the final approval of senior management at WestLB in Germany, as well as subsequent modification or amendment pursuant to a valid amendment of the Plan or further order of the Court.

9.      **Management**.  The Reorganized Debtor will be managed by its sole member, Erste Abwicklungsanstalt ("EAA"), a successor in interest to certain assets of WestLB.  In addition, the Reorganized Debtor's post-Effective Date operations will be managed by Gemstone Hotels & Resorts, LLC ("Gemstone"), under the direct supervision of Thomas Prins and Jeff McIntyre, both principals of Gemstone.  These individuals are proposed to serve as "officers" of the Reorganized Debtor under the meaning of 11 U.S.C. § 1129(a)(5).

Finally, William Shoaf will be employed by the Reorganized Debtor as a consultant under the terms set forth in Exhibit 3 hereto.

     10.    **Ownership**.  The Reorganized Debtor will be owned and controlled by EAA.

     11.    **Contact Information**.  Pursuant to Section 11.12 of the Plan, any notice required or permitted to be provided to the Reorganized Debtor under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight receipted delivery to be addressed as follows:

> Heber Avenue Partners LLC
> c/o WestLB AG
> 7 World Trade Center
> 250 Greenwich Street, Floor 50
> New York, NY  10007
> Attn:  James Winikor
> Fax:  (212) 597-5481

DATED this 21st day of June, 2010.

> DORSEY & WHITNEY LLP
>
>
>   */s/ Benjamin J. Kotter*         
> Annette W. Jarvis
> Peggy Hunt
> Benjamin J. Kotter
>
> and
>
> Richard W. Havel
> SIDLEY & AUSTIN LLP
>
> *Attorneys for WestLB, AG*

# EXHIBIT 1

## Term Sheet

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

## The Sky Lodge Private Residence Club and Hotel
### Senior Term Loan
### Junior Term Loan

### Proposal of Terms and Conditions

---

*The Indicative Term Sheet (the "Indicative Term Sheet" or "Proposal") delivered by WestLB AG, New York Branch ("WestLB," "Administrative Agent" and "Lender") represents a proposal to provide exit financing to Easy Street Partners LLC ("Debtor") and to restructure the Allowed WestLB Secured Claim (as such term is defined in the Amended Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG Dated June 16, 2010 (the "Plan")). The Proposal is based upon information received from the Debtor, assumed to be complete and accurate in all material respects, and is subject to satisfactory due diligence to be performed by WestLB and Lender's counsel, satisfactory documentation including all filings, assignments of rights, etc., clean and lien-free title (other than as approved by the Lender) and the approval by the Bankruptcy Court (the "Bankruptcy Court") in the Debtor's Chapter 11 case (the "Bankruptcy") of the Plan. The Proposal is submitted as part of settlement negotiations to identify the structure of a modification and to outline the major terms in principle prior to WestLB's formal credit approval process (and thus is subject to credit committee approval), and entering into loan modification documentation. Additional terms and conditions will be added as deemed necessary by the Lender and as mutually agreed to.*

---

| | |
|---|---|
| **Facility:** | $6,200,000 term loan (the "Senior Loan") $10,000,000 term loan (the "Junior Loan", together with the Senior Loan, the "Loans" and each individually, a "Loan"). |
| | The aggregate amount of the Loans is the allowed amount of WestLB's claim as of the Plan Effective Date (hereinafter defined) (or an number to be stipulated to, which may be less than the full claim). This amount is conditioned upon and includes the Lender's receipt of the monthly adequate protection payments of $34,000 and $100,000 through June 30, 2010. This proposal will also provide that upon confirmation of the Plan WestLB would receive a full release of all claims (including any that may have been brought by the Unsecured Creditors' Committee (the "Committee")) and specifically the Committee's litigation will be dismissed with prejudice. |
| **Borrower:** | An affiliate of Lender to be called Heber Avenue Partners LLC, a single-purpose, bankruptcy remote Delaware limited liability company that would own and operate the private residence club and hotel known as The Sky Lodge Private Residence Club and Hotel ("The Sky Lodge") located in Park City, Utah. |
| **New Capital:** | Member of the Borrower would provide approximately $2,839,610 of new capital to the Borrower upon confirmation of the Plan to be applied in accordance with the Plan and Disclosure Statement, but, in any event, to provide for up to an additional $1,500,000 to be contributed as working capital for post confirmation operations. The Borrower's operating agreement would be filed with the Plan Supplement. |

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 2

| | |
|---|---|
| **Guarantor:** | The Loans would be non-recourse, except to The Sky Lodge. |
| **Manager:** | A third-party hotel management company acceptable to the Lender in its reasonable discretion. |
| **Property:** | A 22-unit luxury, private residence club with full service, five-star equivalent resort destination amenities located in Park City, Utah. The development includes two operating restaurants, an approximately 6,300 square foot spa and fitness center, approximately 2,300 square feet of meeting space, a roof top owners club with heated outdoor spa, expansive outdoor plaza areas and an underground parking garage. The 22 units have been marketed for sale in 1/8th fractional interests, for a total of 176 shares ("Units").  As of June 2010, 113 such Units have been sold and 63 remain available for purchase.  The Sky Lodge would be operated, maintained and preserved, in good working order and condition, ordinary wear and tear excepted, as a luxury private residence club. |
| **Arranger/Lender/Administrative Agent:** | WestLB AG, New York Branch. |
| **Term:** | Under no circumstances would the initial term of (i) the Senior Loan mature later than five years after the Plan Effective Date (the "Senior Loan Maturity Date") and (ii) the Junior Loan mature later than ten years after the Plan Effective Date (the "Junior Loan Maturity Date"). |
| **Plan Deadlines and Closing Payments:** | The hearing on the confirmation of the Plan must commence no later than June 25, 2010 and the Plan must be confirmed no later than July 2, 2010, subject to an adjournment by the Bankruptcy Court. The Plan must be effective (the Closing Date for the restructured loan) no later than July 31, 2010 or such later date as permitted under the Plan (the "Plan Effective Date"). |
| **Funding:** | The Loans have been fully funded and no further advances would be required. |
| **Release Payments:** | Mandatory principal payments of the Junior Loan would be made through release payments ("Release Payments") to be made upon the sale of the Units to bona fide third party purchasers.   All minimum sales prices would have to be acceptable to the Lender, in its sole discretion.   The Borrower would be required to pay a Release Payment equal to one hundred percent (100%) of the Net Sale Proceeds for each sale (as defined in the Junior Loan documents). The Release Payment proceeds in any given month would be used to repay all other sums due under the Junior Loan documents, then outstanding interest and then outstanding principal. Notwithstanding the foregoing, at Lender's option in its sole discretion, a portion of the Net Sale Proceeds may be used to pay the costs of operating the Property and other Plan payments. |

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 3

| | |
|---|---|
| **Pricing/Amortization:** | Senior Loan- LIBOR + 4.50% per annum.  Interest accruing on a monthly compounding basis together with principal payments based on a 10-year amortization schedule would be due and payable monthly on each payment date. |
| | Junior Loan- LIBOR + 7.50% per annum. Interest would accrue and be paid on the Maturity Date.  Notwithstanding the foregoing, in the event the Junior Loan has an outstanding balance following full repayment of the Senior Loan, then interest accruing on a monthly compounding basis together with principal payments based on a 10-year amortization schedule would be due and payable monthly on each payment date. |
| | All payments made by the Borrower under the Loans must be made in US dollars. |
| **Limitation of Liability:** | The liability of the Borrower under the Senior Loan documents and the Junior Loan documents would be limited to its assets. |
| **Security/Property:** | To secure the Borrower's obligation to the Lender, the Borrower would deliver, in form and substance acceptable to the Lender and its counsel *inter alia*, the following: |

- For the Senior Loan, perfected first priority recorded fee mortgage encumbering the Property and containing such terms and conditions as deemed necessary, including all unsold private residence club units and for the Junior Loan, perfected second priority recorded fee mortgage encumbering the Property and containing such terms and conditions as deemed necessary, including all unsold private residence club units;

- Subject to Utah law real estate law, for the Senior Loan, perfected first priority security interest in security deposits made by third party bona fide purchasers of residence club fractional interests and for the Junior Loan, perfected second priority security interest in security deposits made by third party bona fide purchasers of residence club fractional interests;

- For the Senior Loan, perfected first priority liens on and assignment of all rents, royalties, revenues, profits, room deposits, refunds, personal property, including FF&E, accounts, accounts receivable and any other accounts of the Borrower over which the Lender would have sole dominion and control and for the Jenior Loan, perfected second priority liens on and assignment of all rents, royalties, revenues, profits, room deposits, refunds, personal property, including FF&E, accounts, accounts receivable and any other accounts of the Borrower over which the Lender would have sole dominion and control;

- For each Loan, an ALTA extended coverage mortgage policy of title insurance, or its equivalent, in the amount of such Loan and in form acceptable to the Lender issued by title insurance company(ies) selected by the Lender and acceptable to Lender, together with co-insurance and reinsurance and such other

endorsements as the Lender may reasonably require;

- Insurance coverage as customary for this type of property, including but not limited to liability, business interruption, mold (if applicable), *force majeure* insurance, which covers *inter alia* strikes, terrorism, war, acts of violence, and natural disasters, e.g., floods, earthquakes, and hurricanes all to be satisfactory to the Lender and its insurance consultant; the Lender would be named as additional insured, as applicable;

- The arrangement between the private residence club and the hotel would be in a form reasonably satisfactory to the Lender in all respects;

- An assignment and subordination of the management agreement provided, further, that the management agreement would be in the form reasonably satisfactory to the Lender in all respects.

