KIM R. WILSON (3512)
P. MATTHEW COX (9879)
NATHAN R. SKEEN (12662)
**SNOW, CHRISTENSEN & MARTINEAU**
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone:  (801) 521-9000
Facsimile:   (801) 363-0400

Attorneys for David Wickline and Alchemy Ventures Trust, LLC
as member and manager, respectively, of and on behalf
of CloudNine Resorts-Sky Lodge Development, LLC
and CloudNine Resorts-Sky Lodge Management, LLC

---

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| In re:<br><br>**EASY STREET HOLDING LLC, et al.,**<br><br>Debtors.<br><br>Address:   201 Heber Avenue<br>              Park City, UT 84060<br><br>Tax ID Numbers:<br>35-2183713 (Easy Street Holding, LLC)<br>20-4502979 (Easy Street Partners, LLC),and<br>84-1685764 (East Street Mezzanine, LLC) | Bankruptcy No. 09M-29905<br>Jointly Administered with  Cases<br>09-29907 and 09-29908<br><br>(Chapter 11) |

**DAVID WICKLINE'S AND ALCHEMY VENTURES TRUST, LLC'S, ON BEHALF OF
CLOUDNINE RESORTS-SKY LODGE DEVELOPMENT, LLC AND CLOUDNINE
RESORTS-SKY LODGE MANAGEMENT, LLC,  OBJECTION TO CONFIRMATION
OF AMENDED PLAN OF REORGANIZATION OF EASY STREET PARTNERS, LLC
AND WESTLB, AG DATED JUNE 16, 2010**

Pursuant to 11 U.S.C. § 1129,[1] David Wickline, personally, and Alchemy Ventures Trust,

LLC ("AVT") as member and manager, respectively, of and on behalf of CloudNine Resorts-

Sky Lodge Development, LLC ("Sky Lodge Development") and CloudNine Resorts-Sky Lodge

Management, LLC ("Sky Lodge Management") (collectively "Claimants") hereby file this

Objection to Confirmation of the Amended Plan of Reorganization of Easy Street Partners, LLC

and WestLB, AG Dated June 16, 2010 as supplemented by the Plan Supplement dated June 21,

2010 (collectively the "Amended Plan").

## <u>INTRODUCTION</u>

Easy Street Partners, LLC ("Partners") and WestLB, AG ("WestLB") (collectively the

"Plan Proponents") have proposed an Amended Plan of Reorganization  pursuant to § 1121(c) of

the Bankruptcy Code that is overshadowed by blatant self dealing and repeated breaches of

fiduciary duties by the Plan Proponents and Partners' manager, Mr. Shoaf.  In particular,

Partners, through its manager, Mr. Shoaf, improperly blocked the Wickline Interest from

participating in the management of Partners and, contrary to the admonitions and warnings of the

Wickline Interest, engaged in ill-advised business dealings that have resulted in the dire financial

situation of Partners.  Mr. Shoaf also breached fiduciary duties owed to Claimants in his capacity

as a manager of Sky Lodge Management and Sky Lodge Development.  Not only has he, through

---

[1] 11 U.S.C. § 101 et seq. Hereinafter referred to as the "Bankruptcy Code".

his management position with Partners, proposed the Amended Plan that unjustifiably extinguishes Claimants' claims, Mr. Shoaf has also misappropriated liquor licenses held by Sky Lodge Management in preparation of transferring them to the Reorganized Debtor.

In return for Mr. Shoaf's mismanagement and egregious conduct towards those to whom he owes fiduciary duties, the Amended Plan proposed by Partners and WestLB goes to great lengths to richly reward Mr. Shoaf by requiring that he be given a lucrative two year employment contract, paying him at least $240,000 per year plus a $240,000 bonus for transferring the liquor licenses. In addition, the Amended Plan cancels a guaranty on WestLB's loan by an entity owned exclusively by Mr. Shoaf without any payment.

Inequitable conduct on the part of WestLB is also apparent in the Amended Plan. The terms of the Amended Plan provide that all general unsecured claims are to be classified the same and receive the same treatment, with the exception of the claims held by Claimants. With regards to Claimants' claims, the Amended Plan states that Claimants "shall not be entitled to, nor receive, any distribution, nor shall it retain any property or interest in the property[.]" (Amended Plan, paragraph 5.6(a)). The Plan Proponents' justification for such disparate treatment of Claimants' claims is that Sky Lodge Management and Sky Lodge Development in the past allegedly agreed to subordinate their claims if WestLB's loan was not paid in full in cash. However, there has been no adjudication, either in the form of an adversary proceeding or declaratory judgment, that such an agreement exists or that its terms are enforceable. Moreover, WestLB and Debtors have done nothing to satisfy their burden of proving the existence, validity, and enforceability of such a subordination agreement. It would be improper to confirm the

Amended Plan before the Court deals with the existence, validity, and enforceability of such an

agreement.

Additionally, the sole justification for invoking the subordination agreement is that, under

the Amended Plan, WestLB's "Secured Claim will neither be paid in full nor paid in cash."

(Amended Plan, paragraph 5.6(a)).    However, the Amended Plan clearly demonstrates that

WestLB will be paid in full, and potentially in excess, of the amount of its allowed claim.   Also,

WestLB is the author and proposed equity holder of the Amended Plan and easily could have

drafted the Plan to pay its own claim in full and in cash.   Instead, WestLB offers a plan, arguing

without any basis that its claim will not be paid in full, for the apparent exclusive purpose of

denying any payment or distribution to Claimants' claims.   Contract law requires that parties

mitigate damages and that they deal with other parties in good faith and fairly.   The Bankruptcy

Code further requires that Chapter 11 reorganization plans must be proposed in good faith.   The

fact that WestLB has proposed a plan to intentionally subordinate Claimants' claims

demonstrates that the Amended Plan has not been offered in good faith and that WestLB failed to

take proper steps to mitigate damages and comply with the implied covenant of good faith and

fair dealing.   Moreover, WestLB is unable to enforce any subordination agreement due to its

failure to pay fees as they were incurred to Sky Lodge Development and Sky Lodge

Management as required by the loan agreements.   Thus, the Amended Plan should not be

confirmed.

Because the subordination agreement referenced in the Plan is unenforceable, Claimants'

claims should be classified and treated the same as the other general unsecured claims.   Well

established precedent generally requires Chapter 11 plans to classify general unsecured claims

4

the same and to provide the same treatment to such claims. The Amended Plan, however, provides for substantially different classification and treatment of Claimant's claims when compared to the other general unsecured claims. The Amended Plan even unjustifiably deprives Claimants of the right to vote to accept or reject the Amended Plan. This unfair discrimination is expressly prohibited by the Bankruptcy Code and precludes the confirmation of the Amended Plan.

Lastly, the repeated breaches of fiduciary duties owed to Claimants by Partners, its management, and Mr. Shoaf has and will result in substantial financial losses to the Wickline Interest. In order to remedy these breaches, and to prevent any future harmful breaches, equity requires that AVT be permitted to vote to accept or reject the Amended Plan on behalf of Sky Lodge Management and Sky Lodge Development. Otherwise, Plan Proponents would be permitted to confirm the very plan which perpetrates and rewards breaches of fiduciary duties, self dealing and other wrongful conduct.

## BACKGROUND, JURISDICTION AND VENUE

1.    Easy Street Partners, LLC, Easy Street Mezzanine, LLC ("Mezzanine"), and Easy Street Holding, LLC ("Holding") filed voluntary Chapter 11 petitions on September 14, 2009.

2.    The Court approved the procedural consolidation and joint administration of each of the above bankruptcy cases under the case of Easy Street Holding, LLC, case number 09-29905.

3.    Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 157, 1334, 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED

4.      Claimants request that the Court enter an order denying confirmation of the Amended Plan.

## STATEMENT OF FACTS

5.      Partners is the owner and operator of The Sky Lodge Hotel in Park City, Utah. Partners is owned 100% by Mezzanine, which is in turn owned 100% by Holding.

6.      There are four equity security holders in Holding: Two hold 38.75% each, and two hold minority interests of 12.5%, and 10% respectively.

7.      38.75% of Holding is owned by Alchemy Ventures Group, LLC ("AVG") which is owned 100% by AVT, of which David Wickline ("Mr. Wickline") is the manager (The "Wickline Interest").

8.      38.75% of Holding is owned by CloudNine Resorts, LLC, of which William Shoaf ("Mr. Shoaf") is the member and manager (The "Shoaf Interest").

9.      12.5% of Holding is owned by Park City I, LLC, of which Michael Feder and Elizabeth Rad are members and co-managers (The "Feder Interest"). The remaining 10% of Holding is owned by Utah Coal and Lumber, the shareholders of which are Philo Smith and Diane Smith (The "Smith Interest").

10.      Sky Lodge Development and Sky Lodge Management are 50% owned and 50% managed by Mr. Wickline and Mr. Shoaf.

11.      From its inception, the manager of Holding and, therefore the manager of the entire Easy Street enterprise, was AVG-SL, LLC. AVG-SL, LLC was owned 50% by AVT (owned and managed by Mr. Wickline) and 50% by CloudNine Resorts, LLC (owned and

managed by Mr. Shoaf). Thus, the Easy Street Enterprise was effectively co-managed by Mr. Wickline, representing the 38.75% ownership interest of Holding by AVG and AVT and Mr. Shoaf representing 38.75% ownership in Holding by CloudNine Resorts, LLC.

12.     Section 3.7(a)(i) of the Holding Operating Agreement requires notice for meetings of the members of Holding to specify the purposes of such meetings.

13.     Section 5.7 of the Holding Operating Agreement provides that AVG-SL, LLC could only be removed as manager of Holding for cause as defined in Article I of the agreement. Cause is defined as:

      a.  A conviction of a felony crime or a crime of moral turpitude;

      b.  Commission of any confirmed act of theft, fraud or falsification of any employment or company records;

      c.  Failure or inability to perform reasonably assigned duties after receipt of written notice from the company of, and a reasonable opportunity to cure such failure or breach;

      d.  Breach of a material term of the Operating Agreement, which breach is not cured within thirty (30) days following written notice of such terms; or

      e.  Gross misconduct in connection with the performance of reasonably assigned duties.

14.     On or about August 26, 2009, a meeting of the members of Holding was held, during which a resolution was passed that removed AVG-SL, LLC as manager of Holding without satisfying any of the requirements of removal for cause. The Shoaf, Feder and Smith Interests voted in favor the resolution and the Wickline Interest opposed the resolution. The

purpose of this resolution was calculated to remove the Wickline Interest from any future participation in management in the Easy Street Enterprise.

15.     Following the resolution, Mr. Shoaf, Philo Smith and Michael Feder were purportedly installed as managers of Holding in the place of AVG-SL, LLC.

16.     On September 14, 2009, Debtors filed Chapter 11 petitions without consultation with and without Mr. Wickline's knowledge or consent.  Since this time, Mr. Wickline, AVG and AVT have been excluded from Debtors' decision making process and have been given no other information to which they are entitled as members of Debtors.

17.     By nature of the current management of Debtors, Mr. Shoaf and others representing the Feder and Smith Interests have directed Debtors throughout the proceedings before this Court and the Wickline Interest has not been allowed to participate.

18.     Partners filed its Statements and Schedules on October 15, 2009, as Docket Entry 16-1, in which it listed the value of the real property held by the estate at $30,131,744.00.

19.     WestLB submitted its proof of claim on January 5, 2010 in the amount of $16,049,742.21 as Claim 28-1.  WestLB filed an amended proof of claim on May 18, 2010 in the exact same amount as Claim 28-2.  Each stated the following with regards to the amount owed to WestLB by Debtors:

> As of the Petition Date, the debt owed by the Debtor to WestLB was **$16,049,742.71**, consisting of $14,379,224.00 in principal, $791,207.36 in accrued (default and non-default) interest, late charges of $742,210.19 and $155,101.16 in fees and expenses for services rendered administering the loan.

*Id.*

20.     Partners submitted its Amended Plan of Reorganization of Easy Street Partners, LLC Dated February 18, 2010, as Docket Entry 309.  The Amended Disclosure Statement With Respect to Amended Plan of Reorganization of Easy Street Partners, LLC Dated February 18, 2010, filed as Docket Entry 310, explained that the balance of WestLB's loan as of the petition date was $15,164.331.17 and that the proof of claim filed by WestLB was in the amount of $16,049,742.71.  The Disclosure Statement went on to explain that Partners believed the final amount of WestLB's claim, including reasonable attorneys fees, accrued and unpaid interest and additional charges to be $15,700,000.00.  *Id.*

21.     Partners and WestLB submitted their Amended Plan on June 16, 2010 as Docket Entry 566.  The Plan classifies the claims and interests of creditors and provides for their respective treatment under the plan according to their classification pursuant to §§ 1122-1123 of the Bankruptcy Code.

22.     WestLB is named the Plan Funder and future equity holder in the Amended Plan and will "provide funding as required for the Plan Proponents to confirm [the] Plan[.]" (Amended Plan, p. 7).

23.     With regards to the roles of WestLB and Partners as Plan Proponents, the Plan states the following:  "Except as otherwise provided in the Plan, all decisions, approvals, or other acts to be taken by the Plan Proponents under the Plan shall be made by WestLB, after reasonable consultation with Partners."  (Amended Plan, p. 7).

24.     The Plan classifies WestLB's secured claim as "Class 1 Claim" which "shall be Allowed in the full amount due and owing under the WestLB Loan Documents, in the amount of $16.2 million."  (Amended Plan, paragraph 5.1).

9

25.     On June 21, 2010 the Plan Proponents filed the Plan Supplement to the Amended

Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG Dated June 16, 2010 (the

"Supplement to Amended Plan").  The Supplement to Amended Plan includes, as an exhibit, a

term sheet containing the material terms of the Restructured Loan Documents.

26.     The term sheet states that WestLB's secured claim will be restructured into two

loans owing to WestLB and totaling $16.2 million dollars in principal.  (*See* Exhibit 1 to

Supplement to Amended Plan).  The senior loan will be in the amount of $6,200,000 with

interest accruing at LIBOR + 4.50% per annum, while the junior loan will be in the amount of

$10,000,000 with interest accruing at LIBOR + 7.50% per annum.  *Id.*  These rates are higher

than those that apply under the original WestLB Loan Documents.

27.     Sky Lodge Development holds a scheduled unsecured nonpriority claim in the

amount of $1,268,213.00.  Sky Lodge Management holds a scheduled unsecured nonpriority

claim in the amount of $366,631.00.  Neither claim has been designated as contingent,

unliquidated, or disputed.  (*See* Statements and Schedules, Schedule F).

