George B. Hofmann (10005)
Matthew M. Boley (8536)
Melyssa D. Davidson (5941)
Parsons Kinghorn Harris
A Professional Corporation
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Park City I, LLC

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| In re | Bankruptcy No. 09-29905 (RKM) |
|---|---|
| EASY STREET HOLDING, LLC, et. al., | Jointly Administered with Cases 09-29907 and 09-29908 |
| Debtors. | Chapter 11 |
| | [Filed Electronically] |

**PARK CITY I, LLC'S OBJECTION TO CONFIRMATION OF AMENDED PLAN OF REORGANIZATION OF EASY STREET PARTNERS, LLC AND WESTLB, AG DATED JUNE 16, 2010**

Park City I, LLC ("Park City") hereby files this Objection to Confirmation of Amended Plan of Reorganization of Easy Street Partners, LLC And WestLB, AG Dated June 16, 2010 (the "Objection"), and in support of this Objection respectfully states as follows:

{00097639.DOC /}

## CASE BACKGROUND, JURISDICTION AND VENUE

1.  Easy Street Partners, LLC ("Partners"), Easy Street Mezzanine, LLC ("Mezzanine"), and Easy Street Holding, LLC ("Holding") (collectively, the "Debtors") filed voluntary Chapter 11 petitions on September 14, 2009.

2.  By order dated September 14, 2009, the Court approved the procedural consolidation and joint administration of the Debtors' bankruptcy cases under the case of Holding, which is case number 09-29905.

3.  This Court has jurisdiction over this Objection under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

Park City requests this Court to enter an order denying confirmation of the Amended Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG Dated June 16, 2010 (the "Amended Plan").

## ARGUMENT

**I.  THE PROPOSED AMENDED PLAN SHOULD NOT BE CONFIRMED BECAUSE PLAN PROPONENTS HAVE FAILED TO PROVIDE SUFFICIENT NOTICE.**

Rule 2002(b) of the Federal Rules of Bankruptcy Procedure provides that interested parties shall be given

> . . . not less than 25 days notice by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary; and (2) for filing objections and the hearing to consider confirmation of a chapter 9, 11, or chapter 13 plan.

Fed. R. Bankr. P. 2002(b).  Under the December 1, 2009 Amendments to the Federal Rules of Bankruptcy Procedure, the 25 day notice requirement was extended to 28 days.

The purpose of the notice requirements in the Federal Rules of Bankruptcy Procedure is to protect the due process rights of interested parties and to afford them a meaningful opportunity to present their objections.  See e.g., In re Linkous, 990 F.2d 160 (4th Cir. 1993) ("Elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of pendency of action and afford them an opportunity to present their objections") quoting Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 873 (1950).  See also In re Rideout, 86 B.R. 523, 526 (Bankr. N.D. Ohio 1988)(Order confirming reorganization plan entered without proper notice having been given to creditors of hearing on confirmation was void because it purported to deprive creditors of their property rights when they were not afforded notice and opportunity to be heard).

Park City has not been afforded the 28 day notice required under the Rule.  The Amended Plan was filed June 16, 2010.  The Fifth Amended Notice of Hearing on Confirmation of Plan and Related Deadlines (the "Amended Notice") gave less than a week's notice before the June 23, 2010 deadline for filing an objection to the confirmation of the Amended Plan.

Plainly, Park City, and other interested parties, have not been provided sufficient time in which to assess the Amended Plan or object to its confirmation.  Indeed, many of the important details of the Amended Plan are contained in the Plan Supplement,

including the identity of the Reorganized Debtor, its managing members and officers, as well as the details of funding. See Plan Supplement. The Plan Proponents filed the Plan Supplement at 11:00 p.m. on June 21, 2010, not even two full days before the objection deadline and less than four days before the hearing scheduled for June 25, 2010. This is patently insufficient time for an interested party to ascertain the details in the Plan Supplement and fails to provide any meaningful notice or opportunity for Park City to present its objections to confirmation of the Amended Plan.

