Jeffrey W. Shields (USB #2948)
Lon A. Jenkins (USB #4060)
Troy J. Aramburu (USB #10444)
**JONES WALDO HOLBROOK & McDONOUGH, PC**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200

*Counsel to Unsecured Creditors' Committee*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re: | Bankruptcy No. 09-29905 |
| **EASY STREET HOLDING, LLC et al.,**[1] | (Jointly Administered with Cases 09-29907 and 09-29908) |
| Debtors. | Chapter 11 |
| | Honorable R. Kimball Mosier |

**RESPONSE OF THE UNSECURED CREDITORS' COMMITTEE TO THE AMENDED PLAN OF REORGANIZATION OF EASY STREET PARTNERS, LLC AND WESTLB, AG DATED JUNE 16, 2010**

The Official Committee of Unsecured Creditors (the "**Committee**") for the above captioned debtors and debtors in possession (collectively the "**Debtors**"), by its counsel, Jones Waldo Holbrook & McDonough, PC, ("**Jones Waldo**") hereby responds to the Amended Plan of Reorganization of Easy Street Partner, LLC and WestLB, AG Dated June 16, 2010 ("**Joint Plan**"). In support of its Response, the Committee states as follows:

---

[1]  The Debtor entities are Easy Street Holding, LLC, Easy Street Partners, LLC, and Easy Street Mezzanine, LLC.

936685.1

**Background**

1.     Debtors Easy Street Partners, LLC ("**Partners**"), Easy Street Mezzanine, LLC ("**Mezzanine**") and Easy Street Holding, LLC ("**Holding**") filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("**Code**") on September 14, 2010.

2.     On January 15, 2010, Debtor Partners filed its Plan of Reorganization of Easy Street Partners, LLC ("**Original Plan**") (docket no. 256), which subsequently was amended by the Amended Plan of Reorganization of Easy Street Partners, LLC Dated February 18, 2010 ("**Amended Plan**") (docket no. 309).  The Amended Plan contemplated third-party exit financing from an entity known as Strategic Capital Partners, LLC ("**SCP**") and an infusion of cash into the Reorganized Debtor to make plan payments and fund operations in the approximate amount of $6 million, as well as other provisions relating to the involvement of William Shoaf in the management and activities of the Reorganized Debtor.

3.     The Amended Plan, along with a court-approved Amended Disclosure Statement (docket no. 310) was disseminated to creditors in the case, along with a ballot for voting on the plan.  Ballots were to be submitted no later than March 25, 2010, with a hearing on confirmation of the Amended Plan to be held on March 30, 2010.

4.     Ultimately, a funding agreement with SCP could not be satisfactorily negotiated among Partners, WestLB, AG ("**WestLB**"), the Debtors' primary secured creditor, and SCP. Partners, with the assistance of its financial advisor BDRC, continued to search for a third-party plan funder which would step into the shoes of SCP and provide exit financing within the parameters established in the Amended Plan which had been sent out to creditors for voting.

936685.1

5. During the intervening months, the deadlines associated with the confirmation hearing, including balloting, plan supplement filing, plan objection filing and filing of replies were extended several times, with approval of the Court.

6. After months of unsuccessful negotiations with potential third parties to provide funding for the Debtor's Amended Plan, at a hearing on June 11, 2010, Partners and WestLB announced that they were in negotiations on a joint plan and, indeed, very close to agreement on the terms of such a plan. If a joint plan was successfully negotiated, the joint plan would be filed with the Court on June 16, a plan supplement ("**Plan Supplement**") would be filed no later than June 21, objections to the plan would be due no later than June 23, and a confirmation hearing would be held on June 25. The Court approved these extended deadlines in open court. The then-existing June 17 deadline for submission of ballots on the Amended Plan remained extant. It was not extended as other deadlines had.

7. The Joint Plan was filed on June 16 and the Plan Supplement was filed on June 21. In the Joint Plan, WestLB has agreed, through a bankruptcy remote, special-purpose subsidiary, to provide exit financing for the Reorganized Debtor. The Reorganized Debtor under the Joint Plan will be Heber Avenue Partners, LLC, a newly-created Delaware limited liability company, which will own and operate the Sky Lodge Private Residence Club and Hotel.

