Annette Jarvis (1649)
Peggy Hunt (6060)
Benjamin J. Kotter (9592)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hunt.peggy@dorsey.com
        kotter.benjamin@dorsey.com

Richard W. Havel (10759)
Christina M. Craige (Cal. Bar No. 251103)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600
Email:  rhavel@sidley.com
        ccraige@sidley.com

*Attorneys for WestLB, AG*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Bankruptcy Case No. 09-29905 |
| | ) | Jointly Administered with Cases |
| Debtors. | ) | 09-29907 and 09-29908 |
| | ) | |
| Address:  201 Heber Avenue | ) | Chapter 11 |
| Park City, UT 84060 | ) | |
| | ) | Honorable R. Kimball Mosier |
| Tax ID Numbers: | ) DATE: | June 25, 2010 |
| 35-2183713 (Easy Street Holding, LLC), | ) TIME: | 10:00 A.M. MST |
| 20-4502979 (Easy Street Partners, LLC), and | ) PLACE: | Courtroom 369 |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | 350 South Main Street, #301 |
| | ) | Salt Lake City, Utah 84101 |

## DECLARATION OF DUNCAN ROBERTSON IN SUPPORT OF CONFIRMATION OF THE AMENDED PLAN OF REORGANIZATION OF EASY STREET PARTNERS, LLC AND WESTLB, AG DATED JUNE 16, 2010

I, Duncan Robertson, declare and state as follows:

1.    I am an Executive Director of WestLB, AG, a German Bank acting through its
New York branch ("WestLB"), and I make this Declaration in support of confirmation of the
Amended Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG Dated June 16,
2010 (the "Plan").  I am a competent witness to give testimony to the facts set forth herein.

2.    As an Executive Director of WestLB, I am a custodian of the books and records
of WestLB pertaining to that certain loan (the "Loan") made by WestLB and such other co-
lenders as may exist from time to time (collectively, the "Lenders") to Easy Street Partners, LLC,
a Utah limited liability company ("Partners" or the "Debtor") and can confirm that the records
and other documents in the files of WestLB constitute writings made in the regular and ordinary
course of business of WestLB at or near the time of the events or acts of which they are a record.
WestLB serves as the Administrative Agent for the Lenders with respect to the Loan.  I make
this Declaration based on my personal knowledge and the information contained in the records of
WestLB, to which I have access and which this Declaration accurately reflects.  Capitalized
terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

3.    WestLB holds an Allowed Claim against Partners, which is secured by a first
priority, perfected security interest in all of Partners' assets.  The documentation in support of the
Allowed WestLB Secured Claim was placed into evidence in connection with the Declaration of
James Winikor in Support of Stipulation Authorizing Use of Cash Collateral Pursuant to 11
U.S.C. § 363 and Granting Adequate Protection to WestLB, AG [Docket No. 85].  WestLB has
timely filed a proof of claim against Partners in an amount no less than $16 million as of  the
Petition Date, plus accruing interest, fees, and expenses [Claim # 28].  WestLB contends that,
under the WestLB Loan Documents, WestLB holds a secured claim that it estimated as of July
31, 2010  to total $17.9 million.  A chart itemizing the components of the full WestLB Secured
Claim is attached hereto as Exhibit 1.

4.    In recognition of certain potential disputes regarding the allowance of certain
components of WestLB's claim and in the interest of facilitating the Debtor's emergence from

2

bankruptcy, WestLB has acceded to the Debtor's request to compromise the Allowed WestLB Secured Claim. Partners and WestLB have agreed that, for the purposes of the Plan, the amount of the Allowed WestLB Secured Claim will total $16.2 million if the Effective Date of the Plan occurs on or before July 31, 2010.

5.      In facilitating the provision of Exit Funding under the Plan and in agreeing to serve as a Plan Proponent, WestLB included as Exhibit 1 to the Plan Supplement filed on June 21, 2010, a term sheet (the "Term Sheet") laying out the material terms of the capital contribution to be made by the Plan Funder, as well as the Restructured Loan Documents governing the treatment of the Allowed WestLB Secured Claim. WestLB also included as Exhibit 2 to the Plan Supplement a form of amended and restated note (the "Note") to be issued by the Reorganized Debtor in respect of the Allowed WestLB Secured Claim. As made clear in the Plan Supplement, both of these documents remained subject to final approval of senior WestLB management in Germany and subject to the review and reasonable approval of Partners.

