Blake D. Miller (4090)
Lauren Y. Parry (11420)
**MILLER GUYMON, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
e-mail: miller@millerguymon.com
e-mail: parry@millerguymon.com

Attorneys for BDRC 4Site, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **In re:** <br><br> **EASY STREET HOLDING, LCC, et al.,** <br><br> Debtors. | **Bankruptcy Case No. 09-29905** <br> **(Jointly Administered with Cases 09-29907 and 09-29908)** <br><br> Chapter 11 <br><br> Honorable R. Kimball Mosier <br><br> (Filed Electronically) |

**RESPONSE TO WESTLB, AG'S OBJECTION TO FINAL FEE APPLICATION OF CO-MANAGER, BDRC 4SITE, LLC FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES**

WestLB, AG ("WestLB") objects to the payment of certain of the fees contained in the fee application of BDRC 4Site, LLC, ("BDRC 4Site") based on the arguments that (i) certain of the fees sought are "duplicative", (ii) certain of the fees sought aren't contemplated by the Revised PSA, (iii) BDRC 4Site didn't perform the requisite work and (iv) even if it had, the Debtor did not agree on a specific amount for the work so BDRC 4Site must go without

payment. Each of these objections runs contrary to the express provisions of the subject agreement and/or applicable law.

1. **The Termination Fee is not duplicative of the monthly management fees incurred prior to the term of the Revised PSA.**

    BDRC 4Site seeks payment of $34,500 for unpaid management fees incurred during the 45 day period prior to the termination of the agreement. WestLB asserts that this is a duplicate fee under the contract and should not be awarded. WestLB is incorrect.

    Under the Agreement, WestLB is obligated to pay the agreed monthly recurring fee until the expiration of the stated term of the Agreement. Pursuant to the Agreement, the primary term of the Revised PSA was six months, with an automatic six-month extension <u>unless</u> an appropriate cancellation was served at least 45 days prior to the end of the primary term. [<u>See</u> Revised PSA ¶ 2.a]. Neither party delivered a notice of termination prior to the expiration of the primary term. [<u>See</u> BDRC Fee Application ¶ 9]. Consequently, the stated term of the Revised PSA was automatically renewed for an additional six months to November 13, 2010. [<u>Id</u>.]

    Under the Revised PSA, however, the Debtor could reduce the term to a date less than the stated 6 month term by providing no less than 45 days prior written notice to BDRC 4Site of an earlier termination date and paying an agreed Termination Fee. [Revised PSA, ¶2.b. "Owner may terminate this Agreement without cause by giving 45 days' prior written notice . . . ." and payment of a Termination Fee.] As set forth in Schedule 2 of the Revised PSA, "[s]hould BDRC 4Site's agreement be terminated before the expiration of a term, a Termination Fee Penalty equal to two (2) times the then –current Co-Management/Advisory Fee will be due <u>with the termination notice</u>." (Emphasis added). Thus, under the express language of the agreement,

2

the term of the Agreement ended on the earlier of the six month regular term or an earlier stated date which could be no less than 45 days following written notice and payment of the Termination Fee.

It is undisputed that the Debtor failed to satisfy the requirements to establish an earlier termination date. On June 30, 2010, BDRC received a letter from Debtor's legal counsel purporting to terminate the Revised PSA on that same date. [A copy of the letter is attached as Exhibit "C" to BDRC 4Site's Fee Application]. Compounding its failure to provide the requisite 45 days notice (or any notice at all), the Debtor did not deliver the requisite Termination Fee as required by the Revised PSA. Consequently, under the express terms of the Revised PSA that WestLB requests the Court enforce according to its terms,[1] the term of the Agreement actually continued until November 13, 2010. Despite the failure of the Debtor to satisfy the contractual requirements for an earlier termination date, however, BDRC 4Site is willing to agree that the term of the Revised PSA was 45 days following the Debtor's June 30, 2010 letter.[2]

The Debtor, therefore, owes both the monthly management fee until the termination of the Agreement and the Termination Fee. Contrary to WestLB's argument, these are not duplicate fees. The monthly management fee is for the availability of BDRC 4Site to perform the Professional Services as defined in the agreement through the end of the term. In fact, BDRC 4Site is obligated to be available to provide such services until the end of the term.

