Annette W. Jarvis (1649)
Cameron M. Hancock (5389)
Scott A. Cummings (11443)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
        hancock.cameron@dorsey.com
        cummings.scott@dorsey.com

Richard W. Havel (10759)
**SIDLEY AUSTIN LLP**
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
Email: rhavel@sidley.com

*Attorneys for WestLB, AG*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. 09-29905 |
| EASY STREET HOLDING, LLC, *et al.*, | ) | Jointly Administered with Cases |
| | ) | 09-29907 and 09-29908 |
| Debtors. | ) | |
| | ) | Chapter 11 |
| Address: 201 Heber Avenue | ) | |
| Park City, UT 84060 | ) | [FILED ELECTRONICALLY] |
| | ) | |
| Tax ID Numbers: | ) | |
| 35-2183713 (Easy Street Holding, LLC), | ) | |
| 20-4502979 (Easy Street Partners, LLC), and | ) | |
| 84-1685764 (Easy Street Mezzanine, LLC) | ) | |
| | ) | |

## WESTLB, AG'S SUPPLEMENTAL OBJECTION TO FINAL FEE APPLICATION OF CO-MANAGER, BDRC 4SITE, LLC FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES

WestLB, AG ("WestLB"), respectfully submits this supplemental objection to the Final

Fee Application of Co-Manager BDRC 4site, LLC for Compensation for Services and

Reimbursement of Expenses [Docket No. 625] (the "BDRC Fee Application") filed by BDRC

4Site, LLC ("BDRC").  By this objection, WestLB requests that the Court disallow BDRC's

request for a success fee (the "Financing Fee") in connection with its efforts to obtain exit

financing for Easy Street Partners, LLC ("Partners") because no contract exists between Partners

and BDRC for the payment of the Financing Fee.  To the extent the Court should rule that such a

contract does exist, the Court should nonetheless disallow the Financing Fee because BDRC did

not fulfill its contractual obligations and/or it did not actually procure financing for Partners and

BDRC did not provide a benefit to the estate.  Further, WestLB requests that the Court disallow

BDRC's fees to the extent they are duplicative, and deny BDRC's requests for reimbursement of

certain expenses including legal fees for which BDRC is not entitled to reimbursement.  In

further support hereof, WestLB states as follows:

## BACKGROUND

1.      On September 14, 2009, Partners filed a voluntary petition for relief under chapter

11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the

"Court").  Partners' bankruptcy case is jointly administered with those of Easy Street Mezzanine,

LLC and Easy Street Holding, LLC.

2.      On or around November 13, 2009, Partners filed a motion seeking to employ

BDRC as a co-manager [Docket No. 148] (the "BDRC Employment Application").

3.      With respect to the payment of any Financing Fee, the BDRC Employment

Application provided that a "fee for procuring either exit financing or new equity would be

negotiated and determined at a later date at reasonable and market rates, subject to this Court's

approval at a later date if applicable."  BDRC Employment Application at ¶ 6.

4.      On or around November 13, 2009, BDRC and Partners entered into a professional services agreement, which was subsequently revised by order of the Court (the "Revised PSA").

5.      Schedule 1 to the Revised PSA enumerates certain services that BDRC agreed to provide Partners and for which it would be compensated on a monthly basis (the "Professional Services").

6.      Schedule 2 to the Revised PSA lists the services for which BDRC would be compensated as well as the amount of compensation it would receive.  Consistent with the BDRC Employment Application, the last item listed on Schedule 2 provides that BDRC would receive a "[f]ee to be mutually agreed upon" for the "PROCUREMENT OF EXIT FINANCING AND/OR NEW EQUITY."  Revised PSA at Schedule 2.

7.      BDRC and Partners never agreed on a fee for the procurement of exit financing or of new equity.

8.      On December 4, 2009, the Court executed an order authorizing Partners to employ BDRC as a co-manager effective as of November 13, 2010 [Docket No. 200] (the "Employment Order").  A copy of the Employment Order is attached hereto as Exhibit 1.  The Employment Order made certain changes to the Revised PSA, including the removal of any entitlement to the reimbursement of legal fees incurred by BDRC.

