Blake D. Miller (4090)
Lauren Y. Parry (11420)
**MILLER GUYMON, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
e-mail: miller@millerguymon.com
e-mail: parry@millerguymon.com

Attorneys for BDRC 4Site, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**EASY STREET HOLDING, LCC, et al.,**<br><br>Debtors. | Bankruptcy Case No. 09-29905<br>(Jointly Administered with Cases 09-29907 and 09-29908)<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier<br><br>(Filed Electronically) |

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO WESTLB'S SUPPLEMENTAL OBJECTION TO THE FINAL FEE APPLICATION OF CO-MANAGER, BDRC 4SITE, LLC FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES**

BDRC 4Site, LLC, ("BDRC 4Site") respectfully submits its Supplemental Memorandum in Opposition to WestLB, AG's ("WestLB") Supplemental Objection to BDRC 4Site's Final Fee Application For Allowance And Payment Of Compensation For Services Rendered And For Reimbursement Of Expenses incurred as "Co-Manager" and for restructure/financing services

1

provided to the above-captioned debtors and debtors in possession (collectively, the "Debtors") during the period commencing November 13, 2009 through and including June 30, 2010.

## INTRODUCTION

At the August 24, 2010 hearing on BDRC 4Site's Fee Application, WestLB argued that, due to an integration clause contained in the Revised Professional Services Agreement (the "PSA"), BDRC 4Site was barred, as a matter of law, from offering any evidence regarding BDRC 4Site and Debtor's agreement as to the subject Financing Fee and the parties' subsequent actions taken in accordance with this agreement. In response, BDRC 4Site pointed out that, under controlling Utah precedent,[1] the argument that the PSA's statement regarding the Financing Fee was a final and complete expression of the parties' agreement was an eristic argument that had no application to the facts of this case.

As a result of this dispute over WestLB's integration argument, the parties were granted the right to file supplemental memorandum. The Court expanded the scope of such memorandum to include not only WestLB's integration argument, but any other argument the parties deemed advisable.

WestLB's supplemental memorandum, however, is conspicuously devoid of any mention whatsoever of its integration argument – the primary reason behind the Court's granting of supplemental memoranda. This notable omission is likely due to the simple fact that WestLB's integration argument runs directly counter to its other argument that the PSA was not a final expression of the parties agreement as to the Financing Fee, but rather "such a fee would be later

---

[1] The trilogy of cases referred to by BDRC 4Site at the hearing are *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 10, 92 P.3d 768, 772 (2004); *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 18, 182 P.3d 326 (2008); and *DCH Holdings, LLC v. Nielsen,* 2009 UT App 269, ¶ 8, 220 P.3d 178 (2009).

. . . . 'mutually agreed upon' . . ." (Supplemental Objection at 6.) Of course, if a contract states that a subject is to be later agreed upon, the contract is not integrated as to that subject. S*ee*, *Tangren*, 2008 UT 20, ¶ 12 (a contract is integrated only if the writing is intended as the "final and complete expression" of the agreement).[2]

The time to raise the integration argument has passed. The omission of this argument from WestLB's memorandum can only be intentional. Thus, by omitting this argument from its memorandum (and presenting an argument inconsistent with an integration claim), WestLB has waived its integration objection and should not be allowed to again try to raise that issue at the hearing on this matter.

I. **The Financing Fee should be allowed by the Court.**

   a. **Pursuant to the Professional Services Agreement and the parties' subsequent agreement and conduct, BDRC 4Site is entitled to payment of the Financing Fee.**

WestLB argues that BDRC 4Site is not entitled to payment of the Financing Fee because the payment term is "indefinite" and cannot be enforced. [Supplemental Objection at 5]. In support of its argument that the Court must find that there was no contract for payment of the Financing Fee, WestLB compares this case to the case of *Prince, Yeates & Geldzahler v. Young*,

