Annette W. Jarvis (1649)
Peggy Hunt (6060)
Benjamin J. Kotter (9592)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com
       hunt.peggy@dorsey.com
       kotter.benjamin@dorsey.com

Richard W. Havel (10759)
Christina M. Craige (*pro hac vice pending*)
**SIDLEY AUSTIN LLP**
555 West 5th Street
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
Email: rhavel@sidley.com
       ccraige@sidley.com

*Attorneys for Heber Avenue Partners, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**EASY STREET HOLDING, LLC, et al.,**<br><br>Debtors.<br><br>Address: 201 Heber Avenue<br>         Park City, Utah 84060<br><br>Tax ID Number:<br>35-2183713 (Easy Street Holding, LLC),<br>20-4502979 (Easy Street Partners, LLC), and<br>84-1685764 (Easy Street Mezzanine, LLC) | Case No. 09-29905<br>(Jointly Administered with Cases<br>09-29907 and 09-29908)<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier<br><br>DATE: January 20, 2011<br>TIME: 2:00 P.M. MST<br>PLACE: Courtroom 369<br>         350 South Main Street, #301<br>         Salt Lake City, Utah 84101 |

**HEBER AVENUE PARTNERS LLC'S REPLY IN SUPPORT OF ITS OBJECTION TO CLAIM NO. 27 OF WILLIAM SHOAF PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003 AND 3007**

Heber Avenue Partners, LLC ("Heber"), the reorganized debtor pursuant to the Amended

Plan of Reorganization of Easy Street Partners, LLC and WestLB, AG dated June 16, 2010 (the

1

"Plan"), by and through its undersigned counsel, hereby replies to the response (the "Response") filed by William Shoaf to Heber's objection (the "Objection") to the Shoaf Claim[1] against the estate of Easy Street Partners, LLC ("Partners"). In response to the Objection, Shoaf not only filed the Response, but also filed an amendment to the Shoaf Claim (the "Claim Amendment"), which (i) asserts the claims contained in the original Shoaf Claim, plus additional amounts and claims beyond what was asserted in the Shoaf Claim, and (ii) attaches documentation allegedly supporting certain of the claims asserted in the Claim Amendment. Because the Court should reject Shoaf's untimely Claim Amendment to the extent it goes beyond curing the defects cited in the Objection, and because the documentation proffered by Shoaf does not evidence any valid claim against Partners, Heber requests entry of an order disallowing and expunging both the Shoaf Claim and Claim Amendment. In further support of its Objection, Heber has submitted the Declaration of Christina M. Craige and respectfully states as follows:

**I. SHOAF'S ATTEMPT TO AMEND HIS PROOF OF CLAIM TO ASSERT NEW CLAIMS NEARLY A YEAR AFTER THE BAR DATE AND FIVE MONTHS AFTER THE EFFECTIVE DATE OF THE PLAN SHOULD BE REJECTED.**

1. In connection with his Response, Shoaf has purportedly "amended" the Shoaf Claim, which he originally filed for "Reimbursement of Expenses" in the final, liquidated amount of $43,385.20. In the Claim Amendment – which purports to be in the final, liquidated amount of $123,104.36 – Shoaf now sets forth four types of claim against Partners' estate:

> (1) ordinary business expenses paid directly for the Sky Lodge ($18,130.30); (2) legal fees paid to Wrona Law on behalf of Easy Street Partners ($22,370.58); (3) the retainer paid to Durham Jones & Pinegar to serve as Debtor's counsel in this case ($25,000.00); and (4) contribution owed from the Debtor as a result of rejecting the office lease between the Debtor and Gateway ($57,603.48).

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Objection.

2

Response at 2. Because the first and third components of the Claim Amendment substantially match the amount of the Shoaf Claim,[2] it appears that (i) the amounts Shoaf paid to Wrona Law (the "Wrona Component") and (ii) the amounts sought from Shoaf by Gateway Center LLC ("Gateway") on account of Shoaf's guaranty (the "Guaranty") of the office lease originally between Cloud Nine Resorts, LLC ("CloudNine") and Gateway (the "Gateway Component"), are entirely new. Shoaf's attempt to assert these two new claims – nearly a year after January 6, 2010 (the "Bar Date") and over five months after the Plan's effective date – should be rejected.