**Prepayment:** The Loans would be pre-payable in full upon 30 days' prior written notice without premium or penalty, subject to reimbursement of any reasonable out-of-pocket expenses incurred by the Lender in connection therewith.

**Expenses:** All expenses, whether or not the transaction contemplated hereby actually closes, related to recording and filing fees and taxes, ALTA survey fees and title search and title insurance premiums are to be incurred for the account of the Borrower, and would be paid by Borrower.

The Lender would not be required to pay any brokerage fee or other fee or commission arising from the transaction contemplated hereby.

**Transferability:** The Senior Loan documents and the Junior Loan documents would provide that the Property and the direct and indirect ownership interests in the Borrower would not be directly or indirectly sold, transferred, encumbered, mortgaged or otherwise disposed of, in whole or in part, without the Lender's consent.

**Covenants:** The Senior Loan documents and the Junior Loan documents would include covenants substantially similar to those in the pre-petition loan, including, without limitation, financial covenants, annual approval of and compliance with a Budget (as defined below) and business plan, financial reporting covenants, covenants regarding insurance, covenants limiting distributions, due on sale and due on encumbrance covenants, and covenants restricting the incurring of debt, covenants restricting affiliate transactions, and covenants regarding the SPE status of the Borrower. The Plan, the Senior Loan documents and the Junior Loan documents would also contain a full release of the Lender, its agents and affiliates, relating to any acts or omissions first occurring prior to the Closing Date.

**Conditions to Closing for the Benefit of the Lender:** The conditions to the closing of the Loans by the Lender include, but are not limited to:

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 5

1. The requisite internal credit approval of the Lender;

2. Loan documentation for both Loans reasonably satisfactory to the Lender and satisfaction of closing conditions set forth in such documentation, including, without limitation, title insurance policies satisfactory to the Lender that would be provided by a title insurance company selected by the Lender, plats of survey reasonably satisfactory to the Lender and opinions of counsel reasonably satisfactory to the Lender;

3. The Lender's review and approval (not to be unreasonably withheld) of the management agreement with the Manager, and of the Manager itself;

4. Receipt of third-party estoppels from the tenant at the Zoom restaurant and the HOA and a nondisturbance and attornment agreement from the Manager as required by the Lender;

5. Lender's approval of an operating and a capital expense budget (the "Budget") for the Property, material deviations from which and revisions to, during the term of the Loans, could only be made with the prior written consent of the Lender;

6. Dismissal of the pending Committee litigation with prejudice and no other pending material litigation against the Lender, and;

7. The hearing on confirmation of the Plan must commence no later than June 25, 2010 and the confirmation of the Plan must occur by July 2, 2010, subject to an adjournment by the Bankruptcy Court. The Plan Effective Date must occur by July 31, 2010 or such later date as permitted under the Plan. The Confirmation Order must be in a form and substance reasonably acceptable to the Lender.

**Withholding Taxes and Reserve Requirements:**   Increased cost of funding or maintaining the Loans, occasioned by reason of withholding taxes or by the imposition of reserve requirements, capital adequacy or other regulatory conditions, including, without limitation Basel II, resulting from changes in law or regulation would be borne by the Borrower.

**Governing Law:**   Fee Mortgage/Deed of Trust: Utah
Others: New York

# EXHIBIT 2

## Form of Note

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

**[THIS IS THE FORM OF NOTE FOR THE SENIOR LOAN REFERRED TO IN THE TERM SHEET. THE NOTE FOR THE JUNIOR LOAN WILL BE IN THE SAME FORM AND ON THE SAME TERMS AS THIS NOTE, EXCEPT FOR THE PRINCIPAL AMOUNT, INTEREST RATE, PAYMENT TERMS AND PRIORITY OF INTEREST IN THE COLLATERAL, ALL OF WHICH ARE SET FORTH IN THE TERM SHEET.]**

### AMENDED AND RESTATED
### PROMISSORY NOTE

Maximum principal                                New York, New York
amount: US **$6,200,000.00**             Dated: as of _____ ___, 2010

            FOR VALUE RECEIVED, the undersigned, **HEBER AVENUE PARTNERS, LLC**, a Delaware limited liability company, having an address at c/o WestLB AG, 7 World Trade Center, 250 Greenwich Street, Floor 50, New York, New York 10007 (the **Borrower**) hereby promises to pay to **WESTLB AG**, New York Branch, a German banking corporation acting through its New York branch, having an office at 7 World Trade Center, 250 Greenwich Street, Floor 50, New York, New York 10007 (the **Lender**), pursuant to that certain Amended and Restated Loan and Security Agreement, dated of even date herewith, by and between the Borrower, WestLB AG, New York Branch, as Administrative Agent (the **Administrative Agent**), and such other co-lenders party thereto from time to time (as the same may hereinafter be amended, modified, extended and/or assigned from time to time, the **Loan Agreement**), the aggregate principal amount of up to SIX MILLION TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($6,200,000.00) (the **Note Amount**) owing to the Administrative Agent and the Lenders by the Borrower pursuant to the Loan Agreement on the dates and in the amount specified in the Loan Agreement. Capitalized terms that are not defined herein have the meanings given to each in the Loan Agreement.

            The Borrower promises to pay to the Lender or its registered assigns, the unpaid principal amount of the Note Amount as well as interest on the unpaid principal amount of the Note Amount from the date hereof until such principal amount is paid in full, at such interest rates, and payable at such times and in such amounts, as are specified in the Loan Agreement.

            Both principal and interest are payable in lawful money of the United States of America to the Administrative Agent, at its account as set forth in the Loan Agreement, in immediately available funds.

            This Amended and Restated Promissory Note is entitled to the benefits of the Loan Agreement. The Loan Agreement, among other things, (i) provides that all sums agreed to be advanced by the Lender have been so advanced (the **Loan**) by the Lenders to the Borrower in an aggregate amount of the Note Amount, the indebtedness of the Borrower resulting from the Loan being evidenced, in part, by this Amended and Restated Promissory Note, and (ii) contains provisions for acceleration of the maturity hereof upon the happening of certain stated events and also for prepayments on account of principal hereof prior to the maturity hereof upon the terms and conditions therein specified. The obligations of the Borrower under this Amended and Restated Promissory Note are secured by the Collateral as provided in the Loan Documents. This Amended and Restated Promissory Note amends and restates in its entirety that certain

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

Promissory Note dated as of March 30, 2006 made by the Borrower's predecessor-in-interest, Easy Street Partners, LLC, a Utah limited liability company, in favor of the Lender.

All parties now and hereafter liable with respect to this Amended and Restated Promissory Note hereby waive presentment, demand, protest, dishonor and all other notices of any kind, except as may otherwise be set forth in the Loan Documents.

This Amended and Restated Promissory Note shall be construed in accordance with, and this Amended and Restated Promissory Note and all matters arising out of or relating in any way whatsoever to this Amended and Restated Promissory Note (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York.

Notwithstanding anything to the contrary in this Amended and Restated Promissory Note or any other Loan Document, the Lender shall not be deemed to have waived any right which the Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Loan secured by the Security Instrument (as defined in the Loan Agreement) or to require that all Collateral shall continue to secure all of the Loan owing to the Lender.

This Amended and Restated Promissory Note may not be amended, modified, waived, changed or discharged orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, amendment or discharge is sought.  This Amended and Restated Promissory Note shall be binding upon and shall inure to the benefit of the Lender and the Borrower and their respective successors and assigns permitted hereunder or under the Loan Agreement.