28.     The Wickline Interest submitted timely ballots voting the claims of Sky Lodge

Management and Sky Lodge Development to reject the Amended Plan.

29.     Under the Plan, all Allowed General Unsecured Claims are classified as "Class 4

Claims," with the exception of the claims held by CloudNine Resorts-Sky Lodge Management,

LLC ("Sky Lodge Management") and CloudNine Resorts-Sky Lodge Development, LLC ("Sky

Lodge Development") (collectively "CloudNine"), which have been classified as "Class 6

Claims." (Amended Plan, pp. 4, 15-17)).  Both Class 4 Claims and Class 6 Claims are impaired

by the Plan.  (*Id.* at p. 12).

30.     The Plan grants all holders of "Class 4 Claims" to elect between two treatment options with regards to their respective claims when voting on the plan.  (Amended Plan, paragraph 5.4(a) and (b)).

31.     Treatment for Class 4 Claims under Option 1 is as follows:

Option 1:  Holders of Allowed Class 4 Claims shall receive payment of 100% of their Allowed Claim in equal quarterly payments, with the first payment due on October 15, 2010.  Successor quarterly payments shall be on January 15th, April 15th and July 15th with the last payment July 15, 2013, which is approximately 3.5 years from the Effective Date.  In the even the Reorganized Debtor sells or conveys substantially all of the Assets prior to the completion of quarterly payments to those Class 4 claimants electing Option 1 as described herein, in conjunction with and at the time of such sale or conveyance, the Reorganized Debtor shall pay in a lump sum all unpaid amounts due to such Class 4 claimants.

(Amended Plan, paragraph 5.4(a)).

32.     Treatment for Class 4 Claims under Option 2 is as follows:

Option 2:  Holders of Allowed Class 4 Claims shall receive payment of a discounted amount equal to 60% of their Allowed Claim on the thirtieth (30th) day after the Effective Date.

(Amended Plan, paragraph 5.4(b)).

33.     Under the Amended Plan, the claims of Sky Lodge Management and Sky Lodge Development are to be given no distributions and are to retain no property.  The specific treatment as Class 6 Claims, which is based upon an attempt to enforce a subordination agreement, is as follows:

In accordance with (i) the Consent and Subordination of Development Agreement among Partners, WestLB, and CloudNine Resorts - Sky Lodge Development, LLC and (ii) the Consent and Subordination of Management Agreement among Partners, WestLB, and CloudNine Resorts - Sky Lodge Management, LLC, both of which agreements are dated as of March 30, 2006, CloudNine has agreed that "any right or remedy [CloudNine] may have to collect . . . fees, charges or indemnifications from [Partners] shall be subordinated to the indefeasible

11

payment in full in cash of all amounts due to [WestLB] under the [WestLB] Loan Documents." Because the WestLB Secured Claim will neither be paid in full nor paid in full in cash, CloudNine shall not be entitled to, nor receive, any distribution, nor shall it retain any property or interest in property on account of such Class 6 Claims. On and as of the Effective Date, all of the Class 6 Claims shall be extinguished, cancelled and discharged.

(Amended Plan, paragraph 5.6(a)).

34.     The Amended Plan cancels CloudNine Resorts LLC guaranty of WestLB's loan to Partner.  (Amended Plan, paragraph 5.1(c)).

35.     The Plan provides that Mr. Shoaf and either the Reorganized Debtor or the Plan Funder shall enter into an employment agreement reasonably acceptable to WestLB and Mr. Shoaf.  (Amended Plan, paragraph 7.5).

36.     In exchange for entering into "an acceptable Employment Agreement" between Mr. Shoaf and the Reorganized Debtor, the Plan states that Mr. Shoaf will permit the Reorganized Debtor to use the liquor licenses currently used in the Debtor's operations. (Amended Plan, paragraph 7.2(b)).

37.     Under the terms of the Employment Agreement, Mr. Shoaf will be paid $20,000 per month in base salary, a market rate commission or finders' fee for any unit sales he procures, and a "Transition Bonus" of $240,000 if he successfully assures the Reorganized Debtor's access to liquor licenses currently being held by entities doing business on the premises of the Sky Lodge Hotel.  Mr. Shoaf's potential remuneration under the Employment Agreement is $720,000 plus an unspecified amount in commission or finders' fees in connection with the sale of fractional units or the entire Hotel.

38.    The liquor licenses in question are identified as licenses CL 00962, CL 00961, BC 00084, and RE 01791 (the "Liquor Licenses").  *Id.* at 2.

39.    The Liquor Licenses were obtained in approximately 2007 in the name of Sky Lodge Management and were renewed annually.  (*See* 2008-2009 Liquor License Renewal Documents, attached as Exhibit "A").

40.    The Wickline Interest, being a 50% owner and manager of Sky Lodge Management, required that Mr. Wickline undergo an FBI criminal background check in 2007 in connection with the issuance of the Liquor Licenses.  (Background Investigation Letter to FBI, attached as Exhibit "B").

41.    Mr. Wickline was named in the initial renewal application as a partner of Sky Lodge Management, the entity identified on the application as the owner of the Liquor Licenses. (*See* 2008-2009 Liquor License Renewal Documents).

42.    Then, in May 2010, Mr. Shoaf unilaterally and without the consent or authority of Mr. Wickline changed the names of the entities holding the licenses from Sky Lodge Management to CloudNine Resortclubs, LLC[1].  (*See* 2010-2011 Liquor License Renewal Documents, attached as Exhibit "C").  Mr. Shoaf went as far as to cross out the name of Sky Lodge Management by hand and wrote in CloudNine Resortclubs, LLC for the entity name.  *Id.*

43.    Mr. Shoaf, also in May 2010, changed the names on various surety bonds issued in connection with the Liquor Licenses from Sky Lodge Management to CloudNine Resortclubs, LLC.  (*See* Surety Bonds, attached as Exhibit "D").

---

[1] CloudNine Resortclubs, LLC appears to have been formed on March 3, 2010, with Joseph Wrona listed as the registered agent.  (Resortclubs Articles of Organization, attached as Exhibit "E").

## ARGUMENT

**I.      THE PLAN IMPROPERLY SUBORDINATES CLAIMANTS' CLAIMS.**

"A subordination agreement is enforceable in a [Chapter 11 case] to the same extent that such agreement is enforceable under applicable nonbankruptcy law."   11 U.S.C. § 510(a). Accordingly, if the agreement is unenforceable under contract law, it is unenforceable in bankruptcy proceedings as well.  *See In re Best Products Co., Inc.*, 168 B.R. 35, 69 (S.D.N.Y. 1994) (stating that the "applicable nonbankruptcy law" referred to in § 510(a) is that of contracts).  Here, the subordination agreement referenced in the Amended Plan does subordinate Claimants' claims beyond that of the other Class 4 Claims because WestLB's claims will be paid in full.  Thus, there is no justification for preventing Claimants from receiving the exact same treatment as the other general unsecured claims holders in Class 4.

However, even if WestLB were not paid in full, as is alleged in the Amended Plan, the subordination agreement would still be unenforceable and ineffective due to the conduct of the Plan Proponents.  Specifically, WestLB has failed to take proper steps to mitigate its damages and comply with implied covenant of good faith and fair dealing, as required in contract law. Accordingly, the Plan Proponents have failed to meet their burden of proving the existence, validity, and enforceability of the subordination agreement referenced in the Amended Plan and even if the subordination agreement were proven to be valid, the inequitable conduct by those

proposing the Amended Plan renders the agreement unenforceable under any circumstances. Finally, the Amended Plan is not offered in good faith as expressly required in the Bankruptcy Code.  Accordingly, the Amended Plan unjustifiable provides no payment for Claimants' claims and is not confirmable.

      **a.   Claimants' Claims Must Receive the Same Treatment as Class 4 Claims Because WestLB will be Paid in Full Under the Plan.**

The Amended Plan proposed by WestLB seeks to extinguish, cancel and discharge Claimants' right to payment of their claims, stating that "[b]ecause the WestLB Secured Claim will neither be paid in full nor paid in full in cash, CloudNine shall not be entitled to, nor receive, any distribution, nor shall it retain any property or interest in property[.]  (Amended Plan, paragraph 5.6(a)).  However, the terms of the Amended Plan clearly demonstrate that WestLB's entire allowed claim will be paid in full at a higher rate of interest than under its original loan agreement.  Additionally, the terms of the Amended Plan also provide that WestLB will be the Plan Funder with Heber Avenue Partners, LLC, an entity owned and managed by a German based entity, acting as the Reorganized Debtor.  Because WestLB's claim will be paid in full, WestLB is unable to argue that Claimants are not entitled to receive any distribution or interest in property for their unsecured claims.

According to the Amended Plan, WestLB's claim is allowed in full amount due and owing under its loan agreement, which is $16.2 million.  (Amended Plan, paragraph 5.1).  The plan supplement provides that WestLB's loans will be restructured into two separate loans.  The total in principal owing to WestLB under the loans will be $16.2 million.  WestLB will also be paid interest accruing over the life of the two loans at a higher rate than under the original loan

agreements. Clearly, WestLB will be paid in full under the Plan, thereby stripping WestLB of any argument that Claimants are not entitled to any payment under the Plan.

If anything, WestLB is going to be paid more than in full under the Plan. While the Plan states that full amount owed to WestLB is $16.2 million, the proofs of claims it submitted as late as May 18, 2010, represented that the amount of WestLB's claim was $16,049,742.71. In fact, prior to agreeing to a joint plan with WestLB, Partners disputed the amount listed in WestLB's proof of claim and represented to the Court that the amount of the claim, including attorneys fees, accrued interest and any additional charges would be approximately $15,700,000.00. Without any explanation or support, Partners and WestLB seem to agree that the value of WestLB's claim is $16.2 million, more than originally stated by either party. This demonstrates not only that WestLB will be paid in full (or in excess of what they are really owed) under the Amended Plan, but also that WestLB and Partners have proposed the Plan with the exclusive purpose of benefitting one another at the expense of the other creditors.

Not only will WestLB be paid in full by the new loans, it will also become the equity holder of the Reorganized Debtor and will therefore succeed to ownership of all estate assets. The value of the Sky Lodge alone has been determined by the Court to be $20,600,000.00, as of April 6, 2010. (*See* Order Determining the Value of Sky Lodge Pursuant to Section 516 of the Bankruptcy Code and Bankruptcy Rule 3012, entered as Entry No. 430). This, combined with all the estate assets, which it will acquire under the Amended Plan, plus the value of the loans it will assume, demonstrates that WestLB will be paid more than the full amount of its claim. Because WestLB will at the very least be paid in full, Claimants are entitled to fair treatment and to receive payments for their claims.

    **b.  Even if WestLB were not Paid in Full, the Subordination Agreement is Unenforceable Under Applicable Nonbankruptcy Law.**

       **i.  WestLB has breached the implied covenant of good faith and fair dealing.**

The implied covenant of good faith and fair dealing inheres in every contract and provides that both parties impliedly promise not to do anything intentionally to injure the other party's right to receive benefits under the contract. *J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1113 (10th Cir. 2009). "The purpose of the implied covenant of good faith and fair dealing is to ensure that a party is not deprived of the fruits of the contract by the arbitrary or unreasonable actions to the other party." *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1104 (10th Cir. 2003). The covenant further prevents "either party from impeding the other's performance of his obligations [under the contract]; and . . . one party may not render it difficult or impossible for the other to continue performance and then take advantage of the non-performance he has caused." *Markham v. Bradley*, 173 P.3d 865, 871 (Utah Ct. App. 2007) (internal quotations and citations omitted); *see also F.D.I.C. v. Everett A. Holseth & Co.*, 36 F.3d 1004, 1007 (10th Cir. 1994) ("[A] party to a contract may not prevent performance of a condition and then claim the benefit of such condition") (quoting *Townsend v. Melody Home Mfg. Co.*, 541 P.2d 1370, 1374-75 (Okla. Ct. App. 1975). The covenant is therefore breached when a party seeks to prevent or hinder the other party's performance under the contract.

As a party to the subordination agreement referenced in paragraph 5.6(a) of the Plan, WestLB is required to adhere to the implied covenant of good faith and fair dealing. This covenant prevents WestLB from doing anything to injure Claimants' rights to receive benefits under the agreement, including taking any steps to prevent performance of a condition in the

agreement and then claiming the benefit of the condition.  Here, WestLB argues that the

Amended Plan it has proposed fails to pay its claim in full, in an effort to subordinate Claimants'

claims and deprive them of the right to receive any payment for their claims.  Even if WestLB

were not paid in full by the Plan, WestLB very easily could have proposed a plan that would pay

its claim in full and in cash, thereby preserving Claimants' claims and rendering the

subordination agreement ineffective.  In essence, WestLB has contrived a plan to impede

performance under the subordination agreement for the sole purpose of extinguishing Claimants'

claims.

As the Plan Funder, WestLB stands to lose nothing by not paying its claim in full and in

cash and at the same time stands to gain much at the expense of Claimants.  By subordinating

Claimants' claim and proposing a plan that would pay Claimants nothing, WestLB is attempting

to avoid paying over $1,600,000 in unsecured claims due to Claimants.  The money that is not

paid to Claimants will then be left over for WestLB to take possession of and title to all estate

assets as the Plan Funder.  At the same time, WestLB would suffer no hardship if it paid itself

less than in full because, as Plan Funder, WestLB will gain title to all estate property not paid out

to the other estate creditors.  Quite literally, WestLB is attempting to prevent the performance of

a condition the subordination agreement and then claim the benefit of such non-performance, a

direct breach of the implied covenant of good faith and fair dealing.

Debtors and WestLB have even manipulated the estimated value of the estate in an

apparent effort to justify proposing a plan that would not pay WestLB's claim in full.  An

appraisal completed in December of 2008 by Cushman & Wakefield for WestLB valued the

property at over $40,000,000.00.  On October 15, 2009, Partners submitted its Summary of

Schedules to the Court, representing that the real property of the estate was valued at $30,131,744. (Statements and Schedules, Schedule A). Then, on April 7, 2010, Debtors represented to the Court that an updated appraisal of The Sky Lodge had been conducted and revealed that it was worth only $20,600,000. If anything, the economic climate improved dramatically in the time between the appraisals. Such a steep decline in property value over such a short period of time is unlikely, if not impossible. A more plausible explanation for the reduced valuation than the simple decrease in property value is that Debtors' property is now intentionally being undervalued, so as to justify not paying WestLB's claim in full in cash.