Moreover, a cursory review of the Plan Supplement reveals that it is really only a skeleton outline of the actual details, rather than the details themselves. Indeed, the proposed restructured loan documents were not even included with the Plan Supplement. In short, even with the Plan Supplement, the Amended Plan fails to provide the Debtors and interested parties with sufficient information to fully and fairly evaluate it. Although an Amended Disclosure Statement ("Disclosure Statement") was approved by the Court on February 18, 2010[1], the Amended Plan now proposed by Partners and WestLB is essentially an entirely new plan from the prior plan for which the Disclosure Statement was filed. Had the Amended Plan proposed only minor changes, perhaps cause would exist to reduce the required 28 day notice period to a shorter time period. The Amended Plan, however, proposes not minor modifications, but an entirely new and different plan. Indeed, the funder for the plan has completely changed. Instead of Strategic Capital Partners, LLC ("SCP") being the plan funder and providing between $6-6.5 million in equity capital and experience with fractional unit sales, the

---

[1] See Order (a) approving Amended Disclosure Statement With Respect To (A) Amended Plan Of Reorganization of Easy Street Partners, LLC, Dated February 18, 2010 (B) Establishing A Record Date, (C) Approving Solicitation Procedures, (D) Approving Forms Of Ballots and Voting Procedures, and (E) Approving Notice of and Scheduling Confirmation Hearing (the "Disclosure Statement Order"). Docket No. 567.

{00097639.DOC /}                                           4

Debtors' main creditor, WestLB, proposes to be the plan funder for the Amended Plan, contributing a little less than three million dollars in cash with a possible commitment to fund up to an additional $1.5 million in working capital. The proposed Amended Plan is an entirely new and different plan.

In view of the material changes to the Amended Plan, the Disclosure Statement filed does not provide adequate information to interested parties. "Adequate information" as defined in Bankruptcy Code § 1125(a)(1) is that information "of a kind, and in sufficient detail, as far as is reasonably practicable . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan." The Court should deny confirmation of the Amended Plan and should instead require an additional disclosure statement for the Amended Plan proposed by Partners and WestLB and that the required 28 day notice be given.

## II.     THE AMENDED PLAN SHOULD NOT BE CONFIRMED BECAUSE PLAN PROPONENTS HAVE NOT ESTABLISHED FEASIBILITY.

In addition to the insufficient notice given, the Court should also not confirm the Amended Plan because the Plan Proponents have failed to establish the feasibility of the Amended Plan. Section 1129 (a)(11) of the Bankruptcy Code requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan. . . ." Although the Disclosure Statements contain certain projections through the year 2013 of the future revenue, expenses, and proposed expenditures for the Sky Lodge Hotel, the feasibility of continued operation of the Sky Lodge Hotel was inextricably tied to the new capital that was to have been provided by SCP. The funding from SCP is materially different from the Exit Funding to be provided under the

Amended Plan proposed by WestLB and Partners.  Neither the Amended Plan nor the Plan Supplement contains any additional information regarding the feasibility as it specifically relates to the Amended Plan.  The projections contained in the Disclosure Statements are insufficient to show that the Reorganized Debtor can perform under the terms of the Amended and Restated Loan Agreements.[2]  Where there are no projections showing that a debtor will be able to meet payment obligations to a post-petition lender, the feasibility requirement of §1129(a)(11) is not met.  See In re Proud Marty Marine Corp., 338 B.R. 114 (Bankr. M.D. Fla. 2006).

Not only are the projections insufficient to establish feasibility, the commitment from WestLB is also insufficient to satisfy the feasibility requirement.  Under the terms for providing the Exit Funding set forth in the Amended Plan and Plan Supplement, the Exit Funding remains entirely contingent upon and subject to final approval of "senior management at WestLB."  No document discloses who "senior management" is.  Further, the Proposal of Terms and Conditions in the Plan Supplement states that Plan Funding is contingent upon satisfactory due diligence.  What, precisely, that due diligence entails also is not disclosed.  The Plan Supplement further states that funding is contingent upon "the internal credit approval of the Lender [WestLB]."  See Plan Supplement, *Conditions to Closing for the Benefit of the Lender*.  Again, the internal credit approval process is not explained.  In essence, WestLB seeks confirmation of the proposed Amended Plan without any definite commitment that Exit Funds will actually be provided.  A debtor's reorganization plan fails to meet feasibility requirements of

---

[2] Indeed, Park City has not been afforded any meaningful opportunity to ascertain precisely what the terms of the Amended and Restated Loan Agreements are.  The Restructured Loan Documents were not included with the Plan Supplement.  Park City made a written request for a copy of the Restructured Loan Documents but did not receive it until late afternoon on June 22, 2010, less than one day before objections to confirmation were due.

{00097639.DOC /}                                                6

Bankruptcy Code § 1129(a)(11) where projected income and expenses make it apparent that the debtor will be unable to meet its obligations under the plan without outside financing where the debtor has not adequately demonstrated a financing commitment. See e.g., In re Stoffel, 41 B.R. 390, (Bankr. D. Minn. 1984); In re H. H. Distributions, L.P., 400 B.R. 44 (Bankr. E.D. Pa. 2009). The Plan Proponents have not met the feasibility requirement of § 1129(a)(11). The Amended Plan should not be confirmed.