8. With respect to treatment of unsecured creditors in Class 4 under the Joint Plan, the treatment is essentially the same as under the Amended Plan disseminated in February: Unsecured Creditors are given the option to elect either (1) a discounted cash payment of 60% of their allowed claims, paid within thirty (30) days after the Effective Date of the Joint Plan

936685.1

("**Discounted Payment**") or (2) payment of 100% of their allowed claims, paid in installment payments over roughly 3½ years following the Effective Date, with the last payment being due in July 15, 2013 ("**Deferred Payments**"). No interest is to be paid on the Deferred Payments. This constitutes a slight change from the Amended Plan which allowed the possibility that Deferred Payments would bear interest at the rate of 6% per annum. Under the Amended Plan, if the junior class of equity holders were to receive any distribution from the Mezzanine Escrow, accrued interest would be paid on the Deferred Payments in conjunction with the last installment payment. Under the Joint Plan, however, the junior class of equity is extinguished and thus there exists no possibility that interest will be paid on the Deferred Payments.

9. The Joint Plan varies in certain other respects from the Amended Plan which was disseminated to creditors. Under the Amended Plan, it appeared that William Shoaf ("**Shoaf**"), Partners' current manager, would continue to have a role in management of the Reorganized Debtor. Shoaf would be offered a six-year contract and would be a key employee of the management company responsible for the Reorganized Debtor's management. Under the Joint Plan, Shoaf is offered essentially a two-year consulting agreement; he will not be involved in the management of the Reorganized Debtor, but will be an employee of the Reorganized Debtor who reports to the management company. He will be free to pursue other business and activities while in the employ of the Reorganized Debtor. The management company for the Reorganized Debtor will be Gemstone Hotels & Resorts, LLC, which currently oversees the management of the Sky Lodge, but it is not the current onsite manager.

936685.1

10.     The Joint Plan also provides a different financing structure than the Amended Plan.  Under the Amended Plan, it was contemplated that SCP would fund $6 million into the Reorganized Debtor to make required Effective Date payments and to fund ongoing operations.  Of that $6 million, $2 million was to be contributed as working capital and, among other things, to make the Deferred Payments to Class 4 unsecured creditors.  Under the Joint Plan, WestLB or its affiliate will fund approximately $2.9 million to make Effective Date payments, with another $1.5 to be made available as working capital to effectuate the Joint Plan.  In addition, the structure of the loans from WestLB to its subsidiary, loan maturities dates, loan payoffs, and interest rates also vary from that set forth in the Amended Plan.  Whether those variations make the Joint Plan more or less feasible than the Amended Plan is difficult to assess from the Plan Supplement filed on June 21.  The senior note/junior note structure under the Joint Plan would appear to require a decreased (in the short term) debt service obligation, but whether that is offset by the decrease working capital infusion is difficult to tell without more information.  Presumably, Partners and WestLB will provide the required feasibility evidence at the June 25 confirmation hearing to convince the Court and creditors that the Joint Plan is feasible and that Deferred Payments will be made to Class 4 unsecured creditors who so elect.

    **a.**     **Under the Circumstances of the Joint Plan, Unsecured Creditors in Class 4 Should Have the Opportunity to Reconsider Their Elections for Either Option 1 or Option 2**

Because the Joint Plan is not identical to the Amended Plan upon which ballots were required to be cast no later than June 17, it is necessary that Class 4 unsecured creditors be afforded the opportunity to reconsider their Option 1 (Deferred Payments) or Option 2

5

936685.1

(Discounted Payments) elections. While the Committee is not suggesting that resolicitation of votes is required (the Committee understands that non-insiders actually voting on the plan overwhelming accepted the plan), it is wholly appropriate, in view of the modifications from the Amended Plan, that unsecured creditors be given some short time following June 25 (assuming confirmation of the Joint Plan) to reconsider their elections. Neither Partners, WestLB nor the Committee can know what information contained in the Amended Disclosure Statement was deemed material or immaterial by Class 4 creditors in making their elections for either Option 1 or Option 2 – creditors may have deemed important the involvement of Shoaf in the management of the Reorganized Debtor, they may have been influenced to elect one option or the other by the amount of funds to be infused into the Reorganized Debtor, or they may have considered the possibility of receiving interest on Deferred Payments to be an important consideration. With the full knowledge of the Joint Plan, which recently has been served on all unsecured creditors, it is now appropriate to permit unsecured creditors to reconsider their elections and notify Partners and WestLB within a short period of time following confirmation – perhaps 14 days – of a change in election.