6.      Since the filing of the Plan Supplement, WestLB has received comments on the Term Sheet from WestLB and the Debtor. Attached hereto as Exhibit 2 is a revised Term Sheet (the "Revised Term Sheet"), which supersedes in its entirety the Term Sheet. Attached hereto as Exhibit 3 is a redlined comparison of the Redlined Term Sheet to the Term Sheet. The Revised Term Sheet and Note are no longer conditioned upon additional approval from WestLB.

7.      The Plan proposed by Partners and WestLB substantially adopts the plan previously proposed by Partners alone. WestLB agreed to this structure and agreed to a less favorable treatment of its claim than the treatment proposed by the Debtor's earlier plan in order to avoid renegotiation of issues with the Creditors' Committee and Jacobsen and to facilitate the prompt confirmation of a feasible plan.

8.      The Plan provides that the Plan Funder will contribute up to $2.9 million in capital on the Effective Date to fund certain payments required by the Plan to be made at that time (the "Effective Date Cap"). The Plan further provides that the Plan Funder will contribute up to $1.5 million in capital to fund working capital as needed by the Reorganized Debtor.

3

WestLB is aware of the terms of the Plan and has authorized the terms of the Revised Term Sheet.  WestLB is prepared to take the steps reasonable and necessary to confirm and implement the Plan, subject to the terms of the Plan and the Effective Date Cap.

9.      WestLB has agreed to facilitate the Exit Funding because it is in the business of making loans and, where necessary, investing limited capital in order to recover on existing loans.  WestLB is not in the business of purchasing real estate or distressed operating businesses. It is willing, however, to facilitate the infusion of the agreed-upon capital in the hope that WestLB may ultimately recover on its distressed loan to Partners.

10.      In the past year, WestLB's loan to Partners has been allocated to a portfolio containing certain distressed and other assets that are non-core to WestLB's business.  Only limited capital is available to deal with all of the assets allocated to that portfolio, and as a result, only $2.9 million is available for contribution on the Effective Date, and only $1.5 million is available for later contribution, as needed, for working capital.  WestLB has never considered and would not consider purchasing its own loan with its own cash so that subordinated creditors could receive a better recovery.

11.      The terms on which the Allowed WestLB Secured Claim are to be restructured (the "Restructured Loan") through the Plan will not provide WestLB with payment in full of its secured claim, both because its secured claim is larger than the agreed-upon Allowed Claim and because WestLB has agreed to accept an interest rate and other terms for the Restructured Loan that are less favorable than market terms.  WestLB has agreed to the treatment of its Allowed Claim laid out in the Term Sheet in order to make the Plan feasible and to provide some recovery to junior classes of creditors which did not contractually subordinate themselves to WestLB. Indeed,  the amount to be contributed as Exit Funding to implement the Plan and the amount of the Allowed WestLB Secured Claim in aggregate exceed the appraised value of the Sky Lodge.

4

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on June _23_, 2010, at _Steamboat Springs, Co_ .

_____

DUNCAN ROBERTSON

# EXHIBIT 1

## WestLB AG Secured Claim

| | |
|---|---|
| Principal | $14,379,224 |
| Pre-Petition Interest  (Default and Non-Default) | $793,791 |
| Pre-Petition Late Fees | $726,722 |
| Pre-Petition Fees & Expenses | $155,101 |
| Post-Petition Interest      (September 14, 2009 through July 31, 2010) | $1,227,354 |
| (320 days at $3,835.48/day) | |
| Post-Petition Attorneys' Fees and Costs[1] | |
| Incurred and Billed  (September 14, 2009 through May 31, 2010) | $1,223,974 |
| As-yet Unbilled       (June 1, 2010 through July 31, 2010) | $375,000   (estimated) |

**Subtotal**                                                             $18,881,166

Less Post-Petition Payments

| | |
|---|---|
| Adequate Protection Payments  ($34,000/month for 9 months) | $306,000 |
| Attorneys' Fees Paid  ($100k/month for 6 months, plus $67,225) | $667,225 |

**Total Estimated as of July 31, 2010**                     **$17.9 million**

---

[1] These amounts do not include other professional costs and expenses recoverable under the WestLB Loan Documents, including appraisal and administrative fees, et al.