---

[1] According to WestLB, "BDRC's request for compensation is governed . . . by the Revised PSA that BDRC voluntarily executed and that this Court approved." [WestLB Objection, at 3].

[2] Of course, if WestLB would rather follow the express terms of the Revised PSA, BDRC 4Site should be paid the monthly fee through the actual term of the Revised PSA – November 13, 2010.

[Revised PSA, ¶3 (BDRC 4Site released from obligation to perform services at the end of the term and payment of Termination Fee, if applicable). The 45 day period sought by the fee application is for the period of time prior to the expiration of the term. It is of no consequence that Debtor chose not to utilize BDRC 4Site's services for the 45 day period, as BDRC 4Site is still entitled to payment up to the date of termination of the Revised PSA. *See Kauffman Stewart, Inc. v. Weinbrenner Shoe Co. Inc.*, 589 N.W.2d 499, 502-503 (Ct. App. Minn. 1999) (describing the mutual benefit of paid notice of termination periods: "appellant had access to respondent's services during the 60-day termination notice period (even if it chose not to use those services), and respondent was guaranteed a minimum income during that period in consideration of its commitment to serve appellant").

A principal error in WestLB's argument is the assumption that the term of the Agreement ended immediately when it delivered the June 30, 2010 letter. [WestLB's Objection at 6]. The fallacy of this assumption is highlighted by the terms of the Revised PSA. As stated above, the term of the agreement is the earlier of November 13, 2010 or a date no less than 45 days after the Debtor provides the appropriate written notice and payment of a Termination Fee. Nowhere in the agreement is a no-notice immediate termination sanctioned. In fact, WestLB's argument would render the termination notice provision of the agreement totally meaningless. Under WestLB's argument, the notice requirement is "duplicative" of the Termination Fee. Therefore, under this argument, the Debtor never has to provide notice of the termination as required by ¶2.b., but simply pay a Termination Fee.

Contrasted with the monthly management fee, the Termination Fee was to compensate BDRC 4Site for the loss of the remainder of the stated term (through November 13, 2010). The Termination Fee was not to compensate BDRC 4Site for services rendered prior to the expiration of the term. That was the role of the monthly management fee. Schedule 2 of the Revised PSA makes it clear that the monthly management fee and the Termination Fee are separate fees. In addition, paragraph 6 of the agreement makes clear the distinction between the monthly management fee and the Termination Fee. That paragraph clearly indicates that the conditions for payment of the monthly management fee are different from the conditions for payment of the Termination Fee. Under paragraph 6, if the Debtor terminates the agreement based on a default, "no Termination Fee shall be due or payable, provided, however, that [monthly management] fees payable through termination shall be payable."

WestLB's argument that the Termination Fee is a duplicate fee to the monthly management fee incurred prior to expiration of term runs counter to the language of the Revised PSA and should be rejected.

2. **BDRC 4Site is entitled to reimbursement of attorneys' fees "arising out of" or incurred "in connection with" performance of its duties under the Revised PSA and collection of amounts due thereunder.**

WestLB argues that BDRC 4Site has no right to reimbursement of legal expenses as a result of the Employment Order's amendment to provision 4.c of the Revised PSA, which changed BDRC 4Site's reimbursement of expenses in connection with rendering of Professional Services including, but not limited to "travel, legal, outside accounting and auditing, insurance, and similar services" to reimbursement of "any out-of-pocket expenses reasonably incurred by

5

BDRC 4Site in connection with the delivery of Professional Services, including but not limited to travel and similar services." [Objection at 8].