9.      In connection with Partners' reorganization efforts, WestLB, as the secured lender in the case, ultimately provided the financing necessary to fund Partners' plan of reorganization.

10.      On July 2, 2010, the Court entered its Order Confirming Amended Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG Dated June 16, 2010 [Docket No. 600].

11.     On July 15, 2010, BDRC filed the BDRC Fee Application.

12.     On August 12, 2010, WestLB filed its initial objection to the BDRC Fee
Application [Docket No. 663].

13.     On August 19, 2010, BDRC filed a reply brief in support of its fee application
[Docket No. 671] (the "Reply Brief").

14.     On August 24, 2010, the Court held an initial hearing on the BDRC Fee
Application at which time the Court instructed the parties to file additional briefing and
scheduled a final hearing for October 19, 2010.

## ANALYSIS

The BDRC Fee Application improperly seeks the allowance of fees and reimbursement
of certain expenses that are not provided for under the Court-approved Revised PSA and which
are not allowable as a matter of law.   Specifically, WestLB objects to BDRC's request for (1)
allowance of the Financing Fee, (2) allowance of certain other fees that are duplicative, and (3)
reimbursement of certain expenses detailed below.  Part I of this Objection sets forth why the
Financing Fee should be disallowed.  As discussed in Part I(1), there is no contract providing for
the payment of a Financing Fee.  Further, even if there is an enforceable contract, BDRC is not
entitled to payment of the Financing Fee because, as discussed in Part I(2) and Part I(3) below, it
did not comply with the terms of any such contract and/or there was no benefit to the estate.  In
Part II, WestLB maintains that the BDRC Fee Application improperly seeks payment of fees that
are duplicative and improper under the Revised PSA and which, therefore, must be disallowed
under 11 U.S.C. § 330(a)(4)(A)(i).  Finally, in Part III of this Objection, WestLB sets forth its
objection to the reimbursement of certain expenses.

## I.        The Requested Financing Fee Should Not Be Allowed by the Court

### 1.        No Contracts Exists for the Payment of the Requested Financing Fee

BDRC is not entitled to the Financing Fee because no contract exists for its payment.  It

is a longstanding principal of Utah law that "an agreement cannot be enforced if its terms are

indefinite."  *Prince, Yeates & Geldzahler  v. Young*, 94 P.3d 179, 183 (Utah 2004 (internal

quotations omitted).  Additionally, "when there is simply some nebulous notion in the air that a

contract might be entered into in the future, the court cannot fabricate the kind of a contact the

parties ought to have made an enforce it."  *Id*. (internal quotations omitted).  "So long as there is

any uncertainty or indefiniteness, or future negotiations or considerations to be had between the

parties, there is not a completed contract.  In fact, there is no contract at all."  *Id*. at 184 (internal

quotations omitted); *see also Richard Barton Enters. v. Tsern*, 928 P.2d 368,  373-74 (Utah

1996) (noting that "when parties have not agreed on a reasonable price or a method for

determining one, the agreement is too indefinite and uncertain for enforcement" (internal

quotations omitted)).

In *Prince Yeates*, a former associate brought a breach of contract claim against his former

law firm based on an oral agreement in which the law firm agreed to pay the former associate

"fair and equitable" fee.  *See Prince Yeates*, 94 P.3d at 181-82.  The Court found that this alleged

agreement was too indefinite to create a contract and denied the former associate's claim.  *See id*.

at 184.  This is precisely the situation present with BDRC.

The Revised PSA, the employment agreement that was approved as modified by the

Court in the Employment Order, is the sole document that governs the compensation that BDRC

may receive for services to the estate.  *See* Employment Order at ¶ 3 ("BDRC shall be

compensated for its services and reimbursed for any related expenses in accordance with the [Revised PSA]. . . . ").[1]  *See* Revised PSA at Schedule 2.  This document contains no agreement for the payment of a financing fee, but rather only makes an indefinite and statement that such a fee would be later be "mutually agreed upon" at some later date in the event that financing was procured by BDRC.  The fact that the Financing Fee is dependant on future negotiations means, under Utah law, that there is no contract for the payment of the Financing Fee.