---

[2] See also, *Cantamar, LLC,* 142 P.3d at 146 ("'[T]he court must determine as a question of fact whether the parties did in fact adopt a particular writing or writings as the final and complete expression of their bargain.' " Additionally, if the court determines an agreement is partially integrated, it must also consider whether the parol evidence the parties seek to introduce is inconsistent or supplementary to the agreement. (citing *Eie v. St. Benedict's Hosp.,* 638 P.2d 1190, 1194 (Utah 1981)) . In resolving these preliminary questions, parol evidence, " 'indeed any relevant evidence, is admissible.' " *Smith v. Osguthorpe,* 2002 UT App 361,¶ 18, 58 P.3d 854 (explaining that any relevant evidence is admissible in determining whether agreement is integrated) (quoting *Union Bank,* 707 P.2d at 665); Restatement (Second) of Contracts § 210 cmts. b-c (stating that "any relevant evidence" is admissible when considering whether an agreement is completely or partially integrated); *id.* § 213 cmt. b (directing that determination of whether a term is inconsistent with an integrated agreement is "made in accordance with all relevant evidence").

94 P.3d 179 (Utah 2004), concerning "an oral agreement in which [a] law firm agreed to pay [its] former associate [a] "fair and equitable" fee was held to be "too indefinite to *create* a contract." [Supplemental Opposition at 5 (citing *Prince Yeates*, 94 P.3d at 181-184, "when there is simply some nebulous notion in the air that a contract might be entered into in the future, the court cannot fabricate the kind of a contract the parties ought to have made an[d] enforce it.")]. WestLB acknowledges that under Utah law a contract which provides that a price term can be supplied at a later date is enforceable, however, WestLB argues that because the parties' intended to calculate the Financing's Fee based on market rates as approved by the Court was articulated in Debtor's Application to Employ BDRC rather than the Revised PSA itself, there is no enforceable agreement between the parties regarding the Financing Fee. [See Supplemental Objection at 6].

    The *Prince Yeates* case is clearly distinguishable from this case. In *Prince Yeates*, the "contract" sought to be enforced was a verbal statement made to an associate that in addition to the associates' regular compensation, the firm would later negotiate additional "fair and equitable" compensation for his efforts related to a particular case. *Prince Yeates*, 2004 UT 26, 94 P.3d 179. There was never a meeting of the minds between the parties as to a formula or method of calculation to be used to determine what would be a "fair and equitable" amount. *Id*. at 184 ("In the absence of any consensus on actual numbers or adoption of a mutually satisfactory method of calculating "fair and equitable" compensation, Prince Yeates' stated desire to be "fair" to Young, *standing alone*, is too indefinite to *create* a contractual obligation.") (Emphasis added).

4

In contrast, Debtor and BDRC 4Site entered into an express, written, Court approved agreement wherein Debtor committed itself to pay a Financing Fee upon procurement of exit financing. [See Employment Order at ¶ 3]. Unlike the *Prince Yeates* case, this Court is not left with enforcing an oral promise to be "fair," "*standing alone*"− rather, there is detailed record evidencing of the parties' intent[3] that the Financing Fee would be calculated at a later date based on market rates, subject to the Court's approval. [See Application at 6].

While WestLB argues that the Court may not consider evidence beyond the four-corners of the Revised PSA (including that the Court may not consider Debtor's Application to Employ BDRC)[4], is incorrect under the parol evidence rule. [See Supplemental Objection at 6, fn 1]. By arguing that the Revised PSA is missing a term, WestLB has raised an issue of contractual ambiguity, which permits the Court to consider any and all relevant evidence of the parties' intent and to supplement the missing term. *See DCH Holdings v. Nielsen*, 2009 UT App 269, ¶ 10 (citing *Daines v. Vincent*, 2008 UT 51, ¶ 29, 190 P.3d 1269) ("Ambiguity may be found when a contract is missing an essential term."); *Daines*, 2008 UT 51, ¶ 26 (further holding, "[r]elevant extrinsic evidence of the facts known to the parties at the time they entered the [contract] is admissible to assist the court in determining whether the contract is ambiguous.") (internal citations omitted)(emphasis added).