### A. Shoaf Cannot Now Expand the Claims and Amounts Sought in the Shoaf Claim Because Shoaf Did Not Give Notice That His Claim Was Subject to Amendment.

2. Although claim amendment has been permitted after a bar date where necessary to cure a defect in a proof of claim, Shoaf has not simply attempted to cure the Shoaf Claim's lack of supporting documentation. Rather, Shoaf has sought to significantly expand the source and amount of liability asserted against Partners' estate. However, courts in this circuit have only permitted substantive claim amendments post-bar date when the claimant initially provided adequate notice that its claim was subject to amendment. See, e.g., United States v. Berger (In re Tanaka Bros. Farms), 36 F.3d 996, 999 (10th Cir. 1994) ("Tanaka") (permitting claim amendment in part because "the IRS's original claim was clearly denoted as an 'estimate'"); In re Stauffer, 378 B.R. 340, 351 (Bankr. D. Utah 2007) ("[T]here is no indication that the amount listed in the filed proof of claim is an estimated, unliquidated, or a contingent amount that might be subject to further amendment."); In re Limited Gaming of Am., 213 B.R. 369, 374 (Bankr. D. Okla. 1997) (ruling that, under Tanaka, "if insufficient notice of the possibility of amendment is

---

[2] The "ordinary business expenses" and prepetition retainer paid to Durham Jones & Pinegar equal $43,130.30. Shoaf does not explain the $254.90 discrepancy between these figures and the Shoaf Claim.

3

given, then leave to amend should be denied; and if *clear notice* of the possibility of amendment is given, then leave to amend should be allowed" (emphasis added)).

3.   Unlike the claimant in Tanaka, Shoaf did not place Partners, the Court, or any other party on notice prior to the Bar Date that he intended to amend his claim against Partners. The Shoaf Claim indicated only that Shoaf was asserting a claim for "Reimbursement of Expenses" in the final, liquidated amount of $43,385.20.  Because he gave no notice prior to the Bar Date that the Shoaf Claim was an estimate, or otherwise subject to later amendment, this Court should reject Shoaf's attempt to amend the Shoaf Claim beyond the inclusion of supporting documentation.

**B.   Shoaf Cannot Assert Brand New Claims Under the Guise of a Claim Amendment.**

4.   Even if Shoaf had placed parties on notice that the Shoaf Claim was subject to amendment, the Claim Amendment should be rejected because it asserts two new, untimely claims.  The standard in the Tenth Circuit is clear: bankruptcy courts "should not allow truly new claims to proceed under the guise of amendment."  Unioil v. Elledge (In re Unioil, Inc.), 962 F.2d 988, 992 (10th Cir. 1992) (citations omitted); In re CF&I Fabricators of Utah, Inc., No. 90B-26721, 1994 Bankr. LEXIS 1313, at *19 (Bankr. D. Utah Aug. 4, 1994) ("CF&I") ("Close scrutiny must be employed to ensure that the amendments are genuine and not disguised new claims."); see also United States v. Kolstad (In Re Kolstad), 928 F.2d 171, 175 (5th Cir. 1991) ("Amendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability."). Although Shoaf cites the Tenth Circuit's decision in Tanaka as permitting his untimely Claim

4

Amendment, the Tanaka Court's reasoning in permitting the IRS to file an amended proof of claim in that case dooms the Claim Amendment.

5. As the Tenth Circuit explained, "'amendment of a proof of claim is freely permitted *so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable*.'" Tanaka, 36 F.3d at 998 (quoting Unioil, 962 F.2d at 992 (emphasis added)). "Unioil appears to require that each element be proved in order for adequate notice to have been given and the claim to be considered." CF&I, 1994 Bankr. LEXIS 1313, at *19.