The rights and recourse of the Lender under this Amended and Restated Promissory Note are limited to the extent provided in Section 10.6 of the Loan Agreement, which Section is hereby incorporated herein by reference as if fully set forth herein.

**(SIGNATURE APPEARS ON NEXT PAGE)**

LA1 1777009v.3

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

 

IN WITNESS WHEREOF, the Borrower has duly executed this Amended and Restated Promissory Note as of the date first written above.


**BORROWER:**


**HEBER AVENUE PARTNERS, LLC,**
a Delaware limited liability company


By: _____
Name: _____
Title: _____


By: _____
Name: _____
Title: _____

# EXHIBIT 3

## Form of Employment Agreement

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

## EMPLOYMENT AGREEMENT

This Employment Agreement (this "Agreement") is made and entered into as of the ___ day of _____, 2010 (the "Effective Date"), by and between HEBER AVENUE PARTNERS LLC, a Delaware limited liability company ("Company"), and WILLIAM SHOAF, an individual ("Employee"), each individually referred to as a "Party" and collectively as the "Parties."

Reference is made to the following facts:

A.     Employee is a member of the prior developer and owner (indirectly) of the fractional ownership project in Park City, Utah, known as The Sky Lodge (the "Hotel") that has now been acquired by Company under a joint plan of reorganization dated June __, 2010 (the "Plan") proposed by Easy Street Partners, LLC (the "Debtor") and WestLB, AG ("WLB"), that involves Company, an affiliate of WLB, as a funder under the Plan, and confirmed by a final, enforceable order of the bankruptcy court in the pending Chapter 11 case of *In re Easy Street Partners, LLC*,  Bankruptcy Case No. 09-29907, filed in the United States Bankruptcy Court for the District of Utah, Central Division. Employee has been managing and operating the Hotel prior to Company's acquisition of the Hotel under the Plan.

B.     In connection with the operation of the Hotel, there are certain licenses, approvals, authorizations, accreditations, consents, permits, variances and certificates required under applicable laws in connection with the sale, ownership, operation, use and/or occupancy of the Hotel (including, without limitation, business licenses, state health department licenses, liquor licenses, certificates of completion and occupancy permits and all such other permits, licenses and rights, obtained from any governmental authority or private person concerning the sale, ownership, operation, use and/or occupancy of the Hotel) as the same may be modified, amended, extended, supplemented and/or assigned from time to time (collectively, the "Licenses") being used by Debtor prior to Company's acquisition of the Hotel under the Plan.

C.     Company desires to engage Employee to act as an employee for Company in conjunction with Company's ownership of the Hotel on the terms and conditions herein set forth, and Employee has agreed to furnish services to Company as described herein.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained, Company and Employee hereby agree as follows:

1.     **Employment.**

Subject to the provisions of Section 6, Company hereby employs Employee and Employee accepts such employment upon the terms and conditions hereinafter set forth.

1

Company's Initials:_____
Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

### 2.  Term.

Employee's term of employment pursuant to this Agreement shall commence on and as of the Effective Date (as defined in the Plan) (the "Employment Date") and shall remain in effect through the second (2nd) anniversary subsequent to the Employment Date, unless terminated earlier pursuant to Section 6.  As used in this Agreement, the term "Employment Term" shall refer to the period beginning on the Employment Date and ending on the second anniversary subsequent to the Employment Date.  The Non-Disparagement Covenant (defined below) shall survive until the forty eighth-month anniversary of this Agreement, notwithstanding the expiration of the Employment Term or other termination of this Agreement by Company.

### 3.  Duties; Extent of Service.

During the Employment Term, Employee shall (a) serve as an employee of Company, reporting to the manager(s) of Company or of the Hotel (the "Managers"), (b) assist in the public relations for the Hotel and a transition of overall management thereof, and (c) assist, cooperate and work under the supervision of the Managers and perform such other lawful duties as may from time to time be prescribed by the Managers and that are consistent with such position.  In addition, during the Employment Term, Employee shall (and shall cause any companies with whom he is affiliated to) take all reasonable steps necessary to assure Company's continued access to and use of the existing Licenses (which Licenses are identified on Schedule 1 attached hereto and incorporated herein by reference) and procurement of replacement Licenses (the "License Transfer"), including, but not limited to, causing the current holders of liquor licenses CL 00962, CL 00961, BC 00084, and RE 01791 (the "Liquor Licenses") to cooperate and assist Company as may be required by the Utah Department of Alcoholic Beverage Control to facilitate issuance of the Liquor Licenses in favor of Company for use in the operation of the Hotel and to fully cooperate with Company in obtaining issuance of liquor licenses for Company. Employee hereby accepts such employment and agrees to serve Company in the capacities indicated.  It is understood and agreed that Employee shall be free to devote less than his full time to the business of Company, so long as Employee devotes sufficient time per week (as determined by Company but which shall not exceed 35 hours per week) to the performance of duties for Company, and that Employee may engage in any other business or activity, whether or not such business activity competes directly or indirectly with the business of the Hotel.

### 4.  Compensation.

(a)  Company will pay to Employee a base salary equal to $20,000 per month (the "Base Salary") during the Employment Term.  Employee's Base Salary shall be subject to withholding under applicable law and be payable in accordance with Company's usual practice for employees of Company as in effect from time to time.

(b)  Employee may earn a market rate commission or finders' fee from Company in connection with a sale of fractional units or the entire Hotel and commercial

Company's Initials:_____
Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

property to a third party in an amount mutually approved by Employee and Company (a "Fee"), provided that Employee proves that he is the procuring person for such sale and such buyer was not previously introduced to WLB in connection with the Hotel. Company shall not unreasonably withhold such approval.  Employee may contract with prospective buyers for a buyer's side Fee, provided that prior to entering into any agreement for such a Fee, the terms and conditions have been disclosed to Company.

(c)     In the event that Employee is successful in consummating the License Transfer, Employee shall be entitled to a "Transition Bonus" of $240,000, payable, at Employee's option, either in a lump sum within thirty (30) days following the License Transfer or in equal monthly installments over the balance of the Employment Term.

**5.     Benefits.**

(a)     During the Employment Term, Employee (including his family) shall be entitled to participate (without any monetary contributions or payments required to be made by Employee) in the medical, dental and life insurance plans and disability income plans, retirement arrangements and other employment benefits ("Benefit Plans") as in effect from time to time for, and on substantially the same terms as, executive officers and employees of Company and the Hotel generally.  Employee's participation shall be subject to (i) the terms of the applicable plan documents (including, as applicable, provisions granting discretion to the Managers or any administrative or other committee provided for therein or contemplated thereby) and (ii) generally applicable policies of Company and the Hotel.

(b)     During the Employment Term, Employee shall receive twenty (20) days paid vacation (not including paid holidays) per calendar year, pro-rated for any period of employment of less than one full calendar year, as in effect from time to time for, and on substantially the same terms as, executive officers of Company generally.

(c)     Company shall promptly reimburse Employee for all reasonable business expenses incurred by Employee during Employee's employment hereunder, including, without limitation, reasonable expenses for business travel on behalf of Company and entertainment of customers and potential customers, all in accordance with a budget and other guidelines adopted by the Managers, as in effect from time to time.

**6.     Termination and Termination Benefits.**

Employee's employment under this Agreement shall terminate at the end of the Employment Term in accordance with Section 2 or under the following circumstances set forth in this Section 6:

(a)     Termination by Company for Cause.  Employee's employment under this Agreement may be terminated by Company for Cause (as defined below) upon written notice and proof of Cause to Employee, and upon and following such termination all salary payments and benefits payable to Employee under this Agreement shall

3                      Company's Initials:_____
                     Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

terminate and Company shall have no further liability to Employee except to pay to Employee any earned but unpaid Base Salary, Transition Bonus, Fee and accrued vacation pay through the date of termination of Employee's employment.  It is expressly agreed and understood that if Employee's employment under this Agreement is terminated by Company for Cause as provided in this Section 6(a), such termination shall not impair or otherwise affect Employee's obligations under Sections 7, 8, 10, 11 and 12 (the "Continuing Obligations").   The following shall constitute "Cause" for such termination:

(i)   deliberate or intentional refusal to perform, his duties and obligations under this Agreement;

(ii)   continuing neglect of any of his duties and obligations under this Agreement upon written notice to Employee and any such default continues for a period of ten (10) days after such written notice; provided however, if any such default is reasonably susceptible of cure, but not within such ten (10) day period, then Employee may be permitted up to an additional five (5) days to cure such default, provided further that Employee diligently and continuously pursues such cure;

(iii)   any intentional or willful misconduct that has a direct material adverse effect upon Company's business;

(iv)   any negligent misconduct by Employee which remains uncured by Employee under Subsection 6(a)(ii) after written notice and that has a direct material adverse effect upon Company's business; or

(v)   the commission of any act by Employee constituting an act of financial dishonesty or the conviction of a felony under applicable Utah law.