Regardless, even if the true value of the property is as currently claimed by the Plan Proponents, there remains sufficient value in the estate to pay WestLB's claim in full. The Amended Plan states that WestLB's secured claim is the amount of $16.2 million dollars. (Amended Plan, paragraph 5.1(a)). The Sky Lodge was recently appraised at over $20,000,000.00. In fact, the Summary of Schedules originally valued all estate liabilities (including both secured and unsecured claims) at $18,893,263.00. Clearly, the estate has sufficient property to pay WestLB's claim in full in cash and still give proper treatment to the other creditors, including Claimants. WestLB's attempt to avoid paying Claimants' claims by proposing a plan that does not pay itself in full is prohibited by the implied covenant of good faith and fair dealing, and renders the subordination agreement referenced in the Amended Plan unenforceable.

### ii. WestLB failed to mitigate damages.

"A damaged party entitled to the benefit of a contract is under a duty to mitigate his damages, and generally speaking his rights are not diminished if the circumstances force him to

deal with the party in default." *Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972). Moreover, under the doctrine of avoidable consequences, a non-breaching party not only has an active duty to mitigate damages, but also may not, either by action or inaction, aggravate the injury caused by the breach. *Pack v. Case*, 30 P.3d 436, 442 (Utah Ct. App. 2001); *In re Mirant Corp.*, 332 B.R. 139, 151-52 (N.D. Tex. 2005). As explained above, the Amended Plan will pay WestLB's claim in full, and likely more. Assuming that the Amended Plan pays WestLB less than in full, WestLB will have failed to mitigate its damages in proposing the Amended Plan, as required under non-bankruptcy contract law.

WestLB is required to take reasonable steps to mitigate its damages associated with the subordination agreement referenced in paragraph 5.6(a) of the Plan. Instead of seeking to limit or reduce its potential damages, WestLB has sought to aggravate its injury by proposing a plan that, as stated in the Amended Plan, would not pay its claim in full in cash. WestLB has the absolute ability to propose a plan under which its claim would be paid in full. Rather than propose a plan to pay itself in full, WestLB offers a plan to create a situation where its claim is paid less than in full for the exclusive purpose of invoking the subordination agreement and avoiding any distribution to Claimants, when in reality its claim is more than paid in full. This contrived plan is a breach of WestLB's duty to mitigate damages and to avoid taking action to aggravate the injury caused by the breach, if in fact WestLB is paid less than in full. WestLB's failure to mitigate its damages by proposing the contrived plan justifies the Court's refusal to enforce the subordination agreement and to reject the Amended Plan proposed by Partners and WestLB.

### c. The Validity and Enforceability of the Subordination Agreement have not been Proven and the Plan Proponents have Engaged in Inequitable Conduct.

Contract law imposes the burden of proving the existence and validity of a contract on the party seeking the enforcement of the contract. *In re Best Products Co., Inc.*, 168 B.R. 35, 69-70 (S.D.N.Y. 1994). With respect to a subordination agreement, the burden of showing the enforceability and validity of the agreement rests upon the senior creditor seeking to enforce it and subordinate the claims of another creditor. *Id.* Even if the burden of proving the existence and validity of the subordination agreement can been met by the senior creditor, the agreement will still be unenforceable in bankruptcy if there was some inequitable conduct by the party seeking to enforce the agreement that has harmed the creditor to be subordinated. *In re Best Products Co., Inc.*, 168 B.R. 35, 70 (S.D.N.Y. 1994).

As proponents of the Amended Plan, Partners and WestLB are the parties seeking to enforce the subordination agreements referenced in paragraph 5.6(a) of the Plan. The Amended Plan describes WestLB as the senior creditor in the agreement, which means that WestLB now bears the burden of proving the subordination agreement actually is valid and enforceable. WestLB has not, however, taken any steps to meet its burden. WestLB has not proven that the subordination agreement is valid, nor has WestLB shown it will not be paid in full under the Plan and thus, that the portions of the subordination agreement are in effect. WestLB has not attempted to prove the validity of the agreement through an adversary proceeding and has not presented the Court with a declaratory judgment to demonstrate that the subordination agreement's validity and enforceability has been adjudicated.

21

Rather, WestLB has waited until less than 10 days before the confirmation hearing to make any reference to the subordination agreement whatsoever.  While Claimants understand there is some need to accelerate the confirmation process associated with the newly proposed Amended Plan, Claimants also contend that their rights to due process should not be trampled in this process, especially when they have not been the cause of the multiple delays in these proceedings over the previous months.  WestLB has had a great amount of time to seek a determination by the Court that the subordination agreement exists and is valid, but for no justifiable reason has waited until now to raise the issue before the Court.  Because WestLB has not met its burden of proving the subordination agreement is valid and enforceable and has the effect of extinguishing Claimants' claims, but instead has waited until the eve of confirmation to present the issue of the subordination to the Court, it should not be considered enforceable.

Even if the Plan Proponents could prove that the subordination agreement is valid and that WestLB is not paid in full under the Plan, WestLB has failed to perform under loan agreements related to the subordination agreement.  These agreements required WestLB to place in escrow every month during the construction on the project 40% of the fees incurred to Sky Lodge Development and Sky Lodge Management.  The funds in escrow were to be released at the issuance of the final certificate of occupancy in November of 2008.  Other sales management fees were also to be paid as condo sales closed.  WestLB failed to make the contractual payments to either to the escrow account or to Claimants.  WestLB's material breach of related loan agreements prohibits their ability to invoke and enforce the subordination agreement at this time

Moreover, WestLB and Partners have engaged in inequitable conduct which has harmed Claimants and prevents the enforcement of the agreement under any circumstances.  First and

22

foremost, the Amended Plan itself demonstrates the inequitable conduct of WestLB and Partners. As explained above, WestLB has proposed a plan that states its claim is barely paid less than in full, for the apparent exclusive purpose of subordinating and eliminating Claimants' claims, despite the fact that WestLB has the ability to propose a plan to pay itself in full.

In addition to WestLB's contrived plan to subordinate Claimants' claims, the terms of the Plan also demonstrate inequitable conduct through the joint effort of WestLB and management of Debtors to look out for their own interests, rather than ensure the fair treatment of all creditor claims. In particular, Mr. Shoaf, the principal manager of Partners, is to be rewarded with the cancellation of his entity's guaranty of the WestLB loan and a profitable new employment agreement if the Plan is confirmed. (*See* Amended Plan, paragraph 7.5; Employment Agreement). In exchange for the Employment Agreement, Mr. Shoaf appears to have agreed to permit the Reorganized Debtor to use the liquor licenses currently used in the Debtor's operations. (Amended Plan, paragraph 7.2(b)). In fact, the Employment Agreement goes as far as to pay Mr. Shoaf a $240,000 "Transition Bonus" if he assures the Reorganized Debtor's use of the licenses as he has promised.

However, the Liquor Licenses referenced in the Plan and in the Employment Agreement are not held by Mr. Shoaf personally, but were initially obtained and held by Sky Lodge Management. The Wickline Interest, the 50% owner and manager of Sky Lodge Management, and Mr. Wickline, who was listed as a partner of the entity holding the licenses in the renewal materials, was required to undergo an FBI criminal background check prior to obtaining the licenses in 2007. In May 2010, just one month ago, Mr. Shoaf sought to change the names of the entities holding the Liquor Licenses in another obvious breach of fiduciary duties owed to Sky

Lodge Management and the Wickline Interest.  In order to strip the Wickline Interest and Mr. Wickline of any interest in the Liquor Licenses, Mr. Shoaf unilaterally, and without Mr. Wickline's knowledge or consent, submitted liquor license renewal applications, stating that the name of the entity now holding the licenses would be CloudNine Resortclubs, LLC.  Mr. Shoaf even went as far to cross out the name of Sky Lodge Management by hand and write in CloudNine Resortclubs' name in its place and change the names on various surety bonds issued in connection with the Liquor Licenses, all without Mr. Wickline's knowledge or consent. While this conduct constitutes clear breaches of fiduciary duties owed to Sky Lodge Management and the Wickline Interest, what makes it even more reprehensible is Mr. Shoaf's purpose in transferring the Liquor Licenses to an entity under his exclusive control.

Under the Plan, Mr. Shoaf is to be unjustly rewarded with an employment agreement which will pay him a $240,000 bonus for facilitating transfer of the misappropriated Liquor Licenses to the Reorganized Debtor.  At the same time, the Amended Plan fails to offer Mr. Wickline any employment agreement or compensation for the Liquor Licenses even though they were, and likely remain, the legal property of an entity to which the Wickline Interest is the 50% manager and owner.  Instead, Mr. Wickline's and the Wickline Interest's claims, through Claimants, are being completely extinguished by the Plan with no right to receive any payment whatsoever.  While Mr. Wickline is to lose a substantial sum of money if the Plan is confirmed, Mr. Shoaf on the other hand stands to benefit greatly from the terms of the Plan, which is in essence proposed by Mr. Shoaf by means of his status as manager of Partners.  This clear self-dealing by Mr. Shoaf in his capacity as a manager of Partners, occurring within weeks of the filing of the Amended Plan, will result in harm to Mr. Wickline and the Wickline Interest, the

other member of Sky Lodge Management, while benefitting no one else but Mr. Shoaf.  WestLB

is complicit in this conduct by proposing a plan that handsomely rewards such misconduct.  Such

inequitable conduct prevents Partners and WestLB from enforcing the subordination agreement

referenced in the Amended Plan.

    **d.  The Plan is not Proposed in Good Faith.**

    A Chapter 11 reorganization plan may not be confirmed unless it is proposed in good

faith.  11 U.S.C. § 1129(a)(3).  Good faith requires that the plan will not only achieve a result

consistent with the objectives and purposes of the Bankruptcy Code, but also that fundamental

fairness is used in dealing with creditors.  *In re Stolrow's Inc.*, 84 B.R. 167, 172 (9th Cir. BAP

1988).  "The good faith standard requires that the plan be proposed with honesty, good intentions

and a basis for expecting that a reorganization can be effected with results consistent with the

objectives and purposes of the Bankruptcy Code."  *In re Coram Healthcare Corp.*, 271 B.R. 228,

234 (D. Del. 2001) (quotations and citations omitted).  A plan is not proposed in good faith if it

is the product of self dealing which aims to benefit the drafters and unjustifiably prevents

payments to certain creditors.  *See In re ACandS, Inc.*, 311 B.R. 36 (D. Del. 36) (finding plan

was not proposed in good faith because it was largely drafted by and in favor of pre-petition

committee that had influence over debtor and that allowed the full payment of some claims while

providing no dispersement for others).  It is the Debtors' burden to demonstrate that the plan was

proposed in good faith.  *In re Global Water Technologies, Inc.*, 311 B.R. 896, 902 (D. Colo.

2004).

    The express terms of the Amended Plan demonstrate that it has not been proposed in

good faith.  First, WestLB is proposing a plan that pays its claim in full, but then maintains that it

is not paid in full for the exclusive purpose of subordinating Claimants' claim. WestLB can very easily be paid in full by the estate and could propose a plan in which it would be paid in full if the Amended Plan in fact failed to do so. Rather than utilize fundamental fairness in dealing with Claimants as creditors, the Amended Plan goes to great lengths to ensure that WestLB is paid in full and that Claimants receive no payments for their claims. And at the same time, it provides for a handsome compensation package for Mr. Shoaf so that the Shoaf Interest's portion of the Claimant's claims are paid through the "back door." Clearly, the objectives and purposes of the Bankruptcy Code will not be met by confirming the Amended Plan.

Additionally, the Amended Plan reeks of self dealing at the direct expense of the Claimants. To begin, Mr. Shoaf (the sole member and manager of CloudNine Resorts, LLC) stands to benefit by the cancellation of CloudNine Resorts, LLC's guaranty of WestLB's loan to Partners. (Amended Plan, paragraph 5.1(c)). WestLB will also benefit because it has been named as the Plan Funder and the Amended Plan subordinates and extinguishes Claimants' claims, which inures to the exclusive benefit of the funder because the Plan Funder will be permitted to keep the value of any claim that is not paid by the estate.

Mr. Shoaf, the effective manager of Partners and Claimants, has assisted WestLB in authoring the Amended Plan which undeniably harms the interests of Partners and Claimants but results in Mr. Shoaf's personal benefit. In particular, the Amended Plan will reward Mr. Shoaf with a beneficial employment agreement while the entities and individuals to whom he owes fiduciary duties are to receive nothing and lose substantial rights and claims. Mr. Shoaf is apparently planning to unilaterally assist and facilitate transfer of the Liquor Licenses owned by

Sky Lodge Management in exchange for a $240,000 "Transition Bonus," payable to himself personally.  (Amended Plan, paragraph 7.2(b); Employment Agreement, p. 3).

Interestingly enough, adding this bonus to the base salary Mr. Shoaf will be paid under the Employment Agreement, he stands to profit in the amount of $720,000, not including other commissions and benefits he can earn under the agreement.  This amount equals approximately half of Claimants' claims, or in other words, the amount Mr. Shoaf would arguably be entitled to receive if Claimants' claims were not extinguished by the Amended Plan.  Basically, it appears that the sole purpose of subordinating Claimants' claims, but at the same time offering Mr. Shoaf the Employment Agreement, is to pay Mr. Shoaf his half of Claimants' claims while stripping Mr. Wickline and the Wickline Interest of their right to recover the same.  As explained above, WestLB stands to benefit from such an arrangement in that it would be allowed to retain the payment due the Wickline Interest.  This self dealing not only constitutes egregious breaches of Mr. Shoaf's fiduciary duties, but also prohibits the confirmation of the Amended Plan.

Instead of ensuring the fair treatment of the creditors' claims, the Plan goes to great lengths to ensure that its authors are unjustifiably benefited to the direct detriment of the other parties at interest.  Because this Amended Plan has not been proposed in good faith, the Court should refuse to grant its confirmation.

## II.      THE PROPOSED PLAN MAY NOT BE CONFIRMED DUE TO ITS DISPARATE TREATMENT OF CLAIMANTS CLAIMS.

"Proper classification is essential to ensure that creditors with claims of similar priority against the debtor's assets are treated similarly."  *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1277 (5th Cir. 1991).  "The key to the classification of claims is that any grouping of

claims must be homogeneous and consistent with the principle that the criteria must be reasonable, the purpose nonmanipulative, and the separate classification supported by a unique need for the discriminatory treatment." 6 *Norton Bankr. L. & Prac.* 3d § 109:4 (2010). Courts have expressly held, therefore, that substantially similar claims should ordinarily be placed in the same class. *Matter of Greystone III Joint Venture*, 995 F.2d at 1278 (finding the language of 11 U.S.C.A. § 1122 envisions similar claims to be grouped in the same class). Additionally, claims that are placed in the same class must receive the exact same treatment. *In re CF & I Fabricators of Utah, Inc.*, 150 F.3d 1293, 1301 (10th Cir. 1998) ("Congress has provided very precise contours of how claims that are administered in Chapter 11 are to be decided, and has pronounced as a cardinal rule that all claims within the same class must be treated alike.").