III.   **THE AMENDED PLAN SHOULD NOT BE CONFIRMED BECAUSE PLAN PROPONENTS HAVE NOT COMPLIED WITH BANKRUPTCY CODE REQUIREMENTS IN § 1123(a)(6).**

Bankruptcy Code § 1123(a)(6) provides that a plan shall provide:

> for the inclusion in the charter of the debtor, if the debtor is a corporation, or any corporation referred to in paragraph (5)(B) or (5)(C) of this subsection, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any such class of equity securities having a preference over another class of equity securities with respect to dividends adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

Although the Plan Supplement contains a form of an Operating Agreement of Heber Avenue Partners, LLC, the Reorganized Debtor, no such provisions are contained therein. Thus, the Amended Plan does not comply with the requirements of § 11223(a)(6).

IV.   **THE AMENDED PLAN SHOULD NOT BE CONFIRMED BECAUSE PLAN PROPONENTS HAVE NOT COMPLIED WITH BANKRUPTCY CODE §§ 1129(a)(5) or (7) REQUIREMENTS.**

Section 1129 of the Bankruptcy Code provides that the Court shall confirm a plan if *all* the requirements of that section are met. Subsection (a)(5)(A)(i) requires that "the

{00097639.DOC /}                                                7

proponent of the plan has disclosed the identity and affiliations of any individuals proposed to serve . . . as director, officer or voting trustee of the debtor . . . or a successor to the debtor under the plan."  Subsection (a)(5)(B) requires that "the proponent of the Plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor and the nature of any compensation for such insider."  Plan Proponents have failed to do so.  In the Plan Supplement, Schedule B, identifying the Authorized Persons of the Erste Abwicklungsanstalt, ("EAA"), the sole member of the Reorganized Debtor, Heber Avenue Partners LLC, contains only the initials "TBA", presumably standing for "to be announced."  Similarly, in the Plan Supplement, a "Jeff McIntyre" and a "Thomas Q Prins" are listed as the Hotel/Restaurant Operations Officers.  The Plan Proponents have failed to provide any information further identifying those individuals or identifying what their compensation will be under the Amended Plan.  Plan Proponents have failed to comply with the requirements of § 1129(a)(5).

In addition, Plan Proponents have failed to meet the requirements of § 1129(a)(7).  Subsection (a)(7) requires:

> With respect to each holder of a claim or interest of such class
> (A) each holder of a claim or interest of such class—
>                                 . . .
> (ii) will receive or retain under the  plan of account of such claim or interest property of a value as of the effective date of the plan that is not less than the amount that such holder would so receiver or retain if the debtor were liquidated under chapter 7 of this title. . . .

The Plan Proponents have failed to provide this analysis, particularly as to the holders of interests in Partners.  Although the Disclosure Statement purports to provide a "best interest" test analysis, the analysis simply assumes release of all liability for

WestLB and the parties in control of Partners. Not surprisingly, because WestLB and Partners are the Plan Proponents, they have not considered the value of the claims against them in evaluating whether claim holders might be better served by a chapter 7 liquidation in which the chapter 7 Trustee could pursue claims against WestLB and those individuals in control of Partners.

V. **THE AMENDED PLAN HAS NOT BEEN PROPOSED IN GOOD FAITH, BECAUSE IT ATTEMPTS TO RELEASE THIRD-PARTIES FROM LIABILITY.**

The Court also should decline to confirm the Amended Plan because it was not proposed in good faith. Bankruptcy Code § 1129(a)(3) requires that a plan must be proposed in good faith and not by any means forbidden by law. Courts have held that post-confirmation permanent injunctions that effectively release a non-debtor from all liability, including liability that could be separate from bankruptcy claims, are prohibited. In re Bernhard Steiner Pianos USA, Inc., 292 B.R. 109, 116 (Bankr. N.D. Tex. 2002) (citing Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 761 (5th Cir. 1995)). Further, the Tenth Circuit has held that Bankruptcy Code § 524(e) does not permit third-party releases at all. In re Western Real Estate Fund, Inc., 922 F.2d 592, 600 (10th Cir. 1990). Although Bankruptcy Code § 524(a) affords a broad discharge to a debtor, the discharge does not affect the liability of any other entity pursuant to Bankruptcy Code § 524(e). Id. "Obviously, it is the debtor, who has invoked and submitted to the bankruptcy process, that is entitled to its protections; Congress did not intend to extend such benefits to third-party bystanders." Id.