Moreover, the opportunity to change an the Option 1/Option 2 election should be afforded to even those Class 4 creditors who did not cast a ballot. Under the terms of the Amended Plan and Disclosure Statement, any Class 4 creditor who did not vote or did not make an election on its ballot, is deemed to have elected Option 1 (Deferred Payment). However, it is impossible to ascertain whether certain creditors did not cast a ballot because they were satisfied with the Option 1 treatment because of representations in the Disclosure Statement or otherwise,

6

936685.1

or whether they simply chose not to cast a ballot for other reasons. In any event, because it cannot be determined on what basis those creditors did not cast ballots, they, too, should have the opportunity to make an election. Again, the Committee is not suggesting that a resolicitation of votes should occur – the overwhelming vote to accept the plan by Class 4 should stand – but all Class 4 unsecured creditors should be afforded the opportunity to reconsider their Option 1 or Option 2 elections.

Allowing Class 4 unsecured creditors to reconsider their elections should cause no problem for Partners or WestLB. In the Plan Supplement, WestLB or its affiliate is committing to fund up to $560,165.43 for payment of Allowed Class 4 claims electing Option 2 – which amount of is 60% of $933,609.05 (presumably, the amount of allowed Class 4 claims –but see section b below). Thus, it appears that WestLB or its affiliate anticipates the possibility of making Discounted Payments on the Effective Date to as many as all Class 4 creditors. Therefore, even if all unsecured creditors reconsidered their election and elected Option 2, WestLB or its affiliate evidently is prepared to make that payment.

    b.    **<u>The Joint Plan Should be Amended to Reflect the Actual Amount of Class 4 Claims</u>**

The Joint Plan appears to contemplate that the amount of allowed unsecured claims is less than $950,000. Section 5.4(c) of the Joint Plan states that "[i]n no event shall the present value of the cash accorded to holders of Allowed Class 4 Claims under Option 1 and Option 2 exceed $950,000." Based on the most current information available to the Committee, and after consultation with the Debtors, however, it appears that allowed unsecured Class 4 claims could

7

total up to $987,252.88. While it is unlikely, if all allowed Class 4 creditors elected Option 1 (assuming the Court grants the Committee's request to allow unsecured creditors to reconsider their elections), and all $987,252.88 of claims were allowed, the "present value of the cash accorded to holders of Allowed Class 4 Claims" could be in excess of $950,000.

Importantly, assuming reconsideration of elections, if all Class 4 creditors elected Option 2, the amount required to make Effective Date payments at the 60% discounted rate would be $592,351.72. The Plan Supplement, however, provides that only up to $560,165.43 will be used for Effective Date payments to Class 4 claims. In that instance and assuming only $560,165.43 is available for Effective Date Discounted Payments, allowed Class 4 unsecured claims would be receiving something less than payment of 60% of the allowed amount and the Disclosure Statement and Joint Plan would be misleading. The Committee understands that it is not the intent of WestLB or its affiliate to pay less than 60% to those unsecured creditors electing Option 2, and the maximum amount of cash available to the Discounted Payments on the Effective Date should be increased to take account of the unlikely event that all Class 4 creditors elect Option 2.

    c.    **The Plan Proponents Must Provide Updated Cash Flows, Projections and Provide Feasibility Evidence**

Clearly, the recently-filed Plan Supplement requires further feasibility evidence, as well as updated cash flows and performance projections. The Committee understands that such evidence will be presented at the June 25 hearing and, indeed, satisfying Section 1129(2)(11) is an element of proponents' case. Particularly, as it relates to Class 4 creditors who have elected (or are deemed to elect) Option 1, it is important to know (i) how payments on the restructured

8

936685.1

notes will impact Deferred Payments, (ii) what the Reorganized Debtor's ability is to make such payments, (iii) whether the Reorganized Debtor's cash flows are improved or diminished by utilization of a senior note, junior note structure vis-à-vis the Amended Plan, (iv) what constitute the events of default under the restructured obligations to WestLB and (v) what is the likelihood of defaults on the restructured obligations. Evidence on these matters should be presented at confirmation June 25 hearing.

WHEREFORE, the Committee respectfully requests the Court to enter and Order consistent with the foregoing.

DATED this 23rd day of June, 2010.

**JONES WALDO HOLBROOK & McDONOUGH, PC**

/s/ Lon A. Jenkins
Jeffery W. Shields
Lon A. Jenkins
Troy J. Aramburu

*Counsel to Unsecured Creditors' Committee*