7

# EXHIBIT 2

## The Sky Lodge Private Residence Club and Hotel
### Senior Term Loan
### Junior Term Loan

### Proposal of Terms and Conditions
### Dated June 24, 2010

---

*The Indicative Term Sheet (the "Indicative Term Sheet" or "Proposal") delivered by WestLB AG, New York Branch ("WestLB," "Administrative Agent" and "Lender") represents a proposal to provide exit financing to Easy Street Partners LLC ("Debtor") and to restructure the Allowed WestLB Secured Claim (as such term is defined in the Amended Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG Dated June 16, 2010 (the "Plan")). The Proposal is based upon information received from the Debtor, assumed to be complete and accurate in all material respects, and is subject to satisfactory due diligence to be performed by WestLB and Lender's counsel, satisfactory documentation including all filings, assignments of rights, etc., clean and lien-free title (other than as approved by the Lender) and the approval by the Bankruptcy Court (the "Bankruptcy Court") in the Borrower's Chapter 11 case (the "Bankruptcy") of the Plan. Additional terms and conditions will be added as deemed necessary by the Lender and as mutually agreed to.*

---

| | |
|---|---|
| **Facility:** | $6,200,000 term loan (the "Senior Loan")<br>$10,000,000 term loan (the "Junior Loan", together with the Senior Loan, the "Loans" and each individually, a "Loan").<br><br>The aggregate amount of the Loans is the allowed amount of WestLB's claim as of the Plan Effective Date (hereinafter defined) (or an number to be stipulated to). This amount is conditioned upon and includes the Lender's receipt of the monthly adequate protection payments of $34,000 and $100,000 through June 30, 2010. This proposal will also provide that upon confirmation of the Plan WestLB would receive a full release of all claims (including any that may have been brought by the Unsecured Creditors' Committee (the "Committee")) and specifically the Committee's litigation will be dismissed with prejudice. |
| **Borrower:** | An affiliate of Lender to be called Heber Avenue Partners LLC, a single-purpose, bankruptcy remote Delaware limited liability company that would own and operate the private residence club and hotel known as The Sky Lodge Private Residence Club and Hotel ("The Sky Lodge") located in Park City, Utah. |
| **New Capital:** | The Member of the Borrower would provide approximately $2,839,610 of new capital to the Borrower upon confirmation of the Plan to be applied in accordance with the Plan and Disclosure Statement, but, in no event more than $2.9 million. In addition, $1,500,000 is to be contributed as working capital for post confirmation operations. The Borrower's operating agreement would be filed with the Plan Supplement. |
| **Manager:** | A third-party hotel management company acceptable to the Lender in its reasonable discretion. |

Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 2

**Property:**

A 22-unit luxury, private residence club with full service, five-star equivalent resort destination amenities located in Park City, Utah. The development includes two operating restaurants, an approximately 6,300 square foot spa and fitness center, approximately 2,300 square feet of meeting space, a roof top owners club with heated outdoor spa, expansive outdoor plaza areas and an underground parking garage. The 22 units have been marketed for sale in 1/8th fractional interests, for a total of 176 shares ("Units"). As of June 2010, 113 such Units have been sold and 63 remain available for purchase. The Sky Lodge would be operated, maintained and preserved, in good working order and condition, ordinary wear and tear excepted, as a luxury private residence club.

**Arranger/Lender/Administrative Agent:**

WestLB AG, New York Branch.

**Term and Right to Prepay:**

The Senior Loan shall mature five years after the Plan Effective Date (the "Senior Loan Maturity Date") and (ii) the Junior Loan shall mature ten years after the Plan Effective Date (the "Junior Loan Maturity Date").

Borrower may at any time prepay all or a portion of the Loans without penalty or premium provided that all prepayments apply first to the Junior Loan until fully satisfied, and thereafter to the Senior Loan.

**Plan Deadlines and Closing Payments:**

The hearing on the confirmation of the Plan must commence no later than June 25, 2010 and the Plan must be confirmed no later than July 2, 2010, subject to an adjournment by the Bankruptcy Court. The Plan must be effective (the Closing Date for the restructured loans) no later than July 31, 2010 or such later date as permitted under the Plan (the "Plan Effective Date").

**Funding:**

The Loans have been fully funded and no further advances would be required.