WestLB reads the amendment to expressly prohibit reimbursement of attorneys' fees incurred in the preparation of BDRC 4Site's Fee Application, arguing that such expenses were not incurred in the rendering of BDRC 4Site's "Professional Services," and that the Employment Order eliminated the ability of BDRC 4Site to seek legal expenses. *Id*. However, the language of the Revised PSA and Employment Order is not as restrictive as WestLB argues, and does not *exclude* attorneys' fees incurred by BDRC 4Site in seeking payment for services performed. The Employment Order expressly provides that "BDRC shall be compensated for its services and reimbursed for *any related expenses* in accordance with the Revised [PSA], as modified herein, subject to any other or further orders of the Court." Paragraph 4 of the Order, relied on by WestLB, does not limit such expenses to only travel and similar services, but expressly provides that "any out-of-pocket expenses" incurred by BDRC 4Site are reimbursement, "including <u>but not limited to</u>" travel and similar services. (Emphasis added). The Employment Order further requires BDRC 4Site, as part of its duties, to file "a final application seeking final approval of amounts paid to or requested by BDRC."[3] [Employment Order ¶¶ 3, 6]. In addition, the Revised PSA expressly provides that "Owner shall indemnify BDRC 4Site for, and hold it harmless against any loss, liability, claim or expense, *including attorneys' fees* (collectively "Losses"), arising out of or in connection with its duties under this Agreement . . ." [Revised PSA ¶ 7.b].

---

[3] Typically, the Debtor assists with fee applications for its professionals. But not only did the Debtor fail to pay amounts owing under the Revised PSA, but it refused to assist BDRC 4Site in the filing of its required fee application – thus necessitating BDRC 4Site's retention of counsel.

6

The attorneys' fees incurred by BDRC 4Site in filing its final fee application for approval of fees earned under the Revised PSA, as specifically ordered in the Employment Order, are clearly expenses "arising out of or in connection with" BDRC 4Site's duties under the Revised PSA and Employment Order and/or a "related expense" for which BDRC 4Site is entitled to reimbursement.

3. **BDRC 4Site became entitled to the Financing Fee upon its procurement of Strategic Partners exit financing, the amount of which fee can be determined by the Court.**

As evidenced by the Revised PSA and the Employment Application, the parties agreed, with Court approval, that BDRC 4Site would be paid a Financing Fee for "*procuring* either exit financing or new equity." [See Objection at 4 (quoting Schedule 2 of the Revised PSA and Employment Application at ¶ 6)]. WestLB's objection to the payment of the Financing Fee is primarily based on its argument that "procurement" of financing requires a closing or actual receipt of funds. [Objection at 4-5 ("it is indisputable that BDRC did not procure exit financing for Debtor;" "while BDRC argues that it essentially procured exit financing from Strategic Partners, the fact is that Strategic Partners never proceeded forward to provide the exit financing.")]

The Revised PSA, the Employment Application and the Employment Order do not define "procurement" of financing for purposes of entitlement to the Financing Fee. "Procurement" of is typically completed upon presenting an offer meeting the requirements and terms of the transaction, and is not dependent on the receiving party's acceptance or rejection of the offer over which the procurer has no control. See Fairbourn Commercial, Inc. v. American Housing Partners, Inc., 68 P. 3d 1038 (Utah Ct. App. 2003), affirmed by 94 P.3d 292 (Utah 2004) (holding

7

a real estate broker was entitled to commission upon "procuring" buyer even though transaction did not go through and closing did not occur, as parties could have agreed that commission was only due if closing occurred if that was the intent of their agreement); see also In re Tully, 202 B.R. 481, 484 (B.A.P. 9th Cir. 1996)( a broker "procures" a transaction when it presents a buyer who is ready, willing, and able to close the transaction on terms acceptable to the seller); In re Lady Baltimore Foods, Inc., 02-434328, 2004 WL 2192374 (Bankr. D. Kan. Aug. 13, 2004) (distinguishing that commissions are due upon procurement, not the date of closing).   In agreeing upon payment of a Financing Fee, the Debtor and BDRC 4Site did not require that a closing, completed transaction or exchange of funds was required, rather, the parties expressly agreed, with court approval, that all that was required from BDRC 4Site was "procurement."