It is true that under Utah law parties may agree to set a price or interest rate based on factors outside the contract, and that such agreements are enforceable.  *See Plateau Min. Co. v. Utah Div. of State Lands and Forestry*, 802 P.2d 720, 726 (Utah 1990) (approving agreement that made reference to then applicable federal royalty rate for mining leases).[2]  In such situations, however, the contract must "'specify a practicable method by which the amount can be determined by the court *without any new expression by the parties themselves*.'"  *Id.* (emphasis added) (quoting 1 A. Corbin, *Corbin on Contracts* § 98, at 433-34 (1965)).  The Revised PSA in this case contains no such enforceable provision as it does not make reference to any outside factor that can be relied on to determine the amount of the Financing Fee.  Rather, the express terms of the Revised PSA required future negotiations between the parties concerning the

---

[1]    BDRC's attempted reliance on the BDRC Employment Application in its reply brief as a basis for determining the amount of the Financing Fee is improper.  It is the Revised PSA, the document that was modified and approved by the Court in the Employment Order, that governs.  While the BDRC Employment Application may be relevant to the extent that it is consistent with the Employment Order, it is not relevant to establish employment terms that were not approved by the Court as part of the Employment Order.

[2]    BDRC's reliance on cases like *Ferris v. Jennings*, 595 P.2d 857 (Utah 1990) and *In re Dow Corning Corp.*, 244 B.R. 718 (Bankr. E.D. Mich. 1999) in its reply brief is likewise misguided.  As in *Plateau Mining*, each of these cases involved a situation where the parties agreed to look to a specified rate outside of the contract, such as a definite market rate, to determine a price in their contracts.  Again, BDRC has cited to nothing in the Revised PSA that refers to any sort of market rate or other specific method for determining the amount of the Financing Fee.  Rather, BDRC asks this Court to create a rate on its own.  None of the cases that BDRC cites in its reply supports the Court creating a rate where the parties did not.

Financing Fee.  The need for such future negotiations between the parties establishes as a matter of law that an enforceable contract with respect to the payment of any sort of Financing Fee does not exist.  *See Prince Yeates*, 94 P.3d at 184.  Further, 11 U.S.C. §§ 327 and 330, even if such an agreement had been reached it would not have been enforceable absent Court approval after notice and an opportunity for interested parties to be heard, which never occurred.  Thus, it is evident that no agreement exists for the payment of a Financing Fee to BDRC, and the Court should deny the BDRC Fee Application to the extent it seeks payment of such.

      2.      **BDRC Did Not Comply With the Express Revised PSA Terms**

Even if the Court were to find that the Revised PSA provides for the payment of some sort of Financing Fee, BDRC has not complied with the required terms sufficient to qualify for payment for two reasons: (1) BDRC failed to obtain Court approval of the Financing Fee as required under law and the express terms of the Revised PSA; and (2) BDRC did not procure exit financing for Partners.  Each of these points are discussed below.

      (a)      **Failure to Obtain Court Approval**

In the Employment Order, the Court approved BDRC's employment as set forth in the Revised PSA and, therefore, its ability to be compensated is limited to the terms of that employment.  *See* 11 U.S.C. §§ 327 and 328(a); *see also In re Husting Land & Dev., Inc.* 255 B.R. 768 (denying administrative expense claim to unsecured creditor for work done out of the ordinary course of debtor's business even though work benefited the estate).  Under the express terms of the Court-approved Revised PSA, BDRC only had a right to seek a Financing Fee if (i) Partners agreed with BDRC on the amount of the Financing Fee that BDRC would be paid if it undertook the task of procuring financing; and (ii) BDRC obtained subsequent approval from the

Court for that fee before BDRC undertook the task of procuring financing.  *See* Revised PSA at

Schedule 2.  Here, neither of those conditions were met.  Partners never agreed with BDRC on

the amount of a Financing Fee, but more important, the Court never approved such a fee.

Indeed, approval of a Financing Fee was never sought prior to any attempt to obtain financing or

at any other time.  Not only does prior Court approval of the Financing Fee bar its allowance

under the terms of the Revised PSA, but also under well-established bankruptcy law requiring

professionals to obtain Court approval of their employment and fully disclose all terms of that

employment.  *See, e.g.,* 11 U.S.C. §§ 327 and 330(a); Fed. R. Bankr. P. 2014 and 2016; *Lamie v.