Contrary to WestLB's contention, it is proper for the Court to consider Debtor's statement in its Application to Employ BDRC that the parties agreed that the Financing's Fee would be calculated based on "reasonable and market rates," subject to Court approval, in

---

[4] Debtor's argument that the Application of Employment cannot be considered as evidence of the parties' intent is contradicted by its later argument that the Application of Employment is evidence of the parties' intent regarding the term "procurement." [See Supplemental Objection at 8 fn 4].

5

determining the parties' intent regarding the payment term of the Financing Fee.[5] [See Employment Application at 6]. The parties stipulated that the amount or rate of the Financing Fee would be determined at a later day, and also specified the method to be used for fixing or calculating the price.[6] While the *Prince Yeates* court had no basis to determine that the parties had entered an agreement at all,[7] in this case, there is ample evidence that Debtor and BDRC 4Site entered an agreement, including Debtor's reasoned Application to the Court as to the parties' intent and argument as to why the agreement should be approved. In addition, BDRC 4Site will offer evidence that the parties subsequently acknowledged what that market rate would be. WestLB's request that BDRC 4Site be denied payment of a fair market rate simply because Debtor refused to "agree" on a preset price − even though Debtor previously agreed on setting the price at the fair market rate− is contrary to the purposes and intents of the parties' agreement, is fundamentally unfair and should be rejected.

---

[5] Under Utah law, the failure to set a dollar amount is not fatal to formation of the agreement, particularly when the parties agreed that the amount of the fee would be supplied later based on the agreed up parameters (such as reasonable market rate as approved by the Court). *See, Plateau Min. Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 726 (Utah 1990) (" . . . an agreement which sets a price that is determined by factors outside the contract, such as a market price or the price in another contract, is valid and enforceable); *Ferris v. Jennings*, 595 P.2d 857, 859 (Utah 1990) ("A contract is not fatally defective as to price if there is an agreement as to some formula or method for fixing it.");. *In re Dow Corning Corp.*, 244 B.R. 718, 721 (Bankr. E.D. Mich. 1999) (the Plan provided that the rate of interest on a priority tax claim "shall be determined, based upon then-existing market rates, as of the Effective Date," the Court held that while the agreed upon rate was generally agreed upon but somewhat vague, it could be reasonably supplied by the Court; "if the parties cannot agree on what the appropriate market rate of interest is, the matter can be brought before the Court for resolution.").

[6] The terms of this agreement were set forth in the Application to Employ which provided an opportunity for interested parties to be heard. Compare Supplemental Objection at 7.

[7] Additionally, by nature, the PSA, as a § 328 agreement, is substantially different than the oral promise to be "fair" in the *Prince Yeates* case, both as to Court involvement in the entering of the agreement, as well as the Court's ability to retroactively alter the terms of the parties' agreement.

6

      b.   **<u>Pursuant to the PSA, BDRC 4Site is entitled to the Financing Fee</u>**.

WestLB argues that BDRC 4Site is not entitled to payment of the Financing Fee because it failed to comply with the Revised PSA when it did not obtain approval of the Court. [Supplemental Objection at 7-8]. However, the fact that the Court had not approved a precise amount, rather the parties had stipulated to calculation based at a "reasonable market rate," does not prevent the Court from determining and supplying a reasonable fee on its own accord based on the application presented by BDRC 4Site, as even stipulated fees are subject to court approval based on the Court's determination of "reasonableness." *In re Concept Clubs, Inc.*, 125 B.R. 634, 636 (Bankr. D. Utah 1991) ("Notwithstanding the terms of the contractual arrangement between the debtor and the professional, the fees to be paid are implicitly subject to alteration" by the Court based upon the "reasonableness standard*."); In re Gillett Holdings, Inc.*, 137 B.R. 475, 478 (Bankr. D. Colo. 1992) ("All fees of professionals charged to and paid by the estate are subject to a "reasonableness test").