6. In Tanaka, the IRS was unable to include liquidated amounts for certain tax reporting periods in its initial proof of claim (due to the debtor's failure to file tax returns). However, the IRS did assert a right to recover for those tax periods and estimated the liability based on all available information. For those reasons, the Tanaka court initially concluded that the IRS had provided adequate notice of the existence and nature of the claim at issue, as well as notice of the IRS's intent to hold the estate liable. The contested issue in Tanaka was whether the IRS had provided adequate notice of the *amount* of the claim, because the claim as amended was substantially larger than the original estimate. The court determined that the IRS had given adequate notice, in part because it had informed all parties that its original claimed amount was an estimate.

7. Unlike the IRS's proof of claim in Tanaka, the Shoaf Claim did not mention or assert any right to recover on a contingent indemnity claim, nor did it indicate that the claimed amount for reimbursement of expenses was an estimate. Rather, it set forth a liquidated amount substantially equal to the "ordinary business expenses" and Durham Jones & Pinegar ("DJ&P")

5

retainer components of the Claim Amendment. Because the Shoaf Claim provided adequate notice of the existence, nature, and amount and his intention to recover only these claims, Shoaf's attempt to now assert the Wrona Component and the Gateway Component should be rejected. See Tanaka, 36 F.3d at 998 (allowing the IRS to revise estimated amounts in its claim because it "provided timely and adequate notice of the existence and nature of its claim" by asserting a claim for those reporting periods and a designation of its timely claim as an estimate); In re Stauffer, 378 B.R. at 350 ("The difference in amount . . . is an additional $47,613.06 over the claim as filed, and $19,376.47 greater than the amount the Debtor anticipated the debt to be. Both are significant amounts not reasonably within the amount of the original proof of claim.").

    **C.**     **Equitable Considerations Do Not Support Allowance of the Claim Amendment.**

    8.     The Tanaka Court adduced five equitable factors a court should also consider when deciding whether to permit a claim amendment. None of these factors supports allowance of the Claim Amendment.

    *1.*     *Heber Did Not Know A Subsequent Proof of Claim Would Be Filed.*

    9.     The first equitable Tanaka factor is whether the parties or creditors relied on the initial claim or whether they knew subsequent proofs of claim would be filed. See Tanaka, 36 F.3d at 18 (listing equitable factors). As noted above, Shoaf did not put parties on notice before the Bar Date that "subsequent proofs of claim would be filed." Although Shoaf claims that no parties are prejudiced because he put creditors and Partners on notice "in the budgets Mr. Shoaf prepared for the Debtor's use in confirming its plan of reorganization," Shoaf himself admits that the budgets containing the Gateway Component were not prepared until *after* Gateway made its election under the Plan and sued him for the balance. See Response at 4. According to the

6

budget provided by Shoaf to counsel for Heber (but not included in the Claim Amendment), this "notification" did not occur until June 22, 2010, after the Plan was negotiated and over a week after it was filed. See Craige Decl. Exh. 2.[3]

10. In any event, Partners' *post-Bar Date* understanding is not the relevant issue. "Even if the Debtor[] had been aware of the [claimant]'s position that an [additional claim] was due, 'mere knowledge of the existence of the claim . . . is insufficient.'" CF&I, 1994 Bankr. LEXIS 1313, at *20. Shoaf's "notification" through post-Bar Date budgets provided no timely notice to Partners or Heber that Shoaf intended to assert the new claims contained in the Claim Amendment.