(b)   <u>Voluntary Termination by Employee.</u>

(i)   Employee's employment under this Agreement may be terminated by Employee at any time by written notice to the Managers at least thirty (30) days prior to such termination of employment, and upon and following such termination all compensation and benefits payable to Employee under this Agreement shall terminate and Company shall have no further liability to Employee, except to pay to Employee any earned but unpaid Base Salary, Transition Bonus, Fee, and accrued vacation pay through the date of termination of Employee's employment.

(ii)   Notwithstanding the foregoing, in the event there is a change of ownership or control of Company, Employee may terminate his employment under this Agreement by written notice to the Managers at least thirty (30) days prior to such termination of employment.   If Employee is not engaged by the successor owner, Employee shall receive

4

Company's Initials:_____
Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

a severance payment equal to the balance of the compensation due for the remainder of the Employment Term, including all Base Salary and any earned but unpaid Transition Bonus, Fee and accrued vacation. In the event the successor owner engages Employee at compensation less than that provided under this Agreement, Employee shall receive a severance payment equal to such differential but only if (1) Employee has negotiated the terms of such subsequent compensation in good faith and at arm's length and (2) such compensation is on market terms.

It is expressly agreed and understood that if Employee's employment under this Agreement is terminated by Employee as provided in this Section 6(b), such termination shall not impair or otherwise affect Employee's Continuing Obligations.

(c)     Accelerated Termination.  Upon the consummation of a sale in bulk of ninety percent (90%) or more of the fractional units or of the Hotel and all commercial units to a third party (a "Sale") or an early termination by Company other than for Cause, Employee shall receive all Termination Benefits pursuant to paragraph 6(f), which shall include, but not be limited to, the balance of his Base Salary for the remainder of the Employment Term and earned but unpaid Transition Bonus and Fee.

(d)     Disability.  If Employee shall be disabled so as to be unable to perform the essential functions of Employee's then existing position or positions under this Agreement for one hundred twenty (120) days within any period of twelve consecutive months, or for ninety (90) consecutive days, with or without reasonable accommodation, then Company may terminate Employee's employment under this Agreement and Company shall have no further liability to Employee except to pay to Employee any earned but unpaid Base Salary, Fee, Transition Bonus and accrued vacation pay through the date of termination of Employee's employment.  It is expressly agreed and understood that if Employee's employment under this Agreement is terminated as provided in this Section 6(d), such termination shall not impair or otherwise affect Employee's Continuing Obligations.

If any question shall arise as to whether during any period Employee is disabled so as to be unable to perform the essential functions of Employee's then existing position or positions with or without reasonable accommodation, Employee may, and at the request of Company shall, submit to Company a certification in reasonable detail by a physician selected by Company and mutually acceptable to both parties as to whether Employee is so disabled or how long such disability is expected to continue, and such certification shall for the purposes of this Agreement be conclusive of the issue.  Employee shall cooperate with any reasonable request of the physician in connection with such certification.  If such question shall arise and Employee shall fail to submit such certification within a reasonable time not to exceed 30 days, Company's determination of such issue shall be binding on Employee.  Nothing in this Section 6(d) shall be construed to waive Employee's rights, if any, under existing law including, without limitation, the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 et seq. and the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.

5

Company's Initials:_____
Employee's Initials:_____

**SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT**

(e)     <u>Death</u>.  Employee's employment and all obligations of Company hereunder shall terminate in the event of the death of Employee other than any obligation to pay to Employee's estate any earned but unpaid Base Salary, Fee, Transition Bonus and accrued vacation pay through the date of Employee's death.

(f)     <u>Certain Termination Benefits</u>.  In the event of the termination of Employee's employment with Company pursuant to Section 6(c), Company shall provide to Employee, or to Employee's estate, the following termination benefits (the "Termination Benefits"):

(i)     payment of Employee's Base Salary at the rate then in effect pursuant to Section 4(a) for the period from the date of termination of employment through the Employment Term (the "Severance Period");

(ii)     continuation of group health plan benefits for the Severance Period to the extent authorized by and consistent with 29 U.S.C. §1161 et seq. (commonly known as "COBRA"), with the cost of the regular premium for such benefits to be paid by Company, except if the termination was due to Employee's death;

(iii)     payment of any Fee at the time of any Sale Event, if occurring as a result of transaction(s) introduced or negotiations commenced while Employee was employed by Company, or as a result of an Accelerated Termination pursuant to paragraph 6(c) hereinabove; and

(iv)     payment of any accrued but unpaid Transition Bonus.

The Termination Benefits set forth in clauses (i) through (iv) above shall continue so long as Employee is in compliance with Employee's Continuing Obligations under this Agreement.  Notwithstanding the foregoing, Employee shall not be entitled to any Termination Payment (other than any earned but unpaid Fee and Transition Bonus, which shall be paid) if Employee is engaged by the successor owner and this Agreement is assumed without a decrease in compensation.  In the event the successor owner engages Employee at a Base Salary less than provided in this Agreement, Company shall pay Employee a severance payment equal to said differential, provided that Employee has negotiated the terms of the new agreement in good faith and at arms length and such agreement is on their current market terms.

(g)     <u>Continuing Obligations</u>.  Notwithstanding termination of this Agreement as provided in this Section 6 or any other termination of Employee's employment with Company, it is expressly agreed and understood that the Continuing Obligations shall survive any termination of Employee's employment with Company at any time and for any reason.

(h)     <u>Accrued Benefits</u>.  Regardless of the reason for termination of Employee's employment with Company (other than under Section 6(a)), and subject to the terms and provisions of the applicable plan and/or award documents, Employee (or

6     Company's Initials:_____
     Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

Employee's beneficiary in the event of death) shall be entitled to all benefits earned and accrued by Employee under Company's Benefit Plans prior to the date of termination of Employee's employment.

**7.** **Non-Disparagement Covenant**.

(a)   Employee shall be liable to Company for the actual damages it incurs in connection with Employee doing any of the following (the "Non-Disparagement Covenant"):

(i)   Speaking or acting in a manner that would, in Company's reasonable judgment, detrimentally affect the efforts of Company to maintain or obtain all material licenses, approvals, authorizations, accreditations, consents, permits, variances and certificates required under applicable laws in connection with the design, development, sale, construction, ownership, operation, use or occupancy of the Hotel (including, without limitation, business licenses, state health department licenses, liquor licenses, certificates of completion and occupancy permits and all such other permits, licenses and rights, obtained from any governmental authority or private person concerning the design, development, sale, construction, ownership, operation, use or occupancy of the Hotel) as the same may be modified, amended, extended, supplemented and/or assigned from time to time;

(ii)   Claiming or suggesting to any third parties, member of the public, media, or other governmental authorities, any continuing connection or involvement with the Hotel or the Licenses, except as an employee as expressly set forth herein, whether or not in response to inquiry by any person or entity, or fail to refer all inquiries with respect to any of the foregoing, or as to the sale of fractional units to end-users, to Company in a prompt, positive and professional manner.

(iii)   In any manner or form, intentionally interfering with the relationships between Company, on the one hand, and personnel employed by Company (including their property managers and sales force), the fractional interest owners, or prospective purchasers, on the other hand, in a manner that may give rise to actual damages to the Hotel or to Company;

(iv)   In any way, manner or form, whether intentionally or otherwise, committing any acts or omissions that may hinder or interfere with Company's efforts to sell, lease or otherwise convey all or any portion of the Hotel; or

(v)   Threatening to commence or file at any time in the future any claim or litigation against any local, state or federal governmental authority, board or regulatory agency, or individuals or entities acting on

Company's Initials:_____
Employee's Initials:_____

LA1 1823193v.8

behalf or in connection therewith, or against Company, with respect to the Hotel other than for Company's breach of this Agreement or actual injury to Employee caused by Company or any of Company's agents.

(b)     Company shall be liable to Employee for the actual damages he incurs in connection with any disparaging or defamatory comments to any third party concerning Employee (including, but not limited to, disparaging or defamatory comments concerning Employee's methods of doing business or employment practices) made by any of the current principal officers of WestLB, a German Bank acting through its New York Branch, responsible for overseeing the Hotel, as well as Gemstone Hotels and Resorts LLC and any other restaurant or hotel manager hired by Company to operate or manage the Hotel.