Along these same lines, courts find it appropriate to classify all general unsecured claims in a single class. *In re Piece Goods Shops Co., L.P.*, 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995); *see also In re Fantastic Homes Enterprises, Inc.*, 44 B.R. 999, 1000 (D.C. Fla. 1984) ("Congress intended all unsecured claims of a similar nature to be grouped together within one class, unless a separate classification is established under § 1122(b)"). Conversely, courts recognize that a debtor should not be allowed to classify unsecured claims separately based on whether or not the claims were disputed, upon the size of the claims, or in order to gerrymander an affirmative vote on a reorganization plan. *See In re Fantastic Homes Enterprises, Inc.*, 44 B.R. 999, 1001 (D.C. Fla. 1984) (rejecting confirmation of plan that separately classified unsecured claims based on amount); *Matter of Greystone III Joint Venture*, 995 F.2d at 1279 ("thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan").

It is of no surprise, therefore, that courts have refused to allow unsecured claims to be classified differently without justification. In *In re Roswell-Hannover Joint Venture*, 149 B.R. 1014, 1021 (Bankr. N.D.Ga. 1992), a debtor proposed a reorganization plan that classified a large unsecured deficiency claim differently from other small unsecured claims. *Id.* at 1020. The court rejected the debtor's justifications on the grounds that the large claim was different in nature to the other unsecured claims, that the difference in size of the claims permitted the separate classification, and that the proposed different treatment of the claims required separate classification. *Id.* at 1019-20. The court then concluded that, "[s]ince debtor offers no legitimate reason for its separate classification or separate treatment of [the large] unsecured claim, [. . .] the separate classification is an attempt to manipulate the vote." *Id.* at 1021. Thus, separate treatment or separate classification of unsecured claims requires the offering of a legitimate reason before the plan may be confirmed.

The Amended Plan classifies all unsecured claims as Class 4 Claims, with the exception of the claims held by Claimants, which are classified as Class 6 Claims. (Amended Plan, paragraphs 5.4, 5.6). While Class 4 Claims are to receive payment of either 100% of their claim within approximately 3 years of the effective date or payment of 60% of their claim 30 days after the effective date (*see Id.* at (a) and (b)), Claimants are to receive no distributions or interests in property under the Plan. The justification stated for treating Claimants separately from other general unsecured claim holders is that Claimants are alleged to have entered into a valid subordination agreement. However, the previous section clearly explains why the subordination agreement is not valid and should be given no weight in these confirmation proceedings.

29

The disparate treatment Claimants would receive under the Amended Plan is without justification.  The very purpose of classification is to ensure that similar claims receive similar treatment.  A proposed plan cannot be confirmed if it classifies or treats unsecured claims separately without the showing of a legitimate reason.  There is no legitimate reason to create a distinct class for Claimants and to treat them differently than the other Class 4 Claims.  Rather, the only reason to propose such classification and treatment is to unfairly and unjustifiably discriminate against Claimants.  The Bankruptcy Code states that the Court may only confirm plan if it "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  11 U.S.C.A. § 1129(b)(1). Because the Amended Plan unfairly discriminates against Claimants, the Court should refuse to order its confirmation.

III.   **ALCHEMY VENTURES TRUST, LLC SHOULD BE GRANTED EXCLUSIVE POWER TO VOTE THE CLAIMS OF SKY LODGE MANAGEMENT, LLC AND SKY LODGE DEVELOPMENT, LLC.**

Partners and its manager, Mr. Shoaf, owe fiduciary duties to Claimants.  Despite these duties, Mr. Shoaf has gone to great lengths to strip Mr. Wickline and the Wickline Interest of any ability to watch out for the best interests of Partners, Sky Lodge Management, and Sky Lodge Development, including by rejecting the claims asserted by the Wickline Interest on behalf of Sky Lodge Management and Sky Lodge Development and by passing an unlawful and unjustified resolution with the other members of Easy Street Holding, LLC to deprive Mr. Wickline of any say in managing any part of the Easy Street enterprise.  The terms of the Amended Plan further demonstrate breaches of fiduciary duties owed to Claimants by Mr. Shoaf, in that the Amended Plan will extinguish the Sky Lodge claims while rewarding Mr. Shoaf with

a lucrative employment contract.    As a result of these repeated breaches of fiduciary duty, the

Court should enter an order allowing AVT to vote the claims of Sky Lodge Management and

Sky Lodge Development to reject the Amended Plan.

   **a.** **Partners, and its Manager, Mr. Shoaf owe Claimants fiduciary duties.**

   The Bankruptcy Code expressly provides that a debtor in possession shall possess all

rights, powers and duties as a trustee serving in a bankruptcy proceeding.    11 U.S.C.A. §

1107(a); *see also In re Americana Expressway, Inc.*, 133 F.3d 752, 756 (10th Cir. 1997) ("In all

essential respects a debtor in possession in a Chapter 11 bankruptcy proceeding is subject to the

same responsibilities as a trustee.").    Thus, a debtor in possession is considered a fiduciary to

creditors during the pendency of the case and prior to the confirmation of a reorganization plan.

*Peters v. Pikes Peak Musicians Ass'n*, 462 F.3d 1265, 1271 n.3 (10th Cir. 2006).

   As a fiduciary, a debtor in possession owes numerous duties to the creditors and the

estate.  First and foremost, a debtor in possession owes the principal duties of care and of loyalty,

just as are owed by a trustee.  *See Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 447 (D.

Utah 1998) ("As a 'trustee,' the debtor-in-possession has a fiduciary duty of undivided loyalty

and exclusive allegiance to the estate."); *In re Continental Coin Corp.*, 380 B.R. 1, 5 (C.D. Cal.

2007).    Implicit in the duties of a debtor in possession is the "complete subordination of his

property to the legitimate claims of his creditors."  *In re Alvey*, 56 B.R. 170, 172 (W.D. Ky.

1985).    The duty of loyalty owed by a debtor in possession "includes an obligation to refrain

from self dealing, to avoid conflicts of interest and the appearance of impropriety, to treat all

parties to the case fairly, and to maximize the value of the estate."    *In re Adelphia

Communications Corp.*, 336 B.R. 610, 669-70 (S.D.N.Y. 2006) (internal citations and quotations

omitted).  In fact, the very purpose of § 1107(a) is to give creditors comfort that a debtor will maintain its neutrality and not act to the detriment of particular estates.  *Id.* at 671.

Here, Partners is acting as debtor in possession, with Mr. Shoaf acting as the manager of Partners.  Claimants are creditors to the bankruptcy estate.  As debtor in possession, Partners owe Claimants virtually all duties that a Chapter 11 trustee owes to a creditor.  These duties include avoiding self dealing, conflicts of interest, and the appearance of impropriety.  They also require that Partners treat all parties to the case fairly and maintain neutrality and not act to the detriment of particular estates.

Additionally, those currently owning and/or managing Partners also owe fiduciary duties to Claimants.  Apart from being the 50% owner/manager of Sky Lodge Management and Sky Lodge Development, Mr. Wickline and the Wickline Interest are also the manager and owner of the entities that manage and own 38.75% of Holding.  The Wickline Interest's interest in Holding, and for that matter Debtors as a whole, imposes certain responsibilities upon the others managing these LLCs.  Accordingly, the other members and managers of Debtors, including Mr. Shoaf, owe Mr. Wickline and the Wickline Interest certain fiduciary duties, including but not limited to duties of care and of loyalty because of Mr. Wickline's role as a member of Holding through AVT and AVG.

### b.  **Partners, and its Manager, Mr. Shoaf have breached their fiduciary duties.**

The members and managers of Partners, including Mr. Shoaf, have repeatedly breached fiduciary duties owed to Mr. Wickline and the Wickline Interest.  First, without justification and in direct conflict with the terms of the Holding Operating Agreement, the members of Holding passed a resolution that removed AVG-SL, LLC as manager of Holding, purportedly for the

exclusive purpose of stripping Mr. Wickline of his ability to participate in the management of the Easy Street enterprise.  In passing this resolution, the other members of Holding failed to adhere to the specific terms of the operating agreement, which only allowed the removal of a manager for cause as defined in the agreement.  There was no cause to remove AVG-SL, LLC from management.  Rather, AVG-SL, LLC was removed as manager so as to deprive Mr. Wickline of his rights to manage the Easy Street enterprise and to bestow upon Mr. Shoaf and others representing the Feder and Smith Interests exclusive and unfettered power to manage Debtors.

Debtors, through its members and managers, continued breaching fiduciary duties owed to Claimants following the improper removal of AVG-SL, LLC as manager of holding.  Weeks after the removal, Debtors filed Chapter 11 petitions without Mr. Wickline's knowledge or consent.  Since that time, Mr. Wickline, AVG and AVT have been excluded from Debtors' decision making process and have not been allowed to participate in Debtors' affairs despite the large ownership interest held by Mr. Wickline through AVG.  Debtors have even refused to give Mr. Wickline notice of important occurrences and restricted his access to information possessed by Debtors even though he is entitled to such access as a member of Debtors through AVG and AVT.  Instead of fulfilling the duties of loyalty and of care owed to Mr. Wickline, the members and managers of Debtors outwardly and openly breached these fiduciary duties.  The fiduciary duties were again breached by Debtors when the claims filed by Mr. Wickline on behalf of Sky Lodge Management and Sky Lodge Development were rejected so that substantially similar claims asserted by Mr. Shoaf on behalf of these entities could be pursued.

Partners also breached the duties it owes to Claimants as debtor in possession.  The Plan classifies Claimants' claims as Class 6 Claims, which are "not entitled to, nor receive, any

distribution, nor shall it retain any property or interest in property[.]" (Amended Plan, paragraph 5.6).   At the same time, the other holders of general unsecured claims have the option of receiving either payment of 100% of their claims within 3 years of the effective date or 60% of their claims 30 days after the effective date.   (*Id.* at paragraph 5.4).   While the Amended Plan bases such disparate treatment on the notion that Claimants entered into a subordination agreement with these specific terms, the fact remains that WestLB will be paid in full and that Debtors have the ability to pay WestLB's claim in full, thereby rendering the subordination agreement ineffective.   Regardless, the subordination agreement is unenforceable for the numerous reasons explained above.   Accordingly, the Amended Plan provides for unjustifiable disparate treatment of Claimants' claims.

Partners has also, through the conduct of its manager, Mr. Shoaf, clearly breached fiduciary duties owed to Claimaints through the following, as previously described:

- The Amended Plan cancels the guaranty of WestLB's loan by CloudNine Resorts LLC, an entity owned exclusively by Mr. Shoaf.

- The Amended Plan rewards Mr. Shoaf with an employment agreement that will likely pay him at least $720,000.

- Mr. Shoaf has misappropriated the Liquor Licenses in preparation of facilitating their transfer to the Reorganized Debtor in exchange for the employment contract, likely paying him $720,000, including a $240,000 bonus conditioned on the transfer of the licenses.

Rather than avoid the appearance of impropriety, this conduct outwardly indicates a conflict of interest, gross self dealing, and unfair treatment of creditors.   Taken as a whole, the evidence demonstrates that Partners and Mr. Shoaf have outwardly and repeatedly breached the well established fiduciary duties they owe to Claimants.

**c.** **Claimants should be permitted to vote to reject the confirmation plan on behalf of Sky Lodge Management and Sky Lodge Development.**

Partners and its manager, Mr. Shoaf, owe fiduciary duties to Claimants, Mr. Wickline, and the Wickline Interest, which they have breached on numerous occasions.  In order to avoid any further unfair treatment towards Claimants, Mr. Wickline, and the Wickline Interest, the Court should grant Mr. Wickline the exclusive power to vote on behalf of the Sky Lodge Management and the Sky Lodge Development claims.  Otherwise, Partners and its manager, Mr. Shoaf, would be permitted to continue their pattern of discriminating against Claimants.

## CONCLUSION

For the foregoing reasons, Claimants respectfully request that the Court recognize the rejecting ballots on behalf of Sky Lodge Management and Sky Lodge Development and that it deny confirmation of the Amended Plan.

DATED this 23rd day of June, 2010.

SNOW, CHRISTENSEN & MARTINEAU
_____*/s/ Kim R. Wilson*_____
Kim R. Wilson
P. Matthew Cox
Nathan R. Skeen
10 Exchange Place, Eleventh Floor
P.O. Box 45000
Salt Lake City, UT  84145
(801) 521-9000

*Attorneys for* David Wickline, personally,
and Alchemy Ventures Trust, LLC and
David Wickline, as member and manager,
respectively, of and on behalf of CloudNine
Resorts-Sky Lodge Development, LLC and
CloudNine Resorts-Sky Lodge Management, LLC

<u>CERTIFICATE OF SERVICE</u>

I, Kim R. Wilson, attorney for Ford Motor Credit Company, LLC, hereby certify that on this 23rd day of June, 2010, I served a copy of the **DAVID WICKLINE'S AND ALCHEMY VENTURES TRUST, LLC'S, ON BEHALF OF CLOUDNINE RESORTS-SKY LODGE DEVELOP-MENT, LLC AND CLOUDNINE RESORTS-SKY LODGE MANAGEMENT, LLC, OBJECTION TO CONFIRMATION OF AMENDED PLAN OF REORGANIZA-TION OF EASY STREET PARTNERS, LLC AND WESTLB, AG DATED JUNE 16, 2010**, to the following parties in the manner indicated:

Michael V. Blumenthal, Esq. (via U.S. Mail)
Crowell & Moring, LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

Kenneth L. Cannon, II          (via ECF)
Durham, Jones & Pinegar
111 East Broadway, Ste. 900
P. O. Box 4050
Salt Lake City, UT 84110-4050

Lon A. Jenkins          (via ECF)
Jones Waldo Holbrook & McDonough, PC
170 South Main Street, Ste. 1500
Salt Lake City, UT 84101

John T.  Morgan          (via ECF)
Ken Garff Building
405 South Main Street, Ste. 300
Salt Lake City, UT 84111

Richard W. Havel, Esq          (via U.S. Mail)          .
Sidley Austin, LP
555 West Fifth Street
Los Angeles, CA 90013

Annette W. Jarvis          (via ECF)
Dorsey & Whitney, LLP
136 South Main Street, Ste. 1000
Salt Lake City, UT 84101

     /s/  Kim R. Wilson_____

# EXHIBIT A



# State of Utah

## DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL

1625 South 900 West
PO Box 30408
Salt Lake City, Utah  84130-0408
(801) 977-6800   Telephone
(801) 977-6888   Fax

**Dennis R. Kellen**
Director

RECEIVED
JUN 09 2008
UTAH DEPT. OF ABC

## PRIVATE CLUB LIQUOR LICENSE RENEWAL APPLICATION PACKET
### ( 2008 - 2009 )

CL00962
EASY STREET BRASSERIE @ SKY LODGE

Enclosed are the application forms to renew your Private Club Liquor License for the period of July 1, 2008 through June 30, 2009. They must be completed and returned to this department with the annual license fee no later than **Monday, June 2, 2008.** Otherwise, your license will automatically expire on **June 30, 2008.**

> **NOTE:   MUST BE RETURNED TO THIS DEPARTMENT NO LATER THAN Jun 2, 2008**

Renewal fees are based on your annual cost of liquor, wine and heavy beer purchased from the state store system (gross cost of liquor purchases) according to the following scale:

| Your Gross Cost of Liquor | Your Renewal Fee |
|---|---|
| Under $10,000 | $1,000.00 |
| $10,000 to $24,999 | $1,250.00 |
| $25,000 to 74,999 | $1,750.00 |
| $75,000 and above | $2,250.00 |

Based on your projected data or other data provided, your cost of liquor was $_____ .   Your renewal fee is $2,250.00.