Paragraph 11.2 of the Amended Plan provides as follows:

Except as otherwise provided in the Plan or Confirmation Order, as of the Effective Date, Partners, the Reorganized Debtor, the Disbursing Agent, the Creditor's Committee, the members of the Creditors' Committee in

{00097639.DOC /} 9

their respective capacity as such, any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, and agents, and any such parties' successors and assigns (collectively, the "Released Parties") shall be released by Partners and any successors-in-interest of Partners from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that Partners would have been legally entitled to assert in its own right (whether individually or collectively) or that any holder of a Claim, Interest, or other person or entity would have been legally entitled to assert on behalf of Partners or its estate, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place before or on the Effective Date but occurring during the chapter 11 cases, except for acts constituting willful misconduct, gross negligence, or bad faith and, in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Without limiting the generality of the foregoing, to the extent permitted by law, Partners and any successors-in-interest of Partners shall waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to a lack of knowledge or otherwise.

Paragraph 11.3 of the Amended Plan provides as follows:

Partners, the Committee, and the Released Parties, and any property of or professionals retained by such parties, or direct or indirect predecessor in interest to any of the foregoing persons, shall not have or incur any liability to any Person or Entity for any act taken or omission, after the Petition Date, in connection with or related to these cases or the operations of Partners business during the cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plain (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; or (iii) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or bad faith occurring during the Chapter 11 Cases, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

And paragraph 11.5 provides:

The satisfaction, releases and discharge pursuant to Article 9 of the Plan will also act as an injunction against any Person or Entity commencing or

continuing any action, employment of process or act to collect, offset, recoup or recover any Claim or Cause of Action satisfied, released or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.

Park City believes that the Debtors may have causes of action against William Shoaf, David Wickline, and others in control of the Debtors (the "Control Parties") for breach of fiduciary duty and other related causes of action arising out of the Control Parties' management of Partners and dealings with BayNorth Realty Fund VI, LP ("BayNorth"), a lender to Partners' parent company, Mezzanine, on a mezzanine loan used for the purchase, development and construction of Partners' Sky Lodge Hotel.

The Debtors should not surrender their claims against the Control Parties and the Court should not sanction a plan of reorganization which improperly seeks a release and discharge of these claims. The proposed third-party releases are prohibited by law and thus the Amended Plan containing these prohibited releases has not been proposed in good faith under Bankruptcy Code § 1129(a)(3).

## VI.   THE AMENDED PLAN HAS NOT BEEN PROPOSED IN GOOD FAITH, BECAUSE THE AMENDED PLAN PROPONENTS HAVE CONFLICTS OF INTEREST.

The Court further should decline to confirm the Amended Plan because of the conflicts of interests of the Amended Plan Proponents. The Amended Plan was not proposed by in good faith, rather, it was proposed primarily to benefit the interests of the Amended Plan Proponents, WestLB and the Control Parties of Partners, to the detriment of creditors.

With regard to WestLB, as set forth in the Disclosure Statement and in the Complaint against WestLB brought by the Official Committee of Unsecured Creditors of Easy Street Partners, LLC (the "Creditors' Committee") on file with the Court, Case No.

{00097639.DOC /}                                      11

10-02028, the Creditor's Committee has commenced an adversary proceeding against WestLB concerning WestLB's wrongful payment of $5,600,000 to BayNorth. The wrongful payment to BayNorth set into motion the entire chain of events necessitating the Debtor's Chapter 11 bankruptcy filing. In short, WestLB's payment to BayNorth allegedly caused a default on the Debtor's BayNorth loan, which in turn, resulted in refusal of WestLB to extend the WestLB Senior Loan and to subsequently declare the WestLB Senior Loan in default. These events led to WestLB's refusal to release escrowed funds from which contractors, suppliers, and others were to be paid. This in turn led to the imposition of liens by unpaid contractors and suppliers and foreclosure lawsuits by Sky Lodge Hotel fractional ownership interest purchasers as well as a sharp loss in fractional ownership sales. Ultimately, the Debtors were forced to seek protection under chapter 11 of the Bankruptcy Code.

WestLB, as a Plan Proponent, proposes to release itself under the Amended Plan from any and all liability related to this wrongful payment.

Paragraph 11.4 of the Amended Plan provides as follows:

> Without limiting the foregoing, and except as to the obligations arising under the Plan, as of the effective Date, Partners, the Reorganized Debtor, the Creditors' Committee and the members of the Creditors' Committee in their respective capacity as such ("WestLB Releasors"), shall release and shall be deemed to have released WestLB from any and all claims, debts, obligations, rights, suits damages, actions, causes of action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that any of them would have been legally entitled to assert in its own right or on behalf of Partners (whether individually or collectively). Without limiting the generality of the foregoing, the West LB Releasors shall waive all rights under any statutory, legal or equitable authority purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

The release of WestLB is not only prohibited, but it is also contrary to the interests of all other creditors as well as the interests of the Debtors. Thus, the Amended Plan was not proposed in good faith.