**Release Payments:**

Mandatory principal payments of the Junior Loan would be made through release payments ("Release Payments") to be made upon the sale of the Units to bona fide third party purchasers. All minimum sales prices would have to be acceptable to the Lender, in its sole discretion. The Borrower would be required to pay a Release Payment equal to one hundred percent (100%) of the Net Sale Proceeds for each sale (as defined in the Junior Loan documents). Ten percent (10%) of the Release Payment proceeds would be held in a reserve account and used, in Lender's sole discretion, to fund operating expenses, other Plan payments, and debt service payments on the Senior Loan, with the balance of the ninety percent (90%) to be used to repay all other sums due under the Junior Loan documents, then outstanding interest and then outstanding principal. If the Junior Loan is paid in full then the Net Sales Proceeds from any Unit sale shall be applied to the Senior Loan first, to pay any fees, expenses or other charges due under the Senior Loan, then to prepay the monthly installments of principal.

LA1 1701142v.17

Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 3

**Pricing/Amortization:**

Senior Loan- LIBOR + 4.50% per annum.  Borrower shall pay principal in 60 monthly equal installments each in the amount of 1/120th of the initial principal amount of the Senior Loan and shall pay on a monthly basis the interest then due on the remaining principal, with a balloon payment of principal and all other obligations under the Senior Loan to be paid on the Senior Loan Maturity Date.

Junior Loan- LIBOR + 7.50% per annum. Interest would accrue and be paid on the Junior Loan Maturity Date.  Notwithstanding the foregoing, in the event the Junior Loan has an outstanding balance following full repayment of the Senior Loan, then principal shall be paid by equal monthly installments each in the amount of 1/120th of the principal amount due on the Junior Loan when the Senior Loan has been repaid.  Interest shall be paid on a monthly basis when due.  All the remaining principal and interest and all other obligations under the Junior Loan shall be paid on the Junior Loan Maturity Date.

All payments made by the Borrower under the Loans must be made in US dollars.

**Limitation of Liability:**

The liability of the Borrower under the Senior Loan documents and the Junior Loan documents would be limited to its assets.

**Security/Property:**

To secure the Borrower's obligation to the Lender, the Borrower would deliver, in form and substance acceptable to the Lender and its counsel *inter alia*, the following:

- For the Senior Loan, perfected first priority recorded fee mortgage and security agreement encumbering all of the Borrower's real property, and tangible and intangible personal property, and containing such terms and conditions as deemed necessary, including all unsold private residence club units and for the Junior Loan, perfected second priority recorded fee mortgage encumbering all of the Borrower's real property, and tangible and intangible personal property, and containing such terms and conditions as deemed necessary, including all unsold private residence club units;

- Subject to Utah law real estate law, for the Senior Loan, perfected first priority security interest in security deposits made by third party bona fide purchasers of residence club fractional interests and for the Junior Loan, perfected second priority security interest in security deposits made by third party bona fide purchasers of residence club fractional interests;

- For the Senior Loan, perfected first priority liens on and assignment of all rents, royalties, revenues, profits, room deposits, refunds, personal property, including FF&E, accounts, accounts receivable and any other accounts of the Borrower over which the Lender would have sole dominion and control and for the Junior Loan, perfected second priority liens on and assignment of all rents, royalties, revenues, profits, room deposits, refunds, personal property, including FF&E, accounts, accounts receivable and any other accounts of the Borrower over which the Lender would have sole dominion and control;

Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 4

- For each Loan, an ALTA extended coverage mortgage policy of title insurance, or its equivalent, in the amount of such Loan and in form acceptable to the Lender issued by title insurance company(ies) selected by the Lender and acceptable to Lender, together with co-insurance and reinsurance and such other endorsements as the Lender may reasonably require;

- Insurance coverage as customary for this type of property, including but not limited to liability, business interruption, mold (if applicable), *force majeure* insurance, which covers *inter alia* strikes, terrorism, war, acts of violence, and natural disasters, e.g., floods, earthquakes, and hurricanes all to be satisfactory to the Lender and its insurance consultant; the Lender would be named as additional insured, as applicable;

- An assignment and subordination of the management agreement provided, further, that the management agreement would be in the form reasonably satisfactory to the Lender in all respects.

**Prepayment:** The Loans would be pre-payable in full upon 30 days' prior written notice without premium or penalty, subject to reimbursement of any reasonable out-of-pocket expenses incurred by the Lender in connection therewith.