BDRC 4Site "procured" exit financing when it obtained an offer from Strategic Capital Partners for the requisite exit financing, which offer was presented to Debtor, and which offer the Debtor represented to the Court had been accepted (and was therefore "acceptable").  In the Amended Disclosures Statement with Respect to Amended Plan of Reorganization of Easy Street Partners, LLC, Dated February 18, 2010 ("Amended Disclosures") Debtor describes that an acceptable offer of the Strategic Capital Partners, LLC ("SCP") offer was procured as a result of BDRC 4Site's efforts:

> . . . Debtor's principals and attorneys assisted BDRC in locating interested investors and provided extensive historical and prospective financial data to approximately (15) groups of potential investors.  None of the groups, except for the ultimate investor chosen, was willing to fund a plan which repaid the Allowed WestLB Secured Claim in full.
>
> Thus Partners and BDRC, along with counsel, determined to complete negotiations with [SCP].

> On January 13, 2010, Partners <u>executed a letter of intent ("LOI") with SCP</u>. SCP or an entity formed by SCP or an affiliate of SCP will be the plan funder (the "Plan Funder").
>  ***
> Partners <u>has negotiated a Funding Agreement</u>, under which an entity formed by SCP or such other person or entity acceptable to Partners ("Alternative Funder") will own 100% of the Reorganized Debtor.
>  ***
> The Funding Agreement commits the Plan Funder to fund approximately $6,000,000 on the Effective Date to be utilized as follows : . . .
>  ***
> Definitive agreements should be executed prior to the hearing on this Disclosure Statement . . .

[Amended Disclosures at 19-20]. As demonstrated by the language in the Amended Disclosures, BDRC 4Site "procured" SCP's exit financing offer which was accepted by Debtor, and BDRC 4Site is therefore entitled to the Financing Fee. Debtor's election not to go through with the negotiated Funding Agreement, and instead to have WestLB provide the exit financing, was a decision beyond BDRC 4Site's control which occurred <u>after</u> BDRC 4Site had earned the Financing Fee, and is immaterial to Debtor's obligation to pay the Financing Fee.

 WestLB further argues that even if BDRC 4Site earned the Financing Fee, it was only entitled to be paid such a fee if the Debtor "agreed with BDRC 4Site on the amount of Financing Fee BDRC 4Site had earned; and (ii) BDRC 4Site obtained subsequent approval from the Court for that fee." [Objection at 5]. WestLB discounts the fact that the Court approved Revised PSA clearly sets forth that BDRC 4Site would be paid a Financing Fee ("to be mutually agreed upon") and dismisses Debtor's request that BDRC 4Site perform under the parties' agreement as "not relevant." [Objection at 5] ("The Court only approved an agreement that gave BDRC 4Site the

9

right to try to reach an agreement with the Debtor in the future on an appropriate Financing Fee and to seek approval of that Financing Fee sometime in the future once a agreement had been reached;" "[t]he fact that Partners may have requested that BDRC 4Site undertake efforts to procure exit financing is not relevant to whether it is entitled to a Financing Fees under the Revised PSA.")  However, Debtor expressly disclosed its agreement and intention to pay BDRC 4Site the Financing Fee for "procurement of exit financing or new equity," the amount of which fee the parties agreed would be determined at a later date "at reasonable market rates," subject to Court approval.   [Employment Application ¶ 6].

WestLB's argument is that the Debtor can request a professional to perform work upon the promise of a fee, accept such work, but later refuse to pay because it didn't agree on a specific amount.  Fortunately, this type of game of "gotcha" is not sanctioned.  First, contrary to WestLB's interpretation, the Employment Application does not provide that BDRC 4Site would be entitled to payment of a Financing Fee upon "procuring" financing only "*if*" the parties negotiated and agreed upon a precise amount reflecting a stipulated "reasonable market rate" for the Financing Fee.  The failure to set a dollar amount is not fatal to formation of the agreement, particularly when the parties agreed that the amount of the fee would be supplied later based on the agreed up parameters (such as reasonable market rate as approved by the Court).  See Plateau Min. Co. v. Utah Div. of State Lands & Forestry, 802 P.2d 720, 726 (Utah 1990) (" . . . an agreement which sets a price that is determined by factors outside the contract, such as a market price or the price in another contract, is valid and enforceable); Ferris v. Jennings, 595 P.2d 857, 859 (Utah 1990) ("A contract is not fatally defective as to price if there is an agreement as to

10

some formula or method for fixing it."); In re Dow Corning Corp., 244 B.R. 718, 721 (Bankr. E.D. Mich. 1999) (the Plan provided that the rate of interest on a priority tax claim "shall be determined, based upon then-existing market rates, as of the Effective Date," the Court held that while the agreed upon rate was generally agreed upon but somewhat vague, it could be reasonably supplied by the Court; "if the parties cannot agree on what the appropriate market rate of interest is, the matter can be brought before the Court for resolution.").