United States Trustee*, 540 U.S. 526 (2004); 3 COLLIER ON BANKRUPTCY, ¶ 330 (15th ed. rev.

2014) ("The general rule is that a professional not employed in accordance with Rule 2014 is not

entitled to compensation.").[3]

### (b)      Failure to Obtain Exit Financing

The Revised PSA clearly states that a Financing Fee could be paid only for the

"*PROCUREMENT* OF EXIT FINANCING AND/OR NEW EQUITY."  Schedule 2 to Revised

PSA (emphasis added).[4]  Thus, pursuant to the express terms of its contract with Partners, BDRC

could only request a Financing Fee in the event that it actually procured exit financing for

Partners.

---

[3]    Note that BDRC has the burden to establish that its request for a Financing Fee complied with Federal Rule of
Bankruptcy Procedure 2014, that this term of its employment was approved by the Court, and that it is
allowable as compensation under 11 U.S.C. § 330.  3 COLLIER ON BANKRUPTCY ¶ 330 (15th ed. rev.  2008).

[4]    This plain language is consistent with the BDRC Employment Application, which likewise provided that BDRC
could be entitled to a Financing Fee "for *procuring* either exit financing or new equity."  BDRC Employment
Application at ¶ 6 (emphasis added).

It is indisputable that BDRC did not procure exit financing for Partners. Although BDRC argues that it essentially procured exit financing from Strategic Partners, the fact is that Strategic Partners never proceeded forward to provide the exit financing.[5] Rather, WestLB ultimately provided the exit financing necessary to fund Partners' plan of reorganization after no other funder was willing to fund Partners' plan of reorganization on acceptable terms, and did so independent of BDRC's efforts. Indeed, had Strategic Partners actually offered exit financing on terms that were acceptable and feasible, WestLB would not have needed to step in and fund Partners' plan of reorganization. BDRC did not procure exit financing for Partners. Thus, under the plain language of the Revised PSA, BDRC is not entitled to a Financing Fee.

The fact that Partners may have requested that BDRC undertake efforts to procure exit financing is not relevant to whether it is entitled to a Financing Fee under the Revised PSA. Any such request would be subject to the terms and conditions of the Revised PSA and would not have enhanced or altered BDRC's contractual rights. The Revised PSA expressly provides that a request for a Financing Fee would only be agreed to if it was approved by the Court and BDRC actually procured exit financing for Partners. This did not happen.

---

[5]    BDRC cites to a number of cases in its reply brief that it contends supports its claim that the presentment of Strategic Partners entitles BDRC to a Financing Fee. None of these cases is applicable to this case as each is based on strikingly different facts and/or applicable law. *Fairbourn Comm., Inc. v. Am. Housing Partners, Inc.*, 68 P.3d 1038 (Ut. Ct. App. 2003) involved the approval of a broker's contract that entitled the broker to a commission in the event he was able to "procure or present" a buyer willing to purchase on specified terms and conditions specifically set forth in the broker contract. The Revised PSA does not contain any such provisions. *In re Tully* 202 B.R. 481 (B.A.P. 9th Cir. 1996) and *In re Lady Baltimore Foods, Inc.*, Case No. 02-43428, 2004 WL 2192374 (Bankr. D. Kan. Aug. 13, 2004) are bankruptcy cases dealing solely with whether a fee for work performed pre-petition but paid post-petition is to be considered to have been earned before the bankruptcy. Further, both of these cases involved a situation where a broker found a buyer who agreed to a sale and placed money in escrow. The debtor then filed for bankruptcy and the sale closed after the bankruptcy had been filed. This is simply not the case and BDRC can cite to nothing that will permit it to rewrite its contract in order to obtain a benefit for which it never bargained.