WestLB further argues that BDRC 4Site is entitled to the Financing Fee because it did not "obtain" exit financing and because "it is indisputable that BDRC [4Site] did not procure exit financing for Partners." [Supplemental Objection at 8]. Contrary to WestLB's assertion, BDRC 4Site did "procure" exit financing. As BDRC 4Site previously set forth— and which definition WestLB did not contradict and did not supply an alternative definition[8]— "procurement" is typically completed upon presenting an offer meeting the requirements and terms of the

---

[8] In a footnote WestLB argues that cases cited in support of BDRC 4Site's definition of "procurement" are based on different facts and/or law, however, Debtor does not cite a single case or source offering a different definition for the term "procurement." [See Supplemental Objection at 9, fn 5].

7

transaction, and is not dependent on the receiving party's acceptance or rejection of the offer over which the procurer has no control.[9]

WestLB is implicitly arguing that "procuring" should mean closing or otherwise completing a transaction requiring the actual transfer of funds. However, in agreeing to pay a Financing Fee, the Debtor did not require that a closing, completed transaction or exchange of funds was required. Rather, the parties expressly agreed, with Court approval, that all that was required from BDRC 4Site was "procurement."

BDRC 4Site "procured" exit financing when it obtained an offer from Strategic Capital Partners for the requisite exit financing, which offer was presented to Debtor, and which offer the Debtor represented to the Court had been accepted (and was therefore "acceptable"). In the Amended Disclosures Statement with Respect to Amended Plan of Reorganization of Easy Street Partners, LLC, Dated February 18, 2010 ("Amended Disclosures") Debtor describes that an acceptable offer of the Strategic Capital Partners, LLC ("SCP") offer was procured as a result of BDRC 4Site's efforts:

> . . . Debtor's principals and attorneys assisted BDRC in locating interested investors and provided extensive historical and prospective financial data to approximately (15) groups of potential investors. None of the groups, except for the ultimate investor chosen, was willing to fund a plan which repaid the Allowed WestLB Secured Claim in full.
>
> Thus Partners and BDRC, along with counsel, determined to complete negotiations with [SCP].

---

[9] *See Fairbourn Commercial, Inc. v. American Housing Partners, Inc.*, 68 P. 3d 1038 (Utah Ct. App. 2003), *affirmed by* 94 P.3d 292 (Utah 2004) (holding a real estate broker was entitled to commission upon "procuring" buyer even though transaction did not go through and closing did not occur, as parties could have agreed that commission was only due if closing occurred if that was the intent of their agreement); *see also In re Tully*, 202 B.R. 481, 484 (B.A.P. 9th Cir. 1996)( a broker "procures" a transaction when it presents a buyer who is ready, willing, and able to close the transaction on terms acceptable to the seller); *In re Lady Baltimore Foods, Inc.*, 02-434328, 2004 WL 2192374 (Bankr. D. Kan. Aug. 13, 2004) (distinguishing that commissions are due upon procurement, not the date of closing).

> On January 13, 2010, Partners <u>executed a letter of intent ("LOI") with SCP</u>. SCP or an entity formed by SCP or an affiliate of SCP will be the plan funder (the "Plan Funder").
> \*\*\*
> Partners <u>has negotiated a Funding Agreement</u>, under which an entity formed by SCP or such other person or entity acceptable to Partners ("Alternative Funder") will own 100% of the Reorganized Debtor.
> \*\*\*
> The Funding Agreement commits the Plan Funder to fund approximately $6,000,000 on the Effective Date to be utilized as follows : . . .
> \*\*\*
> Definitive agreements should be executed prior to the hearing on this Disclosure Statement . . .

[Amended Disclosures at 19-20]. As demonstrated by the language in the Amended Disclosures, BDRC 4Site "procured" SCP's exit financing offer which was accepted by Debtor, and BDRC 4Site is therefore entitled to the Financing Fee. Debtor's election not to go through with the negotiated Funding Agreement, and instead to have WestLB provide the exit financing, was a decision beyond BDRC 4Site's control which occurred <u>after</u> BDRC 4Site had earned the Financing Fee, and is immaterial to Debtor's obligation to pay the Financing Fee. In addition, by its own actions, WestLB significantly discouraged Strategic from participating in this case as a lender.