### 2. *No Other Creditor Would Receive a Windfall.*

11. The second equitable Tanaka factor is whether other creditors would receive a windfall to which they are not entitled on the merits if the court did not allow the amendment. Here, no other creditors will receive a windfall because their treatment under the Plan is independent of how much Shoaf is able to recover. Rather, Heber would be prejudiced by being required to pay claims of which it had no notice prior to filing of the Plan. And, as discussed further below, Shoaf is not entitled to recover on the Wrona Component or the Gateway Component as a substantive matter. Finally, it has been suggested that this factor is "inappropriate in deciding whether to permit the untimely amendment, for not only does such analysis involve undue speculation, it also does nothing to promote the legislative goal of finality." In re Limited Gaming of Am., 213 B.R. at 375 (according the windfall factor little

---

[3] In fact, Shoaf had provided a budget to Partners on February 9, 2010 confirming that his claim was $43,385.20, and on May 27, 2010, submitted a budget alleging his claim was $65,795.20 (apparently now including the Wrona Component but not the Gateway Component). See Craige Decl. Exhs. 3-4.

7

weight (internal quotation marks and citations omitted)). This Court should therefore weigh this factor against the Claim Amendment or accord it little weight.

          3.    *Shoaf Intentionally or Negligently Delayed in Filing the Amendment.*

12.    The third equitable Tanaka factor is whether the creditor intentionally or negligently delayed in filing the amendment. Promptly after the debtor filed the relevant tax returns in Tanaka, the IRS filed an amended proof of claim containing liquidated amounts equal to the liability acknowledged in those late-filed returns. Here, Shoaf waited to file his Claim Amendment until after Heber filed its Objection, nearly a year past the Bar Date and five months after the Plan's effective date. This delay weighs against permitting the Claim Amendment. See In re Stauffer, 378 B.R. at 351 (ruling that a delay of 14 months weighed against the creditor); In re Limited Gaming of Am., 213 B.R. at 375 (noting delay of thirteen months past the bar date in rejecting claim amendment on basis of excusable neglect).

          4.    *Shoaf Has Given No Credible Justification For Failing to Request a Timely Extension of the Bar Date.*

13.    The fourth equitable Tanaka factor is the claimant's justification, if any, for the failure to request a timely extension of the bar date. Shoaf has offered no such justification.

14.    While Shoaf argues in his Response that he "did not know the full extent of the damages resulting from his personal guaranty of the Gateway lease until the Debtor rejected that lease during the case," and therefore could not timely assert the Gateway Component, Shoaf mistakes the applicable legal standard. Rather, if Shoaf held a contingent claim against Partners relating to his Guaranty – which Heber disputes – any such claim was subject to the Bar Date. See CF&I, 1994 Bankr. LEXIS 1313, at *3, *21 (rejecting claim amendment where the "IRS knew before the claims bar date that the audit *could* result in the assessment of an alternative

8

minimum tax against the Debtors," even though "the IRS was unaware of any claim in the nature of an alternative minimum tax" at the time it filed its original proof of claim (emphasis added)). If anything, Shoaf's purported ignorance of the particular amount of the Gateway Component weighs against permitting him to include such new claim now. See, e.g., id. at *24 (noting the IRS's purported ignorance in determining that the IRS provided inadequate notice of the existence, nature and amount of such late-asserted claim).

15. In fact, Shoaf had every reason to believe, long before Gateway exercised its option in June 2010, that Gateway might ultimately assert a claim under his Guaranty. Corbin Gordon, who was later retained by Partners in this case, sent to Gateway a series of letters beginning in April 2009 on behalf of CloudNine,[4] which asserted, among other things, that Gateway had breached the office lease (the "Gateway Lease") and that "his client" would take action in response. See, e.g., Response of Gateway Center, LLC to Objection to Proofs of Claim [Doc. No. 420] (the "Gateway Response") Exhs. 1, 3, 5, 7.[5] Counsel for Gateway sent back a number of letters both before and after the Bar Date, disputing that (i) it committed any violations under the Gateway Lease and (ii) there was any defense to performance under the Gateway Lease. See id. Exhs. 4, 6, 9. In light of this longstanding dispute over obligations under the Gateway Lease – which he had guaranteed – Shoaf need not and should not have waited until now to formally assert the Gateway Component.