(c)     The party alleging a breach of this Section shall bear the burden of proof establishing (i) that a breach of this Section has occurred and (ii) the actual damages incurred.

## 8.     <u>Indemnification.</u>

(a)     Company shall indemnify Employee in the event Employee is made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative in connection with his performance of his duties under this Agreement, against costs and expenses, including attorneys' fees, judgment, fines and amounts paid in settlement, actually and reasonably incurred by Employee in connection with the action, suit or proceeding, provided that Employee acted (i) within the scope of his services under this Agreement as designated in writing, (ii) in good faith and (iii) in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, in addition to the foregoing requirements, Employee shall have had no reasonable cause to believe that his conduct was unlawful.  Employee shall have the burden of proof of establishing that he satisfies the foregoing conditions to trigger Company's indemnification obligations under this Section 8. [Pursuant to this indemnification provision, any entitlement of the Employee to the advancement of his costs and expenses, including attorneys' fees, with respect to all matters for which Company's indemnification obligations are triggered under this Section 8 IS TO BE DISCUSSED FURTHER.]

(b)     Notwithstanding the provisions of Section 8(a), Employee shall defend, indemnify, protect and hold harmless Company from and against any and all liability, actual damages, losses and expenses, including reasonable attorneys' fees and costs, arising out of or resulting from its performance hereunder or in pursuance hereof, or from the acts or conduct of Employee, but only to the extent constituting (i) gross negligence, (ii) willful misconduct, or (iii) a breach of this Agreement by Employee, including a breach of the Non-Disparagement Covenant.  Company shall have the burden of proof of establishing that it satisfies the foregoing conditions to trigger Employee's indemnification obligations under this Section 8.

Company's Initials:_____
Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

(c)     Employee shall pay any judgment finally awarded, together with all expenses and fees, in any claim, suit or action which is brought against Company and is within the indemnifications set forth herein and shall pay any amounts payable in settlement or compromise of any such claim, suit or action. In the event Employee refuses or fails to pay any amount pursuant to Section 8(a), Company, without thereby waiving any other rights or remedies available to it, shall have the right (but not the obligation) to pay such amount and to therefore deduct an equivalent amount from any amount which may be due to Employee hereunder.

(d)     Subject to applicable statutes of limitations, this Section 8 shall survive the termination of this Agreement.

**9.     <u>Notices</u>.**

All notices delivered in connection with this Agreement shall be in writing and delivered in person (or by courier), by facsimile (with confirmation of delivery), sent by overnight delivery service (such as Fed Ex) or by certified mail, return receipt requested.  If delivered in person, by facsimile or by courier, such notices shall be deemed to be received upon delivery, if sent by overnight delivery service, the next business day, or if sent by mail, such notices shall be deemed to be received three (3) days after being placed in the United States Mail, postage prepaid.  Such notices shall be sent to the following addresses:

| | |
|---|---|
| To Employee: | William Shoaf<br>4780 Winchester Court<br>Park City, UT  84098<br>Fax:  (435) 604-0293 |
| With a copy to: | McKay Burton Thurman<br>170 So. Main Street, Ste. 800<br>Salt Lake City, Utah  84101<br>Attn:  Greg Adams<br>Fax:  (801) 421-5252 |
| To Company: | Heber Avenue Partners LLC<br>c/o WestLB AG<br>7 World Trade Center<br>250 Greenwich Street, Floor 50<br>New York, NY  10007<br>Attn:  James Winikor<br>Fax:  (212) 597-5481 |

9

Company's Initials:_____
Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

> With a copy to:         Sidley Austin LLP
> 555 West Fifth Street, Suite 4000
> Los Angeles, CA  90013
> Attn: William D. Ellis, Esq.
> Fax:  (213) 896-6600

**10.**    **Confidentiality; Proprietary Rights**.

(a)    In the course of performing services on behalf of Company hereunder, Employee from time to time will have access to Confidential Information (as defined below) specific to Company.  Employee agrees that Employee shall (i) hold the Confidential Information in strict confidence, (ii) not disclose the Confidential Information to any person (other than in the regular business of Company), and (iii) not use, directly or indirectly, any of the Confidential Information for any purpose other than on behalf of Company.

(b)    For purposes of this Agreement, the term "Confidential Information" shall mean solely such proprietary information of Company that is not owned by, has not been developed for or provided to Company by Employee. Notwithstanding the foregoing, Confidential Information does not include (i) information in the public domain, unless such information has become public as a result of a breach of Employee's duties under Section 9(a), (ii) information that was already in Employee's possession at the time of the commencement of his employment by any of Company, and which was not acquired or obtained from Company or any of its affiliates, (iii) information that can be demonstrated as independently developed by Employee without access to the Confidential Information, (iv) information that is obtained or was previously obtained by Employee from a third person who, insofar as is known to Employee, is or was not prohibited from transmitting the information to Employee by a contractual, legal or fiduciary obligation to any of Company or their affiliates, and (v) information that is required to be disclosed by law in connection with a judicial, arbitral or governmental action or other similar legal proceeding.  If Employee is required by law to disclose any Confidential Information, Employee will provide Company with prompt notice of such requirement so that it may seek a protective order or take other appropriate action and/or waive compliance with this Agreement to the extent of such required disclosure.  In the absence of such a waiver, if Employee is, in the opinion of his counsel, compelled to disclose Confidential Information upon pain of liability for contempt or other censure or penalty, Employee may disclose such Confidential Information to the relevant court or other tribunal without liability hereunder, but, to the extent practicable, Employee shall continue to treat such information as Confidential Information under this Agreement after such disclosure.

**11.**    **Availability of Equitable Remedies**.

Employee hereby acknowledges and agrees that a breach of Section 10 may cause irreparable harm and damage to Company, that the remedy at law for the breach or threatened breach of Section 10 may be inadequate, and that, in addition to all

10

Company's Initials:_____
Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

other remedies available to Company for such breach or threatened breach (including, without limitation, the right to recover damages), Company may be entitled to injunctive relief for any breach or threatened breach of Section 10.

### 12.   **Dispute Resolution**.

Except as otherwise provided in this Agreement or where otherwise prohibited by statute or controlling case law, any dispute arising out of or relating to Employee's employment with Company, this Agreement or the breach, termination or validity hereof shall be finally settled by binding arbitration conducted expeditiously in accordance with the J.A.M.S./Endispute Comprehensive Arbitration Rules and Procedures (the "J.A.M.S. Rules").  The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§1-16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof.   The place of arbitration shall be located in the State of Utah.  [THE FOLLOWING PROVISION IS TO BE DISCUSSED FURTHER- Except where statutes or controlling case law provide that the Employer shall pay all or an additional portion or arbitration expenses, all expenses of the arbitration shall be paid by the party incurring such expenses, provided that, unless the arbitrator otherwise directs and/or statutes or controlling case law prohibits, Company shall reimburse Employee for his reasonable expenses (including attorneys' fees) in any proceeding in which Company does not substantially prevail, and Employee shall reimburse Company for its reasonable expenses (including attorneys' fees) in any proceeding in which Employee does not substantially prevail OR IN THE ALTERNATIVE Employer shall pay for all costs unique to the arbitration, including arbitrator fees. The arbitrator may award fees and costs to the prevailing party, including the prevailing party's attorney fees].

The parties covenant and agree that the arbitration shall commence within sixty (60) days of the date on which a written demand for arbitration is filed by any party hereto.  In connection with the arbitration proceeding, the arbitrator shall have the power to order the production of documents by each party and any third-party witnesses.  In addition, each party may take up to three depositions as of right, and the arbitrator may in his or her discretion allow additional depositions upon good cause shown by the moving party. However, the arbitrator shall not have the power to order the answering of interrogatories or the response to requests for admission.  In connection with any arbitration, each party shall provide to the other, no later than seven (7) business days before the date of the arbitration, the identity of all persons that may testify at the arbitration and a copy of all documents that may be introduced at the arbitration or considered or used by a party's witness or expert.  The arbitrator's decision and award shall be made and delivered within six (6) months of the selection of the arbitrator.  The arbitrator's decision shall set forth a reasoned basis for any award of damages or finding of liability.  The arbitrator shall not have power to award damages in excess of actual compensatory damages and shall not multiply actual damages or award punitive damages, and each party hereby irrevocably waives any claim to such damages.