Class Designation ( see attached qualification requirements ):  Based on our records, your club is designated as the following class:

[ ]   Class A (Country Club)                    [ ]   Class B (Fraternal)
[ X ]   Class C (Dining, at least 50% gross sales in food)   [ ]   Class D (Other - Social Drinking Club)

To renew your Private Club Liquor License, please submit the following:

(1) _____ Form A (attached)          Renewal application completed, signed and notarized
(2) _____ Form B (attached)          Licensee Information
(3) _____ Form C (attached)          Ownership/Entity Management Information
(4) _____ Criminal History Background Check for any changes on Form C since last year
(5) _____ Form D (attached)          Alcohol Server Training/ID Badge Information
(6) _____ Form E (attached)          Financial Spreadsheet (must use Form E)
(7) _____ Insurance Certificates     Have your insurance agent mail or fax a certificate
                                       (Acord type form) showing general and liquor liability coverage
(8) _____ Local License(s)           Submit a copy of your city, town or county business/alcohol license
(9) _____ Any changes in the Physical Layout (floor plan) of the facility must also be submitted
(10) _____ Renewal Fee               As indicated above

If you have any questions, please contact the Licensing and Compliance Division at (801) 977-6800.

MAIL TO:                                              OR          HAND DELIVER TO:

UDABC                                                              UDABC
PO BOX 30408                                                      1625 S 900 W
SALT LAKE CITY  UTAH  84130-0408                                  SALT LAKE CITY  UTAH  84104

| Must be postmarked by |
| --- |
| Jun 2, 2008 |





PRIVATE CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2008 - 2009 )
License Number:  CL00962

1. Private Club Name:  **EASY STREET BRASSERIE @ SKY LODGE**

2. Do you plan to renew your private club liquor license?    YES [X]        NO [ ]

    If **no**, sign on page 4, and return this form.
    If **yes**, complete this entire application and all accompanying forms.

3. Entity renewing license:  *(Organizational papers will be required for any change)*

    [ ]   non-profit corporation              [ ]   partnership
    [ ]   for profit corporation              [ ]   individual (sole proprietor)
    [X]   limited liability company

4. If there has been any recent changes in the following, please attach copies and highlight the changes:

    a.  Physical facility (remodeling, etc. - attach new floor plan)
    b.  Management or Service contracts

5. **Criminal Convictions:**

    The Commission may refuse to renew the private club license of any person who has been convicted of a felony under any federal or state law or any violation of any federal or state law or local ordinance concerning the sale, manufacture, distribution, warehousing, adulteration, or transportation of alcoholic beverages.  The Commission may refuse to renew the private club license of any person who has been convicted of any crime involving moral turpitude or, on two or more occasions within the last five years, has been convicted of driving under the influence of alcohol, any drug, or the combination of alcohol and any drug.

    This proscription also applies to any officers, partners, managers, managing agents or directors of the club, or any stockholders who hold at least 20% of the total issued and outstanding stock If the club is a corporation, or any members who own at least 20% of any club that is a limited liability company, and to any person employed to act in a supervisory or managerial capacity for the club.

    Please list *all* criminal offenses *other than minor traffic offenses* of which you or any of the above persons have ever been convicted:

| NAME | CRIMINAL OFFENSE | DATE OF CONVICTION |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

COPY

6.  Have you, or any proprietor, partner, managing agent, director, officer or stockholder owning at least 20% corporation stock or 20% of a limited liability company had a UDABC alcoholic beverage license, permit or agency revoked within the last three years?

[ ] Yes          [X] No

If yes, please explain:

_____

_____

7.  The club must have a governing body consisting of at least three members of the club that holds regular meetings to review membership applications and conduct any other business required by the club's bylaws or house rules.

List the current members of the governing body:

Steve Koerselman

Clint Fowler

Bill Shoaf

8.  Does the club have sexually oriented adult entertainment or operate as a sexually oriented business?

[ ] Yes          [X] No

If yes, has the commission approved the stage or performance areas?

[ ] Yes          [ ] No

Does the club operate a dance or concert hall that admits minors (either on the premises of the club, or an adjoining premises operated by the club)?

[ ] Yes          [X] No

9.  By signing below, you voluntarily consent that representatives of the Alcoholic Beverage Control Department and Commission, Utah State Bureau of Investigation and other law enforcement agencies shall be admitted immediately and permitted without hindrance or delay to inspect the entire premises and all records of your licensed establishment.

10. By signing below, you authorize the Department access to federal, state and local sales, payroll, income, and real and personal property tax records.

11. You agree as a condition of relicensing that you have read and will abide by the provisions of the Utah Alcoholic Beverage Control Act (Title 32A of the Utah Code), and all rules of the Commission (R81 of the Utah Administrative Code) and directives of the Department, and understand that failure to do so, or to maintain all the qualifications required to hold a license, may result in a suspension and/or revocation of your private club license, imposition of a fine, and forfeiture of the $10,000 compliance bond.

These laws may be viewed under *liquor laws* on the Department's website at:
http://www.abc.utah.gov.

COPY

April 17, 2008   11:46AM

12. **I VERIFY AND ATTEST THAT:**

  a. A variety of food is prepared and served by the club in connection with dining accommodations, and food is available at all times when alcoholic beverages are sold, served or consumed on the premises.

  b. All necessary local licenses (business, beer, liquor consumption, etc.) have been obtained for the club and are current.

  c. The tax numbers provided on Form B of this renewal application are accurate and current with the proper taxing agencies.

  d. The club will not permit gambling, or have any video gaming device as defined in Utah Code section 76-10-1101(6), or permit any other violation of the laws or ordinances on the premises.

  e. The undersigned organization does not discriminate against persons on the basis of race, color, sex, religion, ancestry, or national origin, and the organization, in practice, does not and will not discriminate against persons on these bases.

  f. The licensee will not sell, transfer, assign, exchange, barter, give or attempt in any way, to dispose of the license to any other person, whether for monetary gain or not.

  g. I acknowledge that I have read and understand the statements made in this application, and certify that the information I have provided in this application and the attached information is true and correct.

Dated this _2_ day of _June_, _2008_

_Clinton C Fowler_      Authorized Signature
Name (please print)      _Director of Restaurant_
     Title

STATE OF _Utah_      COUNTY OF _Salt Lake_

Subscribed and sworn to before me this _2_ day of _June_, _2008_

Notary Public _Adam Ensign_

ADAM ENSIGN
Notary Public
State of Utah
My Comm. Expires Nov 4, 2009
252 E 12300 S Draper UT 84020

WARNING: Pursuant to Utah Code Section 32A-12-304, it is a criminal offense to knowingly:
• Make a false statement on any UDABC application, form, affidavit or document, or create a false impression by omitting information necessary to prevent statements in these documents from being misleading.
• Make a false written statement with intent to deceive a public servant in the performance of that servant's official functions.
• Submit or invite reliance on any writing or document which you know to be lacking in authenticity, or
• Make a false statement which must be sworn or affirmed before a notary public
Violation of this law could result in criminal penalties, substantial fines, suspension or revocation of your license, and forfeiture of your compliance bond.



PRIVATE CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2008 - 2009 )
License Number:  __CL00962__

## LICENSEE INFORMATION

Note: *We currently have this information on file. If any of the information has changed, please write on the spaces provided.*

Date ___5/15/08___

1. Private Club Name:

   EASY STREET BRASSERIE @ SKY LODGE
   _____

2. Ownership Entity:

   CLOUDNINE RESORTS - SKY LODGE MANAGEMENT, LLC
   _____

3. Location Address:

   201 HEBER AVE
   PARK CITY, UT  84060
   _____
   _____

4. Mailing Address (or PO Box):

   PO BOX 683300
   PARK CITY, UT  84098
   _____
   _____

5. Phones:

   | Phone Type | Phone Number |
   |------------|--------------|
   | BUSINESS   | 435-658-2500 |
   | FAX        | 435-615-6751 |
   | OTHER      | 435-658-1195 |

   Club Phone: _____
   Office Phone: _____
   Other Phone: _____
   Fax: _____
   Email: _____

6. Contact Person and Phone Numbers:

   | Position | Name | Phone Type | Phone |
   |----------|------|------------|-------|
   | Contact Person | TOM MURRAY | | |

   Name: *Clint Fowler*
   Position: *Director of Restaurants*
   Office Phone: 435-658-9438
   Other Phone: ___
   Email: _____

7. Days and Hours of Operation:

   __7a-1a__

8. Number of members:

   _129_

9. Utah Sales Tax Number:

10. Utah State Payroll Withholding Number:

11. Utah Dept Workforce Services Number:

12. Federal IRS Taxpayer ID Number:

COPY

April 17, 2008    11:46AM



PRIVATE CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2008 - 2009 )
License Number:  <u>CL00962</u>

# OWNERSHIP ENTITY AND MANAGEMENT INFORMATION

Private Club Name:   <u>EASY STREET BRASSERIE @ SKY LODGE</u>

Entity Name:   <u>CLOUDNINE RESORTS - SKY LODGE MANAGEMENT, LLC</u>

Ownership Entity Type:   <u>LIMITED LIABILITY COMPANY</u>   *( Please check appropriate entity type below if it has changed )*

[ ]  Non Profit Corporation   [ ]  For Profit Corporation   [ ]  Limited Liability Company
[ ]  Partnership   [ ]  Individual (Sole Proprietor)

Individuals, partners, officers, directors and shareholders that we currently have on file.

| Full Name Position Date of Birth | Home Mailing Address (Including ZIP code) | Phone Phone Type | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| STEVEN KOERSELMAN PARTNER | | | ON FILE | ON FILE |
| TOM MURRAY PARTNER | | | ON FILE | ON FILE |
| WILLIAM H SHOAF PARTNER | | | ON FILE | ON FILE |
| DAVID WICKLINE PARTNER | | | ON FILE | ON FILE |

**Cross out any individual above that is no longer active.**  Use the blank form below to add any NEW person added since last year's renewal.

List information for individual; partners; if a corporation, officers, directors and shareholders owning at least 20% of the entity; if an LLC, managing members and members owning at least 20% of the LLC.

<u>Completed Criminal History</u> background checks must be submitted only for each <u>NEW</u> person added below.

| Full Name Position Date of Birth | Home Mailing Address (including ZIP code) | Phone Phone Type | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| Name Position Date of Birth | | | | |
| Name Position Date of Birth | | | | |
| Name Position Date of Birth | | | | |





**Management:**   Staff who routinely perform managerial or supervisory duties.

| Full Name Position Date of Birth | Home Mailing Address (including ZIP code) | Phone Phone Type | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| TOM MURRAY CONTACT PERSON | | | ON FILE | ON FILE |
| | | | | |

Cross out any individual above that no longer performs managerial or supervisory duties.

Use the blank form below to add any **NEW** person added since last year's renewal who performs managerial or supervisory duties.  **Completed Criminal History** background checks must be submitted for each **NEW** person added since last year's renewal.

| Full Name Position Date of Birth | Home Mailing Address (including ZIP code) | Phone Phone Type | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| Name *Clint Fowler* Position *Manager* Date of Birth | | | | |
| Name Position Date of Birth | | | | |
| Name Position Date of Birth | | | | |
| Name Position Date of Birth | | | | |

COPY

April 17, 2008   11:46AM



# RESTAURANT LIQUOR LICENSE RENEWAL APPLICATION
## ( 2008 - 2009 )
### License Number:  RE01791

## OWNERSHIP ENTITY AND MANAGEMENT INFORMATION

Restaurant Name:     **EASY STREET BRASSERIE @ SKY LODGE**

Entity Name:     **CLOUDNINE RESORTS - SKY LODGE MANAGEMENT, LLC**

Ownership Entity Type:   **LIMITED LIABILITY COMPANY**     *( Please check appropriate entity type below if it has changed )*

[  ] Individual (Sole Proprietor)     [  ] Partnership
[  ] Corporation     [✓] Limited Liability Company

Individuals, partners, officers, directors and shareholders that we currently have on file.

| Full Name Position Date of Birth | Home Mailing Address (including ZIP code) | Phone Phone Type | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| CLINT FOWLER MANAGER | | | N FILE | ON FILE |
| CLINT FOWLER MANAGER | | | N FILE | ON FILE |
| CLINT FOWLER MANAGER | | | N FILE | ON FILE |
| STEVEN KOERSELMAN PARTNER | | | N FILE | ON FILE |
| WILLIAM H SHOAF PARTNER | | | N FILE | ON FILE |
| DAVID WICKLINE PARTNER | | | N FILE | ON FILE |

**Cross out any individual above that is no longer active.  Use the blank form below to add any NEW person added since last year's renewal.**

List information for individual; partners; if a corporation, officers, directors and shareholders owning at least 20% of the entity; if an LLC, managing members and members owning at least 20% of the LLC.