This lack of good faith is further illustrated by the fact that WestLB seeks to singularly place itself in charge of effectuating the Amended Plan and to again place itself in control of Partners' accounts, essentially, the same control over the same accounts from which WestLB made the wrongful payment.

This Court should not sanction a plan of reorganization proposed by the very party which appears to have wrongfully created the necessity for the chapter 11 filing in the first place or sanction a plan by which that party may entirely relieve itself of liability for doing so. Sanctioning such a plan would also contravene public policy in violation of 11 U.S.C. § 1123(a)(7) requiring that a reorganization plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."

In addition, the Control Parties for the other Plan Proponent, Partners, have similar conflicts of interest. One of the Control Parties is William Shoaf ("Mr. Shoaf"). Through a series of limited liability companies,[3] Mr. Shoaf essentially has a 38.75% ownership interest in Partners and a 50% ownership interest in the management company that has been responsible for running Partners' Sky Lodge Hotel. The

---

[3] Mr. Shoaf is the owner and manager of Cloudnine Resorts LLC, ("Cloudnine") which owns fifty percent of Cloudnine Resorts Sky Lodge Management, LLC the property manager of the Debtor's Sky Lodge Hotel. Mr. Shoaf, through Cloudnine, is also a fifty percent owner in the development company, Cloudnine Resorts Sky Lodge Development, LLC, that developed the Sky Lodge Hotel. Mr. Shoaf, through Cloudnine, also owns 38.75% interest in Easy Street Holdings. LLC, ("Holding"). Holding owns one hundred percent of Easy Street Mezzanine, LLC ("Mezzanine") which, in turn, owns one hundred percent of Partners.

{00097639.DOC /}                    13

Amended Plan would benefit Mr. Shoaf through proposed post-confirmation employment and other arrangements, to the detriment of creditors.

The Amended Plan proposes to retain Mr. Shoaf for a period of two years under an agreement that will pay him $20,000 per month. Contrary to the requirements of Bankruptcy Code § 1129(5)(B), the Amended Plan does not specifically describe the nature of Shoaf's employment. The form of the agreement contained in the Plan Supplement mentions only that Mr. Shoaf will "assist" with the transition of the Sky Lodge Hotel management. Indeed, from the agreement in the Plan Supplement, it appears that the only real purpose of Mr. Shoaf's "employment" is to ensure Mr. Shoaf's cooperation in transferring the liquor licenses to the Reorganized Debtor. It appears that Mr. Shoaf is holding the very valuable and irreplaceable liquor license hostage unless he gets what he wants in a post-confirmation employment arrangement, which includes not only the $20,000 per month salary, but also a "Transition Bonus" of nearly a quarter of a million dollars. Under details in the Plan Supplement, Mr. Shoaf also will be entitled to commissions and/or finders' fees in connection with future sales of the fractional ownership interests.

Other portions of the Amended Plan similarly operate to benefit Mr. Shoaf to the detriment of creditors. Mr. Shoaf's company, Cloudnine, was a Guarantor for the WestLB Senior Loan to Partners. Under the Guarantee, Cloudnine is liable for amounts owing under the WestLB Senior Loan. Contrary to provisions in the Disclosure Statement, under the terms of the Amended Plan, Mr. Shoaf's company's Guarantee of the WestLB Senior Loan will be cancelled. Plainly, Mr. Shoaf's own self interest and his interest in getting Cloudnine off the hook as a Guarantor of the WestLB Senior Loan is a

primary motivating force behind the Amended Plan, thus, the Amended Plan has not been proposed in good faith.

This Court should not sanction a plan of reorganization blatantly motivated by Mr. Shoaf's self-interests and his desire to avoid liability of his company, Cloudnine, on the Guarantee with WestLB.

## CONCLUSION

The Court should deny confirmation of the Amended Plan because interested parties have not been provided the notice required under Rule 2002(b) of Federal Rules of Bankruptcy Procedure. The Court should further deny confirmation of the Amended Plan because the Plan Proponents have failed to meet Bankruptcy Code requirements for confirmation. Finally, the Court should also deny confirmation of the Amended Plan because the Amended Plan was not proposed in good faith.

WHEREFORE, Park City respectfully requests this Court to enter an order denying confirmation of the Amended Plan.

Dated: June 23, 2010

        Parsons Kinghorn Harris
        A Professional Corporation

        /s/ George B. Hofmann
        George B. Hofmann
        Matthew M. Boley
        Melyssa D. Davidson

        Attorneys for Park Cit y I, LLC