**Expenses:** All expenses, whether or not the transaction contemplated hereby actually closes, related to recording and filing fees and taxes, ALTA survey fees and title search and title insurance premiums are to be incurred for the account of the Borrower, and would be paid by Borrower.

The Lender would not be required to pay any brokerage fee or other fee or commission arising from the transaction contemplated hereby.

**Transferability:** The Senior Loan documents and the Junior Loan documents would provide that the Property and the direct and indirect ownership interests in the Borrower would not be directly or indirectly sold, transferred, encumbered, mortgaged or otherwise disposed of, in whole or in part, without the Lender's consent.

**Covenants:** The Senior Loan documents and the Junior Loan documents would include covenants substantially similar to those in the pre-petition loan, including, without limitation, financial covenants, annual approval of and compliance with a budget and business plan, financial reporting covenants, covenants regarding insurance, covenants limiting distributions, due on sale and due on encumbrance covenants, and covenants restricting the incurring of debt, covenants restricting affiliate transactions, and covenants regarding the SPE status of the Borrower. The Plan, the Senior Loan documents and the Junior Loan documents would also contain a full release of the Lender, its agents and affiliates, relating to any acts or omissions first occurring prior to the Closing Date.

**Conditions to Closing for the Benefit of the Lender:** The conditions to the closing of the Loans by the Lender include, but are not limited to:

LA1 1701142v.17

Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 5

1. Loan documentation for both Loans reasonably satisfactory to the Lender and satisfaction of closing conditions set forth in such documentation, including, without limitation, title insurance policies satisfactory to the Lender that would be provided by a title insurance company selected by the Lender, plats of survey reasonably satisfactory to the Lender and opinions of counsel reasonably satisfactory to the Lender;

2. The Lender's review and approval (not to be unreasonably withheld) of the management agreement with the Manager, and of the Manager itself;

3. Receipt of third-party estoppels from the tenant at the Zoom restaurant and the HOA and a nondisturbance and attornment agreement from the Manager as required by the Lender;

4. Dismissal of the pending Committee litigation with prejudice and no other pending material litigation against the Lender, and;

5. The hearing on confirmation of the Plan must commence no later than June 25, 2010 and the confirmation of the Plan must occur by July 2, 2010, subject to an adjournment by the Bankruptcy Court. The Plan Effective Date must occur by July 31, 2010 or such later date as permitted under the Plan. The Confirmation Order must be in a form and substance reasonably acceptable to the Lender.

**Withholding Taxes and Reserve Requirements:**   Increased cost of funding or maintaining the Loans, occasioned by reason of withholding taxes or by the imposition of reserve requirements, capital adequacy or other regulatory conditions, including, without limitation Basel II, resulting from changes in law or regulation would be borne by the Borrower.

**Governing Law:**   Fee Mortgage/Deed of Trust:  Utah
Others:  New York

LA1 1701142v.17

# EXHIBIT 3

~~SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT~~

## The Sky Lodge Private Residence Club and Hotel
### Senior Term Loan
### Junior Term Loan

### Proposal of Terms and Conditions
### Dated June 24, 2010

***

*The Indicative Term Sheet (the "Indicative Term Sheet" or "Proposal") delivered by WestLB AG, New York Branch ("WestLB," "Administrative Agent" and "Lender") represents a proposal to provide exit financing to Easy Street Partners LLC ("Debtor") and to restructure the Allowed WestLB Secured Claim (as such term is defined in the Amended Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG Dated June 16, 2010 (the "Plan")). The Proposal is based upon information received from the Debtor, assumed to be complete and accurate in all material respects, and is subject to satisfactory due diligence to be performed by WestLB and Lender's counsel, satisfactory documentation including all filings, assignments of rights, etc., clean and lien-free title (other than as approved by the Lender) and the approval by the Bankruptcy Court (the "Bankruptcy Court") in the Borrower's Chapter 11 case (the "Bankruptcy") of the Plan.* ~~*The Proposal is submitted as part of settlement negotiations to identify the structure of a modification and to outline the major terms in principle prior to WestLB's formal credit approval process (and thus is subject to credit committee approval), and entering into loan modification documentation.*~~ *Additional terms and conditions will be added as deemed necessary by the Lender and as mutually agreed to.*