Likewise, the fact that the Court had not approved a precise amount stipulated to by the parties as the "reasonable market rate" does not prevent the Court from determining and supplying a reasonable fee on its own accord based on the application presented by BDRC 4Site, as even stipulated fees are subject to court approval based on the Court's determination of "reasonableness." In re Concept Clubs, Inc., 125 B.R. 634, 636 (Bankr. D. Utah 1991)("Notwithstanding the terms of the contractual arrangement between the debtor and the professional, the fees to be paid are implicitly subject to alteration" by the Court based upon the "reasonableness standard."); In re Gillett Holdings, Inc., 137 B.R. 475, 478 (Bankr. D. Colo. 1992)("All fees of professionals charged to and paid by the estate are subject to a "reasonableness test"). Through its fee application, BDRC 4Site is requesting this determination by the Court.

4. **BDRC 4Site's out-of-pocket expenses incurred in procuring exit financing are included in the requested Financing Fee, or, in the alternative, are requested under 11 U.S.C. § 303.**

As explained in its Fee Application, BDRC 4Site listed particular out-of-pocket costs it incurred in "procuring" exit financing, which costs it acknowledges were intended to be covered

by the Financing Fee. [Fee Application ¶ 18]. BDRC 4Site is not seeking reimbursement of the out-of-pocket expenses incurred in procuring exit financing as a separate category of expensed under the Revised PSA or Employment Order. [Compare Objection at 7]. Rather, BDRC 4Site explained that it will deduct these out-of-pocket costs from the requested two percent Financing Fee. [Fee Application ¶ 23, fn 2 ("After deduction of out of pocket costs incurred in the exit financing effort on behalf of the Debtor, the compensation portion of this fee would be $78,790.95" (two percent fee would total $86,792.20)].

In the event the Court determines that the Financing Fee was not preapproved, BDRC 4Site included the breakdown of the costs and expenses incurred in procuring exit financing so that the Court may make a determination of reasonable compensation for services actually rendered under 11 U.S.C. § 330. [Fee Application at ¶16]. By including the expenses in the Fee Application, BDRC 4Site was simply complying with § 330, which requires BDRC 4Site to disclose the "nature, the extent and the value of such services, taking into account all relevant factors" including a breakdown of time spent and rates charged for such services. [Id.]

## CONCLUSION

For the foregoing reasons, BDRC 4Site requests that the Court approve its Fee Application in its entirety, including:

(A) Allowing compensation previously paid to BDRC 4Site for the Co-Management/Advisory Fee for December, 2009 through June, 2010 of $181,000.

(B) Awarding BDRC 4Site compensation for the unpaid Co-Management/Advisory Fee for the partial month of November, 2009 of $13,033.

(C)     Awarding BDRC 4Site compensation for the unpaid Co-Management/Advisory Fee for the 45 day prior notice period starting from June 30, 2010 of $34,500.

(D)     Awarding BDRC 4Site the requisite Termination Fee of $46,000.

(E)     Awarding BDRC 4Site reimbursable expenses of $17,981.32, and requiring payment of $527.00.

(F)     Awarding BDRC 4Site its attorneys' fees and costs related to this application.

(G)     Awarding BDRC 4Site a Financing Fee of $86,792.20.

Providing such other and further relief as the Court deems necessary or proper

DATED this 19th day of August, 2010.


                                                Miller Guymon, P.C.

                                                */s/ Lauren Y. Parry*
                                                Blake D. Miller
                                                Lauren Y. Parry
                                                *Attorneys for BDRC 4Site*