Further, BDRC assumed the risk that it might not be paid a Financing Fee, despite

substantial work in trying to procure exit financing, either because (i) as here, BDRC's efforts

might be unsuccessful; (ii) BDRC and Partners might not agree upon a Financing Fee; or (iii) the

Court might not ultimately approve a Financing Fee.  BDRC cannot now attempt to rewrite the

Revised PSA to obtain a benefit for which it never bargained, which it does not deserve, and

which was never approved by the Court.  Because BDRC expressly agreed that it would only

seek Court approval to receive a Financing Fee if it actually succeeded in procuring exit

financing (which it did not), its request for a Financing Fee in any amount should be denied.

**3.       The Financing Fee Cannot be Allowed as an Administrative Expense
        Because There Was No Benefit to the Estate**

Finally, even if BDRC can prove that it has a contract to be paid a Finalizing Fee, that

such contract was approved by the Court and that it has complied with the contract (all denied),

the Court should nonetheless disallow the Financing Fee because there was no consideration in

regard to that Fee that provided a benefit to the estate.

Under the express terms of 11 U.S.C. § 328(a), the Court always has the right and in fact

has a duty to reevaluate fee arrangements to determine, in particular, whether they benefit the

estate.  *In re Concept Clubs*, 125 B.R. 634, 636 (Bankr. D. Utah 1991) *cited in* BDRC's Reply

Brief at 11.  Thus, even if there were a Financing Fee contract, the Court may nonetheless

disallow the Financing Fee, and here it should do so because there was no benefit to the estate.

A showing  of benefit to the estate is a prerequisite to the allowance of fees under 11

U.S.C. § 330(a) and also to the allowance of administrative expense priority under 11 U.S.C. §

503(b).  Furthermore, under both of these sections, BDRC has the burden to show that services

for which it claims the Financing Fee provided an actual benefit to the estate.  *See, e.g., Rubner*

-10-

*& Kutner, P.C. v. United States Trustee (In re Lederman Enters., Inc.)*, 997 F.2d 1321 (10th Cir. 1993) (fees cannot be allowed as an administrative expense unless services provide a benefit to the estate); *accord Peters v. Pikes Peak Musicians Assoc.*, 462 F.3d 1265 (10th Cir. 2006) (applying this standard under 11 U.S.C. § 503(a)(1) (citing *In re Commercial Fin. Servs., Inc.*, 246 F.3d 1291, 1293-96 (10th Cir. 2001)); I*n re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988); *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir. 1976)).  To the extent that BDRC even has a right to the Financing Fee under the Revised PSA, BDRC simply cannot show that allowance of such a fee as an administrative expense is appropriate in this case inasmuch it supplied no consideration that was beneficial to the estate.  WestLB provided financing as a result of BDRC's failure to procure acceptable financing.

## II.      BDRC is Improperly Requesting Duplicative Fees

The Court must deny the BDRC Fee Application to the extent that it seeks duplicative fees.  *See* 11 U.S.C. § 330(a)(4)(A)(i).  The $46,000 penalty that BDRC requests for its termination is duplicative of $34,500 in fees that it claims it is entitled to 45-days worth of services that it did not provide.  At least the $34,500 must be disallowed under Section 330(a)(4)(A)(i) as duplicative of the $46,000 penalty.

The Revised PSA states that if the agreement is terminated "before the expiration of term" BDRC could collect a termination penalty equal to "two (2) times the then current Co-Management/Advisory fee."  Revised PSA at Schedule 2.  BDRC concedes that the term of the Revised PSA was "the earlier of November 13, 2010 or 45 days after the notice of termination. *See* BDRC Reply at 4.  Thus, the Revised PSA explicitly provides for a penalty payment in a set amount should the Revised PSA be terminated early, which is exactly what happened when

Partners terminated the Revised PSA on June 30, 2010 (i.e., prior to the November 13, 2010,

deadline).

Here, BDRC is seeking this termination fee, in the amount of $46,000, *plus* $34,500 in

fees, which equals 45 days worth of service that it did not provide (the basis for the 45 days

worth of fees is that it did not receive 45 days notice of its termination).  Not only were the

services for which it seeks compensation not provided and, thus not actual, necessary or

reasonable (and thus must be disallowed under 11 U.S.C. § 330(a)(1)(A)), but they are not

compensable under the express terms of the Revised PSA.  The Revised PSA does not require

Partners or any other party to compensate BDRC for any amount of time remaining on the term

of the Revised PSA, regardless of whether the Revised PSA was terminated early or notice was

provided.  BDRC is simply asking for duplicate penalties for its termination, and this cannot be

allowed under § 330(a)(4)(A)(i).