Further, WestLB's argument that BDRC 4Site essentially forfeited its Court approved right to compensation for the "substantial work" it performed in procuring exit financing because the Debtor agreed to a "reasonable market rate" rather than a specific dollar amount, is simply an attempt to back-out of a Court approved contract for rendered services which, in the interests of fairness, justice and the parties' agreement, should be rejected.

### c. WestLB's argument that §330(a) requires proof of consideration that provided a past benefit to the estate is not a correct statement of law.

WestLB argues that since BDRC 4Site "supplied no consideration that was beneficial to the estate" it should be denied the Financing Fee. (Supplemental Objection at 11). In making this argument, WestLB cites caselaw applying the pre-1994 version of section 330 and current caselaw regarding post-petition wage claims under §503(b)(1). In so doing, WestLB ignores the clear language of the current §330 and the irrelevance of §503(b)(1).

According to WestLB, the Court is prohibited from awarding fees under §330(a) unless the claimant shows consideration to the estate which, in hindsight, rendered a benefit to the estate. The lead case cited by WestLB for this proposition is *Rubner & Kutner, P.C. v United States Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321 (10th Cir. 1998). There, under the former §330, the Court held that counsel was not entitled to fees related to attempts to obtain confirmation of a plan that they "knew or should have known" at the time was incapable of confirmation. Thus, at the time the counsel performed these services, they knew or should have known that there would be no benefit to the estate.

Later, in *Van Cott, Bagley, Cornwall & McCarthy v. B.R. & F. L.C. (In re Ricci Investment Co., Inc.),* 217 B.R. 901 (D. Utah 1998), Judge Kimball had the opportunity to consider whether *Lederman* stands for the proposition that WestLB advances here – that a professional retained by the Debtor can only recover compensation if he or she can prove a later actual benefit. Judge Kimball rejected that argument:

> In addition to the rule violation, the Bankruptcy Court further disallowed fees to Van Cott in the amount $20,652.50 for the preparation of the Trustee's Disclosure Statement and Plan on the basis that it provided no benefit to the estate as is required by *In re Lederman,* 997 F.2d 1321 (10th Cir.1993). As will be discussed

10

> in more detail below, this court does not agree with the broad reading of
> *Lederman* as implemented by the Bankruptcy Court, . . . .
>
> * * *
>
> This court also agrees with the reasoning set forth in *In re HCS Corp.*, 59 B.R. 307 (Bankr.S.D.Cal.1986) which held that "... weighing the factors of § 330, court appointed attorneys are entitled to compensation whether or not any benefits were in fact conferred on the estate." *Id.* at 310. The *HCS* court went on to hold that "[t]rustees are an integral part of the successful operation of the bankruptcy laws. If this Court required the trustee to pay for his or her own representation, ... the practical effect would be that few trustees would be willing to serve." *Id.* It is accurate, as appellees argue, that these cases are pre *Lederman,* however, a careful reading of *Lederman* makes it clear that fees such as those requested in the Supplemental Application are still allowable. *In re Lederman* holds that § 330 of the Bankruptcy Code gives the bankruptcy court discretion to award a reasonable fee for "actual and necessary services". *Id.* at 1323. The Bankruptcy court interpreted *Lederman* to hold that fees must provide a benefit to the estate before compensation will be paid. It is true that *Lederman* holds that whether or not fees incurred are a benefit to the estate is more than just one of many factors to be considered. The court holds that it is a "threshold concern". However, *Lederman* does not hold that necessary fees will always be denied if they are not also of a benefit to the estate. To the contrary, *Lederman* holds that *one* element of whether or not fees are necessary is whether or not they are of a benefit to the estate. However, this is not the only element to be considered.