---

[4] It should be noted that, although CloudNine appears to have assigned all of its rights and interests in the Gateway Lease to Partners in January 2009, Gordon identifies CloudNine as his client in his April 2009 letter and characterizes CloudNine as the relevant tenant of Gateway. See Response of Gateway Center, LLC to Objection to Proofs of Claim [Doc. No. 420] Exh. 1.

[5] "The court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Binford v. United States, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (internal quotation marks and citation omitted).

9

     *5.*  *Other Equitable Factors.*

  16.  Finally, <u>Tanaka</u> directed courts to consider any other equitable factors in determining whether to permit a claim amendment.  Here, if Shoaf were permitted to assert and recover on the Gateway Component, Heber would be forced to pay twice on account of the same debt.  Gateway exercised its option under the Plan to receive an immediate 60% payment on its claim "[i]n full and complete satisfaction, settlement and release of and in exchange for" such claim.  Plan § 5.4.  Permitting Shoaf to recover on the Gateway Component would force the Debtors to pay (i) 60% of Gateway's claim up front, and then (ii) the remaining 40% of the claim over time, in contravention of the Plan.  It would also permit Shoaf – an alleged guarantor – to receive better treatment than that available to Gateway under the Plan.  Cf. <u>Capitol Indus., Inc. v. Regal Cinemas, Inc. (In re Regal Cinemas, Inc.)</u>, 393 F.3d 647 (6th Cir. 2004) (disallowing under § 502(e)(1)(A) indemnity claim of guarantor because the debtor had "already paid the landlord the maximum amount permitted by § 502(b)(6) . . . . [I]f the landlord may not assert the claim, neither may [the guarantor] as a co-liable party.").  For these additional reasons, the Claim Amendment should be rejected.

**II.  SHOAF HAS FAILED TO MAKE OUT A *PRIMA FACIE* CASE ON THE VALIDITY OF THE CLAIMS CONTAINED IN THE CLAIM AMENDMENT.**

  17.  The Shoaf Claim and Claim Amendment should also be disallowed and expunged pursuant to 11 U.S.C. § 502(b)(1) because the documentation Shoaf has provided fails to support a legal basis as a matter of non-bankruptcy law for the claims Shoaf asserts.  A party asserting a claim against a debtor must initially allege sufficient facts to support its claim, and only if this standard of sufficiency is met is the claim entitled to a presumption of validity.  See <u>Caplan v. B-Line, LLC (In re Kirkland)</u>, 572 F.3d 838, 840-41 (10th Cir. 2009).  "If objection is made to the

proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim." Agricredit Corp. v. Harrison (In re Harrison), 987 F.2d 677, 680 (10th Cir. 1993). As further demonstrated below, Shoaf has failed to supply documentation and evidence sufficient to make out a *prima facie* case as to the claims originally contained in the Shoaf Claim and the new claims contained in the Claim Amendment.

      **A.**      **Claims Contained in the Original Shoaf Claim**

           *1.*      *Ordinary Business Expenses of the Sky Lodge*

      18.      The Claim Amendment asserts that "Mr. Shoaf consulted with other members of the management team and received approval to front . . . expenses for the Debtor and would be paid back." Response Exh. A at 2. Shoaf does not reveal to whom he spoke or what (if any) formal documentation was drafted to evidence this approval and Partners' acceptance of a formal obligation to repay him. This fact is particularly troubling because of the blurred lines between CloudNine, CloudNine Resorts/Sky Lodge Management, LLC ("CloudNine Management") and Partners. See, e.g., supra ¶ 14. This interconnectedness and confusion is exacerbated by the "C9" and "SL" notations made on Shoaf's credit card statements and the two invoices issued by Gateway, one of which was issued to CloudNine and one of which was issued to Partners. See Response Exh. A at 4-5, 6-12.