11                    Company's Initials:_____
                                        Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

The parties covenant and agree that they will participate in the arbitration in good faith. This Section 12 applies equally to requests for temporary, preliminary or permanent injunctive relief, except that in the case of temporary or preliminary injunctive relief any party may proceed in court without prior arbitration for the limited purpose of avoiding immediate and irreparable harm.

Each of the parties hereto (a) hereby irrevocably submits to the jurisdiction of the United States District Court for the District of Utah for the purpose of enforcing the award or decision in any such proceeding, (b) hereby waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that such party is not subject personally to the jurisdiction of the above-named court, that such party's property is exempt or immune from attachment or execution (except as protected by applicable law), that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court, and hereby waives and agrees not to seek any review by any court of any other jurisdiction which may be called upon to grant an enforcement of the judgment of any such court.  Each of the parties hereto hereby consents to service of process by registered mail at the address of each of the parties set forth on the signature page of this Agreement.  Each of the parties hereto agrees that such party's submission to jurisdiction and such party's consent to service of process by mail is made for the express benefit of the other party hereto.  Final judgment against any party hereto in any such action, suit or proceeding may be enforced in other jurisdictions by suit, action or proceeding on the judgment, or in any other manner provided by or pursuant to the laws of such other jurisdiction.

## 13.  **Scope of Agreement**.

The parties acknowledge that the time, scope, geographic area and other provisions of this Agreement have been specifically negotiated by sophisticated parties and agree that all such provisions are reasonable under the circumstances of the transactions contemplated hereby, and are given as an integral and essential part of the transactions contemplated hereby.  Employee has independently consulted with counsel and has been advised in all respects concerning the reasonableness and propriety of the covenants contained herein, with specific regard to the business to be conducted by Company and its affiliates, and represents that the Agreement is intended to be, and shall be, fully enforceable and effective in accordance with its terms.

## 14.  **Miscellaneous Provisions.**

(a)     Time is of the essence in the performance and execution of this Agreement and each of its provisions.

(b)     All captions and headings are inserted for the convenience of the Parties, and shall not be used in any way to modify, limit, construe or otherwise affect this Agreement.

Company's Initials:_____
Employee's Initials:_____

LA1 1823193v.8

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

(c)     In case one or more of the provisions contained in this Agreement (or any portion of such provision) shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement (or any portion of any such provision), but this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or portion thereof) had ever been contained herein.

(d)     This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Utah.

(e)     This Agreement sets forth the entire agreement and understanding of the Parties in respect of the transactions contemplated hereby and supersedes all prior agreements, arrangements and understandings relating to the subject matter hereof.

(f)     No representation, promise, inducement or statement of intention has been made by any Party to this Agreement, or their respective agents, which is not embodied in this Agreement, and neither Party shall be bound by or liable for any alleged representation, promise, inducement or statement of intention not so set forth.

(g)     This Agreement may be amended, modified, superseded or cancelled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the Parties hereto, but, in the case of a waiver, only by the Party waiving compliance.  The failure of any Party at any time or times to require performance of any provision hereof shall in no manner affect the right of such Party at a later time to enforce the same.  No waiver by any Party of any condition, or any breach of any term, covenant, representation or warranty, contained in this Agreement, whether by conduct or otherwise, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach of any other term, covenant, representation or warranty of this Agreement.

(h)     This Agreement shall inure to the benefit of and be binding on the Parties and their respective legal representatives, successors, and assigns.  Neither Party may assign its rights under this Agreement at any time to another person or entity, without the prior written consent of the other Party.

(i)     This Agreement may be executed in counterparts, each of which shall constitute an original and both of which when taken together shall constitute one and the same Agreement.

(j)     Employee represents and warrants that (i) to the best of Employee's knowledge, Schedule 1 identifies all the Licenses being used by Debtor prior to Company's acquisition of the Hotel under the Plan, (ii) Employee has the authority to act for and bind all persons and/or entities that may have an interest in or claim to the current liquor licenses regarding the Hotel and (iii) no prior contract or agreement of any kind, nor any prior or other performance by Employee, will interfere in any manner with its complete performance of and compliance with all terms and conditions hereof.

13

Company's Initials:_____
Employee's Initials:_____

**SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT**

   (k)  This Agreement shall not create any rights or benefits to parties other than Company and Employee.

[Balance of Page Intentionally Left Blank]

14

Company's Initials:_____
Employee's Initials:_____

**SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT**

IN WITNESS WHEREOF, Company and Employee have hereunto set their hands under seal as of the date first hereinabove written.

**EMPLOYEE**:

_____
WILLIAM SHOAF, an individual

**COMPANY**:

HEBER AVENUE PARTNERS LLC,
a Delaware limited liability company

By:_____
Name: _____
Title: _____

By:_____
Name: _____
Title: _____

Company's Initials:_____
Employee's Initials:_____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

SCHEDULE I
LICENSES

Company's Initials:_____
Employee's Initials:_____

# EXHIBIT 4

## Form of Operating Agreement

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

# LIMITED LIABILITY COMPANY AGREEMENT

## of

## HEBER AVENUE PARTNERS LLC

(A Delaware Limited Liability Company)

June __, 2010

(Effective as of June 17, 2010)

THE SECURITIES GOVERNED BY THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR REGISTERED OR QUALIFIED UNDER THE APPLICABLE STATE SECURITIES LAWS, IN RELIANCE UPON THE EXEMPTIONS FROM REGISTRATION AND QUALIFICATION PROVIDED IN THE SECURITIES ACT AND THE APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND QUALIFICATION OR REGISTRATION UNDER THE APPLICABLE STATE SECURITIES LAWS, OR AN OPINION OF COUNSEL SATISFACTORY TO THE ISSUER THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED.  THE SECURITIES GOVERNED BY THIS AGREEMENT MAY ONLY BE TRANSFERRED IN COMPLIANCE WITH THE TERMS OF THIS AGREEMENT.

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

# LIMITED LIABILITY COMPANY AGREEMENT
## OF
## HEBER AVENUE PARTNERS LLC

    This Limited Liability Company Agreement (together with the schedules attached hereto, this "**Agreement**") of HEBER AVENUE PARTNERS LLC (the "**Company**"), is entered into by ERSTE ABWICKLUNGSANSTALT, a public-law entity organized in the Federal Republic of Germany (HRA 20869 in the Commercial Register of the Local Court of Düsseldorf) as an economically independent sub-agency within the BUNDESANSTALT FÜR FINANZMARKTSTABILISIERUNG (the German Financial Market Stabilisation Agency), as the sole member (the "**Member**"). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

    The Member, by execution of this Agreement, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "**Act**"), and this Agreement, and agrees as follows:

    Section 1. Name. The name of the limited liability company formed hereby is HEBER AVENUE PARTNERS LLC.

    Section 2. Principal Business Office. The principal business office of the Company shall be located at c/o WESTLB AG, a German Bank acting through its New York Branch, 7 World Trade Center, 250 Greenwich Street, 50th Floor, New York, NY 10007 or such other location as may hereafter be determined by the Member.

    Section 3. Registered Office. The address of the registered office of the Company in the State of Delaware is care of National Corporate Research, Ltd., 615 South DuPont Highway, County of Kent, Dover, Delaware 19901.

    Section 4. Registered Agent. The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware are National Corporate Research, Ltd., 615 South DuPont Highway, County of Kent, Dover, Delaware 19901.

    Section 5. Members. The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement. The Member may act by written consent.

    Section 6. Certificates. John R. Shipley, III is hereby designated as an "authorized person" within the meaning of the Act, and has (a) executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Delaware, and (b) prepared and filed an Application for Authority to Transact Business for a Foreign Limited Liability Company with the Division of Corporations & Commercial Code of the Department of Commerce of the State of Utah. Upon completion of the later of such filings, his powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act.

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT
LIMITED LIABILITY COMPANY AGREEMENT                    HEBER AVENUE PARTNERS LLC

The Member shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business. The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7. Purpose.

(a) The purpose to be conducted or promoted by the Company is to engage in the following activities:

(i) to own, operate and manage that certain real property and the improvements thereon located at 201 Heber Avenue in Park City, Summit County, Utah, and commonly known as the Sky Lodge (the "**Property**");

(ii) to sell, exchange, finance, refinance, encumber or otherwise dispose of the Property; and

(iii) to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b) The Company is hereby authorized to execute, deliver and perform, and the Member on behalf of the Company is hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement. The foregoing authorization shall not be deemed a restriction on the powers of the Member to enter into other agreements on behalf of the Company.