**Completed Criminal History** background checks must be submitted for each **NEW** person added below.



PRIVATE CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2008 - 2009 )

License Number:  CL00961

**FORM C**

# OWNERSHIP ENTITY AND MANAGEMENT INFORMATION

Private Club Name:      **SKY CLUB @ SKY LODGE**

Entity Name:      **CLOUDNINE RESORTS - SKY LODGE MANAGEMENT, LLC**

Ownership Entity Type:      **LIMITED LIABILITY COMPANY**      *( Please check appropriate entity type below if it has changed )*

[ ]  Non Profit Corporation          [ ]  For Profit Corporation          [ ]  Limited Liability Company

[ ]  Partnership          [ ]  Individual (Sole Proprietor)

Individuals, partners, officers, directors and shareholders that we currently have on file.

| Full Name Position Date of Birth | Home Mailing Address (including ZIP code) | Phone Phone Type | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| STEVEN KOERSELMAN PARTNER | | | ON FILE | ON FILE |
| TOM MURRAY PARTNER | | | ON FILE | ON FILE |
| WILLIAM HSHOAF PARTNER | | | ON FILE | ON FILE |
| DAVID WICKLINE PARTNER | | | ON FILE | ON FILE |

**Cross out any individual above that is no longer active.**  Use the blank form below to add any NEW person added since last year's renewal.

List information for individual; partners; if a corporation, officers, directors and shareholders owning at least 20% of the entity; if an LLC, managing members and members owning at least 20% of the LLC.

Completed Criminal History background checks must be submitted only for each **NEW** person added below.

| Full Name Position Date of Birth | Home Mailing Address (including ZIP code) | Phone Phone Type | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| Name | | | | |
| Position | | | | |
| Date of Birth | | | | |
| Name | | | | |
| Position | | | | |
| Date of Birth | | | | |
| Name | | | | |
| Position | | | | |
| Date of Birth | | | | |



April 17, 2008   11:46AM

# EXHIBIT B

*(Suggested form letter to FBI)*

Date: Nov 13, 2007

Federal Bureau of Investigation
Attn: Special Correspondence Unit
1000 Custer Hollow Road
Clarksburg, West Virginia 26306

I am requesting a personal identification criminal history background check for my own personal review. Per your requirements, I am including a standard fingerprint card and a certified check or money order for $18.00 payable to the U.S. Treasury. Please provide me with a written response to the address listed below. I understand that it may take up to six weeks or longer for the FBI to perform this background check. Thank you for your attention to this matter.

Signed: _____

Full Name: David L. Wicklino



(suggested attestation/stipulation letter to the DABC)

Date: _November 13, 2007_

To whom it may concern:

I, _David L. Wickline_ , attest:

1. That I have requested a criminal history background check from the FBI on _Nov 13, 2007_.

2. That I am not aware of any criminal conviction that would disqualify me from applying for and holding a Utah Department of Alcoholic Beverage Control license or permit.

I stipulate that if an F.B.I. report shows a criminal conviction that would disqualify me from holding the license, permit, or package agency, I shall immediately surrender the license, permit, or package agency to the department.

I am enclosing copies of the finger print card and the written request submitted to the FBI. Also enclosed is a national criminal history background report from a third party background check reporting service.

X_____
Signature

_David Lowell Wickline_
Name/Title

COPY

5.25.07   page 11 of 51

# EXHIBIT C



Dennis R. Kellen
Director

# State of Utah
## DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL

1625 South 900 West
PO Box 30408
Salt Lake City, Utah 84130-0408
(801) 977-6800    Telephone
(801) 977-6888    Fax

### CLUB LIQUOR LICENSE
### RENEWAL APPLICATION PACKET
### ( 2010 - 2011 )

---

**Online renewal is now available. Instructions are enclosed (see page 2). Questions concerning eligibility should be directed to Licensing and Compliance Division at (801) 977-6800.**

---

CL00961
SKY CLUB @ SKY LODGE

Enclosed are the application forms to renew your Club Liquor License for the period of July 1, 2010 through June 30, 2011. They must be completed and returned to this department with the annual license fee no later than **Tuesday, June 1, 2010**. Otherwise, your license will automatically expire on Wednesday, June 30, 2010.

---

**NOTE:    RENEW ONLINE or return this form no later than  June 1, 2010.**
**( Full re-licensing fees will be required after this date )**

---

Renewal fee for club liquor license is $1,600.00.

---

**Class Designation** ( see attached qualification requirements ): Based on our records, your club is designated as:

[  ]    Class A (Equity)                                    [  ]    Class B (Fraternal)
[  ]    Class C (Dining, at least 50% gross sales in food)    [X]    Class D (Other - Social Drinking Club)

---

To renew your Club Liquor License, please submit the following:

( 1 ) ✓ Renewal Fee                    As indicated above.
( 2 ) ——— Form A (attached)            Renewal application completed, signed and notarized
( 3 ) ——— Form B (attached)            Licensee Information
( 4 ) ✓ Form C (attached)              Ownership Entity/Management Information
( 5 ) ✓ Background check form(s) and fee(s) if applicable (See form C).
( 6 ) ✓ Form E (attached)              Financial Spreadsheet
( 7 ) N/A Changes to the Physical Layout ( floor plan ), if any.

*TPN menu*
*TPN EX form*

---

ALL renewal applicants must submit the following documentation to the DABC:

( 1 ) ✓ Form D (attached)              Alcohol Server Training/ID Badge Information
( 2 ) ✓ Insurance Certificates         Obtain from your insurance agent a certificate ("Acord" type form) showing general and liquor liability coverage limits of $1 million per occurence and $2 million aggregate
( 3 ) ✓ Local License(s)               Current city, town or county business/alcohol license

---

If you have any questions, please contact the Licensing and Compliance Division at  (801) 977-6800.

MAIL TO:                          Must be postmarked by          OR     HAND DELIVER TO:
                                  June 1, 2010
DABC                                                                     DABC
PO BOX 30408                                                             1625 S 900 W
SALT LAKE CITY  UTAH  84130-0408                                         SALT LAKE CITY  UTAH  84104

COPY



Page 1 of 9

CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2010 - 2011 )
License Number: <u>CL00961</u>

## ONLINE LICENSE RENEWAL

Club Name: <u>SKY CLUB @ SKY LODGE</u>

*1,600.00*
**RECEIVED**
MAY 2 0 2010
UTAH DEPT. OF ABC

Online Renewal ID Number: <u>73613</u>

All license renewals are subject to approval by the Department of Alcoholic Beverage Control Commission and must meet requirements for the type of license being renewed, including:

* Current local business license and alcohol license
* Current public liability and dramshop (liquor liability) insurance coverage
* Alcohol Server Training Seminar certification for all owners, managers, bartenders and servers
* Clearance from federal and state taxing agencies

The online renewal may be submitted between **Saturday, May 1, 2010 through 11:59 PM, Tuesday, June 1, 2010.**

The following information is needed to complete the online renewal application form:

* DABC License number
* Online Renewal ID number
* Appropriate business registration numbers

  - Sales/Use Tax number          - Workforce Services ID number
  - Payroll withholding number     - Federal IRS Taxpayer ID number

* Sales and Cost of Goods for food, liquor and 3.2%beer. Liquor includes wine, heavy beer and corkage charges.
* Manager names, addresses, contact numbers, social security numbers and driver license numbers.
* Bank routing and account number; debit card number; Visa/Mastercard number.

## Instructions for online renewal

* Go to www.abc.utah.gov.
* Select **Online Services.**
* From the online services page, select **License Renewal.**
* Enter your license number and renewal ID number.
* Follow online instructions.
* Upon completion, you may print a confirmation of renewal and verification of submission.

If you have any questions, please contact the Licensing and Compliance Division at (801) 977-6800.

> If you cannot renew online, you must follow the instructions included in the enclosed packet. All renewal applications must be received or postmarked no later than Tuesday, June 1, 2010.
>
> Failure to meet the renewal deadline will result in an <u>automatic forfeiture of the license</u> effective on the date the existing license expires and incur initial application fees.



**FORM A**

CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2010 - 2011 )
License Number:  <u>CL00961</u>

1.   Club Name:   <u>SKY CLUB @ SKY LODGE</u>

2.   Do you plan to renew your club liquor license?   YES  [√]          NO  [ ]

         If no, sign on page 4, and return this form.
         If yes, complete this entire application and all accompanying forms.

3.   Criminal Convictions:

The Commission may refuse to renew the club license of any person who has been convicted of a felony under any federal or state law or any violation of any federal or state law or local ordinance concerning the sale, manufacture, distribution, warehousing, adulteration, or transportation of alcoholic beverages.  The Commission may refuse to renew the club license of any person who has been convicted of any crime involving moral turpitude or, on two or more occasions within the last five years, has been convicted of driving under the influence of alcohol, any drug, or the combination of alcohol and any drug.

This proscription also applies to any officers, partners, managers, managing agents or directors of the club, or any stockholders who hold at least 20% of the total issued and outstanding stock.  If the club is a corporation, or any members who own at least 20% of any club that is a limited liability company, and to any person employed to act in a supervisory or managerial capacity for the club.

Please list all criminal offenses other than minor traffic offenses of which you or any of the above persons have ever been convicted:

<u>NAME</u>                                    <u>CRIMINAL OFFENSE</u>                                    <u>DATE OF CONVICTION</u>

William Shoaf.

4.   Have you, or any proprietor, partner, managing agent, director, officer or stockholder owning at least 20% corporation stock or 20% of a limited liability company had a UDABC alcoholic beverage license, permit or agency revoked within the last three years?

                              [ ] Yes                      [X] No

    If yes, please explain:

5.   <u>APPLIES TO EQUITY AND FRATERNAL CLUBS</u> which must have a governing body consisting of at least three members of the club that holds regular meetings to review membership applications and conduct any other business required by the club's bylaws or house rules.

                       List the current members of the governing body:

6.   By signing below, you voluntarily consent that representatives of the Alcoholic Beverage Control Department and Commission, Utah State Bureau of Investigation and other law enforcement agencies shall be admitted immediately and permitted without hindrance or delay to inspect the entire premises and all records of your licensed establishment.

7.   By signing below, you authorize the Department access to federal, state and local sales, payroll, income, and real and personal property tax records.

COPY

8.  You agree as a condition of relicensing that you have read and will abide by the provisions of the Utah Alcoholic Beverage Control Act (Title 32A of the Utah Code), and all rules of the Commission (R81 of the Utah Administrative Code) and directives of the Department, and understand that failure to do so, or to maintain all the qualifications required to hold a license, may result in a <u>supension</u> and/or revocation of your club license, imposition of a fine, and forfeiture of the $10,000 compliance bond.

These laws may be viewed under liquor laws on the Department's website at:   http://www.abc.utah.gov.

9.  <u>I VERIFY AND ATTEST THAT:</u>

a.  A variety of food is prepared and served by the club in connection with dining accommodations, and food is available at all times when alcoholic beverages are sold, served or consumed on the premises.

b.  All necessary local licenses (business, beer, liquor consumption, etc.) have been obtained for the club and are current.

c.  The tax numbers provided on Form B of this renewal application are accurate with the proper agencies.

d.  The club will not permit gambling, or have any video gaming device as defined in Utah Code section 76-10-1101(6), or permit any other violation of the laws.

e.  The undersigned organization does not discriminate against persons on the basis of race, color, sex, religion, ancestry, or national origin.

f.  The licensee will not sell, transfer, assign, exchange, barter, give or attempt in any way, to dispose of the license to any other person, whether for monetary gain or not.

g.  I acknowledge that I have read and understand the statements made in this application, authorized to sign and certify that the information I have provided in this application and the attached information is true and correct.

Dated this _18TH_ day of _May_____, _2010_.

Authorized Signature

_William Shorp_.
Name (please print)

_Manager_.
Title

STATE OF _Utah_____   COUNTY OF _Summit._

Subscribed and sworn to before me this _18th_ day of _May_____, 20 _10_

Notary Public

Notary Stamp

MARINA SOTO
NOTARY PUBLIC · STATE OF UTAH
COMMISSION 582694
COMM. EXP. 04-26-2011

---

*WARNING:*      *Pursuant to Utah Code Section 32A-12-304, it is a criminal offense to knowingly:*

*   *Make a false statement on any UDABC application, form, affidavit or document; or create a false impression by omitting information necessary to prevent statements in these documents from being misleading;*

*   *Make a false written statement with intent to deceive a public servant in the performance of that servant's official functions;*

*   *Submit or invite reliance on any writing or document which you know to be lacking in authenticity; or*

*   *Make a false statement which must be sworn or affirmed before a notary public.*

*Violation of this law could result in criminal penalties, substantial fines, suspension or revocation of your license, and forfeiture of your compliance bond.*

COPY

FORM B

CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2010 - 2011 )
License Number: <u>CL00961</u>

## LICENSEE INFORMATION

We currently have this information on file.

If any of the information has changed, please
write on the spaces provided.

Date _____

1. Club Name:

   <u>SKY CLUB @ SKY LODGE</u>

2. Ownership Entity:    *Cloudnine Resort Clube, LLC*

   ~~CLOUDNINE RESORTS - SKY LODGE MANAGMENT LLC~~

3. Location Address:

   201 HEBER AVE
   PARK CITY, UT  84060

4. Mailing Address (or PO Box):

   PO BOX 683300
   PARK CITY, UT  84068

5. Phones:

   | Phone Type | Phone Number |
   | --- | --- |
   | BUSINESS | 435-658-2500 |
   | FAX | 435-615-6751 |
   | ~~OTHER~~ | ~~435-658-1195~~ |

   Club Phone: _____
   Office Phone: _____
   Other Phone: _____
   Fax: _____
   Email: _____

6. Contact Person and Phone Numbers:

   | Position | Name | Phone Type | Phone |
   | --- | --- | --- | --- |
   | ~~Contact Person~~ | ~~TOM MURRAY~~ | | |
   | Partner | WILLIAM SHOAF | | |

   Name: _____
   Position: _____
   Office Phone: _____
   Other Phone: _____
   Email: _____

7. Days and Hours of Operation:

   <u>4p-11p</u>

8. Utah Sales Tax Number:

9. Utah State Payroll Withholding Number

10. Utah Dept Workforce Services Number

11. Federal IRS Taxpayer ID Number:

COPY



CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2010 - 2011 )
License Number:  CL00961

# OWNERSHIP ENTITY AND MANAGEMENT INFORMATION

Club Name:   SKY CLUB @ SKY LODGE      *Cloudnine ResortClubs, LLC*

Entity Name:   ~~CLOUDNINE RESORTS - SKY LODGE MANAGMENT LLC~~

Ownership Entity Type:   LIMITED LIABILITY COMPANY          ( *Please check appropriate entity type below if it has changed* )

[ ]  Non Profit Corporation          [ ]  For Profit Corporation          [ ]  Limited Liability Company
[ ]  Partnership                     [ ]  Individual (Sole Proprietor)

|  |  |  |  |  |
|--|--|--|--|--|
|  |  |  |  |  |
|  |  |  |  |  |

Cross out any individual above that is no longer active.  Use the blank form below to add any NEW person added since last year's renewal.