***

| | |
|---|---|
| **Facility:** | $6,200,000 term loan (the "Senior Loan") $10,000,000 term loan (the "Junior Loan", together with the Senior Loan, the "Loans" and each individually, a "Loan"). |
| | The aggregate amount of the Loans is the allowed amount of WestLB's claim as of the Plan Effective Date (hereinafter defined) (or an number to be stipulated to ~~, which may be less than the full claim~~). This amount is conditioned upon and includes the Lender's receipt of the monthly adequate protection payments of $34,000 and $100,000 through June 30, 2010. This proposal will also provide that upon confirmation of the Plan WestLB would receive a full release of all claims (including any that may have been brought by the Unsecured Creditors' Committee (the "Committee")) and specifically the Committee's litigation will be dismissed with prejudice. |
| **Borrower:** | An affiliate of Lender to be called Heber Avenue Partners LLC, a single-purpose, bankruptcy remote Delaware limited liability company that would own and operate the private residence club and hotel known as The Sky Lodge Private Residence Club and Hotel ("The Sky Lodge") located in Park City, Utah. |
| **New Capital:** | The Member of the Borrower would provide approximately $2,839,610 of new capital to the Borrower upon confirmation of the Plan to be applied in accordance with the Plan and Disclosure Statement, but, in ~~any~~no event more than $2.9 million. In addition, ~~to provide for up to an additional~~ $1,500,000 is to be contributed as working capital for post confirmation operations. The Borrower's operating agreement would be filed with the Plan Supplement. |

S~~UBJECT TO~~ F~~INAL~~ A~~PPROVAL OF~~ S~~ENIOR~~ W~~EST~~LB M~~ANAGEMENT~~ Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 2

| | |
|---|---|
| ~~**Guarantor:**~~ | ~~The Loans would be non-recourse, except to The Sky Lodge.~~ |

**Manager:** A third-party hotel management company acceptable to the Lender in its reasonable discretion.

**Property:** A 22-unit luxury, private residence club with full service, five-star equivalent resort destination amenities located in Park City, Utah. The development includes two operating restaurants, an approximately 6,300 square foot spa and fitness center, approximately 2,300 square feet of meeting space, a roof top owners club with heated outdoor spa, expansive outdoor plaza areas and an underground parking garage. The 22 units have been marketed for sale in 1/8th fractional interests, for a total of 176 shares ("Units"). As of June 2010, 113 such Units have been sold and 63 remain available for purchase. The Sky Lodge would be operated, maintained and preserved, in good working order and condition, ordinary wear and tear excepted, as a luxury private residence club.

**Arranger/Lender/Administrative Agent:** WestLB AG, New York Branch.

**Term and Right to Prepay:** ~~Under no circumstances would the initial term of (i) the~~ The Senior Loan shall mature ~~later than~~ five years after the Plan Effective Date (the "Senior Loan Maturity Date") and (ii) the Junior Loan shall mature ~~later than~~ ten years after the Plan Effective Date (the "Junior Loan Maturity Date").

Borrower may at any time prepay all or a portion of the Loans without penalty or premium provided that all prepayments apply first to the Junior Loan until fully satisfied, and thereafter to the Senior Loan.

**Plan Deadlines and Closing Payments:** The hearing on the confirmation of the Plan must commence no later than June 25, 2010 and the Plan must be confirmed no later than July 2, 2010, subject to an adjournment by the Bankruptcy Court. The Plan must be effective (the Closing Date for the restructured ~~loan~~ loans) no later than July 31, 2010 or such later date as permitted under the Plan (the "Plan Effective Date").

**Funding:** The Loans have been fully funded and no further advances would be required.

~~Subject to Final Approval of Senior West~~LB Management Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 3