### III..    BDRC is Not Entitled to Reimbursement of Certain Expenses

#### 1.      Exit Financing Expenses are Not Allowable

BDRC is seeking reimbursement of various expenses  that it incurred in connection with

its efforts to obtain exit financing.  *See* BDRC Fee Application at ¶ 18.  Specifically, BDRC

claims it incurred $2,441.25 in printing costs (at the exorbitant rate of $0.75 per page), $560 for

overnight shipping expenses, and non-detailed "travel expenses in excess of $5,000."[6]  BDRC

Fee Application at ¶ 18(A)-(C).  These expenses, however, are not allowable under the Court-

approved Revised PSA which  provides that Partners would reimburse BDRC only for "out-of-

---

[6]    BDRC should be required to disclose the exact amount of its travel expenses related to its efforts to procure exit
financing so that its fee application can be properly evaluated.

pocket expenses reasonably incurred by BDRC 4Site <u>in connection with the delivery of the</u>

<u>Professional Services</u>, including but not limited to, travel and similar services." Revised PSA at

¶ 4.c, as amended by the Employment Order (emphasis added). Efforts to obtain exit financing

are not included among the enumerated services listed on Schedule 1 of the Revised PSA. Thus,

BDRC has no basis for claiming that it is entitled to the reimbursement of any expenses incurred

in connection with its efforts to obtain exit financing.

Indeed, BDRC concedes that the Revised PSA only provided for the payment of expenses

related to the enumerated Professional Services. Specifically, BDRC admits that the "expected

[Financing Fee] was intended to cover such costs." BDRC Fee Application at ¶ 18. Thus,

BDRC concedes that the expenses it incurred in connection with its efforts to obtain exit

financing were to be compensated, if at all, by payment of the Financing Fee. As discussed

above, BDRC is not entitled to the Financing Fee. Therefore, BDRC is not entitled to

reimbursement of any expense that it incurred in connection with its efforts to obtain exit

financing.[7] To the extent any such expense has already been paid, BDRC should be required to

disgorge such payments.

### 2.  BDRC is Not Entitled to Payment of Its Attorneys' Fees

BDRC is seeking reimbursement of an undisclosed amount of attorneys' fees incurred in

connection with the preparation and filing of the BDRC Fee Application. *See* BDRC Fee

Application at 9. This expense, however, is not allowable under the terms of employment

approved by the Court or otherwise.

---

[7]   Any reliance on 11 U.S.C. § 330 for payment of these expenses should be denied. BDRC cannot show how its
failure to obtain financing benefited Partners' bankruptcy estate.

The Revised PSA originally provided that Partners would reimburse BDRC for "out-of-pocket expenses reasonably incurred by BDRC 4Site in connection with the delivery of the Professional Services, including, but not limited to, travel, legal, outside accounting and auditing, insurance, and similar services."  Revised PSA at ¶ 4.c.  This provision, however, was subsequently amended by Court in the Employment Order to read that Partners would reimburse BDRC only for "the delivery of the Professional Services, including but not limited to, travel and similar services."  Employment Order at ¶ 4.  Pursuant to the modifications that the Court made to the Revised PSA, BDRC has no right to reimbursement for any legal expenses incurred in connection with any work it did on behalf of Partners.  Therefore, under the plain language of the Revised PSA, as amended by the Employment Order, BDRC has no right to be reimbursed for any legal fees including those fees incurred in connection with the BDRC Fee Application.[8]

---

[8]   Even under the Revised PSA before it was amended by the Employment Order, BDRC would have only been entitled to reimbursement of legal fees incurred in connection with the Professional Services.  The Professional Services includes only those items listed on Schedule 1 to the Revised PSA.  The preparation and filing of a fee application in the bankruptcy case is not one of the enumerated services set forth on Schedule 1.  There is no other provision in the Revised PSA that provides for the payment of BDRC's legal fees incurred in connection with its efforts to obtain approval of its fees from the Bankruptcy Court.  Thus, even under the Revised PSA before it was amended by the Employment Order, BDRC could not have been entitled to payment of its legal fees.