*Id.* at 905.  The Court also noted that the pre-1994 version of §330 was involved.

The current version of §330, of course, makes it clear that the "benefit" factor is only a "relevant factor" – not a precondition.  In addition, the current code makes it clear that the beneficial factor must be determined at the time the services are rendered – not after the fact. Section 330(a)(3) provides, in pertinent part:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all <u>relevant factors, including</u> –
>
> * * *

11

> (C) whether the services were necessary to the administration or, or beneficial <u>at the time at which the service was rendered</u> toward the completion of, ad case under this title.

(Emphasis added).

The only post 1994 case cited by WestLB in support of its argument is *Peters v. Pikes Peak Musicians Assoc.,* 462 F.3d 1265 (10th Cir. 2006). There, after filing for bankruptcy, an orchestra cancelled its future concerts. Certain musicians then filed a request for wages, arguing that, although they didn't perform, they were entitled to wages under a collective bargaining agreement. The Court properly considered the request under section 503(b)(1) – dealing with post-petition wages. The Court also properly set forth the test under 503(b)(1), i.e., (1) the claim must result from a post-petition transaction and (2) the "claimant supplied consideration that was beneficial to the debtor-in-possession (or trustee)." *Id.* at 1268. Thus, WestLB attempts to apply the post-petition consideration factor under §503(b)(1) to applications under §330. It has been well established, however, that 503(b)(1) is not applicable to claims under 330. As stated in 1986 by Judge Clark in *In re Tri-L Corp.,* 765 B.R. 774, 777 (Bankr. D. Utah 1986), "[p]ostconfirmation attorneys' fees are not governed by Section 503(b)(1)(A) and (B), . . ., but by Section 503(b)(2)." Section 503(b)(2) refers to "compensation and reimbursement awarded under section 330(a) of this title."

WestLB's contention that a claimant under section 330(a) must prove, in hindsight, consideration which provided a benefit to the estate is not a correct statement of the law. In any

event, however, BDRC 4Site intends to offer evidence at the hearing of the beneficial nature of its services.[10]

## II. The Termination Fee is not duplicative of fees incurred prior to the effective termination of Revised PSA, and BDRC 4Site is entitled to payment of fees during the 45-day Notice Period as well as the Termination Fee.

The parties agree that the term of the Revised PSA was the earlier of November 13, 2010 or 45 days *after* the provision of notice of termination. [*See* Supplemental Objection at 11]. Debtor also acknowledges the Revised PSA's termination penalty equal to "two (2) times the then current Co-Management/Advisory fee." [*Id*. (citing Revised PSA at Schedule 2)]. In the PSA, the parties agreed that in order to cancel the PSA prior to expiration of the term, Debtor was required to provide advanced written notice and the Termination Fee− specifically contemplating that the Revised PSA would not be effectively terminated until 45 days after receipt of written notice (the "Notice Period"). The purpose of the Termination Fee is to compensate BDRC 4Site for the loss of the remainder of the "term" (through November 13, 2010) while the payment of the fees incurred *during* the 45-day Notice Period is compensation for services rendered prior to effective termination.

On June 30, 2010, BDRC 4Site received a letter from Debtor's legal counsel purporting to terminate the Revised PSA effective as of the date thereof (the "Letter"). [A copy of the Letter is attached as Exhibit C to BDRC 4Site's Fee Application]. Debtor did not deliver a Termination Fee with the Letter as required by the Revised PSA. Even if Debtor had provided the Termination Fee with the Letter, calculated as twice the $23,000 monthly Co-Management/Advisory Fee, termination would not be effective until expiration of the 45-day

---

[10] Ironically, it was this very evidence that WestLB now claims is necessary that it objected to being introduced at the last hearing.

Notice Period (ending August 14, 2010). Nothing in the Revised PSA permits the Debtor to be released from paying Co-Management/Advisory Fees incurred prior to effective termination of the Revised PSA.