      19.      Without any documentation supporting an acknowledgement by Partners to pay Shoaf individually for any expenses he may have paid, it is impossible to tell whether these amounts were incurred by Shoaf on behalf of Partners or whether they were incurred on behalf of CloudNine or CloudNine Management, which was contractually obligated to manage and operate The Sky Lodge on behalf of Partners and which had a contractual right to reimbursement

11

from Partners for any such expenses.  See Craige Decl. Exh. B to Exh. 1 at 1.4.  Because (i) CloudNine has filed no claim against Partners' estate, and (ii) CloudNine Management's claim against Partners' estate has been subordinated under the Plan and entitled to no distribution, Shoaf's self-serving and unsupported claim for reimbursement of amounts should also be disallowed.

        *2.     Payment to DJ&P*

20. Shoaf also claims that Partners must reimburse him for $25,000 paid prepetition to fund a portion of DJ&P's retainer.  However, the retention agreement (the "Retention Agreement") between the Debtors and DJ&P, which was signed by Shoaf and approved by this Court, itself explicitly precludes reimbursement of Shoaf for such amounts.  Section 4.4 of the Retention Agreement provides that retainer amounts funded by affiliates either be treated as (i) a capital contribution; or (ii) a loan subordinated in priority to any and all claims against and interests (including interests of equity owners) in the Debtors.  See Debtors' Application Pursuant to Section 327(a) of the Bankruptcy Code for Entry of an Order Authorizing the Debtors to Retain and Employ Durham Jones & Pinegar as Counsel [Doc. No. 58] Exh. 1 at 5.  It does not matter here whether Shoaf's funding of the $25,000 retainer payment is considered a capital contribution or a subordinated loan, because several holders of claims and interests, including WestLB AG, were not paid in full under the Plan.  Therefore, this component of Shoaf's claim cannot receive any recovery under the Plan and should also be disallowed.

### B. New Claims Contained in the Claim Amendment

#### 1. *The Wrona Component*

21. Shoaf baldly asserts that he paid certain legal fees to Wrona Law "on behalf of Easy Street Partners." However, the documentation – what little there is – Shoaf proffers in support of this claim utterly fails to evidence such a claim. Shoaf provides a single "CloudNine Transaction List by Vendor" containing a list of four checks from 2008-2009 issued from a Wells Fargo Bank account to Wrona Law. There is no explanation of what these payments were made for, by whom, or on account of what. Although a hand notation appears on this sheet stating that the amounts were paid by Shoaf for legal work done for Partners, there is no indication or authentication of who made this notation or when. In fact, counsel for Heber has requested from Shoaf the invoices sent by Wrona corresponding to these payments, but Shoaf has not provided that documentation either formally or informally. As Wrona's work may have been undertaken for another entity, such as CloudNine or another debtor, or as CloudNine Management may have actually paid these invoices, the Wrona Component should be disallowed or subordinated.

#### 2. *The Gateway Component*

22. Finally, Shoaf claims $57,603.48 as "indemnification for his guaranty of the Debtor's Gateway office lease" (the "Indemnity Claim"). Shoaf has provided no evidence that he has been indemnified by Partners for amounts claimed under the Gateway Lease. Bald assertions of liability, without more, do not satisfy the burden a claimant must meet to establish a *prima facie* valid claim under section 502 of the Bankruptcy Code. See, e.g., In re Kincaid, 388

B.R. 610, 614 (Bankr. E.D. Pa. 2008) (proofs of claim that fail to provide facts and documents to support the claim are not entitled to the presumption of *prima facie* validity).

23. First, Shoaf does not explain the basis for his claim of indemnity. Second, to the extent the indemnity is provided in a written agreement, Shoaf has failed to provide that agreement as required by Bankruptcy Rule 3001(c). Third, even if Shoaf had been indemnified by Partners for certain amounts due from Shoaf (the nature and extent of which Shoaf also fails to explain), it is clear from the Guaranty and the Assumption and Assignment of Lease Agreement (copies of which Shoaf fails to include in the Claim Amendment) that Shoaf guaranteed amounts due by CloudNine under the Gateway Lease and did not additionally and independently guarantee amounts due by Partners under the Assumption and Assignment Agreement. See Proof of Claim 31-1 filed by Gateway Center LLC against Easy Street Partners, LLC (attaching Personal Guaranty and Assumption and Assignment Agreement at 14, 18-19).