Section 8. Powers. The Company, and the Member on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9. Management.

(a) Member Managed. The business and affairs of the Company shall be managed by or under the direction of the Member.

(b) Authorized Persons. Except as expressly provided otherwise herein, the Member shall act in matters related to the Company only through and in strict accordance with a writing duly executed by at least two Authorized Persons.

(c) Powers. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein,

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT
LIMITED LIABILITY COMPANY AGREEMENT                                    HEBER AVENUE PARTNERS LLC

including all powers, statutory or otherwise.  Subject to <u>Section 7</u>, the Member has the authority to bind the Company by a writing in accordance with <u>Section 9(b)</u>.

(d)     <u>Member as Agent</u>.  To the extent of its powers set forth in this Agreement, the Member is an agent of the Company for the purpose of the Company's business, and the actions of the Member, taken pursuant to a writing in accordance with <u>Section 9(b)</u>, and otherwise in accordance with such powers set forth in this Agreement, shall bind the Company.

(e)     <u>Officers</u>.  The Member in its sole discretion may from time to time create and delegate responsibilities to one or more offices of the Company, and appoint individuals as officers to fill such offices and to act on behalf of the Member, within the limits of the power delegated by the Member to their respective offices, in managing the day-to-day business and other operations of the Company in accordance with the Member's interests and direction.  Any such officer may be removed at any time at the sole discretion of the Member.  The Member hereby creates the office of Hotel/Restaurant Operations Officer and designates the following individuals as initial Hotel/Restaurant Operations Officers:

Jeff McIntyre
Gemstone Hotels & Resorts, LLC
1912 Sidewinder Drive, Suite 104
Park City, Utah  84060

Thomas Q. Prins
Gemstone Hotels & Resorts, LLC
1281 East Main Street, Suite 200
Stamford, Connecticut  06902

Section 10.  <u>Limited Liability</u>.  Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

Section 11.  <u>Capital Contributions</u>.  The Member has contributed cash and/or property, which property may be subject to encumbrances in excess of its value, to the Company.  The net value of such contributions is to be determined by the Member at a later date.

Section 12.  <u>Additional Contributions</u>.   The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.

Section 13.  <u>Allocation of Profits and Losses</u>.  The Company's profits and losses shall be allocated to the Member.

Section 14.  <u>Distributions</u>.  Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.   Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

LIMITED LIABILITY COMPANY AGREEMENT                                    HEBER AVENUE PARTNERS LLC

to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

Section 15.  Books and Records.  The Member shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business.  The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours.  The Company's books of account shall be kept using the method of accounting determined by the Member.  The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 16.  Other Business.  Notwithstanding any duty otherwise existing at law or in equity, the Member, and any Affiliates of the Member, may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 17.  Exculpation and Indemnification.

(a)    To the fullest extent permitted by applicable law, neither the Member nor any officer (including without limitation any Hotel/Restaurant Operations Manager), director, employee, agent or Affiliate of the Member (collectively, the "**Covered Persons**") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 17 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof; and provided further, that so long as any Obligation is outstanding, no indemnity payment from funds of the Company (as distinct from funds from other sources, such as insurance) of any indemnity under this Section 17 shall be payable from amounts allocable to any other Person pursuant to the Basic Documents.

(c)    To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of

4

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

**LIMITED LIABILITY COMPANY AGREEMENT**                              **HEBER AVENUE PARTNERS LLC**

such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this <u>Section 17</u>.

(d)      A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)      The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)      The foregoing provisions of this <u>Section 17</u> shall survive any termination of this Agreement.

Section 18.  <u>Assignments</u>.   The Member may assign in whole or in part its limited liability company interest in the Company.   Subject to <u>Section 20</u>, the transferee shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. If the Member transfers all of its limited liability company interest in the Company pursuant to this <u>Section 18</u>, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company.  Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 19.  <u>Resignation</u>.  If the Member shall desire to resign from membership in the Company, an additional member of the Company shall be admitted to the Company upon such additional member's execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.   Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 20.  <u>Admission of Additional Members</u>.  One or more additional Members of the Company may be admitted to the Company with the written consent of the Member.

Section 21.  <u>Dissolution</u>.

(a)      The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following:  (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT
LIMITED LIABILITY COMPANY AGREEMENT                                      HEBER AVENUE PARTNERS LLC

membership of the last remaining member of the Company in the Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.  Upon the occurrence of any event that causes the last remaining member of the Company to cease to be a member of the Company or that causes the Member to cease to be a member of the Company (other than upon continuation of the Company without dissolution upon (i) an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to Sections 18 and 20, or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to Sections 19 and 20), to the fullest extent permitted by law, the personal representative of such member is hereby authorized to, and shall, within 90 days after the occurrence of the event that terminated the continued membership of such member in the Company, agree in writing (i) to continue the Company and (ii) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that terminated the continued membership of such member in the Company.

(b)     Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)     The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

Section 22.  Waiver of Partition; Nature of Interest.  Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, the Member hereby irrevocably waives any right or power that the Member might have to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company.  The Member shall have any interest in any specific assets of the Company, nor shall the Member have the status of a creditor with respect to any distribution pursuant to Section 14 hereof.  The interest of the Member in the Company is personal property.

Section 23.  Benefits of Agreement; No Third-Party Rights.  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member.  Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

Section 24.  Severability of Provisions.  Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to

be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 25. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 26. <u>Binding Agreement</u>.  Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member, by the Company or any member thereof, in accordance with its terms.

Section 27. <u>Governing Law</u>.  This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 28. <u>Amendments</u>.  This Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Section 29. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 30. <u>Notices</u>.  Any notices required to be delivered hereunder shall be in writing, with reference to both the Company and the Property, and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission: (a) in the case of the Company, to the attention of the office of Counsel, at the principal business office of the Company as set forth in <u>Section 2</u>; (b) in the case of the Member, to the Member at its address as listed on <u>Schedule B</u> attached hereto; and (c) in the case of either of the foregoing, at such alternate or supplemental address as may be designated by prior written notice to the notifying party.  Any such notice shall be deemed to have been received:  (x) when the notice is received by the recipient or when delivery to said address is attempted but refused or on the date of attempted delivery if the address (and any alternate or supplemental address which has the recipient may have designated by prior written notice to the notifying party) is no longer valid if sent by registered or certified mail or overnight courier; (y) at the time of sending by telecopy, electronic mail or other similar form of rapid transmission if sent during business hours on a business day (otherwise at 12:00 noon local time on the next business day), but only if also sent by other means on the same day; and (z) on the date of personal delivery if delivered during business hours on a business day (otherwise at 12:00 noon local time on the next business day).

Section 31. <u>Effectiveness</u>.  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Formation with the Office of the Delaware Secretary of State on June 17, 2010.

[SIGNATURE FOLLOWS ON NEXT PAGE]

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

LIMITED LIABILITY COMPANY AGREEMENT                              HEBER AVENUE PARTNERS LLC

      IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Limited Liability Company Agreement as of the 18th day of June, 2010.

MEMBER:

ERSTE ABWICKLUNGSANSTALT,
a public-law entity organized in the Federal
Republic of Germany,


By:_____

    Name: _____

    Title: _____


By:_____

    Name: _____

    Title: _____

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

LIMITED LIABILITY COMPANY AGREEMENT                                    HEBER AVENUE PARTNERS LLC

## SCHEDULE A

## Definitions

A.    <u>Definitions</u>.  When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"**Act**" has the meaning set forth in the preamble to this Agreement.

"**Affiliate**" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"**Agreement**" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"**Authorized Person**" means any individual whose name is, at the applicable time, listed on <u>Schedule B</u> as attached hereto and as from time to time amended to add or remove authorized persons by a writing signed by any two such Authorized Persons.  Upon the death or incapacity of any Authorized Person, or  in the event the Member should advise the Company that any such Authorized Person is no longer an authorized agent of the Member, said <u>Schedule B</u> shall be deemed to have been immediately and automatically amended to remove the name of such Authorized Person.  In the event that <u>Schedule B</u> shall at any time identify less than three Authorized Persons, the Member may add the names of additional individuals to <u>Schedule B</u> by amendment of this Agreement executed by at least two duly authorized representatives of Member, which representatives need not be Authorized Persons.