List information for individual; partners; if a corporation, officers, directors and shareholders owning at least 20% of the entity; if an LLC, managing members and members owning at least 20% of the LLC.

Completed Criminal History background checks must be submitted only for each NEW person added below.

| Full Name Position Date of Birth | Home Mailing Address (including ZIP code) | Phone Type / Phone | Social Security Number | Driver's License # and State Issued |
|---|---|---|---|---|
| Name | | | | |
| Position | | | | |
| Date of Birth | | | | |
| Name | | | | |
| Position | | | | |
| Date of Birth | | | | |
| Name | | | | |
| Position | | | | |
| Date of Birth | | | | |



# FORM C ( continued )

**Management:**  Staff who routinely perform managerial or supervisory duties.

| Full Name<br>Position<br>Date of Birth | Home Mailing Address<br>(including ZIP code) | Phone Type / Phone | Social Security<br>Number | Driver's License #<br>and<br>State Issued |
|---|---|---|---|---|
| PARTNER | | | | |
| WILLIAM H SHOAF | | | | ON FILE |

Cross out any individual above that no longer performs managerial or supervisory duties.

Use the blank form below to add any NEW person added since last year's renewal who performs managerial or supervisory duties.
Completed Criminal History background checks must be submitted for each NEW person added since last year's renewal.

| Full Name<br>Position<br>Date of Birth | Home Mailing Address<br>(including ZIP code) | Phone Type / Phone | Social Security<br>Number | Driver's License #<br>and<br>State Issued |
|---|---|---|---|---|
| Name Alfred Weser | | | | |
| Position Restaurant Manager | | | | |
| Date of Birth | | | | |
| Name Patricia Wagner | | | | |
| Position Restaurant Manager | | | | |
| Date of Birth | | | | |
| Name | | | | |
| Position | | | | |
| Date of Birth | | | | |

COPY

## CLUB LIQUOR LICENSE RENEWAL APPLICATION
### ( 2010 - 2011 )
License Number:  CL00961

FORM D

# ALCOHOL SERVER TRAINING AND ID BADGE FORM

Club Name:  SKY CLUB @ SKY LODGE                     Date _____

An updated copy of this form must also be kept on the premises.

| * NAME<br>Date of Birth<br>Driver License #<br>or State ID | Name Tag | Date of Hire | ** Training Certification Expiration Date | Training Program | HOME MAILING ADDRESS (including zip code) | Phone Number |
|---|---|---|---|---|---|---|
| Name<br>Date of Birth<br>Driver License # or State ID # | | | | | | |
| Name<br>Date of Birth<br>Driver License # or State ID # | | | | | | |
| Name<br>Date of Birth<br>Driver License # or State ID # | | | | | | |
| Name<br>Date of Birth<br>Driver License # or State ID # | | | | | | |
| Name<br>Date of Birth<br>Driver License # or State ID # | | | | | | |
| Name<br>Date of Birth<br>Driver License # or State ID # | | | | | | |

*Attached*

* List each person who sells or serves alcoholic beverages or supervises or manages the sale of alcoholic beverages.
  Alcohol Server Training MUST be completed within 30 days from date of hire.
* For a list of trainers, call the Division of Substance Abuse at (801) 538-3939 or see http://www.dsamh.utah.gov/stateapprovedproviders.htm



April 22, 2010   9:31AM

**FORM A**

*page 1 + 2 SENT ALSO*

*PLUS FLOOR PLAN*

CLUB LIQUOR LICENSE RENEWAL APPLICATION
( 2010 - 2011 )
License Number: __CL00962__

1. Club Name: __EASY STREET BRASSERIE @ SKY LODGE__

2. Do you plan to renew your club liquor license?   YES [X]     NO [ ]

> If no, sign on page 4, and return this form.
> If yes, complete this entire application and all accompanying forms.

3. **Criminal Convictions:**

The Commission may refuse to renew the club license of any person who has been convicted of a felony under any federal or state law or any violation of any federal or state law or local ordinance concerning the sale, manufacture, distribution, warehousing, adulteration, or transportation of alcoholic beverages. The Commission may refuse to renew the club license of any person who has been convicted of any crime involving moral turpitude or, on two or more occasions within the last five years, has been convicted of driving under the influence of alcohol, any drug, or the combination of alcohol and any drug.

This proscription also applies to any officers, partners, managers, managing agents or directors of the club, or any stockholders who hold at least 20% of the total issued and outstanding stock. If the club is a corporation, or any members who own at least 20% of any club that is a limited liability company, and to any person employed to act in a supervisory or managerial capacity for the club.

Please list all criminal offenses other than minor traffic offenses of which you or any of the above persons have ever been convicted:

| NAME | CRIMINAL OFFENSE | DATE OF CONVICTION |
|------|------------------|---------------------|
| William Shoaf. | | |

4. Have you, or any proprietor, partner, managing agent, director, officer or stockholder owning at least 20% corporation stock or 20% of a limited liability company had a UDABC alcoholic beverage license, permit or agency revoked within the last three years?

    [ ] Yes          [X] No

    If yes, please explain: _____

5. __APPLIES TO EQUITY AND FRATERNAL CLUBS__ which must have a governing body consisting of at least three members of the club that holds regular meetings to review membership applications and conduct any other business required by the club's bylaws or house rules.

    List the current members of the governing body:

    _____        _____

    _____        _____

    _____        _____

6. By signing below, you voluntarily consent that representatives of the Alcoholic Beverage Control Department and Commission, Utah State Bureau of Investigation and other law enforcement agencies shall be admitted immediately and permitted without hindrance or delay to inspect the entire premises and all records of your licensed establishment.

7. By signing below, you authorize the Department access to federal, state and local sales, payroll, income, and real and personal property tax records.

April 22, 2010   9:31AM

COPY

8.    You agree as a condition of relicensing that you have read and will abide by the provisions of the Utah Alcoholic Beverage Control Act (Title 32A of the Utah Code), and all rules of the Commission (R81 of the Utah Administrative Code) and directives of the Department, and understand that failure to do so, or to maintain all the qualifications required to hold a license, may result in a <u>supension</u> and/or revocation of your club license, imposition of a fine, and forfeiture of the $10,000 compliance bond.

These laws may be viewed under liquor laws on the Department's website at:   http://www.abc.utah.gov.

9.    <u>I VERIFY AND ATTEST THAT:</u>

a.    A variety of food is prepared and served by the club in connection with dining accommodations, and food is available at all times when alcoholic beverages are sold, served or consumed on the premises.

b.    All necessary local licenses (business, beer, liquor consumption, etc.) have been obtained for the club and are current.

c.    The tax numbers provided on Form B of this renewal application are accurate with the proper agencies.

d.    The club will not permit gambling, or have any video gaming device as defined in Utah Code section 76-10-1101(6), or permit any other violation of the laws.

e.    The undersigned organization does not discriminate against persons on the basis of race, color, sex, religion, ancestry, or national origin.

f.    The licensee will not sell, transfer, assign, exchange, barter, give or attempt in any way, to dispose of the license to any other person, whether for monetary gain or not.

g.    I acknowledge that I have read and understand the statements made in this application, authorized to sign and certify that the information I have provided in this application and the attached information is true and correct.

Dated this   18TH   day of   May   2010

_____
Authorized Signature

William Shoaf.
_____
Name (please print)

Manager.
_____
Title

STATE OF   Utah                                          COUNTY OF.   Summit

Subscribed and sworn to before me this   18th   day of   May   , 20 10

Notary Public  _____

```
Notary Stamp
         MARINA SOTO
    NOTARY PUBLIC-STATE OF UTAH
      COMMISSION# 582604
      COMM. EXP. 04-26-2014
```

---

*WARNING:*    *Pursuant to Utah Code Section 32A-12-304, it is a criminal offense to knowingly:*

*    *Make a false statement on any UDABC application, form, affidavit or document; or create a false impression by omitting information necessary to prevent statements in these documents from being misleading;*

*    *Make a false written statement with intent to deceive a public servant in the performance of that servant's official functions;*

*    *Submit or invite reliance on any writing or document which you know to be lacking in authenticity; or*

*    *Make a false statement which must be sworn or affirmed before a notary public.*

*Violation of this law could result in criminal penalties, substantial fines, suspension or revocation of your license, and forfeiture of your compliance bond.*

<div style="border:1px solid black; display:inline-block; padding:4px;">**FORM B**</div>

**CLUB LIQUOR LICENSE RENEWAL APPLICATION**
**( 2010 - 2011 )**
**License Number:   CL00962**

## LICENSEE INFORMATION

We currently have this information on file.

If any of the information has changed, please write on the spaces provided.

Date _____

1.  Club Name:

    EASY STREET BRASSERIE @ SKY LODGE

    _____

2.  Ownership Entity:          *Cloudnine Resorts,* LLC

    ~~CLOUDNINE RESORTS - SKY LODGE MANAGMENT LLC~~

3.  Location Address:

    **201 HEBER AVE**
    **PARK CITY, UT  84060**          _____

    _____

4.  Mailing Address (or PO Box):

    PO BOX 683300
    PARK CITY, UT  84068          _____

    _____

5.  Phones:

    | Phone Type | Phone Number |
    | --- | --- |
    | BUSINESS | 435-658-2500 |
    | FAX | 435-615-8751 |
    | OTHER | 435-658-1195 |

    Club Phone: _____
    Office Phone: _____
    Other Phone: _____
    Fax: _____
    Email: _____

6.  Contact Person and Phone Numbers:

    | Position | Name | Phone Type | Phone |
    | --- | --- | --- | --- |
    | Manager | SCOTT BEBEREK | | |

    Name: _____
    Position: _____
    Office Phone: _____
    Other Phone: _____
    Email: _____

7.  Days and Hours of Operation:

    Monday-Sunday 7:00am-1:00am

    _____

8.  Utah Sales Tax Number:          _____

9.  Utah State Payroll Withholding Number:          _____

10. Utah Dept Workforce Services Number:          _____

11. Federal IRS Taxpayer ID Number:          _____



## FORM C (continued)

**Management:**   Staff who routinely perform managerial or supervisory duties.

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  |  |

Cross out any individual above that no longer performs managerial or supervisory duties.

Use the blank form below to add any NEW person added since last year's renewal who performs managerial or supervisory duties.
Completed Criminal History background checks must be submitted for each NEW person added since last year's renewal.

| Full Name<br>Position<br>Date of Birth | Home Mailing Address<br>(including ZIP code) | Phone Type / Phone | Social Security<br>Number | Driver's License #<br>and<br>State Issued |
|---|---|---|---|---|
| Name *Alfred Weser*<br>Position *Restaurant Manager*<br>Date of Bir |  |  |  |  |
| Name *Patricia Wagner*<br>Position *Restaurant Manager*<br>Date of Birth |  |  |  |  |
| Name<br>Position<br>Date of Birth |  |  |  |  |

COPY

April 22, 2010   9:31AM

# EXHIBIT D



SURETY RIDER

Old Republic Surety Company

PO BOX 1635

Milwaukee, WI 53201-1635

TO BE ATTACHED TO AND FORM PART OF _On Premise Banquet_

Ut - Restaurant Liquor Bond                          Bond Number _____
(Type of bond)

IN FAVOR OF _____ State of Utah Dept. of Alcoholic Bev. _____
(Obligee)

ON BEHALF OF _____ Cloudnine Resorts - Sky Lodge Management LLC _____
(Principal)

EFFECTIVE _____ September 18, 2009 _____
(Original Effective Date)

IT IS AGREED THAT, in consideration of the original premium charged for this bond, and any additional premium that may be properly chargeable as a result of this rider,

1. The Surety hereby gives its consent to:

[x] CHANGE THE NAME OF THE PRINCIPAL

[ ] CHANGE THE ADDRESS OF THE PRINCIPAL

(of) the above referenced bond    FROM:    Cloudnine Resorts - Sky Lodge Management LLC

TO:    Cloudnine Resortclubs, LLC

EFFECTIVE: _____ May 28, 2010 _____

2. PROVIDED, however, that this bond shall be subject to all of its agreements, limitations, and considerations except as herein expressly modified, and that the liability of the Surety under this bond and under this bond as changed by this rider shall not be cumulative.

3. Signed and sealed this __28th__ day of ____May____, __2010__.

ACCEPTED BY:                          Old Republic Surety Company

                                      SURETY

                                      OLD REPUBLIC SURETY COMPANY
                                      CORPORATE SEAL 1941

_____    By: _____    _____
(TITLE)              Kim Jensen      ATTORNEY-IN-FACT

ORSC 22381 (5/08)

COPY



## OLD REPUBLIC
### Surety Company

POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That OLD REPUBLIC SURETY COMPANY, a Wisconsin stock insurance corporation, does make, constitute and appoint:

Kim Jensen   Of SALT LAKE CITY, UT

its true and lawful Attorney(s)-in-Fact, with full power and authority, not exceeding $10,000,000, for and on behalf of the company as surety, to execute and deliver and affix the seal of the company thereto (if a seal is required), bonds, undertakings, recognizances or other written obligations in the nature thereof, *(other than bail bonds, bank depository bonds, mortgage deficiency bonds, mortgage guaranty bonds, guarantees of installment paper and note guaranty bonds, self-insurance workers compensation bonds guaranteeing payment of benefits, asbestos abatement contract bonds, waste management bonds, hazardous waste remediation bonds or black lung bonds)*, as follows: Effective Date: 5/28/2010 12:00:00 AM

Bond Number=                                                      Bond Amount: Ten Thousand Dollars ($10,000.00)

Principal Name: Cloudnine Resortclubs, LLC

Obligee Name: State of Utah Dept. of Alcoholic Bev. of Salt Lake City, UT

and to bind OLD REPUBLIC SURETY COMPANY thereby, and all of the acts of said Attorneys-in-Fact, pursuant to these presents, are ratified and confirmed. This appointment is made under and by authority of the board of directors at a special meeting held on February 18, 1982.

This Power of Attorney is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the board of directors of the OLD REPUBLIC SURETY COMPANY on February 18,1982.

RESOLVED that the president, any vice president or assistant vice president, in conjunction with the secretary or any assistant secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the company to execute and deliver and affix the seal of the company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any Power of Attorney previously granted to such person.

RESOLVED FURTHER that any bond, undertaking, recognizance, or suretyship obligation shall be valid and binding upon the Company

(i)    when signed by the president, any vice president or assistant vice president, and attested and sealed (if a seal be required) by any secretary or assistant secretary; or

(ii)   when signed by the president, any vice president or assistant vice president, secretary or assistant secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or

(iii)  when duly executed and sealed  (if a seal be required)  by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the Power of Attorney issued by the company to such person or persons.