| | |
|---|---|
| **Release Payments:** | Mandatory principal payments of the Junior Loan would be made through release payments ("Release Payments") to be made upon the sale of the Units to bona fide third party purchasers.   All minimum sales prices would have to be acceptable to the Lender, in its sole discretion.   The Borrower would be required to pay a Release Payment equal to one hundred percent (100%) of the Net Sale Proceeds for each sale (as defined in the Junior Loan documents).   ~~The~~Ten percent (10%) of the Release Payment proceeds ~~in any given month~~ would be held in a reserve account and used, in Lender's sole discretion, to fund operating expenses, other Plan payments, and debt service payments on the Senior Loan, with the balance of the ninety percent (90%) to be used to repay all other sums due under the Junior Loan documents, then outstanding interest and then outstanding principal.   ~~Notwithstanding the foregoing, at Lender's option in its sole discretion, a portion of the Net Sale Proceeds may be used to pay the costs of operating the Property and other Plan payments~~If the Junior Loan is paid in full then the Net Sales Proceeds from any Unit sale shall be applied to the Senior Loan first, to pay any fees, expenses or other charges due under the Senior Loan, then to prepay the monthly installments of principal. |
| **Pricing/Amortization:** | Senior Loan- LIBOR + 4.50% per annum.   ~~Interest accruing on a monthly compounding basis together with principal payments based on a 10-year amortization schedule would be due and payable monthly on each payment date.~~Borrower shall pay principal in 60 monthly equal installments each in the amount of 1/120th of the initial principal amount of the Senior Loan and shall pay on a monthly basis the interest then due on the remaining principal, with a balloon payment of principal and all other obligations under the Senior Loan to be paid on the Senior Loan Maturity Date. |
| | Junior Loan- LIBOR + 7.50% per annum. Interest would accrue and be paid on the Junior Loan Maturity Date.   Notwithstanding the foregoing, in the event the Junior Loan has an outstanding balance following full repayment of the Senior Loan, then ~~interest accruing on a monthly compounding basis together with principal payments based on a 10-year amortization schedule would be due and payable monthly on each payment date.~~principal shall be paid by equal monthly installments each in the amount of 1/120th of the principal amount due on the Junior Loan when the Senior Loan has been repaid.  Interest shall be paid on a monthly basis when due. All the remaining principal and interest and all other obligations under the Junior Loan shall be paid on the Junior Loan Maturity Date. |
| | All payments made by the Borrower under the Loans must be made in US dollars. |
| **Limitation of Liability:** | The liability of the Borrower under the Senior Loan documents and the Junior Loan documents would be limited to its assets. |

S̶U̶B̶J̶E̶C̶T̶ ̶T̶O̶ ̶F̶I̶N̶A̶L̶ ̶A̶P̶P̶R̶O̶V̶A̶L̶ ̶O̶F̶ ̶S̶E̶N̶I̶O̶R̶ ̶W̶E̶S̶T̶LB M̶A̶N̶A̶G̶E̶M̶E̶N̶T̶Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 4

| **Security/Property:** | To secure the Borrower's obligation to the Lender, the Borrower would deliver, in form and substance acceptable to the Lender and its counsel *inter alia*, the following: |

- For the Senior Loan, perfected first priority recorded fee mortgage ~~and security agreement~~ encumbering ~~the Property~~all of the Borrower's real property, and tangible and intangible personal property, and containing such terms and conditions as deemed necessary, including all unsold private residence club units and for the Junior Loan, perfected second priority recorded fee mortgage encumbering ~~the Property~~all of the Borrower's real property, and tangible and intangible personal property, and containing such terms and conditions as deemed necessary, including all unsold private residence club units;

- Subject to Utah law real estate law, for the Senior Loan, perfected first priority security interest in security deposits made by third party bona fide purchasers of residence club fractional interests and for the Junior Loan, perfected second priority security interest in security deposits made by third party bona fide purchasers of residence club fractional interests;

- For the Senior Loan, perfected first priority liens on and assignment of all rents, royalties, revenues, profits, room deposits, refunds, personal property, including FF&E, accounts, accounts receivable and any other accounts of the Borrower over which the Lender would have sole dominion and control and for the ~~Jenior~~Junior Loan, perfected second priority liens on and assignment of all rents, royalties, revenues, profits, room deposits, refunds, personal property, including FF&E, accounts, accounts receivable and any other accounts of the Borrower over which the Lender would have sole dominion and control;

- For each Loan, an ALTA extended coverage mortgage policy of title insurance, or its equivalent, in the amount of such Loan and in form acceptable to the Lender issued by title insurance company(ies) selected by the Lender and acceptable to Lender, together with co-insurance and reinsurance and such other endorsements as the Lender may reasonably require;

- Insurance coverage as customary for this type of property, including but not limited to liability, business interruption, mold (if applicable), *force majeure* insurance, which covers *inter alia* strikes, terrorism, war, acts of violence, and natural disasters, e.g., floods, earthquakes, and hurricanes all to be satisfactory to the Lender and its insurance consultant; the Lender would be named as additional insured, as applicable;

- ~~The arrangement between the private residence club and the hotel would be in a form reasonably satisfactory to the Lender in all respects;~~

- An assignment and subordination of the management agreement provided, further, that the management agreement would be in the form reasonably satisfactory to the Lender in all

~~SUBJECT TO FINAL APPROVAL OF SENIOR WEST~~LB MANAGEMENTProposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 5

respects.