## CONCLUSION

For the reasons discussed herein, the Court should deny the BDRC Fee Application to the extent it seeks payment of a Financing Fee, payment for 45 days worth of service after the Revised PSA was terminated, the reimbursement of any expense incurred in connection with BDRC's efforts to obtain exit financing, and the payment of any legal fees.  Further, to the extent disallowed fees or expenses have already been paid to BDRC, BDRC should be ordered to disgorge such payments.  WestLB requests such other and further relief as this Court deems just and proper.

DATED this 17th day of September, 2010.

DORSEY & WHITNEY LLP

 /s/ Scott A. Cummings
Annette W. Jarvis
Cameron M. Hancock
Scott A. Cummings
     and
Richard W. Havel
SIDLEY & AUSTIN LLP
*Attorneys for WestLB, AG*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2010, the foregoing *WestLB, AG's Supplemental Objection to Final Fee Application of Co-Manager, BDRC 4Site, LLC For Compensation For Services and Reimbursement of Expenses* was filed with the Court and served in the parties listed below by the Court's CM/ECF service:

- Troy J. Aramburu      taramburu@joneswaldo.com; rhuot@joneswaldo.com; jpollard@joneswaldo.com
- Kenneth L. Cannon      kcannon@djplaw.com; khughes@djplaw.com
- Bastiaan Coebergh      coebergh@wasatchlaw.com; oborn@wasatchlaw.com; brian@wasatchlaw.com
- George B. Hofmann      gbh@pkhlawyers.com; dh@pkhlawyers.com
- Mary Margaret Hunt      hunt.peggy@dorsey.com; brown.patricia@dorsey.com; smith.ron@dorsey.com; slc.lit@dorsey.com
- Annette W. Jarvis      jarvis.annette@dorsey.com; smith.ron@dorsey.com; slc.lit@dorsey.com; brown.patricia@dorsey.com
- Lon A. Jenkins      lajenkins@joneswaldo.com; krichardson@joneswaldo.com; ecf@joneswaldo.com; rhuot@joneswaldo.com
- Michael R. Johnson      mjohnson@rqn.com; sglendening@rqn.com; docket@rqn.com
- Anthony C. Kaye      kaye@ballardspahr.com; swand@ballardspahr.com; saltlakedocketclerk@ballardspahr.com
- Benjamin J. Kotter      kotter.benjamin@dorsey.com; smith.ron@dorsey.com; brown.patricia@dorsey.com; slc.lit@dorsey.com
- David E. Leta      dleta@swlaw.com; wsmart@swlaw.com
- Adelaide Maudsley      maudsley@chapman.com; jemery@chapman.com
- Steven J. McCardell      smccardell@djplaw.com; khughes@djplaw.com
- Blake D. Miller      miller@mmglegal.com
- John T. Morgan      john.t.morgan@usdoj.gov; james.gee@usdoj.gov
- David W. Overholt      doverholt@rsolaw.com; abachman@rsolaw.com
- Douglas J. Payne      dpayne@fabianlaw.com; jshowalter@fabianlaw.com
- Jessica G Peterson      jpeterson@djplaw.com
- Knute Rife      karife@rifelegal.com
- Jeffrey L. Shields      jlshields@cnmlaw.com; njpotter@cnmlaw.com
- Jeffrey W. Shields      jshields@joneswaldo.com; rhuot@joneswaldo.com
- Bradley L. Tilt      btilt@fabianlaw.com; rmellor@fabianlaw.com

- United States Trustee  USTPRegion19.SK.ECF@usdoj.gov
- Kim R. Wilson          bankruptcy_krw@scmlaw.com

Dated: September 17, 2010.