WestLB argues that payment for the Notice Period is not authorized by the Revised PSA and that services were not actually provided and therefore compensation is not permitted. [Supplemental Objection at 12]. It is of no consequence that Debtor chose not to utilize BDRC 4Site's services during the Notice Period, as BDRC 4Site is still entitled to payment up to the date of termination of the Revised PSA, and is further entitled to the Termination Fee. *See Kauffman Stewart, Inc. v. Weinbrenner Shoe Co. Inc.*, 589 N.W.2d 499, 502-503 (Ct. App. Minn. 1999) (describing the mutual benefit of paid notice of termination periods: "appellant had access to respondent's services during the 60-day termination notice period (even if it chose not to use those services), and respondent was guaranteed a minimum income during that period in consideration of its commitment to serve appellant").

Accordingly, even if the Debtor had properly terminated the Revised PSA as a result of the June 30, 2010 Letter, Debtor would still owe BDRC 4Site the Co-Management/Advisory Fee for a period of 45 days from the date of the notice ($34,500), plus the Termination Fee of $46,000 for termination "before the expiration of term," for a total of $80,500.

### III. **BDRC 4Site is entitled to reimbursement of certain expenses as set forth in its Final Fee Application.**

As explained in its Fee Application, BDRC 4Site listed particular unpaid out-of-pocket costs it incurred in "procuring" exit financing, which costs it acknowledges were intended to be covered by the Financing Fee. [Fee Application ¶ 18]. BDRC 4Site is not seeking reimbursement of such unpaid expenses as a separate category of expensed under the Revised

14

PSA or Employment Order. [Compare Supplemental Objection at 12]. Rather, BDRC 4Site provided such information as further evidence of the expenses it incurred in reliance on the Debtor's commitment to pay the Financing Fee. [Fee Application ¶ 23, fn 2 ("After deduction of out of pocket costs incurred in the exit financing effort on behalf of the Debtor, the compensation portion of this fee would be $78,790.95" (two percent fee would total $86,792.20)].

In the event the Court determines that the Financing Fee was not preapproved, BDRC 4Site included the breakdown of the costs and expenses incurred in procuring exit financing so that the Court may make a determination of reasonable compensation for services actually rendered under 11 U.S.C. § 330. [Fee Application at ¶16]. By including the expenses in the Fee Application, BDRC 4Site was simply complying with § 330, which requires BDRC 4Site to disclose the "nature, the extent and the value of such services, taking into account all relevant factors" including a breakdown of time spent and rates charged for such services. [*Id.*]

   2. **BDRC 4Site is entitled to reimbursement of attorneys' fees "arising out of" or incurred "in connection with" performance of its duties under the Revised PSA and collection of amounts due thereunder.**

WestLB argues that BDRC 4Site has no right to reimbursement of legal expenses based on the Employment Order's amendment to provision 4.c of the Revised PSA, which changed BDRC 4Site's reimbursement of expenses in connection with rendering of Professional Services including, but not limited to "travel, legal, outside accounting and auditing, insurance, and similar services" to reimbursement of "any out-of-pocket expenses reasonably incurred by BDRC 4Site in connection with the delivery of Professional Services, including but not limited to travel and similar services." [Supplemental Objection at 14].

15

WestLB reads the amendment to expressly prohibit reimbursement of attorneys' fees incurred in the preparation of BDRC 4Site's Fee Application, arguing that such expenses were not incurred in the rendering of BDRC 4Site's "Professional Services," and that reimbursement are limited to "out-of-pocket expenses reasonably incurred by BDRC 4Site *in connection* with the delivery of the Professional Services." *Id*. However, the language of the Revised PSA and Employment Order is not as restrictive as WestLB argues, and does not *exclude* attorneys' fees incurred by BDRC 4Site in seeking payment for services performed. The Employment Order expressly provides that "BDRC shall be compensated for its services and reimbursed for *any related expenses* in accordance with the Revised [PSA], as modified herein, subject to any other or further orders of the Court," and further requires BDRC 4Site to file "a final application seeking final approval of amounts paid to or requested by BDRC." [Employment Order ¶¶ 3, 6]. The Revised PSA expressly provides that "Owner shall indemnify BDRC 4Site for, and hold it harmless against any loss, liability, claim or expense, *including attorneys' fees* (collectively "Losses"), arising out of or in connection with its duties under this Agreement . . ." [Revised PSA ¶ 7.b].