24. Shoaf's Personal Guaranty, executed August 7, 2007, provided that,

> [a]s additional consideration for Gateway Center, LLC, for entering into the Lease [with Cloud Nine Resorts, LLC], William Shoaf agrees to guarantee, personally and unconditionally, the faithful performance of the Lease and any amendments to the Lease. This guarantee is made in his personal and individual capacity and not as a corporate officer or director.

Id. at 14. Moreover, under the Assignment and Assumption Agreement executed on January 9, 2009 between CloudNine and Partners, CloudNine agreed to "continue to be responsible for and shall perform and satisfy the obligations of Assignor as 'Tenant' under the Lease whenever such obligations may arise." Id. at 18 § 3. Moreover, Shoaf acknowledged that "this Assignment does not terminate, reduce, *modify or impact his guaranty of the Lease in any way*." Id. (emphasis added). Therefore, contrary to Shoaf's assertions in his Claim Amendment that "[t]his

14

office space was leased by *the Debtor* in January 2007 for a three year period," the documentation makes clear that (i) the Gateway Lease was entered into and remained an obligation of CloudNine; and (ii) Shoaf guaranteed CloudNine's obligations under the Gateway Lease, which guaranty was not modified or impacted by the assignment of the Gateway Lease to Partners.

25. In fact, it is clear that Shoaf's later actions to defend the Gateway Lease relate to his Guaranty of *CloudNine's* obligations. See Easy Street Partners, LLC's Objection to Proofs of Claim Filed By Gateway Center, LLC [Doc. No. 335] Exh. A at 1 (January 13, 2010 report by Summit Engineering Group, Inc. prompted "[a]t the request of Mr. William Shoaf with Cloud Nine Resorts, a tenant in the Gateway Center . . . ."). Therefore, while Shoaf may have some indemnification right against CloudNine (which also appears to have been sued by Gateway), he has provided no evidence that he is indemnified or basis on which he would be indemnified by Partners, and the Gateway Component should therefore be disallowed.

### III. THE GATEWAY COMPONENT SHOULD BE DISALLOWED AS A MATTER OF SUBSTANTIVE BANKRUPTCY LAW.

25. The Gateway Component is also subject to disallowance as a contingent claim for contribution or reimbursement. See 11 U.S.C. § 502(e)(1)(B). Shoaf nowhere alleges or demonstrates in his Claim Amendment that he has actually paid the $57,603.48 claimed from him by Gateway. Unless and until he pays this amount, the Gateway Component should be disallowed under Bankruptcy Code section 502(e)(1)(B). See, e.g., In re Cottonwood Canyon Land Co., 146 B.R. 992, 997 (Bankr. D. Colo. 1992) (disallowing contingent claim for contribution under 11 U.S.C. 502(e)(1)(B)). And, even if Shoaf has paid or subsequently pays this amount to Gateway, he cannot recover it from Partners' estate as a subrogee under 11 U.S.C.

15

509 because Gateway is entitled to no more under the Plan than the 60% it originally opted to recover.  See, e.g., Diamantis v. Perfect Home LLC (In re Diamantis), 380 B.R. 838, 843 (Bankr. N.D. Ala. 2007) (limiting guarantor's recovery to any payments due to debtor's creditor under the plan, not to total amount paid to creditor under guaranty).

## CONCLUSION

**WHEREFORE**, for the reasons discussed above, Heber respectfully requests that the Court enter an order disallowing the Shoaf Claim and Claim Amendment in their entirety and expunging such claims, and to grant any and other relief it deems good and proper.

DATED this 10th day of January, 2011.

> DORSEY & WHITNEY LLP
>
>   /s/ Benjamin J. Kotter
> Annette W. Jarvis
> Peggy Hunt
> Benjamin J. Kotter
>
> and
>
> Richard W. Havel
> Christina M. Craige (*pro hac vice pending*)
>
> *Attorneys for Heber Avenue Partners, LLC*

16