"**Bankruptcy**" means, with respect to any Person, if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (vii) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated.  The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"**Basic Documents**" means that certain Amended Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG dated June 16, 2010, as filed with the United States Bankruptcy

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

LIMITED LIABILITY COMPANY AGREEMENT                                HEBER AVENUE PARTNERS LLC

Court for the District of Utah, Central Division, in Bankruptcy Case No. 09-29905 on June 16, 2010 (as modified or amended and adopted by order of said court, the "**Plan**"), along with any and all deeds, assignments, agreements to assume or accept, or other transfer documents related to the acquisition by, assignment to, assumption of, or other transfer to the Company of the Property and any related property, rights, or obligations, whether pursuant to the Plan or otherwise, and including that certain Amended and Restated Loan and Security Agreement, Amended and Restated Promissory Note, Modified Deed of Trust, Environmental Indemnity, and Pledge and Security Agreement, and Consent and Subordination of Management Agreement to be delivered in association with the Company's assumption of an existing mortgage loan on the Property, in each case along with all documents and certificates contemplated thereby or delivered in connection therewith.

"**Certificate of Formation**" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware on June 17, 2010, as amended or amended and restated from time to time.

"**Company**" means RAGTIME SKY LODGE HOLDINGS LLC, a Delaware limited liability company.

"**Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"**Covered Persons**" means the Member and any officer, director, employee, agent or Affiliate of the Member.

"**Hotel/Restaurant Operations Officer**" means an individual appointed by the Member in accordance with Section 9Section 9.  (e) and charged with management of the day-to-day operations of any hotel, restaurant or other commercial business operated on the Property, including without limitation supervision of operations related to the sale of alcoholic beverages on the Property under any liquor license held by the Company.

"**Material Action**" means to consolidate or merge the Company with or into any Person, or sell all or substantially all of the assets of the Company, or to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make any assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or take action in furtherance of any such action, or, to the fullest extent permitted by law,  dissolve or liquidate the Company.

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

LIMITED LIABILITY COMPANY AGREEMENT                                    HEBER AVENUE PARTNERS LLC

"**Member**" means WESTLB AG, CAYMAN ISLANDS BRANCH, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"**Person**" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

B.      Rules of Construction.  Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms.  The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."  The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision.  The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement.  All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT

**LIMITED LIABILITY COMPANY AGREEMENT**                                    **HEBER AVENUE PARTNERS LLC**

## SCHEDULE B

## MEMBER

**Name:**                                    ERSTE ABWICKLUNGSANSTALT

**Mailing Address:**                         c/o WESTLB AG, a German Bank
                                             acting through its New York Branch
                                             7 World Trade Center
                                             250 Greenwich Street, 50th Floor
                                             New York, NY 10007

**Limited Liability Company Interest:**      100%

**Authorized Persons:**                      1.  [*** _____TBD_____ ***]

                                             2.  [*** _____TBD_____ ***]

                                             3.  [*** _____TBD_____ ***]

                                             4.  [*** _____TBD_____ ***]

# EXHIBIT 5

## Certificate of Formation
## Certificate of Good Standing



*PAGE 1*

*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "HEBER AVENUE PARTNERS LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE SEVENTEENTH DAY OF JUNE, A.D. 2010.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "HEBER AVENUE PARTNERS LLC" WAS FORMED ON THE SEVENTEENTH DAY OF JUNE, A.D. 2010.

4837424   8300

100664812

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 8059194

DATE: 06-17-10



PAGE 1

*The First State*

    I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "HEBER AVENUE PARTNERS LLC", FILED IN THIS OFFICE ON THE SEVENTEENTH DAY OF JUNE, A.D. 2010, AT 8:06 O'CLOCK A.M.

**4837424   8100**

**100664812**

You may verify this certificate online at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

**AUTHENTICATION:  8059193**

**DATE:  06-17-10**

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 08:09 AM 06/17/2010*
*FILED 08:06 AM 06/17/2010*
*SRV 100664812 – 4837424 FILE*

# LIMITED LIABILITY COMPANY

## CERTIFICATE OF FORMATION

## OF

## HEBER AVENUE PARTNERS LLC

This Certificate of Formation of **Heber Avenue Partners LLC** (the "LLC") is being duly executed and filed by John R. Shipley, III as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del.C. §18-101 et seq.).

FIRST:       The name of the limited liability company is **Heber Avenue Partners LLC** (the "LLC").

SECOND:    The address of the registered office of the LLC in the State of Delaware shall be 615 South DuPont Highway, County of Kent, Dover, Delaware 19901. The name of its registered agent at such address is NATIONAL CORPORATE RESEARCH, LTD.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of this 16th day of June, 2010.

_/S/  JOHN R. SHIPLEY, III_____

John R. Shipley, III, *Authorized Person*

LA1 1823872

# EXHIBIT 6

## Executory Contracts

# EXECUTORY CONTRACTS AND
# LEASES TO BE ASSUMED AND ASSIGNED

| Counterpart to Executory Contracts or Lease | Description of Contract or Lease | Cure Amount Owed |
|---|---|---|
| ADT Security Services Inc<br>PO Box 371956<br>Pittsburgh, PA 75250-7956 | Alarm System | 0 |
| Aetna<br>PO Box 14089<br>Lexington, KY 40512 | Insurance | 0 |
| Amex<br>P.O. Box 53852<br>Phoenix, AZ 85072-3852 | Agreement to provide services for use of credit cards | 0 |
| EC Power System Agreement<br>3738 W. 2340 South #E<br>Salt Lake City, UT 84120-7233 | Generator Services & Repairs<br>Account #311201 | 0 |
| Ecolab<br>PO Box 100512<br>Pasadena CA 91189<br>Telephone:  800-352-5326 | Dish Machine for Bar Boheme | $113.70 |
| Ecolab Pest Elim. Div<br>PO Box 6007<br>Grand Forks, ND 58206-6007 | Agreement to provide monthly pest control services | $602.00 |
| Hasler, Inc.<br>PO Box 3808<br>Milford, CT 06480-8708 | Postage Services<br>Account #7900011002415431 | 0 |
| Liquor Leasing & Service, L.C.<br>9283 South Jean Drive<br>Sandy UT 84070-6254<br>Telephone:  801-561-1996 | Electronic liquor counter, paper goods for flavoring stickers | $320.55 |
| Mountain Valley Temperature Control<br>PO Box 429<br>Pleasant Grove, UT 84062<br>Contact:  Russell Cloward<br>Telephone:  801-785-3144<br>Fax:  801-785-3199 | Semi-annual preventive maintenance for the chiller | 0 |
| Muzak LLC<br>PO Box 71070<br>Charlotte, NC 28272<br>Telephone:  800-331-3340 | Agreement to provide music for the property | 0 |
| Open Table Inc.<br>PO Box 49322<br>San Jose, CA 95161-9322 | Restaurant reservations system | 0 |
| Par Springer Miller System, Inc.<br>PO Box 1547<br>Stowe, VT 05672<br>Telephone:  802-253-7377 | Reservation system | 0 |

| Counterpart to Executory Contracts or Lease | Description of Contract or Lease | Cure Amount Owed |
|---|---|---|
| Paychex<br>4400 Kittredge Street, Suite 50<br>Denver CO 80239<br>Contact:  Janet Johnson<br>Telephone:  303-307-0505 Ext 3165 | License Agreement to for use of Payroll Processing Fee and Time Clock Software | 0 |
| Revco Leasing<br>PO Box 65598<br>Salt Lake City, UT 84165-0598<br>Telephone:  801-487-6878<br>Fax:  801-486-7439 | Sharp Copy Machines | $759.01 |
| Schindler Elevator Corporation<br>PO Box 93050<br>Chicago IL 60630 | Agreement to provide elevator services and maintenance | $552.89 |
| Shift 4 Corp<br>1491 Center Crossing Road<br>Las Vegas, NV 89144-7047<br>Telephone:  702-597-2480 | Agreement to provide payment processing | 0 |
| Space Place Storage<br>P.O. Box 681451<br>Park City, UT  84068 | Furniture Storage | 0 |
| Step Saver Inc<br>1901 West 2425 South<br>Woods Cross, UT 84087<br>Telephone:  801-444-9825 | Lease of equipment and agreement to provide salt for the water softener system | $380.54 |
| Travelscape, LLC dba Expedia Travel<br>10190 Covington Cross Dr.<br>Las Vegas, Nevada 89144 | Marketing Agreement | 0 |
| Utah Fire Equipment<br>152 West 1700 South<br>Salt Lake City, UT 84116<br>Telephone:  801-467-4261<br>Fax:  801-467-6322 | Fire System, Extinguisher Maintenance | $1,188.38 |
| Virtuoso, Ltd. | Hotel & Resort Preferred Supplier Agreement | 0 |