RESOLVED FURTHER that the signature of any authorized officer and the seal of the company may be affixed by facsimile to any Power of Attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, OLD REPUBLIC SURETY COMPANY has caused these presents to be signed by its proper officer, and its corporate seal to be affixed this ____18th____ day of ____September____ 2000

OLD REPUBLIC SURETY COMPANY

_____
Assistant Secretary

STATE OF WISCONSIN, COUNTY OF WAUKESHA - SS

On this ____18th____ day of ____September____ 2009 , personally came before me, ____Gerald C. Leach____

and ____Rick A. Johnson____ , to me known to be the individuals and officers of the OLD REPUBLIC SURETY COMPANY who executed the above instrument, and they each acknowledged the execution of the same, and being by me duly sworn, did severally depose and say: that they are the said officers of the corporation aforesaid, and that the seal affixed to the above instrument is the seal of the corporation, and that said corporate seal and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority of the board of directors of said corporation.

Notary Public

My Commission Expires:   12/2/2012 12:00:00 AM

CERTIFICATE

I, the undersigned, assistant secretary of the OLD REPUBLIC SURETY COMPANY, a Wisconsin corporation, CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore, that the Resolutions of the board of directors set forth in the Power of Attorney, are now in full force.

0485128

Signed and sealed at the City of Brookfield, WI this ____28th____ day of ____May____ ____2010____

Assistant Secretary

ORSC 22262 (3-06)

SENTRY WEST INS. SERVICES

COPY



SURETY RIDER

Old Republic Surety Company

PO BOX 1635

Milwaukee, WI 53201-1635

TO BE ATTACHED TO AND FORM PART OF

**UT - Club Bond**                                Bond Number _____

(Type of bond)

IN FAVOR OF _____ State of Utah Dept. of Alcoholic Bev. _____

(Obligee)

ON BEHALF OF _____ Cloudnine Resorts-Sky Lodge Management LLC _____

(Principal)

EFFECTIVE _____ April 8, 2010 _____

(Original Effective Date)

IT IS AGREED THAT, in consideration of the original premium charged for this bond, and any additional premium that may be properly chargeable as a result of this rider,

1. The Surety hereby gives its consent to:

[x] CHANGE THE NAME OF THE PRINCIPAL

[ ] CHANGE THE ADDRESS OF THE PRINCIPAL

(of) the above referenced bond    FROM:    Cloudnine Resorts - Sky Lodge Management, LLC

TO:    Cloudnine Resortclubs, LLC

EFFECTIVE: _____ May 28, 2010 _____

2. PROVIDED, however, that this bond shall be subject to all of its agreements, limitations, and considerations except as herein expressly modified, and that the liability of the Surety under this bond and under this bond as changed by this rider shall not be cumulative.

3. Signed and sealed this __28th__ day of __May__, __2010__.

ACCEPTED BY:                        Old Republic Surety Company

                                           SURETY



_____          By: 

(TITLE)                              Kim Jensen         ATTORNEY-IN-FACT

ORSC 22381 (5/08)

COPY



**OLD REPUBLIC**
Surety Company

POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That OLD REPUBLIC SURETY COMPANY, a Wisconsin stock insurance corporation, does make, constitute and appoint:

Kim Jensen   Of SALT LAKE CITY, UT

its true and lawful Attorney(s)-in-Fact, with full power and authority, not exceeding $10,000,000, for and on behalf of the company as surety, to execute and deliver and affix the seal of the company thereto (if a seal is required), bonds, undertakings, recognizances or other written obligations in the nature thereof, *(other than bail bonds, bank depository bonds, mortgage deficiency bonds, mortgage guaranty bonds, guarantees of installment paper and note guaranty bonds, self-insurance workers compensation bonds guaranteeing payment of benefits, asbestos abatement contract bonds, waste management bonds, hazardous waste remediation bonds or black lung bonds),* as follows: Effective Date: 5/28/2010 12:00:00 AM

Bond Number: W150055401                          Bond Amount: Ten Thousand Dollars ($10,000.00)

Principal Name: Cloudnine Resortclubs, LLC

Obligee Name: State of Utah Dept. of Alcoholic Bev. of Salt Lake City, UT

and to bind OLD REPUBLIC SURETY COMPANY thereby, and all of the acts of said Attorneys-in-Fact, pursuant to these presents, are ratified and confirmed. This appointment is made under and by authority of the board of directors at a special meeting held on February 18, 1982.

This Power of Attorney is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the board of directors of the OLD REPUBLIC SURETY COMPANY on February 18,1982.

RESOLVED that the president, any vice president or assistant vice president, in conjunction with the secretary or any assistant secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the company to execute and deliver and affix the seal of the company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any Power of Attorney previously granted to such person.

RESOLVED FURTHER that any bond, undertaking, recognizance, or suretyship obligation shall be valid and binding upon the Company

(i)   when signed by the president, any vice president or assistant vice president, and attested and sealed (if a seal be required) by any secretary or assistant secretary; or

(ii)  when signed by the president, any vice president or assistant vice president, secretary or assistant secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or

(iii) when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the Power of Attorney issued by the company to such person or persons.

RESOLVED FURTHER that the signature of any authorized officer and the seal of the company may be affixed by facsimile to any Power of Attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, OLD REPUBLIC SURETY COMPANY has caused these presents to be signed by its proper officer, and its corporate seal to be affixed this _____ 8th _____ day of _____ April _____ 2010 _____.

OLD REPUBLIC SURETY COMPANY

SEAL

Assistant Secretary

STATE OF WISCONSIN, COUNTY OF WAUKESHA - SS

On this ' _____ 8th _____ day of _____ April _____ 2010 _____, personally came before me, _____ Gerald C. Leach _____

and _____ Rick A. Johnson _____ , to me known to be the individuals and officers of the OLD REPUBLIC SURETY COMPANY who executed the above instrument, and they each acknowledged the execution of the same, and being by me duly sworn, did severally depose and say: that they are the said officers of the corporation aforesaid, and that the seal affixed to the above instrument is the seal of the corporation, and that said corporate seal and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority of the board of directors of said corporation.

NOTARY PUBLIC
STATE OF WISCONSIN

Notary Public

My Commission Expires:   12/2/2012 12:00:00 AM

CERTIFICATE

I, the undersigned, assistant secretary of the OLD REPUBLIC SURETY COMPANY, a Wisconsin corporation, CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore, that the Resolutions of the board of directors set forth in the Power of Attorney, are now in force.

0485128

SEAL

Signed and sealed at the City of Brookfield, WI this _____ 28th _____ day of _____ May _____ 2010 _____

ORSC 22262 (3-06)

SENTRY WEST INS. SERVICES

Assistant Secretary

COPY



**SURETY RIDER**

Old Republic Surety Company

PO BOX 1635

Milwaukee, WI 53201-1635

TO BE ATTACHED TO AND FORM PART OF

**Ut - Restaurant Liquor Bond** _____ Bond Number _____

<div align="center">(Type of bond)</div>

IN FAVOR OF _____ State of Utah Dept. of Alcoholic Bev. _____

<div align="center">(Obligee)</div>

ON BEHALF OF _____ Cloudnine Resorts - Sky Lodge Management LLC _____

<div align="center">(Principal)</div>

EFFECTIVE _____ September 18, 2009 _____

<div align="center">(Original Effective Date)</div>

IT IS AGREED THAT, in consideration of the original premium charged for this bond, and any additional premium that may be properly chargeable as a result of this rider,

   1. The Surety hereby gives its consent to:

   [x]  CHANGE THE NAME OF THE PRINCIPAL

   [ ]  CHANGE THE ADDRESS OF THE PRINCIPAL

(of) the above referenced bond   FROM:   Cloudnine Resorts - Sky Lodge Management, LLC

                                  TO:     Cloudnine Resortclubs, LLC

                          EFFECTIVE: _____ May 28, 2010 _____

   2. PROVIDED, however, that this bond shall be subject to all of its agreements, limitations, and considerations except as herein expressly modified, and that the liability of the Surety under this bond and under this bond as changed by this rider shall not be cumulative.

   3. Signed and sealed this _28th_ day of_____ May _____ , _2010_ .

ACCEPTED BY:                          Old Republic Surety Company



_____       By: _____   ATTORNEY-IN-FACT
        (TITLE)                         Kim Jensen

ORSC 22381 (5/08)

COPY

# ★ ★ ★ ★
# ★ ⓞⓡ ★  OLD REPUBLIC
# ★ ★ ★ ★    Surety Company

POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That OLD REPUBLIC SURETY COMPANY, a Wisconsin stock insurance corporation, does make, constitute and appoint:

                                        Kim Jensen   Of SALT LAKE CITY, UT

its true and lawful Attorney(s)-in-Fact, with full power and authority, not exceeding $10,000,000, for and on behalf of the company as surety, to execute and deliver and affix the seal of the company thereto (if a seal is required), bonds, undertakings, recognizances or other written obligations in the nature thereof, *(other than bail bonds, bank depository bonds, mortgage deficiency bonds, mortgage guaranty bonds, guarantees of installment paper and note guaranty bonds, self-insurance workers compensation bonds guaranteeing payment of benefits, asbestos abatement contract bonds, waste management bonds, hazardous waste remediation bonds or black lung bonds)*, as follows: Effective Date: 5/28/2010 12:00:00 AM

Bond Number: ▓▓▓▓▓▓▓                    Bond Amount: Ten Thousand Dollars ($10,000.00)
Principal Name: Cloudnine Resortclubs, LLC
Obligee Name: State of Utah Dept. of Alcoholic Bev. of Salt Lake City, UT
and to bind OLD REPUBLIC SURETY COMPANY thereby, and all of the acts of said Attorneys-in-Fact, pursuant to these presents, are ratified and confirmed. This appointment is made under and by authority of the board of directors at a special meeting held on February 18, 1982.

This Power of Attorney is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the board of directors of the OLD REPUBLIC SURETY COMPANY on February 18, 1982.

RESOLVED that the president, any vice president or assistant vice president, in conjunction with the secretary or any assistant secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the company to execute and deliver and affix the seal of the company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any Power of Attorney previously granted to such person.

RESOLVED FURTHER that any bond, undertaking, recognizance, or suretyship obligation shall be valid and binding upon the Company

(i)   when signed by the president, any vice president or assistant vice president, and attested and sealed (if a seal be required) by any secretary or assistant secretary; or

(ii)  when signed by the president, any vice president or assistant vice president, secretary or assistant secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or

(iii) when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the Power of Attorney issued by the company to such person or persons.

RESOLVED FURTHER that the signature of any authorized officer and the seal of the company may be affixed by facsimile to any Power of Attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, OLD REPUBLIC SURETY COMPANY has caused these presents to be signed by its proper officer, and its corporate seal to be affixed this ____18th____ day of ____September____ ____2009____

                                                          OLD REPUBLIC SURETY COMPANY



_____                          _____
        Assistant Secretary                                      Gerald C. Leach

STATE OF WISCONSIN, COUNTY OF WAUKESHA - SS

On this ____18th____ day of ____September____ , ____2009____ , personally came before me, _____
and ____Rick A. Johnson____ , to me known to be the individuals and officers of the OLD REPUBLIC SURETY COMPANY who executed the above instrument, and they each acknowledged the execution of the same, and being by me duly sworn, did severally depose and say: that they are the said officers of the corporation aforesaid, and that the seal affixed to the above instrument is the seal of the corporation, and that said corporate seal and their signatures as such officers were duly affixed and subscribed to the said instrument by the authority of the board of directors of said corporation.



                                                          Notary Public

                                                          My Commission Expires:   12/2/2012 12:00:00 AM

CERTIFICATE

I, the undersigned, assistant secretary of the OLD REPUBLIC SURETY COMPANY, a Wisconsin corporation, CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore, that the Resolutions of the board of directors set forth in the Power of Attorney, are now in force.

0485128



                          Signed and sealed at the City of Brookfield, WI this ____28th____ day of ____May____ ____2010____

ORSC 22262 (3-06)                                                  Assistant Secretary
SENTRY WEST INS. SERVICES

# EXHIBIT E

MAR/03/2010/WED 09:43 AM   WRONA LAW OFFICE          FAX No. 435 649 5959              P. 003

# ARTICLES OF ORGANIZATION

## OF

## CLOUDNINE RESORTCLUBS, LLC

The undersigned, acting pursuant to Sections 48-2c-101 et seq. of the Utah Revised Limited Liability Company Act (the "Act"), adopts the following Articles of Organization for the purpose of organizing a Utah limited liability company (the "Company").

1.    **Name.** The Company's name is "CloudNine ResortClubs, LLC."

2.    **Purposes.** The Company's business purpose is to engage in any lawful activity for which a limited liability company may be organized under the Act. The Company may take any action incidental and conducive to the furtherance of such purpose.

3.    **Name and Address of Registered Agent.** The Company's registered agent shall be Joseph E. Wrona and his office in Utah is located at 1745 Sidewinder Drive, Park City, Utah 84060 (the "Registered Agent"). In the event the Company's Registered Agent has resigned, the Registered Agent's authority has been revoked, or the Registered Agent cannot be found or served with the exercise of reasonable diligence, the Company hereby agrees to the appointment of the director of the Division of Corporations and Commercial Code of the Utah Department of Commerce as its registered agent.

4.    **Designated Office.** The Company's designated office in Utah is the office of its Registered Agent.

5.    **Organizer.** The name of the organizer of the Company is Joseph E. Wrona and the street address of his business office is 1745 Sidewinder Drive, Park City, Utah 84060. The organizer of the Company is not a member or manager of the Company.

6.    **Management.** The Company will be Manager-managed. The name and street address of the Company's initial Manager is:

William Shoaf

State of Utah
Department of Commerce
Division of Corporations and Commercial Code
I hereby certify that the foregoing has been filed and approved on this ___ day of ___ 2010
in the office of this Division and hereby issued
This Certificate thereof.

Examiner _____

Kathy Berg
Division Director

7613569

COPY

MAR/03/2010/WED 09 49 AM    WRONA LAW OFFICE    FAX No 435 649 5959    P 004

Dated    March 3rd 2010



Joseph E Wrona  Organizer


## ACCEPTANCE OF APPOINTMENT BY REGISTERED AGENT

Pursuant to the Utah Revised Limited Liability Company Act the undersigned hereby accepts appointment as registered agent for ClounNine ResortClubs LLC a Utah limited liability company

Dated    March 3rd 2010

Joseph E Wrona  Registered Agent

03-03-10A10 08 RCVD

2

COPY