**Prepayment:**  The Loans would be pre-payable in full upon 30 days' prior written notice without premium or penalty, subject to reimbursement of any reasonable out-of-pocket expenses incurred by the Lender in connection therewith.

**Expenses:**  All expenses, whether or not the transaction contemplated hereby actually closes, related to recording and filing fees and taxes, ALTA survey fees and title search and title insurance premiums are to be incurred for the account of the Borrower, and would be paid by Borrower.

The Lender would not be required to pay any brokerage fee or other fee or commission arising from the transaction contemplated hereby.

**Transferability:**  The Senior Loan documents and the Junior Loan documents would provide that the Property and the direct and indirect ownership interests in the Borrower would not be directly or indirectly sold, transferred, encumbered, mortgaged or otherwise disposed of, in whole or in part, without the Lender's consent.

**Covenants:**  The Senior Loan documents and the Junior Loan documents would include covenants substantially similar to those in the pre-petition loan, including, without limitation, financial covenants, annual approval of and compliance with a ~~Budget (as defined below)~~budget and business plan, financial reporting covenants, covenants regarding insurance, covenants limiting distributions, due on sale and due on encumbrance covenants, and covenants restricting the incurring of debt, covenants restricting affiliate transactions, and covenants regarding the SPE status of the Borrower.  The Plan, the Senior Loan documents and the Junior Loan documents would also contain a full release of the Lender, its agents and affiliates, relating to any acts or omissions first occurring prior to the Closing Date.

**Conditions to Closing for the Benefit of the Lender:**  The conditions to the closing of the Loans by the Lender include, but are not limited to:

~~1.   The requisite internal credit approval of the Lender;~~

1.  ~~2.~~ Loan documentation for both Loans reasonably satisfactory

SUBJECT TO FINAL APPROVAL OF SENIOR WESTLB MANAGEMENT Proposal of Terms and Conditions
The Sky Lodge Private Residence Club and Hotel
Page 6

to the Lender and satisfaction of closing conditions set forth in such documentation, including, without limitation, title insurance policies satisfactory to the Lender that would be provided by a title insurance company selected by the Lender, plats of survey reasonably satisfactory to the Lender and opinions of counsel reasonably satisfactory to the Lender;

2. ~~3.~~ The Lender's review and approval (not to be unreasonably withheld) of the management agreement with the Manager, and of the Manager itself;

3. ~~4.~~ Receipt of third-party estoppels from the tenant at the Zoom restaurant and the HOA and a nondisturbance and attornment agreement from the Manager as required by the Lender;

~~5. Lender's approval of an operating and a capital expense budget (the "Budget") for the Property, material deviations from which and revisions to, during the term of the Loans, could only be made with the prior written consent of the Lender;~~

4. ~~6.~~ Dismissal of the pending Committee litigation with prejudice and no other pending material litigation against the Lender, and;

5. ~~7.~~ The hearing on confirmation of the Plan must commence no later than June 25, 2010 and the confirmation of the Plan must occur by July 2, 2010, subject to an adjournment by the Bankruptcy Court. The Plan Effective Date must occur by July 31, 2010 or such later date as permitted under the Plan. The Confirmation Order must be in a form and substance reasonably acceptable to the Lender.

**Withholding Taxes and Reserve Requirements:** Increased cost of funding or maintaining the Loans, occasioned by reason of withholding taxes or by the imposition of reserve requirements, capital adequacy or other regulatory conditions, including, without limitation Basel II, resulting from changes in law or regulation would be borne by the Borrower.

**Governing Law:** Fee Mortgage/Deed of Trust: Utah
Others: New York

Document comparison by Workshare Professional on Thursday, June 24, 2010 3:03:50 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:/Documents and Settings/ccraige/Desktop/Active Cases/WestLB, AG/Confirmation Materials/Sky Lodge Term Sheet.DOC |
| Description | Sky Lodge Term Sheet |
| Document 2 ID | interwovenSite://LALDMS01/LA1/1701142/17 |
| Description | #1701142v17<LA1> - Sky Lodge Term Sheet |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 24 |
| Deletions | 31 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 55 |