/s/ Scott A. Cummings

Exhibit 1

**The below described is SIGNED.**

Dated: December 04, 2009 _____
                                R. KIMBALL MOSIER
                                U.S. Bankruptcy Judge

_____

Kenneth L. Cannon II (kcannon@djplaw.com) (3705)
Steven J. McCardell (smccardell@djplaw.com) (2144)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000/Fax:  (801) 415-3500

Michael V. Blumenthal (mblumenthal@crowell.com) (admitted pro hac vice )
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000/Fax:  (212) 223-4134

Counsel for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | |
| | |
| EASY STREET HOLDING, LLC, *et al.*, | Bankruptcy Case No. 09-29905 |
| | Jointly Administered with Cases |
| | 09-29907 and 09-29908 |
| | |
| Address:  201 Heber Avenue | Chapter 11 |
| Park City, UT 84060 | |
| | Honorable R. Kimball Mosier |
| Tax ID Numbers: | |
| 35-2183713 (Easy Street Holding, LLC), | |
| 20-4502979 (Easy Street Partners, LLC), and | **[FILED ELECTRONICALLY]** |
| 84-1685764 (Easy Street Mezzanine, LLC) | |

## ORDER GRANTING DEBTOR'S APPLICATION TO EMPLOY
## BDRC 4 SITE, LLC AS CO-MANAGER

On December 3, 2009, the Application of Easy Street Partners, LLC (the "Application,"

Docket No. 148 herein), as supplemented by the Notice of Revised Professional Services

SLC_505779.1

Filed: 12/03/09

Agreement Between Easy Street Partners, LLC and BDRC 4 Site, LLC, (the "Revised

Professional Services Agreement, Docket No. 166 herein) for an order authorizing Easy Street

Partners, LLC (the "Debtor") to employ BDRC 4 Site, LLC ("BDRC") as a co-manager to assist

the Debtor in managing its business operations and restructuring its obligations, effective as of

November 13, 2009, came before the Court for hearing.  Appearances were made as noted on the

record of the hearing.  The Court made its findings and conclusions on the record of the hearing,

which findings and conclusions are hereby incorporated into this Order.

     Now, therefore, IT IS HEREBY ORDERED:

1.     The Application is granted, as modified herein.

2.     The Debtors are authorized to retain and employ BDRC as a co-manager as set

forth in the Application, as modified herein.

3.     BDRC shall be compensated for its services and reimbursed for any related

expenses in accordance with the Revised Professional Services Agreement, as modified herein,

subject to any other or further orders of the Court.

4.     Paragraph 4.c. of the Revised Professional Services Agreement with BDRC is

hereby modified to read follows:  "Owner also agrees to reimburse BDRC 4Site for any out-of-

pocket expenses reasonably incurred by BDRC 4Site in connection with the delivery of the

Professional Services, including but not limited to, travel and similar services."

5.     On or before the fifteenth (15th) calendar day of each month for which BDRC is

engaged, the Debtor shall file with the Court a report describing, on a project basis, the services

performed by BDRC during the prior month.

Case 09-29905    Doc 703    Filed 09/07/10    Entered 09/07/10 21:34:41    Desc Main
Document    Page 3 of 4

6.    A final application seeking final approval of amounts paid to or requested by

BDRC shall be filed with the Court and noticed to parties in interest.

-------------------END OF ORDER---------------------



3

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Order Granting Debtor's

Application to Employ BDRC 4 Site, LLC as Co-Manager was served via first-class mail,

postage prepaid, on the _____ day of December, 2009, on the following:

Michael V. Blumenthal
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY  10022

Kenneth L. Cannon II
Durham Jones & Pinegar, P.C.
P O Box 4050
Salt Lake City, UT  84110-4050

Steven J. McCardell
Durham Jones & Pinegar, P.C.
P O Box 4050
Salt Lake City, UT  84110-4050

John T. Morgan
Office of the United States Trustee
405 South Main Street, Suite 300
Salt Lake City, UT 84111

Lon A. Jenkins
Jones Waldo Holbrook & McDonough
170 South Main Street, Suite 1500
Salt Lake City, UT  84101

Adelaide Maudsley
Chapman & Cutler LLP
201 South Main Street, Suite 2000
Salt Lake City, UT  84111-2298

Annette W. Jarvis, Esq.
Dorsey & Whitney LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685

Richard W. Havel, Esq.
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA  90013-1010

_____

4

SLC_505779.1