The attorneys' fees incurred by BDRC 4Site in filing its final fee application for approval of fees earned under the Revised PSA, as ordered in the Employment Order, are clearly expenses "arising out of or in connection with" BDRC 4Site's duties under the Revised PSA and Employment Order and/or a "related expense" for which BDRC 4Site is entitled to reimbursement. In fact, BDRC 4Site believed that Debtor's counsel would assist with such filing, as it did with the initial application. The Debtor having refused such assistance, BDRC 4Site was forced to retain its own counsel. BDRC 4Site should be reimbursed for such expenses.

16

## **CONCLUSION**

For the foregoing reasons, BDRC 4Site requests allowance of the compensation and expenses set forth in its Fee Application.

DATED this 8th day of October, 2010.

                                                Miller Guymon, P.C.

                                                */s/ Lauren Y. Parry*
                                                Blake D. Miller
                                                Lauren Y. Parry
                                                *Attorneys for BDRC 4Site*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 8th day of October, 2010, a true and correct copy of the foregoing was served via CM/ECF on the individuals identified in Exhibit "A."

*/s/ Lauren Y. Parry*

# Exhibit A

- Troy J. Aramburu    taramburu@joneswaldo.com, rhuot@joneswaldo.com;jpollard@joneswaldo.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Bastiaan Coebergh    coebergh@wasatchlaw.com, oborn@wasatchlaw.com;brian@wasatchlaw.com
- Scott A. Cummings    cummings.scott@dorsey.com
- George B. Hofmann    gbh@pkhlawyers.com, dh@pkhlawyers.com
- Mary Margaret Hunt    hunt.peggy@dorsey.com, brown.patricia@dorsey.com;smith.ron@dorsey.com;slc.lit@dorsey.com
- Annette W. Jarvis    jarvis.annette@dorsey.com, smith.ron@dorsey.com;slc.lit@dorsey.com;brown.patricia@dorsey.com
- Lon A. Jenkins    lajenkins@joneswaldo.com, krichardson@joneswaldo.com;ecf@joneswaldo.com;rhuot@joneswaldo.com
- Michael R. Johnson    mjohnson@rqn.com, sglendening@rqn.com;docket@rqn.com
- Anthony C. Kaye    kaye@ballardspahr.com, swand@ballardspahr.com;saltlakedocketclerk@ballardspahr.com
- Benjamin J. Kotter    kotter.benjamin@dorsey.com, smith.ron@dorsey.com;brown.patricia@dorsey.com;slc.lit@dorsey.com
- David E. Leta    dleta@swlaw.com, wsmart@swlaw.com
- Adelaide Maudsley    maudsley@chapman.com, jemery@chapman.com
- Steven J. McCardell    smccardell@djplaw.com, khughes@djplaw.com
- Blake D. Miller    miller@mmglegal.com
- John T. Morgan tr    john.t.morgan@usdoj.gov, james.gee@usdoj.gov
- David W. Overholt    doverholt@rsolaw.com, abachman@rsolaw.com
- Douglas J. Payne    dpayne@fabianlaw.com, jshowalter@fabianlaw.com
- Jessica G Peterson    jpeterson@djplaw.com
- Knute Rife    karife@rifelegal.com
- Jeffrey L. Shields    jlshields@cnmlaw.com, njpotter@cnmlaw.com
- Jeffrey Weston Shields    jshields@joneswaldo.com, rhuot@joneswaldo.com
- Bradley L. Tilt    btilt@fabianlaw.com, rmellor@fabianlaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Kim R. Wilson    bankruptcy_krw@scmlaw.com